BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| *In re* Blue Cross Blue Shield Antitrust Litigation. | MDL No. 2406 |

### CERTAIN DEFENDANTS' RESPONSE TO THE MOTION TO TRANSFER AND CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF ALABAMA

David J. Zott, P.C.
Daniel E. Laytin
Ian R. Conner
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telecopier: (312) 862-2200

*Counsel for Defendant Blue Cross and Blue Shield Association*

*Additional counsel listed at conclusion*

October 1, 2012

## INTRODUCTION

The undersigned defendants submit their response to the motion by GC Advertising LLC and CB Roofing LLC (the "moving plaintiffs") under 28 U.S.C. § 1407 to transfer the nine cases attached on plaintiffs' schedule of actions and any additional tag-along cases to the Honorable R. David Proctor in the Northern District of Alabama for coordinated pretrial proceedings.[1] (*In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406 (filed Sept. 6, 2012) (Doc. No. 1).) Since that motion, one of the defendants notified the Judicial Panel on Multidistrict Litigation of a potential tag-along case under Rule 1.1(h). (*Id.* Doc. No. 5.)

Each of these cases challenge the way that Blue Cross and Blue Shield Association (BCBSA) licenses the rights to use its trademarks to insurance companies within service areas specified in the license. Each group of plaintiffs seeks to represent a state-specific or national class of those who allegedly overpaid premiums to a Blue Plan, or seeks to represent a class of providers who provided services to a person insured by a Blue Plan and allegedly received sub-competitive reimbursement rates. These cases all raise the same or similar antitrust claims against BCBSA and one or more Blue Plans, and thus they are ideal candidates for MDL treatment.

Transfer, consolidation, and coordination of these suits before Judge Proctor is appropriate. The actions listed and the tag-along action make complex antitrust allegations that raise questions of fact common to those questions raised in the putative class actions already pending before Judge Proctor. And at least two of the plaintiffs' proposed classes encompass all other proposed classes. In addition, transfer and centralization of these cases under § 1407 is appropriate as it will minimize the risk of inconsistent rulings, promote efficiency, and serve the convenience of the parties.

---

[1]   By not opposing moving plaintiffs' motion, defendants do not assent to the factual or legal assertions in that motion.

## BACKGROUND

BCBSA owns the "strong and famous" Blue Cross and Blue Shield trademarks and trade names, which have signified high-quality, affordable healthcare insurance for almost 75 years. *See Cent. Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n,* 711 F. Supp. 1423, 1433 (S.D. Ohio 1989). BCBSA licenses the right to use these marks to its 38 member Plans. To ensure that the Blue marks continue to signify high-quality, affordable healthcare insurance, BCBSA typically licenses to a member Plan the exclusive right to use the Blue Cross, Blue Shield, or both in the Plan's respective area. By licensing the Blue marks to a Plan in a specified service area, BCBSA ensures that the Plan will invest in the Blue brand and refrain from otherwise denigrating the Blue marks. These vertical licensing arrangements between BCBSA and each of the Blue Plans promote competition by enabling the historically local Blue Plans to compete for business nationwide against national commercial health insurers like Aetna, Cigna, and United.

Now, ten different sets of plaintiffs in ten separate class actions in four federal courts challenge the same conduct under the same legal theory: Each set of plaintiffs alleges that BCBSA's long-standing licensing arrangement violates antitrust laws. Plaintiffs in each of the nine cases filed on behalf of health-insurance subscribers claim that, as a result of the alleged conspiracy, they were charged inflated health-insurance premiums, and they seek to represent putative nationwide or statewide classes of subscribers. The retired-chiropractor plaintiff in the other case claims that, as a result of the alleged conspiracy, he was underpaid for the services he provided to Blue Plan insureds, and he seeks to represent a putative nationwide class of all healthcare providers who provided services to anyone insured by a Blue Plan. Litigation is pending in the Western District of North Carolina, the Northern District of Alabama, the Western District of Tennessee, and the Middle District of Louisiana.

Certain Defendants' Response to
Motion to Transfer Under § 1407

In February 2012, plaintiffs in North Carolina sued BCBSA and their local Blue Plan, Blue Cross and Blue Shield of North Carolina (BCBSNC). *Cerven v. Blue Cross & Blue Shield of N.C.,* No. 5:12-cv-17 (W.D.N.C. filed Feb. 7, 2012). Plaintiffs allege that BCBSA's longstanding practice of licensing the exclusive right to use the Blue marks in a specified service area to its member Plans violates the federal antitrust laws and the North Carolina analogue. (*Id.* Compl. ¶¶ 3, 144−55, 164−74.) Those plaintiffs seek damages on behalf of a putative class of those who paid premiums to BCBSNC and injunctive relief on behalf of those who paid premiums to any Blue licensee. (*Id.* ¶¶ 20−21.) Plaintiffs also allege that BCBSNC's use of "most favored nations" clauses in its contracts with providers violates the antitrust laws. (*Id.* ¶¶ 156−63.) Both BCBSA and BCBSNC moved to dismiss on April 30, 2012. Plaintiffs responded on June 27, 2012. BCBSA and BCBSNC replied on July 27, 2012. The court has not yet ruled on the motion to dismiss, and plaintiffs' request for oral argument is pending. No discovery has taken place.

Other plaintiffs have since filed seven suits in the Northern District of Alabama against BCBSA and Blue Cross and Blue Shield of Alabama.[2] (The same national plaintiffs' counsel that filed *Cerven* in North Carolina filed one of these suits in Alabama.) Each of the Alabama plaintiffs makes the same claim that through their individual licensing agreements with BCBSA, the Blues conspired to divide the health-insurance market in violation of the antitrust laws. The moving plaintiffs' suit seeks relief against BCBSA for antitrust violations on behalf of a putative class of persons and entities that paid premiums to "any BCBSA licensee," not just the plaintiffs' local Blue Plan. (*GC Adver. LLC*

---

[2]     *Richards et al. v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-01133-RDP (N.D. Ala. filed Apr. 17, 2012); *One Stop Envt'l. v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-01910 (N.D. Al. filed May 17, 2012); *Am. Elec. Motor Servs., Inc. v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-02169 (N.D. Al. filed June 14, 2012); *Bajalieh v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-02185 (N.D. Al. filed June 15, 2012); *Carder v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-02537 (N.D. Al. filed July 24, 2012); *GC Adver. LLC v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-02525 (N.D. Al. filed July 24, 2012); *Conway v. Blue Cross & Blue Shield of Al., et al.,* No. 2:12-cv-02532 (N.D. Al. filed July 24, 2012).

Certain Defendants' Response to
Motion to Transfer Under § 1407

Compl. ¶ 64.) And another case names a host of Blue Plans as defendants, seeking damages and injunctive relief on behalf of a putative nationwide class of healthcare providers. (*Conway* Compl. ¶¶ 20−62, 118.) To efficiently manage the seven class actions now pending in Alabama, these cases were consolidated in the Northern District of Alabama before Judge Proctor. No plaintiff opposed consolidation. (*Richards* Doc. 23, 33, 36.) And Judge Proctor has actively supervised and managed the litigation thus far.

Other plaintiffs also filed two suits in two different states against two other Blue Plans—BlueCross BlueShield of Tennessee (BCBST) and Louisiana Health Service & Indemnity Co. (which does business as Blue Cross and Blue Shield of Louisiana (BCBS-LA))—alleging the same conspiracy.[3] In each case, the plaintiffs, like the plaintiffs in North Carolina and Alabama, say that as a result of the supposed conspiracy among BCBSA and the Blue Plans, the plaintiffs and a putative class of like persons and entities paid inflated premiums to their local Blue Plan. Unlike the eight other suits, plaintiffs' counsel named *only* the local Blue Plan as defendants and omitted BCBSA—the licensor of the alleged illegal license agreements. BCBSA successfully intervened in Tennessee (*Morrissey* Doc. No. 28), and it has moved to intervene in Louisiana (*Jarreau* Doc. Nos. 7, 16). BCBSA and BCBST moved to dismiss the Tennessee suit on August 20, 2012. The parties have agreed to stay the Tennessee suit pending the resolution of the moving plaintiffs' consolidation motion.

The Tennessee suit was included in plaintiffs' § 1407 motion. The suit against BCBS-LA has been removed to federal court, and BCBS-LA has notified the Panel that this suit is a potential tag-

---

[3]   *Morrissey v. Blue Cross & Blue Shield of Tenn.*, No. 2:12-cv-02359 (W.D. Tenn. filed May 11, 2012); *Jarreau v. La. Health Serv. & Indemn. Co. (d.b.a. Blue Cross and Blue Shield of La.)*, No. 3:12-cv-00421 (M.D. La. filed June 6, 2012).

Most recently, plaintiffs filed another similar complaint in Illinois state court against Health Care Service Corp. (which does business as Blue Cross Blue Shield of Illinois). *Piercy v. Health Care Serv. Corp. (d/b/a Blue Cross Blue Shield of Illinois*), No. 12-L-28 (Ill. Cir. Ct. filed Aug. 21, 2012).

along case under Rule 1.1(h). (*In re Blue Cross Blue Shield Antitrust Litigation*, MDL Doc. No. 5.) A motion to remand is pending in Louisiana, as is BCBSA's motion to intervene.

ARGUMENT

These ten actions are well suited for transfer and centralization under § 1407. To determine if transfer is appropriate under § 1407, the Panel considers whether: (1) the actions involve one or more common questions of fact; and (2) transfer will be convenient for the parties and witnesses, and promote just and efficient conduct. 28 U.S.C. § 1407(a); *see also In re Cal. Retail Natural Gas & Elec. Antitrust Litig.,* 150 F. Supp. 2d 1383, 1384 (J.P.M.L. 2001). Transfer and centralization is appropriate because this litigation satisfies both requirements. First, these cases make similar allegations: they each allege that BCBSA's licensing arrangements violate the antitrust laws. Second, transfer and centralization is convenient and promotes just and efficient conduct by preventing parallel pretrial matters and avoiding the risk of inconsistent pretrial rulings, including potentially inconsistent decisions on motions to dismiss. Defendants concur that transfer of the cases to Judge Proctor in the Northern District of Alabama is appropriate. The Judge has taken a considerable role already in managing the seven class actions consolidated there.

**A.  The cases share factual questions.**

First, these actions share factual questions. Transfer under § 1407 requires that the actions pending in different districts share common questions of fact. 28 U.S.C. § 1407(a); *see also In re Refined Petrol. Prods. Antitrust Litig.,* 528 F. Supp. 2d 1365, 1366−67 (J.P.M.L. 2007). Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to centralization, and the presence of different nuances (such as state or party-specific issues), does not negate the existence of common questions of fact for purposes of transfer. *See, e.g., In re Oxycontin Antitrust Litig.,* 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008); *In re Travel Agent Comm'n Antitrust Litig.,* 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003). As long recognized by the Panel, overlapping and

− 5 −
Certain Defendants' Response to<br/>Motion to Transfer Under § 1407

parallel antitrust class actions are particularly well suited for consolidation under § 1407. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp.2d 1345, 1346 (J.P.M.L. 2005); *In re Circular Thermostat Antitrust Litig.,* 370 F. Supp. 2d 1355, 1356−57 (J.P.M.L. 2005).

A comparison of the complaints reveals that many the basic factual allegations and the legal theories are repeated across the cases.[4] All complaints allege that:

o   BCBSA's license agreements with the member Plans contain exclusive service areas, which allow member Plans to use the Blue Cross and Blue Shield trademarks and trade names only within that Plan's designated service area;[5]

o   Absent territorial limitations in BCBSA's license agreements, Blue Cross and Blue Shield plans would compete with one another and this competition would lower insurance premiums;[6]

o   As a result of these license agreements, member Plans have achieved market dominance in their respective service areas and used that dominance to artificially inflate premiums;[7]

o   The subscribers who have bought Blue-branded health insurance have thus overpaid;[8] and

o   BCBSA's exclusive-service areas violate Section 1 of the Sherman Act (or the state-law equivalent).[9]

---

[4]   In discussing plaintiffs' allegations in their complaints, defendants do not accept as true or legally cognizable any of plaintiffs' allegations. Similarly, defendants deny any suggestion that class certification is proper in any of the cases filed involving these claims. Defendants do not believe that: (1) the claims are common per Federal Rule of Civil Procedure 23; (2) that any common question predominates over individual issues; or (3) that any other condition for class certification is satisfied.

[5]   *Cerven* Compl. ¶¶ 69−76; *Richards* Compl. ¶ 39; *Morrissey* Compl. ¶¶ 77−80, 92−97; *One Stop* Compl. ¶¶ 25, 76, 80, 92−97; *Jarreau* Compl. ¶¶ 73−95; *Am. Elec.* Compl. ¶ 23; *Bajalieh* Compl. ¶¶ 26−27, 43−44; *GC Adver.* Compl. ¶¶ 43−60; *Carder* Compl. ¶¶ 11, 26, 36−40.

[6]   *Cerven* Compl. ¶¶ 77, 95, 105−11; *Richards* Compl. ¶¶ 3, 45; *Morrissey* Compl. ¶¶ 6, 98−103; *One Stop* Compl. ¶¶ 26, 98−103; *Jarreau* Compl. ¶¶ 96−101; *Am. Elec.* Compl. ¶¶ 4, 44; *Bajalieh* Compl. ¶ 5; *GC Adver.* Compl. ¶¶ 61−63; *Carder* Compl. ¶¶ 3, 47.

[7]   *Cerven* Compl. ¶ 3; *Richards* Compl. ¶ 26; *Morrissey* Compl. ¶¶ 3, 5, 23, 26, 131−32; *One Stop* Compl. ¶¶ 25−27; *Jarreau* Compl. ¶ 134; *Am. Elec.* Compl. ¶¶ 26, 44; *Bajalieh* Compl. ¶¶ 8, 33; *GC Adver.* Compl. ¶ 15; *Carder* Compl. ¶ 28.

[8]   *Cerven* Compl. ¶¶ 104, 142−43; *Richards* Compl. ¶ 44; *Morrissey* Compl. ¶ 142; *One Stop* Compl. ¶¶ 121−23; *Jarreau* Compl. ¶ 137; *Am. Elec.* Compl. ¶ 48; *Bajalieh* Compl. ¶¶ 8, 33; *GC Adver.* Compl. ¶ 76; *Carder* Compl. ¶ 50.

Certain Defendants' Response to
Motion to Transfer Under § 1407

Each set of plaintiffs in the subscriber cases thus seeks to recover treble damages for the alleged overcharge and to represent a class of persons or entities who paid insurance premiums to their respective Blue Plan for individual or small-group full-service commercial health insurance.[10] Additionally, two of the proposed subscriber classes are national in scope, encompassing the entirety of the other plaintiffs' proposed classes in the other seven suits. (*GC Adver.* Compl. ¶¶ 64, 68, 78; *Cerven* Compl. ¶ 20.) (The *Conway* suit makes parallel allegations, but on behalf of healthcare providers, not subscribers.[11])

In sum, the suits share similar factual questions, thus satisfying the first factor under § 1407(a).

## B. Transfer and centralization will serve the convenience of the parties, as well as promote just and efficient conduct.

Transfer and centralization will both serve the convenience of the parties as well as promote just and efficient conduct, thereby satisfying the second factor under § 1407(a).

**First**, transfer and centralization will eliminate the risk of inconsistent pretrial rulings on motions to dismiss and, possibly, class certification. These cases all allege that the exclusive service areas in BCBSA licensing agreements violate the antitrust laws. Centralized proceedings on the motions to dismiss challenging plaintiffs' claims will avoid conflicting rulings and aid the consistent disposition of these cases. Indeed, BCBSA has already moved to dismiss both the *Morrissey* and *Cerven* actions on the ground that, *inter alia*, plaintiffs have not and cannot allege that exclusive service areas are per se illegal under the antitrust laws.

---

9    *Cerven* Compl. ¶¶ 144−55; *Richards* Compl. ¶ 24; *Morrissey* Compl. ¶¶ 133−43; *One Stop* Compl. ¶¶ 75, 81, 124−34; *Jarreau* Compl. ¶¶ 128−38; *Am. Elec.* Compl. ¶ 47; *Bajalieh* Compl. ¶¶ 47−50; *GC Adver.* Compl. ¶¶ 73−78; *Carder* Compl. ¶¶ 48−50.

10   *Cerven* Compl. ¶¶ 20−21; *Richards* Compl. ¶ 12; *Morrissey* Compl. ¶ 14; *One Stop* Compl. ¶ 17; *Jarreau* Compl. ¶ 12; *Am. Elec.* Compl. ¶ 11; *Bajalieh* Compl. ¶¶ 8, 16; *GC Adver.* Compl. ¶ 64; *Carder* Compl. ¶ 13.

11   *Conway* Compl. ¶¶ 6−8, 65−66, 72, 97−101, 115−18, 127−32.

Certain Defendants' Response to
Motion to Transfer Under § 1407

And should these cases survive a motion to dismiss, transfer and centralization will "make impossible" the "pretrial chaos in conflicting class action determinations." *In re Antibiotic Drugs*, 299 F. Supp. 1403, 1405 (J.P.M.L. 1969). "[A] potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts." *In re Plumbing Fixtures,* 308 F. Supp. 242, 243−44 (J.P.M.L. 1970); *see also In re Ditropan XL Antitrust Litig.*, 429 F. Supp. 2d 1364, 1366 (J.P.M.L. 2006). Here, both the putative damages class in *GC Advertising* and the injunctive relief sought in both *GC Advertising* and *Cerven* encompass all the other subscriber classes. Were these cases to proceed separately, no one could question that the plaintiffs would be attempting to certify overlapping classes. Transfer and centralization would eliminate the risk of inconsistent rulings on that and other overlapping issues.

**Second**, transfer and centralization will eliminate duplicative discovery. Discovery in all ten actions (as well as other prospective tag-along actions) will overlap. For example, plaintiffs will presumably seek documents concerning the history and context for BCBSA's license agreements and exclusive service areas. Without centralization, BCBSA and the Blue Plans would have to produce the same documents (and possibly raise the same objections) many times. In addition, the same employees of the defendants might be deposed in multiple suits that concern identical issues. Where parties must depose the same witnesses, examine the same documents, and make the same (or similar) pretrial motions, the benefits of a single judge supervising these proceedings is "obvious." *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978); *see also In re Cross-Fla. Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971). Transfer thus would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with pretrial activities." *In re Cuisinart Food Processor Antitrust Litig.,* 506 F. Supp. 651, 655 (J.P.M.L. 1981).

Certain Defendants' Response to
Motion to Transfer Under § 1407

**Third**, transfer and centralization will conserve judicial resources. Here, the ten cases were filed within about seven months of each other and no discovery has taken place yet in any case. Although a motion to dismiss has been fully briefed and is pending in *Cerven,* there has not been any ruling, and the plaintiffs' motion for oral argument remains pending. Thus, the pretrial process can be efficiently coordinated from the start.

**Fourth,** there is a possibility that additional suits will be filed. Plaintiffs' counsel in *GC Advertising* have vowed to file additional cases against Blue Plans in other jurisdictions. (*Richards* Doc. No. 91 ("Greg Davis has been contacted by subscriber plaintiffs in other jurisdictions and will be filing other cases involving subscribers.").) The likelihood that additional actions will be filed is a relevant consideration under § 1407. *See In re Fotomat Franchisee Litig.*, 394 F. Supp. 798, 799 (J.P.M.L. 1975). Early transfer will have the salutary effect of providing a ready forum to include any newly filed action later. *See In re Gas Meter Antitrust Litig.,* 464 F. Supp. 391, 393 (J.P.M.L. 1979); *In re Air Crash Disaster at Stapleton Int'l Airport* , 447 F. Supp. 1071, 1072 (J.P.M.L. 1978).

**Fifth,** the nature of the complaints further counsels in favor of MDL treatment. These ten class actions involve antitrust litigation and treble damages, a subject that the Panel consistently finds sufficiently complex to warrant transfer. *See, e.g., In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 930 (J.P.M.L. 1980); *In re Clark Oil & Refining Corp. Antitrust Litig.,* 364 F. Supp. 458, 459 (J.P.M.L. 1973). And the complaints allege a conspiracy spanning the United States, purportedly dating back decades, and involving every Blue Plan in the country. Sweeping conspiracy claims with national implications often fall within the ambit of § 1407. *See, e.g., In re Cement & Concrete Antitrust Litig.,* 465 F. Supp. 1299, 1300−01 (J.P.M.L. 1979); *In re Sugar Indus. Antitrust Litig.*, 427 F. Supp. 1018, 1025−26 (J.P.M.L. 1977); *In re Gov't Auto Fleet Sales*, 328 F. Supp. 218, 219 (J.P.M.L. 1971).

In sum, the second factor under § 1407(a) is satisfied because transfer and centralization will avoid the risk of inconsistent rulings, eliminate duplicative discovery, and conserve judicial resources for at least ten complex, high-stakes antitrust actions.

## C. This Panel should transfer these cases to the Northern District of Alabama.

The litigation has already heavily tilted toward the Northern District of Alabama, and that, combined with other factors, renders that court the most appropriate and convenient forum for transfer under § 1407(a).

**First**, the Northern District of Alabama is home to 7 of the 10 suits that are under consideration for transfer, and the court in Birmingham is an easily accessible location. If a majority of actions are pending before a court, then this weighs in favor of selecting that court as the transferee court. *See, e.g., In re Wells Fargo Wage & Hour Emp. Practices Litig. (No. III),* 804 F. Supp. 2d 1382, 1384−85 (J.P.M.L. 2011); *In re Se. Milk Antitrust Litig.,* 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). Moreover, Judge Proctor has taken an active role in managing these cases. Judge Proctor has worked to consolidate all the cases filed in Alabama, held a status conference on the consolidated cases, and set a briefing schedule related to the appointment of interim-lead plaintiffs' counsel. (*Richards* Doc. Nos. 44, 47, 50, 53.)

**Second**, Judge Proctor will expertly and efficiently handle this litigation. The Judge is experienced in managing multidistrict litigation and collective actions and handling complex antitrust claims.[12] Also, Judge Proctor would promote efficient resolution of this case. The Judge resolves about 70% of pretrial motions within 90 days of final briefing. *See* Judicial Motion Report for

---

[12]  *See, e.g., In re Total Body Formula Prods. Liability Litig.,* MDL No. 1985; *Gulf States Reorganization Grp., Inc. v. Nucor Corp.,* 822 F. Supp. 2d 1201 (N.D. Ala. 2011) (opinion on complex antitrust matter); *Saxton v. Title Max of Ala., Inc.,* 431 F. Supp. 2d 1185 (N.D. Ala. 2006) (opinion on complex collective action); *see also Winston v. Jefferson Cnty., Ala.,* No. 2:05-cv-0497-RDP (opinion on class certification).

Proctor, Hon. R. David, at 2 (Thomson Reuters 2012) (Exhibit 1.) And, Judge Proctor does not have any motions unresolved for more than 6 months.[13]

**Third**, the docket conditions in the Northern District of Alabama are favorable. The docket of a potential district is an important consideration in evaluating the proper court for transfer. *See, e.g., In re Travel Agent Comm'n Antitrust Litig.,* 290 F. Supp. 2d at 1382; *In re Corn Derivatives Antitrust Litig.,* 486 F. Supp. at 932. According to the latest statistics available from the Judicial Panel on Multidistrict Litigation, only one active multidistrict suit is pending in the Northern District of Alabama, and that case is not before Judge Proctor. (Exhibit 3.) Therefore, these cases should be transferred to and centralized before Judge Proctor in the Northern District of Alabama.

CONCLUSION

In sum, these cases and any tag-along cases should be transferred and centralized for coordinated pretrial proceedings in the Northern District of Alabama. These cases share common issues. Their centralization will eliminate the risk of inconsistent pretrial rulings, avoid duplicative discovery, and conserve judicial resources. The benefits of these results are magnified by the fact that all sets of plaintiffs challenge under the antitrust laws the essence of Blue Plan insurance nationwide. Because a majority of actions are already pending and consolidated in the Northern District of Alabama, and because Judge Proctor is experienced in managing complex, collective actions, all cases should be consolidated before Judge Proctor.[14]

---

[13]  *See* Administrative Office of the U.S. Courts, REPORT OF MOTIONS PENDING MORE THAN SIX MONTHS, BENCH TRIALS SUBMITTED MORE THAN SIX MONTHS, BANKRUPTCY APPEALS PENDING MORE THAN SIX MONTHS, SOCIAL SECURITY APPEAL CASES PENDING MORE THAN SIX MONTHS, AND CIVIL CASES PENDING MORE THAN THREE YEARS ON MARCH 31, 2012, at 6, 58 (2012) (attached as Exhibit 2), *available at* http://www.uscourts.gov/Statistics/civilJusticeReformActReport.aspx.

[14]  Defendants make this response in support of pretrial centralization reserving and not waiving any objections or defenses with respect to the actions that are proposed or tagged. *See, e.g., In re Gypsum Wallboard*, 302 F. Supp. 794, 794 (J.P.M.L. 1969). If the Panel orders centralization, then those challenges will be raised with the transferee court.

Submitted, this the 1st day of October 2012.

/s/ Daniel E. Laytin

*On behalf of the undersigned defendants*

*Counsel for Blue Cross and Blue Shield Association*

**David J. Zott, P.C.**
David.Zott@kirkland.com
**Daniel E. Laytin**
Daniel.Laytin@kirkland.com
**Ian R. Conner**
Ian.Conner@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telecopier: (312) 862-2200

*Counsel for Blue Cross and Blue Shield of Mississippi*

**Cheri D. Green**
cgreen@brunini.com
**Christopher A. Shapley**
cshapley@brunini.com
**R. David Kaufman**
dkaufman@brunini.com
**Scott F. Singley**
ssingley@brunini.com
BRUNINI GRANTHAM GROWER
& HEWES PLLC
190 E Capitol Street
Suite 100
Jackson, MS 39201
Telephone: 601-948-3101
Facsimile: 601-960-6902

*Counsel for Excellus BlueCross BlueShield of New York*

**Edward S. Bloomberg**
ebloomberg@phillipslytle.com
Phillips Lytle LLP
3400 HSBC Center
Buffalo, NY 14203-2887
Telephone: (716) 847-7096, (212) 759-4888
Ext. 7096

*Counsel for Blue Cross and Blue Shield of Alabama*

**James Louis Priester**
jpriester@maynardcooper.com
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza

Certain Defendants' Response to
Motion to Transfer Under § 1407

|   |   |
|---|---|
|   | Birmingham, AL 35203 |
|   | (205) 254-1081 |
| *Triple S - Salud Inc.* | **Rafael Escalera-Rodriguez** |
|   | escalera@reichardescalera.com |
|   | **Pedro Santiago Rivera** |
|   | santiagopedro@reichardescalera.com |
|   | REICHARD & ESCALERA |
|   | 255 Ponce de Leon Avenue |
|   | MCS Plaza 10th Floor |
|   | San Juan, PR 00917-1913 |
|   | 787-777-8888 |
|   | Fax: 787-765-4225 |
| *Counsel for Premera Blue Cross of Alaska* | **Gwendolyn C. Payton** |
|   | paytong@lanepowell.com |
|   | **Erin M. Wilson** |
|   | wilsonem@lanepowell.com |
|   | LANE POWELL PC |
|   | 1420 Fifth Ave., Suite 4100 |
|   | Seattle, WA 98101 |
|   | Attorneys for Defendant Premera Blue Cross |
|   | Blue Shield of Alaska |
| *CareFirst Blue Cross and Blue Shield of Maryland* | **Brian Norman** |
|   | bkn@snlegal.com |
|   | SHAMOUN & NORMAN LLP |
|   | 1755 Wittington Place |
|   | Suite 200 |
|   | Dallas, TX 75234 |
|   | 214-987-1745 |
|   | Fax: 214-521-9033 |
| *Counsel for Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Texas, Health Care Service Corp* | **Kimberly R. West** |
|   | kwest@wallacejordan.com |
|   | **Mark M. Hogewood** |
|   | mhogewood@wallacejordan.com |
|   | WALLACE JORDAN RATLIFF & BRANDT LLC |
|   | First Commercial Bank Building |
|   | 800 Shades Creek Parkway, Suite 400 |
|   | PO Box 530910 |
|   | Birmingham, AL 35253 |
| *Counsel for Independence Blue Cross* | **John D. Briggs** |
|   | jdb@avhlaw.com |

Certain Defendants' Response to
Motion to Transfer Under § 1407

**Rachel J. Adcox**
rja@avhlaw.com
Axinn, Veltrop & Harkrider, LLP
950 F Street, NW
Washington, DC 20004

*Counsel for Blue Cross Blue Shield of Michigan*

**Todd M. Stenerson**
tstenerson@hunton.com
**D. Bruce Hoffman**
bhoffman@hunton.com
**Melissa Levitt**
mlevitt@hunton.com
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington DC 20037

*Attorneys for US Able Mutual Insurance Company,*
*d/b/a Arkansas Blue Cross and Blue Shield*

**Michael Naranjo**
mnaranjo@foley.com
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104
Phone: 415.984.9847
Fax: 415.434.4507

**Alan Rutenberg**
arutenberg@foley.com
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Phone: 202.672.5300
Fax: 202.672.5399

**Gary London**
glondon@burr.com
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Phone: 205.251-3000
Fax: 205.458-5100

Certain Defendants' Response to
Motion to Transfer Under § 1407

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October, 2012, a copy of the foregoing Certain Defendants' Response to the Motion to Transfer and Consolidate for Pretrial Proceedings in the Northern District of Alabama was electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system, which will send notice of electronic filing to all parties of record.

/s/Daniel E. Laytin
Daniel E. Laytin