BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|   |   |
|---|---|
| In re: Blue Cross Blue Shield Antitrust Litigation | ) ) ) ) ) MDL Docket No. 2406 |

### CERVEN PLAINTIFFS' OPPOSITION TO MOTION FOR TRANSFER

Movants GC Advertising LLC and CB Roofing LLC seek centralization although only a few actions have been filed, each against a different state Blue Cross Blue Shield ("BCBS") insurer in a different state alleging different markets and damage claims.[1] In response to these, Defendants have and will assert defenses specific to each jurisdiction's state insurance law.

Centralization should be denied.  **First**, each case (starting with the first-filed action in North Carolina, *Cerven*,[2] and including Alabama and Tennessee cases) turns for liability purposes on its home state's highly-individualized state insurance regulatory scheme and insurance markets.  Defendants in these cases have already raised defenses such as the state action doctrine, the filed-rate doctrine (which examines each state's insurance regulations), the McCarran-Ferguson Act, and the appropriate market definition.  This court has previously rejected centralization of such insurance-based antitrust actions.  *In re Title Ins. Real Estate*

---

[1] The matters currently pending before the Panel include *Cerven v. Blue Cross and Blue Shield of North Carolina*, 5:12cv0017, Complaint (W.D.N.C. Feb. 7, 2012) [D.E. 1] ("Cerven Compl."); *Richards v. Blue Cross and Blue Shield of Alabama*, 2:12cv1133, Complaint (N.D. Ala. Apr. 17, 2012) [D.E. 1] ("Richards Compl."); *Morrissey v. Blue Cross and Blue Shield of Tennessee, Inc.*, 2:12cv02359, Complaint (W.D. Tenn. May 11, 2012) [D.E. 1] ("Morrissey Compl."); *One Stop Environmental LLC v. Blue Cross and Blue Shield of Alabama*, 2:12cv01910, Complaint (N.D. Ala. May 17, 2012) [D.E. 1] ("One Stop Compl."); *American Electric Motor Services, Inc. v. Blue Cross and Blue Shield of Alabama*, 2:2012cv02169, Complaint (N.D. Ala. Jun. 14, 2012) [D.E. 1] ("American Electric Compl."); *Bajalieh v. Blue Cross and Blue Shield of Alabama*, 2:12cv02185, Complaint (N.D. Ala., June 15, 2012) ("Bajalieh Compl."); *Carder v. Blue Cross and Blue Shield of Alabama*, 2:12cv02537, Complaint (N.D. Ala., July 24, 2012) [D.E. 1] ("Carder Compl."); *Conway v. Blue Cross and Blue Shield of Alabama*, 2:12cv02532, Complaint (N.D. Ala., July 24, 2012) [D.E. 1] ("Conway Compl."); *GC Advertising LLC v. Blue Cross and Blue Shield of Alabama*, 12cv02525, Complaint (N.D. Ala., July 24, 2012) [D.E. 1] ("GC Advertising Compl."). The Alabama cases have already been consolidated.  A similar complaint filed in Louisiana state court (now removed to Louisiana federal court) was not part of the motion for transfer.  *Jarreau v. Louisiana Health Service & Indemnity Co. d/b/a Blue Cross Blue Shield of Louisiana*, 3:12cv00421, Complaint (M.D. La. July 13, 2012) [D.E. 1-2].

[2] The *Cerven* Plaintiffs are Kelli R. Cerven, Keith O. Cerven, Teresa M. Cerven, CFW Vending LLC, and SHGI Corporation.

*Settlement Procedures Act (RESPA) & Antitrust Litig.* 560 F. Supp. 2d 1374, 1376 (J.P.M.L. June 9, 2008). If the cases were centralized, one court would be required to sort out these state-specific issues and would be deprived of the benefit of the forum state judge's knowledge of state regulatory and administrative rules. For example, a North Carolina federal judge is the more appropriate adjudicator of that state's insurance law, just as an Alabama federal judge is the appropriate adjudicator of Alabama insurance law.

**Second**, centralization will create inefficiencies and impose unnecessary discovery burdens on multiple parties and counsel across the country. Each case in each state will involve discovery on state-specific issues, including market definition. Damages will also vary state-by-state. The damages class in each case will consist of some portion, or all, of North Carolina's, Alabama's, and Tennessee's insurance subscribers, raising state, not national, questions of to define the class or classes for each jurisdiction. Damages determinations will likewise turn on the analysis of the insurance market(s) in each state, not the nation as a whole. Centralization would thus make discovery and litigation more, not less, inconvenient for the courts, parties, and witnesses – precisely because the cases are driven by different facts in each jurisdiction.[3]

**Third**, while each case also names the Blues' national association, BCBSA, each does so only regarding its dealings with each state-level BCBS insurer. If desirable, discovery directed at BCBSA can be coordinated by the parties or few courts to minimize the burden on BCBSA.

**Fourth**, there is no overlap between or among the classes, except that both the first-filed North Carolina case and an Alabama follow-on complaint by GC Advertising (one of seven in Alabama) seek a national injunction class. GC Advertising's complaint is not even the operative

---

[3] The Alabama Court appointed separate counsel to represent a class of healthcare providers that allege they were underpaid by BCBS. The theories supporting that class and insurance subscribers diverge greatly, particularly on damages, as discussed *infra*. There are less intrusive ways to ensure efficiency than centralizing such actions.

2

complaint in Alabama, and it is unlikely that a nationwide injunction class, which all other Alabama counsel refrained from pursuing, will survive as part of a consolidated complaint there.

**Fifth**, the fact that there may be some common legal issues in the cases is not enough to order centralization.  Nor is the fact that the cases involve the same industry.

**Finally**, that there is only a small number of actions triggers this Panel's heightened standard of proof, requiring GC Advertising to meet a higher burden than usual and to show this is an "exceptional case" under settled law.

The Motion should be denied.

## BACKGROUND

### I.     The *Cerven* Action (North Carolina)

Of the nine actions proposed for transfer, the *Cerven* complaint was the first filed, in February 2012 in the Western District of North Carolina.  That action alleges that BCBS-NC and BCBSA have engaged in per se illegal market division and acted to gain monopoly power throughout North Carolina, resulting in skyrocketing premiums for North Carolina BCBS-NC enrollees.  *Cerven* seeks to recover damages in the form of inflated premiums that BCBS-NC charged as a result of the illegal conspiracy and anticompetitive conduct.  Cerven Compl. ¶ 21. *Cerven* seeks damages for only those who made payments to BCBS-NC and seeks to enjoin BCBS-NC and BCBSA from entering into per se illegal anticompetitive agreements.  *Id.* ¶ 20.

*Cerven* is focused on the "sale of full-service commercial health insurance to individuals and small groups in relevant geographic markets throughout the state of North Carolina." *Id.* ¶ 123.  The potentially relevant geographic markets in the *Cerven* action could be defined alternatively as: (a) the entire state of North Carolina; (b) the six regions, known as "Offices," into which BCBS-NC divides North Carolina; and (c) the seventy regions, known as

"Metropolitan Statistical Areas," "Micropolitan Statistical Areas," and counties, into which the U.S. Office of Management and Budget divides North Carolina. *Id.* ¶ 136. Regardless of how the geographic market is defined, BCBS-NC has the dominant market position, and exercises market power within the North Carolina market(s).

Motions to dismiss have been filed and opposed and are pending in North Carolina. *See Cerven v. Blue Cross and Blue Shield of North Carolina*, 5:12cv0017, Memorandum in Support of Motion to Dismiss by Blue Cross and Blue Shield of North Carolina (W.D.N.C. April 30, 2012) [D.E. 58]; Memorandum in Support of Motion to Dismiss by Blue Cross and Blue Shield Association (W.D.N.C. April 30, 2012) [D.E. 59].

## II. The *Morrissey* Action (Tennessee)

The *Morrissey* action alleges that another entity, Blue Cross and Blue Shield of Tennessee, Inc. ("BCBS-TN"), through BCBSA, engaged in anticompetitive activity to establish and maintain monopoly power throughout a different state, Tennessee. The action seeks to recover damages on behalf of a class charged supra-competitive prices by BCBS-TN. Morrissey Compl. ¶ 14. *Morrissey* seeks damages for only those who made payments to BCBS-TN.

*Morrissey* is focused on the "sale of full-service commercial health insurance to individuals and small groups in relevant geographic markets throughout the State of Tennessee." *Id.* ¶ 113. The potentially relevant markets in *Morrissey* could be defined alternatively as: (a) the entire state of Tennessee; (b) the three regions (or "Offices") into which BCBS-TN divides Tennessee; and (c) the ten "Metropolitan Statistical Areas," twenty "Micropolitan Statistical Areas," and remaining counties, into which the U.S. Office of Management and Budget divides Tennessee. *Id.* ¶¶ 126-28. No matter how the geographic market is defined, BCBS-TN has the dominant market position, and exercises market power within the Tennessee market(s).

Initial motions to dismiss have been filed in Tennessee. *Morrissey v. Blue Cross and Blue Shield of Tennessee, Inc.*, 2:12cv02359, Memorandum in Support of Motion to Dismiss by Blue Cross Blue Shield of Tennessee, Inc. (W.D. Tenn. Aug. 20, 2012) [D.E. 33]; Memorandum in Support of Blue Cross and Blue Shield Association (W.D. Tenn. Aug. 20, 2012) [D.E. 35].

### III. The Alabama Actions

All of the Alabama actions have been consolidated by the Northern District of Alabama.[4] No consolidated complaint has been filed to harmonize the different complaints' allegations. The Alabama actions, except for *Conway*, seek to recover damages on behalf of a class charged supra-competitive prices by BCBS-AL. *See American Electric* Compl. ¶ 11; *Bajalieh* Compl. ¶ 16; *Carder* Compl ¶ 13; *GC Advertising* Compl. ¶ 64; *One Stop* Compl. ¶ 17; *Richards* Compl. ¶ 12. The *Conway* action seeks to represent healthcare providers. *Conway* Compl. ¶ 118. The *GC Advertising* complaint also seeks to represent a nationwide damages and injunctive relief class. GC Advertising Compl. ¶ 64. In sum, only the *GC Advertising* complaint, as currently pled, has any class overlap with the *Cerven* and *Morrisey* complaints. A special master has been appointed to advise the court on determining leadership of the subscriber class in Alabama.

The Alabama subscriber classes are focused on the "sale of full-service commercial health insurance to individuals and small groups in relevant geographic markets throughout the state of Alabama." *See eg.* GC Advertising Compl. ¶ 64. One of the Alabama complaints has acknowledged that the potentially relevant markets in the Alabama actions could be defined alternatively as: (a) the entire state of Alabama and (b) the twelve "Metropolitan Statistical Areas," thirteen "Micropolitan Statistical Areas," and twenty-four counties, into which the U.S.

---

[4] *Richards v. Blue Cross and Blue Shield of Alabama*, 2:12cv01133, Order (N.D. Ala., June 8, 2012) [D.E. 24] (consolidating *Richards* with *One Stop*); Order (June 25, 2012) [D.E. 35] (consolidating with *Bajalieh*); Order (June, 27, 2012) [D.E. 38] (consolidating with *American Electric*); Order (July 27, 2012) [D.E. 48] (consolidating with *GC Advertising*); Order (July 27, 2012) [D.E. 49] (consolidating with *Carder*); Order (Aug. 7, 2012) [D.E. 53] (consolidating with *Conway*).

Office of Management and Budget divides Alabama.  *See* One Stop Compl. ¶¶ 117-19.  No matter how the geographic markets are defined, BCBS-AL has the dominant market position and exercises market power within the Alabama market(s).

With the exception of the *Conway* complaint, BCBS-NC, BCBS-TN, and BCBS-AL are only listed on the complaints that concern their geographic market(s) and are not listed on a complaint with any other BCBS insurer.  The allegations as to BCBSA, the only common defendant, focus on its relationship with the state BCBS insurer named as a defendant in any particular action.

## **LEGAL ARGUMENT**

I.  **The Panel's Heightened Standard Applies In This Matter**

The burden on GC Advertising to support centralization is heightened because there are only a few actions proposed for centralization.  *See In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).  "Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria [of 28 U.S.C. § 1407] have been met." *In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975).  When actions involve one or more common questions of fact, centralization shall be made upon the determination that it is "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The moving party has the burden of convincing the Panel that each of these requirements has been met.  *See, e.g., In re Not-For-Profit Hospitals/Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1356 (J.P.M.L. 2004).

Where, as here, there are only a few actions at issue, the moving party must show "that the common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and

its witnesses." *In re Scotch Whiskey*, 299 F. Supp. at 544. Matters meeting that high burden have been considered "exceptional cases." *Id.*

GC Advertising seeks to centralize only a few actions outside of Alabama, and to centralize those cases with an already-consolidated Alabama case. The Panel has consistently held that the higher burden in *In re Scotch Whiskey* applies when seeking to transfer only a few cases. *See In re Boeing Co. Employment Practices Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978); *In re Ortho Pharm. "Lippes Loop" Products Liab. Litig.*, 447 F. Supp. 1073, 1074 (J.P.M.L. 1978). The motion to transfer fails to satisfy, or even cite, this higher burden.

## II.  There Are Insufficient Common Questions Between The Actions To Transfer Pursuant To Section 1407

The motion to transfer fails to meet section 1407's requirement that the common questions of fact among the actions are sufficiently complex or numerous to justify centralization. *See In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008); *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 366 F. Supp. 2d 1381, 1382 (J.P.M.L. 2005). Antitrust cases are not *ipso facto* complex to automatically require centralization. *In re Aftermarket Auto. Sheet Metal Parts Antitrust Litig.*, 657 F. Supp. 2d 1377, 1377 (J.P.M.L. 2009); *In re Monochloracetic Acid (MCAA) Antitrust Litig.*, 187 F. Supp. 2d 1381, 1381 (J.P.M.L. 2002).

Transfer will only exacerbate the complexities in this case, because any such complexities derive largely from the mosaic of differing local regulatory schemes across the different jurisdictions involved. Such jurisdictional variations undermine the logic of centralization: the Panel has previously held in a potential insurance-centric antitrust MDL that the "different regulatory regimes in the states . . . along with variances in insurance regulation

7

and law in each state" lacked sufficiently common questions of fact to justify centralization. *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.* 560 F. Supp. 2d at 1376. Notably, in that matter there were twenty-five actions pending transfer, far more than the actions at issue here, which are so few in number as to trigger an even higher burden of proof for centralization. *See In re Scotch Whiskey*, 299 F. Supp. at 544.

Here, the uncommon facts are far more complex than any common facts. Defendants in the North Carolina and Tennessee actions have already indicated their position that courts will have to determine the applicability of the different state regulatory schemes at the motion to dismiss phase of the actions. *See, e.g., Cerven v. Blue Cross and Blue Shield of North Carolina*, 5:12cv0017, Memorandum in Support of Motion to Dismiss by Blue Cross and Blue Shield of North Carolina, at 11-23 (W.D.N.C. April 30, 2012) [D.E. 58] (arguing that plaintiffs' claims fail to allege a relevant market and are barred by the filed-rate doctrine, the state-action doctrine, and the McCarran-Ferguson Act); *see also Morrissey v. Blue Cross and Blue Shield of Tennessee, Inc.*, 2:12cv02359, Memorandum in Support of Blue Cross and Blue Shield Association, at 31-35 (W.D. Tenn. Aug. 20, 2012) [D.E. 35] (arguing that plaintiff's claims fail to allege a relevant market and are barred by the filed-rate doctrine and the McCarran-Ferguson Act).

Additionally, except for the *Conway* healthcare provider complaint, each BCBS insurer is only named in the complaint pending in the state of its respective service area. This reflects the fact that the premiums charged by each BCBS insurer are relevant only to the damages class that are subscribers of that insurer, and are not relevant to the claims against the other BCBS insurers.

Each insurer-specific damages class of subscribers (alleged in all but the *Conway* complaint) will require case-specific (i.e., jurisdiction-specific) discovery to support its unique market definition, state impact, and damages. To begin, the relevant market allegations have

8

been framed in the alternative, ranging from the state as a whole to the "Metropolitan Statistical Areas," "Micropolitan Statistical Areas," and counties defined by the U.S. Office of Management and Budget. Discovery into the alleged markets may involve a concentrated examination of each different BCBS insurer and its respective actions at the varying state-wide, metropolitan, micropolitan, and county levels of the state in which it primarily operates.

Discovery of BCBSA will involve its relationship with the specific defendant BCBS insurer in each case, and the effect of that relationship on the BCBS insurer's primary region of operation and its potential or actual monopolization of the relevant market(s) in that region. Such focused discovery will likely extend only minimally, if at all, beyond the BCBS insurer's primary state of operation. Antitrust impact, damages, and issues relating to damages will ultimately be examined through the lens of the relevant market. GC Advertising's own brief supports this with its list of so-called common issues including: "respective service areas," "independently owned and operated licensees," and "distinct geographical regions." Br. at 2. The lack of overlapping relevant markets, which primarily defines the scope of the rest of the discovery, illustrates the lack of common facts and undermines the propriety of centralization.[5]

---

[5] GC Advertising's citations in support of common questions of fact do not compel transfer on that basis in this matter. *See In re Maxim Integrated Prods.*, MDL No. 2354, 2012 WL 2126807 (J.P.M.L. June 11, 2012) (modifying opinion of June 8, 2012) (involving "common patents," not different classes in different states); *In re MF Global Holdings Ltd. Investment Litig.*, MDL No. 2012 WL 1495332, *1-2 (J.P.M.L. Apr. 23, 2012) (involving common defendants, events, and witnesses from the collapse of one parent company, not different classes that likely need to rely on different evidence to support their cases against different defendants); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. Aug. 16, 2011) (involving improper marketing of the active ingredient in two drugs and defendant's knowledge of such, a much more common overlap then whether different defendants charged different classes *supra*-competitive (and likely different) healthcare prices); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (involving whether one defendant overcharged multiple classes, not whether multiple defendants overcharged multiple non-overlapping classes); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (involving only one relevant market, "the market for narcotic pain medication," not multiple); *In re Merscorp Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litig.*, 560 F. Supp. 2d 1371, 1371 n.1 (J.P.M.L. 2008) (involving imposition of same mortgage loan registration fee from common defendants, not different charges from different defendants); *In re Celotex Corp. "Technifoam" Products Liab. Litig.*, 424 F. Supp. 1077, 1078 (J.P.M.L. 1977) (involving same products as already existing MDL, not different classes in a new MDL).

Even the allegations of nationwide classes in the current *GC Advertising* complaint do not support centralization, because there is a distinct probability that such classes will not survive the complaint amendment process in Alabama. A number of firms have sought appointment as lead counsel in the Alabama cases, representing plaintiffs that filed well before GC Advertising. All of those firms chose not to allege a nationwide damage class, making the inclusion of such a class less likely in any amended complaint. In fact, given the state-specific nature of the cases, it is entirely conceivable that, were the Panel to centralize the cases, the transferee judge could wind up addressing factually distinct classes on virtually distinct paths—exactly the same procedural posture the cases currently maintain. To grant GC Advertising's motion would be to encourage premature transfer motions and add more uncertainty to a situation already in flux.

Similarly, to the extent the *Cerven* and *Conway* complaints contain overlapping defendants, there are substantial factual differences between proving an antitrust violation on behalf of healthcare providers (*Conway*) and subscribers (*Cerven*). The providers in *Conway* will have to establish that a conspiracy among the BCBS insurers and BCBSA led to healthcare *providers* receiving lower payments than they would have in a properly functioning market. The subscribers in *Cerven*, by contrast, will have to establish that, as a result of the conspiracy among the BCBS insurers and BCBSA, *subscribers* paid supra-competitive prices for their healthcare.

Ultimately, the motion for transfer fails to demonstrate that such discovery would be sufficiently common, let alone so complex and time-consuming as to render this case "exceptional" under *In re Scotch Whiskey*, 299 F. Supp. at 544.

**III.   Centralization Will Not Promote Just And Efficient Litigation Of The Actions**

As shown below, centralization is inappropriate when there is minimal likelihood of inconsistent legal rulings because of a lack of overlapping classes; common legal issues alone do

10

not provide a basis for centralization. Previous Panels have determined that the creation of industry-wide MDLs does not promote just and efficient litigation. The Panel should continue to uphold that precedent in this case.

### a. There Is Minimal Likelihood Of Inconsistent Legal Rulings Because The Cases Lack Overlapping Classes

Given the uncertainty of whether there will be an overlapping class in the subscriber actions once a Consolidated Amended Complaint ("CAC") is filled in Alabama, and the lack of an overlapping class between the subscriber and healthcare provider actions, there is a minimal risk of inconsistent legal rulings, making centralization inappropriate. *See In re Medicare Fee Schedule Locality Litig.*, 560 F. Supp. 2d 1344, 1345 (J.P.M.L. 2008) (denying transfer where there were "distinctly separate classes"); *In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer "where the possibility of conflicting class determinations is minimal"); *In re Women's Clothing Antitrust Litig.*, 455 F. Supp. 1388, 1391 (J.P.M.L. 1978) (denying transfer where "the classes already certified or sought in each respective district do not overlap"). No CAC has been filed in Alabama, so it is premature to speculate what class(es) will ultimately exist. Moreover, the vast majority of the other classes in this case are distinct and consist of those who made payments to an individual, non-common BCBS insurer. These definitions make inconsistent obligations impossible; rulings holding BCBS-NC and BCBSA liable to the putative class in *Cerven* would not create obligations for BCBS-NC or BCBSA to distinct classes alleging distinct markets in *Morrissey*, the Alabama subscriber actions, or even the healthcare provider action in *Conway*.

GC Advertising has also warned that failure to transfer will create a "procedural morass."[6] *See* Br. at 14. But "[c]entralization is not a cure-all for every group of complicated cases." *In re Uponor, Inc., F1960 Plumbing Fittings Products Liability Litigation*, Order Denying Transder, MDL No. 2393 (J.P.M.L. Sept. 27, 2012) [D.E. 189]. Centralization would create a procedural and *substantive* quagmire, placing a burden on the court and its staff to address all of the disparate issues in the actions, particularly between the subscriber and healthcare provider classes. Centralization will not result in fewer and shorter hearings and briefs, but likely the opposite. The burden on the court would inevitability slow down each stage of the litigation with detrimental results, including: fading of key witnesses' memories due to the passage of time, increased costs to defendants (all of which, except BCBSA and the defendants in the provider action, are named in only one state), and delay in any remedy to the class. The existence of a plaintiff-side leadership structure and any efficiency provided from such a structure would not mitigate the needless creation of such an action.

### b. Purported Common Legal Issues Identified By GC Advertising Do Not Support Transferring Class Action Cases That Lack Common Factual Bases

Even the purported existence of similar legal allegations fails to overcome the lack of common facts among the cases. "Section 1407 does not, as a general rule, empower the Panel to

---

[6] GC Advertising's citations in support of transfer based on efficiency are misplaced because the cases differ greatly with the facts of the present matter. *In re AT&T*, 710 F. Supp. 2d at 1380 (involving only one defendant and multiple classes, not multiple defendants and multiple classes); *In re Pharmacy Ben. Managers*, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006) (alleging that pharmacy benefit managers conspired to fix prices with one another, presumably in the same market, not different markets like those that exist in this matter); *In re Metoprolol Succinate Patent Litig.*, 329 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004) (involving same two patents in each of the cases, a more substantial overlap than exists in this matter with different markets); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1379-80 (J.P.M.L. 2001) (encompassing cases all involving the same drug, not different classes affected in different markets); *In re European Rail Pass Antitrust Litig.*, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (transferring to a pre-existing MDL in S.D.N.Y. involving only travel agents, not multiple disparate classes in a new MDL unrelated to any other MDL); *In re Cygnus Telecommunications Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (involving only one plaintiff, not multiple disparate plaintiff classes); *In re Natural Res. Fund, Inc., Sec. Litig.*, 372 F. Supp. 1403, 1404-05 (J.P.M.L. 1974) (involving one common defendant, not multiple defendants); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (discussing whether pre-trial proceedings can be split between two courts, a proposal not at issue in this matter, and discussing the risk of conflicting classes, which is a premature issue in this matter).

transfer cases involving only common legal issues." *In re Teamster Car Hauler Prod. Liab. Litig.*, MDL No. 2339  2012 WL 1389636 (Mem), at *1  (J.P.M.L. Apr. 17, 2012); *see In re Pension Fund Class Action Litig.*, 360 F. Supp. 1400, 1401 (J.P.M.L. 1973) (denying transfer because "this litigation involve[s] predominately, if not entirely, questions of law").

That multiple courts may consider the legality of agreements among Blue Cross entities does not support an agreement for centralization:

> The presence of common issues of law has no effect on transfer: it is neither a necessary nor sufficient condition for transfer.  Where the issues in a case are primarily legal in nature, even though some fact issues may exist, the Panel is nearly certain to conclude that transfer is not appropriate. In one case, the Panel observed: "Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." ***If the actions present common factual issues that would be disposed of by a single legal issue, the Panel is likely to determine not to order transfers.***

Multidistrict Litig. Manual § 5:4 (2012 ed.) (emphasis added) (quoting *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (citations omitted)).

For the damages classes, discovery into the relevant market—the lens through which each action is viewed—will involve the state-wide, metropolitan, micropolitan, and county levels in which the particular BCBS insurer operates.  Discovery into activity outside such markets may be tangential, making overlapping legal theories the only common thread among the cases.  The later filed class action in *GC Advertising,* not even the operative complaint in Alabama, does not otherwise weave together the disparate facts and relevant markets to justify centralization.  Nor does the *Conway* health care provider complaint, involving completely different class members from the subscriber complaint, provide a thread to support centralization.

    c.   **The Panel Does Not Centralize Matters Merely Because They Involve The Same Industry**

13

The Panel has repeatedly declined to create MDLs based only on a common industry, such as healthcare, and should do the same here. *See In re Pfizer Inc. Mktg. & Sales Practices Litig.*, 657 F. Supp. 2d 1367, 1367-68 (J.P.M.L. 2009) (declining to create MDL for claims related to a number of Pfizer product lines); *In re Hip & Knee Implant Mktg. Litig.*, 572 F. Supp. 2d 1379, 1380 (J.P.M.L. 2008) (declining to create a general hip and knee MDL); *In re Am. Home Prods. Corp "Released Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978) (declining to create MDL for "industry practices with respect to released value shipments").

### IV. Centralization Will Not Further The Convenience Of The Parties And Witnesses

Centralization will not further the convenience of the parties and witnesses. Presently, all of the actions are pending in the federal court of the state: (1) of the damages class sought; (2) of the plaintiffs' residence; (3) of the territories of the respective BCBS insurer; and (4) of the state where discovery involving the respective BCBS insurer will occur. The discovery sought in those actions will largely be state-specific, with little or no overlap across actions. There may be some limited overlap with respect to discovery from BCBSA, but even there, such discovery is likely to have significant focus on the relation between BCBSA and the state-specific insurer and the damages of either the subscriber or healthcare provider class.

For example, in taking depositions, attorneys representing classes harmed by BCBS-AL and BCBS-TN will have little interest in the majority of BCBS-NC deponents' testimony. To the extent BCBSA witness depositions are of common interest, they can be coordinated among the small number of parties involved. Moreover, in many instances, such BCBSA depositions will likely be specific to BCBSA's relationship with the BCBS insurer at issue in only one particular case. More inefficiency than efficiency will be gained from having all plaintiffs' counsel in attendance or cross-noticed for depositions. GC Advertising's citations in support of

centralization based on convenience of the parties are not controlling because they are factually distinct from the present matter.[7]

To the extent common background material is covered in a deposition, there are less intrusive means of sharing that discovery (discussed *infra*) than centralizing. The same principles hold true with document production, as common background documents can be shared without inundating all counsel with a massive dump of documents irrelevant to their actions. To centralize these actions would serve the convenience of neither the parties nor the witnesses.

## V. Procedures Short Of Centralization Will Ensure Judicial Efficiency

As the legislative history of section 1407 illustrates, "transfer is to be ordered only where *significant* economy and efficiency in judicial administration may be obtained" thereby. H. Rep. 1130, 90th Cong., 1st Sess. (Feb. 28, 1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900 (emphasis added). With so few cases pending centralization, "the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *In re Scotch Whiskey*, 299 F. Supp. at 544.

"Suitable alternatives to Section 1407 are available in order to minimize the possibility of duplicative discovery." *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980). Where there are only a limited number of cases, "informal cooperation among the

---

[7] *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. Aug. 6, 2010) (involving same patent in all eleven actions, not different classes in different markets with different defendants); *In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Products Liab. Litig.*, 598 F. Supp. 2d 1372, 1373 (J.P.M.L. Feb. 10, 2009) (involving a common engine defect from the same manufacturer, not different insurance products from different defendants in different markets); *In re Polychloroprene Rubber (CR) Antitrust Litig.*, 360 F. Supp. 2d 1348, 1350 (J.P.M.L. 2005) (transferring because the majority of the actions involved the same market, polychloroprene rubber, and the matters were related to another pending MDL, unlike the present matter that involves different markets and is unrelated to any MDL); *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740 (J.P.M.L. 1984) (concerning "identical or substantially similar annuities issued by insurance companies controlled by" one company, not different insurance policies offered by different defendants).

involved attorneys and courts is both practicable and preferable." *In re Northeast Contaminated Beef Prods. Liab. Litig.*, 2012 WL 1389790, at *1 (J.P.M.L. Apr. 17, 2012); *see also In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011); *In re Chromated Copper Arsenate (CCA) Treated Wood Prods. Liab. Litig.*, 188 F. Supp. 2d 1380 (J.P.M.L. 2002). The parties may avoid duplicative discovery through a variety of readily available mechanisms that do not necessitate the creation of a centralized MDL proceeding, such as cross-noticing depositions and using the same productions of documents and discovery responses in various cases. *See In re Children's Pers. Care Prods. Liab. Lit.*, 655 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) (discussing a variety of informal coordination mechanisms); *In re Allen Compound Bow Patent Litig.*, 446 F. Supp. 248, 250 (J.P.M.L. 1978) (suggesting parties could coordinate discovery informally by cross-noticing depositions and sharing discovery responses); *In re Eli Lilly & Co.*, 446 F. Supp. at 244 (same).

Moreover, without centralizing actions, "judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts." *Manual for Complex Litigation (4th)* § 20.14 (2004). Such coordination would directly address concerns about duplicative discovery and pretrial motions, allow counsel to maximize efficiencies, and minimize duplicative or inconsistent rulings. *See* Br. at 9-11.

VI.   **If The Panel Decides To Centralize The Actions, The Most Appropriate Forum Is The Western District Of North Carolina Or The Northern District Of Alabama**

Plaintiffs believe centralization pursuant to section 1407 is unsupported in this case. Should the Panel nonetheless decide to centralize, Plaintiffs respectfully submit that the Hon. Richard Voorhees of the Western District of North Carolina or the Hon. R. David Proctor of the Northern District of Alabama are the most appropriate MDL venues and judges because they have experience successfully overseeing an MDL to completion. Judge Voorhees oversaw *In re*

16

*Polyester Staple Litigation* (MDL No. 1516) to completion and Judge Proctor oversaw *In re Total Body Formula Products Liability Litigation* (MDL No. 1985) to completion. Judge Mays in Tennessee currently has an MDL, *In re Regions Morgan Keegan Sec., Derivative & Employee Ret. Income Sec. Act (ERISA) Litig.* (MDL No. 2009). It does not appear that Judge Brady in Louisiana has previously had an MDL case.

## CONCLUSION

GC Advertising's motion for transfer should be denied. GC Advertising has failed to establish common questions of fact that justify centralizing the actions, especially in light of the abundance of effective and efficient alternatives to centralization. It has also failed to carry its burden that transfer will result in a more efficient litigation of the actions or inure to the convenience of the witnesses and the parties.

Dated: October 1, 2012

Respectfully submitted,
By: /s/ William A. Isaacson
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC 20015
Tel: 202-237-2727; Fax: 202-237-6131
Email: wisaacson@bsfllp.com

Larry S. McDevitt
David M. Wilkerson
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Tel: 828-258-2991; Fax: 828-255-0255
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: 202-540-7200; Fax: 202-540-7201
Email: mhausfeld@hausfeldllp.com

J. Michael Malone N.C.
HENDREN & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Tel: 919-573-1423; Fax: 919-420-0475
Email: mmalonelaw@aol.com

*Attorneys for Plaintiffs Kelli R. Cerven, Keith O. Cerven, Teresa M. Cerven, CFW Vending LLC, and SHGI Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 1st day of October, 2012, a copy of the foregoing Opposition to Motion for Transfer was electronically filed with the Judicial Panel on Multidistrict Litigation using the CM/ECF system, which will send notice of electronic filing to all parties of record.

By: /s/ William A. Isaacson
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC 20015
Tel: 202-237-2727; Fax: 202-237-6131
Email: wisaacson@bsfllp.com

**SERVED VIA CM/ECF**

Daniel A. Small
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW, Suite 500W
Washington, DC 20005
Tel: 202-408-4600; Fax: 202-408-4699
dsmall@cohenmilstein.com
*Plaintiffs Fred R. Richards and Richards and Sons Construction Co. Inc.*

Joe R. Whatley, Jr.
Whatley Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, AL 35203
Tel: 205-488-1200; Fax: 800-922-4851
jwhatley@whatleykallas.com
*Plaintiff Jerry R. Conway*

W. Gordon Ball
Ball & Scott
550 Main Street, Suite 600
Knoxville, TN 37902
Tel: 865-525-7028; Fax: 865-525-4679
gball@ballandscott.com
*Plaintiff Mary Morrissey*

Christopher T. Hellums
Pittman, Dutton & Hellums, P.C.
2001 Park Place Tower, Suite 1100
Birmingham, AL 35203
Tel: 205-322-8880; Fax: 205-328-2711
chrish@pittmandutton.com
*Plaintiffs Nicholas A. Layman and One Stop Environmental, LLC*

Eric L. Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000; Fax: 215-875-4604
ecramer@bm.net
*Plaintiffs Thomas A. Carder, Jr. and Industrial Sales & Service, LLC*

Tammy McClendon Stokes
Donaldson & Guin, LLC
505 20th St. North, Suite 100
Birmingham, AL 35203
Tel: 205-226-2282; Fax: 205-226-2357
tammys@dglawfirm.com
*Plaintiffs Chris Bajalieh and Consumer Financial Education Foundation of America, Inc.*

Daniel C. Hedlund
Gustafson Gluek PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: 612-333-8844; Fax: 612-339-6622
dhedlund@gustafsongluek.com
*Plaintiff American Motor Services Inc.*

Patrick W. Pendley
Pendley, Baudin & Coffin, L.L.P.
P.O. Drawer 71
Plaquemine, LA 70765
Tel: 225-687-6396; Fax: 225-687-6398
pwpendley@pbclawfirm.com
*Plaintiff Hilda Jarreau*

Daniel Edward Laytin
Kirland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000; Fax: 312-862-2200
daniel.layton@kirkland.com
*Defendant Blue Cross & Blue Shield Ass'n*

Cheri Denise Green
Brunini, Grantham, Grower & Hewes PLLC
P.O. Drawer 119
Jackson, MS 39201
Tel: 601-948-3101; Fax: 601-960-6902
cgreen@brunini.com
*Defendant Blue Cross & Blue Shield of Mississippi*

Edward S. Bloomberg
Phillips Lytle LLP
3400 HSBC Center
Buffalo, NY 14203-2887
Tel: 716-847-7096; Fax: 716-852-6100
ebloomberg@phillipslytle.com
*Defendant Excellus BlueCross BlueShield of New York*

James Louis Priester
Maynard, Cooper & Gale, P.C.
1901 6th Ave. North, Suite 2400
Birmingham, AL 35203
Tel: 205-254-1000; Fax: 205-254-1999
jpriester@maynardcooper.com
*Defendant Blue Cross & Blue Shield of Alabama*

Rafael Escalera-Rodriguez
Richards & Escalara
255 Ponce de Leon Avenue, 10th Floor
San Juan, Puerto Rico 00917
Tel: 787-777-8888; Fax: 787-765-4225
escalera@richardsescalera.com
*Defendant Triple-S Salud*

Kathleen T. Sooy
Crowell & Moring, LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202-624-2500; Fax: 202-628-5116
ksooy@crowell.com
*Defendants Blue Cross & Blue Shield of Kansas, Blue Cross & Blue Shield of Kansas City, Blue Cross & Blue Shield of Nebraska*

Craig A. Hoover
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel: 202-637-5694; Fax: 202-637-5910
craig.hoover@hoganlovells.com
*Defendants Anthem Blue Cross & Blue Shield of Connecticut, Anthem Blue Cross & Blue Shield of Indiana, Anthem Blue Cross & Blue Shield of New Hampshire, Anthem Blue Cross & Blue Shield of Virginia Inc, Anthem Blue Cross & Shield of Missouri, Anthem Health Plans of Maine, Anthem Inc., Blue Cross & Blue Shield of Florida, Blue Cross & Blue Shield of Georgia, Blue Cross & Blue Shield of Louisiana, Blue Cross & Blue Shield of Massachusetts, Blue Cross & Blue Shield of Minnesota, Blue Cross & Blue Shield of North Carolina, Blue Cross & Blue Shield of South Carolina, Blue Cross & Blue Shield of Tennessee, Hawaii Medical Service Assoc, Horizon Blue Cross & Blue Shield of New Jersey, Wellmark Inc.,*

*Wellmark of South Dakota Inc., Blue Cross Blue Shield of Tennessee, Inc., Blue Cross & Blue Shield of North Carolina*

Gwendolyn Cecelia Payton
Lane Powell PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Tel: 206-223-7000; Fax: 206-223-7107
paytong@lanepowell.com
*Defendant Premera Blue Cross of Alaska*

Brian Norman
Shamoun & Norman, LLP
1755 Wittington Place, Suite 200, LB 25
Dallas, TX 75234
Tel: 214-987-1745; Fax: 214-521-9033
bkn@snlegal.com
*Defendant CareFirst Blue Cross & Blue Shield of Maryland*

Kimberly R. West
Wallace, Jordan, Ratliff & Brandt, LLC
P.O. Box 530910
Birmingham, AL 35253
Tel: 205-874-0352; Fax: 205-871-7534
kwest@wallacejordan.com
*Defendants Blue Cross & Blue Shield of New Mexico, Blue Cross & Blue Shield of Oklahoma, Blue Cross & Blue Shield of Texas, Health Care Service Corp.*

John DeQuedville Briggs
Axinn Veltrop & Harkrider LLP
950 F Street NW
Washington, DC 20004
Tel: 202-912-4700; Fax: 202-912-4701
jdb@avhlaw.com
*Defendant Independence Blue Cross*

Todd Michael Stenerson
Hunton & Williams LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Tel: 202-955-1500; Fax: 202-778-2201
tstenerson@hunton.com

*Defendant Blue Cross & Blue Shield of Michigan*

Charles Andrew O'Brien III
Blue Cross & Blue Shield of Louisiana
5525 Reitz Ave.
Baton Rouge, LA 70809
Tel: 225-295-2454; Fax: 225-297-2760
Andy.O'Brien@bcbsla.com
*Defendant Louisiana Health Service & Indemnity Co.*

Michael A. Naranjo
Foley & Lardner LLP
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: 415-984-9847; Fax: 415-434-4507
mnaranjo@foley.com
*Defendant Arkansas Blue Cross & Blue Shield*

**SERVED VIA FIRST CLASS MAIL**

Blue Cross of Northeastern Pennsylvania
70 North Main Street
Wilkes-Barre, PA 18711

Highmark Inc.
Fifth Avenue Place
120 Fifth Avenue
Pittsburgh, PA 15222-3099

Highmark Blue Cross Blue Shield West Virginia
P.O. Box 7026
Wheeling, WV 26003

Blue Cross & Blue Shield of Rhode Island
500 Exchange Street
Providence, RI 02903

Blue Cross & Blue Shield of Vermont
P.O. Box 186
Montpelier, VT 05601