BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| In re: Blue Cross Blue Shield Antitrust Litigation | ) ) ) ) ) | MDL Docket No. 2406 |

**LIFEWATCH'S OPPOSITION TO MOTION FOR TRANSFER
AND NOTICE OF RELATED ACTION**

I. **INTRODUCTION**

LifeWatch Services, Inc. ("LifeWatch") responds to the November 2, 2012 "Notice of Related Action" designating LifeWatch's action in the Eastern District of Pennsylvania as a "tag-along" action subject to transfer to MDL No. 2406. LifeWatch opposes The Blue Cross Blue Shield Association's ("BCBSA") Notice of Related Action. Transfer of LifeWatch's action to the MDL is inappropriate under 28 U.S.C. § 1407 for four distinct reasons:

*First*, LifeWatch's two-count, single-plaintiff action is wholly different from the other class action complaints pending centralization in MDL No. 2406. Indeed, if one compares the complaints side by side, LifeWatch's 106 paragraph complaint shares only 13 paragraphs that contain any common allegations with the other complaints, and 6 of those merely identify certain common defendants. Thus, nearly 90% of the allegations in LifeWatch's complaint are completely different than the allegations presented by the other cases raised in this MDL matter.

Unlike every other case in this MDL proceeding, LifeWatch's complaint alleges a conspiracy between Blue Cross plans to adopt a uniform set of medical policies that deny coverage for life-saving technologies provided by LifeWatch and others. In contrast, all of the class action complaints pending centralization do not even address the Blue Cross plans' medical coverage policies. Additionally, LifeWatch alleges a different product market, different

11679917.6

anticompetitive conduct and different anticompetitive effects as compared to the other complaints that are the subject of this MDL proceeding.

LifeWatch's complaint alleges that one of the named defendants, Highmark, has tortiously interfered with Highmark's relationships with thousands of physicians and their patients. No other complaint contains a similar claim of tortious interference. The fact that LifeWatch's complaint is so unlike the other actions pending centralization alone justifies denial of the transfer request.

*Second*, because of the important differences in claims and factual allegations described above, LifeWatch's claims are not at all likely to be subject to discovery which significantly overlaps with the claims asserted by the class action plaintiffs. This is another reason to deny BCBSA's application to transfer LifeWatch's action to the MDL.

*Third,* the Panel also should reject BCBSA's application to transfer LifeWatch's action to the MDL because such transfer will not convenience the parties or the prospective witnesses. BCBSA cannot show sufficient benefits of streamlined discovery to be gained that would justify transferring LifeWatch's Pennsylvania-centric action to a MDL court in Alabama.

*Finally*, the Panel also should exclude LifeWatch's single-plaintiff action from the MDL because there is a minimal likelihood of inconsistent rulings if LifeWatch's action remains independent. Additionally, there are other, more efficient methods than transfer to coordinate (the very limited overlapping) discovery between LifeWatch's action and the class actions before the Panel. Both of these reasons also support a Panel finding that transfer will not promote just and efficient conduct of the litigation as required by 28 U.S.C. § 1407(a).

For these reasons, the Panel should reject BCBSA's Notice of Related Action and exclude LifeWatch's unique single-plaintiff action from MDL No. 2406.

## II. BACKGROUND

On September 10, 2012, LifeWatch filed a two-count complaint in the Eastern District of Pennsylvania against defendants Highmark Inc., ("Highmark"), Blue Cross and Blue Shield Association ("BCBSA"), Horizon Blue Cross Blue Shield of New Jersey, Blue Cross Blue Shield of South Carolina, and Blue Cross Blue Shield of Minnesota, alleging that (1) the defendants had engaged in a conspiracy to adopt a uniform set of medical policies that deny coverage for life-saving technologies provided by LifeWatch and others, and (2) defendant Highmark alone had tortiously interfered with LifeWatch's relationships with thousands of physicians and their patients who are Blue Cross Plan subscribers.[1]

On November 2, 2012, with little advance warning, BCBSA filed a Notice of Related Action (MDL Dkt # 96) with the Panel that designated LifeWatch's action as a purported "tag-along" case. LifeWatch opposes at the threshold its designation as a tag-along action and offers this response.[2]

## III. ARGUMENT

### A. The Panel Should Deny Transfer Because There Is No Core Of Common Facts In Dispute

The Panel should reject BCBSA's Notice of Related Action for the fundamental reason that there is not a "core of common facts" between LifeWatch's single-plaintiff action, and the multiple putative class actions that are before the Panel.

---

[1] *LifeWatch Services, Inc. v. Highmark, Inc., et al,* (E.D. Pa., Case No. 2:12-cv-00636). LifeWatch has stipulated to extend the defendants' time to respond to the Complaint until December 21, 2012.

[2] LifeWatch respectfully reserves its right to move to vacate any Conditional Transfer Order assigning LifeWatch to MDL No. 2406 should the Panel issue such an Order. *See* J.PM.L. Rule 7.1(f).

3

In previous cases, the Panel has consistently declined to transfer actions that contain claims that are markedly factually dissimilar from the other cases under consideration for centralization in an MDL court. *See, e.g., In re AT&T Mobility Wireless Data Svcs Sales Tax Litigation*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (excluding from MDL an action involving state law claims against the common defendant that were "distinct enough for exclusion from the centralized proceedings"); *In re Zicam Cold Remedy Marketing & Sales Practices Litigation*, 655 F. Supp. 2d 1371,1373 (J.P.M.L. 2009) (excluding from MDL one action against the common defendant that was "unlike the other actions in th[e] docket").

LifeWatch's single-plaintiff action in the Eastern District of Pennsylvania is completely unlike the other actions before the Panel, and LifeWatch's action should not be transferred.

### 1. LifeWatch Alleges A Different Conspiracy Than Those Asserted In Any Class Action Before The Panel

LifeWatch has alleged an entirely different conspiracy than is alleged in the other actions before the Panel. LifeWatch has pled that the Blue Cross plans have engaged in a conspiracy to limit competition with each other with regard to the medical services they cover by collectively deciding on their medical policies governing such services. *LifeWatch* Complaint ¶¶ 37-47. LifeWatch further alleges that the conspiracy has included implementation of a medical policy to deny coverage for life-saving technologies provided by LifeWatch and others to individuals insured by the defendants' health insurance plans. *Id.* at ¶¶ 2, 62-69. LifeWatch offers a mobile cardiac outpatient telemetry ("MCOT") device which provides potentially lifesaving information about patients with serious heart problems. *Id.* at ¶¶ 3, 48-60. The Complaint further alleges that Highmark, which recognizes the value of the MCOT services and pays for MCOT services for its own members, nonetheless has enforced the conspiracy with the other Blue Cross plans

4

by refusing to pay for claims for LifeWatch's MCOT services for members of other Blue Cross Plans. *Id* at ¶¶ 5, 70-73.

Thus, LifeWatch's complaint is brought by a provider of innovative medical technology, primarily alleging a conspiracy with regard to the payments for that technology.

In contrast, all of the other actions presently before the Panel, save one, purport to represent a prospective class of BCBS plan subscribers who seek to recover for allegedly inflated premiums resulting from a conspiracy between the Blue Cross plans to divide and allocate the market in which they sell health insurance. (*See generally Cerven, Morrissey*, and similar Complaints.)  The other action pending centralization is a prospective class action brought on behalf of BCBS in-network healthcare providers against BCBSA and Blue Cross plans that also alleges a conspiracy between the Blue Cross plans to enter into and enforce illicit market allocation agreements that force members of the prospective class to accept fewer patients, lower rates, and unfavorable terms for their services as a result of the BCBS plans to divide and allocate the market. (*See generally, Conway* Complaint, and *Id.* ¶¶ 19, 128-32.).  None of these other actions in any way involve the Blue Cross plans' medical policies or a conspiracy to deny coverage for particular medical services as does the LifeWatch complaint.

### 2. **LifeWatch's Complaint Asserts Unique Anticompetitive Effects**

LifeWatch's Sherman Act claim also alleges different anticompetitive effects than the other actions before the Panel.  Both the *Cerven/Morrissey* subscriber actions and the *Conway* health care provider action assert that BCBSA and its member plans have entered into illegal market allocation agreements. (*Cerven* Complaint ¶ 150(b); *Conway* Complaint ¶ 129.) According to these class action complaints, BCBS members then illicitly exploit their resulting market power by charging their subscribers "artificially inflated, unreasonable, and supra-competitive" premiums (*Cerven* Complaint ¶ 150(d)) or "by increasing prices for individual and

5

small group health insurance and by decreasing the rates paid to healthcare providers in violation of Section 1 of the Sherman Act." (*Conway* Complaint ¶ 129.)

In contrast, LifeWatch asserts that it has been harmed because the Blue Cross plans effectively barred LifeWatch from providing services to their subscribers. In particular, LifeWatch has alleged that the anticompetitive effects of the conspiracy include: (a) a reduction in "the quality of cardiac monitoring and deprives patients in the relevant market the benefit of quality competition"; (b) it "reduces the output of MCOT services in the relevant market"; and (c) it "substantially inhibits research and development, innovation and future competition to improve the quality of MCOT services" (*LifeWatch* Complaint ¶ 89(a)-(c)). The LifeWatch complaint further alleges that the conspiracy has caused substantial monetary damages to LifeWatch as a result of denied and withheld payments and foregone physician orders. *Id*. at ¶ 90. None of these anticompetitive effects are alleged in any of the subject cases.

Nowhere does LifeWatch allege that the Blue Cross member defendants have illicitly inflated their subscribers' premiums or decreased payment rates to their providers.

These key differences weigh heavily against transfer. *See In re Teamster Car Hauler Products Liability Litigation*, 856 F. Supp. 2d 1343 (J.P.M.L. 2012) (denying transfer of multiple actions against same defendant where "defects alleged and injuries suffered var[ied] among the[] actions, and various additional defendants [were] named based on different theories of liability").

### 3. LifeWatch's Tortious Interference Claim Is Unlike Any Other Claim In Any Other Action Before The Panel

In addition, LifeWatch has pled a tortious interference claim against Pennsylvania-based Highmark that is unlike any claim in any of the other actions before the Panel for possible inclusion in MDL No. 2406. This is precisely the kind of difference that led the Panel to exclude the *Johnson* case from the prospective MDL in *In re AT&T Mobility Wireless Data Svcs Sales*

6

*Tax Litigation*, and the same should be true in this case. *See* 710 F. Supp. 2d at 1380 (J.P.M.L. 2010) (excluding from MDL an action involving distinct state law claims against the common defendant).

In sum, as in *AT&T Mobility*, *Zicam*, and *Teamster*, LifeWatch's claims against BCBSA and five BCBS members are unique—"unlike the others in the docket"—and LifeWatch's single-plaintiff action should not be centralized with the *Cerven*/*Morrissey* and *Conway* class actions for pretrial proceedings.

### B. Discovery Is Unlikely To Significantly Overlap

Because of the important differences in claims and factual allegations set forth above, the vast majority of discovery in connection with LifeWatch's claims is not likely to overlap with discovery of the claims asserted by the class action plaintiffs.[3]  A lack of potential common discovery on a sufficient number of common issues is a principal basis to deny transfer.  *In re Rite Aid Corp. Wage and Hour Employment Practices Litigation*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (denying transfer where discovery would likely "require an individualized, factual inquiry" into the various plaintiffs' claims and common questions of fact were not sufficiently numerous to justify transfer); see also *In re Harmony Loan Company, Inc., Securities Litigation*, 372 F. Supp. 1406, 1406-07 (J.P.M.L. 1974) (denying transfer where actions shared "many common parties" but sought to protect "markedly different interests" and requested "different relief").

### 1. LifeWatch's Prospective Discovery Will Focus On MCOT Services, The BCBS Members' Conspiracy To Deny Coverage For Such

---

[3] As discussed below, to the extent that there are a limited number of common issues between the LifeWatch case and the other actions pending centralization that may involve overlapping discovery, such issues can be addressed via coordination and cooperation of the parties and the courts to those actions.

### Services, And The Resulting Harm To LifeWatch And The MCOT Services Market

LifeWatch's prospective discovery in support of its antitrust claims will focus on issues which are completely unrelated to the other subject actions. The discovery will concern, at first, the "medical coverage" conspiracy that is at the heart of LifeWatch's complaint. This will require investigation of the BCBSA Medical Policy Panel, including depositions of Blue Cross plans' representatives to the Panel and the Panel's staff. (*See id*. ¶¶ 40-41.) LifeWatch's discovery will also include investigation of BCBSA's enforcement of medical policies; Blue Cross plans' often word-for-word adoption of BCBSA medical policies, and the reduction of Blue Cross plans' medical policy staffs as medical policy decision-making was centralized at BCBSA. (*See id*. ¶¶ 42-47.) The other primary area of discovery will involve the effects of the Defendants' actions on the availability of MCOT services. *LifeWatch* Complaint ¶¶ 3, 5, 6, 14, 16, 18, 20, and 86-89.

In response, Defendants will likely seek discovery regarding LifeWatch's own actions, and the impact of the denials of coverage on LifeWatch, including LifeWatch's damages. See *LifeWatch* Complaint ¶¶ 87-89.

None of this discovery will be conducted in any of the other subject cases.

### C.    Transfer Will Not Serve The Convenience Of The Parties Or The Witnesses

The Panel also should reject BCBSA's application to transfer LifeWatch's action to the MDL because such transfer will not serve the convenience of the parties or the prospective witnesses. Of course, convenience of the parties and witnesses is one of the primary factors to consider when evaluating a motion to transfer. 28 U.S.C. § 1407(a) (stating "transfers shall be made by the judicial panel…upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses…."); *In re Brandywine Associates Antitrust*

*Litigation and Mortgage Foreclosure Litigation*, 407 F. Supp. 236, 237-38 (J.P.M.L. 1976) (denying transfer of multiple antitrust conspiracy actions where movant had not shown reasons sufficient to "overcome the inconvenience to the litigants and their witnesses" imposed by transfer).

Transfer would certainly inconvenience LifeWatch.  First, it would deprive LifeWatch of its right to its valid chosen forum.  Second, it would significantly increase LifeWatch's litigation expenses by forcing it to retain local counsel in Alabama and incur additional travel and other expenses.

Transfer would also inconvenience the vast majority of likely witnesses in this case. Highmark a Pennsylvania corporation with its principal place of business in Pittsburgh, is the principal antitrust defendant in this action.  The Complaint alleges that Highmark has denied the vast majority of MCOT claims at issue in this litigation, and that Highmark acted as the instrumentality of the conspiracy.  (*LifeWatch* Complaint ¶¶ 5, 9-11, 90(a)-(c).)  Moreover, Highmark is the sole defendant named in LifeWatch's tortious interference claim.  (*Id*. ¶¶ 100-104.)

Therefore, unless these cases were consolidated in Pennsylvania, the inclusion of the *LifeWatch* case with the other subject cases in one consolidated proceeding will add significant inconvenience, not only to LifeWatch, but to the witnesses.[4]

### D.    Transfer Will Not Promote Just And Efficient Conduct Of The Litigation

The Panel also should exclude LifeWatch's action from the MDL proceedings because there is a minimal likelihood of inconsistent rulings if LifeWatch's action remains independent.

---

[4] If, as appears likely, consolidation occurs in Birmingham, Alabama, it is even more obvious that this would not serve the convenience of the parties in the *LifeWatch* case.  Blue Cross Blue Shield of Alabama is not a defendant in the *LifeWatch* case, and there is no prospect that any Alabama witnesses are likely to play a role in the *LifeWatch* case.

11679917.6

Moreover, there are other, more efficient, methods to coordinate discovery between LifeWatch's action and the class actions before the Panel. Both of these reasons support a finding that transfer will not promote "just and efficient conduct of the litigation" as required by 28 U.S.C. § 1407(a).

Given the very different issues in the *LifeWatch* case, the likelihood of inconsistent rulings seems remote. While there are a few overlapping issues regarding the licensing agreements between BCBSA and the various Blue Cross Plans, they are not critical to the resolution of the *LifeWatch* case, which depends primarily on allegations of a conspiracy with regard to payment for claims, not the sale of health insurance. As a result, decisions regarding the claims in the other subject actions are unlikely to have a significant impact on the *LifeWatch* case.

To the contrary, including the unique claims and discovery requirements of the LifeWatch case in the MDL would only increase the already large burden on the MDL court. This could reduce efficiency and cause discovery and other pretrial events to bog down. Such consequences are precisely contrary to the purpose of centralizing cases in an MDL: to "ensure that pretrial proceedings are conducted in a manner leading to the just ***and expeditious*** resolution of these actions to the overall benefits of the parties." *In re AT&T Mobility*, 710 F. Supp. 2d at 1380.

Moreover, to the extent there are any minimal efficiencies in discovery to be gained by transfer, such efficiencies can be achieved as well or better via coordination and cooperation of the parties and the courts, without creating a procedural and substantive quagmire by transferring an unrelated action to an MDL court. *See In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying transfer and describing

10

alternative measures for avoiding duplicative discovery); *see also Manual for Complex Litigation, Fourth* § 20.14 (2004) (describing procedures for coordination between courts to avoid duplicative discovery); *Id*. §§ 11.423, 11.443, 11.452, 11.455, and 11.464 (outlining procedures to save time and expense in discovery and coordinate discovery between courts).

For example, the Panel has previously suggested in place of transfer that "notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action," or "the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions." *In re Eli Lilly*, 446 F. Supp. at 244. Either or both of these alternatives may serve to mitigate any duplicative discovery between LifeWatch's action and the prospective class actions also before the Panel. This would be far more efficient than combining LifeWatch's unique single-plaintiff action in an MDL with several class actions with which it shares little in common.

The Panel has frequently denied applications for transfer in favor of coordination where the actions were substantially different. *See, e.g., In re Rite Aid,* 655 F. Supp. at 1377 (denying transfer and directing parties to "avail themselves of alternatives to transfer that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings"); *In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Stds Act Litigation*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (same); *In re Insulin Manufacturing Antitrust Litigation*, 487 F. Supp. at 1361 (denying transfer and observing that coordination between the parties and the district courts "suitable alternatives to transfer…available in order to minimize the possibility of" both "duplicative discovery" and "conflicting pretrial rulings"); *In re Raymond Lee Org. Inc. Securities Litigation*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978) (denying transfer in favor of coordination between the parties and non-MDL courts).

11

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Panel should exclude LifeWatch's Pennsylvania-centric, single-plaintiff antitrust and tortious interference action from MDL No. 2406.

Dated: November 19, 2012

By: <u>       /s/ Lara Fetsco Phillip            </u>

Michael J. McCarrie
PA I.D. # 57671
Artz Health Law
Centre Square - West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102
Office: 267-886-1852
Fax: 215-735-1714
mjm@artzhealthlaw.com

and

Charles I. Artz
PA I.D. #55747
Artz Health Law
200 North Third Street, Suite 12-B
Harrisburg, PA 17101
Phone: (717) 238-9905
cia@artzhealthlaw.com

David A. Ettinger (P26537)
Peter E. Boivin (P62043)
Lara Fetsco Phillip (P67353)
Honigman Miller Schwartz & Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465-7368 (p)
dettinger@honigman.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November, 2012, a copy of the foregoing pleading was electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system which will send notice of electronic filing to all parties of record.

/s/ Lara Fetsco Phillip
LARA FETSCO PHILLIP

11679917.6