BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re* **Blue Cross Blue Shield Antitrust Litigation**. | MDL No. 2406 |

**BCBSA'S SUPPLEMENTAL INFORMATION AND REPLY TO LIFEWATCH'S OPPOSITION TO THE MOTION TO TRANSFER**

The suit by LifeWatch Services, Inc. is one of several pending actions that allege that Blue Cross & Blue Shield Association and its 38 member plans, through its license agreements, have conspired to illegally restrain trade in the market for commercial health insurance. LifeWatch's suit shares factual allegations with the actions proposed for an MDL. To promote just and efficient conduct, LifeWatch's suit should be included in that MDL. *See* J.P.M.L. Rule 1.1(h).

**Background**

Between February and November 2012, plaintiffs have filed more than 20 suits across the United States that challenge BCBSA's longstanding practice of licensing the exclusive right to use the Blue Cross and Blue Shield in a specified service area to its member Plans. *See* Exhibit 1. These plaintiffs allege that through the licensing agreements with BCBSA, the Blues conspired to divide the health-insurance market in violation of the antitrust laws. As a result of that conspiracy, plaintiffs say, subscribers paid inflated premiums and providers received decreased rates. One of the plaintiffs in those suits moved the Judicial Panel on Multidistrict Litigation to transfer and centralize these suits in the Northern District of Alabama for coordinated pretrial proceedings under 28 U.S.C. § 1407. *See In re Blue Cross Blue Shield Antitrust Litig.,* MDL No. 2406.

In mid-September, LifeWatch, a provider of medical-devices and related services, sued BCBSA and several Blue Plans, likewise alleging that BCBSA's licensing agreements are a de facto

conspiracy by the Blues to allocate the market for health insurance in violation of the Sherman Act. (*LifeWatch* Compl. ¶¶ 1, 33, 33(a)-(d), 47, 92-98.) As a result of the conspiracy, LifeWatch says that Blue Cross Plans deny coverage for some of its medical devices that Blue Cross Plans otherwise would cover. (*Id.* ¶ 94.) (Blue Cross does cover other LifeWatch products. (*See, e.g., id.* ¶ 72.).)

In early November, BCBSA notified the Panel that *LifeWatch* was related to the several actions proposed for MDL centralization. (Dkt. No. 96.) Now, to keep its suit out of centralized proceedings and force BCBSA and the other defendants to litigate the same issues twice, LifeWatch argues that its suit should not be transferred to the MDL. (Opp'n to Transfer Mot., Dkt. No. 114.)

## Argument

A. **LifeWatch's suit, like the other antitrust actions pending transfer, alleges that BCBSA's license agreements amount to a conspiracy to divide the market for health insurance.**

Like the other plaintiffs in these cases, LifeWatch alleges that (1) BCBSA licenses the Blue Marks in geographically-exclusive service areas; (2) those license agreements are in essence a "conspiracy"; and (3) that conspiracy "eliminates competition." (*LifeWatch* Compl. ¶ 1; *see also id.* ¶ 33.) And just like the other plaintiffs, LifeWatch claims that BCBSA's license agreements violate the antitrust laws. (*Id.* ¶¶ 92-98.) Accordingly, ordering transfer of this antitrust suit fits comfortably within the line of precedent where the Panel routinely centralizes actions under the Sherman Act to recover for injuries sustained as a result of an alleged conspiracy to allocate markets.[1]

---

[1] *See, e.g., In re Packaged Ice Antitrust Litig.,* 560 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2008) (centralizing actions alleging conspiracy to allocate U.S. market for packaged ice); *In re Marine Hose Antitrust Litig. (No. II),* 531 F. Supp. 2d 1381, 1382 (J.P.M.L. 2008) (centralizing actions alleging global conspiracy to allocate marine-hose market); *In re Polychloroprene Rubber (CR) Antitrust Litig.,* 360 F. Supp. 2d 1348, 1350 (J.P.M.L. 2005) (centralizing actions alleging allocation of polychloroprene rubber market); *In re Cotton Yarn Antitrust Litig.,* 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (centralizing actions alleging conspiracy across the United States to allocate the cotton-yarn market); *see also In re Int'l House of Pancakes Franchise Litig.*, 343 F. Supp. 948, 950 (J.P.M.L. 1972) (centralization of antitrust actions was appropriate even though "two different franchises are involved," because "the common defendants, the similarity of operating procedures and the possible overlap in

Despite the overlap between the factual allegations and legal claims between its case and the other cases challenging BCBSA's license agreements, LifeWatch argues that the requirement under § 1407 that the actions share common questions of fact is not met here. (Opp'n 3-7.) But none of the six arguments that they raise has any support under this Panel's precedent:

**First**, Lifewatch insists that that its exclusive-service-area conspiracy allegations are "not critical" to its case and, therefore, its suit does not share a "core" of common facts with the other cases. (Opp'n 3, 10.) But a "core" of common facts "critical" to a case is not what § 1407 requires. Transfer under § 1407 requires that the actions share common questions of fact, nothing more. 28 U.S.C. § 1407(a). There is no "predominance" requirement. *See, e.g.*, David F. Herr, *Multidistrict Litigation Manual* § 5:44. Indeed, the Panel has consistently noted that § 1407 does not require a complete identity or even a majority of common factual issues. *See, e.g., In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008); *In re Travel Agent Comm'n Antitrust Litig.,* 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003).[2]

**Second**, LifeWatch opposes consolidation because the conspiracy and the anticompetitive effects it alleges are limited: It alleges a conspiracy through the license agreements to deny coverage of certain medical devices.[3] (Opp'n 4-6.) But alleging a narrower subset of the global conspiracy to

---

defendants' supervisory personnel are certain to produce at least some common areas of discovery which would benefit from assignment to a single judge.").

[2] In any event, LifeWatch's assertion that its attack on BCBSA's licenses is not "critical" is difficult to square with its own complaint, which alleges that the license agreements *are* the conspiracy. (*See, e.g.,* Compl. ¶ 33; *see also id.* at ¶¶ 8, 21, 24 (naming BCBSA—the licensor—and every Blue Plan licensee as a defendant or unnamed coconspirator).)

[3] LifeWatch cites *In re Teamster Car Hauler Products Liability Litigation,* 856 F. Supp. 2d 1343 (J.P.M.L. 2012) and *In re Zicam Cold Remedy Marketing & Sales Practice Litigation,* 655 F. Supp. 2d 1371 (J.P.M.L. 2009). (Opp'n 4, 6.) Neither case applies here. In *Teamster,* the Panel refused to order centralization because the suits involved only a common legal issue; section 1407 "does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." *Id.* at 1343. In *Zicam,* one action was excluded because that action's factual issues were not encompassed *at all* in the other suits. *Id.* at 1373.

allocate the insurance market puts LifeWatch's conspiracy *within* the conspiracy alleged by the other plaintiffs, not outside it. *In re Cuisinart Food Processor Antitrust Litigation*, 506 F. Supp. 651 (J.P.M.L. 1981), is instructive. In that case, the defendant sought to consolidate eight actions that involved a conspiracy to fix the prices for food processors. One of the plaintiffs asked to be excluded because he alleged a more limited conspiracy—one limited to particular purchasers and focused on distinctly local factors. The Panel noted that the broader conspiracy "necessarily encompasses many aspects of the somewhat more limited" conspiracy alleged by the plaintiff and concluded that transfer was necessary to prevent duplicative discovery. *Id.* at 655; *see also In re Cement & Concrete Antitrust Litig.*, 465 F. Supp. 1299, 1300 (J.P.M.L. 1979) (centralizing statewide antitrust conspiracy suits with other antitrust actions because "national conspiracy alleged in some of the actions in the transferee district naturally encompasses the statewide conspiracy").

**Third,** LifeWatch emphasizes that it has alleged a different relevant market than in other cases. (Opp'n 1.) But the case law is clear that alleging a different market does not warrant exclusion from centralized proceedings. *In re Petrol. Prods. Antitrust Litig.*, 407 F. Supp. 249, 251 (J.P.M.L. 1976); *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991–92 (J.P.M.L. 1974). In those cases, the Panel ordered the inclusion of the plaintiffs' antitrust suit with other actions even though the plaintiffs alleged different markets; any unique factual issues related to those markets could be addressed by the transferee's judge's "broad discretion to design a pretrial program." *In re Petrol. Prods. Antitrust Litig.,* 407 F. Supp. at 251; *see In re Midwest Milk*, 379 F. Supp. at 991.

**Fourth**, LifeWatch asks to be excluded because it, unlike most other plaintiffs, is not a healthcare subscriber. (Opp'n 5.) Yet whether actions have facts in common does not turn on whether the parties operate on the same side of the market. Indeed, the Panel has repeatedly rejected the argument that transfer should not be ordered for cases where plaintiffs are on different receiving ends of conduct that allegedly violates the antitrust laws. *See, e.g., In re Cuisinart Food Processor Antitrust*

*Litig.*, 506 F. Supp. at 654-55 (centralizing retailers' claim with purchasers claims because both alleged that defendants conspired to fix prices for food processors); *In re Gen. Adjustment Bureau Antitrust Litig.*, 375 F. Supp. 1405, 1406-07 (J.P.M.L. 1974) (centralizing insurance purchasers' claims with insurance adjusters' claims because both actions involved alleged monopolistic position of defendant in the insurance market); *see also In re Wells Fargo Wage & Hour Emp. Practices Litig.*, 804 F. Supp. 2d 1382, 1383-84 (J.P.M.L. 2011) (centralizing suits brought by home-mortgage consultants, loan originators, and loan consultants); *see generally* Herr, *supra, Multidistrict Litigation Manual* § 5:43 (2012) (collecting cases transferring actions notwithstanding differences among the parties).

**Fifth,** LifeWatch argues that its inclusion of a state-law claim is enough to force the defendants to duplicate pretrial proceedings on the same issue. (Opp'n 6-7.) But the presence of a state-law claim is no impediment to § 1407 transfer. *In re Sugar Indus. Antitrust Litig. (East Coast),* 471 F. Supp. 1089, 1094 (J.P.M.L. 1979); *In re Uranium Indus. Antitrust Litig.,* 466 F. Supp. 958, 961-63 (J.P.M.L. 1979); *In re Petrol. Prods. Antitrust Litig.,* 393 F. Supp. 1091, 1092 (J.P.M.L. 1975). If the rule were as LifeWatch would have it, then any party could avoid MDL treatment by asserting a state-law claim or counterclaim. Unsurprisingly, the case relied upon by LifeWatch does not stand for the proposition that a state-law claim is enough to exclude a case from a prospective MDL. In *In re AT&T Mobility Wireless Data Services Sales Tax Litigation,* 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010), the plaintiff's case rested "entirely" on Texas state law and did not arise under any federal law.

**Sixth,** LifeWatch repeatedly calls attention to the fact that its claim is an individual claim and not a class action like the other plaintiffs' suits. (Opp'n 1, 3.) But the vehicle for LifeWatch's claim does not matter. *See, e.g., In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) (centralizing nine antitrust suits even though fewer than half were class actions); *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 610-11 (J.P.M.L. 1974) (centralizing two class actions and one

individual action). As the Panel has recognized, "it is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core." *In re Lipitor Antitrust Litig.,* MDL No. 2332, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012) (internal quotation omitted).

In the end, Lifewatch does not and cannot deny that its complaint contains many of the same factual allegations and same legal claim as in the other complaints at issue. Each suit alleges the same nationwide antitrust conspiracy and challenges the validity of the same license agreements between BCBSA and each of its member Plans. Section 1407 dictates centralization of actions that share such common issues.

**B.     Discovery in *LifeWatch* will overlap with the other suits pending transfer.**

LifeWatch argues that it should not be excluded from the MDL because it will seek significant discovery relating to certain medical devices. (Opp'n 7-8.) The Panel has rejected a similar argument before. Where, as here, there are common factual issues, plus a unique factual issue that can be dealt with under the transferee judge's discretion to manage the case, consolidation is the proper course. *See In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (tag-along action that might involve "substantial amount of discovery" on unique issue was left to transferee judge's discretion "to allow discovery on issues unique to any action to proceed concurrently with the common discovery"). The cases relied upon by LifeWatch for a different outcome present procedural circumstances that are not present here. In *In re Harmony Loan Co. Securities Litigation*, 372 F. Supp. 1406, 1407 (J.P.M.L. 1974), the three actions were at different stages of development—for example, discovery in one suit was already complete—and the actions contained "several issues not common." Similarly, in *In re Rite Aid Corp. Wage & Hour Employment Practices Litigation,* 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009), every case involved individualized

inquiries and state-law allegations and the Panel expected cooperation among counsel because plaintiffs in almost all the suits shared counsel.

C. **LifeWatch's alleged inconvenience does not outweigh the benefits to centralization.**

LifeWatch says that "[t]ransfer would certainly inconvenience LifeWatch." (Opp'n 9.) But this "worm's eye view" to inconvenience was rejected by the Panel long ago. *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968). "Of course it is to the interest of each plaintiff to have all the proceedings in his suit handled in his district. But the Panel must weigh the interests of all the plaintiffs and all the defendants and consider multiple litigation as a whole in the light of the purposes of the law." *Id.*; *accord In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Centralization may be "less than convenient for some parties," but where the benefits outweigh this nuisance, centralization is appropriate. *See In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, 804 F. Supp. 2d at 1384.

Here, there is no great inconvenience to LifeWatch: Centralized proceedings do not require the parties to attend all the proceedings in the transferee court and discovery of the parties can take place in the district where the parties reside. *See, e.g., In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506-07. And the use of lead counsel, liaison counsel, and steering committees can reduce the need for travel and related expenses. *See, e.g., In re Indus. Wine Contracts Sec. Litig.*, 386 F. Supp. 909, 911-12 (J.P.M.L. 1975). In contrast, BCBSA and the five other Blue licensees that LifeWatch has sued would be forced to litigate the same issues twice. *See* Certain Defendants' Resp. to Mot. to Transfer, at 7-9 (Dkt. No. 68).

D. **Centralization of *LifeWatch* promotes just and efficient conduct.**

Centralization will promote just and efficient conduct and eliminate duplicative discovery. Discovery in all 20-plus actions (as well as other prospective tag-along actions) will be substantially duplicative. For example, plaintiffs, including LifeWatch, will presumably seek discovery concerning

the history and context for BCBSA's license agreements. Without coordination, BCBSA must produce the same documents (and possibly raise the same objections) many times. In addition, the same BCBSA employees would be subjected to multiple depositions in multiple forums on the same issues. Where parties must depose the same witnesses, examine the same documents, and make the same (or similar) pretrial motions, the benefits of a single judge supervising these proceedings are "obvious." *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).

The cases relied upon by LifeWatch do not negate this conclusion because in those cases centralization would have served no purpose whatsoever. In *In re Raymond Lee Organization, Inc., Securities Litigation*, 446 F. Supp. 1266, 1267-68 (J.P.M.L. 1978), discovery in one of the three actions was already complete and nearing trial, leading the Panel to question whether there were "any benefits that could be gained by Section 1407 proceedings."[4] In *In re Tyson Foods, Inc. Meat Processing Facilities FLSA Litigation,* 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008), the actions were at different procedural stages and discovery was going to be specific to each location. And in *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation,* 446 F. Supp. 242, 244 (J.P.M.L. 1978), the Panel concluded that transfer of three patent disputes was unnecessary because under patent law, a resolution of one action would prove dispositive of the issue in the other two.

## Conclusion

In sum, *LifeWatch* alleges the same "conspiracy" by the Blues to allocate and divide the market for health insurance. Rather than force the *LifeWatch* defendants to double their pretrial efforts, this Panel should centralize the proceedings.

November 26, 2012                                            /s/ Daniel E. Laytin

---

[4] The same was true in *In re Insulin Manufacturing Antitrust Litigation,* 487 F. Supp. 1359, 1361 (J.P.M.L. 1980).

David J. Zott, P.C.
Daniel E. Laytin
Ian R. Conner
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telecopier: (312) 862-2200

*Counsel for Defendant Blue Cross &
Blue Shield Association*