BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Blue Cross Blue Shield Antitrust Litigation | ) ) ) ) )      MDL Docket No. 2406 |

## LIFEWATCH'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER

On December 12, 2012, the Panel issued a conditional transfer order, which included the following action: *LifeWatch Services, Inc. v. Highmark, Inc., et al,* (E.D. Pa., Case No. 2:12-cv-00636) (the "*LifeWatch* Action"). Pursuant to Rule 7.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff LifeWatch Services, Inc. ("LifeWatch") moves to vacate the conditional transfer order as to that action. In support of this Motion, LifeWatch relies upon its Brief filed with this Motion, the authorities cited therein and the exhibits attached thereto.

Dated: January 3, 2013

By: /s/ Lara Fetsco Phillip
David A. Ettinger (P26537)
Peter E. Boivin (P62043)
Lara Fetsco Phillip (P67353)
Honigman Miller Schwartz & Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465-7368 (p)
dettinger@honigman.com

Michael J. McCarrie
PA I.D. # 57671
Artz Health Law
Centre Square - West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102
Office: 267-886-1852
Fax: 215-735-1714
mjm@artzhealthlaw.com

11875096.1

                                              Charles I. Artz
                                              PA I.D. #55747
                                              Artz Health Law
                                              200 North Third Street, Suite 12-B
                                              Harrisburg, PA 17101
                                              Phone: (717) 238-9905
                                              cia@artzhealthlaw.com

11875096.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2013, a copy of the foregoing pleading was electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system which will send notice of electronic filing to all parties of record.

/s/ Lara Fetsco Phillip
LARA FETSCO PHILLIP

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| In re: Blue Cross Blue Shield Antitrust Litigation | ) ) ) ) ) |

MDL Docket No. 2406

### LIFEWATCH'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER

**I.   INTRODUCTION**

LifeWatch Services, Inc. ("LifeWatch") submits this brief in support of its motion to vacate the conditional transfer order (CTO-1) entered in MDL No. 2406 (the "CTO") conditionally transferring *LifeWatch Services, Inc. v. Highmark, Inc., et al*, (E.D. Pa., Case No. 2:12-cv-00636) (the "*LifeWatch* Action") to the Northern District of Alabama before Judge R. David Proctor.

The CTO should be vacated and the LifeWatch Action should not be transferred under 28 U.S.C. § 1407 for four distinct reasons:

*First*, LifeWatch's two-count, single-plaintiff action does not arise from a common factual core with, and, instead, is almost wholly different from, the other class action complaints that have been transferred to the Northern District of Alabama *In re Blue Cross Blue Shield Antitrust Litigation.* Indeed, if one compares the complaints side by side, LifeWatch's 106 paragraph complaint (Exhibit 1 hereto) shares only 13 paragraphs that contain any common allegations with the other complaints, and 6 of those merely identify certain common defendants. Thus, nearly 90% of the allegations in LifeWatch's complaint are completely different than the allegations presented by the other cases raised in this MDL matter.

Unlike every other case in this MDL proceeding, LifeWatch's complaint alleges that:

11872862.3

- the Blue Cross plans have engaged in a conspiracy to adopt a uniform set of medical policies that deny coverage for life-saving technologies provided by LifeWatch and others (*see, e.g.*, LifeWatch Complaint at ¶¶ 2, 37-47, 62-68);

- as part of this conspiracy, the BCBSA Medical Policy Panel, which includes representatives from each Blue Cross Plan, meets to vote on whether particular medical services, procedures, or medical devices will be covered under BCBSA's national medical policies (the "Medical Policy Rule") (*id.* at ¶¶ 2, 40-41);

- BCBSA enforces the Medical Policy Rule by engaging in periodic audits and imposing fines and warnings on non-complying Blue Cross Plans, and, as a result, the Blue Cross Plans largely adopt BCBSA's national policies (*id.* at ¶¶ 42-47);

- LifeWatch offers a mobile cardiac outpatient telemetry ("MCOT") device that provides lifesaving information about patients with serious heart problems (*id.* at ¶¶ 3, 48-60);

- the conspiracy includes the adoption by BCBSA of a national medical policy to deny coverage for LifeWatch's MCOT services, which policy has been followed and adopted by the vast majority of Blue Cross plans (*id.* at ¶¶ 62-68);

- although Highmark provides coverage to its own subscribers for LifeWatch's MCOT services, it has enforced the illegal conspiracy by refusing to pay for such services for subscribers of other Blue Cross plans (*id.* at ¶¶ 5, 70-73);

- the relevant product market is the market for MCOT services sold to or through commercial health plans (*id.* at ¶¶ 74-75);

- the anticompetitive effects from the conspiracy include: reducing the quality of cardiac monitoring and depriving patients of quality competition; reducing the output of MCOT services; and substantially inhibiting research and development, innovation and future competition to improve the quality of MCOT services (*id.* at ¶89);

- the conspiracy has caused LifeWatch substantial monetary damages as a result of denied and withheld payments and foregone physician orders (*id.* at ¶90); and

- Highmark's actions also constitute tortious interference with LifeWatch's existing and prospective relationships with thousands of physicians and their patients who are Blue Cross subscribers (*id.* at ¶¶ 99-104).

Absolutely none of the above allegations are even hinted at in the complaints in the other transferred actions. Indeed, none of the class action complaints that have been transferred in this

2

MDL proceeding even address the Blue Cross plans' medical coverage policies. Rather, the claims in those actions are based upon a conspiracy between the Blue Cross plans to enter into and enforce illegal market allocation agreements. While the LifeWatch complaint does contain minimal allegations discussing these geographical market allocation agreements as background, they are neither central nor critical to LifeWatch's claims, and LifeWatch's claims do not arise from those allegations.

The fact that LifeWatch's complaint is so unlike the other actions pending centralization alone justifies vacating the conditional transfer order.

*Second*, because of the important differences in claims and factual allegations described above, LifeWatch's claims are not at all likely to be subject to discovery that significantly overlaps with the claims asserted by the class action plaintiffs. This is another reason to vacate the CTO.

*Third,* the Panel should also vacate the CTO because transferring the LifeWatch Action to the Northern District of Alabama will not convenience the parties or the prospective witnesses. There are not sufficient benefits of streamlined discovery to be gained that would justify transferring LifeWatch's Pennsylvania-centric action to a MDL court in Alabama.

*Finally*, the Panel should also vacate the CTO because there is a minimal likelihood of inconsistent rulings if LifeWatch's action remains independent. Additionally, there are other, more efficient methods than transfer to coordinate (the very limited overlapping) discovery between LifeWatch's action and the class actions before the Panel. Both of these reasons also support the Panel finding that transfer will not promote just and efficient conduct of the litigation as required by 28 U.S.C. § 1407(a).

3

11872862.3

For these reasons, the Panel should vacate the CTO and exclude LifeWatch's unique single-plaintiff action from MDL No. 2406.

## II. BACKGROUND

On September 10, 2012, LifeWatch filed a two-count complaint in the Eastern District of Pennsylvania against defendants Highmark Inc., ("Highmark"), Blue Cross and Blue Shield Association ("BCBSA"), Horizon Blue Cross Blue Shield of New Jersey, Blue Cross Blue Shield of South Carolina, and Blue Cross Blue Shield of Minnesota, alleging that (1) the defendants had engaged in a conspiracy to adopt a uniform set of medical policies that deny coverage for life-saving technologies provided by LifeWatch and others, and (2) defendant Highmark alone had tortiously interfered with LifeWatch's relationships with thousands of physicians and their patients who are Blue Cross Plan subscribers.[1]

On November 2, 2012, BCBSA filed a Notice of Related Action (MDL Dkt # 96) with the Panel that designated LifeWatch's action as a "tag-along" case.

On December 13, 2012, the Panel issued a CTO conditionally transferring the LifeWatch Action to the Northern District of Alabama before Judge Proctor. LifeWatch opposes the transfer of this action and in support of its motion to vacate the CTO offers this response.

## III. ARGUMENT

### A. The Panel Should Deny Transfer Because LifeWatch's Claims Do Not Arise From A Common Factual Core With The Transferred Actions

The Panel should reject BCBSA's Notice of Related Action for the fundamental reason that there is not a "core of common facts" between LifeWatch's single-plaintiff action, and the multiple putative class actions that are before the Panel.

---

[1] *LifeWatch Services, Inc. v. Highmark, Inc., et al,* (E.D. Pa., Case No. 2:12-cv-00636). LifeWatch has stipulated to extend the defendants' time to respond to the Complaint until the earlier of the Panel's resolution on LifeWatch's motion to vacate or February 18, 2013.

4

In previous cases, the Panel has vacated conditional transfer orders where the tag-along actions do not share sufficient issues in common with the other centralized actions. *See, e.g., In re Petroleum Products Antitrust Litigation*, 476 F. Supp. 455, 458 (J.P.M.L. 1979) (granting motion to vacate conditional transfer order where antitrust action alleged different conspiracy than other transferred actions); *In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation,* 543 F. Supp. 2d 1370, 1371 (J.P.M.L. 2008) (vacating conditional transfer order where similar factual questions between tag along actions and other transferred actions were insufficient to warrant transfer); *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating conditional transfer order where tag-along actions presented individual claims that would require unique discovery and other pretrial proceedings").

The Panel has similarly consistently declined to transfer actions on motions to transfer that contain claims that are markedly factually dissimilar from the other cases under consideration for centralization in an MDL court.[2] *See, e.g., In re AT&T Mobility Wireless Data Svcs Sales Tax Litigation*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (excluding from MDL an action involving state law claims against the common defendant that were "distinct enough for exclusion from the centralized proceedings"); *In re Zicam Cold Remedy Marketing & Sales Practices Litigation*, 655 F. Supp. 2d 1371,1373 (J.P.M.L. 2009) (excluding from MDL one action against the common defendant that was "unlike the other actions in th[e] docket").

---

[2] The legal standards for transfer of tag-along actions are the same as those applying to initial transfer. See David F. Herr, *Multidistrict Litigation Manual* § 8.1. Accordingly, the Panel's opinions on motions for transfer are instructive.

11872862.3

### 1. LifeWatch Alleges A Different Conspiracy Than Those Asserted In Any Class Action Before The Panel

LifeWatch has alleged an entirely different conspiracy than is alleged in the other transferred actions. LifeWatch has pled that the Blue Cross plans have engaged in a conspiracy to limit competition with each other with regard to the medical services they cover by collectively deciding on their medical policies governing such services. *LifeWatch* Complaint ¶¶ 37-47. LifeWatch further alleges that the conspiracy has included implementation of a medical policy to deny coverage for life-saving technologies provided by LifeWatch and others to individuals insured by the defendants' health insurance plans. *Id.* at ¶¶ 2, 62-69. LifeWatch offers a mobile cardiac outpatient telemetry ("MCOT") device that provides potentially lifesaving information about patients with serious heart problems. *Id.* at ¶¶ 3, 48-60. The Complaint further alleges that Highmark, which recognizes the value of the MCOT services and pays for MCOT services for its own members, nonetheless has enforced the conspiracy with the other Blue Cross plans by refusing to pay for claims for LifeWatch's MCOT services for members of other Blue Cross Plans. *Id* at ¶¶ 5, 70-73.

Thus, LifeWatch's complaint is brought by a provider of innovative medical technology, primarily alleging a conspiracy with regard to the payments for that technology.

In contrast, the other transferred actions, save one, purport to represent a prospective class of BCBS plan subscribers who seek to recover for allegedly inflated premiums resulting from a conspiracy between the Blue Cross plans to divide and allocate the market in which they sell health insurance. (*See generally Cerven* Complaint (Exhibit 2 hereto) and similar Complaints). The other action transferred by the Panel is a prospective class action brought on behalf of BCBS in-network healthcare providers against BCBSA and Blue Cross plans that also alleges a conspiracy between the Blue Cross plans to enter into and enforce illicit market

6

allocation agreements that force members of the prospective class to accept fewer patients, lower rates, and unfavorable terms for their services as a result of the BCBS plans to divide and allocate the market. *See generally, Conway* Complaint (Exhibit 3 hereto). None of these other actions in any way involve the Blue Cross plans' medical policies or a conspiracy to deny coverage for particular medical services as does the LifeWatch complaint.

The fact that the LifeWatch action alleges a different conspiracy than the other actions weighs against it being transferred. *See, e.g., In re Gasoline Lessee Dealers Antitrust Litigation*, 479 F. Supp. 578, 580 (J.P.M.L. 1979) (denying transfer of actions given "overriding difference in scope" of alleged conspiracies).

### 2. LifeWatch's Complaint Asserts Unique Anticompetitive Effects

LifeWatch's Sherman Act claim also alleges different anticompetitive effects than the other transferred actions in MDL 2406. Both the *Cerven* subscriber actions and the *Conway* health care provider action assert that BCBSA and its member plans have entered into illegal market allocation agreements. (*Cerven* Complaint ¶ 150(b); *Conway* Complaint ¶ 129). According to these class action complaints, BCBS members then illicitly exploit their resulting market power by charging their subscribers "artificially inflated, unreasonable, and supra-competitive" premiums (*Cerven* Complaint ¶ 150(d)) or "by increasing prices for individual and small group health insurance and by decreasing the rates paid to healthcare providers in violation of Section 1 of the Sherman Act." (*Conway* Complaint ¶ 129).

In contrast, LifeWatch asserts that it has been harmed because the Blue Cross plans effectively barred LifeWatch from providing services to their subscribers. In particular, LifeWatch has alleged that the anticompetitive effects of the conspiracy include: (a) a reduction in "the quality of cardiac monitoring and deprives patients in the relevant market the benefit of quality competition"; (b) it "reduces the output of MCOT services in the relevant market"; and

7

(c) it "substantially inhibits research and development, innovation and future competition to improve the quality of MCOT services" (*LifeWatch* Complaint ¶ 89(a)-(c)). The LifeWatch complaint further alleges that the conspiracy has caused substantial monetary damages to LifeWatch as a result of denied and withheld payments and foregone physician orders. *Id.* at ¶ 90. None of these anticompetitive effects are alleged in any of the subject cases.

Nowhere does LifeWatch allege that the Blue Cross member defendants have illicitly inflated their subscribers' premiums or decreased payment rates to their providers.

These key differences weigh heavily against transfer. *See In re Teamster Car Hauler Products Liability Litigation*, 856 F. Supp. 2d 1343 (J.P.M.L. 2012) (denying transfer of multiple actions against same defendant where "defects alleged and injuries suffered var[ied] among the[] actions, and various additional defendants [were] named based on different theories of liability").

### 3. LifeWatch's Tortious Interference Claim Is Unlike Any Other Claim In Any Other Action Before The Panel

In addition, LifeWatch has pled a tortious interference claim against Pennsylvania-based Highmark that is unlike any claim in any of the other actions before the Panel for possible inclusion in MDL No. 2406. This is precisely the kind of difference that led the Panel to exclude the *Johnson* case from the prospective MDL in *In re AT&T Mobility Wireless Data Svcs Sales Tax Litigation*. *See* 710 F. Supp. 2d at 1380 (J.P.M.L. 2010) (excluding from MDL an action involving distinct state law claims against the common defendant). The same conclusion should apply here.

### 4. The Limited Overlap In Factual Allegations Between LifeWatch And The Other Actions Does Not Warrant Transfer

The very limited overlap in allegations between the LifeWatch case and the transferred actions does not warrant the transfer of the LifeWatch action to the MDL proceedings.

8

11872862.3

In its Transfer Order of December 12, 2012 (Docket # 128) transferring certain other actions in the Blue Cross Blue Shield Antitrust Litigation, the Panel held that the presence of additional facts or differing legal theories is not significant to the transfer under Section 1407 when the "actions still arise from a common factual core." Transfer Order at 2. The Panel further found that the actions subject to the motion to transfer all shared such a common factual core. Transfer Order at 2.

However, LifeWatch's claims that the defendants have conspired to deny claims for medical coverage and for tortious interference by Highmark do not even arguably "arise from the same factual core" as the other transferred actions. While LifeWatch's complaint does include a handful of allegations that discuss the agreements between BCBSA and the Blue Cross plans to allocate the market for health insurance, those limited allegations (approximately six paragraphs of LifeWatch's 106 paragraph complaint) are not in any way central to LifeWatch's claims. Rather, those allegations are provided as background to explain the Blue Cross plans' motivation to engage in the (very different) conspiracy to deny medical coverage that is at the core of LifeWatch's claims.

Such minimal overlap of allegations does not warrant transfer in these circumstances. *See, e.g., In re Petroleum Products Antitrust Litigation*, 476 F. Supp. at 457 (vacating conditional transfer order of one action even though "the actions in the transferee district share some questions of fact"); *In re Medtronics, Inc. Implantable Defibrillators Products Liability Litigation*, 543 F. Supp. 2d at 1370 (vacating Panel's order conditionally transferring the action because "any factual questions that [the] action may share with the [transferred] actions are insufficient to warrant transfer"); *In re Gasoline Lessee Dealers Antitrust Litigation*, 479 F.

9

Supp. 578, 580 (denying transfer of actions even though the "actions share some questions of fact" and finding "individual rather than common factual questions predominate").

### B. Discovery Is Unlikely To Significantly Overlap

Because of the important differences in claims and factual allegations set forth above, the vast majority of discovery in connection with LifeWatch's claims is not likely to overlap with discovery of the claims asserted by the class action plaintiffs.[3] A lack of potential common discovery on a sufficient number of common issues is a principal basis to vacate a conditional transfer order and deny transfer. See *In re Petroleum Products Antitrust Litigation,* 542 F. Supp. 2d at 458 (vacating conditional transfer order where scope of discovery in tag-along action was broader and varied from discovery necessary for other transferred actions and "would disrupt and substantially delay the orderly progress of pretrial proceedings in the transferee district, while bestowing [] benefits that could more easily be garnered by suitable alternatives to Section 1407 transfer"); see also *In re Rite Aid Corp. Wage and Hour Employment Practices Litigation*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (denying transfer where discovery would likely "require an individualized, factual inquiry" into the various plaintiffs' claims and common questions of fact were not sufficiently numerous to justify transfer); *In re Harmony Loan Company, Inc., Securities Litigation*, 372 F. Supp. 1406, 1406-07 (J.P.M.L. 1974) (denying transfer where actions shared "many common parties" but sought to protect "markedly different interests" and requested "different relief").

---

[3] As discussed below, to the extent that there are a limited number of common issues between the LifeWatch case and the other actions pending centralization that may involve overlapping discovery, such issues can be addressed via coordination and cooperation of the parties and the courts to those actions.

11872862.3

1. **LifeWatch's Prospective Discovery Will Focus On MCOT Services, The BCBS Members' Conspiracy To Deny Coverage For Such Services, And The Resulting Harm To LifeWatch And The MCOT Services Market**

LifeWatch's prospective discovery in support of its antitrust claims will focus on issues that are completely unrelated to the other transferred actions. The discovery will concern, at first, the "medical coverage" conspiracy that is at the heart of LifeWatch's complaint. This will require investigation of the BCBSA Medical Policy Panel, including depositions of Blue Cross plans' representatives to the Panel and the Panel's staff. (*See id.* ¶¶ 40-41.) LifeWatch's discovery will also include investigation of BCBSA's enforcement of medical policies; Blue Cross plans' often word-for-word adoption of BCBSA medical policies, and the reduction of Blue Cross plans' medical policy staffs as medical policy decision-making was centralized at BCBSA. (*See id.* ¶¶ 42-47.) The other primary area of discovery will involve the effects of the Defendants' actions on the availability of MCOT services. *LifeWatch* Complaint ¶¶ 3, 5, 6, 14, 16, 18, 20, and 86-89.

In response, Defendants will likely seek discovery regarding LifeWatch's own actions, and the impact of the denials of coverage on LifeWatch, including LifeWatch's damages. See *LifeWatch* Complaint ¶¶ 87-89.

None of this discovery will be conducted in any of the other transferred actions.

C. **Transfer Will Not Serve The Convenience Of The Parties Or The Witnesses**

The Panel also should vacate the conditional transfer order because such transfer will not serve the convenience of the parties or the prospective witnesses. Of course, such convenience is one of the primary factors to consider when evaluating a motion to transfer. 28 U.S.C. § 1407(a) (stating "transfers shall be made by the judicial panel…upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses…."); *In re Brandywine*

11

*Associates Antitrust Litigation and Mortgage Foreclosure Litigation*, 407 F. Supp. 236, 237-38 (J.P.M.L. 1976) (denying transfer of multiple antitrust conspiracy actions where movant had not shown reasons sufficient to "overcome the inconvenience to the litigants and their witnesses" imposed by transfer).

Transfer would certainly inconvenience LifeWatch. First, it would deprive LifeWatch of its right to its valid chosen forum. Second, it would significantly increase LifeWatch's litigation expenses by forcing it to retain local counsel in Alabama and incur additional travel and other expenses.

Transfer to the Northern District of Alabama would also inconvenience the vast majority of likely witnesses in this case. Highmark, a Pennsylvania corporation with its principal place of business in Pittsburgh, is the principal antitrust defendant in this action. The Complaint alleges that Highmark has denied the vast majority of MCOT claims at issue in this litigation, and that Highmark acted as the instrumentality of the conspiracy. (*LifeWatch* Complaint ¶¶ 5, 9-11, 90(a)-(c).) Moreover, Highmark is the sole defendant named in LifeWatch's tortious interference claim. (*Id.* ¶¶ 100-104.)

Blue Cross Blue Shield of Alabama is not a defendant in the *LifeWatch* case, and there is no prospect that any Alabama witnesses are likely to play a role in the *LifeWatch* case.

Therefore, the inclusion of the *LifeWatch* case with the other subject cases in one consolidated proceeding will add significant inconvenience, not only to LifeWatch, but to the witnesses.

D.   **Transfer Will Not Promote Just And Efficient Conduct Of The Litigation**

The Panel also should exclude LifeWatch's action from the MDL proceedings because there is a minimal likelihood of inconsistent rulings if LifeWatch's action remains independent. Moreover, there are other, more efficient, methods to coordinate discovery between LifeWatch's

12

11872862.3

action and the class actions before the Panel. Both of these reasons support a finding that transfer will not promote "just and efficient conduct of the litigation" as required by 28 U.S.C. § 1407(a).

Given the very different issues in the *LifeWatch* case, the likelihood of inconsistent rulings seems remote. Indeed, whereas the Panel noted in its December 12, 2012 Transfer Order that all of the transferred actions "are purported statewide and/or nationwide class actions brought against BCBSA and one or more Blue Plan defendants" and therefore centralization "will prevent inconsistent pretrial ruling, including with respect to class certification" (Transfer Order at 2), the LifeWatch action is brought on behalf of a single plaintiff.

While there are a few overlapping issues regarding the licensing agreements between BCBSA and the various Blue Cross Plans, they are not critical to the resolution of the *LifeWatch* case. See *supra* at 8-9. As a result, decisions regarding the claims in the other subject actions are unlikely to have a significant impact on the *LifeWatch* case.

To the contrary, inserting the unique claims and discovery requirements of the LifeWatch case to the MDL proceedings would only increase the already large burden on the MDL court. This could reduce efficiency and cause discovery and other pretrial events to bog down. Such consequences are precisely contrary to the purpose of centralizing cases in an MDL: to "ensure that pretrial proceedings are conducted in a manner leading to the just ***and expeditious*** resolution of these actions to the overall benefits of the parties." *In re AT&T Mobility*, 710 F. Supp. 2d at 1380; see also *In re Petroleum Products Antitrust Litigation,* 542 F. Supp. 2d at 458 (vacating conditional transfer order where transfer of tag-along action that presented unique claims and discovery "would disrupt and substantially delay the orderly progress of pretrial proceedings in

13

11872862.3

the transferee district, while bestowing [] benefits that could more easily be garnered by suitable alternatives to Section 1407 transfer").

Moreover, to the extent there are any minimal efficiencies in discovery to be gained by transfer, such efficiencies can be achieved as well or better via coordination and cooperation of the parties and the courts on the limited overlapping discovery. *See In re Petroleum Products Antitrust Litigation,* 542 F. Supp. 2d at 458 (vacating conditional transfer order and outlining suitable alternatives to Section 1407 transfer); see also *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation,* 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying transfer and describing alternative measures for avoiding duplicative discovery); *In re Rite Aid,* 655 F. Supp. at 1377 (denying transfer and directing parties to "avail themselves of alternatives to transfer that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings"); *Manual for Complex Litigation, Fourth* § 20.14 (2004) (describing procedures for coordination between courts to avoid duplicative discovery); *Id.* §§ 11.423, 11.443, 11.452, 11.455, and 11.464 (outlining procedures to save time and expense in discovery and coordinate discovery between courts).

For example, the Panel has previously suggested in place of transfer that "notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action," or "the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions." *In re Eli Lilly,* 446 F. Supp. at 244. Either or both of these alternatives may serve to mitigate any duplicative discovery between LifeWatch's action and the prospective class actions in MDL 2406. This would be far more efficient than combining LifeWatch's unique single-plaintiff action in an MDL with several class actions with which it shares little in common.

14

## IV. CONCLUSION

For the reasons set forth above, the Panel should vacate the conditional transfer order and exclude LifeWatch's Pennsylvania-centric, single-plaintiff antitrust and tortious interference action from MDL No. 2406.

Dated: January 3, 2013

By:      /s/ Lara Fetsco Phillip

David A. Ettinger (P26537)
Peter E. Boivin (P62043)
Lara Fetsco Phillip (P67353)
Honigman Miller Schwartz & Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465-7368 (p)
dettinger@honigman.com

Michael J. McCarrie
PA I.D. # 57671
Artz Health Law
Centre Square - West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102
Office: 267-886-1852
Fax: 215-735-1714
mjm@artzhealthlaw.com

Charles I. Artz
PA I.D. #55747
Artz Health Law
200 North Third Street, Suite 12-B
Harrisburg, PA 17101
Phone: (717) 238-9905
cia@artzhealthlaw.com

11872862.3

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of January, 2013, a copy of the foregoing pleading was electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system which will send notice of electronic filing to all parties of record.

/s/ Lara Fetsco Phillip
LARA FETSCO PHILLIP

11872862.3