BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re* **Blue Cross Blue Shield Antitrust Litigation**. | MDL No. 2406 |

**DEFENDANTS' RESPONSE TO LIFEWATCH'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

The suit by LifeWatch Services, Inc. is one of more than two dozen actions filed across the country that allege that Blue Cross & Blue Shield Association and its 38 member plans, through its license agreements, have conspired to illegally restrain trade in the market for commercial health insurance. This Panel has already centralized these matters before Judge R. David Proctor in the Northern District of Alabama. *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406. LifeWatch concedes that its action shares factual allegations with those transferred cases and that its case would duplicate discovery. Accordingly, to promote just and efficient conduct, including avoiding the significant risk of different rulings on overlapping issues and preventing duplicative discovery, and to serve the convenience of the parties, LifeWatch's suit should be centralized with the MDL. Thus, the Panel should affirm the Conditional Transfer Order. *See* J.P.M.L. Rules 1.1(h), 7.1.

## Background

Between February and November 2012, plaintiffs filed more than 20 suits across the United States that challenge BCBSA's longstanding practice of licensing the exclusive right to use the Blue Cross and Blue Shield in a specified service area to its member Plans. These plaintiffs allege that, through the licensing agreements with BCBSA, the Blues conspired to divide health-insurance markets in violation of the antitrust laws. As a result of that alleged conspiracy, plaintiffs say, subscribers paid inflated premiums and providers (like LifeWatch) received decreased

reimbursement rates. In September 2012, one of the plaintiffs petitioned the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to centralize the then-pending antitrust actions challenging BCBSA's structure. (*In re Blue Cross Blue Shield Antitrust Litig.,* MDL 2406 (Dkt. No. 1.).)

A few weeks later, in mid-September, LifeWatch, a provider of medical devices and related services, sued BCBSA and several Blue Plans, likewise alleging that BCBSA's licensing agreements are a de facto conspiracy by the Blues to allocate markets for health insurance in violation of the Sherman Act. (*LifeWatch* Compl. ¶¶ 1, 33, 33(a)-(d), 47, 92-98.) LifeWatch argues that as a result of the conspiracy, Blue Cross Plans deny coverage, and thus reduce reimbursement, for some of its medical devices and services that Blue Cross Plans otherwise would cover. (*Id.* ¶ 94.) The *LifeWatch* action was one of many additional actions identified as related to the pending MDL petition. (*In re Blue Cross Blue Shield Antitrust Litig.,* MDL 2406 (Dkt. No. 96).)

On November 29, 2012, the Panel heard oral argument on whether to establish an MDL. (*Id.* Dkt. No. 78). At oral argument, LifeWatch's counsel acknowledged that it makes the same exclusive-service-area related contention as the plaintiffs in the other cases, insisting that this allegation would "help to tell the story" in its case and that plaintiff's counsel would share common "discovery with other parties." (MDL Oral Arg. Tr. at 20, Exhibit 1.) The Panel granted the MDL petition on December 12, 2012, centralizing these cases in the Northern District of Alabama. (*Id.* Dkt. No. 128.) The next day, the Panel clerk issued a Conditional Transfer Order transferring LifeWatch's suit to the MDL. (*Id.* Dkt. No. 130.) Now, in an attempt to keep its suit out of the centralized proceedings and force the *LifeWatch* defendants to litigate the same issues twice, LifeWatch argues that the Conditional Transfer Order should be vacated and its suit should not be transferred to the MDL. (Mot. to Vacate, Dkt. No. 151.)

**Argument**

Transfer under § 1407 is appropriate if, as here: (1) the actions involve one or more common questions of fact; (2) transfer promotes just and efficient conduct; and (3) transfer will be convenient for the parties and witnesses. 28 U.S.C. § 1407(a). The standard for resolving transfer of a tag-along action is the same. *See, e.g.*, *In re Stirling Homex Corp. Sec. Litig.*, 442 F. Supp. 547, 549 (J.P.M.L. 1977); David F. Herr, *Multidistrict Litigation Manual* § 8:1 (2012). Here, affirming the transfer of LifeWatch's suit is appropriate because its case satisfies all requirements of § 1407. First, LifeWatch's case, like the other transferred actions, alleges that there is a conspiracy among the Blue Plans and BCBSA to reduce competition through BCBSA's license agreements in violation of the antitrust laws. Second, transfer promotes just and efficient conduct by eliminating duplicative discovery and proceedings, and preventing inconsistent rulings between the MDL Court and the Eastern District of Pennsylvania. And third, any inconvenience to LifeWatch is outweighed by the substantial benefits derived from centralization.

**A.     LifeWatch's suit, like the other transferred antitrust actions, alleges that BCBSA's license agreements amount to a conspiracy to divide markets for health insurance.**

The opening salvo to LifeWatch's complaint aptly captures the essence of its suit: "This complaint is being filed to challenge a nationwide conspiracy among the thirty-eight (38) Blue Cross Blue Shield plans to substantially and unlawfully reduce competition among these plans." (*LifeWatch* Compl. ¶ 1.) Like the plaintiffs in the transferred cases, LifeWatch names dozens of Blue Plans as alleged "co-conspirators." (*Id.* ¶ 21.) Twenty-five of those same Blue Plans are defendants and purported co-conspirators in the transferred cases. (*See, e.g., Conway* Compl. ¶¶ 20–60, Exhibit 2.)

LifeWatch also alleges the same conspiracy claimed in the cases in the MDL. Like the other plaintiffs in these cases, LifeWatch alleges that (1) BCBSA licenses the Blue Marks in geographically exclusive service areas; (2) those license agreements are in essence a "conspiracy"; and (3) that

conspiracy "eliminates competition" among would-be competitors. (*LifeWatch* Compl. ¶ 1; *see also id.* ¶¶ 21, 33.) Just as in *Conway*—a putative class action brought on behalf of all providers that has been transferred to the MDL—LifeWatch alleges that the Blue Plans' conspiracy gave them market power over providers and that this is illegal. (*Compare LifeWatch* Compl. ¶ 83, *with Conway* Compl. ¶¶ 77-88.) And just like all the other plaintiffs, LifeWatch claims that BCBSA's license agreements violate the antitrust laws. (*LifeWatch* Compl. ¶¶ 92-98.) Accordingly, affirming the Conditional Transfer Order in this antitrust suit fits comfortably within the line of precedent where the Panel centralizes actions under the Sherman Act to recover for injuries sustained as a result of the same alleged conspiracy.[1]

Despite the overlap between the factual allegations and legal claims between its case and the other cases challenging BCBSA's license agreements, LifeWatch argues that § 1407's requirement that the actions share common questions of fact is not met here. (Mot. to Vacate 4-10.) But none of the six arguments that it raises in hopes of vacating the transfer order has any support under this Panel's precedent:

**First,** LifeWatch insists that its exclusive-service-area conspiracy allegations are "neither central nor critical" to its case and, therefore, its suit does not share a "core" of common facts with

---

[1] *See, e.g., In re Lipitor Antitrust Litig.*, MDL No. 2332, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012) (affirming CTO where individual action shared questions of fact with other antitrust class actions); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (affirming CTO where suit did not involve exact same factual issues but alleged same conspiracy to monopolize pain-medication market); *In re Fine Paper Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (affirming CTO where, even though actions involved "some different defendants and some dissimilar factual issues," centralization was appropriate because all concerned "whether there has been a conspiracy to engage in restrictive trade practices").

The factual overlap here is what sets this case apart from those relied upon by LifeWatch. *See In re Medtronic, Inc. Implantable Defibrillators Prods. Liability Litig.*, 543 F. Supp. 2d 1370, 1371 (J.P.M.L. 2008) (vacating CTO because the action contained allegations for products plainly not at issue in the centralized proceedings); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating CTO for two actions relating to two individual loans because centralized proceedings involved predatory lending practices in general).

the other cases. (Mot. to Vacate 3‑4.) But a "core" of common facts "critical" to a case is not what § 1407 requires. Transfer under § 1407 requires that the actions share common factual allegations, nothing more. 28 U.S.C. § 1407(a). There is no "predominance" requirement. *See, e.g.*, Herr, *supra, Multidistrict Litigation Manual* § 5:44 (2012). Indeed, the Panel has consistently noted that § 1407 does not require a complete identity or even a majority of common factual issues. *See, e.g., In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d at 1360; *In re Travel Agent Comm'n Antitrust Litig.,* 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003). In any event, LifeWatch's assertion that its attack on BCBSA's licenses is not "critical" is difficult to square with its own complaint, which—like the now-centralized actions—alleges that the license agreements *are* the conspiracy and that the Blue Plans' ability to deny coverage for some of LifeWatch's products is derived from that conspiracy.[2]

**Second,** LifeWatch opposes centralization because the purported conspiracy and the anticompetitive effects it alleges are limited: It alleges a conspiracy through the license agreements to deny coverage of certain medical devices and related medical services. (Mot. to Vacate 7‑8.) But alleging a narrower subset of the global conspiracy to allocate insurance markets puts LifeWatch's conspiracy *within* the conspiracy alleged by the other plaintiffs, not outside it. *In re Cuisinart Food Processor Antitrust Litigation*, 506 F. Supp. 651 (J.P.M.L. 1981), is instructive. In that case, the defendant sought to centralize eight actions that alleged a conspiracy to fix the prices for food processors. One of the plaintiffs asked to be excluded because he alleged a more limited

---

[2] *See, e.g., LifeWatch* Compl. ¶ 1 ("The conspiracy reduces geographic expansion by Blue Cross Plans"), ¶¶ 8, 21, 24 (naming BCBSA—the licensor—and every Blue Plan licensee as a defendant or unnamed coconspirator), ¶¶ 30‑36, 47 (cataloguing the "Power of Blue Cross Plans" and "The Conspiracy: Allocation of Territories and National Accounts," including BCBSA's licensing agreements, the "Service Area Rule," the "80% Rule," and the "Two-Thirds Rule"), ¶ 38 (alleging a Blue Plan conspiracy to avoid "creating competitive points of difference" between the Plans), ¶ 41 (alleging that the "Medical Policy Rule" "further insulates Blue Cross Plans from any form of competition among one another"), ¶ 45 (alleging that Blue Cross Plans "have agreed to severely restrict the ability of any Blue Cross Plans to compete with other Blue Cross Plans").

Defendants' Response to LifeWatch's Motion to Vacate Conditional Transfer Order

conspiracy—one limited to particular purchasers and focused on distinctly local factors. The Panel noted that the broader conspiracy "necessarily encompasses many aspects of the somewhat more limited" conspiracy alleged by the plaintiff and concluded that transfer was necessary to prevent duplicative discovery. *Id.* at 655; *see also In re Cement & Concrete Antitrust Litig.*, 465 F. Supp. 1299, 1300 (J.P.M.L. 1979) (centralizing statewide antitrust conspiracy suits with other antitrust actions because "national conspiracy alleged in some of the actions in the transferee district naturally encompasses the statewide conspiracy").[3]

**Third,** LifeWatch emphasizes that it alleged a different relevant market than the other cases. (Mot. to Vacate 1-2.) But the Panel's case law is clear that alleging a different market does not warrant exclusion from centralized proceedings. *In re Petrol. Prods. Antitrust Litig.*, 407 F. Supp. 249, 251 (J.P.M.L. 1976); *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991-92 (J.P.M.L. 1974). In those cases, the Panel ordered the inclusion of the plaintiffs' antitrust suit with other actions even though the plaintiffs alleged different markets; any unique factual issues related to those markets could be addressed by the transferee judge's "broad discretion to design a pretrial program." *In re Petrol. Prods. Antitrust Litig.,* 407 F. Supp. at 251; *see In re Midwest Milk*, 379 F. Supp. at 991.

---

[3] LifeWatch suggests that its case is more like *In re Gasoline Lessee Dealers Antitrust Litigation,* 479 F. Supp. 578 (J.P.M.L. 1979), *In re Teamster Car Hauler Products Liability Litigation,* 856 F. Supp. 2d 1343 (J.P.M.L. 2012), and *In re Zicam Cold Remedy Marketing & Sales Practice Litigation,* 655 F. Supp. 2d 1371 (J.P.M.L. 2009). (Mot. to Vacate 5, 8, 9.) None of those cases apply here. In *Gasoline*, tag-along actions were not centralized with a pending MDL because the difference between the two was "tremendous," common questions would "clearly be dwarfed" by matters of no interest to the tag-along plaintiffs, and the benefits of transfer were "further diminished by the advanced stage of pretrial proceedings" in the suits. 479 F. Supp. at 580. These factors do not exist in this case. In *Teamster,* the Panel refused to order centralization because the suits involved only a common legal issue; section 1407 "does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." 856 F. Supp. 2d at 1343. In contrast, LifeWatch admitted at oral argument that factual and discovery issues overlap. *See* Ex. 1 at 20. Finally, in *Zicam,* one action was excluded because that action's factual issues were not encompassed *at all* in the other suits, 655 F. Supp. 2d. at 1373, another situation unlike this case.

**Fourth,** LifeWatch asks to be excluded because it, unlike some other plaintiffs, is a healthcare provider. (Mot. to Vacate 5-6.) Yet whether actions have facts in common does not turn on whether the parties operate on the same side of the market. Indeed, the Panel has repeatedly rejected the argument that transfer should not be ordered for cases where plaintiffs are on different receiving ends of conduct that allegedly violates the antitrust laws. *See, e.g.*, *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 654-55 (centralizing retailers' claim with purchasers claims because both alleged that defendants conspired to fix prices for food processors).[4] Moreover, LifeWatch's argument ignores that the MDL already includes four actions brought by and on behalf of healthcare "providers": *Conway*, *Surgical Center*, *Sult*, and *Heritage Medical Partners*. (*In re Blue Cross Blue Shield Antitrust Litig.,* MDL 2406 (Dkt. Nos. 128, 145, 162, 164.).)

**Fifth,** LifeWatch argues that its inclusion of a state-law claim is enough to force the defendants to duplicate pretrial proceedings on the same issue. (Mot. to Vacate 8.) But the presence of a state-law claim is no impediment to § 1407 transfer, and neither is it grounds for reversing a conditional transfer order. *In re Guidant Corp. Implantable Defibrillators Prods. Liability Litig.*, MDL No. 1708, 2006 WL 1984688, at *1 (J.P.M.L. June 13, 2006); *In re Sugar Indus. Antitrust Litig. (East Coast),* 471 F. Supp. 1089, 1094 (J.P.M.L. 1979); *In re Uranium Indus. Antitrust Litig.,* 466 F. Supp. 958, 961-63 (J.P.M.L. 1979). If the rule were as LifeWatch would have it, then any party could avoid MDL treatment by asserting a state-law claim or counterclaim. Unsurprisingly, the case relied upon by LifeWatch does not stand for the proposition that a state-law claim is enough to exclude a case

---

[4] A*ccord In re Wells Fargo Wage & Hour Emp't. Practices Litig.*, 804 F. Supp. 2d 1382, 1383-84 (J.P.M.L. 2011) (centralizing suits brought by home-mortgage consultants, loan originators, and loan consultants); *In re Gen. Adjustment Bureau Antitrust Litig.*, 375 F. Supp. 1405, 1406-07 (J.P.M.L. 1974) (centralizing insurance purchasers' claims with insurance adjusters' claims because both actions involved alleged monopolistic position of defendant in the insurance market); Herr, *supra, Multidistrict Litigation Manual* § 5:43 (2012) (collecting cases transferring actions notwithstanding differences among the parties).

from an MDL. In *In re AT&T Mobility Wireless Data Services Sales Tax Litigation,* 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010), the plaintiff's case, unlike here, rested "entirely" on Texas law and did not arise under any federal issue.

**Sixth,** LifeWatch repeatedly calls attention to the fact that its claim is an individual claim and not a class action like the other plaintiffs' suits. (Mot. to Vacate 1, 4.) But the vehicle for LifeWatch's claim does not matter. *See, e.g., In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) (centralizing nine antitrust suits even though fewer than half were class actions); *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 610-11 (J.P.M.L. 1974) (centralizing two class actions and one individual action). As the Panel has recognized, "it is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core." *In re Lipitor Antitrust Litig.,* 2012 WL 4069565, at *1 (internal quotation omitted); *see also In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011) ("The Panel, however, typically includes both individual actions and putative class actions in the same multidistrict proceeding when they arise from the same alleged antitrust conspiracy.").

In the end, LifeWatch does not and cannot deny that its complaint contains many of the same factual allegations as in the other complaints at issue. Each suit alleges the same nationwide antitrust conspiracy and challenges the validity of the same license agreements between BCBSA and each of its member Plans. Section 1407 dictates that LifeWatch's action should be centralized with those that share such common issues.

**B.     Transfer of *LifeWatch* will promote just and efficient conduct.**

Centralization of LifeWatch's suit will promote just and efficient conduct by eliminating duplicative discovery as well as the risk of inconsistent rulings. Discovery in all 20-plus actions (as well as other prospective tag-along actions) will be substantially overlapping and duplicative. At oral argument before the Panel, LifeWatch's counsel admitted that it makes the same exclusive-service-

area-related claim as the other actions. In fact, when asked if it would consider dropping that claim, LifeWatch's counsel refused and insisted that the allegation was necessary for it "to tell the story." (Ex. 1 at 20.) Then when the Panel pressed LifeWatch's counsel if the allegations were "an issue you will likely want to do discovery on," counsel confirmed it would, replying "[a]nd we will share that discovery with other parties." (*Id.*) Indeed, all plaintiffs, including LifeWatch, will presumably seek discovery on the alleged "rules" or "guidelines" that are supposedly implemented by BCBSA licenses and imposed upon the various Blue Plans: exclusive service areas[5]; the "80% Rule"[6]; and the "Two-Thirds Rule."[7] (LifeWatch's alleged "Medical Policy Rule" is just an example of another BCBSA policy supposedly used to enforce the alleged conspiracy. (*LifeWatch* Compl. ¶¶ 37–47.).) Absent centralization, BCBSA and the other defendants might be forced to produce the same documents (and possibly raise the same objections) many times. The dozens of other Blue Plans named as co-conspirators in the alleged national conspiracy would likely face overlapping, third-party discovery. In addition, the same employees would be subjected to multiple depositions in multiple forums on the same issues. Where parties must depose the same witnesses, examine the same documents, and make the same (or similar) pretrial motions, the benefits of a single judge supervising these proceedings are "obvious." *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).

LifeWatch counters that it should be excluded from the MDL because it will seek discovery relating to coverage for the use of certain medical devices and related medical procedures. (Mot. to Vacate 10–11.) The Panel has rejected a similar argument before. Where, as here, there are common

---

[5] *Compare LifeWatch* Compl. ¶ 33(a); *with, e.g., Conway* Compl. ¶¶ 65, 73, 98; *Cerven* Compl. ¶¶ 30, 83 (Exhibit 3).

[6] *Compare LifeWatch* Compl. ¶ 33(b); *with, e.g., Conway* Compl. ¶ 99; *Cerven* Compl. ¶ 84.

[7] *Compare LifeWatch* Compl. ¶ 33(c); *with, e.g., Conway* Compl. ¶ 100; *Cerven* Compl. ¶ 8.

factual issues, plus a unique factual issue that can be dealt with under the transferee judge's discretion to manage the case, centralization is the proper course. *See In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (tag-along action that might involve "substantial amount of discovery" on unique issue was left to transferee judge's discretion "to allow discovery on issues unique to any action to proceed concurrently with the common discovery").

The cases relied upon by LifeWatch for a different outcome present procedural circumstances that are absent here. In *In re Petroleum Products Antitrust Litigation*, 476 F. Supp. 455, 458 (J.P.M.L. 1979), the Panel vacated a Conditional Transfer Order because the centralized proceedings were already in the throes of discovery and the inclusion of the additional cases would "disrupt and substantially delay the orderly progress" of those proceedings. There can be no argument that transferring *LifeWatch* would disrupt the centralized proceedings here. *LifeWatch* and the centralized proceedings are all in their infancy; no motions to dismiss are pending in the MDL or in *LifeWatch*, and no discovery is proceeding in either case. The other cases relied upon by LifeWatch likewise provide little traction for upsetting the transfer of its case. For example, in *In re Harmony Loan Co. Securities Litigation*, 372 F. Supp. 1406, 1407 (J.P.M.L. 1974), the three actions were at different stages of development—for example, discovery in one suit was already complete—and the actions contained "several issues not common." *In re Rite Aid Corp. Wage & Hour Employment Practices Litigation,* 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009), lacked a common federal claim, unlike here, and the various state-law specific suits were brought by the same plaintiffs' counsel, resulting in de facto coordination absent centralization. And in *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation,* 446 F. Supp. 242, 244 (J.P.M.L. 1978), the Panel concluded that transfer of three patent disputes was unnecessary because under patent law, a resolution of one action would prove dispositive of the issue in the other two.

Additionally, centralizing LifeWatch's suit with the other host of cases claiming the same antitrust conspiracy enables one court to address the underlying conspiracy claim and the legality of BCBSA's licenses. If LifeWatch's case is not centralized, then there is a real potential for conflicting rulings between federal courts on the existence of the alleged nationwide conspiracy and the validity of BCBSA's licenses. One of the primary aims of § 1407 is to remedy the potential for conflicting rulings in suits with national implications. *See, e.g., In re Lipitor Antitrust Litig.,* 856 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012); *In re Tele. Charge Antitrust Litig.,* 341 F. Supp. 771, 772 (J.P.M.L. 1972).

At bottom, affirming the transfer of LifeWatch's case will avoid overlapping discovery, eliminate the risk of inconsistent rulings, and save the courts and the parties' time and resources.

## C.     LifeWatch's alleged inconvenience does not outweigh the benefits to centralization.

LifeWatch says that "[t]ransfer would certainly inconvenience LifeWatch." (Mot. to Vacate 12.) But this "worm's eye view" to inconvenience was rejected by the Panel long ago. *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968). "Of course it is to the interest of each plaintiff to have all the proceedings in his suit handled in his district. But the Panel must weigh the interests of all the plaintiffs and all the defendants and consider multiple litigation as a whole in the light of the purposes of the law." *Id.*; *accord In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Centralization may be "less than convenient for some parties," but where the benefits outweigh this inconvenience for one party, centralization is appropriate. *See In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III),* 804 F. Supp. 2d at 1384.

Here, there is no great inconvenience to LifeWatch: Centralized proceedings do not require the parties to attend all the proceedings in the transferee court, and discovery of the parties can take place in the district where the parties reside. *See, e.g., In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506-07. Judge Proctor recently made this clear in the case management order for the MDL proceedings, emphasizing that "parties with similar interests are expected to agree to

the extent practicable on a single attorney to act on their joint behalf" at the MDL's first status conference. (MDL 2406, Case Mgmt. Order 1, Exhibit 4.) And the use of lead counsel, liaison counsel, and steering committees can further reduce the need for travel and related expenses. *See, e.g., In re Indus. Wine Contracts Sec. Litig.*, 386 F. Supp. 909, 911-12 (J.P.M.L. 1975). In contrast, BCBSA (located in Chicago) and the five Blue licensees (located around the country) that LifeWatch has sued would be forced to litigate the same issues twice, in both the Northern District of Alabama and the Eastern District of Pennsylvania. *See* Certain Defendants' Resp. to Mot. to Transfer, at 7-9 (Dkt. No. 68). LifeWatch's mere preference against centralization cannot trump § 1407(a), the standard that dictates centralization here.

## Conclusion

In sum, the Panel has already centralized actions alleging that the Blue System is a "conspiracy" to allocate and divide markets for health insurance. LifeWatch alleges the same conspiracy. Therefore, transfer of its case will promote just and efficient conduct, and any claimed inconvenience is outweighed by the benefits achieved by centralization. Thus, rather than force the *LifeWatch* defendants to double their pretrial efforts and risk inconsistent rulings, this Panel should affirm the transfer of this case to *In re Blue Cross Blue Shield Antitrust Litigation,* MDL No. 2406.

January 24, 2013                                  /s/ Daniel E. Laytin

David J. Zott, P.C.
David.Zott@kirkland.com
Daniel E. Laytin
Daniel.Laytin@kirkland.com
Ian R. Conner
Ian.Conner@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telecopier: (312) 862-2200

*Counsel for Defendant Blue Cross & Blue Shield Association*

Craig A. Hoover
Craig.Hoover@hogan.lovells.com
J. Robert Robertson
Robby.Robertson@hogan.lovells.com
E. Desmond Hogan
Desmond.Hogan@hogan.lovells.com
Elizabeth Jose
Elizabeth.Jose@hogan.lovells.com
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, District of Columbia 20004
Telephone: (202) 637-5600
Telecopier: (202) 637-5910

*Counsel for Horizon Blue Cross Blue Shield of New Jersey, Blue Cross Blue Shield of South Carolina, Blue Cross Blue Shield of Minnesota, and WellPoint, Inc.*

Helen E. Witt, P.C.
Helen.Witt@kirkland.com
Erica B. Zolner
Erica.Zolner@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Telecopier: (312) 862-2200

*Counsel for Highmark, Inc.*