# Exhibit 1

10:46   1              THE UNITED STATES JUDICIAL PANEL
                         ON MULTI-DISTRICT LITIGATION

        2

        3    _____

        4    In re: BLUE CROSS BLUE SHIELD  (   Number 2406
             Antitrust Litigation           (   November 29, 2012

        5    _____

        6

        7                    TRANSCRIPT OF HEARING

        8

10:46   9    PRESIDING:

        10

                    Chairman:  John G. Heyburn II
        11                     United States District Court
                               Western District of Kentucky

        12

                    Members:   Kathryn H. Vratil
        13                     United States District Court
                               District of Kansas

        14

                               W. Royal Furgeson
        15                     United States District Court
                               Northern District of Texas

        16

                               Paul J. Barbadoro
        17                     United States District Court
                               District of New Hampshire

        18

                               Marjorie O. Rendell
        19                     United States District Court
                               Third Circuit

        20

                               Charles R. Breyer
        21                     United States District Court
                               Northern District of California

        22

                               Louis Kaplan
        23                     United States District Court
                               Southern District of New York

        24

        25

10:46   1     A P P E A R A N C E S:

        2
              For CB Roofing LLC, et al.:
        3
                              GREGORY L. DAVIS
        4                     DAVIS & TALIAFERRO
                              Montgomery, Alabama
        5
              For Jerry Conway:
        6
                              JOE R. WHATLEY
        7                     Whatley Kallas LLC
                              Birmingham, Alabama
10:46   8
              For Anthem, Inc., et al.:
        9
                              CRAIG A. HOOVER
       10                     HOGAN LOVELLS
                              Washington, D.C.
       11
              For Blue Cross Blue Shield Association, et al.:
       12
                              DANIEL E. LAYTIN
       13                     KIRKLAND & ELLIS LLP
                              Chicago, Illinois
       14
              For Fred R. Richards, et al. and Thomas A. Carder, Jr., et
       15     al:

       16                     LAURA ALEXANDER
                              COHEN MILSTEIN SELLERS & TOLL
       17                     Washington, D.C.

       18     For Kelli R. Cerven, et al.:

       19                     WILLIAM ISAACSON
                              BOIES SCHILLER & FLEXNER LLP
       20                     Washington, D.C.

       21     For Lifewatch Services, Inc.:

       22                     LARA FETSCO PHILLIP
                              HONIGMAN MILLER SCHWARTZ & COHN LLP
       23                     Detroit, Michigan

       24

       25

P R O C E E D I N G S:

10:46   1

2          JUDGE HEYBURN:  Thank you.  Next case is 2406

3    Blue Cross Blue Shield.  Since most of the members of the

4    panel have their insurance with Blue Cross, Blue Shield

5    we're considering this case under the Rule of Necessity.

6          MR. DAVIS:  I'm here on behalf of two clients.

7    GC Advertising and CB Roofing respectfully requesting that

8    this panel send this case to the Northern District of

9    Alabama to Judge Proctor.  Judge Proctor currently has

10   seven cases pending before him.  Of the seven cases, there

11   are six subscriber cases, one provider case.  He has

12   consolidated all of those cases into one instead of two

13   tracks to proceed, and we think that will promote judicial

14   economy in this particular case.  Judge Proctor is very

10:47 15   capable.  He has handled other MDL's in the past.  I was

16   fortunate enough to be one of the lawyers in the Total

17   Body litigation.  He handled that very efficiently and

18   effectively, and through his efforts we were able to get

19   it resolved.  We think he would be an excellent judge in

20   this case.

21          Alabama also has another connection.  It's like

22   the nexus to our whole argument in this case.  Alabama

23   Press Register yesterday published an article that said

24   that Alabama was probably the worst state in the whole

25   country because 88 percent of all insureds were insured by

10:48  1    Blue Cross.  So there is no competition in Alabama, and

2    that's what this case is about.

3              As a matter of cleaning up a couple of

4    housekeeping matters also, Pat Penley from Louisiana and

5    Gordon Ball from Tennessee both have filed advocating the

6    case to go to Louisiana.  I think they have refiled more

7    papers saying --

8              JUDGE BARABADORO:  What do you say to the

9    argument that there are filed-rate doctrine defenses with

10    several issues --

11         MR. DAVIS:  Well, Filed-rate is one of the

12    factors we have to look at, but I don't think it's going

13    to be controlling in this case, your Honor.

14              JUDGE BARBADORO:  All right.  Thank you very

10:49 15    much.

16              Mr. Whatley.

17         MR. WHATLEY:  I'm Joe Whatley.  I'm speaking on

18    behalf of the provider plaintiffs and the movants with

19    respect to centralization and in terms clearly there is an

20    issue.

21              JUDGE BARBADORO:  Hospitals, doctors.

22         MR. WHATLEY:  Yes, sir.  All of that.  There are

23    some issues that are specific to each state that vary.

24    There is no question about that.  But if you look at the

25    cases the variance would be --

10:49   1          JUDGE BARABADORO:  Is the variance about issues

       2    of law or substantially different discovery that's going

       3    to be required?

       4          MR. WHATLEY:  Your Honor, there will be some

       5    very common discovery.  As an example this is about

       6    whether the geographic restrictions on competition --

       7    whether that's a per se violation of the antitrust laws.

       8    So you will have that common legal question that

       9    predominates all the cases.  You will also have discovery

      10    from the association, for example, how they came up with

      11    this rule.

      12          JUDGE BARABADORO:  So basic antitrust claims are

      13    going to be common.  The basic expert discovery is common.

      14    I'm trying to figure out if there is going to be any

10:50 15    requirement for case-specific discovery as a result of

      16    these arguments.

      17          MR. WHATLEY:  There will be some case specific

      18    discovery, but you also have the instance here -- and I

      19    guess this only happens in law school where we have the

      20    Plessy case and being argued before Judge Furgeson.  But

      21    the Plessy case covers all the same kinds of claims in one

      22    case.  So there is total overlap between what's in the

      23    Plessy case and what is in the North Carolina case and

      24    what is in the Alabama cases and what is in all the other

      25    cases.  So yes, there is going to be some case-specific

10:51   1   discovery on the Filed-rate Doctrine and whether there

        2   will be MCarran-Ferguson defenses, but those will not

        3   predominate because of the other issues that will come

        4   out, not only the development of this rule by the

        5   association that prohibits competition but the exception

        6   to that.  For example, in Judge Breyer's state, Blue Cross

        7   and Blue Shield compete against each other, and there will

        8   be discovery common to why that happened.  We know why

        9   that happened, but that would be an important fact for all

       10   cases.  I have reserved one minute.

       11           JUDGE HEYBURN:  Mr. Laytin.

       12           MR. LAYTIN:  Dan Laytin for Blue Cross Blue

       13   Shield Association.  There are twenty sets of plaintiffs

       14   that have filed complaints all the over the country

10:52  15   alleging the structure of our system is an antitrust

       16   conspiracy.  And each complaint alleges the same facts

       17   regarding that conspiracy.  Yes, there are state specific,

       18   region specific, even more specific specific issues

       19   relating to this case, and some of those are factual, and

       20   some of them are legal.  But that doesn't change the fact

       21   if you line the complaints up and you line up their

       22   factual allegations to what they allege, your factual

       23   allegations are identical regardless of jurisdiction.

       24   Plessy is a great example of that, but you can look to any

       25   two.  So on issues like the context and structure of the

10:52  1    Blue Cross Blue Shield system, of the license agreement,

2    the allegations in the complaint are identical.  19 of the

3    20 are class actions.  8 of them are nationwide.  So in

4    essence, we have the same plaintiffs alleging the same

5    facts.

6              JUDGE RENDELL:  Same discovery?

7              MR. LAYTIN:  Some will be the same.  Some of the

8    legal issues won't be.  Some of the issues that might get

9    raised in dispositive motions may be different, but that's

10   no different than other cases where there is state law

11   claims.

12             JUDGE FURGESON:  By the way, in some of the

13   opposition briefs there is allegations that some of these

14   cases are procedurally different

10:53 15             MR. LAYTIN:  That's correct.  The only

16   procedural difference is in North Carolina a motion to

17   dismiss is pending.  But there is a motion outstanding for

18   oral argument outstanding for many months now.  In

19   Tennessee, we filed an opening motion to dismiss, but

20   plaintiffs have not responded.  There has been discovery

21   of any kind.  There have been stays --

22             JUDGE BARBADORO:  Just for my information, the

23   group that you were representing is different from

24   Mr. Hoover's group how?  You were the association of all

25   of them and he's representing the individual state?

10:54   1          MR. LAYTIN:  My primary client is Blue Cross

2      Blue Shield.  We own the rights to the marks.  And we

3      license them to insurance plans that operate in areas as

4      Blue Plans.  For the purpose of this argument, I'm

5      representing the Blue Plan, but my primary client is Blue

6      Cross Blue Shield.  So our licensing agreement is under

7      attack in these 20 states.  So all of that counsels that

8      the parallel litigation lead to inefficiency.  So 1407(a)

9      is met.  The additional point is parallel litigation

10      would lead to conflicting legal rulings.  The Blue System

11      is a national federation of these regional plans, and if

12      we have a license agreement that's not enforceable

13      consistently across the country, we are not able to

14      compete as a federation, as a system --

10:54  15          JUDGE BARABADORO:  Is it a uniform licensing

16      agreement?

17          MR. LAYTIN:  For most intents and purposes, yes.

18      And so we think there is an additional reason here that if

19      we had lack of uniformity we would not be able to compete

20      as a nationwide system against competitors like Aetna and

21      United.  We think it should be consolidated in Alabama.

22          JUDGE HEYBURN:  Thank you.

23          MR. HOOVER:  Craig Hoover for 19 individual Blue

24      Cross Blue Shield plans across the country.  All of them

25      support centralization in Alabama.  I am going to be

10:55  1  discussing individual plans.  And separately the Lifewatch

2  case which is a case where someone is advocating to be

3  separated from an MDL.  Each of these 19 defendants have

4  been named in multiple cases in multiple courts across the

5  country alleging the same nationwide conspiracy.  Absent

6  centralization, risks of inconsistent rulings and

7  discovery being burdensome is great.  By way of example,

8  the small Blue Cross Blue Shield of Hawaii is sued in four

9  different courts, all thousands of miles away from its

10  home state.  Other small plans face a similar predicament

11  with these 20 cases having been filed.  Plaintiffs argue

12  there is not going to be a burden because each plaintiff

13  has sued in their home state.  That brief was filed a

14  couple of months ago.  At this point no plaintiff has sued

10:56 15  in his home state, and every plaintiff has sued in at

16  least three different courts.

17       JUDGE RENDELL:  Is there going to be an issue of

18  the relevant market for each of the plans?

19       MR. HOOVER:  There are going to be issues about

20  relevant markets, but I think, as addressed before, there

21  is an over arching issue that's out there about the Blue

22  Cross Blue Shield licensing system and whether the

23  exclusive service areas -- the allocation of those is an

24  antitrust violation, that the issues that come up with

25  local markets come up in lots of cases where the panel as

10

10:57   1    you alluded to said there may be additional issues, but

2    those are about the effects on individual class members,

3    not the basic core the antitrust litigation.

4         JUDGE KAPLAN: Is that true? If it turns out to

5    be a rule of reason case, isn't the commercial context of

6    the effect of the license provision potentially different

7    in those states where you have extremely heavy competition

8    like in the State of Alabama where you are close to a

9    monopoly?

10        MR. HOOVER: If it turns out to be a rule of

11    reason case, there will be differences. I don't think

12    having 20 separate cases in 20 separate courts aids in

13    that process when you still have the per se violation

14    across the board that is in the complaint right now that

10:57 15    is common. For that reason I don't think there -- There

16    will be differences, yes, but I don't think that leads to

17    centralization.

18        If I could turn briefly to the Lifewatch case

19    which you are being asked to separate from the MDL. I'm

20    speaking for all six defendants in that case. They are

21    all defendants in the other cases as well. There is

22    complete overlap. Discovery is being sought in Lifewatch.

23    Lifewatch alleges that there is an allocation of

24    territories which is an antitrust violation. A chart was

25    handed to me earlier showing all the differences in the

10:58 1    Lifewatch case.  The most important similarity isn't on

2    the chart, and that is on Page 12 there is a statement,

3    "Allocation of territories, antitrust conspiracy."  That's

4    the same conspiracy that an MDL somewhere is going to be

5    looking at.  And in the Pennsylvania court is looking at

6    the same conspiracy and making a decision with the same

7    defendants.  That doesn't make any sense.

8              JUDGE FURGESON:  By the way, that case is a

9    tag-along one, correct?

10             MR. HOOVER:  Yes.

11             JUDGE FURGESON:  So if there was an MDL set up,

12   and that tag-along issue could be decided when the motion

13   is filed and when it comes before us because it would come

14   as a tag-along.

10:59 15             MR. HOOVER:  I understand.  You are correct.

16   That could occur to be sure.

17             And the other thing I want to say about

18   Lifewatch is just because there are state law claims and

19   just because it's an individual case as opposed to a class

20   action, the Panel has consistently ruled it's okay to have

21   an individual case with class actions and state law issues

22   can be worked out by an appeal judge.

23             JUDGE HEYBURN:  I know the panel has addressed

24   this.  The way this will come up is in a future tag-along,

25   and everybody will make their arguments at that time.

10:59  1          Ms. Alexander.

2          MS. ALEXANDER:  Laura Alexander.  We represent

3     three of the subscriber plaintiffs with actions currently

4     filed in Alabama, and we oppose centralization, and my

5     colleague highlighted exactly why.  Alabama like each of

6     these states has unique factual circumstances that are

7     critical to resolving this case.  It has very limited

8     regulation of the insurance markets by the state.  Each

9     state is going to be different in those respects, and

10    those issues are critical.  I would also like to say that

11    I think the common factual circumstances between these

12    cases have been vastly overstated.  When you look at what

13    the proponents of centralization allege are the common

14    factual circumstances, they break down to three

11:00 15    categories, none of which merit centralization.  There are

16    common questions of law such as whether the agreements in

17    this case are illegal under the Sherman act.  There are

18    undisputed facts such as whether the agreements exist.

19    It's true that all the complaints do allege that the same

20    types of agreements exist.  But Blue Cross has publicly

21    acknowledged those agreements for many years.

22          JUDGE RENDELL:  Isn't there going to be common

23    discovery about what the conduct was and what the

24    agreements are?  That's something we look at, whether for

25    pretrial purposes the discovery is going to be common.

11:01  1    How would it not be common?

       2              MS. ALEXANDER:  You are absolutely right, Judge

       3    Rendell.  There will be common discovery.  But I think

       4    there are means that can be used to deal with --

       5              JUDGE RENDELL:  In what ways would it not be

       6    common?  What unique discovery is going to be required?

       7              JUDGE FURGESON:  Especially as to defendants.

       8              MS. ALEXANDER:  Well, as Judge Kaplan mentioned

       9    earlier, I think there are market issues, and I think,

      10    Judge Rendell, you raised this as well, that are going to

      11    be critical, especially if it's decided under the rule of

      12    reasons.  If it is market definition it's going to be

      13    critical.  And those markets are going to be state and

      14    local markets.

11:02 15              And this gets to the third category of alleged

      16    common facts that are not, in fact, common facts but

      17    common issues.

      18              JUDGE BREYER:  Well, if it's a per se case, it's

      19    a per se, and --

      20              MS. ALEXANDER:  I respectfully disagree, Judge

      21    Breyer.  If it's a per se case, the differences come up in

      22    damages.  And that's all going to turn on state level

      23    competition.

      24              JUDGE BREYER:  But the liability issue is gone,

      25    and then you break it down in terms of damages, and

11:02   1   generally you do that with everybody's case.  Not

2   everybody's case but the vast, vast number of cases.  The

3   damages are unique to a particular plaintiff and so forth.

4   That doesn't prevent centralization, the fact that it

5   doesn't preclude it, especially if liability is common.

6       MS. ALEXANDER:  If I could respond briefly.  I

7   think with respect to the association that may be to some

8   extent true, but certainly with respect to the individual

9   plans, it's not true.  And then I would also just add to

10   the extent that plaintiffs like ourselves have claims that

11   are limited to the association and to a particular state

12   plan, being involved in all of that discovery which the

13   damages discovery will take place concurrently with the

14   liability discovery will significantly delay our cases and

11:03  15   drag in issues that we don't need to be a part of.

16   Anymore questions?

17       JUDGE HEYBURN:  Thank you very much.

18       Mr. Isaacson.

19       MR. ISAACSON:  Yes, your Honor, if I could turn

20   to the top, we oppose centralization.  If I can turn to

21   the top of the overlapping versus the nonoverlapping

22   discovery, because whether this is a per se case, a

23   quick-look case or a rule-of-reason case, the

24   nonoverlapping discovery will clearly predominant here.

25   As the counsel for the association said, the per se case

11:04   1   is an attack on the license agreement.  That would also

2   include the rules and regulations.  That's some of the

3   simplest of discovery to conduct.  Those are documents.

4   There is a history of those documents.

5          The complex discovery here comes about in

6   determining the competitive fact of those agreements,

7   whether or not this is a rule-of-reason case or not, and

8   that is going to be a localized determination.  Once there

9   is an agreement not to the compete in an area, the

10   discovery will then concern who are the actual and

11   potential competitors in those areas.  It's not simply a

12   damages question.  That's a competitive effect questions,

13   an injury question and ultimately for quantification

14   purposes a damages question.

11:04 15          JUDGE KAPLAN:  Isn't it true that granting the

16   basic proposition that you are advocating for the

17   moment -- that is, the discovery on competitive effect for

18   Alabama may focus on very different documents and so forth

19   than in New York -- the parameters of the kind of

20   discovery that's appropriate to assess competitive effect

21   can be said on a national basis.  Isn't that true?

22          MR. ISAACSON:  You can set guidelines on a

23   national basis in the same sense that you could write an

24   article about this case.  But the determination of who's

25   going to be deposed, who are the potential competitors in

16

11:05  1    that area, are going to be localized, and there is no

2    reason, for example, the lawyers representing the North

3    Carolina class which doesn't overlap with an Alabama

4    class, to attend those depositions.

5            JUDGE KAPLAN:  They should --

6            MR. ISAACSON:  That's right.  But there is no

7    reason to bring them all together to work on

8    nonoverlapping cases, to work on nonoverlapping

9    competitive effects which the only central issue here is

10    essentially a decisional one, one about whether there is a

11    per se case or not, which we think it is, but the

12    defendants will vigorously fight that.  They will then

13    it's been pointed out raise other decisional issues which

14    will vary from state to state such as the filed-rate

11:06 15    doctrines and other doctrines which depend on the

16    insurance regulatory scheme.  And as we said in our

17    papers, ultimately it makes the most sense for the judge

18    in Alabama, Judge Proctor, to look over the case for the

19    Alabama insurers, and I'm speaking about the insurers.

20            JUDGE FURGESON:  Judge Proctor is a wonderful

21    judge, very thoughtful.  You are assuming that judge

22    Proctor has to have the case all the way through the

23    discovery phase.  He doesn't.  He can say let's do the

24    issue on the common license agreement and send you home.

25    You are assuming he has to take the case to the end.  And

11:07  1    he doesn't have to do that.  And he's so bright that he

       2    can figure that out if a good lawyer like you were to make

       3    that argument clear to him.

       4              JUDGE BARBADORO:  I disagree with that proffer.

       5              MR. ISAACSON:  I have not always had that

       6    effect.  You are the judges I am before today.  And I'm

       7    expressing to you that centralization because there is a

       8    common legal issue which there is going to be vast amount

       9    of nonoverlapping discovery on the insured side means the

      10    insured cases should not be centralized, and there is no

      11    reason to centralize the provider case because the only

      12    national provider case is already in Alabama.  So the only

      13    issue as a practical matter is the insureds.  And I don't

      14    think there is any question that dumping all of this on

11:08 15    one judge's lap which means separate class motions,

      16    separate expert reports and separate arguments about

      17    markets for all of these states, doesn't make sense to

      18    have all of those separate issues put all on to one

      19    docket.

      20              JUDGE HEYBURN:  Thank you very much.

      21              Ms. Phillip.

      22              MS. PHILLIP:  Lara Phillip on behalf of

      23    Lifewatch.  Lifewatch was identified in a case filed by

      24    BCBSA as a potential tag-along.  It's our position that

      25    Lifewatch should not be transferred -- It's completely

18

11:08  1    different from them.  I provided this panel this morning a

       2    demonstrative that helps to illustrate the

       3    differences between Lifewatch and the other actions.

       4              JUDGE FURGESON:  You realize this is a

       5    tag-along, and this kind of argument can be made at a

       6    later stage of the case?

       7              MS. PHILLIP:  I do.  I realize under Rule 7.1

       8    the panel has three options.  They can say it's a

       9    tag-along action and one is to take no action.  So we ask

      10    that based upon the record before you that the panel not

      11    issue a transitional order in this case.

      12              One of the primary differences in these

      13    transactions is they, in fact, allege completely different

      14    conspiracies.  The defendants say it's the same

11:09 15    conspiracy, but it's not.  Lifewatch has alleged a

      16    purchaser conspiracy between BCBSA and the Blue Cross Plan

      17    to adopt uniform medical policies that deny coverage from

      18    individual technologies like the cardiac telemetry

      19    services offered by Lifewatch.  In the contrast, all the

      20    actions allege a subtle conspiracy to divide and allocate

      21    the market for the sale of products.  And the five or six

      22    paragraphs in Lifewatch's is 106 paragraph complaint that

      23    addressed these geographic allocations of the market is in

      24    our complaint to help provide an explanation as to both

      25    the motivation for the plans to enter this conspiracy

11:10  1    which actually the crux of our complaint as well as to

2    explain how the plan preserves their market power.  Our

3    case alleges a different product market.  The product

4    market in Lifewatch is the cardiac telemetry services.

5    The other market is health insurance.  The products are

6    different.  Lifewatch is a provider of medical technology.

7    The cases have different competitive effects.  We had a

8    common law tortious interference claim; none of the other

9    cases do.  Our case was brought by a single plaintiff, and

10   all the other are class actions.  And because our case is

11   focused on conspiracy, the focus of discovery in our case

12   will be completely different.  We will focus on the

13   BCBSA's medical policy panel, the adoption of the medical

14   policies and the abduction of the availability of our

11:11  15   services due to conspiracy.  None of these issues are in

16   the other actions.  To the extent there is any minimal

17   amount of overlapping discovery, this can be dealt with by

18   the parties.  And we're completely agreeable --

19          JUDGE VRATIL:  Would you consider dismissing

20   those allegations that do allege the conspiracy that they

21   are talking about here?

22          MS. PHILLIP:  While they are not central to our

23   claims, they are back of the background of our story.  So

24   we're not actively talking about dismissing the

25   allegations out of the complaint.

20

11:11  1          JUDGE VRATIL:  They are more than window

      2    dressing?

      3          MS. PHILLIP:  They help to tell the story, but

      4    not central to the case.

      5          JUDGE VRATIL:  It's an issue you will likely

      6    want to do discovery on?

      7          MS. PHILLIP:  And we will share that discovery

      8    with other parties.

      9          MR. WHATLEY:  First of all, Judge Kaplan, every

     10    plaintiff in every case has a per se claim.  In the Plessy

     11    case, there is overlap.

     12          JUDGE KAPLAN:  You are not suggesting the

     13    Supreme Court has ruled on this point, yet.

     14          MR. WHATLEY:  I'm not.  And there are

11:12 15    alternative rule of reasons asserted, but in every case

     16    there is a per se claim.  There is overlap between the

     17    classes in terms of article Mr. Davis cited.  He said

     18    Hawaii is Number 2 and Michigan is Number 3.  Both heavily

     19    concentrated as the same reason for Alabama.  And the

     20    plaintiff in both of those cases support centralization.

     21          Finally, Judge Furgeson, in terms of what Judge

     22    Proctor has a history of doing and can do, he has already

     23    appointed a special master to move the discovery forward

     24    expeditiously.  It's the same special master that served

     25    Judge Pointer in breast implant and Judge Proctor in Total

11:13   1   Body.  Nobody will be left behind, and you are right if it

2   gets to the point where something needs to be remanded

3   under lexicon or trial or final discovery, it can be done.

4           JUDGE HEYBURN:  Thank you, we'll take the matter

5   under submission.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3      I, Cassidi L. Casey, certify that during the

4  proceedings of the foregoing-styled and -numbered cause, I

5  was the official reporter and took in stenotypy such

6  proceedings and have transcribed the same as shown by the

7  above and foregoing Pages 1 through 22 and that said

8  transcript is true and correct.

9

10      I further certify that the transcript fees and format

11  comply with those prescribed by the court and the Judicial

12  Conference of the United States.

13

14

15                          s/Cassidi L. Casey

16                          _____
                            CASSIDI L. CASEY
                            UNITED STATES DISTRICT REPORTER
17                          NORTHERN DISTRICT OF TEXAS
                            DALLAS DIVISION
18                          CSR NUMBER 1703

19

20

21

22

23

24

25

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**< Dates >**
**November 29, 2012** 1:8
**-numbered** 22:4

**< 1 >**
**1** 22:7
**106** 18:22
**12** 11:2
**1407(a** 8:8
**1703** 22:21
**19** 7:2, 8:23, 9:3

**< 2 >**
**2** 20:18
**20** 7:3, 8:7, 9:11, 10:12
**22** 22:7
**2406** 1:7, 3:2

**< 3 >**
**3.** 20:18

**< 7 >**
**7.1** 18:7

**< 8 >**
**8** 7:3
**88** 3:25

**< A >**
**A.** 2:18, 2:28
**abduction** 19:14
**able** 3:18, 8:13, 8:19
**above** 22:7
**Absent** 9:5
**absolutely** 13:2
**acknowledged** 12:21
**across** 8:13, 8:24, 9:4, 10:14
**act** 12:17
**action** 11:20, 18:9
**actions** 7:3, 11:21, 12:3, 18:3, 18:20, 19:10, 19:16
**actively** 19:24
**actual** 15:10
**actually** 19:1

**add** 14:9
**additional** 8:9, 8:18, 10:1
**addressed** 9:20, 11:23, 18:23
**adopt** 18:17
**adoption** 19:13
**Advertising** 3:7
**advocating** 4:5, 9:2, 15:16
**Aetna** 8:20
**ago** 9:14
**agreeable** 19:18
**agreement** 7:1, 8:6, 8:12, 8:16, 15:1, 15:9, 16:24
**agreements** 12:16, 12:18, 12:20, 12:21, 12:24, 15:6
**aids** 10:12
**al** 2:4, 2:16, 2:22, 2:28, 2:29, 2:35
**Alabama** 2:8, 2:14, 3:9, 3:21, 3:22, 3:24, 4:1, 5:24, 8:21, 8:25, 10:8, 12:4, 12:5, 15:18, 16:3, 16:18, 16:19, 17:12, 20:19
**ALEXANDER** 2:31, 12:1, 12:2, 13:2, 13:8, 13:20, 14:6
**allegations** 6:22, 6:23, 7:2, 7:13, 19:20, 19:25
**allege** 6:22, 12:13, 12:19, 18:13, 18:20, 19:20
**alleged** 13:15, 18:15
**alleges** 6:16, 10:23, 19:3
**alleging** 6:15, 7:4, 9:5
**allocate** 18:20
**Allocation** 9:23, 10:23, 11:3
**allocations** 18:23
**alluded** 10:1
**already** 17:12, 20:22
**alternative** 20:15
**amount** 17:8, 19:17
**an injury** 15:13
**Anthem** 2:16
**Antitrust** 1:8, 5:7, 5:12, 6:15, 9:24, 10:3, 10:24, 11:3
**appeal** 11:22
**appointed** 20:23
**appropriate** 15:20
**arching** 9:21
**area** 15:9, 16:1
**areas** 8:3, 9:23, 15:11
**argue** 9:11

**argued** 5:20
**argument** 3:22, 4:9, 7:18, 8:4, 17:3, 18:5
**arguments** 5:16, 11:25, 17:16
**article** 3:23, 15:24, 20:17
**asserted** 20:15
**assess** 15:20
**Association** 2:22, 5:10, 6:5, 6:13, 7:24, 14:7, 14:11, 14:25
**assuming** 16:21, 16:25
**attack** 8:7, 15:1
**attend** 16:4
**availability** 19:14
**away** 9:9

**< B >**
**back** 19:23
**background** 19:23
**Ball** 4:5
**BARABADORO** 4:8, 5:1, 5:12, 8:15
**BARBADORO** 1:29, 4:14, 4:21, 7:22
**based** 18:10
**basic** 5:12, 5:13, 10:3, 15:16
**basis** 15:21, 15:23
**BCBSA** 17:24, 18:16, 19:13
**behalf** 3:6, 4:18, 17:22
**behind** 21:1
**Birmingham** 2:14
**Blue** 1:7, 2:22, 3:3, 3:4, 4:1, 6:6, 6:7, 6:12, 7:1, 8:1, 8:2, 8:4, 8:5, 8:6, 8:10, 8:23, 8:24, 9:8, 9:21, 9:22, 12:20, 18:16
**board** 10:14
**Body** 3:17, 21:1
**BOIES** 2:38
**break** 12:14, 13:25
**breast** 20:25
**Breyer** 1:37, 6:6, 13:21
**brief** 9:13
**briefly** 10:18, 14:6
**briefs** 7:13
**bright** 17:1
**bring** 16:7
**brought** 19:9
**burden** 9:12
**burdensome** 9:7

**< C >**
**California** 1:39
**capable** 3:15
**Carder** 2:28
**cardiac** 18:18, 19:4
**Carolina** 5:23, 7:16, 16:3
**case-specific** 5:15, 5:25
**cases** 3:10, 3:11, 3:12, 4:25,
5:9, 5:24, 5:25, 6:10, 7:10,
7:14, 9:4, 9:11, 9:25, 10:12,
10:21, 12:12, 14:2, 14:14,
16:8, 17:10, 19:7, 19:9, 20:20
**CASEY** 22:3, 22:15, 22:17
**CASSIDI** 22:3, 22:17
**categories** 12:15
**category** 13:15
**cause** 22:4
**CB** 2:4, 3:7
**central** 16:9, 19:22, 20:4
**centralization** 4:19, 8:25,
9:6, 10:17, 12:4, 12:13,
12:15, 14:4, 14:20, 17:7,
20:20
**centralize** 17:11
**centralized** 17:10
**certainly** 14:8
**certify** 22:3, 22:10
**Cerven** 2:35
**Chairman** 1:17
**change** 6:20
**Charles** 1:37
**chart** 10:24, 11:2
**Chicago** 2:26
**Circuit** 1:35
**circumstances** 12:6, 12:11,
12:14
**cited** 20:17
**claim** 19:8, 20:10, 20:16
**claims** 5:12, 5:21, 7:11,
11:18, 14:10, 19:23
**class** 7:3, 10:2, 11:19, 11:21,
16:3, 16:4, 17:15, 19:10
**classes** 20:17
**cleaning** 4:3
**clear** 17:3
**clearly** 4:19, 14:24
**client** 8:1, 8:5
**clients** 3:6

**close** 10:8
**COHEN** 2:32
**COHN** 2:44
**colleague** 12:5
**comes** 11:13, 15:5
**commercial** 10:5
**common** 5:5, 5:8, 5:13, 6:8,
10:15, 12:11, 12:13, 12:16,
12:22, 12:25, 13:1, 13:3,
13:6, 13:16, 13:17, 14:5,
16:24, 17:8, 19:8
**compete** 6:7, 8:14, 8:19,
15:9
**competition** 4:1, 5:6, 6:5,
10:7, 13:23
**competitive** 15:6, 15:12,
15:17, 15:20, 16:9, 19:7
**competitors** 8:20, 15:11,
15:25
**complaint** 6:16, 7:2, 10:14,
18:22, 18:24, 19:1, 19:25
**complaints** 6:14, 6:21, 12:19
**complete** 10:22
**completely** 17:25, 18:13,
19:12, 19:18
**complex** 15:5
**comply** 22:11
**concentrated** 20:19
**concern** 15:10
**concurrently** 14:13
**conduct** 12:23, 15:3
**Conference** 22:12
**conflicting** 8:10
**connection** 3:21
**consider** 19:19
**considering** 3:5
**consistently** 8:13, 11:20
**consolidated** 3:12, 8:21
**conspiracies** 18:14
**conspiracy** 6:16, 6:17, 9:5,
11:4, 11:6, 18:15, 18:16,
18:20, 18:25, 19:11, 19:15,
19:20
**conspiracy.** 11:3
**context** 6:25, 10:5
**contrast** 18:19
**controlling** 4:13
**Conway** 2:10
**core** 10:3
**correct** 7:15, 11:9, 11:15,

22:8
**counsel** 14:25
**counsels** 8:7
**country** 3:25, 6:14, 8:13,
8:24, 9:5
**couple** 4:3, 9:14
**Court** 1:18, 1:22, 1:26, 1:30,
1:34, 1:38, 1:42, 11:5, 20:13,
22:11
**courts** 9:4, 9:9, 9:16, 10:12
**coverage** 18:17
**covers** 5:21
**Craig** 2:18, 8:23
**critical** 12:7, 12:10, 13:11,
13:13
**Cross** 1:7, 2:22, 3:3, 3:4, 4:1,
6:6, 6:12, 7:1, 8:1, 8:6, 8:24,
9:8, 9:22, 12:20, 18:16
**crux** 19:1
**CSR** 22:21
**currently** 3:9, 12:3

**< D >**
**DALLAS** 22:20
**damages** 13:22, 13:25, 14:3,
14:13, 15:12, 15:14
**Dan** 6:12
**DANIEL** 2:24
**Davis** 2:6, 2:7, 3:6, 4:11,
20:17
**deal** 13:4
**dealt** 19:17
**decided** 11:12, 13:11
**decision** 11:6
**decisional** 16:10, 16:13
**defendants** 9:3, 10:20,
10:21, 11:7, 13:7, 16:12,
18:14
**defenses** 4:9, 6:2
**definition** 13:12
**delay** 14:14
**demonstrative** 18:2
**deny** 18:17
**depend** 16:15
**deposed** 15:25
**depositions** 16:4
**determination** 15:8, 15:24
**determining** 15:6
**Detroit** 2:45

**development** 6:4
**difference** 7:16
**differences** 10:11, 10:16, 10:25, 13:21, 18:3, 18:12
**different** 5:2, 7:9, 7:10, 7:14, 7:23, 9:9, 9:16, 10:6, 12:9, 15:18, 18:1, 18:13, 19:3, 19:6, 19:7, 19:12
**disagree** 13:20, 17:4
**Discovery** 5:2, 5:5, 5:9, 5:13, 5:15, 5:18, 6:1, 6:8, 7:6, 7:20, 9:7, 10:22, 12:23, 12:25, 13:3, 13:6, 14:12, 14:13, 14:14, 14:22, 14:24, 15:3, 15:5, 15:10, 15:17, 15:20, 16:23, 17:9, 19:11, 19:17, 20:6, 20:7, 20:23, 21:3
**discussing** 9:1
**dismiss** 7:17, 7:19
**dismissing** 19:19, 19:24
**dispositive** 7:9
**DISTRICT** 1:18, 1:19, 1:22, 1:23, 1:26, 1:27, 1:30, 1:31, 1:34, 1:38, 1:39, 1:42, 1:43, 3:8, 22:18, 22:19
**divide** 18:20
**DIVISION** 22:20
**docket** 17:19
**doctors** 4:21
**Doctrine** 4:9, 6:1
**doctrines** 16:15
**documents** 15:3, 15:4, 15:18
**doing** 20:22
**done** 21:3
**down** 12:14, 13:25
**drag** 14:15
**dressing** 20:2
**due** 19:15
**dumping** 17:14
**during** 22:3

**< E >**
**E.** 2:24
**earlier** 10:25, 13:9
**economy** 3:14
**effect** 10:6, 15:12, 15:17, 15:20, 17:6
**effectively** 3:18
**effects** 10:2, 16:9, 19:7

**efficiently** 3:17
**efforts** 3:18
**ELLIS** 2:25
**end** 16:25
**enforceable** 8:12
**enough** 3:16
**enter** 18:25
**Especially** 13:7, 13:11, 14:5
**essence** 7:4
**essentially** 16:10
**et** 2:4, 2:16, 2:22, 2:28, 2:35
**everybody** 11:25, 14:1, 14:2
**exactly** 12:5
**example** 5:5, 5:10, 6:6, 6:24, 9:7, 16:2
**excellent** 3:19
**exception** 6:5
**exclusive** 9:23
**exist** 12:18, 12:20
**expeditiously** 20:24
**expert** 5:13, 17:16
**explain** 19:2
**explanation** 18:24
**expressing** 17:7
**extent** 14:8, 14:10, 19:16
**extremely** 10:7

**< F >**
**face** 9:10
**fact** 6:9, 6:20, 13:16, 14:4, 15:6, 18:13
**factors** 4:12
**facts** 6:16, 7:5, 12:18, 13:16
**factual** 6:19, 6:22, 12:6, 12:11, 12:14
**federation** 8:11, 8:14
**fees** 22:10
**FETSCO** 2:43
**fight** 16:12
**figure** 5:14, 17:2
**filed** 4:5, 6:14, 7:19, 9:11, 9:13, 11:13, 12:4, 17:23
**Filed-rate** 4:9, 4:11, 6:1, 16:14
**final** 21:3
**Finally** 20:21
**First** 20:9
**five** 18:21
**FLEXNER** 2:38

**focus** 15:18, 19:11, 19:12
**focused** 19:11
**foregoing** 22:7
**foregoing-styled** 22:4
**format** 22:10
**forth** 14:3, 15:18
**fortunate** 3:16
**forward** 20:23
**four** 9:8
**Fred** 2:28
**Furgeson** 1:25, 5:20, 20:21
**future** 11:24

**< G >**
**G.** 1:17
**GC** 3:7
**generally** 14:1
**geographic** 5:6, 18:23
**gets** 13:15, 21:2
**Gordon** 4:5
**granting** 15:15
**great** 6:24, 9:7
**GREGORY** 2:6
**group** 7:23, 7:24
**guess** 5:19
**guidelines** 15:22

**< H >**
**H.** 1:21
**Hampshire** 1:31
**handed** 10:25
**handled** 3:15, 3:17
**happened** 6:8, 6:9
**happens** 5:19
**Hawaii** 9:8, 20:18
**health** 19:5
**HEARING** 1:13
**heavily** 20:18
**heavy** 10:7
**help** 18:24, 20:3
**helps** 18:2
**HEYBURN** 1:17, 3:2, 6:11, 8:22, 14:17, 21:4
**highlighted** 12:5
**history** 15:4, 20:22
**HOGAN** 2:19
**home** 9:10, 9:13, 9:15, 16:24
**HONIGMAN** 2:44

**Honor** 4:13, 5:4, 14:19
**HOOVER** 2:18, 7:24, 8:23, 9:19, 10:10, 11:10, 11:15
**Hospitals** 4:21
**housekeeping** 4:4

**< I >**
**identical** 6:23, 7:2
**identified** 17:23
**II** 1:17
**illegal** 12:17
**Illinois** 2:26
**illustrate** 18:2
**implant** 20:25
**important** 6:9, 11:1
**Inc.** 2:16, 2:41
**include** 15:2
**inconsistent** 9:6
**individual** 7:25, 8:23, 9:1, 10:2, 11:19, 11:21, 14:8, 18:18
**inefficiency** 8:8
**information** 7:22
**instance** 5:18
**instead** 3:12
**insurance** 3:4, 8:3, 12:8, 16:16, 19:5
**insured** 3:25, 17:9, 17:10
**insureds** 3:25, 17:13
**insurers** 16:19
**intents** 8:17
**interference** 19:8
**involved** 14:12
**ISAACSON** 2:37, 14:18, 14:19, 15:22, 16:6, 17:5
**issue** 4:20, 9:17, 9:21, 11:12, 13:24, 16:9, 16:24, 17:8, 17:13, 18:11, 20:5
**issues** 4:10, 4:23, 5:1, 6:3, 6:18, 6:25, 7:8, 9:19, 9:24, 10:1, 11:21, 12:10, 13:9, 13:17, 14:15, 16:13, 17:18, 19:15

**< J >**
**J.** 1:29
**Jerry** 2:10
**Joe** 2:12, 4:17

**John** 1:17
**Jr** 2:28
**JUDGE** 3:2, 3:9, 3:14, 3:19, 4:8, 4:14, 4:21, 5:1, 5:12, 5:20, 6:6, 6:11, 7:6, 7:22, 8:15, 8:22, 9:17, 11:22, 12:22, 13:2, 13:5, 13:8, 13:10, 13:20, 14:17, 16:17, 16:18, 16:20, 16:21, 17:15, 19:19, 20:1, 20:5, 20:9, 20:21, 20:25, 21:4
**JUDGE BARBADORO** 17:4
**JUDGE BREYER** 13:18, 13:24
**JUDGE FURGESON** 7:12, 11:8, 11:11, 13:7, 16:20, 18:4
**JUDGE HEYBURN** 11:23, 17:20
**JUDGE KAPLAN** 10:4, 15:15, 16:5, 20:12
**judges** 17:6
**Judicial** 1:1, 3:13, 22:11
**jurisdiction** 6:23

**< K >**
**Kallas** 2:13
**Kansas** 1:23
**Kaplan** 1:41, 13:8, 20:9
**Kathryn** 1:21
**Kelli** 2:35
**Kentucky** 1:19
**kind** 7:21, 15:19, 18:5
**kinds** 5:21
**KIRKLAND** 2:25

**< L >**
**L.** 2:6, 22:3, 22:15, 22:17
**lack** 8:19
**lap** 17:15
**Lara** 2:43, 17:22
**later** 18:6
**Laura** 2:31, 12:2
**law** 5:2, 5:19, 7:10, 11:18, 11:21, 12:16, 19:8
**laws** 5:7
**lawyer** 17:2
**lawyers** 3:16, 16:2
**LAYTIN** 2:24, 6:11, 6:12, 7:7,

7:15, 8:1, 8:17
**lead** 8:8, 8:10
**leads** 10:16
**least** 9:16
**left** 21:1
**legal** 5:8, 6:20, 7:8, 8:10, 17:8
**level** 13:22
**lexicon** 21:3
**liability** 13:24, 14:5, 14:14
**license** 7:1, 8:3, 8:12, 10:6, 15:1, 16:24
**licensing** 8:6, 8:15, 9:22
**Lifewatch** 2:41, 9:1, 10:18, 10:22, 10:23, 11:1, 11:18, 17:23, 17:25, 18:3, 18:15, 18:19, 18:22, 19:4, 19:6
**likely** 20:5
**limited** 12:7, 14:11
**line** 6:21
**Litigation** 1:2, 1:8, 3:17, 8:8, 8:9, 10:3
**LLC** 2:4, 2:13
**LLP** 2:25, 2:38, 2:44
**local** 9:25, 13:14
**localized** 15:8, 16:1
**look** 4:12, 4:24, 6:24, 12:12, 12:24, 16:18
**looking** 11:5
**lots** 9:25
**Louis** 1:41
**Louisiana** 4:4, 4:6
**LOVELLS** 2:19

**< M >**
**Marjorie** 1:33
**market** 9:18, 13:9, 13:12, 18:21, 18:23, 19:2, 19:3, 19:4, 19:5
**markets** 9:20, 9:25, 12:8, 13:13, 13:14, 17:17
**marks** 8:2
**master** 20:23, 20:24
**matter** 4:3, 17:13, 21:4
**matters** 4:4
**Mcarran-ferguson** 6:2
**MDL** 3:15, 9:3, 10:19, 11:4, 11:11
**means** 13:4, 17:9, 17:15

**medical** 18:17, 19:6, 19:13
**Members** 1:21, 3:3, 10:2
**mentioned** 13:8
**merit** 12:15
**met** 8:9
**Michigan** 2:45, 20:18
**miles** 9:9
**MILLER** 2:44
**MILSTEIN** 2:32
**minimal** 19:16
**minute** 6:10
**moment** 15:17
**monopoly** 10:9
**Montgomery** 2:8
**months** 7:18, 9:14
**morning** 18:1
**motion** 7:16, 7:17, 7:19, 11:12
**motions** 7:9, 17:15
**motivation** 18:25
**movants** 4:18
**move** 20:23
**MS** 12:1, 12:2, 13:2, 13:8, 13:20, 14:6, 17:21, 17:22, 18:7, 19:22, 20:3, 20:7
**MULTI-DISTRICT** 1:2
**multiple** 9:4

**< N >**
**named** 9:4
**national** 8:11, 15:21, 15:23, 17:12
**nationwide** 7:3, 8:20, 9:5
**Necessity** 3:5
**need** 14:15
**needs** 21:2
**New** 1:31, 1:43, 15:19
**Next** 3:2
**nexus** 3:22
**Nobody** 21:1
**None** 12:15, 19:8, 19:15
**nonoverlapping** 14:21, 14:24, 16:8, 17:9
**North** 5:23, 7:16, 16:2
**NORTHERN** 1:27, 1:39, 3:8, 22:19
**NUMBER** 1:7, 14:2, 20:18, 22:21

**< O >**
**O.** 1:33
**occur** 11:16
**offered** 18:19
**official** 22:5
**okay** 11:20
**Once** 15:8
**One** 3:11, 3:12, 3:16, 4:11, 5:21, 6:10, 11:9, 16:10, 17:15, 17:18, 18:9, 18:12
**opening** 7:19
**operate** 8:3
**oppose** 12:4, 14:20
**opposed** 11:19
**opposition** 7:13
**options** 18:8
**oral** 7:18
**order** 18:11
**ourselves** 14:10
**outstanding** 7:17, 7:18
**overlap** 5:22, 10:22, 16:3, 20:11, 20:16
**overlapping** 14:21, 19:17
**overstated** 12:12
**own** 8:2

**< P >**
**Page** 11:2
**Pages** 22:7
**Panel** 1:1, 3:4, 3:8, 9:25, 11:20, 11:23, 18:1, 18:8, 18:10, 19:13
**papers** 4:7, 16:17
**paragraph** 18:22
**paragraphs** 18:22
**parallel** 8:8, 8:9
**parameters** 15:19
**part** 14:15
**particular** 3:14, 14:3, 14:11
**parties** 19:18, 20:8
**past** 3:15
**Pat** 4:4
**Paul** 1:29
**pending** 3:10, 7:17
**Penley** 4:4
**Pennsylvania** 11:5
**per** 5:7, 10:13, 13:18, 13:19, 13:21, 14:22, 14:25, 16:11,

20:10, 20:16
**percent** 3:25
**phase** 16:23
**PHILLIP** 2:43, 17:21, 17:22, 18:7, 19:22, 20:3, 20:7
**place** 14:13
**plaintiff** 9:12, 9:14, 9:15, 14:3, 19:9, 20:10, 20:20
**Plaintiffs** 4:18, 6:13, 7:4, 7:20, 9:11, 12:3, 14:10
**Plan** 8:5, 14:12, 18:16, 19:2
**Plans** 8:3, 8:4, 8:11, 8:24, 9:1, 9:10, 9:18, 14:9, 18:25
**Plessy** 5:20, 5:21, 5:23, 6:24, 20:10
**point** 8:9, 9:14, 20:13, 21:2
**pointed** 16:13
**Pointer** 20:25
**policies** 18:17, 19:14
**policy** 19:13
**position** 17:24
**potential** 15:11, 15:25, 17:24
**potentially** 10:6
**power** 19:2
**practical** 17:13
**preclude** 14:5
**predicament** 9:10
**predominant** 14:24
**predominate** 6:3
**predominates** 5:9
**prescribed** 22:11
**preserves** 19:2
**PRESIDING** 1:15
**Press** 3:23
**pretrial** 12:25
**prevent** 14:4
**primary** 8:1, 8:5, 18:12
**probably** 3:24
**procedural** 7:16
**procedurally** 7:14
**proceed** 3:13
**proceedings** 22:4, 22:6
**process** 10:13
**Proctor** 3:9, 3:14, 16:18, 16:20, 16:22, 20:22, 20:25
**product** 19:3
**products** 18:21, 19:5
**proffer** 17:4
**prohibits** 6:5
**promote** 3:13

proponents 12:13
proposition 15:16
provide 18:24
provided 18:1
provider 3:11, 4:18, 17:11, 17:12, 19:6
provision 10:6
publicly 12:20
published 3:23
purchaser 18:16
purpose 8:4
purposes 8:17, 12:25, 15:14
put 17:18

< Q >
quantification 15:13
question 4:24, 5:8, 15:12, 15:13, 15:14, 17:14
questions 12:16, 14:16, 15:12
quick-look 14:23

< R >
R. 1:37, 2:12, 2:28, 2:35
raise 16:13
raised 7:9, 13:10
re 1:7
realize 18:4, 18:7
reason 8:18, 10:5, 10:11, 10:15, 16:2, 16:7, 17:11, 20:19
reasons 13:12, 20:15
record 18:10
refiled 4:6
regarding 6:17
regardless 6:23
region 6:18
regional 8:11
Register 3:23
regulation 12:8
regulations 15:2
regulatory 16:16
relating 6:19
relevant 9:18, 9:20
remanded 21:2
Rendell 1:33, 7:6, 9:17, 12:22, 13:3, 13:5, 13:10
REPORTER 22:5, 22:18

reports 17:16
represent 12:2
representing 7:23, 7:25, 8:5, 16:2
requesting 3:7
required 5:3, 13:6
requirement 5:15
reserved 6:10
resolved 3:19
resolving 12:7
respect 4:19, 14:7, 14:8
respectfully 3:7, 13:20
respects 12:9
respond 14:6
responded 7:20
restrictions 5:6
result 5:15
Richards 2:28
rights 8:2
risks 9:6
Roofing 2:4, 3:7
Royal 1:25
Rule 3:5, 5:11, 6:4, 10:5, 10:10, 13:11, 18:7, 20:15
rule-of-reason 14:23, 15:7
ruled 11:20, 20:13
rules 15:2
rulings 8:10, 9:6

< S >
s/cassidi 22:15
sale 18:21
saying 4:7
scheme 16:16
SCHILLER 2:38
school 5:19
SCHWARTZ 2:44
se 5:7, 10:13, 13:18, 13:19, 13:21, 14:22, 14:25, 16:11, 20:10, 20:16
SELLERS 2:32
send 3:8, 16:24
sense 11:7, 15:23, 16:17, 17:17
separate 10:12, 10:19, 17:15, 17:16, 17:18
separated 9:3
separately 9:1
served 20:24

service 9:23
Services 2:41, 18:19, 19:4, 19:15
set 11:11, 15:22
sets 6:13
seven 3:10
several 4:10
share 20:7
Sherman 12:17
Shield 1:7, 2:22, 3:3, 3:4, 6:7, 6:13, 7:1, 8:2, 8:6, 8:24, 9:8, 9:22
showing 10:25
shown 22:6
side 17:9
significantly 14:14
similar 9:10
similarity 11:1
simplest 15:3
simply 15:11
single 19:9
sir 4:22
six 3:11, 10:20, 18:21
small 9:8, 9:10
someone 9:2
somewhere 11:4
sought 10:22
Southern 1:43
speaking 4:17, 10:20, 16:19
special 20:23, 20:24
specific 4:23, 5:17, 6:17, 6:18
stage 18:6
State 3:24, 4:23, 6:6, 6:17, 7:10, 7:25, 9:10, 9:13, 9:15, 10:8, 11:18, 11:21, 12:8, 12:9, 13:13, 13:22, 14:11, 16:14
statement 11:2
STATES 1:1, 1:18, 1:22, 1:26, 1:30, 1:34, 1:38, 1:42, 8:7, 10:7, 12:6, 17:17, 22:12, 22:18
stays 7:21
stenotypy 22:5
story 19:23, 20:3
structure 6:15, 6:25
submission 21:5
subscriber 3:11, 12:3
substantially 5:2

**subtle** 18:20
**sued** 9:8, 9:13, 9:14, 9:15
**suggesting** 20:12
**support** 8:25, 20:20
**Supreme** 20:13
**System** 6:15, 7:1, 8:10, 8:14, 8:20, 9:22

**< T >**
**tag-along** 11:9, 11:12, 11:14, 11:24, 17:24, 18:5, 18:9
**TALIAFERRO** 2:7
**technologies** 18:18
**technology** 19:6
**telemetry** 18:18, 19:4
**Tennessee** 4:5, 7:19
**terms** 4:19, 13:25, 20:17, 20:21
**territories** 10:24, 11:3
**TEXAS** 1:27, 22:19
**Third** 1:35, 13:15
**Thomas** 2:28
**thoughtful** 16:21
**thousands** 9:9
**three** 9:16, 12:3, 12:14, 18:8
**today** 17:6
**together** 16:7
**TOLL** 2:32
**took** 22:5
**top** 14:20, 14:21
**tortious** 19:8
**Total** 3:16, 5:22, 20:25
**tracks** 3:13
**transactions** 18:13
**transcribed** 22:6
**TRANSCRIPT** 1:13, 22:8, 22:10
**transferred** 17:25
**transitional** 18:11
**trial** 21:3
**true** 10:4, 12:19, 14:8, 14:9, 15:15, 15:21, 22:8
**trying** 5:14
**turn** 10:18, 13:22, 14:19, 14:20
**turns** 10:4, 10:10
**twenty** 6:13
**two** 3:6, 3:12
**two.** 6:25

**types** 12:20

**< U >**
**ultimately** 15:13, 16:17
**understand** 11:15
**undisputed** 12:18
**uniform** 8:15, 18:17
**uniformity** 8:19
**unique** 12:6, 13:6, 14:3
**UNITED** 1:1, 1:18, 1:22, 1:26, 1:30, 1:34, 1:38, 1:42, 8:21, 22:12, 22:18

**< V >**
**variance** 4:25, 5:1
**vary** 4:23, 16:14
**vast** 14:2, 17:8
**vastly** 12:12
**versus** 14:21
**vigorously** 16:12
**violation** 5:7, 9:24, 10:13, 10:24
**VRATIL** 1:21, 19:19, 20:1, 20:5

**< W >**
**W.** 1:25
**Washington** 2:20, 2:33, 2:39
**ways** 13:5
**Western** 1:19
**WHATLEY** 2:12, 2:13, 4:16, 4:17, 4:22, 5:4, 5:17, 20:9, 20:14
**whether** 5:6, 5:7, 6:1, 9:22, 12:16, 12:18, 12:24, 14:22, 15:7, 16:10
**whole** 3:22, 3:24
**will** 3:13, 5:4, 5:8, 5:9, 5:17, 6:2, 6:3, 6:7, 7:7, 10:11, 10:16, 11:24, 11:25, 13:3, 14:13, 14:14, 14:24, 15:10, 16:12, 16:14, 19:12, 20:5, 20:7, 21:1
**WILLIAM** 2:37
**window** 20:1
**wonderful** 16:20
**work** 16:7, 16:8

**worked** 11:22
**worst** 3:24
**write** 15:23

**< Y >**
**years** 12:21
**yesterday** 3:23
**York** 1:43, 15:19