# EXHIBIT A

## U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: 1:13-cv-00405-S-LDA

Steward Health Care System LLC et al v. Blue Cross & Blue Shield of Rhode Island

Assigned to: Judge William E. Smith

Referred to: Magistrate Judge Lincoln D. Almond

Cause: 15:2 Antitrust Litigation

Date Filed: 06/04/2013

Jury Demand: Plaintiff

Nature of Suit: 410 Anti-Trust

Jurisdiction: Federal Question

**Plaintiff**

**Steward Health Care System LLC**    represented by    **Robert Clark Corrente**
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
831-8330
Email: rcorrente@burnslev.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Hardy**
Williams & Connolly, LLP
725 12th Street, NW
Washington, DC 20005
202-434-5257
Fax: 202-824-4135
Email: jhardy@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven R. Kuney**
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005
202-434-5843
Fax: 202-824-4135
Email: skuney@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas T. Reith**
Burns & Levinson, LLP
125 Summer Street
Boston, MA 02110
617-345-3000
Fax: 617-345-3299
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Blackstone Medical Center, Inc.**
*formerly known as*
Steward Medical Holdings Subsidiary
Four, Inc.

represented by **Robert Clark Corrente**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven R. Kuney**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas T. Reith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Blackstone Rehabilitation Hospital, Inc.**
*formerly known as*
Steward Medical Holding Subsidiary
Four Rehab, Inc.

represented by **Robert Clark Corrente**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven R. Kuney**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas T. Reith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Blue Cross & Blue Shield of Rhode Island**

represented by **John A. Tarantino**
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor

Providence, RI 02903
274-7200
Fax: 351-4607
Email: jtarantino@apslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia K. Rocha**
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903
274-7200
Fax: 351-4607
Email: procha@apslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2013 | 1 | COMPLAINT ( filing fee paid $ 400.00 receipt number 14670011057 ), filed by Blackstone Rehabilitation Hospital, Inc., Steward Health Care System LLC, Blackstone Medical Center, Inc. (Attachments: # 1 Civil Cover Sheet)(Farrell Pletcher, Paula) (Entered: 06/04/2013) |
| 06/04/2013 | | Summons Issued as to Blue Cross & Blue Shield of Rhode Island. (Farrell Pletcher, Paula) (Entered: 06/04/2013) |
| 06/10/2013 | 2 | NOTICE of Appearance by John A. Tarantino on behalf of Blue Cross & Blue Shield of Rhode Island (Tarantino, John) (Entered: 06/10/2013) |
| 06/10/2013 | 3 | NOTICE of Appearance by Patricia K. Rocha on behalf of Blue Cross & Blue Shield of Rhode Island (Rocha, Patricia) (Entered: 06/10/2013) |
| 06/10/2013 | 4 | Corporate Disclosure Statement by Blue Cross & Blue Shield of Rhode Island. (Tarantino, John) (Entered: 06/10/2013) |
| 06/10/2013 | 5 | Corporate Disclosure Statement by Blackstone Medical Center, Inc., Blackstone Rehabilitation Hospital, Inc., Steward Health Care System LLC. (Corrente, Robert) (Entered: 06/10/2013) |
| 06/12/2013 | 6 | SUMMONS Returned Executed by Blackstone Rehabilitation Hospital, Inc., Steward Health Care System LLC, Blackstone Medical Center, Inc.. Blue Cross & Blue Shield of Rhode Island served on 6/6/2013, answer due 6/27/2013. (Urizandi, Nisshy) (Entered: 06/13/2013) |
| 06/20/2013 | 7 | MOTION for Kevin Hardy to Appear Pro Hac Vice by All Plaintiffs. (Corrente, Robert) (Entered: 06/20/2013) |
| 06/20/2013 | 8 | MOTION for Steven R. Kuney to Appear Pro Hac Vice by All Plaintiffs. (Corrente, Robert) (Entered: 06/20/2013) |

| 06/20/2013 | 9 | MOTION for Thomas T. Reith to Appear Pro Hac Vice by All Plaintiffs. (Corrente, Robert) (Entered: 06/20/2013) |
|---|---|---|
| 06/25/2013 | 10 | APPLICATION FOR ADMISSION PRO HAC VICE re 8 MOTION for Steven R. Kuney to Appear Pro Hac Vice by All Plaintiffs NOTICE: In order to view this document, you must first log in using your CMECF Filer login. . (Jackson, Ryan) (Entered: 06/26/2013) |
| 06/25/2013 | 11 | APPLICATION FOR ADMISSION PRO HAC VICE re 7 MOTION for Kevin Hardy to Appear Pro Hac Vice by All Plaintiffs NOTICE: In order to view this document, you must first log in using your CMECF Filer login. . (Jackson, Ryan) (Entered: 06/26/2013) |
| 06/25/2013 | 12 | APPLICATION FOR ADMISSION PRO HAC VICE re 9 MOTION for Thomas T. Reith to Appear Pro Hac Vice by All Plaintiffs NOTICE: In order to view this document, you must first log in using your CMECF Filer login. . (Jackson, Ryan) (Entered: 06/26/2013) |
| 06/26/2013 | 13 | STIPULATION re 1 Complaint, *enlarging Defendant's time to answer or otherwise respond* by All Parties. (Tarantino, John) (Entered: 06/26/2013) |
| 07/10/2013 | | TEXT ORDER granting 7 Motion to Appear Pro Hac Vice of Kevin Hardy; granting 8 Motion to Appear Pro Hac Vice of Steven R. Kuney; granting 9 Motion to Appear Pro Hac Vice of Thomas T. Reith. So Ordered by Judge William E. Smith on 7/10/13. (Jackson, Ryan) (Entered: 07/10/2013) |

FILED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

2013 JUN -4  A 10: 29

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC, BLACKSTONE MEDICAL CENTER, INC., f/k/a STEWARD MEDICAL HOLDING SUBSIDIARY FOUR, INC., BLACKSTONE REHABILITATION HOSPITAL, INC., f/k/a STEWARD MEDICAL HOLDING SUBSIDIARY FOUR REHAB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CA 13- 405 S

Case No. _____

JURY TRIAL DEMANDED

### COMPLAINT

Plaintiffs Steward Health Care System LLC, Blackstone Medical Center, Inc.,

f/k/a Steward Medical Holding Subsidiary Four, Inc., and Blackstone Rehabilitation

Hospital, Inc., f/k/a Steward Medical Holding Subsidiary Four Rehab, Inc. (collectively

"Steward"), by and through counsel, bring this action for treble damages against

Defendant Blue Cross & Blue Shield of Rhode Island ("BCBSRI") pursuant to Section 2

of the Sherman Act; Section 4 of the Clayton Act; and Section 6-36-5 of the Rhode Island

Antitrust Act, R.I. Gen Laws § 6-36-1 *et seq.*, and for compensatory damages for

BCBSRI's tortious interference with Plaintiffs' contractual and prospective contractual

relations.  Plaintiffs complain and allege as follows:

## Introduction

1.     This is an antitrust and tort suit arising out of BCBSRI's unlawful attempted and actual monopolization of the market for the sale of commercial health insurance in Rhode Island, and BCBSRI's unlawful attempted and actual monopolization of the market for the commercial purchase of hospital services in Rhode Island, by interfering with and causing the failure of Steward's attempt to acquire Landmark Medical Center ("Landmark").

2.     BCBSRI is the dominant provider of commercial (i.e., non-governmental) health insurance in Rhode Island.  According to the Rhode Island Office of the Health Insurance Commissioner ("OHIC"), BCBSRI's commercial health insurance policies cover more than 70% of the commercially insured population of Rhode Island, and its share has remained at that dominant level for years.  An American Medical Association ("AMA") report recently classified Rhode Island as among the "top 10" states with the least competitive commercial health insurance markets.

3.     Blue Cross's market dominance is not limited to the sale of commercial health insurance.  BCBSRI is also the dominant commercial purchaser of hospital services in Rhode Island.

4.     By engaging in the anticompetitive conduct described herein, including its refusal to negotiate in good faith for reasonable reimbursement rates for Landmark, its needless and intentional disruption of Landmark's patient and payment flows, further damaging the hospital's already troubled finances, and its active role in discouraging other health care providers from dealing with Steward, BCBSRI purposely thwarted Steward's acquisition and planned revitalization of Landmark, and thereby excluded from

Rhode Island a community-based, integrated health care delivery system and accountable care organization, dedicated to delivering more affordable health care and more affordable health insurance in the communities it serves.  In so doing, BCBSRI unlawfully preserved its monopoly power in the markets for the sale of commercial health insurance and the commercial purchase of hospital services, and harmed not only Steward, which had invested millions of dollars in its effort to acquire Landmark and enter the Rhode Island markets, but also Rhode Island consumers, who were deprived of the benefits Steward's entry would have brought to Rhode Island—lower-cost, high quality hospital services and lower-cost, more affordable health insurance.

## Parties and Jurisdiction

5.      Plaintiff Steward Health Care System LLC is a Delaware limited liability company with its principal place of business at 500 Boylston Street, Boston, Massachusetts 02116.  Steward is a community-based, integrated health care delivery system and accountable care organization, dedicated to delivering affordable health care in the communities it serves.  Steward currently owns 11 hospitals in Massachusetts, including Saint Anne's Hospital and Morton Hospital, which are located near Rhode Island and serve patients from Rhode Island.

6.      Plaintiff Blackstone Medical Center, Inc., f/k/a Steward Medical Holding Subsidiary Four, Inc., is a Delaware corporation with a principal place of business at 500 Boylston Street, Boston, Massachusetts 02116, and a wholly owned subsidiary of Steward.  Blackstone was created to acquire and operate Landmark on behalf of Steward.

7.      Plaintiff Blackstone Rehabilitation Hospital, Inc., f/k/a Steward Medical Holdings Subsidiary Four Rehab, Inc., is a Delaware corporation with a principal place of

3

business at 500 Boylston Street, Boston, Massachusetts 02116, and a wholly owned
subsidiary of Steward.  Blackstone was created to acquire and operate the Rehabilitation
Hospital of Rhode Island ("RHRI") on behalf of Steward.

8.     Defendant Blue Cross & Blue Shield of Rhode Island is a Rhode Island
non-profit hospital service and medical service corporation, as authorized and organized
in accordance with R.I. Gen. Laws. § 27-19-1 *et seq.* and § 27-20-1 *et seq.*, with its
principal place of business at 500 Exchange Street, Providence, Rhode Island 02903.
BCBSRI is in the business of purchasing health care services, including hospital services,
and providing health insurance for its members and members of affiliated health plans in
its service area, which includes Rhode Island and parts of Massachusetts bordering
Rhode Island.

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331
and 1337(a) because Plaintiffs bring their claims under Section 4 of the Clayton Act, 15
U.S.C. § 15, to recover treble damages and costs of suit, including reasonable attorneys'
fees, against BCBSRI for the injuries sustained by Plaintiffs by reason of the violation, as
hereinafter alleged, of Section 2 of the Sherman Act, 15 U.S.C. § 2.

10.    BCBSRI is engaged in interstate commerce and in activities substantially
affecting interstate commerce, and the conduct alleged herein substantially affects
interstate commerce.  BCBSRI provides commercial health insurance that covers Rhode
Island residents when they travel outside of Rhode Island, and purchases health care in
interstate commerce when Rhode Island residents require health care outside of Rhode
Island.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §

1332 based on diversity of citizenship.

12.     The amount in controversy exceeds $75,000, exclusive of interest and

costs.

13.     This Court also has supplemental jurisdiction over Plaintiffs' state law

claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims

that they form part of the same case or controversy and involve a common nucleus of

operative fact.  The exercise of supplemental jurisdiction avoids unnecessary duplication

and multiplicity of actions and is in the interests of judicial economy, convenience, and

fairness.

14.     This Court has personal jurisdiction over BCBSRI because it is a Rhode

Island corporation, has its principal place of business in Rhode Island, and has at all times

relevant hereto systematically and continuously transacted substantial business in Rhode

Island.

15.     Venue is proper in this district pursuant to Sections 4 and 12 of the

Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391, because BCBSRI transacts

business and resides in this District, and a substantial part of the events or omissions

giving rise to the claims occurred in this District..

## Factual Background

### Steward's Success in Reviving Community-Based Hospital Care and Offering Lower-Cost Health Insurance

16.     Steward owns and operates a health care system that includes community-

based hospitals and community-based physicians, with the goal of delivering value in the

form of high quality care at an affordable cost.  Steward's model is that of an accountable

care organization, which involves a team-based approach to address care across the continuum from the home to the physician's office, at the hospital and during post-acute care, with the goal of delivering most care in the local community. By increasing care coordination among providers and delivering more health care locally, Steward is able to enhance quality and lower the cost of delivering health care services.

17.     Fundamental to Steward's approach is the revitalization of community hospitals. According to a study by Nancy M. Kane of the Harvard University School of Public Health, comparing the cost and quality of care at teaching hospitals versus community hospitals across six states, per-case inpatient costs are 19% higher at teaching hospitals than at community hospitals, but the quality of care in the two types of hospitals is comparable. These findings were confirmed in a recent report by the Rhode Island Office of the Health Insurance Commissioner, which found that "commercial insurers tend to pay higher rates to larger, most prestigious hospitals, with little obvious connection between payment rates and quality of care." Rhode Island Office of the Health Commissioner, "Variation in Payment for Hospital Care in Rhode Island" ("2012 OHIC Report"), at 1. To lower health care costs, Steward encourages the provision of high quality care at community hospitals, rather than the referral of patients to the higher-cost academic medical centers for services that community hospitals are fully capable of providing.

18.     The benefits of Steward's approach to health care have been demonstrated in Massachusetts, where Steward has acquired and revitalized a number of community hospitals that were in financial distress. With substantial investments in technology and infrastructure (new operating rooms, new emergency rooms, etc.), Steward is

transforming these community hospitals into high-quality, lower-cost alternatives to the more expensive academic medical centers in Boston. Even in the short period of Steward's ownership, the quality of medical care delivered at the Steward-owned community hospitals in Massachusetts has improved significantly. Steward's business model has been cited as a health-care model for the future, and Steward was chosen as one of 32 Pioneer Accountable Care Organizations nationwide by the federal Centers for Medicare and Medicaid Services. There are no such Pioneer Accountable Care Organizations currently in Rhode Island, and of the five such organizations in Boston, the four other than Steward are all affiliated with major academic medical centers.

19.     As part of Steward's efforts to lower health care costs in the communities it serves in Massachusetts, Steward has begun offering limited network health insurance plans for small businesses through Tufts Health Plan and Fallon Community Health Plan. By keeping as much care as possible within Steward's lower-cost, community-based network, Steward and its partners can offer health insurance at significant savings to consumers. The lower cost health insurance plans that Steward offers through its partnerships with insurance companies have been praised in press reports that reach residents and businesses in Rhode Island and elsewhere.

### Steward Bids to Acquire and Save the Financially Distressed Landmark Medical Center

20.     Landmark Medical Center ("Landmark") is a 214-bed, general acute care community hospital located in Woonsocket, Rhode Island. It provides residents of the Northern Rhode Island community with emergency, diagnostic, medical, surgical, cancer, cardiac, pain management, and obstetric care. It is also the area's second largest employer.

21.     Because of its troubled financial condition, Landmark has since 2008 been operated by a Special Master appointed by the Providence County Superior Court. The Special Master has sought to find a strategic partner capable of ensuring the long-term viability of Landmark, which he has characterized as "an important health care resource in Northern Rhode Island," and yet "one of the most disadvantaged hospitals in the state." In 2010, the Rhode Island General Assembly designated Landmark as a distressed essential community hospital. *See* R.I. Gen. Laws § 23-17.25-1(5) (2010).  In so doing, the General Assembly expressly found that "[b]ecause of the important medical services provided by [Landmark], restoring and ensuring the continued financial viability of [such] distressed essential community [hospital was] necessary for the public health and safety." R.I. Gen. Laws § 23-17.25-1(4) (2010).

22.     BCBSRI, which has accounted for a significant share of the commercial insurance payments to Landmark annually, was in substantial part responsible for the financial difficulties that forced Landmark into special mastership proceedings.  On March 21, 2011, the Special Master overseeing Landmark sued BCBSRI over its inadequate past reimbursements to Landmark, alleging that, "[s]ince 2001, Blue Cross reimbursement rates paid to Landmark have simply been inadequate to keep pace with Landmark's cost of doing business," and that in recent years BCBSRI has paid millions of dollars less per year than the cost of providing care to BCBSRI subscribers.  In the words of the Special Master, "Blue Cross'[s] inadequate payments to Landmark contributed significantly to Landmark's insolvency in 2008," and made more difficult both the operation of the hospital and the task of finding a purchaser that could preserve Landmark as an essential community hospital.

23.     The Special Master's suit was not the first indication that the reimbursement rates Landmark received from insurers such as Blue Cross were seriously deficient. In January 2010, the Rhode Island Office of the Health Insurance Commissioner issued a report entitled "Variations in Hospital Payment Rates by Commercial Insurers in Rhode Island" (the "2010 OHIC Report"). The report focused not only on Rhode Island's community hospitals, but also on hospitals belonging to the two large hospital systems in Rhode Island—LifeSpan and the Care New England Health System. LifeSpan and Care New England together own and operate five of Rhode Island's eleven hospitals, including both of the State's academic medical centers. The 2010 OHIC Report analyzed average hospital inpatient payments from the two major health plans in Rhode Island, BCBSRI and United Healthcare, to all of those hospitals. The report concluded that there are "wide variations in payments to hospitals on a case mix-adjusted basis" and that, "[a]s a result, hospitals affiliated with [the Lifespan and Care New England] systems  are paid more for similar services than un-affiliated hospitals," such as Landmark. *Id.* at 4. According to the report, in 2008, Landmark was paid only "78% of the case mix adjusted inpatient medical/surgical payments, indexed to average payment per inpatient stay." *Id.* at 15.

24.     On February 14, 2011, since the Special Master's efforts to find a partner to acquire Landmark had not yet been successful, the Court entered an order outlining a process whereby those interested in purchasing the assets and business of Landmark could submit formal bids. When none of those bids produced an acceptable buyer, in late May of 2011, Steward submitted its own proposal for the acquisition of Landmark and its

subsidiary, the Rehabilitation Hospital of Rhode Island ("RHRI"), and the Special Master

recommended that Steward's bid be accepted.

25.     BCBSRI filed an objection to Steward's proposed acquisition, citing,

among other things, the fact that Steward had not approached BCBSRI about a new

contract for Landmark, and a failed effort by Caritas Christi Health Care, a predecessor of

Steward's, to acquire Landmark in 2010.  On June 8, 2011, the Court entered an Order

authorizing the Special Master to execute the proposed Asset Purchase Agreement

("APA"), pursuant to which Steward would acquire Landmark and RHRI.

26.     Steward's plan for Landmark involved spending thirty million dollars on

capital improvements and another $4.5 million dollars on physician recruitment and

development to ensure that Landmark could provide top-quality care—equivalent or even

superior to that provided by the more-costly academic medical centers in Rhode Island.

Steward aimed to develop in Rhode Island the same type of health care network it had

successfully started in Massachusetts and to partner with insurance companies as it had in

Massachusetts to offer lower-cost, limited network insurance plans.  Steward knew that

its proposed investments were critical to the revitalization of Landmark, and to the

delivery of lower-cost, high quality health care in Rhode Island.  To sustain Landmark

while Steward was attempting to finalize its acquisition, Steward provided, among other

things, a $5 million line of credit to help cover Landmark's operating needs until the

transaction could close.

### BCBSRI Blocks Steward's Acquisition of Landmark and Entry into Rhode Island

27.     Once the APA had been executed, Steward turned its attention to

negotiating agreements with a number of third parties, including BCBSRI, that were

important to the financial future of Landmark. Given BCBSRI's position as the dominant commercial health insurance provider in Rhode Island, a contract with BCBSRI with reasonable reimbursement rates was an essential step in returning Landmark to profitability and supporting the investments Landmark would need to provide high-quality, cost-effective, community-based care.

28.   Steward and BCBSRI exchanged reimbursement rate proposals and counter-proposals in September and October of 2011. Steward believed that there were clear economic benefits to BCBSRI from a revitalized Landmark, operated by a company with the ability to lower costs through a community-based approach to health care. With Landmark starved for capital and unable to modernize adequately, patients in the Woonsocket community have increasingly traveled to the more-expensive academic medical centers elsewhere, including those affiliated with the Lifespan and Care New England systems. With a revitalized Landmark, treating patients from the Woonsocket community at these more costly medical centers would be significantly reduced, and the residents of the Woonsocket community would receive more cost-effective hospital care closer to home at Landmark. Reducing the unnecessary use of these more costly academic medical centers would be good for Rhode Island patients, good for lowering the cost of medical care and good for health insurers.

29.   On October 14, 2011, Steward filed the formal application required by the Rhode Island Hospital Conversion Act for permission to acquire Landmark and RHRI. That application identified several key components to the success of Steward's plans for Landmark and RHRI, including: (1) the establishment of a productive relationship with the Thundermist Health Center, a large primary care clinic in Woonsocket, (2) the

negotiation of adequate reimbursement rates with commercial insurers, and (3) the acquisition of full control of the Southern New England Regional Cancer Center, a joint venture between Landmark and Radiation Therapy Services of which Landmark then owned 38%.

30.    On January 17, 2012, Steward's application under the Hospital Conversion Act to acquire Landmark and RHRI was deemed complete.  On January 26, 2012, Steward also filed its initial Change in Effect Control Application, as required under Rhode Island law, for any proposed change to the owner or operator of a licensed health care facility.

31.    Within two weeks, a bill had been proposed in both houses of the Rhode Island legislature to amend the Hospital Conversion Act to eliminate a provision that barred any owner of a for-profit hospital from converting more than one Rhode Island hospital to for-profit status in any three year period—a limitation which would effectively preclude any effort by Steward to timely develop a network of Rhode Island hospitals and establish its community-based health care model in Rhode Island.

32.    BCBSRI engaged in an intensive lobbying campaign to prevent the passage of the amendment, and thereby discourage Steward's competitive entry into Rhode Island.  At a February 7, 2012 hearing before the Rhode Island House Corporations Committee, BCBSRI representative Monica Neronha testified that if the Act were changed to permit such conversions, any new multi-hospital network—and the network that Steward aimed to establish was the only one then being discussed in Rhode Island—should not be allowed to negotiate collectively with commercial health insurance providers on behalf of its entire group of hospitals.  If BCBSRI's proposal were adopted,

any network that a for-profit entity such as Steward might form could not, for purposes of bargaining with BCBSRI, function like a network at all.   BCBSRI suggested no similar limitation for the existing Lifespan or Care New England hospital networks.

33.     BCBSRI's proposal to require community hospitals that Steward might acquire to negotiate individually, and not as a network, would enable BCBSRI to continue to exercise its monopoly power in the commercial purchase of hospital services in Rhode Island by paying unreasonably low reimbursement rates to the community hospitals—low rates the Special Master had identified as a major contributor to Landmark's insolvency.

34.     In March of 2012, the APA was formally amended to add an expanded definition of a Material Adverse Effect on Landmark (the occurrence of which could allow a termination of the contract) and to enumerate certain conditions precedent to Steward's obligation to move forward with the acquisition, including the signing of an acceptable Memorandum of Understanding with Thundermist Health Center, and a definitive agreement to buy the remaining interest in the Southern New England Regional Cancer Center.

35.     On May 22, 2012 and May 25, 2012, respectively, the Rhode Island Department of Health and the State Attorney General approved Steward's application under the Hospital Conversion Act to acquire Landmark and RHRI.  On May 22, 2012, the Department of Health also accepted the recommendation of its Health Services Council that Steward's Change in Effective Control application be approved.

36.     On May 16, 2012, just prior to those approvals, and without providing notice to Landmark or Steward, BCBSRI filed a formal application with the Rhode Island

Department of Health to make a "material plan modification" to its insurance plan whereby it would remove Landmark from its provider network. As events later in the summer of 2012 would make clear, that application was the first step in BCBSRI's effort to further destabilize Landmark's already difficult financial condition.

37.     As negotiations between Steward and BCBSRI continued in May 2012, BCBSRI claimed that, despite public reports such as the one by the Rhode Island Office of the Health Insurance Commissioner, Landmark had not been disadvantaged on reimbursement rates. In response, Steward offered to accept reimbursement rates for inpatient and outpatient care that were just 95% of BCBSRI's statewide average rates— that is, 5% less than BCBSRI's statewide average rates for all hospitals (including other community hospitals) and substantially less than the rates OHIC reported that BCBSRI paid to the Care New England and Lifespan hospitals. Almost a month later, after a further exchange of information about Steward's proposal, BCBSRI responded by stating that it was not prepared to increase an offer it had made over three months earlier to Landmark.

38.     Throughout the spring and summer of 2012, BCBSRI's proposals to Steward contained base reimbursement rate increases that left Landmark substantially below the statewide average reimbursement rate, did not adequately compensate Landmark for the cost of providing service to BCBSRI subscribers, and tied a substantial portion of the rate increases it purportedly offered to quality measures that Steward representatives made clear to BCBSRI were unattainable at Landmark in the near term— that is, until the substantial investments Steward planned to make could improve the conditions at Landmark. Several of BCBSRI's proposals during this time period also

14

required Steward, as a condition of any rate increase going forward, to have the Special
Master dismiss with prejudice its lawsuit challenging BCBSRI's historically low
reimbursement rates to Landmark.

39.    On information and belief, BCBSRI understood that any further decline in
Landmark's already problematic financial condition would deter and likely prevent
Steward's acquisition of the hospital and thereby block its entry into the markets for
hospital services and commercial health insurance in Rhode Island. Accordingly,
beginning on or about July 11, 2012, before the Department of Health had completed its
review of BCBSRI's earlier, material plan modification request, BCBSRI began sending
letters to its subscribers and its doctors informing them (1) that the contracts between
BCBSRI and Landmark and RHRI were ending on July 16, 2012, and August 31, 2012,
respectively, (2) that BCBSRI felt there was little chance that new agreements would be
reached, and (3) that Landmark and RHRI would be considered "out of network" for
BCBSRI subscribers on August 1 and September 1, respectively. To BCBSRI
subscribers who utilized Landmark and RHRI, this was an obvious signal to seek services
elsewhere. Moreover, once the contracts expired, even though Landmark remained "in
network" because BCBSRI's material change application had not yet been approved,
BCBSRI unilaterally ceased making payments to Landmark for services its subscribers
received there, and instead began to reimburse its subscribers directly. This left
Landmark without direct reimbursement from the state's dominant insurance provider,
and with only the uncertain prospect of collecting from the patients themselves. For
those government services for which BCBSRI provided claims administration services,
BCBSRI's pace of payment to Landmark also dramatically slowed.

40.     These actions predictably caused a sharp decrease in patient volume and cash receipts at Landmark and RHRI.  In the words of the Special Master, BCBSRI's actions in this regard caused cash receipts at Landmark and RHRI to "decline[] precipitously," and put Landmark and RHRI into even more severe financial distress. Creating that uncertainty for its subscribers and adversely affecting the financial condition of Landmark at that time served BCBSRI's purpose of keeping Steward from closing on the acquisition and entering the Rhode Island markets for hospital services and health insurance.

41.     Steward had set forth in its original application under the Hospital Conversion Act the importance of Landmark maintaining and strengthening its working relationships with various other local health care providers serving the Woonsocket community, including the Thundermist Health Center.  On information and belief, BCBSRI discouraged Thundermist from dealing with Steward, and Thundermist was told that doing so might jeopardize its opportunities to engage in future profitable business opportunities with BCBSRI and Rhode Island's existing hospital networks.

42.     In September 2012, as the loss in patient volume at Landmark caused by BCBSRI's actions further compromised the hospital's already strained financial position, the Special Master sought Court permission to drop its lawsuit against BCBSRI in exchange for BCBSRI agreeing to resume its normal process of making direct payments to Landmark for services provided there to BCBSRI subscribers and to extend Landmark's contract to December 31, 2012, or three months after its acquisition.  The Special Master told the Court that he "believe[d] the very survival of Landmark and RHRI [was] at stake and that he had no alternative but to execute the MOU

16

[Memorandum of Understanding] on the conditions imposed by Blue Cross . . . ." The Special Master described his actions in accepting this agreement as "a full and absolute capitulation" to the demands of BCBSRI.

43.     After further efforts by Steward to negotiate a workable deal with BCBSRI, including participating in court-ordered mediation, failed, Steward announced on September 27, 2012 that it was terminating its effort to acquire Landmark.

44.     On information and belief, BCBSRI never had any intention of entering into a contract with Steward for reasonable and competitive reimbursement rates at Landmark.  Rather, BCBSRI (a) intentionally inserted unreasonable demands and conditions in its offers; (b) disrupted the operations of Landmark at a critical time with its undisclosed material change application, its letters to subscribers and providers, and its unilateral decision to make payments to its subscribers and not to Landmark, even while Landmark was still "in network"; and (c) sought to dissuade third parties from dealing with Steward—all in an effort to ensure that Steward would not move forward with its acquisition of Landmark.  By engaging in the conduct described herein, BCBSRI intended to and did in fact cause Steward's attempted acquisition of Landmark and RHRI to fail, and thereby excluded Steward from entering the market for hospital services and the market for commercial health insurance in Rhode Island.

### BCBSRI's Exclusionary Conduct Directed at Steward's Massachusetts Hospitals that Serve Rhode Island Residents

45.     In or about May 25, 2012, just after filing its application to remove Landmark from its network in Rhode Island, BCBSRI notified Steward that it would not renew its contracts with St. Anne's Hospital.  St. Anne's is a Steward-owned hospital, which is located on the border between Massachusetts and Rhode Island, and which has

historically contracted with BCBSRI for services to a number of BCBSRI subscribers who live in Rhode Island.

46.     Instead of contracting directly with St. Anne's, BCBSRI informed its Rhode Island subscribers that they could utilize the "BlueCard program" when receiving services at St. Anne's. The BlueCard Program is a national program whereby Blue Cross & Blue Shield plans in various states allow subscribers of one plan (the "home plan") to access benefits and rates negotiated by another plan while traveling or living outside of their home plan's service area.

47.     On information and belief, the BlueCard Program is designed and intended to be available only for health care services provided outside of the home plan's service area, and St. Anne's is not outside of BCBSRI's service area. By directing its subscribers to utilize the BlueCard Program at St. Anne's, BCBSRI received reimbursement at the rates negotiated by Blue Cross Blue Shield of Massachusetts ("BCBSMA"), less a fee required by the BlueCard Program.

48.     In an effort to reach a deal with BCBSRI for St. Anne's, Steward offered a new contract for St. Anne's at reimbursement rates that were equivalent to BCBSMA's rates, thereby saving BCBSRI the fees it was paying to use the BlueCard Program. Despite the obvious economic advantages of this proposal, BCBSRI rejected Steward's offer, and chose to continue paying a fee it did not have to pay.

49.     On information and belief, in an effort to discourage doctors from referring patients to St. Anne's and to further adversely affect Steward's business, BCBSRI began falsely telling doctors who practice at St. Anne's that St. Anne's has unnecessarily high commercial reimbursement rates. This predictably led some doctors

to be concerned that, if they refer patients to St. Anne's, they will not be eligible to receive certain shared savings that BCBSRI pays to doctors who utilize less costly procedures. BCBSRI has also terminated its Medicare Advantage contract with St. Anne's, thereby disrupting another source of patients both for St. Anne's and its doctors.

50. BCBSRI tried to justify its refusal to enter into a contract with St. Anne's by falsely claiming that St. Anne's owed it more than $10 million in alleged past overpayments, despite the records in St. Anne's billing office that show those allegations to be false.

51. BCBSRI's decision to forego a more economically advantageous business opportunity instead of contracting with Steward and its multiple efforts to discourage subscribers and doctors from using St. Anne's confirm BCBSRI's anticompetitive intent to maintain its monopoly power by interfering with Steward's efforts to create an efficient network of hospitals to serve Rhode Island residents and to partner with others in providing lower cost health insurance.

## BCBSRI Unlawfully Maintained its Dominant Position in the Relevant Markets

52. The relevant product markets at issue in this case are (1) the market for the sale of commercial health insurance, and (2) the market for the commercial purchase of hospital services. Both relevant product markets exclude government programs, such as Medicare and Medicaid, and other related products offered in part through commercial health insurers such as Medicare Advantage. For most individuals who do not qualify for government programs such as Medicare or Medicaid, there are no reasonable alternatives to commercial health insurance for the purchase of hospital services because paying for such services themselves, rather than through a commercial insurance provider, is

prohibitively expensive.  Similarly, for those selling hospital services, there are virtually no alternative commercial buyers of those services other than commercial insurance companies.

53.     The relevant geographic market is the State of Rhode Island.  The acute care hospitals in Rhode Island (the providers of hospital services) overwhelmingly serve Rhode Island residents, and the primary commercial purchasers of their services are the commercial insurance companies (such as BCBSRI, United, and Tufts) that purchase hospital services on behalf of their Rhode Island-based subscribers.  In a December 2012 report, the Commissioner concluded that "[t]he State of Rhode Island is the obvious [geographic market] definition, used in the past and supported by the *Dartmouth Atlas of Health Care* definition of the Providence hospital referral region as almost entirely contiguous with state lines." 2012 OHIC Report at 42.  According to the 2012 OHIC Report, over 90% of commercial hospital stays by Rhode Island residents occur in Rhode Island hospitals.  *Id.*

54.     The health insurance companies that operate in Rhode Island treat Rhode Island as a relevant geographic market.  BCBSRI—whose health insurance policies cover more than 70% of the commercially insured population of Rhode Island—is distinct from the Blue Cross Blue Shield organizations in other states, such as Massachusetts.  On information and belief, substantially all of BCBSRI's subscribers are Rhode Island residents.

55.     Consumers strongly prefer health insurance plans that provide access to hospitals and physicians close to their homes and workplaces.  Rhode Island residents cannot practicably turn to commercial health insurers in other states that do not offer

access to hospitals and physicians in Rhode Island, and that are not licensed to sell

insurance in Rhode Island.  The providers of hospital services in Rhode Island cannot

attract significant numbers of patients from outside of Rhode Island because of patients'

strong preference for treatment near their homes and workplaces.

56.    BCBSRI has market power and monopoly power in the market for the sale

of commercial health insurance, and has market power and monopsony power (that is,

monopoly power as a buyer, rather than a seller) in the market for the commercial

purchase of hospital services in Rhode Island.  BCBSRI is the dominant seller of

commercial health insurance in Rhode Island, and the dominant commercial purchaser of

hospital services in Rhode Island.  BCBSRI's share of both relevant markets has

exceeded 70% for years, and entry into the market for the sale of commercial health

insurance and the market for the commercial purchase of hospital services is difficult,

expensive and time-consuming.

57.    Further evidence of BCBSRI's market power and monopsony power in the

market for the commercial purchase of hospital services is its ability to price

discriminate.  As documented in the 2010 OHIC Report, BCBSRI pays different hospitals

different amounts for substantially the same services of the same quality.  The Office of

the Health Insurance Commissioner concluded that "the most likely reason for

differentials in commercial insurers' payments comes down to the balance of negotiating

strength between the parties."  2010 OHIC Report, at 24.  In the more recent 2012 OHIC

Report, the Office of the Health Insurance Commissioner found that "[w]ithin the

commercial market, the highest-paid hospitals received twice as much per stay as the

lowest-paid hospital." 2012 OHIC Report at 4.  And, once again, it concluded that

"variation in payment levels appears to be significantly influenced by negotiating leverage." *Id.* at 5.

58.     Steward's purchase of Landmark and creation of a Rhode Island-based network of providers would have limited BCBSRI's ability to exercise its monopsony power in the commercial purchase of hospital services.  As reflected in the 2010 OHIC Report and in the 2012 OHIC Report, this absence of negotiating leverage by Rhode Island's disaggregated community hospitals has allowed BCBSRI to pay substantially reduced reimbursement rates to those community hospitals, for substantially the same service with substantially the same quality of care, compared to the rates paid to hospitals that are part of the Lifespan and Care New England hospital systems.  On information and belief, BCBSRI understood that if Steward acquired Landmark and created a network of community hospitals as part of its model of delivering community-based health care, Steward would be better able to negotiate competitive reimbursement rates and would undermine BCBSRI's practice of imposing less than competitive reimbursement rates on Rhode Island's community hospitals.

59.     Steward's purchase of Landmark and creation of a Rhode Island-based provider network also threatened BCBSRI's monopoly power in the sale of commercial health insurance in Rhode Island.  Just as it had in Massachusetts, Steward's plan in Rhode Island involved partnering with insurance companies to offer lower-cost limited network insurance products in the communities that it serves.  On information and belief, BCBSRI was aware of Steward's plan to compete in the market for the sale of commercial health insurance in Rhode Island by offering lower-cost limited provider network products that would create new—and, from BCBSRI's perspective, unwanted—

price competition in the commercial health insurance market and reduce BCBSRI's

dominant position as a commercial purchaser of hospital services.

60.     To avoid these threats to its monopoly and monopsony positions in the

relevant markets, BCBSRI, through the conduct alleged herein, sought to and did

successfully prevent Steward's acquisition of Landmark and thereby excluded Steward

from the relevant markets.  In more competitive health care markets such as

Massachusetts, insurance companies see the benefits of partnering with Steward by

paying competitive reimbursement rates, agreeing to innovative forms of risk sharing and

jointly offering lower-cost, limited network insurance products, so that they can more

effectively compete to provide the highest quality, lowest cost products for subscribers.

BCBSRI's intent and ability to exclude Steward from the relevant markets are the

hallmarks of its monopoly and monopsony power.

61.     The conduct alleged in this complaint caused antitrust injury to Steward,

specifically by, without limitation, preventing Steward from acquiring Landmark, from

fulfilling its plans to form an efficient network of community hospitals in Rhode Island

and from participating in the market for the sale of commercial health insurance in Rhode

Island by partnering with insurance companies to offer lower-cost limited provider

network products.  Rhode Island residents, as consumers of hospital services in Rhode

Island and as purchasers of commercial health insurance in Rhode Island, have been

deprived of the benefits of competition Steward would have provided in both relevant

markets, including a revitalized, higher-quality and lower-cost network of community

hospitals, and lower-cost, more affordable hospital services and health insurance

products.

## COUNT I
### (Violation of § 2 of the Sherman Act: Unlawful Monopolization)

62.  Steward incorporates by reference paragraphs 1 through 61 above, as if fully alleged herein.

63.  The relevant geographic market is Rhode Island.

64.  The relevant product market is the market for the sale of commercial health insurance.

65.  BCBSRI possesses monopoly power in the market for the sale of commercial health insurance in Rhode Island.  BCBSRI has abused and continues to abuse its monopoly power to maintain and enhance its market dominance as the largest provider of commercial health insurance in Rhode Island, with a market share in excess of 70%, including without limitation by preventing Steward from acquiring Landmark and RHRI, preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island, and thereby excluding Steward from the market for the sale of commercial health insurance by precluding it from providing, in partnership with other insurance companies, lower-cost limited network insurance products to Rhode Island consumers.

66.  BCBSRI's unlawful maintenance and abuse of its monopoly power includes, but is not limited to, the following conduct:  (a) refusing to enter into a contract with Steward providing for reasonable reimbursement rates at Landmark; (b) taking steps to materially adversely affect the financial condition of Landmark prior to Steward's completion of its proposed acquisition of the hospital; (c) on information and belief, interfering with Steward's ability to enter into contracts with third parties, such as Thundermist Health Center; (d) terminating its contracts with Steward at St. Anne's and

refusing to enter into contracts with Steward at this hospital, despite being offered more

economically favorable terms than BCBSRI is currently receiving through the BlueCard

Program, which, on information and belief, it is using in violation of the Program's

policies; (e) preventing Steward from acquiring and establishing an efficient network of

community hospitals in and around Rhode Island; and (f) excluding Steward from the

market for the sale of commercial health insurance in Rhode Island.

67.     BCBSRI's conduct constitutes the unlawful establishment, maintenance or

use of a monopoly in the relevant market for the sale of commercial health insurance in

violation of Section 2 of the Sherman Act .

68.     As a direct and proximate result of BCBSRI's violation of Section 2 of the

Sherman Act, Steward has suffered injury to its business and property and damages in an

amount to be proven at trial.

**COUNT II**
**(Violation of § 2 of the Sherman Act: Attempt to Monopolize)**

69.     Steward incorporates by reference paragraphs 1 through 61 above, as if

fully alleged herein.

70.     The relevant geographic market is Rhode Island.

71.     The relevant product market is the market for the sale of commercial

health insurance.

72.     BCBSRI has attempted, and continues to attempt, to acquire and possess

monopoly power in the market for the sale of commercial health insurance in Rhode

Island.  BCBSRI—the largest provider of commercial health insurance in Rhode Island,

with a market share of over 70%—has acted with the specific intent to monopolize and

has attempted to acquire and possess monopoly power, including without limitation by

preventing Steward from acquiring Landmark and RHRI, preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island, and thereby excluding Steward from the market for the sale of commercial health insurance in which it would have participated by providing, in partnership with other insurance companies, lower-cost limited network insurance products to Rhode Island consumers.

73.    BCBSRI's attempt to monopolize includes, but is not limited to, the following conduct:  (a) refusing to enter into a contract with Steward providing for reasonable reimbursement rates at Landmark; (b) taking steps to materially adversely affect the financial condition of Landmark prior to Steward's completion of its proposed acquisition of the hospital; (c) on information and belief, interfering with Steward's ability to enter into contracts with third parties, such as Thundermist Health Center; (d) terminating its contracts with Steward at St. Anne's and refusing to enter into a contract with Steward at this hospital, despite being offered more economically favorable terms than BCBSRI is currently receiving through the BlueCard Program, which, on information and belief, it is using in violation of the Program's policies; (e) preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island; and (f) excluding Steward from the market for the sale of commercial health insurance in Rhode Island.

74.    BCBSRI's scheme to monopolize the relevant market for the sale of commercial health insurance has had success in excluding and foreclosing competition, and there is, and has been at all times relevant hereto, a dangerous probability of success of BCBSRI monopolizing this market.

75.    BCBSRI's conduct constitutes an unlawful attempt to establish a monopoly in the relevant market for the sale of commercial health insurance in violation of Section 2 of the Sherman Act.

76.    As a direct and proximate result of BCBSRI's violation of Section 2 of the Sherman Act, Steward has suffered injury to its business and property and damages in an amount to be proven at trial.

## COUNT III
### (Violation of § 2 of the Sherman Act: Unlawful Monopsonization)

77.    Steward incorporates by reference paragraphs 1 through 61 above, as if fully alleged herein.

78.    The relevant geographic market is Rhode Island.

79.    The relevant product market is the market for the commercial purchase of hospital services, excluding government programs, such as Medicare and Medicaid, and other products offered by health insurers such as Medicare Advantage that are not available to individuals who do not qualify for Medicare or Medicaid.

80.    BCBSRI possesses monopsony power in the market for the commercial purchase of hospital services in Rhode Island. BCBSRI has abused and continues to abuse its monopsony power to maintain and enhance its market dominance as the largest non-governmental purchaser of hospital services in Rhode Island, including without limitation by preventing Steward from acquiring Landmark and RHRI and preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island.

81.    BCBSRI's unlawful maintenance and abuse of its monopsony power includes, but is not limited to, the following conduct:  (a) refusing to enter into a contract

with Steward providing for reasonable reimbursement rates at Landmark; (b) taking steps to materially adversely affect the financial condition of Landmark prior to Steward's completion of its proposed acquisition of the hospital; (c) on information and belief, interfering with Steward's ability to enter into contracts with third parties, such as Thundermist Health Center, (d) terminating its contracts with Steward at St. Anne's and refusing to enter into contracts with Steward there, despite being offered more economically favorable terms than BCBSRI is currently receiving through the BlueCard Program, which, on information and belief, it is using in violation of the Program's policies; and (e) preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island.

82.   . BCBSRI's conduct constitutes the unlawful establishment, maintenance or use of a monopsony in the relevant market for the commercial purchase of hospital services in violation of Section 2 of the Sherman Act.

83.   As a direct and proximate result of BCBSRI's violation of Section 2 of the Sherman Act, Steward has suffered injury to its business and property and damages in an amount to be proven at trial.

## COUNT IV
### (Violation of § 2 of the Sherman Act: Attempt to Monopsonize)

84.   Steward incorporates by reference paragraphs 1 through 61 above, as if fully alleged herein.

85.   The relevant geographic market is Rhode Island.

86.   The relevant product market is the market for the commercial purchase of hospital services, excluding government programs, such as Medicare and Medicaid, and

28

other products offered by health insurers such as Medicare Advantage that are not available to individuals who do not qualify for Medicare or Medicaid.

87.     BCBSRI has attempted, and continues to attempt, to acquire and possess monopsony power in the market for the commercial purchase of hospital services in Rhode Island.  BCBSRI—the largest non-governmental purchaser of hospital services in Rhode Island—has acted with the specific intent to monopsonize and has attempted to acquire and possess monopsony power, including without limitation by preventing Steward from acquiring Landmark and RHRI and preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island.

88.     BCBSRI's attempt to monopsonize includes, but is not limited to, the following conduct:  (a) refusing to enter into a contract with Steward providing for reasonable reimbursement rates at Landmark; (b) taking steps to materially adversely affect the financial condition of Landmark prior to Steward's completion of its proposed acquisition of the hospital; (c) on information and belief, interfering with Steward's ability to enter into contracts with third parties, such as Thundermist Health Center; (d) terminating its contracts with Steward at St. Anne's and refusing to enter into contracts with Steward at those hospitals, despite being offered more economically favorable terms than BCBSRI is currently receiving through the BlueCard Program, which, on information and belief, it is using in violation of the Program's policies; and (e) preventing Steward from acquiring and establishing an efficient network of community hospitals in and around Rhode Island.

89.     BCBSRI's scheme to monopsonize the relevant market for the commercial purchase of hospital services has had success in excluding and foreclosing competition,

and there is, and has been at all times relevant hereto, a dangerous probability of success
of BCBSRI monopsonizing this market.

90.    BCBSRI's conduct constitutes an unlawful attempt to establish a
monopsony in the relevant market for the commercial purchase of hospital services in
violation of Section 2 of the Sherman Act.

91.    As a direct and proximate result of BCBSRI's violation of Section 2 of the
Sherman Act, Steward has suffered injury to its business and property and damages in an
amount to be proven at trial.

**COUNT V**
**(Violation of § 6-36-5 of the Rhode Island Antitrust Act: Unlawful Monopolization)**

92.    Steward incorporates by reference paragraphs 1 through 66 above, as if
fully alleged herein.

93.    BCBSRI's conduct constitutes the unlawful establishment, maintenance or
use of a monopoly in the relevant market for the sale of commercial health insurance in
violation of Section 6-36-5 of the Rhode Island Antitrust Act.

94.    As a direct and proximate result of BCBSRI's violation of Section 6-36-5
of the Rhode Island Antitrust Act, Steward has suffered injury to its business and
property and damages in an amount to be proven at trial.

**COUNT VI**
**(Violation of § 6-36-5 of the Rhode Island Antitrust Act: Attempt to Monopolize)**

95.    Steward incorporates by reference paragraphs 1 through 61 and 70 through
74 above, as if fully alleged herein.

96.    BCBSRI's conduct constitutes an unlawful attempt to establish a monopoly in the relevant market for the sale of commercial health insurance in violation of Section 6-36-5 of the Rhode Island Antitrust Act.

97.    As a direct and proximate result of BCBSRI's violation of Section 6-36-5 of the Rhode Island Antitrust Act, Steward has suffered injury to its business and property and damages in an amount to be proven at trial.

## COUNT VII
### (Violation of § 6-36-5 of the Rhode Island Antitrust Act: Unlawful Monopsonization)

98.    Steward incorporates by reference paragraphs 1 through 61 and 78 through 81 above, as if fully alleged herein.

99.    BCBSRI's conduct constitutes the unlawful establishment, maintenance or use of a monopsony in the relevant market for the commercial purchase of hospital services in violation of Section 6-36-5 of the Rhode Island Antitrust Act.

100.    As a direct and proximate result of BCBSRI's violation of Section 6-36-5 of the Rhode Island Antitrust Act, Steward has suffered injury to its business and property and damages in an amount to be proven at trial.

## COUNT VIII
### (Violation of § 6-36-5 of the Rhode Island Antitrust Act: Attempt to Monopsonize)

101.    Steward incorporates by reference paragraphs 1 through 61 and 85 through 89 above, as if fully alleged herein.

102.    BCBSRI's conduct constitutes an unlawful attempt to establish a monopsony in the relevant market for the commercial purchase of hospital services in violation of Section 6-36-5 of the Rhode Island Antitrust Act.

103.    As a direct and proximate result of BCBSRI's violation of Section 6-36-5 of the Rhode Island Antitrust Act, Steward has suffered injury to its business and property and damages in an amount to be proven at trial.

## COUNT IX
### (Tortious Interference with Contractual Relations)

104.    Steward incorporates by reference paragraphs 1 through 61 above, as if fully alleged herein.

105.    This claim is brought pursuant to Rhode Island common law.

106.    BCBSRI knew that Steward had entered into an Asset Purchase Agreement with Landmark, in which Steward committed to purchase Landmark and RHRI if certain conditions were met.

107.    BCBSRI intentionally, improperly, and without justification acted with the purpose of interfering with the Asset Purchase Agreement by engaging in the conduct described herein including, but not limited to, (a) refusing to enter into a contract with Steward providing for reasonable reimbursement rates for Landmark, (b) taking steps that materially adversely affected the financial condition of Landmark prior to Steward's completion of its proposed acquisition, and (c) interfering with Steward's ability to enter into contracts with third parties, including the Thundermist Health Center.

108.    BCBSRI's conduct substantially interfered with and prevented Steward from acquiring Landmark and RHRI under the Asset Purchase Agreement, resulting in damages to Steward in an amount to be proven at trial.

## COUNT X
## (Interference with Prospective Contractual Relations)

109.   Steward incorporates by reference paragraphs 1 through 61 above, as if fully alleged herein.

110.   This claim is brought pursuant to Rhode Island common law.

111.   BCBSRI knew that Steward had a reasonable expectancy of entering into contracts and other business relationships with local health care providers serving the Woonsocket community, including Thundermist Health Center.

112.   BCBSRI intentionally, improperly, and without justification acted with the purpose of interfering with Steward's prospective contractual and business relations by engaging in the conduct described herein including, but not limited to, discouraging local health care providers from dealing with Steward.

113.   It is reasonably probable that but for BCBSRI's conduct, Steward would have entered into contracts and other business relationships with local health care providers such as Thundermist.

114.   As a direct and proximate result of BCBSRI's conduct, Steward suffered damages in an amount to be proven at trial.

### DEMAND FOR TRIAL BY JURY

Pursuant to Superior Court Rule of Civil Procedure 38(b), Steward hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Steward hereby prays that this Court:

a.   Enter judgment for Steward on all counts of this Complaint;

33

b. Adjudge and declare that BCBSRI has engaged in unlawful conduct in violation of Section 2 of the Sherman Act and Section 6-36-5 of the Rhode Island Antitrust Act, R.I. Gen Laws § 6-36-5, and that it has tortiously interfered with Steward's contractual and prospective contractual relations;

c. Award Steward damages in an amount to be proven at trial, with damages for its violation of Section 2 of the Sherman Act and Rhode Island Antitrust Act to be trebled with interest;

d. Award Steward the costs of this suit, including attorneys' fees; and

e. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Robert C. Corrente (RI Bar No. 2632)
Thomas Reith
BURNS & LEVINSON LLP
One Citizens Plaza
Providence, Rhode Island 02903
Tel: (401) 831-8330
Fax: (401) 831-8359
rcorrente@burnslev.com

Brendan V. Sullivan, Jr. (RI Bar No. 0789)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
bsullivan@wc.com

OF COUNSEL:

Steven R. Kuney
Kevin Hardy
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
skuney@wc.com
khardy@wc.com

*Attorneys for Plaintiffs*

Dated:  June 4, 2013