EXHIBIT 3

**EXHIBIT 3**

BSS,REF_DISCOV

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CIVIL DOCKET FOR CASE #: 0:15-cv-61414-JIC

Recovery Village at Umatilla, L.L.C. v. Blue Cross and Blue Shield of Florida, Inc. et al
Assigned to: Judge James I. Cohn
Referred to: Magistrate Judge Barry S. Seltzer
Case in other court: 17th Judicial Circuit for Broward County, FL, CACE-15-008975
Cause: 28:1441 Notice of Removal

Date Filed: 07/08/2015
Jury Demand: Plaintiff
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Recovery Village at Umatilla, L.L.C.**
*a Delaware limited liability company*

represented by **Alexander Adam Stern**
Ver Ploeg & Lumpkin, P.A.
100 SE Second Street
30th Floor
Miami, FL 33131
305-577-3996
Email: astern@vpl-law.com
*TERMINATED: 07/23/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eileen Lynskey Parsons**
Ver Ploeg & Lumpkin
100 SE 2nd Street
30th Floor
Miami, FL 33131-2154
305-577-3996
Fax: 577-3558
Email: eparsons@vpl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy L. Kahn**
Ver Ploeg and Lumpkin, P.A.
100 SE 2nd Street
30th Floor
Miami, FL 33131
(305) 577-3996
Fax: (305) 577-3558
Email: jkahn@vpl-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dale Scott Dobuler**
VER PLOEG & LUMPKIN, P.A.
100 SE 2ND STREET, 30TH FLOOR
MIAMI, FL 33131
305-577-3996
Email: DDobuler@vpl-law.com
*ATTORNEY TO BE NOTICED*

**Kristen Alicia Corpion**
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street
Suite 3000
Miami, FL 33131
305-577-3996
Fax: 305-577-3558
Email: kcorpion@vpl-law.com
*ATTORNEY TO BE NOTICED*

**Meghan Chandler Moore**
Ver Ploeg & Lumpkin
100 SE 2nd Street
30th Floor
Miami, FL 33131-2158
305-577-3996
Fax: 577-3558
Email: mmoore@vpl-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Blue Cross and Blue Shield of Florida, Inc.**
*a Florida corporation*
*doing business as*
Florida Blue

represented by **Allen Paige Pegg**
Hogan Lovells LLP
600 Brickell Avenue
27th Floor
Miami, FL 33131
305-459-6641
Fax: 305-459-6550
Email: allen.pegg@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Community Insurance Company**
*an Ohio corporation*
*doing business as*
Anthem Blue Cross and Blue Shield

represented by **Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Health Care Service Corporation**
*an Illinois corporation*
*doing business as*
Blue Cross Blue Shield of Illinois

represented by **Courtney Berman Green**
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
305-579-0681
Fax: 305-961-5681
Email: greenco@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David A. Coulson**
Greenberg Traurig
333 NE 2 Avenue
Miami, FL 33131
305-579-0500
Fax: 305-579-0717
Email: coulsond@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of North Carolina**
*a North Carolina corporation*

represented by **Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Health Plans of Virginia, Inc.**
*a Virginia corporation*
*doing business as*
Anthem Blue Cross and Blue Shield
*doing business as*
Anthem Blue Cross and Blue Shield in Virginia

represented by **Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Highmark, Inc.**
*a Pennsylvania corporation*
*doing business as*
Highmark Blue Cross Blue Shield
*doing business as*
Highmark Blue Shield

represented by **Tim J Conner**
Holland & Knight LLP
50 North Laura Street
Suite 3900
Jacksonville, FL 32202
(904) 353-2000
Fax: (904) 358-1872
Email: timothy.conner@hklaw.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Alabama**
*an Alabama corporation*

represented by **Starr Turner Drum**
Maynard, Cooper , Gale
1901 6th Avenue North
Suite 2400
Birmingham, AL 35203
(205)254-1852
Email: sdrum@maynardcooper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Kansas City, Inc.**
*a Missouri corporation*

represented by **April N. Ross**
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Email: aross@crowell.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen Taylor Sooy**
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
202-624-2608
Fax: 628-5116
Email: ksooy@crowell.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael W. Lieberman**
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Email: mlieberman@crowell.com
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Paul Joseph Schwiep**
Coffey Burlington, P.L.
2601 S Bayshore Drive
Penthouse
Miami, FL 33133
305-858-2900
Fax: 305-858-5261
Email:
pschwiep@coffeyburlington.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tracy A. Roman**
Crowell and Moring, LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
202-624-2500
Email: troman@crowell.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allen Paige Pegg**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/08/2015 | 1 | NOTICE OF REMOVAL (STATE COURT COMPLAINT) Filing fees $ 400.00 receipt number 113C-7895179, filed by Anthem Health Plans of Virginia, Inc., Community Insurance Company, Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of North Carolina. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9 - Part 1, # 10 Exhibit 9 - Part 2, # 11 Exhibit Civil Cover Sheet)(Pegg, Allen) (Entered: 07/08/2015) |
| 07/08/2015 | 2 | Judge Assignment to Judge Kenneth A. Marra (jua) (Entered: 07/09/2015) |
| 07/08/2015 | 3 | Clerks Notice pursuant to 28 USC 636(c). Parties are hereby notified that the U.S. Magistrate Judge William Matthewman is available to handle any or all proceedings in this case. If agreed, parties should complete and file the attached form. (jua) (Entered: 07/09/2015) |
| 07/08/2015 | 4 | Clerks Notice to Filer re: Electronic Case. Alias Not Added. The Filer failed to add the alias information for the party(ies). The correction was made. It is not necessary to re-file this document. (jua) (Entered: 07/09/2015) |
| 07/09/2015 | 5 | |

| | | Clerks Notice to Filer re: Electronic Case. Party(ies) Improperly Formatted. The Filer failed to enter the party name(s) in accordance with the CM/ECF Format for Adding Parties for Attorneys Guide. The correction was made. It is not necessary to re-file the document. (jua) (Entered: 07/09/2015) |
|---|---|---|
| 07/09/2015 | 6 | Defendant's MOTION to Stay *Proceedings Pending Transfer to Multidistrict Litigation Docket and Incoporated Memorandum of Law in Support* by Anthem Health Plans of Virginia, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Kansas City, Inc., Blue Cross and Blue Shield of North Carolina, Community Insurance Company, Health Care Service Corporation, Highmark, Inc.. Attorney Allen Paige Pegg added to party Blue Cross and Blue Shield of Alabama(pty:dft), Attorney Allen Paige Pegg added to party Blue Cross and Blue Shield of Kansas City, Inc.(pty:dft), Attorney Allen Paige Pegg added to party Health Care Service Corporation(pty:dft), Attorney Allen Paige Pegg added to party Highmark, Inc.(pty:dft). Responses due by 7/27/2015 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Pegg, Allen) (Entered: 07/09/2015) |
| 07/10/2015 | 7 | NOTICE of Attorney Appearance by Paul Joseph Schwiep on behalf of Blue Cross and Blue Shield of Kansas City, Inc. (Schwiep, Paul) (Entered: 07/10/2015) |
| 07/10/2015 | 8 | NOTICE of Attorney Appearance by Kristen Alicia Corpion on behalf of Recovery Village at Umatilla, L.L.C.. Attorney Kristen Alicia Corpion added to party Recovery Village at Umatilla, L.L.C.(pty:pla). (Corpion, Kristen) (Entered: 07/10/2015) |
| 07/10/2015 | 9 | NOTICE of Attorney Appearance by Dale Scott Dobuler on behalf of Recovery Village at Umatilla, L.L.C.. Attorney Dale Scott Dobuler added to party Recovery Village at Umatilla, L.L.C.(pty:pla). (Dobuler, Dale) (Entered: 07/10/2015) |
| 07/10/2015 | 10 | Corporate Disclosure Statement by Blue Cross and Blue Shield of Kansas City, Inc. (Schwiep, Paul) (Entered: 07/10/2015) |
| 07/14/2015 | 11 | Corporate Disclosure Statement by Blue Cross and Blue Shield of Alabama (Drum, Starr) (Entered: 07/14/2015) |
| 07/14/2015 | 12 | NOTICE by Anthem Health Plans of Virginia, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Kansas City, Inc., Blue Cross and Blue Shield of North Carolina, Community Insurance Company, Health Care Service Corporation, Highmark, Inc. *of Filing Conditional Transfer Order Entered by the Joint Panel on Multidistrict Litigation* (Attachments: # 1 Exhibit A) (Pegg, Allen) (Entered: 07/14/2015) |
| 07/15/2015 | 13 | Corporate Disclosure Statement by Anthem Health Plans of Virginia, Inc., Community Insurance Company identifying Corporate Parent Anthem, Inc., Corporate Parent Anthem Southeast, Inc. for Anthem Health Plans of Virginia, Inc.; Corporate Parent ATH Holding Company, LLC, Corporate Parent Anthem, Inc. for Community Insurance Company (Pegg, Allen) (Entered: 07/15/2015) |
| 07/15/2015 | 14 | |

|  |  | Corporate Disclosure Statement by Blue Cross and Blue Shield of North Carolina (Pegg, Allen) (Entered: 07/15/2015) |
| --- | --- | --- |
| 07/15/2015 | 15 | Corporate Disclosure Statement by Health Care Service Corporation (Green, Courtney) (Entered: 07/15/2015) |
| 07/15/2015 | 16 | Corporate Disclosure Statement by Blue Cross and Blue Shield of Florida, Inc. identifying Corporate Parent GuideWell Mutual Holding Corporation for Blue Cross and Blue Shield of Florida, Inc. (Pegg, Allen) (Entered: 07/15/2015) |
| 07/15/2015 | 17 | Initial Disclosure(s) of Corporate Disclosure Statement *Plaintiff Recovery Village at Umatilla, L.L.C.'s Corporate Disclosure Statement* by Recovery Village at Umatilla, L.L.C. (Parsons, Eileen) (Entered: 07/15/2015) |
| 07/16/2015 | 18 | Certificate of Interested Parties/Corporate Disclosure Statement by Highmark, Inc. identifying Corporate Parent Highmark Health for Highmark, Inc. (Conner, Tim) (Entered: 07/16/2015) |
| 07/16/2015 | 19 | Plaintiff's MOTION to Remand to State Court *and Incorporated Memorandum of Law* by Recovery Village at Umatilla, L.L.C.. (Attachments: # 1 Exhibit A - Order)(Parsons, Eileen) (Entered: 07/16/2015) |
| 07/16/2015 | 20 | Plaintiff's MOTION to Expedite *Plaintiffs Motion for Expedited Briefing and Consideration of its Motion to Remand and Incorporated Memorandum of Law* by Recovery Village at Umatilla, L.L.C.. (Attachments: # 1 Exhibit A - Order) (Parsons, Eileen) (Entered: 07/16/2015) |
| 07/17/2015 | 21 | NOTICE by Recovery Village at Umatilla, L.L.C. *Notice of Filing* (Attachments: # 1 Exhibit A Document filed in MDL matter) (Parsons, Eileen) (Entered: 07/17/2015) |
| 07/17/2015 | 22 | ORDER OF RECUSAL. Judge Kenneth A. Marra recused. Case reassigned to Judge Cecilia M. Altonaga for all further proceedings. Signed by Judge Kenneth A. Marra on 7/17/2015. (jmd) (Entered: 07/17/2015) |
| 07/20/2015 | 23 | ORDER OF RECUSAL. Judge Cecilia M. Altonaga recused. Case reassigned to Judge James I. Cohn for all further proceedings Signed by Judge Cecilia M. Altonaga on 7/20/2015. (jc) (Entered: 07/20/2015) |
| 07/21/2015 | 24 | PAPERLESS ORDER denying 20 Plaintiff's Motion for Expedited Briefing and Consideration of Its Motion to Remand. Signed by Judge James I. Cohn on 7/21/2015. (ns) (Entered: 07/21/2015) |
| 07/22/2015 | 25 | NOTICE of Attorney Appearance by Meghan Chandler Moore on behalf of Recovery Village at Umatilla, L.L.C.. Attorney Meghan Chandler Moore added to party Recovery Village at Umatilla, L.L.C.(pty:pla). (Moore, Meghan) (Entered: 07/22/2015) |
| 07/22/2015 | 26 | Blue Cross and Blue Shield of Kansas City's MOTION for Leave to Appear Pro Hac Vice and Consent to Designation for Kathleen Taylor Sooy. Filing Fee $ 75.00. Receipt # 104996. (ksa) (Entered: 07/23/2015) |
| 07/22/2015 | 27 | Blue Cross and Blue Shield of Kansas City's MOTION for Leave to Appear Pro Hac Vice and Consent to Designation for Michael W. Lieberman. Filing Fee $ 75.00. Receipt # 104996. (ksa) (Entered: 07/23/2015) |

| 07/22/2015 | 28 | Blue Cross and Blue Shield of Kansas City's MOTION for Leave to Appear Pro Hac Vice and Consent to Designation for Tracy A. Roman. Filing Fee $ 75.00. Receipt # 104996. (ksa) (Entered: 07/23/2015) |
| 07/22/2015 | 29 | Blue Cross and Blue Shield of Kansas City's MOTION for Leave to Appear Pro Hac Vice and Consent to Designation for April N. Ross. Filing Fee $ 75.00. Receipt # 104996. (ksa) (Entered: 07/23/2015) |
| 07/23/2015 | 30 | Order Setting Calendar Call and Trial Date, and Order of Reference to United States Magistrate For Scheduling Matters and Pretrial Discovery Matters: ( Jury Trial set for 7/5/2016 09:00 AM in Fort Lauderdale Division before Judge James I. Cohn., Calendar Call set for 6/30/2016 09:00 AM before Judge James I. Cohn.) Signed by Judge James I. Cohn on 7/23/2015. (cbr) (Entered: 07/23/2015) |
| 07/24/2015 | 31 | ORDER granting 26 Motion to Appear Pro Hac Vice and Consent to Designation filed on behalf of Kathleen Taylor Sooy, Esq.; granting 27 Motion to Appear Pro Hac Vice and Consent to Designation filed on behalf of Michael W. Lieberman, Esq.; granting 28 Motion to Appear Pro Hac Vice and Consent to Designation filed on behalf of Tracy A. Roman, Esq.; granting 29 Motion to Appear Pro Hac Vice and Consent to Designation filed on behalf of April N. Ross, Esq. Signed by Magistrate Judge Barry S. Seltzer on 7/24/2015. (kas) (Entered: 07/24/2015) |
| 07/27/2015 | 32 | RESPONSE in Opposition re 6 Defendant's MOTION to Stay *Proceedings Pending Transfer to Multidistrict Litigation Docket and Incoparated Memorandum of Law in Support /Plaintiff's Opposition to Defendants' Motion to Stay Proceedings* filed by Recovery Village at Umatilla, L.L.C.. Replies due by 8/6/2015. (Attachments: # 1 Exhibit A to Plaintiffs' Opposition to Defendants' Motion to Stay Proceedings)(Moore, Meghan) (Entered: 07/27/2015) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/28/2015 14:34:38 | | |
| **PACER Login:** | bp0090:2516320:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:15-cv-61414-JIC |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

COMPLEX LITIGATION UNIT

CASE NO.:

RECOVERY VILLAGE AT UMATILLA, L.L.C., a Delaware limited liability company,

     *Plaintiff,*

vs.

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., d/b/a Florida Blue, a Florida corporation, COMMUNITY INSURANCE COMPANY, d/b/a Anthem Blue Cross and Blue Shield, an Ohio corporation, HEALTH CARE SERVICE CORPORATION, d/b/a Blue Cross Blue Shield of Illinois, an Illinois corporation, BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, a North Carolina corporation, ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a Anthem Blue Cross and Blue Shield and d/b/a Anthem Blue Cross and Blue Shield in Virginia, a Virginia corporation, HIGHMARK INC., d/b/a Highmark Blue Cross Blue Shield and d/b/a Highmark Blue Shield, a Pennsylvania corporation, BLUE CROSS AND BLUE SHIELD OF ALABAMA, an Alabama corporation, and BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, a Missouri corporation,

     *Defendants.*

_____/

## **COMPLAINT**

Plaintiff, Recovery Village at Umatilla, L.L.C., ("Recovery Village" or "Plaintiff"), sues

the Defendants Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), Health Care Service

Corporation d/b/a Blue Cross Blue Shield of Illinois ("BCBS-IL"), Community Insurance

Company d/b/a Anthem Blue Cross and Blue Shield ("BCBS-OH"), Blue Cross and Blue Shield

CASE NO.: _____

of North Carolina ("BCBS-NC"), Anthem Health Plans of Virginia, Inc. ("BCBS-VA"), Highmark, Inc. ("Highmark"), Blue Cross and Blue Shield of Alabama ("BCBS-AL"), and Blue Cross and Blue Shield of Kansas City ("BCBS-KC") (collectively "Blue Plan Defendants" or "Defendants"), and alleges:

<u>**Nature of Action**</u>

1.      This is an action seeking declaratory relief and damages against the Blue Plan Defendants for their failure to pay Recovery Village the full amounts due and owing for substance use disorder treatment and other related behavioral health services provided to the Defendants' covered members or subscribers (collectively "Members") beginning January 1, 2014 as more fully described herein.

2.      Each Blue Plan Defendant has individually breached its contractual obligation to pay Recovery Village the set price for the substance use disorder and related services provided by Recovery Village to Defendants' Members with the express pre-authorization or approval of the Defendants, and otherwise has failed to pay Recovery Village the reasonable value of the covered, and authorized or approved services.

3.      The Blue Plan Defendants, each independent licensees of the Blue Cross Blue Shield Association ("BCBSA" or the "Association"), also have acted in combination through participation in an Association program known as the Blue Card Program, which combined action as more fully described herein has caused harm to Recovery Village.

4.      By agreeing to participate in the Blue Card Program, these otherwise independent Blue Plans in combination possess a coercive power that allows them to underpay health care providers such as Recovery Village unthreatened by economic consequences that would exist in the absence of their combination.

Complaint

CASE NO.: _____

5.      Utilizing the Blue Card Program, the Blue Plan Defendants in this action have combined to effectively deny Recovery Village the ability to obtain full and fair payment of the authorized, covered services provided to each Defendant's Members.

### The Parties, Jurisdiction, and Venue

6.      Plaintiff Recovery Village at Umatilla, LLC is a Delaware limited liability company authorized to do business in the state of Florida. Plaintiff's principal place of business is 100 Southeast Third Avenue, Suite 1101, Fort Lauderdale, Broward County, Florida. All payments for Recovery Village services are received in Fort Lauderdale, Florida.

7.      Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue is a Florida corporation and is subject to jurisdiction in Florida as such and because it does business throughout the state of Florida.

8.      Blue Cross Blue Shield of Illinois is an unincorporated division of Health Care Service Corporation, an Illinois corporation, and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the BCBSA, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

9.      Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield is an Ohio corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1)

222822_1
A055.101

Complaint

CASE NO.: _____

authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

10.     Blue Cross and Blue Shield of North Carolina is a North Carolina corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

11.     Anthem Health Plans of Virginia, Inc. d/b/a  Anthem Blue Cross and Blue Shield and d/b/a Anthem Blue Cross and Blue Shield in Virginia is a Virginia corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

222822_1
A055.101

Complaint

CASE NO.: _____

12.     Highmark Inc. d/b/a Highmark Blue Cross Blue Shield and d/b/a Highmark Blue Shield is a Pennsylvania corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

13.     Blue Cross and Blue Shield of Alabama is an Alabama corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3) utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

14.     Blue Cross and Blue Shield of Kansas City is a Missouri corporation and is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 because it conducts business in the state of Florida by various acts, which include among others 1) authorizing Florida healthcare providers to provide healthcare services to its Members in Florida for which services it is responsible for payment; 2) breaching express and implied contracts in Florida by failing to perform acts required by the express and implied contracts to be performed in Florida and 3)

CASE NO.: _____

utilizing Florida Blue, an independent licensee of the Association, to process and pay its claims in Florida pursuant to the Blue Card Program more fully described below.

15.     This Court has jurisdiction over this dispute because Plaintiff seeks damages exceeding $15,000 and seeks declaratory relief.

16.     Venue is proper under Florida Statute § 47.051 in that causes of action accrued in Broward County, Florida and each Defendant has an office, agent, or other representative that conducts business in Broward County, Florida.

17.     This action specifically excludes claims relating to the Defendants' Members who are, or were at the time of services, covered under a plan for federal employees ("FEHBP") or any Medicare/Medicaid government sponsored program.

### Recovery Village's Services

18.     Recovery Village provides a full continuum of substance use disorder treatment services for persons suffering from the disease of addiction as well as treatment for eating and other co-occurring disorders at its facilities located in Umatilla, Florida.

19.     At all material times, Recovery Village is, and has been, fully licensed by the Department of Children and Families and pursuant to Chapter 397 of the Florida Statutes to provide substance use disorder services including the following levels of care:  Detoxification, Intensive Inpatient, Residential Level I, Residential Level II, Day/Night Treatment (also known as Partial Hospitalization), Intensive Outpatient Treatment, and Outpatient Treatment.

20.     At all material times, Recovery Village consistently provided quality treatment services to Defendants' Members. This action addresses claims for the period beginning January 1, 2014 for authorized or approved, covered services.

222822_1
A055.101

Complaint

CASE NO.: _____

## The Blue Plan Defendants' Products and Services

21.     Defendants offer health insurance, or access to health care services and products, to their individual and group customers in exchange for payment of premiums.

22.     Some of the products marketed and sold by the Blue Plan Defendants restrict member access to health care services provided by a "network" of "participating providers." In some instances, these participating providers have negotiated discounts of their usual and customary charges, or in other instances, have contractually agreed to accept discounted prices for their services, each in return for guaranteed, increased volume of business; typically referred to as volume-discount agreements.

23.     The Defendant Blue Plans also market and sell products to their customers that offer access to "out-of-network" or "nonparticipating" providers in exchange for payment of an additional premium for such access.

24.     Defendants also impose increased member cost-sharing responsibilities in the form of increased co-insurance, deductibles, or out of pocket maximums for products that include access to out-of-network services.

25.     Defendants do so in large part to incentivize their members to use in-network or participating providers and thereby maximize profits because Defendants retain greater control over access to and utilization of in-network services and the associated medical loss or expense.

## Recovery Village Provider Status

26.     Recovery Village does not "participate" in the "network" of any Defendant Blue Plan, does not receive bargained-for consideration from any Defendant in exchange for payment of discounted rates, and has not agreed otherwise to provide a discount off of its usual and customary charges for its services.

CASE NO.: _____

27.     Instead, Recovery Village is an "out-of-network" provider with each Defendant Blue Plan, and as a result, any patient seeking treatment at Recovery Village has paid a Defendant an additional premium for such access.

28.     Like any provider of services, Recovery Village sets the price for its services.  In the absence of a volume-discount agreement where Recovery Village agrees to reduce the price for its services in exchange for guaranteed access to a network of members or specific statutory limitation not applicable here, Recovery Village expects to be paid the established, known price for its treatment services.

29.     At all material times, Defendants have been aware that Recovery Village is an "out-of-network" provider and that Recovery Village has not agreed to charge, or accept as payment, a discounted price for its authorized, covered services.  Nor has Recovery Village agreed that the prices for its treatment services are inclusive of the separate and necessary charges for professional and ancillary services such as pharmacy and laboratory services.

### Recovery Village's Contracts with Defendants

30.     Prior to admission, each patient seeking treatment at Recovery Village undergoes a comprehensive assessment to determine whether the potential patient meets the clinical and other eligibility criteria for admission.   On admission, Recovery Village then develops an individualized treatment program designed to meet each patient's specific needs.

31.     Recovery Village's customized treatment plans draw from a comprehensive curriculum and a variety of innovative treatment modalities, and are developed through the collaborative efforts of Recovery Village's experienced and renowned team of psychiatrists, therapists, and physicians utilizing placement criteria and diagnostic guidelines published by the

CASE NO.: _____

American Psychiatric Association and the American Society of Addition Medicine as supplemented by the Florida Department of Children and Families.

32.    Recovery Village's medical director is dual boarded in psychiatry and forensic psychiatry and speaks nationally on topics of mental health and pharmacology. The Chief Medical Officer is a former member of the Presidential Task Force on Healthcare reform and has over a decade of experience as a Medical Director, Chief Medical Administrator, and Chief Medical Officer.

33.    Upon admission, and as required by the Defendants as a condition for payment for services rendered, Recovery Village  also contacts Defendants, or their designated agents sometimes referred to as managed behavioral health organizations ("MBHO's"), to undergo a process known as utilization review.

34.    This process permits the health plan, in this case the Defendant Blue Plans, to review the clinical assessments and course of treatment recommended by the Recovery Village professionals responsible for the care of their patients for the purpose of determining if the health plan, in this case, the Defendant Blue Plans will issue pre-authorization or pre-certification, or approval of the services.

35.    During the initial pre-authorization or subsequent concurrent review process, Recovery Village's utilization review staff provides Defendants, or their designated care managers or agents, with specified information regarding the requested service, including the level of care of treatment and the estimated length of stay or duration at that level of care.

36.    The levels of care of treatment provided by Recovery Village as part of its full continuum of care to Defendants' members, as well as all necessary and related professional services and ancillary services such as laboratory and pharmacy charges, are well-established in

222822_1
A0SS.101

Complaint

CASE NO.: _____

the industry and known to Defendants. Each treatment or service is likewise assigned a revenue or billing code corresponding with Recovery Village's known prices as reflected on its charge master and its claim forms for such treatment or services.

37.     If the Defendant or its designated care manager or agent agrees with the clinical determinations rendered by the treating physician or professional, and the recommended level of care placement and treatment, the Defendant's representative will agree to pay for the covered, medically necessary services for a specified length of stay by issuing a pre-authorization number or approval.

38.     Without such pre-authorization or approval, the Defendant Blue Plans will refuse or reduce payment for the services rendered despite the clinical decision of the treating physician responsible for the patient's care and treatment.

39.     Defendants or their designated care managers or agents, for the claims in this action have authorized or approved the treatment and related services, including the specified level of care and length of stay with full knowledge of the price set by Recovery Village for such services.

40.     Upon Defendants' acceptance of Recovery Village's offer to provide services to one of the Defendants' members, and providing the treatment services, Recovery Village has submitted its claim for payment using standard industry claim forms, and standard industry revenue and procedure codes for its services and its prices.

41.     Recovery Village's prices for its treatment services, and the additional professional and ancillary services such as laboratory and pharmacy charges, are clearly set forth on its claim forms, are contained in charge masters provided to Defendants, upon information

CASE NO.: _____

and belief are consistent with those of similarly-situated treatment providers in Florida who treat substance use disorders and other co-occurring disorders, and are fair and reasonable.

42.     For the reasons described below, Recovery Village submits claims for payment for services rendered to a member of any Blue Plan, including each of the other named Defendant Blue Plans, to Florida Blue.

43.     In each instance, Florida Blue has failed to pay Recovery Village the full price for its services by paying an amount less than the price of the services and/or by failing to pay for certain treatment services, unilaterally determining them inclusive to other treatment services.

### The Blue Card Program

44.     The Defendant Blue Plans are independent licensees of the Association. The Association was created by and is fully controlled by the independent licensees.

45.     As a result, the rules and regulations purportedly imposed by the Association on the Blue Plans are actually imposed by the Blue Plans on themselves.

46.     By agreement, each licensee has a designated "service area." Each Blue Plan generally enjoys exclusive use of the Blue Cross Blue Shield trade name or "mark" in its specified service area and has agreed not to market BCBS products and services outside of the service area for which the Blue Plan is licensed.

47.     Florida Blue's exclusive service area is the state of Florida. No other Blue Plan competes with Florida Blue in Florida, and Florida Blue does not compete with any Blue Plan outside Florida.

48.     In addition, the Association offers programs that afford each independent licensee the ability to coordinate and cooperate on a national platform.  One of those programs is known as the Blue Card Program.

222822_1
A055.101

Complaint

CASE NO.: _____

49.    The Blue Card Program allows eligible members of one Blue Cross and Blue Shield Plan ("the Home Plan") to obtain health care services in another Blue Cross and Blue Shield Plan's ("the Host Plan") service area.

50.    Essentially, the Blue Card Program enables the independent Blue Plan licensees to market and sell products allowing national access to health care services for their customers while maintaining the exclusivity of the service area licensure, i.e., limiting competition.

51.    For example, because BCBS-OH has agreed that it will not compete in Florida Blue's service area—the state of Florida—the Blue Card Program is the vehicle by which a BCBS-OH member, with the appropriate level of benefits, may obtain access to health care services in Florida.

52.    For services rendered by healthcare providers in Florida, including Recovery Village, Florida Blue acts as the "Host Plan" for other Blue Plans whose members may seek treatment at Recovery Village, including members of the remaining Defendant Blue Plans, known for this purpose as "Home Plans."

53.    Host Plans, in this case Florida Blue, are responsible for processing payments for services rendered to the Home Plan's member by a healthcare provider in the Host Plan's service area. A Host Plan's responsibilities under the Blue Card Program include:

   a.   Receiving, pricing and transmitting claims from local providers using the Host Plan's participating provider rates for those local providers if available or the Host Plan's non-participating provider payment rates;

   b.   Completing the processing of the claim after receiving the claim disposition from the Home Plan upon the adjudication of the benefits;

   c.   Generating remittance advice and paying local providers; and

12 of 25

Complaint

CASE NO.: _____

    d. Financially settling with the Home Plan.

54.    Home Plans, including the remaining Defendant Blue Plans, are responsible for the following:

    a. Administering member's benefits, including verification and eligibility;

    b. Conducting the utilization review or care management process, including the preauthorization or pre-approval of services if applicable;

    c. Adjudicating the claims submitted by the Host Plan;

    d. Transmitting the adjudicated claim back to the Host Plan;

    e. Generating member explanations of benefits ("EOBs"); and

    f. Financially settling with the Host Plan.

55.    In processing each of the claims at issue, Florida Blue as Host Plan has submitted each processed claim to the appropriate Defendant Blue Plan for adjudication with an associated price that does not reflect the price charged by Recovery Village for the authorized, covered service or the reasonable value of the service.

56.    The remaining Defendants have permitted Florida Blue to process their claims and pay amounts that do not reflect the full price for the pre-authorized, covered services provided by Recovery Village and that otherwise represent unfair, and unreasonably low payments.

57.    Florida Blue has likewise incorrectly processed the claims and has failed to pay the full price for the authorized, covered services provided by Recovery Village to its own Members.

·222822_1
A055.101

Complaint

CASE NO.: _____

## The Conspiracy

58.     A Blue Cross Blue Shield licensee is the largest health insurer, as measured by number of subscribers, in forty-four states. The independent Blue Cross and Blue Shield licensees include many of the largest health insurance companies in the United States. Anthem Inc., the parent of BCBS-OH and BCBS-VA, for example, is the largest single health insurer in the country as measured by membership.

59.     Defendants have knowingly used the Blue Card Program to combine economic power and influence and to permit Florida Blue to substantially underpay Recovery Village for services accessed by each Defendant's Members in Florida.

60.     Absent their combination, many of the Blue Plans, including Defendants, would compete against each other for commercial health insurance customers and network providers, transact and negotiate independently and directly with Florida providers such as Recovery Village, and face economic consequences that would threaten their ability to continue substantially underpaying Recovery Village.

61.     Because of their combined economic power, Defendants' underpayments to Recovery Village are made without consideration of Recovery Village's prices, the usual and customary charges of other similar providers for the same services in the same area, or any other market-determined criteria. Instead, Defendants intentionally reduce the payments due and owing to Recovery Village by using incomplete, arbitrary, and inappropriate benchmarks, data, and other criteria, and/or by improperly and unilaterally determining that separate professional or ancillary service charges with the facility charges are inclusive to other treatment services.

62.     Defendants make no effort to pay Recovery Village the commercially reasonable value for the services rendered. Defendants' systematic practice of under-reimbursing

CASE NO.: _____

nonparticipating provider claims is a profit-driven device intended only to unfairly financially

benefit the Defendants, at the expense of Defendants' Members and their Members' providers.

### General Allegations and Conditions Precedent

63.     Recovery Village has performed all other necessary conditions precedent to filing

suit and/or such conditions have been waived.

64.     Recovery Village offers to do equity in the premises.

65.     Recovery Village has retained legal counsel and is obligated to pay the

undersigned counsel a reasonable fee for services provided.

### COUNT I
### BREACH OF EXPRESS CONTRACT

66.     Plaintiff incorporates by reference each and every allegation set forth in

paragraphs 1 through 65 above as though fully set forth herein.

67.     Based on the initial verification of coverage and eligibility and the clinical

assessments conducted, Recovery Village makes an offer to Defendants to provide the specified

treatment to the Defendants' Members, and obtains acceptance of that offer in the form of pre-

authorization and approval for the recommended treatment, including the clinical level of care,

clinical services and length of stay.

68.     The price offered for the clinical services provided by Recovery Village is

assigned according to an established per diem rate for the specified level of care, in addition to

separate charges for ancillary services such as pharmacy and laboratory services, and is known to

Defendants.

69.     Defendants or their designated managed care reviewer, accepts Recovery

Village's offer by providing Recovery Villages a verbal and often written pre-authorization

CASE NO.: _____

number as evidence of its verification, authorization, and acceptance of Recover Village's offer to provide the specified treatment services.

70.    By expressly pre-authorizing and approving Recovery Villages to provide the specified services, at the specified level of care, for a specified length of stay, with full knowledge of Recovery Village's usual and customary charges for that service and at that level of care, Defendants accept Recovery Village's offer and agree to pay Recovery Villages based on its usual and customary charges, including those separate charges for professional and ancillary services.

71.    Recovery Village has accordingly provided the specified treatment services to Defendants' Members in accordance with the express contracts created by Recovery Village's offer and Defendants' acceptance, and is entitled to be paid an amount based on its usual and customary charges.

72.    Defendants breached these express contracts with Recovery Village by failing to pay the set price for its services, its usual and customary charges.

73.    As a result of Defendants' breaches, Recovery Village has been damaged, which damages will continue to accrue as a result of the Defendants' continuing breaches through the date of trial and for which Recovery Village intends to seek as damages as permitted by applicable law.

**WHEREFORE,** Recovery Village respectfully requests this Court enter judgment on Count I against Defendants and award Recovery Village compensatory damages, together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

222822_1
A055.101

Complaint

CASE NO.: _____

## COUNT II
### BREACH OF IMPLIED-IN-FACT CONTRACT

74.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 65 above as though fully set forth herein.

75.    Prior to providing treatment services to Defendants' Members, Recovery Village communicates directly with Defendants or their designated agents to verify eligibility for and availability of coverage and to contract for the treatment services by obtaining the requisite pre-authorizations and approvals for the specified treatment at the relevant level of care through prospective and concurrent reviews.

76.    Based on the initial verification of coverage and eligibility and the clinical assessments conducted upon the patient's arrival at the facilities, Recovery Village makes an offer to Defendants to provide the specified treatment to the Defendants' Members and obtains acceptance of that offer in the form of Defendants' words and conduct in the pre-authorization and approval for the recommended treatment, including the clinical level of care, clinical services, and length of stay.

77.    The price offered for the clinical services provided by Recovery Village is assigned according to an established per diem rate for the specified level of care, in addition to separate charges for ancillary services such as pharmacy and laboratory services, and is known to Defendants.

78.    By expressly pre-authorizing Recovery Village to provide the specified services, at the specified level of care, for a specified length of stay, with full knowledge of Recovery Village's usual and customary charges for that service at that level of care, Defendants, through their words and conduct, accept Recovery Village's offer and agree to pay Recovery Village the set price for its services, its usual and customary charges.

222822_1
A055.101

Complaint

CASE NO.: _____

79.     Recovery Village has accordingly provided the specified treatment services to Defendants' Members in accordance with the implied-in-fact contracts created by Recovery Village's offer and Defendants' acceptance, and is entitled to be paid based on its usual and customary charges, which charges are consistent with those of other similar providers in Florida, and are fair and reasonable.

80.     Defendants breached these implied-in-fact contracts with Recovery Village by failing to reimburse Recovery Village based on its usual and customary charges.

81.     As a result of Defendants' breaches, Recovery Village has been damaged, which damages will continue to accrue as a result of the Defendants' continuing breaches through the date of trial and for which Recovery Village intends to seek as damages as permitted by applicable law.

**WHEREFORE**, Recovery Village respectfully requests this Court enter judgment on Count II against Defendants and award Recovery Village compensatory damages, together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

## COUNT III
## BREACH OF IMPLIED-IN-LAW CONTRACT

82.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 65 above as though fully set forth herein.

83.     Recovery Village and Defendants have established a routine course of dealing for the admission and treatment by Recovery Village of Defendants' Members, which includes direct communications with Defendants for verifying benefit eligibility and coverage, for obtaining the requisite pre-authorizations and approvals for specified treatment at the relevant level of care  through prospective and concurrent  reviews, submitting claims pursuant to standardized claim forms, and engaging in cooperative follow-up collection efforts (i.e.,

222822_1
A055.101

Complaint

CASE NO.: _____

providing re-submission and/or medical records when requested). When the patient arrives, Recovery Village's staff conducts a clinical assessment and develops an initial treatment plan.

84.     Prior to providing valuable treatment services to Defendants' Members, Recovery Village communicates directly with Defendants to verify eligibility for and availability of coverage and to contract for the treatment services by obtaining the requisite pre-authorizations and approvals for the specified treatment at the relevant level of care through prospective and concurrent reviews.

85.     Based on the initial verification of coverage and eligibility and the clinical assessments conducted upon the patient's arrival at the facilities, Recovery Village makes an offer to Defendants to provide the specified treatment to the Defendants' Members and obtains acceptance of that offer in the form of Defendants' words and conduct in the pre-authorization and approval for the recommended treatment, including the clinical level of care, clinical services and length of stay.

86.     The price for the clinical services provided by Recovery Village is assigned according to an established per diem rate for the specified level of care, in addition to separate charges for ancillary services such as pharmacy and laboratory services.

87.     For those claims for which no pre-authorization is required, Defendants demonstrated their approval and acceptance of Recovery Village's services pursuant to their established course of dealing, whereby Defendants provide notification that pre-authorization is not a condition of payment for those services, Recovery Village provides notification to Defendants of treatment services to be rendered to Defendants' Members, or it has submitted its claims to Defendants for which Defendants acknowledged the services provided by Recovery Village to Defendants' Members and their responsibility for payment for those services.

222822_1
A055.101

Complaint

CASE NO.: _____

88.     Recovery Village conferred a direct benefit upon Defendants by providing valuable treatment services to Defendants' Members with the express authorization and/or approval of Defendants or through the established course of dealing as the party responsible for payment of the treatment services.

89.     As the responsible party for providing access to health services and for payment, Defendants derive a direct benefit from Recovery Village's provision of such treatment services for their Members because Recovery Village provides the treatment services by which Defendants fulfills their obligations to their Members.

90.     When Recovery Village provides treatment services to one of Defendants' Members, the Defendant receives the benefit of having its obligations to its Members discharged. Namely, these obligations are the payment for its Members' treatment and the facilitation of health care for the Members that pay premiums to Defendants.

91.     Furthermore, by wrongfully withholding payment in full for Recovery Village's services, Defendants obtain a benefit from Recovery Village by the taking of an undue advantage.

92.     Defendants voluntarily accepted, retained, and enjoyed, and continue to accept, retain, and enjoy the benefits conferred by Recovery Village, at Recovery Village's expense, with the knowledge that Recovery Village expected to be paid the reasonable value of its services, i.e. its usual and customary charges, and is entitled to payment for its services as a result of the express pre-authorization and/or approval of the services, or through course of dealing and/or other responsibilities of Defendants for the management and care of their Members.

CASE NO.: _____

93.    Defendants have failed to pay the reasonable value of the benefits conferred, in this case the treatment services provided, in that Defendants underpaid Recovery Village's claims and reimbursed Recovery Village at far below its usual and customary charges and below the reasonable value of the services provided.  This allows Defendants to retain funds it would otherwise pay for Recovery Village's services and further results in an unjustified windfall for Defendants.

94.    Under these circumstances, it is unjust for Defendants to pay Recovery Village based on less than its reasonable usual and customary charges and below the reasonable value of the services provided.

95.    Recovery Village seeks compensatory damages in amounts which will continue to accrue as a result of the continuing breaches through the date of trial and for which Recovery Village intends to seek as damages as permitted by applicable law.

**WHEREFORE**, Recovery Village respectfully requests this Court enter judgment on Count III against Defendants and award Recovery Village compensatory damages together with pre- and post-judgment interest, and such other relief as the Court deems just and equitable.

## COUNT IV
## CIVIL CONSPIRACY

96.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 65 above as though fully set forth herein.

97.    Through the Blue Card Program, Defendants and other Blue Plans have conspired to limit competition within each respective service area.

98.    Through the Blue Card Program, Defendants and other Blue Plans, act in combination to access Host Plan pricing, in this case, Florida Blue pricing, and significantly underpay providers in Florida, including Recovery Village.

21 of 25

Complaint

CASE NO.: _____

99.     But for their territorial restrictions and participation in the Blue Card Program, many of the Blue Plans, including Defendants, would compete with Florida Blue in Florida and face economic pressure otherwise to make payments to Recovery Village and others that are both fair and appropriate, in this case, the full price of Recovery Village services.

100.    As described herein, through the Blue Card Program, Defendants possess a peculiar power of coercion, which they would not individually possess.

101.    Defendants' combination as described herein results in a coercive power that unfairly allows the Defendants to pay out-of-network providers in Florida, such as Recovery Village, unreasonably low reimbursement; and as a result forces the out of network provider to seek access to Florida Blue's network on terms that are unfair and reflect the unequal bargaining position due to the economic pressure of the combination or refuse altogether to accept for treatment all members of any Blue Plan who otherwise are eligible for admission.

102.    Absent this coercive power, providers could negotiate with each independent Blue Plan rather than be forced to negotiate solely with Florida Blue, which uses that economic power to exert unfair bargaining power.

103.    The Defendants' use of the Blue Card Program to share Host Plan pricing is malicious and intended to artificially lower payments for healthcare services provided by Recovery Village and other providers in Florida and maximize profits at the expense of its members' health, in this case persons suffering from addiction, and at the cost of the providers who treat them.

104.    As a result, Recovery Village has been damaged.

105.    Defendants are jointly and severally liable for the damages to Recovery Village caused by their conspiracy.

222822_1
A055.101

Complaint

CASE NO.: _____

WHEREFORE, Recovery Village respectfully requests this Court enter judgment on Count V against Defendants, jointly and severally, and award Recovery Village compensatory damages together with pre-judgment interest, and such other relief as the Court deems just and equitable.

## COUNT V
## DECLARATORY RELIEF

106.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 65 above as though fully set forth herein.

107.    Recovery Village has provided and continues to provide substance use disorder and related treatment services to Defendants' Members at the express direction and with full authorization and knowledge of the terms and conditions upon which Recovery Village will provide specific and pre-authorized care to Defendants' Members, including the price.

108.    Despite knowledge of the price of Recovery Village services, verification of coverage for Recovery Village's services, and authorizing or otherwise approving Recovery Village to provide services to Defendants' Members, Defendants continue to underpay Recovery Village the known price for its services and below the usual and customary price for such services.

109.    Neither statutory nor other applicable law imposes any restrictions or limitations regarding the prices that Recovery Village or an out-of-network provider may charge Defendants for providing non-emergent substance use disorder services to Members or subscribers or the payments that may be made to Recovery Village for non-emergent substance use disorder services.

110.    Recovery Village believes, and therefore alleges, that based on the express and implied contracts formed between the parties and in the absence of any statutory restriction or

222822_1
A055.101

Complaint

CASE NO.: _____

limitation, Recovery Village is entitled to payment from Defendants at its usual and customary charges.

111.   Defendants contend that their underpayment of Recovery Village's services resulting in payments well below Recovery Village's usual and customary charges and well below the reasonable value of Recovery Village's services, including the usual and customary charges of similar providers or payments made by Defendants' competitors, is the appropriate payment for Recovery Village's services.

112.   A justiciable controversy therefore exists between the parties regarding the above-described contracts, and Recovery Village remains in doubt as to its legal rights and obligations regarding the treatment services it provided and continues to provide to Defendants' Members.

**WHEREFORE**, Recovery Village respectfully requests this Court enter judgment against Defendants and grant the following relief:

a.   A declaration that (i) the Defendants' underpayments violate the parties' express or implied-in-fact contracts and/or does not reflect the reasonable value of Recovery Village's services; (ii) the proper rate of payment under the parties' contracts is Recovery Village's usual and customary charges; and/or (iii) Recovery Village's usual and customary charges for the various levels of care are the fair and reasonable value of its services;

b.   Entry of a temporary and then permanent order restraining Defendants from underpaying Recovery Village's claims; and

c.   Such other relief as the Court deems just and equitable.

222822_1
A055.101

Complaint

CASE NO.: _____

## DEMAND FOR JURY TRIAL

Recovery Village demands a trial by jury of all issues so triable.

Dated this 21st day of May, 2015.

Respectfully Submitted,

WALDMAN   TRIGOBOFF   HILDEBRANDT
MARX & CALNAN, P.A.
Broward Financial Centre, Suite 1700
500 East Broward Boulevard
Fort Lauderdale, FL 33394
Telephone: (954) 467-8600 ext. 102
Facsimile: (954) 467-6222
Glenn J. Waldman, Esq.
Florida Bar No. 0374113
gwaldman@waldmanlawfirm.com

*Co-Counsel for Plaintiff*

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
Telephone: (305) 577-3996
Fax: (305) 577-3559

/s/ Eileen L. Parsons
Eileen L. Parsons
Florida Bar No. 765716
Primary: eparsons@vpl-law.com
Secondary: iromero@vpl-law.com
Alex A. Stern
Florida Bar No. 19592
Primary: astern@vpl-law.com
Jeremy L. Kahn
Florida Bar No. 105277
Primary: jkahn@vpl-law.com
*Counsel for Plaintiff*

222822_1
A055.101

Complaint