**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**In re Blue Cross Blue Shield Antitrust Litigation** **No. 2406**

This Filing Relates to:
*Recovery Village at Umatilla v. Blue Cross and Blue Shield of Florida, Inc., et al.,* S.D. Florida, No. 0:15-cv-61414-JIC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-18)**

*Recovery Village* involves common questions of fact with the actions the Panel previously centralized in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 13-cv-20000 (N.D. Al.) ("BCBS Antitrust MDL"). Recovery Village is a member of the purported Provider Class in the BCBS Antitrust MDL and alleges that the defendant Blue Plans – all of whom are also defendants in the BCBS Antitrust MDL – possess coercive power and have engaged in an alleged conspiracy to depress provider reimbursement rates. The alleged conspiracy involves the exclusive service areas set forth in the Defendants' Blue Cross Blue Shield Association ("BCBSA") license agreements and the BlueCard Program. Because questions of fact about those very service areas and that same BlueCard Program, and Defendants' purportedly collective efforts limit competition and coerce providers to accept artificially low reimbursement are also at issue in the BCBS Antitrust MDL, transfer will prevent inconsistent pretrial rulings between *Recovery Village* and the BCBS Antitrust MDL. The mere fact that each case raises some unique factual issues does not prevents transfer or outweigh the efficiencies and conveniences to the court system and the parties of transferring the action.

**ARGUMENT**

The Panel may transfer an action "which involves common questions of fact with [ ] actions previously transferred to an existing MDL, and which the Panel would consider

transferring under Section 1407." Rule 1.1(h). Under Section 1407, in addition to determining whether there are "one or more common questions of fact," the Panel considers whether transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In making this determination, the Panel considers whether the transfer will "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *In re Fretted Musical Instruments Antitrust Litig.*, 657 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009). Those standards are satisfied here.

## I. *Recovery Village* Shares "Common Questions of Fact" With The BCBS Antitrust MDL

The key inquiry for transfer is whether "common questions of fact" exist between *Recovery Village* and the BCBS Antitrust MDL. Here, there are numerous examples of common questions of fact:

- Recovery Village's allegation that Blue Plans have "a coercive power" and "economic power" allowing them to underpay health care providers is similar to the BCBS Antitrust MDL Provider Plaintiffs' allegation that the Blue Plans possess market power. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 4, 59, 61; Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 170 ("market power");
- Plaintiffs in both *Recovery Village* and the BCBS Antitrust MDL contend that the designated service areas in the BCBSA license agreements, pursuant to which Blue Plans allegedly do not compete with other Blue Plans outside of their service area, result in Blue Plans' supposed coercive market power. *See Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 46-47; Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 5;

- Both complaints also acknowledge that the service areas in the BCBSA license agreements involve the Blue Plans' trademark rights. *See Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶ 46; Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶¶ 177, 188-89, 196;
- Both complaints challenge the BlueCard Program, which permits subscribers of one Blue Plan (the "Home Plan") to obtain services when visiting or living in another plan's service area (the "Host Plan"). *Compare Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶ 49 *with* Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 236;
- And based on these general allegations, Recovery Village, similar to the BCBS Antitrust MDL Provider Plaintiffs, claims that the BlueCard Program limits competition, restricts Blue Plans from contracting directly with providers outside of their service areas, and ultimately depresses the reimbursement rates Blue Plans pay for services rendered by providers. *See Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 50, 51, 55-56, 60; Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 8.

**A. Recovery Village's Civil Conspiracy Claim Shares Common Questions Of Fact**

Plaintiff's focus on the supposed "unique[ness]" of the elements of Florida's civil conspiracy claim is misplaced. *See* Mot. at 6. Section 1407 requires "common questions of *fact*," not common questions of law, common legal theories, or common elements of proof. 28 U.S.C. § 1407(a) (emphasis added). The Panel has often centralized cases asserting state-law theories in a federal antitrust MDL because the presence of "differing legal theories is not significant when the actions still arise from a common factual core." *In re Oxycontin Antitrust*

*Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (granting transfer over plaintiff's argument that its "state statutory and common law" claims "do[] not share sufficient questions of fact with the antitrust claims" in the MDL); *see also In re Holiday Magic Sec. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974) (centralizing state law claims with federal antitrust and securities law claims because "it is the facts underlying those theories which we must look to in making our determination under Section 1407").[1]

Moreover, the supposedly "unique" elements of a Florida civil conspiracy claim give rise to overlapping factual issues with the claims in the BCBS Antitrust MDL. According to Plaintiff, the elements of a Florida civil conspiracy claim are (1) "a malicious motive" and (2) "coercion through numbers or economic influence." Mot. at 6 (citing *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977)). The factual question of whether Defendants had a "malicious motive" directly overlaps with the BCBS Antitrust MDL Plaintiffs' efforts to establish that the BlueCard Program and the license agreements are the product of an "invidious design." Ex. A, Plaintiffs' July 27, 2015 letter regarding need for discovery at 2. Similarly, the factual question of whether Defendants exert power through "coercion through numbers or economic influence," Mot. at 6, dovetails with the BCBS Antitrust MDL Provider Plaintiffs'

---

[1] *See also In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (transferring actions bringing federal antitrust and state law claims despite "differing legal theories" because claims "arise from a common factual core"); *In re Fretted Musical Instruments Antitrust Litig.*, 657 F. Supp. 2d at 1381 (centralizing actions bringing claims under "the federal antitrust statutes and/or state unfair competition statutes"); *In re Bestline Prods. Sec. & Antitrust Litig.*, 405 F. Supp. 313, 314 (J.P.M.L. 1975) (centralizing action raising state law claims into federal securities MDL because a "commonality of factual questions underlies all legal theories alleged"); *In re Sugar Indus. Antitrust Litig. (E. Coast)*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979) (transferring state law breach of contract claim to antitrust MDL because "[t]he fact that Borden's complaint and Universal's first two counterclaims are brought under state law serves as no impediment to Section 1407 transfer").

allegation that the Blue Plans exert "market power." Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 170.

Plaintiff's argument based on the different measure of damages for a civil conspiracy claim versus an antitrust claim also fails. *See* Mot. at 8-9, 12. A common measure of damages or recovery is not a requirement for transfer. *See In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1316-17 (J.P.M.L. 1972) (consolidating private actions seeking damages with action brought by the SEC seeking injunctive relief because actions share common questions of fact); *In re New Mexico Nat. Gas Antitrust Litig.*, 482 F. Supp. 333, 336 (J.P.M.L. 1979) (noting in transferring action that "[w]hile damages arising from separate individual transactions may differ in computation, the record before us reveals that all actions share complex factual questions" ). And for good reason: the MDL process centralizes cases for pretrial purposes only, and calculating damages is not a typical pretrial function.[2]

**B. The Complex Factual Questions Alleged In Recovery Village's Complaint Will Predominate Over Individual Questions Of Fact**

Plaintiff's next argument is that none of the overlapping factual questions are "sufficiently complex." Mot. at 5. This is not accurate. Recovery Village's complaint contains allegations relating to the Defendants' relationship with the BCBSA, the intersection between the license agreements and the Defendants' trademark rights, whether service areas set forth in the license agreement affect competition within the area, and the complex rules governing interactions between Home Plans and Host Plans under the BlueCard Program. *Recovery Village*

[2] The fact that *Recovery Village* is not a class action also does not weigh against centralization. *See* Mot. at 12, n.18. As the Panel has recognized, "it is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core." *In re Lipitor Antitrust Litig.*, MDL No. 2332, 2012 WL 4069565, at *1 (J.P.M.L Aug. 3, 2012) (internal quotation omitted); *see also In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011).

Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 44-57. The complexity of these issues merits transfer to the BCBS Antitrust MDL, where these same issues are being addressed in discovery and pretrial rulings.

Plaintiff also incorrectly argues that these common factual issues will not "predominate over individual questions of fact[.]" Mot. at 5 (citation omitted). In fact, BlueCard and service areas are the lynchpin of Plaintiff's civil conspiracy claim and also affect Plaintiff's contract claims. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 44-57 (BlueCard allegations regarding claims processing and underpayment relate to Plaintiff's contract claims), 97-103 (civil conspiracy allegations regarding BlueCard). As the foundation of Plaintiff's allegations, these common questions of fact will predominate over any particular legal issues relating to Plaintiff's other claims. *See In re Investors Funding Corp. of New York Sec. Litig.*, 437 F. Supp. 1199, 1202 (J.P.M.L. 1977) (finding that transfer was appropriate despite alleged predominance of unique issues among actions because actions "share questions of fact concerning the alleged collective activities" of defendants.). The fact that Plaintiff's claims may require proof of certain facts different than those at issue in the BCBS Antitrust MDL, *see* Mot. at 11, is not an impediment to transfer. *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1390 ("Transfer under Section 1407 does not require a complete identity of common factual issues . . . a prerequisite to transfer, and the presence of additional facts . . . is not significant where, as here, the actions still arise from a common factual core."); *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1375-76 (J.P.M.L. 2012) (transferring cases because "[t]ransfer under Section 1407 does not require a complete identity of common factual issues" over

plaintiffs' arguments that "discovery will focus on each Blue Plan's activity in a specific market, and several potentially-dispositive state-specific issues will be prominent").[3]

**C. The Common Questions Of Fact Are Not Merely "Background"**

Plaintiff brushes off the common factual questions on which it chose to base its complaint as mere "background" that is allegedly "undisputed" and "publicly available." Mot. at 13-14. These arguments ring hollow.

First, Plaintiff's allegations regarding Defendants' service areas and the BlueCard Program are not "background" but instead form the basis of Plaintiff's civil conspiracy claim. Seven of the ten paragraphs under the heading "Count IV Civil Conspiracy" are about BlueCard. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 97-103. According to its Complaint, it is "[t]hrough the Blue Card Program" that "Defendants and other Blue Plans have conspired to limit competition within each respective service area." *Id.* ¶ 97. The Complaint alleges that "Defendants' use of the Blue Card Program. . . is malicious" and that "through the Blue Card Program, Defendants possess a peculiar power of coercion, which they would not individually possess." *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 100, 103. Without the BlueCard Program, Plaintiff's civil conspiracy claim collapses.[4]

[3] Plaintiff cites no support for its argument that its civil conspiracy claim cannot be transferred because it was removed to federal court on the basis of supplemental jurisdiction rather than federal subject matter jurisdiction. *See* Mot. at 3, n.4. In any event, the Panel is clear that "jurisdictional issues do not present an impediment to transfer, as plaintiffs can present such arguments to the transferee judge." *In re New England Compounding Pharmacy, Inc., Prods. Liab. Litig.*, 38 F. Supp. 3d 1384, 1385 (J.P.M.L. 2014) (transferring state law actions with pending motion for remand).

[4] LifeWatch, a plaintiff in another tag-along action, likewise sought to vacate its CTO by arguing that its "allegations discussing these geographical market allocation agreements" were merely "background" and that it raised separate claims relating to medical policies and tortious interference that would not be subject to common discovery. LifeWatch Mot. to Vacate [Dkt. 151] at 3, 6-8, 10. Based on LifeWatch's then-pending allegations, the Panel "d[id] not find LifeWatch's arguments convincing." Transfer Order [Dkt. 192] at 1. Although the *LifeWatch*

Second, these critical BlueCard factual allegations are not based on either "undisputed" or "publicly available" information. Mot. at 13-14. Plaintiff does not point to any publicly available information stating that the BlueCard Program was created with "malicious intent," that "through the Blue Card Program, Defendants and other Blue Plans have conspired to limit competition within each respective service area," or that "but for their territorial restrictions and participation in the Blue Card Program, many of the Blues, including Defendants, could compete with Florida Blue in Florida[.]" *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 97, 99 (under heading "Count IV Civil Conspiracy"). And those allegations are clearly not "undisputed"; indeed, Defendants will prove that they are untrue.

**D. Recovery Village's Allegations Overlap With The Provider Plaintiffs' In The BCBS Antitrust MDL**

Plaintiff does not dispute that it is a member of the purported provider class in the BCBS Antitrust MDL. Instead, Plaintiff argues that the "allegations regarding the Blue Card Program's effect on out-of-network providers differ completely from Recovery Village's claims," plucking out a single paragraph from the Provider Plaintiffs' 453-paragraph Complaint. Mot. at 14, n.20. In actuality, all providers in the BCBS Antitrust MDL – including out-of-network providers such as Plaintiff – claim that the "Blue Card Program…lock[s] in the fixed, discounted reimbursement rates that each Defendant achieves through market dominance in its Service Area" which results in "significantly lower reimbursement" to the provider. Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 8. These are the same as Plaintiff's claims that Defendants' "territorial restrictions and participation in the Blue Card Program" leads to "coercive power" which allows

---

action would involve "some different facts," the Panel transferred the action because it "touche[d] on the core controversy of the MDL proceedings – the propriety of BCBSA's license agreements" and the "geographical service area restrictions." *Id*. Thus, the Panel found that as originally pled, *LifeWatch* would "benefit from the framework provided by the centralized proceedings for discovery[.]" *Id.* The same reasoning applies with equal force here.

Defendants to "significantly underpay providers in Florida, including Recovery Village." *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 98, 99, 102.

Plaintiff also is incorrect in asserting its civil conspiracy claim is inappropriate for transfer because it does not "depend on any finding regarding the legality or enforceability of the Blue Card Program or Defendants' license agreements." Mot. at 14. As part of its civil conspiracy claim, however, Plaintiff alleges that "[b]ut for their territorial restrictions and participation in the Blue Card Program, many of the Blue Plans, including Defendants, would compete with Florida Blue in Florida and face economic pressure" to increase payments to Plaintiff. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶ 99. This is exactly the "assert[ion] that the Blue Card Program is part of a conspiracy to destroy competition," Mot. at 14, that Recovery Village disclaims making.[5] Recovery Village also alleges that the BlueCard Program and license agreements "result[] in a coercive power" that lower reimbursement to out-of-network facilities such as Recovery Village. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 97-103. This is the same attack on the heart of the Blue system – its service areas pursuant to its license agreements – that the Provider Plaintiffs make in the BCBS Antitrust MDL.

Likewise, the allegations in Recovery Village's Complaint regarding purported contracts with Defendants are in no way "irreconcilable" with the allegations in the BCBS Antitrust MDL. Providers in the MDL allege that the license agreements and other BCBSA rules prohibit providers from signing provider agreements with Blue Plans outside of the service area in which they reside. *See, e.g.*, Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 8. Similarly, Recovery Village alleges an "inability to contract independently with Blue Plans located outside

[5] *In re IBM* is inapposite. There, the two complaints challenged entirely different products: typewriters versus computer software and hardware. 316 F. Supp. 976, 977 (J.P.M.L. 1970). Here, in contrast, Recovery Village's Complaint explicitly challenges the BlueCard Program and service areas, just like the MDL Provider Plaintiffs' Complaint does.

of their service area[.]" Mot. at 13. To this end, Plaintiff's Complaint asserts that "[a]bsent this coercive power, providers could negotiate with each independent Blue Plan *rather than be forced to negotiate solely with Florida Blue*[.]" *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶ 102 (emphasis added). The only supposed "contract" that Plaintiff actually alleges is a separate contractual agreement specific to each patient and their "clinical level of care, clinical services, and length of stay" that the pre-authorization review process somehow creates. *Id*. ¶ 67; *see also* ¶¶ 74-95. But Provider Plaintiffs in the BCBS Antitrust MDL likewise acknowledge that "preauthorization or pre-notification requirements" apply to BlueCard claims and are administered by the Home Plan. Consolidated Provider Compl. [Dkt. 264-3, Ex. 1C] ¶ 249. Far from being "irreconcilable," the factual questions raised by Plaintiff's allegations overlap significantly with those in the actions already centralized in the MDL.

## II. Transfer To The BCBS Antitrust MDL Promotes Efficient Resolution Of Common Allegations And Prevents Inconsistent Rulings

Transferring this related matter to the BCBS Antitrust MDL will serve the "convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Transfer will convenience all of the *Recovery Village* Defendants, who are also all defendants in the BCBS Antitrust Litigation by eliminating both the potential for duplicative discovery in both actions and the potential for inconsistent discovery obligations relating to the same issues ordered by two separate courts. *See, e.g., In re BP Securities, Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d 1380, 1382 (J.P.M.L. 2010) (transferring cases to existing MDL to "eliminate duplicative discovery").

While Plaintiff argues that only "very minimal discovery overlap potentially exists" between its civil conspiracy claim and the BCBS Antitrust Litigation claims, Mot. at 17, the discovery requests it issued in state court show otherwise. For example, Plaintiff's broad request

for "all documents, including communications, describing or explaining the BlueCard Program since its inception" including "any manuals relating to the BlueCard Program" is nearly identical to the BCBS Antitrust MDL Plaintiffs' request for "all Documents from any time related to the creation of the BlueCard Program" or "any policy of the BlueCard Program[.]" *Compare* Ex. B, *Recovery Village* RFP 3 *with* Ex. C, BCBS Antitrust MDL RFPs 39, 40. Likewise, Recovery Village's request for "all contracts or agreements between you and other Blue Plans and/or the Association evidencing or relating to any geographical limitation on your business," "including any licensing agreements" corresponds with the MDL requests for production seeking agreements "delineating any territories or service areas of each of The Blues, including all Documents concerning the exclusive territories or service areas in which each or any of The Blues operate" and for "all license agreements[.]" *Compare* Ex. B, *Recovery Village* RFP 2 *with* Ex. C, BCBS Antitrust MDL RFPs 30, 59.

The requests for production issued by the BCBS Antitrust MDL Plaintiffs have already been the subject of multiple conferences before the Magistrate Judge handling discovery in the MDL, in addition to extensive and ongoing meet and confers between the parties. Requiring the parties and a different court to retread this same ground is not an efficient use of the court system's resources and exposes Defendants to the risk of duplicative or inconsistent discovery obligations and rulings.

Transferring *Recovery Village* to the BCBS Antitrust MDL will also allow one court to address the underlying claim of conspiracy and the legality of the BCBSA license agreements. If *Recovery Village* is litigated separately, there is a risk of conflicting rulings from different federal courts on the purported existence of the nationwide conspiracy, and the effects of the BCBSA license agreements and BlueCard Program on provider reimbursement. The potential

for inconsistent rulings by itself heavily weighs in favor of transferring *Recovery Village* to the BCBS Antitrust MDL. *See, e.g.*, *In re Nat'l Sec. Agency Telecomm. Records Litig.*, 474 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (affirming transfer of actions to previously centralized action to "prevent inconsistent pretrial rulings").

## III. Plaintiff's Accusations Of Gamesmanship Are Baseless

Plaintiff's accusations that Defendants engaged in "gamesmanship" in removing this action are unfounded. *See* Mot. at 18-19. Defendants' investigation of the patient claims at issue in the Complaint revealed that many of those claims are subject to determination under ERISA, which provides preemptive federal jurisdiction. Ex. D, Notice of Removal. Notably, while Plaintiff chose to specifically carve out Medicare, Medicaid, and Federal Employee Program claims from its Complaint, Plaintiff did not carve out ERISA claims, *see Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶ 17. And because the case is properly in federal court, the court has supplemental federal jurisdiction over Plaintiff's conspiracy claim.

Likewise, the notion that Defendants somehow "abused the MDL process" lacks any foundation. *See* Mot. at 19. Plaintiff is a member of the purported Provider Class in the BCBS Antitrust MDL, and Plaintiff chose to include conspiracy allegations in this action that directly overlap with the conspiracy allegations Providers Plaintiffs purport to bring on Plaintiff's behalf in the MDL. Panel Rule 7.1 *requires* that "[a]ny party or counsel in actions previously transferred under Section 1407 *shall* promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears." Panel Rule 7.1(a) (emphasis added). The Rule is not discretionary; Defendants had a duty notify the Panel of this related action and did so.

Further, a transfer to the MDL will not prejudice Plaintiff. No matter where the case proceeds, an Article III district judge will decide its Motion to Remand and oversee the discovery and other pretrial activities of its case. Indeed, the Panel has centralized actions with pending remand motions, observing that "Plaintiffs in the removed derivative actions can present their pending motions for remand to state court to the transferee court." *See, e.g.*, *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 899 F. Supp. 2d 1374, 1376 (J.P.M.L. 2012). Plaintiff provides no reason why the MDL Court could not efficiently rule on its Motion to Remand. Indeed, the MDL Court is arguably best positioned to consider Plaintiff's argument that the court should exercise its discretion to decline supplemental jurisdiction over its conspiracy claims.

## IV. Separating Recovery Village's Civil Conspiracy Claim Is Not Efficient

Finally, Plaintiff's suggestion to artificially separate its contract claims from its intertwined conspiracy claim would be inefficient for the courts and the parties for several reasons. *See* Mot. at 15-16. Plaintiff's contract claims raise the same facts relating to BlueCard as its conspiracy claim. *Recovery Village* Compl. [Dkt. 264-3, Ex. 1B] ¶¶ 44-57 (alleging that the BlueCard Program and service areas "limit[] competition" and that both the Host Plan and Home Plans have "failed to pay the full price for the authorized, covered services provided by Recovery Village"). The same discovery involving the BlueCard Program, fee schedules, and payments to Plaintiff will be at issue in both the contract and conspiracy claims. Coordinating this overlapping discovery is the purpose of the MDL, and forcing the parties to negotiate over and conduct the same types of discovery in two different courts – and force two judges to oversee the process – would be the height of inefficiency. In any event, whether Plaintiff's contract claims are so intertwined as to prevent separation and remand is for the transferee court

to decide. *In re Sugar Indus. Antitrust Litig.*, 471 F. Supp. at 1093 (transferring state law and contract claims to antitrust MDL, stating that plaintiff's arguments for separation and remand "should properly be addressed to the transferee judge"); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1390, n.4 (denying defendant's request for separation and remand of claims because question is best left to transferee court to handle at its discretion).

**CONCLUSION**

For all of these reasons, this related action is appropriate for transfer to the BCBS Antitrust MDL.

Dated: August 21, 2015

Respectfully submitted,

/s/ Craig A. Hoover
Craig A. Hoover
J. Robert Robertson
E. Desmond Hogan
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
202-637-5600
(fax) 202-637-5910
craig.hoover@hoganlovells.com
robby.robertson@hoganlovells.com
desmond.hogan@hoganlovells.com

Emily M. Yinger
N. Thomas Connally, III
HOGAN LOVELLS US LLP
Park Place II
7930 Jones Branch Drive, Ninth Floor
McLean, VA 22102
703-610-6100
(fax) 703-610-6200
emily.yinger@hoganlovells.com
tom.connally@hoganlovells.com

*Counsel for Defendants Blue Cross and Blue Shield of Florida, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., and Blue Cross and Blue Shield of North Carolina*

and

Kathleen T. Sooy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202-624-2500
(fax) 202-628-5116
ksooy@crowell.com

*Counsel for Defendant Blue Cross and Blue Shield of Kansas City*