# EXHIBIT A




Patrick J. Sheehan
psheehan@whatleykallas.com

July 27, 2015

**VIA EMAIL: putnam_chambers@alnd.uscourts.gov**

Honorable T. Michael Putnam
United States Magistrate Judge
United States District Court
Northern District of Alabama
1729 Fifth Avenue North
Birmingham, Alabama 35203

**Re: *In Re: Blue Cross Blue Shield Antitrust Litigation*: Time Periods for Production**

Dear Magistrate Judge Putnam:

Plaintiffs again request your assistance in establishing the time periods from which Defendants must collect and produce information in response to Subscriber and Provider Plaintiffs' January 20, 2015 Requests for Production to All Defendants, attached hereto as Exhibit A (the "January 20 RFPs" or "RFPs"). Based on the claims alleged in Plaintiffs' complaints, the defenses raised by Defendants, and the guidance provided in the Court's Discovery Order No. 8, Plaintiffs respectfully submit that their RFPs appropriately call for information from four time periods: (1) January 1, 2008 to the present; 2) documents from January 1, 2005 to the present; 3) documents from January 1, 1995 to the present; and (4) historical documents from any time.

As set forth in the parties' Joint Status Report Regarding Discovery Order No. 8 filed on July 17, 2015 (Dkt. # 386) (the "Joint Status Report"), the parties agree that:

- the time period applicable to RFPs 134 and 135 will commence on January 1, 2008;
- the time period applicable to RFPs 1 (for the purposes of organizational charts), 2-3, 43, 54-56, 127, 138-39 and 149-155 will commence on January 1, 2005;
- the time period applicable to RFPs 6, 110-111 and 119 will commence on January 1, 1995; and
- the time period applicable to RFPs 4-5, 7-15, 22-27, 30-34, 36-40, 48-49, 52, 109, 112, 121 and 157-159 is unlimited.

Despite the parties' efforts, they continue to disagree with regard to the time period to be applied to the remaining RFPs, however. Plaintiffs respectfully submit their position with regard to those RFPs below.

**Introduction.**

As the Court is aware, there is a long-established "general policy of allowing liberal discovery in antitrust cases." *See, e.g. American Health Systems, Inc. v. Liberty Health Systems*, No. 90-3112, 1991 WL 30726, *2 (Mar. 5, 1991 (citing *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985). It is well-settled that the relevant time period for discovery should not be confined to the limitations period of the antitrust statutes. *Id.*, at *3. Indeed, "[p]articularly where allegations of conspiracy or monopolization are involved, as in the instant case, broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Kellam*, 616 F. Supp. at 217 (citing *F.T.C. v. Lukens Steel Co.*, 444 F. Supp. 803 (D.D.C. 1977).[1]

As they articulated to the Court in their prior filings regarding the time periods to be applied to their January 20 RFPs, both Provider and Subscriber Plaintiffs have alleged conspiracies among Defendants dating back to the 1940s, and Defendants have alleged counterfactual defenses dating back to the same time period. Provider Plaintiffs have alleged that the Blue Card Program (in existence since at least 1994) and National Accounts Program (streamlined in 1987) were concerted efforts by the Defendants designed to lower the reimbursements they pay to providers. *See* Provider Complaint at ¶ 229. And Subscriber Plaintiffs allege acquisition restrictions and a wave of consolidation between 1996 and the present that further concentrated the Defendants' market power. *See* Subscriber Complaint at ¶¶ 268-72. These events are part of the ongoing conspiracies that Plaintiffs allege have had an impact on class members within the class periods.

Plaintiffs are entitled to obtain discovery on these events, as well as the formation of the conspiracies, how they operated, and the effects they had on market participants. Plaintiffs' own limitation of most of the January 20 RFPs to the time period 1995 to the present already takes into account burden and proportionality concerns and is a reasonably limited period of time in relation to the far longer duration of the conspiracies alleged and the factual defenses asserted in this case, both of which date back to the 1940s.

Significantly, discovery from prior to the class period is relevant not only to proving the existence and operation of the conspiracy, but also to Plaintiffs' proof of impact on class members. To prove impact, Subscriber Plaintiffs will examine the conspiracies' effect on

---

[1] *See also Wilder Enterprises, Inc. v. Allied Artists Pictures Corp*., 632 F.2d 1135 (4th Cir. 1980) (discovery regarding allegedly unlawful agreement during two years preceding limitations period should have been permitted where it was relevant to the question of conspiracy); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 357 n.5 (N.D. Ill. 2005) ("[W]here the information is otherwise relevant, the statute of limitations is not a basis for barring discovery."); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp*., 95 F.R.D. 398, 35 Fed.R.Serv.2d 259 (S.D.N.Y. 1982) (discovery in antitrust actions routinely goes beyond statutory period); *Robertson v. Nat'l Basketball Ass'n*., 67 F.R.D. 691 (S.D.N.Y 1975) (history of bargaining relevant to question whether alleged restraints came into being as result of arms' length negotiations); *Maritime Cinema Service Corp. v. Movies en Route, Inc.*, (discovery permitted six years prior to alleged damages); *Quonset Real Estate Corp. v. Paramount Film Distr. Corp.*, (discovery permitted for period of ten years antedating earliest possible wrong); *Schenley Industries, Inc. v. New Jersey Wine & Spirit Wholesalers*, 272 F. Supp. 872 (D. N.J. 1967) (asserted history of conspiracy rather than scope of plaintiff's damages provides temporal boundary for discovery).

premiums, and Provider Plaintiffs will examine the conspiracies' effect on provider reimbursement rates, at times when competition increased and decreased. Given that the conspiracies alleged were formed decades ago and have evolved gradually over a period of many years, to be restricted to the last 10 years would unnecessarily and improperly limit the data points available to Plaintiffs to use in proving their cases. To be sure, earlier events, such as those described above, have had effects within the class period, and are therefore relevant to establishing both liability and damages. Against this backdrop, Plaintiffs address the remaining RFPs at issue more specifically below.

**RFPs for Which Plaintiffs Propose an Unlimited Time Period**.

The parties disagree as to whether the relevant time period applicable to RFPs 16, 19, 21, 29, 35, 41-42, 44, 47, 50-51, 57-60, 72 and 128-132 should be unlimited or commence on January 1, 2005.[2] Plaintiffs respectfully submit that the time period to be applied to these 21 RFPs should be unlimited because they all call for information relating to the design, operation and impact of the conspiracies alleged in Plaintiffs' Complaints.

Defendants' proposal to limit the timeframe applied to these RFPs does not make sense and would deprive Plaintiffs of plainly relevant information. For example, Defendants propose producing documents from 2005 forward only in response to RFPs 35, which calls for documents relating to changes in service areas served by Blue Cross Plans between the adoption of the 1954 License Agreement and the 1972 License Agreement and between the adoption of the 1972 License Agreement and the present. In effect, Defendants propose producing virtually nothing in response to this RFP, which would deprive Plaintiffs of information regarding how the Defendants' exclusive service areas have changed over time as their License Agreements, which created the exclusive service areas, also changed. Defendants also suggest a 2005 start date for RFPs 58-60 and 128-132, which call for documents regarding the rules and restrictions relating to the exclusive service areas and their impact on providers. Again, applying such a short timeframe to these RFPs would deprive Plaintiffs of information relevant to their core allegations. To be sure, historical information illustrating the impact that the exclusive service areas have had on providers will also shed light on the impact that those exclusive service areas continue to have on providers today.

Defendants also propose limiting their production of documents to 2005 forward for RFPs 16, 19 and 47, concerning the activities of the Board of Directors and other committees of the BCBSA relating to the matters alleged in Plaintiffs' complaints. It is self-evident that the actions of the BCBSA's Board and committees will have lasting impacts. Accordingly, there should not be a time limit applied to these RFPs.

Similarly, Defendants propose producing documents from 2005 forward for RFPs 41 (requesting documents regarding how the Blues paid providers prior to the creation of the BlueCard program) and 42 (requesting documents regarding how the Blues paid providers prior to the

[2] Defendants propose producing the existing and historical Standard 10 guideline in response to RFP 29 and producing documents relating to the Long Term Business Strategy in response to RFP 47; otherwise, they suggest that the time period for the above group of RFPs should commence on January 1, 2005.

creation of the National Accounts program), despite that these programs were in place long before 2005. In effect, Defendants propose producing nothing in response to these RFPs. As such, Plaintiffs' proposal to apply an unlimited time period to these RFPs is more sensible.

Plaintiffs' remaining RFPs calling for production of documents from an unlimited time period are likewise appropriate. *See* RFPs 50-51 and 57 (calling for information related to mergers, purchases, sales involving, and for-profit conversions of, Defendants' Blue-branded entities); 21 and 29 (calling for information concerning the operation of, and restrictions placed upon, Defendants' non-Blue branded business; and 72 (calling for information in areas where Defendants are or were known to compete). As with Plaintiffs' other RFPs calling for documents from any time, the information sought by these RFPs will help to explain present market conditions and put those conditions in their proper context.

**RFPs for Which Plaintiffs Propose a Time Period Beginning in 1995.**

With respect to the remaining RFPs in dispute (17-18, 20, 28, 45-46, 53, 61-71, 73-108, 113-118, 120, 122-126, 133, 136-137, 140-148 and 156), Plaintiffs respectfully submit that the relevant time period should commence on January 1, 1995. Defendants, with limited exceptions, argue that the relevant time period should commence on January 1, 2005. These RFPs seek information relevant to:

- the participation of the BCBSA and its committees in the conspiracies alleged (RFPs 17-18 and 28)
- the transformation of Defendants from not-for-profit entities to other business forms (RFPs 45-46;
- mergers and sales of Defendants (RFP 53);
- how the conspiracies have divided the markets and reduced competition by operating in exclusive geographic service areas (RFPs 61-66);
- the Defendants' BlueCard and National Account Programs (113-118, 144 and 156);
- the market share and market power the alleged conspirators enjoy, as well as the competitive environment more generally (RFPs 67-71, 73-75, 120, 122-126, 133 and 140-142); and
- the anticompetitive effects that the conspiracies have had (*see* RFPs 20 (anticompetitive effects), 76-81 (premiums and rates), 82-98, 136-137, 143 and 145-148 (payments to providers), and 99-108 (Defendants' financial accounting and reporting information).

While the information called for by these RFPs does relate to events and conditions that pre-date the statute of limitations period, it does not pre-date the alleged conspiracies. As noted above, Plaintiffs allege that Defendants have been engaged in ongoing conspiracies since the 1940s, and

evidence of those conspiracies from prior to 2005 is relevant, and should be produced in discovery. *See, e.g., Quonset Real Estate Corp.*, 50 F.R.D. at 241 (permitting discovery antedating the *earliest possible wrong* by ten years). This evidence will shed light on both how the conspiracies operate today and demonstrate the anticompetitive effects that the alleged conspiracies have caused and continue to cause. Given that the conspiracies alleged were formed many decades ago and have evolved gradually over time, under the facts of this case, a broader relevant time period is both warranted and appropriate as to these RFPs.

Based on the meet and confer discussions, Plaintiffs' understanding is that Defendants' primary concern in responding to this group of RFPs for the time period January 1, 1995 to the present is that, generally speaking, it would be more burdensome to do that than it would be to respond for the time period January 1, 2005 to the present. However, Defendants have not yet identified any incremental burdens that would be associated with making a production from 1995 forward. As such, and given that, as explained above, the RFPs in question call for relevant information, it would be premature to further limit the time period applicable to these group of RFPs at this time. However, as discussed further below, Plaintiffs are willing to promptly meet and confer with Defendants with respect to issues of burden which they hope will significantly narrow any remaining issues with respect to the information that should ultimately be produced.

**Defendants' Ongoing Agreements Not to Compete and To Fix Prices Justify Document Production through the Present.**

As Plaintiffs previously brought to the Court's attention, Defendants have taken the position in their responses to Plaintiffs' January 20 RFPs that the time periods for production should end in February 2012 (e.g., BCBSA, NASCO, Consortium, Highmark, HCSC, Caring for Montanans and Blue Cross Blue Shield of Michigan), July 1, 2013 (e.g., Crowell Moring clients) or "an appropriate date" (e.g., Hogan Lovells' clients, Premera and CareFirst Defendants). However, because the unlawful conspiracies alleged continue to operate (causing continuing damage and highlighting the need for injunctive relief), and the proposed class periods extend through the present, the relevant time period for document production should not end until "the present" as specified in the RFPs, meaning that, in accordance with the Federal Rules of Civil Procedure, Defendants will continue to have an obligation to supplement their discovery responses as appropriate through the date the cases within this multidistrict litigation go to trial. *See* Fed. R. Civ. P. 26(e) (setting forth parties' continuing obligation to supplement responses to discovery requests). As such, Plaintiffs respectfully request the Court's guidance on this issue.

**Separate Negotiations Regarding the Burdens Associated with Document Production Should Be Conducted Promptly.**

As they have maintained throughout the discovery process, Plaintiffs do not dispute that any assertions that Defendants make as to the burden of collecting and producing information from the requested time periods should be evaluated separately from any arguments as to relevance. Accordingly, Plaintiffs stand ready to meet and confer as to any specific issues of burden that Defendants may raise. However, as noted above, Defendants have generally not yet articulated specific burdens, because there has been no agreement between the parties as to the relevant time periods. Accordingly, Plaintiffs request that the Court direct the parties to commence such

negotiations promptly and conclude them prior to the September status conference before Your Honor.

****

For all the reasons stated above, Plaintiffs request that the Court provide guidance indicating as follows:

1) that the time periods for document production shall start on the dates proposed by Plaintiffs in the parties' Joint Status Report;
2) that the time periods for production shall end on the date of trial in accordance with Rule 26; and
3) that the parties shall continue their meet and confer discussions by the burdens that would be associated with the production of the information called for by Plaintiffs' January 20 RFPs and conclude those negotiations by no later than September 17, 2015.

Plaintiffs appreciate the Court's assistance in resolving these issues.

<u>/s/ Patrick J. Sheehan</u>
Patrick J. Sheehan

<u>/s/ William P. Butterfield</u>
William P. Butterfield

cc: Counsel of Record