# EXHIBIT B

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

COMPLEX LITIGATION UNIT

CASE NO.:

RECOVERY VILLAGE AT UMATILLA, L.L.C., a Delaware limited liability company,

    *Plaintiff,*

vs.

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., d/b/a Florida Blue, a Florida corporation, COMMUNITY INSURANCE COMPANY, d/b/a Anthem Blue Cross and Blue Shield, an Ohio corporation, HEALTH CARE SERVICE CORPORATION, d/b/a Blue Cross Blue Shield of Illinois, an Illinois corporation, BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, a North Carolina corporation, ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a Anthem Blue Cross and Blue Shield and d/b/a Anthem Blue Cross and Blue Shield in Virginia, a Virginia corporation, HIGHMARK INC., d/b/a Highmark Blue Cross Blue Shield and d/b/a Highmark Blue Shield, a Pennsylvania corporation, BLUE CROSS AND BLUE SHIELD OF ALABAMA, an Alabama corporation, and BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, a Missouri corporation,

    *Defendants.*

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COMMUNITY INSURANCE COMPANY

Plaintiff, Recovery Village at Umatilla, L.L.C., ("Recovery Village"), pursuant to Fla. R. Civ. P. 1.350, requests that Defendant, Community Insurance Company, produce for inspection and copying at the offices of Ver Ploeg & Lumpkin, P.A., 100 S.E. Second Street, Suite 3000,

CASE NO.:

Miami, FL 33131, the following requests within forty-five (45) days, or such other time as the Court may order, pursuant to the Florida Rules of Civil Procedure.

## **DEFINITIONS AND INSTRUCTIONS**

1. The term "you," "your," or "Community Insurance Company" means Community Insurance Company, and/or its predecessors, subsidiaries or affiliates, including all agents, employees, independent contractors, attorneys, and any other persons acting or purporting to act on your behalf.

2. The term "BlueCard Program," describes the national program that enables Blue Cross and Blue Shield Plan members to obtain healthcare services while traveling or living in another Blue Cross and/or Blue Shield Plan's service area.

3. The term "Blue Plans," also known as "Licensees," means all health plans participating in the BlueCard Program.

4. The term "Host Plan," also known as "Par/Host Licensee," means the Blue Plan that delivers the benefit of its arrangements with local providers to BlueCard members from other Blue Plans' service areas.

5. The term "BlueCard member," means individuals insured by or entitled to receive benefits under Blue Plans participating in the BlueCard Program.

6. The term "Community Insurance Company members" or "your members" means individuals insured by or entitled to receive benefits from Community Insurance Company.

7. The term "Recovery Village" or "Plaintiff" means Recovery Village at Umatilla, L.L.C.

CASE NO.:

8. The term "treatment services," means alcohol and/or substance abuse treatment services, including medical detoxification, intensive inpatient rehabilitation, residential treatment, partial hospitalization, and intensive outpatient levels of treatment.

9. The term "service area" means the geographic area in which a particular Blue Plan is licensed to use the Blue Cross or Blue Shield mark pursuant to agreements with the Blue Cross and Blue Shield Association.

10. The term "communication" or "communications" means any disclosure, publication, expression, transfer or exchange of information, data or opinion, however made.

11. The phrase "relating to" means containing, constituting, considering, comprising, concerning, evidencing, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, referring, alluding or pertaining to, or bearing a reasonable connection with or relation to, in whole or in part.

12. The term "including" means including without limitation.

13. The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

14. The term "document" means any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including electronically stored information, correspondence, memoranda, notes, messages, emails, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, chronological data, minutes, books, reports, studies,

summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or natural records or representations of any kind (including without limitation photographs, microfiche, microfilm, videotape, recordings, motion pictures) and electronic, mechanical or electric records or representations of any kind (including tapes, cassettes, discs and records). The term "document" specifically includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or backup systems), together with instructions and all other materials necessary to use or interpret such data compilations.

15.   The term "all documents" means every document or group of documents that are known to you or that you can locate or discover through reasonably diligent efforts.

16.   As used herein, the singular shall include the plural, the plural shall include the singular, and, as to pronouns, each gender shall include the others.

17.   When producing documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the names of the documents being produced.

18.   If any file or document has been removed for the purposes of this action or for some other purpose, please state the name and address of the person who removed the file or document, as well as the title and present location of same.

CASE NO.:

19. If you choose to withhold any documents on the ground of privilege or the like, please identify the documents so withheld by date, author, recipients, and subject matter, and state the specific grounds you assert for withholding the documents.

20. If any documents responsive to these Requests are no longer in your possession, please indicate:

    (a) when you possessed, examined, received, or were aware of any such reports or materials;

    (b) where you possessed, examined, viewed, or knew they were kept;

    (c) where any such reports or materials may be at present, to the best of your knowledge;

    (d) if any such reports or materials were destroyed, state when, where, by whom, in what manner, and the reason for their destruction.

21. If you object to any Request but produce documents notwithstanding your objection, please indicate whether you have produced all responsive documents or whether you have withheld some documents based on your objection.

22. Unless otherwise specified in any Request, the timeframe is January 1, 2014 forward.

23. This Request for Production shall be deemed to be continuing; please produce by supplementary responses any information requested herein which is unavailable now but which becomes available to you before the termination of this case.

CASE NO.:

## **DOCUMENTS REQUESTED**

1. All contracts or agreements between you and other Blue Plans and/or the Blue Cross and Blue Shield Association (the "Association") evidencing or relating to the administration, handling, processing, pricing, or payment of claims under the BlueCard Program in effect at any time between January 1, 2014 to present. This request specifically includes all agreements relating to non-participating provider payments under the BlueCard Program.

2. All contracts or agreements between you and other Blue Plans and/or the Association evidencing or relating to any geographical limitation on your business in effect at any time between January 1, 2014 to present, including any licensing agreements.

3. All documents, including communications, describing or explaining the BlueCard Program since its inception. This request includes, but is not limited to, any manuals relating to the BlueCard Program.

4. The specific methodology, including the supporting data or other documentation, used to set or determine the reimbursement or payment for treatment services provided by non-participating substance abuse treatment facilities, including but not limited to the Recovery Village, for each level of care by revenue code since January 1, 2014.

5. To the extent not included above, all documents, including communications, relating to the pricing methodology, bases, formula, or supporting data or criteria used to evaluate, determine, or set the reimbursement or payment for treatment services provided by non-participating substance abuse treatment facilities, including Recovery Village since January 1, 2014. This request specifically includes documents from any third-party vendors or consultants.

CASE NO.:

6. To the extent not included above, documents sufficient to identify the decision, if any, to change the pricing or payment for non- participating substance abuse treatment services under the BlueCard Program for the period January 2010 through the present and the basis for the decision to change the price or payment.

7. To the extent not included above, your policies and procedures in effect at any time since January 1, 2014, relating to payment for non-participating substance abuse treatment providers. This request includes substance abuse treatment providers in your service area and substance abuse treatment providers outside of your service area.

8. All documents relating to or demonstrating your review, analysis, or verification of BCBSF's pricing or payment of Recovery Village's claims for treatment services provided to your members since January 1, 2014.

9. All documents evidencing communications between you and Recovery Village relating to pre-authorization or pre-certification of treatment services provided by Recovery Village since January 1, 2014.

10. All documents evidencing communications between you and Blue Cross Blue Shield of Florida d/b/a/ Florida Blue relating to pre-authorization or pre-certification of treatment services provided by Recovery Village since January 1, 2014.

11. All explanations of benefits provided to your members and all provider remittances for services rendered by Recovery Village from January 1, 2014 through the time period for the claims at issue in this litigation.

12. To the extent not included above, all communications relating to the payment to Recovery Village for treatment services provided by Recovery Village since January 1, 2014,

CASE NO.:

including but not limited to documents showing each and every payment paid by You for treatment services provided by Recovery Village since January 1, 2014.

13. Documents sufficient to identify billed charges of non-participating substance abuse treatment facilities in Florida by level of care from January 1, 2014 to the present. For each facility, please provide the billed charge on a per diem basis for each level of care, and the amount of actual reimbursement on a per diem basis for each level of care.

14. Documents sufficient to identify the amounts paid to non-participating providers on a per diem basis by state for revenue codes 126, 128, 906, 912, and 1002, for the years 2014 to present.

15. Documents sufficient to identify any agreement by Recovery Village to discount its usual and customary charges for treatment services to Your members.

16. Documents sufficient to identify, including reports, projections, or budgets the effect of out-of-network reimbursements on Your financial condition, and on executive, management and employee bonuses.

17. Any other document within your possession, custody, or control and not otherwise requested herein relating to the setting of reimbursement rates for non-participating substance abuse treatment providers.

18. Documents sufficient to identify which entities, if any, would owe you indemnity for the claims at issue in this litigation.

CASE NO.:

DATED this 21st day of May, 2015.

Respectfully submitted,

WALDMAN TRIGOBOFF HILDEBRANDT MARX & CALNAN, P.A.
Broward Financial Centre, Suite 1700
500 East Broward Boulevard
Fort Lauderdale, FL 33394
Telephone: (954) 467-8600 ext. 102
Facsimile: (954) 467-6222
Glenn J. Waldman, Esq.
Florida Bar No. 0374113
gwaldman@waldmanlawfirm.com

*Co-Counsel for Plaintiff*

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
Telephone: (305) 577-3996
Fax: (305) 577-3559

/s/ Eileen L. Parsons
Eileen L. Parsons
Florida Bar No. 765716
Primary: eparsons@vpl-law.com
Secondary: iromero@vpl-law.com
Alex A. Stern
Florida Bar No. 19592
Primary: astern@vpl-law.com
Jeremy L. Kahn
Florida Bar No. 105277
Primary: jkahn@vpl-law.com

*Counsel for Plaintiff*