# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

_____

RECOVERY VILLAGE AT UMATILLA, L.L.C.,
a Delaware limited liability company,

        Plaintiff,

v.                                                                                                   Case No. _____

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., d/b/a Florida Blue, a Florida corporation, COMMUNITY INSURANCE COMPANY, d/b/a Anthem Blue Cross and. Blue Shield, an Ohio corporation, HEALTH CARE SERVICE CORPORATION, d/b/a Blue Cross Blue Shield of Illinois, an Illinois corporation, BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, a North Carolina corporation, ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a Anthem Blue Cross and Blue Shield and d/b/a Anthem Blue Cross and Blue Shield in Virginia, a Virginia corporation, HIGHMARK INC., d/b/a Highmark Blue Cross Blue Shield and d/b/a Highmark Blue Shield, a Pennsylvania corporation, BLUE CROSS AND BLUE SHIELD OF ALABAMA, an Alabama corporation, and BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, a Missouri corporation,

        Defendants.
_____

## DEFENDANTS' NOTICE OF REMOVAL

        Defendants BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. ("Florida Blue"),

COMMUNITY INSURANCE COMPANY, HEALTH CARE SERVICE CORPORATION,

BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, ANTHEM HEALTH PLANS

OF VIRGINIA, INC., HIGHMARK INC., BLUE CROSS AND BLUE SHIELD OF

ALABAMA, and BLUE CROSS AND BLUE SHIELD OF KANSAS CITY (collectively, "Defendants"), pursuant to 28 U.S.C. §§ 1441 and 1446, file this Notice of Removal and assert:

1. On May 22, 2015, Plaintiff Recovery Village at Umatilla, L.L.C. ("Plaintiff" or "Recovery Village") filed this action in the Circuit Court for Broward County, Florida. *Recovery Village at Umatilla, LLC v. Blue Cross and Blue Shield of Florida, Inc., et al.,* No. CACE-15-008975 (Fla. Cir. Ct.).

2. Florida Blue was served with the summons and complaint on June 8, 2015.

**Plaintiff's Claims**

3. The state-court action alleges five counts arising out of the alleged failure by Defendants to pay Plaintiff "the full amounts due and owing for substance abuse disorder treatment and other related behavioral health services provided to Defendants' covered members or subscribers." *See* Ex. 1, Complaint ("Compl."), ¶ 1.

4. In Count I, Recovery Village alleges a claim for "breach of express contract" based on the pre-authorization process that culminates with Defendants' alleged "acceptance" of Recovery Village's contract offer by "pre-authorizing and approving" Recovery Village to provide services to Defendants' members "with knowledge of Recovery Village's usual and customary charges." Compl. ¶ 70.

5. Counts II and III allege quasi-contract claims for "breach of implied-in-fact contract" and "breach of implied-in-law contract" based on the same pre-authorization process and additional related "conduct" that allegedly precedes the provision of treatment to Defendants' members by Recovery Village. *See, e.g.,* Compl. ¶¶ 78 (Count II) and 85 (Count III). Count III also includes certain claims submitted by Recovery Village to Defendants that allegedly do not require pre-authorization, based on an alleged "course of dealing" between the parties. Compl. ¶ 87.

6. In Count IV, Plaintiff alleges a claim for civil conspiracy. The claim arises out of (i) the alleged restrictions in the license agreement between the Blue Cross and Blue Shield

2

Association and each of the Blues that limit the use of the Blue trade names and marks to a specific, defined "service area" and (ii) the manner in which the individual Blue plans "coordinate and cooperate on a national platform" through the BlueCard program. *See* Compl. ¶ 48.

7. Plaintiffs allege that "[t]he Blue Card Program allows eligible members of one Blue Cross and Blue Shield Plan (the 'Home Plan') to obtain health care services in another Blue Cross and Blue Shield Plan's (the 'Host Plan') service area." Compl. ¶ 49. Plaintiff further alleges that when claims are submitted to the Host Plan through BlueCard, the Home Plan is able to reimburse those claims according to the "Host Plan's participating provider rates for those local providers if available or the Host Plan's non-participating provider payment rates." Compl. ¶ 53.

8. Plaintiff claims that through the BlueCard program, Defendants and other Blue Plans act in combination to access the pricing that each plan negotiates in its service area, which results in "significant[] underpay[ment]" to providers. *See* Compl. ¶ 98. Plaintiff claims that "[b]ut for their territorial restrictions and participation in the Blue Card Program, many of the Blue Plans, including Defendants, would compete with Florida Blue in Florida and face economic pressure to make payments to Recovery Village and others that are both fair and appropriate…" *See* Compl. ¶ 99. Although alleged as a state-law claim, Plaintiff's conspiracy claim largely overlaps with conspiracy claims asserted under the Sherman Act in several dozen federal court actions filed around the country, which are centralized in multidistrict litigation pending in the U.S. District Court for the Northern District of Alabama. *See In re Blue Cross & Blue Shield Antitrust Litig.*, MDL No. 2406 (N.D. Ala.).

9. Finally, Count V seeks a declaration that "the proper rate of payment under the parties' contracts is Recovery Village's usual and customary charges," and that "Recovery Village's usual and customary charges for the various levels of care are the fair and reasonable value of its services." Compl. Count V, Prayer for Relief (a). Count V also seeks an order

3

restraining Defendants "from underpaying Recovery Village's claims." Compl. Count V, Prayer for Relief (b).

### Federal Question Jurisdiction

10. This Court has jurisdiction under 28 U.S.C. § 1331 because one or more of Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

11. Although federal-question jurisdiction ordinarily is governed by the well-pleaded complaint rule, "[a]n exception to this rule is when Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991). "The effect of this exception is to convert what would ordinarily be a state claim into a claim arising under the laws of the United States." *Id.*

12. A claim is subject to complete preemption under ERISA when: (i) the plaintiff "could have brought [its] claim under ERISA § 502(a)(1)(B)"; and (ii) "there is no other legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

13. A claim can be brought under ERISA § 502(a)(1)(B) by a "participant or beneficiary … to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This is satisfied if a plaintiff has standing to sue and the claim "fall[s] within the scope of ERISA." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009).

14. Here, Plaintiff has represented on claims forms submitted to Florida Blue that it has derivative standing to sue under ERISA. Plaintiff's complaint covers all claims it submitted for "authorized or approved, covered services" provided to Defendants' members from January 1, 2014 to present. Compl. ¶ 20. Based on a review of the claims during this period, Defendants

4

have determined that Recovery Village indicated that it has an assignment of benefits from ERISA plan members on the claim forms it submitted to Florida Blue on behalf of those members. *See* Ex. 2, Decl. of A. Norman, at ¶ 27 (discussing Florida Blue's claims information); Ex. 3, Decl. of D. Frazier, at ¶ 5 (discussing Blue Cross and Blue Shield of Kansas City's claims information); Ex. 4, Decl. of C. Roach, at ¶ 6 (discussing Health Care Service Corporation's claims information); Ex. 5, Decl. of C. Lane, at ¶ 9 (discussing Blue Cross and Blue Shield of North Carolina's claims information); Ex. 6, Decl. of W. Cox, at ¶ 8 (discussing Blue Cross and Blue Shield of Alabama's claims information); Ex. 7, Decl. of D. Burger, at ¶ 6 (discussing Highmark's claims information); Ex. 8, Decl. of C. Butler, at ¶ 10 (discussing Community Insurance Company's and Anthem Health Plan of Virginia's claims information); *see also Connecticut State Dental Ass'n*, 591 F.3d at 1352 (finding language indicating assignment on claims forms sufficient to establish ERISA standing).

15. At least one or more of the claims Recovery Village submitted to Defendants for treatment provided to Defendants' members fall within the scope of ERISA. ERISA § 502 covers three types of claims: (i) claims to recover benefits due under the terms of the plan; (ii) claims to enforce rights under the plan; and (iii) claims to clarify rights to future benefits under the plan.

16. Here, at least one or more of the claims seek to recover benefits under the terms of an ERISA plan. In determining whether a claim seeks benefits under an ERISA plan, courts distinguish between "right to payment" claims, which fall within the scope of ERISA, and "rate of payment" claims, which generally do not. *Connecticut State Dental Ass'n*, 591 F.3d at 1350.

17. Based on a review of the claims from Recovery Village from January 1, 2014 to present, Defendants have determined that the claims at issue include numerous claims from members covered by ERISA group health plans. *See* Ex. 2, Decl. of A. Norman, at ¶ 19; Ex. 3, Decl. of D. Frazier, at ¶ 4; Ex. 4, Decl. of C. Roach, at ¶ 5; Ex. 5, Decl. of C. Lane, at ¶ 6; Ex. 6, Decl. of W. Cox, at ¶ 4; Ex. 7, Decl. of D. Burger, at ¶ 5; Ex. 8, Decl. of C. Butler, at ¶ 6.

5

18.     Recovery Village's contract and quasi-contract claims all arise out of Recovery Village's characterization of Defendants' conduct during the pre-authorization process. *See, e.g.*, Counts I – III.  The terms of the underlying ERISA plans thus are relevant because they dictate the need for and significance of these "pre-authorizations."  For example, at least one ERISA plan implicated by Plaintiff's claims provides that "[i]t is your sole responsibility to comply with our prior coverage authorization requirements when rendered or referred by an Out-of-Network Provider before Mental Health and Substance Dependency Care and Treatment Services are provided. Your failure to obtain prior coverage authorization will result in denial of coverage for such Services."  Ex. 2, Decl. of A. Norman Decl., at ¶ 24; *see also* Ex. 3, Decl. of D. Frazier, at ¶ 8; Ex. 5, Decl. of C. Lane, at ¶ 7; Ex. 6, Decl. of W. Cox, at ¶ 5; Ex. 8, Decl. of C. Butler, at ¶ 7.

19.     Because Plaintiff's claims implicate the coverage and benefits determinations occurring in the pre-authorization process, the contract and quasi-contract claims all fall within the scope of ERISA.  *See Star Multi Care Srvs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 287 (E.D.N.Y. 2014) ("An 'authorization' plainly implicates coverage and benefits determinations, and places plaintiff's complaint squarely within the 'right to payment' category.").

20.     A review of the claims submitted by Recovery Village for the ERISA members since January 1, 2014 further reveals that Recovery Village was, for many of the relevant claims, paid less than it billed because services were determined not to be covered services under the relevant ERISA plan.  *See* Ex. 2, Decl. of A. Norman, at ¶ 30; Ex. 3, Decl. of D. Frazier, at ¶¶ 6-7; Ex. 4, Decl. of C. Roach, at ¶ 4; Ex. 5, Decl. of C. Lane, at ¶ 10; Ex. 6, Decl. of W. Cox, at ¶ 7; Ex. 7, Decl. of D. Burger, at ¶ 4; Ex. 8, Decl. of C. Butler, at ¶ 9.

21.     Moreover, Plaintiff has pleaded that Defendants failed to pay for certain services because Defendants determined that it had no right to payment under the ERISA plans.  *See* Compl. ¶ 43 (alleging that Florida Blue "has failed to pay Recovery Village the full price for its services by paying an amount less than the price of the services ***and/or by failing to pay for***

6

*certain treatment services, unilaterally determining them inclusive to other treatment services*") (emphasis added); *see also id.* ¶ 43 (alleging that Defendants reduce payments to Plaintiff "by improperly and unilaterally determining that separate professional or ancillary service charges with the facility charges are inclusive to other treatment services").

22. These claims directly implicate the "right to payment" rather than the "rate of payment," and thus fall within the scope of ERISA for this independent reason. *See Connecticut State Dental Ass'n,* 591 F.3d at 1351 ("Because [plaintiffs] complain, at least in part, about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA.")

23. One or more of Plaintiff's claims, which include alleged instances of both underpayment and non-payment, fall within the scope of ERISA for the additional, independent reason that, as a non-participating provider (*see* Compl. ¶ 26), Defendants' obligation to pay for services provided by Recovery Village (including both what is actually covered and how much the Defendants are required to pay) is governed by the terms of the underlying ERISA plans. For example, at least one ERISA plan implicated here provides that "in the case of an Out-of-Network Provider that has not entered into an agreement with BCBSF to provide access to a discount from the billed amount of that Provider, the Allowed Amount for particular Services is often substantially below the amount billed by such Out-of-Network Provider for such Services. You will be responsible for any difference between such Allowed Amount and the amount billed for such Services by any such Out-of-Network Provider." Ex. 2, Decl. of A. Norman, at ¶ 25; *see also* Ex. 3, Decl. of D. Frazier, at ¶ 9; Ex. 5, Decl. of C. Lane, at ¶ 8; Ex. 6, Decl. of W. Cox, at ¶ 6; Ex. 8, Decl. of C. Butler, at ¶ 8; *see also North Shore-Long Island Jewish Health Care System, Inc. v. MultiPlan, Inc.,* 953 F.Supp.2d 419, 439-40 (E.D.N.Y. 2013) (claims preempted by ERISA because "any benefit owed to [plaintiff], in its capacity as a non-participating provider, will constitute an obligation that is derived from the Plan...").

24. Count V also falls within the scope of ERISA because Recovery Village seeks to

7

clarify its purported right to future benefits under an ERISA plan. Specifically, Count V seeks a declaration that "the proper rate of payment under parties' contracts is Recovery Village's usual and customary charges," and that "Recovery Village's usual and customary charges for the various levels of care are the fair and reasonable value of its services." Compl., Count V, Prayer for Relief (a). Count V further seeks an order restraining Defendants "from underpaying Recovery Village's claims." Compl. Count V, Prayer for Relief (b). This equitable relief, if granted, would require Defendants to pay Recovery Village its "usual and customary charges" for all covered services going forward. In other words, the Court would effectively be establishing the rate schedule to apply to all services provided to ERISA plan members by Recovery Village, despite the potentially conflicting plan terms. This claim falls squarely within the scope of ERISA since it seeks to clarify future rights under the plans.

25. The second prong of *Davila* evaluates whether the claim is "predicated on a legal duty that is independent of ERISA." *See Connecticut State Dental Ass'n,* 591 F.3d at 1353. "If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan." *Gables Ins. Recov. v. United Healthcare Ins. Co.*, 39 F.Supp.3d 1377, 1388 (S.D. Fla. 2013). "[A]ny determination of benefits under the terms of an ERISA plan, ***even regarding a seeming independent breach of oral or implied contract based on verification of benefits,*** falls under ERISA and is a legal duty dependent on, not independent of, the ERISA plan." *Id.* (emphasis added).

26. Because at least one or more of Plaintiff's claims relate to (i) coverage decisions; (ii) the legal significance of pre-authorizations under the term of the ERISA plans; (iii) the associated payment obligation to non-participating providers; and (iv) the clarification of future rights under the terms of the ERISA plans, these claims are dependent upon, and not independent of, the implicated ERISA plans.

27. For all of these reasons, this action is removable to federal court because federal

8

ERISA law completely preempts at least one or more of Plaintiff's claims. *See Davila*, 542 U.S. at 210.

**Procedural Requirements for Removal**

28. Additionally, the procedural requirements for removal in 28 U.S.C. § 1446 are all satisfied here.

29. Section (a) of that statute requires the removing party to file a notice of removal, signed in accordance with Federal Rule of Civil Procedure 11, "in the district court of the United States for the district and division within which such action is pending," which Defendants have done with this filing.

30. Section (a) also requires a moving party to provide to the District Court a copy of all process, pleadings, and orders served on Defendants in the state action. Defendants have attached copies of the summons and complaints that were served on them, as well as a copy of the docket sheet and all other pleadings and filings from the state court action in Florida. *See* Ex. 9 (copy of docket sheet and all materials filed in state-court action).

31. This notice of removal is also timely under 28 U.S.C. § 1446(b). "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). "[I]f the complaint is filed in court prior to any service, the removal period runs from the service of the summons." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). Florida Blue was served on June 8, 2015. Thus, this notice of removal has been filed within 30 days of service of the initial pleading.

32. This notice of removal complies with unanimity requirement of 28 U.S.C. § 1446(b)(2)(A), as all named Defendants expressly join (and therefore also consent) to the removal of this action. *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008); *Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1384 (N.D. Ga. 2014).

9

33. In accordance with 28 U.S.C. § 1446(d), copies of this notice are being served upon Plaintiff's counsel and filed with the Circuit Court for Broward County, Florida where this action was initially filed.

34. By filing this notice, Defendants do not waive any defense, argument, or principle of equity that may be available to them.

Respectfully submitted,

/s/ Allen P. Pegg

Allen P. Pegg (Florida Bar No. 597821)
HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, FL 33131
305-459-6500
(fax) 305-459-6550
allen.pegg@hoganlovells.com

*Counsel for Blue Cross and Blue Shield of Florida, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., and Blue Cross And Blue Shield of North Carolina*

and

/s/ Timothy J. Conner

Timothy J. Conner (Florida Bar No. 767580)
HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872
timothy.conner@hklaw.com

*Counsel for Highmark, Inc.*

and

10

/s/ Star Turner Drum

Starr Turner Drum (Florida Bar No. 88866)
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Phone: 205-254-1000
Facsimile: 205-254-1999
sdrum@maynardcooper.com

*Counsel for Blue Cross and Blue Shield of Alabama*

and

/s/ Paul J. Schwiep

Paul J. Schwiep (Florida Bar No. 823244)
COFFEY BURLINGTON
2601 South Bayshore Dr.
Penthouse One
Miami, FL 33133
305-858-2900
(fax) 305-858-5261
pschwiep@coffeyburlington.com

*Counsel for Blue Cross and Blue Shield of Kansas City*

and

/s/ David A. Coulson

David A. Coulson (Florida Bar No. 176222)
Courtney B. Green, Esq. (Florida Bar No. 52622)
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, FL 33131
305-479-0500
(fax) 305-589-5373
coulsond@gtlaw.com
greenco@gtlaw.com
FLService@gtlaw.com

*Counsel for Health Care Service Corporation, an Illinois Mutual Legal Reserve Company,*

11

*Including its Division Blue Cross and Blue Shield of Illinois*

OF COUNSEL

Emily M. Yinger
Thomas M. Trucksess
HOGAN LOVELLS US LLP
Park Place II
7930 Jones Branch Drive, Ninth Floor
McLean, VA 22102
703-610-6100
(fax) 703-610-6200
emily.yinger@hoganlovells.com
thomas.trucksess@hoganlovells.com

*Counsel for Blue Cross and Blue Shield of Florida, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., and Blue Cross And Blue Shield of North Carolina*

Kathleen Taylor Sooy
Tracy A. Roman
April N. Ross
Michael W. Lieberman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202-624-2500
(fax) 202-628-5116
ksooy@crowell.com
troman@crowell.com
aross@crowell.com
mlieberman@crowell.com

*Counsel for Blue Cross and Blue Shield of Kansas City*

Carl S. Burkhalter
James L. Priester
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Phone: 205-254-1000
Facsimile: 205-254-1999
cburkhalter@maynardcooper.com
jpriester@maynardcooper.com
jmalatesta@maynardcooper.com

*Counsel for Blue Cross and Blue Shield of Alabama*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2015, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing. I further certify that a true and correct copy of the foregoing has been served via first class mail on the following counsel of record: Eileen Parsons, Esq., Ver Ploeg & Lumpkin, P.A., 100 S.E. Second Street, Suite 3000, Miami, FL 33131; Glenn J. Waldman, Esq., Waldman Trigoboff et al., Broward Financial Center, Suite 1700, 500 East Broward Boulevard, Fort Lauderdale, FL 33394.

/s/ Allen P. Pegg

13