BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: BLUE CROSS BLUE SHIELD  MDL No. 2406
ANTITRUST LITIGATION

This Filing Relates To The Following Case Only:

*Recovery Village at Umatilla, L.L.C. v. Blue Cross and Blue Shield of Florida, Inc., et al.*, S.D. Florida, Case No.: 0:15-cv-61414-JLC

## REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-18) AND MEMORANDUM OF LAW IN SUPPORT

Defendants' Opposition concedes that Plaintiff's state law contract action both presents critical threshold jurisdictional issues and raises "some unique factual questions" not common to the BCBS Antitrust MDL.[1] In an effort to satisfy Section 1407's requirements for transfer, Defendants contend that Plaintiff nonetheless asserts sufficient common "facts," and discovery related to those facts, to merit transfer.

Defendants' arguments fail to meet the standard, and the Conditional Transfer Order must be vacated for the following reasons: (1) no common "**questions *of* fact**" exist between Plaintiff's claims and the Antitrust MDL claims; (2) there is no risk of inconsistent rulings; (3) transfer will not conserve judicial resources or result in the efficient resolution of the jurisdictional question; and (4) none of Plaintiff's claims are "intertwined" with or in any way dependent on proof of a conspiracy or "intent" to commit an illegal act or wrong. On simple review, the general background "common" facts alleged by Defendants sufficient for transfer are neither material to proof of the elements of Plaintiff's claims nor the discovery related thereto.

---

[1] Throughout this Reply *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 13-cv-20000 (N.D. Al.) is referred to as "BCBS Antitrust MDL."

I. **The "Questions of Fact" Dispositive of Plaintiff's Florida State Law Claims Are Not the Same "Questions of Fact" that Must be Decided in the BCBS Antitrust MDL.**

Defendants misconstrue Section 1407's requirement that a transferred action have "questions of fact" in common with the MDL litigation to include basic "facts" that are uncontested, inconsequential, or ancillary to the ultimate issues determinative of the causes of action alleged. Defendants then combine ad hoc a number of these "facts" and allege those facts comprise a common core. A "question of fact" is generally defined as follows:

> **question of fact** (17c) **1.** An issue that has not been predetermined and authoritatively answered by the law. • An example is whether a particular criminal defendant is guilty of an offense or whether a contractor has delayed unreasonably in constructing a building. **2.** An issue that does not involve what the law is on a given point. **3.** A disputed issue to be resolved by the jury in a jury trial or by the judge in a bench trial. — Also termed *fact question.* See fact-finder. **4.** An issue capable of being answered by way of demonstration, as opposed to a question of unverifiable opinion.

QUESTION OF FACT, Black's Law Dictionary (10th ed. 2014). The "questions of fact" material to a legal claim are those typically framed by jury instructions at the conclusion of a case. Such facts are comprised of the elements of a claim that must be proven at trial. The questions of fact relevant to contract-based claims, for instance, may require proof of offer, acceptance, consideration, and breach, see *Land Company of Osceola County, LLC v. Genesis Concepts, Inc.*, __ So. 3d __, 2015 WL 3999510, *3 (Fla. 4th DCA July 1, 2015) – none of which are common to antitrust claims.[2]

Neither are the "questions of fact" or elements of proof of Plaintiff's unique state law civil conspiracy claim common to those required by the BCBS Antitrust claims. In the Antitrust MDL, the "Plaintiffs contend that the 38 Blue Plans are independent health insurance companies

---

[2] Offer, acceptance, and consideration are not at issue in Plaintiff's contract-based claims, as Defendants agreed to pay for the services rendered; they simply refused to pay the full value of those services after the fact.

2

that, but for any agreement to the contrary, could and would compete with one another. Instead, working together with and through the BCBSA, they have allegedly divided and allocated among themselves health insurance markets throughout the nation to eliminate competition. **Plaintiffs variously contend that this conduct violates Sections 1 and 2 of the Sherman Antitrust Act, as well as various related state laws.**" *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1375 (J.P.M.L. 2012) (bold added).

Thus, the "question of fact" upon which the Antitrust MDL centers is whether the individual entities have engaged in such relationships with the national association, including their various licensing agreements, in an attempt to essentially monopsonize the health care markets in violation of antitrust laws – i.e., that Defendants had an unlawful objective and committed an unlawful act. *See DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1508 (11th Cir. 1989) (requiring that the concentrated effort itself be unlawful).

Unlike the MDL claims, Plaintiff's Florida civil conspiracy claim does not require proof of a monopsony, or an unlawful objective or an unlawful act in order to prevail. Nor must Plaintiff prove a conspiracy or invidious intent to manipulate the health care market. Rather, the "question of fact" relevant to proof of Plaintiff's civil conspiracy claim is whether the individual Blue Plan Defendants combined possessed power sufficient to underpay Plaintiff for services rendered regardless of the vehicle, the intent or the manner. *See Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 549 (Fla. 1977).

As *Churruca* makes clear, and a critical distinction with the MDL antitrust claims, the acts themselves be need not be *unlawful*. *Id.* at 550. Nor is Plaintiff required to prove that Defendants' economic power or ability to conspire derived from the Blue Card Program, that Defendants possessed "market power" as alleged in the BCBS Antitrust MDL, or that

3

Defendants' practices and licensing agreements have decreased competition in markets for healthcare. Neither are other alleged "common" facts such as the fact that "[b]y agreement each licensee is designated a service area" or that "[e]ach Blue Plan generally enjoys exclusive use of the Blue Cross Blue Shield Trade name," or "[t]he Blue Card Program allows eligible members of [] the Home plan to obtain health care services in another Blue Cross and Blue Shield plan's [] service area" relevant "questions of fact" and need not be proven to a jury for a finding in Plaintiff's favor on its conspiracy claim. D.E. 264-3, Ex. 1B, ¶¶ 46, 49.

Defendants' bald assertions that "[w]ithout the BlueCard program, Plaintiff's civil conspiracy claim collapses," "BlueCard and service areas are the lynchpin of Plaintiff's civil conspiracy claim," and that these facts will predominate over any particular legal issues relating to Plaintiff's other claims are completely false.³ Plaintiff need only prove that the Defendants acted maliciously to deprive Plaintiff of the reasonable value of their services. The Complaint asserts facts satisfying these elements absent references to the BlueCard Program or service areas, including but not limited to:

> Florida Blue as Host Plan has submitted each processed claim to the appropriate Defendant Blue Plan for adjudication with an associated price that does not reflect the price charged by Plaintiff for the authorized, covered service or the reasonable value of service.
>
> The remaining Defendants have permitted Florida Blue to process their claims and pay amounts that do not reflect the full price for the pre-authorized, covered services provided by Plaintiff and that otherwise represent unfair, and unreasonable low payments.
>
> Defendants make no effort to pay Plaintiff the commercially reasonable value for the services rendered. Defendants' systematic practice of under-reimbursing nonparticipating provider claims is a profit-driven device intended only to

---

³ Moreover, the existence of the Blue Card Program and the relationships between individual entities and the national association is, contrary to Defendants' assertion, not public and undisputed. *See* BlueCross BlueShield Media Center at http://www.bcbs.com/healthcare-news/press-center, last visited August 24, 2015.

4

unfairly financially benefit Defendants, at the expense of Defendants' Members and their Members' providers.

D.E. 264-3, Ex. 1B, ¶¶ 55-56. Accordingly, Defendants' suggestion to the contrary, augured in two partial quotes plucked from the Complaint's allegations, must be rejected.[4]

Lastly, Defendants' citation to *LifeWatch* is inapposite. There the Panel found:

> Although *LifeWatch* will involve some different facts regarding defendants' alleged conspiracy to deny coverage of certain medical services, plaintiffs' complaint also touches on the core controversy of the MDL proceedings -- the propriety of BCBSA's license agreements and the anticompetitive effects of certain provisions in those agreements, most notably the geographical service area restrictions.

D.E. 192, p. 1. Plaintiff's claims do not turn on either the propriety of the license agreements or the effects of the provisions contained therein. Rather, Plaintiff simply alleges the existence of such agreements (which is not a fact in dispute), without disputing their legality. Moreover, *LifeWatch* is distinguishable on its fact as it alleged violations of federal antitrust laws, requiring the analysis of similar issues of fact, whereas Plaintiff does not.

## II. There Is No Risk of Inconsistent Rulings.

Defendants argue that absent transfer, there is a risk of inconsistent rulings with respect to: discovery, the underlying claim of conspiracy, and the legality of the BCBSA license Plaintiff's action, and the state law conspiracy claim alleged therein is limited to Defendants' actions resulting in underpayments solely to Plaintiff. Thus, there is no risk of conflicting rulings on these issues. *See, e.g., In re: Adderall XR (Amphetamine/Dextroamphetamine) Mktg., Sales Practices & Antitrust Litig.*, 968 F. Supp. 2d 1343, 1345 (U.S. Jud. Pan. Mult. Lit. 2013)

---

[4] Contrary to Defendants' argument, Plaintiff does not seek any relief that challenges the impropriety of the licensing agreements or the geographical service area restrictions imposed by the Association. D.E. 311, p. 10. Plaintiff seeks the contractual price contained in the contracts with each Defendant upon the authorization of those services, or at minimum the reasonable value of those services.

("The putative statewide classes in these actions, all of which consist of indirect purchasers of Adderall XR, do not significantly overlap. Each of the plaintiffs avers claims based upon different state antitrust and consumer protection laws. Thus, the potential for conflicting pretrial rulings, particularly as to class certification, appears to be minimal.").

Defendants' argument with respect to discovery, premised on two requests in Plaintiff's state court Requests for Production that became moot when the action was removed to federal court, is likewise baseless. No discovery is outstanding in Plaintiff's Action, and Defendants know this. One day after submitting its Motion to Stay in Florida federal court, defense counsel sent an email to counsel of record acknowledging that "Upon further review and consideration, Defendants have confirmed that Plaintiff's state-court requests for production... are now moot/void." *See* Email from Allen Pegg, dated July 10, 2015. Moreover, Defendants ignore the fact that only the first three (3) of Plaintiff's eighteen (18) pended requests overlap with the 159 requests made in the BCBS Antitrust MDL. The remaining requests are specific to Plaintiff's contract-based claims. Thus, there can be no risk of inconsistent rulings with respect to same.

Finally, because the relevance of discovery is necessarily tethered to the legal claims and questions of fact at issue and since the legal claims and questions of fact at issue in the two actions vary, the documents requested and ultimately deemed discoverable will necessarily vary.[5] Because discovery rulings will undoubtedly be framed by the legal claims and questions of fact at issue, they will not be inconsistent.

---

[5] Plaintiff's document requests, for instance, vary significantly from those propounded in the BCBS Antitrust MDL both in volume (18 vs. 159) and scope (Plaintiff's requests primarily seek documents relevant to establishing the reasonable value of Plaintiff's services, and not the existence of a "nationwide conspiracy" or the "legality of the BCBSA license agreements" as Defendant's suggest). D.E. 311-2, Req. Nos. 8-12, and 15.

### III. Transfer Will Not Conserve Judicial Resources or Be Efficient.

Defendant asserts that transferring Plaintiff's non-antitrust state law claims to an antitrust MDL will promote efficiencies and conserve judicial resources by (a) avoiding duplicative discovery and (b) allowing the MDL Court to decide whether to "exercise its discretion to decline supplemental jurisdiction" over Plaintiff's Florida civil conspiracy claim. Neither is true.

#### a. *Discovery Will Not Be Duplicative and Judicial Resources Will Not Be Conserved by Consolidating Same*

As set forth above, the now-moot discovery sought by Plaintiff was substantially narrower than the discovery sought in the MDL, and there was minimal overlap between the requests as it pertains to questions of fact or proofs. Moreover, given the differences between the claims pending in the MDL and those asserted by Plaintiff, any overlapping discovery requests would necessarily require independent consideration by the Court. Thus, judicial economy would not be conserved by transfer. It would be expanded. Worse yet, requiring Plaintiff to await rulings and conferrals on 141 unrelated categories of document requests before receiving the 17 or so categories of documents requested specific to Plaintiff, which have not been requested in the BCBS Antitrust MDL, would be completely unjust and inefficient.

#### b. *Judicial Economy Will Be Best Served by Vacating the Transfer Order, at Least Pending a Ruling on the Issue of Subject Matter Jurisdiction.*

Transferring Plaintiff's suit to the BCBS Antitrust MDL does not favor judicial economy or consistency, as it will require the MDL Court to decide jurisdictional issues that are not common to the BCBS Antitrust MDL. D.E. 2406, Ex. 1, p. 4.

> The only reason to permit the transferee court to decide the jurisdictional issue would be to further judicial economy and consistency. H.R.Rep. No. 90–1190. **If the jurisdictional issue in the particular case is different from those in the other cases subject or potentially subject to MDL jurisdiction, these values do not come into play.**

7

*See Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001) (emphasis supplied). Here, the bulk of Plaintiff's claims (claims I-III, and V) are premised upon individual breaches of agreements between Plaintiff and Defendants. For each, Defendants assert ERISA preemption. Defendants do not assert federal subject matter jurisdiction over Plaintiff's civil conspiracy claim (Count IV), and supplemental jurisdiction over this claim thus turns on the ERISA preemption issue. Because Defendants have not identified any similar jurisdictional challenges at issue in the MDL, judicial economy and consistency will not be furthered by permitting the MDL Court to determine the jurisdictional question, and the Conditional Transfer Order should for this additional reason be vacated.

Further, Defendants misrepresent that "Plaintiff provides no reason why the MDL Court could not efficiently rule on its Motion to Remand," D.E. 311, p. 13. Plaintiff's Motion to Vacate explains that consistent with the Manual for Complex Litigation (Fourth) § 20.132 (2004), because the ERISA preemption (subject matter jurisdiction) issue is unique to Plaintiff's action, "judicial economy favors the currently-presiding district court resolving that issue," as "[r]efiling the motion in the transferee court would result i[n] needless delay and use of resources for both the parties and the judiciary." D.E. 297, p. 4, fn.6.

In response to Defendants' Motion to Stay filed in the District Court for the Southern District of Florida, Plaintiff provided additional reasons. Specifically, Plaintiff explained that upon review of the BCBS Antitrust MDL docket, Plaintiff identified more than sixty (60) Member Cases, none of which appear to involve ERISA jurisdictional challenges in the context of "rate of payment" contract claims. Plaintiff further explained that only one case involves a motion to remand a case removed on ERISA preemption grounds (pertaining to inflated premium payments), and the motion to remand has been pending for nearly three years. *See*

Motion to Remand at 1, *Jarreau v. La. Health & Serv. & Indem. Co. (d/b/a Blue Cross and Blue Shield of La., Inc.)*, No. 3:12-cv-00421 (M.D. La. Oct. 17, 2012) (Dkt. No. 17) (demonstrating that the Antitrust MDL is too large to address issues unique to individual suits, which should be addressed by transferring courts prior to transfer).

Defendants' argument that it had an obligation to notify the MDL Court of tag-along actions does not explain its resistance to Plaintiff's request to vacate the transfer order, have the jurisdictional issue decided by the Florida district court, or agree to separating and remanding the contract-based claims. Indeed, Defendants' motives are far from beyond reproach – despite their representation to the contrary, Defendants know that rate of pay cases are not subject to complete ERISA preemption and that removal is improper. Federal courts have rejected identical arguments advanced by them in other cases. *See, e.g., Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 608-CV-686-ORL-19KRS, 2008 WL 3833236, *3 (M.D. Fla. Aug. 13, 2008) (remanding case because independent state law claims of third party providers are not preempted by ERISA); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1243 (11th Cir. 2001) ("Blue Cross has failed to meet its burden of demonstrating that ERISA completely preempts Hobbs and Irvine's state law claims. Accordingly, the district court lacked subject matter jurisdiction over this action. It erred in denying the motion to remand."); *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009) ("Again, where claims do not involve coverage determinations, *but have already been deemed 'payable,' and the only remaining issue is whether they were paid at the proper contractual rate*, ERISA preemption does not apply.") (emphasis added); *Gables Ins. Recovery*, 39 F. Supp. 3d at 1384 ("The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all."); *In re Managed Care Litigation*, 135 F. Supp. 2d 1253, 1268 (S.D. Fla.

2001) (holding that health care providers' breach of contract claims were "free of the shadow of ERISA preemption" and that to hold otherwise would "defeat rather than promote" the purposes of ERISA).

### IV. Should the Panel Decide that Transfer is Appropriate, Plaintiff's Contract Claims Must be Separated.

Defendants assert that Plaintiff's contract-based claims should not be separated and remanded because they are "intertwined" with its conspiracy claim, and the same discovery will be at issue in both claims. Defendants are wrong. As explained *supra*, Plaintiff's contract-based claims are independent of and require no proof of conspiracy of any sort. Further, as evidenced by Plaintiff's First Request for Production of Documents, D.E. 311-2, p. 6, only 3 of 18 requests seek documents relevant to Plaintiff's Florida civil conspiracy claim. The remainder seek documents pertinent to reimbursement and the "reasonable value" of services rendered. Accordingly, Defendants' argument is without merit and should be rejected.

### V. Conclusion

Because the Antitrust MDL and Plaintiff's claims do not involve the same questions *of* fact and transfer would not result in convenience to the parties and the just and efficient conduct of this case, transfer is inappropriate. Accordingly, the Panel should vacate the conditional transfer order (CTO-18) with respect to this action, or alternatively vacate the conditional transfer order (CTO-18) with respect to separable contract-based claims or defer a ruling on this motion until the district court has ruled on Plaintiff's pending motion to remand, together with such additional relief the Panel deems just and proper.

MDL No. 2406

Respectfully submitted,

Glenn J. Waldman, Esq.
WALDMAN TRIGOBOFF
HILDEBRANDT MARX &
CALNAN, P.A.
Broward Financial Centre, Suite 1700
500 East Broward Boulevard
Fort Lauderdale, FL 33394
Telephone: (954) 467-8600 ext. 102
Facsimile: (954) 467-6222
gwaldman@waldmanlawfirm.com
*Counsel for the Plaintiff*

/s/ Eileen L. Parsons
Eileen L. Parsons
Jeremy L. Kahn
Dale S. Dobuler
Kristen A. Corpion
VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
Telephone: (305) 577-3996
Fax: (305) 577-3559
eparsons@vpl-law.com
iromero@vpl-law.com
jkahn@vpl-law.com
ddobuler@vpl-law.com
kcorpion@vpl-law.com

11