# IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| BRADLEY A. CHICOINE, D.C., DR. BRADLEY A. CHICOINE, D.C., P.C., MARK A. NILES, D.C, NILES CHIROPRACTIC, INC., ROD R. REBARCAK, D.C., and BEN WINECOFF, D.C., on behalf of themselves and those like situated, | |
| Plaintiffs, | |
| and | Law No. |
| STEVEN A. MUELLER, D.C.,  BRADLEY J. BROWN, D.C., BROWN CHIROPRACTIC, P.C.; MARK A. KRUSE, D.C., DR. MARK A. KRUSE, D.C., P.C., KEVIN D. MILLER, D.C., and LARRY E. PHIPPS, D.C., on behalf of themselves and those like situated, | |
| Plaintiffs, | |
| vs. | |
| WELLMARK, INC d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, an Iowa corporation, and WELLMARK HEALTH PLAN OF IOWA, INC., an Iowa corporation, | |
| Defendants. | |

## PETITION AT LAW
### (Jury Trial Demanded)

1

**EXHIBIT 1**

## COUNT I

## PLAINTIFFS' CLASS ACTION AND CONDUCT ALLEGATIONS OF HORI-ZONTAL CONSPIRACY IN RESTRAINT OF TRADE OR COMMERCE

## NATURE OF THE CASE

1.      Plaintiffs bring this action on behalf of themselves and a class of Iowa licensed doctors of chiropractic who are citizens of the state of Iowa as of the date of filing.  They seek damages from Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc. ("Wellmark Defendants") for combination and conspiracy in restraint of trade or commerce in the purchase of health care delivery from Iowa chiropractors in setting the price paid for chiropractic services at a discriminatory low level and in restricting patient access to and coverage for treatment by Iowa-licensed doctors of chiropractic.

2.      This Petition is intended to conform to the Opinions of the Iowa Supreme Court in the case of *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244 (Iowa, July 27, 2012) and 861 N.W.2d 563 (Iowa, February 27, 2015), *rehearing denied*, 2015 Iowa Sup. LEXIS 54 (April 21, 2015).

3.      In its essence, this Petition alleges that Wellmark Defendants have, by contract, conspiracy and other unlawful means, conspired and combined to:

        (a)     enter into agreements with other potential price competitors to artificially fix a lower price for chiropractic services and to limit or exclude chiropractic coverage from health plans offered by other potential competitors for chiropractic services in Iowa.

        (b)     enter into agreements with other independent entities to allocate territories and not to compete with each other in those allocated territories

E-FILED 2015 OCT 05 2:59 PM POLK - CLERK OF DISTRICT COURT

(c)      impose maximum fee schedules to which chiropractors must agree with defendants, their co-conspirators, and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d)      prescribe fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the fees for other health care practitioners for the same or similar services;

(e)      prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

(f)      historically enter into a contract, combination and conspiracy in restraint of trade or commerce in Iowa with health care providers other than chiropractors to first boycott and then later discriminate against the diagnostic and treatment services to members provided by Iowa chiropractors

(g)      Beginning in approximately 2007, Wellmark Defendants attempted to implement for itself and its co-conspirators a policy by which their subscriber-patients who elected to seek chiropractic treatment would be covered for only three treatment procedures per visit to a doctor of chiropractic regardless of the acuity, severity, or nature of the patient's condition or the number of her complaints;

(h)      Beginning in approximately 2007, Wellmark Defendants announced and  attempted to implement for itself and its co-conspirators a policy by

3

which subscriber-patients and those persons who were employees of self-funded entities administered by Wellmark Defendants would be required to seek preapproval of an agent of the Wellmark Defendants before any chiropractic services would be paid, which policy solely related to chiropractic services and to no other services of any other health care practitioner licensed by the state of Iowa;

(i)     Wellmark Health Plan of Iowa, Inc. ("WHPI") and its co-conspirators have implemented a plan solely related to Iowa chiropractors and to no other health care practitioner licensed in Iowa whereby Iowa chiropractors only are subject to a capitated payment system whereby chiropractors are paid at  rate less than 50% of the rate payable for PPO services, while all other Iowa licensed practitioners covered by WHPI are paid pursuant to a schedule derived from the PPO payment schedules with a 7-9% discount.

4.     Such horizontal conspiracies are unreasonable restrictions and restraints of competition, trade or commerce in Iowa and the anticompetitive consequences of such conspiracy or conspiracies outweigh any procompetitive benefits.

## <u>JURISDICTION AND VENUE</u>

5.     This Court has jurisdiction over the subject matter of this action pursuant to Iowa Code § 602.6101. This Court has personal jurisdiction over the Defendants in that the Defendants are Iowa corporations with their corporate headquarters located in Des Moines, Polk County, Iowa.

6.     Venue is proper pursuant to Iowa Code Ch. 616.

**PARTIES**

7.      The following individual plaintiff doctors of chiropractic bring this action
for damages and injunction on behalf of all doctors of chiropractic in Iowa similarly situ-
ated (1) who are citizens of the state of Iowa as of the date of filing of this petition  or (2)
who have been citizens of Iowa at all times during their Iowa licensure as doctors of chi-
ropractic after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First
Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory
Judgment in *Mueller et al v. Wellmark, Inc., et* al, Law No. 107471, (Polk Co., Iowa,
Dist. Ct., filed May 20, 2008). The doctor of chiropractic Plaintiffs are referred to as the
"Provider Plaintiffs" or the "Providers." They are:

(a)      Plaintiff Bradley A. Chicoine, D.C., a doctor of chiropractic li-
censed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resi-
dent of and practices chiropractic in Sioux City, Iowa. He is the owner of plaintiff
Dr. Bradley A. Chicoine, D.C., P.C., an Iowa professional corporation, which has its
principal place of business in Sioux City, Iowa.  During all times material to this ac-
tion, Dr. Chicoine and/or his P.C. has provided and billed for chiropractic services
to patients who are enrolled in plans offered or administered by Defendants.

(b)      Plaintiff Mark A. Niles, D.C., a doctor of chiropractic licensed to
practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and
practices chiropractic in Tipton, Iowa. He is the owner of plaintiff Niles Chiroprac-
tic, Inc., an Iowa corporation which has its principal place of business in Tipton,
Iowa. During all times material to this action, Dr. Niles and/or Niles Chiropractic

has provided and billed for chiropractic services to patients who are enrolled in

plans offered or administered by Defendants.

        (c)    Plaintiff Rod R. Rebarcak, D.C., a doctor of chiropractic li-

censed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resi-

dent of and practices chiropractic in Ames, Iowa. During all times material to this

action, Dr. Rebarcak has provided and billed for chiropractic services to patients

who are enrolled in plans offered or administered by Defendants.

        (d)    Plaintiff Ben Winecoff, D.C., a doctor of chiropractic licensed to

practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and

practices chiropractic in Ames, Iowa. During all times material to this action, Dr.

Winecoff has provided and billed for chiropractic services to patients who are en-

rolled in plans offered or administered by Defendants.

    8.    Additionally, the following individual plaintiff doctors of chiropractic

bring this action for damages and injunction, pursuant to the provisions of Iowa Code §

614.1o (2015), which states:

> If, after the commencement of an action, the plaintiff, for any causes ex-
> cept negligence in its prosecution, fails therein, and a new one is brought
> within six months thereafter, the second shall, for the purposes herein
> contemplated, be held a continuation of the first.

Procedendo came down in *Mueller v. Wellmark, Inc.*, 861 N.W.2d 563 (Iowa, February

27, 2015), *rehearing denied*, 2015 Iowa Sup. LEXIS 54 (April 21, 2015), on April 22,

2015. The six months does not run until October 22, 2015. Thus, the net effect of §

614.10 in this case is that the five named plaintiffs can continue as class representatives,

because they, like the rest of the class still have a unruled upon claim for violation of

Iowa Code § 553.4 under the rule of reason analysis. Accordingly, the following named plaintiffs also bring this action on behalf of all doctors of chiropractic in Iowa similarly situated (1) who are citizens of the state of Iowa as of the date of filing of this petition  or (2) who have been citizens of Iowa at all times during their Iowa licensure as doctors of chiropractic after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory Judgment in *Mueller et al v. Wellmark, Inc., et* al, Law No. 107471, (Polk Co., Iowa, Dist. Ct., filed May 20, 2008). The doctor of chiropractic Plaintiffs are referred to as the "Provider Plaintiffs" or the "Providers." They are:

(a)      Plaintiff Steven A. Mueller, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Algona, Iowa. During all times material to this action, Dr. Mueller has provided and billed for chiropractic to patients who are enrolled in plans offered or administered by Defendants.

(b)      Plaintiff Bradley J. Brown, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Oelwein, Iowa. He is the owner of plaintiff Brown Chiropractic, P.C., an Iowa professional corporation, which has its principal place of business in Oelwein, Iowa. During all times material to this action, Dr. Brown and/or his P.C. has provided and billed for chiropractic services to patients who are enrolled in plans offered or administered by Defendants.

(c)      Plaintiff Mark A. Kruse, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and

7

practices chiropractic in Sioux City, Iowa. He is the owner of plaintiff Dr. Mark A.
Kruse, D.C., P.C., an Iowa professional corporation, which has its principal place of
business in Sioux City, Iowa. During all times material to this action, Dr. Kruse
and/or his P.C. has provided and billed for chiropractic services to patients who are
enrolled in plans offered or administered by Defendants.

(d)     Plaintiff Kevin D. Miller, D.C., a doctor of chiropractic licensed
to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and
practices chiropractic in West Des Moines, Iowa. During all times material to this
action, Dr. Miller has provided and billed for chiropractic services to patients who
are enrolled in plans offered or administered by Defendants.

(e)     Plaintiff Larry E. Phipps, D.C., a doctor of chiropractic licensed
to practice in the State of Iowa, at time of the filing of the Plaintiffs' First Amend-
ment to Petitioner for Damages, for Permanent Injunction and for Declaratory
Judgment in *Mueller et al v. Wellmark, Inc., et* al, Law No. 107471, (Polk Co., Iowa,
Dist. Ct., filed May 20, 2008), was a citizen of the State of Iowa, and a resident of
and practitioner of chiropractic in Marshalltown, Iowa. During  times material to
this action, Dr. Phipps has provided and billed for chiropractic services to patients
who are enrolled in plans offered or administered by Defendants.

9.     Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc., are
Iowa corporations with their corporate headquarters located at 1331 Grand Avenue, Des
Moines, Iowa. Wellmark, Inc. does business as Wellmark Blue Cross and Blue Shield of
Iowa.  Wellmark and its subsidiaries and affiliated companies, including Wellmark Blue
Cross and Blue Shield of South Dakota and Wellmark Health Plan of Iowa, Inc., insure

8

or pay health benefit claims for more than two million members in Iowa and South Da-

kota.  Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Blue Cross and Blue

Shield of South Dakota, and Wellmark Health Plan of Iowa, Inc. are independent licen-

sees of the Blue Cross and Blue Shield Association ("BCBSA").

10.     Defendant Wellmark, Inc., was originally incorporated on September 19,

1939, as a corporation not for pecuniary profit under what later became Chapter 504A of

the Code of Iowa, to operate a nonprofit health service plan under [now] Chapter 514 of

the Code of Iowa to provide payment for health care furnished to subscribers under con-

tract with the corporation. (Second Restated Articles of Incorporation, filed September

1, 1989). On October 1, 1991, Wellmark adopted a plan of mutualization to become a cor-

poration for pecuniary profit under Chapter 491 of the Code of Iowa and a mutual insur-

ance company under Chapter 508 of the Code of Iowa. The company merged with South

Dakota Medical Service, Inc., on July 25, 1996, and on May 15, 1997, it changed its name

to Wellmark, Inc., an Iowa corporation and mutual insurance company. Its registered

agent is CT Corporation System, 2222 Grand Avenue, Des Moines, Iowa 50312.

11.     Defendant Wellmark Health Plan of Iowa, Inc., was incorporated in Iowa

on March 13, 1996, as an Iowa domestic profit corporation under Chapter 490 of the

Code of Iowa. Its stated purpose in its articles of incorporation is to establish and oper-

ate a health maintenance organization under Chapter 514B of the Code of Iowa. Its reg-

istered agent is CT Corporation System, 2222 Grand Avenue, Des Moines, Iowa 50312.

12.     The Blue Cross and Blue Shield Association is a non-party co-conspirator

with the Wellmark defendants for purposes of the Iowa Competition Act.   Wellmark De-

fendants are members of the Blue Cross and Blue Shield Association.   The Blue Cross

and Blue Shield Association developed provider contracts and manuals which are being implemented in the State of Iowa by the Wellmark Defendants.  The Blue Cross and Blue Shield Association is headquartered in Chicago, Illinois, with offices in Washington, D.C. The Blue Cross and Blue Shield Association (BCBSA) is a national federation of 39 Blue Cross and Blue Shield companies. Collectively, the 39 Blue Cross and Blue Shield System provides healthcare coverage for more than 99 million people or one-in-three Americans.  The vast majority (65+%) of those persons covered by the Blue Cross and Blue Shield System are in PPO's, and an even greater percentage of Wellmark Defendants users are in PPO's.  According to BCBSA, a Preferred Provider Organization (PPO) is an arrangement designed to supply health care services at a discounted cost by providing incentives for members to use designated health providers (who contract with the PPO at a discount), but which also provides coverage for services rendered by health care providers who are not part of the PPO network.

13.    Historically, Wellmark's predecessor under a former name was organized and controlled by the Iowa Medical Society and the majority of its Board of Directors were Iowa allopathic physicians.  Under the control of allopathic physicians (and in later times in combination with osteopathic physicians), Wellmark's predecessor under a former name refused to seek authority to provide the services of chiropractors to its subscribers and members. In furtherance of that combination and conspiracy, in more recent times the Wellmark entities have established a scale of compensation for the same or similar diagnostic and treatment services to its members wherein Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) receive as much as 100% higher

10

payment than chiropractors receive for the same or similar diagnostic and treatment services.

14.     In about September of 1998, Wellmark unilaterally offered one form of participating provider agreement for all health care providers and adopted a payment methodology purportedly based upon the Resource Based Relative Value System (RBRVS) and began issuing annual statewide fee schedules.  Contrary to the actual RBRVS rates established by the Federal government, however, Wellmark implemented the RBRVS system in a manner which discriminated against chiropractic services by es-tablishing lesser rates for chiropractic diagnostic and treatment services than for the same or similar services provided by M.D.'s, D.O.'s, physicians assistants, and nurse practitioners.

15.     The 38 other members of BCBSA are non-party co-conspirators with the Wellmark defendants for purposes of the Iowa Competition Act. By agreement with Wellmark, BCBSA, and each other, such independent licensed affiliates of the Blue Cross and Blue Shield Association and licensed Blue Cross and Blue Shield Plans has agreed with Wellmark to fix the price of Iowa chiropractic services in accordance with the prices set by Wellmark under terms of the Practitioner Services Agreement and have further agreed to allocate territories and not to compete in Iowa and South Dakota with Wellmark.

16.     Additionally, providers for the employees of all of the self-funded plans Wellmark administers in Iowa use the same identical preferred provider panels as Wellmark's other coverages, i.e., they use providers contracted through Wellmark's Practitioner Service Agreement. By agreement with Wellmark, each of the self-funded

plans administered in Iowa by Wellmark has agreed with Wellmark to fix the price of Iowa chiropractic services in accordance with the prices set by Wellmark under terms of the Practitioner Services Agreement and Administrative Services Agreement of Wellmark Blue Cross and Blue Shield of Iowa. Accordingly, each of the self-funded plans administered by Wellmark is a non-party co-conspirator with the Wellmark defendants for purposes of the Iowa Competition Act.

17.    Wellmark and various Iowa private and government self-funded employers agree to jointly use the Wellmark PPO and HMO provider networks for the purchase of provider services. The network providers are not parties to these agreements. The self-funded employers agree to pay Wellmark a separate monthly fee which is a percentage of the difference between what the provider usually bills for the service and the Maximum Allowable Fee Wellmark established in its annual provider fee schedules. In other words, if the provider usually bills $500 for services and the Wellmark fee schedule sets $225 as the maximum it will pay a provider for such services, Wellmark receives a percentage of the $275 difference from the self-funded employer as a Network Access Fee. This price setting fee is separate from the additional fee Wellmark charges Iowa private and government self-funded employees for claims administration services.

## CLASS ACTION ALLEGATIONS

18.    Plaintiffs bring this action individually and as a class action pursuant to Iowa Rules of Civil Procedure 1.261 et seq on behalf of all chiropractors licensed in Iowa (1) who are citizens of Iowa as of the date of filing of this petition, or, (2) where citizens of Iowa on May 20, 2008, the date of the pleading in *Mueller et al v. Wellmark, Inc., et al*, Law No. 107471, (Polk Co., Iowa, Dist. Ct., pleading asserting class action filed May

20, 2008), which tolls the statute of limitations for the Provider Plaintiffs and proposed provider plaintiff class in this case for all times after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory Judgment in the *Mueller* case (Iowa R. Civ. P. 1.277), or, (3) who have been citizens of Iowa at all times during their Iowa licensure as doctors of chiropractic after May 20, 2008, each of whom have been damaged in their businesses by defendants' actions described below (the "Class").

19.     This action is properly maintainable as a class action.

20.     The Class are so numerous that joinder of all members is impracticable. There are approximately 1200 chiropractors licensed in Iowa who are citizens of the state of Iowa at the time of the filing of this petition. The names of the absent members of the class can be ascertained so that personal or mailed notice of the class action can be given them.

21.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)     whether Wellmark defendants have entered into agreements with other potential price competitors to artificially fix a lower price for chiropractic services and to limit or exclude chiropractic coverage from health plans offered by other potential competitors for chiropractic services in Iowa.

(b)     Whether Wellmark defendants have entered into agreements with other independent entities to allocate territories and not to compete with each other in those allocated territories

13

E-FILED  2015 OCT 05 2:59 PM POLK - CLERK OF DISTRICT COURT

(c)     whether Wellmark defendants have imposed maximum fee schedules to which chiropractors must agree with defendants, their co-conspirators, and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d)     whether Wellmark defendants have prescribed fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the fees for other health care practitioners for the same or similar services;

(e)     whether Wellmark defendants have prescribed limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code  of Iowa [Chapters 147 through 158];

(f)     whether Wellmark Defendants have engaged in a contract, combination or conspiracy between two or more persons to restrain (monopsonize) trade or commerce in Iowa as a whole and in major population centers of Iowa under Iowa Code § 553.4 (2007);

(g)     whether such horizontal conspiracies are unreasonable restrictions and restraints of competition, trade or commerce in Iowa and the anti-competitive consequences of such conspiracy or conspiracies outweigh any procompetitive benefits.

(h)     whether plaintiffs and the Class they represent have been injured by conduct prohibited by Section 553.4, Code of Iowa (2007); and,

(i)      whether the case of *Mueller et al v. Wellmark, Inc., et* al, Law No. 107471, (Polk Co., Iowa, Dist. Ct., pleading asserting class action filed May 20, 2008) tolls the statute of limitations for the Provider Plaintiffs and proposed provider plaintiff class in this case for all times after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory Judgment in the *Mueller* case. Iowa R. Civ. P. 1.277.

(j)      whether the proposed class of chiropractic plaintiffs have been damaged in the four years previous to filing of the *Mueller* pleading asserting class action status and to the present by the invidious treatment by the Wellmark defendants and their co-conspirators, who have uniformly and discriminatorily paid chiropractors less for the same or similar services than has been paid for the same or similar services of other health care practitioners in Iowa.

(k)      whether the measure of damages to Provider Plaintiffs and to the proposed provider plaintiff class are subject to uniform and simple calculation applicable to all plaintiffs, and are not subject to individual situations among the provider plaintiff class which would require individualized trials for any of the proposed provider plaintiff class members;

(l)      whether plaintiffs and the class are entitled to injunctive relief from the horizontal conspiracies in restraint of competition, trade or commerce.

22.      Plaintiffs' claims are typical of the claims of the other members of the Class and plaintiffs do not have any interests adverse to the Class.

23.    Plaintiffs are adequate representatives of the Class, and have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.  The named plaintiffs and their attorneys have or can acquire adequate resources to ensure that the interests of the class will not be harmed.

24.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class under the standard of I.R.C.P. 1.262(3)(b).

25.    Adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests under the standard of I.R.C.P. 1.262(3)(c).

26.    Plaintiffs anticipate that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

28.    The statute of limitations for the Providers Plaintiffs and the proposed provider plaintiff class has been tolled is tolled for all class members upon the commencement of an action asserting a class action. The case of *Mueller et al v. Wellmark,*

*Inc., et* al, Law No. 107471, (Polk Co., Iowa, Dist. Ct., pleading asserting class action filed May 20, 2008) tolls the statute of limitations for the Provider Plaintiffs and proposed provider plaintiff class in this case for all times after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory Judgment in the *Mueller* case. Iowa R. Civ. P. 1.277.

29.    The limitations statute resumes running under any one of four conditions stated in Iowa R. Civ. P. 1.277(1) – (4):

**1.277(1)** Upon filing an election of exclusion by that member.
**1.277(2)** Upon entry of an order of certification, or of an amendment thereof, eliminating that member from the class.
**1.277(3)** Except as to representative parties, upon entry of an order under rule 1.262 refusing to certify an action as a class action.
**1.277(4)** Upon dismissal of the action without an adjudication on the merits.

None of those conditions is applicable to Provider Plaintiffs or the proposed provider plaintiff class in this case.

30.    The doctrine of class action tolling was first established by the United States Supreme Court in the landmark case *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). The Supreme Court in *American Pipe* limited its holding to instances in which the plaintiffs seek to *intervene* in a class action where class certification has been denied. The Court broadened this narrow holding, however, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), making clear that the statute of limitations is tolled not only as to those class members seeking to intervene in the class action, but also as to *individual* actions filed by members of the putative class.

## <u>FACTUAL CONDUCT ALLEGATIONS</u>

31.     The Wellmark Defendants provide health services to the Iowa public on a statewide basis by offering and operating health care plans. Wellmark Defendants provide health care services including administration of self-funded health care plans to approximately 1.8 million Iowa enrollees in various health care plans statewide.

32.     Wellmark Defendants offer various health care coverage plans, including Indemnity Products: Comprehensive Major Medical (Protector), Blue Traditions (Full Service), Classic Blue (Alliance), Federal Employee Health Benefits Program (FEP), and the Blue Cross and Blue Shield Association Out-of-Area Program (Blue Card); Preferred Provider Organization Products: Alliance Select/Blue Select, Federal Employee Health Benefits Program (FEP), and the Blue Cross and Blue Shield Association Out-of-Area Program (Blue Card PPO); HMO Products: Blue Access, Blue Choice and Blue Advantage, and the Blue Cross and Blue Shield Association Out-of-Area Program (Blue Card POS) to their subscribers.

33.     In addition to offering coverage agreements to subscribers, Wellmark Defendants enter into agreements with the providers of health care services, including those licensed under Iowa Code Ch. 148 (medical doctors -MD's), Ch.150A (doctors of osteopathic medicine –DO's), Ch. 148C (physician's assistants), Ch. 152 7 152E (nurse practitioners), Ch. 148A (physical therapists) and Ch. 151 (doctors of chiropractic -DC's).

34.     Under these provider agreements with the Wellmark Defendants, health care professionals, including the Provider Plaintiffs, render treatment services to patients who are enrolled in the Wellmark Defendants' various plans and the plans of Wellmark's co-conspirators.

18

35.     Services are provided under the fundamental premise that, if the services are covered and are medically necessary, the Wellmark Defendants' enrollees will be covered and the providers of the services, including the Provider Plaintiffs, will be compensated in a timely manner for those services.

36.     Wellmark Defendants have contracts with over 65 percent of the health care insurance and 95 percent of the provider services market in Iowa, primarily through PPO contracts.

37.     Wellmark Defendants, together with their co-conspirators, use their overwhelming economic power and market dominance to coerce the individual Provider Plaintiffs into acquiescing in practice restrictions and reimbursement schedules detrimental to Provider Plaintiffs and by limiting and restricting patient access to Provider Plaintiffs resulting in detriment to the physical care and choice of consumers.

38.     This action is based on the relationships between the Provider Plaintiffs and the Wellmark Defendants and their contractually bound co-conspirators, and also on the belief that the Wellmark Defendants' actions, as detailed below, detrimentally impact patient health and the general welfare of the public, inasmuch as those actions deprive and limit patient access to the Provider Plaintiffs' treatment, and restrict and otherwise interfere with and impede the relationships between the Provider Plaintiffs and their existing and prospective patients.

39.     Wellmark Defendants have agreed and conspired with their co-conspirators to engage in, and continue to engage in, a pattern of price fixing and other discrimination against the Iowa Provider Plaintiffs. This price fixing and other discrimination has occurred and is occurring in numerous ways, including:

(a)      Wellmark defendants have entered into agreements with other potential price competitors to artificially fix a lower price for chiropractic services and to limit or exclude chiropractic coverage from health plans offered by other potential competitors for chiropractic services in Iowa;

(b)      Wellmark Defendants have entered into agreements with other independent entities to allocate territories and not to compete with each other in those allocated territories;

(c)      Wellmark defendants have imposed maximum fee schedules to which chiropractors must agree with defendants, their co-conspirators, and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d)      Wellmark defendants have prescribed fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the fees for other health care practitioners for the same or similar services;

(e)      Wellmark defendants have prescribed limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code  of Iowa [Chapters 147 through 158];

(f)      As administered by Wellmark, most "Blue Advantage" plans caps the number of covered visits its subscribers may make to a doctor of chiropractic to 12, regardless of individual subscriber-patient circumstances. No such re-

striction of 12 visits is imposed upon other health care providers-licensees.  In addition, in order to continue with additional treatment after the 12-visit cap has been reached, a subscriber-patient must obtain a referral from a "PCP" (Primary Care Physician) before any additional treatment from a doctor of chiropractic will be covered by Wellmark. Absent obtaining such an approved referral, the subscriber-patient must either forgo further chiropractic treatment or pay for the additional treatment personally, and then only after signing a waiver stating, in part, "I understand that I am requesting a service that may not be fully covered by my insurance company. I agree to be financially responsible for the full amount."

(g)    According to the Administrative Services Agreement of Wellmark Blue Cross and Blue Shield of Iowa, the co-conspirator self-funded entities pay a monthly Network Access Fee to Wellmark, which is the amount charged to the self-funded entity to gain the collective advantages of the network of providers with which Wellmark, any Host Blue, or any subcontractor has contracted for the providing for appropriate provision of covered services. Section 1.16. According to Section 3.1(b), one of Wellmark's obligations to the self-funded entity is to "provide access to networks of providers and . . . make information about the networks available to members through print, the Internet, and/or telephone service."   Section 3.1(e) says: "Wellmark shall determine benefits and process claims for health services furnished members in accordance with the terms, limitations and conditions set forth in the plan, the benefit documents, this agreement, applicable laws and regulations, the terms of the applicable provider agreement, and the claims administrations and medical policies of Wellmark, as amended from time to time." Part of

21

the Network Access Fee is a percentage of Network Savings, which is "the amount saved due to contract between Wellmark or another Blue Cross or Blue Shield Plan and health care providers." Wellmark processes claims for the self-funded entity through a plan called BlueCard, which is described in Article 9 of the Administrative Services Agreement.  The Host Blue, in accordance with applicable BlueCard policies, is responsible for providing such services as contracting with its participating providers and handling all interaction with its participating providers.  Section 9.2.

(h)     Beginning in approximately 2006, Wellmark Defendants attempted to implement for itself and its co-conspirators a policy by which their subscriber-patients who elected to seek chiropractic treatment would be covered for only three treatment procedures per visit to a doctor of chiropractic regardless of the acuity, severity, or nature of the patient's condition or the number of her complaints.

(i)     Beginning in approximately 2007, Wellmark Defendants announced and  attempted to implement for itself and its co-conspirators a policy by which subscriber-patients and those persons who were employees of self-funded entities administered by Wellmark Defendants would be required to seek preapproval of an agent of the Wellmark Defendants before any chiropractic services would be paid, which policy solely related to chiropractic services and to no other services of any other health care practitioner licensed by the state of Iowa.

(j)     Wellmark Health Plan of Iowa, Inc. ("WHPI") and its co-conspirators have implemented a plan solely related to Iowa chiropractors and to no other health care practitioner licensed in Iowa whereby Iowa chiropractors only are

E-FILED  2015 OCT 05 2:59 PM POLK - CLERK OF DISTRICT COURT

subject to a capitated payment system whereby chiropractors are paid at  rate less than 50% of the rate payable for PPO services, while all other Iowa licensed practitioners covered by WHPI are paid pursuant to a schedule derived from the PPO payment schedules with a 7-9% discount.

40.      The plaintiffs and the plaintiff class have been damaged since at least May 20, 2004 and continue to be damaged presently by receiving less than 50% than Wellmark pays for Iowa chiropractic physicians in its PPO and much less than 50% of what Wellmark defendants and their co-conspirators pay other health care practitioners in Iowa for the same or similar services.  This damage can be calculated through the examination of a schedule of fees prepared by the Wellmark defendants annually and comparing the compensation scheduled to be paid to plaintiffs and the plaintiff class to compensation scheduled to be paid to other Iowa health care practitioner for the same or similar services.

41.      Historically, Wellmark's predecessor under a former name was organized and controlled by the Iowa Medical Society and the majority of its Board of Directors were allopathic or osteopathic physicians.  Under the control of allopathic and osteopathic physicians, Wellmark's predecessor under a former name refused to seek authority to provide the services of chiropractors to its subscribers and members. In furtherance of that combination and conspiracy, in more recent times the Wellmark entities have established a scale of compensation for the same or similar diagnostic and treatment services to its members wherein Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) receive as much as 100% higher payment than chiropractors receive for the same or similar diagnostic and treatment services. Contrary to the authority

23

given by Chapter 514F of the Code of Iowa, however, and without filing with or obtaining the explicit approval of the Iowa Insurance Commissioner, the annual rate schedule for health care services which has been issued by Wellmark and which governs its payment of Iowa health care practitioners discriminates against those health care practitioners licensed under Chapter 151 of the Code of Iowa.

42.     In about September of 1998, Wellmark unilaterally offered one form of participating provider agreement for all health care providers and adopted a payment methodology purportedly based upon the Resource Based Relative Value System (RBRVS) and began issuing annual RBRVS-based statewide fee schedules.  Contrary to the actual RBRVS rates established by the Federal government, however, Wellmark implemented the RBRVS system in a manner which discriminated against chiropractic services by establishing lesser rates for chiropractic diagnostic and treatment services than for the same or similar services provided by M.D.'s, D.O.'s, physicians assistants, and nurse practitioners.

## CLAIMS FOR RELIEF

## RESTRAINT OF TRADE

43.     Plaintiffs and the Class they represent have been injured by conduct prohibited by Section 553.4, Code of Iowa (2007), the anticompetitive consequences of such conspiracy or conspiracies outweigh any procompetitive benefits.

44.     Plaintiffs and the other members of the Class have been damaged in their businesses and property by and as a proximate cause of the conduct of the Wellmark defendants and their co-conspirators.

24

45.    The actions of the Wellmark Defendants are willful or flagrant in light of the existing law of Iowa and the surrounding circumstances.

## PRAYER

**WHEREFORE**, Plaintiffs pray for the following relief:

1.    That the jury award plaintiffs and the plaintiff class damages in an amount determined by the evidence for conduct in violation of the Iowa Competition Act for the four years previous to the filing of this action and to the date of trial;

2.    That the jury award plaintiffs and the plaintiff class double their actual damages because of the egregious conduct of the Wellmark defendants;

3.     That, pursuant to I.R.C.P. 1.275(4), the Court award attorneys' fees to Plaintiffs, and that, pursuant to Iowa Code § 553.12(4), the Court award the necessary costs of bringing suit, including a reasonable attorney fee;

4.    That the Court award plaintiffs and the plaintiff class injunctive relief from the unreasonable horizontal restraints on competition, trade and commerce committed by Wellmark defendants, and

5.    That the Court award such other and further relief to which Plaintiffs are justly entitled.

## JURY DEMAND

The plaintiffs, by their attorneys of record, demand trial by jury of the claims raised in their Petition which may be tried at law.

Dated: October 5, 2015.

HAWKINS & NORRIS, P.C.
___/s/ Glenn L Norris_____
Glenn L. Norris  AT0005907

2501 Grand Avenue, Suite C
Des Moines, Iowa 50312-5399
Telephone:  515-288-6532
Facsimile:  515-281-1474
Email:  gnorris@2501grand.com


WANDRO & ASSOCIATES, P.C.
_____/s/ Steven P. Wandro_____
Steven P. Wandro AT0008177
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312-5399
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
E-mail: swandro@2501grand.com

ERBE LAW FIRM
Harley C. Erbe AT0002430
2501 Grand Avenue
Des Moines, Iowa 50312-5399
Telephone: (515) 281-1460
Facsimile: (515) 281-1474
E-mail: herbelaw@aol.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the ___5th__ day of _October____, 2015.

By:       ____ U.S.Mail    ____  Facsimile  ____  Hand Delivery       ____ Overnight Courier

____ Fedex or UPS              _x_  E-mail       _x_  eFiling


_____/s/ Glenn L Norris_____

Copy to:
Hayward L. Draper, Esq.
Thomas H. Walton, Esq.
Ryan G. Koopmans, Esq.
NYEMASTER, GOODE, WEST, HANSELL
& O'BRIEN, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899
Telephone:  515-283-3149, 283-3173
Facsimile: 515-283-8045
e-mail: hdraper@nyemaster.com;  twalton@nyemaster.com;  rkoopmans@nyemaster.com

26