# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| BRADLEY A. CHICOINE, D.C., DR. BRADLEY A. CHICOINE, D.C., P.C., MARK A. NILES, D.C, NILES CHIROPRACTIC, INC., ROD R. REBARCAK, D.C., and BEN WINECOFF, D.C., on behalf of themselves and those like situated, <br><br>    Plaintiffs, <br><br>and <br><br>STEVEN A. MUELLER, D.C., BRADLEY J. BROWN, D.C., BROWN CHIROPRACTIC, P.C.; MARK A. KRUSE, D.C., DR. MARK A. KRUSE, D.C., P.C., KEVIN D. MILLER, D.C., and LARRY E. PHIPPS, D.C., on behalf of themselves and those like situated, <br><br>    Plaintiffs, <br><br>vs. <br><br>WELLMARK, INC d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, an Iowa corporation, and WELLMARK HEALTH PLAN OF IOWA, INC., an Iowa corporation, <br><br>    Defendants. | No. 4:17-cv-00210 |

## Plaintiffs' Motion for Remand

**COME NOW** Plaintiffs, and pursuant to 28 U.S.C. § 1447(c), hereby move to remand this civil action to the Iowa District Court for Polk County, where it was formerly pending, on the basis that this Court lacks original jurisdiction of the subject matter

1

**EXHIBIT 6**

under 28 U.S.C. § 1332(a) or (d). Remand is required in the absence of jurisdiction and any doubts regarding removal should be resolved in favor of remand:

> As the Eighth Circuit has noted: "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir.1998) (citations omitted). If a court is in doubt about whether removal is appropriate, the case should be remanded to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court."); *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993); *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987) ("It is settled that the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.")

*Owings v. Deere & Co.*, 441 F. Supp. 2d 1011, 1014 (S.D. Iowa 2006). As the removing party, Defendants bear the burden of proving jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). With these strictures in mind, Plaintiffs state the following grounds and reasons in support of remand:

**I.  THE STATE COURT CLASS ACTION DOES NOT HAVE A PLAINTIFF CLASS ACTION MEMBER WHOSE CITIZENSHIP IS DIFFERENT FROM ANY DEFENDANT.**

1. 28 U.S.C. § 1332(d)(2) states: "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . ."

2. Both Defendants named in the original petition are Iowa corporations with their principal places of business at 1331 Grand Avenue, Des Moines, Iowa. [Petition at

2

Law ¶¶ 10 & 11] Blue Cross and Blue Shield Association ("BCBSA") has never been named a defendant. [Petition, ¶ 12; First Amendment to Petition, ¶ 1(b)]

3. The class for which representation is sought is defined in ¶ 18 of the Petition:

> "all chiropractors licensed in Iowa (1) who are citizens of Iowa as of the date of filing of this petition, or, (2) where citizens of Iowa on May 20, 2008, the date of the pleading in *Mueller et al v. Wellmark, Inc., et* al, Law No. 107471, (Polk Co., Iowa, Dist. Ct., pleading asserting class action filed May 20, 2008), which tolls the statute of limitations for the Provider Plaintiffs and proposed provider plaintiff class in this case for all times after May 20, 2004, which is four years prior to the filing of the Plaintiffs' First Amendment to Petitioner for Damages, for Permanent Injunction and for Declaratory Judgment in the *Mueller* case (Iowa R. Civ. P. 1.277), or, (3) who have been citizens of Iowa at all times during their Iowa licensure as doctors of chiropractic after May 20, 2008, each of whom have been damaged in their businesses by defendants' actions described below (the "Class")."

In other words, the class is limited to chiropractic physicians who are citizens of Iowa at the times of the filings of the two class action petitions described.

4. Accordingly, 28 U.S.C. § 1332(d)(2)(A) does not grant this Court original jurisdiction of the subject matter because there is no member of the proposed class of plaintiffs who is a citizen of a state different from any defendant.

## II. SEC. 1332(d)(4) PROHIBITS EXERCISE OF FEDERAL JURISDICTION.

5. Further grounds for remand are found in 28 U.S.C. § 1332(d)(4), under which a district court must decline to exercise jurisdiction over class actions under paragraph (2) [28 U.S.C. § 1332(d)(2)] in two circumstances, both of which apply here.

3

6. 28 U.S.C. § 1332(d)(4)(B) prohibits exercise of jurisdiction "when two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." The same is true here, thus requiring remand.

7. Additionally, 28 U.S.C. § 1332(d)(4)(A) prohibits exercise of jurisdiction where greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; at least 1 defendant is a defendant from whom significant relief is sought by members of the plaintiff class, whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and who is a citizen of the State in which the action was originally filed; and principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed.  All of these factors are present here, again requiring remand.

### III. WELLMARK'S NOTICE OF REMOVAL IS UNTIMELY.

8. Defendants Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa, and Wellmark Health Plan of Iowa, Inc. ("Wellmark") filed their Notice of Removal on June 14, 2017. The record shows that the Petition at Law was filed in Iowa District Court for Polk County on October 15, 2015. [Ex. B to Loc. R. 81.A filing] Return of Service shows that service was accepted as to both defendants by Hayward L. Draper, counsel for defendants, on October 6, 2015. [Ex. C to Loc. R. 81.A filing]

9. 28 U.S.C. § 1446(b)(1) states: "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." Any such time period expired on November 5, 2015.

10. Wellmark cites no case law for its argument removal was timely instead under 28 US.C. § 1446(b)(3) ("if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, or a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable"). This provision does not apply to support timely intervention.

11. BCBSA is not a defendant. Its Motion to Intervene, filed June 14, 2017, is not a pleading. IOWA R. CIV. P. 1.431(1) and 1.401; FED. R. CIV. P. 7(a). BCBSA's intervention request does not make it a defendant and there is no court order granting the same. "The right of removal is generally determined from the record and the status of the pleadings at the time the petition for removal is filed." *Palmquist v. Conseco Med. Ins. Co.*, 128 F. Supp. 2d 618, 621 (D.S.D. 2000) (citing *Farm Bureau Mutual Insurance Co., Inc. v. Eighmy*, 849 F.Supp. 40, 42 (D.Kan.1994) (which cites *American Fire Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951)); *Marquette Nat'l Bank of Minneapolis v. First Nat'l Bank of Omaha*, 422 F. Supp. 1346, 1349

5

(D. Minn. 1976). In short, the Motion to Intervene did not trigger section 1446(b)(3), and removal was not proper.

12. Moreover, the underlying basis for both BCBSA's Motion to Intervene and Wellmark's Notice of Removal relies entirely on allegations in the Petition at Law. Wellmark claims BCBSA is a "primary defendant in this matter" whom it alleges Plaintiffs should have named in the beginning[1]. (*See* Notice of Removal, Doc. 1 at ¶¶ 2, 7, 8, 9). As such, Wellmark also cannot credibly argue it "first ascertained" the case was allegedly removable based on BCBSA's Motion to Intervene.

13. Accordingly, Wellmark's Notice of Removal is untimely under 28 U.S.C. § 1446(b)(1) or (3), and the case should be remanded.

### IV. PLAINTIFF'S FIRST AMENDMENT TO PETITION TAKES ALL ALLEGATIONS OF BCBSA HORIZONTAL TERRITORIAL ALLOCATION OUT OF THE CASE.

14. Plaintiffs filed a First Amendment to Petition at Law in the Iowa District Court for Polk County on June 14, 2017 at noon (12:00 p.m.). Under Iowa R. Civ. P. 1.402(4), the First Amendment was deemed filed without leave of court because the defendants had not served and filed a responsive pleading to the original Petition. [Ex. LL to Loc. R. 81.A filing]

15. Wellmark did not file their Notice of Removal of Civil Action in Iowa District Court for Polk County until June 14, 2017 at 12:53 p.m. Thus, the Petition togeth-

---

[1] Moreover, those allegations are not part of the Amended Petition at Law, which was the operative petition at the time Wellmark filed its Notice of Removal as explained in part IV below, and thus further underscores why this case should be remanded. BCBSA is not a primary defendant as outlined in part V below.

6

er with First Amendment to Petition contain Plaintiffs' operative allegations. As previously stated, what matters is the status of the record and pleadings at the time the notice of removal is filed. (*See* ¶ 11 above citing *Palmquist*, 128 F. Supp. 2d at 621 and others).

16. The First Amendment strikes:
    a. ¶ 3(b) of the Petition regarding horizontal territorial allocation;
    b. The first sentence of ¶12 stating "The Blue Cross and Blue Shield Association is a non-party co-conspirator with the Wellmark defendants for purposes of the Iowa Competition Act."
    c. ¶ 15. Plaintiffs allege as substituted ¶15 as follows: "15. By agreements between Wellmark defendants and each of the other 38 (now 36) BCBSA licensees, Wellmark processes and pays Iowa providers for out-of-state licensees member claims for provider services for each of the other BCBSA licensees. Wellmark defendants have agreed with each of the other licensees to fix the price of Iowa chiropractic services in accordance with the prices set by Wellmark defendants under terms of the Practitioner Services Agreements and the agreement with Iowa Chiropractic Physicians Clinic.";
    d. ¶ 21(b) of the Petition regarding horizontal territorial allocation;
    e. ¶ 39(b) of the Petition regarding horizontal territorial allocation;
17. Contrary to ¶¶ 2 and 7 of the Wellmark Notice of Removal, Plaintiffs do not allege that Wellmark conspired with BCBSA to price fix the fees paid to Iowa chiropractors.

7

V.  **THIS LAWSUIT IS ABOUT A HORIZONTAL CONSPIRACY LEAD BY WELLMARK TO FIX THE PRICE PAID FOR IOWA CHIROPRACTIC SERVICES AT AN ARTIFICIALLY LOW LEVEL COMPARED TO THE PRICE PAID FOR IOWA MD/DO, PHYSICIAN ASSISTANT OR NURSE PRACTITIONER SERVICES. THERE IS NO ALLEGATION IN THE PETITION THAT BCBSA HAS ANY ROLE IN THE PRICES PAID FOR IOWA CHIROPRACTIC SERVICES. BCBSA IS NOT A PRIMARY DEFENDANT.**

18. At several places in the Petition at Law, beginning in ¶ 3, the conspiracy is stated:

"In its essence, this Petition alleges that Wellmark Defendants have, by contract, conspiracy and other unlawful means, conspired and combined to:

   a. enter into agreements with other potential price competitors to artificially fix a lower price for chiropractic services and to limit or exclude chiropractic coverage from health plans offered by other potential competitors for chiropractic services in Iowa.

   b. [allegation stricken by First Amendment to Petition]

   c. impose maximum fee schedules to which chiropractors must agree with defendants, their co-conspirators, and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

   d. prescribe fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the fees for other health care practitioners for the same or similar services;

   e. prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment ser-

vices of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

f.  historically enter into a contract, combination and conspiracy in restraint of trade or commerce in Iowa with health care providers other than chiropractors to first boycott and then later discriminate against the diagnostic and treatment services to members provided by Iowa chiropractors

g.  Beginning in approximately 2007, Wellmark Defendants attempted to implement for itself and its co-conspirators a policy by which their subscriber-patients who elected to seek chiropractic treatment would be covered for only three treatment procedures per visit to a doctor of chiropractic regardless of the acuity, severity, or nature of the patient's condition or the number of her complaints;

h.  Beginning in approximately 2007, Wellmark Defendants announced and attempted to implement for itself and its co-conspirators a policy by which subscriber-patients and those persons who were employees of self-funded entities administered by Wellmark Defendants would be required to seek preapproval of an agent of the Wellmark Defendants before any chiropractic services would be paid, which policy solely related to chiropractic services and to no other services of any other health care practitioner licensed by the state of Iowa;

i.  Wellmark Health Plan of Iowa, Inc. ("WHPI") and its co-conspirators have implemented a plan solely related to Iowa chiropractors and to no other health care practitioner licensed in Iowa whereby Iowa chiropractors only

9

are subject to a capitated payment system whereby chiropractors are paid at rate less than 50% of the rate payable for PPO services, while all other Iowa licensed practitioners covered by WHPI are paid pursuant to a schedule derived from the PPO payment schedules with a 7-9% discount.

19. These allegations of horizontal conspiracy are also found in the Petition at Law at ¶ 21 and ¶ 39. Paragraph 39(g) makes a further allegation: "According to the Administrative Services Agreement of Wellmark Blue Cross and Blue Shield of Iowa, the co-conspirator self-funded entities pay a monthly Network Access Fee to Wellmark, which is the amount charged to the self-funded entity to gain the collective advantages of the network of providers with which Wellmark, any Host Blue, or any subcontractor has contracted for the providing for appropriate provision of covered services. Section 1.16. According to Section 3.1(b), one of Wellmark's obligations to the self-funded entity is to "provide access to networks of providers and . . . make information about the networks available to members through print, the Internet, and/or telephone service." Section 3.1(e) says: "Wellmark shall determine benefits and process claims for health services furnished members in accordance with the terms, limitations and conditions set forth in the plan, the benefit documents, this agreement, applicable laws and regulations, the terms of the applicable provider agreement, and the claims administrations and medical policies of Wellmark, as amended from time to time." Part of the Network Access Fee is a percentage of Network Savings, which is "the amount saved due to contract between Wellmark or another Blue Cross or Blue Shield Plan and health care providers." Wellmark processes claims for the self-

10

funded entity through a plan called BlueCard, which is described in Article 9 of the Administrative Services Agreement. The Host Blue, in accordance with applicable BlueCard policies, is responsible for providing such services as contracting with its participating providers and handling all interaction with its participating providers. Section 9.2.

20. None of the above specifications of violation of the Iowa Competition Act, Iowa Code 553.4, make any allegation of BCBSA price fixing in Iowa.

VI. **THE THINLY-VEILED GOAL OF WELLMARK AND BCBSA IN THE MOTION TO INTERVENE AND THE NOTICE OF REMOVAL IS GET THIS LAWSUIT INTO FEDERAL COURT AND THEN HAVE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION REMOVE IT TO MDL 2406 IN THE NORTHERN DISTRICT OF ALABAMA, WHERE IT WILL LANGUISH FOR YEARS BECAUSE IT DOES NOT FIT INTO THE MAINSTREAM MASTER COMPLAINTS ON FILE IN MDL 2406.**

21. After the Petition at Law in this case was filed on October 5, 2017, the defendants did not file an Answer or seek removal to federal court, but rather filed a Motion to Stay on December 4, 2015. [Ex. D to Loc. R. 81.A filing], on appeal, the Iowa Supreme Court, *Chicoine v. Wellmark, Inc.*, 894 N.W.2d 454, 456 (Iowa 2017), stated:

> "On the defendants' motion, and over the plaintiffs' objection, the district court stayed the case in its entirety pending further proceedings in federal multidistrict litigation (MDL) in Alabama brought under the federal antitrust laws. See 15 U.S.C. §§ 1, 4 (2012). The Alabama MDL includes physicians, hospitals, and other healthcare providers from around the country as plaintiffs. As in the present case, the plaintiffs allege conspiracies by the insurers to fix prices and allocate markets. However, the MDL complaint alleges that the con-

11

spiracies have had the effect of driving down all healthcare provider reimbursements to artificially low levels. One of the plaintiffs in the Alabama MDL is an Iowa chiropractor and one of the defendants is Iowa's largest health insurer.

"On interlocutory review, we conclude the district court abused its discretion in staying the Iowa litigation pending further proceedings in the Alabama MDL. Resolution of the Alabama MDL, which is still in bellwether pretrial proceedings, could take years, and although there is some overlap between the two cases, there are also considerable differences in the issues they present. Accordingly, we vacate the order staying this action and remand for further proceedings."

22. For the same reasons that the Iowa Supreme Court held that the granting of an indefinite stay was an abuse of discretion, the overruling of this Motion for Remand would create the same delays after the JPML removes the case to the Northern District of Alabama, because this case does not fit into the Master Complaints filed in MDL 2406:

> "As in *Landis*, the stay in this case serves to prolong the decision-making process for years without adequately protecting or advancing the plaintiffs' interest in receiving a prompt decision. At a minimum, the stay will last until 2018—the earliest date the bellwether cases could precede to trial under the current scheduling order in MDL No. 2406. In all likelihood, the stay could last several years or even a decade or more as the bellwether cases and the consolidated federal case involving the Iowa plaintiff move through their trial and appellate stages. Such a lengthy and indefinite stay violates the plaintiffs' interest in prompt and complete justice. Cf. *First Midwest Corp.*, 663 N.W.2d at 891. The stay does not become moderate simply because the plaintiffs could petition the court to enter an order ending the stay or because the court could end the stay sooner of its own accord. See *Landis*, 299 U.S. at 257, 57 S. Ct. at 167.

12

> "Furthermore, any benefit of a decision in MDL No. 2406 advancing the resolution of this case is uncertain for several reasons. First, if MDL No. 2406 is resolved under a per se or quick-look theory, it will provide little or no benefit to the economic and econometric analyses in the Iowa plaintiffs' rule-of-reason claim. Second, the federal court in MDL No. 2406 has adopted a bellwether approach, making it more likely that the Iowa portion of MDL No. 2406 will settle before trial or even pretrial proceedings, thus removing many of the potential benefits of a stay in this case. See *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."). The bellwether cases involve Alabama plaintiffs, and it is possible that competitive conditions in Alabama may have no connection to those in Iowa.
>
> "Finally, as the district court found, the plaintiffs raised approximately "ten detailed specifications of wrongdoing" concerning Wellmark's treatment of Iowa chiropractors while MDL No. 2406 focused on two allegations concerning the BCBSA's treatment of all healthcare providers. Although there appears to be an allegation common to both cases that the BCBSA entities have generally conspired to stay out of each other's territories (i.e., Iowa and South Dakota in the case of Wellmark), the present case alleges discriminatory treatment of chiropractors instead of artificially low reimbursements for all healthcare providers. In addition, the present case alleges other anticompetitive agreements, including between Wellmark and self-insurers. It is unclear in our view whether any resolution of claims in MDL No. 2406 would result in the resolution of claims in this action. See *Landis*, 299 U.S. at 256, 57 S. Ct. at 166 (noting a stay may be justified in favor of a case with nonidentical issues if "in all likelihood it will settle many and simplify them all")."

*Chicoine v. Wellmark, Inc.*, 894 N.W.2d at 461-62.

13

## VII. CONCLUSION

Based on the foregoing, Defendants have not satisfied their burden to prove this Court has jurisdiction of the subject matter, nor was their notice of removal timely. The case should be remanded to state court.

WHEREFORE, plaintiffs, pursuant to 28 U.S.C. § 1447(c), pray that this Court grant and sustain plaintiffs' Motion for Remand and remand this civil action to the Iowa District Court for Polk County, where it was formerly pending, on the basis that this Court lacks original jurisdiction of the subject matter under 28 U.S.C. § 1332(a) or (d) and furthermore that Wellmark's Notice of Removal was untimely under 28 U.S.C. § 1446(b).

Dated June 20, 2017.

/s/ Glenn L Norris
Glenn L. Norris  AT0005907
HAWKINS & NORRIS, P.C.
2501 Grand Avenue, Suite C
Des Moines, Iowa 50312-5399
Telephone:  515-288-6532
Facsimile:  515-281-1474
Email: gnorris@2501grand.com
gnorrislaw@gmail.com

/s/ Kara M. Simons
Steven P. Wandro  AT0008177
Kara M. Simons  AT0009876
WANDRO & ASSOCIATES, P.C.
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone:  515-281-1475
Facsimile:  515-281-1474
Email: swandro@2501grand.com
ksimons@2501grand.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify I or someone acting on my behalf, on June 20, 2017, presented the foregoing document to the Clerk of the Court for filing and uploading into the ECF system, which will send notification to the following ECF system participants.

Benjamin P. Roach
Hayward L. Draper
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-8045
E-mail: bproach@nyemaster.com
E-mail: hdraper@nyemaster.com
ATTORNEYS FOR WELLMARK

Jeffrey A. Krausman
Joan M. Fletcher
DICKINSON, MACKAMAN, TYLER
& HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, IA 50309
Telephone: (515) 246-4525
Facsimile: (515) 246-4550
Email: jkrausman@dickinsonlaw.com
Email: jfletcher@dickinsonlaw.com
ATTORNEYS FOR BCBSA

                      __/s/ *Kara M. Simons*_____