



# IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| STEVEN A. MUELLER, D.C., BRADLEY J. BROWN, D.C., MARK A. KRUSE, D.C., KEVIN D. MILLER, D.C., and LARRY E. PHIPPS, D.C., on behalf of themselves and those like situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>WELLMARK, INC d/b/a WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA, an Iowa corporation, and WELLMARK HEALTH PLAN OF IOWA, INC., an Iowa corporation,<br><br>   Defendants | **COPY**<br><br>Law No. 107471 |

# PLAINTIFFS' FIRST AMENDMENT TO PETITION FOR DAMAGES, FOR PERMANENT INJUNCTION AND FOR DECLARATORY JUDGMENT
(Jury Trial Demanded)

## DIVISION I

### PLAINTIFFS' CLASS ACTION AND CONDUCT ALLEGATIONS

### COUNT I

### NATURE OF THE CASE

1.     Plaintiffs bring this action on behalf of themselves and a class of Iowa–

licensed doctors of chiropractic who are citizens of the state of Iowa as of the date of filing.

They seek damages, declaratory relief and permanent injunction halting the illegal actions

of Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc. ("Wellmark

1

**EXHIBIT 11**

Defendants") which are discriminatory to Plaintiffs and restrict patient access to and coverage for treatment by Iowa-licensed doctors of chiropractic. Wellmark's procedures and requirements discriminate against doctors of chiropractic, and are contrary to Iowa statute and to the intent of the Iowa Legislature.

2.    In particular, Iowa Code § 514F.2 (2007) provides:

Nothing contained in the chapters of Title XIII, subtitle 1, of the Code [Chapters 505 through 523I] shall be construed to prohibit or discourage insurers, nonprofit service corporations, health maintenance organizations, or self-insurers for health care benefits to employees from providing payments of benefits or providing care and treatment under capitated payment systems, prospective reimbursement rate systems, utilization control systems, incentive systems for the use of least restrictive and least costly levels of care, preferred provider contracts limiting choice of specific provider, or other systems, methods or organizations designed to contain costs without sacrificing care or treatment outcome, provided these systems do not limit or make optional payment or reimbursement for health care services on a basis solely related to the license under or the practices authorized by chapter 151 or on a basis that is dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees under the chapters of Title IV, subtitle 3, of the Code [Chapters 147 through 158] in describing human ailments or their diagnosis or treatment."

3.    In its essence, this Petition alleges that Wellmark Defendants have, by contract, conspiracy and other unlawful means, conspired and combined to:

(a)    violate the various provisions of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)) in their contracts and dealings with chiropractors and chiropractic

2

patients in order to diminish and restrict the care for human ailments by chiropractors for which payment will be made by the Wellmark Defendants;

(b)     impose definitions of "chiropractic" and "medical necessity" contrary to Chapter 151, Code of Iowa (2007) in order to diminish and restrict the care for human ailments by chiropractors for which payment will be made by the Wellmark Defendants;

(c)     usurp the authority of the Iowa General Assembly, to the detriment of Iowa chiropractors and the treatment and therapy offered to their patients, in requiring the use of and promulgating standards and rules of practice for "Chiropractic Assistants," a category of health care practitioner found nowhere in the present Code of Iowa in Chapters 147 through 158 or elsewhere, and in limiting the employment of certain modes of physiotherapy if not applied by chiropractors or "chiropractic assistants;"

(d)     impose maximum fee schedules to which chiropractors must agree with defendants and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(e)     prescribe fees for chiropractic services which are discriminatory to doctors of chiropractic in relation to the fees for other health care practitioners for the same or similar services;

(f)     prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment

3

services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

(g)     agree with over 95% of all Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) in active practice to numerous items of preferential treatment, discriminatory to plaintiff, as found in Section 7 of a Settlement Agreement dated April 27, 2007, to which the Wellmark defendants and a class of plaintiffs consisting of all physicians (defined as an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark from May 22, 1999, to May 30, 2007, said agreement being effective and binding on the Wellmark defendants for the next four years from April 27, 2007.

(h)     Enter into agreements with various subdivisions of the State of Iowa to limit or exclude chiropractic coverage from health plans offered to employees of various subdivisions of the State of Iowa, based upon the encouragement of and false information provided by the Wellmark Defendants.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to Iowa Code § 602.6101. This Court has personal jurisdiction over the Defendants in that

the Defendants are Iowa corporations with their corporate headquarters located in Des Moines, Polk County, Iowa.

5.    Venue is proper pursuant to Iowa Code Ch. 616.

## PARTIES

6.    The individual plaintiff doctors of chiropractic bring this action for damages, declaratory relief and injunction on behalf of all doctors of chiropractic in Iowa similarly situated who are citizens of the state of Iowa as of the date of filing of this petition. The doctor of chiropractic Plaintiffs are referred to as the "Provider Plaintiffs" or the "Providers." They are:

(a)    Plaintiff Steven A. Mueller, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Algona, Iowa. During all times material to this action, Dr. Mueller has provided and billed for chiropractic to patients who are enrolled in plans offered by Defendants.

(b)    Plaintiff Bradley J. Brown, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Oelwein, Iowa. During all times material to this action, Dr. Brown has provided and billed for chiropractic services to patients who are enrolled in plans offered by Defendants.

(c)    Plaintiff Mark A. Kruse, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Sioux City, Iowa. During all times material to this

5

action, Dr. Kruse has provided and billed for chiropractic services to patients who are enrolled in plans offered by Defendants.

(d)     Plaintiff Kevin D. Miller, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in West Des Moines, Iowa. During all times material to this action, Dr. Miller has provided and billed for chiropractic services to patients who are enrolled in plans offered by Defendants.

(e)     Plaintiff Larry E. Phipps, D.C., a doctor of chiropractic licensed to practice in the State of Iowa, and a citizen of the State of Iowa, is a resident of and practices chiropractic in Marshalltown, Iowa. During all times material to this action, Dr. Phipps has provided and billed for chiropractic services to patients who are enrolled in plans offered by Defendants.

7.     Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc., are Iowa corporations with their corporate headquarters located at 636 Grand Avenue, Des Moines, Iowa. Wellmark, Inc. does business as Wellmark Blue Cross and Blue Shield of Iowa. Wellmark and its subsidiaries and affiliated companies, including Wellmark Blue Cross and Blue Shield of South Dakota and Wellmark Health Plan of Iowa, Inc., insure or pay health benefit claims for more than two million members in Iowa and South Dakota. Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Blue Cross and Blue Shield of South Dakota, and Wellmark Health Plan of Iowa, Inc. are independent licensees of the Blue Cross and Blue Shield Association.

8.     Defendant Wellmark, Inc., was originally incorporated on September 19, 1939, as a corporation not for pecuniary profit under what later became Chapter 504A of

6

the Code of Iowa, to operate a nonprofit health service plan under [now] Chapter 514 of the Code of Iowa to provide payment for health care furnished to subscribers under contract with the corporation. (Second Restated Articles of Incorporation, filed September 1, 1989). On October 1, 1991, Wellmark adopted a plan of mutualization to become a corporation for pecuniary profit under Chapter 491 of the Code of Iowa and a mutual insurance company under Chapter 508 of the Code of Iowa. The company merged with South Dakota Medical Service, Inc., on July 25, 1996, and on May 15, 1997, it changed its name to Wellmark, Inc., an Iowa corporation and mutual insurance company. Its registered agent is CT Corporation System, 2222 Grand Avenue, Des Moines, Iowa 50312.

9.     Defendant Wellmark Health Plan of Iowa, Inc., was incorporated in Iowa on March 13, 1996, as an Iowa domestic profit corporation under Chapter 490 of the Code of Iowa. Its stated purpose in its articles of incorporation is to establish and operate a health maintenance organization under Chapter 514B of the Code of Iowa. Its registered agent is CT Corporation System, 2222 Grand Avenue, Des Moines, Iowa 50312.

10.     The Blue Cross and Blue Shield Association is a non-party co-conspirator with the Wellmark defendants for purposes of the Iowa Competition Act. Wellmark Defendants are members of the Blue Cross and Blue Shield Association.   The Blue Cross and Blue Shield Association developed provider contracts and manuals which are being implemented in the State of Iowa by the Wellmark Defendants. The Blue Cross and Blue Shield Association is headquartered in Chicago, Illinois, with offices in Washington, D.C. The Blue Cross and Blue Shield Association (BCBSA) is a national federation of 39 Blue Cross and Blue Shield companies. Collectively, the 39 Blue Cross and Blue Shield System

7

provides healthcare coverage for more than 99 million people or one-in-three Americans. The vast majority (65+%) of those persons covered by the Blue Cross and Blue Shield System are in PPO's, and an even greater percentage of Wellmark Defendants users are in PPO's. According to BCBSA, a Preferred Provider Organization (PPO) is an arrangement designed to supply health care services at a discounted cost by providing incentives for members to use designated health providers (who contract with the PPO at a discount), but which also provides coverage for services rendered by health care providers who are not part of the PPO network. In Iowa, according to Iowa Code § 514F.3 (2007), the PPO is subject to rules of the commissioner of insurance. Iowa Code § 514F.2 (2007) states that such PPO shall not "limit or make optional payment or reimbursement for health care services on a basis solely related to the license under or the practices authorized by chapter 151 or on a basis that is dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees under the chapters of Title IV, subtitle 3, of the Code [Chapters 147 through 158] in describing human ailments or their diagnosis or treatment." The rule of the Iowa Commissioner of Insurance with respect to Preferred Provider Arrangements, Chapter 27, 191-27.6(514F), states: "A health care insurer subject to this chapter shall be subject to and is required to comply with all other applicable laws and rules and regulations of this state."

11.     The class of plaintiffs consisting of all physicians (defined as an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark

8

from May 22, 1999, to May 30, 2007, included in the Settlement Agreement of April 27, 2007, as alleged in Paragraph 3(e) above, are non-party co-conspirators with Wellmark for purposes of the Iowa Competition Act and for violations of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)).

12.     Wellmark has entered into agreement with over 95% of all Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) in active practice to numerous items of preferential treatment, discriminatory to plaintiff, as found in Section 7 of a Settlement Agreement dated April 27, 2007, to which Defendant Wellmark and a class of plaintiffs consisting of all physicians (defined as an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark from May 22, 1999, to May 30, 2007. These Iowa M.D.'s and D.O.'s, who are in direct competition with the Plaintiff Class.

13.     In addition, the Iowa Medical Society has signed on to the Settlement Agreement dated April 27, 2007, and is also a non-party co-conspirator with the Wellmark defendants for purposes of the Iowa Competition Act.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this action individually and as a class action pursuant to Iowa Rules of Civil Procedure 1.261 et seq on behalf of all chiropractors licensed in Iowa who are citizens of Iowa as of the date of filing of this petition, each of whom have been

9

damaged in their businesses or property and is being or will be irreparably harmed by defendants' actions described below (the "Class").

15.     This action is properly maintainable as a class action.

16.     The Class are so numerous that joinder of all members is impracticable. There are approximately 1200 chiropractors licensed in Iowa who are citizens of the state of Iowa at the time of the filing of this petition. The names of the absent members of the class can be ascertained so that personal or mailed notice of the class action can be given them.

17.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the Wellmark Defendants have violated the various provisions of H.F. 2219 (1986 Acts (71 G.A.) Ch. 1180)) in their contracts and dealings with chiropractors and chiropractic patients;

(b)     whether the Wellmark Defendants have engaged or are about to engage in a contract, combination or conspiracy between two or more persons in restraint of trade or commerce in Iowa as a whole and in major population centers of Iowa under Iowa Code § 553.4 (2007);

(c)     whether under the proposed contracts, plans and policies of the Wellmark Defendants, Iowa chiropractors and the care and treatment of chiropractic patients in Iowa will be evaluated by standards contrary to Chapter 151, Code of Iowa (2007);

10

(d)     whether the Wellmark Defendants have attempted to usurp the authority of the Iowa General Assembly, to the detriment of Iowa chiropractors and the treatment and therapy offered to their patients, in requiring the use of and promulgating standards and rules of practice for "Chiropractic Assistants," a category of health care practitioner found nowhere in the present Code of Iowa in Chapters 147 through 158 or elsewhere, and in limiting the employment of certain modes of physiotherapy if not applied by chiropractors or "chiropractic assistants;"

(e)     whether any of the activities or arrangements of the Wellmark Defendants have been expressly approved or regulated by any regulatory body or officer acting under authority of this state;

(f)     whether the Wellmark Defendants, in bad faith and for improper or pretextual motives, have discriminated against chiropractors on a basis solely related to the license under or the practices authorized by chapter 151 or on a basis that is dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees under the chapters of Title IV, subtitle 3, of the Code [Chapters 147 through 158] in describing human ailments or their diagnosis or treatment;

(g)     whether plaintiffs and the Class they represent has been injured or threatened with injury by conduct prohibited by Chapter 553, Code of Iowa (2007);

(h)     whether to class of chiropractic plaintiffs have been damaged in the past four years by the invidious treatment by the Wellmark defendants,

11

who have uniformly paid chiropractors less for the same or similar services
than has been paid for the services of other health care practitioners in Iowa;
and

    (i)    whether plaintiffs and the other members of the class will suffer
irreparable injury by the continuing discriminatory treatment and practices of
the Wellmark defendants.

18.    Plaintiffs' claims are typical of the claims of the other members of the Class
and plaintiffs do not have any interests adverse to the Class.

19.    Plaintiffs are adequate representatives of the Class, and have retained
competent counsel experienced in litigation of this nature and will fairly and adequately
protect the interests of the Class. The named plaintiffs and their attorneys have or can
acquire adequate resources to ensure that the interests of the class will not be harmed.

20.    The prosecution of separate actions by individual members of the Class
would create a risk of inconsistent or varying adjudications with respect to individual
members of the Class which would establish incompatible standards of conduct for the
party opposing the Class under the standard of I.R.C.P. 1.262(3)(b).

21.    Adjudications with respect to individual members of the class as a practical
matter would be dispositive of the interests of other members not parties to the
adjudication or substantially impair or impede their ability to protect their interests under
the standard of I.R.C.P. 1.262(3)(c).

22.    Plaintiffs anticipate that there will be no difficulty in the management of this
litigation. A class action is superior to other available methods for the fair and efficient
adjudication of this controversy.

23.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FACTUAL CONDUCT ALLEGATIONS

24.     The Wellmark Defendants provide health services to the Iowa public on a statewide basis by offering and operating health care plans. Wellmark Defendants provide health care services including administration of self-funded health care plans to approximately 1.4 million Iowa enrollees in various health care plans statewide.

25.     Wellmark Defendants offer various health care coverage plans, including their PPO plan, "Alliance Select," and their HMO plans, "Blue Advantage," "Blue Access," and "Blue Choice" to their subscribers.

26.     In addition to offering coverage agreements to subscribers, Wellmark Defendants enter into agreements with the providers of health care services, including those licensed under Iowa Code Ch. 148 (medical doctors -MD's), Ch.150A (doctors of osteopathic medicine –DO's), and Ch. 151 (doctors of chiropractic -DC's).

27.     Under these provider agreements with the Wellmark Defendants, health care professionals, including the Provider Plaintiffs, render treatment services to patients who are enrolled in the Wellmark Defendants' various plans.

28.     Services are provided under the fundamental premise that, if the services are covered and are medically necessary, the Wellmark Defendants' enrollees will be covered and the providers of the services, including the Provider Plaintiffs, will be compensated in a timely manner for those services.

13

29. Wellmark Defendants control over 60 percent of the health care insurance and services market in Iowa, primarily through PPO contracts.

30. Wellmark Defendants use their overwhelming economic power and market dominance to coerce the individual Provider Plaintiffs into acquiescing in practice restrictions and reimbursement schedules detrimental to Provider Plaintiffs and by limiting and restricting patient access to Provider Plaintiffs resulting in detriment to the physical care and choice of consumers.

31. Wellmark Defendants further wield their economic power and market dominance by reserving the right to unilaterally amend, and by unilaterally amending, their contracts with the Provider Plaintiffs and the Provider class members, on a "take it or leave it" basis. It is instructive to compare the original Blue Shield of Iowa contract with chiropractic providers (attached hereto as Exhibit "A") formulated in 1986 after the general assembly passed H.F. 2219 and Blue Shield lost its declaratory ruling petition before the Insurance Commissioner, with the contract with providers (including chiropractors) which Wellmark is currently mandating to be effective November 1, 2007:

(a) The original provider agreement was under chapters 504A and 514 of the Iowa Code (1987) which explicitly authorized such contracts with providers. The November 1, 2007 agreement recites that Wellmark is authorized by the Iowa Division of Insurance to transact the business of health insurance and is licensed by the Blue Cross and Blue Shield Association. It cites no statutory authority for the provider contract, because there is none. The contract is not regulated nor approved by the Iowa Insurance Commissioner.

14

(b)     The original provider contract covered services "for which
Chiropractor has the necessary training, consistent with Chiropractor's
licensure under the laws of the State of Iowa." The standard for evaluating the
chiropractor's services was "necessity of care," which is defined, in part, as
"consistent with professionally recognized standards of health care." The
provider contract expressly acknowledges that the chiropractor is licensed
under Chapter 151, Code of Iowa (1987). The November 1, 2007 agreement
recites: "All Covered Services provided by Provider will be Medically
Necessary." Medically Necessary is defined as "in accordance with generally
accepted standards of medical practice." (A chiropractor in Iowa is expressly
forbidden to "prescribe any drug or medicine" (Iowa Code § 151.8 (2007)) and
does not practice medicine (Iowa Code § 148.2(2)).

(c)     The original provider contract stated: "Based upon the principles
of good faith, Blue Shield may seek from time to time to change the contracting
entity performing utilization review or to amend or modify the provisions of its
utilization review program under this Agreement." The standard for evaluating
the chiropractor's services was "necessity of care," which is defined, in part, as
"consistent with professionally recognized standards of health care." The
November 1, 2007 provider contract states: "At all times during the term of
this Agreement, Provider shall meet the Wellmark contracting and
credentialing standards set forth in the Provider Guide. Wellmark retains sole
discretion to determine whether Provider shall be accepted as a Participating

15

Provider pursuant to Wellmark's policies, rules, procedures and contracting and credentialing standards." The Provider Guide comes from Blue Cross and Blue Shield Association, and does not reference Iowa Code, Chapter 151.

32.    This action is based on the relationships between the Provider Plaintiffs and the Wellmark Defendants, and also on the belief that the Wellmark Defendants' actions, as detailed below, detrimentally impact patient health and the general welfare of the public, inasmuch as those actions deprive and limit patient access to the Provider Plaintiffs' treatment, and restrict and otherwise interfere with and impede the relationships between the Provider Plaintiffs and their existing and prospective patients.

33.    Wellmark Defendants have engaged in, and continue to engage in, a pattern and practice of treatment which discriminates against the Provider Plaintiffs as licensees under Iowa Code Ch. 151, all in violation of Iowa law. This discrimination has occurred and is occurring in numerous ways, including:

   (a)    Wellmark Defendants have entered into agreement with over 95% of all Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) in active practice to numerous items of preferential treatment, discriminatory to plaintiff, as found in Section 7 of a Settlement Agreement dated April 27, 2007, to which Wellmark Defendants and a class of plaintiffs consisting of all physicians (defined as an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan

16

member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark from May 22, 1999, to May 30, 2007.

(b)     As presently administered by Wellmark, most "Blue Advantage" plans caps the number of covered visits its subscribers may make to a doctor of chiropractic to 12, regardless of individual subscriber-patient circumstances. No such restriction of 12 visits is imposed upon other health care providers-licensees. In addition, in order to continue with additional treatment after the 12-visit cap has been reached, a subscriber-patient must obtain a referral from a "PCP" (Primary Care Physician) before any additional treatment from a doctor of chiropractic will be covered by Wellmark. Absent obtaining such an approved referral, the subscriber-patient must either forgo further chiropractic treatment or pay for the additional treatment personally, and then only after signing a waiver stating, in part, "I understand that I am requesting a service that may not be fully covered by my insurance company. I agree to be financially responsible for the full amount."

(c)     Wellmark Defendants have arbitrarily imposed riders on the policies of patients excepting from coverage any medical benefits in connection with or on account of the spine and any related degenerative or congenital diseases, including treatment, operation or complications thereof, based solely upon the patient previously seeking the treatment of a neuromusculoskeletal condition by a doctor of chiropractic.

(d)     Wellmark Defendants' "Blue Advantage" plan, as made available to employees of Iowa State University in late 2006, expressly provides for "no

17

co-pay for any service, including office visits, except for $10 co-payment for chiropractic manipulation" ... and a $100 co-payment for emergency room services;

(e)     Beginning in approximately 2006, Wellmark Defendants unilaterally determined that their subscriber-patients who elected to seek chiropractic treatment would be covered for only three treatment procedures per visit to a doctor of chiropractic regardless of the acuity, severity, or nature of the patient's condition or the number of her complaints.

(f)     Wellmark Defendants have implemented a pattern of payment practices whereby Iowa Doctors of Chiropractic are paid a substantially lesser amount (from 55% less to over 100% less) for the same services as Wellmark pays Medical Doctors, Doctors of Osteopathy, Physicians Assistants, and Nurse Practitioners. The stated rationale of the Wellmark Defendants for this discriminatory practice is that Medicare and Medicaid relative value formulations. The Medicare and Medicaid formulations, however, make no such distinctions with respect to the same codes, and do not employ different codes for the same diagnostic and treatment services. Further, Federal Medicare law contains a payment equity provision similar to those in HF 2219 in Iowa. The statute provides that: "A Medicare+Choice organization shall not discriminate with respect to participation, reimbursement, or indemnification as to any provider who is acting within the scope of the provider's license or certification under applicable State law, solely on the basis of such license or certification." 42 U.S.C. § 1395w-22 (b)(2). Medicare+Choice organizations are

18

private plans contracting to provide Medicare benefits in a managed care setting and are therefore more closely akin to the types of private entities which are the subject of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)) in Iowa. In addition, the entire Medicare program is based on a relative value (RBRVS) system that establishes uniform payment for services and that does not take into consideration the license of the provider. Under Medicare, providers receive the same reimbursement for the same service provided without regard to licensure.

(g)     Wellmark Defendants have established a "Physical Medicine Guide", which purports to describe and cover office documentation for treatment by "physical medicine." The "Physical Medicine Guide" is in violation of various provisions of violations of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)), which provide in pertinent part that coverage for a human ailment cannot be rejected "solely related to the license under or the practices authorized by chapter 151" and cannot be rejected on a basis that is "dependent upon a method of classification, categorization, or description based directly or indirectly upon differences in terminology used by different licensees in describing human ailments or their diagnosis or treatment."

## LEGISLATIVE HISTORY AND INTENT

34.     Doctors of chiropractic are licensed by the State of Iowa. Iowa Code section 151.1 defines "persons engaged in the practice of chiropractic" as persons "publicly professing to assume the duties incident to the practice of chiropractic" (§ 151.1(1)), or persons who treat "human ailments by the adjustment of the neuromusculoskeletal

19

structures, primarily, by hand or instrument, through spinal care," (§ 151.1(2)), or persons utilizing differential diagnosis and related procedures, withdrawing or ordering withdrawal of a patient's blood for diagnostic purposes, performing or utilizing routine laboratory tests, performing physical examinations, rendering nutritional advice, and utilizing chiropractic physiotherapy procedures, "all of which are subject to and authorized by section 151.8." (§ 151.1(3))

35.   Section 151.3 provides for licensing, and section 151.8 states that "[a] chiropractor using the additional procedures and practices authorized by this Act shall be held to the same standard of care applicable to any other health care practitioner in this state." Pursuant to section 151.11, a board of chiropractic examiners is required to promulgate rules governing chiropractic practice in this state.

36.   In 1986, the Iowa Legislature amended Iowa Code section 509.3 to add a new subsection (now section 509.3(6)), which requires that health insurance plans offer coverage for chiropractic diagnosis and treatment of human ailments on a non-discriminatory basis with respect to coverage of human ailments for which other health care providers can provide diagnosis or treatment. The statute states:

509.3(6) A provision shall be made available to policyholders under group policies covering diagnosis and treatment of human ailments for payment or reimbursement for necessary diagnosis or treatment provided by a chiropractor licensed under chapter 151, if the diagnosis or treatment is provided within the scope of the chiropractor's license and if the policy would pay or reimburse for the diagnosis or treatment by a person licensed under chapter 148, 150, or 150A of the human ailment, irrespective of and disregarding variances in terminology employed by the various licensed professions in describing the human ailment or its diagnosis or its

20

treatment. The policy shall provide that the policyholder may reject the coverage or provision if the coverage or provision for diagnosis or treatment of a human ailment by a chiropractor is rejected for all providers of diagnosis or treatment for similar human ailments licensed under chapter 148, 150, 150A, or 151. A policy of group health insurance may limit or make optional the payment or reimbursement for lawful diagnostic or treatment service by all licensees under chapters 148, 150, 150A, and 151 on any rational basis which is not solely related to the license under or the practices authorized by chapter 151 or is not dependent upon a method of classification, categorization, or description based directly or indirectly upon differences in terminology used by different licensees in describing human ailments or their diagnosis or treatment. This subsection applies to group policies delivered or issued for delivery after July 1, 1986, and to existing group policies on their next anniversary or renewal date, or upon expiration of the applicable collective bargaining contract, if any, whichever is later. This subsection does not apply to blanket, short-term travel, accident-only, limited or specified disease, or individual or group conversion policies, or policies under Title XVIII of the Social Security Act, or any other similar coverage under a state or federal government plan.

37.     The same legislation, H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)), modified the provisions of Iowa Code, ch. 514, under which the defendant Wellmark (under a previous name) was then operating. Among the changes to Chapter 514 were:

514.7 A provision shall be made available in approved contracts with hospital and medical subscribers under group subscriber contracts or plans covering diagnosis and treatment of human ailments, for payment or reimbursement for necessary diagnosis or treatment provided by a chiropractor licensed under chapter 151 if the diagnosis or treatment is provided within the scope of the chiropractor's license and if the subscriber contract would pay or reimburse for the diagnosis or treatment of the

21

human ailments, irrespective of and disregarding variances in terminology employed by the various licensed professions in describing the human ailments or their diagnosis or treatment, if it were provided by a person licensed under chapter 148, 150, or 150A. The subscriber contract shall also provide that the subscriber may reject the coverage or provision if the coverage or provision for diagnosis or treatment of a human ailment by a chiropractor is rejected for all providers of diagnosis or treatment for similar human ailments licensed under chapter 148, 150, 150A, or 151. A group subscriber contract may limit or make optional the payment or reimbursement for lawful diagnostic or treatment service by all licensees under chapters 148, 150, 150A, and 151 on any rational basis which is not solely related to the license under or the practices authorized by chapter 151 or is not dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees in describing human ailments or their diagnosis or treatment. This paragraph applies to group subscriber contracts delivered after July 1, 1986, and to group subscriber contracts on their anniversary or renewal date, or upon the expiration of the applicable collective bargaining contract, if any, whichever is the later. This paragraph does not apply to contracts designed only for issuance to subscribers eligible for coverage under Title XVIII of the Social Security Act, or any other similar coverage under a state or federal government plan.

And,

514.23(2)  A corporation organized and governed by this chapter which becomes a mutual insurer under this section shall continue as a mutual insurer to be governed by the provisions of section 514.7 and shall also be governed by section 509.3, subsection 6.

38.    The same legislation, H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)), modified

Chapter 514B, governing health maintenance organizations:

22

514B.1(5)(c). The health care services available to enrollees under prepaid group plans covering diagnosis and treatment of human ailments, shall include a provision for payment of necessary diagnosis or treatment provided by a chiropractor licensed under chapter 151 if the diagnosis or treatment is provided within the scope of the chiropractor's license and if the plan would pay or reimburse for the diagnosis or treatment of human ailment, irrespective of and disregarding variances in terminology employed by the various licensed professions in describing the human ailment or its diagnosis or its treatment, if it were provided by a person licensed under chapter 148, 150, or 150A. The plan shall also provide that the plan enrollees may reject the coverage for diagnosis or treatment of a human ailment by a chiropractor if the coverage is rejected for all providers of diagnosis or treatment for similar human ailments licensed under chapter 148, 150, 150A, or 151. A prepaid group plan of health care services may limit or make optional the payment or reimbursement for lawful diagnostic or treatment service by all licensees under chapters 148, 150, 150A, and 151 on any rational basis which is not solely related to the license under or the practices authorized by chapter 151 or is not dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees in describing human ailments or their diagnosis or treatment. This paragraph applies to services provided under plans made after July 1, 1986, and to existing group plans on their next anniversary or renewal date, or upon the expiration of the applicable collective bargaining contract, if any, whichever is the later. This paragraph does not apply to enrollees eligible for coverage under Title XVIII of the Social Security Act, or any other similar coverage under a state or federal government plan.

39.    The same legislation, H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)), directed that boards of examiners regulating health care licensees establish "utilization and cost control

review committees," (Iowa Code § 514F.1)and also requires non-discriminatory treatment of chiropractic services. Iowa Code section 514F.2. It states, in pertinent part:

> "514F.2 Nothing contained in the chapters of Title XIII, subtitle 1, of the Code [Chapters 505 through 523I] shall be construed to prohibit or discourage insurers, nonprofit service corporations, health maintenance organizations, or self-insurers for health care benefits to employees from providing payments of benefits or providing care and treatment under capitated payment systems, prospective reimbursement rate systems, utilization control systems, incentive systems for the use of least restrictive and least costly levels of care, preferred provider contracts limiting choice of specific provider, or other systems, methods or organizations designed to contain costs without sacrificing care or treatment outcome, provided these systems do not limit or make optional payment or reimbursement for health care services on a basis solely related to the license under or the practices authorized by chapter 151 or on a basis that is dependent upon a method of classification, categorization, or description based upon differences in terminology used by different licensees under the chapters of Title IV, subtitle 3, of the Code [Chapters 147 through 158] in describing human ailments or their diagnosis or treatment."

40.     In short, since 1986, Iowa law has required that health insurers, health services providers, and HMO's, including the Wellmark Defendants, pay for or reimburse subscribers for diagnostic and treatment services provided by chiropractors for human ailments, if M.D. or D.O. services for the human ailment are covered.

41.     In response to a declaratory ruling petition filed by the Wellmark Defendants under a previously used name, then Iowa Insurance Commissioner William Hager explained the antidiscrimination aspects of the 1986 legislation as follows:

24

"[C]overage of chiropractic diagnosis or treatment authorized ... in §151.1 may be rejected only if coverage of the same type of diagnosis or treatment by an M.D. or D.O., regardless of the label given the type of diagnosis or treatment by the different professions, is also rejected. In this manner, there is an equality of coverage between types of practitioners: an M.D. or D.O. is not paid for a procedure which is not paid for when performed by a chiropractor. Selective rejection of coverage or payment for a certain method of diagnosis or treatment when performed by a chiropractor is not permitted; that is, rejection is not allowed where coverage or payment is made for the same essential method of diagnosis or treatment when performed by an M.D. or D.O."

42. Wellmark Defendants in the past have ignored this legislative mandate by selectively imposing restrictions on doctors of chiropractic and their patients, including Plaintiffs, with respect to chiropractic treatment, as specified above.

43. Wellmark's new agreement with Iowa M.D.'s and D.O.'s gives numerous preferences to those providers in direct competition with D.C.'s, including Plaintiff, and therefore selectively target doctors of chiropractic and their patients, including Plaintiff, with respect to chiropractic treatment, as specified above.

44. Wellmark Defendants' discriminatory actions are a direct circumvention of the non-discrimination requirements of Iowa Code sections 509.3(6), 514.7, 514.23(c), 514B.5 and 514F.2, are in direct violation of the announced public policy and laws of this state, and are therefore void and unenforceable.

## PLAINTIFFS AND THE PLAINTIFF CLASS HAVE BEEN DAMAGED BY THE DISCRIMINATORY CONDUCT, RESTRAINT OF TRADE AND ABUSE OF MONOPOLY POWER OF THE WELLMARK DEFENDANTS

45.     The plaintiffs and the plaintiff class have been damaged in the past four years by receiving as much as 50% less than the Wellmark defendants paid other health care practitioners in Iowa for the same or similar services. This damage can be calculated through the examination of a schedule of fees prepared by the Wellmark defendants annually and comparing the compensation scheduled to be paid to plaintiffs and the plaintiff class to compensation scheduled to be paid to other Iowa health care practitioner for the same or similar services.

## PLAINTIFFS ARE IRREPARABLY HARMED BY DEFENDANTS' PAST AND ONGOING CONDUCT

46.     Wellmark Defendants' past and announced future restrictions place an unreasonable, illegal, and discriminatory burden on doctors of chiropractic, in terms of administrative requirements not applied to other health care providers and interfere with professional judgment, and limit the extent of care and treatment options available to patients.

47.     More importantly, the restrictions and discriminatory practices discourage chiropractic patients from receiving adequate treatment for their human ailments, depriving them of the benefits of chiropractic treatment secured for them under Iowa Code sections 509.3(6), 514.7, 514.23(c), 514B.5 and 514F.2 and under the Chiropractic Practice Act, Iowa Code, Chapter 151 (2007), and, accordingly, cause irreparable harm by causing patients to suffer from their human ailments rather than obtain effective and less costly relief for them.

26

## HALTING DEFENDANTS' CONDUCT
## WILL FURTHER THE PUBLIC INTEREST

48.     Wellmark Defendants' past and announced future restrictions limit and
deny access to one form of health care services, thus limiting the choices available to its
subscribers. Its practices wrongfully restrict highly qualified health care providers from
providing treatment services.

49.     Wellmark Defendants' practices will impermissibly direct patients to other
health care providers, whose charges for comparable services are frequently higher.

## CLAIMS FOR RELIEF

## COUNT II

## REQUEST FOR DECLARATORY JUDGMENT

50.     Plaintiffs incorporate by reference the allegations set forth in the foregoing
paragraphs 1 through 49 of this Petition as if fully set forth.

51.     Despite statutory authority barring discriminatory treatment of coverage for
chiropractic treatment, Wellmark Defendants have insisted upon contractual provisions
which selectively burden doctors of chiropractic and their patients, as set forth more fully
above.

52.     Wellmark Defendants' actions are contrary to express Iowa statutory
provisions, and are therefore void and unenforceable.

53.     Accordingly, Plaintiffs request that the Court enter its order declaring that
the Wellmark Defendants' discriminatory actions, as detailed above, are unlawful, in
violation of Iowa Code sections 509.3(6), 514.7, 514.23(c), 514B.5 and 514F.2, and are
unenforceable as a matter of law.

27

## COUNT III

### RESTRAINT OF TRADE

54. Plaintiffs, by this reference, hereby incorporate paragraphs 1 through 49, set out above in the Statement of Facts, as if set forth in this Count III.

55. Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc., are engaged in the business of providing health care expense reimbursement or health care services in Des Moines, Polk County, Iowa, and in the State of Iowa generally. According to the provider contract of November 1, 2007, Wellmark is a licensee of the Blue Cross and Blue Shield Association (BCBSA). The Blue Cross and Blue Shield Association develops provider contracts and manuals for its member associations, including in particular the Wellmark.

56. Wellmark has entered into agreement with over 95% of all Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) in active practice to numerous items of preferential treatment, discriminatory to plaintiff, as found in Section 7 of a Settlement Agreement dated April 27, 2007, to which Defendant Wellmark and a class of plaintiffs consisting of all physicians (defined as an individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark from May 22, 1999, to May 30, 2007. This agreement by its express terms runs until April 26, 2011.

57.    Doctors of Chiropractic are defined as physicians under Iowa law and are direct competitors of M.D.'s and D.O.'s in providing diagnostic and treatment of human ailments of Iowa residents.

58.    Wellmark and its co-conspirators have entered into a contract, combination and conspiracy between two or more persons in restraint of trade, and have conspired and combined to:

(a)    violate the various provisions of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)) in their contracts and dealings with chiropractors and chiropractic patients in order to diminish and restrict the care for human ailments by chiropractors for which payment will be made by the Wellmark;

(b)    impose definitions of "chiropractic" and "medical necessity" contrary to Chapter 151, Code of Iowa (2007) in order to diminish and restrict the care for human ailments by chiropractors for which payment is and will be made by the Wellmark;

(c)    impose maximum fee schedules to which chiropractors must agree with defendants and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d)    prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

29

(e)    Agree with over 95% of all Iowa Doctors of Medicine (M.D.'s) and
Doctors of Osteopathy (D.O.'s) in active practice to numerous items of
preferential treatment, discriminatory to plaintiff, as found in Section 7 of a
Settlement Agreement dated April 27, 2007, to which the Wellmark
Defendants and a class of plaintiffs consisting of all physicians (defined as an
individual duly licensed by a state licensing board as a Medical Doctor or as a
Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by
contract in Wellmark plans as well as those non-participating) who provided
covered services to an plan member or services to any individual enrolled in or
covered by a plan offered or administered by Wellmark from May 22, 1999, to
May 30, 2007.

(f)    Enter into agreements with various subdivisions of the State of
Iowa to limit or exclude chiropractic coverage from health plans offered to
employees of various subdivisions of the State of Iowa, based upon the
encouragement of and false information provided by the Wellmark
Defendants.

59.    As a direct and proximate result of Wellmark Defendants' conduct,
competition in the relevant market described herein has been injured.

60.    Plaintiffs and the Class they represent have been injured or threatened with
injury by conduct prohibited by Chapter 553, Code of Iowa (2007).

61.    Plaintiffs and the other members of the Class have been damaged in their
businesses and property by and as a proximate cause of the conduct of the Wellmark
defendants.

62.     Plaintiffs and the other members of the Class will suffer irreparable injury if
the contracts announced by the Wellmark Defendants are implemented, in that patients
will forego necessary chiropractic treatment because of the threat of or the actual
imposition of refusals by the Wellmark Defendants to approve of or make payment for
such necessary services. Such refusals affect the present and future health and welfare of
the patients of chiropractors in Iowa, a matter for which there is no adequate remedy at
law.

63.     The actions of the Wellmark Defendants are willful or flagrant in light of the
existing law of Iowa and the surrounding circumstances.

## COUNT IV

## ABUSE OF MONOPOLY POWER

64.     Plaintiffs, by this reference, hereby incorporate paragraphs 1 through 49, set
out above in the Statement of Facts, as if set forth in this Count IV.

65.     Defendants Wellmark, Inc., and Wellmark Health Plan of Iowa, Inc., are
engaged in the business of providing health care expense reimbursement or health care
services in Des Moines, Polk County, Iowa, and in the State of Iowa generally. According
to the provider contract of November 1, 2007, Wellmark is a licensee of the Blue Cross
and Blue Shield Association (BCBSA). The Blue Cross and Blue Shield Association
develops provider contracts and manuals for its member associations, including in
particular the Wellmark.

66.     The Wellmark defendants have over 70% of the health insurance business in
the state of Iowa and in most major metropolitan centers of Iowa.

31

67.    The Wellmark defendants have abused their monopoly power in the relevant geographic and product markets by the following conduct:

(a)    violate the various provisions of H.F. 2219 (1986 Acts (71 G.A.) ch. 1180)) in their contracts and dealings with chiropractors and chiropractic patients in order to diminish and restrict the care for human ailments by chiropractors for which payment will be made by the Wellmark;

(b)    impose definitions of "chiropractic" and "medical necessity" contrary to Chapter 151, Code of Iowa (2007) in order to diminish and restrict the care for human ailments by chiropractors for which payment is and will be made by the Wellmark;

(c)    impose maximum fee schedules to which chiropractors must agree with defendants and with each other in order to provide diagnostic and treatment services for their patients in Iowa;

(d)    prescribe limitations upon and make optional the coverage of diagnostic and treatment services of chiropractors while not imposing the same standards and practices to the coverage of diagnostic and treatment services of other practitioners of health care in Iowa licensed under the chapters of Title IV, subtitle 3, of the Code of Iowa [Chapters 147 through 158];

(e)    Agree with over 95% of all Iowa Doctors of Medicine (M.D.'s) and Doctors of Osteopathy (D.O.'s) in active practice to numerous items of preferential treatment, discriminatory to plaintiff, as found in Section 7 of a Settlement Agreement dated April 27, 2007, to which the Wellmark Defendants and a class of plaintiffs consisting of all physicians (defined as an

32

individual duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy including both those M.D.'s and D.O.'s participating by contract in Wellmark plans as well as those non-participating) who provided covered services to an plan member or services to any individual enrolled in or covered by a plan offered or administered by Wellmark from May 22, 1999, to May 30, 2007.

68.    As a direct and proximate result of Wellmark Defendants' conduct, competition in the relevant market described herein has been injured.

69.    Plaintiffs and the Class they represent have been injured or threatened with injury by conduct prohibited by Chapter 553, Code of Iowa (2007).

70.    Plaintiffs and the other members of the Class have been damaged in their businesses and property by and as a proximate cause of the conduct of the Wellmark defendants.

71.    Plaintiffs and the other members of the Class will suffer irreparable injury if the contracts announced by the Wellmark Defendants are implemented, in that patients will forego necessary chiropractic treatment because of the threat of or the actual imposition of refusals by the Wellmark Defendants to approve of or make payment for such necessary services. Such refusals affect the present and future health and welfare of the patients of chiropractors in Iowa, a matter for which there is no adequate remedy at law.

72.    The actions of the Wellmark Defendants are willful or flagrant in light of the existing law of Iowa and the surrounding circumstances.

33

## COUNT V

## APPLICATION FOR PERMANENT INJUNCTION

73.    Plaintiffs incorporate by reference the allegations in the foregoing paragraphs 1 through 49 of this Petition as if fully set forth.

74.    As set forth more fully above, there is a substantial likelihood that Plaintiffs will prevail on tile merits of their claim upon final hearing. Wellmark Defendants' past actions in selectively imposing restrictions in coverage on doctors of chiropractic and their patients, as well as their proposed new restrictions, which are also selectively targeted toward chiropractic, undermines the Iowa Legislature's intent in enacting the nondiscrimination provisions encompassed in Iowa Code sections 509.3(6), 514.7, 514.23(c), 514B.5 and 514F.2 and, in fact, renders the statutes' non-discrimination mandate meaningless. Because Wellmark Defendants' past and proposed actions violate express Iowa law, those actions are unenforceable in contract and void as contravening public policy and statute.

75.    As set forth more fully above, there is a substantial threat that the Provider Plaintiffs and the Health Care Consumer Plaintiffs will suffer irreparable injury absent entry of the requested temporary injunctive relief. In fact, as a direct consequence of Wellmark Defendants' conduct, the Provider Plaintiffs are and will increasingly be burdened with selectively imposed administrative and other costs, and through the targeted interference with patient care and chiropractor-patient relationships. Iowa health care consumers are suffering and increasingly will suffer injury in the form of selectively restricted access to chiropractic health care and through the targeted interference with patient care and chiropractor-patient relationships.

34

76.    This real and present injury outweighs any potential conceivable injury to Wellmark Defendants should they be enjoined until an evidentiary hearing.

77.    As set forth more fully above, granting this temporary injunction will serve the public interest by allowing greater access to treatment services on a non-discriminatory basis.

78.    Plaintiffs' request for this temporary injunction seeks only to have this Court maintain the status quo, in order to avoid any further irreparable harm.

79.    This application for temporary injunctive relief has not been presented to or refused by any court or justice.

80.    Upon hearing on the merits after discovery has been taken, the plaintiffs pray for the Court to issue a permanent injunction, enjoining the Wellmark Defendants from continuing to violate Iowa Code sections 509.3(6), 514.7, 514.23(c), 514B.5 and 514F.2 (2007).

## PRAYER

**WHEREFORE**, Plaintiffs pray for the following relief:

1.    That the Court find and declare that this case and the Counts II through V of the amended petition state a proper case for class wide relief in the form of damages, declaratory relief and injunctive relief, and that notice be given to the class of this action pursuant to Iowa Rule of Civil Procedure 1.261 et seq.;

2.    That the jury award plaintiffs and the plaintiff class damages in an amount determined by the evidence;

3.    That the Court grant plaintiffs and the plaintiff class declaratory relief from the discriminatory practices of the Wellmark defendants;

35

4.     That upon final hearing, the Court enter an order permanently enjoining Wellmark Defendants from continuing to enforce the discriminatory restrictions and procedures and from implementing the planned additional discriminatory restrictions and procedures;

(a)     That the jury award plaintiffs and the plaintiff class double their actual damages because of the egregious conduct of the Wellmark defendants;

5.     That, pursuant to I.R.C.P. 1.275(4), the Court award attorneys' fees to Plaintiffs, and that, pursuant to Iowa Code § 553.12(4), the Court award the necessary costs of bringing suit, including a reasonable attorney fee; and

6.     That the Court award such other and further relief to which Plaintiffs are justly entitled.

## DIVISION II

## PLAINTIFF MUELLER'S INDIVIDUAL ACTION

### NATURE OF THE CASE

7.     Plaintiff brings this action seeking damages for denial of claims.

### JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to Iowa Code § 602.6101. This Court has personal jurisdiction over the Defendant in that the Defendant is an Iowa corporation with its corporate headquarters located in Des Moines, Polk County, Iowa.

9.     Defendant Wellmark, through its counsel, has agreed with Plaintiff that the tolling date for bringing this action is December 9, 2007.

10.     Venue is proper pursuant to Iowa Code Ch. 616.

Dated: May 20, 2008.

HAWKINS & NORRIS, P.C.

Glenn L. Norris AT0005907
2501 Grand Avenue, Suite C
Des Moines, Iowa 50312-5399
Telephone: 515-288-6532
Facsimile: 515-288-9733
Email: gnorris@2501grand.com

WANDRO & BAER, P.C.

Steven P. Wandro AT0008177
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312-5399
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
E-mail: swandro@2501grand.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the _20th_ day of _May_, 2008.

By:  ___ U.S.Mail  ___ Facsimile  _X_ Hand Delivery    ___ Overnight Courier  ___ Fedex or UPS

_X_ E-mail  ___ Other

Copy to:
Thomas H. Walton, Esq.
NYEMASTER, GOODE, WEST, HANSELL
& O'BRIEN, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899
Telephone: 515-283-8003
Facsimile: 515-283-8045
e-mail: twalton@nyemaster.com

43