COURT OF APPEAL
THIRD CIRCUIT
STATE OF LOUISIANA

---

CIVIL PROCEEDING
NO. _____

---

OPELOUSAS GENERAL HOSPITAL AUTHORITY, A PUBLIC TRUST,
D/B/A OPELOUSAS GENERAL HEALTH SYSTEM,
Plaintiff-Respondent

versus

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY
D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA,
Defendant-Applicant

---

APPLICATION FOR SUPERVISORY WRITS
ON BEHALF OF
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY
TO REVIEW THE RULING OF THE 27TH JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. LANDRY
Case No. 16-C-3647-C
HONORABLE ALONZO HARRIS
ORIGINAL BRIEF OF DEFENDANT-APPLICANT

---

**STAY PENDING WRIT APPLICATION REQUESTED
MOTION PENDING BEFORE DISTRICT COURT**

---

RICHARD J. TYLER (No. 1155)
MICHAEL C. DREW (No. 30884)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8318
Facsimile: (504) 589-8318
rtyler@joneswalker.com
mdrew@joneswalker.com

CHARLES A. O'BRIEN (No. 10143)
ALLISON N. PHAM (No. 29369)
Louisiana Health Service &
Indemnity Company
5525 Reitz Avenue
Baton Rouge, LA 70809
Telephone: (225) 295-2454
Facsimile: (225) 297-2760
Andy.O'Brien@bcbsla.com
Allison.Pham@bcbsla.com

ATTORNEYS FOR DEFENDANT-APPLICANT LOUISIANA HEALTH
SERVICE & INDEMNITY COMPANY



{N3400618.1}

## TABLE OF CONTENTS

Page

REQUEST FOR STAY PENDING WRIT APPLICATION ................................. iv

CASE STATUS ............................................................................................... v

I. STATEMENT OF JURISDICTION ............................................................. 1

II. STATEMENT OF THE CASE ..................................................................... 1

III. ISSUES PRESENTED FOR REVIEW ......................................................... 1

IV. ASSIGNMENT OF ERRORS ...................................................................... 1

V. FACTUAL BACKGROUND ....................................................................... 2

VI. SUMMARY OF ARGUMENT .................................................................... 4

VII. ARGUMENT ................................................................................................ 5

    A. CONTROLLING AUTHORITY ........................................................ 5

        1. THE FEDERAL ARBITRATION ACT CONTROLS THIS DISPUTE ............................................................... 5

        2. APPLICATION OF THE LOUISIANA BINDING ARBITRATION LAW WARRANTS THE SAME OUTCOME ............................................................................. 6

    B. THE ARBITRATION CLAUSE IS MANDATORY AND MUST BE ENFORCED .................................................................... 8

        1. THE DISTRICT COURT ERRED WHEN IT CONFUSED THE MANDATORY NATURE OF THE ARBITRATION CLAUSE WITH THE OPTIONAL RIGHT TO PURSUE A DISPUTE AT ALL. ............................ 8

    C. THE APPLICABILITY OF A CONDITION PRECEDENT IS A QUESTION FOR THE ARBITRATOR. ......................................... 10

    D. AMBIGUITIES ARE CONSTRUED IN FAVOR OF ARBITRATION. ................................................................................ 11

VIII. CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................**Page**

*Adamovic v. METME Corp.*, 961 F.2d 652, 654 (7th Cir. 1992) ............................. 12

*Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05), 908 So.2d 1 .................................................................................................................. 5, 7

*Allied-Bruce Terminix Cos. v. Dobson*, 115 S.Ct. 834 (1995) ................................... 5

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................................ 8

*Banc One Acceptance Corp. v. Hill*, 367 F.3d 426 (5th Cir. 2004) ......................... 12

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ................................................. 5

*Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 147-48 (5th Cir. 1987) ................................................................................................................... 5

*Duhon v. ActiveLAF*, No. 2016-818 (La. 10/19/16); 2016 WL 6123820 ............ 5, 12

*Gunderson v. F.A. Richard & Associates, Inc.*, 2005-917 (La. App. 3 Cir. 8/23/06); 937 So.2d 916 ............................................................................................. 6, 7

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ................................... 10

*Int'l River Center v. Johns-Manville Sales Corp.*, No. 2002-3060 (La. 12/3/03); 861 So.2d 139 ............................................................................................... 11

*Romero v. Professional Performance Development Group*, 46 Fed. App'x 227 (5th Cir. 2002) ............................................................................................................ 9

*Tubbs Rice Dryers, Inc. v. Martin*, No. 44,800 (La. App. 2 Cir. 2/24/10); 33 So.3d 926 ................................................................................................................ iv

**Statutes**

Article V § 10(A) of the Louisiana Constitution ........................................................ 1

9 U.S.C. § 1 ................................................................................................................. 1

9 U.S.C. § 2 ................................................................................................................. 5

La. R.S. 13:312(3)(a) .................................................................................................. 1

La. R.S. 9:4801 ........................................................................................................... 1

**Articles**

La. Civ. Code art. 2049 ............................................................................................. 11

La. Civ. Code art. 2057 ............................................................................................. 11

La. C.C.P. art. 2201 .................................................................................................... 1

{N3400618.1}

ii

# INDEX OF EXHIBITS

| Exhibit | | Page |
|---|---|---|
| Exhibit A, | Judgment | 15 |
| Exhibit B, | Reasons for Judgment | 16 |
| Exhibit C, | Exception of Prematurity | 22 |
| Exhibit D, | Opposition to Exception of Prematurity | 106 |
| Exhibit E, | Reply in Support of Exception of Prematurity | 112 |
| Exhibit F, | Petition for Damages Under La. R.S. 51:137 and for Class Certification | 117 |
| Exhibit G, | Motion and Incorporated Memorandum in Support of Stay Pending Writ Application for Stay | 128 |
| Exhibit H, | Opposition to Defendant's Motion to Stay Proceedings | 131 |
| Exhibit I, | Notice of Intent to Apply for Supervisory Writs and Signed Return Date Order | 135 |

## REQUEST FOR STAY PENDING WRIT APPLICATION

Pursuant to Uniform Rule 4-4(A), Defendant-Applicant Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") has filed in the District Court for a stay pending its writ application. The briefing, including BCBSLA's motion and the opposition of Plaintiff-Respondent Opelousas General Hospital Authority, a Public Trust, d/b/a Opelousas General Health System ("OGHA"), is attached hereto as Exhibits G and H. BCBSLA incorporates by reference its motion to stay filed in the court below.

This motion to stay is currently pending before the District Court with a hearing set for April 28, 2017. BCBSLA contends that a stay is warranted as the issue for which supervisory review is sought concerns an arbitration clause and BCBSLA's right to compel OGHA to arbitrate their dispute. The right to arbitrate a dispute is the right to avoid litigation and that right cannot be restored once it is lost. *See, e.g., Tubbs Rice Dryers, Inc. v. Martin*, No. 44,800 (La. App. 2 Cir. 2/24/10); 33 So.3d 926, 928-929 ("The denial of a request for arbitration can be likened to the denial of an exception of improper venue in the sense that it would be difficult to correct the error once a final judgment has been rendered. Arbitration exists as an alternative to litigation in order to avoid a costly trial."). Accordingly, a stay is necessary to avoid subjecting BCBSLA to the litigation process while a review of its claimed right to arbitrate proceeds in this Court.

Pursuant to Rule 4-4(B), BCBSLA will promptly notify this Court of the outcome of that motion in the court below and, if necessary, seek relief from this Court by filing a motion to stay in accordance with Uniform Rule 2-7.

## CASE STATUS

Pursuant to Third Circuit Internal Rule 14, there is no pending trial date or discovery cut-off in this matter. OGHA has filed a motion for class certification, which is pending. On April 24, 2017, the parties are scheduled to have a telephone status conference to set a date for a hearing on this motion. In connection with this motion, OGHA has provided a draft notice of a corporate deposition of BCBSLA, but no deposition has been scheduled.

As discussed above, BCBSLA has filed a motion with the district court to stay the matter pending this writ application. That motion is set to be heard on April 28, 2017.

Pursuant to Internal Rule 14 and in accordance with Uniform Rules 2-7.5 and 4-5(D), BCBSLA will promptly notify the Court of any outcomes of these events or any subsequent hearing deadlines which may be set in connection with these matters.

## I.   STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to Article V § 10(A) of the Louisiana Constitution, which provides that an appellate court "has supervisory jurisdiction over cases which arise within its circuit." This case arises in the Parish of St. Landry, which is within the Third Circuit. La. R.S. 13:312(3)(a). Moreover, a supervisory writ may be applied for in accordance with Code of Civil Procedure article 2201 and Uniform Rule 4.

## II.   STATEMENT OF THE CASE

BCBSLA seeks supervisory review of the March 8, 2017 Judgment denying BCBSLA's Exception of Prematurity and Alternative Motion to Compel Arbitration. The District Court committed legal error in finding that the arbitration clause in the contract between BCBSLA and OGHA is optional rather than mandatory.

## III.   ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in finding that the arbitration clause in the contract between BCBSLA and OGHA was optional rather than mandatory.

2. Whether the District Court erred in ruling that a condition precedent to arbitration existed and was not met.

3. Whether the District Court erred in finding that ambiguities in the arbitration clause must be construed against BCBSLA.

## IV.   ASSIGNMENT OF ERRORS

The District Court erred in finding that the arbitration clause at issue was optional rather than mandatory. In applying the rules of contract interpretation, the District Court failed to interpret the arbitration clause in accordance with civil code articles 2049 and 2050, as well as the clear presumption favoring arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and the Louisiana Binding Arbitration Law, La. R.S. 9:4801, *et seq.* ("LBAL").

{N3400618.1}

1

The District Court further erred by determining that a condition precedent to arbitration existed and was not met. Such "procedural arbitrability" questions are reserved for the arbitrator under binding U.S. and Louisiana Supreme Court precedents.

Finally, the District Court erred in finding that any ambiguity in the arbitration clause must be construed against BCBSLA. Such a finding is contrary to the Federal Arbitration Act and case law interpreting it, which governs this dispute. Under the FAA, ambiguities must be resolved in favor of arbitration.

## V.   FACTUAL BACKGROUND

OGHA is a "healthcare provider who ha[s] contracted with Louisiana Blue Cross for alternate rates of reimbursement for healthcare services rendered to patients covered by Louisiana Blue Cross policies or plans." Ex. F at 119 ¶ 5. This contract is called a Member Provider Agreement. Ex. C at 33 ¶ 3 & Ex. 1.

OGHA has been party to a number of Member Provider Agreements, Ex. C at 33 ¶ 4, the most recent of which was entered into on July 20, 2012. *Id.* The Member Provider Agreement specifies that it automatically renews each year unless terminated by either OGHA or BCBSLA. *Id.* at 34 ¶ 6 & Ex. 1, § 11.1.

Article 10 of the Member Provider Agreement governs "General Dispute Resolution and Arbitration." This article reads in full:

> **10.1 General Dispute Resolution**
>
> PLAN[1] shall make available to MEMBER PROVIDER[2] a mechanism for resolution of disputes between the parties to this Agreement.
>
> MEMBER PROVIDER may submit a notice to PLAN to invoke the dispute resolution process by writing to:
>
> Blue Cross and Blue Shield of Louisiana
>
> Appeals and Grievance Department

---

[1] PLAN is defined to mean BCBSLA.

[2] MEMBER PROVIDER is defined to mean OGHA.

P.O. Box 98021

Baton Rouge, LA 70898-9021

Within sixty (60) days of receipt of such notice from MEMBER PROVIDER, the parties will assign the appropriate staff members who will arrange to discuss and seek resolution of the dispute, consistent with the terms of this Agreement. Any and all dispute resolution procedures shall be conducted only between the parties and shall not include any Member of PLAN unless such involvement of a Member is necessary to the resolution of the dispute. PLAN, in its sole discretion, will determine if Member's involvement is necessary to the resolution of the dispute. If the parties are unable to reach resolution within the initial sixty (60) day period, then management from each party not involved in the initial discussion will have an additional thirty (30) days to resolve the dispute. This time period may be extended by mutual agreement of the parties. The parties, as mutually agreed, may include a mediator in such discussions. The parties shall share equally the costs of the mediation. In any event, if additional meetings are held and no resolution of the dispute is reached within sixty (60) calendar days from the initial meeting, the parties shall elect binding arbitration as set forth herein in Article 10.2 to resolve the dispute. A party's failure to participate in the arbitration proceedings means that that party has acquiesced in the other party's demands. If resolution of the dispute occurs, the parties shall reduce such resolution to writing or amend the Agreement to include the resolution, if appropriate. Notwithstanding the foregoing, benefits and utilization management determination issues (e.g., Medical Necessity or Investigational determinations) shall be handled in accordance with the Member Contract/Certificate and as outlined in the Member Provider Policies and Procedures Manual.

**10.2 Arbitration**

The parties shall abide by the following procedures for the arbitration process:

a. The party initiating the arbitration process shall send written notice to the other party setting forth the basis of the dispute and the party's desire to arbitrate. Each party shall share equally the costs of the arbitration. Arbitration shall be in accordance with the rules and procedures of either the American Arbitration Association or the American Health Lawyers' Association or another nationally recognized arbitration association acceptable to the parties.

  b. Arbitration shall be conducted in Baton Rouge, Louisiana before a single arbitrator mutually agreed upon by the parties.

  c. The arbitrator shall be bound by the terms and conditions set forth in the Agreement and the Member Contract/Certificate.

  d. The arbitrator may not award consequential, special, punitive or exemplary damages. The arbitrator may award costs, including reasonable attorney's fees, against a party. If the decision of the arbitrator does not include such award, the parties shall share equally the costs of the arbitration.

  e. The decision of the arbitrator shall be final in writing and shall be binding on the parties and enforceable under the laws of the state of Louisiana.

  f. This provision shall survive the termination of this Agreement.

Ex. C at 59-60.

OGHA has filed suit against BCBSLA and BCBSLA seeks to have the dispute between them settled through arbitration.

## VI. SUMMARY OF ARGUMENT

This Court should exercise supervisory jurisdiction and reverse the District Court's judgment denying BCBSLA's exception of prematurity for three reasons. First, under the Federal Arbitration Act and the case law interpreting it, the arbitration clause at issue is mandatory and must be enforced to send OGHA's dispute with BCBSLA to arbitration. Second, once the District Court acknowledged that the arbitration provision was binding, it committed legal error in determining whether conditions precedent to arbitration had been met or were required to be met – in either case, that issue is the province of the arbitrator and not the Court. Third, under the Federal Arbitration Act, there is a presumption that ambiguities in an arbitration clause are construed in favor of arbitration, which the District Court failed to consider in construing perceived ambiguities against BCBSLA. For each of these reasons, this writ application should be granted and the District Court's judgment reversed.

{N3400618.1}

4

## VII.  ARGUMENT

### A.  Controlling Authority

#### 1.  The Federal Arbitration Act Controls This Dispute

The Federal Arbitration Act applies where there is an arbitration provision in a written contract that evidences a "transaction involving commerce." 9 U.S.C. § 2. The courts have generally taken an expansive view of what constitutes a "transaction involving commerce." In *Allied-Bruce Terminix Cos. v. Dobson*, 115 S.Ct. 834, 841 (1995), the Supreme Court held that the use of the language "involving commerce" in FAA § 2, like the phrase "affecting commerce," signaled "an intent to exercise Congress's commerce power to the full." Accordingly, the FAA can apply to transactions that, on their face, appear wholly intrastate. *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 147-48 (5th Cir. 1987) (FAA applied to owner and architect dispute even though all construction occurred in Texas). Where the FAA is implicated, Louisiana courts have recognized that the LBAL "echoes" it, *Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05), 908 So.2d 1, 7, but that federal law must prevail in any difference between Louisiana law and federal law on the enforcement of "a written arbitration agreement in a contract involving interstate commerce." *Duhon v. ActiveLAF*, No. 2016-818 (La. 10/19/16); 2016 WL 6123820, *6.

In the instant case, there is no question that the Member Provider Agreement between BCBSLA and OGHA is a "transaction involving commerce." The use of the "involving commerce" language signals "the broadest permissible exercise of Congress' Commerce Clause power." *E.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). In this regard, contracts have been deemed to "involve commerce" even when the contract facially appears to involve activities occurring in a single state. *E.g., Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145 (5th Cir. 1987). The Member Provider Agreement is a contract

evidencing a transaction involving commerce. The agreement requires OGHA to be accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"), or the Medicare program through the Centers for Medicare & Medicaid Services, both of which are headquartered out of state.[3] Ex. C at 44 § 3.5. OGHA is required to provide services to "Members" (*id.* at 43 § 3.1), which term is defined to include persons who have plans "issued by any national and regional group accounts of PLAN or any other Blue Cross Plan" (*id.* at 40 §§ 1.29-1.30). OGHA acknowledged that BCBSLA was an "an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans."[4] *Id.* at 42-43 § 2.3. In performing the contract, OGHA agreed to transmit information electronically over telephone lines, internet connections, and the U.S. mail. *Id.* at 46-47 §§ 3.18, 3.22. Finally, OGHA has purchased goods and services from vendors outside Louisiana in furtherance of its performance of the Member Provider Agreement.

### 2. Application of the Louisiana Binding Arbitration Law Warrants the Same Outcome

Even if the FAA did not control this dispute, this Court would still need to exercise its supervisory jurisdiction and reverse the District Court. In *Gunderson v. F.A. Richard & Associates, Inc.*, 2005-917 (La. App. 3 Cir. 8/23/06); 937 So.2d 916, this Court held

> Before a district court may compel arbitration, the trial judge must make two preliminary determinations. First, the trial judge must ensure that a valid arbitration agreement between the parties exists. Second, the judge

---

[3] The JCAHO is an independent, not-for-profit organization, headquartered in Illinois. *See* https://www.jointcommission.org/about_us/about_the_joint_commission_main.aspx. The Centers for Medicare & Medicaid Services is an agency of the federal government headquartered in Washington, D.C. *See* https://www.cms.gov/About-CMS/About-CMS.html.

[4] The Association is a national association of 36 independent Blue Cross Blue Shield Companies. *See* https://www.bcbs.com/about-us/blue-cross-blue-shield-system. The Association is headquartered in Chicago, Illinois. *See* https://www.bcbs.com/contact-us.

{N3400618.1}

> must decide whether the dispute at issue falls within the scope of the agreement.
>
> State law principles govern the first question, while federal substantive law governs the second, if the case is subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). The substantive provisions of the [FAA] preempt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce. Furthermore, the Supreme Court has concluded that Congress intended to exercise its commerce powers to the fullest in legislating in favor of arbitration.

*Id.* at 920 (internal quotations omitted). *See also id.* ("[W]e note that the FAA is considered to be virtually identical to the Louisiana Arbitration Law, 9:4201–4217 ('LAL'); therefore, Louisiana courts have recognized that determinations regarding the viability and scope of an arbitration clause would be the same under either law, and federal jurisprudence interpreting the FAA may be considered in construing the LAL. As the supreme court recognized [], both Louisiana and federal law favor arbitration such that any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." (internal quotations omitted)). Thus, even under the LBAL, the overwhelming federal policy favoring arbitration must be enforced.

In this case, OGHA does not challenge the validity of the arbitration clause, nor does it argue that its dispute with BCBSLA falls outside the scope of that clause. Its only argument is that the clause is not binding. However, as discussed below, even the District Court recognized that the arbitration clause is binding. The District Court erred in conflating the discretionary right to pursue a dispute at all with the mandatory process for how the dispute must be pursued. Once the right to arbitrate is triggered by the existence of a valid arbitration clause encompassing the scope of a dispute, the lawsuit must cease and all other matters must be left for the arbitrator. *See Aguillard, supra*, 908 So.2d at 18 ("[E]ven when the scope of an arbitration clause is fairly debatable or reasonably in doubt,

the court should decide the question of construction in favor of arbitration. ***The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.*** (emphasis added)).

## B. The Arbitration Clause Is Mandatory and Must Be Enforced

### 1. The District Court Erred When It Confused the Mandatory Nature of the Arbitration Clause with the Optional Right to Pursue a Dispute at All.

The District Court found that the arbitration clause is "optional" because the provider (OGHA) "**may** submit a notice to Plan to invoke the dispute resolution process." Ex. B at 19 (emphasis in original).[5] In so finding, the District Court committed legal error – confusing the question of whether OGHA may pursue its dispute at all with the binding nature of the arbitration clause should a dispute be pursued. Indeed, as the District Court repeatedly stated, the arbitration provision is clearly mandatory. *See id.* at 19 ("the last step being ***binding*** arbitration" (emphasis added)); *id.* ("just as the last step in the process conveys a ***mandatory*** performance" (emphasis added)); *id.* at 20 ("the contract creates some suspensive conditions ***prior to the mandatory arbitration provision.***" (emphasis added)). Indeed, "[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985).

The District Court found that the use of "may" in describing whether a Member Provider, such as OGHA, can initiate a dispute rendered the entire

---

[5] The District Court's reliance on a single sentence out of the entire General Dispute Resolution and Arbitration article runs afoul of the Louisiana Civil Code. Under article 2050, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." Here, the contract included two explicit statements – one each in sections 10.1 and 10.2 – that the arbitration shall be "binding." Moreover, it included language that failure to participate in arbitration would have the effect of conceding to the other party's position – in effect waiving the claim. In light of these multiple, clear statements as to the binding and mandatory nature of arbitration, as well as the risk of a party's failure to participate, the District Court's reliance on a single word "may" did not give effect to the contract as a whole.

{N3400618.1}

8

arbitration agreement optional. Confusing the decision on whether to dispute an issue with BCBSLA with the process under which the dispute must be resolved is something that the U.S. Fifth Circuit has already addressed in a case substantially similar to this one.

In *Romero v. Professional Performance Development Group,* 46 Fed. App'x 227 (5th Cir. 2002), the issue before the Fifth Circuit was whether the court below erred in denying a stay under the FAA based on a finding that the arbitration clause at issue was non-binding. *Id.* Reversing the district court and ordering the litigation stayed pending arbitration, the Fifth Circuit stated

> In reaching its conclusion, the district court relied on Section 2 of the agreement, which provides the procedures for arbitration "in the event" that the employee "wish[es] to demand" it. To the district court, this seemingly optional language suggested that the agreement was non-binding. We disagree.
>
> ...
>
> ***It is "optional" only to the extent that the employee can choose not to pursue the disagreement at all.*** "[I]n the event" that he does, however, resolution must be had in accordance with the procedures described in the agreement. Romero is therefore bound to arbitrate his claim against PPDG before litigating in the district court.

*Id.* (emphasis added). As in *Romero*, OGHA "may" pursue its dispute with BCBSLA or it "may" not. The decision to pursue a dispute at all is optional. However, as in *Romero*, once OGHA decided to pursue a dispute with BCBSLA, the contract described the process for pursuing that dispute which would, "in any event," culminate in binding arbitration. *See* Ex. C at 59 § 10.1 ("In any event, if additional meetings are held and no resolution of the dispute is reached within sixty (60) calendar days from the initial meeting, ***the parties shall elect binding arbitration as set forth herein in Article 10.2 to resolve the dispute. A party's failure to participate in the arbitration proceedings means that that party has acquiesced in the other party's demands.***" (emphasis added)).

OGHA's arguments below, with which the District Court agreed, boil down to the fact that they do not have to invoke the pre-arbitration administrative dispute resolution process set forth in the contract. While they are correct that they do not have to invoke the process, failure to invoke it at all means that they cannot pursue their dispute with BCBSLA. The contract is clear that "disputes between the parties" shall ultimately be decided by binding arbitration. OGHA's suit against BCBSLA runs afoul of this clear contract language and this Court should reverse the District Court and order OGHA's dispute with BCBSLA to arbitration.

## C. The Applicability of a Condition Precedent is a Question for the Arbitrator.

The District Court also found that "the contract creates some suspensive conditions prior to the mandatory arbitration provision." Ex. B at 20. As a result, the District Court held that "unless the first step is met by the Plaintiff initiating the dispute resolution process, all other steps not followed cannot be mandatory against the member." *Id.*

This holding is legally erroneous for two interrelated reasons. First, as the District Court found, the arbitration provision itself is "mandatory." *Id.* at 20.[6] Once the District Court reached this correct conclusion, it could not continue to address the applicability of any conditions precedent to the mandatory arbitration.

In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court stated:

> Thus "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide. *John Wiley, supra*, at 557, 84 S.Ct. 909 (***holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration***).

---

[6]As discussed above, the District Court consistently found that the arbitration provision itself was "binding." *Id.* at 19 ("with the last step being ***binding*** arbitration" (emphasis added)); *see also id.* ("just as the last step in the process conveys a ***mandatory*** performance" (emphasis added)).

{N3400618.1}

10

*Id.* at 84 (emphasis added); *accord Int'l River Center v. Johns-Manville Sales Corp.,* No. 2002-3060 (La. 12/3/03); 861 So.2d 139, 143 ("The U.S. Supreme Court, like this court, has stated that waiver and **other "procedural arbitrability" issues should be reserved to arbitrators** rather than the courts." (citing *Howsam*) (emphasis added)). Thus, irrespective of whether conditions precedent must be met before the parties must proceed to arbitration, the District Court's finding that mandatory, binding arbitration is the last step required the District Court to defer any arguments on conditions precedent to the arbitrator rather than rule on them. This legal error requires reversal by this Court.

**D.    Ambiguities are Construed in Favor of Arbitration.**

Finally, the District Court erred in applying general rules of contract interpretation to construe any ambiguities against BCBSLA. Ex. B at 20-21. First, that canon of construction only applies where an ambiguity is not otherwise resolvable. *See* La. Civ. Code art. 2057. Here, the District Court failed to apply article 2049, which says that a provision susceptible of different meanings must be read to render it effective rather than ineffective. La. Civ. Code art. 2049. The District Court's reading of the word "may" has rendered the arbitration clause wholly ineffective. The District Court's decision means that BCBSLA cannot ever invoke arbitration because the Member Provider (such as OGHA) can always argue both that it has to start the process and that it can choose to never start the process. In other words, BCBSLA has no right to arbitrate – the plain language of the contract notwithstanding.

Second, the District Court erred in failing to apply the presumption that ambiguities in an arbitration clause are construed in favor of arbitration. As the U.S. Fifth Circuit explained, "once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc*

{N3400618.1}

11

*One Acceptance Corp. v. Hill*, 367 F.3d 426 (5th Cir. 2004). Here, the District Court found that an ambiguity would be construed against arbitration, arguing that BCBSLA as the drafter should have the contract construed against it. This misunderstands the sweep of the FAA in favor of arbitration. While it is true that "ordinary state-law principles that govern the ***formation of contracts*** are applied when deciding whether the parties agreed to arbitration," *Duhon, supra*; 2016 WL 6123820 (emphasis added), there is no dispute that the parties in this case have a valid and enforceable arbitration agreement. Thus, once the clause is found to be valid (which is undisputed here), "the scales tip in favor of arbitration when we *construe* the arbitration clause." *Adamovic v. METME Corp.*, 961 F.2d 652, 654 (7th Cir. 1992) (emphasis in original). In this case, the District Court tipped the scales against arbitration. Applying the presumption that ambiguities are construed against the drafter ran afoul of the preemptive force of the FAA which presumes ambiguities are construed in favor of arbitration. For this final reason, this Court should exercise its supervisory power and compel arbitration.

## VIII. CONCLUSION

Arbitration is broadly favored under both the FAA and LABL. In this case, an arbitration clause that the District Court found to be binding and mandatory was nevertheless refused on the ground that only OGHA had the option of commencing the overall dispute resolution procedure. That refusal was legal error – if OGHA wishes to pursue any claim against BCBSLA, it must do so through binding arbitration.

Respectfully submitted,

_____
RICHARD J. TYLER (No. 1455)
MICHAEL C. DREW (No. 30884)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100

{N3400618.1}

12

Telephone: (504) 582-8318
Facsimile: (504) 589-8318
rtyler@joneswalker.com
mdrew@joneswalker.com

and

CHARLES A. O'BRIEN (No. 10143)
ALLISON N. PHAM (No. 29369)
Louisiana Health Service & Indemnity Company
5525 Reitz Avenue
Baton Rouge, LA 70809
Telephone: (225) 295-2454
Facsimile: (225) 297-2760
Andy.O'Brien@bcbsla.com
Allison.Pham@bcbsla.com

Attorneys for Defendant-Applicant,
Louisiana Health Service & Indemnity Company

# AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, personally came and appeared Michael Christopher Drew, and stated that he is attorney for Defendant-Applicant in the above and foregoing Application for Supervisory Writs; that he has prepared and read the said application and that all the allegations contained therein are true and correct to the best of his knowledge, information, and belief; and that notification of this filing has been given and copies of this application have been delivered by overnight courier and electronic mail, means equally prompt as the means employed to file this application, to the Honorable Alonzo Harris and to all counsel, at the following addresses:

Patrick Morrow
James P. Ryan
Morrow, Morrow, Ryan and Bassett
324 West Landry Street
Opelousas, Louisiana 70570-4483

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, LLC
723 Broad Street
Lake Charles, Louisiana 70601

Stephen B. Murray, Nicole I. Murray, Stephen B. Murray, Jr., and Arthur M. Murray
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70112

The Honorable Alonzo Harris
27th Judicial District Court, Division C
118 South Court Street, Suite 207
Opelousas, LA 70570

_____
MICHAEL C. DREW

SWORN TO AND SUBSCRIBED BEFORE
ME THIS 21st DAY OF APRIL, 2017

_____
NOTARY PUBLIC

TYLER JOHN RENCH
ATTORNEY NOTARY
State of Louisiana
My Commission Expires At Death
La. Bar Roll No. 34049
Notary ID No. 92562

{N3400618.1}

14