## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

**In re:  BLUE CROSS BLUE SHIELD** )
**ANTITRUST LITIGATION** )    **MDL. 2406**
_____ )

<u>This filing relates to the following case only:</u>

*Chicoine et al. v. Wellmark, Inc. d/b/a Wellmark*
*Blue Cross and Blue Shield of Iowa, et al.,*
S.D. Iowa, Case No. 4:17-cv-00210

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO VACATE CTO-32

### <u>BCBSA's Introduction and Background Are Misleading</u>

Putative intervenor BCBSA strives to create the illusion that deciding whether to consolidate Plaintiffs' claims with MDL 2406 is simply a matter of rubber stamping, business as usual, nothing to see here[1]. No need to be concerned that MDL 2406 has absolutely zero overlap with a conspiracy solely in Iowa to price fix the fees paid to Iowa chiropractors, it says. It's really no big deal for Plaintiffs to wait around for the bellwether proceedings in MDL 2406, it says, even though the Iowa Supreme Court already found[2] it would be detrimental to Plaintiffs' right to prompt and complete justice. That's what Plaintiffs deserve for bringing a "copycat action," right?

---

[1] Even the caption of the resistance filed 7/28/17 is illusory: "Defendants' Response to Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-32)." [Doc. 389]. BCBSA is not and has never been named a defendant. It is not even a party to this lawsuit. No court has ruled on its request to intervene. The only defendants in this case—the two Wellmark entities— have not entered a resistance to Plaintiffs' motion to vacate and the time for doing so has passed. [*See* text order entered as Doc. 369]. The signature block of the resistance on file identifies the signing attorneys only in their capacity as "Counsel for Blue Cross and Blue Shield Association," even though the same entered an appearance for both BCBSA and the Wellmark defendants. [Doc. 389 pg. 16, Doc. 375 pg. 2]. BCBSA's resistance separately identifies other counsel for the Wellmark defendants in the certificate of service. [Doc. 389 pgs. 16-17]. As a preliminary matter, unless otherwise noted, Plaintiffs follow the shorthand designations of their motion and supporting brief.

[2] *Chicoine v. Wellmark, Inc.*, 894 N.W.2d 454 (Iowa 2017) (stay of putative class action for anticompetitive conduct, in favor of federal multidistrict litigation, was immoderate and an abuse of discretion).

Except this is a big deal. Plaintiffs did not bring a copycat action[3] and the question before

the Panel is unlike any of the examples BCBSA holds up from the MDL proceedings. None of

them involve a subgroup of healthcare providers—all residing in the same state—who allege

price fixing differential treatment compared to other providers in that state, which is entirely

determined by entities in that state. (*See* Doc. 389-2 to 389-5, BCBSA Exs. B-D]. Plaintiffs'

allegations raise "approximately 'ten detailed specifications of wrongdoing' concerning

Wellmark's treatment of Iowa chiropractors, while MDL No. 2406 focused on two allegations

concerning the BCBSA's treatment of all healthcare providers." *Chicoine*, 894 N.W.2d at 462[4].

This paragraph in BCBSA's resistance is particularly misleading.

> Several actions now transferred into the MDL were artfully pled to avoid federal
> court by naming only the local Blue Plan as a defendant and asserting only state-
> law claims. In such cases, BCBSA moved to intervene, the matter was removed,
> and the case was tagged and transferred to the MDL. (*E.g.*, Ex. B, 7/30/12 Order
> Granting Motion to Intervene, *Morrissey v. Blue Cross & Blue Shield of Tenn.*,
> No. 12-cv-02359-JTF (W.D. Tenn.) (Dkt. No. 28); Ex. C, 1/18/13 Order Granting
> Motion to Intervene, *Sosebee v. Usable Mut. Ins. Co.*, 13-cv-00014-RDP (N.D.
> Ala.) (Dkt. No. 12); Ex. D, MDL 2406 (Dkt. No. 128) (J.P.M.L.); Ex. E, MDL
> 2406 (Dkt. No. 146) (J.P.M.L.).) There is no reason to treat the present class-
> action lawsuit any differently.

[Doc. 389 pg. 4]. This paragraph implies that the judge in all of the underlying actions not only

faced similar facts, but also chose to allow BCBSA's intervention and to consolidate the actions

---

[3] The *Mueller* case alleging price fixing by the Wellmark defendants in violation of Iowa Code § 553.4 was initially filed on May 20, 2008. *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 267 (Iowa 2012) ("*Mueller I*") (reversing summary judgment in part). The *Mueller* subset of plaintiffs in this case are alleging continuation of *Mueller I* under Iowa Code § 614.10 (2017).

[4] Unsurprisingly, BCBSA attempts to downplay the Iowa Supreme Court's reversal of stay decision. [Doc. 389 pg. 9 fn. 3]. To be sure, BCBSA had not sought intervention at that time. However, if anything, this suggests BCBSA had faith in the Wellmark defendants to defend this action, which only serves to undermine its arguments here. Moreover, it is illogical to argue the decision was immaterial because the court did not discuss § 1407. There was zero reason for the court to do so. The reversal of stay decision is relevant because the court's comparison of Plaintiffs' allegations to those in MDL 2406 and its consideration of the effect of such a stay on Plaintiffs' rights mirror the factors for transfer under § 1407 (common questions and promotion of "just and efficient conduct"). This Panel should see through attempts to conflate Plaintiffs' claims with MDL 2406, just as the Iowa Supreme Court did.

in the MDL over similarly vehement objections of the plaintiffs in those actions. None of this is true. A closer look reveals BCBSA's mischaracterization of these actions.

- Exhibit B: BCBSA's intervention in the *Morrissey* action does not mandate the same result here. The "gravamen of Morrissey's complaint" was that the Tennessee licensee of BCBSA had conspired with other Blue Cross and Blue shield entities acting in concert through BCBSA to "inflate[] premiums as a result of a conspiracy in violation of the Sherman Antitrust Act." [Doc. 389-2 pg 1]. Morrissey also attacked the legality of market share allocation agreements between the Tennessee licensee and BCBSA. [*Id.* pg. 2]. These are not at issue in Plaintiffs' operative Iowa petition. Moreover, far from Plaintiffs' vehement opposition to transfer, Morrissey *actually supported* consolidation of her suit in the centralized action in the Northern District of Alabama. [Doc. 389-4 pg. 2].

- Exhibit C: BCBSA's intervention in the *Sosebee* action is irrelevant because *no one opposed it.* [Doc. 389-3]. By contrast, the strength and fact of Plaintiffs' opposition to BCBSA's intervention automatically require different analysis and treatment.

- Exhibit D: The Panel consolidated actions in the Northern District of Alabama (MDL 2406) at the request of plaintiffs in one action; of the plaintiffs in other actions, some objected, while others joined all responding defendants in supporting consolidation. [Doc. 389- 4]. Of the objections to centralization, the one with any relevance here concerned whether state-specific issues would be prominent and potentially dispositive. [Doc. 389-4 pg. 2]. The Panel found this insignificant "when the actions still arise from a common factual core," namely the relationship among the state BCBS entities and BCBSA and the limitations imposed by the licensing agreements. [*Id.*] Be that as it may, this order is not automatically dispositive of Plaintiffs' motion to vacate. The factual core of Plaintiffs' claims arises from the Wellmark defendants' decisions regarding prices and coverage limitations for Iowa chiropractors in Iowa as compared to how they treat other healthcare providers in Iowa. These claims do not arise from a common factual core with those in MDL 2406.

- Exhibit E: This is the conditional transfer order consolidating the *Sosbee* action with MDL 2406. [Doc. 389-5]. Just like no one opposed BCBSA's intervention in *Sosbee* (Exhibit C above), no one opposed the transfer of *Sosbee*. This is evident from the stamp on Exhibit E stating, "Inasmuch as no objection is pending at this time, the stay is lifted." [Doc. 389-5 pg. 1]. This order no bearing whatsoever on the present analysis.

BCBSA also mischaracterizes Plaintiffs' claims [Doc. 389 pg. 5] by continuing to cite paragraphs that are no longer part of the operative Iowa petition. The chart it uses to claim commonality between Plaintiffs' allegations and those in the Fourth Amended Master Complaint in MDL 2406 is a sham. [*See* Doc. 389 pgs. 5-6].  It cherry picks three paragraphs from the

3

hundreds in the Master Complaint while largely ignoring the allegations at the heart of Plaintiffs'

action that, as cited above, the Iowa Supreme Court recognized as allegations of wrongdoing in

Iowa specific to Iowa chiropractors. *Chicoine*, 894 N.W.2d at 462.

The operative Iowa petition is Plaintiffs' First Amendment to Petition at Law, stating:

1. Plaintiffs hereby strike the following paragraphs from the Petition at Law filed
October 5, 2015:

        *        *        *

   c. ¶ 15. Plaintiffs allege as substituted ¶15 as follows: "15. By agreements
   between Wellmark defendants and each of the other 38 (now 36) BCBSA
   licensees, Wellmark processes and pays Iowa providers for out-of-state
   licensees member claims for provider services for each of the other
   BCBSA licensees. Wellmark defendants have agreed with each of the
   other licensees to fix the price of Iowa chiropractic services in accordance
   with the prices set by Wellmark defendants under terms of the Practitioner
   Services Agreements and the agreement with Iowa Chiropractic
   Physicians Clinic."; . . . .

[Doc 389-6, also Doc 381-5 in Plaintiffs' Motion to Vacate]. The stricken ¶ 15 read:

   15. The 38 other members of BCBSA are non-party co-conspirators with
   the Wellmark defendants for purposes of the Iowa Competition Act. By
   agreement with Wellmark, BCBSA, and each other, such independent
   licensed affiliates of the Blue Cross and Blue Shield Association and
   licensed Blue Cross and Blue Shield Plans has agreed with Wellmark to
   fix the price of Iowa chiropractic services in accordance with the prices set
   by Wellmark under terms of the Practitioner Services Agreement and have
   further agreed to allocate territories and not to compete in Iowa and South
   Dakota with Wellmark.

[Doc 389-6; Doc 381-3]. There is nothing in operative pleadings at the time of removal from the

Iowa District Court that mentions, let alone challenges "(1) the licensing agreements between

BCBSA and the Blue Plans, and (2) the rules and procedures governing BCBSA's BlueCard

Program," which BCBSA says is the essence of the Master Complaint in MDL No. 2406. [Doc.

389 pg. 3]. Not only is BCBSA not a defendant in the Iowa case, there is no need for discovery

4

or factual proof regarding BCBSA or a BlueCard Program. The Wellmark combination in Iowa is already discovered in Wellmark produced documents in Iowa.

It would be laughable BCBSA claims the putative class here "completely overlaps" the putative class in MDL 2406 if Plaintiffs' serious rights were not at issue. [Doc. 389 pg. 6]. This is misleading since (1) Wellmark Health Plan of Iowa, Inc. is not even a defendant in MDL 2406; (2) the Iowa chiropractor who is the purported MDL class representative (Joseph S. Ferezy, D.C.) stopped practicing May 2014; and (3) and the claims Ferezy purports to bring on behalf of himself and others so situated have nothing whatsoever to do with the discriminatory price fixing treatment of Iowa chiropractors as compared to other healthcare providers in Iowa. [*See* Doc. 381-1 pg. 7 and fn.8]. Plaintiffs have not directly challenged BCBSA's BlueCard Program and business practices. Any challenge to the same is indirect to the extent the BlueCard Program implements discriminatory treatment of Iowa chiropractors that Wellmark determines wholly independent of BCBSA—which is the crux of Plaintiffs' action.

### Reply to BCBSA's Argument

I.   **MDL 2406 Does Not Include the Crux of Plaintiffs' Claims and Transfer Would Not Promote Just and Efficient Conduct or Convenience**

In arguing the overlap of factual and legal issues between Plaintiffs' action and MDL 2406 are "obvious, substantial, and complex," BCBSA relies in part on its introductory and background statements, which are misleading as shown. [*See* Doc. 389 pg. 8]. Furthermore, Plaintiff Iowa chiropractors allege injuries from the discriminatory price fixing solely in Iowa at the hands of the Wellmark defendants, both Iowa corporations. Those injuries do not stem from the alleged national conspiracy in MDL 2406. The central allegations of the Iowa conspiracy to price fix in Iowa are as follows:

14. In about September of 1998, Wellmark unilaterally offered one form of

5

participating provider agreement for all health care providers and adopted a payment methodology purportedly based upon the Resource Based Relative Value System (RBRVS) and began issuing annual statewide fee schedules. Contrary to the actual RBRVS rates established by the Federal government, however, Wellmark implemented the RBRVS system in a manner which discriminated against chiropractic services by establishing lesser rates for chiropractic diagnostic and treatment services than for the same or similar services provided by M.D.'s, D.O.'s, physicians assistants, and nurse practitioners.

15. By agreements between Wellmark defendants and each of the other 38 (now 36) BCBSA licensees, Wellmark processes and pays Iowa providers for out-of-state licensees member claims for provider services for each of the other BCBSA licensees. Wellmark defendants have agreed with each of the other licensees to fix the price of Iowa chiropractic services in accordance with the prices set by Wellmark defendants under terms of the Practitioner Services Agreements and the agreement with Iowa Chiropractic Physicians Clinic.

16. Additionally, providers for the employees of all of the self-funded plans Wellmark administers in Iowa use the same identical preferred provider panels as Wellmark's other coverages, i.e., they use providers contracted through Wellmark's Practitioner Service Agreement. By agreement with Wellmark, each of the self-funded plans administered in Iowa by Wellmark has agreed with Wellmark to fix the price of Iowa chiropractic services in accordance with the prices set by Wellmark under terms of the Practitioner Services Agreement and Administrative Services Agreement of Wellmark Blue Cross and Blue Shield of Iowa. Accordingly, each of the self-funded plans administered by Wellmark is a non-party co-conspirator with the Wellmark defendants for purposes of the Iowa Competition Act.

17. Wellmark and various Iowa private and government self-funded employers agree to jointly use the Wellmark PPO and HMO provider networks for the purchase of provider services. The network providers are not parties to these agreements. The self-funded employers agree to pay Wellmark a separate monthly fee which is a percentage of the difference between what the provider usually bills for the service and the Maximum Allowable Fee Wellmark established in its annual provider fee schedules. In other words, if the provider usually bills $500 for services and the Wellmark fee schedule sets $225 as the maximum it will pay a provider for such services, Wellmark receives a percentage of the $275 difference from the self-funded employer as a Network Access Fee. This price setting fee is separate from the additional fee Wellmark charges Iowa private and government self-funded employees for claims administration services.

[Doc. 381-3 (original Petition at Law) at ¶¶ 14-17, excluding paragraph 15 and substituting the amended paragraph 15 found in the First Amendment to Petition at Law filed as Doc 381-5].

Wellmark claimed an Iowa state action exemption for this conduct in the first *Mueller* appeal. *Mueller I.*, 818 N.W.2d at 258-64. There is not a hint of nation-wide conspiracy headed by BCBSA in these allegations or the Iowa Supreme Court's *Mueller I* opinion.

The core issue BCBSA fails to address is how the transfer promotes just and efficient conduct of the litigation and is convenient for the parties and witnesses. Contrary to BCBSA's assertion, the Iowa suit does not allege "that BCBSA's pro-competitive BlueCard Program and longstanding practices constitute price-fixing in violation of the antitrust laws." [*See* Doc. 389 pg. 7]. A decision in N.D. Alabama or elsewhere on this issue would have no preclusive effect on the Iowa case. The Iowa Plaintiffs have already taken the depositions of key Wellmark witnesses and had a three-day hearing before an Iowa Administrative Judge, which was mostly testimony from Wellmark officers and witnesses. *Abbas v. Iowa Insurance Division*, 893 N.W.2d 879, 885 (Iowa 2017) (the full caption shows that Plaintiffs Drs. Chicoine, Brown, Niles, Kruse, Miller, Mueller, Rebarcak and Winecoff were among the Appellants).

The class representation issue is not a mere matter of the possibility of an Iowa chiropractor subclass in the MDL 2406, but rather that a decision on the merits of the issues in the Master Complaint could not have preclusive effect on the facts alleged in the Iowa Petition as amended. And neither the Plaintiffs nor the Wellmark defendants and witnesses are located any place but Iowa. This case does not fit the criteria of Section 1407.

BCBSA cites one sentence in the Petition as amended that BCBSA contends "alleges a conspiracy ***among*** all 36 Blue Plans nationwide: "Wellmark defendants have agreed with each of the other licensees to fix the price of Iowa chiropractic services in accordance with the prices set by Welmark defendants under terms of the Practitioner Services Agreements and the agreement with Iowa Chiropractic Physicians Clinic." [Doc. 381-3 (original Petition at Law) at ¶ 1(c)]. That

sentence, however, alleges agreement between Wellmark and another licensee – 36 individual agreements with each of the 36 licensees. It does not allege an agreement *among*. And BCBSA has nothing to do with the Iowa Wellmark Practitioner Services Agreement[5] or the agreement with Iowa Chiropractic Physicians Clinic.

The Panel's decisions regarding global conspiracies, which BCBSA cites [Doc. 389 pg. 10], are inapposite because Plaintiffs' claims are not a subset of or subsumed in the MDL. The global conspiracy there is that BCBSA and its licensees' practices injure all healthcare providers across the board nationwide, whereas Plaintiffs claim Iowa chiropractors are treated differently than other healthcare providers in Iowa. There is nothing in MDL 2406 about discrimination among healthcare providers. If the universe of MDL 2406 is apples, Plaintiffs' claims are not based on Granny Smiths but navel oranges. Based on the foregoing and Plaintiffs' opening brief, CTO-32 should be vacated because transfer would not serve the purpose of § 1407.

## II.     The Pending Jurisdictional Issues Do Not Support Transfer

BCBSA's claims that Plaintiffs' pending motion to remand and the jurisdictional dispute actually *support* transfer are misguided. [Doc. 389 pg. 2, 13]. Plaintiffs do not dispute that transferee courts may decide pending jurisdictional issues. However, the possession of authority does not mandate its exercise, particularly where, as here, the factors for transfer under § 1407 have not been met. Deferring a determination of Plaintiffs' motion to remand would not promote judicial economy—not because the transferee court has no ability to rule on the same, but because it would unnecessarily delay resolution of the same and ultimately waste the transferee court's resources. BCBSA's reliance on its Exhibits B, C, D, and E to support its jurisdictional arguments fail for the same reasons outlined above.

---

[5] A word scan of the Consolidated Fourth Amended Provider Complaint [Doc 389-1] for "Practitioner Services Agreement", "Services Agreement" or Practitioner Agreement" discloses no hits.

BCBSA's reliance on CTO-33 [Doc. 371] is inconclusive as plaintiff Opelousas General Hospital Authority opposed transfer, and the Panel has yet to decide its motion to vacate. [*See* Doc. 373, 383]. Moreover, allowing the S.D. of Iowa to decide the jurisdictional issue would not pose a danger of inconsistent results. All federal courts are fully capable of seeing through the improper, delay-seeking removal tactics BCBSA employed in both this action and in the one underlying CTO-33. There, BCBSA likewise waited to request intervention until after the state entity lost its stay requests and then they tag-team steamrolled over the plaintiff hospital to immediately remove to federal court and file a notice of tag-along before any ruling on intervention. [*See* Doc. 383-1 at pg. 6]. If BCBSA is so concerned with consistency, the vacation of both CTO-32 and CTO-33 would send a clear message that this Panel will not tolerate "an increasingly prevalent practice of engaging in dubious removals so as to bring properly filed state court actions into the sweep of an MDL, not so that they can be litigated in a federal forum, but so as to enhance the dilatory effect of an improper removal." [Doc. 383-1 pg. 7].

Finally, there is no federal jurisdiction over Plaintiffs' claims unless a court grants BCBSA's intervention request, which is unsupported as detailed in Plaintiffs' opening brief. [Doc. 381-1 pg. 5-7]. BCBSA's incredulous assertion that "[t]he heart" of plaintiffs' suit is that BCBSA's licensing agreements and nationwide BlueCard Program constitute an illegal price-fixing conspiracy" is unsupported and wholly ignores the record. [*See* Doc. 389 pg. 15].

## Conclusion

For all the foregoing reasons and those in their motion to vacate and supporting brief, Plaintiffs respectfully request the Panel vacate CTO-32 and grant Plaintiffs such additional relief to which they may be entitled and which the Panel deems just and proper.

Date: August 4, 2017

/s/ *Steven P. Wandro*

Steven P. Wandro  AT0008177
Kara M. Simons  AT0009876
WANDRO & ASSOCIATES, P.C.
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone:  515-281-1475
Facsimile:  515-281-1474
Email: swandro@2501grand.com
          ksimons@2501grand.com

Glenn L. Norris  AT0005907
HAWKINS & NORRIS, P.C.
2501 Grand Avenue, Suite C
Des Moines, Iowa 50312-5399
Telephone:  515-288-6532
Facsimile:  515-281-1474
Email: gnorris@2501grand.com
          gnorrislaw@gmail.com

ATTORNEYS FOR PLAINTIFFS CHICOINE ET
AL. IN CASE NO. 4:17-cv-00210 BEFORE THE
U.S. DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF IOWA

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2017, a copy of the foregoing was electronically
filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system on behalf
of Plaintiffs Bradley A. Chicoine, D.C., Mark A. Niles, D.C., Rod R. Rebarcak, D.C., and Ben
Winecoff, D.C., on behalf of themselves and those like situated, and Steven A. Mueller, D.C.,
Bradley J. Brown, D.C., Mark A. Kruse, D.C., Kevin D. Miller, D.C., and Larry E. Phipps, D.C.,
on behalf of themselves and those like situated, which will send notice of electronic filing to
counsel for all parties of record: Defendants Wellmark, Inc. d/b/a Wellmark Blue Cross and
BlueShield of Iowa and Wellmark Health Plan of Iowa, Inc., and Applicant Intervenor Blue
Cross Blue Shield Association.

Date: August 4, 2017

/s/ *Steven P. Wandro*
Steven P. Wandro