**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: BLUE CROSS BLUE SHIELD   )<br>ANTITRUST LITIGATION            )<br>_____ ) | MDL No. 2406 |

**RESPONSE TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-33)**

## INTRODUCTION

Plaintiff's copycat class-action lawsuit is one of more than 60 actions alleging that Blue Cross and Blue Shield Association ("BCBSA") and its 36 member Blue Cross Blue Shield Plans ("Blue Plans") conspired to allocate markets in order to reduce prices paid to healthcare providers. Plaintiff's complaint is not the first to attempt to avoid federal jurisdiction by naming only the local Blue Plan and bringing only state-law antitrust claims. In those cases, BCBSA intervened, the matter was removed, and then the case was tagged and transferred to MDL 2406. The multitude of complex common factual issues raised in plaintiff's complaint dictate transfer here as well. Indeed, plaintiff does not even attempt to dispute commonality.

Instead, plaintiff wrongly asserts that transfer will not promote "just and efficient" conduct because of its pending motion to remand. Plaintiff has it backwards. Centralization will avoid the significant risk of conflicting rulings on critical overlapping issues, and prevent duplicative discovery. This is especially true here, where a CTO currently pending before this Panel raises virtually identical jurisdictional questions to those raised here. Unsurprisingly, this Panel routinely transfers cases where jurisdictional issues are still pending, where they can be resolved consistently and efficiently by the transferee court. Moreover, plaintiff will not experience any significant inconvenience from transfer, and even so, any inconvenience is offset by efficiencies and savings from coordinated and consolidated pretrial proceedings.

And federal jurisdiction over this case is clear. There can be little doubt that BCBSA has a right to intervene, as has been held in each case to address the issue. Given BCBSA's proper presence as a party-defendant, this suit was removable, and the Class Action Fairness Act supplies subject-matter jurisdiction. For these reasons, the Panel should affirm the Conditional Transfer Order.

## BACKGROUND

BCBSA owns the rights to the famous Blue Cross and Blue Shield trademarks. *See Cent. Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n*, 711 F. Supp. 1423, 1433 (S.D. Ohio 1989). BCBSA does not underwrite healthcare insurance itself, but rather licenses its trademarks to insurance companies, which then offer Blue-branded health-insurance products using the marks. For example, BCBSA licenses to Blue Cross and Blue Shield of Louisiana ("BCBS-LA") the right to use its trademarks in Louisiana. BCBS-LA then contracts with hospitals, physicians, and other providers and offers Blue-branded health plans to subscribers in the state. BCBSA has operated its licensing system this way for decades.

Since February 2012, more than 60 suits have been filed across the country raising antitrust challenges to BCBSA's licensing agreements and BlueCard Program. Dozens of these suits were filed by healthcare providers, alleging that BCBSA and Blue Plans conspired to allocate health-insurance markets, fix prices, minimize competition, and drive down reimbursement rates. In 2012, one of the plaintiffs petitioned this Panel for centralization, which was granted. (*In re Blue Cross Blue Shield Antitrust Litig.*, MDL 2406 (Dkt. No. 1.).) These suits are now consolidated for pretrial proceedings in front of Judge R. David Proctor.

Since the MDL's creation, a steady stream of individual and putative class action cases have been filed and transferred to the MDL. In addition, the provider plaintiffs have filed consolidated complaints against BCBSA, BCBS-LA, and the other Blue Plans. These complaints challenge, among other things, (1) the licensing agreements between BCBSA and the Blue Plans, and (2) the rules and procedures governing BCBSA's BlueCard Program. (*E.g.*, Ex. A, Dkt. 1083, ¶¶ 1–8[1].)

---

[1] Exhibit A was initially filed under seal, but has since been unsealed in its entirety.

As to the BlueCard Program, the MDL plaintiffs challenge numerous rules, including those that require a member of one Blue Plan receiving healthcare services in another Blue Plan's service area (*e.g.*, when traveling) to receive the same negotiated provider discounts as members of the second Blue Plan. (Ex. A ¶ 8.) According to plaintiffs, this arrangement constitutes price-fixing by all Blue Plans nationwide, including BCBS-LA. (*Id.*) However, the BlueCard Program delivers significant benefits to both providers and subscribers. Providers benefit from high patient volume, ease of claims submissions, and prompt payment, while subscribers are protected from price-discrimination by providers and benefit from a single point of contact. Critically, the program allows the otherwise-regional Blue Plans to create joint products in order to meet the needs of multi-state employers and subscribers who travel. This increases interbrand competition against national competitors like Aetna, United Healthcare, and Cigna. Notwithstanding these procompetitive benefits, the MDL plaintiffs assert that the alleged conspiracy between BCBSA and all Blue Plans, including BCBS-LA, has resulted in inflated premiums for subscribers and decreased reimbursements for providers, including the Plaintiffs here. (*Id.*)

Several actions now transferred into the MDL were artfully pled to avoid federal court by naming only the local Blue Plan as a defendant and asserting only state-law claims. In such cases, BCBSA moved to intervene, the matter was removed, and the case was tagged and transferred to the MDL. (*E.g.*, Ex. B, 7/30/12 Order Granting Motion to Intervene, *Morrissey v. Blue Cross & Blue Shield of Tenn.*, No. 12-cv-02359-JTF (W.D. Tenn.) (Dkt. No. 28); Ex. C, 1/18/13 Order Granting Motion to Intervene, *Sosebee v. Usable Mut. Ins. Co.*, 13-cv-00014-RDP (Proctor, J. N.D. Ala.) (Dkt. No. 12); Ex. D, MDL 2406 (Dkt. No. 128) (J.P.M.L.); Ex. E, MDL 2406 (Dkt. No. 146) (J.P.M.L.).) Indeed, when faced with a practically identical case from the Middle District of Louisiana, this Panel ordered transfer and consolidation to MDL 2406. (Ex. F, 12/27/12 Order

3

Transferring Case to J.P.M.L., *Jarreau v. La. Health Serv. & Indem. Co.*, 3:12-cv-00421-JJB-SCR (M.D. La) (Dkt. No. 50).) There is no reason to treat the present class-action lawsuit any differently.

Plaintiff filed its class-action complaint in September 2016. The suit alleges that BCBS-LA, through its relationship with the Blue Cross and Blue Shield Association ("BCBSA"), conspired with all of BCBSA's other Member Plans ("Blue Plans") to allocate markets, monopolize, and engage in other anticompetitive conduct with the purpose and effect of driving down provider reimbursements. (Ex. G, Petition ¶¶ 8–15.) More specifically, plaintiff challenges the fact that BCBSA licensed BCBS-LA to use the Blue Cross Blue Shield names and trademarks on an exclusive basis in Louisiana—that is, other Blue Plans are not allowed to use the Blue Marks in Louisiana. (*Id.* ¶ 9.) Plaintiff claims that this amounts to market allocation, which, according to plaintiff, constitutes an unreasonable restraint on trade in violation of the Louisiana antitrust laws. (*Id.* ¶¶ 14–15.)

The allegations included in plaintiff's complaint are virtually identical to those brought in the 65 class action lawsuits already transferred and consolidated in MDL No. 2406. For example:

| *Opelousas* Allegation | MDL Allegation |
|---|---|
| Through various agreements with affiliated Blue Cross/Blue Shield companies and the BCBSA, Louisiana Blue Cross *colluded to make Louisiana a distinct "Service Area" and to allocate the Louisiana health insurance market free of competition from any other Blue Cross/Blue Shield company* (the "Scheme"). (Ex. G ¶ 8 (emphasis added).) | Defendants, which are independent companies, have agreed with each other to *carve the United States into "Service Areas" in which only one Blue can sell insurance, administer employee benefit plans or contract with healthcare providers* (the "Market Allocation Conspiracy"). (Ex. A ¶ 1 (emphasis added).) |

4

| *Opelousas* Allegation | MDL Allegation |
|---|---|
| The Scheme included not only unlawful agreements to not compete in other Blue Cross/Blue Shield geographic markets (in *exchange for exclusive monopolistic reign* over the Louisiana market) but also *granted other Blue Cross/Blue Shield companies access to its Louisiana contracted rates.* (Ex. G ¶ 11 (emphasis added.) | The national programs . . . lock in the fixed, discounted reimbursement rates that each Defendant achieves through *market dominance in its Service Area* and makes those subcompetitive rates *available to all other Blues without the need for negotiation or contracting*. (Ex. A ¶ 8 (emphasis added).) |
| As a direct result of this decreased competition, *reimbursement rates to Plaintiff and the other Louisiana class members are artificially low* and the *contract terms with Louisiana Blue Cross are much less favorable* to the Louisiana providers than they would be if normal competition existed. (Ex. G ¶ 12 (emphasis added).) | As a result, *healthcare providers, including Plaintiffs, are paid much less than they would be* absent the BCBS Market Allocation Conspiracy.  Healthcare providers who contract with the Blues are also *subjected to less favorable terms* than they would be absent the conspiracy. (Ex. A ¶ 7 (emphasis added).) |

Moreover, the alleged classes in the MDL include *all* putative class members here; in fact, multiple MDL class representatives are Louisiana health care providers. (Ex. A ¶¶ 530–34.)

Despite directly challenging BCBSA's BlueCard Program and business practices, the artfully pled complaint names *only* BCBS-LA as a defendant and intentionally omits BCBSA to avoid federal jurisdiction. Upon becoming aware of this Complaint, BCBSA moved to intervene. (Ex. H, 6/27/17 Motion to Intervene, No. 16-C-3647 (La. Dist. Ct.).) BCBS-LA and BCBSA then filed a timely notice of removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Ex. I, 6/27/17 Notice of Removal, No. 6:17-cv-00818 (W.D. La.) (Dkt. No. 1).)

On June 27, BCBSA filed a notice of potential tag-along action. (Dkt. No. 370.) A Conditional Transfer Order issued the next day. The Order recognized that this case appears to "involve questions of fact that are common to actions previously transferred to the Northern District of Alabama." (Dkt. No. 371.) Proceedings in the transferor court have been stayed while the CTO is pending before this Panel. (Ex. J, 7/24/2017 Order, No. 6:17-cv-00818 (W.D. La.) (Dkt. No. 36).)

5

## **A**RGUMENT

Transfer under § 1407 is appropriate if (1) the actions involve one or more common questions of fact; (2) transfer promotes just and efficient conduct; and (3) transfer will be convenient for the parties and witnesses. 28 U.S.C. § 1407(a). The standard for resolving transfer of a tag-along action is the same. *See, e.g.*, *In re Stirling Homex Corp. Sec. Litig*, 442 F. Supp. 547, 549 (J.P.M.L. 1977); David F. Herr, *Multidistrict Litig. Manual* § 8:1 (2012).

This case presents a textbook case for transfer. Plaintiffs cannot, and in fact do not, dispute that this action and the MDL share numerous common questions of fact. And, as has been the case for the 60-plus cases already centralized before Judge Proctor, transfer will promote just and efficient conduct, and serve the convenience of the parties and witnesses. In fact, the Panel has before it now another copycat lawsuit (*Chicoine v. Wellmark*), which presents almost identical jurisdictional issues to those raised by plaintiff here, namely the propriety of BCBSA's intervention and the subsequent removal to federal court. (Ex. K, CTO-32, Dkt. No. 366; Ex. L, 7/28/17 Defs' Resp. to Pls' Mot. to Vacate CTO-32, Dkt. No. 389.) To deny transfer would invite inconsistent rulings on the same critical jurisdictional questions at issue in both lawsuits.

Moreover, plaintiff's argument regarding federal jurisdiction and removal are unavailing; pending jurisdictional disputes are routinely transferred to MDL courts for resolution. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001). Indeed, the Panel transferred several cases where remand was pending in this very MDL. (Exs. D-F.) Plaintiff will suffer no prejudice following transfer because the transferee court can promptly decide its motion to remand. In any event, removal was proper because there is indeed federal subject matter jurisdiction here under the Class Action Fairness Act.

6

## I. THIS ACTION SATISFIES ALL REQUIREMENTS OF § 1407.

Plaintiff's suit, like dozens of actions already transferred, alleges that BCBSA's pro-competitive BlueCard Program and longstanding licensing structure violate the antitrust laws. This significant question should only be decided once, not countless times in various jurisdictions across the country. As long recognized by the Panel, overlapping and related antitrust class actions are particularly well suited for consolidation under § 1407. *See, e.g.*, *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341 (J.P.M.L. 2017); *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005).

### A. MDL 2406 and this case involve almost identical questions of fact and law.

§ 1407 does not require a complete identity or even a majority of common factual and legal issues. *In re Travel Agent Comm'n Antitrust Litig.,* 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003). Rather, a suit should be transferred if there are common questions of fact "of sufficient magnitude and complexity." *In re Western Liquid Asphalt*, 309 F. Supp. 157, 159 (J.P.M.L. 1970). There is no doubt that plaintiff's case far exceeds this low bar.

This suit fits comfortably within the long line of precedent centralizing antitrust actions alleging injuries sustained as a result of the same alleged conspiracy.[2] As discussed above, the overlapping factual and legal issues presented in plaintiff's complaint and the MDL are numerous, obvious, and substantial. Like the other plaintiffs in the MDL, plaintiffs here allege that BCBS-LA conspired with the 36 other Blue Plans to allocate markets and grant each other preferred

---

[2] *See, e.g.*, *In re Lipitor Antitrust Litig.*, MDL No. 2332, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012) (affirming CTO where individual action shared questions of fact with other antitrust class actions); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (affirming CTO where suit did not involve exact same factual issues but alleged same conspiracy to monopolize pain-medication market); *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (affirming CTO where, even though actions involved "some different defendants and some dissimilar factual issues," centralization was appropriate because all concerned "whether there has been a conspiracy to engage in restrictive trade practices").

access to market-specific reimbursement rates.  (*Compare* Ex. A ¶¶ 7, 8 *with* Ex. G ¶¶ 8-11.)  In addition, plaintiffs in both the MDL and this case allege that this "conspiracy" led to decreased competition, unfavorable contracts, and depressed reimbursement rates for providers.  (*Compare* Ex. A ¶¶ 7, 8 *with* Ex. G ¶¶ 12, 13.)

Moreover, this case and cases already consolidated in the MDL seek certification of overlapping classes of healthcare providers.  The Panel has held that the "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district."  *In re Plumbing Fixtures,* 308 F. Supp. 242, 243–44 (J.P.M.L. 1970); *see also In re Ditropan XL Antitrust Litig.*, 429 F. Supp. 2d 1364, 1366 (J.P.M.L. 2006); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003).

Indeed, the similarities between the issues raised in MDL 2406 and plaintiff's complaint are so obvious that plaintiff fails to even contest commonality in its motion to vacate.

### B. Transfer will promote just and efficient conduct.

Plaintiff insists that transfer should be denied because "the interests of both inherent fairness and judicial efficiency warrant vacating the transfer order to allow prompt resolution of remand in the transferor court."  (Pl. Br. 8.)  Plaintiff is wrong.  Transfer will promote just and efficient conduct by avoiding the need for duplicative discovery.  And, contrary to plaintiff's argument, transfer is necessary to avoid inconsistent rulings on critical jurisdictional and other questions at the heart of plaintiff's suit.

*First*, transfer will promote just and efficient conduct by eliminating duplicative discovery.  It's clear that, along with all the other plaintiffs in the MDL, plaintiffs here will seek discovery on the alleged "rules" or "guidelines" that are supposedly implemented by BCBSA and its licensees.  Absent centralization, BCBSA and the other defendants might be forced to produce the same documents (and possibly raise the same objections) many times.  The dozens of other Blue Plans

named as co-conspirators in the alleged national conspiracy would likely face overlapping, third-party discovery. In addition, the same employees would be subjected to multiple depositions in multiple forums on the same issues. Where parties must depose the same witnesses, examine the same documents, and make the same (or similar) pretrial motions, the benefits of a single judge supervising these proceedings are "obvious." *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978). Any unique factual issue can be dealt with under the transferee judge's discretion to manage the case. *See In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (transferring action that might involve "substantial amount of discovery" on unique issue given transferee judge's discretion "to allow discovery on issues unique to any action to proceed concurrently with the common discovery"). Judge Proctor is experienced in managing collective actions, and has taken a considerable role already in managing the 65 class actions transferred to the MDL. He is certain to do so here as well.

*Second,* transfer will avoid the risk of inconsistent rulings on key jurisdictional and merits questions. As already mentioned, an additional CTO and motion to vacate are currently pending before this Panel that raise virtually identical jurisdictional issues. In *Chicoine v. Wellmark*, plaintiffs improperly omitted BCBSA as a defendant; BCBSA intervened; the local Blue Plan removed the action to federal court; plaintiffs moved to remand; and the action was tagged to MDL 2406. (Exs. K–L.) Denying transfer in either action would create a serious risk of conflicting rulings on important jurisdictional questions. The desire to avoid such inconsistent rulings undergirds the entire MDL process. *In re Vioxx Prods. Liab. Litig.,* 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

9

Moreover, absent transfer, there is a real potential for inconsistent rulings on the existence of the alleged nationwide conspiracy, the validity of BCBSA's BlueCard Program, and the viability of the proposed overlapping classes. Avoiding this result is one of the primary aims of § 1407; accordingly, the Panel has consistently transferred sweeping conspiracy claims with national implications. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 856 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012); *In re Automotive Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350–51 (J.P.M.L. 2012); *In re Cement & Concrete Antitrust Litig.,* 465 F. Supp. 1299, 1300–01 (J.P.M.L. 1979); *In re Sugar Indus. Antitrust Litig*., 427 F. Supp. 1018, 1025–26 (J.P.M.L. 1977). Thus, transfer here is not only appropriate, it is necessary.

**C.     The benefits of centralization far outweigh any alleged inconvenience.**

Plaintiffs cannot show that any alleged inconveniences outweigh the obvious benefits of centralization. Plaintiffs assert that a transfer "would prejudice plaintiff by causing further needless delay and unnecessary expense." (Pl. Br. 2.) But this "worm's eye view" was rejected by the Panel long ago: "Of course it is to the interest of each plaintiff to have all of the proceedings in his suit handled in his district. But the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968); *accord In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979).

Centralization may be "less than convenient for some parties," but where the benefits outweigh this inconvenience for one party, centralization is appropriate. *See In re Wells Fargo Wage & Hour Emp. Prac. Litig*. (No. III), 804 F. Supp. 2d 1382, 1384 (J.P.M.L. 2011). Here, as in those cases, there can be little dispute that "any additional expense to plaintiff will be more than offset by the elimination of duplicative effort which accrues from coordinated or consolidated pretrial proceedings." *In re Gen. Adjustment Bureau Antitrust Litig.*, No. 73 C 2209 (Dkt. 127),

10

1974 WL 1015, at *2 (J.P.M.L. May 13, 1974); *see also In re Antibiotic Drugs*, 303 F. Supp. 1056, 1057 (J.P.M.L. 1969) (granting transfer because any "expense and inconvenience will be more than offset by savings from, and convenience of coordinated and consolidated pretrial proceedings directed by the transferee judge").

Further, centralized proceedings do not require parties to attend all the proceedings in the transferee court, and discovery of the parties can take place in the district where the parties reside. *See, e.g., In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506–07. Thus, plaintiff itself will likely "experience a net savings of time, effort and expenses through pooling their resources with other plaintiffs." *In re Stirling Homex Corp. Sec. Litig.*, 405 F. Supp. 314, 315–16 (J.P.M.L. 1975). In contrast, absent transfer, BCBSA (located in Chicago) and BCBS-LA—not to mention the 35 non-Louisiana licensees—would be forced to litigate the exact same issues multiple times, in multiple districts.

Finally, plaintiff's speculation that "[t]he MDL court would have to either interrupt the schedule it currently has in place in order to consider the renewed remand motion, or more likely, will take up the question of remand in due course" (Pl. Br. 8) has no basis. One of the great benefits of § 1407 is that it "ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re: McDonald's French Fries Litig.*, 560 F. Supp. 2d 1355, 1356 (J.P.M.L. 2008). This has come to fruition in MDL 2406, were Judge Proctor has already expeditiously remanded actions back to the transferee court when warranted. (Ex. M, Dkt. 260.) Thus, there is no real inconvenience for plaintiff here; their preference to litigate in their home state cannot trump the benefits of centralization to all other affected parties and the courts.

## II. SUBJECT-MATTER JURISDICTION IS BEST RESOLVED BY THE TRANSFEREE COURT.

Finally, plaintiff argues that the Panel should vacate the conditional transfer order because there is no federal jurisdiction over their case. Plaintiffs are wrong for two reasons. First, a pending jurisdictional dispute counsels in *favor* of transfer. Second, there is no doubt that federal jurisdiction exists over plaintiff's class action lawsuit.

*First,* plaintiff's assertion that "a transfer of this action would not promote 'significant economy and efficiency in judicial administration' but would delay the resolution of the motion to remand" (Pl. Br. 8) contravenes established precedent. The Panel routinely transfers cases with pending jurisdictional disputes. *See, e.g.*, *In re C.R. Bard, Inc.*, MDL No. 2187, 2015 WL 1641343 at *1 (J.P.M.L. April 7, 2015) ("The Panel often has held that jurisdictional issues do not present an impediment to transfer, as plaintiffs can present these arguments to the transferee judge."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d at 1347-48; *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973); *see also In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990) (denying mandamus to direct J.P.M.L. to vacate CTO on the ground that there was no subject-matter jurisdiction). And Judge Proctor has already demonstrated his willingness to promptly remand cases when centralized proceedings are no longer appropriate. (Ex. M.) There is no reason to think he would act differently with regard to this action. Indeed, judicial efficiency and consistency are served by permitting the MDL court to decide issues of remand and federal jurisdiction.

This is especially true here, where there is an additional CTO currently pending in front of this Panel (*Chicoine*) that presents virtually identical jurisdictional issues. (Exs. K–L.) Moreover, multiple other cases were brought only against the local Blue Plan and asserted only state-law claims. In every case to address the issue, BCBSA's motion to intervene was granted. (Exs. B–

12

C.) And all of those cases that were pending in federal court, including from the Middle District of Louisiana, were transferred to MDL No. 2406. (Exs. D–F.) Perhaps given the clear federal jurisdiction over such cases (see below), those plaintiffs chose not to press their jurisdictional challenges further. Future copycat cases could raise similar issues. It is clear that Judge Proctor should decide these recurring jurisdictional issues in order to ensure consistent treatment.

*Second,* plaintiff's argument that Louisiana state court "is the only court with jurisdiction to adjudicate plaintiff's claims" has no merit. (Pl. Br. 2.) BCBSA properly intervened as a matter of right in this action. (*See generally* Ex. H.) The heart of plaintiff's suit is that BCBSA's licensing agreements and nationwide BlueCard Program constitute an illegal market allocation. The BlueCard Program is a collaboration that has enabled the creation of nationwide healthcare products for all Blue subscribers and providers that would otherwise be unavailable. It is a pillar of BCBSA's business model; without it, BCBSA and Blue Plans couldn't operate on a national level. Disposing of the action without BCBSA's participation would impair BCBSA's ability to protect its interests nationwide.

BCBSA's presence creates the minimal diversity required by the Class Action Fairness Act, which reflects Congress' judgment that class actions with national character belong in federal court. *See* 28 U.S.C. § 1332(d). The Act's other prima facie requirements—that the proposed class consists of more than 100 members, and that the amount in controversy exceeds $5 million—are also easily met. *Id.* Finally, neither of CAFA's narrow exceptions for local controversies apply. Numerous similar suits were filed in the three years prior to plaintiff's complaint, and BCBSA unquestionably is a primary defendant. Therefore, like its sister suits before it, this case was properly removed to federal court and should be transferred to the MDL.

## CONCLUSION

The Panel has already centralized dozens of actions alleging that local Blue Plans—including BCBS-LA—conspired with BCBSA to allocate markets and drive down reimbursements to health care providers.  Plaintiff here alleges the same conspiracy.  In addition, the putative classes in the MDL are completely inclusive of the putative class asserted here by plaintiff.  Therefore, transfer of its case to the MDL currently pending before Judge Proctor will promote just and efficient conduct, and any claimed inconvenience is outweighed by the benefits achieved by centralization.  Rather than force BCBS-LA and BCBSA to duplicate pretrial efforts and risk inconsistent rulings, this Panel should transfer this case to MDL No. 2406.

Date:  August 8, 2017

| | |
|---|---|
| */s/ Daniel E. Laytin, P.C.*<br>Daniel E. Laytin, P.C.<br>Zachary D. Holmstead<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Tel: (312) 862-2000<br>Fax: (312) 862-2200<br>dlaytin@kirkland.com<br>zachary.holmstead@kirkland.com<br><br>Joseph C. Giglio, Jr.<br>William E. Kellner<br>LISKOW & LEWIS<br>822 Harding Street<br>Lafayette, LA 70503<br>Tel: (337) 232-7424<br>Fax: (337) 267-2398<br>jcgiglio@liskow.com<br>wekellner@liskow.com<br><br>*Counsel for Blue Cross and Blue Shield Association* | */s/ Michael C. Drew*<br>Richard J. Tyler<br>Michael C. Drew<br>Mark A. Cunningham<br>Graham H. Ryan<br>JONES WALKER LLP<br>201 St. Charles Avenue, 49th Floor<br>New Orleans, Louisiana 70170-5100<br>Telephone: (504) 582-8318<br>Fax: (504) 589-8318<br>rtyler@joneswalker.com<br>mdrew@joneswalker.com<br>mcunningham@joneswalker.com<br>gryan@joneswalker.com<br><br>Gary J. Russo<br>JONES WALKER LLP<br>600 Jefferson St, Suite 1600<br>Lafayette, LA 70501<br>Telephone: (337) 593.7600<br>Fax: (337) 593.7601<br>grusso@joneswalker.com<br><br>*Counsel for the Defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana* |

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: BLUE CROSS BLUE SHIELD )
ANTITRUST LITIGATION ) MDL No. 2406
                                               )

**CERTIFICATE OF SERVICE**

      I, Daniel E. Laytin, as Counsel for Blue Cross and Blue Shield Association, hereby certify that on the 8th day of August, 2017, a copy of the foregoing Response to Plaintiff's Motion to Vacate CTO-33 was electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system on behalf of Blue Cross and Blue Shield Association, which will send notice of electronic filing to all parties of record:

| | |
|---|---|
| Patrick C. Morrow<br>James P. Ryan<br>MORROW, MORROW, RYAN,<br>BASSETT & HAIK<br>P.O. Drawer 1787<br>Opelousas, Louisiana 70571-1787<br>Tel: 337-948-4483<br>Fax: 337-942-5234<br>patM@mmrblaw.com<br>jamesR@mmrblaw.com<br><br>Stephen B. Murray, Jr.<br>Arthur M. Murray<br>MURRAY LAW FIRM<br>650 Poydras Street, Suite 2150<br>New Orleans, Louisiana 70130<br>Tel: (504) 525-8100<br>Fax: (504) 584-5249<br>smurrayjr@murray-lawfirm.com<br>amurray@murray-lawfirm.com<br><br>*Counsel for Plaintiffs* | Richard J. Tyler<br>Michael C. Drew<br>Mark A. Cunningham<br>Graham H. Ryan<br>JONES WALKER LLP<br>201 St. Charles Avenue, 49th Floor<br>New Orleans, Louisiana 70170-5100<br>Telephone: (504) 582-8318<br>Fax: (504) 589-8318<br>rtyler@joneswalker.com<br>mdrew@joneswalker.com<br>mcunningham@joneswalker.com<br>gryan@joneswalker.com<br><br>Gary J. Russo<br>JONES WALKER LLP<br>600 Jefferson St, Suite 1600<br>Lafayette, LA 70501<br>Telephone: (337) 593.7600<br>Fax: (337) 593.7601<br>grusso@joneswalker.com<br><br>*Counsel for the Defendant Louisiana Health Service & Indemnity Company* d/b/a *Blue Cross and Blue Shield of Louisiana* |

                                                  Joseph C. Giglio, Jr.
                                                  William E. Kellner
                                                  LISKOW & LEWIS
                                                  822 Harding Street
                                                  Lafayette, LA 70503
                                                  Tel: (337) 232-7424
                                                  Fax: (337) 267-2398
                                                  jcgiglio@liskow.com
                                                  wekellner@liskow.com

                                                  *Counsel for Blue Cross and Blue Shield Association*


Date:  August 8, 2017                       */s/ Daniel E. Laytin, P.C.*
                                                  Daniel E. Laytin, P.C.
                                                  Zachary D. Holmstead
                                                  KIRKLAND & ELLIS LLP
                                                  300 North LaSalle Street
                                                  Chicago, IL 60654
                                                  Tel: (312) 862-2000
                                                  Fax: (312) 862-2200
                                                  dlaytin@kirkland.com
                                                  zachary.holmstead@kirkland.com

                                                  *Counsel for Blue Cross and Blue Shield Association*