## 27TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. LANDRY

### STATE OF LOUISIANA

NO. 16-C-3647      DIVISION "C"

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, a public trust, d/b/a OPELOUSAS GENERAL HEALTH SYSTEM**

06/27/17 10:13:22
St. Landry Parish Clerk of Court

**VERSUS**

**LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY d/b/a BLUE CROSS/BLUE SHIELD OF LOUISIANA**

---

### PETITION FOR INTERVENTION BY BLUE CROSS AND BLUE SHIELD ASSOCIATION

NOW INTO COURT, through undersigned counsel, comes the Blue Cross and Blue Shield Association ("BCBSA") which intervenes in this action uniting with the defendant in resisting the demands and prayer for relief by Plaintiff, Opelousas General Hospital Authority ("Plaintiff" or "Opelousas Hospital"), in its Petition.

1)

BCBSA owns and licenses the famous Blue Cross and Blue Shield trademarks (the "Blue Marks"). Blue Cross Blue Shield of Louisiana ("BCBS-LA") is one of thirty-six independent companies ("Blue Plans") across the country to which BCBSA has licensed the Blue Marks. *See, e.g.*, Petition ¶¶ 6–7.

2)

BCBSA also administers the "BlueCard" Program, and all 36 of BCBSA's licensees participate. This program enables members of any Blue Plan to receive provider services and the benefits of their member contracts when living or traveling in an area served by another Blue Plan. BlueCard enables the Blue Plans to operate on a national level.

3)

Plaintiff challenges both BCBSA's licensing practices and the BlueCard Program as unlawful. *Id.* ¶¶ 6–12, 30–32. Plaintiff alleges that BCBSA's granting BCBS-LA an exclusive license to use the Blue Marks in Louisiana is illegal under the Louisiana antitrust laws. *Id.* ¶¶ 7–

4632904_1

9, 30–32. Plaintiff also challenges the fact that members of other Blue Plans receive the benefit of BCBS-LA's contracted provider rates. *Id.* ¶¶ 11, 30–32.

4)

Plaintiff implicates BCBSA as a co-conspirator with defendant BCBS-LA. *Id.* ¶¶ 6–11, 30–32. In fact, Plaintiff goes so far as to allege that "BCBSA exists solely for the benefit of the various Blue Cross Blue Shield companies (including Louisiana Blue Cross) and to facilitate their concerted activities." *Id.* ¶ 7. And BCBSA is a party to the Licensing Agreements at the heart of Plaintiff's claims. *E.g., id.* ¶ 30 (alleging that BCBS-LA "enter[ed] into agreements with BCBSA"). Thus the parties' defenses would raise common issues of law and fact.

5)

Louisiana Code of Civil Procedure Article 1091 provides that a third party "having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties . . . ." Article 1091 specifies three ways a third party may intervene: (a) joining with plaintiff and demanding the same or similar relief against the defendant; (b) uniting with defendant in resisting the plaintiff's demands; or (c) opposing plaintiff and defendant. *Id.*

6)

BCBSA has a justiciable interest in defending the use of its Marks and Licensing Agreements.

7)

BCBSA's justiciable interest in the use of its Marks and Licensing Agreements are directly connected to the current litigation.

8)

This petition is supported by the accompanying memorandum in support.

WHEREFORE, the Blue Cross and Blue Shield Association hereby intervenes in these proceedings as defendant to assert its rights with respect to the use of its Marks, its Licensing Agreements, and its BlueCard Program.

4632904_1

Respectfully submitted,

LISKOW & LEWIS

By: _____
JOSEPH C. GIGLIO, JR. (Bar Roll No. 06158)
WILLIAM E. KELLNER (Bar Roll No. 35860)
822 Harding Street (70503)
Post Office Box 52008
Lafayette, LA 70505-2008
Telephone: (337) 232-7424
Fax: (337) 267-2398
Email: jcgiglio@liskow.com
Email: wekellner@liskow.com

*Attorneys for the Blue Cross and Blue Shield Association*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via U.S. Mail, e-mail, or fax to all counsel of record herein on this 27th day of June, 2017.

_____
JOSEPH C. GIGLIO, JR.

**27TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. LANDRY**

**STATE OF LOUISIANA**

NO. 16-C-3647       DIVISION "C"

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, a public trust, d/b/a OPELOUSAS GENERAL HEALTH SYSTEM**

**VERSUS**

**LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY d/b/a BLUE CROSS/BLUE SHIELD OF LOUISIANA**

---

## MEMORANDUM IN SUPPORT OF THE BLUE CROSS & BLUE SHIELD ASSOCIATION'S PETITION FOR INTERVENTION

Proposed Intervenor, the Blue Cross and Blue Shield Association ("BCBSA"), moves this Court for an order allowing it to intervene in this case under Louisiana Code of Civil Procedure Article 1091. In support of its Petition, BCBSA submits the following:

### INTRODUCTION

BCBSA owns and licenses the famous Blue Cross and Blue Shield trademarks (the "Blue Marks") to independent licensees ("Blue Plans") across the country. Blue Cross Blue Shield of Louisiana ("BCBS-LA") is one of those licensees. Under BCBSA's BlueCard Program, if a member of one Blue Plan (*e.g.*, Blue Cross Blue Shield of Tennessee) receives healthcare services in another Blue Plan's service area (*e.g.*, when traveling to Louisiana), that member receives the same negotiated provider discounts as members of the second Blue Plan.

Plaintiff asserts that BCBSA's licensing practices and BlueCard Program are illegal under the Louisiana antitrust laws. These allegations implicate the entire Blue Cross and Blue Shield licensing system, which is controlled by BCBSA and extends well beyond Louisiana.

Despite such broadside challenges to BCBSA's key assets and core business practices, plaintiff chose not to sue BCBSA. As a result, BCBSA moves to intervene in this action as a matter of right pursuant to Louisiana Code of Civil Procedure Article 1091.

BCBSA's intervention is a textbook application of Article 1091. BCBSA has a substantial legal interest in defending the use of its Blue Marks, its contracts, and its BlueCard

Program. Several courts have already permitted BCBSA to intervene in similar cases across the country. BCBSA respectfully requests that this Court do the same.

## BACKGROUND

BCBSA is a not-for-profit corporation that owns the nationally recognized Blue Marks. BCBS-LA is one of thirty-six independent companies across the country to which BCBSA has licensed the Blue Marks. Petition ¶¶ 6, 7. In order to meet the needs of multi-state employers and subscribers who travel, BCBSA created the BlueCard Program. This Program enables a member of one Blue Plan who receives services while living or traveling in another Blue Plan's service area to receive the benefits of the member's benefits contract and the contracted provider rates of the second Blue Plan. *See id.* ¶ 11. BlueCard enables the otherwise-local Blue Plans to operate on a national level.

Plaintiff, a hospital located in St. Landry Parish, filed this putative class-action lawsuit against BCBS-LA. Plaintiff alleges that BCBS-LA conspired with BCBSA and the other thirty-five Blue Plans to allocate markets, monopolize, and engage in other anticompetitive conduct with the purpose and effect of driving down provider reimbursements to anti-competitive levels. *Id.* ¶¶ 6–12, 30–32.

More specifically, plaintiff challenges the fact that BCBSA licensed BCBS-LA to use the Blue Cross Blue Shield name and trademark on an exclusive basis in Louisiana—that is, other Blue Plans are not allowed to use the Blue Marks in Louisiana. *Id.* ¶ 6. Plaintiff claims that this amounts to market allocation, which, according to plaintiff, constitutes an unreasonable restraint on trade in violation of the Louisiana antitrust laws. *Id.* ¶¶ 7–9, 30–32. Plaintiff also challenges BCBSA's BlueCard program as an illegal conspiracy to decrease competition and provider rates. *Id.* ¶¶ 11–12, 30–32.

Not only does this action challenge BCBSA's contracts, licensing structure, and BlueCard program, it also alleges that BCBSA's sole purpose is to facilitate a nationwide conspiracy: "BCBSA exists solely for the benefit of the various Blue Cross Blue Shield companies (including Louisiana Blue Cross) to facilitate their concerted activities." *Id.* ¶ 7.

The complaint is thus broader than an attack on BCBS-LA's behavior. It alleges that several of BCBSA's core practices and programs are anticompetitive, and that BCBSA is the

4632911_1

- 2 -

direct, core participant in the alleged anticompetitive behavior in Louisiana and nationwide. However, plaintiff named *only* BCBS-LA—one of dozens of BCBSA's downstream licensees—as a party.

## ARGUMENT

Louisiana Code of Civil Procedure Article 1091 provides that a third party "having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties . . . ." A third party may intervene by: (a) joining with a plaintiff and demanding the same or similar relief against the defendant; (b) uniting with a defendant in resisting a plaintiff's demands; or (c) opposing a plaintiff and a defendant. LA. CODE. CIV. PROC. art. 1091 (2017). In interpreting Article 1091, Louisiana courts have explained that its intent is to "increase[] the usefulness of the remedy of intervention. No longer is it essential that the intervenor have such a direct interest in the pending action that he will obtain immediate gain or suffer immediate loss." *Amoco Prod. Co. v. Columbia Gas Transmission Corp.*, 455 So. 2d 1260, 1264 (La. App. Ct. 1984) (quoting *Bellow v. N.Y Fire & Marine Underwriters, Inc.*, 215 So. 2d 350, 353 (La. App. Ct. 1968)).

BCBSA easily meets these requirements. Intervention is necessary to allow BCBSA to protect its significant interests in this action. Plaintiffs' suit challenges the cornerstone of BCBSA's licensing structure—to license its intellectual property, the Blue Marks, to Plans in exclusive territories in order to allow Plans to build broad subscriber bases and deep provider networks. It also challenges the BlueCard Program, which, along with other BCBSA programs, allows the otherwise-local Blue Plans to create joint products in order to compete against national competitors like Aetna, United Healthcare, and Cigna. A ruling that BCBSA's licensing system and BlueCard Program violate Louisiana antitrust laws would undermine BCBSA's ability to license its intellectual property in the way that it believes best maintains the high standards associated with the Blue Marks. BCBSA has a right, therefore, to intervene in this litigation to defend its licensing system.

This is not the first case in which plaintiffs challenged BCBSA's licensing structure without naming BCBSA as a defendant. Plaintiff's suit is one of dozens of cases across the country challenging BCBSA's practice of licensing the Blue Marks in exclusive geographic

areas and BCBSA's BlueCard Program. In some of those cases, the plaintiff named only a single downstream licensee as a defendant. Thus far, each of those courts to rule on BCBSA's motion to intervene has granted BCBSA's request. Order Granting Motion to Intervene, *Morrissey v. Blue Cross & Blue Shield of Tenn., Inc.*, No. 2:12-cv-02359 (W.D. Tenn. Aug. 1, 2012) (attached as Exhibit 1); Order Granting Motion to Intervene, *Piercy v. Health Care Serv. Corp.*, No. 12-L-28 (Ill. Cir. Dec. 5, 2012) (attached as Exhibit 2); Order Granting Motion to Intervene, *Sosebee v. USAble Mut. Ins. Co.*, No. 2:13-cv-00014-RDP (N.D. Ala. Jan. 18, 2013) (attached as Exhibit 3). BCBSA respectfully requests that this Court do the same.

### I. BCBSA is entitled to intervene as a matter of right.

Article 1091 provides that BCBSA may intervene as a defendant so long as they have a "justiciable interest in, and a connexity to the principle action." *Livingston Downs Racing Ass'n, Inc. v. State Through Edwards*, 96-1988, p. 6 (La. App. 1 Cir. 9/23/97); 700 So. 2d 1021, 1023; *Fisher v. Town of Boyce*, 2016-960, p. 3 (La. App. 3 Cir. 4/5/17), *reh'g denied* (May 17, 2017). BCBSA easily meets this two-part standard.

#### A. BCBSA has a justiciable right.

A "justiciable right" under Article 1091 is a "right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it." *Amoco Prod. Co.*, 455 So. 2d at 1264. BCBSA's interests in this case far exceed this standard. The mere fact that BCBSA is a *party* to the Licensing Agreement challenged here confers on BCBSA an interest substantial enough to invoke a right to intervene. But BCBSA's interest goes above and beyond that of a contracting party. BCBSA is the sole owner of the Blue Marks, and is the only entity that is a party to the Licensing Agreements with all thirty-six downstream licensees.

Similarly, BCBSA is the administrator of the BlueCard Program. Plaintiff challenges a core tenet of that program—to protect out-of-area patients from being charged higher prices by providers. Preventing provider price-discrimination is essential to meet the needs of multi-state employers and subscribers who travel.

Louisiana courts have repeatedly recognized a litigant's right to intervene when the challenged conduct directly relates to the intervenor's ability to do business. *See, e.g.*,

*Transworld Drilling Co. v. Tex. Gen. Res., Inc.*, 552 So. 2d 454, 457 (La. App. Ct. 1989) (permitting a third party to intervene by uniting with the defendant because the plaintiffs assertions with respect to the intervenor's rights under a joint-operating agreement "certainly" had "a direct impact on [the intervenor's] rights"); *Livingston Downs Racing Ass'n,* at pp. 6–7, 700 So. 2d at 1023 (holding that a licensed horse-racing association could intervene because it had a justiciable right to preserve the way it conducts business under the law). As in those cases, this action could hinder BCBSA's ability to license its trademarks and administer its BlueCard Program. Accordingly, BCBSA has a justiciable interest in the outcome of this case.

Moreover, BCBSA's right to intervene is apparent from the fact that its interests could be impaired by an unfavorable disposition of this action. BCBSA's rights under the Licensing Agreement and its ability to freely license the Blue Marks are at the core of the present action and would be jeopardized by a finding against the defendant in this case. Louisiana courts have ruled that where litigation challenges a non-party's ability to enforce its contracts or the validity of a system in which the non-party has an interest, that non-party is entitled to intervene as of right. For example, in *Shamieh v. Liquid Transp. Corp.*, 2007-1282 (La. App. 3 Cir. 1/30/08), 975 So. 2d 161, a physician who treated a workers' compensation claimant brought an action against claimant's employer and workers' compensation insurer, seeking to recover the difference between what he was paid for his services and what the workers' compensation schedule of payments allowed. *Id.* at pp. 1–2, 975 So. 2d at 162–63. The preferred provider organization petitioned to intervene but the Workers Compensation Judge denied the petition. *Id.* at p. 6, 975 So. 2d at 164. On appeal, the appellate court reversed, holding that the preferred provider could intervene because the effect of the judgment was to invalidate a portion of its contract that pertained to workers' compensation claims. *Id.* at p. 7, 975 So. 2d at 165. *See also Amoco Prod. Co.,* 455 So. 2d at 1265 (holding that third-party beneficiaries of a contract had sufficient justiciable interests related to the contract in dispute to allow intervention). Thus, BCBSA is entitled to intervene to defend its Licensing Agreements and BlueCard Program.

    **B.**    **BCBSA's substantial legal interests are connected to this action.**

BCBSA also easily meets the second intervention requirement—that its justiciable right be "so related or connected to the facts or object of the principal action that a judgment on the

4632911_1

- 5 -

principal action will have a direct impact on the intervenor's rights." *Id.* at 1264. That a judgment against BCBS-LA would directly impact BCBSA's rights is beyond question. A judgment would directly affect BCBSA's Licensing Agreement, national licensing structure, and BlueCard Program.

These direct effects far exceed the threshold for establishing a "direct impact" under Article 1091. For example, in *Id.* at 1264–65, the court allowed royalty owners under certain mineral contracts to intervene in a contracts dispute because the outcome of that dispute would directly affect the royalty owner's rights. Just as a third-party beneficiary to a contract has an interest in a contract dispute, so too does BCBSA have an interest in defending its entire licensing structure. In fact, BCBSA's interest is even stronger—BCBSA is not a third party to the licensing arrangement under attack; it's the other party. Other cases similarly establish that the potential impact on BCBSA from a judgment is suitably direct to allow it to intervene. *See, e.g.*, *Shamieh*, at p. 775, So. 2d at 165 (allowing intervention because effect of judgment was to invalidate portion of [intervenor's] contract); *Niemann* v. *Am. Gulf Shipping, Inc.*, 96-687, p. 7-8 (La. App. 5 Cir. 1/15/97); 688 So. 2d 42, 45 (holding that a former lawyer may intervene in an action where he may be entitled to legal fees).

Finally, BCBSA faces very similar allegations in dozens of class actions across the country that have been consolidated into an MDL pending in Alabama. *See In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13–cv–20000 (N.D. Ala. 2012) ("MDL No. 2406"). All of these lawsuits involve common issues and parties. BCBSA has a legal interest in ensuring that its defense is consistent across all such matters.

Indeed, other courts have already recognized that BCBSA's interests in similar suits are more than sufficient to justify intervention. Ex. 1 at 2 (holding that BCBSA's interest in "defend[ing] the legality of contracts to which it is a party" was a sufficient interest to justify intervention); Ex. 2 at 3 (holding that "BCBSA has a sufficient legal interest in the underlying litigation" to intervene as of right); Ex. 3 (granting BCBSA's motion to intervene as of right for good cause shown).

At bottom, it is undeniable that BCBSA's legal interest in its licensing structure is sufficiently connected to the allegations here to merit inclusion of BCBSA as a defendant.

4632911_1

## CONCLUSION

For these reasons, BCBSA respectfully requests this Court to grant its Petition and allow it to intervene as a defendant in this matter.

Respectfully submitted,

LISKOW & LEWIS

By: _____
JOSEPH C. GIGLIO, JR. (Bar Roll No. 06158)
WILLIAM E. KELLNER (Bar Roll No. 35860)
822 Harding Street (70503)
Post Office Box 52008
Lafayette, LA 70505-2008
Telephone: (337) 232-7424
Fax: (337) 267-2398
Email: jcgiglio@liskow.com
Email: wekellner@liskow.com

*Attorneys for the Blue Cross and Blue Shield Association*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via U.S. Mail, e-mail, or fax to all counsel of record herein on this 27th day of June, 2017.

_____
JOSEPH C. GIGLIO, JR.

4632911_1

- 7 -

## 27TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. LANDRY

### STATE OF LOUISIANA

NO. 16-C-3647                     DIVISION "C"

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, a public trust, d/b/a OPELOUSAS GENERAL HEALTH SYSTEM**

**VERSUS**

**LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY d/b/a BLUE CROSS/BLUE SHIELD OF LOUISIANA**

---

### RULE TO SHOW CAUSE

Considering the foregoing Petition for Intervention and accompanying Memorandum in Support,

IT IS ORDERED that the Plaintiff and Defendant show cause on the _____ day of _____, 2017, why the relief prayed for in the foregoing Petition for Intervention should not be granted.

Thus done and signed in Opelousas, Louisiana on the _____ day of _____, 2017.

_____
JUDGE, 27th Judicial District Court

4632927_1