**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re Blue Cross Blue Shield Antitrust Litigation                    No. 2406

**NOTICE OF POTENTIAL TAG-ALONG ACTION**

To:     Clerk of the Panel
        Judicial Panel on Multidistrict Litigation
        Thurgood Marshall Federal Judiciary Building
        One Columbus Circle, N.E.
        Room G-255, North Lobby
        Washington, D.C. 20002-8004

Pursuant to Rule 7.1(a), defendants BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. ("Florida Blue"), HEALTH OPTIONS, INC. ("Health Options"), HEALTHKEEPERS, INC., BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, ANTHEM INSURANCE COMPANIES, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., and BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, (collectively, the "Noticing Defendants") hereby give notice of the following related action filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida: *REVA, Inc.* v. *Healthkeepers, Inc.*, *et al.*, No. 2017022282CA01 (Fla. Cir. Ct.), now removed to the United States District Court for the Southern District of Florida, 17-24158-CIV-MORENO.  A Schedule of Related Action accompanies this filing.  A copy of the docket sheet is attached as Exhibit 1A.  A copy of the Complaint in *Reva* is attached as Exhibit 1B.  A copy of the Notice of Removal is attached as Exhibit 1C.

**Reva Alleges Collaboration and Market Power
Similar to Cases Centralized in the BCBS Antitrust MDL**

This related action involves common questions of fact with actions the Panel previously centralized in the *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 13-cv-20000

1

(N.D. Al.) (the "BCBS Antitrust MDL").  In centralizing those actions, the Panel found that they "involve substantial common questions of fact relating to the state BCBS entities' relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas . . ." and that the Blue Plans "are alleged to be co-conspirators."  *See In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).  More specifically, the Panel held that the Northern District of Alabama was an appropriate Section 1407 forum for actions sharing factual questions regarding "the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)." *Id*. at 1374.  The *Reva* action involves similar, overlapping questions of fact.

Plaintiff Reva, Inc. ("Reva") is a fixed-wing air ambulance company that provides emergency transport of patients.  *See* Ex. 1B, *Reva* Compl. ¶ 3.  Reva is an out-of-network provider, meaning it does not participate in any of the Noticing Defendants' respective authorized provider networks, but has allegedly rendered emergency air ambulance services to Defendants' insureds. *See id*. at ¶ 21.  In its Complaint, Reva alleged that "[a]t the time Services were rendered, each patient was enrolled as a member in a health insurance plan issued or administered by a Blue Plan." *Id*. at ¶ 22.  As such, Reva is a member of the purported Provider Class in the BCBS Antitrust MDL.  *See* Ex. 1D, Provider Consolidated Compl. ¶ 618 (alleging a class of "[a]ll healthcare providers . . . in the United States of America, who provided covered services . . . to any patient who was insured by . . . a Defendant [Blue Plan.]"); ¶ 41 (arguing that out-of-network providers have standing to sue).

As the Provider Plaintiffs do in the Consolidated Provider Complaint in the BCBS Antitrust MDL (attached as Exhibit 1D), in its Complaint Reva also addresses the Blue Card

program and the alleged market power of the Blue Cross and Blue Shield Association (the "BCBSA").   Section B of Reva's "Substantive Allegations" is labeled distinctly to assert allegations regarding "The Defendants' Collaboration" – a section of Reva's Complaint devoted entirely to the operations of the Blue Card program.  *Reva* Compl. p. 5.  Like the Provider Plaintiffs in the BCBS Antitrust MDL, in the related action Reva alleges that the Blue Card Program "allows the Defendants to coordinate and cooperate with each other on a national platform, to create significant market advantages."  *Id*. at ¶ 30.  Reva further describes how Florida Blue has acted as the "Host Plan" for "foreign Blue Plans' insureds" receiving services in Florida.  *Id*. at ¶ 32.  Reva alleges that Florida Blue, as the Host Plan, submitted a price to the Home Plan that was "unreasonably low and significantly discounted" and that "[t]he Home Plan was *not required* to utilize Florida Blue's unreasonable pricing for the claims submitted by REVA."  *Id*. at ¶¶ 33, 34 (emphasis added).  Reva's allegations are like those made in the BCBS Antirust MDL that allege a conspiracy to depress provider reimbursement rates involving both the exclusive service areas set forth in the BCBSA License Agreements and the Blue Card Program.

For instance, Reva's allegations regarding the Noticing Defendants' "collaboration" and "market advantage," although short and underdeveloped, overlap with the BCBS Antitrust MDL Provider Plaintiffs' allegations that the Blue Plans possess market power, because the collective "advantage" described in each of these allegations purportedly led to Reva and other healthcare providers being "significantly underpaid" by the Blue Plans.  *See* Compl. ¶ 35; *id*. at ¶ 29 ("Defendants utilize these independent licenses to cover millions of individuals throughout the United States"); Ex. 1D, Consolidated Provider Compl. ¶¶ 8, 174 (describing the Blue Plans' alleged "market power"), ¶¶ 46-115 (alleging that various Blue Plans are the "largest provider of

healthcare insurance" in their respective states).  Both cases contend that the designated service areas in the BCBSA License Agreements, whereby Blue Plans allegedly do not compete with other Blue Plans outside of their respective service areas, resulted in Blue Plans underpaying providers because their collaboration allowed them to do so.  *See* Ex. 1B, *Reva* Compl. ¶¶ 29-37; Ex. 1D, Consolidated Provider Compl. ¶ 7.

At bottom, both the BCBS Antitrust MDL and the related case challenge the Blue Card Program, which permits subscribers of one Blue Plan to obtain services in another Blue Plan's service area when visiting or living in another state.  *Compare* Ex. 1B *Reva* Compl. ¶ 31 ("The BlueCare [sic] Program enables eligible members of one Blue Plan Member ('the Home Plan') to obtain health care services in another Blue Plan Member's (the 'Host Plan') service area.") *with* Ex. 1D, Consolidated Provider Compl. ¶ 201 ("Within the Blue Card Program, the Blue through which the subscriber is enrolled is referred to as the 'Home Plan,' while the Blue located in the Service Area where the medical service is provided is referred to as the 'Host Plan.'"). Specifically, the gravamen of Reva's Complaint is Reva's allegation that Defendants exact unjust benefits through the operation of the Blue Card Program whereby, Reva alleges, Florida Blue (as the Host Plan) purposefully submits for adjudication to Defendant Home Plans prices that are allegedly "unreasonably low and significantly discounted."  *Reva* Compl. ¶ 33.  The result of this alleged collaboration, according to Reva, is that it is "significantly underpaid" for its services.  *See id.*  ¶ 35.  This is the same purported scheme alleged in the BCBS Antitrust MDL.  *See, e.g,* Consolidated Provider Compl. ¶ 8 ("the Blue Card Program . . . lock[s] in the fixed discounted reimbursement rates that each Defendant achieves through market dominance in its Service Area . . . As a result, a healthcare provider who renders services . . . in another Service Area receives significantly lower reimbursement than the healthcare provider would

receive. . . .").  *See also id.* ¶ 474 ("the Blues have agreed to fix reimbursement rates for providers among themselves by reimbursing providers according to the 'Host Plan' or 'Participating Plan' . . . By doing so Defendants have agreed to [pay] at less than competitive levels.").  These commonalities of factual allegations and proffered legal theories provide the precise connection that the Panel has found sufficient to justify consolidation of given cases with the BCBS Antitrust MDL.

Put simply, a required predicate of Reva's lawsuit is a legal theory focusing on the nature of the Noticing Defendants' alleged "Collaboration," which is identical to the factual allegation at the core of the pending multi-district litigation.  *Reva* Compl. p. 5.  That allegation is articulated perhaps most succinctly by the 2012 order centralizing those actions: "Plaintiffs contend that the . . . BluePlans are health insurance companies that, but for any agreement to the contrary, could and would compete with one another."  *See In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1375.  In that order, and in subsequent orders transferring additional related actions to the BCBS Antitrust MDL, the Panel has been clear: "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core."  *Id.* at 1376; *see also* Transfer Order, *Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, MDL No. 2406 [Dkt. 393] at 1 (J.P.M.L. Oct. 05, 2017) (same) (further holding that the "focus . . . does appear somewhat different from the MDL allegations, but plaintiffs still allege sufficient factual overlap with the cases to justify transfer.").  Here, Reva, just as the BCBS Antitrust MDL Provider Plaintiffs, claims that the Blue Card program depressed and "underpaid" the reimbursement Reva ultimately received.  *See* Ex. 1B *Reva* Compl. ¶¶ 24-28; Ex. 1D, Consolidated Provider Compl.

¶¶ 7, 334.  Reva maintains that "programs, like the BlueCard Program, [allow] the Defendants to coordinate and cooperate with each other on a national platform, to create significant market advantages."  *Reva* Compl. at ¶ 30.  This allegation may as well have been directly copied from the Provider Plaintiffs' allegations in the BCBS Antitrust MDL, which similarly state: "One Defendant admitted . . . that '[e]ach of the [36] BCBS companies . . . works cooperatively in a number of ways that create significant market advantages . . . ."  Consolidated Provider Compl. ¶ 128.

### Transferring *Reva* to the BCBS Antitrust MDL Promotes Efficient Resolution of Common Allegations and Prevents Inconsistent Rulings

Transferring *Reva* to the BCBS Antitrust MDL will allow a single court to address the underlying claims as well as the involvement and legality of the BCBSA License Agreements.  Further mandating transfer is the fact that the Northern District of Alabama has been individually commended by the Judicial Panel on Multidistrict Litigation for its unique expertise as "an experienced transferee judge who is already familiar with the contours of the litigation."  *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.  This statement, of course, has only become more accurate in the ensuing years.  In the transfer order, the Panel centralized the initial actions in the BCBS Antitrust MDL specifically to "ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary" and "prevent inconsistent pretrial rulings."  *Id.* at 1376.  The same reasoning justifies transferring *Reva* to the BCBS Antitrust MDL.

The defendants in *Reva* are all also defendants in cases centralized in the BCBS Antitrust MDL and dispute the common claims of Plan collaboration or conspiracy.[1]  If *Reva* is not

---

[1]     The only technical exceptions are the Defendants Health Options, Inc. and Healthkeepers, Inc., which are affiliated health maintenance organizations of Blue Cross Blue Shield of Florida,

transferred to the BCBS Antitrust MDL, there is a risk of conflicting rulings from different federal courts on the purported existence of the nationwide collaboration or conspiracy, and the effects of the BCBSA License Agreements and Blue Card program on provider reimbursement. The Panel consistently has held that the potential for inconsistent rulings is a significant factor warranting transfer of related actions.  *See In re: BP Securities, Derivative and Employment Retirement Income Sec. Act (ERISA) Litig.*, 734 F.Supp.2d 1380, 1382 (J.P.M.L. 2010) (transferring cases to existing MDL to "prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues"); *In re National Sec. Agency Telecomm. Records Litig.*, 474 F.Supp.2d 1355, 1356 (J.P.M.L. 2007) (affirming transfer of actions to previously centralized action to "prevent inconsistent pretrial rulings").  The potential for inconsistent rulings by itself heavily weighs in favor of transferring *Reva* to the BCBS Antitrust MDL.

### Transferring *Reva* to the BCBS Antitrust MDL Eliminates Duplicative Discovery and Conserves the Courts' and Parties' Resources

Transferring *Reva* to the BCBS Antitrust MDL so that it can be managed with other cases involving similar, overlapping allegations will also avoid the prospect of duplicative discovery being sought from, and potentially inconsistent discovery obligations being imposed on, the Noticing Defendants.  The Panel centralized the initial actions in the BCBS Antitrust MDL in large part to "eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary."  *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.  Transferring the *Reva* action will help achieve these same goals.

The Panel has repeatedly held that a potential for parties to be subject to duplicative discovery is a substantial factor that warrants transfer.  *See In re: BP Securities, Derivative and Employment Retirement Income Sec. Act (ERISA) Litig.*, 734 F.Supp.2d at 1382 (transferring

Inc., and Anthem Insurance Companies, Inc., respectively – both of which are in any event directly involved in the subject multidistrict litigation.

cases to existing MDL to "eliminate duplicative discovery"); *In re National Sec. Agency Telecomm. Records Litig.*, 474 F.Supp.2d at 1356 (affirming transfer of actions to previously centralized action to "eliminate duplicative discovery"). If *Reva* is not transferred to the BCBS Antitrust MDL, the *Reva* Defendants (whose respective principal places of business are located across the country) will likely to have to prepare written discovery responses, produce documents, and provide deposition testimony about factual issues that overlap with those relevant to the BCBS Antitrust MDL.[2] Duplicating those efforts in a separate litigation would be a waste of judicial and party resources and would risk exposing the Noticing Defendants to duplicative or inconsistent discovery obligations.

For all of these reasons, this related action is appropriate for transfer to the BCBS Antitrust MDL.

Dated: January 8, 2018                                Respectfully Submitted,

                                                      By /s/ Craig A. Hoover
                                                      Craig A. Hoover
                                                      J. Robert Robertson
                                                      E. Desmond Hogan
                                                      HOGAN LOVELLS US LLP
                                                      Columbia Square
                                                      555 Thirteenth Street, NW
                                                      Washington, DC 20004

---

[2] Indeed, in a quite recent filing, Reva confirmed that overlapping and duplicative discovery will almost certainly occur. In Reva's January 3, 2018, reply in support of its motion to conduct jurisdictional discovery, Reva states that it "requires discovery regarding this [BlueCard] program, including the contractual terms and provisions that allow the [Defendants] to take advantage of healthcare benefits offered by Florida-based providers to their insureds." Pl.'s Reply in Supp. of Its Mot. for Stay, or Alternatively, an Enlargement of Time to Respond to Motions to Dismiss, and Mot. to Conduct Jurisdictional Disc. ECF No. 39, at 5 (attached as Exhibit 1E). Reva claims it needs to conduct this discovery because it "contends that the BlueCard program creates an agency relationship between the Host Plan. . . and the [Defendants'] Home Plans." *Id*. This is precisely the sort of overlapping discovery that MDL consolidation is designed to prevent.

Telephone :  202-637-5600
Facsimile :  202-637-5910
craig.hoover@hoganlovells.com
robby.robertson@hoganlovells.com
desmond.hogan@hoganlovells.com

Emily M. Yinger
N. Thomas Connally, III
HOGAN LOVELLS US LLP
Park Place II
7930 Jones Branch Drive, Ninth Floor
McLean, VA 22102
Telephone :  703-610-6100
Facsimile :   703-610-6200
emily.yinger@hoganlovells.com
tom.connally@hoganlovells.com

*Co-Coordinating Counsel for the
Defendants*