# EXHIBIT 1C –

# *Reva Inc.* Notice of Removal

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

_____

REVA, INC.,

       Plaintiff,

v.

HEALTHKEEPERS, INC., BLUE CROSS AND
BLUE SHIELD OF FLORIDA, INC. d/b/a
FLORIDA BLUE, BLUE CROSS AND BLUE
SHIELD OF NORTH CAROLINA, BLUE
CROSS AND BLUE SHIELD OF TEXAS, A
DIVISION OF HEALTH CARE SERVICE
CORPORATION, BLUE CROSS AND BLUE
SHIELD OF KANSAS CITY, ANTHEM
INSURANCE COMPANIES, INC., HEALTH
OPTIONS, INC. d/b/a FLORIDA BLUE HMO,
BLUE CROSS BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE COMPANY, BLUE
CROSS AND BLUE SHIELD OF GEORGIA,
INC., BLUECROSS BLUESHIELD OF SOUTH
CAROLINA, AND BLUE CROSS AND BLUE
SHIELD OF ALABAMA,

       Defendants.
_____

Case No. _____

### DEFENDANTS' NOTICE OF REMOVAL

     Defendants BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. ("Florida Blue"),

HEALTH OPTIONS, INC. ("Health Options"), HEALTHKEEPERS, INC., BLUE CROSS

AND BLUE SHIELD OF NORTH CAROLINA, BLUE CROSS AND BLUE SHIELD OF

TEXAS, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, ANTHEM INSURANCE

COMPANIES, INC., BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE

COMPANY, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, and BLUE CROSS AND BLUE SHIELD OF ALABAMA (collectively, "Defendants"), pursuant to 28 U.S.C. §§§ 1441, 1442, and 1446, file this Notice of Removal and assert:

## INTRODUCTION

1.      On September 19, 2017, Plaintiff REVA, Inc. ("Plaintiff" or "REVA") filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *REVA, Inc.* v. *Healthkeepers, Inc.*, *et al*., No. 2017022282CA01 (Fla. Cir. Ct.).

2.      Blue Cross and Blue Shield of Georgia, Inc. was served with the summons and complaint on October 12, 2017.  Based on the returns of service in the Court file, that entity was the first Defendant to be served with process.

3.      This case is properly removed upon two independent grounds: First, this case is properly removed because various claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and therefore are within the original jurisdiction of this Court.  Second, this case is also properly removed pursuant to 28 U.S.C. § 1442(a)(1) because Defendants have been sued for actions taken as persons acting under a federal officer of an agency of the United States under color of such office.

## PLAINTIFF'S CLAIMS

4.      In its Complaint, Plaintiff asserts four counts arising out of Defendants' alleged failure to pay "proper reimbursement for emergency air ambulance services that REVA provided to Defendants' insureds" after "Defendants provided REVA with an explanation of benefits ('EOB') for each patient acknowledging the services were covered by the patient's insurance policy." *See* Ex. A, Complaint ("Compl."), ¶¶ 1, 27.

5. In Count I, REVA asserts a claim for "unjust enrichment," alleging that "Defendants have not paid or reimbursed the value of the benefit conferred by REVA" even though Defendants allegedly had knowledge that REVA expected to be paid its "usual and customary charges." *Id.* ¶ 40. Plaintiff claims that these circumstances have produced a "windfall" for Defendants when they collected premiums from their members and subscribers. *Id.* ¶ 42.

6. Count II asserts a claim for quantum meruit based on an alleged "contract with Defendants" because REVA "billed Defendants its usual and customary charges" and Defendants allegedly "underpaid." *Id.* ¶¶ 45-47. REVA asserts that there was "no express agreement between the parties that allows Defendants to discount REVA's usual and customary billed charges," so it allegedly "would be inequitable for Defendants to retain these benefits without paying REVA the value thereof." *Id.* ¶¶ 48, 49.

7. Count III asserts that Florida Blue violated Florida Statutes § 627.64194 when it allegedly "grossly underpaid" for REVA's services after REVA billed Florida Blue, "specifying the nature of the Services and its usual and customary charges." *Id.* ¶¶ 53, 54. REVA alleges that the services are "covered services" pursuant to "Florida Blue's agreement with each of its members" and pursuant to Fla. Stat. §§ 627.64194(4) and 641.513(5), under which REVA asserts that Florida Blue is allegedly required to reimburse REVA for emergency services at certain rates. *Id.* ¶ 55.

8. In Count IV, REVA similarly claims that Health Options (an HMO) violated Florida Statutes § 641.513 by allegedly underpaying REVA after REVA billed Health Options, "specifying the nature of the Services and its usual and customary charges for the Services." *Id.* ¶¶ 60, 61.

9.      Plaintiff alleges that while it is a "Florida healthcare provider[]," Defendants "coordinate and cooperate with each other on a national platform" through the BlueCard Program. *Id.* ¶¶ 29-30, 32.

10.     Plaintiff further alleges that for Florida healthcare providers like Plaintiff, "Florida Blue acts as the 'Host Plan' for foreign Blue Plans' insureds who receive healthcare services from Florida healthcare providers" and that "[a]s the 'Host Plan,' Florida Blue is responsible for processing payments for services rendered by [Plaintiff] to the Home Plan's members." *Id.* ¶ 32. Plaintiff alleges that the Home Plans (*i.e.*, the other Defendants named in this action) adjudicate the claims submitted by Florida Blue, "including the determination of payment to be made to the healthcare provider." *Id.*

11.     In this regard, Plaintiff claims that the Home Plans "w[ere] not required to utilize Florida Blue's pricing" for claims submitted by Plaintiff and "purposefully submitted for adjudication a price to the Home Plan[s] that was unreasonably low and significantly discounted." *Id.* ¶¶ 33-34.

## GROUNDS FOR REMOVAL

12.     This case is properly removed because various claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and therefore are within the original jurisdiction of this Court.

13.     In addition, this case is also properly removed pursuant to 28 U.S.C. § 1442(a)(1) because at least one Defendant, Florida Blue, has been sued for actions taken as persons acting under a federal officer of an agency of the United States under color of such office.

### I.      Federal Question Jurisdiction Due to ERISA Preemption

14.     This Court has jurisdiction under 28 U.S.C. § 1331 because one or more of

Plaintiff's claims are completely preempted by ERISA.

15.    Although federal-question jurisdiction ordinarily is governed by the well-pleaded complaint rule, "[a]n exception to this rule is when Congress so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991). "The effect of this exception is to convert what would ordinarily be a state claim into a claim arising under the laws of the United States." *Id.*; *see also Ehlen Floor Covering, Inc.* v. *Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) ("Federal question jurisdiction generally exists only when the plaintiffs' well-pleaded complaint presents issues of federal law, but the complete preemption doctrine of ERISA creates an exception to that rule.").

16.    A claim is subject to complete preemption under ERISA when: (i) the plaintiff "could have brought [its] claim under ERISA § 502(a)(1)(B)"; and (ii) "there is no other legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

17.    A claim can be brought under ERISA § 502(a)(1)(B) by a "participant or beneficiary . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  This is satisfied if a plaintiff has standing to sue and the claim "fall[s] within the scope of ERISA." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009).

18.    Plaintiff's Complaint covers all claims it submitted to Defendants "for many years" when "each patient presented information identifying the relevant Defendant as his or her insurance provider, verifying insurance coverage for REVA's services." Compl. ¶ 24.

19.     Based on a review of the claims during the last four years (from October 1, 2013 to the present), Defendants have determined that REVA regularly indicated that it has an assignment of benefits from ERISA plan members on the claim forms it submitted on behalf of those members. *See*, *e.g.*, Ex. B, Declaration of Lise Strother from Florida Blue ("Strother Decl."), ¶ 22 (discussing Patient C.B.'s claim where Plaintiff indicated it had an assignment of patient's benefits); Ex. C, Declaration of Michelle Kersey from Anthem ("Kersey Decl."), ¶ 9 (discussing Patient J.F.'s claim where Plaintiff indicated it had an assignment of patient's benefits); Ex. D, Declaration of Jesse Epting from Blue Cross and Blue Shield of South Carolina ("Epting Decl."), at ¶ 7 (stating that Plaintiff represented that Patient T.J. had granted an assignment of benefits to Plaintiff); Ex. E, Declaration of Wade Cox from Blue Cross and Blue Shield of Alabama ("Cox Decl."), at ¶ 6 (stating that Plaintiff represented that Patient A had assigned payment of the claim to Plaintiff).

20.     Many of the claims REVA submitted to Defendants for services rendered to Defendants' members fall within the scope of ERISA.  ERISA § 502(a)(1)(B) covers three types of claims: (i) claims to recover benefits due under the terms of the plan; (ii) claims to enforce rights under the plan; and (iii) claims to clarify rights to future benefits under the plan.

21.     Various Defendants have received and administered numerous claims from Plaintiff for providing air ambulance services to individuals who are beneficiaries of ERISA group health plans. *See* Strother Decl., at ¶¶ 21- 33; Kersey Decl., at ¶¶ 11-22; Epting Decl., at ¶¶ 4-7; Cox Decl. at ¶¶ 4-6 .  Therefore, at least one or more of the claims seek to recover benefits under the terms of an ERISA plan.

22.     In determining whether a claim seeks benefits under an ERISA plan, courts at times distinguish between "right to payment" claims, which fall within the scope of ERISA, and

6

"rate of payment" claims, which generally do not. *Connecticut State Dental Ass'n*, 591 F.3d at 1350. "If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2013).

23.     While the Eleventh Circuit has periodically relied on this right to payment versus rate of payment distinction, the distinction has correctly been held to be irrelevant for non-participating providers, such as REVA.  A recent Report & Recommendation in the Southern District of Florida noted that when an out-of-network provider is involved, a "rate of payment" dispute simply cannot exist, because a rate of payment dispute is focused on the alleged breach (by underpayment) of a *provider agreement*, and there is no provider agreement with an out-of-network provider.  *See Apex Toxicology, LLC* v. *United Healthcare Ins. Co.*, No. 16-62768, 2017 U.S. Dist. LEXIS 99249, at *13 (S.D. Fla. 2017).  As another court within the Eleventh Circuit observed: "Although Plaintiffs rely on the distinction between 'rate of payment' and 'right of payment,' this distinction is irrelevant in cases involving out-of-network providers because a 'rate of payment' dispute is governed by the provider agreement." *All. Med, LLC v. Blue Cross & Blue Shield of Georgia, Inc.*, 2:15-CV-00171-RWS, 2016 WL 3208077, at *3 (N.D. Ga. 2016).

24.     Here, there is *no provider agreement* between REVA, on the one hand, and any of the Defendants, on the other.  *See*, *e.g.*, Compl. ¶ 48 (confirming that "[t]here is no express agreement between the parties"); *see also*  Strother Decl, at ¶ 15 ("During the time frame in dispute, REVA was an out-of-network provider that did not have a participating provider contract with either Florida Blue or Health Options.").  Rather, the amount to which Defendants

have determined REVA is entitled for the services at issue in this lawsuit, which in nearly all cases is divided between member responsibility and plan responsibility, is set out in the terms of the members' health plans. Thus, in determining the core issue of whether Plaintiff has been underpaid for its services, the Court will necessarily be required to interpret those plans, squarely bringing these claims within the scope of ERISA preemption. *See Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2013) ("If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan.").

25. The second prong of *Davila* is the "independent obligation" requirement. The claims at issue here do not arise under an independent obligation even though Plaintiff alleges it had quasi-contracts with Defendants. According to the Court in *Gables Insurance Recovery*, "[a]ny determination of benefits under the terms of an ERISA plan, even regarding a seeming independent breach of oral or implied contract based on verification of those benefits, falls under ERISA and is a legal duty dependent on, not independent of, the ERISA plan." *Id.* In another recent case, the Court held that "Plaintiff's allegation that he was **underpaid** for his services satisfies the second part of the *Davila* test because 'the legal duty implicated is dependent upon an ERISA plan.'" *Cousins v. United Healthcare, Inc.*, 2016 U.S. Dist. LEXIS 123363, *8 (S.D. Fla. 2016) (emphasis added). The duty to pay – and at what rate – is dictated by the terms of the healthcare plan, which governs how benefits are determined. *Id.*

26. Because at least one or more of Plaintiff's claims relate to coverage decisions and the associated payment obligations relating to services rendered by a non-participating provider, these claims are dependent upon, and not independent of, the implicated ERISA plans. *See Access Mediquip, LLC v. United Healthcare Ins. Co.*, 662 F.3d 376, 386 (2011), *reh'g en banc*

*granted*, 678 F.3d 940 (5th Cir.), *panel op. reinstated in part*, 698 F.3d 229 (5th Cir. 2012).

Although the *Access Mediquip, LLC* court found no preemption of misrepresentation claims, it

held claims for unjust enrichment and quantum meruit to be preempted. Medical providers can

"recover under these claims only to the extent that the patients' ERISA plan[] confer[s] on [its]

participants and beneficiaries a right to coverage for the services provided. Such claims are

preempted under the test articulated in *Transitional Hospitals Corp. v. Blue Cross & Blue Shield

of Texas, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999) and *Memorial Hospital System v. Northbrook

Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990)." *Access Mediquip*, 662 F.3d at 386. *Access

Mediquip* was a defensive preemption (not complete preemption) case, but this holding is

nonetheless informative in confirming that REVA is not suing to enforce an independent

obligation.

27. Furthermore, Counts III and IV (alleging that Defendants violated Florida Statutes

§§ 627.64194 and 641.513 by failing to pay the usual and customary rate for REVA's emergency

services), also must be considered under ERISA because at least one of the submitted claims was

for a beneficiary of an ERISA plan. *Rodriguez v. Health Options, Inc.*, 2003 U.S. Dist. LEXIS

28326, at *6-13 (S.D. Fla. 2003) (holding that claims for violations of Florida Statutes § 641.513

that seek payment for services provided to beneficiaries of ERISA plans are preempted by

ERISA). Based on a review of claims in the last four years, Florida Blue found several ERISA

plans implicated by these claims. *See* Strother Decl, at ¶¶ 21- 33.

28. Therefore, Plaintiff's claims in this case are substantially dependent upon the

interpretation of ERISA plans. To determine whether Defendants allegedly failed to provide a

"proper reimbursement," the Court will need to analyze ERISA plan documents, including those

provisions addressing covered benefits under the plan, the member's responsibility for payment,

and the rules for payment for emergency services rendered by out-of-network providers.

29. For these reasons, this action is removable to federal court because federal ERISA law completely preempts at least one or more of Plaintiff's claims. *See Davila*, 542 U.S. at 210.

**II.** **Federal Officer Removal Jurisdiction**

30. Independent of ERISA preemption, the federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes the removal of an action against "any officer (or person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. 28 U.S.C. § 1442(a)(1).

31. To invoke the federal officer removal statute, a removing party must show: (a) it is a "person" within the meaning of the statute; (b) a causal nexus exists between plaintiff's claims and the actions the removing party allegedly took pursuant to a federal officer's direction; and (c) that the removing party has a colorable federal defense to the plaintiff's claims. *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996).

32. Here, at a minimum Defendant Florida Blue may invoke the federal officer removal statute because the claims alleged by Plaintiff implicate: (a) Florida Blue's administration of the statutorily-created Service Benefit Plan, which is a health plan governed by the Federal Employee Health Benefits Act ("FEHBA") and sometimes alternatively referred to as the "Federal Employee Program" or "FEP," and (b) Defendant's administration of Medicare Supplement health plans.

A. *Federal Officer Removal Based on the Service Benefit Plan*

33. FEHBA "establishes a comprehensive program of health insurance for federal employees" and authorizes the Federal Office of Personnel Management ("OPM") "to contract with private carriers to offer federal employees an array of health care plans." *Empire*

*Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006).  To accomplish this goal, Congress vested "significant authority" in OPM.  *Muratore v. OPM*, 222 F.3d 918, 920 (11th Cir. 2000).  Congress vested OPM with broad discretion to establish insurance plans with many different insurers, which are known under FEHBA as "carriers."  *See* 5 U.S.C. §§ 8901(7), 8902-03, 8913.  Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure in each plan, and to transmit the official description of a plan's terms in a statement of benefits.  *See* 5 U.S.C. §§ 8902(a), (d), 8907. Congress delegated to OPM the sole authority to police the conduct and practices of FEHBA carriers, and the office has promulgated extensive regulations on the topic.  *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996).

      34.     Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder.  *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015) (discussing the operation of the Service Benefit Plan, which is the same FEHBA plan at issue in this case). All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092.  Private administrators of experience-rated FEHBA plans (such as the Service Benefit Plan) do not receive those premiums directly, but rather, the premiums are placed into a special letter of credit account within the federal Treasury fund. 48 C.F.R. § 1632.170(b)(1); *see also id.* § 1652.232-71(d). A private administrator of an experience-rated FEHBA plan, such as Florida Blue, Blue Cross and Blue Shield of Georgia, BlueCross BlueShield of South Carolina, or any of the other Defendants in this case, then draws directly from the letter of credit account in the Treasury fund to pay for

benefit claims and allowable administrative expenses.  48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092.  Any premiums that are not used to pay benefits and administrative expenses remain the property of the government, and are not paid to the administrator.  *See* Strother Decl., at Ex. 9 (Service Benefit Plan Master Contract § 3.3); *Helfrich*, 804 F.3d at 1092; *see also Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, Case No. 3:13-CV-4946-B, 2015 U.S. Dist. LEXIS 54357, at *38 (N.D. Tex. Jan. 28, 2015), *aff'd*, 814 F.3d 242 (5th Cir. 2016).

35.  The administrator of an experience-rated plan receives profit, if at all, from a separate, negotiated service charge.  *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990), *aff'd*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092. FEHBA contains a broad preemption provision that states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to the health insurance or plans." 5 U.S.C. § 8902(m)(1) (2011) (amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366 (1998)). "[U]nder § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'" *Empire,* 547 U.S. at 686.  With this preemption provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live."  H.R. Rep. No. 105-374, at 9 (1997).  And the Supreme Court recently emphasized that the phrase "relate to" in § 8902(m)(1) "'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (quoting *Morales v. Trans*

Case MDL No. 2406  Document 296-4  Filed 01/08/18  Page 14 of 25

*World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added in *Nevils*).  The Supreme Court in *Nevils* also found that a broad reading of § 8902(m)(1) was appropriate in light of FEHBA's "statutory context and purpose."  *Id*.  The Court explained:

> FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement.  Strong and distinctly federal interests are involved, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments.

*Id*. (internal quotation marks and citations omitted).

36.  One plan specifically described in FEHBA is the nationwide Service Benefit Plan.  *See* 5 U.S.C. § 8903(1).  That plan was originally created, pursuant to FEHBA, via a 1960 federal government contract between OPM and the Blue Cross Blue Shield Association.  *See Empire,* 547 U.S. at 684; *see also* 5 U.S.C. § 8903(1) ("The Office of Personnel Management may contract for or approve the following health benefit plans:  (1) Service Benefit Plan.").  The terms of the Service Benefit Plan are renegotiated annually and take the form of a "Master Contract" which is entirely restated approximately every five years or, in intervening years, an annual amendment to the most recent Master Contract.  *See* Strother Decl., at ¶ 38.  The Master Contract (or annual amendment thereto) requires carriers to provide benefits based on the terms of an "appended brochure" – known as the "Statement of Benefits" – that outlines at length the medical costs the Service Benefit Plan will pay.  *See Empire,* 547 U.S. at 684 (quoting 5 U.S.C. § 8902(d)); *see also* 5 U.S.C. § 8907(b); *see also* Strother Decl., at ¶ 38.  The Statement of Benefits is incorporated into the government contract between OPM and BCBSA.  *See* Strother Decl., at Ex. 9, Master Contract § 2.2(a); *Empire*, 547 U.S. at 684.  In contracting to establish the Service Benefit Plan, BCBSA acts on behalf of participating local Blue Cross and/or Blue Shield companies that administer the Service Benefit Plan in their respective localities.  *See, e.g.*, Strother Decl., at Ex. 9, 2013 Master Contract § 4.3; *id*., at Ex. 17, 2016 Statement of Benefits at

5; *Helfrich*, 804 F.3d at 1092. For example, Florida Blue administers the Service Benefit Plan in Florida. *See* Strother Decl., at ¶ 6.

37. Specifically, for the time period covered by this lawsuit, Florida Blue has received and administered 12 FEP claims from REVA for allegedly providing emergency air ambulance services to eight (8) individuals who are enrollees in the FEHBA-governed Service Benefit Plan. Two examples of these individuals include Patients B.Q. and M.T. *See* Strother Decl., at ¶¶ 50-53.

38. Since REVA has alleged that various Defendants have failed to pay REVA's usual and customary charges for claims submitted for services rendered to individuals who are enrollees in the FEHBA-governed Service Benefit Plan, Defendants may remove this case pursuant to the federal officer removal statute.

39. Courts – including the Eleventh Circuit – now routinely find that suits against entities administering the Service Benefit Plan are removable by the Plan's administrators under the Federal Officer Removal Statute. *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017) (Blue Cross Blue Shield entity administering FEHBA plan properly invoked section 1442(a)(1)); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) (same); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla, Inc.,* No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (same); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *10-17 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Insurance Co.*, No. 15cv1571-WQH-NLS, 2016 U.S. Dist. LEXIS 45589, at *8-18 (S.D. Cal. Mar. 11, 2016) (same); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014) (same); *Ala. Dental Ass'n, v. Blue Cross &*

*Blue Shield of Ala., Inc.*, No. 2:05-cv-01230-MEF, 2007 U.S. Dist. LEXIS 685, at *21-25 (M.D. Ala. Jan. 3, 2007) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, No. 13-31085, 2014 U.S. App. LEXIS 21968 (5th Cir. Nov. 18, 2014) (removal by FEHBA plan administrator under section 1442(a)(1) was objectively reasonable).

40.     Defendants satisfy the first requirement of federal officer removal because "[a] health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer." *Anesthesiology Associates of Tallahassee*, 2005 WL 6717869, at *2 (quoting *Peterson v. Blue Cross/Blue Shield of Tex.,* 508 F.2d 55, 56–58 (5th Cir.1975)) (finding § 1442(a)(1) jurisdiction over a claim by a physician against a health insurer operating under Medicare).  Because each "FEHBA-covered plan is governed by a contract negotiated and interpreted by OPM . . . [a]ny duty to pay for health services arises from the terms of the plan." *Anesthesiology Associates of Tallahassee*, 2005 WL 6717869 at *2.

41.     Defendants likewise satisfy the causal nexus requirement for federal officer removal because government contractors may remove a case pursuant to the federal officer removal statute where they are being sued for acts that "occurred because of what they were asked to do by the Government," even if those specific acts were not contemplated by the government contract.  *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-38 (2d Cir. 2008). In establishing a health benefits program for federal employees, "OPM has direct and extensive control over these benefits contracts under the FEHBA." *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1233 (8th Cir. 2012).  Therefore, a causal connection exists because Plaintiff has sued Defendants for allegedly underpaying in connection with Defendants' administration of certain benefit payments under FEHBA plans.

42.    As to the third requirement, Defendants also have several colorable federal-law defenses.  In this regard, the federal officer removal statute does not require Defendants to prove a defense is meritorious; instead, all that is required is to show that a defense is colorable.  *Jacks*, 701 F.3d at 1233.  These defenses include preemption, sovereign immunity, and displacement by federal common law.

43.    First, Plaintiff's state-law claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and payments shall supersede state law. *See* 5 U.S.C. § 8902(m)(1); *see also Empire,* 547 U.S. at 686; *see also Botsford v. Blue Cross & Blue Shield of Mont., Inc.,* 314 F.3d 390 (9th Cir. 2002).  As noted above, the Supreme Court in *Nevils* recently held that the preemption provision should be construed broadly.  Notably, as a result of the broadening of FEHBA's preemption provision in 1998, even if these contractual terms are consistent with the state laws on which Plaintiff relies, FEHBA preempts those state laws nonetheless.  *See Empire*, 547 U.S. at 686.

44.    Second, sovereign immunity is also a colorable federal defense because any funds that would be used to pay REVA for its services would come directly from the federal Treasury. Many courts have dismissed state-law claims against a Service Benefit Plan administrator on sovereign immunity grounds. *See Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *17-20 (C.D. Cal. Sept. 30, 2016) (dismissing state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070-71 (S.D. Cal. 2016) ("Any recovery against Blue Shield in this case would come from funds in the federal treasury. The United States cannot be sued without its consent

and the United States has not waived sovereign immunity in this case for a direct action by a provider."); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.,* No. 11-806, 2014 WL 4930443, at *9-10 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP* v. *Health Care Serv. Corp.,* 58 F. Supp. 3d 745, 765 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.,* 995 F. Supp. 2d 587 (N.D. Tex. 2014) (same) *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014); *Jacks*, 701 F.3d at 1235.

45.     Third, Plaintiff's state-law claims are also displaced by federal common law, which governs the federal contract at the heart of this case. *See Helfrich*, 804 F.3d at 1095-1104; *Jacks*, 701 F.3d at 1235.  The court in *Jacks* found each of these three defenses to be colorable for purposes of the federal officer removal statute. *Jacks*, 701 F.3d at 1235.

B.     *Federal Officer Removal Based on Medicare Plans*

46.     Plaintiff's claims are also removable under the federal officer removal statute because they implicate Florida Blue's administration of Medicare Supplemental and Medicare Advantage plans.

47.     Under the Medicare Act – Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* – Medicare plans are administered by the Secretary of Health and Human Services, and now the Centers for Medicare & Medicaid Services ("CMS"). CMS then delegates the administration of Medicare benefits through contracts with private insurance companies for Medicare beneficiaries who enroll in Medicare plans.

48.     Here, Defendant Florida Blue has contracts with CMS to administer Medicare Advantage plans and Medicare Supplement plans. Defendants have received and administered

claims from Plaintiff for providing services to individuals who are beneficiaries of such Medicare plans. For example, in its review of claims from REVA, Florida Blue identified at least one claim on a Medicare Supplement plan and one claim on a Medicare Advantage plan. *See* Strother Decl, at ¶¶ 54-58.

49. For these Medicare plans, Defendants qualify as persons acting under the direction of a federal agency or officer because they are insurance companies that administer governmental health plans. Defendants are specifically authorized by their contracts to assist CMS in carrying out the government's obligation to provide Medicare benefits to beneficiaries. *See, e.g.*, *Assocs. Rehab Recovery, Inc. v. Humana Med. Plan., Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (holding that defendant satisfied the requirement of acting under the direction of a federal agency or officer because "Defendant contracted with CMS to administer Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare Advantage plans offered by Defendant . . . . Accordingly, Defendant was acting on behalf of CMS when it denied the Medicare benefits at issue here.").

50. The causal nexus requirement is satisfied for the Medicare plans because Plaintiff seeks additional reimbursement for claims that were paid according to federal health plans. Without Defendants' contracts with CMS, Defendants would not have administered those claims. *See Einhorn v. Careplus Health Plans, Inc.,* 43 F. Supp. 3d 1268, 1270 (S.D. Fla. 2014) (finding causal nexus to exist because "[t]he extent to which federal law imposes certain requirements upon [defendant] as a Medicare Advantage plan and whether it may provide any corresponding protection from liability, are issues of federal law") (internal quotations omitted).

51. Defendants also possess colorable federal defenses of express preemption and conflict preemption for the Medicare plans. 42 U.S.C. § 1395 expressly codifies that Medicare

regulations shall supersede any state-law regulations. This is especially pertinent to Counts III and IV, in which Plaintiff alleges it is entitled to be paid the rates described in Florida Statutes §§ 641.513 and 627.64194(4). Any such claims relating to Medicare plans are expressly preempted. *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402; *see also Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010).

52.     The conflict preemption defense also preempts any of Plaintiff's claims under the Medicare plans. Conflict preemption exists where "it is impossible for a private party to comply with both state and federal law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). Federal law governs the amount that out-of-network providers are paid when providing services to Medicare beneficiaries. The Florida Statutes set forth a different payment structure, so to the extent that the federal payment structure and Florida payment structure conflict, Plaintiff's claims for services provided to Medicare beneficiaries are preempted.

53.     For these reasons, Defendants are entitled to remove this action pursuant to 28 U.S.C. § 1442(a)(1).

### III.     The Entire Case Belongs in Federal Court

54.     Because federal question jurisdiction exists over several of the claims asserted by Plaintiff, the other claims should likewise remain in this Court under 28 U.S.C. § 1367(a) as Plaintiff's claims "are so related . . . [that they] form part of the same case or controversy under Article III of the United States Constitution." *Ala. Dental Ass'n*, 2007 WL 25488 at *8. In deciding whether a state-law claim is part of the same case or controversy as a federal issue, such that the court should exercise supplemental jurisdiction over the former, courts look to whether the claims arise from the same facts or involve similar occurrences, witnesses or evidence. *Id.* ("Both sets of AAOT's claims are based on the plan participants' rights to reimbursement from

BCBS for medical service expenses performed.").

55.     Here, Plaintiff's claims all relate to the same common nucleus of fact because they all relate to these Defendants' reimbursement for bills submitted after REVA provided emergency air ambulance services.  Thus, the Court should exercise jurisdiction over the entire controversy.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

56.     Additionally, the procedural requirements for removal in 28 U.S.C. § 1446 are all satisfied here.

57.     Section (a) of that statute requires the removing party to file a notice of removal, signed in accordance with Federal Rule of Civil Procedure 11, "in the district court of the United States for the district and division within which such action is pending," which Defendants have done with this filing.

58.     Section (a) also requires a moving party to provide to the District Court a copy of all process, pleadings, and orders served on Defendants in the state action. Defendants have attached copies of the summons and complaints that were served on them, as well as a copy of the docket sheet and all other pleadings and filings from the state court action in Florida.  *See* Ex. F (copy of docket sheet and all materials filed in state-court action).

59.     This Notice of Removal is also timely under 28 U.S.C. § 1446(b). "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). "[I]f the complaint is filed in court prior to any service, the removal period runs from the service of the summons." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

Blue Cross and Blue Shield of Georgia, Inc. (the first-served Defendant) was served on October 12, 2017. Thus, this Notice of Removal has been filed within 30 days of service of the initial pleading.

60.     This Notice of Removal also complies with the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A), as all named Defendants expressly join (and therefore also consent) to the removal of this action. *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008); *Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1384 (N.D. Ga. 2014). In any event, because, among other grounds, this case is removed under 28 U.S.C. § 1442, this case is not being "removed solely under section 1441(a)," and thus the consent of all Defendants is not required. 28 U.S.C. § 1446(b)(2)(A); *see also Alban v. Exxon Mobil Corp.*, No. MJG-06-3098, 2006 U.S. Dist. LEXIS 98103, at *6 (D. Md. Dec. 27, 2006); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1148 (D. Colo. 2002).

61.     In accordance with 28 U.S.C. § 1446(d), copies of this notice are being served upon Plaintiff's counsel and filed with the Circuit Court for Miami-Dade County, Florida where this action was initially filed.

62.     By filing this notice, Defendants do not waive any defense, argument, or principle of law or equity that may be available to them.

Respectfully submitted,

By: /s/ *Allen P. Pegg*_____
Allen P. Pegg
Florida Bar No. 597821
Daniel Balmori
Florida Bar No. 0112830
Paige Comparato
Florida Bar No. 1002942
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
allen.pegg@hoganlovells.com
daniel.balmori@hoganlovells.com
paige.comparato@hoganlovells.com

*Counsel for Anthem Insurance Companies, Inc.;*
*Blue Cross and Blue Shield of Georgia, Inc.;*
*Healthkeepers, Inc.; Blue Cross and Blue Shield of*
*Florida, Inc. d/b/a Florida Blue; Health Options,*
*Inc.; Blue Cross and Blue Shield of South Carolina;*
*and Blue Cross and Blue Shield of North Carolina*

and

By: /s/ *Lisa M. Baird*_____
Lisa M. Baird
Florida Bar No. 0961191
REED SMITH LLP
1001 Brickell Bay Drive
Suite 900
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299
lbaird@reedsmith.com

Martin J. Bishop
Florida Bar No. 14996
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Telephone: 312-207-1000
Facsimile: 312-207-6400
mbishop@reedsmith.com

*Counsel for Blue Cross and Blue Shield of Texas,
an unincorporated division of Health Care
Corporation*

and

By: /s/ *Paul J. Schwiep* _____
Paul J. Schwiep
Florida Bar No. 823244
COFFEY BURLINGTON
2601 South Bayshore Drive, Penthouse
Miami, FL 33133
Telephone: 305-858-2900
Facsimile:  305-858-5261
pschwiep@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Blue Cross and Blue Shield of Kansas
City*

and

By: /s/ *Gregory R. Hawran* _____
Gregory R. Hawran
Florida Bar No. 55989
OGLETREE DEAKINS NASH SMOAK &
STEWART P.C.
701 Brickell Ave., Suite 1600
Miami, FL 33131
Telephone:  305-455-3803
Facsimile:  305-374-0456
gregory.hawran@ogletree.com

Tim A. Palmer
OGLETREE DEAKINS NASH SMOAK &
STEWART P.C.
SunTrust Plaza – Suite 1200
401 Commerce Street
Nashville, TN 37219-2446
Telephone: 615-687-2230
Facsimile:  615-254-1908
tim.palmer@ogletree.com

*Counsel for Blue Cross and Blue Shield of Alabama*

23

and

By: /s/ Alan J. Perlman _____
Alan J. Perlman
Florida Bar No. 826006
DICKINSON WRIGHT PLLC
350 East Las Olas Blvd.
Suite 1750
Ft. Lauderdale, FL 33301
Telephone: 954-991-5420
Facsimile: 844-670-6009
aperlman@dickinson-wright.com

Scott R. Knapp
DICKINSON WRIGHT PLLC
215 S. Washington Square
Suite 200
Lansing, MI 48933-1816
Telephone: 517-371-1730
Facsimile: 844-670-6009
sknapp@dickinson-wright.com

*Counsel for Blue Cross Blue Shield of Michigan Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Allen P. Pegg _____
Allen P. Pegg
Florida Bar No. 597821