# EXHIBIT 1
# Brief in Support of Motion to Vacate CTO-34

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: BLUE CROSS BLUE SHIELD     MDL No. 2406
ANTITRUST LITIGATION

This Filing Relates To The Following Case Only:

*REVA, Inc. v. Healthkeepers, Inc., et. al.,* U.S. District Court, Southern District of Florida Case No. 17-24158-CIV-Moreno

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-34)

This a state court lawsuit that was inappropriately removed to federal court. Before the district court could rule on Plaintiff, REVA, Inc.'s ("REVA") motion for remand (Ex. 4), certain Defendants[1] filed a "Notice of Potential Tag-along Action" [D.E. 396] ("Notice of Tag-along"), seeking to transfer this action to the Northern District of Alabama as part of the ongoing multidistrict litigation.

The Panel should vacate CTO-34 based on the absence of any factors justifying transfer. First, there are no "common questions of fact" between REVA's action and the MDL. Second, transfer will be inconvenient for the parties and witnesses and will not promote just and efficient conduct because i) the majority of the parties and witnesses are located in Florida and in states other than Alabama, thereby increasing costs and causing delay; ii) there is no risk of duplicative

---

[1] Blue Cross and Blue Shield of Florida, Inc. d/b/a/ Florida Blue ("Florida Blue"), Health Options, Inc. d/b/a Florida Blue HMO ("Health Options"), Healthkeepers, Inc. ("Healthkeepers"), Blue Cross and Blue Shield of North Carolina ("BCBSNC"), Anthem Insurance Companies, Inc. ("Anthem"), Blue Cross and Blue Shield of Georgia, Inc. ("BCBSGA"), and Blue Cross and Blue Shield of South Carolina ("BCBSSC"), collectively referred to hereafter as the "Noticing Defendants." The Noticing Defendants, together with the remaining Defendants – Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation ("BCBSTX"), Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSMI"), and Blue Cross and Blue Shield of Alabama ("BCBSAL") – shall hereafter be referred to as "Defendants."

discovery or conflicting rulings; and iii) the federal courts lack subject matter jurisdiction over this action and this matter should not properly be in the MDL.

In addition, because a lack of subject matter jurisdiction would render CTO-34 moot, the Panel should defer ruling on CTO-34 until the presiding district court rules upon REVA's pending motion for remand,[2] thereby conserving judicial resources and preserving well-established principles of comity. *See Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001); *In re Res. Exploration, Sec. Litig.*, 483 F. Supp. 817, 822 (J.P.M.L. 1980); *In Re Multidistrict Private Civil Treble Damage Litigation Involving Plumbing Fixtures,* 298 F. Supp. 484, 496 (J.P.M.L. 1968)).

## **BACKGROUND**

REVA is an air ambulance company that provides emergency transport of patients suffering from critical and life-threatening medical conditions. For the claims at issue in this lawsuit, the Defendants' insureds required emergency transport because the facility where the patients initially presented (often outside the United States) could not provide appropriate treatment. REVA is an out-of-network provider, to whom the Defendants made partial payments for covered air ambulance services. The relief REVA seeks is simple: to be paid the reasonable value of the emergency air ambulance services that it provided to Defendants' insureds.

On September 19, 2017, REVA filed a complaint in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, containing four counts: unjust enrichment (against all Defendants); quantum meruit (against all Defendants); violation of Florida Statutes

---

[2] The Manual for Complex Litigation provides that "matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer. The Panel has sometimes delayed ruling on transfer to permit the court in which the case is pending to decide critical, fully briefed and argued motions."

§627.64194 (against Florida Blue, only); and violation of Florida Statutes §641.513 (against Health Options, only). *See* Complaint (Ex. 5). All of these counts seek damages for the Defendants' underpayment of specific claims. REVA's complaint does not allege any antitrust causes of action, or seek damages arising from any antitrust or anti-competitive conduct.

Although REVA's case is a simple reimbursement action alleging Florida causes of action, on November 17, 2017, Defendants inappropriately removed this lawsuit to the U.S. District Court, Southern District of Florida. D.E. 396-4. In support of removal, Defendants erroneously alleged that REVA's claims were preempted by the federal officer removal statute – 28 U.S.C. § 1442(a)(1) – and ERISA.[3]

After REVA filed a reply in support of its motion to conduct jurisdictional discovery regarding Defendants' motions to dismiss, the Noticing Defendants sought to transfer the case. D.E. 396. The Clerk of the Panel subsequently entered CTO-34 [D.E. 397] to this MDL.

## **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1407(a), transfers are authorized only where: (A) "common questions of fact" exist between the actions; (B) transfer "will be for the convenience of parties and witnesses"; and (C) transfer "will promote the just and efficient conduct of such actions." The

---

[3] As more fully briefed in Plaintiff's Motion for Remand (Ex. 4) and Plaintiff's Reply in Support of Plaintiff's Motion for Remand and Incorporated Memorandum of Law ("Reply") (Ex. 6), none of the claims in the underlying action involve the Federal Employees Health Benefits or Medicare Advantage plans. Thus, the federal officer removal statute is inapplicable. ERISA is similarly inapplicable because: (i) REVA's claims relate exclusively to "rate of payment" (and not the "right to payment"); (ii) REVA lacks standing under ERISA due to anti-assignment provisions; and (iii) REVA's causes of action provide it with a basis to recover proper payment independent of ERISA. *See e.g. Recovery Vill. at Umatilla, LLC, v. Blue Cross & Blue Shield of Fla., Inc.*, No. 15-61414-CI, 2015 U.S. Dist. LEXIS 186986, at *7 (S.D. Fla. Aug. 28, 2015); *Griffin v. Health Sys. Mgmt*, 635 Fed. Appx. 768, 771-772 (11th Cir. 2015); *Hialeah Anesthesia Specialists v. Coventry Health Care of Fla.*, 258 F. Supp. 3d 1323, 1329 (S.D. Fla. 2017).

Panel has denied transfer when one or more of the aforementioned factors is not present. *See e.g. In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) ("Although we recognize the existence of some common questions of fact among these actions, we find that transfer under Section 1407 would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. Accordingly, the order to show cause is vacated."). Because none of the three factors are present here, the Panel should vacate CTO-34.

**ARGUMENT**

**I.     THE REIMBURSEMENT ACTION AND THE MDL DO NOT SHARE "COMMON QUESTIONS OF FACT"**

The Panel should vacate CTO-34 because the reimbursement action does not share any "common questions of fact" with the MDL. First, reimbursement actions, like REVA's, serve a different purpose (and request different relief) than antitrust actions. Second, REVA's Complaint and the operative[4] provider complaint in the MDL (the "Antitrust Complaint")[5] have critical differences, including but not limited to, the nature of their causes of action and the relief sought by the plaintiffs. Third, REVA's allegations regarding the BlueCard program are for background and jurisdictional purposes, only, and do not give rise to a "common question of fact." Finally, REVA does not meet the class definition set forth in the MDL.

---

[4] The Noticing Defendants attached a copy of the Corrected Consolidated Second Amended Provider Complaint [D.E. 396-5] to the Notice of Potential Tag-Along Action. But it appears that the Noticing Defendants referred to the Consolidated Fourth Amended Provider Complaint [D.E.1083] throughout. REVA relies herein on the allegations of this latter operative complaint.

[5] The MDL involves two groups of plaintiffs – the subscriber class and the provider class. Defendants have only alleged similarity between REVA and the provider class (the "Antitrust Plaintiffs"). *See* Notice of Tag-along, D.E. 396 at 2.

4

### A.  REVA Seeks Different Relief Than the Antitrust Plaintiffs

REVA's claims for reasonable payment are based on implied contract theory and violations of Florida Statutes §§ 627.64194 and 641.513 ("Florida Emergency Services Statutes"), which require that Florida medical providers are paid for rendering emergency services. *See Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F. 3d 802, 806 (11th Cir. 1999); *see also Hialeah Anesthesia Specialists,* 258 F. Supp. 3d at 1328. In order to prove its claims for unjust enrichment and quantum meruit[6], REVA need only show that: (1) REVA gave a benefit to Defendants; (2) Defendants knew of the benefit (and that REVA expected to be paid the reasonable value of its services); (3) Defendants accepted or retained the benefit; and (4) the circumstances are such that the Defendants should, in all fairness, be required to pay REVA for the reasonable value of its services. *See* Florida Std. Jury Inst. 416.7 ("Contract Implied in Law").

Antitrust causes of action serve another purpose and require completely different proof. Antitrust law is intended to curb "conduct which unfairly tends to destroy competition itself. It does so not out of solicitude for private concerns but out of concern for the public interest." *Spectrum Sports v. McQuillan,* 506 U.S. 447, 458 (1993); *see also Austin v. Blue Cross Blue Shield of Ala.*, 903 F.2d 1385, 1389 (11th Cir. 1990) ("[I]n order to receive damages under the antitrust laws, a plaintiff must prove more than the fact that he was injured through conduct of the defendant."). Antitrust claims focus on harm to markets, and require an inquiry into factors[7] that

---

[6] "To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms – quasi contract, unjust enrichment, restitution, constructive contract, and quantum meruit." *Commerce Partnership 8098 Limited Partnership v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).

[7] Some factors considered by courts in cases involving antitrust allegations include the following: "What is the relevant product market for purposes of assessing market power? What is the relevant geographic market for purposes of assessing market power? What was [the defendant's] share of the relevant market? Did the…defendants enter into a horizontal agreement[s]…? Did [the

5

are unrelated to the harm REVA sustained as a result of the Defendants' failure to pay them for the reasonable value of the covered emergency services REVA provided to their insureds. These distinct factual inquiries demonstrate that "common questions of fact" do not exist between REVA's action and the MDL.

> **B.     REVA'S Complaint Raises Different Questions of Fact Than Those Raised by the Antitrust Complaint**

The Antitrust Complaint includes ten claims, all of which are brought under the Clayton Act: a claim for injunctive relief under section 16 of the Clayton Act (Count I); a claim for treble damages and interest under Section 4 of the Clayton Act for the *per se* market allocation conspiracy (Count II); a claim for treble damages and interest for the *per se* price fixing and boycott conspiracy under Section 4 of the Clayton Act (Count III); a quick look claim for treble damages and interest under Section 4 of the Clayton Act for market allocation conspiracy (Count IV); a quick look claim for treble damages and interest under Section 4 of the Clayton Act for price fixing and boycott conspiracy (Count V); a rule of reason claim for treble damages and interest under Section 4 of the Clayton Act for market allocation conspiracy (Count VI); a rule of reason claim for treble damages and interest under Section 4 of the Clayton Act for price fixing and boycott conspiracy (Count VII); a monopsonization claim for treble damages and interest under Section 4 of the Clayton Act (Count VIII); an attempted monopsonization claim for treble damages and interest under Section 4 of the Clayton Act (Count IX); and, a conspiracy to monopsonize claim for treble

---

defendant] engage in exclusionary conduct? Did the alleged vertical agreements have an anticompetitive impact on the relevant market?" *In re Pool Prods. Mkt. Antitrust Litg.,* MDL No. 2328, 2014 U.S. Dist. LEXIS 176399, at *22 (E.D. La. Dec. 22, 2014). None of these inquiries are pertinent to REVA's reimbursement action.

damages and interest under Section 4 of the Clayton Act (Count X). *See* Antitrust Compl., D.E. 1083 at 225-236.

REVA's complaint is not a class action lawsuit and does not include any causes of action brought under the Clayton Act.[8] REVA does not allege that the Defendants' underpayments are the result of a conspiracy, antitrust violations, or anti-competitive conduct. *See* Antitrust Compl., D.E. 1083 at 225-236. Unlike the Antitrust Plaintiffs, REVA does not seek to dismantle or enjoin the Antitrust Defendants' agreements nor their national programs.[9] *Id.* at 236-38. REVA only wants to be paid the reasonable value of the emergency services it rendered to Defendants' insureds. *Compare id.* at 236 (requesting in part that the court "[p]ermanently enjoin Defendants from entering into, or from honoring and enforcing, any agreements") *with* REVA's Compl., D.E. 396-3, Exh. 1B, at ¶ 35 ("For each claim at issue…Defendants significantly underpaid REVA…"). REVA's complaint therefore does not share any relevant or dispositive factual issues with the Antitrust Complaint.

### C. Read in Context, REVA's References to the BlueCard Program do not Give Rise to Common Questions of Fact with the MDL Provider Class

Five Defendants (Healthkeepers, Inc., Blue Cross and Blue Shield of North Carolina, Blue Cross and Blue Shield of Georgia, and Blue Cross and Blue Shield of Alabama and Anthem Insurance Companies, Inc. – collectively, the "PJ Defendants") moved to dismiss REVA's

---

[8] In its transfer order centralizing various actions comprising the MDL, the Panel noted that "[a]ll actions are purported statewide and/or nationwide class actions." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

[9] The Antitrust Complaint contains numerous allegations regarding national programs, such as the National Accounts Program and the Inter-Plan Medicare Advantage Program. *See* D.E. 1083 at ¶¶ 8, 20, 25. REVA's complaint makes no mention of these national programs aside from the BlueCard Program, which is discussed for background and jurisdiction purposes, only.

complaint for lack of personal jurisdiction. In response, REVA filed a motion to stay its response to the motion to dismiss until after the Court ruled on REVA's motion for remand, and/or to conduct limited jurisdictional discovery regarding the affidavits submitted by the PJ Defendants. The Noticing Defendants did not request a transfer of this case to the MDL until after REVA filed its Reply in support of that motion, and transfer appears to be sought based on the arguments therein.

In its Reply [D.E. 396-6], REVA states that it seeks "limited discovery regarding the relationship between the PJ Defendants and Florida Blue and Health Options under the BlueCard program, so that REVA may rebut the PJ Defendants' assertions [regarding lack of personal jurisdiction]." D.E. 396-6 at p. 5. Plainly, the only reason why REVA seeks any of this discovery is because the PJ Defendants raised lack of personal jurisdiction as a defense. The Noticing Defendants cherry-pick words from REVA's complaint (and Reply) in an effort to persuade the Panel that this lawsuit shares common facts with the MDL. It does not. When read in context, it is apparent that REVA's allegations regarding the BlueCard program are solely background information and included for the purpose of obtaining personal jurisdiction over the Defendants.

REVA does not challenge the legality of the BlueCard program, nor does it allege that Blue Plans' failure to compete against one another is the reason for the underpayments. *See* Antitrust Compl., D.E. 1083 at ¶ 8 ("These fixed prices are then enforced through a horizontal agreement between the Blues … As a result, a healthcare provider…receives significantly lower reimbursement..."). The Noticing Defendants concede that "Reva's allegations regarding the Noticing Defendants' 'collaboration' and 'market advantage'…[are] short and underdeveloped." *See* D.E. 396 at 3. This is because REVA's request for relief is not based on those allegations. To date REVA has not been granted leave of court to undertake this discovery, and may not be so

permitted. REVA does not, and will not, seek discovery regarding the agency relationship created by the BlueCard program, for any other purpose. *See* Reply, D.E. 396-6 at 7-8.

Even if REVA's extremely limited interest in the BlueCard program gives rise to a "common question of fact"– and it does not – such "common questions of fact" would not be sufficiently complex nor predominate over individual questions of fact present in each action.[10] REVA brought this lawsuit to recover the reasonable value of its services on specific claims, and the allegations regarding the BlueCard program are irrelevant to that effort. The Panel has previously vacated conditional transfer orders in similar circumstances, and based on the existence of few non-dispositive common facts between litigants:

> Although Computer Graphics has cast its complaint in terms of antitrust violations in the electronic data processing industry, the capacity of the MT/ST and MT/SC as computer input devices is irrelevant to Computer Graphics' action and is relied on only as an explanation for IBM's alleged acts. Computer Graphics has used its machines only for the typesetting and typewriting functions for which they were intended and any antitrust questions raised by it concern IBM's monopolization of this aspect of the office machine market. No question is raised concerning IBM's alleged tie-in of computer software with computer hardware sales, the apparent crux of the Minnesota actions. We conclude that, in spite of a few common fact questions resulting from the common defendant, the just and efficient conduct of the actions will not be promoted by transfer of Computer Graphics action.

*In re IBM*, 316 F. Supp. 976, 977 (J.P.M.L. 1970); s*ee also In re Air Crash Disaster at Pago Pago,* 394 F. Supp. 799, 800 (J.P.M.L. 1975) (granting motion to vacate CTO despite the fact that "the action appeared to involve factual issues common to the previously transferred actions"). The Panel should therefore vacate CTO-34.

---

[10] *See In re Air Crash Near Canandaigua, N. Y., on Sept. 16, 2002*, 427 F. Supp. 2d 1365, 1366 (J.P.M.L. 2006) (Transfer is inappropriate when the "common questions of fact" are insufficiently complex); *In re Asbestos Sch. Prods. Liab. Litig.,* 606 F. Supp. 713, 714 (J.P.M.L. 1985) (Transfer is inappropriate when the "common questions of fact" fail to "predominate over individual questions of fact present in each action.").

9

### D. *REVA Does Not Meet the Definition of a Class Member*

The Panel has stated that the MDL "concerns the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.[11] The Panel further found that "[a]ll the Blue plans are alleged to be co-conspirators" and that "the actions involve substantial common questions of fact relating to the state BCBS entities' relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas, among other restrictions." *Id.* at 1376. According to the Antitrust Complaint, the questions of law and fact common to all class members include the following:

    a. Whether Defendants violated Section 1 of the Sherman Act;

    b. Whether Defendants participated in a contract, combination or conspiracy in restraint of trade as alleged herein;

    c. Whether Defendants engaged in a scheme to allocate the United States healthcare market according to an agreed upon geographic division and agreed not to compete within another plan's geographic area;

    d. Whether Defendants' agreements, including their Price Fixing Conspiracy, constitute per se illegal restraint of trade in violation of Section 1 of the Sherman Act;

    e. Whether any pro-competitive justifications that Defendants may proffer for their conduct alleged herein do exist, and if such justifications do exist, whether those justifications outweigh the harm to competition caused by that conduct;

    f. Whether Defendants violated Section 2 of the Sherman Act;

    g. Whether the Blues collectively or any particular Blue has market power in a particular market;

---

[11] "Plaintiffs contend that the 38 Blue Plans are independent health insurance companies that, but for any agreement to the contrary, could and would compete with one another." *Id.* at 1375.

    h. Whether the Blues conduct is anticompetitive as prohibited by the Sherman Act;

    i. Whether Class Members have been impacted or may be impacted by the harms to competition that are alleged herein;

    j. Whether Defendants' conduct should be enjoined;

    k. The proper measure of damages sustained by the Provider Class as a result of the conduct alleged herein;

*See* D.E. 1083 at ¶ 625. Each of the above questions of law and fact is inherently tied to antitrust law. As previously stated, REVA's complaint is devoid of any cause of action requiring an antitrust analysis. REVA is therefore not dependent on any of the above listed questions' outcomes and does not qualify as a class member in the MDL.

## II. TRANSFER WILL BE INCONVENIENT FOR THE PARTIES AND WILL NOT PROMOTE JUST AND EFFICIENT CONDUCT OF THE ACTIONS

The Panel has explained that centralization of the actions comprising the MDL was justified because it would "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. Such justifications are not present in REVA's case. Transfer of REVA's action would inconvenience the parties, their counsel, and relevant witnesses. REVA and Defendants Health Options and Florida Blue are located in Florida. Their representatives/witnesses are also located in Florida, as are the majority of counsel involved in this lawsuit.

The costs of this litigation would also increase if REVA is required to coordinate with numerous other parties, or wait for their turn to be heard in this very busy MDL docket.[12]

---

[12] The October 30, 2015, Scheduling Order for MDL 2406 noted that the presiding court was proceeding with discovery and trial of only two cases: *American Electric Motor Servs., Inc. v. Blue Cross and Blue Shield of Alabama et. al.*, Case No. 2:12-cv-02169-RDP and *Conway v. Blue Cross*

11

Defendants' failure to pay REVA the reasonable value of its services has already negatively impacted REVA's business. Transfer to this MDL will further delay resolution of this matter, causing REVA to incur additional damages.

Transfer would also waste judicial resources. REVA brought claims under Florida law, and it would be inefficient for an Alabama court to interpret and apply the law of a foreign jurisdiction.

At most, REVA seeks limited discovery regarding the BlueCard program for use in responding to Defendants' motions to dismiss for lack of personal jurisdiction. To the extent that minimal discovery overlap exists, there are various alternatives to transfer that obviate the risk of duplicative discovery.[13] Such minimal discovery overlap does not give rise to a potential for conflicting rulings, thus further weighing against transfer. *See Utah v American Pipe & Constr. Co.*, 316 F. Supp. 837, 839 (C.D. Cal. 1970) ("One of purposes of § 1407…[is] to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions.").

---

*and Blue Shield of Alabama et. al.*, Case No. 2:12-cv-02532-RDP. *See* D.E. 469 in Case No. 2:13-cv-2000-RDP (N.D. Ala.). The court stayed all of the other MDL 2406 cases until on or after January 2018. D.E. 469, Section III, ¶ 6. An updated scheduling order issued on January 12, 2018, suspended four critical deadlines because the parties asked for the opportunity to explore settlement. *See* D.E. 1859 in in Case No. 2:13-cv-2000-RDP (N.D. Ala.).

[13] *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,* 446 F. Supp. 242, 244 (J.P.M.L. 1978) ("We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery. For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts.").

Finally, this matter is not properly in federal court, and does not allege facts or seek relief that are in common with this MDL. *See* REVA's Motion for Remand and Reply thereto (Ex. 4 and 6). REVA's concerns regarding transfer to the MDL have been echoed by other courts:

> Removing a case to federal court has long been known to impose a burden upon plaintiffs; at a minimum, it requires the plaintiff to present its arguments for remand in a foreign forum, often at a considerable distance from the local county courthouse and before a judge who might be less sympathetic to the plaintiff's cause than a judge who is local (and often, elected)….Concerns about being haled into distant courts are particularly implicated by the MDL system. Not only is the judge unknown, but the proceeding is all but certain to be even farther from home, and plaintiff's chosen counsel may have little power to shape the course of the litigation. Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation*, 175 F.R.D. 589, 590 (1998) ("the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you to '100th chair' status in an already over-lawyered mass litigation"); Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag-Along Orders Prior to a Determination of Remand: Procedural and Substantive Problem or Effective Judicial Public Policy?*, 23 Memphis St. U. L. Rev. 841, 843 (1993) (observing that a plaintiff may be "swiftly transferred from his state court to his home federal district and then whisked to an unknown, unpredictable United States district judge").

*Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001).

None of the factors supporting transfer of this lawsuit to the MDL are present, and the Panel should therefore vacate CTO-34.

## **CONCLUSION**

WHEREFORE, REVA, Inc. respectfully requests that the Panel vacate CTO-34 or defer ruling on this motion until the district court has had the opportunity to rule on REVA, Inc.'s motion to remand.

Dated this 30th day of January, 2018.

Respectfully submitted,

WOLFE | PINCAVAGE
2980 McFarlane Road
Miami, Florida 33133
Telephone: 786.509.8874

By: /s/ Danya J. Pincavage
Danya J. Pincavage
danya@wolfepincavage.com
Fla. Bar No.: 14616
*Counsel for Plaintiff, REVA, Inc.*