# EXHIBIT 5
## Complaint

|  |  |
|---|---|
|  | IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA |
| REVA, INC., | CASE NO.: |
| Plaintiff, | |
| v. | |
| HEALTHKEEPERS, INC., BLUE CROSS & BLUE SHIELD OF FLORIDA, INC. d/b/a FLORIDA BLUE, BLUECROSS BLUESHIELD OF NORTH CAROLINA, BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, ANTHEM, INSURANCE COMPANIES, INC., HEALTH OPTIONS, INC., d/b/a FLORIDA BLUE HMO, BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA; BLUE CROSS AND BLUE SHIELD OF ALABAMA, | |
| Defendants. _____/ | |

## COMPLAINT

Plaintiff, REVA, Inc., ("REVA"), sues defendants, Healthkeepers, Inc. ("Healthkeepers"), Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue"), Blue Cross and Blue Shield of North Carolina ("BCBSNC"), Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation ("BCBSTX"), Blue Cross and Blue Shield of Kansas City ("BCBSKC"), Anthem Insurance Companies, Inc. ("Anthem"), Health Options, Inc. d/b/a Florida Blue HMO ("Health Options"), Blue Cross Blue Shield of Michigan Mutual Insurance Company

("BCBSMI"), Blue Cross and Blue Shield of Georgia, Inc. ("BCBSGA"), Blue Cross and Blue Shield of South Carolina ("BCBSSC"), and Blue Cross and Blue Shield of Alabama ("BCBSAL") (collectively, "Blue Plans" or "Defendants") and alleges as follows:[1]

## Case Overview

1. This is an action to recover proper reimbursement for emergency air ambulance services that REVA provided to Defendants' insureds. In each case, the patient required emergency transport because the facility in which the patient was initially treated lacked the capability to adequately treat him or her.

2. For each claim at issue, the patient was insured by a Blue Plan at the time the air ambulance services were rendered by REVA. Defendants acknowledged that its member's plan covered air ambulance services, evidenced by its partial payment to REVA, but grossly underpaid REVA for these services in violation of Florida law.

## Parties & Jurisdiction

3. REVA is a Delaware corporation with its principal place of business in Broward County, Florida. REVA is the largest fixed-wing air ambulance company in the world. It provides emergent transport of patients suffering from critical and life-threatening medical conditions.

4. Each Blue Plan is an independent licensee of the Blue Cross Blue Shield Association (the "Association").

5. The Blue Plans utilize the Blue Card Program, which is purportedly designed to provide Blue Plans' insureds the benefit of access to nationwide health care services by utilizing the other Blue Plans' networks of providers in its respective service areas.

---

[1] REVA is not included within the definition of a "Class Member" with regards to the April 27, 2007 Rick Love, M.D., *et. al.* v. Blue Cross and Blue Shield Association, *et. al.* Settlement Agreement because REVA is not a "Physician", "Physician Group", or "Physician Organization."

2

6. Defendant, Florida Blue, is a Florida-licensed health insurance corporation with its principal place of business in Duval County, Florida.

7. Defendant, Health Options, is a Florida-licensed Health Maintenance Organization ("HMO") with its principal place of business in Duval County, Florida.

8. Defendant, Healthkeepers, is a foreign HMO incorporated in Virginia with its principal place of business in Marion County, Indiana.

9. Defendant, BCBSNC, is a foreign health insurance corporation incorporated in North Carolina with its principal place of business in Durham County, North Carolina.

10. Defendant, BCBSTX, is a foreign health insurance corporation incorporated in Illinois with its principal place of business in Cook County, Illinois.

11. Defendant, BCBSKC, is a foreign health insurance corporation and third-party administrator incorporated in Missouri with its principal place of business in Jackson County, Missouri.

12. Defendant, Anthem, is a foreign health insurance corporation and third-party administrator incorporated in Indiana with its principal place of business in Marion County, Indiana.

13. Defendant, BCBSMI, is a foreign health insurance corporation incorporated in Michigan with its principal place of business in Wayne County, Michigan.

14. Defendant, BCBSGA, is a foreign health insurance corporation incorporated in Georgia with its principal place of business in Fulton County, Georgia.

15. Defendant, BCBSSC, is a foreign health insurance corporation incorporated in South Carolina with its principal place of business in Richland County, South Carolina.

16. Defendant, BCBSAL, is a foreign health insurance corporation incorporated in

Alabama with its principal place of business in Jefferson County, Alabama.

17. Florida Blue, Health Options, and Anthem are subject to Florida jurisdiction pursuant to Florida Statutes §§ 48.193(1)(a)(1), (1)(a)(4), and (1)(a)(6) and (2).

18. The remaining Blue Plans are subject to Florida jurisdiction pursuant to Fla. Stat. § 48.193 because each conducts business in Florida by: (1) authorizing Florida healthcare providers to provide healthcare services to its members and paying for such services; (2) contracting with Florida Blue to process and pay its claims in Florida pursuant to the Blue Card Program; and (3) intentionally advertising to its members that it provides access to healthcare goods and services in Florida.

19. This Court has jurisdiction over this dispute in that Plaintiff seeks damages exceeding $15,000.00.

20. Venue is proper in Miami-Dade County in that a material portion of the health care services at issue were provided to Defendants' members in Miami-Dade County.

**Substantive Allegations**

A. **REVA's Services to Defendants' Members**

21. For many years, REVA rendered, and continues to render, emergency air ambulance services (the "Services") to Defendants' insureds.

22. At the time the Services were rendered, each patient was enrolled as a member in a health insurance plan issued or administered by a Blue Plan.

23. Each patient's health insurance plan covers air ambulance services and the applicable Blue Plan was obligated to pay for such Services.

24. At or prior to the time the Services were rendered, each patient presented information identifying the relevant Defendant as his or her insurance provider, verifying

4

insurance coverage for REVA's Services and directing that all bills for the Services be submitted to the respective Defendant for processing and payment.

25. Subsequent to rendering Services, REVA submitted bills to Defendants, through Florida Blue as the Host Plan (defined below), seeking reimbursement of its usual and customary billed charges, which are published online and publicly available to Defendants.

26. REVA's standard charges are consistent with, or less than, the usual and customary billed charges of other air ambulance providers.

27. Even though Defendants provided REVA with an explanation of benefits ("EOB") for each patient acknowledging the Services were covered by the patient's insurance policy, Defendants significantly underpaid REVA for the Services.

28. At no time did REVA agree to any discounts for the Services. Accordingly, REVA expected to receive payment equal to the full amount of the charges reflected on the bills submitted to Defendants.

**B. The Defendants' Collaboration**

29. Defendants are independent licensees of the Association. Defendants utilize these independent licenses to cover millions of individuals throughout the United States.

30. The Association offers programs, like the BlueCard Program, which allows the Defendants to coordinate and cooperate with each other on a national platform, to create significant market advantages.

31. The BlueCare Program enables eligible members of one Blue Plan Member ("the Home Plan") to obtain health care services in another Blue Plan Member's (the "Host Plan") service area. This allows Blue Plans' insureds to access health care goods and services throughout the United States.

32. For Florida healthcare providers, like REVA, Florida Blue acts as the "Host Plan" for foreign Blue Plans' insureds who receive healthcare services from Florida healthcare providers. As the Host Plan, Florida Blue is responsible for processing payments for services rendered by REVA to the Home Plan's members. The Home Plan adjudicates the claims submitted by Florida Blue, including the determination of payment to be made to the health care provider.

33. For the claims at issue in this instant action, Florida Blue, as the Host Plan, purposefully submitted for adjudication a price to the Home Plan that was unreasonably low and significantly discounted.

34. The Home Plan was not required to utilize Florida Blue's unreasonable pricing for the claims submitted by REVA.

35. For each claim at issue, even though the Home Plan made partial payment to REVA, the rate of reimbursement did not reflect REVA's usual and customary billed charges or the reasonable value of REVA's services. Instead, Defendants significantly underpaid REVA for the services it rendered to Defendants' insureds.

36. REVA has performed all of its material obligations, and all conditions precedent to the institution and maintenance of this action have been satisfied, fulfilled, or otherwise waived.

37. REVA engaged the undersigned counsel and is obligated to pay counsel a reasonable fee.

### COUNT I - UNJUST ENRICHMENT
### (ALL DEFENDANTS)

38. REVA realleges and incorporates paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. REVA conferred a direct benefit upon Defendants by providing Defendants' members with emergency air ambulance services to which they were entitled pursuant to their

contract with Defendants.

40. Defendants voluntarily accepted and received the benefit conferred by REVA, with the knowledge that REVA expected to be paid the reasonable value of its services (i.e., REVA's usual and customary charges).

41. Defendants have not paid or reimbursed the value of the benefit conferred by REVA in that Defendants have significantly underpaid REVA's claims for the Services.

42. Defendants' underpayment results in a windfall for Defendants in that Defendants collect premiums from its members and subscribers, including the members at issue in the instant action, in return for agreeing to properly reimburse providers, like REVA, that render covered medical services.

43. It is unjust under the circumstances for Defendants to underpay REVA's claim.

### COUNT II - QUANTUM MERUIT
### (ALL DEFENDANTS)

44. REVA realleges and incorporates paragraphs 1 through 37 of this Complaint as if fully set forth herein.

45. REVA conferred a direct benefit upon Defendants by providing Defendants' members with emergent medical services to which they were entitled pursuant to their contract with Defendants.

46. REVA billed Defendants its usual and customary charges for the Services. These charges represent the fair market value of the Services rendered.

47. Defendants received the bill from REVA but underpaid REVA for the Services.

48. There is no express agreement between the parties that allows Defendants to discount REVA's usual and customary billed charges; therefore, REVA is entitled to reasonable compensation for the Services, as reflected in its billed charges.

49. The circumstances are such that it would be inequitable for Defendants to retain these benefits without paying REVA the value thereof.

### COUNT III - VIOLATION OF FLORIDA STATUTES SECTION § 627.64194
### (DEFENDANT FLORIDA BLUE)

50. REVA realleges and incorporates paragraphs 1 through 37 of this Complaint as if fully set forth herein.

51. Florida Blue is an insurer governed by Chapter 627 of the Florida Statutes.

52. REVA provided emergency services to Florida Blue's members. The Services are covered services pursuant to Florida Blue's agreement with each of its members and pursuant to Fla. Stat. § 627.64194.

53. REVA billed Florida Blue, specifying the nature of the Services and its usual and customary charges for such Services.

54. Florida Blue grossly underpaid REVA for the Services rendered to Florida Blue's members.

55. Florida Blue is required, pursuant to Fla. Stat. §§ 627.64194(4) and 641.513(5), to reimburse REVA for emergency services provided to Florida Blue's members in an amount equal to the lesser of: (i) REVA's charges; (ii) the usual and customary provider charges for similar services in the community where REVA provided the Services; or (iii) the charge mutually agreed to by REVA and Florida Blue within sixty (60) days of REVA's submission of the claim.

56. REVA and Florida Blue did not mutually agree to discount the charges for the Services rendered to Florida Blue's members.

57. Florida Blue has failed to comply with Fla. Stat. § 627.64194, by underpaying REVA for the Services it provided to Florida Blue's members.

**COUNT IV – VIOLATION OF FLORIDA STATUTES SECTION § 641.513**
**(DEFENDANT HEALTH OPTIONS)**

58.     REVA realleges and incorporates paragraphs 1 through 37 of this Complaint as if fully set forth herein.

59.     Health Options is a Florida HMO, which is governed by Chapter 641 of the Florida Statutes.

60.     REVA provided emergency services to Health Options' members. The Services are covered services pursuant to Health Options' agreement with its members and pursuant to Fla. Stat. § 641.513.

61.     REVA billed Health Options, specifying the nature of the Services and its usual and customary charges for the Services.

62.     Health Options grossly underpaid REVA for the Services rendered to Health Options' members.

63.     Health Options is required, pursuant to Fla. Stat. § 641.513(5), to reimburse REVA for emergency services provided to Health Options members in an amount equal to the lesser of: (i) REVA's charges; (ii) the usual and customary provider charges for similar services in the community where REVA provided the Services; or (iii) the charge mutually agreed to by REVA and Health Options within sixty (60) days of REVA's submission of the claim.

64.     REVA and Health Options did not mutually agree to discount the charges for the Services rendered to Health Options' members.

65.     Health Options has failed to comply with Fla. Stat. § 641.513, by underpaying REVA for the Services it provided to Health Options' members.

**WHEREFORE**, REVA prays for judgment to be entered in its favor and against Defendants awarding the following:

a. Compensatory damages in excess of $15,000.00;

b. Pre and post judgment interest as provided by Florida law;

c. Taxable costs and expenses;

d. Attorneys' fees and costs pursuant to Fla. Stat. §§ 641.28 and 627.428; and

e. Such other relief as the Court deems just and equitable.

## JURY TRIAL

REVA demands trial by jury on all issues so triable.

**DATED** this 19th day of September 2017

        WOLFE | PINCAVAGE
        2980 McFarlane Road
        Miami, Florida 33133
        Telephone: 786.509.9755

By: /s/ Danya J. Pincavage
     Douglas A. Wolfe
     doug@wolfepincavage.com
     Fla. Bar No.: 28671
     Danya J. Pincavage
     danya@wolfepincavage.com
     Fla. Bar No.: 14616
     Rebecca Greenfield
     becky@wolfepincavage.com
     Fla. Bar No.: 0117739