# EXHIBIT 6
# Reply in Support of Motion for Remand

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-cv-24158

REVA, INC.,

    *Plaintiff,*

v.

HEALTHKEEPERS, INC., BLUE CROSS & BLUE SHIELD OF FLORIDA, INC. d/b/a FLORIDA BLUE, BLUECROSS BLUESHIELD OF NORTH CAROLINA, BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, ANTHEM, INSURANCE COMPANIES, INC., HEALTH OPTIONS, INC., d/b/a FLORIDA BLUE HMO, BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA; BLUE CROSS AND BLUE SHIELD OF ALABAMA,

    *Defendants.*

_____/

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND AND INCORPORATED MEMORANDUM OF LAW**

Defendants have failed to meet their burden of proving subject matter jurisdiction because neither ERISA, nor the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), are applicable to the claims at issue. First, this dispute concerns the "proper rate" of reimbursement for covered emergency services rendered by REVA to Defendants' members. *See* Compl., D.E. 1-1 at ¶ 2.

Second, the insurance plans for the claims at issue prohibit Defendants' members from assigning their benefits to REVA; accordingly, REVA does not have standing to bring its claim under ERISA. Third, REVA's state law claims for unjust enrichment, quantum meruit, and violations of Florida emergency services reimbursement statutes – Florida Statutes §§ 627.64194 and 641.513 (the "Emergency Statutes") – provide REVA a legal basis for reimbursement independent of members' ERISA benefit plans. Fourth, Defendants are unable to establish federal jurisdiction under the Federal Officer Removal Statute as none of the claims implicate Federal Employees Health Benefits ("FEHBA") and/or Medicare Advantage ("MA") plans. Remand is proper.

## MEMORANDUM OF LAW

I. **ERISA DOES NOT PREEMPT THIS ACTION**

   A. *REVA's Status as an Out-of-Network Provider Does Not Transform REVA's "Rate of Payment" Claims Into "Right of Payment" Claims*

Defendants have failed to prove that REVA's claims are preempted by ERISA. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F. 3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Defendants mistakenly rely on *Apex Technology, LLC v. United Healthcare Ins. Co.,* No. 16-CV-62768, 2017 U.S. Dist. LEXIS 99249 (S.D. Fla. June 26, 2017)[1] as the basis of its argument that the "right of payment" versus "rate of payment" distinction is inapplicable to out-of-network providers. Opp., D.E. 42 at 6-8; *see also* Notice of Removal, D.E. 1 at ¶¶ 23-24.[2]

---

[1] The Magistrate Judge's Report and Recommendation upon which Defendants rely was not adopted by the district court judge and is therefore of limited precedential value. Three days after the Magistrate Judge rendered his Report and Recommendation, the plaintiff voluntarily dismissed the case. *See* D.E. 31, No. 16-CV-62768. Shortly thereafter, the district court judge entered a final order of dismissal, and denied all pending motions as moot. 2017 U.S. Dist. LEXIS 111706 (S.D. Fla. July 17, 2017).

[2] *Apex,* unlike the instant matter, involved a "right of payment" dispute. *See* 2017 U.S. Dist. LEXIS 99249 at *14 ("The plaintiff's claims necessarily challenge the denial of benefits under the ERISA

*Apex* relies on *Alliance Med, LLC v. Blue Cross & Blue Shield of Ga., Inc.,* No. 2:15-CV-00171-RWS, 2016 U.S. Dist. LEXIS 75578, at *9 (N.D. Ga. June 10, 2016), which does not analyze the applicability of the "rate of payment" versus "right of payment" distinction to out-of-network providers. Although *Apex* and *Alliance* generally cite to *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F. 3d 1337, 1349 (11th Cir. 2009), it appears those courts may have misinterpreted its holding.

In *Conn. State,* the Eleventh Circuit held that two individual plaintiffs' claims were preempted by ERISA, not because the plaintiffs were out-of-network providers (they were actually in-network), but because the plaintiffs' claims involved both "rate of payment" and "right of payment disputes." *Id.* at 1351 ("What we have, then, is really a hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA. Because [plaintiffs] complain, at least in part, about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA.").

In June 2017, another Court in this District expressly rejected Defendants' interpretation of *Conn. State* and confirmed that the "right of payment" versus "rate of payment" distinction applies to non-participating providers bringing claims under implied contract theories. *See Hialeah Anesthesia Specialists v. Coventry Health Care of Fla.*, 258 F. Supp. 3d 1323, 1329 (S.D. Fla. 2017) ("No part of *Connecticut State Dental* supports the proposition that an express written provider agreement *must* be present before the rate-of-payment/right-of-payment test can apply and that, in the absence of a written agreement, any claim for payment must be preempted.") (emphasis in original).

---

plans and are therefore within the scope of ERISA."). REVA seeks payment for claims that were determined to be covered services, but paid below the usual and customary rate for such services.

3

In reaching its decision, the court in *Hialeah Anesthesia* found "instructive" *Coast Plaza Doctors Hosp. v. Ark. Blue Cross & Blue Shield,* No. CV 10-06927 DDP (JEMx), 2011 U.S. Dist. LEXIS 95478, at *4 (C.D. Cal. Aug. 25, 2011), which held that healthcare providers have an "implied-in-law right to recover for the reasonable value of their services" and that "this implied-in-law right 'implicates a legal duty owed by Defendants-insurers that is independent of any ERISA-governed plan.'" *Hialeah Anesthesia*, 258 F. Supp. 3d at 1328. The court in *Hialeah Anesthesia* therefore held that ERISA did not preempt the plaintiffs' claims arising from the defendant's obligation to pay a healthcare provider the fair market rate for its services. *Id.* at 1330 (citing *Recovery Vill. at Umatilla, LLC v. United Behavioral Health, Inc.,* No. 15-62374, D.E. 37, 2016 U.S. Dist. LEXIS 124211 (S.D. Fla. Sept. 12, 2016)).

Like the plaintiffs in *Hialeah Anesthesia*, REVA is a non-participating provider that provided medically necessary emergency air ambulance services to Defendants' members. Because REVA never agreed to a discount for the services rendered, it was entitled to the usual and customary value of its services pursuant to the implied contract that existed between the parties. Defendants, however, underpaid REVA.[3] Because this "rate of payment" dispute does not fall within the scope of section 502(a), no further analysis under *Davila* is necessary and the case should be remanded. *Hialeah Anesthesia,* 258 F. Supp. 3d at 1330; *see also Orthopaedic Care Specialists, P.L. v. Blue Cross & Blue Shield of Fla., Inc.,* No. 12-81148, 2013 U.S. Dist. LEXIS 192515, at *2 (S.D. Fla. Mar. 5, 2013).

---

[3] Defendants acknowledged that its members' plans covered REVA's air ambulance services as evidenced by their partial payments to REVA.

4

### B. REVA Does Not Have Standing to Bring a Claim Under ERISA Because it Does Not Have Enforceable Assignments of Benefits

In its Notice of Removal, Defendants attached benefit plans which contain the following (or substantially similar) unambiguous anti-assignment language: "*You may not assign, delegate, or otherwise transfer this Policy and the obligations hereunder without our written consent. Any assignment, delegation, or transfer made in violation of this provision shall be void.*" See Strother Decl., D.E. 1-2 at Ex. 2, 6; Epting Decl., D.E. 1-14 at Ex. 1; Cox Decl., D.E. 1-15 at Ex. 1. Despite this unequivocal language, the Defendants continue to argue that REVA's assignments of benefits are somehow effective, and confer standing for REVA to sue under ERISA.

Defendants fail to distinguish case law establishing that a valid and enforceable assignment of benefits from the patient is necessary for a healthcare provider to obtain standing to sue under ERISA. *Griffin v. Health Sys. Mgmt,* 635 Fed. Appx. 768, 772 (11th Cir. 2015) ("[T]he Plan's anti-assignment provision bars the insured's assignment…."); *see also McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017). Defendants ignore the unambiguous anti-assignment language in their own policies and argue that REVA's "indicat[ion] that it had assignment of benefits from ERISA plan members on its claim forms" is "sufficient to establish Reva's ERISA standing." Opp., D.E. 42 at 8-9. In support of its argument, Defendants cite to six cases,[4] none of which analyze anti-assignment language. The one case Defendants cite that does contain an anti-assignment provision - *Conn. State,* 591 F. 3d at 1352 – involved a plan that "contains an exception specifically permitting the assignment of dental benefits" to the

---

[4] One of the cases cited by Defendants – *In re Managed Care Litigation,* 298 F. Supp. 2d 1259, 1292 (S.D. Fla. 2003) – undercuts their argument as it recognizes that merely possessing an assignment of benefits does not confer standing; the assignment must be valid. *Id.* (citing *Hobbs v. Blue Cross Blue Shield of Ala.,* 276 F.3d 1236, 1242 (11th Cir. 2001).

plaintiffs. As these cases demonstrate, even if REVA did obtain an assignment of benefits, the assignment would be invalid pursuant to the plans' express anti-assignment provisions.

Further, whether REVA obtained a valid assignment of benefits is irrelevant. REVA is asserting claims unrelated to ERISA plans and is not standing in the shoes of the Defendants' insureds. *See Sheridan Healthcorp, Inc. v. Aetna Health Inc.,* 161 F. Supp. 3d 1238, 1247 (S.D. Fla. 2016) ("[E]ven if Defendants presented evidence sufficient to prove an assignment of benefits, such an assignment would be insufficient to make Plaintiff a beneficiary in this case."); *see also Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Fla., Inc.,* No. 6:08-cv-686-Orl-19KRS, 2008 U.S. Dist. LEXIS 65732, at *14-15 (concluding that defendants' presentation of "a sample of twenty claim forms which indicate[d] that [] an existing 'signature on file' assign[ed] the patient's medical benefits to one of the [p]laintiffs," did not establish standing because the plaintiffs "[were] not attempting to stand in the shoes of the patients, and their claims [were] unrelated to the rights of the patients")). Based on the Defendants' own submissions, it is clear that REVA cannot have valid assignments. And REVA's claims do not rely on any assignments of benefits. REVA's claims could not be brought under ERISA, and this case should be remanded.

    **C.**    ***REVA's Claims Under Implied Contract Theory and Florida's Emergency Services Statutes Create an Independent Legal Duty***

REVA's right to the usual and customary rate of payment from Defendants arises from implied contract theories[5] independent of any ERISA-governed plan. *See Hialeah Anesthesia,* 258 F. Supp. 3d at 1329 ("*Connecticut State Dental* leaves the proverbial door sufficiently open" for the application of the right of payment versus rate of payment distinction "in cases involving allegations of an implied 'agreement'– be it implied-in-fact or implied-in-law – between an out-

---

[5] REVA's complaint contains counts for unjust enrichment and quantum meruit, which are implied-in-law contract and implied-in-fact contract claims, respectively. *See Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F. 3d 802, 805-06 (11th Cir. 1999).

6

of-network provider and an insurer."); *see also Sheridan Healthcorp, Inc.*, 161 F. Supp. 3d at 1246 ("[R]esolution of Sheridan's implied-in-fact and implied-in-law contract claims…do not rest upon the interpretation of an ERISA plan…").

In addition, the Emergency Statutes[6] grant non-participating providers, like REVA, a statutory rate of reimbursement independent of a members' ERISA health benefit plan. *See Hialeah Anesthesia*, 258 F. Supp. 3d at 1328 ("Florida courts have found that state law claims brought under [Florida Statutes § 641.513] by healthcare providers who rendered emergency medical services to an insurer's subscribers were not preempted by ERISA."); *see also Rocky Mt. Holdings*, 2008 U.S. Dist. LEXIS 65732, at *17 ("What is at issue is the amount of payment, and the source for that determination is in the statutes, not the HMO plans." (quoting *Med. & Chirurgical Faculty v. Aetna U.S. Healthcare, Inc.,* 221 F. Supp. 2d 618 (D. Md. 2002))); *see also Guerriere, M.D., P.A. v. Aetna Health, Inc.,* No. 8:07-cv-1443-T-27MAP, 2007 U.S. Dist. LEXIS 84733, at *6 (M.D. Fla. Nov. 15, 2007) ("Simply put, the statute is expressly disconnected from the terms and provisions of any particular ERISA plan, as it mandates reimbursement to non-participating emergency medical providers. Similar relief is unavailable under ERISA.").

Both in their Notice of Removal and in their Opposition, Defendants attempt to convince the court that *Rodriguez v. Health Options, Inc.,* No. 03-20429-CIV-MORENO, 2003 U.S. Dist. LEXIS 28326 (S.D. Fla. Aug. 29, 2003) stands for the proposition that the Emergency Statutes are preempted by ERISA. But the *Rodriguez* Court's holding that the plaintiff's claims (based on Florida Statutes § 641.3154 and § 641.513) were preempted by ERISA was premised upon its

---

[6] Defendants' argument that REVA has failed to state a cause of action under the Emergency Statutes is outside the scope of the removal-remand analysis and will be addressed in REVA's response to Defendants' Motion to Dismiss. *See Univ. v. S. Alabama v. American Tobacco Co.,* 168 F. 3d 405, 411 (11th Cir. 1999) ("[T]he district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue….").

7

finding that claims involved a denial of payment. *Id.* at *10 ("[T]his lawsuit, at its core…seeks to remedy the denial of ERISA plan benefits."). The court reasoned that "simpl[y] alleg[ing] … violation of Florida statutory provisions does not automatically remove the claims from ERISA's shadow." *Id.* at *12 (quoting *Variety Children's Hosp. v. Century Med. Health Plan,* 57 F. 3d 1040, 1042 (11th Cir. 1995)). Because REVA does not seek payment for denied claims in this lawsuit, *Rodriguez* does not apply.

## II. THE FEDERAL OFFICER REMOVAL STATUTE IS INAPPLICABLE

Defendants removed this lawsuit without conducting any discovery regarding REVA's claims. As a result, Defendants make erroneous assumptions about which claims are at issue in this lawsuit and whether they implicate FEHBA and MA plans. *See, e.g.,* Opp., D.E. 42 at 3-4 n. 2 ("Reva's Complaint covers all claims it submitted to Defendants 'for many years.'"); *see also* Notice of Removal, D.E. 1 at ¶ 19. But Defendants ignore the Declaration of Michael Labinski – the Chief Financial Officer of REVA, Inc. – which clarifies that REVA is only pursuing claims that do not implicate FEHBA and MA plans.[7]

---

[7] Eleventh Circuit precedent establishes that Defendants' speculations regarding the nature of REVA's claims are improper and that its removal of the case is premature.

> Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging

8

In his Declaration [D.E. 33-1 at ¶ 5], Mr. Labinski attested that: "Presently, there are approximately 15-20 claims at issue in this lawsuit. REVA is not seeking to recover every claim submitted to BCBS within the past four years." Mr. Labinski further stated that: "The…lawsuit does not include any claims involving the Federal Employees Health Benefits Act, nor the Medicare Advantage program." *Id.* at ¶ 6. Preemption under the federal officer removal statue is therefore inappropriate. *See Sheridan Healthcorp,* 161 F. Supp. 3d at 1249 (holding the plaintiff's claims were not preempted by FEHBA because the complaint expressly carved out claims relating to government-sponsored healthcare plans).

Defendants' implication that that the Court should not consider Mr. Labinski's declaration is incorrect.[8] Courts can and have considered affidavits submitted by plaintiffs when determining subject matter jurisdiction. *See e.g. Asociacion Nacional de Pescadores a Pequena Escala o Artesanales v. Dow Quimica de Colombia S.A.,* 988 F. 2d 559, 565 (5th Cir. 1993) (the court considered the plaintiff's affidavit submitted after removal because the affidavit "clarif[ied] a petition that previously left the jurisdiction question ambiguous" and, therefore, "the court is still examining the jurisdictional facts *as of the time* the case is removed.").

Moreover, none of the cases relied upon by Defendants hold to the contrary. In fact, Defendants' cases (and the cases cited therein) suggest that declarations such as the one submitted by REVA are oftentimes necessary for the court to determine the existence of subject matter

---

defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Lowery v. Ala. Power Co.,* 483 F. 3d 1184, 1217 (11th Cir. 2007); *see also Weinberger v. Aetna Health, Inc.,* Case No. 06-20249-CIV, 2008 U.S. Dist. LEXIS 128341, at *32 (S.D. Fla. Apr. 15, 2008) ("The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.").

[8] Moreover, acceptance of Defendants' argument would lead to an absurd result because following discovery or amendment of the pleadings the court would lack subject matter jurisdiction.

9

jurisdiction. *See Sierminski v. Transouth Fin. Corp.,* 216 F. 3d 945, 946, 949 (11th Cir. 2000) (the court may consider evidence submitted after removal, such as post-petition affidavits, when such evidence "establish the facts present at the time of removal"); *see also Weinberger,* 2008 U.S. Dist. LEXIS 128341, at *11 (finding that the court may consider evidence submitted following a motion to remand when the evidence is "relevant to that period of time"); *Attilus v. Emblemhealth Admin'rs, Inc.,* 233 F. Supp. 3d 1341, 1347 (S.D. Fla. 2017) (noting that the "Plaintiff affirmatively and unequivocally **disclaims** any interest in pursuing a claim for plan benefits in this lawsuit") (emphasis in original).

Nowhere in its complaint does REVA assert that it is pursuing all claims ever submitted to Defendants over the past four years – let alone any claim related to a FEHBA or MA plan. Mr. Labinski's declaration clarifies the nature of REVA's claims at the time of removal. Because REVA disclaims any interest in pursuing a FEHBA or MA claim in this lawsuit, remand is proper.

## CONCLUSION

The Defendants' notice of removal is based on speculation about what claims might be at issue in this lawsuit. The Defendants fail to meet their burden of proving any claims actually at issue, which could have been brought under ERISA or that invoke the Federal Officer Removal Statute.

WHEREFORE, REVA, Inc. respectfully requests that this Court enter an order remanding this lawsuit to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, together with any further relief the Court deems just and proper.

         Respectfully submitted,

By: WOLFE | PINCAVAGE
   Counsel for Plaintiff
   2980 McFarlane Road
   Miami, FL 33133
   Office: 786.509.8874

   /s/ Danya J. Pincavage
   Danya J. Pincavage, Esq.
   Fla. Bar No.: 14616
   danya@wolfepincavage.com
   Douglas A. Wolfe
   doug@wolfepincavage.com
   Fla. Bar No.: 28671

11

# CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on January 23, 2018 the foregoing was filed using the Court's CM/ECF system and that will serve a copy on:

Allen P. Pegg
allen.pegg@hoganlovells.com
Daniel Balmori
daniel.balmori@hoganlovells.com
Paige Comparato
paige.comparato@hoganlovells.com
Hogan Lovells US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: 305-459-6500 / Fax: 305-459-6550
*Counsel for Anthem Insurance Companies, Inc., Blue Cross Blue Shield of Georgia, Inc., Healthkeepers, Inc., Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue, Health Options, Inc., BlueCross BlueShield of South Carolina, and Blue Cross and Blue Shield of North Carolina*

Lisa M. Baird
lbaird@reedsmith.com
Reed Smith LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Tel: 786-747-0200 / Fax: 786-747-0299
Martin J. Bishop
mbishop@reedsmith.com
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606
Tel: 312-207-1000 / Fax: 312-207-6400
*Counsel for Blue Cross and Blue Shield of Texas, an unincorporated division of Health Care Corporation*

Alan J. Perlman
aperlman@dickinson-wright.com
Dickinson Wright PLLC
350 East Las Olas Blvd., Suite 1750
Ft. Lauderdale, FL 33301
Tel: 954-991-5420 / Fax: 844-670-6009
Scott R. Knapp
sknapp@dickinson-wright.com
Dickinson Wright PLLC
215 S. Washington Square, Suite 200
Lansing, MI 48933
Tel: 517-371-1730 / Fax: 844-670-6009
*Counsel for Blue Cross Blue Shield of Michigan Mutual Insurance Company*

Gregory R. Hawran
gregory.hawran@ogletree.com
Ogletree Deakins Nash Smoak & Stewart P.C.
701 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel: 305-455-3803 / Fax: 305-374-0456
Tim A. Palmer
tim.palmer@ogletree.com
Ogletree Deakins Nash Smoak & Stewart P.C.
SunTrust Plaza – Suite 1200
401 Commerce Street
Nashville, TN 37219
Tel: 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 / Fax: 615-254-1908
*Counsel for Blue Cross and Blue Shield of Alabama*

By: /s/ Danya J. Pincavage

      Danya J. Pincavage