BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

**In re Blue Cross Blue Shield Antitrust Litigation**                              **No. 2406**

This Filing Relates to:
*REVA, Inc. v. Healthkeepers, Inc., et al.*, S.D. Florida, No. 17-CV-24158-FAM.

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-34)

Defendants Blue Cross and Blue Shield of Florida, Inc., ("Florida Blue"), Health Options, Inc. ("Health Options"), Healthkeepers, Inc., Blue Cross and Blue Shield of North Carolina, Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia, Inc., and Blue Cross and Blue Shield of South Carolina provide the following Opposition to the Motion to Vacate Conditional Transfer Order (CTO-34) (the "Motion") filed by Plaintiff, REVA, Inc. ("Reva"). Reva's Motion seeks to vacate the Panel's January 9, 2018, Conditional Transfer Order that determined that *REVA, Inc. v. Healthkeepers, Inc., et al.*, Case No. 17-CV-24158 (S.D. Fla.) (the "Related Action"), is sufficiently related to the matter of *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 13-cv-20000 (N.D. Al.) (the "BCBS MDL"), that transfer is warranted for a variety of reasons. Transfer is so warranted, and Reva's Motion should be denied.

### INTRODUCTION

Contrary to Reva's arguments, the Related Action significantly overlaps with the BCBS MDL and there is no reason to vacate the Conditional Transfer Order. First, there is no reason to defer ruling on the transfer request due to the procedural posture of the Related Action because the District Court has essentially stayed that case pending this Panel's transfer decision. Second, contrary to its arguments, Reva is clearly a member of the purported plaintiff class in the BCBS

MDL. Third, Reva's allegations and theories in the Related Action overlap with those of the plaintiff class in the BCBS MDL. Reva asserts that all Defendants in the Related Action (the "Blue Plan Defendants") – nearly all of whom are *also* defendants in the BCBS MDL – possess coercive market power due to their collective "advantage" and "collaboration," which purportedly led to Reva (in the Related Action) and all other class members (in the BCBS MDL) to be "significantly underpaid" by the Blue Plan Defendants. Thus, the Related Action and the other centralized actions in the BCBS MDL concern common questions of fact and legal theory, which at a minimum will yield overlapping discovery about the Blue Plan Defendants' service areas and the alleged economic effect of the Blue Card Program. Fourth, this Panel's precedent confirms that a precise identity of causes of action is not necessary in order for transfer to be justified. Finally, transfer is also appropriate under the remaining considerations of 28 U.S.C. § 1407 because transfer will promote the just and efficient conduct of the lawsuit and will be convenient for the parties and witnesses.

**ARGUMENT**

**I.     There Is No Reason to Defer Ruling on the Requested
        Transfer Due to the Procedural Posture of the Related Action**

As an initial matter, there is no reason to accommodate Reva's request to defer ruling on Reva's Motion until the District Court rules on its motion for remand in the Related Action. *See* Mot. to Vacate 1. This request is now moot because on January 30, 2018, having reviewed the Notice of Filing Potential Tag-Along Action and the Panel's Conditional Transfer Order, the District Court denied all of the parties' pending motions and requests for hearing without prejudice and placed the Related Action in civil suspense pending the Panel's decision on whether to transfer the case to the BCBS MDL. *See* Exhibit A, Order Denying Motion for Hearing and Closing Case for Statistical Purposes and Placing Matter in Civil Suspense File,

2

*REVA, Inc. v. Healthkeepers, Inc., et al.*, 17-CV-24158-FAM [ECF No. 47] (S.D. Fla. Jan. 30, 2018).

And regardless, the Panel has repeatedly held that the type of jurisdictional issues that Reva proffers in support of its request for the Panel to defer its ruling are insufficient to warrant vacating a conditional transfer order. *See In re Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, 2017 WL 6759056, at *2 (J.P.M.L. Oct. 4, 2017) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001)). In this regard, the Panel has consistently held that the transferee judge can decide any pending motions to remand. *See id.* The Panel has further acknowledged that transfer in these circumstances comports with the well-established principle that "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *Id.* Therefore, there is no reason for the Panel to defer ruling on whether transfer is warranted.

## II.    Reva Is a Member of the Plaintiff Class in the BCBS MDL

Contrary to its current arguments, Reva is a member of *both* of the putative plaintiff classes defined in the BCBS MDL. The operative complaint in the BCBS MDL defines the "Nationwide Injunction Class" as "[a]ll healthcare providers, not owned or employed by any of the Defendants, who currently provide healthcare services, equipment or supplies in the United States of America." *See* Consolidated 4th Am. Provider Compl. ¶ 617. The BCBS MDL complaint also defines the "Nationwide Damages Class" as "[a]ll healthcare providers . . . in the United States of America, who provided covered services . . . to any patient who was insured by . . . a Defendant [Blue Plan.]" *Id.* ¶ 618; *see also id.* ¶ 41 (arguing that out-of-network providers have standing to sue). In its own Complaint, Reva alleges that it is an out-of-network fixed-wing

air ambulance company that has provided emergency transport of patients insured by the Blue Plan Defendants. *See* Notice of Potential Tag-Along Action, at Exhibit 1B (Reva's Complaint in the Related Action ("Reva Compl."), ¶¶ 3, 21; *see also id.* ¶ 22 (alleging that "[a]t the time Services were rendered, each patient was enrolled as a member in a health insurance plan issued or administered by a Blue Plan"). Reva is therefore a member of both plaintiff classes in the BCBS MDL.[1]

### III.  The Related Action Shares Various Common Questions of Fact and Theory with the BCBS MDL

The Related Action involves common questions of fact and theory with actions the Panel previously centralized in the BCBS MDL. At their respective cores, both the Related Action and the BCBS MDL focus on the alleged economic effect of the Blue Card Program, which permits subscribers of one Blue Plan to obtain services in another Blue Plan's service area when visiting or living in another state. *Compare* Reva Compl. ¶ 31 ("The BlueCare [sic] Program enables eligible members of one Blue Plan Member ('the Home Plan') to obtain health care services in another BluePlan Member's (the 'Host Plan') service area.") with Consolidated 4th Am. Provider Compl. ¶ 201 ("Within the Blue Card Program, the Blue through which the subscriber is enrolled is referred to as the 'Home Plan,' while the Blue located in the Service Area where the medical service is provided is referred to as the 'Host Plan.'"). In its Complaint, Reva maintains that "programs, like the BlueCard Program, [allow] the Defendants to coordinate and cooperate with each other on a national platform, to create significant market advantages." Reva Compl. ¶ 30. This allegation may as well have been directly copied from the provider plaintiffs' allegations in the BCBS MDL, which similarly state: "One Defendant admitted . . . that '[e]ach

---

[1]  Florida Blue and Health Options join this position without prejudice to or waiver of their arguments concerning Reva's failure to state a claim under the Florida Statutes alleged in Counts III and IV of the Complaint in the Related Action.

4

of the [36] BCBS companies . . . works cooperatively in a number of ways that create significant market advantages . . . ." Consolidated 4th Am. Provider Compl. ¶ 128. And as the Panel observed in its 2012 Order centralizing the actions, "Plaintiffs contend that the . . . BluePlans are health insurance companies that, but for any agreement to the contrary, could and would compete with one another." *See In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1375.

The gravamen of Reva's Complaint is Reva's allegation that the Blue Plan Defendants exact unjust benefits through the operation of the Blue Card Program whereby, Reva alleges, Florida Blue (as the Host Plan) purposefully submits for adjudication to Defendant Home Plans prices that are allegedly "unreasonably low and significantly discounted." Reva Compl. ¶ 33. The alleged economic result of this purported collaboration, according to Reva, is that all of the Blue Plan Defendants "significantly underpa[y]" Reva for its services. *Id*. ¶ 35. This is the same purported economic result alleged in the BCBS MDL. *See*, *e.g.*, Consolidated 4th Am. Provider Compl. ¶ 8 ("the Blue Card Program . . . lock[s] in the fixed discounted reimbursement rates that each Defendant achieves through market dominance in its Service Area . . . As a result, a healthcare provider who renders services . . . in another Service Area receives significantly lower reimbursement than the healthcare provider would receive. . . ."); *see also id*. ¶ 474 ("the Blues have agreed to fix reimbursement rates for providers among themselves by reimbursing providers according to the 'Host Plan' or 'Participating Plan' . . . By doing so Defendants have agreed to [pay] at less than competitive levels.").

These overlapping factual allegations and legal theories provide the precise connection that the Panel has found sufficient to justify the consolidation of cases with the BCBS MDL. *See*, *e.g.,* Transfer Order, *Chicoine v. Wellmark, Inc., et al./Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, MDL No. 2406 [Dkt. 393] at 1 (J.P.M.L. Oct. 05, 2017)

(transferring action to BCBS MDL although facts were unique to Iowa-based providers and defendants in a unique industry, and the damages models were distinct, because there were general allegations regarding agreement among the insurer defendants in the complaint); Transfer Order, *Lifewatch Services, Inc. v. Highmark, Inc., et. al,* MDL No. 2406 [Dkt. 192] at 1 (J.P.M.L. Apr. 1, 2013) (transferring action to BCBS MDL although case asserted distinct state and common law causes of action because complaint generally "touches on . . . the propriety of BCBSA's license agreements and the anti-competitive effects of certain provisions in those agreements."). Transfer of the Related Action is warranted.

## IV. A Complete Identity of Factual Allegations and Causes of Action Is Not Needed to Support Transfer

Reva's argument that there must be an identity of factual allegations and causes of action to justify an MDL transfer is also wrong. Indeed, in the original order creating the BCBS MDL, as in subsequent orders transferring additional related actions thereto, the Panel's position on this issue is clear: "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. Similarly, the Panel has consistently held that matters "need not have overlapping factual or legal theories" and that transfer is appropriate even where the "focus [of the transferred action] . . . does appear somewhat different from the MDL allegations." Transfer Order, *Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, MDL No. 2406 [Dkt. 393] at 1 (J.P.M.L. Oct. 05, 2017).; *see also In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) (centralizing cases with different plaintiffs, different defendants, and different legal theories because the cases abstractly concerned common questions of fact concerning overdraft fees); *In re Lehman Bros.*

*Holdings, Inc., Sec. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (consolidating cases with different legal theories, different causes of action, and involving different securities, in which not all parties agreed transfer was appropriate); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2008) (holding that because all actions "arise from a common factual core," it did not matter that the cases to be transferred alleged state and common law claims distinct from the antitrust litigation at issue in the pending multidistrict litigation); *In re Gadolinium Contrast Dyes Products Liab. Litig.*, 536 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2008) (holding that "Section 1407 does not require a complete identity or even a majority of common factual or legal issues" in response to arguments that the actions concerned facts as distinct as pharmacologically different products and disparate defendant classes); *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (affirming conditional transfer order where, even though actions involved "some different defendants and some dissimilar factual issues," centralization was appropriate because all concerned "whether there ha[d] been a conspiracy to engage in restrictive trade practices"). Indeed, the Panel has stated that "[w]here multidistrict litigation involves two or more categories of cases with some overlapping questions of fact and some unique questions of fact it has generally been thought desirable to transfer them to a single district and to assign them to a single judge." *In re Grain Shipments*, 319 F. Supp. 533, 535 (J.P.M.L. 1970).

Thus, the fact that the Related Action does not assert the same antitrust claims as the BCBS MDL is of no moment, as the cases otherwise share more than sufficient similarity. In fact, the Panel has transferred other cases alleging distinct legal theories, including state law, non-antitrust causes of action, to the BCBS MDL. *See*, *e.g.,* Transfer Order, *Lifewatch Services, Inc. v. Highmark, Inc., et. al,* MDL No. 2406 [Dkt. 192] at 1 (J.P.M.L. Apr. 1, 2013). In

*Lifewatch*, the plaintiff (opposing transfer) argued that its complaint (which included state-law claims such as tortious interference) focused specifically on claims for life-saving medical technologies, and not the antitrust conspiracy alleged in the BCBS MDL.  *See id.*  The Panel ultimately concluded that "[a]lthough *Lifewatch* will involve some different facts . . . the operative complaint also touches on . . . the propriety of BCBSA's license agreements and the anti-competitive effects of certain provisions in those agreements."  *Id.*  The Panel therefore affirmed transfer of the action to the BCBS MDL because the former "touched on" common issues to the latter.  *Id.*  The same analysis applies here, and the same result should obtain.

Although in its Motion Reva highlights that its claims are individual and the BCBS MDL contains various class claims, *see* Mot. to Vacate at 7, that fact also does not matter.  *See, e.g., In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) (centralizing nine antitrust suits even though fewer than half were class actions); *see also In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 610-11 (J.P.M.L. 1974) (centralizing two class actions and one individual action).  As the Panel has recognized, "it is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core."  *In re: Lipitor Antitrust Litig.*, MDL 2332, 12-CV-01059, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012) (internal quotation omitted); *see also In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011) ("The Panel, however, typically includes both individual actions and putative class actions in the same multidistrict proceeding when they arise from the same alleged antitrust conspiracy.").  Therefore, there need not be an identity of facts or legal theories.  The Related Case sufficiently overlaps with the BCBS MDL, and transfer is appropriate.

## V. Transferring the Related Action to the BCBS MDL Promotes the Efficient Resolution of Common Allegations and Prevents Inconsistent Rulings

Under Section 1407, in addition to determining whether there are "one or more common questions of fact," the Panel also considers whether transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In this case, transfer does support the convenience of the parties and witnesses and promotes the just and efficient conduct of the actions at issue by, among other things, (i) avoiding overlapping discovery, (ii) providing a more convenient forum for more parties, and (iii) consolidating the cases in a single forum well versed in the litigation to prevent inconsistent rulings.

### i. *Transfer Avoids Inefficient, Overlapping Discovery*

Transfer of the Related Action to the BCBS MDL will promote the just and efficient conduct of the litigation by eliminating duplicative discovery. Indeed, in its Motion, Reva *admits* that there will be overlapping discovery but attempts to downplay the significance of that overlapping discovery as being sought for a different purpose. *See* Mot. to Vacate 12. Specifically, Reva admits that it intends to seek discovery into the Blue Card Program and the Blue Plan Defendants' relationships (which issues, as discussed above, lie at the *core* of the BCBS MDL) but seeks to deflect the significance of this point by arguing that such discovery in the Related Action is for purposes of obtaining personal jurisdiction over various of the Blue Plan Defendants. *See id.* ("At most, REVA seeks limited discovery regarding the BlueCard program for use in responding to Defendants' motion to dismiss for lack of personal jurisdiction."). Reva's professed purpose for seeking the discovery is immaterial. Where parties must depose the same witnesses, examine the same documents, and make the same (or similar)

9

pretrial motions, the benefits of a single judge supervising these proceedings are "obvious."[2] *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1976). Any unique factual issue can be dealt with under the transferee judge's discretion to manage the case. *See In re Bristol Bay, Alaska Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976) (transferring action that might involve "substantial amount of discovery" on unique issue given transferee judge's discretion "to allow discovery on issues unique to any action to proceed concurrently with common discovery").

ii. *Transfer Provides a More Convenient Forum <u>for the Overwhelming Majority of the Litigants</u>*

Reva argues that it would be inconvenient for it to litigate the Related Action in the forum of the BCBS MDL. *See* Mot. to Vacate 11-12. But Reva's relative convenience in the litigation is not controlling. As this Panel has previously reasoned, "Of course it is to the interest of each plaintiff to have all of the proceedings in his suit handled in his district. But the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) (emphasis added); *accord In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979) (where majority of defendants supported transfer, Panel affirmed transfer over plaintiff's motion to vacate in consideration of "overall savings and cost and minimum convenience to all concerned"). In other words, in making this determination, the Panel looks to the relative convenience to *all* parties. In this case, of the 11 parties to the Related Action, ten of the parties (the Blue Plan Defendants) are already

---

[2]   "We also have held though that litigation involving common legal questions is appropriate for centralization when it will eliminate duplicative discovery and prevent inconsistent pretrial rulings." *See In re: Polar Bear Endangered Species Act Listing and § 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008).

involved in the BCBS MDL and have been for approximately six years.[3] Moreover, nearly all of the parties (with the exception of Reva, Florida Blue, and Health Options) reside *outside* of Florida. In short, while centralization may be "less than convenient for some parties," where the benefits outweigh one party's arguable inconvenience, centralization is amply justified. *See In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, 804 F. Supp. 2d 1382, 1384 (J.P.M.L. 2011).

Here, there can be no dispute that "any additional expense to plaintiff will be more than offset by the elimination of duplicative effort which accrues from coordinated or consolidated pretrial proceedings." *In re Gen. Adjustment Bureau Antitrust Litig.*, No. 73-C-2209 [Dkt. 127], 1974 WL 1015, at *2 (J.P.M.L. May 13, 1974); *see also In re Antibiotic Drugs*, 303 F. Supp. 1056, 1057 (J.P.M.L. 1969) (granting transfer because any "expense and inconvenience will be more than offset by savings from, and convenience of coordinated and consolidated pretrial proceedings directed by the transferee judge"). Further mitigating issues of cost, centralized proceedings do not require parties to attend all proceedings in the transferee court, and discovery of the parties can take place in the district where the parties reside. *See, e.g., In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. at 506-07. By contrast, absent transfer, the majority of the Blue Plan Defendants would be forced to litigate these similar issues both in the ongoing BCBS MDL and in the Southern District of Florida.

      iii.    *Transfer Maintains All Related Claims <u>Before a Single Court Well Versed in These Issues</u>*

Transferring the Related Action to the BCBS MDL will also allow one court to address the underlying claims and the claims' connection to the Blue Card Program. In consolidating

---

[3] The only technical exceptions are Health Options and Healthkeepers, which are affiliated health maintenance organizations of Florida Blue, and Anthem Insurance Companies, Inc., respectively – both of which are in any event directly involved in the subject BCBS MDL.

cases, this Panel has specifically identified the Northern District of Alabama as possessing unique expertise as "an experienced transferee judge who is already familiar with the contours of the litigation." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. In the six subsequent years of managing this litigation, the transferee court has grown even more experienced in this litigation. And the BCBS MDL is not the only instance in which the Panel has considered this expertise factor to weigh persuasively in favor of transfer. *See, e.g., In re: IntraMTA Switched Access Charges Litig.*, 67 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014) (transferring case after identifying a particular judge in Texas who was already presiding over a case brought by one of the parties as "experienced" with the litigation and finding him appropriate as a transferee "to steer this litigation on a prudent course."). The Panel should therefore transfer the Related Action in order to implement the intent expressed by the Panel's BCBS MDL centralization Order: to "ensure streamlined resolution of this litigation to the overall benefit of the Parties and the judiciary" and "prevent inconsistent rulings." *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.

Denying transfer would create a serious risk of conflicting rulings on important issues. The desire to avoid such inconsistent rulings undergirds the entire MDL process. *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."). The cost of inconsistent rulings on issues such as the nature of the Blue Plans' market force, the validity of the Blue Card Program, and the viability of the claims at issue, are significant. Avoiding this result is one of the primary aims of Section 1407 – and the Panel has consistently transferred similar claims of common national implications. *See, e.g., In re Lipitor Antitrust Litig.*, 856 F.

Supp. 2d 1355, 1356 (J.P.M.L. 2012) (transferring action explicitly "to prevent inconsistent rulings"); *In re Automotive Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350-51 (J.P.M.L. 2012) (same); *In re Cement & Concrete Antitrust Litig.*, 465 F. Supp. 1299, 1300-01 (J.P.M.L. 1979) (same). Reva's creative pleading should not be an obstacle to transferring the Related Action and risk all the pitfalls that parallel proceedings in separate jurisdictions presents.

## CONCLUSION

For all of these reasons, the Related Action is appropriate for transfer to the BCBS MDL, and Reva's Motion should be denied.

Dated: February 20, 2018                                Respectfully Submitted,

By */s/ Allen P. Pegg*
Allen P. Pegg
Fla. Bar No. 597821
Daniel Balmori
Fla. Bar No. 0112830
Paige Comparato
Fla. Bar No. 1002942
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
allen.pegg@hoganlovells.com
daniel.balmori@hoganlovells.com
paige.comparato@hoganlovells.com

Craig A. Hoover
J. Robert Robertson
E. Desmond Hogan
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile : 202-637-5910

craig.hoover@hoganlovells.com
robby.robertson@hoganlovells.com
desmond.hogan@hoganlovells.com

Emily M. Yinger
N. Thomas Connally, III
HOGAN LOVELLS US LLP
Park Place II
7930 Jones Branch Drive, Ninth Floor
McLean, VA 22102
Telephone :  703-610-6100
Facsimile :   703-610-6200
emily.yinger@hoganlovells.com
tom.connally@hoganlovells.com

*Counsel for Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., Healthkeepers, Inc., Blue Cross and Blue Shield of North Carolina, Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia, Inc., and Blue Cross and Blue Shield of South Carolina*