**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: BLUE CROSS BLUE SHIELD**                    **MDL No. 2406**
**ANTITRUST LITIGATION**

<u>This Filing Relates To The Following Case Only</u>:

*REVA, Inc. v. Healthkeepers, Inc., et. al.,* U.S. District Court, Southern District of Florida Case No. 17-24158-CIV-Moreno

<u>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-34)**</u>

<u>**INTRODUCTION**</u>

The Noticing Defendants'[1] arguments in their Opposition to Plaintiff's Motion to Vacate Conditional Transfer Order (CTO-34) ("the Opposition") fail to meet the standard warranting transfer. First, there are no "common questions of fact" between Plaintiff, REVA, Inc.'s ("REVA") action and the MDL. REVA's references to the BlueCard program do not amount to a common factual core. Moreover, REVA does not meet the definition of a class member. Second, transfer will be inconvenient for the parties and witnesses and will not promote just and efficient conduct because: i) the majority of the parties and witnesses are located in Florida and in states other than Alabama, thereby increasing costs and causing delay; ii) transfer will exacerbate damages to REVA's business and prolong Defendants' payment to REVA for the reasonable value of its services; iii) the federal courts lack subject matter jurisdiction over

---

[1] Blue Cross and Blue Shield of Florida, Inc. d/b/a/ Florida Blue ("Florida Blue"), Health Options, Inc. d/b/a Florida Blue HMO ("Health Options"), Healthkeepers, Inc. ("Healthkeepers"), Blue Cross and Blue Shield of North Carolina ("BCBSNC"), Anthem Insurance Companies, Inc. ("Anthem"), Blue Cross and Blue Shield of Georgia, Inc. ("BCBSGA"), and Blue Cross and Blue Shield of South Carolina ("BCBSSC"), collectively referred to hereafter as the "Noticing Defendants." The Noticing Defendants, together with the remaining Defendants – Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation ("BCBSTX"), Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSMI"), and Blue Cross and Blue Shield of Alabama ("BCBSAL") – shall hereafter be referred to as "Defendants."

this action and the matter does not belong in the MDL; iv) any potential discovery overlap will be minimal; and v) there is no risk of conflicting rulings.  The Panel should therefore vacate CTO-34.

## ARGUMENT

### I.   THE REIMBURSEMENT ACTION AND THE MDL DO NOT SHARE "COMMON QUESTIONS OF FACT"

#### A.   *REVA's Limited References to the BlueCard Program and Lack of Antitrust and Conspiracy Claims Do Not Give Rise to a Common Factual Core*

As the Noticing Defendants themselves point out, the Panel requires "actions...[to] arise from a common factual core" in order to support transfer.[2] *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012). The Panel has stated that the MDL "concerns the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)." *Id.* at 1374.  The Panel has further found that "[a]ll the Blue plans are alleged to be co-conspirators" and that "the actions involve substantial common questions of fact relating to the state BCBS entities' relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas, among other restrictions." *Id.* at 1376.

In an effort to persuade the Panel that this lawsuit shares a common factual core with the MDL, the Noticing Defendants once again cherry-pick words from REVA's complaint regarding the BlueCard program.  But when read in context, it is apparent that REVA's allegations regarding the BlueCard program are solely background information[3] and included for the purpose of obtaining personal

---

[2] Contrary to the Noticing Defendants' assertions, nowhere in its Motion to Vacate did REVA argue that there must be a complete identity of factual allegations in order to support transfer. Opp., D.E. 422 at 6.

[3] *See e.g.* REVA's Compl., D.E. 396-3, Exh. 1B at ¶ 31 ("The BlueCare Program enables eligible members of one Blue Plan Member ("the Home Plan") to obtain health care services in another Blue Plan Member's (the "Host Plan") service area.").

jurisdiction over the Defendants.[4]   The Noticing Defendants also misconstrue REVA's complaint for proper reimbursement.  For instance, the Noticing Defendants incorrectly assert that "[t]he gravamen of Reva's Complaint is Reva's allegation that the Blue Plan Defendants exact unjust benefits through the operation of the Blue Card Program." Opp., D.E. 422 at 5.  REVA does not so allege.  The gravamen of REVA's complaint is that Defendants' underpayment of emergency services rendered by REVA to its insureds.  It does not allege a coordinated scheme among BlueCard members that impacts REVA, or challenge the  legality of the BlueCard program.  REVA's does not allege any antitrust claims and its state law causes of action[5] do not require REVA to prove a conspiracy among the Blue Plans nor Defendants' possession and misuse of market power.  REVA only alleges that the BlueCard program exists.  Such undisputed and non-dispositive allegations do not give rise to a common question of fact, and even if they did, they would not warrant transfer. *In re IBM*, 316 F. Supp. 976, 977 (J.P.M.L. 1970) ("We conclude that, in spite of a few common fact questions resulting from the common defendant, the just and efficient conduct of the actions will not be promoted by transfer….").

---

[4] Five Defendants (Healthkeepers, Inc., Blue Cross and Blue Shield of North Carolina, Blue Cross and Blue Shield of Georgia, and Blue Cross and Blue Shield of Alabama and Anthem Insurance Companies, Inc. – collectively, the "PJ Defendants") moved to dismiss REVA's complaint for lack of personal jurisdiction.  In response, REVA filed a motion to stay its response to the motion to dismiss until after the Court ruled on REVA's motion for remand, and/or to conduct limited jurisdictional discovery regarding the affidavits submitted by the PJ Defendants.  The Noticing Defendants did not request a transfer of this case to the MDL until after REVA filed its Reply in support of that motion, and transfer appears to be sought based on the arguments therein.  In its Reply [D.E. 396-6], REVA states that it seeks "limited discovery regarding the relationship between the PJ Defendants and Florida Blue and Health Options under the BlueCard program, so that REVA may rebut the PJ Defendants' assertions [regarding lack of personal jurisdiction]." D.E. 396-6 at 5. Plainly, the only reason why REVA seeks any of this discovery is because the PJ Defendants raised lack of personal jurisdiction as a defense.

[5] REVA's claims for reasonable payment are based on implied contract theory and violations of Florida Statutes §§ 627.64194 and 641.513 ("Florida Emergency Services Statutes"), which require that Florida medical providers are paid for rendering emergency services.

The cases upon which the Noticing Defendants rely are inapposite.  Both *Chicoine* and *Lifewatch Services* involved allegations of antitrust and conspiracy, bringing them within the MDL's ambit.  *See* Transfer Order, *Chicoine, et al. v. Wellmark, Inc., et al./Opelousas Gen. Hosp. Auth. v. La. Health Serv. & Indem. Co.*, *et al.,* MDL No. 2406 (J.P.M.L. Oct. 4, 2017), D.E. 393 at 2 n.1 (involving allegations of price fixing and conspiracy between Wellmark and the Blue Plans); *see also* Transfer Order, *Lifewatch Services, Inc. v. Highmark, Inc., et al.,* MDL No. 2406 (J.P.M.L. Apr. 1, 2013), D.E. 192 at 1 ("[P]laintiffs' complaint also touches on the core controversy of the MDL proceedings – the propriety of BCBSA's license agreements and the anticompetitive effects of certain provisions in those agreements, most notably the geographical service area restrictions.").  REVA's claims do not contest the propriety of the license agreements and do not involve allegations of conspiracy, price fixing, or any other antitrust conduct.  The factors justifying transfer of *Chicoine* and *Lifewatch* to the MDL are not present here.[6]

The Noticing Defendants do not set forth any other alleged common question of fact or theory despite alleging in the title of Section III of their Opposition that "[t]he Related Action Shares Various Common Questions of Fact and Theory with the BCBS MDL." *See* D.E. 422 at 4.  The Panel should therefore vacate CTO-34.

---

[6] According to the Noticing Defendants, the fact that the MDL involves a class action, whereas REVA's action does not, is of no consequence.  The four cases cited in support are also distinguishable because they all involved actions transferred due to their common factual core with the action pending in the MDL. *In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) ("All of these actions…claim[] that the defendant violated the antitrust laws through an 'illegal tying arrangement'" and "[a]ll parties wholeheartedly agree that these cases are appropriate for transfer to a single district."); *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 610 (J.P.M.L. 1974) (involving actions that emanated from the same acquisition, that alleged violations of federal securities laws, and that represented similar classes of plaintiffs); *In re: Lipitor Antitrust Litig.*, MDL No. 2332, 12-CV-01059, 2012 U.S. Dist. LEXIS 113031, at *3 (J.P.M.L. Aug. 3, 2012) ("The *RP Healthcare* complaint contains essentially identical allegations."); *In re Polyurethane Foam Antitrust Litig.*, MDL No. 2196, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011) (transferring action arising "from the same alleged antitrust conspiracy").  Unlike these cases, REVA shares no common factual core with the MDL.  This factor, taken together with the fact that REVA's complaint does not involve a class action lawsuit, weighs against transfer.

4

### B.   *REVA Does Not Meet the Definition of a Class Member*

In their Notice of Potential Tag-Along Action ("Notice of Tag-Along") [D.E. 396], the Noticing Defendants alleged that "Reva is a member of the purported [MDL] Provider Class," and in support thereof, cited paragraph 618 of the Consolidated Fourth Amended Provider Complaint (the "Antitrust Complaint")[7] describing one of two plaintiff classes – specifically, the "Nationwide Damages Class." *Id.* at 2.  Now, in its Opposition, the Noticing Defendants assert for the first time that REVA is also a member of the "Nationwide Injunction Class." D.E. 422 at 3.  Courts in the past have declined to consider new arguments raised in an opposition and REVA respectfully requests that the Panel do the same. *See e.g. Nanotech Entm't, Inc. v. R&T Sports Mktg.*, No. 14-61608, 2014 U.S. Dist. LEXIS 196418, at *6 (S.D. Fla. Sept. 24, 2014).

Even if the Panel entertained the untimely argument, this argument fails because, unlike the Nationwide Injunction Class, REVA does not seek injunctive relief. *See* Antitrust Compl., D.E. 1083 at ¶ 617 ("Plaintiffs bring this action seeking injunctive relief…").  Moreover, REVA does not meet the Antitrust Complaint's definition of a class member.  In its Brief, REVA explained that the questions of law and fact and common to all class members[8] were directly tied to antitrust law, which have no bearing

---

[7] The operative complaint appears as docket entry 1083 in Master File No. 2:13-CV-20000-RDP.

[8] The questions of law and fact common to all members include the following:

  a.  Whether Defendants violated Section 1 of the Sherman Act;
  b.  Whether Defendants participated in a contract, combination or  conspiracy in restraint of trade as alleged herein;
  c.  Whether Defendants engaged in a scheme to allocate the United States healthcare market according to an agreed upon geographic division and agreed not to compete within another plan's geographic area;
  d.  Whether Defendants' agreements, including their Price Fixing Conspiracy, constitute per se illegal restraint of trade in violation of Section 1 of the Sherman Act;

or impact on REVA's reimbursement action. *See* Plaintiff's Brief in Support of Motion to Vacate Conditional Transfer Order (CTO-34) ("REVA's Brief"), D.E. 413-1 at 10-11.  The Opposition omits any discussion regarding the Antitrust Plaintiffs' list of eleven questions of law and fact common to all members.  Instead, the Noticing Defendants attempt to support their argument by merely alleging that REVA "provided emergency transport to patients insured by the Blue Plan Defendants." D.E. 422 at 4.  Such a bald assertion, without any analysis of the eleven questions of law and fact common to all members, is insufficient to bring REVA within the purview of either plaintiff class. *See* D.E. 1083 at ¶ 625.  The Noticing Defendants have therefore failed to prove the existence of common questions of fact warranting transfer.

## II.    TRANSFER WILL BE INCONVENIENT FOR THE PARTIES AND WILL NOT PROMOTE JUST AND EFFICIENT CONDUCT OF THE ACTIONS

The Noticing Defendants have similarly failed to prove that transfer "will be for the convenience of parties and witnesses" and "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  The Panel should therefore vacate CTO-34.

### A.    *Transfer Will Inconvenience the Parties, Increase Costs of the Litigation, and Waste Judicial Resources*

---

e.   Whether any pro-competitive justifications that Defendants may proffer for their conduct alleged herein do exist, and if such justifications do exist, whether those justifications outweigh the harm to competition caused by that conduct;

f.   Whether Defendants violated Section 2 of the Sherman Act;

g.   Whether the Blues collectively or any particular Blue has market power  in a particular market;

h.   Whether the Blues conduct is anticompetitive as prohibited by the Sherman Act;

i.   Whether Class Members have been impacted or may be impacted by the harms to competition that are alleged herein;

j.   Whether Defendants' conduct should be enjoined;

k.   The proper measure of damages sustained by the Provider Class as a   result of the conduct alleged herein;

*See* D.E. 1083 at ¶ 625.

The Noticing Defendants misconstrue REVA's argument to give the impression that REVA alone would be inconvenienced by a transfer to the MDL. D.E. 422 at 10-11.  Transfer of REVA's action would inconvenience not only REVA, but also Defendants Health Options and Florida Blue, their representatives/witnesses, and the majority of counsel involved in this lawsuit who are also located in Florida.  The Noticing Defendants' arguments that any additional expense to REVA will be "offset by the elimination of duplicative effort" are to no avail as the actions do not involve common questions of fact and arise out of distinct legal theories. *Id.* at 11.

The Noticing Defendants further ignore REVA's arguments that the cost of this litigation will also increase if REVA is required to coordinate with numerous other parties and wait for their turn to be heard in this busy MDL docket. *See* D.E. 413-1 at 11.  The Noticing Defendants also disregard REVA's contention that their failure to pay REVA the reasonable value of its services has already negatively impacted REVA's business and that transfer to the MDL will further delay resolution of REVA's action, causing REVA to incur additional damages. *Id.* at 12.

Transfer will also waste judicial resources.  REVA brought claims under Florida law, and it would be inefficient for an Alabama court to interpret and apply the law of a foreign jurisdiction.  Furthermore, transfer will result in a waste of the Panel's resources because the Panel does not have subject matter jurisdiction over REVA's action.

### B.    *Any Potential Discovery Overlap is Minimal and There is No Risk of Conflicting Rulings*

The Noticing Defendants' arguments concerning alleged overlapping discovery as a basis for transfer are unpersuasive.  At most, REVA seeks limited discovery regarding the BlueCard program for use in responding to Defendants' motions to dismiss for lack of personal jurisdiction. To the extent that minimal discovery overlap exists, there are various alternatives to transfer that obviate the risk of duplicative discovery. *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,* 446 F. Supp.

242, 244 (J.P.M.L. 1978) ("We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery. For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts."). The Noticing Defendants ignore these alternatives. Instead, they incorrectly maintain that transfer is warranted based on the potential for such minimal discovery overlap despite the fact that the two actions share no common questions of fact.

There is little potential for conflicting rulings, thus further weighing against transfer. And because REVA's reimbursement action does not turn on the outcome of "issues such as the nature of the Blue Plans' market force, the validity of the Blue Card Program, and the viability of the claims at issue" in the MDL, there will not be inconsistent rulings. D.E. 422 at 12. Transfer of REVA's action will therefore not serve the Panel's intent to streamline litigation related to the Blue Plan's alleged anticompetitive activities.

WHEREFORE, REVA, Inc. respectfully requests that the Panel vacate CTO-34.

Dated this 27th day of February, 2018.

Respectfully submitted,

WOLFE | PINCAVAGE
2980 McFarlane Road
Miami, Florida 33133
Telephone: 786.509.8874

By:  /s/ Danya J. Pincavage
Danya J. Pincavage
danya@wolfepincavage.com
Fla. Bar No.: 14616
*Counsel for Plaintiff, REVA, Inc.*