# Exhibit 1

**Query    Reports    Utilities    Help    Log Out**

ACCO,(ADSx),CONSOL,DISCOVERY,MANADR,PROTORD,SM

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:20-cv-00102-JWH-ADS

| | |
|---|---|
| Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company et al | Date Filed: 01/17/2020 |
| Assigned to: Judge John W. Holcomb | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Autumn D. Spaeth | Nature of Suit: 890 Other Statutory Actions |
| Related Cases: 8:20-cv-00108-DOC-ADS | Jurisdiction: Federal Question |

Related Cases: 8:20-cv-00108-DOC-ADS
8:20-cv-00110-DOC-ADS
8:20-cv-00106-DOC-ADS
8:20-cv-00109-DOC-ADS
8:20-cv-00107-DOC-ADS
8:20-cv-00112-DOC-ADS
8:20-cv-00577-DOC-ADS
8:20-cv-00114-DOC-ADS
8:20-cv-00104-DOC-ADS
8:20-cv-00111-DOC-ADS
8:20-cv-00578-DOC-ADS

Case in other court: Superior Court of California, County of Orange, 30-02019-01116397

Cause: 29:1001 E.R.I.S.A.: Employee Retirement

**Plaintiff**

| | | |
|---|---|---|
| **Women's Recovery Center, LLC**<br>*a California limited liability company* | represented by | **Damon D Eisenbrey**<br>Callahan and Blaine APLC<br>3 Hutton Centre Drive 9th Floor<br>Santa Ana, CA 92707<br>714-241-4444<br>Fax: 714-241-4445<br>Email: deisenbrey@callahan-law.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Daniel J Callahan**<br>Callahan and Blaine APLC<br>3 Hutton Centre Drive 9th Floor<br>Santa Ana, CA 92707<br>714-241-4444<br>Fax: 714-241-4445<br>Email: dan@callahan-law.com |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Susolik**
Callahan and Blaine APLC
3 Hutton Centre Drive 9th Floor
Santa Ana, CA 92707
714-241-4444
Fax: 714-241-4445
Email: esr@callahan-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
Callahan and Blaine APLC
3 Hutton Centre Drive 9th Floor
Santa Ana, CA 92707
714-241-4444
Fax: 714-241-4445
Email: rcollins@callahan-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**TML Recovery LLC**          represented by   **Damon D Eisenbrey**
*a California limited liability company*        (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Daniel J Callahan**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Edward Susolik**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Richard T Collins**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Southern California Recovery**   represented by   **Damon D Eisenbrey**
**Centers Oceanside LLC**                           (See above for address)
*a California limited liability company*            *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Susolik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MMR Services LLC**                    represented by   **Damon D Eisenbrey**
*a California limited liability company*                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Daniel J Callahan**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Edward Susolik**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Richard T Collins**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Southern California Addiction**       represented by   **Damon D Eisenbrey**
**Center Inc**                                           (See above for address)
*a California corporation*                               *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Daniel J Callahan**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Edward Susolik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kool Living Inc**                 represented by **Damon D Eisenbrey**
*a California corporation*                           (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Daniel J Callahan**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Edward Susolik**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Richard T Collins**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Pacific Palms Recovery LLC**       represented by **Damon D Eisenbrey**
*a California limited liability company*             (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Daniel J Callahan**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Edward Susolik**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

<table>
<tr><td></td><td></td><td>Richard T Collins<br>(See above for address)<br><em>LEAD ATTORNEY</em><br><em>ATTORNEY TO BE NOTICED</em></td></tr>
</table>

**Plaintiff**

| **Addiction Health Alliance LLC**<br>*a California limited liability company* | represented by | **Damon D Eisenbrey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Daniel J Callahan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Edward Susolik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Richard T Collins**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| **DR Recovery Encinitas LLC**<br>*a California limited liability<br>corporation* | represented by | **Damon D Eisenbrey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Daniel J Callahan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Edward Susolik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Richard T Collins**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Inland Detox Inc**<br>*a California corporation* | represented by | **Damon D Eisenbrey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel J Callahan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Edward Susolik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Richard T Collins**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **12 South LLC**<br>*a California limited liability company* | represented by | **Damon D Eisenbrey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel J Callahan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Edward Susolik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Richard T Collins**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **NTR Resources LLC**<br>*a California limited liability company* | represented by | **Damon D Eisenbrey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel J Callahan** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Susolik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Anthem Blue Cross Life and Health**         represented by   **Amir Shlesinger**
**Insurance Company**                                          Reed Smith LLP
*a California corporation*                                     355 South Grand Avenue Suite 2900
                                                               Los Angeles, CA 90071-1514
                                                               213-457-8000
                                                               Fax: 213-457-8080
                                                               Email: ashlesinger@reedsmith.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Kenneth N Smersfelt**
                                                               Reed Smith LLP
                                                               355 South Grand Avenue Suite 2900
                                                               Los Angeles, CA 90071-1514
                                                               213-457-8000
                                                               Fax: 213-457-8080
                                                               Email: ksmersfelt@reedsmith.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Lorenzo E Gasparetti**
                                                               Reed Smith LLP
                                                               355 South Grand Avenue Suite 2900
                                                               Los Angeles, CA 90071-1514
                                                               213-457-8038
                                                               Fax: 213-457-8080
                                                               Email: lgasparetti@reedsmith.com
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Inc.**                               represented by   **Amir Shlesinger**

*an Indiana corporation*
*doing business as*
Anthem Health, Inc.

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Anthem Companies of California**

*a California corporation*

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Anthem Companies, Inc.**
*an Indiana corporation, doing business*
*in Wisconsin*
*doing business as*
Blue Cross and Blue Shield of
Wisconsin

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Insurance Companies, Inc.**
*an Indiana corporation, doing business*
*in Indiana as ANTHEM BLUE CROSS*
*AND BLUE SHIELD OF INDIANA;*

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viant, Inc.**                             represented by   **Errol J King**
*a Nevada corporation*                                      Phelps Dunbar LLP
                                                            II City Plaza
                                                            400 Convention Street Suite 1100
                                                            Baton Rouge, LA 70802
                                                            225-376-0207
                                                            Fax: 225-381-9197
                                                            Email: errol.king@phelps.com
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jenifer C Wallis**
                                                            Munck Wilson Mandala
                                                            1925 Century Park East Suite 2300
                                                            Los Angeles, CA 90067
                                                            310-286-0377
                                                            Fax: 972-628-3616
                                                            Email: jwallis@munckwilson.com
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Multiplan, Inc.**                         represented by   **Errol J King**
*a New York corporation*                                    (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jenifer C Wallis**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**HealthRisk Resource Group, Inc.**
*an Iowa corporation*
*TERMINATED: 02/05/2020*

**Defendant**

**DOES**

*1 through 25, inclusive*

**Defendant**

**Blue Cross of California**
*a California corporation*

**Defendant**

**Blue Cross and Blue Shield of Alabama**
*an Alabama corporation*

**Defendant**

**Blue Cross and Blue Shield of Arizona Inc**
*an Arizona corporation*

**Defendant**

**USAble Mutual Insurance Company**
*an Arkansas corporation doing business in Arkansas as ARKANSAS BLUE CROSS AND BLUE SHIELD;*

**Defendant**

**Anthem Health Plans Inc**
*a Connecticut corporation, doing business in Connecticut AS ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT*

**Defendant**

**Blue Shield of Florida Inc**
*a Florida corporation*

**Defendant**

**Blue Cross and Blue Shield of Georgia Inc**
*a Georgia corporation*

**Defendant**

**Health Care Service Corporation**
*an Illinois corporation, doing business in Illinois as BLUE CROSS BLUE SHIELD OF ILLINOIS IN Oklahoma as BLUE CROSS AND BLUE SHIELD OF OKLAHOMA and in Texas as BLUE CROSS AND BLUE SHEILD OF TEXAS;*

**Defendant**

**Blue Cross and Blue Shield of Kansas
City Inc**
*a Missouri corporation*

**Defendant**

**Anthem Health Plans of Kentucky
Inc**
*a Kentucky corporation, doing business
in Kentucky as BLUE CROSS BLUE
SHIELD OF KENTUCKY;*

**Defendant**

**HMO Louisiana Inc**
*doing business in Louisiana as BLUE
CROSS AND BLUE SHIELD OF
LOUISIANA;*

**Defendant**

**Blue Cross and Blue Shield of
Massachusetts Inc**
*a Massachusetts corporation;*

**Defendant**

**BCBSM Inc**
*a Minnesota corporation, doing
business in Minnesota as BLUE CROSS
AND BLUE SHIELD OF MINNESOTA,
INC.;*

**Defendant**

**HMO Missouri Inc**
*a Missouri corporation, doing business
in Missouri as ANTHEM BLUE CROSS
AND BLUE SHIELD OF MISSOURI*

**Defendant**

**Blue Cross and Blue Shield of
Nebraska Inc**
*Nebraska corporation;*

**Defendant**

**Blue Cross and Blue Shield of North
Carolina**
*a North Carolina corporation;*

**Defendant**

**Community Insurance Company**
*an Ohio corporation, doing business in Ohio as ANTHEM BLUE CROSS AND BLUE SHIELD OF OHIO;*

**Defendant**

**Blue Cross and Blue Shield of South Carolina**
*a South Carolina corporation;*

**Defendant**

**Blue Cross and Blue Shield of Rhode Island**
*a Rhode Island corporation;*

**Defendant**

**Blue Cross Blue Shield of Tennessee Inc**
*a Tennessee corporation;*

**Defendant**

**Anthem Health Plans of Virginia Inc**
*a Virginia corporation, doing business in Virginia as ANTHEM BLUE CROSS AND BLUE SHIELD OF VIRGINIA, INC.*

**Defendant**

**Capital Blue Cross**
*Pennsylvania corporation;*

**Defendant**

**Carefirst Bluechoice Inc**
*a District of Columbia corporation;*

**Defendant**

**Carefirst of Maryland Inc**
*a Maryland corporation, doing business in Maryland as CAREFIRST BLUE CROSS BLUE SHIELD;*

**Defendant**

**Empire HealthChoice Assurance Inc**
*a New York corporation doing business in New York as EMPIRE BLUE CROSS BLUE SHIELD;*

**Defendant**

**Excellus Health Plan Inc**
*a New York corporation, doing business*
*in New York as EXCELLUS BLUE*
*CROSS BLUE SHIELD;*

<u>**Defendant**</u>

**HealthKeepers Inc**
*a Virginia corporation;*

<u>**Defendant**</u>

**Healthy Alliance Life Insurance**
**Company**
*a Missouri corporation;*

<u>**Defendant**</u>

**Highmark Blue Cross Blue Shield**
*a Pennsylvania corporation, doing*
*business in Pennsylvania as BLUE*
*CROSS BLUE SHIELD OF WESTERN*
*PENNSYLVANIA;*

<u>**Defendant**</u>

**Highmark Blue Shield**
*Pennsylvania corporation, doing*
*business in Pennsylvania as*
*PENNSYLVANIA BLUE SHIELD;*

<u>**Defendant**</u>

**Independence Hospital Indemnity**
**Plan Inc**
*a Pennsylvania corporation*
*formerly known as*
Independence Blue Cross

<u>**Defendant**</u>

**Premera Blue Cross**
*a Washington corporation;*

<u>**Defendant**</u>

**Regence Blue Cross Blue Shield of**
**Oregon**
*an Oregon corporation, doing business*
*in Oregon as BLUE CROSS BLUE*
*SHIELD OF OREGON*

<u>**Defendant**</u>

**Regence Blue Shield**
*a Washington corporation;*

**Defendant**

**Rocky Mountain Hospital and
Medical Service Inc**
*a Colorado corporation, doing business
in Colorado as ANTHEM BLUE
CROSS AND BLUE SHIELD OF
COLORADO;*

**Defendant**

**Blue Cross and Blue Shield
Association**
*an Illinois corporation, inclusive*

**Special Master**

Stephen G Larson                          represented by   **Stephen G Larson**
                                                           Larson O'Brien LLP
                                                           555 South Flower Street Suite 4400
                                                           Los Angeles, CA 90071
                                                           213-436-4864
                                                           Email: slarson@larsonobrienlaw.com
                                                           PRO SE

                                                           **Richard T Collins**
                                                           Callahan and Blaine APLC
                                                           3 Hutton Centre Drive 9th Floor
                                                           Santa Ana, CA 92707
                                                           714-241-4444
                                                           Fax: 714-241-4445
                                                           Email: rcollins@callahan-law.com
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/17/2020 | 1 | NOTICE OF REMOVAL from Superior Court of the State of California, County of Orange, case number. 30-2019-01116397-CU-BC-CJC Receipt No: 0973-25146928 - Fee: $400, filed by Defendants Anthem Insurance Companies, Inc., Anthem Inc. dba Anthem Health, Inc., Anthem Blue Cross Life and Health Insurance Company, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - State Court File) (Attorney Lorenzo E Gasparetti added to party Anthem Blue Cross Life and Health Insurance Company(pty:dft), Attorney Lorenzo E Gasparetti added to party Anthem Inc. dba Anthem Health, Inc. (pty:dft), Attorney Lorenzo E Gasparetti added to party Anthem Insurance Companies, Inc.(pty:dft), Attorney Lorenzo E Gasparetti added to party The Anthem Companies of California(pty:dft), Attorney Lorenzo E Gasparetti added to party The Anthem Companies, Inc.(pty:dft))(Gasparetti, Lorenzo) (Entered: 01/17/2020) |

| 01/17/2020 | 2 | CIVIL COVER SHEET filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 3 | CERTIFICATE of Interested Parties filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc., (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 4 | NOTICE of Related Case(s) filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 5 | PROOF OF SERVICE filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc., re Notice of Related Case(s), 4 , Certificate/Notice of Interested Parties, 3 , Notice of Removal (Attorney Civil Case Opening),,, 1 , Civil Cover Sheet (CV-71) 2 served on 01/17/2020. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | | CONFORMED COPY OF COMPLAINT filed by Plaintiff Women's Recovery Center, LLC in Orange County Superior Court on 12/5/2019, attached as Exhibit A. (jtil) (Entered: 01/22/2020) |
| 01/22/2020 | 6 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge Autumn D. Spaeth. (jtil) (Entered: 01/22/2020) |
| 01/22/2020 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 01/22/2020) |
| 01/23/2020 | 8 | STIPULATION Extending Time to Answer the complaint as to Anthem Insurance Companies, Inc. answer now due 2/21/2020; Anthem Inc. answer now due 2/21/2020; Anthem Blue Cross Life and Health Insurance Company answer now due 2/21/2020; The Anthem Companies of California answer now due 2/21/2020; The Anthem Companies, Inc. answer now due 2/21/2020, filed by Defendants Anthem Insurance Companies, Inc.; Anthem Inc.; Anthem Blue Cross Life and Health Insurance Company; The Anthem Companies of California; The Anthem Companies, Inc..(Gasparetti, Lorenzo) (Entered: 01/23/2020) |
| 01/23/2020 | 9 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER upon filing of the complaint by Judge David O. Carter. (kd) (Entered: 01/23/2020) |
| 02/05/2020 | 10 | NOTICE OF DISMISSAL filed by plaintiff Women's Recovery Center, LLC pursuant to FRCP 41a(1) as to HealthRisk Resource Group, Inc.. (Eisenbrey, Damon) (Entered: 02/05/2020) |
| 02/10/2020 | 11 | STIPULATION for Extension of Time to File Answer to 03/23/20 filed by |

| | | Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Proposed Order)(Gasparetti, Lorenzo) (Entered: 02/10/2020) |
|---|---|---|
| 02/12/2020 | 12 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: The Stipulations to Extend Time to File Answer to 3/23/20 are GRANTED by the Court 11 . ( Status Conference set for 3/2/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 02/12/2020) |
| 02/19/2020 | 13 | Joint REQUEST for Protective Order for production of confidential, proprietary, or private information filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 02/19/2020) |
| 02/21/2020 | 14 | STIPULATED PROTECTIVE ORDER by Magistrate Judge Autumn D. Spaeth granting 13 Request for Protective Order. (kh) (Entered: 02/21/2020) |
| 03/02/2020 | 15 | MINUTES OF Status Conference held before Judge David O. Carter: The Court orders the above listed cases to be consolidated with SACV20-102 DOC (ADSx): Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Co. et al. All future filings shall be filed only under the low number case, SACV20-102 DOC(ADSx). SEE DOCUMENT FOR FURTHER INFORMATION. Court Reporter: CourtSmart. (twdb) (Entered: 03/04/2020) |
| 03/04/2020 | 16 | ORDER SETTING SCHEDULING CONFERENCE By Judge David O. Carter. Scheduling Conference set for 4/27/2020 at 08:30 AM before Judge David O. Carter. (kd) Modified on 3/7/2020 (kd). (Entered: 03/04/2020) |
| 03/10/2020 | 17 | NOTICE of Interested Parties filed by Defendants Multiplan, Inc., Viant, Inc., (Attorney Jenifer C Wallis added to party Multiplan, Inc.(pty:dft), Attorney Jenifer C Wallis added to party Viant, Inc. (pty:dft))(Wallis, Jenifer) (Entered: 03/10/2020) |
| 03/17/2020 | 18 | REQUEST of Non-Resident Attorney Errol J. King to Appear Pro Hac Vice on behalf of Defendants Multiplan, Inc., Viant, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. ACACDC-25765232) filed by Defendants Multiplan, Inc., Viant, Inc.. (Attachments: # 1 Proposed Order) (Wallis, Jenifer) (Entered: 03/17/2020) |
| 03/18/2020 | 19 | ORDER by Judge David O. Carter: Granting 18 Non-Resident Attorney Errol J. King APPLICATION to Appear Pro Hac Vice on behalf of Viant, Inc., MultiPlan, Inc., Defendants, designating Jenifer C. Wallis as local counsel. (twdb) (Entered: 03/19/2020) |
| 03/31/2020 | 20 | Joint REQUEST for Protective Order for for Protective Order for production of confidential, proprietary or private information filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 03/31/2020) |
| | | |

| 04/01/2020 | 21 | AMENDED PROTECTIVE ORDER by Magistrate Judge Autumn D. Spaeth: granting 20 Request for Protective Order. (see document for details) (hr) (Entered: 04/01/2020) |
| 04/06/2020 | 22 | TRANSCRIPT ORDER as to plaintiffs Women's Recovery Center, LLC for Court Smart (CS). Court will contact Jeannie Kirwin at jkirwin@callahan-law.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Eisenbrey, Damon) (Entered: 04/06/2020) |
| 04/08/2020 | 23 | TRANSCRIPT ORDER as to Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc. for Court Smart (CS). Court will contact Mary Hong at mhong@reedsmith.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Gasparetti, Lorenzo) (Entered: 04/08/2020) |
| 04/13/2020 | 24 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 10 days, filed by Plaintiff Women's Recovery Center, LLC.. (Attachments: # 1 Exhibit A - Email correspondence)(Collins, Richard) (Entered: 04/13/2020) |
| 04/20/2020 | 25 | SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference 16 is continued to 10:15 a.m. on April 27, 2020. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/20/2020) |
| 04/27/2020 | 26 | MINUTES OF Scheduling Conference (Not held; Continued) before Judge David O. Carter. Telephone Scheduling Conference continued to 5/4/2020 at 09:30 AM before Judge David O. Carter. The Court appoints the Hon. Stephen G. Larson (retired), as Special Master. SEE DOCUMENT FOR FURTHER INFORMATION. Court Reporter: Deborah Parker. (twdb) (Entered: 04/27/2020) |
| 04/27/2020 | 27 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: ORDER RE: APPOINTMENT OF SPECIAL MASTER. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 04/28/2020) |
| 04/29/2020 | 28 | SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference is set for 5/4/2020 at 8:45 AM. Counsel shall take notice of the new time. Call-in information has been emailed to the parties. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/29/2020) |
| 04/29/2020 | 29 | **AMENDED** SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference is set for 5/4/2020 at 11:00 AM. Counsel shall take notice of the new time. Call-in information has been emailed to the parties. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/29/2020) |
| 04/30/2020 | 30 | AFFIDAVIT by affiant: Special Master *Affidavit Pursuant to Federal Rule of* |

| | | |
|---|---|---|
| | | *Civil Procedure 53(a)(2)* filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 04/30/2020) |
| 04/30/2020 | 31 | SPECIAL MASTER'S STANDING ORDER filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 04/30/2020) |
| 04/30/2020 | 32 | SPECIAL MASTER'S STANDING ORDER by Judge David O. Carter, RE: 31 . SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 04/30/2020) |
| 05/01/2020 | 33 | CONSOLIDATED COMPLAINT *AMENDED* related to: Complaint - (Discovery) ; JURY DEMAND, filed by plaintiffs Women's Recovery Center, LLC(Eisenbrey, Damon) (Entered: 05/01/2020) |
| 05/03/2020 | 34 | SCHEDULING NOTICE by Judge David O. Carter: After speaking with Special Master Larson, the Court RESETS the hearing on Monday May 4, 2020 to Wednesday June 3, 2020 at 8:30 AM. Scheduling Conference continued to 6/3/2020 at 8:30 AM before Judge David O. Carter. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dgo) TEXT ONLY ENTRY (Entered: 05/03/2020) |
| 05/04/2020 | 35 | TRANSCRIPT ORDER as to Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc. for Court Smart (CS). Court will contact Mary Hong at mhong@reedsmith.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Gasparetti, Lorenzo) (Entered: 05/04/2020) |
| 05/04/2020 | 36 | Request for Clerk to Issue Summons on Consolidated Complaint 33 filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Eisenbrey, Damon) (Entered: 05/04/2020) |
| 05/05/2020 | 37 | 21 DAY Summons Issued re Consolidated First Amended Complaint 33 as to defendant Blue Cross of California. (twdb) (Entered: 05/05/2020) |
| 05/19/2020 | 38 | TRANSCRIPT for proceedings held on 04/27/2020, 10:10 a.m. Court Reporter: Deborah D. Parker, CSR 10342, phone number transcripts@ddparker.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through DEBORAHDPARKER.COM or PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 6/9/2020. Redacted Transcript Deadline set for 6/19/2020. Release of Transcript Restriction set for 8/17/2020. (dpa) (Entered: 05/20/2020) |
| 05/27/2020 | 39 | Special Master's Report & Recommendation No. 1 filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 05/27/2020) |

| 05/28/2020 | 40 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: ORDER RE: SCHEDULING CONFERENCE AND RESPONSIVE PLEADING DEADLINE. The Court CONTINUES the scheduling conference and adopts the entirety of the report and recommendation. The Court further EXTENDS Defendants' deadline for a responsive pleading to August 3, 2020. re: 39 . ( Scheduling Conference continued to 7/6/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 05/28/2020) |
|---|---|---|
| 06/03/2020 | 41 | [DOCUMENT STRICKEN PURSUANT TO COURT ORDER #42] NOTICE OF MOTION AND MOTION to Dismiss Case *MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT* filed by Defendants Multiplan, Inc., Viant, Inc.. Motion set for hearing on 7/27/2020 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Declaration of Errol King, # 2 Proposed Order Granting Motion to Dismiss) (Wallis, Jenifer) Modified on 6/4/2020 (twdb). (Entered: 06/03/2020) |
| 06/03/2020 | 42 | MINUTES (IN CHAMBERS) by Judge David O. Carter: Striking 41 MOTION to Dismiss. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 06/04/2020) |
| 06/29/2020 | 43 | SCHEDULING NOTICE by Judge David O. Carter. The Court hereby continues the in-person Scheduling Conference to JULY 7, 2020, at 08:30 AM before Judge David O. Carter. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 06/29/2020) |
| 06/30/2020 | 44 | Special Master's Report & Recommendation No. 2 filed by Special Master Stephen G Larson (Attachments: # 1 Exhibit A)(Larson, Stephen) (Entered: 06/30/2020) |
| 07/01/2020 | 45 | ORDER re: SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 2 by Judge David O. Carter 44 . SEE DOCUMENT FOR FURTHER INFORMATION. ( Scheduling Conference continued to 8/3/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 07/01/2020) |
| 07/30/2020 | 46 | Special Master's Report & Recommendation No. 3 filed by Special Master Stephen G Larson (Attachments: # 1 Exhibit A)(Larson, Stephen) (Entered: 07/30/2020) |
| 07/30/2020 | 47 | ORDER re: SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 3 by Judge David O. Carter. Scheduling Conference continued to 9/9/20 at 8:30 am (ECF. NO. 45 . Revised Joint Rule 26(F) Report due 8/24/20. Plaintiff shall file the second amended consolidated complaint on 8/24/20. Responsive pleading deadline shall be 11/24/20. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 07/30/2020) |
| 08/24/2020 | 48 | JOINT REPORT Rule 26(f) Discovery Plan *Revised* ; estimated length of trial 10 days, filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, |

| | | |
|---|---|---|
| | | TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G Larson.. (Attachments: # 1 Exhibit A Newly Added Out of State Defendants) (Collins, Richard) (Entered: 08/24/2020) |
| 08/24/2020 | 49 | SECOND AMENDED COMPLAINT against Defendants All Defendants amending Consolidated Complaint 33 , filed by plaintiff MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Women's Recovery Center, LLC, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, Addiction Health Alliance LLC, NTR Resources LLC, Stephen G Larson, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC(Attorney Richard T Collins added to party Stephen G Larson(pty:sm))(Collins, Richard) (Entered: 08/24/2020) |
| 09/06/2020 | 50 | SCHEDULING NOTICE by Judge David O. Carter. The Court continues the Scheduling Conference to 2:00 p.m. on SEPTEMBER 9, 2020. The Court will meet with the parties at the courthouse doors.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 09/06/2020) |
| 09/08/2020 | 51 | *Request for Counsel to Appear Via Telephone for Scheduling Conference* (King, Errol) (Entered: 09/08/2020) |
| 09/08/2020 | 52 | SCHEDULING NOTICE by Judge David O. Carter. The Court GRANTS out-of-state counsel Errol King's Request for Counsel to Appear Via Telephone for Scheduling Conference. Counsel shall call-in via his local counsel, who must appear in person. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 09/08/2020) |
| 09/09/2020 | 53 | Request for Clerk to Issue Summons on Amended Complaint/Petition,, 49 filed by plaintiff 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons, # 18 Summons, # 19 Summons, # 20 Summons, # 21 Summons, # 22 Summons, # 23 Summons, # 24 Summons, # 25 Summons, # 26 Summons, # 27 Summons, # 28 Summons, # 29 Summons, # 30 Summons, # 31 Summons, # 32 Summons, # 33 Summons, # 34 Summons)(Eisenbrey, Damon) (Entered: 09/09/2020) |
| 09/09/2020 | 54 | MINUTES OF Scheduling Conference held and completed before Judge David O. Carter. Court and counsel confer outside the presence of the court reporter. Counsel to file a stipulation with proposed dates and briefing schedule on or before September 16, 2020. Court Reporter: not present. (lc) (Entered: 09/10/2020) |
| 09/10/2020 | 55 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield Association. (iv) (Entered: 09/10/2020) |

| 09/10/2020 | 56 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans Inc. (iv) (Entered: 09/10/2020) |
| --- | --- | --- |
| 09/10/2020 | 57 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Florida Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 58 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Kansas City Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 59 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans of Kentucky Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 60 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HMO Louisiana Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 61 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Nebraska Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 62 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of North Carolina. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 63 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Alabama. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 64 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant USAble Mutual Insurance Company. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 65 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Arizona Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 66 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Massachusetts Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 67 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Rhode Island. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 68 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant BCBSM Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 69 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Capital Blue Cross. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 70 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans of Virginia Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 71 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross Blue Shield of Tennessee Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 72 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Rocky Mountain Hospital and Medical Service Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 73 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of South Carolina. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 74 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant |

| | | |
|---|---|---|
| | | Carefirst Bluechoice Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 75 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Regence Blue Shield. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 76 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Premera Blue Cross. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 77 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Independence Hospital Indemnity Plan Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 78 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Regence Blue Cross Blue Shield of Oregon. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 79 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Florida Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 80 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Carefirst of Maryland Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 81 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Community Insurance Company. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 82 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Empire HealthChoice Assurance Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 83 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HMO Missouri Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 84 | 21 DAY Summons Issued re Second Amended Complaint/Petition,, 49 as to defendant Highmark Blue Shield. (twdb) (Entered: 09/11/2020) |
| 09/10/2020 | 85 | 21 DAY Summons Issued re Second Amended Complaint/Petition, 49 as to defendant Highmark Blue Cross Blue Shield a Pennsylvania corporation, doingbusiness in Pennsylvania as BLUE CROSS BLUE SHIELD OF WESTERN. (twdb) (Entered: 09/11/2020) |
| 09/10/2020 | 86 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Excellus Health Plan Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 87 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Healthy Alliance Life Insurance Company. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 88 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HealthKeepers Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 89 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Health Care Service Corporation. (iv) (Entered: 09/11/2020) |
| 09/16/2020 | 90 | STIPULATION for Review of Briefing Schedule and Related Dates re Scheduling Conference - optional html form, 54 *filed by Viant, Inc. and MultiPlan, Inc.* filed by Defendants Viant, Inc..(King, Errol) (Entered: 09/16/2020) |
| | | |

| 09/16/2020 | 91 | [PROPOSED ORDER, filed as] STIPULATION for Order Granting Stipulation Regarding Briefing Schedule and Related Dates (Rec Doc 90) filed by Viant, Inc. and MultiPlan, Inc. filed by Defendants Viant, Inc..(King, Errol) Modified on 9/17/2020 (twdb). (Entered: 09/16/2020) |
| --- | --- | --- |
| 09/18/2020 | 92 | ORDER GRANTING STIPULATION REGARDING BRIEFING SCHEDULE AND RELATED DATES (SEE APPLICABLE DEADLINES AS SPECIFIED PER ATTACHED APPENDIX SCHEDULE THEREIN) 90 by Judge David O. Carter (lc) (Entered: 09/21/2020) |
| 09/25/2020 | 93 | ORDER OF THE CHIEF JUDGE (#20-132) approved by Judge Philip S. Gutierrez. Pursuant to the recommended procedure adopted by the Court for the CREATION OF CALENDAR of Judge John W. Holcomb, this case is transferred from Judge David O. Carter to the calendar of Judge John W. Holcomb for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:20-cv-00102 JWH-ADSx. (rrp) (Entered: 09/30/2020) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 10/05/2020 08:06:35 | | | |
| **PACER Login:** | KirklandPACER | **Client Code:** | 20098-0230 |
| **Description:** | Docket Report | **Search Criteria:** | 8:20-cv-00102-JWH-ADS End date: 10/5/2020 |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |

1   **CALLAHAN & BLAINE, APLC**
    Daniel J. Callahan (Bar No. 91490)
2      dcallahan@callahan-law.com
    Edward Susolik (Bar No. 151081)
3      esusolik@callahan-law.com
    Richard T. Collins (Bar No. 166577)
4      rcollins@callahan-law.com
    Damon D. Eisenbrey (Bar No. 215927)
5      deisenbrey@callahan-law.com
    Adrian L. Canzoneri (Bar No. 265168)
6      acanzoneri@callahan-law.com
    3 Hutton Centre Drive, Ninth Floor
7   Santa Ana, California 92707
    Telephone: (714) 241-4444
8   Facsimile:  (714) 241-4445

9   Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOMAN'S RECOVERY CENTER, LLC, a California limited liability company; TML RECOVERY, LLC, a California limited liability company; SOUTHERN CALIFORNIA RECOVERY CENTERS OCEANSIDE, LLC, a California limited liability company; MMR SERVICES, LLC, a California limited liability company; SOUTHERN CALIFORNIA ADDICTION CENTER, INC., a California corporation; KOOL LIVING, INC., a California corporation; PACIFIC PALMS RECOVERY, LLC, a California limited liability company; ADDICTION HEALTH ALLIANCE, LLC, a California limited liability company; DR RECOVERY ENCINITAS, LLC, a California limited liability company; INLAND DETOX, INC., a California corporation; 12 SOUTH, LLC, a California limited liability company; and NTR RESOURCES, LLC, a California limited liability company, | **Case No.: 8:20-cv-00102-DOC-ADSx** *Assigned to Hon. David O. Carter* Consolidated with: 8:20-cv-00104    8:20-cv-00106 8:20-cv-00107    8:20-cv-00108 8:20-cv-00109    8:20-cv-00110 8:20-cv-00111    8:20-cv-00112 8:20-cv-00114    8:20-cv-00577 8:20-cv-00578 This Document relates to: **"ALL ACTIONS"** **SECOND AMENDED CONSOLIDATED COMPLAINT FOR:** 1.  **CLAIMS FOR PLAN BENEFITS UNDER ERISA, 29 U.S.C. §1132(a)(1)(B)** 2.  **BREACH OF WRITTEN CONTRACT** 3.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** 4.  **BREACH OF IMPLIED CONTRACT** 5.  **BREACH OF ORAL CONTRACT** |
|                  Plaintiffs, | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

v.

ANTHEM BLUE CROSS LIFE AND
HEALTH INSURANCE COMPANY, a
California corporation;
ANTHEM INC., an Indiana corporation,
doing business in California as ANTHEM
HEALTH, INC.;
THE ANTHEM COMPANIES OF
CALIFORNIA, a California corporation;
THE ANTHEM COMPANIES, INC., an
Indiana corporation, doing business in
Wisconsin as BLUE CROSS AND
BLUE SHIELD OF WISCONSIN;
ANTHEM INSURANCE COMPANIES,
INC., an Indiana corporation, doing
business in Indiana as ANTHEM BLUE
CROSS AND BLUE SHIELD OF
INDIANA;
BLUE CROSS OF CALIFORNIA, a
California corporation;
VIANT, INC., a Nevada corporation;
MULTIPLAN, INC., a New York
corporation;
BLUE CROSS AND BLUE SHIELD OF
ALABAMA, an Alabama corporation;
BLUE CROSS AND BLUE SHIELD
OF ARIZONA, INC., an Arizona
corporation;
USABLE MUTUAL INSURANCE
COMPANY, an Arkansas corporation,
doing business in Arkansas as
ARKANSAS BLUE CROSS AND
BLUE SHIELD;
ANTHEM HEALTH PLANS, INC., a
Connecticut corporation, doing business
in Connecticut as ANTHEM BLUE
CROSS AND BLUE SHIELD OF
CONNECTICUT;
BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC., a Florida corporation;
BLUE CROSS AND BLUE SHIELD OF
GEORGIA, INC., a Georgia corporation;
HEALTH CARE SERVICE
CORPORATION, an Illinois corporation,
doing business in Illinois as BLUE
CROSS BLUE SHIELD OF ILLINOIS,
in Oklahoma as BLUE CROSS AND
BLUE SHIELD OF OKLAHOMA and in
Texas as BLUE CROSS AND BLUE
SHIELD OF TEXAS;
BLUE CROSS AND BLUE SHIELD OF
KANSAS CITY, INC., a Missouri
corporation;
ANTHEM HEALTH PLANS OF

**6. PROMISSORY ESTOPPEL**
**7. UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  KENTUCKY, INC., a Kentucky
corporation, doing business in Kentucky
2  as BLUE CROSS BLUE SHIELD OF
KENTUCKY;
3  HMO LOUISIANA, INC., doing
business in Louisiana as BLUE CROSS
4  AND BLUE SHIELD OF LOUISIANA;
BLUE CROSS AND BLUE SHIELD OF
5  MASSACHUSETTS, INC., a
Massachusetts corporation;
6  BCBSM, INC., a Minnesota corporation,
doing business in Minnesota as BLUE
7  CROSS AND BLUE SHIELD OF
MINNESOTA, INC.;
8  HMO MISSOURI, INC., a  Missouri
corporation, doing business in Missouri
9  as ANTHEM BLUE CROSS AND
BLUE SHIELD OF MISSOURI;
10  BLUE CROSS AND BLUE SHIELD OF
NEBRASKA, INC., a Nebraska
11  corporation;
BLUE CROSS AND BLUE SHIELD OF
12  NORTH CAROLINA, a North Carolina
corporation;
13  COMMUNITY INSURANCE
COMPANY, an Ohio corporation, doing
14  business in Ohio as ANTHEM BLUE
CROSS AND BLUE SHIELD OF OHIO;
15  BLUE CROSS AND BLUE SHIELD OF
RHODE ISLAND, a Rhode Island
16  corporation;
BLUE CROSS AND BLUE SHIELD OF
17  SOUTH CAROLINA, a South Carolina
corporation;
18  BLUE CROSS BLUE SHIELD OF
TENNESSEE, INC., a Tennessee
19  corporation;
ANTHEM HEALTH PLANS OF
20  VIRGINIA, INC., a Virginia corporation,
doing business in Virginia as ANTHEM
21  BLUE CROSS AND BLUE SHIELD OF
VIRGINIA, INC.;
22  CAPITAL BLUE CROSS, a
Pennsylvania corporation;
23  CAREFIRST BLUECHOICE, INC., a
District of Columbia corporation;
24  CAREFIRST OF MARYLAND, INC., is
a Maryland corporation, doing business
25  in Maryland as CAREFIRST
BLUE CROSS BLUE SHIELD;
26  EMPIRE HEALTHCHOICE
ASSURANCE, INC., a New York
27  corporation, doing business in New York
as EMPIRE BLUE CROSS BLUE
28  SHIELD;

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  EXCELLUS HEALTH PLAN, INC., a
   New York corporation, doing business in
2  New York as EXCELLUS BLUE
   CROSS BLUE SHIELD;
3  HEALTHKEEPERS, INC., a Virginia
   corporation;
4  HEALTHY ALLIANCE LIFE
   INSURANCE COMPANY, a Missouri
5  corporation;
   HIGHMARK BLUE CROSS BLUE
6  SHIELD, a Pennsylvania corporation,
   doing business in Pennsylvania as BLUE
7  CROSS BLUE SHIELD OF WESTERN
   PENNSYLVANIA;
8  HIGHMARK BLUE SHIELD, a
   Pennsylvania corporation, doing business
9  in Pennsylvania as PENNSYLVANIA
   BLUE SHIELD;
10 INDEPENDENCE HOSPITAL
   INDEMNITY PLAN, INC., a
11 Pennsylvania corporation, formerly
   known as INDEPENDENCE BLUE
12 CROSS;
   PREMERA BLUE CROSS, a
13 Washington corporation;
   REGENCE BLUE CROSS BLUE
14 SHIELD OF OREGON, an Oregon
   corporation, doing business in Oregon as
15 BLUE CROSS BLUE SHIELD OF
   OREGON;
16 REGENCE BLUE SHIELD, a
   Washington corporation;
17 ROCKY MOUNTAIN HOSPITAL AND
   MEDICAL SERVICE, INC., a Colorado
18 corporation, doing business in Colorado
   as ANTHEM BLUE CROSS AND
19 BLUE SHIELD OF COLORADO; and
   BLUE CROSS AND BLUE SHIELD
20 ASSOCIATION, an Illinois corporation,
   inclusive,
21                    Defendants.

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1      Plaintiffs Woman's Recovery Center, LLC, TML Recovery, LLC, Southern

2   California Recovery Centers Oceanside, LLC, MMR Services, LLC, Southern

3   California Addiction Center, Inc., Kool Living, Inc., Pacific Palms Recovery, LLC,

4   Addiction Health Alliance, LLC, DR Recovery Encinitas, LLC, Inland Detox, Inc.,

5   12 South, LLC and NTR Resources, LLC (collectively "Plaintiffs") hereby allege

6   against Defendants Anthem Blue Cross Life and Health Insurance Company,

7   Anthem Inc., doing business in California as Anthem Health, Inc., The Anthem

8   Companies of California, The Anthem Companies, Inc., an Indiana corporation,

9   doing business in Wisconsin as Blue Cross and Blue Shield of Wisconsin, Anthem

10  Insurance Companies, Inc., doing business in Indiana as Anthem Blue Cross and

11  Blue Shield of Indiana, Blue Cross of California, Blue Cross and Blue Shield of

12  Alabama, Blue Cross and Blue Shield of Arizona, Inc., USAble Mutual Insurance

13  Company, doing business in Arkansas as Arkansas Blue Cross and Blue Shield,,

14  Anthem Health Plans, Inc., doing business in Connecticut as Anthem Blue Cross

15  and Blue Shield of Connecticut, Blue Cross and Blue Shield of Florida, Inc., Blue

16  Cross and Blue Shield of Georgia, Inc., Health Care Service Corporation, doing

17  business in Illinois as Blue Cross Blue Shield of Illinois, in Oklahoma as Blue Cross

18  and Blue Shield of Oklahoma, and in Texas as Blue Cross and Blue Shield of Texas,

19  Blue Cross and Blue Shield of Kansas City, Inc., Anthem Health Plans of Kentucky,

20  Inc., doing business in Kentucky as Blue Cross and Blue Shield of Kentucky, HMO

21  Louisiana, Inc., doing business in Louisiana as Blue Cross and Blue Shield of

22  Louisiana, Blue Cross Blue Shield of Massachusetts, Inc., BCBSM, Inc., doing

23  business in Minnesota Blue Cross and Blue Shield of Minnesota, Inc., HMO

24  Missouri, Inc., doing business in Missouri as Anthem Blue Cross and Blue Shield of

25  Missouri, Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield

26  of North Carolina, Community Insurance Company, doing business in Ohio as

27  Anthem Blue Cross and Blue Shield of Ohio, Blue Cross and Blue Shield of Rhode

28  Island, Blue Cross and Blue Shield of South Carolina, Blue Cross Blue Shield of

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Tennessee, Inc., Anthem Health Plans of Virginia, Inc., doing business in Virginia

as Anthem Blue Cross and Blue Shield of Virginia, Inc., Capital Blue Cross,

CareFirst BlueChoice, Inc., CareFirst of Maryland, Inc., doing business in Maryland

as CareFirst Blue Cross Blue Shield,  Empire HealthChoice Assurance, Inc., doing

business in New York as Empire Blue Cross Blue Shield, Excellus Health Plan, Inc.,

doing business in New York as Excellus Blue Cross Blue Shield, HealthKeepers,

Inc., Healthy Alliance Life Insurance Company,  Highmark Blue Cross Blue Shield,

doing business in Pennsylvania as Blue Cross Blue Shield of Western Pennsylvania,

Highmark Blue Shield, doing business in Pennsylvania as Pennsylvania Blue Shield,

Independence Hospital Indemnity Plan, Inc., formerly known as Independence Blue

Cross, Premera Blue Cross, Regence Blue Cross Blue Shield, doing business in

Oregon as Blue Cross Blue Shield of Oregon, Regence Blue Shield, Rocky

Mountain Hospital and Medical Service, Inc., doing business in Colorado as

Anthem Blue Cross and Blue Shield of Colorado, Blue Cross and Blue Shield

Association, Viant, Inc., and Multiplan, Inc. (collectively "Defendants") as follows:

## THE PARTIES

### The Plaintiffs

1. **Plaintiff Woman's Recovery Center, LLC ("Woman's Recovery")**

(TIN 81-5361991) is, and at all relevant times herein mentioned was, a California

limited liability company qualified to do business in the State of California.

Woman's Recovery is a substance use disorder treatment provider.  Woman's

Recovery is in the profession of helping individuals recover from alcoholism and

addiction and return to their families and communities as productive and

contributing members of society.  Woman's Recovery is, and at all relevant times

herein was, certified by the California Department of Health Care Services

("DHCS") to operate a substance use disorder treatment program and holds a

Centers for Medicare and Medicaid Services ("CMS"), Clinical Laboratory

Improvements Amendments ("CLIA"), certificate of waiver, and clinical laboratory

Case MDL No. 2406   Document 430-3   Filed 10/08/20   Page 31 of 137

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    registration with the California Department of Public Health ("DPH").

2        2.    **Plaintiff TML Recovery, LLC ("TML Recovery")** (TIN 46-

3    2916076) is, and at all relevant times herein mentioned was, a California limited

4    liability company qualified to do business in the State of California.  TML Recovery

5    is a substance use disorder treatment provider and clinical laboratory.  TML

6    Recovery is in the profession of helping individuals recover from alcoholism and

7    addiction and return to their families and communities as productive and

8    contributing members of society.  TML Recovery is, and at all relevant times herein

9    was, certified by the DHCS to operate a substance use disorder treatment program.

10   TML Recovery is, and at all relevant times herein was, accredited by The Joint

11   Commission, Behavioral Health Care Accreditation Program ("JCAHO"), and The

12   Commission on Accreditation of Rehabilitation Facilities International ("CARF"),

13   and has a CMS, CLIA, certificate of waiver.  At times relevant herein, TML

14   Recovery was licensed by the DPH and accredited by the CMS and Commission on

15   Office Laboratory Accreditation ("COLA") for the examination of materials derived

16   from the human body for the purpose of providing information for the diagnosis,

17   prevention, and treatment of human disease or impairment, and to determine,

18   measure, or otherwise describe the presence or absence of various substances or

19   organisms in the body.

20       3.    **Plaintiff Southern California Recovery Centers Oceanside, LLC**

21   **("SCRCO")** (TIN 47-4573182) is, and at all relevant times herein mentioned was, a

22   California limited liability company qualified to do business in the State of

23   California.  SCRCO is, and at all relevant times herein was, a substance use disorder

24   treatment provider and clinical laboratory.  SCRCO is in the profession of helping

25   individuals recover from alcoholism and addiction and return to their families and

26   communities as productive and contributing members of society.  SCRCO is, and at

27   all relevant times herein was, certified by the DHCS to operate a substance use

28   disorder treatment program.  SCRCO at all relevant times herein has had a CMS,

CLIA, certificate of waiver, and at times relevant herein, SCRCO was licensed by the DPH and accredited by the CMS and COLA for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body.

4. **Plaintiff MMR Services, LLC ("MMR Services")** (TIN 47-3018602) is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California. MMR Services is a clinical laboratory. MMR Services provides laboratory services to those in the process of recovering from mental health and substance use disorders. MMR Services is, and at all relevant times herein was, licensed by the DPH and accredited by the CMS and COLA for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body. MMR Services is a full service, CLIA compliant, high complexity reference specialty laboratory that combines state of the art laboratory testing processes, methodologies and cutting-edge technology for its specialization in urine toxicology drug confirmation testing which is designed to provide accurate results that help physicians and clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes core lab and PGx testing for accurate prescription therapy.

5. **Plaintiff Southern California Addiction Center, Inc. ("SCAC")** (TIN 47-5231947) is, and at all relevant times herein mentioned was, a California corporation qualified to do business in the State of California. At all times relevant herein, SCAC was a substance use disorder treatment provider in the profession of helping individuals recover from alcoholism and addiction and return to their

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    families and communities as productive and contributing members of society.

2    SCAC was, at all relevant times herein, licensed and certified by the DHCS to

3    operate a substance use disorder residential facility and treatment program,

4    accredited by JCAHO, and holder of a CMS, CLIA, certificate of waiver.

5        6.    **Plaintiff Kool Living, Inc. ("Kool Living")** (TIN 46-1249745) is, and

6    at all relevant times herein mentioned was, a California corporation qualified to do

7    business in the State of California.  At all times relevant herein, Kool Living was a

8    substance use disorder treatment provider in the profession of helping individuals

9    recover from alcoholism and addiction and return to their families and communities

10   as productive and contributing members of society.  Kool Living was, at all relevant

11   times herein, licensed and certified by the DHCS to operate a substance use disorder

12   residential facility and treatment program, accredited by JCAHO, and holder of a

13   CMS, CLIA, certificate of waiver.

14       7.    **Plaintiff Pacific Palms Recovery, LLC ("Pacific Palms")** (TIN 80-

15   0651115) is, and at all relevant times herein mentioned was, a California limited

16   liability company qualified to do business in the State of California.  Pacific Palms

17   is a substance use disorder treatment provider.  Pacific Palms is in the profession of

18   helping individuals recover from alcoholism and addiction and return to their

19   families and communities as productive and contributing members of society.

20   Pacific Palms is, and at all relevant times herein was, certified by the DHCS to

21   operate a substance use disorder treatment program.  Pacific Palms is, and at all

22   relevant times herein was, accredited by JCAHO and CARF, and has a CMS, CLIA,

23   certificate of waiver, and clinical laboratory registration with the DPH.

24       8.    **Plaintiff Addiction Health Alliance, LLC ("AHA")** (TIN 46-

25   5515765) is, and at all relevant times herein mentioned was, a California limited

26   liability company qualified to do business in the State of California.  AHA is a

27   substance use disorder treatment provider and clinical laboratory.  AHA is in the

28   profession of helping individuals recover from alcoholism and addiction and return

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

to their families and communities as productive and contributing members of society. AHA is, and at all relevant times herein was, licensed by the DHCS to operate a substance use disorder residential facility and accredited by JCAHO. AHA is also licensed by the DPH and accredited by the CMS and COLA for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body.

9. **Plaintiff DR Recovery, LLC ("DR Recovery")** (TIN 47-1361036) is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California. DR Recovery is a substance use disorder treatment provider and clinical laboratory. DR Recovery is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society. DR Recovery is, and at all relevant times herein was, certified by the DHCS to operate a substance use disorder treatment program. DR Recovery has, and at all relevant times herein had, a CMS, CLIA, certificate of waiver, and at times relevant herein, was licensed by the DPH and accredited by the CMS and COLA for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body.

10. **Plaintiff Inland Detox, Inc. ("Inland Detox")** (TIN 47-4597782) is, and at all relevant times herein mentioned was, a California corporation qualified to do business in the State of California. Inland Detox is a substance use disorder treatment provider. Inland Detox is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society. Inland Detox is, and at all relevant

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   times herein was, licensed and certified by the DHCS to operate a substance use

2   disorder residential facility and treatment program.  Inland Detox is, and at all

3   relevant times herein was, accredited by CARF, and holds, at all relevant times

4   herein held, a CMS, CLIA, certificate of waiver.

5       11.     **Plaintiff 12 South, LLC ("12 South")** (TIN 47-5125464) is, and at all

6   relevant times herein mentioned was, a California limited liability company

7   qualified to do business in the State of California.  12 South is a mental health and

8   substance use disorder treatment provider.  12 South is in the profession of helping

9   individuals recover from alcoholism and addiction and return to their families and

10  communities as productive and contributing members of society.  12 South is, and at

11  all relevant times herein was, certified by the DHCS to operate a substance use

12  disorder treatment program and accredited by JCAHO, and has a CMS, CLIA,

13  certificate of waiver.

14      12.     **Plaintiff NTR Resources, LLC ("NTR Resources")** (TIN 82-

15  4434097) is, and at all relevant times herein mentioned was, a California limited

16  liability company qualified to do business in the State of California.  NTR

17  Resources is a clinical laboratory.  NTR Resources provides laboratory services to

18  those in the process of recovering from mental health and substance use disorders.

19  NTR Resources is licensed by the DPH and accredited by the CMS and COLA for

20  the examination of materials derived from the human body for the purpose of

21  providing information for the diagnosis, prevention, and treatment of human disease

22  or impairment, and to determine, measure, or otherwise describe the presence or

23  absence of various substances or organisms in the body.  NTR Resources is a full

24  service, CLIA compliant, high complexity reference specialty laboratory that

25  combines state of the art laboratory testing processes, methodologies and cutting-

26  edge technology for its specialization in urine toxicology drug confirmation testing

27  which is designed to provide accurate results that help physicians and clinicians

28  create a scientifically designed drug monitoring strategy for optimal treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  outcomes, which includes core lab and PGx testing for accurate prescription

2  therapy.

3  **The Defendants**

4  13.    On information and belief, **Defendant Anthem Blue Cross Life and**

5  **Health Insurance Company ("Anthem Blue Cross")** is a California corporation,

6  which conducts insurance operations throughout California, representing to

7  consumers that Anthem Blue Cross, together with its syndicate, association,

8  subsidiaries and affiliates is a national health insurance organization.[1]   Anthem Blue

9  Cross operates as and owns the trademark "Anthem Blue Cross."

10  14.    On information and belief, **Defendant Anthem Inc. ("Anthem Inc.")**

11  is an Indiana corporation, doing business in California as Anthem Health, Inc.[2]

12  15.    On information and belief, **Defendant The Anthem Companies of**

13  **California ("The Anthem Companies")** is a California corporation.

---

[1]  In March 2020, the *Ames, et al. v. Anthem Blue Cross Life & Health Insurance Company*, *et al.*, Los Angeles Superior Court, Case No.: BC591623, class action settled.  The settlement benefits individuals who were enrolled under an Anthem PPO health plan and who requested coverage for behavioral health treatment for a co-morbid diagnosis (substance use disorder and mental health) between August 18, 2011 and February 4, 2020.  Included in the class are persons: (1) whose requests for authorization for substance use disorder treatment were denied because they had purportedly reached their plan's benefit limit; (2) whose requests for authorization for substance use disorder treatment were denied for lack of medical necessity under Anthem's criteria for assessing medical necessity of substance use disorders; and/or (3) who did not eek authorization of continued treatment because an Anthem representative or a provider told them that they had reached their plan's benefit limit for treatment of a substance use disorder in a calendar year. *See* Calif. Anthem Blue Cross Treatment Denial Class Action, retrieved on April 15, 2020 from https://topclassactions.com/lawsuit-settlements/open-lawsuit-settlements/insurance/calif-anthem-blue-cross-treatment-denial-class-action-settlement/; *see also*, Ames v. Anthem Notice of Settlement, retrieved from https://amessettlement.com/Home/portalid/0?portalid=0, on April 30, 2020.

[2]  On March 27, 2020, Geoffrey S. Berman, the United States Attorney for the Southern District of New York, announced that the United States filed a Medicare fraud lawsuit against Anthem, Inc., alleging that Anthem falsely certified certifying the accuracy of the diagnosis data it submitted to CMS, which enabled Anthem to obtain millions of dollars in Medicare funds to which it was not entitled. *See* Manhattan U.S. Attorney Files Civil Fraud Suit Against Anthem, Inc., For Falsely Certifying The Accuracy Of Its Diagnosis Data _ USAO-SDNY _ Department of Justice – Press Release Number: 20-100 (March 27, 2020), retrieved on March 31, 2020 from https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-files-civil-fraud-suit-against-anthem-inc-falsely-certifying; *see also*, pdf copy of the filed complaint (March, 26, 2020), retrieved on March 31, 2020 from https://www.justice.gov/usao-sdny/press-release/file/1262841/download.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

16. On information and belief, **Defendant The Anthem Companies, Inc.**, is an Indiana corporation, doing business in Wisconsin as **Blue Cross and Blue Shield of Wisconsin ("BCBS Wisconsin")**.

17. On information and belief, **Defendant Anthem Insurance Companies, Inc. ("Anthem Insurance Companies")** is an Indiana corporation, doing business in Indiana as **Anthem Blue Cross and Blue Shield of Indiana ("BCBS Indiana")**. "Anthem"® is a registered trademark of Anthem Insurance Companies.

18. On information and belief, **Defendant Blue Cross of California ("BCC")** is a California corporation. Anthem Blue Cross is the trade name of BCC.

19. On information and belief, **Defendant Blue Cross and Blue Shield of Alabama ("BCBS Alabama")** is an Alabama corporation.

20. On information and belief, **Defendant Blue Cross and Blue Shield of Arizona, Inc. ("BCBS Arizona")** is an Arizona corporation.

21. On information and belief, **Defendant USAble Mutual Insrance Company** doing business in Arkansas as **Arkansas Blue Cross and Blue Shield ("BCBS Arkansas")** is an Arkansas corporation.

22. On information and belief, **Defendant Anthem Health Plans, Inc.**, is a Connecticut corporation, doing business in Connecticut as **Anthem Blue Cross and Blue Shield of Connecticut ("BCBS Connecticut")**.

23. On information and belief, **Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida")** is a Florida corporation.

24. On information and belief, **Defendant Blue Cross and Blue Shield of Georgia, Inc. ("BCBS Georgia")** is a Georgia corporation.

25. On information and belief, **Defendant Health Care Service Corporation** is an Illinois corporation, doing business in Illinois as **Blue Cross Blue Shield of Illinois ("BCBS Illinois")**, in Oklahoma as **Blue Cross and Blue Shield of Oklahoma ("BCBS Oklahoma"),** and in Texas as **Blue Cross and Blue**

1   Shield of Texas ("BCBS Texas").

2        26.    On information and belief, **Defendant Blue Cross and Blue Shield of**

3   **Kansas City, Inc. ("BCBS Kansas City")** is a Missouri corporation.

4        27.    On information and belief, **Defendant Anthem Health Plans of**

5   **Kentucky, Inc.** is a Kentucky corporation, doing business in Kentucky as **Blue**

6   **Cross Blue Shield of Kentucky ("BCBS Kentucky")**.

7        28.    On information and belief, **Defendant HMO Louisiana, Inc.** is a

8   Louisiana corporation, doing business in Louisiana as **Blue Cross and Blue Shield**

9   **of Louisiana ("BCBS Louisiana")**.

10       29.    On information and belief, **Defendant Blue Cross and Blue Shield of**

11  **Massachusetts, Inc. ("BCBS Massachusetts")** is a Massachusetts corporation.

12       30.    On information and belief, **Defendant BCBSM, Inc.,** is a Minnesota

13  corporation, doing business in Minnesota as **Blue Cross and Blue Shield of**

14  **Minnesota, Inc. ("BCBS Minnesota")**.

15       31.    On information and belief, **Defendant HMO Missouri, Inc.** is a

16  Missouri corporation, doing business in Missouri as **Anthem Blue Cross and Blue**

17  **Shield of Missouri ("BCBS Missouri")**.

18       32.    On information and belief, **Defendant Blue Cross and Blue Shield of**

19  **Nebraska, Inc. ("BCBS Nebraska")** is a Nebraska corporation.

20       33.    On information and belief, **Defendant Blue Cross and Blue Shield of**

21  **North Carolina ("BCBS North Carolina")** is a North Carolina corporation.

22       34.    On information and belief, **Defendant Community Insurance**

23  **Company** is an Ohio corporation**,** doing business in Ohio as **Anthem Blue Cross**

24  **and Blue Shield of Ohio ("BCBS Ohio")**.

25       35.    On information and belief, **Defendant Blue Cross and Blue Shield of**

26  **Rhode Island ("BCBS Rhode Island")** is a Rhode Island corporation.

27       36.    On information and belief, **Defendant Blue Cross and Blue Shield of**

28  **South Carolina ("BCBS South Carolina")** is a South Carolina corporation.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

37.     On information and belief, **Defendant Blue Cross Blue Shield of Tennessee, Inc. ("BCBS Tennessee")** is a Tennessee corporation.

38.     On information and belief, **Defendant Anthem Health Plans of Virginia, Inc.** is a Virginia corporation, doing business in Virginia as **Anthem Blue Cross and Blue Shield of Virginia ("BCBS Virginia")**.

39.     On information and belief, **Defendant Capital Blue Cross ("BCBS Capital PA")** is a Pennsylvania corporation.

40.     On information and belief, **Defendant CareFirst BlueChoice, Inc. ("BCBS D.C.")** is a District of Columbia corporation.

41.     On information and belief, **Defendant CareFirst of Maryland, Inc.** is a Maryland corporation, doing business in Maryland as **CareFirst Blue Cross Blue Shield ("BCBS Maryland")**.

42.     On information and belief, **Defendant Empire HealthChoice Assurance, Inc.**, is a New York corporation, doing business in New York as **Empire Blue Cross Blue Shield ("BCBS Empire NY")**.

43.     On information and belief, **Defendant Excellus Health Plan, Inc.** is a New York corporation, doing business in New York as **Excellus Blue Cross Blue Shield ("BCBS Excellus NY")**.

44.     On information and belief, **Defendant HealthKeepers, Inc. ("BCBS HealthKeepers")** is a Virginia corporation.

45.     On information and belief, **Defendant Healthy Alliance Life Insurance Company ("BCBS Healthy MO")** is a Missouri corporation.

46.     On information and belief, **Defendant Highmark Blue Cross Blue Shield**, is a Pennsylvania corporation, doing business in Pennsylvania as **Blue Cross Blue Shield of Western Pennsylvania ("BCBS Western PA")**.

47.     On information and belief, **Defendant Highmark Blue Shield**, is a Pennsylvania corporation, doing business in Pennsylvania as **Pennsylvania Blue Shield ("BCBS Central PA")**.

48. On information and belief, **Defendant Independence Hospital Indemnity Plan, Inc.**, formerly known as **Independence Blue Cross ("BCBS Independence PA")** is a Pennsylvania corporation.

49. On information and belief, **Defendant Premera Blue Cross ("BCBS Premera WA")** is a Washington corporation.

50. On information and belief, **Defendant Regence Blue Cross Blue Shield** is an Oregon corporation, doing business in Oregon as **Blue Cross Blue Shield of Oregon ("BCBS Oregon")**.

51. On information and belief, **Defendant Regence Blue Shield ("BCBS Regence WA")** is a Washington corporation.

52. On information and belief, **Defendant Rocky Mountain Hospital and Medical Service, Inc.** is a Colorado corporation, doing business in Colorado as **Anthem Blue Cross and Blue Shield of Colorado ("BCBS Colorado")**.

53. The Defendants identified in paragraphs 13 through 52 above are collectively referred to herein as the **"Blue Cross and Blue Shield Defendants."**

54. On information and belief, the Blue Cross and Blue Shield Defendants, and each of them, market and issue health insurance, and insure, issue, administer and make coverage and benefit determinations with respect to the health care plans at issue in this action; they develop and apply substance use disorder and mental health treatment and laboratory guidelines in making coverage and benefit determinations; they participate in the claims administration process related to plans insured, managed and/or administered by their wholly-owned and controlled subsidiaries, syndicates, associations, affiliates, controlled agents and undisclosed principals, including, but not limited to each of the other Blue Cross and Blue Shield Defendants, and Defendants Viant, Inc. and Multiplan, Inc.; and they are licensed and regulated by the California Department of Insurance ("CDI") and the California Department of Managed Health Care ("CDMHC") to transact the business of insurance in the State of California, are in fact transacting the business of insurance

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  in the State of California, and are thereby subject to the laws and regulations of the

2  State of California.

3      55.    On information and belief, **Defendant Blue Cross and Blue Shield**

4  **Association (the "Association")** is an Illinois corporation, controlled and funded by

5  the Blue Cross and Blue Shield Defendants, among other Blue Cross Blue Shield

6  ("BCBS") entities that operate under the Blue Cross and Blue Shield trademarks and

7  trade names.  The Association was created by the Blue Cross and Blue Shield

8  Defendants and the other BCBS entities, and operates as the licensor of the Blue

9  Cross and Blue Shield trademarks and trade names.  The Association exists solely

10 for the benefit of the Blue Cross and Blue Shield Defendants and the other BCBS

11 entities and to facilitate their concerted activities.

12     56.    According to its website, The Association, and the Blue Cross and Blue

13 Shield Defendants and other BCBS entities, "understand and answer to the needs of

14 local communities, while providing nationwide healthcare coverage that opens doors

15 for more than 107 million members in all 50 states, Washington, D.C., and Puerto

16 Rico;" they contract nationwide with "more than 96 percent of hospitals and 95

17 percent of doctors and specialists contract with Blue Cross Blue Shield companies

18 — more than any other insurer;" the Association "is a national association of 36

19 independent, community-based and locally operated Blue Cross Blue Shield

20 companies;" "the Association owns and manages the Blue Cross and Blue Shield

21 trademarks and names in more than 170 countries around the world;" and "the

22 Association grants licenses to independent companies to use the trademarks and

23 names in exclusive geographic areas."  See, https://www.bcbs.com/about-us/the-

24 blue-cross-blue-shield-system (last visited August 22, 2020).

25     57.    The Association and the Blue Cross and Blue Shield Defendants

26 entities have agreed that the Blue Cross and Blue Shield Defendants will not

27 compete with each other in terms of their provider networks, and even when the

28 Blue Cross and Blue Shield Defendants have significant enrollees in another Blue

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Cross and Blue Shield Defendant's service area, they have an agreement that they

2  will not contract with providers outside of their service areas except in limited

3  circumstances.  In short, the Association exists solely for the benefit of the Blue

4  Cross and Blue Shield Defendants, and to facilitate their concerted activities.

5         58.    In furtherance of these concerted activities, each of the Blue Cross and

6  Blue Shield Defendants has agreed to participate in the national programs adopted

7  by the Association and Blue Cross and Blue Shield Defendants, including the Blue

8  Card Program and the National Accounts Program.  The Blue Card Program is a

9  program that enables members of one BCBS plan to obtain health care services

10 while traveling or living in another BCBS plan's service area.  Under this program,

11 when a member of a BCBS plan obtains covered health care services in another

12 state, the "local" or "host" BCBS plan (*i.e.*, the plan located in the state where the

13 services are provided) receives the claim(s) from the local provider and routes the

14 claim information along with pricing data to the "home" BCBS plan.  The "home"

15 plan is the BCBS plan that issues, insures and/or administers the health plan for the

16 member.[3]   The National Accounts Program functions in a similar manner and

17 generally applies to employee benefit plans with insured members in multiple states.

18 These programs have been established by a horizontal agreement between the Blue

19 Cross and Blue Shield Defendants.  The Blue Card Program is managed by a

20 Committee of Blue Cross and Blue Shield Defendants sitting on the Inter-Plan

21 Programs Committee.  These programs, among other national programs, lock in

22 fixed, discounted reimbursement rates that each Blue Cross and Blue Shield

23 Defendant achieves through market dominance in its service area and makes

24 _____

25 [3] Specifically, the mechanics of the Host/Home plan relationship operate as follows:  The Host
    Plan collects initial claims data and forwards it to the Home plan for a determination as to whether
26 the claim is covered under the policy issued by the Home Plan.  The Host Plan does not make any
    determination regarding the scope of coverage or the Member's eligibility for coverage.  The
27 Home Plan evaluates the data submitted by the Host Plan, determines whether and how much of
    the claim is allowable, and advises the Host Plan of its determination.  The Host Plan then makes
28 payment to the service provider and submits a claim to the Home Plan for reimbursement.

- 14 -

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  subcompetitive rates available to all other Blue Cross and Blue Shield Defendants

2  without the need for negotiation or contracting. Because many Blue Cross and Blue

3  Shield Defendants have large numbers of members outside of their service areas,

4  and rather than forming competing networks of providers in the other service areas,

5  the Blue Cross and Blue Shield Defendants pay the Home Plan a kickback, called an

6  Access Fee, and thereby share the excess profits they achieve through the sub-

7  competitive prices that the Blue Cross and Blue Shield Defendants pay to Providers.

8      59.     On information and belief, **Defendant Viant, Inc. ("Viant")** is a

9  Nevada corporation which conducts insurance operations throughout California.

10  Viant provides health care payment solutions and offers auditing and reimbursement

11  of behavioral health and substance use disorder claims and costs, as well as

12  prepayment services such as treatment facility bill review and professional

13  negotiation, on plans at issue herein insured, managed and/or administered by

14  Anthem Blue Cross and its syndicate, association, subsidiaries and affiliates.

15  Plaintiffs are informed and believe, and based thereon allege, that Viant is licensed

16  and regulated by the CDI and the CDMHC to transact the business of insurance in

17  the State of California, is in fact transacting the business of insurance in the State of

18  California, and is thereby subject to the laws and regulations of the State of

19  California.

20      60.     On information and belief, **Defendant MultiPlan, Inc. ("MPI")** is a

21  New York corporation which conducts insurance operations throughout California.

22  MPI is a provider of healthcare cost management solutions, specializing in

23  providing claim cost management solutions for controlling the financial risks

24  associated with health care bills on plans at issue herein insured, managed and/or

25  administered by Anthem Blue Cross and its syndicate, association, subsidiaries and

26  affiliates. MPI also offers preferred provider organization network solutions for

27  accessing hospitals, ancillary care facilities, treatment facilities, and health care

28  professionals for the benefit and at the control and direction of Anthem Blue Cross

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and its syndicate, association, subsidiaries and affiliates.  Plaintiffs are informed and believe, and based thereon allege, that MPI is licensed and regulated by the CDI and the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

61.     Plaintiffs are informed and believe that, at all relevant times, each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.

62.     Plaintiffs are informed and believe that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability.  Plaintiffs are further informed and believe, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another.  On information and belief, Plaintiffs understand and believe that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.

63.     Plaintiffs are informed and believe that, at all relevant times, each of the Defendants formed and operated a conspiracy with each of the other Defendants to perform the acts alleged herein, in furtherance of a common design to place profits over patients and damage substance use disorder treatment providers and laboratories, including Plaintiffs, and with knowledge that the conduct alleged herein of each of the Defendants constituted violations of law and provided

- 16 -

1  substantial assistance or encouragement to each other to so act against insured
2  patients and substance use disorder treatment providers and laboratories, including
3  Plaintiffs.

4  **BRIEF STATEMENT OF THE CONSOLIDATED LITIGATION**

5  64.  Plaintiffs are out-of-network substance use disorder treatment providers
6  and clinical laboratories.  Plaintiffs are in the profession of helping individuals
7  recover from alcoholism and addiction and return to their families and communities
8  as productive and contributing members of society.  Plaintiffs provided medically
9  necessary, verified, preauthorized and covered substance use disorder treatment and
10  laboratory services to 1,792 individuals with health insurance that was sold, insured,
11  managed and/or administered by Defendants.  The treatment and services provided
12  by Plaintiffs include residential detoxification and residential treatment ("RTC"),
13  partial hospitalization/day treatment ("PHP"), intensive outpatient ("IOP"),
14  outpatient ("OP"), treatment planning, counseling and behavioral therapies,
15  individual, family and group therapy, medication management, case management
16  services, and laboratory services to, among other things, determine, measure, or
17  otherwise describe the presence or absence of various substances in the body.  The
18  treatments and services were provided by or under the direction of properly
19  qualified behavioral health providers and/or medical and clinical professionals.

20  65.  Defendants' health insurance plans, for each of the 1,792 insureds at
21  issue, provide coverage for out-of-network substance use disorder treatment and
22  laboratory services.  In this regard, the plans, and each of them, provide that out-of-
23  network substance use disorder benefits include the following levels of care: RTC,
24  PHP, IOP, and OP.  The plans also provide that out-of-network covered substance
25  use disorder services include: diagnostic evaluations, assessment and treatment
26  planning, treatment and/or procedures, medication management and other associated
27  treatment, psychological testing, referral services, individual, family and group
28  therapy, provider-based case management services, and crisis intervention.  The

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

66. Defendants' health insurance plans, for each of the 1,792 insureds at issue, pay benefits for out-of-network substance use disorder treatment and laboratory services, including, but not limited to, RTC, PHP, IOP, OP, diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to Plaintiffs)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Plaintiffs are informed and believe, and based thereon allege, that each of the 1,792 insureds had already met their annual out-of-pocket maximum at the time they first received treatment or services from Plaintiffs, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories. The exclusions, conditions and limitations in the plans do not apply to the treatments and services provided by Plaintiffs.

67. Each of Defendants' insureds orally assigned benefits and payments by their insurance company or health plan to Plaintiffs and Plaintiffs obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   claims but to assert all rights and causes of action against Defendants in connection

2   with such claims.

3       68.     In reliance on the assignments of benefits, Plaintiffs, and each of them,

4   rendered the subject treatment and services to Defendants' insureds/members.

5   Moreover, Defendants confirmed, represented, promised and warranted to Plaintiffs

6   through the required verification of benefits and the preauthorization process, that

7   each of the insureds and their respective out-of-network treatments and services

8   were covered by health insurance plans issued, managed and/or administered by

9   Defendants, the premiums were paid and the plans were effective, and that Plaintiffs

10  would be paid for treating Defendants' insureds.  In reliance on Defendants'

11  coverage representations and payment promises, Plaintiffs, and each of them,

12  rendered the subject treatment and services to Defendants' insureds/members.  At all

13  times relevant herein, Defendants knew that Plaintiffs were treating and providing

14  services, and would continue to treat and provide services, to their insureds, and

15  Defendants were, at all times, advised and fully aware of Plaintiffs' charges for the

16  treatment and services rendered, at each level of care.

17      69.     After providing covered treatment and services to the 1,792 insureds at

18  issue, Plaintiffs submitted their claims to Defendants for payment, with the claim

19  forms notifying Defendants that Plaintiffs were submitting the claims as the

20  insureds' assignee.  Defendants were obligated – under the law and the plans – to

21  pay Plaintiffs the applicable plan percentage of their covered charges (between 50%

22  to 80% of covered charges, with the majority of plans paying out-of-network

23  benefits at 70% of covered charges (minus any outstanding insured cost-sharing

24  amounts)) until the insured's nominal annual out-of-pocket maximum is met at

25  which time Defendants pay 100%.  Defendants also advised, confirmed and

26  promised to Plaintiffs during the verification and benefits and preauthorization

27  process for each of the 1,792 insureds, that the out-of-network benefits paid by

28  Defendants to out-of-network providers, like Plaintiffs, for all levels of substance

- 19 -

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

use disorder treatment and laboratory services, is a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

70. Instead of paying Plaintiffs per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to Plaintiffs, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiffs, as a group, an average of 18.55% of their covered charges. It was only after Plaintiffs rendered the treatment and services at issue that Defendants refused to properly compensate Plaintiffs for the covered treatment and services rendered to Defendants' insureds.

71. During the claim submission and payment process, Defendants put Plaintiffs on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiffs, over and over again. This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. Plaintiffs complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Plaintiffs for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide Plaintiffs and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Plaintiffs and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flags and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Defendants, and each of them, as a pretext to illegally delay and deny Plaintiffs (and

2    hundreds of other substance use disorder treatment providers and clinical

3    laboratories) payment in accordance with Defendants' representations and promises,

4    and the law and plans.

5        72.    Defendants never informed or advised Plaintiffs during the claim

6    submission and payment process or post-claims process, and never denied Plaintiffs

7    payment on the grounds of any anti-assignment provisions in the health plans at

8    issue.  As a result and by operation of law and principles of equity, Defendants have

9    waived and are estopped from asserting any such anti-assignment provisions in any

10   of the health plans at issue in this action.[4]

11       73.    As a result of Defendants' unfair, unreasonable, illegal, incomplete,

12   fraudulent and systematic polices, practices and decisions, As a result, Plaintiffs

13   have suffered and continue to suffer general and incidental damages according to

14   proof, including the benefits owed under the plans and the law in the millions,

15   amounts owed in accordance with Defendants' payment promises to Plaintiffs, the

16   interruption in Plaintiffs' businesses, lost business opportunities, lost profits and

17   other consequences, and moreover, Plaintiffs are entitled to injunctive relief and

18   statutory and prejudgment interest and attorney's fees against Defendants, and each

19

20

21

22

23   [4] *See, California Spine and Neurosurgery Institute v. Blue Cross of California*, 2020 WL 3536496
     at *1 (9th Cir. June 30, 2020) ("district court erred in determining waiver was inapplicable[;]" and

24   "district court also erred in concluding that [Plaintiff] failed to satisfy three equitable estoppel
     factors" when insurer asserted for the first time in litigation an anti-assignment provision to avoid

25   coverage.); *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d
     1282, 1296 (9th Cir. 2014) (considering an anti-assignment provision and explaining that "an

26   administrator may not hold in reserve a known or reasonably knowable reason for denying a
     claim, and give that reason for the first time when the claimant challenges a benefits denial in

27   court."); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 720 (9th Cir. 2012) ("ERISA and its
     implementing regulations are undermined where plan administrators have available sufficient

28   information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather
     than communicate it to the beneficiary.").

1 of them.[5]

## AMERICA'S SUBSTANCE USE DISORDER EPIDEMIC

3    74.    Now, as never before, there is a critical need for access to treatment for substance use disorders.  The Substance Abuse and Mental Health Services Administration ("SAMHSA") estimates that in 2014, 20.2 million adult Americans, or 8.4 percent of the adult population suffered from a substance use disorder within the past year.[6]  According to the President's Commission on Combatting Drug Addiction and the Opioid Crisis (November 2017), heroin overdose deaths increased four-fold from 2010 to 2015, while overdose deaths due to prescription opioids consistently outpaced even the disturbingly high heroin overdose rates.[7]  Drug overdoses now cause more deaths than either car accidents or guns, and those suffering from substance use disorders are at the highest risk.

75.    On average, 130 Americans die every day from an opioid overdose. The opioid crisis has and continues to destroy lives and devastate families and communities.[8]  It is the deadliest drug crisis in United States history and it is only

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

[5]  The treatment and claim documents concerning each of the subject 1,792 patient insureds treated by Plaintiffs contain personal health and treatment information protected by law from public disclosure pursuant to, *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Plaintiffs have produced their claims reports to Defendants.  The reports set forth the subject patient's initials and member identification number, the service start and end dates, the amounts billed and paid, and the outstanding balance.  With Plaintiffs' company names and TINs, Defendants can access a trove of information on each of Plaintiffs' patients, including, but not limited to, the patient's name, date of birth, residence address, gender, family relationships, name and type of insurance plan/policy and state of issuance, dates of coverage, dates of service, types and levels of care provided, claim numbers, billed amounts, explanations of benefits paid or denied, and appeals and grievances regarding claims denied.  The information available to Defendants through Plaintiffs' company names and TINs is sufficient enough to apprise Defendants of the substance of Plaintiffs' claims.

[6] *See* Rachel N. Lipari & Struther L. Van Horn, Trends in Substance Use Disorders in Adults 18 and Older (June 29, 2017), retrieved on May 23, 2019 from https://www.samhsa.gov/data/sites/default/files/report_2790/ShortReport-2790.html.

[7] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at p. 32, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.

[8] *See* Centers for Disease Control and Prevention, Understanding the Epidemic, retrieved on May 28, 2019 from https://www.cdc.gov/drugoverdose/epidemic/index.html.

1    getting worse.[9]  In 2017 alone, California lost 2,196 lives to the opioid epidemic.

2    Timely access to life-sustaining and life-saving treatment and continuing care for

3    substance use and mental health disorders is critical to preventing these deaths and

4    allowing people to achieve long-term recovery and to return to their families, friends

5    and communities as healthy, productive and contributing members of society.[10]

6         76.     Addiction is recognized as a chronic, relapsing brain disorder

7    characterized by compulsive drug seeking, continued use despite harmful

8    consequences, and long-lasting changes in the brain.  Addiction is considered both a

9    complex brain disorder and a mental illness.  The brain changes can be long lasting

10   and can lead to many harmful, often self-destructive, behaviors.  Addiction is the

11   most severe form of a full spectrum of substance use disorders, and is a medical

12   illness caused by repeated misuse of a substance or substances.[11]  Without treatment

13   and engagement in recovery activities, addiction is progressive and can result in

14   unemployment, homelessness, disability and premature death.

15        77.     Substance use disorder treatment is difficult and the challenges of

16

17   _____

18   [9]  *See* California Department of Public Health, Patterns of Opioid-Related Overdose Deaths in
     California, 2011-2017 (March 2019), retrieved on June 12, 2019 from
19   https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/SACB/CDPH%20Document%20Library/Pr
     escription%20Drug%20Overdose%20Program/Injury%20Data%20Brief%20Opioid%20Overdose
     %20Deaths%202011-2017_ADA.pdf.

20   [10]  The human impact of the opioid epidemic – from babies born dependent, the emotional toll on
     individuals with a substance use disorder, and that of their families and communities, to the tens of
21   thousands of lives cut short each year – has been tremendous.  Now, reports show that the
     economic impact has been just as shocking, with the drug crisis costing the U.S. economy $1
22   trillion since 2001 and likely to cost the economy an additional $500 billion by 2020 if the current
     rates of addiction and overdose remain steady.  See Altarum, Solutions to Advance Health:
23   Economic Toll of Opioid Crisis in U.S. Exceeded $1 Trillion Since 2001 (February 13, 2018),
     retrieved on June 5, 2019 from https://altarum.org/news/economic-toll-opioid-crisis-us-exceeded-
24   1-trillion-2001.

25   [11]  *See* National Institute of Drug Addiction, The Science of Drug Use and Addiction: The Basics,
     retrieved on May 29, 2019 from https://www.drugabuse.gov/publications/media-guide/science-
26   drug-use-addiction-basics; *see also*, American Society of Addiction Medicine, Public Policy
     Statement: Definition of Addiction, retrieved on June 13, 2019 from
27   https://www.asam.org/docs/default-source/public-policy-
     statements/1definition_of_addiction_long_4-11.pdf?sfvrsn=a8f64512_4.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

recovery from addiction are many, which can involve cycles of recurrence and remission before long-term recovery is realized. Timely access to treatment and continuing care, including RTC, PHP, IOP and OP treatment, medication management, psychological testing, counseling and behavioral therapies, social support and supportive sober living environments, are critical for people to recover from addiction and reclaim active and meaningful lives. Clinical laboratory services are recognized as an appropriate and important diagnostic procedure in substance use disorder and mental health treatment as such services promote prevention, diversion, early detection, and lifelong recovery from addiction. Such testing is designed to provide accurate results that help physicians and treatment clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes testing for accurate prescription therapy and medication assisted treatment.[12]

78.    Families and individuals purchase health insurance to help cover the costs of health care, including the costs of substance use disorder and mental health treatment. Health insurance is supposed to provide people with peace of mind and security, and provide them with access and options for life-sustaining and life-saving health care while preventing families and individuals from experiencing financial crises, such as bankruptcy or home foreclosure, or being forced to choose between paying for rent, utilities and food or paying for necessary health care costs.

79.    Traditionally, insurers and employers have covered treatment for mental health conditions, including substance use disorders, less favorably than treatment for physical health conditions, including higher cost-sharing obligations for patients, more restrictive limits on the number of inpatient days and outpatient visits, and more onerous prior authorization requirements. To address this unequal

---

[12] *See* American Society of Addiction Medicine, Public Policy Statement on Drug Testing as a Component of Addiction Treatment and Monitoring Programs and in other Clinical Settings, retrieved on May 29, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1drug-testing---clinical-10-10.pdf.

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

treatment, Congress first passed a mental health parity law in 1996, and many states followed suit in the following decade by passing laws of their own. Among other limitations, however, the 1996 act did not address the treatment of substance use disorders. Congress addressed this gap in passing the historic Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), 42 U.S.C. § 300gg-26, which, among other things, prohibits most plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., from imposing different treatment limits, cost-sharing and in-network and out-of-network coverage on mental health and substance use disorder treatment than are imposed on other medical and surgical services.[13] Furthermore, ERISA requires fiduciaries to act solely in the interests of plan participants and beneficiaries, and to decide claims for health care benefits in accordance with plan documents and under a full and fair procedure.

80. The Patient Protection and Affordable Care Act of 2010 ("PPACA"), 42 U.S.C. §§ 18001, *et seq.*, also known as the Affordable Care Act or Obamacare, requires a range of health plans, both inside and outside of the exchanges, to provide a core package of essential health benefits including mental health and substance use disorder services and laboratory services. 42 U.S.C. § 18022. The PPACA extends the impact of the MHPAEA so that many health plans must offer coverage for mental health and substance use disorder services and laboratory services with at least an equal level of benefits as the plans offer for the treatment of medical and surgical benefits. However, as President Donald J. Trump's commission on the opioid crisis wrote in its November 2017 report, "health insurers are not following

---

[13] California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code section 10144.5 and Health and Safety Code section 1374.72, which, like the MHPAEA, requires mental health care coverage to be provided "under the same terms and conditions applied to other medical conditions." California law also requires health care plans to "provide all covered mental health and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations, and guidance issued" pursuant to federal laws. Cal. Ins. Code §§ 10144.4, 10112.27; Cal. Health & Safety Code § 1374.76.

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

the federal law requiring parity in the reimbursement for mental health and addiction [;] [t]hey must be held responsible."[14]

## **DEFENDANTS' SCHEME TO DENY ACCESS AND COVERAGE FOR CRITICALLY-NEEDED SUBSTANCE USE DISORDER TREATMENT**

81. Despite the above statutory requirements, and the obvious individual and public health interests in timely access to and coverage for substance use disorder and mental health treatment and laboratory services, Defendants, and each of them and their syndicate, association, controlled agents and undisclosed principals, are engaged in unfair, unreasonable, incomplete, fraudulent and systematic policies, practices and decisions that have and continue to result in the unlawful and fraudulent denial, underpayment, delay and/or flat-out refusal to authorize and decide access, coverage and claims for mental health and substance use disorder treatment and laboratory services for patients whose plans promise, and the law requires, access to and coverage for such treatment, services and benefits. Defendants' systematic practices have and continue to result in restrictive prior authorization requirements and restrictive limits on the number of substance use disorder and mental health treatment days and tests. Defendants' access, coverage and claims-handling policies, practices and decisions are imposing unlawful barriers between patients and life-saving substance use disorder and mental health treatment they desperately need. And Defendants are doing this in the middle of an opioid and addiction epidemic! Defendants' impermissible barriers to substance use disorder and mental health treatment and laboratory services must be removed and Defendants must be held responsible for placing profits over patients in a life and death situation.

---

[14] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at pp. 9 and 122, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf. Roster of Commissioners include Governor Chris Christie, Chairman, Governor Charlie Baker, Governor Roy Cooper, Congressman Patrick J. Kennedy, Professor Bertha Madras, Ph.D., Florida Attorney General Pam Bondi.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

82. Defendants' substance use disorder and mental health treatment and laboratory access, coverage and claims-handling policies, practices and decisions as a whole violate the law and the plan documents. For instance, Plaintiffs are informed and believe, and based thereon allege, that Defendants unreasonably limit the number of RTC treatment days, and impermissibly and unreasonably require preauthorization for PHP and IOP treatment and then limits the number of treatment days at each level of care.[15] Plaintiffs are also informed and believe, and based thereon allege, that Defendants reimburse RTC, PHP and IOP levels of care at nominal percentages of covered charges, if at all. Plaintiffs are further informed and believe, and based thereon allege, that Defendants refuse to reimburse OP claims and refuse to reimburse claims for breathalyzer tests, counseling services and services of treatment case managers, and that Defendants improperly and unlawfully unbundle treatment and services claims in an effort to game the system at the expense of providers, including Plaintiffs. Moreover, Plaintiffs are informed and believe, and based thereon allege, that Defendants utilize illegal and overly restrictive medical necessity criteria and guidelines in order to deny claims and profit over the health and safety of their insureds, and utilize improper single bundled rates on claims for covered individuals in substance use disorder treatment. Further, Plaintiffs are informed and believe, and based thereon allege, that

---

[15] Under California law, once a health insurer authorizes a specific type of treatment covered under a plan and the provider has provided that treatment in good faith and pursuant to the authorization, the insurer cannot rescind or modify that authorization for any reason. Cal. Ins. Code § 796.04; Cal. Health & Safety Code § 1371.8. Moreover, California law requires that where health insurers cannot provide their insureds/members access to needed healthcare providers on an "in-network" basis, the insurers shall pay any "out-of-network" provider the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services. In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its billed charges. Cal. Ins. Code § 10133.5; Cal. Code Regs. tit. 10, § 2240.1. Further, health insurers are required to reimburse health care providers at almost 100 percent of the billed charges for emergency services. Cal. Ins. Code § 10112.7; Cal. Health & Safety Code § 1317; Cal. Code Regs., tit. 28, § 1300.67. In addition, California law provides that health insurers may not "in any manner … direct, participate in, or control the selection of the hospital or health facility … from who the insured secures services … except that an insurer may negotiate and enter into contracts for alternative rates of payment with institutional providers, and offer the benefit of these alternative rates to insures who select these providers." Cal. Ins. Code § 10133.

---

- 27 -

SECOND AMENDED CONSOLIDATED COMPLAINT

1    Defendants refuse to pay for clinical laboratory claims as either beyond the

2    numerical limitation and/or simply not covered or reimbursable.  Plaintiffs are also

3    informed and believe, and based thereon allege, that Defendants make payments on

4    claims based on inapplicable Medicare rates and demand refunds on other claims

5    they assert should have been paid at inapplicable Medicare rates.[16]  Plaintiffs are

6    further informed and believe, and based thereon allege, that at times Defendants pay

7    the benefits owed directly to the treatment insured (which for an individual recently

8    discharged from substance use disorder treatment can be a relapse trigger and death

9    certificate) without a 1099 tax form, thereby depriving the state and federal

10   government of substantial tax revenue.

11        83.    Plaintiffs are informed and believe, and based thereon allege, that

12   Defendants' objective is to deny their insureds/members access to and coverage for

13   critically-needed substance use disorder RTC treatment, limit the number of

14   authorized RTC, PHP and IOP substance use disorder treatment days, rush their

15   insureds into an OP substance use disorder treatment level of care, refuse to

16   reimburse OP claims, deny and/or underpay all other substance use disorder

17   treatment and laboratory claims, and then demand refunds on paid claims and

18   subject the remaining claims to inapplicable Medicare rates, all in violation of the

19   law and the plan documents and to the detriment of Defendants' insureds in need of

20   life-saving substance use disorder and mental health treatment, and to the detriment

21   of substance use disorder treatment providers and clinical laboratories, like

22   Plaintiffs.

23

24

25

26   [16]  The California Department of Insurance found and concluded in its July 23, 2018 Order to
27   Show Cause *In the Matter of the Certificate of Authority of Health Net Life Insurance Company*
     (CDI File No. UPA-2016-00005), that Medicare does not provide a rate for inpatient or outpatient
28   substance use disorder treatment provider charges and that substituting a bundled per diem
     Medicare rate for such treatment charges violates state and federal parity laws.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 28 -
SECOND AMENDED CONSOLIDATED COMPLAINT

## **DEFENDANTS' SCHEME SPECIFIC TO PLAINTIFFS**

### **Woman's Recovery**

84.     Woman's Recovery is an out-of-network substance use disorder treatment provider.  Woman's Recovery provides treatment and services to individuals in the process of recovering from substance use disorders.  Woman's Recovery provided medically necessary, verified, preauthorized and covered substance use disorder treatment and services to 95 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The treatment and services provided by Woman's Recovery include PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services.

85.     Defendants' health insurance plans, for each of the 95 insureds at issue, provide coverage for out-of-network substance use disorder treatment and services. In this regard, the plans, and each of them, provide that out-of-network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP. The plans also provide that covered out-of-network substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention.  The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

86.     Defendants' health insurance plans, for each of the 95 insureds at issue, pay benefits for out-of-network substance use disorder treatment and services, including, but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Woman's Recovery is informed and believes, and based thereon alleges, that each of the 95 insureds had already met their annual out-of-pocket maximum at the time of admission into the program, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. Woman's Recovery is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers.

87. Woman's Recovery obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Woman's Recovery not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, Woman's Recovery rendered the subject treatment and services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to Woman's Recovery through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Woman's Recovery would be paid for treating Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, Woman's Recovery rendered the subject treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that Woman's Recovery was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Woman's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Recovery's charges for the treatment and services rendered, at each level of care.

2    88.    After providing covered treatment and services to the 95 insureds at

3    issue, Woman's Recovery submitted its claims to Defendants for payment.

4    Defendants were obligated – under the law and the policies – to pay Woman's

5    Recovery the applicable plan percentage of its covered charges (between 50% to

6    80% of covered charges, with the majority of plans paying out-of-network benefits

7    at 70% of covered charges (minus any outstanding insured cost-sharing amounts))

8    until the insured's nominal annual out-of-pocket maximum is met at which time

9    Defendants pay 100%.  Defendants also advised, confirmed and promised to

10   Woman's Recovery  during the verification and benefits and preauthorization

11   process for each of the 95 insureds, that the out-of-network benefits paid by

12   Defendants to out-of-network providers, like Woman's Recovery , for all levels of

13   substance use disorder treatment, is a percentage of its covered charges (between

14   50% to 80% of covered charges, with the majority of claims promised by

15   Defendants to be paid at 70% of covered charges) until the insured's nominal annual

16   out-of-pocket maximum is met at which time Defendants pay 100%.

17   89.    Instead of paying Woman's Recovery per the plan documents and the

18   law, and in accordance with Defendants' agreements, representations and promises

19   to Woman's Recovery, Defendants engaged in unfair, unreasonable, illegal,

20   incomplete, fraudulent and systematic polices, practices and decisions – with an

21   emphasis on profits over patients – and paid Woman's Recovery a mere 25.4% of its

22   covered charges.  It was only after Woman's Recovery rendered the treatment and

23   services at issue that Defendants refused to properly compensate Woman's

24   Recovery for the covered treatment and services rendered to Defendants' insureds.

25   90.    During the claim submission and payment process, Defendants put

26   Woman's Recovery on various pre-payment review and program integrity audits,

27   and through their various departments, Defendants repeatedly requested the same

28   documents and information from Woman's Recovery, over and over again.  This

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. Woman's Recovery complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Woman's Recovery for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide Woman's Recovery and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Woman's Recovery and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Woman's Recovery (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

91. As a result, Woman's Recovery has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to Woman's Recovery, the interruption in Woman's Recovery 's business, lost business opportunities, lost profits and other consequences, and moreover, Woman's Recovery is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**TML Recovery**

92. TML Recovery is an out-of-network substance use disorder treatment provider and clinical laboratory. TML Recovery provides treatment and services to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Case MDL No. 2406   Document 430-3   Filed 08/24/20   Page 89 of 112   Page ID #:512

1   individuals in the process of recovering from substance use disorders.  TML

2   Recovery provided medically necessary, verified, preauthorized and covered

3   substance use disorder treatment and laboratory services to 222 individuals with

4   health insurance that was sold, insured, managed and/or administered by

5   Defendants.  The treatment and services provided by TML Recovery include PHP,

6   IOP, OP, treatment planning, counseling and behavioral therapies, case management

7   services, and laboratory services.

8        93.   Defendants' health insurance plans, for each of the 222 insureds at

9   issue, provide coverage for out-of-network substance use disorder treatment and

10   laboratory services.  In this regard, the plans, and each of them, provide that out-of-

11   network substance use disorder benefits include the following levels of care: RTC,

12   PHP, IOP, and OP.  The plans also provide that covered out-of-network substance

13   use disorder services include: diagnostic evaluations, assessment and treatment

14   planning, treatment and/or procedures, medication management and other associated

15   treatment, psychological testing, referral services, individual, family and group

16   therapy, provider-based case management services, and crisis intervention.  The

17   plans further provide coverage for out-of-network laboratory benefits, which include

18   the facility charge and the charge for supplies and equipment, physician services for

19   pathologists, and presumptive drug tests and definitive drug tests.

20        94.   Defendants' health insurance plans, for each of the 222 insureds at

21   issue, pay benefits for out-of-network substance use disorder treatment and

22   laboratory services, including, but not limited to, RTC, PHP, IOP, OP, treatment

23   planning, counseling and behavioral therapies, case management services, and

24   laboratory services, at varying percentages of covered charges (between 50% to

25   80% of covered charges, with the majority of plans paying out-of-network benefits

26   at 70% of covered charges (minus any outstanding insured cost-sharing amounts,

27   which Defendants deduct from payments to providers)) until the insured's nominal

28   annual out-of-pocket maximum is met at which time Defendants pay 100%.  TML

SECOND AMENDED CONSOLIDATED COMPLAINT

Recovery is informed and believes, and based thereon alleges, that each of the 222 insureds had already met their annual out-of-pocket maximum at the time of admission into TML Recovery's program, or shortly thereafter.  The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received.  TML Recovery is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories.

95.     TML Recovery obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to TML Recovery not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  In reliance on the assignments of benefits, TML Recovery rendered the subject treatment and services to Defendants' insureds/members.  Moreover, Defendants confirmed, represented, promised and warranted to TML Recovery through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that TML Recovery would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, TML Recovery rendered the subject treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that TML Recovery was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of TML Recovery's charges for the treatment and services rendered, at each level of care.

96.     After providing covered treatment and services to the 222 insureds at issue, TML Recovery submitted its claims to Defendants for payment.  Defendants were obligated – under the law and the policies – to pay TML Recovery the

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Defendants also advised, confirmed and promised to TML Recovery during the verification and benefits and preauthorization process for each of the 222 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like TML Recovery, for all levels of substance use disorder treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

97.     Instead of paying TML Recovery per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to TML Recovery, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid TML Recovery a mere 27.6% of its covered charges. It was only after TML Recovery rendered the treatment and services at issue that Defendants refused to properly compensate TML Recovery for the covered treatment and services rendered to Defendants' insureds.

98.     During the claim submission and payment process, Defendants put TML Recovery on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from TML Recovery, over and over again. This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. TML Recovery complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse TML Recovery for the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide TML Recovery and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide TML Recovery and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny TML Recovery (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

99. As a result, TML Recovery has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to TML Recovery, the interruption in TML Recovery's business, lost business opportunities, lost profits and other consequences, and moreover, TML Recovery is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**SCRCO**

100. SCRCO is an out-of-network substance use disorder treatment provider and clinical laboratory. SCRCO provides treatment and services to individuals in the process of recovering from substance use disorders. SCRCO provided medically necessary, verified, preauthorized and covered substance use disorder treatment and laboratory services to 18 individuals with health insurance that was sold, insured, managed and/or administered by Defendants. The treatment and services provided by SCRCO include PHP, IOP, OP, treatment planning, counseling and behavioral

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

therapies, case management services, and laboratory services.

101.   Defendants' health insurance plans, for each of the 18 insureds at issue, provide coverage for out-of-network substance use disorder treatment and laboratory services.  In this regard, the plans, and each of them, provide that out-of-network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The plans also provide that covered out-of-network substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention.  The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

102.   Defendants' health insurance plans, for each of the 18 insureds at issue, pay benefits for out-of-network substance use disorder treatment and laboratory services, including, but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, case management services, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  SCRCO is informed and believes, and based thereon alleges, that each of the 18 insureds had already met their annual out-of-pocket maximum at the time of admission into SCRCO's program, or shortly thereafter.  The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received.  SCRCO is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 disorder treatment providers and clinical laboratories.

2     103.   SCRCO obtained an oral and written assignment of benefits from each

3 of the insureds at issue, by which Defendants' insureds intended to, and did, assign

4 to SCRCO not only rights to payment of claims but to assert all rights and causes of

5 action against Defendants in connection with such claims. In reliance on the

6 assignments of benefits, SCRCO rendered the subject treatment and services to

7 Defendants' insureds/members. Moreover, Defendants confirmed, represented,

8 promised and warranted to SCRCO through the required verification of benefits and

9 the preauthorization process, that each of the insureds and their respective out-of-

10 network treatments and services were covered by health insurance plans issued,

11 managed and/or administered by Defendants, the premiums were paid and the plans

12 were effective, and that SCRCO would be paid for treating Defendants'

13 insureds/members. In reliance on Defendants' coverage representations and

14 payment promises, SCRCO rendered the subject treatment and services to

15 Defendants' insureds/members. At all times relevant herein, Defendants knew that

16 SCRCO was treating and providing services, and would continue to treat and

17 provide services, to their insureds, and Defendants were, at all times, advised and

18 fully aware of SCRCO's charges for the treatment and services rendered, at each

19 level of care.

20     104.   After providing covered treatment and services to the 18 insureds at

21 issue, SCRCO submitted its claims to Defendants for payment. Defendants were

22 obligated – under the law and the policies – to pay SCRCO the applicable plan

23 percentage of its covered charges (between 50% to 80% of covered charges, with

24 the majority of plans paying out-of-network benefits at 70% of covered charges

25 (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

26 annual out-of-pocket maximum is met at which time Defendants pay 100%.

27 Defendants also advised, confirmed and promised to SCRCO during the verification

28 and benefits and preauthorization process for each of the 18 insureds, that the out-

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

of-network benefits paid by Defendants to out-of-network providers, like SCRCO, for all levels of substance use disorder treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

105.   Instead of paying SCRCO per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to SCRCO, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid SCRCO a mere 4.87% of its covered charges.  It was only after SCRCO rendered the treatment and services at issue that Defendants refused to properly compensate SCRCO for the covered treatment and services rendered to Defendants' insureds.

106.   During the claim submission and payment process, Defendants put SCRCO on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from SCRCO, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  SCRCO complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse SCRCO for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide SCRCO and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide SCRCO and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair

1  claims processes and procedures, repetitive document and information requests and
2  promises of payment were false and fraudulent and were implemented by
3  Defendants, and each of them, as a pretext to illegally delay and deny SCRCO (and
4  hundreds of other substance use disorder treatment providers and clinical
5  laboratories) payment in accordance with Defendants' representations and promises,
6  and the law and plans.

7      107.   As a result, SCRCO has suffered and continues to suffer general and
8  incidental damages according to proof, including the benefits owed under the plans
9  and the law in the hundreds of thousands of dollars, amounts owed in accordance
10 with Defendants' payment promises to SCRCO, the interruption in SCRCO's
11 business, lost business opportunities, lost profits and other consequences, and
12 moreover, SCRCO is entitled to injunctive relief and statutory and prejudgment
13 interest and attorney's fees against Defendants, and each of them.

14     **MMR Services**

15     108.   MMR Services is an out-of-network clinical laboratory.  MMR
16 Services provides laboratory services to individuals in the process of recovering
17 from substance use disorders.  MMR Services provided medically necessary,
18 verified, preauthorized and covered laboratory services to 288 individuals with
19 health insurance that was sold, insured, managed and/or administered by
20 Defendants.  The services provided by MMR Services include presumptive and
21 definitive drug tests.

22     109.   Defendants' health insurance plans, for each of the 288 insureds at
23 issue, provide coverage for out-of-network substance use disorder treatment and
24 laboratory services.  In this regard, the plans, and each of them, provide that out-of-
25 network substance use disorder benefits include the following levels of care: RTC,
26 PHP, IOP, and OP.  The plans also provide that covered out-of-network substance
27 use disorder services include: diagnostic evaluations, assessment and treatment
28 planning, treatment and/or procedures, medication management and other associated

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention. The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

110. Defendants' health insurance plans, for each of the 288 insureds at issue, pay benefits for out-of-network laboratory services at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. MMR Services is informed and believes, and based thereon alleges, that each of the 288 insureds had already met their annual out-of-pocket maximum at the time they first received services from MMR Services, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. MMR Services is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of clinical laboratories.

111. MMR Services obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to MMR Services not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, MMR Services rendered the subject services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to MMR Services through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and the plans were effective, and that MMR Services would be paid for treating and

2  providing services to Defendants' insureds/members.  In reliance on Defendants'

3  coverage representations and payment promises, MMR Services rendered the

4  subject services to Defendants' insureds/members.  At all times relevant herein,

5  Defendants knew that MMR Services was treating and providing services, and

6  would continue to treat and provide services, to their insureds, and Defendants were,

7  at all times, advised and fully aware of MMR Services' charges for the treatment

8  and services rendered, at each level of care.

9       112.   After providing covered treatment and services to the 288 insureds at

10  issue, MMR Services submitted its claims to Defendants for payment.  Defendants

11  were obligated – under the law and the policies – to pay MMR Services the

12  applicable plan percentage of its covered charges (between 50% to 80% of covered

13  charges, with the majority of plans paying out-of-network benefits at 70% of

14  covered charges (minus any outstanding insured cost-sharing amounts)) until the

15  insured's nominal annual out-of-pocket maximum is met at which time Defendants

16  pay 100%.  Defendants also advised, confirmed and promised to MMR Services

17  during the verification and benefits and preauthorization process for each of the 288

18  insureds, that the out-of-network benefits paid by Defendants to out-of-network

19  providers, like MMR Services, for all levels of substance use disorder treatment and

20  laboratory services, is a percentage of its covered charges (between 50% to 80% of

21  covered charges, with the majority of claims promised by Defendants to be paid at

22  70% of covered charges) until the insured's nominal annual out-of-pocket maximum

23  is met at which time Defendants pay 100%.

24       113.   Instead of paying MMR Services per the plan documents and the law,

25  and in accordance with Defendants' agreements, representations and promises to

26  MMR Services, Defendants engaged in unfair, unreasonable, illegal, incomplete,

27  fraudulent and systematic polices, practices and decisions – with an emphasis on

28  profits over patients – and paid MMR Services a mere 7.7% of its covered charges.

- 42 -

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

It was only after MMR Services rendered the treatment and services at issue that Defendants refused to properly compensate MMR Services for the covered treatment and services rendered to Defendants' insureds.

114.   During the claim submission and payment process, Defendants put MMR Services on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from MMR Services, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  MMR Services complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse MMR Services for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide MMR Services and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide MMR Services and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny MMR Services (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

115.   As a result, MMR Services has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to MMR Services, the interruption in MMR Services' business,

1  lost business opportunities, lost profits and other consequences, and moreover,

2  MMR Services is entitled to injunctive relief and statutory and prejudgment interest

3  and attorney's fees against Defendants, and each of them.

4  **SCAC**

5  116.  SCAC is an out-of-network substance use disorder treatment provider.

6  SCAC provides treatment and services to individuals in the process of recovering

7  from substance use disorders.  SCAC provided medically necessary, verified,

8  preauthorized and covered substance use disorder treatment and services to 85

9  individuals with health insurance that was sold, insured, managed and/or

10  administered by Defendants.  The treatment and services provided by SCAC include

11  RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and

12  case management services.

13  117.  Defendants' health insurance plans, for each of the 85 insureds at issue,

14  provide coverage for out-of-network substance use disorder treatment and

15  laboratory services.  In this regard, the plans, and each of them, provide that out-of-

16  network substance use disorder benefits include the following levels of care: RTC,

17  PHP, IOP, and OP.  The plans also provide that covered out-of-network substance

18  use disorder services include: diagnostic evaluations, assessment and treatment

19  planning, treatment and/or procedures, medication management and other associated

20  treatment, psychological testing, referral services, individual, family and group

21  therapy, provider-based case management services, crisis intervention, and

22  laboratory services.

23  118.  Defendants' health insurance plans, for each of the 85 insureds at issue,

24  pay benefits for out-of-network substance use disorder treatment, including, but not

25  limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral

26  therapies, and case management services, at varying percentages of covered charges

27  (between 50% to 80% of covered charges, with the majority of plans paying out-of-

28  network benefits at 70% of covered charges (minus and outstanding insured cost-

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    sharing amounts, which Defendants deduct from payments to providers)) until the

2    insured's nominal annual out-of-pocket maximum is met at which time Defendants

3    pay 100%.  SCAC is informed and believes, and based thereon alleges, that each of

4    the 85 insureds had already met their annual out-of-pocket maximum at the time of

5    admission into its program, or shortly thereafter.  The plans also pay 100% of

6    covered charges in the event of a "network inadeaquacy" or "network gap" for the

7    services received.  SCAC is informed and believes, and based thereon alleges, that

8    at all times relevant herein Defendants had an inadequate network of substance use

9    disorder treatment providers.

10         119.   SCAC obtained an oral and written assignment of benefits from each of

11    the insureds at issue, by which Defendants' insureds intended to, and did, assign to

12    SCAC not only rights to payment of claims but to assert all rights and causes of

13    action against Defendants in connection with such claims.  In reliance on the

14    assignments of benefits, SCAC rendered the subject treatment and services to

15    Defendants' insureds/members.  Moreover, Defendants confirmed, represented,

16    promised and warranted to SCAC through the required verification of benefits and

17    the preauthorization process, that each of the insureds and their respective out-of-

18    network treatments and services were covered by health insurance plans issued,

19    managed and/or administered by Defendants, the premiums were paid and the plans

20    were effective, and that SCAC would be paid for treating Defendants'

21    insureds/members.  In reliance on Defendants' coverage representations and

22    payment promises, SCAC rendered the subject treatment and services to

23    Defendants' insureds/members.  At all times relevant herein, Defendants knew that

24    SCAC was treating and providing services, and would continue to treat and provide

25    services, to their insureds, and Defendants were, at all times, advised and fully

26    aware of SCAC's charges for the treatment and services rendered, at each level of

27    care.

28

120.    After providing covered treatment and services to the 85 insureds at issue, SCAC submitted its claims to Defendants for payment.  Defendants were obligated – under the law and the policies – to pay SCAC the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to SCAC during the verification and benefits and preauthorization process for each of the 85 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like SCAC, for all levels of substance use disorder treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

121.    Instead of paying SCAC per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to SCAC, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid SCAC a mere 23.7% of its covered charges.  It was only after SCAC rendered the treatment and services at issue that Defendants refused to properly compensate SCAC for the covered treatment and services rendered to Defendants' insureds.

122.    During the claim submission and payment process, Defendants put SCAC on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from SCAC, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  SCAC complied with Defendants' repetitive requests and despite being promised payment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 46 -
SECOND AMENDED CONSOLIDATED COMPLAINT

pursuant to, inter alia, the plans and/or repricing agreements, Defendants refused to properly reimburse SCAC for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide SCAC and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide SCAC and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny SCAC (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

123. As a result, SCAC has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to SCAC, the interruption in its business, lost business opportunities, lost profits and other consequences, and moreover, SCAC is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**Kool Living**

124. Kool Living is an out-of-network substance use disorder treatment provider. Kool Living provides treatment and services to individuals in the process of recovering from substance use disorders. Kool Living provided medically necessary, verified, preauthorized and covered substance use disorder treatment and services to 194 individuals with health insurance that was sold, insured, managed and/or administered by Defendants. The treatment and services provided by Kool

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Living include RTC, PHP, IOP, OP, treatment planning, counseling and behavioral

2   therapies, and case management services.

3        125.   Defendants' health insurance plans, for each of the 194 insureds at

4   issue, provide coverage for out-of-network substance use disorder treatment and

5   laboratory services.  In this regard, the plans, and each of them, provide that out-of-

6   network substance use disorder benefits include the following levels of care: RTC,

7   PHP, IOP, and OP.  The plans also provide that covered out-of-network substance

8   use disorder services include: diagnostic evaluations, assessment and treatment

9   planning, treatment and/or procedures, medication management and other associated

10  treatment, psychological testing, referral services, individual, family and group

11  therapy, provider-based case management services, crisis intervention, and

12  laboratory services.

13       126.   Defendants' health insurance plans, for each of the 194 insureds at

14  issue, pay benefits for out-of-network substance use disorder treatment, including,

15  but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and

16  behavioral therapies, and case management services, at varying percentages of

17  covered charges (between 50% to 80% of covered charges, with the majority of

18  plans paying out-of-network benefits at 70% of covered charges (minus and

19  outstanding insured cost-sharing amounts, which Defendants deduct from payments

20  to providers)) until the insured's nominal annual out-of-pocket maximum is met at

21  which time Defendants pay 100%.  Kool Living is informed and believes, and based

22  thereon alleges, that each of the 194 insureds had already met their annual out-of-

23  pocket maximum at the time of admission into its program, or shortly thereafter.

24  The plans also pay 100% of covered charges in the event of a "network inadequacy"

25  or "network gap" for the services received.  Kool Living is informed and believes,

26  and based thereon alleges, that at all times relevant herein Defendants had an

27  inadequate network of substance use disorder treatment providers.

28       127.   Kool Living obtained an oral and written assignment of benefits from

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Kool Living not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  In reliance on the assignments of benefits, Kool Living rendered the subject treatment and services to Defendants' insureds/members.  Moreover, Defendants confirmed, represented, promised and warranted to Kool Living through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Kool Living would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, Kool Living rendered the subject treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that Kool Living was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Kool Living's charges for the treatment and services rendered, at each level of care.

128.    After providing covered treatment and services to the 194 insureds at issue, Kool Living submitted its claims to Defendants for payment.  Defendants were obligated – under the law and the policies – to pay Kool Living the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to Kool Living during the verification and benefits and preauthorization process for each of the 194 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like Kool Living, for all levels of substance use disorder treatment, is a percentage

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

129.   Instead of paying Kool Living per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to Kool Living, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Kool Living a mere 36.8% of its covered charges.  It was only after Kool Living rendered the treatment and services at issue that Defendants refused to properly compensate Kool Living for the covered treatment and services rendered to Defendants' insureds.

130.   During the claim submission and payment process, Defendants put Kool Living on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Kool Living, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. Kool Living complied with Defendants' repetitive requests and despite being promised payment pursuant to, inter alia, the plans and/or repricing agreements, Defendants refused to properly reimburse Kool Living for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Kool Living and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Kool Living and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

1 implemented by Defendants, and each of them, as a pretext to illegally delay and

2 deny Kool Living (and hundreds of other substance use disorder treatment providers

3 and clinical laboratories) payment in accordance with Defendants' representations

4 and promises, and the law and plans.

5     131. As a result, Kool Living has suffered and continues to suffer general

6 and incidental damages according to proof, including the benefits owed under the

7 plans and the law in the millions, amounts owed in accordance with Defendants'

8 payment promises to Kool Living, the interruption in its business, lost business

9 opportunities, lost profits and other consequences, and moreover, Kool Living is

10 entitled to injunctive relief and statutory and prejudgment interest and attorney's

11 fees against Defendants, and each of them.

12     **Pacific Palms**

13     132. Pacific Palms is an out-of-network substance use disorder treatment

14 provider. Pacific Palms provides treatment and services to individuals in the

15 process of recovering from substance use disorders. Pacific Palms provided

16 medically necessary, verified, preauthorized and covered substance use disorder

17 treatment and services to 508 individuals with health insurance that was sold,

18 insured, managed and/or administered by Defendants. The treatment and services

19 provided by Pacific Palms include PHP, IOP, OP, treatment planning, counseling

20 and behavioral therapies, and case management services.

21     133. Defendants' health insurance plans, for each of the 508 insureds at

22 issue, provide coverage for out-of-network substance use disorder treatment and

23 services. In this regard, the plans, and each of them, provide that out-of-network

24 substance use disorder benefits include the following levels of care: RTC, PHP,

25 IOP, and OP. The plans also provide that covered out-of-network substance use

26 disorder services include: diagnostic evaluations, assessment and treatment

27 planning, treatment and/or procedures, medication management and other associated

28 treatment, psychological testing, referral services, individual, family and group

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

therapy, provider-based case management services, and crisis intervention. The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

134. Defendants' health insurance plans, for each of the 508 insureds at issue, pay benefits for out-of-network substance use disorder treatment and services, including, but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Pacific Palms is informed and believes, and based thereon alleges, that each of the 508 insureds had already met their annual out-of-pocket maximum at the time of admission into Pacific Palms' program, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. Pacific Palms is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers.

135. Pacific Palms obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Pacific Palms not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, Pacific Palms rendered the subject treatment and services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to Pacific Palms through the required verification of benefits and the preauthorization process, that each of the insureds

SECOND AMENDED CONSOLIDATED COMPLAINT

and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Pacific Palms would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, Pacific Palms rendered the subject treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that Pacific Palms was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Pacific Palms 's charges for the treatment and services rendered, at each level of care.

136.    After providing covered treatment and services to the 508 insureds at issue, Pacific Palms submitted its claims to Defendants for payment.  Defendants were obligated – under the law and the policies – to pay Pacific Palms the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Defendants also advised, confirmed and promised to Pacific Palms during the verification and benefits and preauthorization process for each of the 508 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like Pacific Palms, for all levels of substance use disorder treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

137.    Instead of paying Pacific Palms per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to Pacific Palms, Defendants engaged in unfair, unreasonable, illegal, incomplete,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Pacific Palms a mere 26.9% of its covered charges. It was only after Pacific Palms rendered the treatment and services at issue that Defendants refused to properly compensate Pacific Palms for the covered treatment and services rendered to Defendants' insureds.

138.   During the claim submission and payment process, Defendants put Pacific Palms on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Pacific Palms, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  Pacific Palms complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Pacific Palms for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Pacific Palms and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Pacific Palms and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Pacific Palms (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

139.   As a result, Pacific Palms has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants'

SECOND AMENDED CONSOLIDATED COMPLAINT

1   payment promises to Pacific Palms, the interruption in Pacific Palms's business,

2   lost business opportunities, lost profits and other consequences, and moreover,

3   Pacific Palms is entitled to injunctive relief and statutory and prejudgment interest

4   and attorney's fees against Defendants, and each of them.

5   **AHA**

6   140.   AHA is an out-of-network substance use disorder treatment provider

7   and clinical laboratory.  AHA provides treatment and services to individuals in the

8   process of recovering from substance use disorders.  AHA provided medically

9   necessary, verified, preauthorized and covered substance use disorder treatment and

10  laboratory services to 48 individuals with health insurance that was sold, insured,

11  managed and/or administered by Defendants.  The treatment and services provided

12  by AHA include RTC and laboratory services.

13  141.   Defendants' health insurance plans, for each of the 48 insureds at issue,

14  provide coverage for out-of-network substance use disorder treatment and

15  laboratory services.  In this regard, the plans, and each of them, provide that out-of-

16  network substance use disorder benefits include the following levels of care: RTC,

17  PHP, IOP, and OP.  The plans also provide that covered out-of-network substance

18  use disorder services include: diagnostic evaluations, assessment and treatment

19  planning, treatment and/or procedures, medication management and other associated

20  treatment, psychological testing, referral services, individual, family and group

21  therapy, provider-based case management services, and crisis intervention.  The

22  plans further provide coverage for out-of-network laboratory benefits, which include

23  the facility charge and the charge for supplies and equipment, physician services for

24  pathologists, and presumptive drug tests and definitive drug tests.

25  142.   Defendants' health insurance plans, for each of the 48 insureds at issue,

26  pay benefits for out-of-network substance use disorder treatment and laboratory

27  services, including, but not limited to, RTC, PHP, IOP, OP, treatment planning,

28  counseling and behavioral therapies, case management services, and laboratory

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. AHA is informed and believes, and based thereon alleges, that each of the 48 insureds had already met their annual out-of-pocket maximum at the time of admission into AHA's program, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. AHA is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories.

143.    AHA obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to AHA not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, AHA rendered the subject treatment and services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to AHA through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that AHA would be paid for treating Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, AHA rendered the subject treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that AHA was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of AHA's

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    charges for the treatment and services rendered, at each level of care.

2    144.    After providing covered treatment and services to the 48 insureds at

3    issue, AHA submitted its claims to Defendants for payment.  Defendants were

4    obligated – under the law and the policies – to pay AHA the applicable plan

5    percentage of its covered charges (between 50% to 80% of covered charges, with

6    the majority of plans paying out-of-network benefits at 70% of covered charges

7    (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

8    annual out-of-pocket maximum is met at which time Defendants pay 100%.

9    Defendants also advised, confirmed and promised to AHA during the verification

10   and benefits and preauthorization process for each of the 48 insureds, that the out-

11   of-network benefits paid by Defendants to out-of-network providers, like AHA, for

12   all levels of substance use disorder treatment and laboratory services, is a percentage

13   of its covered charges (between 50% to 80% of covered charges, with the majority

14   of claims promised by Defendants to be paid at 70% of covered charges) until the

15   insured's nominal annual out-of-pocket maximum is met at which time Defendants

16   pay 100%.

17   145.    Instead of paying AHA per the plan documents and the law, and in

18   accordance with Defendants' agreements, representations and promises to AHA,

19   Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and

20   systematic polices, practices and decisions – with an emphasis on profits over

21   patients – and paid AHA a mere 11.83% of its covered charges.  It was only after

22   AHA rendered the treatment and services at issue that Defendants refused to

23   properly compensate AHA for the covered treatment and services rendered to

24   Defendants' insureds.

25   146.    During the claim submission and payment process, Defendants put

26   AHA on various pre-payment review and program integrity audits, and through their

27   various departments, Defendants repeatedly requested the same documents and

28   information from AHA, over and over again.  This was all an attempt by

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants, and each of them, to avoid processing and paying the claims. AHA complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse AHA for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide AHA and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide AHA and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny AHA (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

147. As a result, AHA has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the hundreds of thousands of dollars, amounts owed in accordance with Defendants' payment promises to AHA, the interruption in its business, lost business opportunities, lost profits and other consequences, and moreover, AHA is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**DR Recovery**

148. DR Recovery is an out-of-network substance use disorder treatment provider and clinical laboratory. DR Recovery provides treatment and services to individuals in the process of recovering from substance use disorders. DR Recovery provided medically necessary, verified, preauthorized and covered substance use

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

disorder treatment and laboratory services to 100 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The treatment and services provided by DR Recovery include PHP, IOP, OP, treatment planning, counseling and behavioral therapies, case management services, and laboratory services.

149.   Defendants' health insurance plans, for each of the 100 insureds at issue, provide coverage for out-of-network substance use disorder treatment and laboratory services.  In this regard, the plans, and each of them, provide that out-of-network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The plans also provide that covered out-of-network substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention.  The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

150.   Defendants' health insurance plans, for each of the 100 insureds at issue, pay benefits for out-of-network substance use disorder treatment and laboratory services, including, but not limited to, RTC, PHP, IOP, OP, counseling and behavioral therapies, case management services, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  DR Recovery is informed and believes, and based thereon alleges, that each of the 100 insureds had already met their annual out-of-pocket maximum at the time of admission into DR Recovery's program, or

- 59 -
SECOND AMENDED CONSOLIDATED COMPLAINT

shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. DR Recovery is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories.

151. DR Recovery obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to DR Recovery not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, DR Recovery rendered the subject treatment and services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to DR Recovery through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that DR Recovery would be paid for treating Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, DR Recovery rendered the subject treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that DR Recovery was treating, and would continue to treat, their insureds, and Defendants were, at all times, advised and fully aware of DR Recovery's charges for the treatment and services rendered, at each level of care.

152. After providing covered treatment and services to the 108 insureds at issue, DR Recovery submitted its claims to Defendants for payment. Defendants were obligated – under the law and the policies – to pay DR Recovery the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  annual out-of-pocket maximum is met at which time Defendants pay 100%.

2  Defendants also advised, confirmed and promised to DR Recovery during the

3  verification and benefits and preauthorization process for each of the 108 insureds,

4  that the out-of-network benefits paid by Defendants to out-of-network providers,

5  like DR Recovery, for all levels of substance use disorder treatment and laboratory

6  services, is a percentage of its covered charges (between 50% to 80% of covered

7  charges, with the majority of claims promised by Defendants to be paid at 70% of

8  covered charges) until the insured's nominal annual out-of-pocket maximum is met

9  at which time Defendants pay 100%.

10      153.   Instead of paying DR Recovery per the plan documents and the law,

11  and in accordance with Defendants' agreements, representations and promises to

12  DR Recovery, Defendants engaged in unfair, unreasonable, illegal, incomplete,

13  fraudulent and systematic polices, practices and decisions – with an emphasis on

14  profits over patients – and paid DR Recovery a mere 22.2% of its covered charges.

15  It was only after DR Recovery rendered the treatment and services at issue that

16  Defendants refused to properly compensate DR Recovery for the covered treatment

17  and services rendered to Defendants' insureds.

18      154.   During the claim submission and payment process, Defendants put DR

19  Recovery on various pre-payment review and program integrity audits, and through

20  their various departments, Defendants repeatedly requested the same documents and

21  information from DR Recovery, over and over again.  This was all an attempt by

22  Defendants, and each of them, to avoid processing and paying the claims.  DR

23  Recovery complied with Defendants' repetitive requests and despite being promised

24  payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants

25  refused to properly reimburse DR Recovery for the covered treatment and services

26  provided to Defendants' insureds.  Defendants likewise failed and refused to provide

27  DR Recovery and the insureds with adequate notice and/or explanation for the

28  denial of benefits, payments or reimbursement of claims, and failed and refused to

- 61 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  provide DR Recovery and the insureds with a reasonable opportunity to engage in a

2  meaningful claims process and procedure which was full and fair. Defendants'

3  audits, bogus TIN flag and pending of claims, inadequate notices and explanations,

4  denial of full and fair claims processes and procedures, repetitive document and

5  information requests and promises of payment were false and fraudulent and were

6  implemented by Defendants, and each of them, as a pretext to illegally delay and

7  deny DR Recovery (and hundreds of other substance use disorder treatment

8  providers and clinical laboratories) payment in accordance with Defendants'

9  representations and promises, and the law and plans.

10      155.   As a result, DR Recovery has suffered and continues to suffer general

11  and incidental damages according to proof, including the benefits owed under the

12  plans and the law in the millions, amounts owed in accordance with Defendants'

13  payment promises to DR Recovery, the interruption in DR Recovery's business, lost

14  business opportunities, lost profits and other consequences, and moreover, DR

15  Recovery is entitled to injunctive relief and statutory and prejudgment interest and

16  attorney's fees against Defendants, and each of them.

17      **Inland Detox**

18      156.   Inland Detox is an out-of-network substance use disorder treatment

19  provider. Inland Detox provides treatment and services to individuals in the process

20  of recovering from substance use disorders. Inland Detox provided medically

21  necessary, verified, preauthorized and covered substance use disorder treatment and

22  services to 145 individuals with health insurance that was sold, insured, managed

23  and/or administered by Defendants. The treatment and services provided by Inland

24  Detox include RTC, PHP, IOP, OP, treatment planning, counseling and behavioral

25  therapies, and case management services.

26      157.   Defendants' health insurance plans, for each of the 145 insureds at

27  issue, provide coverage for out-of-network substance use disorder treatment and

28  laboratory services. In this regard, the plans, and each of them, provide that out-of-

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The plans also provide that covered out-of-network substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, crisis intervention, and laboratory services.

158.   Defendants' health insurance plans, for each of the 145 insureds at issue, pay benefits for out-of-network substance use disorder treatment, including, but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus and outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  Inland Detox is informed and believes, and based thereon alleges, that each of the 145 insureds had already met their annual out-of-pocket maximum at the time of admission into its program, or shortly thereafter.  The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received.  Inland Detox is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers.

159.   Inland Detox obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Inland Detox not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  In reliance on the assignments of benefits, Inland Detox rendered the subject treatment and services to Defendants' insureds/members.  Moreover, Defendants confirmed,

- 63 -

SECOND AMENDED CONSOLIDATED COMPLAINT

represented, promised and warranted to Inland Detox through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Inland Detox would be paid for treating Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, Inland Detox rendered the subject treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that Inland Detox was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Inland Detox' charges for the treatment and services rendered, at each level of care.

160. After providing covered treatment and services to the 145 insureds at issue, Inland Detox submitted its claims to Defendants for payment. Defendants were obligated – under the law and the policies – to pay Inland Detox the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Defendants also advised, confirmed and promised to Inland Detox during the verification and benefits and preauthorization process for each of the 145 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like Inland Detox, for all levels of substance use disorder treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

SECOND AMENDED CONSOLIDATED COMPLAINT

161.   Instead of paying Inland Detox per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to Inland Detox, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Inland Detox a mere 24% of its covered charges.  It was only after Inland Detox rendered the treatment and services at issue that Defendants refused to properly compensate Inland Detox for the covered treatment and services rendered to Defendants' insureds.

162.   During the claim submission and payment process, Defendants put Inland Detox on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Inland Detox, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. Inland Detox complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Inland Detox for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Inland Detox and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Inland Detox and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Inland Detox (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

SECOND AMENDED CONSOLIDATED COMPLAINT

163.   As a result, Inland Detox has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to Inland Detox, the interruption in its business, lost business opportunities, lost profits and other consequences, and moreover, Inland Detox is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**12 South**

164.   12 South is an out-of-network mental health and substance use disorder treatment provider.  12 South provides treatment and services to individuals in the process of recovering from mental health and substance use disorders.  At all times relevant herein, 12 South provided medically necessary, verified, preauthorized and covered mental health and substance use disorder treatment and services to 74 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The treatment and services provided by 12 South include PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services.

165.   Defendants' health insurance plans, for each of the 74 insureds at issue, provide coverage for out-of-network mental health and substance use disorder treatment and laboratory services.  In this regard, the plans, and each of them, provide that out-of-network mental health and substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The plans also provide that covered out-of-network mental health and substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, crisis intervention, and laboratory services.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

166.   Defendants' health insurance plans, for each of the 74 insureds at issue, pay benefits for out-of-network mental health and substance use disorder treatment, including, but not limited to, RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, and case management services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. 12 South is informed and believes, and based thereon alleges, that each of the 74 insureds had already met their annual out-of-pocket maximum at the time of admission into its program, or shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received.  12 South is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of mental health and substance use disorder treatment providers.

167.   12 South obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to 12 South not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  In reliance on the assignments of benefits, 12 South rendered the subject treatment and services to Defendants' insureds/members.  Moreover, Defendants confirmed, represented, promised and warranted to 12 South through the required verification of benefits and the preauthorization process that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that 12 South would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, 12 South rendered the subject treatment and services to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Defendants' insureds/members.  At all times relevant herein, Defendants knew that

2  12 South was treating and providing services, and would continue to treat and

3  provide services, to their insureds, and Defendants were, at all times, advised and

4  fully aware of 12 South's charges for the treatment and services rendered, at each

5  level of care.

6       168.   After providing covered treatment and services to the 74 insureds at

7  issue, 12 South submitted its claims to Defendants for payment.  Defendants were

8  obligated – under the law and the policies – to pay 12 South the applicable plan

9  percentage of its covered charges (between 50% to 80% of covered charges, with

10  the majority of plans paying out-of-network benefits at 70% of covered charges

11  (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

12  annual out-of-pocket maximum is met at which time Defendants pay 100%.

13  Defendants also advised, confirmed and promised to 12 South during the

14  verification and benefits and preauthorization process for each of the 74 insureds,

15  that the out-of-network benefits paid by Defendants to out-of-network providers,

16  like 12 South, for all levels of mental health and substance use disorder treatment, is

17  a percentage of its covered charges (between 50% to 80% of covered charges, with

18  the majority of claims promised by Defendants to be paid at 70% of covered

19  charges) until the insured's nominal annual out-of-pocket maximum is met at which

20  time Defendants pay 100%.

21       169.   Instead of paying 12 South per the plan documents and the law, and in

22  accordance with Defendants' agreements, representations and promises to 12 South,

23  Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and

24  systematic polices, practices and decisions – with an emphasis on profits over

25  patients – and paid 12 South a mere 11.7% of its covered charges.  It was only after

26  12 South rendered the treatment and services at issue that Defendants refused to

27  properly compensate 12 South for the covered treatment and services rendered to

28  Defendants' insureds.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

170.   During the claim submission and payment process, Defendants put 12 South on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from 12 South, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  12 South complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse 12 South for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide 12 South and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide 12 South and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny 12 South (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

171.   As a result, 12 South has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to 12 South, the interruption in its business, lost business opportunities, lost profits and other consequences, and moreover, 12 South is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

**NTR Resources**

172.   NTR Resources is an out-of-network clinical laboratory.  NTR Resources provides laboratory services to individuals in the process of recovering from substance use disorders.  NTR Resources provided medically necessary, verified, preauthorized and covered laboratory services to 15 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The services provided by NTR Resources include presumptive and definitive drug tests.

173.   Defendants' health insurance plans, for each of the 15 insureds at issue, provide coverage for out-of-network substance use disorder treatment and laboratory services.  In this regard, the plans, and each of them, provide that out-of-network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The plans also provide that covered out-of-network substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention.  The plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

174.   Defendants' health insurance plans, for each of the 15 insureds at issue, pay benefits for out-of-network laboratory services at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to providers)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  NTR Resources is informed and believes, and based thereon alleges, that each of the 15 insureds had already met their annual out-of-pocket maximum at the time they first received services from NTR Resources, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

shortly thereafter. The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. NTR Resources is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of clinical laboratories.

175. NTR Resources obtained an oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to NTR Resources not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. In reliance on the assignments of benefits, NTR Resources rendered the subject services to Defendants' insureds/members. Moreover, Defendants confirmed, represented, promised and warranted to NTR Resources through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that NTR Resources would be paid for treating and providing services to Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, NTR Resources rendered the subject services to Defendants' insureds/members. At all times relevant herein, Defendants knew that NTR Resources was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of NTR Resources' charges for the treatment and services rendered, at each level of care.

176. After providing covered treatment and services to the 15 insureds at issue, NTR Resources submitted its claims to Defendants for payment. Defendants were obligated – under the law and the policies – to pay NTR Resources the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Defendants also advised, confirmed and promised to NTR Resources during the verification and benefits and preauthorization process for each of the 15 insureds, that the out-of-network benefits paid by Defendants to out-of-network providers, like NTR Resources, for all levels of substance use disorder treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

177. Instead of paying NTR Resources per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to NTR Resources, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid NTR Resources 0% of its covered charges. It was only after NTR Resources rendered the treatment and services at issue that Defendants refused to properly compensate NTR Resources for the covered treatment and services rendered to Defendants' insureds.

178. During the claim submission and payment process, Defendants put NTR Resources on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from NTR Resources, over and over again. This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. NTR Resources complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse NTR Resources for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide NTR Resources and the insureds with adequate notice and/or explanation for the denial of benefits, payments or

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

reimbursement of claims, and failed and refused to provide NTR Resources and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny NTR Resources (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

179. As a result, NTR Resources has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the hundreds of thousands of dollars, amounts owed in accordance with Defendants' payment promises to NTR Resources, the interruption in NTR Resources' business, lost business opportunities, lost profits and other consequences, and moreover, NTR Resources is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

**LEGAL EFFECT AND CONSEQUENCES OF DEFENDANTS' SCHEME**

180. Defendants' conduct at issue herein has had a severe and adverse effect on not only Plaintiffs, but also Defendants' insureds and the substance use disorder treatment profession as a whole. Defendants' conduct has placed the lives of their insureds that are struggling with addiction in jeopardy, exposing the insureds and their families to significant financial and health risk, while simultaneously destroying or significantly damaging Plaintiffs and all similarly situated substance use disorder treatment providers and clinical laboratories.

181. Defendants' conduct breached agreements with Plaintiffs which arose when Plaintiffs' patients assigned benefits to Plaintiffs in writing, and when

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Defendants confirmed out-of-network coverage for the treatment and services at

2   issue herein and promised to pay Plaintiffs for said treatment and services, and when

3   necessary, Defendants gave prior approval and authorization for the substance use

4   disorder treatment and services that Plaintiffs provided to Defendants'

5   insureds/members.  Defendants' violated the implied covenant of good faith and fair

6   dealing in said insurance contracts, rendering their actions in bad faith.

7       182.   Upon information and belief, Plaintiffs allege that Defendants' conduct

8   was wanton and willful, and undertaken to improve their balance sheets by placing

9   profits over patients in a life and death situation.  In this regard, Defendants'

10   substance use disorder treatment and clinical laboratory guidelines, reimbursement

11   policies and claims handlings processes and procedures were, and are, fraudulently

12   flawed and tainted by Defendants' financial interests.

13      183.   Defendants' practices were also unfair, fraudulent and unlawful under

14   California's Unfair Competition Law ("UCL") in that, as a part of their scheme to

15   not pay or underpay Plaintiffs, and to prevent Plaintiffs from learning of

16   Defendants' scheme for as long as possible, Defendants violated their claims

17   handling and processing obligations under ERISA and California law by providing

18   either no, baseless, false, or dilatory reasons for not paying or underpaying

19   Plaintiffs; thereby entitling Plaintiffs to injunctive relief and restitution against

20   Defendants, and each of them, under the UCL.

21      184.   Defendants' practices were similarly unfair, fraudulent and unlawful

22   under state and federal law in that they violate the MHPAEA, while simultaneously

23   constituting common law bad faith.  The MHPAEA is an antidiscrimination statute

24   intended to ensure that coverage of mental health and substance use disorder

25   treatment (such as Plaintiffs provide) is in "parity" with coverage of medical and

26   surgical care.  Defendants, and each of them, have systematically treated substance

27   use disorder treatment providers differently than medical and surgical providers in

28   California, and likely across the nation.

185.     Defendants' practices were likewise unfair, fraudulent and unlawful under state and federal law in that they violate the PPACA, which requires, among other things, insurers to provide benefits for essential mental health and substance use disorder treatment and laboratory services, with no pre-existing condition exclusions and no annual or lifetime dollar amount limits on coverage of such treatment services.

186.     Defendants' actions were further unfair, fraudulent and unlawful in that they violated other well established public policies, including those set forth in the California Unfair Insurance Practices Act ("UIPA"), as set forth in California Insurance Code sections 790, *et seq*.

187.     Defendants' insureds/members were also unlawfully, unfairly and fraudulently misled into believing that their health plans would provide coverage for care supplied by out-of-network substance use disorder treatment providers and clinical laboratories, such as Plaintiffs.

188.     Defendants, and each of them, never intended to provide the coverage mandated by the plans at issue and instead intended to not pay or to underpay substance use disorder treatment providers and laboratories throughout California, including Plaintiffs.  Defendants, and each of them, have ignored Plaintiffs' efforts to recover payment for the treatment and services provided, placing Plaintiffs in the untenable position of being forced to file this lawsuit in order to recover payments due under the law and plans, and in accordance with Defendants' out-of-network coverage representations and payment promises to Plaintiffs.

189.     Plaintiffs seek relief under their direct rights, written assigned rights from patients cheated out of their insurance benefits by Defendants, and as third-party beneficiaries of their patients' health insurance plans issued, managed and/or administered by Defendants.

190.     Defendants have also tortiously breached the implied covenant of good faith and fair dealing in the underlying health insurance plans issued, managed

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

1   and/or administered by Defendants, which rights have been assigned to Plaintiffs.

2   191.   The treatment and services at issue were provided by Plaintiffs to

3   patients who at all relevant times had health insurance for the substance use disorder

4   treatment and services that Plaintiffs provided and the health insurance plans were

5   issued, managed and/or administered by Defendants, and each of them, or at the

6   direction and under the control of Defendants.

7   192.   Defendants, and each of them, caused the events complained of herein

8   to occur in the County of Orange and throughout the State of California, and likely

9   across the nation.

10  193.   Plaintiffs provide substance use disorder treatment and laboratory

11  services to individuals in the process of recovering from alcoholism and substance

12  use disorders.  Plaintiffs' treatment includes a range of services, including, but not

13  limited to, RTC, PHP, IOP, OP, diagnostic evaluations, assessment and treatment

14  planning, treatment and/or procedures, medication management and other associated

15  treatment, psychological testing, referral services, individual, family and group

16  therapy, provider-based case management services, crisis intervention, and

17  laboratory services.

18  194.   Defendants, and each of them, developed and marketed the subject

19  health insurance plans to include coverage for substance use disorder treatment and

20  laboratory services provided to their insureds by in-network providers ("INP") and

21  out-of-network providers ("ONP") like Plaintiffs.

22  195.   The health insurance plans issued, managed and/or administered by

23  Defendants, and each of them, are industry standard indemnity health insurance

24  contracts that provide richer benefits (less out-of-pocket expense for insureds) for

25  treatment and services that are obtained from INPs.  Such providers contract with

26  Defendants to become part of their "network" and generally agree to accept a set

27  reduced rate of reimbursement in exchange for Defendants' steerage of patients to

28  their practices or facilities and payment within specified contractual timeframes.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

196.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide for a reimbursement rate for ONP services at a lesser percentage of the overall billed charges than the 100% reimbursement rate for INP services, less the insured's copayment, coinsurance and deductible, generally resulting in greater out-of-pocket expenses for Defendants' insureds.

197.   California law requires that the policy forms, such as those utilized in the health insurance plans issued, managed and/or administered by Defendants, and each of them, be filed with and approved by the CDI, and are generally not to be withdrawn from the insurance marketplace without an insurer meeting specific conditions.

198.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide coverage for, but not limited to, the following ONP substance use disorder treatment and services: RTC, PHP, IOP, OP, diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, crisis intervention, and laboratory services.

199.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide for the payment of services with an INP at 100% of the provider's billed charges set by contract, less the insured's copayment, coinsurance and deductible.  Services with an ONP are reimbursed at a lesser percentage of the provider's billed charges.

200.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide that Defendants are required to remit claim payments to providers when the insured assigns his or her benefits to the provider in writing, and Defendants warranted, represented and promised Plaintiffs that payments would be made to Plaintiffs.

201.   When required by the health insurance plans issued, managed and/or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

administered by Defendants, and each of them, Plaintiffs' standard operating procedure was to obtain prior authorizations from Defendants for the substance use disorder treatment and services to be rendered. Plaintiffs' standard operating procedure also included obtaining a verification of benefits from Defendants to ensure the patient is covered by the insurer and that the treatment and services at each level of care are covered benefits under the plan. Defendants' members/insureds were not admitted for treatment and services with Plaintiffs, and each of them, until the verification of benefits, prior authorizations, when needed, and payment promises were confirmed and acknowledged by Defendants.

202.   In communication with Plaintiffs, including telephone calls requesting verification of benefits and preauthorization, Defendants, and each of them, represented to Plaintiffs that the services provided to Defendants' insureds were covered and that the out-of-network benefits paid by Defendants to out-of-network providers, like Plaintiffs, for all levels of substance use disorder treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

203.   Specifically, for each of the 1,792 patients whose treatments and services are at issue, Plaintiffs contacted Defendants by phone and/or in writing before beginning such treatments and services. Defendants confirmed with Plaintiffs that the patients, and each of them, were validly covered by plans issued, managed and/or administered by Defendants, and Plaintiffs advised Defendants of the planned out-of-network treatments and services for Defendants' insureds, including the specific types of treatment and service to be provided, the treatment duration, billing codes and rates for the same. Defendants' represented, warranted and promised to Plaintiffs that the out-of-network benefits paid by Defendants to out-of-network providers, like Plaintiffs, for all levels of substance use disorder

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

treatment and laboratory services, is a percentage of the covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Thereafter, Plaintiffs treated and provided the subject treatment and services to Defendants' insureds/members.

204. Based upon the language of the health insurance plans issued, managed and/or administered by Defendants, and each of them, and upon obtaining verifications of benefits, prior authorizations and payment promises from Defendants, and valid assignments from the patients, Plaintiffs and their patients insureds by Defendants, all 1,792 of them, reasonably expected that Plaintiffs' claims would be paid promptly and consistent with the law and the terms of the plans and/or the herein payment representations and promises that Defendants, and each of them, made to Plaintiffs.

205. Notwithstanding the verifications of benefits, prior authorizations, coverage representations by Defendants, payment promises by Defendants, and valid assignments, Plaintiffs' claims for the majority of the substance use disorder treatment and laboratory services provided to Defendants' insureds/members have not been paid properly and require substantial interest payments for violation of the applicable health plans, ERISA and California insurance laws and regulations providing for the prompt payment of claims.

206. Plaintiffs are entitled to payment for the substance use disorder treatment and services provided to Defendants' insureds/members at the proper reimbursement rates, pursuant to the plan documents, valid assignments from their patients and pursuant to Defendants' coverage representations and payment promises to Plaintiffs.

207. While the breaches alleged herein involved health insurance plans issued, managed and/or administered by one or more of the Defendants and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Defendants' coverage representations and payment promises to Plaintiffs, each

2    Defendant, upon information and belief, conceived, directed, approved, or aided and

3    abetted the others in this bad faith scheme.

4         208.   In California, a health insurer must provide or arrange for the provision

5    of access to health care services in a timely manner.  Most health insurers, including

6    Defendants, and each of them, seek to satisfy this duty by providing an adequate

7    network of INPs for their insureds to choose from so they may receive the necessary

8    treatment at the lowest expense to the insurer and the insured.

9         209.   A "network gap" or "network insufficiency" exists in a health insurer's

10   network when either the health insurer, or the patient, is unable to secure the

11   services of an INP for necessary treatment.  If a network gap exists, California law

12   requires the insurer to secure the services of an ONP so the insurer can meet its legal

13   and contractual obligations to provide or arrange for the provision of access to

14   health care services in a timely manner.  In addition, emergency services, and

15   sometimes urgently needed services, must be covered by an insurer with an ONP if

16   the insurer has no network provider to provide the needed services.

17        210.   California law does not give a health insurer the right or ability to

18   unilaterally set the price it will pay an ONP that provides services to one of the

19   insurer's insureds in order to fill a network gap.

20        211.   Upon information and belief, Defendants had a network gap with

21   respect to substance use disorder treatment providers and laboratories in California,

22   and across the nation, to serve the tremendous number of insured patients in need of

23   such treatment and services, due in large part to the opioid and addiction epidemic

24   in California, and across the nation.

25        212.   Upon information and belief, Defendants had a network gap with

26   respect to substance use disorder treatment providers and laboratories required to

27   treat and meet the needs of their insureds/members, which caused some of

28   Defendants' insureds to obtain their needed treatment and services with ONPs, like

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

1 Plaintiffs.

2     213.   In the health care industry, a "verification" of an insured's coverage for

3 the contemplated treatment, or an "authorization" for such treatment, is understood

4 by both the insurers and providers (and the law) to be an agreement by the insurers

5 to pay for such treatment.  For INPs, it is an agreement by the insurers to pay those

6 providers based on previously negotiated rates between the insurer and those

7 providers.  For ONPs, it is an agreement by the insurers to pay those providers at

8 their fully billed charges.

9     214.   Plaintiffs, as ONPs, after obtaining verifications of benefits and prior

10 authorizations from Defendants, provided life-saving and medically necessary

11 substance use disorder treatment and services to Defendants' insureds/members due

12 to a network gap, and therefore, Plaintiffs are entitled to recover payment for their

13 treatment and services at their fully billed charges.

14     215.   While Plaintiffs have repeatedly demanded payment in full for the

15 treatment and services provided to Defendants' insureds, Defendants, and each of

16 them, have denied, delayed and incorrectly issued payment for Plaintiffs' claims

17 even after requested records were copied, sent and received by Defendants.

18     216.   Defendants, and each of them, would respond to Plaintiffs' inquiries

19 about the delay or errors in payment with false promises that payment would be

20 made and/or a multitude of excuses.  Regardless of the excuses made by

21 Defendants, and each of them, Plaintiffs did not receive proper claim payments for

22 the covered substance use disorder treatment and services provided to Defendants'

23 insureds/members.

24     217.   Upon information and belief, Defendants, and each of them, realized an

25 immediate positive financial impact as a result of their misconduct alleged herein,

26 cessation of substance use disorder treatment and laboratory claims payments, and

27 forcing treatment providers, like Plaintiffs, through an expensive, administratively

28 burdensome and indiscriminate audit, and not paying claims that are due and owed.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 81 -

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

218.    Upon information and belief, Defendants, and each of them, undertook the actions alleged herein with the intent and designed purpose of not paying claims that are due and owed under the law and the plans, and in accordance with Defendants' coverage representations and payment promised to Plaintiffs, as part of a pattern and practice by Defendants, and each of them, that is unlawful, unfair and fraudulent, and thus violates, *inter alia*, California's UCL, state and federal regulations and ERISA, MHPAEA and PPACA.

219.    Upon information and belief, Defendants, and each of them, undertook the actions alleged herein, in violation of numerous provisions of California's UIPA, without limitation, numerous subsections of California Insurance Code section 790.03, including misrepresentations to patients and providers, failing to acknowledge and act reasonably and promptly in response to communications, failing to adopt and implement reasonable standards for investigations, not attempting in good faith to effectuate prompt, fair and equitable settlement of claims, and compelling providers, like Plaintiffs, to institute litigation to recover amounts due and owed.

220.    Upon information and belief, Defendants, and each of them, developed a mechanism through their superior economic might to oppress substance use disorder treatment providers and laboratories, including Plaintiffs, and force Plaintiffs and other treatment providers into a position where they can no longer afford to accept patients insured by Defendants, or with health plans managed and/or administered by Defendants.  Defendants' misconduct as alleged herein has resulted in significant and undue hardship to Plaintiffs (and the patient-insureds) and interference with Plaintiffs' ability to provide life-saving substance use disorder treatment and services to individuals in desperate need of help.  And Defendants, and each of them, are doing this in the middle of an opioid and addiction epidemic!

**FIRST CAUSE OF ACTION**

**Claims for Plan Benefits Under ERISA, 29 U.S.C. §1132(a)(1)(B)**

**Against All Defendants**

221. Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

222. Plaintiffs are out-of-network substance use disorder treatment providers and clinical laboratories. Plaintiffs are in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society. Plaintiffs provided medically necessary, verified, preauthorized and covered substance use disorder treatment and laboratory services to 1,792 individuals with health insurance that was sold, insured, managed and/or administered by Defendants. The treatment and services provided by Plaintiffs include RTC, PHP, IOP, OP, treatment planning, counseling and behavioral therapies, individual, family and group therapy, medication management, case management services, and laboratory services to, among other things, determine, measure, or otherwise describe the presence or absence of various substances in the body.

223. Plaintiffs allege this claim for relief in connection with their claims for substance use disorder treatment and laboratory services rendered to those Defendants' 1,792 insureds with a health benefits plan governed by ERISA. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs have standing to pursue these claims as assignees of the insureds' benefits under the ERISA plans. Defendants' insureds orally assigned benefits by their insurance company or health plan to Plaintiffs and Plaintiffs obtained written assignments of benefits from the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims. As the assignees of benefits under the ERISA

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

plans, Plaintiffs are beneficiaries entitled to collect benefits under the terms of the ERISA plans, and claimants for purposes of ERISA.

224.    Defendants' ERISA health insurance plans, for those of the 1,792 insureds at issue, provide coverage for out-of-network substance use disorder treatment and laboratory services.  In this regard, the ERISA plans, and each of them, provide that out-of-network substance use disorder benefits include the following levels of care: RTC, PHP, IOP, and OP.  The ERISA plans also provide that out-of-network covered substance use disorder services include: diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, and crisis intervention.  The ERISA plans further provide coverage for out-of-network laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

225.    Defendants, and each of them, insure, sponsor, fund, serve as the designated plan administrator and/or serve as the named plan administrator's designee for the various ERISA health plans at issue, which fall into two categories – fully-funded and self-funded – but are administered the same.

226.    With respect to each ERISA plan at issue in this litigation that is a fully-funded plan, Defendants, and each of them are responsible for both administering and paying the claims from their own bank accounts, and are the plan administrators and ERISA fiduciaries for these plans.

227.    With respect to each ERISA plan at issue in this litigation that is a self-funded plan, but which does not specifically designate a plan administrator, Defendants, and each of them, administer these plans pursuant to an administrative service agreement, by which the self-funded ERISA plan sponsors delegated to Defendants, and each of them, the authority and responsibility for all administrative

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 84 -

SECOND AMENDED CONSOLIDATED COMPLAINT

responsibilities, including *inter alia,* providing plan members with plan documents, interpreting and applying the plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment in the form of claim reimbursements, and as such are the plan administrators and ERISA fiduciaries for these plans.

228. With respect to each ERISA plan at issue in this litigation that is a self-funded plan, but which does not specifically designate a plan administrator, Defendants, and each of them, functioned as the *de facto* plan administrators and were specifically designated by the ERISA plan sponsors as the claims administrator, with the same fiduciary duties as expressly designated plan administrators, and as such are the plan administrators and ERISA fiduciaries for these plans.

229. With respect to each ERISA plan at issue in this litigation that is a self-funded plan, Defendants, and each of them, make all benefit determinations and authorize benefit checks to be issued out of their own bank accounts. Periodically, Defendants, and each of them, will notify the ERISA self-funded plan sponsors of the need to replenish their accounts so that benefits can be paid. Defendants, and each of them, control these accounts and are fully responsible for processing the insurance claims and making the determination whether to issue a benefits payment check from these accounts.

230. As alleged herein, Defendants, and each of them, acted as agents for each other with regard to processing the claims under the ERISA plans at issue. With respect to the ERISA plans, whether fully-funded or self-funded, Defendants, and each of them, are the proper parties for Plaintiffs to sue regardless of whether a particular ERISA plan is fully- funded or self-funded, because Defendants, and each of them, not the underlying plan sponsor or employer, made and continue to make all the relevant decisions whether to honor or deny claims under the ERISA plans, and exercised and continue to exercise the authority to issue benefit payment checks

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   under the ERISA plans.

2      231.   Defendants' ERISA health plans pay benefits for out-of-network

3   substance use disorder treatment and laboratory services, including, but not limited

4   to, RTC, PHP, IOP, OP, diagnostic evaluations, assessment and treatment planning,

5   treatment and/or procedures, medication management and other associated

6   treatment, psychological testing, referral services, individual, family and group

7   therapy, provider-based case management services, crisis intervention and

8   laboratory services at varying percentages of covered charges (between 50% to 80%

9   of covered charges, with the majority of plans paying out-of-network benefits at

10  70% of covered charges (minus any outstanding insured cost-sharing amounts,

11  which Defendants deduct from payments to Plaintiffs)) until the insured's nominal

12  annual out-of-pocket maximum is met at which time Defendants pay 100%.  Each of

13  the insureds at issue with an ERISA plan had already met his/her annual out-of-

14  pocket maximum at the time he/she first received services from Plaintiffs, or shortly

15  thereafter.  The ERISA plans also pay 100% of covered charges in the event of a

16  "network inadequacy" or "network gap" for the services received.  At all times

17  relevant herein Defendants had an inadequate network of substance use disorder

18  treatment providers and clinical laboratories.

19      232.   After providing covered substance use disorder treatment and services

20  to those of the 1,792 insureds at issue with ERISA plans, Plaintiffs submitted their

21  claims to Defendants for payment.  The claim forms notified Defendants that

22  Plaintiffs were submitting the claims as the insureds' assignee.  Defendants were

23  obligated – under the law and the ERISA plans – to pay Plaintiffs the applicable

24  plan percentage of their covered charges (between 50% to 80% of covered charges,

25  with the majority of plans paying out-of-network benefits at 70% of covered charges

26  (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

27  annual out-of-pocket maximum is met at which time Defendants pay 100%.

28      233.   Instead of paying Plaintiffs per the ERISA plan documents and the law,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiffs, as a group, an average of 18.55% of their covered charges.  It was only after Plaintiffs rendered the treatment and services at issue that Defendants refused to properly compensate Plaintiffs for the covered treatment and services rendered to Defendants' insureds.

234.  Defendants, and each of them, never informed or advised Plaintiffs during the claims or post-claims process of any anti-assignment ERISA plan terms, and Defendants, and each of them, have thereby waived and are estopped from asserting any anti-assignment plan terms in this action.  See fn. 4, supra.  Likewise, Defendants, and each of them, never provided Plaintiffs with the ERISA plan documents, and Defendants, and each of them, made benefit determinations that were not based on individual plan terms.  Similarly, Defendants, and each of them, never provided Plaintiffs with notice of any administrative remedy provisions, limitation of action provisions or any other conditions to coverage under the terms of the plans.

235.  During the claim submission and payment process, Defendants put Plaintiffs on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiffs, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  Plaintiffs complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Plaintiffs for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Plaintiffs and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Plaintiffs and the insureds with a reasonable opportunity to engage in a meaningful claims

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

process and procedure which was full and fair. Defendants' audits, bogus TIN flags and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally delay and deny Plaintiffs (and hundreds of other substance use disorder treatment providers and clinical laboratories) payment in accordance with the law and the ERISA plans.

236. Plaintiffs have made all reasonable efforts to have Defendants adjudicate their claims, and have provided Defendants with thousands of pages of treatment records, none of which Defendant even consider for determining coverage. Plaintiffs have exhausted or by law are deemed to have exhausted their administrative remedies under the ERISA plans at issue, and moreover, Defendants' herein explained pattern of misconduct and misbehavior rendered all potential and further administrative remedies futile.

237. Defendants, and each of them, have failed to process Plaintiffs' claims in a manner consistent with ERISA, by, among other acts and omissions:

a. Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. §2560.503-1(f)(2)(iii)(B);

b. Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the insureds, in violation of 29 U.S.C. §1133(1);

c. Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the insureds, in violation of 29 U.S.C. § 1133(1);

d. Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    insureds, and by failing and refusing to set forth the specific

2    reasons for such denials, all in violation of 29 U.S.C. §1133(1);

3    e.    Failing and refusing to provide an explanation for the denial of

4    benefits, payments or reimbursements of claims of each of the

5    insureds, written in a manner calculated to be understood by the

6    participant, in violation of 29 U.S.C. § 1133(1);

7    f.    Failing to afford Plaintiffs and/or their patient insureds with a

8    reasonable opportunity to engage in an appeals process, in

9    violation of 29 U.S.C. §1133(2);

10   g.    Failing to afford Plaintiffs and/or their patient insureds with a

11   reasonable opportunity to engage in meaningful appeal process

12   which was full and fair, in violation of 29 U.S.C. §1133(2);

13   h.    Failing and refusing to provide Plaintiffs and/or their patient

14   insureds with information pertaining to their rights to appeal,

15   including not limited to those deadlines for filing appeals and/or

16   the requirements that an appeal be filed, in violation of 29 U.S.C.

17   §1133(1);

18   i.    Violating the minimum requirements for employee benefit plans

19   pertaining to claims and benefits by participants and beneficiaries,

20   in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

21   j.    Failing and refusing to establish and maintain reasonable claims

22   procedures in violation of 29 C.F.R. § 2560.503-1(b);

23   k.    Establishing, maintaining and enforcing claims procedures which

24   unduly inhibit the initiation and processing of claims for benefits,

25   in violation of 29 C.F.R. §2560.503.1(b)(3);

26   l.    Precluding and prohibiting Plaintiffs from acting as authorized

27   representatives of the patient insureds in pursuing a benefit claim

28   or appeal of an adverse benefit determination, in violation of 29

- 89 -

SECOND AMENDED CONSOLIDATED COMPLAINT

C.F.R. §2560.503-1(b)(4);

m.  Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. §2560.503-1(b)(5);

n.  Failing and refusing to pay benefits for services rendered by Plaintiffs which Defendants authorized, as well as rescinding the same, in violation of California Health & Safety Code §1371.8 and California Insurance Code §796.04;

o.  Failing to offer coverage for mental health and substance use disorder treatment and laboratory services in parity with the medical and surgical benefits afforded by the same plans, as required by 26 U.S.C. §9812(3), as well as other mandates set forth at 26 U.S.C. §9812, *et seq.*; and

p.  Failing and refusing to pay Plaintiffs for the substance use disorder treatments and laboratory services provided to the patient insureds in violation of 26 U.S.C. § 9812(3).

238.  Defendants' failure and refusal to provide coverage, reimbursement, payment and/or benefits for the substance use disorder treatment and laboratory services that Plaintiffs rendered to Defendants' insureds/members, and Defendants' denial of health insurance benefits coverage, constitute breaches of the ERISA plans at issue.  Plaintiffs seek reimbursement and compensation for all payments which they would have received and to which they are entitled to receive as a result of Defendants' breaches and failure to pay benefits and cover the treatments and services rendered by Plaintiffs to Defendants' insureds/members, in amounts according to proof at trial.

SECOND AMENDED CONSOLIDATED COMPLAINT

239. Defendants have arbitrarily and capriciously breached the obligations set forth in the ERISA plans at issue, and as regulated by ERISA and implementing regulations incorporated into the plans, and Defendants have arbitrarily and capriciously breached their obligations under the ERISA plans to provide Plaintiffs and the patient insureds with health benefits.

240. To remedy Defendants' wrongful conduct, Plaintiffs seek an order awarding them an amount equal to the amount of benefits Plaintiffs should have received and to which the patient insureds would have been entitled had Defendants paid the proper amounts, in amounts according to proof at trial, as direct and proximate result of the denial of plan benefits and other wrongful conduct by Defendants, and each of them, as alleged herein.

241. Plaintiffs are entitled to an award of reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). As a result of the actions and failings of Defendants, and each of them, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorney's fees and costs in prosecuting this litigation. Furthermore, Plaintiffs anticipate incurring additional attorney's fees and costs hereafter pursing this litigation and recovery of amounts due and owed by Defendants.

## SECOND CAUSE OF ACTION

### Breach of Written Contract

### (Non-ERISA Plans)

### Against All Defendants

242. Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

243. Plaintiffs allege this cause of action in connection with their claims for substance use disorder treatment and laboratory services rendered to the 1,792 insureds with health insurance plans not governed by ERISA. Plaintiffs bring this cause of action as assignees and third party beneficiaries of the non-ERISA health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

1    insurance plans at issue.

2    **Assignees**

3        244.   Plaintiffs are out-of-network substance use disorder treatment providers

4    and clinical laboratories.  Plaintiffs are in the profession of helping individuals

5    recover from alcoholism and addiction and return to their families and communities

6    as productive and contributing members of society.  Plaintiffs provided medically

7    necessary, verified, preauthorized and covered substance use disorder treatment and

8    laboratory services to 1,792 individuals with health insurance that was sold, insured,

9    managed and/or administered by Defendants.  The treatment and services provided

10   by Plaintiffs include RTC, PHP, IOP, OP, treatment planning, counseling and

11   behavioral therapies, individual, family and group therapy, medication management,

12   case management services, and laboratory services to, among other things,

13   determine, measure, or otherwise describe the presence or absence of various

14   substances in the body.

15       245.   Defendants' health insurance plans, for each of the 1,792 insureds at

16   issue, provide coverage for out-of-network substance use disorder treatment and

17   laboratory services.  In this regard, the plans, and each of them, provide that out-of-

18   network substance use disorder benefits include the following levels of care: RTC,

19   PHP, IOP, and OP.  The plans also provide that out-of-network covered substance

20   use disorder services include: diagnostic evaluations, assessment and treatment

21   planning, treatment and/or procedures, medication management and other associated

22   treatment, psychological testing, referral services, individual, family and group

23   therapy, provider-based case management services, and crisis intervention.  The

24   plans further provide coverage for out-of-network laboratory benefits, which include

25   the facility charge and the charge for supplies and equipment, physician services for

26   pathologists, and presumptive drug tests and definitive drug tests.

27       246.   Defendants' health insurance plans, for each of the 1,792 insureds at

28   issue, pay benefits for out-of-network substance use disorder treatment and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

laboratory services, including, but not limited to, RTC, PHP, IOP, OP, diagnostic evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, provider-based case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to Plaintiffs)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  Plaintiffs are informed and believe, and based thereon allege, that each of the 1,792 insureds had already met their annual out-of-pocket maximum at the time they first received treatment or services from Plaintiffs, or shortly thereafter.  The plans also pay 100% of covered charges in the event of a "network inadequacy" or "network gap" for the services received. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories.  The exclusions, conditions and limitations in the plans do not apply to the treatments and services provided by Plaintiffs.

247.    Plaintiffs obtained oral and written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  Moreover, Defendants confirmed, represented, promised and warranted to Plaintiffs through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Plaintiffs would be paid for treating

SECOND AMENDED CONSOLIDATED COMPLAINT

1    Defendants' insureds.  At all times relevant herein, Defendants knew that Plaintiffs

2    were treating and providing services, and would continue to treat and provide

3    services, to their insureds, and Defendants were, at all times, advised and fully

4    aware of Plaintiffs' charges for the treatment and services rendered, at each level of

5    care.

6        248.   After providing covered treatment and services to the 1,792 insureds at

7    issue, Plaintiffs submitted their claims to Defendants for payment.  Defendants were

8    obligated – under the law and the plans – to pay Plaintiffs the applicable plan

9    percentage of their covered charges (between 50% to 80% of covered charges, with

10   the majority of plans paying out-of-network benefits at 70% of covered charges

11   (minus any outstanding insured cost-sharing amounts)) until the insured's nominal

12   annual out-of-pocket maximum is met at which time Defendants pay 100%.  Instead

13   of paying Plaintiffs per the plan documents and the law, Defendants engaged in

14   unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices,

15   practices and decisions – with an emphasis on profits over patients – and paid

16   Plaintiffs, as a group, an average of 18.55% of their covered charges.

17       249.   Plaintiffs have performed all, or substantially all, of the significant

18   things required of them under the health insurance plans, except as excused by

19   Defendants' material breaches.

20       250.   Defendants, and each of them, breached the health insurance plans by

21   the conduct alleged herein, including without limitation withholding of proper claim

22   payments from Plaintiffs, making unreasonable demands on Plaintiffs, not engaging

23   in a prompt, full and complete investigation of Plaintiffs' claims, and interpreting

24   the plans in an unduly restrictive manner so as to deny coverage and benefits when,

25   in fact, coverage exists and benefits are owed to Plaintiffs.

26       251.   As a direct and proximate result Defendants' breaches, Plaintiffs have

27   suffered and will continue to suffer in the future, economic loss, including the

28   benefits owed under the health insurance plans and the law in the millions, the

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

interruption in Plaintiffs' businesses, lost business opportunities, lost profits, and other general, incidental and consequential damages, in amounts according to proof at trial. Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

### Third Party Beneficiaries

252. Plaintiffs are also express and intended third-party beneficiaries of the health insurance plans between Defendants and the 1,792 insured patients treated by Plaintiffs, and are entitled to recover on that basis.

253. Defendants and their insureds intended that Plaintiffs directly benefit from the health insurance plans and the plans indicate the intent to benefit Plaintiffs by providing for payment to Plaintiffs for the treatment and services provided to Defendants' insureds.

254. The health insurance plans issued, managed and/or administered by Defendants provide their insureds with the option of seeking treatment with Defendants' INPs or choosing their own ONPs, like Plaintiffs. The plans also provide for the payment of benefits for ONPs, like Plaintiffs, who provide medically necessary services to the insureds. Although the plans issued, managed and/or administered by Defendants may incentivize their insureds to seek treatment with INPs, the plans explicitly express Defendants' intent to benefit ONPs, like Plaintiffs.

255. The health insurance plans issued, managed and/or administered by Defendants further express Defendants' intent to benefit ONPs, like Plaintiffs, insofar as the plans expressly incorporate by reference regulations requiring insurers, like Defendants, to provide an adequate network of INPs and, in the event of a "network inadequacy" or "network gap," requiring insurers, like Defendants, to pay for the required care with available and accessible ONPs, like Plaintiffs, with the insureds responsible for paying only cost-sharing in an amount equal to the cost-sharing they would have paid for provision of that or a similar service by an INP.

SECOND AMENDED CONSOLIDATED COMPLAINT

256. Defendants' intent to benefit ONPs, like Plaintiffs, by the terms of the health insurance plans at issue is further evidenced by the conduct of the Defendants, who issued payments to ONPs, including Plaintiffs, for the medically necessary treatment and services rendered to their insureds, in accordance with the terms of the plans, until in or around 2015, when the Defendants, as part of their scheme to decrease their costs on mental health and substance use disorder treatment claims, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder treatment and related services, including Plaintiffs.

257. As set forth hereinabove, Plaintiffs provided covered, verified, preauthorized and medically necessary substance use disorder treatment and laboratory services to Defendants' insureds, all 1,792 of them, at great expense to Plaintiffs. After providing the services, Plaintiffs submitted their claims to Defendants for payment, requesting compensation for the treatment and services provided to the insureds.

258. Plaintiffs have performed all, or substantially all, of the significant things required of them under the health insurance plans, except as excused by Defendants' material breaches.

259. Defendants were obligated – under the law and the plans – to pay Plaintiffs the applicable plan percentage of their covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%. Instead of paying Plaintiffs per the plan documents and the law, Defendants engaged in unfair, unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiffs, as a group, an average of 18.55% of their covered charges.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SECOND AMENDED CONSOLIDATED COMPLAINT

260.   Defendants, and each of them, breached the health insurance plans by the conduct alleged herein, including without limitation withholding of proper claim payments from Plaintiffs, making unreasonable demands on Plaintiffs, not engaging in a prompt, full and complete investigation of Plaintiffs' claims, and interpreting the plans in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed to Plaintiffs.

261.   As a direct and proximate result Defendants' breaches, Plaintiffs have suffered and will continue to suffer in the future, economic losses, including the benefits owed under the health insurance plans in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits, and other general, incidental and consequential damages, in amounts according to proof at trial. Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

## THIRD CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing
### Against All Defendants

262.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

263.   Plaintiffs allege this cause of action in connection with their claims for substance use disorder treatment and laboratory services rendered to the 1,792 insureds with health insurance plans not governed by ERISA.

264.   As alleged herein, Plaintiffs are assignees and intended beneficiaries of their patients' health insurance plans issued, managed and/or administered by Defendants and the rights conferred thereunder.

265.   Each health insurance plan contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

266.   As set forth hereinabove, Plaintiffs provided covered, verified,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  preauthorized and medically necessary substance use disorder treatment and

2  laboratory services to Defendants' insureds with the understanding and expectation

3  that Defendants would act in good faith and deal fairly with Plaintiffs pursuant to

4  the plans.  Defendants, and each of them, however, tortiously breached the plans and

5  the implied covenant of good faith and fair dealing by the conduct alleged herein,

6  including without limitation:

7          a.     adopting unreasonable medical necessity standards that

8  indiscriminately reduce the amount of authorized substance use disorder treatment

9  available to their insureds;

10          b.     bullying Plaintiffs into adopting these unreasonable standards by

11  threatening to withhold righteous claim payments;

12          c.     interpreting the plans in an unduly restrictive manner so as to

13  deny coverage and benefits when, in fact, coverage exists and benefits are owed to

14  Plaintiffs;

15          d.     making unreasonable demands on Plaintiffs;

16          e.     not engaging in a prompt, full and complete investigation of

17  Plaintiffs' claims; and

18          f.     fraudulently representing to Plaintiffs that Defendants would pay

19  the claims in accordance with the plans;

20          g.     withholding of proper claim payments from Plaintiffs;

21          h.     forcing Plaintiffs to file appeals and requests for external peer

22  reviews to obtain authorization for medically necessary treatment, and to obtain

23  proper medically necessity determinations for post-service claim reimbursements;

24          i.     forcing Plaintiffs to initiate litigation to recover the plan benefits

25  owed; and

26          j.     failing to abide by the rules and regulations promulgated by the

27  CDI and the DMHC, and by other acts and omissions of which Plaintiffs are

28  presently unaware and which will be shown according to proof at the time of trial.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 98 -

SECOND AMENDED CONSOLIDATED COMPLAINT

267.    Upon information and belief, the conduct of Defendants, and each of
them, as alleged herein constitutes part of an institutional illegal pattern and practice
of bad faith and unlawful insurance practices.

268.    Defendants' conduct constitutes a continuing tort that is causing
Plaintiffs continued damages.

269.    Defendants' conduct as alleged herein was undertaken by Defendants'
officers, directors and/or managing agents who were responsible for the supervision,
operation, reports, communications and decisions at issue in this action.  The
conduct of said officers, directors and managing agents, and of other employees,
representatives and agents, was undertaken on behalf of Defendants, which had
advance knowledge of the action and conduct of said individuals whose conduct and
actions were authorized, ratified and approved by officers, directors or managing
agents of Defendants.

270.    As a direct and proximate result Defendants' breaches, Plaintiffs have
suffered and will continue to suffer in the future, economic losses, including the
benefits owed under the health insurance plans in the millions, the interruption in
Plaintiffs' businesses, lost business opportunities, lost profits, and other general,
incidental and consequential damages, in amounts according to proof at trial.
Plaintiffs are also entitled to recover statutory and prejudgment interest against
Defendants, and each of them.

271.    As a direct and proximate result of Defendants' breaches, Plaintiffs
have incurred attorney's fees and costs as a result of efforts to secure the insurance
benefits owed, in an amount according to proof.  Plaintiffs are also entitled to
recover statutory and prejudgment interest against Defendants, and each of them.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## **FOURTH CAUSE OF ACTION**

### **Breach of Implied Contract**

### **Against All Defendants**

272.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

273.   Plaintiffs, as ONPs, provided medically necessary and covered substance use disorder treatment and laboratory services to 1,792 patients who were insured under health insurance plans issued, managed and/or administered by Defendants, and each of them, preceded by prior authorizations and verifications of benefits by Defendants.

274.   Consistent with the trade custom and usage associated with prior authorizations and verifications of benefits by Defendants, Plaintiffs provided the subject treatment and services with the expectation, which was fully and clearly understood by Defendants and promised by Defendants, and each of them, that Plaintiffs would be compensated for such services at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts, which Defendants deduct from payments to Plaintiffs)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

275.   Plaintiffs, as ONPs, must often decide on short notice whether and to what extent they can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis whether the representations, statements and promises made by health insurers (like Defendants) to authorize treatment, verify benefits and promise payment constitute binding contract "acceptance" versus supposedly non-binding "authorization" would jeopardize the safety of patients, and impose an unfair risk on healthcare providers that they would not get paid for providing treatments that are medically necessary.  For this reason, the California Legislature

SECOND AMENDED CONSOLIDATED COMPLAINT

1    enacted Insurance Code section 796.04, which states (*see also* Cal. Health & Safety

2    Code § 1371.8 (same):

> A health insurer that provides coverage for hospital,
> medical, or surgical expenses that authorizes a specific
> type of treatment for services covered under a
> policyholder's contract or plan by a provider **shall not
> rescind or modify this authorization after the provider
> renders the health care service in good faith and
> pursuant to the authorization for any reason**, including,
> but not limited to, the insurer's subsequent rescission,
> cancellation, or modification of the insured's or
> policyholder's contract or the insurer's subsequent
> determination that it did not make an accurate
> determination of the insured's eligibility. (emphasis added)

10    276.   In addition to reliance upon the trade custom and usage associated with

11   prior authorizations and verifications of benefits by Defendants, Plaintiffs provided

12   the subject treatment and services with the expectation that Plaintiffs would be

13   compensated for such services based upon the prior course of conduct of Defendants

14   and Defendants' promises, and each of them, and Defendants confirmed this with

15   Plaintiffs during the verification of benefits and authorization process for each of the

16   insureds at issue herein.

17   277.   Defendants, and each of them, were advised and fully aware of the

18   dollar amounts charged by Plaintiffs for the subject treatment and services rendered

19   to the subject insureds, at each level of care, and had previously authorized, verified

20   and confirmed the benefits payable to Plaintiffs for such treatment and services

21   rendered to the insureds, at each level of care.  Defendants, and each of them, were

22   also aware that Plaintiffs did not provide the subject treatment and services for free,

23   and that Plaintiffs would submit their claims to Defendants for payment, which

24   claims Defendants promised to pay.  Defendants, and each of them, also knew

25   Plaintiffs were not contracted in-network providers who had agreed to accept any

26   pre-negotiated contract rates.  With such knowledge, Defendants, and each of them,

27   issued payments for the subject treatment and services to ONPs, including Plaintiffs.

28   278.   Whereas payments by Defendants, and each of them, was sporadic and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  often inadequate, in or around 2015, and as part of their scheme to decrease their

2  costs of substance use disorder and mental health treatment and laboratory claims,

3  Defendants, and each of them, conspired, concocted and implemented their plans to

4  significantly decrease, and in some cases completely ceased reimbursing, ONPs

5  providing substance use disorder treatment and laboratory services, including

6  Plaintiffs.

7  279.   Accordingly, by virtue of Defendants, and each of them, authorizing,

8  verifying and confirming the benefits for the subject treatment and services provided

9  by Plaintiffs; by the trade custom and usage associated with prior authorizations and

10  verifications of benefits; by Defendants' promises to pay Plaintiffs; and by

11  Defendants' prior course of conduct and confirmations, the parties thus created an

12  implied contract, through words and conduct, that Defendants, and each of them,

13  would pay Plaintiffs for the substance use disorder treatment and laboratory services

14  rendered to Defendants' insureds.

15  280.   Defendants are also liable to pay Plaintiffs for treating the 1,792

16  patients and the claims at issue herein due to a contract implied in law based on

17  Defendants' network gaps as discussed hereinabove.  California law requires that

18  where health insurers (like Defendants) cannot provide their insureds access to the

19  needed healthcare providers on an "in-network" basis, the insurers shall pay any

20  "out-of-network" provider (like Plaintiffs) the amounts necessary to limit the out-of-

21  pocket cost to the insured as if an in-networker provider had provided the same

22  treatment and services.  In effect, this makes an out-of-network provider eligible to

23  receive almost 100 percent of its covered charges (since the insureds would be

24  responsible for only their relatively nominal copayments), or in any case

25  substantially more than the contracted rates agreed to by an in-network provider.

26  *See*, *e.g.*, Cal. Ins. Code §10133.5; Cal. Code Regs., tit. 10, §2240.1

27  281.   As explained hereinabove, the health insurance plans at issue pay 100%

28  of covered charges in the event of a "network inadequacy" or "network gap" for the

- 102 -

SECOND AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

services received.  Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories.  Simply put, Defendants failed to arrange for in-network providers in the insureds' localities who were willing and able to provide the substance use disorder treatment and related services required by those insureds.  Indeed, if Defendants objected to their insureds obtaining treatment from ONPs such as Plaintiffs, why did they refuse or otherwise fail to refer those insureds to an INP?  The only reasonable inference is that there were no such INP's who were in the position to treat the insureds at issue.  As a result, those insureds had no choice but to seek the treatments and services rendered by Plaintiffs, who did so in good faith and in reliance on Defendants' expected compliance with the plans and applicable California health care law as it pertains to a "network gap."

282.   Plaintiffs have performed all, or substantially all, of the significant things required of them under the implied contracts, except as excused by Defendants' material breaches.

283.   Defendants, and each of them, breached the implied contracts by the conduct alleged herein, including without limitation withholding of proper claim payments, making unreasonable demands on Plaintiffs, not engaging in a prompt, full and complete investigation of Plaintiffs' claims, and interpreting the plans in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed.

284.   As a direct and proximate result Defendants' breaches of the implied contracts, Plaintiffs have suffered and will continue to suffer in the future, economic losses, including the benefits owed under the law and health insurance plans in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits, and other general, incidental and consequential damages, in amounts according to proof at trial.  Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

SECOND AMENDED CONSOLIDATED COMPLAINT

# FIFTH CAUSE OF ACTION

## Breach of Oral Contract

## Against All Defendants

285.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

286.   As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, orally promised to pay Plaintiffs for the treatment and services provided to Defendants' insureds, all 1,792 of them, a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

287.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

288.   Plaintiffs have performed all duties required of them under the oral contracts, except as excused by Defendants' material breaches.

289.   Defendants and each of them, however, breached the oral contracts by the conduct alleged herein, including without limitation the withholding of proper claim payments.

290.   As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered general and incidental damages according to proof, and are entitled to statutory and prejudgment interest and attorney's fees against Defendants.  Under this cause of action, Plaintiffs seek to recover the benefits orally promised, which are equal to a percentage of their covered charges (between 50% to 80% of covered

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

291.   As a direct and proximate result of Defendants' breaches, Plaintiffs have incurred and continue to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits and other consequences, all according to proof.

## SIXTH CAUSE OF ACTION

### Promissory Estoppel

### Against All Defendants

292.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

293.   As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiffs for the treatment and services provided to Defendants' insureds, all 1,792 of them, on the same terms as provided for in the plans between Defendants and their insureds; specifically, payments to Plaintiffs equal to a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.

294.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

295.   Plaintiffs relied on Defendants' promises in providing the subject treatment and services to Defendants' insureds, and Defendants, and each of them,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   should reasonably have expected this to induce Plaintiffs' action in providing said

2   treatment and services to Defendants' insureds.

3       296.   Plaintiffs have suffered substantial detriment in reliance upon

4   Defendants' promises in providing treatment and services to Defendants' insureds,

5   including without limitation the benefits owed in the millions, the interruption in

6   Plaintiffs' businesses, lost business opportunities, lost profits and other

7   consequences, all according to proof at trial.

8       297.   As a direct and proximate result of Defendants' breach of their

9   promises, Plaintiffs are also entitled to statutory and prejudgment interest and

10  attorney's fees against Defendants, and each of them.

## SEVENTH CAUSE OF ACTION

### Unfair Competition

### Against All Defendants

14      298.   Plaintiffs incorporate by reference all allegations set forth in each of the

15  paragraphs above as if fully set forth herein.

16      299.   The conduct of Defendants, and each of them, as alleged herein not

17  only constitutes common law bad faith, but also violates state and federal law,

18  regulations and policies, and thus constitutes unlawful, unfair, and fraudulent

19  business practices in violation of the UCL (Bus. & Prof. Code §§ 17200 *et seq*.).

20      300.   Plaintiffs have suffered injury in fact and have lost money or property

21  as a result of acts of unfair competition by Defendants, and each of them, as alleged

22  herein.

23      301.   Plaintiffs are entitled to injunctive relief under the UCL and, as such,

24  Plaintiffs seek a temporary restraining order, a preliminary injunction, and a

25  permanent injunction, all enjoining Defendants, and each of them, from

26  unjustifiably withholding proper payment of claims.

27      302.   Plaintiffs are further entitled to an order appointing a receiver over

28  Defendants, and each of them, and restoring to Plaintiffs any money or property that

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  was acquired through the foregoing acts of unfair competition (Cal. Bus. & Prof.

2  Code § 17203).

3                                   **PRAYER**

4        **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of

5  them, and that the Court award the following relief:

6        1.      For compensatory, general and special damages in amounts to be

7                proven at trial;

8        2.      For statutory and prejudgment interest;

9        3.      For costs incurred in connection with this lawsuit;

10       4.      For attorney's fees;

11       5.      For injunctive and equitable relief; and

12       6.      For all other relief the Court deems just and proper.

13                          **DEMAND FOR JURY TRIAL**

14       Plaintiffs hereby request a trial by jury for all claims triable by jury.

15

16  Dated:  August 24, 2020            **CALLAHAN & BLAINE, APLC**

17

18                                   By:   /s/ *Damon D. Eisenbrey*
19                                         Damon D. Eisenbrey
                                           Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 107 -

SECOND AMENDED CONSOLIDATED COMPLAINT

**Jeannie Kirwin**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, August 24, 2020 2:26 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 8:20-cv-00102-DOC-ADS Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company et al Amended Complaint/Petition |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Collins, Richard on 8/24/2020 at 2:26 PM PDT and filed on 8/24/2020

| | |
|---|---|
| **Case Name:** | Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company et al |
| **Case Number:** | 8:20-cv-00102-DOC-ADS |
| **Filer:** | MMR Services LLC |
| | Pacific Palms Recovery LLC |
| | Inland Detox Inc |
| | Women's Recovery Center, LLC |
| | Kool Living Inc |
| | DR Recovery Encinitas LLC |
| | 12 South LLC |
| | Addiction Health Alliance LLC |
| | NTR Resources LLC |
| | Stephen G Larson |
| | Southern California Addiction Center Inc |
| | Southern California Recovery Centers Oceanside LLC |
| | TML Recovery LLC |
| **Document Number:** | 49 |

**Docket Text:**
<span style="color:#1F3864">**SECOND AMENDED COMPLAINT against Defendants All Defendants amending Consolidated Complaint[33], filed by plaintiff MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox**</span>

**Inc, Women's Recovery Center, LLC, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, Addiction Health Alliance LLC, NTR Resources LLC, Stephen G Larson, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC(Attorney Richard T Collins added to party Stephen G Larson(pty:sm))(Collins, Richard)**

**8:20-cv-00102-DOC-ADS Notice has been electronically mailed to:**

Amir Shlesinger      ashlesinger@reedsmith.com, calaniz@reedsmith.com

Damon D Eisenbrey     deisenbrey@callahan-law.com, JKirwin@callahan-law.com

Daniel J Callahan     dan@callahan-law.com

Edward Susolik      esr@callahan-law.com

Errol J King      errol.king@phelps.com, cheryl.johnston@phelps.com, naya.wiley@phelps.com

Jenifer C Wallis     jwallis@munckwilson.com, AAngelo@munckwilson.com, APal@munckwilson.com, dpound@munckwilson.com, lreed@munckwilson.com

Kenneth N Smersfelt      ksmersfelt@reedsmith.com, pcarr@reedsmith.com

Lorenzo E Gasparetti     lgasparetti@reedsmith.com, jlwood@reedsmith.com, mary-hong-3734@ecf.pacerpro.com, mhong@reedsmith.com, sandra-lasarte-8856@ecf.pacerpro.com

Richard T Collins      rcollins@callahan-law.com, bbutler@callahan-law.com, ivaldovinos@callahan-law.com, JKirwin@callahan-law.com

Stephen G Larson      slarson@larsonobrienlaw.com

**8:20-cv-00102-DOC-ADS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Second Amended Consolidated Complaint.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=8/24/2020] [FileNumber=30400055-0
] [4566479253a25b4f71744a71af5d6e7ce2241a087e93f810825e49cb0de3087974e
9a20e25c8e6be9217c331a74cddf3b9a47f860917fce011cc2703f8bf5a48]]