BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re:  BLUE CROSS BLUE SHIELD   )
ANTITRUST LITIGATION              )          MDL No. 2406
                                                       )

NOTICE OF POTENTIAL TAG-ALONG ACTION

To:   Clerk of the Panel
      Judicial Panel on Multidistrict Litigation
      Thurgood Marshall Federal Judiciary Building
      One Columbus Circle, N.E.
      Room G-255, North Lobby
      Washington, DC 20002-8004

   Pursuant to Rule 7.1(a) of the Rules of Procedure for the United States Judicial Panel on

Multidistrict Litigation, Defendants in the following related action[1] hereby give notice of such

---

[1] Plaintiffs have named the following entities in this lawsuit: Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; California Physicians' Service *d/b/a* Blue Shield of California; Blue Cross and Blue Shield of Alabama; Premera and Premera Blue Cross, also *d/b/a* Premera Blue Cross Blue Shield of Alaska; Blue Cross Blue Shield of Arizona, Inc.; Usable Mutual Insurance Company *d/b/a* Arkansas Blue Cross and Blue Shield; Anthem, Inc. *f/k/a* Wellpoint, Inc. *d/b/a* Anthem Blue Cross Life and Health Insurance Company; Anthem Health Plans, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Connecticut; Blue Cross and Blue Shield of Georgia; Rocky Mountain Hospital & Medical Service Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Colorado; Anthem Blue Cross and Blue Shield of Nevada; Anthem Insurance Companies, Inc. *d/b/a* Anthem Blue Cross Blue Shield of Indiana; Anthem Health Plans of Kentucky, Inc. *d/b/a* Anthem Blue Cross Blue Shield of Kentucky; Anthem Health Plans of Maine, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Maine; HMO Missouri Inc., *d/b/a* Anthem Blue Cross Blue Shield of Missouri; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of New Hampshire; Empire HealthChoice Assurance, Inc. *d/b/a* Empire Blue Cross Blue Shield; Community Insurance Company *d/b/a* Anthem Blue Cross and Blue Shield of Ohio; Anthem Health Plans of Virginia, Inc., *d/b/a* Anthem Blue Cross and Blue Shield of Virginia, Inc.; Blue Cross Blue Shield of Wisconsin, *d/b/a* Anthem Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Highmark Health Services and Highmark Inc. *d/b/a* Highmark Blue Shield and Highmark Blue Cross Blue Shield including Highmark Inc. predecessor Hospital Service Association of Northeastern Pennsylvania *f/d/b/a* Blue Cross of Northeastern Pennsylvania; Highmark Blue Cross Blue Shield Delaware Inc. *d/b/a* Highmark Blue Cross Blue Shield Delaware; Highmark West Virginia Inc. *d/b/a* Highmark Blue Cross Blue Shield West Virginia; CareFirst, Inc., Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., CareFirst BlueChoice, Inc., which collectively *d/b/a* CareFirst BlueCross BlueShield; Guidewell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida Inc.; Hawaii Medical Service Association *d/b/a* Blue Cross and Blue Shield of Hawaii; Regence BlueShield of Idaho, Inc.; Blue Cross of Idaho Health Service, Inc. *d/b/a* Blue Cross of Idaho; Cambia Health Solutions, Inc. *d/b/a* Regence BlueShield of Idaho, Inc., Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Blue Shield (Washington); Health Care Service Corporation *d/b/a* Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Montana, including its predecessor, Caring for Montanans, Inc., Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Texas, Inc.; Wellmark, Inc. and Wellmark Blue Cross and Blue Shield of Iowa, Wellmark of South Dakota, Inc. *d/b/a* Wellmark Blue Cross and Blue Shield of South Dakota; Blue Cross and Blue Shield of Kansas, Inc.; Louisiana Health Service & Indemnity Company *d/b/a* Blue Cross and Blue Shield of

action filed in the Superior Court of the State of California, County of Alameda, now removed to the United States Bankruptcy Court for the Northern District of California: *VHS Liquidating Trust v. Blue Cross of California*, No. 21-04034 (the "Verity Action").[2]  A copy of the docket sheet is attached as Exhibit 1A.  A copy of the First Amended Complaint ("the Complaint") is attached as Exhibit 1B.  A copy of the Notice of Removal is attached as Exhibit 1C.

I.  **THE VERITY ACTION AND ITS ALLEGATIONS ARE NEARLY IDENTICAL TO CASES CENTRALIZED IN THE BCBS ANTITRUST MDL**

The Verity Action is designed as a copycat subscriber/provider action that involves common questions of fact—indeed, numerous *identical* fact allegations—with dozens of actions the Panel previously centralized in the *In re Blue Cross Blue Shield Antitrust Litigation,* MDL No. 2406, 13-cv-20000 (N.D. Ala.) (the "BCBS Antitrust MDL").  As the Panel will recall, the BCBS Antitrust MDL contains dozens of lawsuits brought on behalf of providers and subscribers of local

---

Louisiana; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Michigan Mutual Insurance Company; Aware Integrated, Inc., BCBSM, Inc. collectively *d/b/a* Blue Cross and Blue Shield of Minnesota; Blue Cross & Blue Shield of Mississippi; Blue Cross and Blue Shield of Kansas City; GoodLife Partners, Inc. and Blue Cross and Blue Shield of Nebraska; Horizon healthcare Services, Inc. *d/b/a* Horizon Blue Cross Blue Shield of New Jersey; HealthNow Systems, Inc., HealthNow New York, Inc. *d/b/a* BlueCross BlueShield of Western New York and BlueShield of Northeastern New York, Lifetime Healthcare, Inc., Excellus Health Plan, Inc. collectively *d/b/a* Excellus BlueCross BlueShield; Blue Cross and Blue Shield of North Carolina, Inc.; Noridian Mutual Insurance Company and HealthyDakota Mutual Holdings collectively *d/b/a* Blue Cross Blue Shield of North Dakota; Capital Blue Cross, Independence Health Group, Inc., Independence Hospital Indemnity Plan, Inc. *f/k/a* Independence Blue Cross; Triple-S Management Corporation, Triple-S Salud, Inc.; Blue Cross & Blue Shield of Rhode Island; Blue Cross Blue Shield of South Carolina; BlueCross BlueShield of Tennessee; Blue Cross and Blue Shield of Vermont; Blue Cross Blue Shield of Wyoming; and the Blue Cross and Blue Shield Association.

[2] Removal to federal court is proper and appropriate under 28 U.S.C. §§ 1452(a) and 1334(b), Federal Rule of Bankruptcy Procedure 9027, and Northern District of California Bankruptcy Local Rule 5011-1(a).  Specifically, 28 U.S.C. § 1334(b) provides that federal courts "shall have original . . . jurisdiction of all civil proceedings . . . related to cases under title 11."  Plaintiff VHS Liquidating Trust "is the bankruptcy liquidator for Verity Health System of California, Inc." (Ex. 1B, Compl. ¶ 110), created as part of an ongoing bankruptcy proceeding.  *See In re Verity Health System of California, Inc.*, No. 2:18-bk-20151 (Bankr. C.D. Cal.).  This Action is related to that proceeding.  *See, e.g.*, *In re Verity*, No. 2:18-bk-20151, Dkt. 5466, § 13.9(a)(ix) (charging the VHS Liquidating Trust with prosecuting actions "arising from claims against health plans," including specifically Defendants here); Ex. 1B, Compl. ¶ 21 (explicitly alleging "Plaintiff Verity, a non-profit health care services provider, went bankrupt; Defendants' conduct was a substantial factor in causing that bankruptcy").  Now, the question to be resolved by this Panel is which federal court should oversee the Verity Action.  For the purposes of pre-trial coordinated proceedings, the BCBS Antitrust MDL (MDL No. 2406) is ideal for the reasons outlined below.  These reasons include, for example, the promotion of efficient resolution of common allegations, the prevention of inconsistent rulings, the elimination of duplicative discovery, and the conservation of the parties' and courts' resources.

Blue Cross Blue Shield Plans ("Blue Plans"), alleging those Blue Plans and the Blue Cross Blue Shield Association ("BCBSA") violated the antitrust laws by, among other things, allocating exclusive territories and establishing revenue restrictions. *See In re Blue Cross Blue Shield Antitrust Litig.,* 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

In centralizing the numerous actions, the Panel found (1) that they "involve substantial common questions of fact relating to the state [Blue Plans'] relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas," and (2) that the Blue Plans "are alleged to be coconspirators." *Id*. More specifically, the Panel previously held that the Northern District of Alabama was an appropriate Section 1407 forum for actions sharing factual questions regarding "the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)." *Id.* at 1374.

The Verity Action does not merely involve common questions of fact with the BCBS Antitrust MDL—rather, the plaintiffs in the Verity Action copy, **nearly verbatim**, large swathes of the fact allegations in both the BCBS Antitrust MDL Consolidated Provider Complaint and Consolidated Subscriber Complaint (attached as Exhibits 1D and 1E, respectively), and proceed under similar legal theories. Moreover, all of the plaintiffs in the Verity Action would be members of the putative classes in the BCBS Antitrust MDL.

Verity Health System of California, Inc. was a not-for-profit healthcare services organization that was the sole owner of six medical centers serving the San Francisco, Los Angeles, and San Jose metropolitan areas. *See* Ex. 1B, Compl. ¶¶ 110-13. The organization entered bankruptcy proceedings in 2018, and the Chapter 11 Plan of Liquidation charged Plaintiff VHS Liquidating Trust ("Liquidating Trust") with pursuing Verity's interests in this lawsuit. *In*

*re Verity*, No. 2:18-bk-20151, Dkt. 5466, § 13.9(a)(ix). Plaintiffs Prime Healthcare Services, Prime Healthcare Foundation, Inc., and Prime Healthcare Management, Inc. (collectively, "Prime") own and operate hospitals and other healthcare providers throughout the country or employ staff to support those hospitals and providers. Ex. 1B, Compl. ¶¶ 111-21.

The Complaint alleges that both Prime and the Liquidating Trust (together, "Plaintiffs") were "subscribers and self-funded accounts of Defendant Blues. Plaintiffs purchased or were covered by commercial health benefit products offered by Defendant Blues." *Id.* ¶ 108. The Complaint also alleges that Plaintiffs "provided medically necessary, covered services to patients insured by Defendant [Blue Plans], or who are included in employee benefit plans administered by Defendants" as well as "medically necessary, covered services to other Blue Cross and Blue Shield Plan enrollees through national programs." *Id.* ¶¶ 120-26. As such, Plaintiffs would be members of the putative classes in the BCBS Antitrust MDL. *See* Ex. 1D, Provider Consolidated Compl. ¶ 618 (alleging a class of "[a]ll healthcare providers . . . in the United States of America, who provided covered services . . . to any patient who was insured by . . . a Defendant [Blue Plan]"); Ex. 1E, Subscriber Consolidated Compl. ¶ 319 (alleging a Self-Funded Subclass of "[a]ll Self-Funded Accounts . . . that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product").[3]

In addition, Plaintiffs structure their Complaint's allegations in this case to proceed in lockstep with the Consolidated Provider Complaint in the BCBS Antitrust MDL. Numerous subsections (and the express allegations contained therein) are ***identical or nearly identical***, including but not limited to the following examples:

---

[3] Plaintiffs have opted out of the Rule 23(b)(3) damages class proposed as part of a settlement with subscribers in the BCBS Antitrust MDL, but remain part of the Rule 23(b)(2) injunctive relief class.

| The Verity Action (Ex. 1B) | The Consolidated Provider Complaint (Ex. 1D) |
|---|---|
| The History of the Blues: "Before the Long-Term Business Strategy" (§ IV.A.1) | "The History of the Blues: Before the Long-Term Business Strategy" (at 59) |
| "Historically, the Blue Cross plans and the Blue Shield plans were fierce competitors.  During the early decades of their existence, there were no restrictions on the ability of a Blue Cross plan to compete. . . . Despite BCBSA's attempt to suppress competition among the Blues, history shows that this competition has existed and can exist."  (¶¶ 232-33) | *Identical*.  (¶¶ 152-53) |
| "In the 1970s, the Blue Cross Association and the Blue Shield Association began consolidating." (¶ 249) | *Identical*.  (¶ 164) |
| "The Long-Term Business Strategy and Assembly of Plans" (§ IV.A.2) | "The Long-Term Business Strategy and Assembly of Plans" (at 64) |
| "In the early 1980s, the Blues fundamentally changed the way they conducted business.  The Blues contracted with each other unlawfully through a work group organized by the BCBSA, to set mandates that became known as the 'Long-Term Business Strategy.'"  (¶ 255) | "In the early 1980s, the Blues fundamentally changed the way they conducted business.  The Blues conspired through a work group organized by the BCBSA, created a set of mandates that became known as the 'Long-Term Business Strategy.'" (¶ 165) |
| "When these license agreements were executed, the BCBSA acquired the ability to enforce exclusive Service Areas by membership restrictions in BCBSA, limitations on use of the BCBS name and marks, and monetary sanctions." (¶ 278) | "When these license agreements were executed the result was BCBSA's ability to enforce exclusive service areas by membership restrictions in BCBSA, use of the BCBS name and marks, and monetary sanctions."  (¶ 180) |
| "Defendant Blues Entered Into Unlawful Agreements" (§ IV.A.3) | "The Blues' Reached an Anticompetitive Agreement . . ." (at 70) |
| "Under the License Agreements, each Blue agrees that neither it nor its subsidiaries will compete under the | "Under the License Agreements, each Blue agrees that neither it nor its subsidiaries will compete under the |

5

| The Verity Action<br>(Ex. 1B) | The Consolidated Provider Complaint<br>(Ex. 1D) |
|---|---|
| licensed Blue Cross and Blue Shield trademarks and trade names outside of a specifically designated geographic Service Area . . . ."  (¶ 289) | licensed Blue Cross and Blue Shield trademarks and trade names outside of a specifically designated geographic 'Service Area' . . . ."  (¶ 189) |
| "The Defendants also agree that they will participate in inter-plan programs, including Blue Card, with the billions of dollars of access fees providing the quid pro quo for the agreements not to compete."  (¶ 294) | "The Defendants also agree that they will participate in Inter-Plan programs, including Blue Card with the billions of dollars of access fees providing the *quid pro quo* for the agreements not to compete."  (¶ 190) |
| "The Blue Card and National Account Programs" (§ IV.A.4) | "The Blue Card and National Accounts Programs" (at 76) |
| "As a result of the Blue Card Program, providers must comply with 36 different variations of medical policies, creating inefficiencies, adding to administrative costs for providers and the health care system, and resulting in many claim denials . . . ."  (¶ 316) | "As a result of the Blue Card system, Providers must comply with 36 different variations of medical policies, creating inefficiencies, adding to administrative costs for Providers and the health care system, and resulting in many claim denials . . . ."  (¶ 201) |
| "The Blue Card and National Accounts Programs are thus agreements to fix prices."  (¶ 319) | *Identical.*  (¶ 203) |
| "Protecting and Increasing 'Differentials'" (§ IV.A.5) | "Protecting and Increasing 'Differentials'" (at 84) |
| "Despite enjoying an advantage over its competitors in provider reimbursements, the Blues have higher administrative fees for self-funded plans than its competitors, even before accounting for the access fees the Blues charge as medical costs."  (¶ 347) | *Identical.*  (¶ 223) |
| "Differences Between the Modern Blues and Other Insurers" (§ IV.A.6) | "Differences Between the Modern Blues and Other Insurers" (at 86) |
| "Thus, the Blues are able to use leverage against providers that is | *Identical.*  (¶ 224) |

6

| The Verity Action (Ex. 1B) | The Consolidated Provider Complaint (Ex. 1D) |
|---|---|
| unavailable to their competitors." (¶ 349) | |
| "In addition, the Blues operate less efficiently than their competitors." (¶ 350) | *Identical.* (¶ 225) |

With minor wordsmithing changes, Plaintiffs ensured that even the portion of the Complaint identifying "Specific Examples of Defendants' Unlawful Conduct" ***directly tracks*** the Consolidated Provider Complaint's "Examples of Defendants' Restrictions on Competition" in the BCBS Antitrust MDL.  *Compare* Ex. 1B, Compl. § IV.B *with* Ex. 1D, Consolidated Provider Compl. at 88.  Examples include:

| The Verity Action (Ex. 1B) | The Consolidated Provider Complaint (Ex. 1D) |
|---|---|
| "The Market Allocation Agreement" (§ IV.B.3) | "The BCBS Market Allocation Conspiracy" (at 114) |
| "Defendants allocate geographic markets for health care financing and health care services by restricting each Defendant's activity outside of a designated geographic Service Area.  Accordingly, these restrictions insulate each Defendant from competition from other Blues in each of their respective geographic Service Areas, and prevent providers from contracting with Blues in other Service Areas." (¶ 430) | "Defendants allocate geographic markets for health care financing and health care services by restricting each Defendant's activity outside of a designated geographic Service Area.  Accordingly, these restrictions insulate each Defendant from competition by other Blues in each of their respective geographic Service Areas, and prevent providers from contracting with Blues in other Service Areas."   (¶ 317) |
| "Because of Defendants' market power . . . providers wishing to join the Blue network must accept lower reimbursement rates." (¶ 431) | *Identical.* (¶ 318) |

7

| The Verity Action<br>(Ex. 1B) | The Consolidated Provider Complaint<br>(Ex. 1D) |
|---|---|
| "The Price-Fixing and Boycott Agreements" (§ IV.B.4) | "The BCBS Price Fixing and Boycott Conspiracy" (at 118) |
| "Defendants achieved the Price Fixing and Boycott Agreement by agreeing that all Defendants would participate in the national programs, including the Blue Card and National Accounts programs, which determine the price and the payment policies to be utilized when a patient insured by a Blue or included in an employee benefit plan administered by a Defendant receives healthcare services within the Service Area of another Blue."  (¶ 445) | "Defendants achieved the Price Fixing and Boycott Conspiracy by agreeing that all Defendants would participate in the national programs, including the Blue Card and National Accounts Programs, which determine the price and the payment policies to be utilized when a patient insured by a Blue or included in an employee benefit plan administered by a Defendant receives healthcare services within the Service Area of another Blue."  (¶ 328) |
| "As a result of their Price Fixing and Boycott Agreement, Defendants reduce their payments to healthcare providers by in excess of ten billion dollars every year.  These reductions, of course, are the result of the depressed prices paid to healthcare providers, including Plaintiffs."  (¶ 451) | "As a result of their Price Fixing and Boycott Conspiracy, Defendants reduce their payments to healthcare providers by in excess of ten billion dollars every year.  These reductions, of course, are the result of the depressed prices paid to healthcare providers, including Plaintiffs." (¶ 334) |
| "Other Abuses" (§ IV.B.5) | "Other Abuses That Preserve the Blues' Enhanced Market Power" (at 140) |
| "In addition to the harms set forth above, Plaintiffs were harmed in numerous other ways as a result of Defendants' abuse of the significant market power that has resulted from their agreement.  For example, a number of the Blues use MFNs with hospitals and other facilities." (¶¶ 457-58) | "In addition to the harms set forth above, healthcare providers are harmed in numerous other ways as a result of Defendants' abuse of the significant market power that has resulted from their conspiracy.  For example, a number of the Blues use MFNs with hospitals and other facilities."  (¶¶ 383-84) |
| "Defendants, specifically Defendant Highmark, have threatened to utilize their extraordinary and excessive surplus . . . to enter (and have | *Identical.*  (¶ 387) |

| The Verity Action<br>(Ex. 1B) | The Consolidated Provider Complaint<br>(Ex. 1D) |
|---|---|
| already done so in some cases) the market as providers of health care services if providers do not acquiesce to the far below competitive rates offered in a market free from competition from other Blues." (¶ 462) | |
| "Implementation of the Affordable Care Act (ACA)" (§ IV.C) | "Implementation of the Affordable Care Act" (at 156) |
| "The barriers to entry that the Blues have created and used to their advantage have prevented many other health insurers from being on the exchanges in many places. The Blues, including BCBS-AL, have used their market power and their anticompetitive activities to increase their market shares through the mechanisms created by the ACA." (¶ 500) | *Identical.* (¶ 434) |
| "Restricting Competition in Pennsylvania and Ohio" (§ IV.B.2) | "Allowing and Restricting Competition in Pennsylvania" and "Allowing and Restricting Competition in Ohio" (at 101, 106) |
| "This unlawful, anticompetitive agreement not to compete has reduced competition throughout the state of Pennsylvania. After the Pennsylvania regulator refused to approve the merger of IBC into Highmark, the two entities began engaging in more joint activity instead of competing. . . . In a large part of central Pennsylvania, Capital Blue Cross and Highmark Blue Shield compete. In that area and in others where Blues compete, including with separate Provider | "This illegal, anticompetitive agreement not to compete has reduced competition throughout the state of Pennsylvania. After the Pennsylvania regulator refused to approve the merger of IBC into Highmark, the two entities began engaging in more joint activity instead of competing. . . . In a large part of central Pennsylvania, Capital Blue Cross and Highmark Blue Shield compete. In that area and in others where Blues compete, including with separate Provider |

| The Verity Action (Ex. 1B) | The Consolidated Provider Complaint (Ex. 1D) |
|---|---|
| Networks, reimbursement rates or prices are higher." (¶¶ 418-19) | Networks, reimbursement rates or prices are higher." (¶¶ 287-88) |
| "The history of Blue Cross and Blue Shield in Ohio shows that not only is competition possible among the Blues, but also that it occurred with BCBSA's agreement and was seen as beneficial to consumers at the time." (¶ 421) | *Identical.* (¶ 289) |

Plaintiffs base the Verity Action on legal theories and common questions of fact that are core to the BCBS Antitrust MDL: whether Defendants' service areas and BlueCard Program are unlawful agreements, and whether Defendants' Best Efforts rules are unlawful revenue restrictions. Ex. 1B, Compl. ¶ 5. As the Complaint avers: "[b]*ut for the unlawful agreements* not to compete with one another at issue in this Complaint, [Defendants] *could and would use their Blue brands and non-Blue brands to compete with each other* throughout their Service Areas." *Id.* ¶ 60 (emphases added). Plaintiffs' allegations are thus identical to those in the pending BCBS Antitrust MDL, as summarized by the Panel's prior order centralizing the actions: "Plaintiffs contend that the . . . Blue Plans are independent health insurance companies that, *but for any agreement to the contrary, could and would compete with one another*." *In re Blue Cross Blue Shield Antitrust Litig.,* 908 F. Supp. 2d at 1375 (emphasis added).

The commonalties of allegations and proffered legal theories provide the precise connection that the Panel has found sufficient to justify transfer of tag-along cases to the BCBS Antitrust MDL. Indeed, in the Panel's prior order, and in subsequent orders transferring additional related actions to the BCBS Antitrust MDL, the Panel has been clear: "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer,

10

and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *Id.* at 1376; *see also* Conditional Transfer Order, *Houston Home Dialysis v. Blue Cross and Blue Shield of Alabama et al.*, MDL No. 2406 [Dkt. 429] at 1 (J.P.M.L. October 25, 2019) (holding that the "action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of Alabama"); Conditional Transfer Order, *Richmond SA Services, Inc. v. Blue Cross and Blue Shield of Alabama et al.* and *American Surgical Assistants, Inc. v. Blue Cross and Blue Shield of Alabama et al.*, MDL No. 2406 [Dkt. 354] at 1 (J.P.M.L. May 11, 2016) (same). The Verity Action easily meets and surpasses that bar. Not only does the instant Complaint share certain allegations with the Consolidated Provider Complaint, they possess near "complete identity of common factual issues." *In re: Blue Cross Blue Shield Antitrust Litig.,* 908 F. Supp. 2d at 1375.

Even if the similarities between the Verity Action and the Consolidated Provider Complaint in the BCBS Antitrust MDL were not enough to justify consolidation, transfer is independently appropriate due to similarities between Plaintiffs' Complaint and the Consolidated **Subscriber** Complaint in the MDL. *See* Ex. 1E. Again, the Plaintiffs in the Verity Action would also be members of the purported subscriber class in the BCBS Antitrust MDL.

Plaintiffs' key allegations and legal theories related to their status as Blue Cross and Blue Shield subscribers mirror those set forth by subscriber plaintiffs in the BCBS Antitrust MDL. Both contend, in nearly verbatim terms, that the Defendants have injured Plaintiffs in the form of supracompetitive premiums and administrative fees for self-funded accounts, known as ASO fees. *Compare* Ex. 1B, Compl. ¶ 94 ("[Defendants'] anticompetitive agreement, implementing conduct and foreclosure of competition have prevented subscribers and enrollees from being offered competitive premium prices and self-funded accounts from being offered competitive ASO

11

Fees."), *with* Ex. 1E, Subscriber Consolidated Compl. ¶ 11 ("[Defendants'] anticompetitive agreement and implementing conduct and foreclosure of competition have prevented subscribers and enrollees from being offered competitive premium prices and self-funded accounts from being offered competitive ASO fees."). Both lawsuits use the same examples to describe how the identically challenged restraints limit consumer choice. *Compare* Ex. 1B, Compl. ¶¶ 523, 532 ("[C]onsumer choices have been reduced with regard to facilities where medical and surgical procedures are performed as a result of the Blues' low payments. . . . The agreements among the Blues have the effect of stifling innovation in the marketplace."), *with* Ex. 1E, Subscriber Consolidated Compl. ¶ 507 ("The challenged restraints also limited consumer choice and adversely affected innovation in health care products.").

Plaintiffs' subscriber-related allegations "involve questions of fact that are common to the actions previously transferred to the [MDL]." Conditional Transfer Order, *Zimmerman v. Blue Cross Blue Shield of Alabama et al.*, MDL No. 2406 [Dkt. 358] at 1; Conditional Transfer Order, *Aschenbrenner et al. v. Blue Cross Blue Shield of Alabama et al.*, MDL No. 2406 [Dkt. 362] at 1.

## II. TRANSFERRING THE VERITY ACTION TO THE BCBS ANTITRUST MDL PROMOTES EFFICIENT RESOLUTION OF COMMON ALLEGATIONS AND PREVENTS INCONSISTENT RULINGS

Because of the similarities between the way Plaintiffs structured their Complaint, and the way the Providers and Subscribers did so in the BCBS Antitrust MDL, transferring the Verity Action to the BCBS Antitrust MDL will allow a single court to address the underlying claims and the legality of the BCBSA License Agreements. The Northern District of Alabama has unique expertise as "an experienced transferee judge who is already familiar with the contours of the litigation." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. And transferring the Verity Action to the initial actions in the BCBS Antitrust MDL will "prevent inconsistent pretrial rulings" on the "common questions of fact" presented by these cases. *Id.*

The Defendants in the Verity Action are also already defendants in the cases centralized in the BCBS Antitrust MDL and dispute the common claims of collaboration or conspiracy. In other words, if the Verity Action is not transferred to the BCBS Antitrust MDL, there is a significant risk of conflicting rulings from different courts on the purported existence of the nationwide collaboration or conspiracy, and the effects of the BCBSA License Agreements and BlueCard Program on provider reimbursement and subscriber premiums. The Panel has consistently held that the potential for inconsistent rulings is a significant factor warranting transfer of related actions. *See In re BP Sec., Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.,* 734 F. Supp. 2d 1380, 1382 (J.P.M.L. 2010) (transferring cases to existing MDL to "prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues"); *In re Nat'l Sec. Agency Telecomm. Recs. Litig.,* 474 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (affirming transfer of actions to previously centralized action to "prevent inconsistent pretrial rulings"). The potential for inconsistent rulings by itself heavily weighs in favor of transferring the Verity Action to the BCBS Antitrust MDL.

### III. TRANSFERRING THE VERITY ACTION TO THE BCBS ANTITRUST MDL ELIMINATES DUPLICATIVE DISCOVERY AND CONSERVES THE COURTS' AND PARTIES' RESOURCES

Finally, transferring the Verity Action to the BCBS Antitrust MDL so that it can be managed with other cases involving similar, overlapping allegations will also avoid the prospect of duplicative discovery being sought from, and potentially inconsistent discovery obligations being imposed on, Defendants. The Panel centralized the initial actions in the BCBS Antitrust MDL in large part to "eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Blue Cross Blue Shield Antitrust Litig.,* 908 F. Supp. 2d at 1376. Transferring the Verity Action will help achieve these same goals.

The Panel has repeatedly held that a potential for parties to be subject to duplicative discovery is a substantial factor that warrants transfer. *See In re BP Sec., Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.,* 734 F. Supp. 2d at 1382 (transferring cases to existing MDL to "eliminate duplicative discovery"); *In re Nat'l Sec. Agency Telecomm. Recs. Litig.,* 474 F. Supp. 2d at 1356 (affirming transfer of actions to previously centralized action to "eliminate duplicative discovery"). If the Verity Action is not transferred to the BCBS Antitrust MDL, Defendants (whose respective principal places of business are located across the country) will likely have to prepare written discovery responses, produce documents, and provide deposition testimony about factual issues that overlap with those relevant to the BCBS Antitrust MDL. Duplicating those efforts in a separate litigation would be a waste of judicial and party resources, and would risk exposing Defendants to duplicative or inconsistent discovery obligations.

For all of these reasons, this instant copycat Verity Action is appropriate for transfer to the BCBS Antitrust MDL.

Date: September 22, 2021

Very truly yours,

/s/ Daniel E. Laytin, P.C.
Daniel E. Laytin, P.C.
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
dlaytin@kirkland.com
zachary.holmstead@kirkland.com

*Counsel for Blue Cross Blue Shield Association*

Craig A. Hoover
E. Desmond Hogan (pro hac vice application forthcoming)
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.

Christopher J. Kelly
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306
Tel: (650) 331-2025

Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Christopher J. Cox
HOGAN LOVELLS US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
Tel: (650) 463-4078
Fax: (650) 463-4199
chris.cox@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Aware Integrated, Inc.; Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera and Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

R. David Kaufman

Fax: (650) 331-2060
cjkelly@mayerbrown.com

Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Counsel for Defendants Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Florida, Inc.; Guidewell Mutual Holding Corp.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina, Inc.; BlueCross BlueShield of Tennessee, Inc.; California Physicians' Service d/b/a Blue Shield of California; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.*

James L. Priester
Carl S. Burkhalter

M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company*

Shane J. Moses
Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA  94104
Tel: (415) 434-4484
Fax: (415) 434-4507
mnaranjo@foley.com
smoses@foley.com

*Counsel for Defendant USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield*

Shane J. Moses
Michael A. Naranjo
Foley & Lardner LLP
555 California Street, Suite 1700
San Francisco, CA 94104
Tel: (415) 434-4484
Fax: (415) 434-4507

John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Nicholas J. Boos
MAYNARD, COOPER & GALE PC
2 Embarcadero Center, Suite 1450
San Francisco, CA 94111
Tel: (415) 646-4674
Fax: (205) 714-6709
nboos@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Mark McKane
mmckane@kirkland.com
Michael P. Esser
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile:  (415) 439-1500

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle

mnaranjo@foley.com
smoses@foley.com

M. Patrick McDowell (pro hac vice application forthcoming)
James A. McCullough (pro hac vice application forthcoming)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com
jmccullough@brunini.com

*Counsel for Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company*

Grant Waterkotte (SBN 215007)
PETTIT KOHN INGRASSIA LUTZ & DOLIN PC
5901 W. Century Blvd., Suite 1100
Los Angeles, CA 90045
Telephone: (310) 649-5772
Facsimile: (310) 649-5777
gwaterkotte@pettitkohn.com

Robert K. Spotswood (pro hac vice application forthcoming)
Joshua K. Payne (pro hac vice application forthcoming)
Jess R. Nix (pro hac vice application forthcoming)
SPOTSWOOD SANSOM & SANSBURY LLC
505 20th Street North, Suite 700
Birmingham, Alabama 35203
Telephone: (205) 986-3620
Facsimile: (205) 986-3639
rks@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com

Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark Blue Cross Blue Shield Delaware Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants*

Todd M. Stenerson
Brian C. Hauser
Edmund Y. Saw
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com
edmund.saw@shearman.com

John F. Cove, Jr. (SBN 212213)

*Counsel for Defendant Capital BlueCross*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Mark Punzalan
Lawrence Ng
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, California 94111
Tel: (415) 839-0063
mark@chanpunzalan.com
lawrence@chanpunzalan.com

*Counsel for Defendant, Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield; and Lifetime Healthcare, Inc.*

Mark McKane
mmckane@kirkland.com
Michael P. Esser
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415)-439-1400
Facsimile:  (415) 439-1500

Daniel E. Laytin
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
zachary.holmstead@kirkland.com

SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105-2997
Tel: (415) 616-1100
Fax: (415) 616-1199
john.cove@shearman.com

*Counsel for Defendant Blue Cross and Blue Shield of Michigan*

John DeQ.Briggs
Rachel J. Adcox
Jeny M. Maier
AXINN, VELTROP & HARKRIDER, LLP
1901 L Street, N.W.
Washington, DC  20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Daniel S. Bitton
AXINN, VELTROP & HARKRIDER LLP
560 Mission Street
San Francisco, CA 94105
Tel: (415) 490-1486
Fax: (415) 490-2001
dbitton@axinn.com

*Counsel for Defendant Independence Blue Cross; Independence Health Group, Inc.*

Rebecca M. Suarez
rsuarez@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Kathleen Taylor Sooy

daniel.laytin@kirkland.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc.; and Triple-S Management Corp.*

ksooy@crowell.com
Tracy A. Roman
troman@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Sarah M. Gilbert
sgilbert@crowell.com
Honor R. Costello
hcostello@crowell.com
CROWELL & MORING LLP
590 Madison Ave., 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

*Counsel for Defendants Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Kansas City; GoodLife Partners, Inc.; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue Shield of Arizona; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of Wyoming; HealthNow Systems, Inc.; Highmark Western and Northeastern New York Inc.*