# Exhibit 2

Mark McKane (SBN 230552)
mmckane@kirkland.com
Michael P. Esser (SBN 268634)
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

David Zott (*pro hac vice*)
dzott@kirkland.com
Daniel Laytin (*pro hac vice*)
dlaytin@kirkland.com
Zachary Holmstead (*pro hac vice* application on file)
zachary.holmstead@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*Blue Cross Blue Shield Association*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| VHS LIQUIDATING TRUST, *et al.*, | ) **Adv. Proc. No.** 21-04034 |
| | ) |
| Plaintiffs, | ) The Hon. Judge Charles Novack |
| v. | ) |
| | ) **MOTION TO STAY PROCEEDINGS** |
| BLUE CROSS OF CALIFORNIA, *et al.*, | ) **PENDING FINAL RULING BY THE** |
| | ) **JUDICIAL PANEL ON** |
| Defendants. | ) **MULTIDISTRICT LITIGATION** |
| | ) |
| | ) **Objection or Hearing Request Deadline:** |
| | ) **October 21, 2021** |
| | ) |
| | ) |
| | ) |
| | ) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant Blue Cross Blue Shield Association, by and through its counsel, respectfully moves the Court to stay proceedings in the above-captioned action until the Judicial Panel on Multidistrict Litigation ("JPML") issues a final determination regarding whether this action should be transferred to the *In re Blue Cross Blue Shield Antitrust Litigation* matter*, MDL No. 2406, Case No. 13-cv-20000 (the "BCBS MDL"), pending in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1407.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, and any other materials and arguments that may be presented at or before a hearing on this Motion.  The other Defendants support this Motion.

DATED: September 30, 2021              Respectfully submitted,

/s/ Michael P. Esser

Mark McKane (SBN 230552)
mmckane@kirkland.com
Michael P. Esser (SBN 268634)
michael.esser@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

David Zott (*pro hac vice*)
dzott@kirkland.com
Daniel Laytin (*pro hac vice*)
dlaytin@kirkland.com
Zachary Holmstead (*pro hac vice* application on file)
zachary.holmstead@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*Blue Cross Blue Shield Association*

## CERTIFICATE OF SERVICE

I, Michael P. Esser, attorney for Defendant Blue Cross Blue Shield Association, certify that, on September 30, 2021, I caused a copy of the foregoing to be served electronically on the counsel listed below.  Additionally, I caused a copy of the foregoing to be served via e-mail to the Defendants.

Patrick M. Ryan
Patrick E. O'Shaughnessy
John F. McLean
Oliver Q. Dunlap
Sean R. McTigue
BARTKO ZANKEL BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
pryan@bzbm.com
poshaughnessy@bzbm.com
jmclean@bzbm.com
odunlap@bzbm.com
smctigue@bzbm.com

*Attorneys for Plaintiffs*

Timothy S. Laffredi
Office of The United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
timothy.s.laffredi@usdoj.gov

*Assistant United States Trustee*

*/s/ Michael P. Esser* _____
Michael P. Esser

1   Mark McKane (SBN 230552)
    mmckane@kirkland.com
2   Michael P. Esser (SBN 268634)
    michael.esser@kirkland.com
3   KIRKLAND & ELLIS LLP
    555 California Street, 27th Floor
4   San Francisco, CA 94104
    Telephone: (415) 439-1400
5   Facsimile: (415) 439-1500

6   David Zott (*pro hac vice*)
    dzott@kirkland.com
7   Daniel Laytin (*pro hac vice*)
    dlaytin@kirkland.com
8   Zachary Holmstead (*pro hac vice* application on file)
    zachary.holmstead@kirkland.com
9   KIRKLAND & ELLIS LLP
    300 North LaSalle Street
10  Chicago, IL 60654
    Telephone: (312) 862-2000
11  Facsimile: (312) 862-2200

12  *Attorneys for Defendant*
    *Blue Cross Blue Shield Association*

13

14

15                    **UNITED STATES BANKRUPTCY COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
16                          **OAKLAND DIVISION**

17

| | |
|---|---|
| VHS LIQUIDATING TRUST, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| BLUE CROSS OF CALIFORNIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**Adv. Proc. No.** 21-04034

The Hon. Judge Charles Novack

**MEMORANDUM IN SUPPORT OF
MOTION TO STAY PROCEEDINGS
PENDING FINAL RULING BY THE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

**Objection or Hearing Request Deadline:
October 21, 2021**

1

## TABLE OF CONTENTS

2                                                                                      **Page**

3  **INTRODUCTION**............................................................................................................**1**

4  **BACKGROUND** ...........................................................................................................**3**

5  **ARGUMENT**................................................................................................................**8**

6  **CONCLUSION** ..........................................................................................................**13**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2005 WL 1026559 (S.D.N.Y. May 2, 2005) ...............................................................10, 11, 12

*Blalock v. DePuy Orthopaedics, Inc.*,
  2011 WL 6217540 (N.D. Cal. Dec. 14, 2011) .................................................................10, 11

*In re Blue Cross Blue Shield Antitrust Litigation*
  No. 2406, 13-cv-20000 (N.D. Ala) ............................................................................................1

*Butler v. McKesson Corp.*,
  2013 WL 4104093 (N.D. Cal. Aug. 12, 2013) ........................................................................9

*Cent. Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n*,
  711 F. Supp. 1423 (S.D. Ohio 1989) ........................................................................................3

*Cerven v. Blue Cross & Blue Shield of N.C.*,
  No. 5:12-cv-17 (W.D.N.C.) .......................................................................................................3

*CIT Grp./Equip. Fin., Inc. v. BDO Seidman, LLP*,
  2009 WL 2171231 (W.D. Pa. July 21, 2009) .........................................................................10

*Clinton v. Jones*,
  520 U.S. 681 (1997).....................................................................................................................8

*Couture v. Hoffman-La Roche, Inc.*,
  2012 WL 3042994 (N.D. Cal. July 25, 2012)........................................................................10

*Curtis v. BP America, Inc.*,
  808 F. Supp. 2d 976 (S.D. Tex. 2011) ...................................................................................12

*Davis v. Pfizer, Inc.*,
  2014 WL 1599005 (N.D. Cal. Apr. 21, 2014) ....................................................................9, 12

*Ernyes-Kofler v. Sanofi S.A.*,
  2017 WL 813506 (N.D. Cal. Mar. 2, 2017)......................................................................10, 11

*Freitas v. McKesson Corp.*,
  2012 WL 161211 (N.D. Cal. Jan. 10, 2012).........................................................................10

*Fuller v. Amerigas Propane, Inc.*,
  2009 WL 2390358 (N.D. Cal. Aug. 3, 2009) ...................................................................10, 13

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
2019 WL 7821307 (N.D. Cal. Sept. 26, 2019) ........................................11

*Gonzalez v. Ford Motor Co.*,
2017 WL 9614465 (N.D. Cal. Nov. 16, 2017) ........................................11

*Halliburton Energy Servs., Inc. v. BP Exploration & Prod. Inc.*,
2012 WL 149525 (S.D. Tex. Jan. 18, 2012) ........................................12

*Johnson v. Sebanc*,
2018 WL 3159699 (N.D. Cal. June 28, 2018) ........................................9

*Johnson v. Starbucks Corp.*,
2018 WL 2938548 (N.D. Cal. June 12, 2018) ........................................13

*Jones v. Bristol-Myers Squibb Co.*,
2013 WL 3388659 (N.D. Cal. July 8, 2013)........................................10, 11, 12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)........................................8

*Lyman v. Asbestos Defs. (B*P)*,
2007 WL 2972926 (N.D. Cal. Oct. 10, 2007)........................................8

*Med. Soc'y of N.Y. v. Conn. Gen. Corp.*,
187 F. Supp. 2d 89 (S.D.N.Y. 2001)........................................12

*Rifenbery v. Organon USA, Inc.*,
2014 WL 296955 (N.D. Cal. Jan. 26, 2014)........................................9, 10

*Sanborn v. Asbestos Corp., Ltd.*,
2009 WL 195922 (N.D. Cal. Jan. 27, 2009)........................................9, 10

*Sobera v. DePuy Orthopaedics, Inc.*,
2014 WL 1653077 (N.D. Cal. Apr. 24, 2014)........................................10, 12

*In re Verity Health Sys. of Cal., Inc.*,
No. 2:18-bk-20151 (Bankr. C.D. Cal.)........................................8

*In re WorldCom, Inc. Sec. Litig.*,
293 B.R. 308 (S.D.N.Y. 2003)........................................10

**Statutes**

28 U.S.C. § 1334(b)........................................1, 8

28 U.S.C. § 1452(a)........................................1, 8

28 U.S.C. § 1407........................................8

ii

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Rules**

Federal Rules of Bankruptcy Procedure Rule 9027...................................................1, 8

Bankruptcy Local Rule 5011-1(a) ............................................................................1, 8

JPML Rule 1.1(h)...........................................................................................................8

JPML Rule 7.1(a)............................................................................................................8

**Orders**

Final Transfer Order, *Aschenbrenner et al. v. Blue Cross Blue Shield of Ala. et al.*.....................11

Final Transfer Order, *Houston Home Dialysis v. Blue Cross and Blue Shield of Ala. et al.*..................................................................................................................11

Final Transfer Order, *Richmond SA Services, Inc. v. Blue Cross and Blue Shield of Ala. et al.* and *Am. Surgical Assistants, Inc. v. Blue Cross and Blue Shield of Ala. et al.*..................................................................................................................11

Final Transfer Order, *Zimmerman v. Blue Cross Blue Shield of Ala. et al.* .................................11

**INTRODUCTION**

Plaintiffs' antitrust lawsuit (the "Verity Action" or "Action"), originally filed in the Superior Court of the State of California, County of Alameda and removed to this Court,[1] alleges that the Blue Cross Blue Shield Association ("BCBSA") and member Blue Cross and Blue Shield Plans ("Blue Plans") entered into market allocation agreements to reduce competition, established revenue restrictions, and engaged in price fixing and boycotting.  *See* Dkt. 1-2, First Am. Compl. ("Compl." or "Complaint").  Plaintiffs seek damages because, as a result of this allegedly unlawful conduct, they claim they paid too much for healthcare coverage as subscribers of the Blue Plans and were paid too little by Blue Plans for providing healthcare services to the Blue Plans' members.  The Action contains factual allegations nearly identical to those in dozens of class action lawsuits already transferred to and consolidated in *In re Blue Cross Blue Shield Antitrust Litigation*, Multidistrict Litigation ("MDL") No. 2406, 13-cv-20000 (N.D. Ala.) (the "BCBS MDL").  Indeed, the Verity Complaint copies verbatim entire sections from consolidated complaints in the BCBS MDL.

Given the identical allegations between the Action and the BCBS MDL, and the significant efficiencies gained from coordinated pretrial proceedings, Defendants[2] promptly filed a notice to

---

[1] The case was removed pursuant to 28 U.S.C. §§ 1452(a) and 1334(b), Rule 9027 of the Federal Rules of Bankruptcy Procedure, and Bankruptcy Local Rule 5011-1(a).  *See* Dkt. 1, Not. of Removal, Case No. 21-04034 (Bankr. N.D. Cal. Sept. 22, 2021).

[2] Plaintiffs have named the following entities in this lawsuit:  Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; California Physicians' Service *d/b/a* Blue Shield of California; Blue Cross and Blue Shield of Alabama; Premera and Premera Blue Cross, also *d/b/a* Premera Blue Cross Blue Shield of Alaska; Blue Cross Blue Shield of Arizona, Inc.; Usable Mutual Insurance Company *d/b/a* Arkansas Blue Cross and Blue Shield; Anthem, Inc. *f/k/a* Wellpoint, Inc. *d/b/a* Anthem Blue Cross Life and Health Insurance Company; Anthem Health Plans, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Connecticut; Blue Cross and Blue Shield of Georgia; Rocky Mountain Hospital & Medical Service Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Colorado; Anthem Blue Cross and Blue Shield of Nevada; Anthem Insurance Companies, Inc. *d/b/a* Anthem Blue Cross Blue Shield of Indiana; Anthem Health Plans of Kentucky, Inc. *d/b/a* Anthem Blue Cross Blue Shield of Kentucky; Anthem Health Plans of Maine, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of Maine; HMO Missouri Inc., *d/b/a* Anthem Blue Cross Blue Shield of Missouri; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; Anthem Health Plans of New Hampshire, Inc. *d/b/a* Anthem Blue Cross and Blue Shield of New Hampshire; Empire HealthChoice Assurance, Inc. *d/b/a* Empire Blue Cross Blue Shield; Community Insurance Company *d/b/a* Anthem Blue Cross and Blue Shield of Ohio; Anthem Health Plans of Virginia, Inc., *d/b/a* Anthem Blue Cross and Blue Shield of Virginia, Inc.; Blue Cross Blue Shield of Wisconsin, *d/b/a* Anthem Blue Cross Blue Shield of Wisconsin; Compcare Health Services Insurance Corporation; Highmark Health Services and Highmark Inc. *d/b/a* Highmark Blue Shield and Highmark Blue Cross Blue Shield including Highmark Inc. predecessor Hospital Service Association of Northeastern

1    transfer the Verity Action to the BCBS MDL on September 22, 2021.  *See* Dkt. 43-1, Notice of

2    Potential Tag-Along Action.

3         On September 29, 2021, the Judicial Panel on Multidistrict Litigation (the "JPML" or "Panel")

4    issued a conditional transfer order (the "Verity Conditional Transfer Order" or "Order").  Ex. A, Verity

5    Conditional Transfer Order.  Despite the likelihood of transfer to the BCBS MDL, Plaintiffs have

6    indicated they intend to file a motion to remand in this Court.  Accordingly, and in light of the Verity

7    Conditional Transfer Order, the Court should stay this Action pending the JPML's final transfer

8    decision.  Should this Action—including any jurisdictional issues—proceed now in this Court, the

9    interim proceedings will potentially waste judicial resources, risk inconsistent rulings, and impose

10   significant and unfair prejudice on BCBSA and the Blue Plans.  Conversely, a short stay of

11   proceedings until the final transfer decision poses little delay and no prejudice to Plaintiffs.

12

13

14   Pennsylvania *f/d/b/a* Blue Cross of Northeastern Pennsylvania; Highmark Blue Cross Blue Shield
     Delaware Inc. *d/b/a* Highmark Blue Cross Blue Shield Delaware; Highmark West Virginia Inc. *d/b/a*
15   Highmark Blue Cross Blue Shield West Virginia; CareFirst, Inc., Group Hospitalization and Medical
     Services, Inc., CareFirst of Maryland, Inc., CareFirst BlueChoice, Inc., which collectively *d/b/a*
16   CareFirst BlueCross BlueShield; Guidewell Mutual Holding Corporation; Blue Cross and Blue Shield
     of Florida Inc.; Hawaii Medical Service Association *d/b/a* Blue Cross and Blue Shield of Hawaii;
17   Regence BlueShield of Idaho, Inc.; Blue Cross of Idaho Health Service, Inc. *d/b/a* Blue Cross of Idaho;
     Cambia Health Solutions, Inc. *d/b/a* Regence BlueShield of Idaho, Inc., Regence Blue Cross Blue
18   Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Blue Shield (Washington);
     Health Care Service Corporation *d/b/a* Blue Cross and Blue Shield of Illinois, Blue Cross and Blue
19   Shield of Montana, including its predecessor, Caring for Montanans, Inc., Blue Cross and Blue Shield
     of New Mexico, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Texas, Inc.;
20   Wellmark, Inc. and Wellmark Blue Cross and Blue Shield of Iowa, Wellmark of South Dakota, Inc.
     *d/b/a* Wellmark Blue Cross and Blue Shield of South Dakota; Blue Cross and Blue Shield of Kansas,
21   Inc.; Louisiana Health Service & Indemnity Company *d/b/a* Blue Cross and Blue Shield of Louisiana;
     Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Michigan Mutual
22   Insurance Company; Aware Integrated, Inc., BCBSM, Inc. collectively *d/b/a* Blue Cross and Blue
     Shield of Minnesota; Blue Cross & Blue Shield of Mississippi; Blue Cross and Blue Shield of Kansas
23   City; GoodLife Partners, Inc. and Blue Cross and Blue Shield of Nebraska; Horizon healthcare
     Services, Inc. *d/b/a* Horizon Blue Cross Blue Shield of New Jersey; HealthNow Systems, Inc.,
24   HealthNow New York, Inc. *d/b/a* BlueCross BlueShield of Western New York and BlueShield of
     Northeastern New York, Lifetime Healthcare, Inc., Excellus Health Plan, Inc. collectively *d/b/a*
25   Excellus BlueCross BlueShield; Blue Cross and Blue Shield of North Carolina, Inc.; Noridian Mutual
     Insurance Company and HealthyDakota Mutual Holdings collectively *d/b/a* Blue Cross Blue Shield
26   of North Dakota; Capital Blue Cross, Independence Health Group, Inc., Independence Hospital
     Indemnity Plan, Inc. *f/k/a* Independence Blue Cross; Triple-S Management Corporation, Triple-S
27   Salud, Inc.; Blue Cross & Blue Shield of Rhode Island; Blue Cross Blue Shield of South Carolina;
     BlueCross BlueShield of Tennessee; Blue Cross and Blue Shield of Vermont; Blue Cross Blue Shield
28   of Wyoming; and the Blue Cross and Blue Shield Association.

**BACKGROUND**

BCBSA owns the rights to the well-known Blue Cross and Blue Shield Marks, which are "strong and famous" worldwide. *See Cent. Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n*, 711 F. Supp. 1423, 1433 (S.D. Ohio 1989). BCBSA does not underwrite healthcare insurance itself, but rather licenses the Blue Marks to insurance companies, which then offer Blue-branded health-insurance products using the Marks. For example, in California, BCBSA licenses Anthem the right to use the Blue Cross Mark and Blue Shield of California the right to use the Blue Shield Mark. Anthem and Blue Shield of California then contract with hospitals and other providers; they also offer Blue-branded healthcare coverage to subscribers in the state. BCBSA has operated its licensing system in this manner for decades.

In February 2012, a group of plaintiffs sued BCBSA and Blue Cross & Blue Shield of North Carolina. Complaint, *Cerven v. Blue Cross & Blue Shield of N.C.*, No. 5:12-cv-17 (W.D.N.C.), ECF No. 1. In that case, plaintiffs allege an antitrust violation based on BCBSA's longstanding practice to license the exclusive right to use the Blue Marks in a specified service area to its member Plans. *Id.* ¶ 3. *Cerven* triggered a cascade of copycat class actions. Since December 2012, dozens of class action suits brought by either healthcare providers or subscribers that obtain healthcare coverage through the Blue Plans have been consolidated for pretrial proceedings in the Northern District of Alabama in front of Judge R. David Proctor. Following transfer to the MDL, both provider and subscriber plaintiffs have filed amended consolidated complaints against BCBSA and Blue Plans, which challenge (1) the license agreements between BCBSA and the Blue Plans and (2) related rules and procedures. *E.g.*, Ex. B, 4/18/17 Consol. 4th Am. Provider Compl. ("Consol. Prov. Compl."), Case No. 2:13-cv-20000-RDP, ¶¶ 1-8 (N.D. Ala.); Ex. C, 11/2/20 Consol. 4th Am. Subscriber Compl. ("Consol. Sub. Compl."), Case No. 2:13-cv-20000-RDP, ¶¶ 6-12 (N.D. Ala.). Judge Proctor has actively supervised and managed this litigation thus far.

On July 27, 2021, the instant Plaintiffs filed their complaint against BCBSA and all 35 Blue Plans. They amended their Complaint a day later, on July 28, 2021. Dkt. 1-2. The Complaint is yet another copycat action. It contains entire sections and paragraphs that are ***identical or nearly identical*** to the consolidated provider complaints in the BCBS MDL. For example:

| The Verity Action (Dkt. 1-2) | Consol. Prov. Compl. in the BCBS MDL (Ex. B) |
|---|---|
| The History of the Blues: "Before the Long-Term Business Strategy" (§ IV.A.1) | "The History of the Blues:  Before the Long-Term Business Strategy" (at 59) |
| "Historically, the Blue Cross plans and the Blue Shield plans were fierce competitors. During the early decades of their existence, there were no restrictions on the ability of a Blue Cross plan to compete. . . . Despite BCBSA's attempt to suppress competition among the Blues, history shows that this competition has existed and can exist." (¶¶ 232-33) | *Identical.*  (¶¶ 152-53) |
| "In the 1970s, the Blue Cross Association and the Blue Shield Association began consolidating." (¶ 249) | *Identical.*  (¶ 164) |
| "The Long-Term Business Strategy and Assembly of Plans" (§ IV.A.2) | "The Long-Term Business Strategy and Assembly of Plans" (at 64) |
| "In the early 1980s, the Blues fundamentally changed the way they conducted business.  The Blues contracted with each other unlawfully through a work group organized by the BCBSA, to set mandates that became known as the 'Long-Term Business Strategy.'" (¶ 255) | "In the early 1980s, the Blues fundamentally changed the way they conducted business.  The Blues conspired through a work group organized by the BCBSA, created a set of mandates that became known as the 'Long-Term Business Strategy.'" (¶ 165) |
| "When these license agreements were executed, the BCBSA acquired the ability to enforce exclusive Service Areas by membership restrictions in BCBSA, limitations on use of the BCBS name and marks, and monetary sanctions." (¶ 278) | "When these license agreements were executed the result was BCBSA's ability to enforce exclusive service areas by membership restrictions in BCBSA, use of the BCBS name and marks, and monetary sanctions." (¶ 180) |
| "Defendant Blues Entered Into Unlawful Agreements" (§ IV.A.3) | "The Blues' Reached an Anticompetitive Agreement . . ." (at 70) |
| "Under the License Agreements, each Blue agrees that neither it nor its subsidiaries will compete under the licensed Blue Cross and Blue Shield trademarks and trade names outside of a specifically designated geographic Service Area . . . ." (¶ 289) | "Under the License Agreements, each Blue agrees that neither it nor its subsidiaries will compete under the licensed Blue Cross and Blue Shield trademarks and trade names outside of a specifically designated geographic 'Service Area' . . . ." (¶ 189) |
| "The Defendants also agree that they will participate in inter-plan programs, including Blue Card, with the billions of dollars of access fees providing the quid pro quo for the agreements not compete." (¶ 294) | "The Defendants also agree that they will participate in Inter-Plan programs, including Blue Card, with the billions of dollars of access fees providing the *quid pro quo* for the agreements not to compete." (¶ 190) |

| | |
|---|---|
| "The Blue Card and National Account Programs" (§ IV.A.4) | "The Blue Card and National Accounts Programs" (at 76) |
| "As a result of the Blue Card Program, providers must comply with 36 different variations of medical policies, creating inefficiencies, adding to administrative costs for providers and the health care system, and resulting in many claim denials . . . ." (¶ 316) | "As a result of the Blue Card system, Providers must comply with 36 different variations of medical policies, creating inefficiencies, adding to administrative costs for Providers and the health care system, and resulting in many claim denials . . . ." (¶ 201) |
| "The Blue Card and National Accounts Programs are thus agreements to fix prices." (¶ 319) | *Identical.* (¶ 203) |
| "Protecting and Increasing 'Differentials'" (§ IV.A.5) | "Protecting and Increasing 'Differentials'" (at 84) |
| "Despite enjoying an advantage over its competitors in provider reimbursements, the Blues have higher administrative fees for self-funded plans than its competitors, even before accounting for the access fees the Blues charge as medical costs." (¶ 347) | *Identical.* (¶ 223) |
| "Differences Between the Modern Blues and Other Insurers" (§ IV.A.6) | "Differences Between the Modern Blues and Other Insurers" (at 86) |
| "Thus, the Blues are able to use leverage against providers that is unavailable to their competitors." (¶ 349) | *Identical.* (¶ 224) |
| "In addition, the Blues operate less efficiently than their competitors." (¶ 350) | *Identical.* (¶ 225) |
| "The Market Allocation Agreement" (§ IV.B.3) | "The BCBS Market Allocation Conspiracy" (at 114) |
| "Defendants allocate geographic markets for health care financing and health care services by restricting each Defendant's activity outside of a designated geographic Service Area.  Accordingly, these restrictions insulate each Defendant from competition from other Blues in each of their respective geographic Service Area, and prevent providers from contracting with Blues in other Service Areas." (¶ 430) | "Defendants allocate geographic markets for health care financing and health care services by restricting each Defendant's activity outside of a designated geographic Service Area.  Accordingly, these restrictions insulate each Defendant from competition by other Blues in each of their respective geographic Service Area, and prevent providers from contracting with Blues in other Service Areas."   (¶ 317) |
| "Because of Defendants' market power . . . providers wishing to join the Blue network must accept lower reimbursement rates." (¶ 431) | *Identical.*   (¶ 318) |

| "The Price-Fixing and Boycott Agreements" (§ IV.B.4) | "The BCBS Price Fixing and Boycott Conspiracy" (at 118) |
|---|---|
| "Defendants achieved the Price Fixing and Boycott Agreement by agreeing that all Defendants would participate in the national programs, including the Blue Card and National Accounts programs, which determine the price and the payment policies to be utilized when a patient insured by a Blue or included in an employee benefit plan administered by a Defendant receives healthcare services within the Service Area of another Blue." (¶ 445) | "Defendants achieved the Price Fixing and Boycott Conspiracy by agreeing that all Defendants would participate in the national programs, including the Blue Card and National Accounts Programs, which determine the price and the payment policies to be utilized when a patient insured by a Blue or included in an employee benefit plan administered by a Defendant receives healthcare services within the Service Area of another Blue." (¶ 328) |
| "As a result of their Price Fixing and Boycott Agreement, Defendants reduce their payments to healthcare providers by in excess of ten billion dollars every year. These reductions, of course, are the result of the depressed prices paid to healthcare providers, including Plaintiffs."  (¶ 451) | "As a result of their Price Fixing and Boycott Conspiracy, Defendants reduce their payments to healthcare providers by in excess of ten billion dollars every year. These reductions, of course, are the result of the depressed prices paid to healthcare providers, including Plaintiffs."  (¶ 334) |
| "Other Abuses" (§ IV.B.5) | "Other Abuses That Preserve the Blues' Enhanced Market Power" (at 140) |
| "In addition to the harms set forth above, Plaintiffs were harmed in numerous other ways as a result of Defendants' abuse of the significant market power that has resulted from their agreement.  For example, a number of the Blues use MFNs with hospitals and other facilities." (¶¶ 457-58) | "In addition to the harms set forth above, healthcare providers are harmed in numerous other ways as a result of Defendants' abuse of the significant market power that has resulted from their conspiracy.  For example, a number of the Blues use MFNs with hospitals and other facilities."  (¶¶ 383-84) |
| "Defendants, specifically Defendant Highmark, have threatened to utilize their extraordinary and excessive surplus . . . to enter (and have already done so in some cases) the market as providers of health care services if providers do not acquiesce to the far below competitive rates offered in a market free from competition from other Blues." (¶ 462) | *Identical.*  (¶ 387) |
| "Implementation of the Affordable Care Act (ACA)" (§ IV.C) | "Implementation of the Affordable Care Act" (at 156) |
| "The barriers to entry that the Blues have created and used to their advantage have prevented many other health insurers from being on the exchanges in many places. The Blues, including BCBS-AL, have used their market power and their | *Identical.*  (¶ 434) |

| | |
|---|---|
| anticompetitive activities to increase their market shares through the mechanisms created by the ACA." (¶ 500) | |
| "Restricting Competition in Pennsylvania and Ohio" (§ IV.B.2) | "Allowing and Restricting Competition in Pennsylvania" and "Allowing and Restricting Competition in Ohio" (at 101, 106) |
| "This unlawful, anticompetitive agreement not to compete has reduced competition throughout the state of Pennsylvania.  After the Pennsylvania regulator refused to approve the merger of IBC into Highmark, the two entities began engaging in more joint activity instead of competing. . . . In a large part of central Pennsylvania, Capital Blue Cross and Highmark Blue Shield compete.  In that area and in others where Blues compete, including with separate Provider Networks, reimbursement rates or prices are higher."  (¶¶ 418-19) | "This illegal, anticompetitive agreement not to compete has reduced competition throughout the state of Pennsylvania.  After the Pennsylvania regulator refused to approve the merger of IBC into Highmark, the two entities began engaging in more joint activity instead of competing. . . . In a large part of central Pennsylvania, Capital Blue Cross and Highmark Blue Shield compete.  In that area and in others where Blues compete, including with separate Provider Networks, reimbursement rates or prices are higher."  (¶¶ 287-88) |
| "The history of Blue Cross and Blue Shield in Ohio shows that not only is competition possible among the Blues, but also that it occurred with BCBSA's agreement and was seen as beneficial to consumers at the time." (¶ 421) | *Identical.*  (¶ 289) |

Plaintiffs also copy key subscriber-focused allegations and legal theories from the subscriber plaintiffs' consolidated complaint in the BCBS MDL.  For example:

| The Verity Action (Dkt. 1-2) | Consol. Sub. Compl. in the BCBS MDL (Ex. C) |
|---|---|
| "[Defendants'] anticompetitive agreement, implementing conduct and foreclosure of competition have prevented subscribers from being offered competitive premium prices and self-funded accounts from being offered competitive ASO Fees." (¶ 94) | "[Defendants'] anticompetitive agreement and implementing conduct and foreclosure of competition have prevented subscribers and enrollees from being offered competitive premium prices and self-funded accounts from being offered competitive ASO fees."  (¶ 11) |
| "[C]onsumer choices have been reduced with regard to facilities where medical and surgical procedures are performed as a result of the Blues' low payments. . . .  The agreements among the Blues have the effect of stifling innovation in the marketplace." (¶ 523) | "The challenged restraints also limited consumer choice and adversely affected innovation in health care products." (¶ 507) |

On September 22, 2021, Defendants removed the Action to this Court pursuant to 28 U.S.C. §§ 1334(b) and 1452(a), Rule 9027 of the Federal Rules of Bankruptcy Procedure, and Bankruptcy Local Rule 5011-1(a) based on this Court's "related to" jurisdiction.  *See* Dkt. 1, ¶¶ 15, 25-33.  28 U.S.C. § 1334(b) provides that federal courts "shall have original . . . jurisdiction of all civil proceedings . . . related to cases under title 11."  Plaintiff VHS Liquidating Trust "is the bankruptcy liquidator for Verity Health System of California, Inc." that was created as part of an ongoing bankruptcy proceeding.  *See* Dkt. 1-2, ¶ 110; *see also In re Verity Health Sys. of Cal., Inc.*, No. 2:18-bk-20151 (Bankr. C.D. Cal.).  This Action is related to that proceeding.  Indeed, the VHS Liquidating Trust is expressly charged with pursuing "judicial proceedings" and "su[ing] on . . . the Causes of Action in favor of or against the Liquidating Trust," such as this Action.  *In re Verity*, No. 2:18-bk-20151, Dkt. 5466, § 6.5(b)(v)-(vi); *see also id.* § 13.9(a)(ix) (charging the VHS Liquidating Trust with prosecuting actions "arising from claims against health plans," including the Defendants here).  Thereafter, on September 22, 2021, Defendants filed a notice of potential tag-along action under JPML Rule 7.1(a)—identifying this Action as "a civil action pending in a district court which involves common questions of fact with . . . actions previously transferred to an existing MDL."  JPML Rule 1.1(h); Dkt. 43-1, Notice of Potential Tag-Along Action.  The Panel conditionally ordered transfer on September 29, 2021.  Ex. A, Verity Conditional Transfer Order.  The parties now await the JPML's final transfer decision.

## ARGUMENT

A court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 683 (1997); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (holding the court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").  Federal courts, including those in this district, routinely stay cases pending resolution by the JPML of a motion to transfer pursuant to 28 U.S.C. § 1407.  *Lyman v. Asbestos Defs. (B*P)*, 2007 WL 2972926, at *2 (N.D. Cal. Oct. 10, 2007) ("Courts frequently grant stay[s] pending a decision by the [JPML] Panel [regarding whether to transfer a case].");  Multidistrict Litig. Manual § 3:15 (2012) ("District courts have, however, readily stayed proceeding pending a

1  Panel decision."); *see, e.g.*, *Sanborn v. Asbestos Corp., Ltd.*, 2009 WL 195922, at *2 (N.D. Cal. Jan.

2  27, 2009) (granting stay pending JPML transfer decision). Indeed, the very "purpose of such [MDL]

3  transfers . . . [is] to further judicial economy and to eliminate the potential for conflicting pretrial

4  rulings." *Sanborn*, 2009 WL 195922, at *2; *see Butler v. McKesson Corp.*, 2013 WL 4104093, at *2

5  (N.D. Cal. Aug. 12, 2013) ("[A] stay will promote judicial economy, uniformity and consistency in

6  decision making.").

7         In deciding whether to grant a stay pending transfer, the court should consider: "(1) potential

8  prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not

9  stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases

10  are in fact consolidated." *Johnson v. Sebanc*, 2018 WL 3159699, at *1 (N.D. Cal. June 28, 2018)

11  (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)). Each of these factors

12  weighs heavily in favor of a stay in this case.

13         ***First***, there is no risk of prejudice to Plaintiffs in granting this Motion. BCBSA's motion

14  requests a stay only until the JPML decides whether to centralize this intentional copycat action in the

15  BCBS MDL by confirming its preliminary decision to transfer this Action. Any delay will be minimal.

16  The JPML resolves motions to transfer promptly. Even if a party opposes transfer, in "most cases the

17  JPML decides the matter before it within a short period after arguments are held or after the briefing

18  is completed if the parties waive oral argument." *Johnson*, 2018 WL 3159699, at *1 (quoting

19  Multidistrict Litig. Manual § 4:27). If necessary, the JPML's next hearing is December 2, 2021. When

20  the JPML issues a decision, litigation will resume, either in this Court or the Northern District of

21  Alabama. Given such a short delay, there is little meaningful risk of prejudice to Plaintiffs. *Rifenbery

22  v. Organon USA, Inc.*, 2014 WL 296955, at *2 (N.D. Cal. Jan. 26, 2014) ("The potential prejudice to

23  [p]laintiffs that could result from a stay is minimal, as the JPML's decision is likely to be issued

24  shortly.").

25         This is especially true here, where the case is in the earliest stages of litigation. *Johnson*, 2018

26  WL 3159699, at *1 (noting "no meaningful prejudice where the case was in a very early procedural

27  stage") (internal citation and quotations omitted); *Davis v. Pfizer, Inc.*, 2014 WL 1599005, at *1 (N.D.

28  Cal. Apr. 21, 2014) ("The Court also finds that a stay will not prejudice plaintiff because the stay will

only cause a slight delay in this action, which is still in the very early procedural stages."); *Fuller v. Amerigas Propane, Inc.*, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009) (same).  BCBSA was served with the First Amended Complaint on August 25, 2021.  Other Defendants were served between August 23 and mid-September 2021.  The case was removed on September 22, 2021.  Defendants have not yet answered the complaint or otherwise responded, and Plaintiffs' apparent motion to remand has not yet been filed.  Given the lack of any prejudice to Plaintiffs, a stay should be granted.

Even if Plaintiffs file a motion to remand, that would not impact the outcome here.  Courts in this District regularly stay proceedings pending a decision by the JPML when a motion to remand is pending.  *E.g.*, *Jones v. Bristol-Myers Squibb Co.*, 2013 WL 3388659, at *2 (N.D. Cal. July 8, 2013) ("Courts in this district, including this court, have granted motions to stay in order to preserve judicial resources, even where jurisdictional questions and motions to remand are at issue."); *Sobera v. DePuy Orthopaedics, Inc.*, 2014 WL 1653077, at *2 (N.D. Cal. Apr. 24, 2014) (granting motion to stay pending a decision by the JPML while a motion to remand was pending); *Rifenbery*, 2014 WL 296955, at *2 (same); *Couture v. Hoffman-La Roche, Inc*., 2012 WL 3042994, at *4 (N.D. Cal. July 25, 2012) (same); *Freitas v. McKesson Corp*., 2012 WL 161211, at *3 (N.D. Cal. Jan. 10, 2012) (same); *Blalock v. DePuy Orthopaedics, Inc.*, 2011 WL 6217540, at *2 (N.D. Cal. Dec. 14, 2011) (same); *Sanborn*, 2009 WL 195922, at *2 (same).  Moreover, transferee MDL courts routinely consider bankruptcy-related remand motions.  *See CIT Grp./Equip. Fin., Inc. v. BDO Seidman, LLP*, 2009 WL 2171231, at *1 (W.D. Pa. July 21, 2009) (transferee MDL court deciding remand motion for case removed from state court under "related to" bankruptcy jurisdiction); *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 311 (S.D.N.Y. 2003) (transferee MDL court finding "related to" jurisdiction and denying motion for remand); *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2005 WL 1026559, at *6 (S.D.N.Y. May 2, 2005) (transferee MDL court reversing bankruptcy court remand decision on post-transfer appeal because "related to" jurisdiction existed).  The BCBS MDL court is poised to promptly address any remand issues that may be raised, or if transfer to the BCBS MDL is denied, this Court can simply "restore" the motion to remand, if a motion has been filed.  *Sanborn*, 2009 WL 195922, at *2; *see Ernyes-Kofler v. Sanofi S.A.*, 2017 WL 813506, at *3 (N.D. Cal. Mar. 2, 2017) (granting stay

1    pending transfer decision and denying motion to remand without prejudice).  At bottom, there is no

2    real prejudice to Plaintiffs, which warrants a stay.

3        **Second**, unlike Plaintiffs, BCBSA and the other Defendants are likely to suffer significant

4    prejudice if this case proceeds pending the JPML's transfer decision.  The likelihood of the JPML

5    granting final transfer is high.  It has previously transferred to the BCBS MDL similar actions alleging

6    nearly identical facts to those here.  *See, e.g.*, Final Transfer Order, *Houston Home Dialysis v. Blue*

7    *Cross and Blue Shield of Ala. et al.*, MDL No. 2406 [Dkt. 429] at 1 (J.P.M.L. October 25, 2019)

8    ("[A]ction(s) on this conditional transfer order involve questions of fact that are common to the actions

9    previously transferred to the Northern District of Alabama"); Final Transfer Order, *Richmond SA*

10   *Services, Inc. v. Blue Cross and Blue Shield of Ala. et al.* and *Am. Surgical Assistants, Inc. v. Blue*

11   *Cross and Blue Shield of Ala. et al.*, MDL No. 2406 [Dkt. 354] at 1 (J.P.M.L. May 11, 2016) (same);

12   Final Transfer Order, *Zimmerman v. Blue Cross Blue Shield of Ala. et al.*, MDL No. 2406 [Dkt. 358]

13   at 1 (J.P.M.L. June 17, 2016) (same); Final Transfer Order, *Aschenbrenner et al. v. Blue Cross Blue*

14   *Shield of Ala. et al.*, MDL No. 2406 [Dkt. 362] at 1 (J.P.M.L. July 22, 2016) (same).  Without a stay

15   in this Court, BCBSA and the other Defendants may be forced "to conduct duplicative discovery and

16   motion practice," wasting time and resources for everyone, especially where transfer is likely.  *In re*

17   *Gen. Motors LLC CP4 Fuel Pump Litig.*, 2019 WL 7821307, at *1 (N.D. Cal. Sept. 26, 2019) (internal

18   citations and quotations omitted); *see Jones*, 2013 WL 3388659, at *2 (granting stay where it "would

19   prevent duplicative pretrial practice in the likely event that the case is definitively transferred" since

20   numerous other cases had been transferred to an MDL).

21       For example, absent a stay, BCBSA and the other Defendants could "suffer prejudice from

22   being forced to litigate the same jurisdictional issues in multiple forums" if Plaintiffs seek remand.

23   *Jones*, 2013 WL 3388659, at *3 (internal citation and quotation marks omitted); *Blalock*, 2011 WL

24   6217540, at *2 (same); *see also, e.g.*, *In re Adelphia Commc'ns Corp.*, 2005 WL 1026559, at *5-6

25   (parties litigated "related to" jurisdiction in two forums before transferee MDL court ultimately denied

26   remand).   Moreover, in that instance, a "failure to stay would also raise the prospect of inconsistent

27   rulings between the case[] before this Court and the other suits Defendant has referred to the JPML."

28   *Gonzalez v. Ford Motor Co.*, 2017 WL 9614465, at *2 (N.D. Cal. Nov. 16, 2017)*.*  To avoid that,

"deference to the MDL court for resolution of a motion to remand often provides the opportunity for uniformity, consistency, and predictability that underlies the MDL system." *Jones*, 2013 WL 3388659, at *2 (internal quotation marks omitted); *Davis*, 2014 WL 1599005, at *1 ("[I]f this case is transferred to a MDL, the MDL judge can address the jurisdictional issues in a uniform manner.").

Deference to the BCBS MDL court to address jurisdictional issues in a uniform manner applies with equal force to bankruptcy-related copycat cases.  The BCBS MDL plaintiffs allege that the practices challenged in the BCBS MDL have caused numerous healthcare providers to go bankrupt. (*E.g.*, Ex. B, Consol. Prov. Compl. ¶ 394 (alleging hospital closures due to the challenged conduct).) In this copycat action, Verity alleges it is one of the providers that "went bankrupt and closed due to the conduct at issue."  Compl. ¶ 22; *see also id.* ¶ 21 ("Defendants' conduct was a substantial factor in causing that bankruptcy.").  BCBSA and the other Defendants thus face significant prejudice if they are forced to litigate the same or similar issues in two courts, particularly in light of the likely transfer.

***Third***, judicial economy favors staying the case pending the JPML's decision on transfer.  If this duplicative case is ultimately transferred to the BCBS MDL, this Court "will have needlessly expend[ed] its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Sobera*, 2014 WL 1653077, at *2.  As other courts have concluded, the factual and legal issues surrounding removal themselves justify refraining from ruling on remand until the Panel has reached its decision.  *See, e.g.*, *Halliburton Energy Servs., Inc. v. BP Exploration & Prod. Inc.*, 2012 WL 149525, at *2 (S.D. Tex. Jan. 18, 2012); *Curtis v. BP America, Inc.*, 808 F. Supp. 2d 976, 981 (S.D. Tex. July 25, 2011); *Med. Soc'y of N.Y. v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 91 (S.D.N.Y. 2001). If the case is finally transferred, this Court's efforts on jurisdictional issues and case management would be replicated by the BCBS MDL court.  *Sobera*, 2014 WL 1653077, at *2 (granting stay in the interest of judicial economy and deferring to MDL court to resolve remand motion); *In re Adelphia Commc'ns Corp.*, 2005 WL 1026559, at *6 (transferee MDL court reversing bankruptcy court remand decision following JPML transfer); *see Jones*, 2013 WL 3388659, at *2 ("[A] stay would prevent duplicative pretrial practice in the likely event that the case is definitively transferred to the [] MDL."). Accordingly, the ability to conserve judicial resources alone justifies the stay here:  "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a

1   motion to transfer and consolidate is pending with the [JPML] Panel because of the judicial resources

2   that are conserved." *Johnson v. Starbucks Corp.*, 2018 WL 2938548, at *2 (N.D. Cal. June 12, 2018);

3   *see Fuller*, 2009 WL 2390358, at *2 (same).

4                                **CONCLUSION**

5           For these reasons, BCBSA respectfully asks that the Court stay all proceedings until the Panel

6   issues a decision confirming or denying transfer of this case to the BCBS MDL.

7

8   DATED: September 30, 2021          Respectfully submitted,

9                                      */s/ Michael P. Esser*

10                                     Mark McKane (SBN 230552)
                                       mmckane@kirkland.com

11                                     Michael P. Esser (SBN 268634)
                                       michael.esser@kirkland.com

12                                     KIRKLAND & ELLIS LLP
                                       555 California Street, 27th Floor

13                                     San Francisco, CA 94104
                                       Telephone: (415) 439-1400

14                                     Facsimile: (415) 439-1500

15                                     David Zott (*pro hac vice*)
                                       dzott@kirkland.com

16                                     Daniel Laytin (*pro hac vice*)
                                       dlaytin@kirkland.com

17                                     Zachary Holmstead (*pro hac vice* application on file)
                                       zachary.holmstead@kirkland.com

18                                     KIRKLAND & ELLIS LLP
                                       300 North LaSalle Street

19                                     Chicago, IL 60654
                                       Telephone: (312) 862-2000

20                                     Facsimile: (312) 862-2200

21                                     *Attorneys for Defendant*
                                       *Blue Cross Blue Shield Association*

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Michael P. Esser, attorney for Defendant Blue Cross Blue Shield Association, certify that, on September 30, 2021, I caused a copy of the foregoing to be served electronically on the counsel listed below.  Additionally, I caused a copy of the foregoing to be served via e-mail to the Defendants.

Patrick M. Ryan
Patrick E. O'Shaughnessy
John F. McLean
Oliver Q. Dunlap
Sean R. McTigue
BARTKO ZANKEL BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
pryan@bzbm.com
poshaughnessy@bzbm.com
jmclean@bzbm.com
odunlap@bzbm.com
smctigue@bzbm.com

*Attorneys for Plaintiffs*

Timothy S. Laffredi
Office of The United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
timothy.s.laffredi@usdoj.gov

*Assistant United States Trustee*

*/s/ Michael P. Esser*_____
Michael P. Esser