BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | MDL No. 2406 |

REPLY IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-36)

   This is an exceptional case where this Panel should take a peek under the subject-matter jurisdiction hood—which will expose a patent lack of federal jurisdiction—and thereafter allow and encourage the bankruptcy court to rule on remand before transferring this case. Defendants misused the bankruptcy removal process, injecting a case without federal jurisdiction into the JPML and MDL process. Defendants have attempted to prevent the bankruptcy court from ruling on the straightforward, factually unique, and dispositive motion to remand for lack of subject matter jurisdiction. Defendants concede that there is no basis for this case to be in federal court other than their improper removal pursuant to the bankruptcy removal statute. The bankruptcy court is best situated to undo Defendants' misconduct, both because the bankruptcy court has expertise in determining what is and is not "related to" a bankruptcy by a "close nexus"—particularly under the Ninth Circuit test—and because no judicial economy would be served by having the MDL Court rule on this factually (and legally) unique case-dispositive issue. Additionally, the motion to remand is fully briefed, and the hearing has been held, with the matter under submission. The bankruptcy court expressed skepticism that it had subject-matter jurisdiction but was reluctant to step on this Panel's toes by ruling on remand prior to this Panel ruling on the motion to vacate. Ex. A 8:10-18, 33:12-35:17.  It would be a waste of both the bankruptcy court's and the MDL court's resources for the motion to be re-briefed and re-argued, rather than ruled upon.

Accordingly, Plaintiffs respectfully request that this Panel grant Plaintiffs' Motion to Vacate the Conditional Transfer Order and allow the bankruptcy court to rule upon the briefed, argued, and submitted motion to remand for lack of subject-matter jurisdiction.

A.	**Defendants Conflate General Remand Issues with *Unique* Remand Issues.**

Defendants rotely posit that transfer is appropriate because "[t]he Panel routinely transfers cases where jurisdictional challenges are pending." (Response to Motion to Vacate ("Opp.") at 1.) But this is too clever by half. It is axiomatic that "the goals of economy and efficiency…are hallmarks of [the MDL system]." *In re Ephedra Prods. Liab. Litig.*, 314 F.Supp.2d 1373, 1376 (J.P.M.L. 2004). Transfer to an MDL is appropriate only when it enables the MDL to address questions already before the MDL such that "judicial time will be conserved by resolving" the common questions "*in a single legal proceeding*." *In re Drowning Incident*, 405 F. Supp. 1304, 1306 (J.P.M.L. 1976) (emphasis added). A motion "to vacate [an] order conditionally transferring [an] action " should be granted when "the action involves an issue of…law unique to [the conditionally transferred case]" which "is potentially dispositive." *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370-71 (J.P.M.L. 2008).

In the remand context, deferring resolution of remand issues to an MDL is appropriate when "the remand issue" in the transferred case "is highly similar to cases in the MDL." *City of Corona v. 3M Co.*, 2021 WL 3829700, at *2 (C.D. Cal. Aug. 27, 2021). But where "the remand issue is unique to the case at hand" that issue should be resolved *prior* to transfer. *Id.* This is because when "the remand issue is highly similar to cases in the MDL, then [transfer serves] judicial economy" because "the MDL court can *resolve all the related [jurisdictional] issues together*." *Id.* (emphasis added). But when "the remand issue is unique to the case at hand, no efficiencies are achieved through transfer." *Id.* "[B]urdening the MDL with a new jurisdictional

issue would not be in the interest of judicial economy." *Lueck v. McKesson Corp.*, 2013 WL 4427111, at *1 (N.D. Cal. Aug. 14, 2013). Cases recognizing this rule are legion.[1]

This is also consistent with the principle that an "overriding purpose of the MDL classification . . . is to 'prevent inconsistent pretrial rulings.'" (Opp. at 10.) When "the remand issue" in the transferred case "is highly similar to cases in the MDL" the risk of inconsistent rulings exists because the transferor courts could issue conflicting rulings on the remand question. But where "the remand issue is unique to the case at hand" no risk of inconsistent rulings is raised because, in any event, the remand question will be presented to a single court.

Here, the remand issue—whether this case has the requisite "close nexus" to the Verity Health System confirmed bankruptcy plan such that adjudication would necessarily "affect the interpretation, implementation, consummation, execution, or administration of the plan" under the test applied to post-confirmation cases in the Ninth Circuit[2]—is unique to this case and shares nothing in common with other issues determined in the MDL. Nor could it; even if another case were removed as "related to" another bankruptcy, factual analysis of the Verity Health System bankruptcy plan, and what has a close nexus to it, would be of no value. Thus, the Panel should "vacate [the] order conditionally transferring [this] action " because it "involves an issue of . . . law unique to [the conditionally transferred case]" which "is potentially dispositive."

B.  **Current JPML Panelists Say Remand Should Be Decided Pre-Transfer.**

---

[1] *E.g.*, *City of Corona*, 2021 WL 3829700, at *2 (post-transfer remand ruling inappropriate when " remand issue is unique to the case at hand"); *Poarch Band of Creek Indians v. Amneal Pharm., LLC*, 2020 WL 3833009, at *4 (S.D. Ala. July 8, 2020) (post-transfer remand ruling only appropriate when "identical or similar jurisdictional issues have been raised in other cases" before MDL); *Goodwin v. Kajian*, 2013 WL 1528966, at *2 (C.D. Cal. April 12, 2013); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049 (C.D. Cal. 2004); *Rubio v. Arndal*, 2013 WL 796669, at *4 (E.D. Cal. Mar. 4, 2013); *Pecoraro v. Sanghei-Kim*, 2013 WL 12131267, at *3 (C.D. Cal. July 10, 2013); *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001).
[2] *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) ("*Pegasus*").

Members of the Panel have recognized that the courts receiving removed cases should rule on remand issues before such cases are transferred to an MDL. For example, Judge Benitez—the only member of the Panel from a California court—recently held that transferor courts should resolve "motions to remand . . . before the panel acts on the motion to transfer so the federal court can assure itself of jurisdiction before the case transfers to the MDL." *Valdez v. Johnson & Johnson Consumer, Inc.*, 2021 WL 2982913, at *6 (S.D. Cal. July 15, 2021). Pre-transfer resolution of such questions "serves the purpose of judicial economy because only cases falling within the limited federal jurisdiction qualify for transfer to an MDL." *Id.* Indeed, entrusting such questions to the transferor court is particularly appropriate for cases originating in California because "courts within the Ninth Circuit have favored addressing jurisdictional issues prior to staying a case when the jurisdictional issue can easily be resolved." *Id.* at *5. Judge Benitez held that remand questions should be decided pre-transfer and remanded a conditionally transferred case that he found did not fall within federal subject matter jurisdiction in *K.P.P. ex rel Cruz v. Pfizer, Inc.*, 2013 WL 6047201, at *1 (S.D. Cal. Nov. 12, 2013).

Likewise, Judge Kennelly found in *Illinois Pub. Risk Fund v. Purdue Pharma L.P.*, 2019 WL 3080929 (N.D. Ill. July 15, 2019) that it was inappropriate to defer ruling on a pending motion to remand of a provisionally transferred case to the MDL. *Id.* at *1. Judge Kennelly based this holding in large measure on *Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802 (M.D. Tenn. 2019), a decision remanding another case to state court that had been provisionally transferred to the same MDL. *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *1. Pre-transfer resolution of the remand issue was necessary because "[t]here is no guarantee of *when* [a] heavily burdened [MDL] court would be able to address the important jurisdictional issue raised" in the motion to remand. *Id.* (emphasis added) (quoting *Dunaway*, 391 F. Supp. 3d at 808).

4

*Dunaway* is particularly instructive. There, the court held that pre-transfer adjudication of the remand issue was required because leaving the jurisdictional question to the MDL would burden that court and prejudice the plaintiffs. 391 F. Supp. 3d at 808. This was so because "the risk of hardship resulting from a postponement of a jurisdictional determination is great" because "[i]f transferred, th[e] case w[ould] join a veritable sea of others in the MDL court." *Id.*

In reaching this conclusion, the court recognized that in cases where the remand issue was intertwined with the legal issues already before the MDL deferring resolution to the MDL court might "serve the interest of judicial economy by preventing a district court from 'needlessly expend[ing] its energies familiarizing itself with the intricacies of a case that w[ill] be heard by another judge' or making decisions that will most likely be replicated by the judge that is assigned to handle the consolidated litigation.'" *Id.* at 809 (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)). But the court found that "[n]either of those concerns [were] present" because "[r]esolving the discrete jurisdictional . . . objections raised by the plaintiffs w[ould] not require [the transferor] court to immerse itself in the intricacies of the case in full," and could "save the potential transferee court the unnecessary labor and attention that would accompany dealing with a case that the federal courts should not be considering in the first place." *Dunaway*, 391 F. Supp. 3d at 809.

Moreover, entrusting the court to which a case was removed to decide unique jurisdictional issues pre-transfer furthers "[t]he interests of judicial economy . . . by putting a case, as expeditiously as possible, in a court that has the jurisdiction to resolve it." *Id.* "It would not be a good use of judicial resources for the JPML to devote its time and attention to a transfer from one federal court to another, if the ultimate legal reality is that neither court has or can have jurisdiction." *Id.* Likewise, it would not "be a good use of the [MDL] court's resources for that

5

court to have to deal with the intake and processing of a case only to realize, later, that the case should be in state court." *Id.* It is a manifest "waste of judicial resources for [a] case to proceed in the federal courts if, ultimately, a federal court is not the appropriate court to consider plaintiffs' claims." *Id.* (citations omitted). Indeed, there are "few greater wastes of [an MDL] court's resources than consideration of a case that the court has no jurisdiction to decide." *Id.*

Here, Defendants argue that it would be unfair to force them to litigate Plaintiffs' *California law* claims in a *California court* because Defendants "would be forced to litigate the exact same issues" in separate forums. (Opp. at 10.) The *Dunaway* defendants identically argued that pre-transfer "consideration of the remand motion . . . would cause [them] significant prejudice by potentially placing th[e] case on a 'separate track' from the numerous other opioid-related suits that [were] already being litigated in the MDL." *Dunaway*, 391 F. Supp. 3d at 809. But this argument ignored the principles of Our Federalism that underly the federal court system.[3] The fact that Defendants might litigate state-law claims in a separate forum "is a risk of the remand motion"—not one caused by allowing the unique jurisdictional issue to be decided pre-transfer. *Id.* This is because "a post-transfer remand would result in cases on different tracks just as much as a pre-transfer remand would." *Id.* Crucially, the "Defendants' argument loses sight of the fact that, if this case is not properly in the federal courts . . . then the case *should* be on a different track." *Id.* (emphasis in original). A core tenet of Our Federalism is that "[d]ifferent litigation under different laws in different states is inherent to the federal system embraced by the limited jurisdiction of the federal courts." *Id.*

---

[3] "Our Federalism" prescribes a "system in which there is sensitivity to the legitimate interests of both State and National Governments" and their courts, and in which every federal court "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States" and their courts. *Younger v. Harris*, 401 U.S. 37, 44 (1971).

2854.003/1680149.7

In *Illinois Pub. Risk Fund*, 1019 WL 3080929 Judge Kennelly followed *Dunaway*, finding that the inherent prejudice recognized by *Dunaway* of deferring a jurisdictional ruling to the MDL was further magnified because—due to a backlog—the MDL court had temporarily "elected not to rule on any motions for remand." *Id.* at *1. Judge Kennelly further reasoned that given the questionable nature of the defendants' removal, that he was "reticent to reward what may be a deliberate strategy of filing unmeritorious notices of removal in order to delay" and as such he was required to "decide the motion to remand" before the case was transferred. *Id.* Likewise here, notwithstanding Defendants' bald assertion that "this case plainly falls within the scope of 'related to' bankruptcy jurisdiction," for the reasons in Section II-D, *infra*, Defendants' jurisdictional argument is tenuous at best, and their improper removal should not be rewarded.

C.        The Bankruptcy Court Is Better Suited to Address Bankruptcy Jurisdiction.

As noted above, "burdening the MDL with a new jurisdictional issue would not be in the interest of judicial economy." *Lueck*, 2013 WL 4427111, at *1. This is particularly true when the remand issue involves a niche area of law that is more familiar to the transferor court.[4] And as Judge Breyer recognized, shifting a bankruptcy-law issue from a bankruptcy court to a district court "would result in . . . losing the benefit of the bankruptcy court's expertise" and thus would be "an inefficient allocation of judicial resources." *In re Heller Ehrman LLP*, 464 B.R. 348, 359 (N.D. Cal. 2011). Indeed, Congress entrusted every federal bankruptcy Court with the duty of

---

[4] *E.g., Goodwin v. Kajian*, 2013 WL 1528966, at *2 (C.D. Cal. April 12, 2013) (pre-transfer jurisdictional ruling required where remand issue "require[d] an application and analysis of Ninth Circuit law, and the [transferor] Court" was better equipped "to apply the law of this circuit than [the MDL] court ")' *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049 (C.D. Cal. 2004) (same); *Rundle v. DePuy Orthopaedics, Inc.*, 2011 WL 3022569, at *1 (D. Nev. July 6, 2011) (pre-transfer jurisdictional ruling required because remand question "depend[ed] on the court's interpretation of Nevada law which a district court in Nevada is generally better equipped to address than the MDL court in Ohio").

2854.003/1680149.7

"protecting its own jurisdiction from misuse." *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 456 (1940). Plaintiffs' Motion cited numerous decisions recognizing that because bankruptcy courts are "exceedingly learned in the laws of bankruptcy" such tribunals are "in the best position to make [the] determination" whether "removal was proper under 28 U.S.C. § 1334." *Traylor v. First Family Fin. Servs., Inc.*, 183 B.R. 286, 287 (M.D. Ala. 1995); *see also* Motion at 8-10.

Defendants posit that a bankruptcy court's expertise is limited to "determin[ing] whether a proceeding is 'core' or 'non-core.'" (Opp at 16.) Not so. Whether "a post-confirmation" case qualifies under "*Pegasus Gold's* [test for] 'related to' jurisdiction . . . is a matter best left to the expertise of the Bankruptcy Court in the first instance."[5] *In re Clebsch*, 2019 WL 2127292, at *2 n.2 (D. Haw. May 15, 2019). Judge Norton has recognized that judicial economy is best served by deferring an "issue of bankruptcy law" to bankruptcy judges because "[t]he Bankruptcy Court's expertise will aid in resolving this issue" and, as such, the bankruptcy court is "better positioned" to decide such questions. *Vieira v. Simpson*, 2016 WL 5151021, at *6 (D.S.C. Sept. 21, 2016). Thus, transfer "would not be in the interest of judicial economy" because it will "burden[] the MDL with a new jurisdictional issue" and require the MDL to acquaint itself with a niche area of law within the transferor court's wheelhouse. *Lueck*, 2013 WL 4427111, at *1.

**D.      Defendants Misleadingly Compare "Related to" Jurisdiction Where the MDL Defendant Is in Bankruptcy with the Instant Case.**

---

[5] As explained in Section II-D, *infra*, *Pegasus* prescribes the test applied in the Ninth Circuit to determine whether a post-confirmation case possesses the requisite "close nexus" to fall within the scope of "related to" jurisdiction. *Pegasus*, 394 F.3d at 1194. Importantly, the Ninth Circuit's "close nexus" test differs from many of the "assorted postconfirmation approaches" applied in other circuits. *Id.* This fact also supports allowing the bankruptcy judge to decide this question as this question "requires an application and analysis of Ninth Circuit law," and a California bankruptcy court is better equipped "to apply the law of th[e] [Ninth] [C]ircuit than [the MDL] court" in Alabama. *See Goodwin*, 2013 WL 1528966, at *2.

8

Defendants rely on *In re New England Compounding Pharmacy, Inc., Products Liability Litig.*, 38 F. Supp. 3d 1384, (J.P.M.L. Aug. 12, 2014) for the proposition that "Bankruptcy-related cases are no different." (Opp. at 13.) Defendants overstate and misapply this case.

The bankruptcy to which multiple separate actions were purported to "relate[] to" in that case was the primary defendant's bankruptcy. "Most of the cases in the MDL are brought against NECC (which is in Chapter 11 bankruptcy proceedings) and its officers, shareholders, and corporate affiliates, and several name healthcare providers who administered the products." *In re New England Compounding Pharm., Inc., Prod. Liab. Litig.*, 38 F. Supp. 3d at 1384. This important—but omitted by Defendants—fact illustrates the division between cases where transfer would further judicial efficiency, and cases where transfer would squander judicial resources. Where multiple cases all are removed because they "relate to" the defendant's bankruptcy, there are common remand questions for the MDL to resolve in a consistent fashion. But where, as here, Defendants are misusing a bankruptcy which is unrelated to the MDL in any way, there is nothing to be gained in the MDL by resolving the remand motion there, rather than in the bankruptcy court where it is already fully briefed, argued, and under submission.

It is illustrative to look at the difference between the instant case and *In re New England Compounding Pharmacy* in the context of the standard applicable to post-confirmation bankruptcies in the Ninth Circuit, the "close nexus" standard adopted from *In re Resorts Int'l, Inc.* 372 F.3d 154 (3d Cir.2004) by the Ninth Circuit in *Pegasus*, 394 F.3d at 1194. Under this test, the removing party must prove that "there is a close nexus to the bankruptcy plan or proceeding." *Pegasus*, 394 F.3d at 1194. For a "close nexus" to exist, "the claim must affect an integral aspect of the bankruptcy process." *Resorts*, 372 F.3d at 167. Jurisdiction is "limited to claims that could 'affect the interpretation, implementation, consummation, execution, or

9

administration of the plan.'" *In re Consolidated Meridian Funds*, 511 B.R. 140, 143 (W.D. Wash. 2014) (quoting *Pegasus*, 394 F.3d at 1194). It "recognizes the limited nature of post-confirmation jurisdiction." *Pegasus*, 394 F.3d at 1194. This limited jurisdiction is necessary because principles of federalism require courts to reject any interpretation that "could endlessly stretch a bankruptcy court's jurisdiction." *Id.* at 1194 n.1.

Where the Defendant in the MDL is itself in bankruptcy, lawsuits brought against it would affect an integral aspect of the bankruptcy process (setting aside whether or not NECC had a confirmed bankruptcy plan). Where a bankruptcy is unrelated to an MDL determination of what does or does not relate to that bankruptcy serves no purpose in the MDL. And where a lawsuit does not do anything that would change how a bankruptcy plan would function, it does not "affect" the plan, and it is not "related to" that post-confirmation bankruptcy.

## II. CONCLUSION

Plaintiffs respectfully request that this Panel grant the Motion to Vacate the Conditional Transfer Order and allow the Bankruptcy Court for the Northern District of California to rule on the already briefed, argued, and submitted motion to remand.

Date:  November 18, 2021

By: */s/ Sean R. McTigue*
Sean R. McTigue
BARTKO ZANKEL BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
smctigue@bzbm.com

Counsel for VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc. and Prime Healthcare Management, Inc.

10