# EXHIBIT A

1                    UNITED STATES BANKRUPTCY COURT

2                   NORTHERN DISTRICT OF CALIFORNIA
                                -oOo-
3
    VHS LIQUIDATING TRUST, ET AL.  ) Adv. No. 21-04034
4                                  ) Chapter 11
                    Plaintiffs     )
5                                  ) Oakland, California
    v.                             ) Friday, November 12, 2021
6                                  ) 11:20 AM
    CALIFORNIA PHYSICIANS          )
7   SERVICE, ET AL.                ) MOTION TO STAY PROCEEDINGS
                                   ) PENDING FINAL RULING BY THE
8                     Defendants.  ) JUDICIAL PANEL ON
    _____   MULTIDISTRICT LITIGATION
9                                     FILED BY DEFENDANT THE BLUE
                                      CROSS AND BLUE SHIELD
10                                    ASSOCIATION. [75]

11                                    PLAINTIFFS' MOTION TO REMAND
                                      [83]
12
                      TRANSCRIPT OF PROCEEDINGS
13            BEFORE THE HONORABLE CHARLES NOVACK
                  UNITED STATES BANKRUPTCY JUDGE
14
    APPEARANCES (All present by video or telephone):
15
    For the Plaintiffs:       SEAN R. MCTIGUE, ESQ.
16                            PATRICK M. RYAN, ESQ.
                              Bartko Zankel Bunzel & Mille
17                            1 Embarcadero Center
                              Suite 800
18                            San Francisco, CA 94111
                              (415)956-1900
19
                              JOHN D. FIERO, ESQ.
20                            Pachulski Stang Ziehl & Jones
                              One Market Plaza
21                            Spear Tower 40th Floor
                              San Francisco, CA 94105
22                            (415)263-7000

23  For Defendant Blue Cross  ZACHARY D. HOLMSTEAD, ESQ.
    Blue Shield Association:  Kirkland & Ellis LLP
24                            300 North LaSalle
                              Chicago, IL 60654
25                            (312)862-2000

1

2           TOBIAS KELLER, ESQ.
            Keller Benvenutti Kim LLP
            650 California Street
3           Suite 1900
            San Francisco, CA 94108
4           (415)496-6723

5

6

7

8

9

10

11

12

13

14

15

16

17

18   Court Recorder:          LA KESKA BLUE
                              United States Bankruptcy Court
19                            1300 Clay Street
                              Oakland, CA 94612
20

21   Transcriber:             SHARONA SHAPIRO
                              eScribers, LLC
22                            7227 N. 16th Street
                              Suite #207
23                            Phoenix, AZ 85020
                              (973)406-2250
24

     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    OAKLAND, CALIFORNIA, FRIDAY, NOVEMBER 12, 2021, 11:11 AM

2                              -oOo-

3       (Call to order of the Court.)

4           THE CLERK:  Next matter on your calendar, Your Honor,

5    this is for VHS Liquidating Trust, et al. v. California

6    Physicians Service, et al.  And I will bring all the

7    appearances in the courtroom, Your Honor.

8           THE COURT:  Okay.

9       (Pause.)

10          THE COURT:  Okay.  What I'm going to do is just ask

11   the counsel for the plaintiff first to make their appearance.

12          Mr. Keller, my recollection is that you're -- I

13   believe I saw you representing the plaintiffs here.  So I'll

14   start with you, and then anyone else representing the

15   plaintiffs can state their name.

16          Mr. Keller?

17          MR. KELLER:  Thank you, Your Honor.  In fact, I am

18   representing the defendant.

19          THE COURT:  Defendant.  I apologize.  I should -- you

20   know, it's --

21          MR. KELLER:  I'd be happy --

22          THE COURT:  Okay.  Then we'll start with the

23   defendants first, since you're up.

24          MR. KELLER:  Good morning, Your Honor.  Tobias Keller

25   appearing on behalf of Blue Cross Blue Shield Association.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    With me today is lead counsel Kirkland & Ellis, and Mr. Zach

2    Holmstead, who will be making the argument today.  He has been

3    admitted pro hoc.

4            THE COURT:  Okay.

5            MR. HOLMSTEAD:  Good morning, Your Honor.

6            THE COURT:  Good morning.

7            Anyone else making an appearance for the defendants?

8            MR. KELLER:  Not to my knowledge.  I don't know, Mr.

9    Holmstead, if you've got anyone who might be appearing in

10   addition to you.

11           MR. HOLMSTEAD:  There are a few other folks for some

12   of the other defendants here.

13           THE COURT:  Okay.  But you're going to be arguing for

14   the defendants; is that correct?

15           MR. HOLMSTEAD:  That's correct, Your Honor.

16           THE COURT:  Right, because I think the only moving

17   party is Blue Cross Blue Shield, right?

18           MR. HOLMSTEAD:  That's correct.

19           THE COURT:  Okay.  So let's go to the plaintiff.

20   Who's going to be arguing on behalf of the plaintiff?

21           MR. MCTIGUE:  Good morning, Your Honor.  My name is

22   Sean McTigue, and I'll be arguing on behalf of VHS Liquidating

23   Trust, Prime Healthcare Services, Prime Healthcare Foundation,

24   and Prime Healthcare Management.  And I'm joined today by

25   Patrick Ryan and John Fiero.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          THE COURT:  Okay.  But you're the one who's going to

2    be arguing; is that correct?

3          MR. MCTIGUE:  I will --

4          THE COURT:  Or answering my questions.

5          MR. MCTIGUE:  -- be the primary person arguing.  If

6    there are technical specific bankruptcy issues --

7          THE COURT:  Right.

8          MR. MCTIGUE:  -- John might hop in.

9          THE COURT:  Okay.  John, Mr. Fiero.

10         Okay.  Welcome to you all.  This is a hearing on the

11   defendants' motion to stay this proceeding pending the -- I

12   guess, the resolution of the MDL transfer and the plaintiffs'

13   motion to remand to Alameda County Superior Court.

14         I've read all the -- despite my inability to say who's

15   representing who, I have read all the pleadings.  I appreciate

16   the briefs.  And I have some questions.

17         Let's start with Mr. McTigue, if I may.  One of the

18   exhibits that I read was, I guess, your client's objection to

19   the conditional transfer.  And again, I assume that you know

20   more about me regarding the MDL and how it operates.  So one of

21   the exhibits I read was your client's objection to the

22   conditional transfer, and it essentially raised, you know,

23   perhaps not in as great detail, but essentially raised the same

24   issue, the same arguments that you've raised before me, which

25   is, look, this is just forum shopping, there's no jurisdiction

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   here, please -- I mean, that's why we don't want this matter

2   transferred to Alabama.  Is that about right?

3          MR. MCTIGUE:  Yes, Your Honor.  It's correct that this

4   isn't a federal case, and so accordingly, it shouldn't be

5   transferred into a federal multidistrict litigation --

6          THE COURT:  Right.

7          MR. MCTIGUE:  -- and we have the opportunity to have

8   it resolved here today before the JPML needs to rule on the

9   motion to vacate that's pending before it.

10         THE COURT:  Now, have the defendants responded to your

11  conditional opposition -- objection?

12         MR. MCTIGUE:  We filed a motion to vacate the

13  conditional transfer order.

14         THE COURT:  Okay.

15         MR. MCTIGUE:  And I believe their opposition to that

16  is due today.  So whatever they say in their opposition will be

17  informed by what you do today.

18         THE COURT:  So essentially, I mean, they're going to

19  resolve -- I mean, so why shouldn't I stay this matter and just

20  let the MDL panel tell me what it thinks, before we even get to

21  Judge Proctor, right?

22         MR. MCTIGUE:  The reason that you should not stay this

23  pending the ruling of the JPML is because this Court is the

24  best situated Court involved in all of these proceedings to

25  rule on whether --

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    THE COURT:  No, I understand.  I understand.  No, I

2    understand that.  I'm not best situated; I'm just sitting here

3    in the Ninth Circuit.  Look, we're all federal judges.  They've

4    all handled motions to remand.  Again, I may have some --

5    perhaps more passing knowledge of what related-to jurisdiction

6    is.  But again, so you're asking them to decide essentially the

7    same issue that you're asking me to decide, which is don't

8    stay; resolve the motion to remand.

9    MR. MCTIGUE:  Specifically the JPML won't rule on be

10   related-to jurisdiction issue.

11   THE COURT:  How is it not --

12   MR. MCTIGUE:  It's very specific --

13   THE COURT:  How is it not?  I mean --

14   MR. MCTIGUE:  They don't --

15   THE COURT:  Again, so what standard are they going to

16   use to determine, no, we shouldn't transfer this?

17   MR. MCTIGUE:  Typically, the JPML will look primarily

18   at the substantive underlying factual allegations in making the

19   determination on whether or not the case should be transferred.

20   But their order --

21   THE COURT:  Right.  And you're not --

22   MR. MCTIGUE:  -- on the motion to vacate --

23   THE COURT:  And you're not raising those?

24   MR. MCTIGUE:  No, we don't disagree that the factual

25   conduct of Blue Cross Blue Shield, in violating the Cartwright

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    Act in California, is at issue also in the multidistrict

2    litigation.  The issue here is that there's no federal

3    jurisdiction over this --

4              THE COURT:  Right.

5              MR. MCTIGUE:  -- state law case.  If this Court were

6    to remand the case in advance of the JPML ruling on the motion

7    to transfer, it would inform whether or not the MDL should be

8    forced to spend its judicial resources on a case that never

9    should have been in federal court in the first place.

10             THE COURT:  And is it going to do more than inform?

11   If I say no stay, I'm going to -- let's assume I say no stay,

12   I'm going to rule on the motion to remand, I decide to remand.

13   Does that remove the -- does that prevent the MDL from reaching

14   the issue?

15             MR. MCTIGUE:  No, Your Honor, it does not necessarily

16   prevent them from reaching the issue, although it would be

17   improvident for the JPML to transfer the case after remand.

18   But there are cases where --

19             THE COURT:  Right.

20             MR. MCTIGUE:  -- a bankruptcy court has remanded a

21   case, and then it has been transferred to another district.

22   But then it's only in that district for the purposes of an

23   appeal to a district court of the bankruptcy court's decision.

24             THE COURT:  Right.  So even if I, as I said, grant the

25   motion to stay -- again, so let's look at the judicial economy

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    side of things here.  If I could -- if I could say, okay, I

2    agree with you, I should resolve this, I do resolve it in your

3    in your client's favor, then where's the judicial economy in

4    that when the MDL panel is going to look at it could say, look,

5    we're transferring anyway, and then we can see -- we can

6    probably readily anticipate that there's going to be a motion

7    for reconsideration or a motion to vacate, whatever it might

8    be, before Judge Proctor.

9         MR. MCTIGUE:  The reason that judicial economy would

10   be furthered by this Court reaching the issue today, we cover

11   it in the papers pretty extensively --

12        THE COURT:  No, I understand --

13        MR. MCTIGUE:  -- but in summary --

14        THE COURT:  -- but I'm just asking.

15        MR. MCTIGUE:  Yeah.  In summary, the bankruptcy court

16   is the court that has the expertise and experience, best suited

17   to determine --

18        THE COURT:  Yeah, but that's not judicial economy.

19   That's not judicial economy.

20        MR. MCTIGUE:  But --

21        THE COURT:  I'm talking about judicial economy now.

22        THE COURT:  Okay.  Let's assume -- look, every one of

23   these judges has resolved motions to remand.  And again, they

24   may not have seen it -- and remember; I just want to remind you

25   that when my bankruptcy intense decisions get appealed, they

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    frequently go to district court judges who are not bankruptcy

2    judges, yet they have no problems handling my appeals.

3              So, again, in terms of judicial economy, what judicial

4    economy will be served?  Again, because that's one of the three

5    elements if I apply the River analysis as opposed to the Meyer

6    analysis, there's a judicial economy prong.

7              So what judicial economy will be had if I say the

8    motion to stay is denied, I remand, the MDL still has to

9    resolve the objection to the transfer.  It may still go to

10   Judge Proctor, and Judge Proctor will probably face a -- I

11   don't know if it's an appeal or a motion to reconsider.  Again,

12   he'll get some motion practice where he'll be asked to

13   resolve -- to look at whatever decision I may issue and say I

14   agree or disagree.  So again, what's the judicial economy if I

15   agree with you and don't stay it and resolve it?

16             MR. MCTIGUE:  Your Honor, the judicial economy is,

17   first, that we would get a decision faster, which would bring

18   the appeal, if any, to bear faster.  The JPML may well deny --

19   or may grant the motion to vacate and rescind the conditional

20   transfer order, in which case the appeal would be heard here in

21   the Northern District of California by a Northern District

22   judge.  And even if they do transfer it, and it goes to

23   Alabama, it's a much more limited scope of judicial resources

24   for the MDL court to review your decision regarding whether or

25   not this case relates to Verity's California bankruptcy, based

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    on an abuse of discretion standard, then it would be for him to

2    work up ruling on the matter under Ninth Circuit law in a case

3    where the jurisdictional issues are completely unique to this

4    piece of litigation.

5           THE COURT:  So I'm essentially --

6           MR. MCTIGUE:  As we argue in our brief --

7           THE COURT:  I'm essentially acting as someone's law

8    clerk now?  I think Judge Breyer may have called bankruptcy

9    judges law clerks in Stern v. Marshall.  I think somewhere

10   along those lines, but I've forgiven him years ago, so I guess

11   we're past that.

12          But again, being serious now, if all I do is -- and

13   again, you know, appeals happen, but if this is just more of an

14   appeal.  So if I say, okay, remand it, well, maybe I'm

15   assisting the MDL panel in its -- it'll be a useful prep, I

16   hope, if that's the way I go, a useful tool for the MDL to use

17   in its decision.  And then if it says no, let Judge Proctor

18   resolve it -- again, he has something that he could do with as

19   he wishes.

20          But is that the inevitable here, Mr. McTigue, that

21   whatever I do is going to is going to get reviewed by the MDL

22   and possibly by Judge Proctor, as opposed to me saying I'm

23   going to stay it and just let Judge Proctor resolve -- you

24   know, let the panel and possibly Judge Proctor resolve it?

25          MR. MCTIGUE:  No, Your Honor, we don't think that it's

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    inevitable that those series of events would occur, and we

2    respectfully disagree that you would be acting as a simple law

3    clerk.  The bankruptcy court is --

4            THE COURT:  That was said in jest, I hope you realize.

5            MR. MCTIGUE:  Yeah, but --

6            THE COURT:  Okay.

7            MR. MCTIGUE:  But we think that this Court does have

8    relevant expertise, and specifically, this Court should act to

9    protect its jurisdiction from being misused in the way that the

10   defendants are trying to do here.  It's clear from the

11   defendants' briefing that the defendants have no interest in a

12   bankruptcy court really having anything to do with this piece

13   of litigation, despite it being the only way that defendants

14   have found to try and drag this into federal court.

15           In their briefing on the motion to remand, for

16   example, they misstate all of the elements of the equitable

17   test, instead substituting the MDL court for the bankruptcy

18   court in a test where you're assessing should a bankruptcy

19   court exercise its jurisdiction over an otherwise state law

20   action.  And none of their arguments have anything to do with

21   furthering any of the processes of bankruptcy.

22           All they want to do is remove this to bankruptcy court

23   immediately, tell you to stay and do not touch it, even though

24   it's being removed pursuant to statutes that are meant to bring

25   things within the ambit of an ongoing bankruptcy, in order to

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1     resolve it efficiently along with the estate, and instead

2     transfer it immediately into a multi-district litigation.

3          THE COURT:  And --

4          MR. MCTIGUE:  This Court should protect that

5     jurisdiction --

6          THE COURT:  No.  No, I understand.  Let me ask a

7     question out of left field a little bit.  Let's say I deny the

8     motion to stay, I deny the motion to remand, and the panel

9     says, yeah, it should stay in bankruptcy court.  Don't I then

10    have to transfer it to the Central District of California?  I

11    mean, do I have -- is the venue proper?  Where does it go?

12    Look, they've remanded it to bankruptcy court.  It's not

13    been -- excuse me, it's removed to me and it stays here.  Okay.

14         MR. MCTIGUE:  I mean, I can't speak for what

15    procedural steps would occur in that instance.  Defendants

16    haven't made any arguments that --

17         THE COURT:  I know, I know.

18         MR. MCTIGUE:  -- actually --

19         THE COURT:  I said that's left field.  Okay.  Let

20    me -- Mr. Holmstead?

21         Thank you, Mr. McTigue, again.

22         I've read the briefs.  I just have some questions.

23    Mr. Holmstead, all the cases that I saw where -- and these are

24    district court cases, again, primarily in California district

25    courts -- that apply the River test, that have stayed the

14

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    litigation to allow the MDL court to resolve the motion to

2    remand -- you know, it's cases like the McKesson case, where

3    the jurisdictional question -- again, I think that case was

4    fraudulent joinder or misjoinder -- was regularly arising, and

5    they said, look, the MDL court has seen this issue before.  We

6    want consistent rulings, so I'm going to stay the proceeding

7    before me to let the MDL court resolve it.

8           This is a one off, isn't it?  I mean, I have a --

9    again, I'll use the word generic, though nothing's -- a generic

10   Chapter 11 plan, creating a generic looking liquidating trust

11   which is there to sue various -- collect various debts, sue

12   various folks, including your clients and then -- so what?  And

13   there's no evidence that Judge Proctor, as part of the MDL, has

14   been asked to consider the jurisdictional issues arising when a

15   liquidating trust brings state law claims in state court, it's

16   removed, and then the jurisdictional question arises.

17          So isn't this just a one off jurisdictional analysis?

18   Again, you haven't given me any evidence, have you, that Judge

19   Proctor has resolved issues like this or potentially could

20   resolve issues like this?

21          MR. HOLMSTEAD:  So Your Honor, this is the first time

22   the bankruptcy jurisdiction has arisen in the MDL.  Judge

23   Proctor, obviously has --

24          THE COURT:  And it's been going on for, at least what,

25   2012?  Is that about right?  2014?

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          MR. HOLMSTEAD:  That's right.  2012, Your Honor.

2          THE COURT:  Right.  So --

3          MR. HOLMSTEAD:   So --

4          THE COURT:  And excuse me; I apologize.  That's one of

5    my bad habits that I interrupt people.  And again, in my

6    experience, there have been -- particularly in California --

7    there have been numerous hospital bankruptcies throughout every

8    district, numerous.  So if he hasn't seen one now, who's to say

9    he'll ever see one?

10         MR. HOLMSTEAD:  Well, Your Honor, as you know, there

11   have been hospital bankruptcies in California, and the

12   plaintiffs here and in the MDL allege that there are a lot of

13   bankruptcy caused by the challenge conduct in the MDL.  So

14   there is some likelihood that it will arise in the future.

15         And I think that a couple of cases are informative

16   here.  The first would be Oregon ex rel. Kroger.  There all of

17   the cases in the MDL were filed in federal court.  And then

18   there was a new case in state court that was removed and the

19   plaintiffs moved to remand it.  The district court still issued

20   a short stay to let the JPML process play out, even though it

21   was the first time that issue had ever come up, because it was

22   possible for that issue to arise in cases that might be filed

23   in the future.  And that's also true here.  Second --

24         THE COURT:   Well, possible isn't the standard,

25   though.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    MR. HOLMSTEAD:  Well, I think, Your Honor, that there

2  is a likelihood here; it's not just a possibility but a

3  likelihood.

4    THE COURT:  But why is there a likelihood?

5    MR. HOLMSTEAD:  Because of the bankruptcies that

6  plaintiffs allege were caused by the challenge conduct.  And

7  the other --

8    THE COURT:  I -- I think --

9    MR. HOLMSTEAD:  Your Honor, you're right; I can't

10  predict the future, so it might not, but --

11    THE COURT:  Yeah.  Yeah, I mean, anything's possible.

12  And again, remember, this isn't a new MDL.  It's been pending

13  for nine years, and you couldn't come up with -- and again,

14  hospital insolvencies have been going on in California, I can

15  tell you, for more -- I mean, well before 2012.

16    MR. HOLMSTEAD:  Sure.

17    THE COURT:  And so --

18    MR. HOLMSTEAD:  The other point that I would raise,

19  Your Honor, is that this jurisdictional issue is likely to

20  arise in the MDL in this case.  As Your Honor pointed out

21  earlier, regardless --

22    THE COURT:  I don't understand what that means.

23    MR. HOLMSTEAD:  If Your Honor were to rule on the

24  remand issue, there would likely be an appeal.

25    THE COURT:  Right.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          MR. HOLMSTEAD:  The JPML is likely to grant transfer.

2     And so Judge Proctor will be addressing this jurisdictional

3     issue in this case, because it will have been transferred to

4     him through the JPML process.  So as you noted, it doesn't

5     further judicial economy because the case will be heard by

6     Judge Proctor either way.

7          THE COURT:  Right, so there's no judicial economy.

8          MR. HOLMSTEAD:  In ruling on the motion to remand now,

9     that's right.

10          THE COURT:  Yeah, I mean, so again, if we're

11     looking -- again, so -- okay, so let's walk through these three

12     elements that the River test has established, which is, one,

13     potential prejudice to nonmoving party, and the nonmoving party

14     here is the defendants.  Again, it's the -- sorry, it's the

15     defendants who've moved to stay the plaintiff.  I apologize.

16     So what potential prejudice is there to anybody here, is to the

17     plaintiff, should I -- as for the stay?

18          MR. HOLMSTEAD:  Your Honor, I don't believe there

19     would be any prejudice to the plaintiffs.  All of their

20     jurisdictional arguments and rights would be preserved.  The

21     stay would be short --

22          THE COURT:  That's right.

23          MR. HOLMSTEAD:  -- it would be three weeks.

24          THE COURT:  Okay.  So what's the hardship and inequity

25     to your clients if the action is not stayed?



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          MR. HOLMSTEAD:  It's twofold, Your Honor.  First, we

2    would be litigating the same issue in multiple forums.  We've

3    already --

4          THE COURT:  But that's going to happen regardless.

5          MR. HOLMSTEAD:  And there's no --

6          THE COURT:  I mean --

7          MR. HOLMSTEAD:  I'm sorry, go ahead.

8          THE COURT:  Go ahead.  So again, what's the hard --

9    again, if I don't stay it, I resolve the motion to remand,

10   let's say I grant it, well, then you still have to litigate

11   before the MDL.  And if The MDL does what it -- for example,

12   says, no, it's being transferred to Judge Proctor, then he has

13   to hear it regardless.

14         MR. HOLMSTEAD:  Yeah.  On this point, Your Honor, I

15   think the judicial economy and the hardship to the defendants

16   overlap in that we would be litigating this and addressing the

17   same issue twice, and we would be subject to, potentially,

18   inconsistent rulings in this Court and in the MDL court.

19         And I neglected to mention something earlier, Your

20   Honor.  There was a --

21         THE COURT:  So hang on.  Wait, wait.

22         MR. HOLMSTEAD:  Okay.

23         THE COURT:  So everyone's --  I mean, so the bottom

24   line is there's going to the same judicial resource -- again,

25   I'm talking about everyone's going to be litigating.  I mean,

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    no matter how many times it's litigated, both of you are going

2    to be litigating -- are going to be participating in it.  So

3    the hardship, in terms of attorney time and cost, is the same.

4    There's no inequity because you're getting -- everyone's

5    getting the same number of bites at the apple.

6              MR. HOLMSTEAD:  Oh --

7              THE COURT:  So, again, now I get to judicial economy.

8    So again, as the test says, what judicial resources are going

9    to be saved by avoiding duplicative litigation?  Again, what

10   judicial economy is going to be achieved if I don't -- under

11   either scenario?  I mean, it's --

12             MR. HOLMSTEAD:  Sure.  Your Honor, granting a short

13   stay is a much simpler issue to address.  It will require much

14   less investment --

15             THE COURT:  By whom?

16             MR. MCTIGUE:  -- in regards to the law than --

17             THE COURT:  By whom?

18             MR. HOLMSTEAD:  -- than ruling on the --

19             THE COURT:  Look, investment; we're all invested.

20   You've briefed it.  Other sides have briefed it.  I've read it.

21   All I've got too is write something.  And I have to write

22   something anyway.

23             MR. HOLMSTEAD:  Your Honor, the stay issue, I think,

24   is much simpler and less complex than the remand issue, and

25   even just writing it will require fewer judicial resources.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    The other point, Your Honor, is --

2    THE COURT:  I don't mind.  Again, there's no judicial

3    resources being -- you're not -- again, if you're trying to

4    tell me, well, I can do something this weekend -- that I'll be

5    prevented from doing something this weekend that otherwise, I

6    won't do --

7    MR. HOLMSTEAD:  Well, that --

8    THE COURT:  -- when I sit in my "home office".

9    MR. HOLMSTEAD:  Yeah, I --

10   THE COURT:  So, again, I'm just looking for what

11   judicial -- okay.  I'm just trying to figure out what the

12   judicial economy is.  But you're right, on the other hand, it's

13   a short stay.  Let's see what the MDL does.  And the worst that

14   happens is that some federal judge resolves this issue for you.

15   MR. HOLMSTEAD:  Right.  Exactly.  And on the judicial

16   resources, I've read a lot of these decisions over the last

17   couple of weeks, and the decisions on motion to stay are

18   usually a page, two, maybe three.  And the opinions resolving

19   related-to jurisdiction and equitable remand are twenty, thirty

20   pages long at times.  So I think there's efficiency there.

21   And the other thing that I should mention is there's a

22   large settlement in the MDL.  And it's a settlement that

23   allowed for opt-outs.  And so there were some opt-outs, and

24   those opt-outs have started filing cases.  So although the MDL,

25   there were a lot of cases filed, and there's been a steady

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    stream since then.  But over the last month, there have been

2    additional filings.  A new complaint was filed, I think,

3    yesterday or two days ago.  We had a couple of filed last week.

4    So the --

5              THE COURT:  Where?  Again, I'm not sure how that plays

6    into anything.

7              MR. HOLMSTEAD:  Well, the opt-outs are obviously a lot

8    of different kinds of companies.  Many of them are hospital

9    systems and other health care providers.  And so, as we were

10   talking about the likelihood of this bankruptcy related issues

11   arising in the MDL, again, I just wanted to mention that there

12   are these new cases being filed every day based on all of the

13   opt-outs.  So it's kind of a renewed activity, a lot of new

14   activity in the MDL with new cases being filed.

15             THE COURT:  Right.  So Mr. McTigue, what's the harm in

16   getting the MDL to decide whether -- again the argument you've

17   made to the panel is that, look, there's just no jurisdiction

18   here.  You should let the bankruptcy court resolve this.  So

19   what's the harm in letting -- how many people sit on the panel?

20   How many judges sit on the panel?

21             MR. MCTIGUE:  I believe it's a three-judge panel.

22             THE COURT:  Three judges.  So what's the harm of

23   allowing three federal judges to determine whether it makes

24   sense to -- again, so my question is, are they going to look at

25   this from a -- are they going to look at this jurisdictional

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    anal -- are they going to actually head -- you know, how --

2              MR. MCTIGUE:  They won't reach the underlying merits

3    of the motion pending before you.

4              THE COURT:  Right.  So what --

5              MR. MCTIGUE:  And --

6              THE COURT:  What are they going to reach?

7              MR. MCTIGUE:  What they're going to reach is whether

8    or not it's in the interest of judicial economy to transfer the

9    case to the multidistrict litigation.

10             But I would say, on the topic of judicial economy,

11   Judge Alsup in the McKesson Corp. case said:  "When a

12   jurisdictional issue has not yet arisen before the MDL, a

13   motion to stay has been denied and the action remanded to state

14   court, because burdening the MDL with a new jurisdictional

15   issue would not be in the interest of judicial economy."  That

16   is --

17             THE COURT:  But --

18             MR. MCTIGUE:  -- exactly what is happening here.

19             THE COURT:  Yeah, but they're not going to consider

20   the -- well --

21             MR. MCTIGUE:  Yeah, but they will.

22             THE COURT:  Okay.  But again, if I deny the motion to

23   stay, decide the motion to remand, decide to remand in your

24   client's favor, that is going to be appealed to some district

25   court judge, possibly Judge Proctor, again.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1      And again, I'm looking for the judicial economy.   If

2    it's a fait accompli or close to a fait accompli that, if I

3    stay it, that will tell the panel that, gee -- I mean, I assume

4    that may tell the panel that Judge Novack says, look, I'm

5    deferring it in respect to the MDL, which, again, you've read

6    all the federal district court cases that, I understand that,

7    although, again I'm not obligated to say anything.   But just

8    out of deference it's stayed because I understand that, if I

9    grant the motion to remand, it's going to be -- it quite

10    possibly could be heard by Judge Proctor anyway.   So who am I

11    kidding?

12           MR. MCTIGUE:   I don't think you would be kidding

13    anyone, Your Honor.   I think when you look at the City of

14    Corona, which is a very recent case out of the Central

15    District --

16           THE COURT:   I read, a 2021 case.   I read it.   It's in

17    my notes.   Right now, in fact, I'm looking at it.   But the

18    problem is that applies the Meyer test, and as the Northern

19    District -- again, that's not the test that's adopted by the

20    circuit.   The closest we have to that is the River test.   But

21    if you look at the --

22           MR. MCTIGUE:   Respectfully, Your Honor, what the City

23    of Corona case does is it says there are these two competing

24    tests in the Ninth Circuit, but under both of them, one which

25    is specific to where there's a motion to remand, and one that's



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   more general, the others being more general --

2            THE COURT:  No, I understand.  No, I understand.  The

3   City of Corona is saying --

4            MR. MCTIGUE:  But the --

5            THE COURT:  I've read it.  I've read it.  City of

6   Corona says, look, River test, fine.  But it's not in the

7   context of this scenario, which is my scenario.  And I

8   understand.  I understand why -- I understand why they thought

9   that the Meyers test was good.

10           But the other interesting thing and it's -- I think

11  when I Shepardized, the City of Corona came up -- but, you

12  know, the City of Corona also concludes by saying -- and I'll

13  just read from it.  It says:  "Despite the slightly different

14  formulations" -- that being the River test and Meyer test --

15  "both tests focus on the same essential inquiry:  how similar

16  is the judicial issue in the instant case, the cases that are

17  or will be in the MDL."  Right?

18           And here there's no -- here, you're right.  There's no

19  evidence before me that -- again, the evidence before me

20  indicates that this is a one off.  And all the cases that I've

21  read -- again, a lot -- the McKesson case; there were some

22  other cases involving misjoinder or disjoinder said, look, they

23  stayed it because the MDL had decided similar cases or they

24  knew would decide similar cases, and they didn't any confusion

25  or different rulings on this issue.  So they deferred to the

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   MDL and they granted the motion to stay.  But again, why

2   shouldn't we let the MDL panel decide who gets to resolve this

3   issue?

4         MR. MCTIGUE:  Your Honor, the reason that this case

5   should be decided here, the motion to stay should be denied, is

6   because, as City of Corona said, if the remand issue is unique

7   to the case at hand, no efficiencies are achieved through

8   transfer.  The same amount of judicial resources must be

9   expended, whether by the transferee or the MDL court.  There

10  aren't any judicial efficiencies to consolidating this motion

11  to remand into the MDL for the MDL court to rule on it.  The

12  real question here --

13        THE COURT:  Other than the fact that --

14        MR. MCTIGUE:  -- is what's the --

15        THE COURT:  Other than the fact that it may very well

16  rule out that regardless, in its appellate capacity, or in a

17  motion to vacate, or in some other capacity.

18        MR. MCTIGUE:  We don't know whether or not they would

19  rule on it.  It very well may be that if you remand this case,

20  and the MDL panel decides to vacate the transfer order as a

21  result, an appeal, if one is made by the defendants, which we

22  don't have any specific indication that they will appeal it --

23  they have not said that they will.  If they did, then it would

24  go to a Northern District judge to review.  And that review,

25  whether it happens in the Northern District, or it gets

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    transferred and happens in Alabama, is a different expenditure

2    of judicial resources, which again, will occur whether or not

3    you stay this case.

4              And so the question is, what is the fastest route to

5    resolving this issue, determining whether or not there is

6    subject matter jurisdiction.  And even if there were subject

7    matter jurisdiction whether, under the applicable statutes,

8    this Court should equitably remand it, which --

9              THE COURT:  Okay.  So --

10             MR. MCTIGUE:  -- if we get to the motion to remand, we

11   can go into that.  But --

12             THE COURT:  We will.  We will.  So hang on.  Okay.  So

13   again, let's look at the path here just so that I can -- path

14   one is I grant the motion to stay.  If I grant the motion to

15   stay, the MDL panel will determine whether to vacate the

16   conditional transfer or not.  If it decides not to vacate, then

17   it goes to Judge Proctor, and he decides the motion to remand,

18   right?

19             MR. MCTIGUE:  At an undetermined point of time in the

20   future, yes.

21             THE COURT:  Yeah.  Well, I mean -- right, it's got to

22   be put on his calendar, and you probably know far better than

23   me, or someone knows far better than me what his calendar looks

24   like.

25             Okay.  So that's the stay path, stay granted path.  If



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    the stay denied path is that I resolve the motion to remand --

2    I mean, stay denied; I grant, let's say, the motion to remand.

3    The MDL will still consider the -- will still say, well, gee,

4    should we -- what do we do now since the remand has been

5    granted?

6           And then there's going to be -- then there's the

7    possibility that the MDL will say, no, we're going to send it

8    on to Proctor, and he can he can figure out what to do, in some

9    capacity, whether he wants to vacate it or -- again, I don't --

10   I mean, that in itself raises some jurisdictional issues.  But

11   there'll be an appeal, and it may be Proctor who decides it.

12          And so isn't the stay denied past bringing in more

13   judges or bringing in the same -- again, I'm just trying to

14   figure out, if I just use my hands and start counting the

15   number of judges who are going to touch this, where are fewer

16   judges?

17          MR. MCTIGUE:  Your Honor, the number of judges

18   wouldn't change under either scenario because you're already

19   touching this right now.  So you're involved whether or not it

20   ultimately gets transferred.  The JPML is involved, because the

21   defendants involved them --

22          THE COURT:  Whether or not it's --

23          MR. MCTIGUE:  -- the same day that they removed this

24   case.

25          THE COURT:  Whether or not it -- so no matter what I



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    do, the panel is going to hear this.  And then -- yeah, I

2    understand.

3            MR. MCTIGUE:  There will be a district court judge who

4    hears it, there's you, and there's the panel.

5            THE COURT:  Right.

6            MR. MCTIGUE:  Those are the three judges who are going

7    to touch this either way.  The difference is that you can

8    resolve this now, versus pushing it off at some point in the

9    future and making a Northern District of Alabama judge apply

10   Ninth Circuit law in determining whether or not this case is

11   related to Verity's California bankruptcy --

12           THE COURT:  Right.

13           MR. MCTIGUE:  -- by close nexus, and the Ninth Circuit

14   and the Third Circuit use the close nexus test, and other

15   circuits use other tests.  So even if there were other related-

16   to cases that eventually came into existence and were

17   transferred, they might be using separate tests, which is

18   similar to cases of fraudulent joinder, where different

19   standards militate in favor of the local courts resolving them

20   prior to transfer.  And either way, it's ultimately a factual

21   question of whether or not this case is related to the actual

22   Verity bankruptcy --

23           THE COURT:  Right.  I understand that.

24           MR. MCTIGUE:  -- and its plan compared to a

25   hypothetical bankruptcy.  So even if they -- I'm sorry, Your

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   Honor.

2            THE COURT:  No, no, go ahead.  Go ahead, please.

3            MR. MCTIGUE:  Even if there were other bankruptcies

4   that were post-confirmation, and had filed suit against Blue

5   Cross Blue Shield, and were removed to their relevant

6   bankruptcies, and were transferred into the MDL, each one would

7   still be unique because each would still need to be assessed in

8   light of its actual plan that's allegedly related to it, not at

9   an abstract level.

10           So there still would be no efficiency gained by having

11  the MDL court go through all of that additional work.  And the

12  judicial economy is not only the judicial economy of this Court

13  or the JPML, but also of the MDL court itself by just pushing a

14  bunch of matters that never should have arisen in the MDL in

15  the first place to that judge and forcing that judge to assess

16  all of these issues, read all of these briefs that you've

17  already read, and rule on this issue that's already squared up

18  in front of you, would be a burden on the MDL court which, as

19  Mr. Holmstead indicated, has plenty of things to do.  There's

20  stuff going on in the MDL, and injecting an additional matter,

21  that never should be in federal court in the first place, is

22  simply a waste of the judicial resources that that court is

23  already expending on the multidistrict litigation.

24           THE COURT:  And there's a chance that the MDL will

25  still hear this because, again, if I deny the stay, grant the

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    motion to remand, we don't know where that's going to go.  The

2    appeal or --

3         MR. MCTIGUE:  But if it hears the appeal, that's a

4    much lower burden on the MDL than deciding the motion in the

5    first instance.

6         THE COURT:  I'm not sure it is.  Again, I'm not

7    necessarily sure that he doesn't get that -- my sense is that

8    since I'm -- with regard to the legal issue, I think he looks

9    at it de novo, would be my guess.

10        Mr. Holmstead, if you had a judge count, do you agree

11   or disagree with Mr. McTigue regarding how many judges are

12   going to have to spend time on this if I grant the motion to

13   stay or deny the motion to stay?  What's your count?

14        MR. HOLMSTEAD:  Sure.  If Your Honor grants the motion

15   to stay, then fewer judges will touch the motion to remand

16   because Your Honor won't need to invest in evaluating that

17   issue.

18        THE COURT:  And so I'm the judge who gets saved.

19        MR. HOLMSTEAD:  That's right.  Your weekend gets

20   saved, Your Honor, exactly.

21        THE COURT:  Right.  Right.

22        MR. HOLMSTEAD:  And I think Your Honor did touch on

23   something really important.  In McKesson and Corona, and all of

24   the cases that the plaintiff cited, there was no possibility of

25   an appeal if remand were granted, because those weren't



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    bankruptcy cases.

2              THE COURT:  Right.

3              MR. HOLMSTEAD:  Plaintiffs didn't cite a single case

4    that ruled on remand instead of a stay that involved bankruptcy

5    jurisdiction.

6              THE COURT:  Well, I'm not sure I found one.

7              MR. HOLMSTEAD:  Well, one would be the --

8              THE COURT:  Is there?

9              MR. HOLMSTEAD:  I'm not aware of one, Your Honor.  And

10   in fact, we have a counterexample, which is the Adelphia case,

11   right?  There the judicial panel issued a tentative transfer

12   order just like this case.  And then the judge sitting in your

13   position had to decide to rule on the motion to remand or to

14   rule on the motion to stay.  And that judge chose to rule on

15   the motion to remand, held the subject matter jurisdiction was

16   lacking.  There was then an appeal filed.  The JPML transferred

17   the case to the MDL and the MDL court reviewed it anyway.

18              I mean, there's just no judicial efficiency in that.

19   And I think Your Honor's right with respect to the standard of

20   review.  Legal issues, subject matter jurisdiction, that's for

21   you to --

22              THE COURT:  De novo.

23              MR. HOLMSTEAD:  Right, exactly.  And Your Honor,

24   related-to bankruptcy jurisdiction and other bankruptcy issues

25   are transferred to MDL courts all the time.  They deal with

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    them all --

2            THE COURT:  That -- I mean, again, now you're bringing

3    in -- I don't know.  Again, that's --

4            MR. HOLMSTEAD:  We cited a couple of cases to Your

5    Honor.  One would be the New England Compounding Pharmacy case.

6    There the JPML transferred a case to the MDL, even though the

7    plaintiff had an outstanding objection based on related-to

8    jurisdiction.  And in the CIT Group case and the WorldCom

9    securities cases, those are both MDL courts --

10           THE COURT:  Right.

11           MR. HOLMSTEAD:  -- that addressed related-to

12   jurisdiction.  This is commonplace.

13           THE COURT:  Yeah.

14           THE COURT:  Okay.  Mr. McTigue, any further comments

15   with regard to the motion to stay?

16           MR. MCTIGUE:  I would just say that identifying

17   instances where events occurred is not sufficient to show that

18   it's commonplace or proper or necessary.  I think both sides

19   agree that it's up to you, Your Honor, on whether or not you

20   want to grant this motion to stay.  We're certainly not saying

21   you are not allowed to stay this.

22           THE COURT:  Right.  I understand that.

23           MR. MCTIGUE:  And so I'm just indicating that cases

24   have had a bankruptcy court judge remand a case and have had

25   the JPML transfer it and have had an MDL court hear the appeal

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    on that does not mean that's what's going to happen here,

2    inevitably.

3            THE COURT:  And that's --

4            MR. MCTIGUE:  There's no reason to think the JPML

5    wouldn't take your ruling into account and not transfer the

6    case to the MDL because it's not a federal case.

7            THE COURT:  Right.  And then that's just part of

8    sitting as a bankruptcy judge that you've got more appellate

9    layers on top of you then a district court judge has, and of

10   course, a district court judge -- I mean -- no, I understand.

11   That's just the nature of the beast.

12           Let's turn to motion to remand.  And I'm taking this

13   under submission, just to let you know.

14           Let's take a look at the motion to remand.  Mr.

15   Holmstead, if you look at what I've got here -- and you can,

16   again, correct me if I'm wrong factually, but my sense is that

17   these antitrust price fixing claims arose pre-petition -- or

18   again, there may have been a steady pattern of alleged

19   antitrust price fixing issues, but I assume that some of the

20   underlying -- the facts indicate that, look, this was happening

21   pre-petition, post-petition.  So --

22           MR. HOLMSTEAD:  Your Honor --

23           THE COURT:  Right.  So what I have is a trust --

24   again, I took a look at the plan.  And the plan says, okay, he

25   was -- again, it's a pretty standard looking plan under facts

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    like this.  A trust is created to collect funds that can -- and

2    with those funds being used to -- with those funds being

3    disbursed to various creditors under the plan.

4            So that's what we have, a trust created in its

5    liquidating trust, a trust created to sue people on pre-

6    petition claims, and these claims, because they're pre-

7    petition, they don't arise in, they don't arise under.  This

8    could have been done during the 11, it could have been done

9    before the 11.  So all I have is a collection action here, and

10   I know it's a trust specifically created -- it's a Chapter 11

11   plan.

12           And if you look at all the Ninth Circuit Cases, at

13   least I looked at more than a few Ninth Circuit cases, mostly

14   bankruptcy court cases.  I think I found one or two where they

15   said, gee, if this is a collection action related to a --

16   again, if this is a collection action being pursued -- I call

17   it a collection action, although it's not really a collection.

18   It's not collecting a receivable; this is something more

19   substantial.

20           But if this is litigation, again, on a pre-petition

21   claim, let's say, by a trust created by a plan, you'll find one

22   or two cases where they say, gee, that's related to because --

23   you know, that's related-to jurisdiction.  But most of the

24   cases I could find said no, this has nothing to do -- and  I

25   don't have to interpret the plan to determine jurisdiction

VHS Liq. Trust, et al. v. California Physicians Service, et al.
here.

1

2          Again, I'm not interpreting the plan.  It has nothing
3  to do with the execution of the plan.  If I remand this, it's
4  not going to, in any way, shape or form -- again, I'm playing
5  devil's advocate here -- conflict with, undermine, contradict,
6  call into question the terms of the plan.  The plan just says
7  here, trustee of trust, go forth and sue, and hopefully you'll
8  collect some money and we get to disburse it under the terms of
9  the plan.  So that's it.

10          So this is just a routine -- I mean, so generic
11  trust -- again, no such thing as a generic antitrust or price
12  fixing claim.  But again, state court claim, go forth and go
13  sue and just send the money back to disburse funds.

14          So how was that in any way, shape, or form -- and
15  there's no ancillary jurisdiction.  There's no supplemental
16  jurisdiction that I could note.  So how is this related?  How
17  do we have post-confirmation related-to jurisdiction here?

18          MR. HOLMSTEAD:  Sure.  There are two separate reasons,
19  Your Honor.  And as the Ninth Circuit held in the Willshire
20  case, post-confirmation actions, there are a broad set of
21  sufficient conditions for related-to jurisdiction.  And one of
22  them is where the Court would need to interpret the bankruptcy
23  plan.  And that would be required --

24          THE COURT:  You see, there's as a difference between
25  reading the plan and interpreting the plan.  I don't have to --



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    I read it, and it says trust, go sue.   That's not interpreting.

2            MR. HOLMSTEAD:  So --

3            THE COURT:  That's reading.

4            MR. HOLMSTEAD:  So I think that part of the history is

5    relevant here.  As part of the bankruptcy, Verity sold three of

6    its facilities, okay?  And if the causes of action being

7    asserted in this case were transferred to the buyers, then the

8    trust has no standing to bring those claims at all.

9            THE COURT:  Well, were they?

10           MR. HOLMSTEAD:  Well, that's what requires

11   interpretation of the plan, because --

12           THE COURT:  No, that requires facts.  No, that

13   requires facts, and I don't have those facts in front of me.

14           MR. HOLMSTEAD:  Your Honor, you're right, it would

15   require an interpretation of the facts and what assets were

16   transferred to the trust and which were not.

17           THE COURT:  Yeah, but --

18           MR. HOLMSTEAD:  I mean, the plaintiffs, in their --

19   sure.

20           THE COURT:  Okay.  But do I -- has anyone give me the

21   sale documents for -- no.

22           MR. HOLMSTEAD:  No.

23           THE COURT:  So okay, I don't have to worry about that.

24           MR. HOLMSTEAD:  Well, I think --

25           THE COURT:  I'm only as good as the evidence before

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    me, and no evidence of that.

2              MR. HOLMSTEAD:  As part of the case, we certainly

3    would introduce that evidence.

4              THE COURT:  Well, today --

5              MR. HOLMSTEAD:  They're part of --

6              THE COURT:  Today's the day.

7              MR. HOLMSTEAD:  Well --

8              THE COURT:  What evidence?

9              MR. HOLMSTEAD:  The bankruptcy plan --  so the

10   bankruptcy plan recognizes, which is before the Court, that the

11   liquidating trust assets exclude hospital purchase assets.  And

12   the plaintiffs acknowledge in their complaint -- this is

13   paragraph 114 -- that for one of the three facilities, the St.

14   Francis facility, VHS does not control claims after the date of

15   the sale.  But they appear to be trying to assert claims for

16   the other two facilities, even after they were sold to another

17   party.  And I'm not sure that that would be permitted under the

18   plan.  They're also trying to assert claims on behalf of all

19   three facilities from before the sale.  And again, it depends

20   on which assets were transferred as part of the bankruptcy

21   plan.

22              The second thing, Your Honor, is that -- and obviously

23   there have been a lot of cases that have held that whether a

24   trust has the authority to bring a particular claim is a

25   question of standing, and that would support related-to

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1 | jurisdiction.  It's --

2 | THE COURT:  Well, only if the standing is in question.

3 | MR. HOLMSTEAD:  Right, and we believe that it is.

4 | THE COURT:  Again, only if there's some confusion

5 | regarding standing, and that's the point here.

6 | MR. HOLMSTEAD:  I mean, the plaintiffs -- the base of

7 | the plaintiffs' complaint does not contain evidence or

8 | allegations sufficient to demonstrate that the claims they're

9 | seeking to pursue were transferred to the trust.  It's the

10 | plaintiffs' burden to allege that, and they failed to do so.

11 | They didn't include the agreements or the underlying

12 | transactions or any details about them in their complaint at

13 | all.

14 | THE COURT:  I don't think they have to.

15 | MR. HOLMSTEAD:  Well --

16 | THE COURT:  It's a notice pleading.

17 | MR. HOLMSTEAD:  Well, I think that they would need to

18 | allege facts demonstrating that they have standing, and I don't

19 | believe they've done that with respect to these particular

20 | claims.

21 | The second thing, Your Honor, is going back to the day

22 | the bankruptcy petition was filed, okay, at that point, the

23 | Blue Cross Blue Shield MDL had been pending for some time and

24 | it was well known.  The Verity CEO submitted the declaration in

25 | support of their day one filing, which we discussed in our

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    removal papers.  And he asserted that Verity's dire financial

2    condition was caused by below market rates from health plans,

3    including, specifically, Blue Cross of California, Blue Shield

4    of California, that the rates were so low they couldn't even

5    break even.  And then, unsurprisingly, the bankruptcy plan

6    reserves claims against health plans like Blue Shield  of

7    California and Blue Cross of California.  Now --

8            THE COURT:  That's right.

9            MR. HOLMSTEAD:  And then, one of these --

10           THE COURT:  And it transfers those claims into the

11   trust.

12           MR. HOLMSTEAD:  Part of the claims it transferred

13   definitely.  Some of them it might or might not, depending on

14   the issue we discussed earlier.  But one of the three

15   facilities that was sold was actually sold to the other

16   plaintiff in this case, to Prime.

17           So this litigation is a coordinated effort between the

18   litigation trustee and the entity that bought one of the

19   hospitals in bankruptcy proceedings to pursue the claims for

20   the below market rates identified by the CEO on the day one

21   filing.  This is in direct implementation of the plan.  I mean,

22   you think about a creditor, whether at the time --

23           THE COURT:  Hang on.  I apologize; I'm not following.

24   Okay.  So some of these claims, you're saying -- some of these

25   claims by the -- that the state owned were transferred to one

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    of -- again, not liquidating trust, but one of the

2    coplaintiffs, correct?

3            MR. HOLMSTEAD:  Correct.  It's a different hospital

4    system.

5            THE COURT:  Okay.  And how does that play into --

6            MR. HOLMSTEAD:  And the trustee and the entity that

7    bought that hospital system are coplaintiffs; they brought this

8    coordinated litigation to pursue the claims that the CEO called

9    out in the day one filing.

10           THE COURT:  I don't understand what that has to -- and

11   I apologize, but I don't see the significance --

12           MR. HOLMSTEAD:  It's okay.  I'm sorry, Your Honor.  So

13   I believe that that shows that this case is brought in

14   implementation of the bankruptcy plan, which would support

15   related-to juri --

16           THE COURT:  Well, of course it is because the trust

17   was created by the plan.

18           MR. HOLMSTEAD:  Right.

19           THE COURT:  But that's not --

20           MR. HOLMSTEAD:  And so the --

21           THE COURT:  Okay.  But again, if you take that

22   argument to its simplest point, is that okay, because again, if

23   your argument is that because this trust was created by a plan,

24   I've got related-to jurisdiction, that's just not right.

25           MR. HOLMSTEAD:  Right.  Of course.  That's too far.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1      That's not the argument at all.

2              THE COURT:  Right.

3              MR. HOLMSTEAD:  And the plaintiffs have cited cases

4      saying that if there's a wholesale reservation of every claim

5      the trust might ever have --

6              THE COURT:  No, I agree.

7              MR. HOLMSTEAD:  -- that's too much.  But that's not

8      this case.  This case there is a more specific reservation of

9      claims against health plans, and where you have a more specific

10     reservation, then cases like Meridian Funds and McKinstry say

11     that supports related-to jurisdiction because that claim --

12             THE COURT:  But --

13             MR. HOLMSTEAD:  -- being called out of that --

14             THE COURT:  But it's just a generic analysis.  It's

15     just a generic description of all claims against health funds.

16     It's pretty generic.

17             MR. HOLMSTEAD:  I mean, it's certainly, like, not the

18     name of the case by name because it hadn't been filed yet, but

19     it's exactly the same claims that the CEO was calling out in

20     the day one filing.  And the MDL was pending.  And one thing

21     the Meridian Fund said that I think is helpful is that the

22     question a whether the claims would have formed part of the

23     calculus of the parties when negotiating to the plan.

24             THE COURT:  And there's no --

25             MR. HOLMSTEAD:  And --



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          THE COURT:  And there's no evidence of that.

2          MR. HOLMSTEAD:  Well, I think that if --

3          THE COURT:  Remember statements by CEO made in what

4     year, as opposed to when this plan was --

5          MR. HOLMSTEAD:  Well --

6          THE COURT:  -- drafted and confirmed?  How many years

7     passed?

8          MR. HOLMSTEAD:  I believe one year, maybe.

9          THE COURT:  Well, again --

10         MR. HOLMSTEAD:  I think it was a pretty quick

11    bankruptcy.

12         THE COURT:  But Mr. Holmstead, there's no evidence

13    that, again, among the many claims that were transferred to the

14    trust that the claims against the defendants here were central

15    to the plan.

16         MR. HOLMSTEAD:  We --

17         THE COURT:  There's no evidence of that.

18         MR. HOLMSTEAD:  Yeah.  We have not had the opportunity

19    to conduct that discovery yet.  I will say, though --

20         THE COURT:  Yeah, but there's no discovery.  I mean,

21    there's not even a declaration.  I mean, look, people had to

22    negotiate this plan.  This just -- okay, I'm just saying that

23    at this stage, look, I have no evidence that the claims against

24    your clients were just one of many, many claims that were

25    assigned to this trust to litigate.  And there was nothing

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    "special" about these claims other than that it was one of the

2    factors which led to the filing of the Chapter 11.  But again,

3    that's --

4              MR. HOLMSTEAD:  And this is certainly discovery that

5    we want to do.  If it needs to be part of the jurisdictional

6    inquiry, then we can we can certainly do it.

7              THE COURT:  Well, I think everyone's looking for a

8    faster resolution to this than that.

9              MR. HOLMSTEAD:  Well, yeah, as are we.  But to the

10   extent that the motion to remand turns on factual issues that

11   require discovery, we're prepared to do that on an expedited

12   timeline, certainly.

13             THE COURT:  Okay.  So again, from your perspective,

14   the key argument is that, look, that that there were some -- we

15   don't know which asset -- again, I don't have the sale -- the

16   sales that you're talking about were made during the Chapter

17   11?

18             MR. HOLMSTEAD:  Yes, sir.  Yes, Your Honor.

19             THE COURT:  I assume they were noticed out and --

20             MR. HOLMSTEAD:  Yeah, they were approved by the Court.

21   I think the relevant docket entries from the bankruptcy docket

22   are 4360 and 4511 for St. Francis, and 4471 and 4634 for the --

23             THE COURT:  Any reason why you didn't attach those

24   documents?

25             MR. HOLMSTEAD:  No.  No, Your Honor, there's no -- I

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    mean, they are public records, so we didn't attach them.

2              THE COURT:  Yeah, but if you want to limit -- it kind

3    of works against judicial economy by telling me to go fetch.

4    But I understand.

5              MR. HOLMSTEAD:  Yeah.  I mean, I just think it's

6    further to the point that this is a complex jurisdictional

7    issue.  It's going to require a lot of analysis, and a stay is

8    by far the simpler path.

9              THE COURT:  Well, is it complex because you didn't

10   give me all the information that you require me to look at?

11             MR. HOLMSTEAD:  No, I think that with the information

12   it's complex, I think that --

13             THE COURT:  Have you read the sale --

14             MR. HOLMSTEAD:  -- it's just --

15             THE COURT:  Have you read these documents?

16             MR. HOLMSTEAD:  I have.

17             THE COURT:  And they give you pause?

18             MR. HOLMSTEAD:  Yeah, they're not clear to me on what

19   exactly was transferred, Your Honor.  I think that they require

20   further interpretation.  I did look to try to see what claims

21   were transferred, and it was ambiguous to me.

22             THE COURT:  So you couldn't tell whether the claims in

23   the Alameda County Superior Court complaint were transferred or

24   not?

25             MR. HOLMSTEAD:  With respect to the three sold



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   facilities, that's right.

2            THE COURT:  Right.

3            Mr. McTigue, do you agree or disagree?

4            MR. MCTIGUE:  I disagree that this has anything to do

5   with affecting the interpretation of the plan.  The sales, to

6   the extent they occurred before the plan was confirmed, are

7   necessarily not part of the plan, and it wouldn't involve

8   interpretation of the plan.  It just involves reading the

9   documents that have been filed in the bankruptcy, which also is

10  not discovery.  It's just --

11           THE COURT:  Well, have you read them?

12           MR. MCTIGUE:  -- what assets were transferred.

13           Have I read them?

14           THE COURT:  Yeah.

15           MR. MCTIGUE:  Yes.

16           THE COURT:  And?

17           MR. MCTIGUE:  We would not have asserted claims we did

18  not think that we had the right to assert on behalf of the VHS

19  liquidating trust.

20           THE COURT:  Okay.

21           MR. MCTIGUE:  I would indicate one thing, though, Your

22  Honor.  The close nexus test is not merely will the plan be

23  interpreted.  So that's the threshold that you were addressing

24  of read versus interpret.  But the close nexus test is

25  actually:  does this action affect the interpretation?  Does it

46

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   affect the implementation?  It's not merely is this an act of

2   implementation, is it an act of interpretation?

3            THE COURT:  And --

4            MR. MCTIGUE:  You need to read the document.

5            THE COURT:  Right, and all that can be resolved by the

6   Alameda County Superior Court by saying, okay, plans -- you

7   know, some call it a consent decree, some call it a contract.

8   The sale deck is a contract.  I can read those as well as any

9   other judge.  I assume they were executed in California.  And

10  I'm going to assume, perhaps wrongly, that they get to be

11  interpreted under California law.  And if this is a contract

12  issue, that's exactly what Alameda County Superior Court judges

13  do every day.  Right?

14           MR. MCTIGUE:  Yes, Your Honor.

15           THE COURT:  Right.  Okay.

16           MR. HOLMSTEAD:  I would just note, Your Honor, that

17  the Meridian Funds case held that, if the Court must interpret

18  the plan to determine whether the trustee has standing to

19  pursue the claims, then related-to jurisdiction exists.

20           THE COURT:  Yeah, but I'm not interpreting the plan.

21  I'm going to be trying to determine the contract.  I mean --

22           MR. HOLMSTEAD:  But the plan carves the hospital

23  purchased assets out of the trust's assets and then then the

24  plan, in turn, refers to those sale agreements.  So the sale

25  agreements are probably incorporated into the plan by reference

47

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    because they define what was transferred and what wasn't.  Even

2    though they're separate documents, I think it would still be

3    part of interpreting the plan.

4              THE COURT:  Okay.  I appreciate it.

5              MR. HOLMSTEAD:  Thank you.

6              THE COURT:  Okay.  What about the equitable remand

7    argument?  How do you address that, Mr. Holmstead?

8              MR. HOLMSTEAD:  Well, Your Honor.  Just one moment

9    here.  I think that -- you know, I won't go through every

10   single factor; I'll just note a couple of points.

11             First is the plaintiffs have the burden to establish

12   equitable remand.  That's what the Cobalt case from the

13   Northern District in 2016 held.  It's not the usual situation

14   where the plaintiffs have the burden, but it is for equitable

15   remand.  And it's obviously a practical inquiry based on the

16   realities of the case.

17             And we explain in our briefing that fourteen of the

18   factors favor remand -- removal, and four are neutral.  And I

19   think one threshold issue is the plaintiffs -- and they

20   repeated it here -- is that they say that the Court should

21   ignore the fact that the MDL even exists and pretend that the

22   case will go forward in bankruptcy court.  And they didn't cite

23   any authority for that notion at all.  And I don't think

24   it's -- I think it's because there isn't any.

25             In fact, cases have repeatedly considered the presence



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    of an MDL when evaluating the equitable remand factors because

2    it impacts the practicalities.  And those cases are Adelphia,

3    Enron securities, Trustees of Masonic Hall, Weissman, and

4    WorldCom Securities, just to name five.

5              Second, I want to highlight two factors that are not

6    in dispute and that decidedly favor removal.  Those are

7    judicial economy and avoiding the possibility of inconsistent

8    results.  Plaintiffs don't dispute that these are relevant

9    factors.  In fact, their own cases, including the TIG case,

10   recognizes that they are relevant.  And the plaintiffs' brief

11   doesn't dispute that both of these favor removal.  It would be

12   really difficult to do so because the underlying allegations

13   are identical to those in the MDL.

14             And in the Sequoia Village case, the court held that

15   equitable remand should be denied when there's a related case

16   in federal court.  And here there are sixty-six, including the

17   Sheridan case, which alleges the same Cartwright Act claims

18   that the plaintiffs are bringing here.  I mean, the MDL just

19   has a long head start, and it's the most efficient place to

20   adjudicate the claims.

21             And then finally, on the predominance and complexity

22   of state law issues, which are important factors, any complex

23   issues here are federal.  They're not unique to state law.  The

24   first is that the Court would need to interpret the bankruptcy

25   plan.  The second is the substantive claims revolve around

49

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    federal law.  The Cartwright Act is the California version of

2    the federal Sherman Act, and the other state statutes on which

3    plaintiffs' claims are based, also mirror the federal Sherman

4    Act.  And every single state says that you should look to

5    federal decisions when interpreting their state Sherman Act

6    analogs.

7            And the plaintiffs cite the Sherman Act six times in

8    their complaint.  They state that if conduct violates the

9    Sherman Act, it necessarily violates the Cartwright Act.  They

10   cite multiple decisions interpreting the Sherman Act, and I

11   believe they have more allegations about Alabama and

12   Pennsylvania than about California.

13           Now, they do note that there can be differences

14   between the Cartwright Act and the Sherman Act, but they

15   haven't even tried to identify any difference on any relevant

16   issue in this case at all.  And the complaint, again, asserts

17   claims under nine other states' laws too.

18           I don't believe the plaintiffs can credibly argue that

19   the Alameda County Court is in a better position to interpret

20   those states' laws than the federal MDL court in Alabama, which

21   has already been handling such state law claims for the exact

22   same allegations.

23           If Your Honor has other questions about the factors,

24   I'm happy to address them. I wasn't going to --

25           THE COURT:  No.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    MR. HOLMSTEAD:  -- go through all fourteen with the

2    Court.

3    THE COURT:  No, no, no, no.  I just wanted to give you

4    the --

5    MR. HOLMSTEAD:  Sure.  Judicial economy, right?

6    THE COURT:  I think we're a little late now for the

7    judicial economy.  But no, you just satisfied my curiosity.

8    Mr. McTigue?

9    MR. HOLMSTEAD:  Okay.  Thank you.

10    MR. MCTIGUE:  I'll start with the argument regarding

11    federal law.

12    THE COURT:  Well, let's start with the remand issue.

13    Let's start with the remand -- I mean, again, not with the

14    equitable remand, but I guess the statutory remand.  The

15    argument -- again, the fundamental argument here is that, look,

16    we don't know which claims -- now, and I appreciate it.  It's

17    not -- your argument is that, look, we never would have --

18    again we don't sue people if we don't have standing to do it.

19    But that kind of -- that's probably not enough.

20    The question is, is there -- I mean, you just believe

21    that you do have standing.  The question is, is there any -- is

22    there any concern that you have that you can express about

23    saying, look, here are the -- again, the problem is I don't

24    have the contracts in front of me.  I guess I can go take a

25    look at the Southern District of California docket and read.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    But how do you address Mr. Holmstead's comments on that?

2              MR. MCTIGUE:  We have not had an opportunity to

3    address his comments because they haven't been raised in a

4    forum where we would be responding to them.  If --

5              THE COURT:  Right.

6              MR. MCTIGUE:  If we were in state court --

7              THE COURT:  I understand that.

8              MR. MCTIGUE:  -- and they wanted to bring a demurrer

9    saying we lack standing --

10             THE COURT:  Right.

11             MR. MCTIGUE:  -- to bring these claims, we could

12   respond to that.

13             THE COURT:  Yeah, I know.  But removal just moves a

14   little faster than one's ability to perhaps file a motion to

15   demurrer.

16             Okay, what about the equitable remand?

17             MR. MCTIGUE:  So I guess, just to close the loop on

18   the related-to jurisdiction point and our ability to raise the

19   claims, we raised the claims that we had the right to raise,

20   whatever they were, transferred to us by the plan.  The plan

21   could only transfer those that remained in the estate.

22             To the extent claims were sold before the plan was

23   confirmed, they weren't part of the estate.  They weren't

24   something that would be transferred in.  The Alameda County

25   Superior Court can go ahead and rule on whether or not we have



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    standing to assert certain claims, but it doesn't bear on

2    bankruptcy jurisdiction.

3              On the equitable factors, all --

4              THE COURT:  But it's going to require that the Alameda

5    County Superior Court look at something.  And that is going to

6    be, I guess, A, the plan.  It's going to have to read the plan

7    and say, okay, these are the claims that were transferred to

8    this trust.  Now I need to see -- now I guess someone may --

9    now I guess the question is going to be -- excuse me.  I guess

10   the defendant is going to say, but look, Your Honor, here the

11   sales -- certain claims were sold during the course of the

12   Chapter 11.  Here are more documents you need to take a look

13   at, and as far as we're concerned, these documents are part and

14   parcel -- were incorporated into the plan because they define

15   what claims were -- they helped define what claims were

16   transferred to the trust.

17             MR. MCTIGUE:  Yes, but whatever the Alameda County

18   Superior Court decides when it reads the plan won't affect the

19   interpretation of the plan moving forward.  The reason that

20   related-to jurisdiction exists is so that if a piece of

21   litigation is going to change the way that the plan is

22   implemented or interpreted moving forward, it should be in the

23   bankruptcy court where the bankruptcy court can make sure it is

24   in line with all of the interests under the plan.

25             Of course, here, the defendants don't even care about



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    that.  They just want to jump it over to the MDL, which also

2    has nothing to do with Verity's bankruptcy.  It's purely a

3    launch pad in federal jurisdiction into an MDL.

4              THE COURT:  No, I understand --

5              MR. MCTIGUE:  All the reasons --

6              THE COURT:  I understand the motivation.  I understand

7    the motivation or at least what you perceive the motivation to

8    be.  I understand that.  But again -- okay.

9              MR. MCTIGUE:  The only point there is the MDL court

10   has no further ability to interpret the plan than the Alameda

11   County Superior Court.  Maybe if it were in a bankruptcy court,

12   the bankruptcy court would be more ready to see what's a

13   typical term, what's an atypical term.  But all this is, is

14   moving it from a state court, where it was filed by the

15   liquidating trustee, exercising his authority under the plan,

16   and then dragging it to a federal MDL.  The trustee could have

17   chosen to pursue federal claims and didn't.

18             But moving to the equitable factors, and particularly

19   the difference between federal and state law, it's particularly

20   odious to say that simply because the Sherman Act exists and

21   state antitrust laws, such as the Cartwright Act, are often

22   informed by law covering the Sherman Act, does not mean that

23   state law is not state law --

24             THE COURT:  And I think it --

25             MR. MCTIGUE:  -- and that state law is independent.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          THE COURT:  Yeah, I think you cited, I think, to some

2     cases saying that, look, we can look to the -- we can look to

3     the federal antitrust law, but we're not bound by it.

4          MR. MCTIGUE:  Exactly.  And --

5          MR. RYAN:  Your Honor, it's Mr. Ryan.  Just permission

6     to interject with a cite on that point, if I may, with your

7     permission?

8          THE COURT:  I think there's a cite -- I think Mr.

9     McTigue's brief provides a cite, does it not?

10          MR. RYAN:  The California Supreme Court in Cipro said

11     that the Cartwright Act is not based on the Sherman Act as was

12     represented.  In fact, it's based on sister states laws, and at

13     most, federal law is instructive.

14          THE COURT:  Right.  Okay.  Right.  Right. Again, but

15     there is a cite, and again, I don't think anyone's going to

16     dispute what the California Supreme Court says.  Okay.

17          MR. MCTIGUE:  And at a higher level, even if we were

18     to choose to conflate California state law with federal law,

19     the factor to be evaluated is not do state law or federal law

20     issues predominate.  It's whether state law or bankruptcy

21     issues predominate.

22          There is no argument from the defendants that

23     bankruptcy issues are implicated at all.  They simply say

24     federal law, instead of bankruptcy court issues, because that

25     allows them to make the argument that they're making that,

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    because the Court is determining similar federal laws in the

2    MDL, it should be transferred.  But that's not the element of

3    the test.  The equitable factor is:  do state law issues or

4    bankruptcy issues predominate?

5             State law issues predominate because there are no

6    bankruptcy issues, and that factor favors remand.  Similarly,

7    the complexness of the law, it would be very onerous for a

8    bankruptcy court to hear an entire piece of litigation under

9    the Cartwright Act because it's completely far afield from

10   anything the bankruptcy court needs to do on a daily basis.

11   The fact that they want to transfer it to an MDL doesn't change

12   that because this was removed to bankruptcy court as an

13   adversary proceeding, the consideration is, should this be in

14   bankruptcy court, in fairness, or should it be back in state

15   court?

16             THE COURT:  No, I understand.  I understand.

17             MR. MCTIGUE:  And so I won't belabor all of the

18   equitable factors.  We --

19             THE COURT:  Okay.

20             MR. MCTIGUE:  -- go through them all in the briefs --

21             THE COURT:  You do.

22             MR. MCTIGUE:  -- and why they favor us.  But one thing

23   I do want to emphasize is -- and that the defendants simply

24   don't acknowledge is that there are nondebtor plaintiffs in

25   this case that they are dragging into a federal MDL with no

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    basis whatsoever.  The only reason they're here is because they

2    are coplaintiffs in a piece of litigation with the liquidating

3    trust.

4            But Prime Healthcare, had it filed a complaint on its

5    own, would not be being dragged through this, and is heavily

6    prejudiced by being dragged from California, its home

7    jurisdiction, to the Northern District of Alabama, through

8    misuse of the bankruptcy removal process.

9            THE COURT:  So here's my question.  Again, it may not

10   apply to anything, but how do those parties stay in federal

11   court?  I mean, I guess it maybe some form of ancillary

12   jurisdiction related to their -- I mean, how -- again, this

13   isn't -- okay.

14           MR. HOLMSTEAD:  Your Honor, the entire case is removed

15   to federal court.  There's no --

16           THE COURT:  No, I understand.

17           MR. HOLMSTEAD:  Yeah.

18           THE COURT:  But your jurisdiction is based upon

19   related-to out of this plan, and these parties have nothing to

20   do with the plan.

21           MR. HOLMSTEAD:  Yeah.  So Your Honor, the plaintiffs

22   chose to structure their complaint the way that they did; the

23   only option is to remove the entire complaint, so that's what

24   we did.

25           THE COURT:  Right.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1          MR. HOLMSTEAD:  And just a couple of other points,

2    Your Honor.  On with the factors, I believe the factor is the

3    difficulty or unsettled nature of the applicable state law.

4    And so I think that comparing state to federal law is relevant

5    there.

6          But more on the jurisdictional points.  I appreciate

7    the representation that counsel -- that plaintiffs are not

8    trying to bring any claims that VHS doesn't have, but they are,

9    to be clear, asserting claims that arose after they sold the

10   facilities to another party that is not a plaintiff in this

11   case, a third unrelated health system that has no role in this

12   case whatsoever.  They're still asserting those claims in

13   paragraph 114 of the complaint.

14          And then one other point.

15          THE COURT:  How do I know that?  How do I verify that?

16          MR. HOLMSTEAD:  Sure.  So in paragraph 114 --

17          THE COURT:  Okay, great, I read paragraph 114.  It

18   says what it says, but okay, how do I know that what that --

19          MR. HOLMSTEAD:  Sure.  So paragraph 114 says VHS

20   controls the following claims -- or the claims of the following

21   facilities, and it lists them out.  After St. Francis, it says

22   parentheses, before the date of the sale, or something like

23   that.

24          THE COURT:  Right.

25          MR. HOLMSTEAD:  When it talks about the Seton



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1    facilities that were sold, it does not include the same

2    parenthetical.  So I think that the natural implication is that

3    they're asserting claims even after the sale.

4           And then on the issue of standing and whether you need

5    to -- I don't believe that the Court needs to resolve the

6    standing question in order for there to be related-to

7    jurisdiction.  In other words, the defendants don't have to

8    disprove standing in order to stay in federal court.  The whole

9    question is which court will resolve that dispute?  And because

10   the standing issue turns on the bankruptcy plan and the

11   documents it incorporates, a federal court should be the court

12   to resolve that issue.

13          I don't believe that, as part of the removal analysis,

14   the Court needs to go all the way through that analysis and

15   resolve whether standing exists or not.  The fact that it's an

16   issue that needs to be determined, and the determination turns

17   on the provisions of the bankruptcy plan, is exactly why

18   related-to jurisdiction exists.  And federal courts do that

19   analysis all the time.

20          THE COURT:  Okay.  Anything else, Mr. Holmstead?

21          MR. MCTIGUE:  One issue on that --

22          THE COURT:  Hang on.  Hang on.  Anything else, Mr.

23   Holmstead?

24          MR. HOLMSTEAD:  No, Your Honor.  Thank you.

25          THE COURT:  Okay.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1           Mr. McTigue?

2           MR. MCTIGUE:  We do cite in our briefs that

3    anticipated defenses that the defense wants to raise are not

4    incorporated in the analysis of determining whether or not the

5    case should be remanded.

6           THE COURT:  And could you remind me what that case is?

7           MR. MCTIGUE:  I'll have to flip through the brief to

8    find it, but --

9           THE COURT:  Okay.

10          MR. MCTIGUE:  -- we do discuss that the fact that they

11   want to raise a defense, and they think that defense would

12   confer on them federal jurisdiction, is insufficient.

13          THE COURT:  Yeah, but again, it's not a defense.  It's

14   not an affirmative defense.  They're just saying you haven't

15   met your burden because you don't have standing.  So it's not a

16   defense.  It's not an affirmative defense.  It's not their

17   burden of proof; it's your burden of proof.

18          MR. MCTIGUE:  Fair enough.  I would also say that

19   they're conflating the MDL court with the bankruptcy court,

20   using a clever sleight of hand to say, oh, the bankruptcy plan

21   is what you need to interpret in order to determine issues of

22   standing, so we should send it to a completely unrelated

23   bankruptcy judge in Alabama, which the Alameda County Superior

24   Court and the MDL court are equally --

25          THE COURT:  Well, I'm --



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1      MR. MCTIGUE:  -- equipped to be appointed.

2      THE COURT:  I'm as foreign to this case as Judge

3  Proctor is in that regard.

4      MR. MCTIGUE:  You're not foreign to bankruptcy plans

5  and the processes of bankruptcy.

6      THE COURT:  Yeah, but remember, district court judges,

7  they sit in the court of appeals, and my vague recollection is

8  Alabama does not have a BAP.  I could be wrong about that.

9      MR. HOLMSTEAD:  That's right, Your Honor, they don't.

10     THE COURT:  Yeah.  So they get it all, good, bad,

11 indifferent.  So he's probably seen more than his fair share of

12 bankruptcy issues.

13     Yeah, I'm not -- but again, if the question is if I

14 have to look to a plan and then to a contract, essentially

15 incorporated in a plan, because those claims are retained,

16 obviously, to determine whether the plaintiff can pursue these

17 claims, that's getting a little closer to interpretation of a

18 plan, interpretation of documents.  I don't know; something to

19 think about.

20     MR. MCTIGUE:  Respectfully, Your Honor, there's no

21 question that the plaintiffs can pursue the claims they're

22 pursuing.  What defense counsel is raising is a defense to a

23 portion of recoverable damages under those claims, whether or

24 not claims were cut off after the sale of a hospital or whether

25 claims for a particular hospital were transferred.

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1      THE COURT:  Right.

2      MR. MCTIGUE:  But the actual antitrust claims, they do

3  not dispute that those were transferred into the liquidating

4  trust and that the liquidating trust has standing.

5      THE COURT:  That's a --

6      MR. MCTIGUE:  And also that Prime has standing --

7      THE COURT:  That's a good point.  That's a good point,

8  because Mr. Holmstead isn't saying that you don't have claims;

9  he's just saying that they may not be as extensive or, in your

10  case, the damages may not be as extensive as you think because,

11  some of the allegedly insufficient payments were made -- I

12  mean, you don't -- you can't assert.  And that's more of a --

13  right, more of a -- I understand.

14      MR. HOLMSTEAD:  Your Honor?

15      THE COURT:  Your claims are broad-based against notice

16  of pleading as to which claims you're allowed to assert, which

17  payments, allegedly insufficient payments were made, which

18  create a claim, which you may have sold -- the debtor may have

19  sold, has nothing to do with standing --

20      MR. HOLMSTEAD:  I --

21      THE COURT:  It's -- right.

22      MR. HOLMSTEAD:  I think on that point, Your Honor,

23  Judge Hamilton's decision in this Sun case is instructive.

24  There the liquidating trust brought antitrust claims alleging

25  harm from high prices, and the defendant moved to dismiss on

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1  grounds that a subset of that was not validly assigned to the

2  trust.  And the court did hold that that was an issue of

3  standing to bring the claims.  The court said that the trust

4  did not have standing to pursue claims not assigned to it by

5  the plan.  So I'm not sure that it's just an issue of damages

6  under that analysis.

7           THE COURT:  No, I agree.  The reason why -- and again,

8  it's not a question of dismiss in this case because they don't

9  break out --

10          MR. HOLMSTEAD:  Right.

11          THE COURT:  -- these claims one by one by one.

12          MR. HOLMSTEAD:  Right.

13          THE COURT:  So there's nothing to dismiss.  It's more

14  of a, I guess, summary judgment saying, look, if -- again,

15  that's discovery when they say we have all these claims we're

16  going to bring and then, I guess, under Rule 26(A), here are

17  damages, and you get to conduct discovery, saying, okay, tell

18  us what these --

19          MR. HOLMSTEAD:  Another thing, Your Honor.  It's not

20  clear if they have standing to assert any claims on behalf of

21  two of those hospitals, because as part of the sale, they could

22  have obviously transferred that the pre-sale claims as well.

23  That's common; when you buy a company you buy any claims that

24  the company has at the time.  And so all of the claims

25  associated with those facilities could have been transferred in

VHS Liq. Trust, et al. v. California Physicians Service, et al.

1   connection with those sales.

2          MR. MCTIGUE:  Those facilities were not companies.

3          MR. HOLMSTEAD:  I'm sorry when those facilities were

4   sold.  Thank you, counsel.

5          THE COURT:  Yeah.  And the question is, again, does

6   that get you to related-to jurisdiction?  I mean, does that

7   require that I actually interpret the plan as opposed to --

8   yeah, I understand.

9          Okay.  Anything else, Mr. Holmstead?

10         MR. HOLMSTEAD:  No, Your Honor.

11         THE COURT:  Mr. McTigue, anything else?

12         MR. MCTIGUE:  No, Your Honor.

13         THE COURT:  Okay.  I want to thank you both very much,

14  and I'll issue a decision as promptly as I can, but obviously

15  before -- is it December 2nd is the day when the panel is going

16  to resolve the conditional objection?

17         MR. HOLMSTEAD:  That's the date of the next hearing,

18         THE COURT:  Yeah, the next hearing.

19         MR. MCTIGUE:  The motion to vacate.

20         THE COURT:  The motion to vacate.

21         MR. MCTIGUE:  Yes, Your Honor.

22         THE COURT:  Okay.  Okay.  Thank you both and thank you

23  all.

24         MR. HOLMSTEAD:  Thanks so much, Honor.

25         THE COURT:  You're welcome.



VHS Liq. Trust, et al. v. California Physicians Service, et al.

1           MR. MCTIGUE:  Thank you,  Your Honor.

2           THE COURT:  Okay.  That concludes my 11 o'clock

3    calendar.  Is that correct, Ms. Bautista?

4           THE CLERK:  That's correct, Your Honor.

5           THE COURT:  All right.  And I'm adjourned.

6       (Whereupon these proceedings were concluded at 12:43 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *[signature: Sharona Shapiro]*

8

9    _____

10   /s/ SHARONA SHAPIRO, CET-492

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  November 16, 2021

17

18

19

20

21

22

23

24

25

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

## A

**ability (3)**
51:14,18;53:10
**abstract (1)**
29:9
**abuse (1)**
11:1
**accompli (2)**
23:2,2
**accordingly (1)**
6:4
**account (1)**
33:5
**achieved (2)**
19:10;25:7
**acknowledge (2)**
37:12;55:24
**Act (21)**
8:1;12:8;46:1,2;
48:17;49:1,2,4,5,7,9,9,
10,14,14;53:20,21,22;
54:11,11;55:9
**acting (2)**
11:7;12:2
**action (9)**
12:20;17:25;22:13;
34:9,15,16,17;36:6;
45:25
**actions (1)**
35:20
**activity (2)**
21:13,14
**actual (3)**
28:21;29:8;61:2
**actually (5)**
13:18;22:1;39:15;
45:25;63:7
**addition (1)**
4:10
**additional (3)**
21:2;29:11,20
**address (5)**
19:13;47:7;49:24;
51:1,3
**addressed (1)**
32:11
**addressing (3)**
17:2;18:16;45:23
**Adelphia (2)**
31:10;48:2
**adjourned (1)**
64:5
**adjudicate (1)**
48:20
**admitted (1)**
4:3
**adopted (1)**
23:19
**advance (1)**
8:6
**adversary (1)**

55:13
**advocate (1)**
35:5
**affect (3)**
45:25;46:1;52:18
**affecting (1)**
45:5
**affirmative (2)**
59:14,16
**afield (1)**
55:9
**again (89)**
5:19;7:4,6,15;8:25;
9:23;10:3,4,11,14;
11:12,13,18;13:21,24;
14:3,9,18;15:5;16:12,
13;17:10,11,14;18:8,9,
24;19:7,8,9;20:2,3,10;
21:5,11,16,24;22:22,
25;23:1,5,7,19;24:19,
21;25:1;26:2,13;27:9,
13;29:25;30:6;32:2,3;
33:16,18,24,25;34:16,
20;35:2,4,11,12;37:19;
38:4;40:1,21,22;42:9,
13;43:2,13,15;49:16;
50:13,15,18,23;53:8;
54:14,15;56:9,12;
59:13;60:13;62:7,14;
63:5
**against (8)**
29:4;39:6;41:9,15;
42:14,23;44:3;61:15
**ago (2)**
11:10;21:3
**agree (8)**
9:2;10:14,15;30:10;
32:19;41:6;45:3;62:7
**agreements (1)**
38:11;46:24,25
**ahead (5)**
18:7,8;29:2,2;51:25
**al (2)**
3:5,6
**Alabama (9)**
6:2;10:23;26:1;28:9;
49:11,20;56:7;59:23;
60:8
**Alameda (10)**
5:13;44:23;46:6,12;
49:19;51:24;52:4,17;
53:10;59:23
**allegations (5)**
7:18;38:8;48:12;
49:11,22
**allege (4)**
15:12;16:6;38:10,18
**alleged (1)**
33:18
**allegedly (3)**
29:8;61:11,17
**alleges (1)**
48:17

**alleging (1)**
61:24
**allow (1)**
14:1
**allowed (3)**
20:23;32:21;61:16
**allowing (1)**
21:23
**allows (1)**
54:25
**along (2)**
11:10;13:1
**Alsup (1)**
22:11
**although (4)**
8:16;20:24;23:7;
34:17
**ambiguous (1)**
44:21
**ambit (1)**
12:25
**among (1)**
42:13
**amount (1)**
25:8
**anal (1)**
22:1
**analogs (1)**
49:6
**analysis (10)**
10:5,6;14:17;41:14;
44:7;58:13,14,19;59:4;
62:6
**ancillary (2)**
35:15;56:11
**anticipate (1)**
9:6
**anticipated (1)**
59:3
**antitrust (7)**
33:17,19;35:11;
53:21;54:3;61:2,24
**anything's (1)**
16:11
**apologize (5)**
3:19;15:4;17:15;
39:23;40:11
**appeal (14)**
8:23;10:11,18,20;
11:14;16:24;25:21,22;
27:11;30:2,3,25;31:16;
32:25
**appealed (2)**
9:25;22:24
**appeals (3)**
10:2;11:13;60:7
**appear (1)**
37:15
**appearance (2)**
3:11;4:7
**appearances (1)**
3:7
**appearing (2)**

3:25;4:9
**appellate (2)**
25:16;33:8
**apple (1)**
19:5
**applicable (2)**
26:7;57:3
**applies (1)**
23:18
**apply (4)**
10:5;13:25;28:9;
56:10
**appointed (1)**
60:1
**appreciate (4)**
5:15;47:4;50:16;
57:6
**approved (1)**
43:20
**argue (2)**
11:6;49:18
**arguing (5)**
4:13,20,22;5:2,5
**argument (13)**
4:2;21:16;40:22,23;
41:1;43:14;47:7;50:10,
15,15,17;54:22,25
**arguments (4)**
5:24;12:20;13:16;
17:20
**arise (3)**
15:14,22;16:20;34:7,
7
**arisen (3)**
14:22;22:12;29:14
**arises (1)**
14:16
**arising (3)**
14:4,14;21:11
**arose (2)**
33:17;57:9
**around (1)**
48:25
**assert (7)**
37:15,18;45:18;52:1;
61:12,16;62:20
**asserted (3)**
36:7;39:1;45:17
**asserting (3)**
57:9,12;58:3
**asserts (1)**
49:16
**assess (1)**
29:15
**assessed (1)**
29:7
**assessing (1)**
12:18
**asset (1)**
43:15
**assets (7)**
36:15;37:11,11,20;
45:12;46:23,23

**assigned (3)**
42:25;62:1,4
**assisting (1)**
11:15
**associated (1)**
62:25
**Association (1)**
3:25
**assume (8)**
5:19;8:11;9:22;23:3;
33:19;43:19;46:9,10
**attach (2)**
43:23;44:1
**attorney (1)**
19:3
**atypical (1)**
53:13
**authority (3)**
37:24;47:23;53:15
**avoiding (2)**
19:9;48:7
**aware (1)**
31:9

## B

**back (3)**
35:13;38:21;55:14
**bad (2)**
15:5;60:10
**bankruptcies (5)**
15:7,11;16:5;29:3,6
**bankruptcy (69)**
5:6;8:20,23;9:15,25;
10:1,25;11:8;12:3,12,
17,18,21,22,25;13:9,
12;14:22;15:13;21:10,
18;28:11,22,25;31:1,4,
24,24;32:24;33:8;
34:14;35:22;36:5;37:9,
10,20;38:22;39:5,19;
40:14;42:11;43:21;
45:9;47:22;48:24;52:2,
23,23;53:2,11,12;
54:20,23,24;55:4,6,8,
10,12,14;56:8;58:10,
17;59:19,20,23;60:4,5,
12
**BAP (1)**
60:8
**base (1)**
38:6
**based (8)**
10:25;21:12;32:7;
47:15;49:3;54:11,12;
56:18
**basis (2)**
55:10;56:1
**Bautista (1)**
64:3
**bear (2)**
10:18;52:1
**beast (1)**

Case MDL No. 2406   Document 520-1   Filed 11/18/21   Page 68 of 77
VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

33:11
**behalf (6)**
3:25;4:20,22;37:18;
45:18;62:20
**belabor (1)**
55:17
**below (2)**
39:2,20
**best (3)**
6:24;7:2;9:16
**better (3)**
26:22,23;49:19
**bit (1)**
13:7
**bites (1)**
19:5
**Blue (14)**
3:25,25;4:17,17;
7:25,25;29:4,5;38:23,
23;39:3,3,6,7
**both (8)**
19:1;23:24;24:15;
32:9,18;48:11;63:13,
22
**bottom (1)**
18:23
**bought (2)**
39:18;40:7
**bound (1)**
54:3
**break (2)**
39:5;62:9
**Breyer (1)**
11:8
**brief (4)**
11:6;48:10;54:9;
59:7
**briefed (2)**
19:20,20
**briefing (3)**
12:11,15;47:17
**briefs (5)**
5:16;13:22;29:16;
55:20;59:2
**bring (10)**
3:6;10:17;12:24;
36:8;37:24;51:8,11;
57:8;62:3,16
**bringing (4)**
27:12,13;32:2;48:18
**brings (1)**
14:15
**broad (1)**
35:20
**broad-based (1)**
61:15
**brought (3)**
40:7,13;61:24
**bunch (1)**
29:14
**burden (8)**
29:18;30:4;38:10;
47:11,14;59:15,17,17

**burdening (1)**
22:14
**buy (2)**
62:23,23
**buyers (1)**
36:7

## C

**calculus (1)**
41:23
**calendar (4)**
3:4;26:22,23;64:3
**CALIFORNIA (24)**
3:1,5;8:1;10:21,25;
13:10,24;15:6,11;
16:14;28:11;39:3,4,7,
7;46:9,11;49:1,12;
50:25;54:10,16,18;
56:6
**Call (5)**
3:3;34:16;35:6;46:7,
7
**called (3)**
11:8;40:8;41:13
**calling (1)**
41:19
**came (2)**
24:11;28:16
**can (27)**
3:15;9:5,5;16:14;
20:4;26:11,13;27:8,8;
28:7;33:15;34:1;43:6,
6;46:5,8;49:13,18;
50:22,24;51:25;52:23;
54:2,2;60:16,21;63:14
**capacity (3)**
25:16,17;27:9
**care (2)**
21:9;52:25
**Cartwright (8)**
7:25;48:17;49:1,9,
14;53:21;54:11;55:9
**carves (1)**
46:22
**case (67)**
6:4;7:19;8:5,6,8,17,
21;10:20,25;11:2;14:2,
3;15:18;16:20;17:3,5;
22:9,11;23:14,16,23;
24:16,21;25:4,7,19;
26:3;27:24;28:10,21;
31:3,10,12,17;32:5,6,8,
24;33:6,6;35:20;36:7;
37:2;39:16;40:13;41:8,
8,18;46:17;47:12,16,
22;48:9,14,15,17;
49:16;55:25;56:14;
57:11,12;59:5,6;60:2;
61:10,23;62:8
**cases (36)**
8:18;13:23,24;14:2;
15:15,17,22;20:24,25;

21:12,14;23:6;24:16,
20,22,23,24;28:16,18;
30:24;31:1;32:4,9,23;
34:12,13,14,22,24;
37:23;41:3,10;47:25;
48:2,9;54:2
**caused (3)**
15:13;16:6;39:2
**causes (1)**
36:6
**Central (3)**
13:10;23:14;42:14
**CEO (5)**
38:24;39:20;40:8;
41:19;42:3
**certain (2)**
52:1,11
**certainly (6)**
32:20;37:2;41:17;
43:4,6,12
**challenge (2)**
15:13;16:6
**chance (1)**
29:24
**change (3)**
27:18;52:21;55:11
**Chapter (5)**
14:10;34:10;43:2,16;
52:12
**choose (1)**
54:18
**chose (2)**
31:14;56:22
**chosen (1)**
53:17
**Cipro (1)**
54:10
**Circuit (10)**
7:3;11:2;23:20,24;
28:10,13,14;34:12,13;
35:19
**circuits (1)**
28:15
**CIT (1)**
32:8
**cite (9)**
31:3;47:22;49:7,10;
54:6,8,9,15;59:2
**cited (4)**
30:24;32:4;41:3;
54:1
**City (7)**
23:13,22;24:3,5,11,
12;25:6
**claim (7)**
34:21;35:12,12;
37:24;41:4,11;61:18
**claims (72)**
14:15;33:17;34:6,6;
36:8;37:14,15,18;38:8,
20;39:6,10,12,19,24,
25;40:8;41:9,15,19,22;
42:13,14,23,24;43:1;

44:20,22;45:17;46:19;
48:17,20,25;49:3,17,
21;50:16;51:11,19,19,
22;52:1,7,11,15,15;
53:17;57:8,9,12,20,20;
58:3;60:15,17,21,23,
24,25;61:2,8,15,16,24;
62:3,4,11,15,20,22,23,
24
**clear (4)**
12:10;44:18;57:9;
62:20
**CLERK (4)**
3:4;11:8;12:3;64:4
**clerks (1)**
11:9
**clever (1)**
59:20
**clients (3)**
14:12;17:25;42:24
**client's (4)**
5:18,21;9:3;22:24
**close (6)**
23:2;28:13,14;45:22,
24;51:17
**closer (1)**
60:17
**closest (1)**
23:20
**Cobalt (1)**
47:12
**collect (3)**
14:11;34:1;35:8
**collecting (1)**
34:18
**collection (5)**
34:9,15,16,17,17
**comments (3)**
32:14;51:1,3
**common (1)**
62:23
**commonplace (2)**
32:12,18
**companies (2)**
21:8;63:2
**company (2)**
62:23,24
**compared (1)**
28:24
**comparing (1)**
57:4
**competing (1)**
23:23
**complaint (11)**
21:2;37:12;38:7,12;
44:23;49:8,16;56:4,22,
23;57:13
**completely (3)**
11:3;55:9;59:22
**complex (5)**
19:24;44:6,9,12;
48:22
**complexity (1)**

48:21
**complexness (1)**
55:7
**Compounding (1)**
32:5
**concern (1)**
50:22
**concerned (1)**
52:13
**concluded (1)**
64:6
**concludes (2)**
24:12;64:2
**condition (1)**
39:2
**conditional (7)**
5:19,22;6:11,13;
10:19;26:16;63:16
**conditions (1)**
35:21
**conduct (6)**
7:25;15:13;16:6;
42:19;49:8;62:17
**confer (1)**
59:12
**confirmed (3)**
42:6;45:6;51:23
**conflate (1)**
54:18
**conflating (1)**
59:19
**conflict (1)**
35:5
**confusion (2)**
24:24;38:4
**connection (1)**
63:1
**consent (1)**
46:7
**consider (3)**
14:14;22:19;27:3
**consideration (1)**
55:13
**considered (1)**
47:25
**consistent (1)**
14:6
**consolidating (1)**
25:10
**contain (1)**
38:7
**context (1)**
24:7
**contract (5)**
46:7,8,11,21;60:14
**contracts (1)**
50:24
**contradict (1)**
35:5
**control (1)**
37:14
**controls (1)**
57:20

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

**coordinated (2)**
39:17;40:8
**coplaintiffs (3)**
40:2;7;56:2
**Corona (8)**
23:14,23;24:3,6,11,
12;25:6;30:23
**Corp (1)**
22:11
**cost (1)**
19:3
**counsel (5)**
3:11;4:1;57:7;60:22;
63:4
**count (2)**
30:10,13
**counterexample (1)**
31:10
**counting (1)**
27:14
**County (10)**
5:13;44:23;46:6,12;
49:19;51:24;52:5,17;
53:11;59:23
**couple (6)**
15:15;20:17;21:3;
32:4;47:10;57:1
**course (5)**
33:10;40:16,25;
52:11,25
**Court (319)**
3:3,8,10,19,22;4:4,6,
13,16,19;5:1,4,7,9,13;
6:6,10,14,18,23,24;7:1,
11,13,15,21,23;8:4,5,9,
10,19,20,23,24;9:10,
12,14,15,16,18,21,22;
10:1,24;11:5,7;12:3,4,
6,7,8,12,14,17,18,19,
22;13:3,4,6,9,12,17,19,
24;14:1,5,7,15,24;15:2,
4,17,18,19,24;16:4,8,
11,17,22,25;17:7,10,
22,24;18:4,6,8,18,18,
21,23;19:7,15,17,19;
20:2,8,10;21:5,15,18,
22;22:4,6,14,17,19,22,
25;23:6,16;24:2,5;
25:9,11,13,15;26:8,9,
12,21;27:22,25;28:3,5,
12,23;29:2,11,12,13,
18,21,22,24;30:6,18,
21;31:2,6,8,17,22;32:2,
10,13,14,22,24,25;
33:3,7,9,10,23;34:14;
35:12,22,24;36:3,9,12,
17,20,23,25;37:4,6,8,
10;38:2,4,14,16;39:8,
10,23;40:5,10,16,19,
21;41:2,6,12,14,24;
42:1,3,6,9,12,17,20;
43:7,13,19,20,23;44:2,
9,13,15,17,22,23;45:2,

11,14,16,20;46:3,5,6,
12,15,17,20;47:4,6,20,
22;48:14,16,24;49:19,
20,25;50:2,3,6,12;51:5,
6,7,10,13,25;52:4,5,18,
23,23;53:4,6,9,11,11,
12,14,24;54:1,8,10,14,
16,24;55:1,8,10,12,14,
15,16,19,21;56:9,11,
15,16,18,25;57:15,17,
24;58:5,8,9,11,11,14,
20,22,25;59:6,9,13,19,
19,24,24,25;60:2,6,6,7,
10;61:1,5,7,15,21;62:2,
3,7,11,13;63:5,11,13,
18,20,22,25;64:2,5
**courtroom (1)**
3:7
**courts (5)**
13:25;28:19;31:25;
32:9;58:18
**court's (1)**
8:23
**cover (1)**
9:10
**covering (1)**
53:22
**create (1)**
61:18
**created (7)**
34:1,4,5,10,21;40:17,
23
**creating (1)**
14:10
**credibly (1)**
49:18
**creditor (1)**
39:22
**creditors (1)**
34:3
**Cross (7)**
3:25;4:17;7:25;29:5;
38:23;39:3,7
**curiosity (1)**
50:7
**cut (1)**
60:24

**D**

**daily (1)**
55:10
**damages (4)**
60:23;61:10;62:5,17
**date (3)**
37:14;57:22;63:17
**day (10)**
21:12;27:23;37:6;
38:21,25;39:20;40:9;
41:20;46:13;63:15
**days (1)**
21:3
**de (2)**

30:9;31:22
**deal (1)**
31:25
**debtor (1)**
61:18
**debts (1)**
14:11
**December (1)**
63:15
**decide (9)**
7:6,7;8:12;21:16;
22:23,23;24:24;25:2;
31:13
**decided (2)**
24:23;25:5
**decidedly (1)**
48:6
**decides (5)**
25:20;26:16,17;
27:11;52:18
**deciding (1)**
30:4
**decision (7)**
8:23;10:13,17,24;
11:17;61:23;63:14
**decisions (5)**
9:25;20:16,17;49:5,
10
**deck (1)**
46:8
**declaration (2)**
38:24;42:21
**decree (1)**
46:7
**defendant (4)**
3:18,19;52:10;61:25
**defendants (19)**
3:23;4:7,12,14;6:10;
12:10,11,13;13:15;
17:14,15;18:15;25:21;
27:21;42:14;52:25;
54:22;55:23;58:7
**defendants' (2)**
5:11;12:11
**defense (9)**
59:3,11,11,13,14,16,
16;60:22,22
**defenses (1)**
59:3
**deference (1)**
23:8
**deferred (1)**
24:25
**deferring (1)**
23:5
**define (2)**
47:1;52:14,15
**definitely (1)**
39:13
**demonstrate (1)**
38:8
**demonstrating (1)**
38:18

**demurrer (2)**
51:8,15
**denied (7)**
10:8;22:13;25:5;
27:1,2,12;48:15
**deny (6)**
10:18;13:7,8;22:22;
29:25;30:13
**depending (1)**
39:13
**depends (1)**
37:19
**description (1)**
41:15
**despite (3)**
5:14;12:13;24:13
**detail (1)**
5:23
**details (1)**
38:12
**determination (2)**
7:19;58:16
**determine (9)**
7:16;9:17;21:23;
26:15;34:25;46:18,21;
59:21;60:16
**determined (1)**
58:16
**determining (4)**
26:5;28:10;55:1;
59:4
**devil's (1)**
35:5
**difference (4)**
28:7;35:24;49:15;
53:19
**differences (1)**
49:13
**different (6)**
21:8;24:13,25;26:1;
28:18;40:3
**difficult (1)**
48:12
**difficulty (1)**
57:3
**dire (1)**
39:1
**direct (1)**
39:21
**disagree (6)**
7:24;10:14;12:2;
30:11;45:3,4
**disburse (2)**
35:8,13
**disbursed (1)**
34:3
**discovery (7)**
42:19,20;43:4,11;
45:10;62:15,17
**discretion (1)**
11:1
**discuss (1)**
59:10

**discussed (2)**
38:25;39:14
**disjoinder (1)**
24:22
**dismiss (3)**
61:25;62:8,13
**disprove (1)**
58:8
**dispute (6)**
48:6,8,11;54:16;
58:9;61:3
**district (25)**
8:21,22,23;10:1,21,
21;13:10,24,24;15:8,
19;22:24;23:6,15,19;
25:24,25;28:3,9;33:9,
10;47:13;50:25;56:7;
60:6
**docket (3)**
43:21,21;50:25
**document (1)**
46:4
**documents (9)**
36:21;43:24;44:15;
45:9;47:2;52:12,13;
58:11;60:18
**done (3)**
34:8:8;38:19
**drafted (1)**
42:6
**drag (1)**
12:14
**dragged (2)**
56:5,6
**dragging (2)**
53:16;55:25
**due (1)**
6:16
**duplicative (1)**
19:9
**during (3)**
34:8;43:16;52:11

**E**

**earlier (3)**
16:21;18:19;39:14
**economy (28)**
8:25;9:3,9,18,19,21;
10:3,4,6,7,14,16;17:5,
7;18:15;19:7,10;20:12;
22:8,10,15;23:1;29:12,
12;44:3;48:7;50:5,7
**efficiencies (2)**
25:7,10
**efficiency (3)**
20:20;29:10;31:18
**efficient (1)**
48:19
**efficiently (1)**
13:1
**effort (1)**
39:17

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

**either (5)**
17:6;19:11;27:18;
28:7,20
**element (1)**
55:2
**elements (3)**
10:5;12:16;17:12
**Ellis (1)**
4:1
**else (6)**
3:14;4:7;58:20,22;
63:9,11
**emphasize (1)**
55:23
**England (1)**
32:5
**enough (2)**
50:19;59:18
**Enron (1)**
48:3
**entire (3)**
55:8;56:14,23
**entity (2)**
39:18;40:6
**entries (1)**
43:21
**equally (1)**
59:24
**equipped (1)**
60:1
**equitable (13)**
12:16;20:19;47:6,12,
14;48:1,15;50:14;
51:16;52:3;53:18;55:3,
18
**equitably (1)**
26:8
**essential (1)**
24:15
**essentially (7)**
5:22,23;6:18;7:6;
11:5,7;60:14
**establish (1)**
47:11
**established (1)**
17:12
**estate (3)**
13:1;51:21,23
**et (2)**
3:5,6
**evaluated (1)**
54:19
**evaluating (2)**
30:16;48:1
**even (21)**
6:20;8:24;10:22;
12:23;15:20;19:25;
26:6;28:15,25;29:3;
32:6;37:16;39:4,5;
42:21;47:1,21;49:15;
52:25;54:17;58:3
**events (2)**
12:1;32:17

**eventually (1)**
28:16
**everyone's (4)**
18:23,25;19:4;43:7
**evidence (13)**
14:13,18;24:19,19;
36:25;37:1,3,8;38:7;
42:1,12,17,23
**ex (1)**
15:16
**exact (1)**
49:21
**Exactly (9)**
20:15;22:18;30:20;
31:23;41:19;44:19;
46:12;54:4;58:17
**example (2)**
12:16;18:11
**exclude (1)**
37:11
**excuse (1)**
13:13;15:4;52:9
**executed (1)**
46:9
**execution (1)**
35:3
**exercise (1)**
12:19
**exercising (1)**
53:15
**exhibits (2)**
5:18,21
**existence (1)**
28:16
**exists (6)**
46:19;47:21;52:20;
53:20;58:15,18
**expedited (1)**
43:11
**expended (1)**
25:9
**expending (1)**
29:23
**expenditure (1)**
26:1
**experience (2)**
9:16;15:6
**expertise (2)**
9:16;12:8
**explain (1)**
47:17
**express (1)**
50:22
**extensive (2)**
61:9,10
**extensively (1)**
9:11
**extent (3)**
43:10;45:6;51:22

**F**

**face (1)**

10:10
**facilities (12)**
36:6;37:13,16,19;
39:15;45:1;57:10,21;
58:1;62:25;63:2,3
**facility (1)**
37:14
**fact (12)**
3:17;23:17;25:13,15;
31:10;47:21,25;48:9;
54:12;55:11;58:15;
59:10
**factor (5)**
47:10;54:19;55:3,6;
57:2
**factors (11)**
43:2;47:18;48:1,5,9,
22;49:23;52:3;53:18;
55:18;57:2
**facts (7)**
33:20,25;36:12,13,
13,15;38:18
**factual (2)**
7:18,24;28:20;43:10
**factually (1)**
33:16
**failed (1)**
38:10
**Fair (2)**
59:18;60:11
**fairness (1)**
55:14
**fait (2)**
23:2,2
**far (6)**
26:22,23;40:25;44:8;
52:13;55:9
**faster (4)**
10:17,18;43:8;51:14
**fastest (1)**
26:4
**favor (7)**
9:3;22:24;28:19;
47:18;48:6,11;55:22
**favors (1)**
55:6
**federal (38)**
6:4,5;7:3;8:2,9;
12:14;15:17;20:14;
21:23;23:6;29:21;33:6;
48:16,23;49:1,2,3,5,20;
50:11;53:3,16,17,19;
54:3,13,18,19,24;55:1,
25;56:10,15;57:4;58:8,
11,18;59:12
**fetch (1)**
44:3
**few (2)**
4:11;34:13
**fewer (3)**
19:25;27:15;30:15
**field (2)**
13:7,19

**Fiero (2)**
4:25;5:9
**figure (3)**
20:11;27:8,14
**file (1)**
51:14
**filed (15)**
6:12;15:17,22;20:25;
21:2,3,12,14;29:4;
31:16;38:22;41:18;
45:9;53:14;56:4
**filing (6)**
20:24;38:25;39:21;
40:9;41:20;43:2
**filings (1)**
21:2
**finally (1)**
48:21
**financial (1)**
39:1
**find (3)**
34:21,24;59:8
**fine (1)**
24:6
**first (13)**
3:11,23;8:9;10:17;
14:21;15:16,21;18:1;
29:15,21;30:5;47:11;
48:24
**five (1)**
48:4
**fixing (3)**
33:17,19;35:12
**flip (1)**
59:7
**focus (1)**
24:15
**folks (2)**
4:11;14:12
**following (3)**
39:23;57:20,20
**forced (1)**
8:8
**forcing (1)**
29:15
**foreign (2)**
60:2,4
**forgiven (1)**
11:10
**form (3)**
35:4,14;56:11
**formed (1)**
41:22
**formulations (1)**
24:14
**forth (2)**
35:7,12
**forum (2)**
5:25;51:4
**forums (1)**
18:2
**forward (3)**
47:22;52:19,22

**found (4)**
12:14;31:6;34:14
**Foundation (1)**
4:23
**four (1)**
47:18
**fourteen (2)**
47:17;50:1
**Francis (3)**
37:14;43:22;57:21
**fraudulent (2)**
14:4;28:18
**frequently (1)**
10:1
**FRIDAY (1)**
3:1
**front (3)**
29:18;36:13;50:24
**Fund (1)**
41:21
**fundamental (1)**
50:15
**funds (7)**
34:1,2,2;35:13;
41:10,15;46:17
**further (5)**
17:5;32:14;44:6,20;
53:10
**furthered (1)**
9:10
**furthering (1)**
12:21
**future (5)**
15:14,23;16:10;
26:20;28:9

**G**

**gained (1)**
29:10
**gee (4)**
23:3;27:3;34:15,22
**general (2)**
24:1,1
**generic (8)**
14:9,9,10;35:10,11;
41:14,15,16
**gets (5)**
25:2,25;27:20;30:18,
19
**given (1)**
14:18
**goes (2)**
10:22;26:17
**Good (9)**
3:24;4:5,6,21;24:9;
36:25;60:10;61:7,7
**grant (11)**
8:24;10:19;17:1;
18:10;23:9;26:14,14;
27:2;29:25;30:12;
32:20
**granted (4)**

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

25:1;26:25;27:5;
30:25
**granting (1)**
19:12
**grants (1)**
30:14
**great (2)**
5:23;57:17
**grounds (1)**
62:1
**Group (1)**
32:8
**guess (14)**
5:12,18;11:10;30:9;
50:14,24;51:17;52:6,8,
9,9;56:11;62:14,16

# H

**habits (1)**
15:5
**Hall (1)**
48:3
**Hamilton's (1)**
61:23
**hand (3)**
20:12;25:7;59:20
**handled (1)**
7:4
**handling (2)**
10:2;49:21
**hands (1)**
27:14
**hang (5)**
18:21;26:12;39:23;
58:22,22
**happen (3)**
11:13;18:4;33:1
**happening (2)**
22:18;33:20
**happens (3)**
20:14;25:25;26:1
**happy (2)**
3:21;49:24
**hard (1)**
18:8
**hardship (3)**
17:24;18:15;19:3
**harm (4)**
21:15,19,22;61:25
**head (2)**
22:1;48:19
**health (6)**
21:9;39:2,6;41:9,15;
57:11
**Healthcare (4)**
4:23,23,24;56:4
**hear (5)**
18:13;28:1;29:25;
32:25;55:8
**heard (3)**
10:20;17:5;23:10
**hearing (3)**

5:10;63:17,18
**hears (2)**
28:4;30:3
**heavily (1)**
56:5
**held (6)**
31:15;35:19;37:23;
46:17;47:13;48:14
**helped (1)**
52:15
**helpful (1)**
41:21
**here's (1)**
56:9
**high (1)**
61:25
**higher (1)**
54:17
**highlight (1)**
48:5
**history (1)**
36:4
**hoc (1)**
4:3
**hold (1)**
62:2
**Holmstead (126)**
4:2,5,9,11,15,18;
13:20,23;14:21;15:1,3,
10;16:1,5,9,16,18,23;
17:1,8,18,23;18:1,5,7,
14,22;19:6,12,18,23;
20:7,9,15,21:7;29:19;
30:10,14,19,22;31:3,7,
9,23;32:4,11;33:15,22;
35:18;36:2,4,10,14,18,
22,24;37:2,5,7,9;38:3,
6,15,17;39:9,12;40:3,6,
12,18,20,25;41:3,7,13,
17,25;42:2,5,8,10,12,
16,18;43:4,9,18,20,25;
44:5,11,14,16,18,25;
46:16,22;47:5,7,8;50:1,
5,9;56:14,17,21;57:1,
16,19,25;58:20,23,24;
60:9;61:8,14,20,22;
62:10,12,19;63:3,9,10,
17,24
**Holmstead's (1)**
51:1
**home (2)**
20:8;56:6
**Honor (70)**
3:4,7,17,24;4:5,15,
21;6:3;8:15;10:16;
11:25;14:21;15:1,10;
16:1,9,19,20,23;17:18;
18:1,14,20;19:12,23;
20:1;23:13,22;25:4;
27:17;29:1;30:14,16,
20,22;31:9,23;32:5,19;
33:22;35:19;36:14;
37:22;38:21;40:12;

43:18,25;44:19;45:22;
46:14,16;47:8;49:23;
52:10;54:5;56:14,21;
57:2;58:24;60:9,20;
61:14,22;62:19;63:10,
12,21,24;64:1,4
**Honor's (1)**
31:19
**hop (1)**
5:8
**hope (2)**
11:16;12:4
**hopefully (1)**
35:7
**hospital (10)**
15:7,11;16:14;21:8;
37:11;40:3,7;46:22;
60:24,25
**hospitals (1)**
39:19;62:21
**hypothetical (1)**
28:25

# I

**identical (1)**
48:13
**identified (1)**
39:20
**identify (1)**
49:15
**identifying (1)**
32:16
**ignore (1)**
47:21
**immediately (2)**
12:23;13:2
**impacts (1)**
48:2
**implementation (4)**
39:21;40:14;46:1,2
**implemented (1)**
52:22
**implicated (1)**
54:23
**implication (1)**
58:2
**important (2)**
30:23;48:22
**improvident (1)**
8:17
**inability (1)**
5:14
**include (2)**
38:11;58:1
**including (4)**
14:12;39:3;48:9,16
**inconsistent (2)**
18:18;48:7
**incorporated (4)**
46:25;52:14;59:4;
60:15
**incorporates (1)**

58:11
**independent (1)**
53:25
**indicate (2)**
33:20;45:21
**indicated (1)**
29:19
**indicates (1)**
24:20
**indicating (1)**
32:23
**indication (1)**
25:22
**indifferent (1)**
60:11
**inequity (2)**
17:24;19:4
**inevitable (2)**
11:20;12:1
**inevitably (1)**
33:2
**inform (2)**
8:7,10
**information (2)**
44:10,11
**informative (1)**
15:15
**informed (2)**
6:17;53:22
**injecting (1)**
29:20
**inquiry (3)**
24:15;43:6;47:15
**insolvencies (1)**
16:14
**instance (2)**
13:15;30:5
**instances (1)**
32:17
**instant (1)**
24:16
**instead (4)**
12:17;13:1;31:4;
54:24
**instructive (2)**
54:13;61:23
**insufficient (3)**
59:12;61:11,17
**intense (1)**
9:25
**interest (3)**
12:11;22:8,15
**interesting (1)**
24:10
**interests (1)**
52:24
**interject (1)**
54:6
**interpret (9)**
34:25;35:22;45:24;
46:17;48:24;49:19;
53:10;59:21;63:7
**interpretation (10)**

36:11,15;44:20;45:5,
8,25;46:2;52:19;60:17,
18
**interpreted (3)**
45:23;46:11;52:22
**interpreting (7)**
35:2,25;36:1;46:20;
47:3;49:5,10
**interrupt (1)**
15:5
**into (17)**
6:5;12:14;13:2;21:6;
25:11;26:11;28:16;
29:6;33:5;35:6;39:10;
40:5;46:25;52:14;53:3;
55:25;61:3
**introduce (1)**
37:3
**invest (1)**
30:16
**invested (1)**
19:19
**investment (2)**
19:14,19
**involve (1)**
45:7
**involved (5)**
6:24;27:19,20,21;
31:4
**involves (1)**
45:8
**involving (1)**
24:22
**issue (45)**
5:24;7:7,10;8:1,2,14,
16;9:10;10:13;14:5;
15:21,22;16:19,24;
17:3;18:2,17;19:13,23,
24;20:14;22:12,15;
24:16,25;25:3,6;26:5;
29:17;30:8,17;39:14;
44:7;46:12;47:19;
49:16;50:12;58:4,10,
12,16,21;62:2,5;63:14
**issued (2)**
15:19;31:11
**issues (24)**
5:6;11:3;14:14,19,
20;21:10;27:10;29:16;
31:20,24;33:19;43:10;
48:22,23;54:20,21,23,
24;55:3,4,5,6;59:21;
60:12

# J

**jest (1)**
12:4
**John (3)**
4:25;5:8,9
**joinder (2)**
14:4;28:18
**joined (1)**

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

4:24
**JPML (16)**
  6:8,23;7:9,17;8:6,17;
  10:18;15:20;17:1,4;
  27:20;29:13;31:16;
  32:6,25;33:4
**Judge (40)**
  6:21;9:8;10:10,10,
  22;11:8,17,22,23,24;
  14:13,18,22;17:2,6;
  18:12;20:14;22:11,25,
  25;23:4,10;25:24;
  26:17;28:3,9;29:15,15;
  30:10,18;31:12,14;
  32:24;33:8,9,10;46:9;
  59:23;60:2;61:23
**judges (17)**
  7:3;9:23;10:1,2;
  11:9;21:20,22,23;
  27:13,15,16,17;28:6;
  30:11,15;46:12;60:6
**judgment (1)**
  62:14
**judicial (43)**
  8:8,25;9:3,9,18,19,
  21;10:3,3,6,7,14,16,23;
  17:5,7;18:15,24;19:7,8,
  10,25;20:2,11,12,15;
  22:8,10,15;23:1;24:16;
  25:8,10;26:2;29:12,12,
  22;31:11,18;44:3;48:7;
  50:5,7
**jump (1)**
  53:1
**juri (1)**
  40:15
**jurisdiction (39)**
  5:25;7:5,10;8:3;12:9,
  19;13:5;14:22;20:19;
  21:17;26:6,7;31:5,15,
  20,24;32:8,12;34:23,
  25;35:15,16,17,21;
  38:1;40:24;41:11;
  46:19;51:18;52:2,20;
  53:3;56:7,12,18;58:7,
  18;59:12;63:6
**jurisdictional (15)**
  11:3;14:3,14,16,17;
  16:19;17:2,20;21:25;
  22:12,14;27:10;43:5;
  44:6;57:6

**K**

**Keller (7)**
  3:12,16,17,21,24,24;
  4:8
**key (1)**
  43:14
**kidding (2)**
  23:11,12
**kind (3)**
  21:13;44:2;50:19

**kinds (1)**
  21:8
**Kirkland (1)**
  4:1
**knew (1)**
  24:24
**knowledge (2)**
  4:8;7:5
**known (1)**
  38:24
**knows (1)**
  26:23
**Kroger (1)**
  15:16

**L**

**lack (1)**
  51:9
**lacking (1)**
  31:16
**large (1)**
  20:22
**last (3)**
  20:16;21:1,3
**late (1)**
  50:6
**launch (1)**
  53:3
**law (33)**
  8:5;11:2,7,9;12:2,19;
  14:15;19:16;28:10;
  46:11;48:22,23;49:1,
  21;50:11;53:19,22,23,
  23,25;54:3,13,18,18,
  19,19,20,24;55:3,5,7;
  57:3,4
**laws (5)**
  49:17,20;53:21;
  54:12;55:1
**layers (1)**
  33:9
**lead (1)**
  4:1
**least (3)**
  14:24;34:13;53:7
**led (1)**
  43:2
**left (2)**
  13:7,19
**legal (2)**
  30:8;31:20
**less (2)**
  19:14,24
**letting (1)**
  21:19
**level (2)**
  29:9;54:17
**light (1)**
  29:8
**likelihood (5)**
  15:14;16:2,3,4;21:10
**likely (3)**

16:19,24;17:1
**limit (1)**
  44:2
**limited (1)**
  10:23
**line (2)**
  18:24;52:24
**lines (1)**
  11:10
**Liquidating (13)**
  3:5;4:22;14:10,15;
  34:5;37:11;40:1;45:19;
  53:15;56:2;61:3,4,24
**lists (1)**
  57:21
**litigate (2)**
  18:10;42:25
**litigated (1)**
  19:1
**litigating (4)**
  18:2,16,25;19:2
**litigation (16)**
  6:5;8:2;11:4;12:13;
  13:2;14:1;19:9;22:9;
  29:23;34:20;39:17,18;
  40:8;52:21;55:8;56:2
**little (4)**
  13:7;50:6;51:14;
  60:17
**local (1)**
  28:19
**long (2)**
  20:20;48:19
**look (43)**
  5:25;7:3,17;8:25;9:4,
  4,22;10:13;13:12;14:5;
  19:19;21:17,24,25;
  23:4,13,21;24:6,22;
  26:13;33:14,15,20,24;
  34:12;42:21,23;43:14;
  44:10,20;49:4;50:15,
  17,23,25;52:5,10,12;
  54:2,2,2;60:14;62:14
**looked (1)**
  34:13
**looking (7)**
  14:10;17:11;20:10;
  23:1,17;33:25;43:7
**looks (2)**
  26:23;30:8
**loop (1)**
  51:17
**lot (8)**
  15:12;20:16,25;21:7,
  13;24:21;37:23;44:7
**low (1)**
  39:4
**lower (1)**
  30:4

**M**

**makes (1)**

21:23
**making (5)**
  4:2,7;7:18;28:9;
  54:25
**Management (1)**
  4:24
**many (9)**
  19:1;21:8,19,20;
  30:11;42:6,13,24,24
**market (2)**
  39:2,20
**Marshall (1)**
  11:9
**Masonic (1)**
  48:3
**matter (11)**
  3:4;6:1,19;11:2;
  19:1;26:6,7;27:25;
  29:20;31:15,20
**matters (1)**
  29:14
**may (20)**
  5:17;7:4;9:24;10:9,
  13,18,19;11:8;23:4;
  25:15,19;27:11;33:18;
  52:8;54:6;56:9;61:9,
  10,18,18
**maybe (5)**
  11:14;20:18;42:8;
  53:11;56:11
**McKesson (4)**
  14:2;22:11;24:21;
  30:23
**McKinstry (1)**
  41:10
**MCTIGUE (104)**
  4:21,22;5:3,5,8,17;
  6:3,7,12,15,22;7:9,12,
  14,17,22,24;8:5,15,20;
  9:9,13,15,20;10:16;
  11:6,20,25;12:5,7;13:4,
  14,18,21;19:16;21:15,
  21;22:2,5,7,18,21;
  23:12,22;24:4;25:4,14,
  18;26:10,19;27:17,23;
  28:3,6,13,24;29:3;30:3,
  11;32:14,16,23;33:4;
  45:3,4,12,15,17,21;
  46:4,14;50:8,10;51:2,6,
  8,11,17;52:17;53:5,9,
  25;54:4,17;55:17,20,
  22;58:21;59:1,2,7,10,
  18;60:1,4,20;61:2,6;
  63:2,11,12,19,21;64:1
**McTigue's (1)**
  54:9
**MDL (76)**
  5:12,20;6:20;8:7,13;
  9:4;10:8,24;11:15,16,
  21;12:17;14:1,5,7,13,
  22;15:12,13,17;16:12,
  20;18:11,11,18;20:13,
  22,24;21:11,14,16;

22:12,14;23:5;24:17,
  23;25:1,2,9,11,11,20;
  26:15;27:3,7;29:6,11,
  13,14,18,20,24;30:4;
  31:17,17,25;32:6,9,25;
  33:6;38:23;41:20;
  47:21;48:1,13,18;
  49:20;53:1,3,9,16;55:2,
  11,25;59:19,24
**mean (40)**
  6:1,18,19;7:13;
  13:11,14;14:8;16:11,
  15;17:10;18:6,23,25;
  19:11;23:3;26:21;27:2,
  10;31:18;32:2;33:1,10;
  35:10;36:18;38:6;
  39:21;41:17;42:20,21;
  44:1,5;46:21;48:18;
  50:13,20;53:22;56:11,
  12;61:12;63:6
**means (1)**
  16:22
**meant (1)**
  12:24
**mention (3)**
  18:19;20:21;21:11
**merely (2)**
  45:22;46:1
**Meridian (3)**
  41:10,21;46:17
**merits (1)**
  22:2
**met (1)**
  59:15
**Meyer (3)**
  10:5;23:18;24:14
**Meyers (1)**
  24:9
**might (9)**
  4:9;5:8;9:7;15:22;
  16:10;28:17;39:13,13;
  41:5
**militate (1)**
  28:19
**mind (1)**
  20:2
**mirror (1)**
  49:3
**misjoinder (2)**
  14:4;24:22
**misstate (1)**
  12:16
**misuse (1)**
  56:8
**misused (1)**
  12:9
**moment (1)**
  47:8
**money (2)**
  35:8,13
**month (1)**
  21:1
**more (22)**

Case MDL No. 2406   Document 520-1   Filed 11/18/21   Page 73 of 77

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

5:20;7:5;8:10;10:23;
11:13;16:15;24:1,1;
27:12;33:8;34:13,18;
41:8;9;49:11;52:12;
53:12;57:6;60:11;
61:12,13;62:13
**morning (4)**
  3:24;4:5,6,21
**most (3)**
  34:23;48:19;54:13
**mostly (1)**
  34:13
**motion (55)**
  5:11,13;6:9,12;7:8,
  22;8:6,12,25;9:6,7;
  10:8,11,12,19;12:15;
  13:8,8;14:1;17:8;18:9;
  20:17;22:3,13,22,23;
  23:9,25;25:1,5,10,17;
  26:10,14,14,17;27:1,2;
  30:1,4,12,13,14,15;
  31:13,14,15;32:15,20;
  33:12,14;43:10;51:14;
  63:19,20
**motions (2)**
  7:4;9:23
**motivation (3)**
  53:6,7,7
**moved (3)**
  15:19;17:15;61:25
**moves (1)**
  51:13
**moving (5)**
  4:16;52:19,22;53:14,
  18
**much (8)**
  10:23;19:13,13,24;
  30:4;41:7;63:13,24
**multidistrict (4)**
  6:5;8:1;22:9;29:23
**multi-district (1)**
  13:2
**multiple (2)**
  18:2;49:10
**must (2)**
  25:8;46:17

# N

**name (5)**
  3:15;4:21;41:18,18;
  48:4
**natural (1)**
  58:2
**nature (2)**
  33:11;57:3
**necessarily (4)**
  8:15;30:7;45:7;49:9
**necessary (1)**
  32:18
**need (10)**
  29:7;30:16;35:22;
  38:17;46:4;48:24;52:8,

12;58:4;59:21
**needs (6)**
  6:8;43:5;55:10;58:5,
  14,16
**neglected (1)**
  18:19
**negotiate (1)**
  42:22
**negotiating (1)**
  41:23
**neutral (1)**
  47:18
**new (8)**
  15:18;16:12;21:2,12,
  13,14;22:14;32:5
**Next (3)**
  3:4;63:17,18
**nexus (4)**
  28:13,14;45:22,24
**nine (2)**
  16:13;49:17
**Ninth (8)**
  7:3;11:2;23:24;
  28:10,13;34:12,13;
  35:19
**nondebtor (1)**
  55:24
**none (1)**
  12:20
**nonmoving (2)**
  17:13,13
**Northern (8)**
  10:21,21;23:18;
  25:24,25;28:9;47:13;
  56:7
**note (4)**
  35:16;46:16;47:10;
  49:13
**noted (1)**
  17:4
**notes (1)**
  23:17
**nothing's (1)**
  14:9
**notice (2)**
  38:16;61:15
**noticed (1)**
  43:19
**notion (1)**
  47:23
**Novack (1)**
  23:4
**NOVEMBER (1)**
  3:1
**novo (2)**
  30:9;31:22
**number (3)**
  19:5;27:15,17
**numerous (2)**
  15:7,8

# O

**OAKLAND (1)**
  3:1
**objection (6)**
  5:18,21;6:11;10:9;
  32:7;63:16
**obligated (1)**
  23:7
**obviously (7)**
  14:23;21:7;37:22;
  47:15;60:16;62:22;
  63:14
**occur (3)**
  12:1;13:15;26:2
**occurred (2)**
  32:17;45:6
**o'clock (1)**
  64:2
**odious (1)**
  53:20
**off (5)**
  14:8,17;24:20;28:8;
  60:24
**office (1)**
  20:8
**often (1)**
  53:21
**one (47)**
  5:1,17,20;9:22;10:4;
  14:8,17;15:4,8,9;
  17:12;23:24,25;24:20;
  25:21;26:14;29:6;31:6,
  7,9;32:5;34:14,21;
  35:21;37:13;38:25;
  39:9,14,18,20,25;40:1,
  9;41:20,20;42:8,24;
  43:1;45:21;47:8,19;
  55:22;57:14;58:21;
  62:11,11,11
**onerous (1)**
  55:7
**one's (1)**
  51:14
**ongoing (1)**
  12:25
**only (11)**
  4:16;8:22;12:13;
  29:12;36:25;38:2,4;
  51:21;53:9;56:1,23
**oOo- (1)**
  3:2
**operates (1)**
  5:20
**opinions (1)**
  20:18
**opportunity (3)**
  6:7;42:18;51:2
**opposed (4)**
  10:5;11:22;42:4;
  63:7
**opposition (3)**
  6:11,15,16
**option (1)**
  56:23

**opt-outs (5)**
  20:23,23,24;21:7,13
**order (10)**
  3:3;6:13;7:20;10:20;
  12:25;25:20;31:12;
  58:6,8;59:21
**Oregon (1)**
  15:16
**others (1)**
  24:1
**otherwise (2)**
  12:19;20:5
**out (17)**
  13:7;15:20;16:20;
  20:11;23:8,14;25:16;
  27:8,14;40:9;41:13;19;
  43:19;46:23;56:19;
  57:21;62:9
**outstanding (1)**
  32:7
**over (7)**
  8:3;12:19;20:16;
  21:1;53:1
**overlap (1)**
  18:16
**own (2)**
  48:9;56:5
**owned (1)**
  39:25

# P

**pad (1)**
  53:3
**page (1)**
  20:18
**pages (1)**
  20:20
**panel (18)**
  6:20;9:4;11:15,24;
  13:8;21:17,19,20,21;
  23:3,4;25:2,20;26:15;
  28:1,4;31:11;63:15
**papers (2)**
  9:11;39:1
**paragraph (5)**
  37:13;57:13,16,17,
  19
**parcel (1)**
  52:14
**parentheses (1)**
  57:22
**parenthetical (1)**
  58:2
**part (16)**
  14:13;33:7;36:4,5;
  37:2,5,20;39:12;41:22;
  43:5;45:7;47:3;51:23;
  52:13;58:13;62:21
**participating (1)**
  19:2
**particular (3)**
  37:24;38:19;60:25

**particularly (3)**
  15:6;53:18,19
**parties (3)**
  41:23;56:10,19
**party (5)**
  4:17;17:13,13;37:17;
  57:10
**passed (1)**
  42:7
**passing (1)**
  7:5
**past (2)**
  11:11;27:12
**path (6)**
  26:13,13,25,25;27:1;
  44:8
**Patrick (1)**
  4:25
**pattern (1)**
  33:18
**Pause (2)**
  3:9;44:17
**payments (3)**
  61:11,17,17
**pending (7)**
  5:11;6:9,23;16:12;
  22:3;38:23;41:20
**Pennsylvania (1)**
  49:12
**people (5)**
  15:5;21:19;34:5;
  42:21;50:18
**perceive (1)**
  53:7
**perhaps (4)**
  5:23;7:5;46:10;
  51:14
**permission (2)**
  54:5,7
**permitted (1)**
  37:17
**person (1)**
  5:5
**perspective (1)**
  43:13
**petition (3)**
  34:6,7;38:22
**Pharmacy (1)**
  32:5
**Physicians (1)**
  3:6
**piece (5)**
  11:4;12:12;52:20;
  55:8;56:2
**place (4)**
  8:9;29:15,21;48:19
**plaintiff (10)**
  3:11;4:19,20;17:15,
  17;30:24;32:7;39:16;
  57:10;60:16
**plaintiffs (22)**
  3:13,15;15:12,19;
  16:6;17:19;31:3;36:18;

Case MDL No. 2406    Document 520-1    Filed 11/18/21    Page 74 of 77

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

37:12;38:6;41:3;47:11,
14,19;48:8,18;49:7,18;
55:24;56:21;57:7;
60:21
**plaintiffs' (5)**
5:12;38:7,10;48:10;
49:3
**plan (66)**
14:10;28:24;29:8;
33:24,24,25;34:3,11,
21,25;35:2,3,6,6,9,23,
25,25;36:11;37:9,10,
18,21;39:5,21;40:14,
17,23;41:23;42:4,15,
22;45:5,6,7,8,22;46:18,
20,22,24,25;47:3;
48:25;51:20,20,22;
52:6,6,14,18,19,21,24;
53:10,15;56:19,20;
58:10,17;59:20;60:14,
15,18;62:5;63:7
**plans (5)**
39:2,6;41:9;46:6;
60:4
**play (2)**
15:20;40:5
**playing (1)**
35:4
**plays (1)**
21:5
**pleading (2)**
38:16;61:16
**pleadings (1)**
5:15
**please (2)**
6:1;29:2
**plenty (1)**
29:19
**PM (1)**
64:6
**point (16)**
16:18;18:14;20:1;
26:19;28:8;38:5,22;
40:22;44:6;51:18;53:9;
54:6;57:14;61:7,7,22
**pointed (1)**
16:20
**points (3)**
47:10;57:1,6
**portion (1)**
60:23
**position (2)**
31:13;49:19
**possibility (4)**
16:2;27:7;30:24;
48:7
**possible (3)**
15:22,24;16:11
**possibly (4)**
11:22,24;22:25;
23:10
**post-confirmation (3)**
29:4;35:17,20

**post-petition (1)**
33:21
**potential (2)**
17:13,16
**potentially (2)**
14:19;18:17
**practical (1)**
47:15
**practicalities (1)**
48:2
**practice (1)**
10:12
**pre- (2)**
34:5,6
**predict (1)**
16:10
**predominance (1)**
48:21
**predominate (4)**
54:20,21;55:4,5
**prejudice (3)**
17:13,16,19
**prejudiced (1)**
56:6
**prep (1)**
11:15
**prepared (1)**
43:11
**pre-petition (3)**
33:17,21;34:20
**pre-sale (1)**
62:22
**presence (1)**
47:25
**preserved (1)**
17:20
**pretend (1)**
47:21
**pretty (4)**
9:11;33:25;41:16;
42:10
**prevent (2)**
8:13,16
**prevented (1)**
20:5
**price (3)**
33:17,19;35:11
**prices (1)**
61:25
**primarily (2)**
7:17;13:24
**primary (1)**
5:5
**Prime (6)**
4:23,23,24;39:16;
56:4;61:6
**prior (1)**
28:20
**pro (1)**
4:3
**probably (6)**
9:6;10:10;26:22;
46:25;50:19;60:11

**problem (2)**
23:18;50:23
**problems (1)**
10:2
**procedural (1)**
13:15
**proceeding (3)**
5:11;14:6;55:13
**proceedings (3)**
6:24;39:19;64:6
**process (3)**
15:20;17:4;56:8
**processes (2)**
12:21;60:5
**Proctor (20)**
6:21;9:8;10:10,10;
11:17,22,23,24;14:13,
19,23;17:2,6;18:12;
22:25;23:10;26:17;
27:8,11;60:3
**promptly (1)**
63:14
**prong (1)**
10:6
**proof (2)**
59:17,17
**proper (2)**
13:11;32:18
**protect (2)**
12:9;13:4
**providers (1)**
21:9
**provides (1)**
54:9
**provisions (1)**
58:17
**public (1)**
44:1
**purchase (1)**
37:11
**purchased (1)**
46:23
**purely (1)**
53:2
**purposes (1)**
8:22
**pursuant (1)**
12:24
**pursue (8)**
38:9;39:19;40:8;
46:19;53:17;60:16,21;
62:4
**pursued (1)**
34:16
**pursuing (1)**
60:22
**pushing (2)**
28:8;29:13
**put (1)**
26:22

**Q**

**quick (1)**
42:10
**quite (1)**
23:9

**R**

**raise (5)**
16:18;51:18,19;59:3,
11
**raised (5)**
5:22,23,24;51:3,19
**raises (1)**
27:10
**raising (2)**
7:23;60:22
**rates (3)**
39:2,4,20
**reach (3)**
22:2,6,7
**reaching (3)**
8:13,16;9:10
**read (27)**
5:14,15,18,21;13:22;
19:20;20:16;23:5,16,
16;24:5,5,13,21;29:16,
17;36:1;44:13,15;
45:11,13,24;46:4,8;
50:25;52:6;57:17
**readily (1)**
9:6
**reading (3)**
35:25;36:3;45:8
**reads (1)**
52:18
**ready (1)**
53:12
**real (1)**
25:12
**realities (1)**
47:16
**realize (1)**
12:4
**really (4)**
12:12;30:23;34:17;
48:12
**reason (8)**
6:22;9:9;25:4;33:4;
43:23;52:19;56:1;62:7
**reasons (2)**
35:18;53:5
**receivable (1)**
34:18
**recent (1)**
23:14
**recognizes (2)**
37:10;48:10
**recollection (2)**
3:12;60:7
**reconsider (1)**
10:11
**reconsideration (1)**
9:7

**records (1)**
44:1
**recoverable (1)**
60:23
**reference (1)**
46:25
**refers (1)**
46:24
**regard (3)**
30:8;32:15;60:3
**regarding (5)**
5:20;10:24;30:11;
38:5;50:10
**regardless (4)**
16:21;18:4,13;25:16
**regards (1)**
19:16
**regularly (1)**
14:4
**rel (1)**
15:16
**related (9)**
21:10;28:11,21;29:8;
34:15,22;35:16;48:15;
56:12
**related- (1)**
28:15
**related-to (20)**
7:5,10;20:19;31:24;
32:7,11;34:23;35:17,
21;37:25;40:15,24;
41:11;46:19;51:18;
52:20;56:19;58:6,18;
63:6
**relates (1)**
10:25
**relevant (8)**
12:8;29:5;36:5;
43:21;48:8,10;49:15;
57:4
**remained (1)**
51:21
**remand (55)**
5:13;7:4,8;8:6,12,12,
17;9:23;10:8;11:14;
12:15;13:8;14:2;15:19;
16:24;17:8;18:9;19:24;
20:19;22:23,23;23:9,
25;25:6,11,19;26:8,10,
17;27:1,2,4;30:1,15,25;
31:4,13,15;32:24;
33:12,14;35:3;43:10;
47:6,12,15,18;48:1,15;
50:12,13,14,14;51:16;
55:6
**remanded (4)**
8:20;13:12;22:13;
59:5
**remember (4)**
9:24;16:12;42:3;
60:6
**remind (2)**
9:24;59:6

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

**removal (7)**
39:1;47:18;48:6,11;
51:13;56:8;58:13
**remove (3)**
8:13;12:22;56:23
**removed (8)**
12:24;13:13;14:16;
15:18;27:23;29:5;
55:12;56:14
**renewed (1)**
21:13
**repeated (1)**
47:20
**repeatedly (1)**
47:25
**representation (1)**
57:7
**represented (1)**
54:12
**representing (4)**
3:13,14,18;5:15
**require (9)**
19:13,25;36:15;
43:11;44:7,10,19;52:4;
63:7
**required (1)**
35:23
**requires (3)**
36:10,12,13
**rescind (1)**
10:19
**reservation (3)**
41:4,8,10
**reserves (1)**
39:6
**resolution (2)**
5:12;43:8
**resolve (24)**
6:19;7:8;9:2,2;10:9,
13,15;11:18,23,24;
13:1;14:1,7,20;18:9;
21:18;25:2;27:1;28:8;
58:5,9,12,15;63:16
**resolved (4)**
6:8;9:23;14:19;46:5
**resolves (1)**
20:14
**resolving (3)**
20:18;26:5;28:19
**resource (1)**
18:24
**resources (9)**
8:8;10:23;19:8,25;
20:3,16;25:8;26:2;
29:22
**respect (4)**
23:5;31:19;38:19;
44:25
**respectfully (3)**
12:2;23:22;60:20
**respond (1)**
51:12
**responded (1)**

6:10
**responding (1)**
51:4
**result (1)**
25:21
**results (1)**
48:8
**retained (1)**
60:15
**review (4)**
10:24;25:24,24;
31:20
**reviewed (3)**
11:21;31:17
**revolve (1)**
48:25
**Right (71)**
4:16,17;5:7;6:2,6,21;
7:21;8:4,19,24;14:25;
15:1,2;16:9,25;17:7,9,
22;20:12,15;21:15;
22:4;23:17;24:17,18;
26:18,21;27:19;28:5,
12,23;30:19,21,21;
31:2,11,19,23;32:10,
22;33:7,23;36:14;38:3;
39:8;40:18,24,25;41:2;
45:1,2,18;46:5,13,15;
50:5;51:5,10,19;54:14,
14,14;56:25;57:24;
60:9;61:1,13,21;62:10,
12;64:5
**rights (1)**
17:20
**River (6)**
10:5;13:25;17:12;
23:20;24:6,14
**role (1)**
57:11
**route (1)**
26:4
**routine (1)**
35:10
**rule (14)**
6:8,25;7:9;8:12;
16:23;25:11,16,19;
29:17;31:13,14,14;
51:25;62:16
**ruled (1)**
31:4
**ruling (6)**
6:23;8:6;11:2;17:8;
19:18;33:5
**rulings (3)**
14:6;18:18;24:25
**Ryan (4)**
4:25;54:5,5,10

— S —

**sale (12)**
36:21;37:15,19;
43:15;44:13;46:8,24,

24;57:22;58:3;60:24;
62:21
**sales (4)**
43:16;45:5;52:11;
63:1
**same (16)**
5:23,24;7:7;18:2,17,
24;19:3,5;24:15;25:8;
27:13,23;41:19;48:17;
49:22;58:1
**satisfied (1)**
50:7
**saved (3)**
19:9;30:18,20
**saw (2)**
3:13;13:23
**saying (16)**
11:22;24:3,12;32:20;
39:24;41:4;42:22;46:6;
50:23;51:9;54:2;59:14;
61:8,9;62:14,17
**scenario (4)**
19:11;24:7,7;27:18
**scope (1)**
10:23
**Sean (1)**
4:22
**Second (5)**
15:23;37:22;38:21;
48:5,25
**securities (3)**
32:9;48:3,4
**seeking (1)**
38:9
**send (3)**
27:7;35:13;59:22
**sense (3)**
21:24;30:7;33:16
**separate (3)**
28:17;35:18;47:2
**Sequoia (1)**
48:14
**series (1)**
12:1
**serious (1)**
11:12
**served (1)**
10:4
**Service (1)**
3:6
**Services (1)**
4:23
**set (1)**
35:20
**Seton (1)**
57:25
**settlement (2)**
20:22,22
**shape (2)**
35:4,14
**share (1)**
60:11
**Shepardized (1)**

24:11
**Sheridan (1)**
48:17
**Sherman (10)**
49:2,3,5,7,9,10,14;
53:20,22;54:11
**Shield (7)**
3:25;4:17;7:25;29:5;
38:23;39:3,6
**shopping (1)**
5:25
**short (4)**
15:20;17:21;19:12;
20:13
**show (1)**
32:17
**shows (1)**
40:13
**side (1)**
9:1
**sides (2)**
19:20;32:18
**significance (1)**
40:11
**similar (5)**
24:15,23,24;28:18;
55:1
**Similarly (1)**
55:6
**simple (1)**
12:2
**simpler (3)**
19:13,24;44:8
**simplest (1)**
40:22
**simply (4)**
29:22;53:20;54:23;
55:23
**single (3)**
31:3;47:10;49:4
**sister (1)**
54:12
**sit (4)**
20:8;21:19,20;60:7
**sitting (3)**
7:2;31:12;33:8
**situated (2)**
6:24;7:2
**situation (1)**
47:13
**six (1)**
49:7
**sixty-six (1)**
48:16
**sleight (1)**
59:20
**slightly (1)**
24:13
**sold (12)**
36:5;37:16;39:15,15;
44:25;51:22;52:11;
57:9;58:1;61:18,19;
63:4

**someone (2)**
26:23;52:8
**someone's (1)**
11:7
**somewhere (1)**
11:9
**sorry (5)**
17:14;18:7;28:25;
40:12;63:3
**Southern (1)**
50:25
**speak (1)**
13:14
**special (1)**
43:1
**specific (6)**
5:6;7:12;23:25;
25:22;41:8,9
**Specifically (4)**
7:9;12:8;34:10;39:3
**spend (2)**
8:8;30:12
**squared (1)**
29:17
**St (3)**
37:13;43:22;57:21
**stage (1)**
42:23
**standard (5)**
7:15;11:1;15:24;
31:19;33:25
**standards (1)**
28:19
**standing (23)**
36:8;37:25;38:2,5,
18;46:18;50:18,21;
51:9;52:1;58:4,6,8,10,
15;59:15,22;61:4,6,19;
62:3,4,20
**start (8)**
3:14,22;5:17;27:14;
48:19;50:10,12,13
**started (1)**
20:24
**state (31)**
3:15;8:5;12:19;
14:15,15;15:18;22:13;
35:12;39:25;48:22,23;
49:2,4,5,8,21;51:6;
53:14,19,21,23,23,25;
54:18,19,20;55:3,5,14;
57:3,4
**statements (1)**
42:3
**states (1)**
54:12
**states' (2)**
49:17,20
**statutes (3)**
12:24;26:7;49:2
**statutory (1)**
50:14
**stay (48)**

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

5:11;6:19,22;7:8;
8:11,11,25;10:8,15;
11:23;12:23;13:8,9;
14:6;15:20;17:15,17,
21;18:9;19:13,23;
20:13,17;22:13,23;
23:3;25:1,5;26:3,14,15,
25,25;27:1,12;29:25;
30:13,13,15;31:4,14;
32:15,20,21;44:7;
56:10;58:8
**stayed (4)**
13:25;17:25;23:8;
24:23
**stays (1)**
13:13
**steady (2)**
20:25;33:18
**steps (1)**
13:15
**Stern (1)**
11:9
**still (12)**
10:8,9;15:19;18:10;
27:3,3;29:7,7,10,25;
47:2;57:12
**stream (1)**
21:1
**structure (1)**
56:22
**stuff (1)**
29:20
**subject (5)**
18:17;26:6,6;31:15,
20
**submission (1)**
33:13
**submitted (1)**
38:24
**subset (1)**
62:1
**substantial (1)**
34:19
**substantive (2)**
7:18;48:25
**substituting (1)**
12:17
**sue (7)**
14:11,11;34:5;35:7,
13;36:1;50:18
**sufficient (3)**
32:17;35:21;38:8
**suit (1)**
29:4
**suited (1)**
9:16
**summary (3)**
9:13,15;62:14
**Sun (1)**
61:23
**Superior (9)**
5:13;44:23;46:6,12;
51:25;52:5,18;53:11;

59:23
**supplemental (1)**
35:15
**support (3)**
37:25;38:25;40:14
**supports (1)**
41:11
**Supreme (2)**
54:10,16
**Sure (15)**
16:16;19:12;21:5;
30:6,7,14;31:6;35:18;
36:19;37:17;50:5;
52:23;57:16,19;62:5
**system (3)**
40:4,7;57:11
**systems (1)**
21:9

**T**

**talking (4)**
9:21;18:25;21:10;
43:16
**talks (1)**
57:25
**technical (1)**
5:6
**telling (1)**
44:3
**tentative (1)**
31:11
**term (2)**
53:13,13
**terms (4)**
10:3;19:3;35:6,8
**test (16)**
12:17,18;13:25;
17:12;19:8;23:18,19,
20;24:6,9,14,14;28:14;
45:22,24;55:3
**tests (4)**
23:24;24:15;28:15,
17
**Thanks (1)**
63:24
**there'll (1)**
27:11
**Third (2)**
28:14;57:11
**thirty (1)**
20:19
**though (8)**
12:23;14:9;15:20,25;
32:6;42:19;45:21;47:2
**thought (1)**
24:8
**three (12)**
10:4;17:11,23;20:18;
21:22,23;28:6;36:5;
37:13,19;39:14;44:25
**three-judge (1)**
21:21

**threshold (2)**
45:23;47:19
**throughout (1)**
15:7
**TIG (1)**
48:9
**timeline (1)**
43:12
**times (3)**
19:1;20:20;49:7
**Tobias (1)**
3:24
**today (8)**
4:1,2,24;6:8,16,17;
9:10;37:4
**Today's (1)**
37:6
**took (1)**
33:24
**tool (1)**
11:16
**top (1)**
33:9
**topic (1)**
22:10
**touch (5)**
12:23;27:15;28:7;
30:15,22
**touching (1)**
27:19
**transactions (1)**
38:12
**transfer (23)**
5:12,19,22;6:13;
7:16;8:7,17;10:9,20,
22;13:2,10;17:1;22:8;
25:8,20;26:16;28:20;
31:11;32:25;33:5;
51:25;55:11
**transferee (1)**
25:9
**transferred (34)**
6:2,5;7:19;8:21;
17:3;18:12;26:1;27:20;
28:17;29:6;31:16,25;
32:6;36:7,16;37:20;
38:9;39:12,25;42:13;
44:19,21,23;45:12;
47:1;51:20,24;52:7,16;
55:2;60:25;61:3;62:22,
25
**transferring (1)**
9:5
**transfers (1)**
39:10
**tried (1)**
49:15
**true (1)**
15:23
**Trust (35)**
3:5;4:23;14:10,15;
33:23;34:1,4,5,5,10,21;
35:7,11;36:1,8,16;

37:11,24;38:9;39:11;
40:1,16,23;41:5;42:14,
25;45:19;52:8,16;56:3;
61:4,4,24;62:2,3
**trustee (6)**
35:7;39:18;40:6;
46:18;53:15,16
**Trustees (1)**
48:3
**trust's (1)**
46:23
**try (2)**
12:14;44:20
**trying (8)**
12:10;20:3,11;27:13;
37:15,18;46:21;57:8
**turn (2)**
33:12;46:24
**turns (3)**
43:10;58:10,16
**twenty (1)**
20:19
**twice (1)**
18:17
**two (9)**
20:18;21:3;23:23;
34:14,22;35:18;37:16;
48:5;62:21
**twofold (1)**
18:1
**typical (1)**
53:13
**Typically (1)**
7:17

**U**

**ultimately (2)**
27:20;28:20
**under (19)**
11:2;19:10;23:24;
26:7;27:18;33:13,25;
34:3,7;35:8;37:17;
46:11;49:17;52:24;
53:15;55:8;60:23;62:6,
16
**underlying (5)**
7:18;22:2;33:20;
38:11;48:12
**undermine (1)**
35:5
**undetermined (1)**
26:19
**unique (4)**
11:3;25:6;29:7;
48:23
**unrelated (2)**
57:11;59:22
**unsettled (1)**
57:3
**unsurprisingly (1)**
39:5
**up (7)**

3:23;11:2;15:21;
16:13;24:11;29:17;
32:19
**upon (1)**
56:18
**use (6)**
7:16;11:16;14:9;
27:14;28:14,15
**used (1)**
34:2
**useful (2)**
11:15,16
**using (2)**
28:17;59:20
**usual (1)**
47:13
**usually (1)**
20:18

**V**

**vacate (12)**
6:9,12;7:22;9:7;
10:19;25:17,20;26:15,
16;27:9;63:19,20
**vague (1)**
60:7
**validly (1)**
62:1
**various (4)**
14:11,11,12;34:3
**venue (1)**
13:11
**verify (1)**
57:15
**Verity (3)**
28:22;36:5;38:24
**Verity's (4)**
10:25;28:11;39:1;
53:2
**version (1)**
49:1
**versus (2)**
28:8;45:24
**VHS (6)**
3:5;4:22;37:14;
45:18;57:8,19
**Village (1)**
48:14
**violates (2)**
49:8,9
**violating (1)**
7:25

**W**

**wait (2)**
18:21,21
**walk (1)**
17:11
**wants (2)**
27:9;59:3
**waste (1)**

Case MDL No. 2406   Document 520-1   Filed 11/18/21   Page 77 of 77

VHS Liquidating Trust, et al. v.
California Physicians Service, et al.

Adv. No. 21-04034
November 12, 2021

29:22

**way (11)**
  11:16;12:9,13;17:6;
  28:7,20;35:4,14;52:21;
  56:22;58:14
**week (1)**
  21:3
**weekend (3)**
  20:4,5;30:19
**weeks (2)**
  17:23;20:17
**Weissman (1)**
  48:3
**Welcome (2)**
  5:10;63:25
**weren't (3)**
  30:25;51:23,23
**what's (11)**
  10:14;17:24;18:8;
  21:15,19,22;25:14;
  30:13;33:1;53:12,13
**whatsoever (2)**
  56:1;57:12
**where's (1)**
  9:3
**Whereupon (1)**
  64:6
**whole (1)**
  58:8
**wholesale (1)**
  41:4
**Who's (4)**
  4:20;5:1,14;15:8
**who've (1)**
  17:15
**Willshire (1)**
  35:19
**wishes (1)**
  11:19
**within (1)**
  12:25
**word (1)**
  14:9
**words (1)**
  58:7
**work (2)**
  11:2;29:11
**works (1)**
  44:3
**WorldCom (2)**
  32:8;48:4
**worry (1)**
  36:23
**worst (1)**
  20:13
**write (2)**
  19:21,21
**writing (1)**
  19:25
**wrong (2)**
  33:16;60:8
**wrongly (1)**
  46:10

**Y**

**year (2)**
  42:4,8
**years (3)**
  11:10;16:13;42:6
**yesterday (1)**
  21:3

**Z**

**Zach (1)**
  4:1

**1**

**11 (8)**
  14:10;34:8,9,10;
  43:2,17;52:12;64:2
**114 (5)**
  37:13;57:13,16,17,
  19
**12 (1)**
  3:1
**12:43 (1)**
  64:6

**2**

**2012 (3)**
  14:25;15:1;16:15
**2014 (1)**
  14:25
**2016 (1)**
  47:13
**2021 (2)**
  3:1;23:16
**26A (1)**
  62:16
**2nd (1)**
  63:15

**4**

**4360 (1)**
  43:22
**4471 (1)**
  43:22
**4511 (1)**
  43:22
**4634 (1)**
  43:22