# EXHIBIT A

Entered on Docket
November 22, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: November 22, 2021

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VHS LIQUIDATING TRUST, a liquidating trust for Verity Health System of California, Inc. A California corporation; et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE CROSS OF CALIFORNIA, et al.<br><br>Defendants. | Case No. 21-4034<br><br><br><br>**ORDER DENYING MOTION TO STAY AND GRANTING MOTION TO REMAND** |

    On November 12, 2021, this court conducted a hearing on a) Defendant Blue Cross Blue Shield Association's motion to stay this adversary proceeding pending the Judicial Panel on Multidistrict Litigation's resolution of plaintiffs VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc. and Prime Healthcare Management, Inc.'s objection to the conditional transfer of this adversary proceeding to the Northern District of Alabama, and b) Plaintiffs' motion to remand the adversary proceeding to Alameda County Superior Court.  All appearances were noted on the record.  For the reasons stated below, the motion to stay is denied and the motion to remand is granted.

    The pertinent facts are not in dispute.  In July 2021, Plaintiffs, which, as stated above, include VHS Liquidating Trust, an entity created by a confirmed Chapter 11 plan in the Central District of California case of *In re Verity Health Systems of California, Inc., et. al.*, sued numerous

BlueShield/Blue Cross related entities in Alameda County Superior Court on allegations of price fixing and antitrust violations in the health insurance field (the "Alameda County litigation").  After Plaintiffs filed an amended complaint, the Defendants removed the Alameda County litigation to this court on September 22, 2021, alleging, as their jurisdictional basis, that the Alameda County litigation satisfied this court's "related to" jurisdiction under 28 U.S.C. § 1334(b).  Defendants also contend that the Alameda County litigation bears striking similarities to the claims asserted in multidistrict litigation - *In re Blue Cross Blue Shield Antitrust litigation*, MDL No. 2406 - which is pending in the United States District Court for the Northern District of Alabama (the "MDL Court"). The Defendants notified the Judicial Panel on Multidistrict Litigation (the "MDL Panel") that this adversary proceeding may be a "Tag-Along Action," and as a result, the MDL Panel issued a Conditional Transfer Order on September 29, 2021. The Plaintiffs have objected to the transfer, and the MDL Panel will consider their objection in early December, 2021.  In the interim, Defendant Blue Cross Blue Shield Association ("BlueCross/Blue Shield") filed a motion to stay this adversary proceeding pending the outcome of the transfer objection, which motion was filed on September 30, 2021.  Plaintiffs thereafter filed their motion to remand.

Defendants contend that they are entitled to litigate in federal court under this court's "related to" jurisdiction. Their argument fully relies on VHS Liquidating Trust's presence in the litigation. Plaintiff VHS Liquidating Trust (the "Trust") was created under the confirmed Chapter 11 plan of reorganization in the Verity Health Systems' Chapter 11 bankruptcies.  Verity Health Systems operated several hospitals and medical clinics throughout the State of California, and it filed a Chapter 11 bankruptcy in 2018 in the United States Bankruptcy Court for the Central District of California.[1]  During its Chapter 11 (which was consolidated with several other Chapter 11 cases), Verity Health Systems sold several of its hospital centers (including the Seton and St. Francis Medical Centers).  The Seton and St. Francis Medical Center asset purchase agreements extensively documented the terms of sale, and they provided, among other things, that the Verity Health bankruptcy estate would retain certain assets of these medical centers (the purchase agreements

---

[1] The Plaintiffs allege in their complaint that the low Blue Shield/Blue Cross reimbursement rates were one of the reasons for Verity Health's bankruptcy filing.

frequently described these retained assets as "Excluded Assets").  For example, the Seton Medical Centers' APA "Excluded Assets" provision defines the assets retained by the Verity bankruptcy estate as:

> "except as set forth in Section 1.7(w) and 1.8(g), all claims, counterclaims and causes of action of such Seller or such Seller's bankruptcy estate . . . including, without limitation, rights of recovery or set-off of every kind and character against third parties, causes of action arising out of any claims and causes of action under chapter 5 of the Bankruptcy Code and any related claims, counterclaims and causes of action under applicable non-bankruptcy law, and any rights to challenge liens asserted against property of such Seller's bankruptcy estate, including, but not limited to, liens attaching to the Purchase Price paid to such seller, and the proceeds from any of the foregoing . . . ."

See § 1.8(i) of the Seton APA[2].  It therefore appears that the Verity Health bankruptcy estate retained the antitrust/price fixing claims that accrued before the Seton Medical Centers' sale.

Verity Health Systems filed its modified second amended Chapter 11 plan on August 12, 2020 (the "Plan"), which was confirmed on August 14, 2020.  The Plan called for the Chapter 11 debtors' liquidation, and it created the Trust for that purpose.  The Trust's primary function is to liquidate and distribute the "Trust Assets," a phrase which, when several Plan definitions are consulted, includes the type of anti-trust/price fixing claims asserted in this adversary proceeding.  *See*, *e.g.*, Plan §§ 1.30, 1.97, 1.115, 6.2 and 13.9.  The claims at issue in this adversary proceeding constitute one of many classes of litigation claims that were transferred to the Trust for prosecution (*see* Plan § 13.9), and neither the Plan nor its disclosure statement further defined, assessed or valued them.  The Plan further provides in § 6.5(g) that "[o]n and after the Effective Date, the Liquidating Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or Governmental Unit and/or provide any notices under any applicable laws . . . to implement the terms of the Plan."  While the Plan was confirmed more than a year ago, the Chapter 11 case remains open.

The Alameda County litigation claims are premised on the anti-trust provisions (and related laws) of several states.  The Trust describes itself and the claims it is pursuing in paragraphs 110 through 114 of the complaint:

> "110.   Plaintiff VHS Liquidating Trust ("Verify") is the bankruptcy liquidator

---

[2] The Seton asset purchase agreement is generally governed by California law. *See* Seton APA §12.3.

3

for Verity Health System of California, Inc.

111. Verity Health System of California, Inc. was a not-for-profit healthcare services organization based in California. It was the sole owner of six medical centers serving the San Francisco, Los Angeles, and San Jose metropolitan areas: Seton Medical Center in Daly City, Seton Coast in Moss Beach, St. Vincent Medical Center in Los Angeles, O'Connor Hospital in San Jose, St, Louise Regional Hospital in Gilroy and St. Francis Medical Center in Lynwood. These hospitals had 1,650 patient beds, 6 active emergency rooms, a trauma center, and a host of medical specialities including tertiary and quaternary care.

112. Verity Health System of California, Inc. filed for bankruptcy on August 31, 2018.

113. The Bankruptcy Court on August 14, 2020 ordered the creation [of] Verity (VHS Liquidating Trust) and subsequently vested in it and transferred to it the Verity Health System of California, Inc. claims asserted in this lawsuit.

114. Thus, Verity controls the claims of St. Louise, St. Francis (up until the date of its sale to Prime), St. Vincent, Seton, Seton Coastside, and O'Connor hospitals, their affiliated medical foundations and affiliates, and Verity Health System of California, Inc."

As described in more detail below, the Defendants assert that the Trust may have overstated the scope of its claims. The court now turns to the two motions before it.

**MOTION TO STAY**

While the pertinent facts are not in dispute, the parties wholeheartedly disagree a) regarding which legal standard this court should apply to determine the motion to stay, b) which motion (stay or remand) should be decided first, and c) whether this court should even reach the motion to remand. In truth, these motions simply debate which court - the MDL Court or this bankruptcy court - should determine the motion to remand. Plaintiffs do not strongly dispute that their causes of action resemble those pending in the MDL Court, and their objection to the MDL Panel's conditional transfer order simply restates their contention that there is no subject matter jurisdiction here. Moreover, their Alameda County litigation complaint alleges that some of the MDL Court's substantive rulings demonstrate the strength of their anti-trust claims.[3] Simply, the critical issue is

---

[3] The Rules of the MDL Panel do not favor either side. MDL Rule 2.1(d) states that "[t]he pendency of a motion . . . [or] conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court."

4

whether, under these circumstances, this court should defer to the MDL process, stay the litigation, and not decide what is usually a gatekeeper question: subject matter jurisdiction.

Generally speaking,

> "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. While a district judge 'should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation,' '[c]ourts frequently grant stays pending a decision by the MDL panel regarding whether to transfer a case.' " [citations omitted.]

*Johnson v. Sanofi, S.A.*, 2017 WL 132631, *2 (E.D.Cal. April 11, 2017).

Plaintiffs contend that this court should apply the so called "*Meyers*" test to determine the order in which to resolve the stay and remand motions. This test, arising out of *Meyers v. Bayer AG*, 143 F.Supp. 2d 1044 (E.D.Wisc. 2001), requires a court to initially scrutinize the remand motion to determine its degree of difficulty, ascertain whether the MDL court has considered or is likely to consider an identical or similar subject matter jurisdiction question, and if both elements are met, address the motion to stay first. Blue Cross/Blue Shield posits another test. It argues that since the Ninth Circuit has not adopted the *Meyers* test, this court should apply the "*Rivers*" test, which is based on more generic, albeit well-established Ninth Circuit case law which instructs a court to consider whether a stay will promote judicial economy and avoid prejudice and hardship for the parties. *See Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D.Cal. 1997); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The *Rivers* test assesses "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation." *Rivers*, *supra*, at 1360. Regardless of the test used, the party seeking the stay bears the burden of establishing that a stay is appropriate. *Ohio Envtl. Council v. U.S.Dist. Court*, 565 F.2d 393, 396 (9th Cir. 1977). Numerous District Courts within the Ninth Circuit have addressed this conflict[4].

> "Despite their slightly different formulations, both tests focus on the same essential inquiry: how similar is the jurisdictional issue in the instant case to cases that are or will be in the MDL? If the remand issue is highly similar to cases in the MDL, then judicial economy counsels in favor of a stay so that, if transferred, the MDL court can

---

[4] The court respectfully refers the parties to their memoranda for evidence of this conflict.

5

resolve all the related issues together.  However, if the remand issue is unique to the case at hand, no efficiencies are achieved through transfer - the same amount of judicial resources must be expended, whether by the transferee court or the MDL court." *City of Corona v. 3M Company*, 2021 WL 3829700, *2 (C.D.Cal. 2021).

Regardless of which test is applied, the motion to stay is denied. While Blue Shield/Blue Cross is only seeking a short reprieve, a stay under the *Rivers* test will not conserve judicial resources or eliminate prejudice or inequity (particularly because none exist).  First, there is no evidence indicating that the MDL Court has or is likely to address the specifics of this subject matter jurisdiction question.  Since the parties' alleged jurisdictional dispute arises from the terms of a carefully crafted Chapter 11 plan, extensively negotiated asset purchase agreements, and a lengthy superior court complaint, it is hard to imagine how the MDL Court would ever address this exact (or similar) fact pattern.  For the same reasons, neither Plaintiffs nor Defendants have demonstrated that they will be prejudiced or harmed by this court denying the stay and determining the motion to remand.  Simply, some court must resolve the question of subject matter jurisdiction, and this court is in as good a position to decide the remand motion as the United States District Court for the Northern District of Alabama.[5]

Application of the *Meyers* test leads to the same result. Notwithstanding the results of a preliminary scrutiny of the subject matter jurisdiction question, there is no evidence that the MDL Court has addressed or will address an identical or similar jurisdiction scenario.  Accordingly, deferring to the MDL process will not avoid possibly inconsistent or contradictory subject matter jurisdiction analyses.

**MOTION TO REMAND**

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Nishimoto v. Federman-Bachrach*

---

[5] This court recognizes that its remand order could be reviewed by the MDL Court if the MDL Panel overrules the Plaintiffs' objection to its conditional transfer order.  Under such a scenario, two courts indeed might consider the same motion. See *In re Aldelphia*, 2005 WL 1026559 (S.D.N.Y. May 2, 2005).  This court does not believe, however, that this prospect should deter it or any other bankruptcy court from carefully considering the merits of competing motions to stay and remand and determining how to proceed.

*& Assoc.*, 903 F.3d 709, 712 n.3 (9th Cir. 1990). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Blue Cross/Blue Shield argues that this court has "related-to" jurisdiction under 28 U.S.C. § 1334(b). The Defendants' Notice of Removal supports this contention by stating, among other things, that the Plan "explicitly reserves to the Liquidating Trust claims 'arising from claims against health Plans' such as the Blue Plans," and that any damages that the Trust may recover on these claims "would likely affect the administration of the estates and the amount of property available for distribution." Notice of Removal, ¶¶ 30 - 32. The Notice of Removal also alleges (notwithstanding its earlier statement that the Plan explicitly assigned the claims to the Trust) that the Trust's standing to assert some portion of its anti-trust/price fixing claims may be in question and thus require this court to interpret the Plan:

> "Specifically, Plaintiffs seek damages for hospitals that were allegedly harmed by Defendants' conduct starting in 2008 and continuing until today, and seek to recover assets. Compl. ¶ 627. The Liquidating Trust, however, did not receive a wholesale transfer of every hospital's assets; the Plan's definition of 'Liquidating Trust Assets' carves out, inter alia, 'Operating Assets' as well as 'Hospital Purchased Assets,' Plan § 1.97.[6] An interpretation of the Plan may therefore be necessary in this Action."
> Notice of Removal, § 33.

Defendants' arguments, while artfully drafted, are insufficient. The Ninth Circuit's general test for determining whether a bankruptcy court has post-confirmation, "related-to" jurisdiction is well established. Such related-to jurisdiction requires "a 'close nexus' to the bankruptcy plan or proceeding sufficient to uphold bankruptcy jurisdiction over the matter." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005). Matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Ibid*. Application of the close nexus test "requires particularized consideration of the

---

[6] The Plan defines the phrase "Hospital Purchased Assets" as "the assets purchased by Prime and AHMC pursuant to the [St. Francis] Asset Purchase Agreement and the Seton Asset Purchase Agreement, respectively. For the avoidance of doubt, the Hospital Purchased Assets relate only to the Hospitals subject to the [St. Francis] and Seton Sale. The Plan defines "Operating Assets" to "mean, collectively, (a) the Hospitals; (b) the Hospital Purchased Assets; and (c) the Post-Effective Date Debtors' right to Quality Assurance Payments." Defendants have not stated how these definitions bring into substantial question the Trustee's "standing."

7

**UNITED STATES BANKRUPTCY COURT**
**For The Northern District Of California**

facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013).  The *Wilshire* court cautioned that the test "can only be properly applied by looking at the whole picture." *Ibid*.

While the Ninth Circuit has not provided explicit guidance regarding which factors should be considered nor "the relative importance to ascribe to each factor," *In re Consol. Meridian Funds*, 511 B.R. 140, 147 (W.D.Wash. 2014), certain patterns can be discerned.  First, matters that truly involve the interpretation or enforcement of a significant plan provision create a close nexus. The case summaries provided by the District of Hawaii in *Batiste v. Sun Kon Fin. I, LLC*, 2016 U.S. Dist. LEXIS 23697 (D. Hawaii February 26, 2016) are instructive.

> "[I]n *Pegasus*, the court found a close nexus where the complaint included allegations that the appellants in the case had 1) breached both the bankruptcy plan and a settlement agreement approved by the bankruptcy court prior to confirmation of the plan; 2) breached "the covenant of good faith and fair dealing with respect to these agreements"; and 3) "committed fraud in the inducement at the time it entered into" the agreements. 394 F.3d at 1194.  The court determined that "[r]esolution of these claims will likely require interpretation of the [settlement] Agreement and the Plan," id., contrasting the case with Resorts Int'l, in which the Third Circuit found the bankruptcy court lacked jurisdiction where the claim at issue did not require that a court "interpret or construe the Plan or the incorporated Litigation Trust Agreement," id. (quoting *Resorts Int'l*, 372 F.3d at 170).  The court acknowledged that "the majority" of the claims in the complaint involved only "post-confirmation conduct," but did not view these claims as barring the bankruptcy court's "related-to" jurisdiction. Id.
> Similarly, in *Wilshire*, the Ninth Circuit determined there was a close nexus where "the ultimate merits question depend[ed] in part on the interpretation of the confirmed Plan." 729 F.3d at 1289. Although the court acknowledged that the "Plan itself [was] ambiguous" as to a key issue raised in the relevant litigation and "ma[de] no mention of state tax consequences" also at issue, the court held that resolution of these issues would "require[] a close look at the economics of the transaction [at issue] as detailed in the Plan and Confirmation Order." Id.  More recently, in *In re Valley Health System*, 584 Fed. App'x. 477, 479 (9th Cir. 2014), the Ninth Circuit cited affirmatively to *Wilshire* in determining that "related-to" jurisdiction existed post-confirmation where resolution of the mandamus petition at issue required interpretation of the bankruptcy plan and the bankruptcy court's confirmation order.

*Id*. at **218-20.

Second, the litigation of a significant claim by a liquidating trustee that was expressly part of the "calculus of the parties when negotiating the Plan" is a factor that may be considered in determining jurisdiction. In *Calvert v. Berg (In re Consol. Meridian Funds)*, 511 B.R. 140 (Dist.W.Wash. 2014), the District Court reversed the bankruptcy court's finding that there was no

"related-to" jurisdiction over a liquidating trustee's professional negligence and fraud claims against the Chapter 11 debtor's controlling officer and pre-petition accountants/auditors. The confirmed Chapter 11 plan in that case created a liquidating trust and assigned to it, among other things, any claims that the participating investors in the failed investment funds had against the fund's auditors/accountants, and the funds controlling officer. The trustee commenced his action in bankruptcy court, and the defendants successfully moved to dismiss for lack of "related-to" jurisdiction. The District Court reversed, holding that several factors favored a finding of a "close nexus" between the adversary proceeding and the Chapter 11 plan. The District Court noted that the potential claims against the auditor "were specifically mentioned" in the Plan and assigned to the trustee for the purpose of benefitting the investors. It also found that the parties "expressly considered those claims and their value when negotiating the Plan and the trustee has sought to implement and execute the terms of the Plan by pursuing those claims." The District Court also determined that there were potential statute of limitations and standing issues regarding the liquidating trustee's right to assert the claims which would require the presiding court "to discern" the meaning and effect of the Plan. Under these circumstances, the District Court found that there was "related-to" jurisdiction.

Finally, many courts have held that there is "no-related" jurisdiction when its only justification is the litigation of a claim that, if successful, may lead to a greater plan distribution to creditors. *See*, *e.g.*, *In re Heller Ehrman LLP*, 461 B.R. 606, 610 (Bankr. N.D.Cal. 2011); *ML Servicing Co. v. Greenberg Traurig, LLP*, 2011 U.S. Dist. LEXIS 85066 (D.Az., August 2, 2011).

When reduced to its essence, this adversary proceeding involves nothing more than the liquidating trustee pursuing one of many classes of litigation claims that the Plan assigned to the Trust to pursue on behalf of creditors. Section 13.9 of the Plan listed thirteen categories of litigation claims that were assigned to the Trust, and they are all generically described. In contrast to the scenario presented in *In re Meridian Funds*, the Plan and accompanying disclosure statement did not value the claims at issue, and there is no evidence that the transfer of these claims to the Trust was a significant point of contention or negotiation between the interested parties in the *Verity Health System* bankruptcy. Moreover, if the proposed Plan is a liquidating one, where else can these claims

go? Blue Shield/Blue Cross acknowledges the explicit language of Plan § 13.9, but contends that the scope of the assigned health care plan claims may require a court to interpret the Plan (in particular, whether these claims are possibly "Operating Assets" or "Hospital Purchase Assets" that thus not included in the Claims for Relief assigned to the Trust). Absent some cogent analysis regarding how these other asset categories create a bonafide dispute that requires this court to "interpret" the Plan, Blue Shield/Blue Cross's argument leaves this court wanting. The court should not find "related-to jurisdiction" on a speculative assessment regarding how state law litigation may unwind. Accordingly, Plaintiffs' motion to remand is granted.

**\* \* \* END OF ORDER \* \* \***

**COURT SERVICE LIST**

Recipients are ECF participants