**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: BLUE CROSS AND BLUE SHIELD            MDL No.: 2406
ANTITRUST LITIGATION

_____/

## PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-37)

Plaintiffs, John Hoover, Sharon Zebley, Erick Gibbs, Darin Griffin, Edward Inglesby, Matt Motta, Frank Melchiore, Donald Cosgrove, Bob Farohideh, Tiana Kelley, Iman Jones, Terra Scott Dannison, Alvin McCray, Michael Leach, Douglas Howie, Sandra Styles Horvath, Valery Rivera, Catalina Dinovo, Kevan Watkins, Winford House, Peter Zitoli, Dave Barth, Danny Beltran, Sue-Ling Rosario, Eva Clark, Barbara Dicks, Mary Floyd, David Sexton, Jeannine Noll, Tiffany Duke, Justin Duke, Brendan Price, James Moore, and Sara Corcoran (collectively, the "Plaintiffs"), by and through counsel, pursuant to 28 U.S.C. § 1407 and Fed. R. M.D.L. P. 7.1(f), move to vacate the conditional transfer order (CTO-37) (ECF No. 515) relating to the Plaintiffs' action *Hoover, et al., v. Blue Cross and Blue Shield Ass'n*, No. 1:21-cv-23448 (Fla. S.D. 2021).

1.      On December 12, 2012, at the request of the plaintiffs, the Panel transferred two civil actions alleging antitrust violations against the Blue Cross Blue Shield Association (the "BCBSA") and the BCBSA's than 38 member plans (the "Blue Plans"). *See In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1375 (J.P.M.L. 2012). The litigation was transferred to the Northern District of Alabama for coordinated or consolidated pretrial proceedings.

2.      At that time, the Panel found "that these actions involve common questions of fact, and that centralization of all actions … will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. "Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and

conserve the resources of the parties, their counsel, and the judiciary." *Id.*

3.      The Panel has since transferred additional related actions to the Northern District of Alabama. The consolidated proceedings became the class action known as *In re Blue Cross and Blue Shield Antitrust Litig.*, No. 2:13-cv-20000 (N.D. Ala. 2013) (the "Class Action").

4.      In 2018, the Northern District of Alabama issued a ruling on summary judgment concluding "that Defendants' aggregation of a market allocation scheme together with certain other output restrictions is due to be analyzed under the *per se* standard of review." *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1279 (N.D. Ala. 2018). That ruling was affirmed on interlocutory appeal by the Eleventh Circuit. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 18-90020-E, 2018 WL 7152887, 2018 U.S. App. LEXIS 36905 (11th Cir. Dec. 12, 2018).

5.      In 2020, the BCBSA and the Blue Plans reached a settlement in the Class Action. The settlement was approved by the Northern District of Alabama in November 2020. *In re Blue Cross and Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, 2020 U.S. Dist. LEXIS 248401 (N.D. Ala. Nov. 30, 2020).

6.      The Plaintiffs are individuals who purchased, enrolled, and were, or in many cases still are, insured under health insurance policies issued by or included in employee benefit plans administered by certain Blue Plans.

7.      However, the Plaintiffs do not approve of the settlement reached in the Class Action because it fails to adequately compensate their damages. It also fails to require any meaningful change by the BCBSA and the Blue Plans in light of the ruling their antitrust violations would be analyzed under the *per se* standard of review.

8.      The Plaintiffs subsequently received notification of their right to opt out of the Class Action settlement and of their right to purse their individual claims. The Plaintiffs timely opted out of the settlement reached in the Class Action in order to pursue those rights.

9.     On September 27, 2021, the Plaintiffs filed suit in the Southern District of Florida alleging damages and seeking injunctive relief for antitrust violations against the BCBSA and ten (10) of the now thirty-five (35) remaining Blue Plans (collectively, the "Defendants").[1] A current copy of the docket is attached as Exhibit 1.

10.    On November 4, 2021, the BCBSA filed a notice of potential tag-along action, identifying the Plaintiffs' action as such and seeking transfer to the Northern District of Alabama. On November 8, 2021, a conditional transfer order (CTO-37) was entered. ECF No. 515. The Plaintiffs timely filed notice of opposition. ECF No. 518.

11.    The Defendants assert that the Plaintiffs "copy, nearly verbatim, significant portions" of the Class Action complaint. *See* ECF No. 514 at 2. However, the latest version of the Class Action complaint was 142 pages whereas the Plaintiffs' complaint is 31 pages. *See* ECF No. 514-3.

12.    The Class Action complaint raised claims against the BCBSA and all of the Blue Plans whereas the Plaintiffs' complaint is against the BCBSA and 10 of the Blue Plans. The Plaintiffs also seek additional damages not alleged in the Class Action. Importantly, the Plaintiffs do *not* assert a class action; they only assert their individual claims.

13.    Although the Class Action was settled *over* a year ago, the Defendants nevertheless assert that transfer would promote efficient resolution of common allegations, prevent inconsistent rulings, eliminate duplicative discovery, and conserve the resources of the courts and the parties. Conversely, the Plaintiffs have no desire to have their action forcibly

---

[1] The named defendants are Blue Cross and Blue Shield Ass'n, Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Alabama, HMO Missouri, Inc. d/b/a Anthem Blue Cross Blue Shield of Missouri, Louisiana Health Service & Indemnity Co. d/b/a Blue Cross and Blue Shield of Louisiana, Blue Cross and Blue Shield of Massachusetts, Inc., Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield, Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey, Blue Cross and Blue Shield of North Carolina, Health Care Service Corp. d/b/a Blue Cross and Blue Shield of Illinois, and Highmark, Inc. d/b/a BlueShield of Northeastern New York.

transferred and consolidated with the Class Action, which they affirmatively *opted out* of.

## MEMORANDUM OF LAW

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made … upon … determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a). The Panel also "*may* consolidate and transfer with or without the consent of the parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton Act [15 USCS § 15c]." *Id.* at (h) (emphasis added). The Panel typically transfers actions to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary." *In re BP Sec.*, 734 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010).

Here, the Plaintiffs' claims undoubtedly involve "one or more common questions of fact" with the Class Action. Of course, even identical cases may not be suitable for transfer if it will not "advance the just and efficient conduct of the actions." However, while transfer of the various antitrust actions against the Defendants may have advanced the just and efficient conduct of those actions and served the convenience of parties *in the past*, this does *not* appear to still be the case in 2021, at least as applied to the Plaintiffs' action. For the reasons that follow, the conditional transfer order should be vacated and the Plaintiffs should be permitted to proceed in the forum of their choice.

## I. There is no Danger of Inconsistent Rulings, Transfer Would Not Promote the Just and Efficient Conduct of the Plaintiffs' Action, and Transfer Could Disrupt the Orderly Progress of the Class Action

Here, the Defendants assert there is a "significant risk of conflicting rulings from different courts on the purported existence of a nationwide collaboration or conspiracy …." ECF

No. 514 at 10. However, as applied to the Plaintiffs' action there is *no* danger of inconsistent rulings—let alone a *significant* risk. In fact, far from it, the Plaintiffs explicitly rely upon the rulings made in the Class Action. Specifically, the Plaintiffs reply on the Court's determination "that Defendants' aggregation of a market allocation scheme together with certain other output restrictions is due to be analyzed under the *per se* standard of review." *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d at 1279. That ruling, which was affirmed on appeal by the Eleventh Circuit, is *res judicata* for purposes of the Plaintiffs' action. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 7152887, 2018 U.S. App. LEXIS 36905. It is the Plaintiffs position that this decision in the Class Action would support *the entry of a consistent ruling* in their case by the Southern District of Florida determining their antitrust claims against the Defendants are due to be analyzed under the *per se* standard of review.

The Northern District of Alabama may very well have "unique expertise" in antitrust matters. However, there is no indication that the Southern District of Florida does not have similar expertise. Moreover, it appears that pre-trial proceedings have been *completed* in the Class Action. *See In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (denying transfer where, among other reasons, "the actions do not involve overlapping classes, and the actions are at somewhat different procedural stages."). It is not clear how transfer would prevent inconsistent pretrial rulings where the pretrial proceedings in the Class Action have been concluded and the Plaintiffs seek the consistent application of those rulings in their action.

In fact, the Defendants reached a settlement in the Class Action in 2020 substantially resolving all pending issues in that action. The settlement was approved by the Court in November 2020. It is not clear how transfer would promote the just and efficient conduct of the Plaintiffs' action where the Class Action has itself been settled. In this respect, including the

Plaintiffs' action with the Class Action may in fact disrupt the orderly progress which is being made in that matter and would result in no significant benefits to the litigation as a whole. *See In re Magic Marker Sec. Litig.*, 470 F. Supp. 862, 865 (J.P.M.L. 1979) (denying transfer where "[i]nclusion of the two actions … in coordinated or consolidated pretrial proceedings would … disrupt the orderly progress which is being made in those actions and would result in no significant benefits to the litigation as a whole.").

For these reasons, the Panel has consistently held that § 1407 transfer of later-filed actions is neither necessary nor appropriate when the action or actions in the transferee court have already reached settlement and/or been largely resolved. *See, e.g., In re Tesco PLC Sec. Litig.*, 158 F. Supp. 3d 1368, 1368–69 (J.P.M.L. 2016) (denying transfer where "the New York action appears to be nearing its conclusion, as a proposed class settlement was given preliminary approval …."); *In re Ocwen Loan Serv., LLC*, 988 F. Supp. 2d 1367, 1368 (J.P.M.L. 2013) (denying transfer where "[t]he Northern District of Georgia recently granted preliminary approval of a proposed nationwide class settlement which will be given final consideration in a few months. …. Centralization at this time could delay the proceedings on the proposed settlement and result in additional expense for the litigants …."); *In re Bldg. Prods. of Can. Corp. Organic Shingles Prods. Liab. Litig.*, 856 F. Supp. 2d 1345, 1346 (J.P.M.L. 2012) (denying transfer where "[p]laintiffs in a related action … recently filed a motion for preliminary approval of class action settlement, which … would cover all claims in the actions before the Panel. We have declined to centralize in similar situations where centralization could delay a proposed settlement …."); *In re Ins. Indus. Discriminatory Sales Practices Litig.*, 460 F. Supp. 2d 1376, 1377 (J.P.M.L. 2006) (denying transfer where "the Texas action has been pending for almost five years and is the subject of a pending class action settlement."); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (denying transfer where "many

of the actions are procedurally so far advanced that discovery is completed or nearly completed, and a substantial number of class certification, summary judgment, dismissal, remand, and other motions have been fully briefed and decided or are pending in various courts. We also note that a nationwide class action settlement agreement has been reached … in the actions before the Panel. That settlement … would finally resolve the vast majority of the litigation sought to be transferred.").

Consequently, there is *no* potential or danger of inconsistent pretrial rulings that would warrant transfer of this matter, there are *no* unresolved pretrial issues in the Class Action that would warrant transfer of this matter, and transferring the Plaintiff's action to the Class Action that has been settled would *not* promote the just and efficient conduct of either the Plaintiffs' action or the Class Action. Moreover, transferring the Plaintiffs' action *may* cause potential disruptions to the orderly progress being made in the Class Action proceedings. To the extent that it can be argued otherwise, as applied to the Plaintiffs' action, the benefits of § 1407 centralization are outweighed by the Plaintiffs' objections. Therefore, the conditional transfer order must be vacated.

## II. There is no Danger of Duplicative Discovery, Transfer would not Meaningfully Conserve the Resources of the Courts or the Parties, and Transfer Would Inconvenience the Parties and Witnesses

Here, the Defendants assert that if the Plaintiffs' action is *not* transferred they "will likely have to prepare written discovery responses, produce documents, and provide deposition testimony about factual issues that overlap with those relevant to the MDL." ECF No. 514 at 11. "Duplicating those efforts in a separate litigation would be a waste of judicial and party resources, and would risk exposing Defendants to duplicative or inconsistent discovery obligations." *Id.* However, as stated it appears pretrial proceedings have been completed in the Class Action. The Defendants assertions regarding discovery seem disingenuous since—

significantly—the relevant discovery has already been *completed* in the Class Action.

In this regard, the Panel has denied transfer where "suitable alternatives … are available in order to minimize the possibility of duplicative discovery. For example, the parties may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions; or the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions." *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813-14 (J.P.M.L. 1980). "Also, consultation and cooperation among the four concerned district courts … coupled with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings." *Id.*

For these reasons, the Panel has also consistently held that transfer of later-filed actions is neither necessary nor appropriate when discovery relating to common issues has already been completed in the transferee court and/or can be made available to the parties in actions without recourse to § 1407. *See, e.g., In re Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012) ("[W]e find that centralization is not warranted here, as some of the actions have been pending in state or federal court for several years, and several are procedurally so far advanced that discovery is completed or nearly completed."); *In re Telecomm. Providers'*, 199 F. Supp. 2d at 1378 (transfer denied where litigation was mature, discovery nearly completed in some constituent actions in the docket, and alternatives to transfer existed to minimize the possibility of duplicative discovery); *In re Indian Motorcycle Bankr. & Receivership Litig.*, 206 F. Supp. 2d 1365, 1366 (J.P.M.L. 2002) (same); *In re Eli Lilly & Co. "Oraflex" Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (transfer denied because possibility of duplicative discovery was "eliminated" by availability of extensive discovery in areas of common factual inquiry from already concluded and well-advanced related actions); *In re A. H. Robins Co.*, 505 F. Supp. 221, 223 (J.P.M.L. 1981) (CTO vacated where discovery of

common issues has been completed in the transferee district and could be made available to the parties in the actions before the Panel without recourse to § 1407); *In re Richardson-Merrell, Inc.*, 582 F. Supp. 890, 891 (J.P.M.L. 1984) (same); *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980) (transfer denied where "much of the relevant discovery has already occurred in the Illinois action."); *In re McDonald's Franchise Antitrust Litig.*, 472 F. Supp. 111, 114–15 (J.P.M.L. 1979) (transfer denied where discovery on common questions was largely completed in some cases and available for use in less advanced cases); *In re Air Crash Disaster Near Upperville*, 430 F. Supp 1295, 1297 (J.P.M.L. 1977) (CTO vacated where all actions in transferee court were already tried or settled, and all parties in the new actions before the Panel have access to all discovery obtained in the transferee district); *In re W. Elec. Co. Semiconductor Patent Litig.*, 436 F. Supp. 404, 406 (J.P.M.L. 1977) (transfer denied where discovery on common issues in transferee court was "virtually completed"); *In re Dow Chem. Co. "Polystyrene Foam" Prods. Liab. Litig.*, 429 F. Supp. 1035, 1036 (J.P.M.L. 1977) (need for transfer "obviated" because discovery on common questions of fact had been completed and parties had agreed that such discovery would be applicable in all actions).

Here, the Plaintiffs believe that the discovery completed in the Class Action should be made applicable to their action and they would agree or stipulate as such. The Plaintiffs affirmatively represent their willingness to coordinate their efforts to avoid overlapping proceedings. *See Berry v. Webloyalty.com, Inc.*, 768 F. Supp. 2d 1365, 1366 (J.P.M.L. 2011) (finding alternatives to transfer where "plaintiffs in these two actions represented that they were prepared to coordinate their efforts to avoid overlapping proceedings."). Moreover, formal cooperation among the attorneys involved is entirely practicable. *See In re Fresh Dairy Prods. Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (J.P.M.L. 2012) ("Given the limited number of actions, we believe that informal cooperation among the involved attorneys is quite practicable."). The

main issue in the Plaintiffs' action should be "one of damages, which is unique to each action." *In re Air Crash Disaster*, 430 F. Supp. at 1297. In that regard, the Plaintiffs may seek limited discovery *related solely* to their individual circumstances (*i.e.*, the dates they were insured by a Blue Plan, the amounts they paid a Blue Plan, *etc.*) however, limited discovery in this respect would not be "duplicative" of anything done in the Class Action and would not "overlap with those relevant to the MDL."

While it is safe to assume that transferring the Plaintiffs' action would conserve the Defendants' resources, there is *no* indication that doing so would conserve the Plaintiffs' resources. In that regard, the Defendants, which are large corporations generating billions of dollars of yearly profit, already have an asymmetry of resources over the Plaintiffs, who are individuals. Further, transfer would inconvenience the Plaintiffs and their witnesses since 27 of the 34 Plaintiffs reside in Florida and only one of them resides in Alabama. *See In re Galveston, Tex. Oil Well Platform Disaster*, 322 F. Supp. 1405, 1407 (J.P.M.L. 1971) (emphasis added) ("Although it is undoubtedly true the transfer of these cases under Section 1407 would serve the convenience of the four defendants, this factor does not here outweigh the inconvenience which transfer … *would impose on the Louisiana Plaintiffs*.").

Additionally, the Defendants cannot meet its heavier burden of demonstrating the need for centralization since it appears that the Class Action has been largely resolved and only a minimal number of actions remain as of the date of this motion. *See In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010) ("[W]here only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization."). Consequently, transfer of this matter would *not* eliminate duplicative discovery, and in any event, suitable alternatives to transfer are available in order to minimize the possibility of duplicative discovery. Transfer of this matter would *not* meaningfully

conserve the resources of the parties, their counsel, or the judiciary. Moreover, transfer *would* inconvenience the Plaintiffs and their witnesses by requiring them to litigate their claims in Alabama. To the extent that it can be argued otherwise, as applied to the Plaintiffs' action, the benefits of § 1407 centralization are outweighed by the Plaintiffs' objections. Therefore, the conditional transfer order must be vacated.

**WHEREFORE**, the Plaintiffs respectfully request that the Panel enter an order vacating the conditional transfer order (CTO-37) (ECF No. 515), remanding the Plaintiffs' action back to the Southern District of Florida for further proceedings, and granting any other further legal or equitable relief deemed just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on November 28, 2021 on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted By:

Gulisano Law, PLLC
5645 Coral Ridge Drive, Suite 207
Coral Springs, FL 33076
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573