**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| In re: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | ) ) ) | MDL No. 2406 |
|---|---|---|

**RESPONSE TO PLAINTIFFS' MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-37)**

Plaintiffs are 34 individual health insurance subscribers who filed a copycat action that mimics the allegations from dozens of subscriber actions coordinated in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 2:13-cv-20000-RDP (N.D. Ala.) (the "MDL").[1] As in those coordinated cases, these Plaintiffs allege that the Blue Cross Blue Shield Association ("BCBSA") and its member Blue Cross and Blue Shield Plans ("Blue Plans," and, together with BCBSA, the "Blues") conspired to inflate subscriber premiums. The complaint copies entire sections from the consolidated subscriber complaint in the MDL—to which Plaintiffs' only response is to point to trivial differences such as that their complaint is 80% *shorter* than the operative consolidated complaints in the MDL. Plaintiffs concede that their claims "undoubtedly" involve common factual issues with the MDL and proceed under the same federal legal theories that make up the core of the MDL. In fact, Plaintiffs view their case as so similar to the MDL that they (mistakenly) claim that a ruling in the MDL is "res judicata" in this action.

Against the weight of these overwhelming common issues, Plaintiffs' main argument is that there is no need for a transfer of their copycat claims because a class action

[1] Citations to docket entries for "MDL No. 2406 (N.D. Ala.)" refer to documents filed in Case No. 2:13-cv-20000-RDP (N.D. Ala.). Citations to docket entries for "MDL No. 2406 (J.P.M.L.)" refer to documents filed in Case MDL No. 2406 (J.P.M.L.).

"settlement was approved by the [MDL] Court in November 2020" and "pretrial proceedings have been completed" in the MDL. Plaintiffs are incorrect on both counts. The MDL Court has not yet ruled on final approval of the settlement, and pretrial proceedings in the MDL are nowhere near complete, especially for recently filed opt-out actions like this one. Indeed, the fact that Plaintiffs bring opt-out claims is all the more reason to transfer this action: "The Panel has long recognized that transfer of opt-out actions to the MDL addressing the proposed class settlement is desirable because of the efficiencies from the transferee court's management of overlapping actions, integration of existing discovery with discovery in the new actions, and the court's expertise in the issues." Transfer Order at 2 n.4, *In Re: Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* ("*Payment Card*"), MDL No. 1720 (D.E. 49) (J.P.M.L. Oct. 16, 2013).

The Panel should transfer this action to MDL No. 2406.

## BACKGROUND

### I. THE BCBS MDL

BCBSA owns the rights to the federal Blue Cross and Blue Shield trademarks. BCBSA does not itself sell healthcare coverage, but licenses the trademarks to individual Blue Cross and Blue Shield Plans, which then offer Blue-branded health insurance products and services to subscribers. Since February 2012, dozens of suits brought by both healthcare providers ("provider plaintiffs") and subscribers ("subscriber plaintiffs") have been filed across the country, raising federal antitrust challenges to BCBSA's licensing agreements and related rules and procedures. In 2012, this Panel centralized those cases in the Northern District of Alabama, where they are now consolidated for pretrial proceedings before the Honorable R. David Proctor. MDL No. 2406 (N.D. Ala.), D.E. 1; *In re Blue Cross Blue Shield Antitrust Litig.*,

908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012) (centralizing cases alleging that BCBSA and the Blue Plans violated the antitrust laws by, among other things, allocating territories and establishing output restrictions). Since the MDL's creation, dozens of individual and putative class action subscriber and provider cases have been transferred to the MDL.

In October 2020, the Blues and the subscriber plaintiffs entered into a proposed class action settlement, which the MDL Court preliminarily approved the following month. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020). In the year since that preliminary approval, numerous opt outs have filed lawsuits both in the MDL Court and around the country. *See, e.g.*, Case No. 2:21-cv-01209-AMM (N.D. Ala.); Case No. 1:21-cv-09101 (S.D.N.Y.); Case No. 2:21-cv-00877-RDP (N.D. Ala.). While a final approval hearing was held in October 2021, the MDL Court has not yet finally approved the settlement. *See* MDL No. 2406 (N.D. Ala.), Minute Entries for 10/20/2021 and 10/21/2021. Separately, litigation in the MDL between the Blues and the provider plaintiffs continues.

## II. THE HOOVER COPYCAT ACTION

Plaintiffs are 34 individuals who allege that they were members of the subscriber settlement class in the MDL who timely filed notices of exclusion in July 2021. MDL No. 2406 (J.P.M.L.), D.E. 514-3 ("Compl." or "Complaint") ¶ 3. In September 2021, Plaintiffs filed their own Complaint in the Southern District of Florida asserting the same federal causes of action as in the MDL. Like the Consolidated Subscriber Complaint in the MDL, MDL No. 2406 (J.P.M.L.), D.E. 514-4 (the "Subscriber Complaint"), the Complaint alleges that the Blue Plans, through their relationship with BCBSA, conspired to restrain competition for subscribers by allocating markets, establishing output restrictions, and using their market power to raise

premium prices and foreclose entry. The Complaint names as Defendants BCBSA and ten Blue Plans, all of which are defendants in the MDL. Compl. ¶¶ 8–18.

As explained in Defendants' Notice of Potential Tag-Along Action, the Complaint is structured to mimic the Subscriber Complaint in many respects. MDL No. 2406 (J.P.M.L.), D.E. 514 ("Notice") at 3–9. Plaintiffs copy, nearly verbatim, significant portions of their Complaint from the Subscriber Complaint. *Compare, e.g.*, Compl. ¶ 62 ("Historically the Blue Plans were fierce competitors. During the early decades of their existence, there were no restrictions on the ability of Blue Plans to compete with or offer coverage in an area already covered by another Blue Plan."), *with* Subscriber Compl. ¶¶ 345–46 ("Historically, the Blue Cross plans and the Blue Shield plans were fierce competitors. During the early decades of their existence, there were no restrictions on the ability of a Blue Cross plan to compete with or offer coverage in an area already covered by a Blue Shield Plan."); *see also* Notice at 3–9 (chart comparing allegations).

All Plaintiffs in this action were members of the putative damages class in the subscriber settlement.[2] The Complaint alleges that Plaintiffs are or have been "enrolled in [Defendants'] health insurance polic[ies]," Compl. ¶¶ 19–51, and the subscriber settlement defines the damages class as encompassing, among others, "all Individual Members . . . [and] Insured Groups . . . that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product . . . sold, underwritten, insured, administered, or issued by

[2] The subscriber settlement also includes a non-opt-out injunctive relief class pursuant to Federal Rule of Civil Procedure 23(b)(2), of which Plaintiffs are still members. *See* MDL 2406 (N.D. Ala.), D.E. 2610-2 ¶ 1(pp).

any Settling Individual Blue Plan during the Settlement Class Period," MDL 2406 (N.D. Ala.), D.E. 2610-2 ¶ 1(v).

## III. THE CONDITIONAL TRANSFER ORDER

On November 4, 2021, given the indisputable overlap between this action and the MDL, BCBSA filed a notice of potential tag-along action. MDL No. 2406 (J.P.M.L.), D.E. 514. The Panel issued a Conditional Transfer Order four days later. MDL No. 2406 (J.P.M.L.), D.E. 515. The Order recognized that this case appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Alabama." *Id.*

## LEGAL STANDARD

The Panel may transfer an action "which involves common questions of fact with . . . actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407." Rules of Proc. of the United States Judicial Panel on Multidistrict Litig., Rule 1.1(h). Transfer under Section 1407 is appropriate if (1) the actions involve "one or more common questions of fact," (2) the transfer will be convenient for the parties and witnesses, and (3) the transfer "promote[s] just and efficient conduct." 28 U.S.C. § 1407(a).

Overlapping antitrust cases are particularly well suited for transfer under Section 1407. *See, e.g.*, *In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971); *In re Lipitor Antitrust Litig.*, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012); *In re Polyurethane Foam Antitrust Litig.*, 2011 WL 3182411, at *1 (J.P.M.L. May 19, 2011); *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017); *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005). Moreover, opt-out actions alleging substantially similar claims to those settled or being settled in

ongoing MDL proceedings are also appropriate for transfer. *See In re Wilson*, 451 F.3d 161, 165 (3d Cir. 2006) (noting the transfer of opt-out cases to MDL after class action settlement); Transfer Order, *Payment Card*, MDL No. 1720 (D.E. 49).

**ARGUMENT**

This action satisfies each factor the Panel considers to determine whether transfer is appropriate, especially since Plaintiffs agree that their case and the MDL share common questions of fact. Plaintiffs' primary argument against transfer is that the subscriber class action settlement has been "approved" by the MDL Court. Even if that were true—and it is not, since the Court has not yet ruled on final approval—the approval of a settlement is not a reason to deny transfer, particularly where (as here) there is ongoing litigation in the MDL, as well as a number of other nearly identical opt-out actions. Plaintiffs' remaining arguments—ranging from meaningless technical differences between their Complaint and the Subscriber Complaint, to promises of informal cooperation on discovery issues—are equally unavailing.

## I. EACH TRANSFER FACTOR IS CONCEDED OR EASILY SATISFIED

Transfer under Section 1407 is appropriate if (1) the actions involve "one or more common questions of fact," (2) the transfer will be convenient for the parties and witnesses, and (3) the transfer "promote[s] just and efficient conduct." 28 U.S.C. § 1407(a). This action easily satisfies all three elements.

### A. Plaintiffs Concede the Existence of Common Questions of Fact.

Plaintiffs admit that their "claims undoubtedly involve one or more common questions of fact with the [MDL]." MDL No. 2406 (J.P.M.L.), D.E. 525 ("Mot. to Vacate") at 4. Plaintiffs have designed their Complaint as a copycat action that involves numerous identical factual allegations to the cases centralized in the MDL and possesses near "complete identity of

common factual issues." *See In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.

Section 1407 does not require complete identity or even a majority of common factual and legal issues, as long as there is some factual overlap. *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012). This action easily clears that hurdle, as Plaintiffs allege a conspiracy in near identical terms. *Compare* Compl. ¶ 66 ("Blue Plans . . . are independent health insurance companies that license the use of the Blue Brand from the BCBSA, and that, but for any agreements to the contrary, could and would compete with one another."), *with In re Blue Cross Blue Shield Antitrust Litig*., 908 F. Supp. 2d at 1375 ("Plaintiffs contend that the . . . Blue Plans are independent health insurance companies that, but for any agreement to the contrary, could and would compete with one another."). And Plaintiffs proceed under the same legal theories and same alleged statutory violations that make up the core of the MDL. *See* Notice at 3–9 (chart comparing allegations).

Plaintiffs attempt to distinguish this action from the MDL by arguing that "the latest version of the Class Action complaint was 142 pages whereas the Plaintiffs' complaint is 31 pages," Mot. to Vacate at 3; but Plaintiffs' comparatively short complaint does not allow them to evade transfer when their suit clearly shares a "common factual core" with the conspiracy as alleged in the MDL, *see In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). This action presents an even stronger case for transfer than other cases the JPML has previously transferred to the MDL, as Plaintiffs here neither assert state law claims nor make factually unique allegations. *See, e.g.*, Transfer Order at 1, *Lifewatch Services, Inc. v. Highmark, Inc.*, MDL No. 2406 (D.E. 192) (J.P.M.L. Apr. 1, 2013) (transferring action to the

MDL although the case asserted distinct state and common law causes of action because the complaint generally "touches on . . . the propriety of BCBSA's license agreements and the anti-competitive effects of certain provisions in those agreements"); Transfer Order at 1, *Chicoine v. Wellmark, Inc./Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co*., MDL No. 2406 (D.E. 393) (J.P.M.L. Oct. 4, 2017) (holding that the "focus . . . does appear to be somewhat different from the MDL allegations, but plaintiffs still allege sufficient factual overlap with the cases in the MDL to justify transfer").

Plaintiffs' other arguments about the nature of their claims fare no better. Plaintiffs say that the Subscriber Complaint "raised claims against the BCBSA and all of the Blue Plans whereas the Plaintiffs' complaint is against the BCBSA and 10 of the Blue Plans." Mot. to Vacate at 3. That is irrelevant: the JPML has repeatedly transferred actions where fewer than all the Blue Plans were named as defendants. *E.g.*, Transfer Order at 1, *Galactic Funk Touring Inc. v. Blue Cross & Blue Shield of Ariz. Inc.*, MDL No. 2406 (D.E. 254) (J.P.M.L. Apr. 6, 2015); Transfer Order at 1, *Galactic Funk Touring Inc. v. Triple S Salud*, MDL No. 2406 (D.E. 259) (J.P.M.L. Apr. 27, 2015); *see also In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376 ("All of the Blue Plans are alleged to be co-conspirators, even though some Blue Plans are named as defendants only in actions in their respective state."). Plaintiffs also argue that they "do *not* assert a class action; they only assert their individual claims." Mot. to Vacate at 3. This likewise has no bearing on transfer because "[i]t is not unusual for individual claims to proceed in an MDL with class claims." *In re: Lipitor Antitrust Litig.*, 2012 WL 4069565, at *1 (J.P.M.L. Aug. 3, 2012). Given the clear common questions of fact between this action and the MDL, this factor favors transfer.

**B. Transfer Will Promote Convenience.**

Plaintiffs recognize "that transferring [this] action would conserve the Defendants' resources." Mot. to Vacate at 10. Here, Plaintiffs have named as defendants BCBSA and 10 Blue Plans, all of which are already defendants in the MDL and have been litigating there for almost a decade. Absent transfer, BCBSA (located in Illinois) and the Blue Plans (located in states across the country) would be forced to litigate the same issues and engage in duplicative discovery in the MDL and in the Southern District of Florida. Several Defendants would also be forced to retain additional counsel admitted in Florida, whereas Plaintiffs' counsel will be admitted *pro hac vice* in the MDL without the need to engage co-counsel. MDL 2406 (N.D. Ala.), D.E. 6 at 2. Transfer therefore promotes convenience in coordinated pretrial proceedings.

Plaintiffs instead say that transfer would "inconvenience the Plaintiffs and their witnesses since 27 of the 34 Plaintiffs reside in Florida and only one of them resides in Alabama." Mot. to Vacate at 10. But "[t]his is a worm's eye view of Section 1407." *In re Libr. Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968). Regardless of where Plaintiffs reside, "the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *Id.* Plaintiffs' preference to litigate in Florida—the "home" state of some (though not all) of the Plaintiffs—does not trump the benefits of centralization to all other affected parties and the courts. *See In re Wells Fargo Wage & Hour Emp. Pracs. Litig. (No. III)*, 804 F. Supp. 2d 1382, 1384 (J.P.M.L. 2011) (even when "less than convenient for some parties," transfer is appropriate where the benefits outweigh the inconvenience for any one party).

Any inconvenience to Plaintiffs is also likely exaggerated. Centralized proceedings do not require the parties to attend all proceedings in the transferee court, and discovery of the parties can often take place in the district where the parties reside. *See In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506–07 (J.P.M.L. 1976). And Plaintiffs are not losing their ultimate choice of forum for trial since transfer to the MDL is only temporary. *See In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006).

Transfer would unquestionably be more convenient for the parties *collectively* and therefore outweighs any unspecified inconvenience to certain Plaintiffs. This factor therefore favors transfer.

**C. Transfer Will Promote Just and Efficient Conduct.**

Transfer will not only promote just and efficient conduct given the significant number of related proceedings currently pending before the MDL, but it is necessary to avoid inconsistent rulings and duplicative discovery.

Litigation in the MDL is still very active. Contrary to Plaintiffs' assertions, Mot. to Vacate at 4–5, the MDL Court has not yet finally approved the class action settlement, *see, e.g.*, MDL 2406 (N.D. Ala.), D.E. 2867, 2870. On top of that, Plaintiffs' case represents only one of several opt-out lawsuits filed around the country, many of which are currently before the MDL Court or pending transfer to the MDL. *See, e.g.*, Case No. 2:21-cv-01209-AMM (N.D. Ala.); Case No. 1:21-cv-09101 (S.D.N.Y.); Case No. 2:21-cv-00877-RDP (N.D. Ala.). And given that more than 2,000 putative class members excluded themselves from the damages class in the settlement, it would not be surprising for additional opt-out cases to be filed in the future. MDL 2406 (N.D. Ala.), D.E. 2812-6. Finally, litigation in the provider track of the MDL continues, with the parties having recently submitted motions for summary judgment, and with

motions for class certification and additional summary judgment motions still ahead. *See* MDL No. 2406 (N.D. Ala.), D.E. 2727–30, 2748–50, 2753, 2758.

In light of these ongoing proceedings, it cannot seriously be disputed that consolidation of this Action into the MDL will promote just and efficient outcomes.

*First*, given the overlap between this action and the MDL, transfer is necessary to avoid a significant risk of inconsistent rulings on the existence of the alleged nationwide conspiracy, as well as the validity of BCBSA's licensing program. Avoiding potential conflicts of this nature is one of the primary reasons the Panel typically transfers actions. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 588 F. Supp 2d 1376, 1377 (J.P.M.L. 2008) (noting the Panel's purpose is to determine whether "centralized pretrial proceedings will create important efficiencies, avoid inconsistent rulings, and result in the overall fairer adjudication of the litigation for the benefit of all involved parties"); *see also* Mot. to Vacate at 4. Apparently confused about what has happened in the MDL, Plaintiffs argue that the MDL Court's grant of partial summary judgment somehow operates as "*res judicata*" in this case, thereby alleviating any risk of inconsistent rulings. Mot. to Vacate at 5. Plaintiffs are simply wrong: "the ruling on [a] motion for partial summary judgment is . . . not immutable and has no res judicata effect." *United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980)[3]; *see also PFM Air, Inc. v. Dr. Ing. H.c. F. Porsche A.G.*, 2011 WL 13176223, at *1 n.3 (M.D. Fla. Aug. 2, 2011) (same). Nor was the order "affirmed on appeal by the Eleventh Circuit." Mot. to Vacate at 2, 5. To the contrary, the Eleventh Circuit merely declined to consider the

[3] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

discretionary interlocutory appeal in a one-sentence, unpublished order. *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 7152887, at *1 (11th Cir. Dec. 12, 2018). There is no "res judicata" and the issues are still very much disputed in litigation.

*Second*, transfer is necessary to avoid duplicative and inefficient discovery. *See, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376 ("Centralization will eliminate duplicative discovery[.]"); *In re BP Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d 1380, 1382 (J.P.M.L. Oct. 13, 2010) (transferring cases to an existing MDL to "eliminate duplicative discovery"); *In re Lipitor Antitrust Litig.*, 2012 WL 4069565, at *1 ("[I]t is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core."). Plaintiffs say that discovery can proceed efficiently without transfer because Defendants can simply reproduce the entirety of the MDL discovery record—but that only illustrates why proceeding with discovery outside of the MDL would be so impractical. The discovery record in the MDL includes "multiple terabytes of structured health insurance data," "over 15 million pages of documents," "over 120 depositions of [the Blues] and third-party witnesses," and "hundreds of thousands of privilege log entries." *In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *2. Much of this is likely to be irrelevant to Plaintiffs' action, because the discovery record includes material relevant only to the provider track, and to types of subscribers unlike Plaintiffs. The parties will therefore need to negotiate over the subset of discovery already in the MDL that is appropriate for this case. The MDL court is the most efficient and appropriate court to consider those substantial pretrial issues.

Having overseen discovery in this case over the course of nearly a decade, the MDL Court is best situated to address what discovery may be appropriate for opt-out actions,

including Plaintiffs' case. *See id.* (noting that the Court has already resolved "over 150 discovery motions, leading to 91 discovery orders"). Similar issues are likely to arise in the numerous existing opt-out cases filed to date, and it would be most efficient to have those issues resolved in a coordinated fashion before a single court. *See Payment Card*, 2013 WL 8123000, at *1 (J.P.M.L. Dec. 18, 2013) ("MDL No. 1720 encompasses opt-out actions similar to the action filed by AEO, which will benefit from the common pretrial proceedings."); *In re Pa. Life Co. Sec. Litig.*, 436 F. Supp. 406, 408 (J.P.M.L. 1977) (holding that transfer of opt-out action was "necessary in order to prevent duplicative discovery, eliminate any possibility of conflicting pretrial rulings and conserve time and effort for the parties, the witnesses and the judiciary. The transferee judge, because of his familiarity with the issue involved in this litigation, is surely in the best position to integrate discovery proceedings in [the opt-out action] with proceedings in the previously transferred actions." (citation omitted)); *In re Qwest Commc'ns Int'l, Inc., Sec. & "ERISA" Litig. (No. II)*, 444 F. Supp. 2d 1343, 1345 (J.P.M.L. 2006) (transferring opt-out actions that "will require common discovery and will still need and benefit from Section 1407 centralization" after settlement).

Plaintiffs cite cases in which the Panel declined to centralize actions that were far along in discovery before any MDL had been created. Mot. to Vacate at 8–9.[4] But those cases

[4] *See In re Teamster Car Hauler Prods. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012) (denying initial centralization due in part to the procedurally advanced stage of the actions to be transferred); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (similar); *In re Indian Motorcycle Bankr. & Receivership Litig.*, 206 F. Supp. 2d 1365, 1365–66 (J.P.M.L. 2002) (similar); *In re Chiropractic Antitrust Litig.*, 483 F. Supp 811, 813 (J.P.M.L. 1980) (similar); *In re Dow Chem. Co. "Polystyrene Foam" Prods. Liab. Litig.*, 429 F. Supp. 1035, 1036 (J.P.M.L. 1977) (similar); *In re McDonald's Franchise Antitrust Litig.*, 472 F. Supp. 111, 114 (J.P.M.L. 1979) (similar); *In re Eli Lily & Co. Oraflex Prods. Liab. Litig.*, 578 F. Supp 422, 423 & n.1 (J.P.M.L. 1984) (denying initial centralization of 30 actions in part due to the procedural variation among them).

only underscore why transfer is appropriate here, because the key factor in those cases was the procedurally advanced stage of each of the cases *sought to be coordinated and transferred*, not that discovery in an existing MDL was already far along.[5] In contrast, this action is less than three months old and no discovery has occurred.

Plaintiffs also suggest that they are willing to "coordinate their [discovery] efforts to avoid overlapping proceedings." Mot. to Vacate at 9. But the likelihood of discovery disputes in this and other opt-out cases is one of the very reasons why a transfer is appropriate. As the Panel has recognized recently, even if there is a possibility of "informal coordination and cooperation among the parties," transfer remains appropriate. *See In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017) ("Given the complex nature of this litigation and the diversity of interests involved, we are not convinced that informal coordination and cooperation among the parties and courts will be sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations."); *Payment Card*, 2016 WL 6819020, at *2 (J.P.M.L. Oct. 3, 2016) (similar); *In re Qwest*, 444 F. Supp. 2d at 1345 (similar).

[5] The additional cases Plaintiffs cite are equally inapposite. *See In re Richardson-Merrell, Inc.*, 588 F. Supp. 1448, 1449 (J.P.M.L. 1984) (reversing decision to vacate the CTO and transferring case); *In re A. H. Robins Co., Inc.*, 505 F. Supp. 221, 221–22 (J.P.M.L. 1981) (vacating CTO where vast majority of underlying cases had been settled or remanded on an individual basis); *In re W. Elec. Co., Inc. Semiconductor Patent Litig.*, 436 F. Supp 404, 406 (J.P.M.L. 1977) (vacating CTO because the "issue of patent validity"—"the most significant common aspect of discovery in multidistrict patent litigation" had already been decided by the transferee court); *In re Air Crash Disaster Near Upperville, Va. on Dec. 1, 1974*, 430 F. Supp. 1295, 1297 (J.P.M.L. 1977) (vacating CTO because the only remaining issue was damages).

## II. THE PROPOSED CLASS ACTION SETTLEMENT IS NOT A BASIS TO DENY TRANSFER

Notwithstanding that the Section 1407 factors clearly favor transfer, Plaintiffs argue that transfer is unwarranted because the MDL Court has "approved" a class action settlement and concluded all pretrial proceedings. Mot. to Vacate at 5–6. This argument is wrong on the law and wrong on the facts.

A proposed settlement in an existing MDL is not a basis to deny transfer of a related tag-along action. To the contrary, it is common practice for the Panel to transfer opt-out filings into an existing MDL. *See, e.g.*, *Payment Card*, 2013 WL 8123000, at *1 (transferring an opt-out action into the MDL and remarking that "[t]he transferee court's . . . order granting final approval to the class settlement does not warrant a different outcome"); Transfer Order at 2–3, *Payment Card*, MDL No. 1720 (D.E. 49); *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L. 1978) ("Notwithstanding the proposed settlement proceedings in the [MDL], transfer of [the opt-out action] is necessary to eliminate the potential for duplicative discovery, inconsistent pretrial rulings and waste of judicial resources."); *see also In re Wilson*, 451 F.3d at 165 (noting the transfer of opt-out cases to MDL after class action settlement); *cf. In re Qwest*, 444 F. Supp. 2d at 1345 (transferring cases, including opt-outs, to "the judge before whom the class action proceedings have been pending for over four years" because he was "already familiar with the many of the factual issues posed by these actions" and would "have the flexibility to structure any pretrial proceedings in the newly filed [] opt-out actions with any pretrial proceedings previously conducted in the District of Colorado, so that any common matters may be addressed efficiently while still ensuring that any matters unique to the class action settlement or the newly filed [] actions may proceed on their own separate tracks.").

Ignoring this authority, Plaintiffs instead rely on cases in which the Panel declined to create a *new* MDL when a settlement would resolve all (or nearly all) the actions the movant sought to consolidate.[6] Mot. to Vacate at 6. That is nothing like the situation here—*i.e.*, the transfer of a virtually identical opt-out action to an existing, longstanding MDL to which individual actions have already been transferred. After all, the statutory factors weigh differently depending on whether the Panel is considering "inclusion of a potential tag-along action in an ongoing multidistrict litigation" or transfer "in the first instance." *See In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365–66 (J.P.M.L. 2003). This makes good sense: where an MDL court has already developed years of experience with a case, transfer is much more likely to lead to efficient results.

Plaintiffs also are mistaken about the facts of this MDL. As explained above, the MDL Court has not yet granted final approval to the subscriber settlement. And even if the MDL Court had already granted final approval, transfer would still be appropriate given the other ongoing litigation in the MDL and the various other opt-out actions nearly identical to this

---

[6] *See, e.g.*, *In re Tesco PLC Sec. Litig.*, 158 F. Supp 3d 1368, 1368–69 (J.P.M.L. 2016) (denying centralization of "just two actions" where one "appear[ed] to be nearing its conclusion"); *In re Ocwen Loan Serv'g, LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 988 F. Supp. 2d 1367, 1368 (J.P.M.L. 2013) (denying centralization of five actions where one had reached preliminary approval of a class action settlement and three others had been stayed pending settlement approval); *In re Bldg. Prods. of Can. Corp. Organic Shingles Prods. Liab. Litig.*, 856 F. Supp. 2d 1345, 1346 (J.P.M.L. 2012) (denying centralization of four related cases where a separate class action settlement was pending that "would cover all claims in the actions before the Panel"); *In re Ins. Indus. Discrim. Sales Pracs. Litig.*, 460 F. Supp. 2d 1376, 1377 (J.P.M.L. 2006) (denying centralization of two actions given the pendency of class action settlement in one *and* the lack of "sufficiently complex" common questions of fact and law); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d at 1378 ("[A] nationwide class action settlement agreement has been reached with each of the five telecommunications companies named as defendants in the actions before the Panel. That settlement, if ultimately approved, would finally resolve the vast majority of the litigation sought to be transferred.").

one, as well as the common questions of fact, convenience, and justice and efficiency transfer will promote.

## CONCLUSION

For all these reasons, the Panel should transfer this action to MDL No. 2406.

Dated: December 20, 2021

Respectfully submitted,

/s/ *Karin A. DeMasi*
Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Counsel for Defendants Blue Cross and Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200

555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Counsel for Defendants HMO Missouri, Inc., d/b/a Anthem Blue Cross and Blue Shield of Missouri; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey*

hwitt@kirkland.com
jzeiger@kirkland.com

*Counsel for Defendant Health Care Service Corporation, an Illinois Mutual Legal Reserve Company*

Kathleen Taylor Sooy
Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com

Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
590 Madison Ave., 20th Floor
New York, NY 10022
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

*Counsel for Defendant Highmark Western and Northeastern New York Inc. (incorrectly sued as Highmark, Inc. d/b/a BlueShield of Northeastern New York)*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Karin A. DeMasi*
Karin A. DeMasi