**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: BLUE CROSS AND BLUE SHIELD   MDL No.: 2406
ANTITRUST LITIGATION

_____/

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-37)**

Plaintiffs, John Hoover, *et al.*, (collectively, the "Plaintiffs"), by and through counsel,

pursuant to 28 U.S.C. § 1407 and Fed. R. M.D.L. P. 7.1(f), replies in support of their motion to

vacate the conditional transfer order (CTO-37) (ECF No. 525) and to the response in opposition

(ECF No. 546) filed by the Blue Cross & Blue Shield Association (the "BCBSA") and ten (10) of

the BCBSA's member plans (the "Blue Plans") (collectively, the "Defendants").

  1.  There are two separate tracks in the class action alleging antitrust allegations

against the BCBSA and the Blue Plans. The first track involves the claims by subscribers of

insurance policies issued by the Blue Plans and the second track involves the claims brought by

medical providers who were part of the Blue Plans' network.

  2.  In October 2020, the BCBSA, Blue Plans, and the subscriber plaintiffs entered into

a proposed class action settlement, which was preliminarily approved in November 2020. *In re

Blue Cross and Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, 2020 U.S. Dist. LEXIS 248401 (N.D.

Ala. Nov. 30, 2020). A final approval hearing on the settlement with the subscriber plaintiffs

was held in October 2021. Thus an order approving the class action settlement for the subscriber

plaintiffs would appear imminent.

  3.  Logically, if a case is settled in its entirety, there would be no further discovery or

pretrial proceedings. As the Defendants point out, "litigation in the provider track of the MDL

continues, with the parties having recently submitted motions for summary judgment, and with

motions for class certification and additional summary judgment motions still ahead." Defs.' Response at 10–11. If the Plaintiffs were medical providers, the Defendants' arguments in support of transfer would be significantly stronger.

4.      However, the Plaintiffs are individuals who purchased, enrolled, and were, or in many cases still are, insured under health insurance policies issued by or included in employee benefit plans administered by certain Blue Plans. The status of the action brought by the provider plaintiffs is irrelevant to the decision of whether to transfer the Plaintiffs' subscriber action.

5.      The Defendants assert that "[i]n the year since that preliminary approval [of the settlement with subscriber plaintiffs], numerous opt outs have filed lawsuits both in the MDL Court and around the county." Defs.' Response at 3. However, other than the instant matter, the Defendants cite to only *three* such actions. One of those actions was brought by a *pro se* subscriber plaintiff. *See Dalal v. Horizon Healthcare Servs. Inc.*, No. 2:21-cv-00877-RDP (N.D. Ala. 2021) (action for antitrust violations filed by a *pro se* subscriber plaintiff against only one Blue Plan).

6.      However, the other two actions were brought by employers that maintained employee healthcare plans and are thus distinguishable from the Plaintiffs' action. *See Metro. Transp. Auth., et al. v. Blue Cross & Blue Shield of Alabama*, No. 2:21-cv-09101-JPC-SN (S.D.N.Y. 2021) (action for antitrust violations filed by several New York public transportation entities that maintained employee healthcare plans administered by the Blue Plans); *Alaska Air Grp., Inc., et al. v. Blue Cross Blue Shield Assoc.*, No. 2:21-cv-01209 (N.D. Ala. 2021) (action for antitrust violations filed by group of large corporate employers that maintained employee healthcare plans administered by the Blue Plans).

7.      "[W]here only a minimal number of actions are involved, the moving party

generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). Here, the Defendants do not meet their burden of demonstrating the need for centralization.

8.      In *Dalal*, the only recently filed action similar to the Plaintiffs' action, the Honorable David Proctor, the judge overseeing the class action, entered an order in November 2021, staying the action filed by the *pro se* subscriber noting there is a "substantial question as to (1) whether this litigation should be pending *in this court* and (2) whether it could interfere with the court's *consideration of the settlement* if it was to be litigated presently." *Dalal*, No. 2:21-cv-00877-RDP at ECF No. 7 (emphasis added).

9.      The Defendants' response additionally cites to four actions that were previously transferred. Defs.' Response at 7–8. However, each of those actions were filed and transferred prior to the November 2020 settlement of the subscribers' claims. *See Lifewatch Services, Inc. v. Highmark, Inc.*, MDL No. 2406 (D.E. 192) (J.P.M.L. Apr. 1, 2013); *Galactic Funk Touring Inc. v. Blue Cross & Blue Shield of Ariz. Inc.*, MDL No. 2406 (D.E. 254) (J.P.M.L. Apr. 6, 2015); *Galactic Funk Touring Inc. v. Triple S Salud*, MDL No. 2406 (D.E. 259) (J.P.M.L. Apr. 27, 2015); *Chicoine v. Wellmark, Inc./Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, MDL No. 2406 (D.E. 393) (J.P.M.L. Oct. 4, 2017).

### MEMORANDUM OF LAW

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made … upon … determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a). The Panel typically transfers actions to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues, and

conserve the resources of the parties, their counsel and the judiciary." *In re BP Sec.*, 734 F. Supp. 2d 1380, 1381 (J.P.M.L. 2010).

Here, the Plaintiffs' conceded their claims involve "one or more common questions of fact" with the subscriber track of the MDL but dispute transfer would be "for convenience of parties and witnesses" or "advance the just and efficient conduct of the actions." Conversely, the Defendants assert that the Plaintiffs' action "satisfies each factor the Panel considers to determine whether transfer is appropriate." Defs.' Response at 6. However, for the reasons that follow, the conditional transfer order should be vacated.

**I. There is no Danger of Inconsistent Rulings, Transfer Would Not Promote the Just and Efficient Conduct of the Plaintiffs' Action, and Transfer Could Disrupt the Orderly Progress of the Class Action**

In *In re Power Balance, LLC, Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1345, 1345 (J.P.M.L. 2011), plaintiffs in a Southern District of Florida action and a Northern District of California action moved to centralize their actions with ones pending in the Central District of California ("C.D. Ca."), including the first-filed action. The defendant and the plaintiff from the first-filed C.D. Ca. action agreed that all actions met the criteria for centralization, but they asked the Panel to defer its ruling in order to allow the presiding judge in the C.D. Ca. action to consider a recently negotiated nationwide class settlement. *Id.* Although the actions involved common questions of fact, the Panel denied transfer. *Id.* at 1346.

The Panel noted the plaintiff in the C.D. Ca. action "recently has moved for preliminary approval of a proposed nationwide class settlement." *In re Power Balance, LLC*, 777 F. Supp. 2d at 1346. A hearing on plaintiff's motion for preliminary approval of the settlement was set to take place later in the month. *Id.* The Panel noted if the Court "preliminarily approves the settlement, these cases are likely on the path to resolution." *Id.* "Centralization at this time could delay the [C.D. Ca.] proceedings as well as entail additional expense for the litigants and the courts to

establish an MDL proceeding with little benefit." *Id.*

In *In re Pilot Flying J Fuel Rebate Contract Litig.*, 959 F. Supp. 2d 1373, 1373–74 (J.P.M.L. 2013), a plaintiff in a Northern District of Ohio action moved for coordinated or consolidated pretrial proceedings in the Southern District of Mississippi. The litigation consisted of eight actions pending in six districts, including the Eastern District of Arkansas ("E.D. Ar."). *Id.* at 1374. The defendants agreed "that the actions meet the criteria for centralization, but ask the Panel to defer its ruling to allow the [E.D. Ar.] to consider final approval of a recently negotiated nationwide class settlement." *Id.* In the alternative, the defendants argued that the [E.D. Ar.] would be the most appropriate transferee district. *Id.* Although the actions involved common questions of fact arising out of allegations against the defendants, the Panel found "that centralization at this time will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." *Id.*

The Panel noted, the E.D. Ar. "recently granted preliminary approval of a proposed nationwide class settlement, and final approval of the settlement will be considered in a few months." *In re Pilot Flying J*, 959 F. Supp. 2d at 1374. "Centralization at this time could delay settlement proceedings." *Id.* "Certain plaintiffs who have not yet participated in the settlement and advocate for centralization at this time argue that the settlement will not resolve all claims, that there will be many plaintiffs who will opt out of the settlement and, therefore, that the litigation will retain its multidistrict character." *Id.* "Until the [E.D. Ar.] conducts its fairness hearing and issues a final approval or disapproval of the settlement, none of this is known for certain." *Id.* "In the meantime, we decline to grant centralization on the basis of such speculation." *Id.* "It is not possible to predict the contours of the litigation, and whether centralization will be beneficial, if and after the settlement is granted final approval." *Id.*

In *In re Ocwen Loan Servicing, LLC*, 988 F. Supp. 2d 1367, 1368 (J.P.M.L. 2013), plaintiffs in

a Southern District of Alabama action moved for centralization of their litigation in the Northern District of Georgia. The litigation consisted of five actions in four districts, which all concerned a standardized letter from the defendant that was alleged to violate the Fair Debt Collection Practices Act. *Id.* However, the Panel noted that "[t]he Northern District of Georgia recently granted preliminary approval of a proposed nationwide class settlement which will be given final consideration in a few months." *Id.* "Centralization at this time could delay the proceedings on the proposed settlement and result in additional expense for the litigants and the courts in establishing an MDL proceeding with little or no benefit." *Id.* The Panel denied the motion to centralize noting, "[i]f plaintiffs who have not participated in settlement discussions wish to object to or opt out of the proposed settlement, there are suitable mechanisms in place by which they may do so without the need for centralization." *Id.*

In *In re Wells Fargo Mortg. Modification Litig.*, 437 F. Supp. 3d 1379 (J.P.M.L. 2020), plaintiffs in an Eastern District of Washington action moved for centralization of their litigation with pending actions in the Northern District of California ("N.D. Ca."). Plaintiffs in the N.D. Ca. action opposed centralization. *Id.* Although the actions involved common questions of fact, the Panel denied centralization. *Id.* The Panel noted that the N.D. Ca. action was "far more advanced than any other, with discovery largely complete, a nationwide class certified, a motion for partial summary judgment pending ...." *Id.* Moreover, the parties in that action "reached a proposed settlement for the certified class, and they intend to move for preliminary approval in less than a week." *Id.* at 1379–80. "Centralization at this time could delay a class settlement in the most advanced action in this litigation and result in little or no benefit to the class members and other parties." *Id.* at 1380.

The Panel noted "[f]urthermore, there are alternatives to centralization available to minimize any overlap in pretrial proceedings, including informal cooperation and coordination

of all actions, or other cooperative arrangements, such as a stay of the other cases while the settlement … proceeds." *In re Wells Fargo*, 437 F. Supp. 3d at 1380. "Wells Fargo and plaintiffs in six actions each are represented by common counsel, suggesting that informal coordination is feasible." *Id.* "Notably, discovery from the [N.D. Ca.] action can be made available to plaintiffs in the other actions." *Id.* "If alternatives to Section 1407 centralization prove to be unsuccessful, it may be that a more persuasive case for centralization could be made." *Id.* "But on the facts now before us, we are not persuaded that the possible benefits of centralization outweigh its potential to interfere with the resolution of some claims in this litigation." *Id.*

Here, as the above authorities suggest, requests for centralization of later filed actions, even ones that have identical allegations, are denied where transfer could disrupt the orderly progress of the settlement of one or more of the prior filed actions. Significantly, the settlement of the subscribers' claims would be a final settlement *not* a partial settlement. *See Kaiser v. Cigna Corp. (In re Managed Care Litig.)*, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) (emphasis added) (denying transfer in part because "the Kaiser settlement would only *partially resolve provider claims* in MDL-1334, but could have a significant impact on the remaining MDL-1334 claims).

As noted above, Judge Proctor entered an order staying one of the three other recently filed "tag along" actions noting a "substantial question as to (1) whether this litigation should be pending in this court and (2) whether it could interfere with the court's consideration of the settlement if it was to be litigated presently." *Dalal*, No. 2:21-cv-00877-RDP at ECF No. 7. Similarly transfer of the Plaintiffs' matter could interfere with the resolution of the claims in the subscriber track, the most advanced action in this litigation, and result in little or no benefit to the class members and other parties.

The Defendants argue "transfer is necessary to avoid a significant risk of inconsistent rulings on the existence of the alleged nationwide conspiracy, as well as the validity of BCBSA's

licensing program." Defs.' Response at 11. The Plaintiffs are unaware of any *specific* ruling made by the Northern District of Alabama in the subscriber track, with respect to either allegation, that could be inconsistently decided. The Defendants do not identify any or explain why the Northern District of Alabama would be making any such rulings in the future in light of the final settlement, which is on the precipice of final approval.

The most significant pretrial ruling made by the Northern District of Alabama in the subscriber track was its ruling on partial summary judgment, which concluded that the Defendants' antitrust violations would be "analyzed under the *per se* standard of review." *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1279 (N.D. Ala. 2018). As alleged in the Plaintiffs' motion to vacate, there is no danger of inconsistent rulings because the Plaintiff will seek the entry of a substantially similar ruling in their action.

The Defendants note that "given that more than 2,000 putative class members excluded themselves from the damages class in the settlement, it would not be surprising for additional opt out cases to be filed in the future." Defs.' Response at 10. However, that would be mere speculation. Finally, in light of the pending final approval of the settlement of the subscriber track, it is not likely transfer would not promote the just and efficient conduct of the Plaintiffs' action. Therefore, the conditional transfer order should be vacated.

## II. There is no Danger of Duplicative Discovery, Transfer would not Meaningfully Conserve the Resources of the Courts or the Parties, and Transfer Would Inconvenience the Parties and Witnesses

"[C]entralization under Section 1407 should be the last solution after considered review of all other options." *In re Wells Fargo*, 437 F. Supp. 3d at 1380 (*quoting In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). As noted in the Plaintiffs' motion to vacate, the Panel has denied transfer where "suitable alternatives … are available in order to minimize the possibility of duplicative discovery." *In re Chiropractic*

*Antitrust Litig.*, 483 F. Supp. 811, 813–14 (J.P.M.L. 1980). "For example, the parties may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions; or the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions." *Id.*

Here, the Plaintiffs asserted that transfer is neither necessary nor appropriate when discovery relating to common issues in the subscriber track has already been completed and/or can be made available to the parties in actions without recourse to § 1407. The Plaintiffs stated they would agree or stipulate that the discovery completed in the subscriber track should be made applicable to their action. The Defendants respond to this by stating the discovery record is voluminous. They further argue that "[m]uch of this is likely to be irrelevant to Plaintiffs' action, because the discovery record includes material relevant only to the provider track, and to types of subscribers unlike Plaintiffs. The parties will therefore need to negotiate over the subset of discovery already in the MDL that is appropriate for this case." Defs.' Response at 12. However, this potential problem would seem to be present regardless of whether the Plaintiffs claim is transferred or not.

Moreover, the issue most likely to be disputed in the Plaintiffs' action is damages. In turn, the Plaintiffs would most likely be the main witnesses on that issue. In their motion to vacate, the Plaintiffs stated that only one of the 34 named plaintiffs is from Alabama. However, the undersigned has since learned he was mistaken. Although one of the named Plaintiffs *did* live in Alabama at the time the case was filed, he has since moved to Texas. Consequently, *none* of the Plaintiffs have ties to Alabama. Consequently, transfer of this matter would not meaningfully conserve the resources of the parties, their counsel, or the judiciary. Moreover, transfer would potentially inconvenience the Plaintiffs and their witnesses.

Finally, the Defendants point out that ordinarily transfer under 28 U.S.C. § 1407 is only for pretrial proceedings and transferred cases are ultimately remanded back to the transferee court for trial. However, the Plaintiffs' case asserts antitrust violations. The Panel also "*may* consolidate and transfer with or without the consent of the parties, *for both pretrial purposes and for trial*, any action brought under section 4C of the Clayton Act [15 USCS § 15c]." 28 U.S.C. § 1407(h) (emphasis added). To the extent the Defendants rely or intend to rely on this provision, transferring the Plaintiffs' action to the Northern District of Alabama may be final. Therefore, the conditional transfer order should be vacated.

**WHEREFORE**, the Plaintiffs respectfully request that the Panel enter an order vacating the conditional transfer order (CTO-37) (ECF No. 515), or in the alternative, defer ruling to allow the Northern District of Alabama to consider final approval of the nationwide class settlement in the subscriber track, and granting any other further legal or equitable relief deemed just and proper.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on December 27, 2021 on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted By:

Gulisano Law, PLLC
5645 Coral Ridge Drive, Suite 207
Coral Springs, FL 33076
954-947-3972 – office
michael@gulisanolaw.com – email

<u>s/ Michael Gulisano</u>
Michael Gulisano, Esquire
Florida Bar No.: 87573