**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | ) ) ) ) ) | **MDL No. 2406** |

**NOTICE OF POTENTIAL TAG-ALONG ACTION**

To:    Clerk of the Panel
       Judicial Panel on Multidistrict Litigation
       Thurgood Marshall Federal Judiciary Building
       One Columbus Circle, N.E.
       Room G-255, North Lobby
       Washington, D.C. 20002-8004

Pursuant to Rule 7.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Counsel for Defendant Blue Cross Blue Shield Association in MDL 2406 writes to notify the Panel of the following related action and Plaintiffs' Third Amended Consolidated Complaint filed in the United States District Court for the Central District of California: *Women's Recovery Center, LLC, et al., v. Anthem Blue Cross Life and Health Insurance Company, et al*, No. 8:20-cv-00102-JWH-ADSx (the "*Women's Recovery Center* Action"). A copy of the docket sheet is attached as Exhibit 1.A. A copy of the Third Amended Consolidated Complaint is attached as Exhibit 1.B.

I.    **THE *WOMEN'S RECOVERY CENTER* ACTION RAISES SIMILAR ALLEGATIONS TO CASES CENTRALIZED IN THE BCBS ANTITRUST MDL**

The *Women's Recovery Center* Action is an action brought by healthcare providers that involves common questions of fact—and numerous overlapping factual allegations—with numerous actions the Panel previously centralized in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, 13-cv-20000 (N.D. Ala.) (the "BCBS Antitrust MDL" or "MDL").

As the Panel will recall, the BCBS Antitrust MDL contains numerous lawsuits brought on behalf of providers, alleging that Blue Cross Blue Shield Plans ("Blue Plans") and the Blue Cross Blue Shield Association ("BCBSA") violated the antitrust laws by, among other things, allocating exclusive territories and price-fixing through the BlueCard Program.  *See In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

In centralizing the numerous actions, the Panel found (1) that they "involve substantial common questions of fact relating to the state [Blue Plans'] relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas," and (2) that the "Blue Plans are alleged to be co-conspirators." *Id.*  More specifically, the Panel previously held that the Northern District of Alabama was an appropriate Section 1407 forum for actions sharing factual questions regarding "the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)." *Id.* at 1374, 1376.  The Panel has transferred additional actions to the MDL as recently as February 2022.  *See* Doc. 551; 554.

In October 2020, BCBSA notified the Panel of the *Women's Recovery Center* Action as a potential tag-along action to the BCBS MDL.  Doc. 430.  Because the Clerk of the Panel declined to include the action in the MDL, *see* Doc. 432, BCBSA proceeded with litigation in the United States District Court for the Central District of California, moving to dismiss plaintiffs' complaint for failure to state a claim.  The district court granted BCBSA's motion, finding that "Plaintiffs failed to allege specific wrongdoing" or any relevant conduct by BCBSA and granted plaintiffs leave to amend.  Ex. 1.D, Feb. 2, 2022 Order Granting Motion to Dismiss of Defendant Blue Cross Blue Shield Association at 7, 13.

2

On March 1, 2022, plaintiffs drastically changed the scope of their complaint.  The Third Amended Consolidated Complaint attempts to avoid another dismissal by adding allegations like those in the MDL complaints.  For example, plaintiffs allege that the Blue Plans "have conspired with each other and with the Association to engage in an illegal horizontal market allocation," to engage in price fixing through the BlueCard Program, and ultimately to reduce provider reimbursement rates.  *See* Ex. 1.B at ¶¶ 59, 78.  Plaintiffs assert that all Defendants in the *Women's Recovery Center* Action—nearly all of whom are also defendants in the BCBS MDL— "engaged in a conspiracy to suppress, artificially reduce and fix the pricing for healthcare services that is a substantial factor in Defendants' under-reimbursement of Plaintiffs' claims." *Id.* at ¶ 78.  With these recent amendments to the *Women's Recovery Center* complaint, that action and the other centralized actions in the BCBS MDL now squarely concern common questions of fact and legal theory, which will yield overlapping discovery about the Blue Plan Defendants' service areas, the BlueCard Program, and the alleged economic effect of service areas and the BlueCard Program on provider reimbursement rates.

With minor word changes, Plaintiffs' recently amended complaint adds many allegations that overlap with the MDL Provider Complaint.  In fact, Plaintiffs' complaint even adds allegations that directly refer to and summarize the MDL Court's orders.  *See* Ex. 1.B at ¶¶ 61, 64-70.  Moreover, numerous of the allegations are ***identical to or nearly identical***, including, but not limited to, the following examples:

| *Women's Recovery Center* Complaint (Ex. 1.B) | MDL Provider Complaint (Ex. 1.C) |
|---|---|
| "The Blue Cross and Blue Shield Defendants, who hold themselves out to the public as independent companies, have conspired with each other and with the Association to engage in an illegal horizontal market allocation, ***agreeing to carve the United States into*** | "Defendants, which are independent companies, have ***agreed with each other to carve the United States into "Service Areas" in which only one Blue can sell insurance, administer employee benefit plans or contract with healthcare providers (the "Market*** |

| *Women's Recovery Center* **Complaint (Ex. 1.B)** | **MDL Provider Complaint (Ex. 1.C)** |
|---|---|
| *exclusive service areas ("ESA") in which only one Member Plan can sell insurance, administer employee benefit plans or contract with healthcare providers*. **The other Member Plans enjoy the benefit of the artificially reduced, fixed prices that each Member Plan pays to healthcare providers through the national programs they have collectively established, including the Blue Card Program and the National Accounts Programs**." (Third Am. Compl. ¶ 59 (emphasis added).) | *Allocation Conspiracy"*). Defendants have engaged in a horizontal market allocation…. *[E]very other Blue gets the benefit of the artificially reduced prices that each Blue pays to healthcare providers. The Blues get those benefits through the national programs that the Blues have collectively established, including the Blue Card Program and the National Accounts Programs*." (Prov. 4th Am. Comp. ¶ 1 (emphasis added).) |
| "Each Member Plan has signed a License Agreement with the Association that identifies an ESA where a Member Plan may use the BCBS marks, and the Plans agreed that they may not use the licensed BCBS marks outside the ESA." (Third Am. Compl. ¶ 60.) | "In the claims related to the Market Allocation Conspiracy, Plaintiff healthcare providers challenge the explicit agreement reached by Defendants to divide the United States into what Defendants term "Service Areas" and then to allocate those geographic areas among the Blues, free of competition." (Prov. 4th Am. Comp. ¶ 4) "In furtherance of the Market Allocation Conspiracy, Defendants agreed that each Defendant would be allocated a defined Service Area and further agreed that each Defendant's ability to operate and to generate revenue outside its geographic Service Area would be severely restricted. Accordingly, Defendants have agreed to an allocation of markets and have agreed not to compete with each other within those markets." (Prov. 4th Am. Comp. ¶ 5.) |
| "The Association and the Blue Cross and Blue Shield Defendants entities have conspired and *agreed that the Blue Cross and Blue Shield Defendants will not compete with each other in terms of their provider networks, and even when the Blue Cross and Blue Shield Defendants have significant enrollees in another Blue Cross and Blue Shield Defendant's service area, they have an agreement that they will not contract with* | "The Defendants have *agreed that they will not compete with each other in terms of their Provider Networks. Even when Defendants have significant enrollees in another Blue's service area, including Alabama, the Defendants have agreed that they will not contract with Providers outside of their service areas except in limited circumstances*. *The BCBSA exists solely for the benefit of the Blues and to facilitate their concerted* |

| ***Women's Recovery Center* Complaint (Ex. 1.B)** | **MDL Provider Complaint (Ex. 1.C)** |
|---|---|
| providers outside of their service area except in limited circumstances*. <br><br> In short, ***the Association exists solely for the benefit of the Blue Cross and Blue Shield Defendants, and to facilitate their concerted activities****." (Third Am. Compl. ¶ 62 (emphasis added).) | activities*." (Prov. 4th Am. Compl. ¶ 3 (emphasis added).) |
| "***In furtherance of these concerted activities, each of the Blue Cross and Blue Shield Defendants has agreed to participate in the national programs adopted by the Association and Blue Cross and Blue Shield Defendants, including the Blue Card Program and the National Accounts Program****. The Blue Card Program is a program that enables members of one BCBS plan to obtain health care services while traveling or living in another BCBS plan's service area. Under this program, when a member of a BCBS plan obtains covered health care services in another state, the "local" or "host" BCBS plan (*i.e.*, the plan located in the state where the services are provided) receives the claim(s) from the local provider and routes the claim information along with pricing data to the "home" BCBS plan. The "home" plan is the BCBS plan that issues, insures and/or administers the health plan for the member. ***The National Accounts Program functions in a similar manner and generally applies to employee benefit plans with insured members in multiple states. These programs have been established by a horizontal agreement between the Blue Cross and Blue Shield Defendants. The Blue Card Program is managed by a Committee of Blue Cross and Blue Shield Defendants sitting on the Inter-Plan Programs Committee. These programs, among other national programs, lock in fixed, discounted reimbursement rates that each Blue Cross and Blue Shield Defendant achieves through market dominance in its service area and makes subcompetitive rates available to all other*** | "***In furtherance of the Price Fixing and Boycott Conspiracy, each Defendant has agreed to participate in each national program that the Blues adopt, including the Blue Card Program and the National Accounts Programs****. The Blue Card Program applies when a subscriber of one of the Defendants receives healthcare services within the Service Area of another Defendant. In the Blue Card Program the subscriber's Blue is the Home Plan and the Defendant Blue with the Service Area where the healthcare goods, services or facilities are provided is the Host Plan. ***The National Accounts Programs function in a similar manner. National Accounts Programs generally apply to employee benefit plans with subscribers in multiple states…. These Programs and others have been established by a horizontal agreement between the Blues. The Blue Card Program is managed by a Committee of Blues sitting on the Inter-Plan Programs Committee.*** …***The national programs including the Blue Card Program and the National Accounts Programs lock in the fixed, discounted reimbursement rates that each Defendant achieves through market dominance in its Service Area and makes those subcompetitive rates available to all other Blues without the need for negotiation or contracting***. … ***Many of the Defendants have large numbers of enrollees or members outside of their service areas. Rather than forming competing networks of providers in other service areas, the Defendants pay the Home Plan a kickback, called an Access Fee,*** |

| ***Women's Recovery Center* Complaint (Ex. 1.B)** | **MDL Provider Complaint (Ex. 1.C)** |
|---|---|
| ***Blue Cross and Blue Shield Defendants without the need for negotiation or contracting. Because many Blue Cross and Blue Shield Defendants have large numbers of members outside of their service areas, and rather than forming competing networks of providers in the other service areas, the Blue Cross and Blue Shield Defendants pay the Home Plan a kickback, called an Access Fee, and thereby share the excess profits they achieve through the subcompetitive prices that the Blue Cross and Blue Shield Defendants pay to Providers***." (Third Am. Compl. ¶ 63 (emphasis added).) | ***and thereby share the excess profits they achieve through the sub-competitive prices that the Defendants pay to Providers***." (Prov. 4th Am. Compl. ¶ 8 (emphasis added).) |
| "In 1992, the Blue Card program was developed and participation in the Blue Card program is a requirement of the License Agreement between the Association and each individual Member Plan." (Third Am. Compl. ¶ 66.)<br><br>"The Association and the Blue Cross and Blue Shield Defendants operate under an agreed set of rules whereby prices for healthcare services paid by the entire group of Member Plans -- all 36 separate BCBS entities -- are set by its Home Plan, and the Member Plans have agreed to not interfere with the Home Plan's pricing of healthcare services or its negotiations with healthcare providers." (Third Am. Compl. ¶ 67.) | "All of the Blues are required to participate in the Blue Card program, through which they process claims by a provider in one Service Area on behalf of a patient whose Blue plan is based in another Service Area.  Within the Blue Card Program, the Blue through which the subscriber is enrolled is referred to as the "Home Plan," while the Blue located in the Service Area where the medical service is provided is referred to as the "Host Plan."…The provider is paid based on the reimbursement rates or prices in his or her contract with the Host Plan…." (Prov. 4th Am. Compl. ¶ 201.) |
| "In interviews conducted by the Association in which questions about ESAs were asked, Plan CEOs stated that ESAs create "***[l]arger market share because other Blues stay out and do not fragment the market***," and allow for aggressive bargaining, and one CEO reported that "***Plans benefit from the exclusive service areas because it eliminates competition from other Blue Plans***" and that without service areas, "there would be open warfare." (Third Am. Compl. ¶ 65 (emphasis added).) | "According to an internal report about the Assembly of Plans, '***Plans benefit from the exclusive service areas because it eliminates competition from other Blue Plans. Otherwise there would be open warfare***….' According to the internal Assembly of Plans report, exclusive service areas create "***Larger market share because other Blues stay out and do not fragment the market***." (Prov. 4th Am. Compl. ¶ 178.) |

| *Women's Recovery Center* Complaint (Ex. 1.B) | MDL Provider Complaint (Ex. 1.C) |
|---|---|
| "The Association and the Blue Cross and Blue Shield Defendants ***engaged in a conspiracy to suppress, artificially reduce and fix the pricing for healthcare services*** that is a substantial factor in Defendants' under-reimbursement of Plaintiffs' claims in contravention of the Plans and in violation of ERISA and California law." (Third Am. Compl. ¶¶ 78, 334 (emphasis added).)<br><br>"The conspiratorial conduct of Defendants, and each of them, not only violates state and federal antitrust laws as expressed in *In re Blue Cross Blue Shield Antitrust Litigation*, but also creates an ***economic barrier to accessing OON SUD services by suppressing reimbursement rates*** and concomitantly increasing the insured patient's coinsurance amount and out of pocket expense that does not exist for accessing medical and surgical benefits, in violation of MHPAEA, and also results in the denial of mandated essential healthcare benefits – SUD services – in violation of the PPACA." (Third Am. Compl. ¶¶ 79, 335 (emphasis added).) | "The Market Allocation Conspiracy reduces the competition that each Blue faces and ***allows it to reduce the prices that it pays to healthcare providers***. The Price Fixing … Conspiracy ***fixes those prices for all Blues, gives them the benefit of those reduced, fixed prices***…." (Prov. 4th Am. Compl. ¶ 1 (emphasis added).)<br><br>"The Blue Card and National Accounts programs are thus ***agreements to fix prices. Healthcare providers providing services to patients*** insured by or included in employee benefit plans administered by a Blue from another Service Area…***receive significantly lower reimbursement than they would receive absent Defendants' agreement to fix prices***." (Prov. 4th Am. Compl. ¶ 203 (emphasis added); *see id.* ¶ 333 (nearly identical allegation).) |

The common allegations and legal theories provide the precise connection that the Panel has found sufficient to justify transfer of tag-along cases to the MDL. In the Panel's prior order, and in subsequent orders transferring additional related actions to the MDL, the Panel has been clear: "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376; *see also* Final Transfer Order, *Zimmerman v. Blue Cross Blue Shield of Ala., et al*, MDL No. 2406 [Dkt 358] at 1 (J.P.M.L. June 17, 2016) ("[A]ction(s) on this conditional transfer order involve questions of fact that are common to the

7

actions previously transferred to the Northern District of Alabama and assigned to Judge Proctor."); Final Transfer Order, *Aschenbrenner et al. v. Blue Cross Blue Shield of Ala. et al.*, MDL No. 2406 [Dkt. 362] at 1 (J.P.M.L. July 22, 2016) (same).  The Women's Recovery Center easily meets and surpasses that bar.

## II.    TRANSFERRING THE *WOMEN'S RECOVERY CENTER* ACTION TO THE BCBS ANTITRUST MDL PROMOTES EFFICIENT RESOLUTION OF THE COMMON ALLEGATIONS AND PREVENTS INCONSISTENT RULINGS

Given the similarities between Plaintiffs' Complaint and the MDL Provider Complaint, transferring the *Women's Recovery Center* Action to the MDL will allow a single court to address the underlying claims as to BlueCard and the Blues' system of exclusive service areas. The Northern District of Alabama has unique expertise as "an experienced transferee judge who is already familiar with the contours of the litigation."  *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376.  And transferring the *Women's Recovery Center* to the MDL will "prevent inconsistent pretrial rulings" on the "common questions of fact" presented by these cases. *Id.*

Nearly all the Defendants in the *Women's Recovery Center* Action are also already defendants in the cases centralized in the MDL, and dispute the common claims of conspiracy. In other words, if the *Women's Recovery Center* Action is not transferred to the MDL, there is a significant risk of conflicting rulings from different courts on the purported existence of the nationwide conspiracy and the effects of ESAs and BlueCard on provider reimbursement rates. The Panel has consistently held that the potential for inconsistent rulings is a significant factor warranting transfer of related actions.  *See In re BP Sec., Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d 1380, 1382 (J.P.M.L. 2010) (transferring cases to existing MDL to "prevent inconsistent pretrial rulings on discovery disputes and other pretrial issues"); *In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 474 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007)

(affirming transfer of actions to previously centralized action to "prevent inconsistent pretrial rulings"). The potential for inconsistent rulings by itself heavily weighs in favor of transferring the *Women's Recovery Center* Action to the MDL.

### III. TRANSFERRING THE *WOMEN'S RECOVERY CENTER* ACTION TO THE BCBS ANTITRUST MDL CONSERVES THE COURTS' AND PARTIES' RESOURCES AND ELIMINATES DUPLICATIVE DISCOVERY.

Transferring the *Women's Recovery Center* Action to the BCBS Antitrust MDL to be managed with other cases involving similar, overlapping allegations will avoid duplicative or inconsistent discovery obligations being imposed on BCBSA and the other Defendants. The Panel centralized the initial actions in the MDL in large part to "eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1376. Transferring the *Women's Recovery Center* Action will help achieve these same goals.

The Panel has repeatedly held that a potential for parties to be subject to duplicative discovery is a substantial factor that warrants transfer. *See In re BP Sec., Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 734 F. Supp. 2d at 1382 (transferring cases to existing MDL to "eliminate duplicative discovery"); *In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 474 F. Supp. 2d at 1356 (affirming transfer of actions to previously centralized action to "eliminate duplicative discovery"). If the *Women's Recovery Center* Action is not transferred to the MDL, BCBSA and the other Defendants will likely have to prepare written discovery responses, produce documents, and provide deposition testimony about factual issues that overlap with those relevant to the MDL. Duplicating those efforts in a separate litigation would be a waste of judicial and party resources, and would risk exposing Defendants to duplicative or inconsistent discovery obligations.

For all of these reasons, the *Women's Recovery Center* Action should be transferred to the BCBS Antitrust MDL.

Date: March 22, 2022

<div style="margin-left: 50%;">

Very truly yours,
/s/ *Daniel E. Laytin*
Daniel E. Laytin, P.C.
Zachary D. Holmstead
Anne I. Salomon
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200
dlaytin@kirkland.com
Zachary.holmstead@kirkland.com
anne.salomon@kirkland.com

*Counsel for Blue Cross*
*Blue Shield Association*

</div>