# Exhibit 1D

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOMEN'S RECOVERY CENTER, LLC, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Lead Case No. 8:20-cv-00102-JWH-ADSx <br><br> Consolidated with Case Nos. <br> 8:20-CV-00104-JWH (ADSx) <br> 8:20-CV-00106-JWH (ADSx) <br> 8:20-CV-00107-JWH (ADSx) <br> 8:20-CV-00108-JWH (ADSx) <br> 8:20-CV-00109-JWH (ADSx) <br> 8:20-CV-00110-JWH (ADSx) <br> 8:20-CV-00111-JWH (ADSx) <br> 8:20-CV-00112-JWH (ADSx) <br> 8:20-CV-00114-JWH (ADSx) <br> 8:20-CV-00578-JWH (ADSx) <br><br> **ORDER GRANTING MOTION TO DISMISS OF DEFENDANT BLUE CROSS BLUE SHIELD ASSOCIATION [ECF No. 193]** |

Before the Court is the motion of Defendant Blue Cross Blue Shield Association ("BCBSA") to dismiss Plaintiffs' Amended Complaint.[1] After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing on the Motion, the Court orders that the Motion is **GRANTED**, as set forth herein.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed their Complaint in California state court commencing this action in December 2019. The next month, Defendants removed the action to this Court. The Court consolidated the cases listed above in March 2020.[3]

Plaintiffs filed the operative Amended Complaint in August 2020. BCBSA filed the instant Motion a year later, in August 2021, and it is fully briefed. The Court conducted a hearing on the Motion in November 2021.[4]

### B. Factual History

Plaintiffs are a group of out-of-network substance use disorder treatment providers and clinical laboratories.[5] Defendants are in the health insurance business.[6] Plaintiffs assert claims in this action for (1) plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) breach of written contract; (3) breach of implied covenant of good faith and fair dealing; (4) breach of implied contract;

---

[1] Def.'s Mot. to Dismiss (the "Motion") [ECF No. 193].
[2] The Court considered the following papers: (1) Second Am. Compl. (the "Amended Complaint") [ECF No. 49]; (2) the Motion (including its attachments); (3) Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 201]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 220].
[3] *See* Minutes of Status Conference [ECF No. 15].
[4] *See* Min. Order re Video Hr'g [ECF No. 230].
[5] Amended Complaint ¶¶ 1-12 & 64.
[6] *Id*. ¶¶ 13-63.

(5) breach of oral contract; (6) promissory estoppel; and (7) unfair competition. The facts as alleged in the Amended Complaint are set forth below.

Plaintiffs "provided medically necessary, verified, preauthorized and covered substance use disorder treatment and laboratory services to 1,792 individuals (the '<u>Insureds</u>') with health insurance that was sold insured, managed and/or administered by Defendants."[7] These treatments and services included detoxification, residential treatment, intensive outpatient treatment, counselling, medication management, and laboratory services.[8]

Defendants' health insurance plans, for each Insured, provide coverage for out-of-network substance disorder treatment and laboratory services.[9] Those plans pay benefits at varying percentages of covered charges until the Insured's nominal annual out-of-pocket maximum is met, at which time Defendants pay 100% of the charges.[10] The plans also pay 100% of covered charges in cases where there is a "network inadequacy" or "network gap" for the relevant services.[11]

Plaintiffs are informed and believe that all of the Insureds had already met their annual out-of-pocket maximum at the time (or shortly thereafter) they first received treatment or services from plaintiffs.[12] In addition, Plaintiffs are informed and believe that at all relevant times Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories for the Insureds.[13]

---

[7]   *Id.* at ¶ 64.
[8]   *Id.*
[9]   *Id.* at ¶ 65.
[10]  *Id.* at ¶ 66.
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*

Each of the Insureds assigned to Plaintiffs—orally *and* in writing—benefits and payments by their insurance company or health plan.[14] In reliance on the assignments of benefits, Plaintiffs provided treatment and services to the Insureds.[15] Defendants confirmed, represented, promised, and warranted to Plaintiffs that each of the Insureds and their respective out-of-network treatments and services were covered by the relevant health insurance plan.[16] Defendants knew at all relevant times that Plaintiffs were treating and providing services to their Insureds; Defendants were also aware of Plaintiffs' charges for the treatments and services.[17]

Despite those circumstances, Defendants paid Plaintiffs only an average of 18.55% of the covered charges for the Insureds.[18] Moreover, Defendants refused to fully compensate Plaintiffs only *after* Plaintiffs rendered the treatments and services.[19]

During the claim-submission process, Defendants put Plaintiffs on various pre-payment review and program integrity audits, repeatedly requesting "the same documents and information from Plaintiffs, over and over again."[20] Defendants subsequently refused to reimburse Plaintiffs for the covered treatments and services; Defendants likewise failed to provide Plaintiffs and the Insureds with adequate notice or explanations for the denial of benefits.[21] Plaintiffs allege that these audits, inadequate notices, repetitive document requests, etc. "were false and fraudulent and were implemented by Defendants

---

[14]   *Id.* at ¶ 67.
[15]   *Id.* at ¶ 68.
[16]   *Id.*
[17]   *Id.*
[18]   *Id.* at ¶ 70.
[19]   *Id.*
[20]   *Id.* at ¶ 71.
[21]   *Id.*

1 . . . as a pretext to illegally delay and deny Plaintiffs . . . payment in accordance
2 with Defendants' representations and promises."[22]

3       Plaintiffs allege that they have suffered general and incidental damages,
4 including the benefits owed under the plans.[23] Plaintiffs also seek injunctive
5 relief and statutory and prejudgment interest and attorney's fees against
6 Defendants.[24]

7       BCBSA is one of many defendants to this action. BCBSA is an Illinois
8 corporation controlled and funded by Blue Cross Blue Shield insurance
9 corporations, including Blue Cross Blue Shield insurance corporations that are
10 defendants in this action (the "BCBS Defendants").[25] BCBSA exists to support
11 the BCBS Defendants and other Blue Cross Blue Shield corporations.[26]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[22] *Id.*
[23] *Id.* at ¶ 73.
[24] *Id.*
[25] *Id.* at ¶ 55.
[26] *Id.*

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

**B.    Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### III.  DISCUSSION

BCBSA argues that it "has nothing to do with [Plaintiffs'] claims."[27] It highlights that the Amended Complaint's "*only* specific mention of BSBSA is a handful of paragraphs in 'The Parties' section."[28] It further emphasizes that it

---

[27]   Motion 1:4.
[28]   *Id.* at 2:3-4 (emphasis in original).

-6-

is neither a health insurer nor an ERISA plan administrator and that it does not own or operate any of the Blue Cross Blue Shield insurance plans.[29]

### A. The Allegations Against BCBSA

BCBSA argues that Plaintiffs have not alleged misconduct—or any relevant conduct—by BCBSA.[30] The Court agrees.

Plaintiffs' core claim is that the health insurer and ERISA plan third-party administrators failed to pay Plaintiffs adequately.[31] Plaintiffs do not, however, include BCBSA when they identify which defendants "market and issue health insurance, and insure, issue, administer and maker coverage and benefit determinations."[32]

In their Opposition, Plaintiffs challenge BCBSA's assertions that BCBSA "is not a health insurer or plan administrator; it does not provide health insurance coverage; it does not own or operate any of the Blue Plans; it does not contract with or reimburse providers, make benefit determinations, or administer any stage of the claims process."[33] Based upon this challenge, Plaintiffs argue that "it is at least plausible to conclude BCBSA bears liability, either directly or vicariously, for Plaintiffs' claims."[34] To support their argument, Plaintiffs seek judicial notice of a Notice of Potential Tag-Along Action and an IRS filing, both submitted by BCBSA.[35]

Plaintiffs apparently want the Court to conduct a separate inquiry into whether BCBSA could possibly bear liability for Plaintiffs' claim by examining various documents that are nowhere to be found in the Amended Complaint.

---

[29] *Id.* at 2:4-7; *see also* Amended Complaint ¶¶ 54-58.
[30] Motion 2:17-18.
[31] *See generally* Amended Complaint.
[32] *Id.* at ¶¶ 13-52 & 54.
[33] Opposition 1:4-8.
[34] *Id.* at 2:6-7.
[35] *See* Request for Judicial Notice [ECF No. 210].

1  That inquiry is not appropriate at this stage.  The Court will consider only the
2  contents of the Amended Complaint.  Plaintiffs' Request for Judicial Notice is
3  **DENIED**.

**B.     Theories of Liability**

Plaintiffs allege four different theories of liability against BCBSA: (1) agency; (2) alter ego; (3) conspiracy; and (4) aiding and abetting.  Each fails.

    **1.     Agency**

An agent is "one who represents another, called the principal, in dealings with third persons."  Cal. Civ. Code § 2295.  "The essential elements of an agency relationship are:  (1) that the agent or apparent agent holds power to alter legal relations between [the] principal and third [parties] and between [the] principal and himself; (2) that the agent is a fiduciary with respect to matters within [the] scope of [the] agency; and (3) that the principal has right to control [the] conduct of [the] agent with respect to matters entrusted to him." *Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at *4 (C.D. Cal. 2011) (internal quotations omitted).  "To sufficiently plead an agency relationship, a plaintiff must allege ***facts*** demonstrating the principal's control over its agent." *Id.* (emphasis added).  When allegations of a principal-agent relationship are "nothing more than legal conclusion of the type prohibited by *Iqbal* and *Twombly*[,]" an allegation of an agency relationship "must fail." *Id.*

Here, Plaintiffs allege that BCBSA:

> was created by the Blue Cross and Blue Shield Defendants and the other BCBS entities, and operates as the licensor of the Blue Cross and Blue Shield trademarks and trade names.  The Association exists solely for the benefit of the Blue Cross and Blue Shield Defendants

-8-

and the other BCBS entities and to facilitate their concerted activities.[36]

Later, Plaintiffs make a general declaration that:

> each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.[37]

None of those allegations sufficiently relates *facts* demonstrating a relevant agent-principal relationship.

### 2. Alter Ego

Under California law, a corporate identity may be disregarded "where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Courts apply the alter ego doctrine "when the corporate form is used to penetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation." *Id.* To state a claim for alter ego liability, a plaintiff must allege "facts supporting" the existence of two elements: "1) a unity of interest or ownership between [the defendants] and 2) . . . if the acts are treated as those of [a single defendant], an inequitable result will follow." *Lovesy v. Armed Forces Ben. Ass'n*, 2008 WL 696991, at *4 (N.D. Cal. Mar. 13, 2008) (citation omitted). Mere "recitations of

---

[36]   Amended Complaint ¶ 55.
[37]   *Id.* at ¶ 61.

the legal standard for ego liability" are not sufficient to state a claim unless they are "supported by facts indicating the manner in which" the first factor is satisfied. *Lennard v. Yeung*, 2012 WL 13006214, at *9 (C.D. Cal. Feb. 23, 2012).

Here, Plaintiffs allege in their Amended Complaint that:

> Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability. Plaintiffs are further informed and believe, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another. On information and belief, Plaintiffs understand and believe that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.[38]

This is the sort of conclusory "recitation[] of the legal standard for ego liability" that courts find insufficient to state a claim for alter ego liability. *Id.*

Plaintiffs also fail to plead the second element. "Merely alleging that Plaintiff[s] will suffer an inequitable result if [the alleged alter ego] is not a defendant is not sufficient"; Plaintiffs must plead "facts that would establish the second prong." *Orosa v. Therakos, Inc.*, 2011 WL 3667485, at *7 (N.D. Cal. Aug. 22, 2011). Here Plaintiffs fail to plead the requisite facts and instead simply assert that "it would be unjust to permit Defendants to avoid individual

---

[38] *Id.* at ¶ 62.

liability."[39] It is telling that BCBSA raises that point in its Motion,[40] but Plaintiffs fail to address it in their Opposition.

### 3. Conspiracy

A plaintiff pleading civil conspiracy must allege the presence of three factors: "(1) the formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of wrongful acts; and (3) damage resulting from operation of a conspiracy." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994)). "It is not enough that the conspiring officers know of an intended wrongful act, they had to agree—expressly or tacitly—to achieve it." *Jamison v. Fredrickson*, WL 11597459, at *2 (C.D. Cal. Jan. 8, 2010) (quoting *Choate v. Cty. of Orange*, 86 Cal. App. 4th 312, 333 (2000)).

> The Amended Complaint contains the allegation that:
>
> each of the Defendants formed and operated a conspiracy with each of the other Defendants to perform the acts alleged herein, in furtherance of a common design to place profits over patients and damage substance use disorder treatment providers and laboratories, including Plaintiffs, and with knowledge that the conduct alleged herein of each of the Defendants constituted violations of law and provided substantial assistance or encouragement to each other to so act against insured patients and substance use disorder treatment providers and laboratories, including Plaintiffs.[41]

Plaintiffs argue that these allegations, coupled with the allegation that BCBSA "exists solely for the benefit of the Blue Cross Blue Shield Defendants . . . to

---

[39] *Id.*
[40] Motion 5:23-6:2.
[41] Amended Complaint ¶ 63.

-11-

facilitate their concerted activities[,]" is sufficient to state a claim for conspiracy.[42] The Court disagrees. Plaintiffs' allegations are nothing more than a "recitation of the conspiracy elements" which fail "to allege any facts showing an overt act or mutual understanding by [BCBSA] to" commit wrongdoing against Plaintiffs. *Jamison*, WL 11597459, at *2.

    **4.**    **Aiding and Abetting**

To state a claim for aiding and abetting, Plaintiffs "must plead facts that make it plausible that defendants either '(a) [knew] the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other to so act or (b) [gave] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitute[d] a breach of duty to the third [party]." *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)). Plaintiffs must allege that a defendant "had actual knowledge of the *specific wrongful act*" that it is accused of aiding and abetting. *Casey*, 127 Cal. App. 4th at 1147 (emphasis added).

In their Opposition, Plaintiffs argue that they adequately allege aiding and abetting because:

> The [Amended Complaint] further alleges that each of the Defendants, including BCBSA, agreed to perform the wrongful acts described in the [Amended Complaint] "with knowledge that the conduct alleged [therein] constituted violations of law and provided substantial assistance or encouragement to each other to so act

---

[42]    Opposition 8:2-20 (quoting Amended Complaint ¶ 55).

against insured patients and substance use disorder treatment providers and laboratories, including Plaintiffs."[43]

That catchall allegation against all Defendants is insufficient insofar as it fails to allege how BCBSA—which Defendants fail to allege is an insurance provider—aided and abetted an intentional tort. The Amended Complaint does not aver that BCBSA had knowledge of the specific wrongful act that the other Defendants allegedly committed.

## IV. CONCLUSION

Plaintiffs fail to allege specific wrongdoing committed by BCBSA. Moreover, Plaintiffs' theories for which BCBSA might be liable for the torts of the other Defendants fail. Accordingly, the Court hereby **ORDERS** as follows:

1. BCBSA's instant Motion is **GRANTED**.
2. Plaintiffs are **DIRECTED** to amend their pleading on or before February 18, 2022, to correct the deficiencies noted in this Order.
3. If Plaintiffs fail to file their amended pleading by that date, then the Court will **DISMISS** Defendant BCBSA from this action **with prejudice**.

**IT IS SO ORDERED.**

Dated: February 2, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[43] *Id.* at 9:15-20 (quoting Amended Complaint ¶ 63).