# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC,

                            Plaintiff,

    against

BLUE CROSS BLUE SHIELD OF MICHIGAN,

                            Defendant.

Case No: 2:20-cv-12916

Judge:
Hon. Terrence G. Berg

Magistrate Judge:
Hon. Anthony P. Patti

## PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN

Pursuant to Federal Rule of Civil Procedure 34 and Local Rule 26.1 of the United States District Court for the Eastern District of Michigan, Plaintiff Anesthesia Associates of Ann Arbor, PLLC ("A4"), by and through its undersigned counsel, hereby requests that Defendant Blue Cross Blue Shield of Michigan ("BCBSM") produce for inspection and copying all documents, electronically stored information, and tangible objects responsive to the following Requests the Production (the "Requests").  All responsive documents, electronically stored information, and tangible objects shall be produced at the offices of Boies Schiller Flexner LLP, 55 Hudson Yards, New York, NY 10001, within thirty days of the date of these Requests.

## <u>DEFINITIONS AND INSTRUCTIONS</u>

The following Definitions and Instructions apply to the Requests and are deemed to be incorporated into each of the Requests.  Nothing set forth below is intended to narrow the scope of discovery that is permitted by the Federal Rules of Civil Procedure.

1.     Time Period: Unless otherwise indicated, the Requests seek documents, electronically stored information, and tangible objects that were created, edited, marked-up, printed, sent, received, dated, or effective during the period beginning on January 1, 2015, to the present.  If a different time period is specified, it should be read as seeking documents, electronically stored information, and tangible objects that were created, edited, marked-up, printed, sent, received, dated, or effective during that period.

2.     The Requests should be read as broadly as permitted by the Federal Rules of Civil Procedure.

3.      The words "and" and "or" shall be construed conjunctively, disjunctively, or both as necessary to bring within the scope of any Request all responses that might otherwise be construed to be outside of its scope.

4.     The singular shall be construed to include the plural and the plural to include the singular as necessary to bring within the scope of any Request all responses that might otherwise be construed to be outside of its scope.

2

5.      If you find a specific request, definition, or instruction to be ambiguous, set forth the matter deemed ambiguous in responding to the request.

6.      The term "person" includes the plural of that term and both natural persons and legal entities.

7.      The term "A4" shall mean Anesthesia Associates of Ann Arbor, PLLC, including its subsidiaries, officers, directors, agents, employees, counsel, and anyone else acting as a representative of, or on behalf of, Anesthesia Associates of Ann Arbor, PLLC.

8.      The terms "You," "Your," and "BCBSM" shall mean Defendant Blue Cross Blue Shield of Michigan, including its subsidiaries, officers, directors, agents, employees, counsel, and anyone else acting as a representative of, or on behalf of, Blue Cross Blue Shield of Michigan.

9.      The term "BCBSA" shall mean the Blue Cross Blue Shield Association referred to in paragraph 89 of the Amended Complaint, including its subsidiaries, officers, directors, agents, employees, counsel, and anyone else acting as a representative of, or on behalf of, the Blue Cross Blue Shield Association.

10.      The terms "concerning," "regarding," and "relating to" shall be construed in the broadest sense possible to include, in addition to their customary and usual meanings: describing, respecting, referring to, summarizing, digesting, reflecting, tending to establish, deriving from, evidencing, comprising, connected

with, commencing on, responding to, disagreeing with, showing, describing, analyzing, discussing, mentioning, representing, constituting, or including.

11.     The term "evidencing" means demonstrating, showing, stating, or disclosing the stated fact.

12.     The term "document" means any kind of written, recorded, or graphic matter, including writings, drawings, graphs, charts, photographs, audio records, and other data compilations from which information can be obtained.  The term "document" also includes any information and data stored electronically, including, but not limited to facsimile, email, text messages, computer storage devices, computer or email backup systems, disaster recovery backup systems, network drives, desktop drives, removable/rewritable media, smart phones, personal data assistants, and all associated metadata.  The term "document" includes communications however stored.  The term "document" also includes all originals, copies (with or without notes or changes), and drafts of any document.

13.     The term "Commercial Health Insurer" shall mean any non-governmental entity providing health insurance services, including that entity's subsidiaries, officers, directors, agents, employees, counsel, and anyone else acting as a representative of, or on behalf of that entity.

14.     The term "Facility" means any physical location relating to the practice of medicine, including but not limited to a hospital, ambulatory surgery center, ambulatory surgical center, or clinic.

15.     The term "TIN" refers to Taxpayer Identification Number.

16.     The term "ASO" refers to the insurance type 'Administrative Services Only'.

17.     The term Amended Complaint refers to A4's Amended Complaint, ECF No. 53.

18.     The term "Answer to Amended Complaint" refers to ECF No. 56, BCBSM's Answer to A4's Amended Complaint, including all responses, all affirmative defenses, and the prayer for relief.

19.     The terms "Blue" or "Blues" refers to commercial health insurers that have or had licensed the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos.

20.     All undefined terms shall be given their plain, ordinary meaning, unless indicated otherwise in the production request.  Terms subject to more than one interpretation shall be given the meaning necessary to bring within the scope of any Request all responses that might otherwise be construed to be outside of its scope.

21.     These Requests are intended to cover all documents in your possession, or subject to your custody and control, whether directly or indirectly.

22.     Documents should be segregated and identified by the Requests to which they are primarily responsive or produced as they are kept in the ordinary course of business.  Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.  In the case of an electronic document, including but not limited to emails, such document should be produced with its corresponding electronic attachments.

23.     For any responsive documents stored in electronic format, including email, You will produce those documents in searchable electronic format (e.g., single-page .tiff format with corresponding OCR or full-text files) on CD-ROMs, DVD-ROMs, portable or external hard drives or other widely-used electronic or optical storage media.  All Microsoft Excel and PowerPoint documents shall be produced in native format, and A4 reserves the right, as needed, to seek production of additional documents in native format.

24.     Any word processing documents with Track Changes, or similar editing markup, shall be produced so as to show all the track changes and comments in the document or as native.

6

25.     All responsive electronic documents will be produced with sufficient metadata to convey where these items begin and end (including attachments), the original file name, the original timestamps, the sender and recipients, and the folder where the document was located.

26.     If you claim that any requested document is exempt from production or disclosure because it is privileged or subject to protection, identify the document on a log that states the date, author, recipients, description and general subject matter of the document, along with the claimed basis for privilege or exemption from discovery.

27.     Documents that cannot be legibly copied should be produced or provided for inspection in their original form.

28.     If you at any time, had possession or control of a document responsive to these Requests, and if such document had been lost, destroyed, purged, or is not presently in your possession or control, then:

      a.  Identify that document;

      b.  State the date of its loss, destruction, purge, or separation from your possession or control;

      c.  State the circumstances surrounding its loss, destruction, purge, or separation from your possession or control; and

      d.  State its present or last known location, including the name, address, and telephone number of each person believed to have had possession of such document.

## REQUESTS

26.     All Documents or Communications concerning the First Defense in the Answer to Amended Complaint: "Plaintiff's alleged claims are barred, in whole or in part, by the equitable doctrine of laches."

27.     All Documents or Communications concerning "BCBSM's contracts with hospitals" referred to in the Fifth Defense in the Answer to Amended Complaint.

28.     All Documents or Communications, without regard to the Time Period, concerning the "government compulsion" referred to in the Seventh Defense in the Answer to Amended Complaint.

29.     All Documents or Communications concerning the "unclean hands" referred to in the Eighth Defense in the Answer to Amended Complaint.

30.     All Documents or Communications concerning the alleged "breach of contract" referred to in the Nineteenth Defense in the Answer to Amended Complaint.

31.     All Documents or Communications concerning the Twentieth Defense in the Answer to Amended Complaint: "Plaintiff's alleged claims are estopped, released, and/or waived by their own conduct."

32.     All Documents or Communications, without regard to the Time Period, concerning the contention in the Twenty-First Defense in the Answer to

Amended Complaint that "the challenged conduct is ancillary to protecting the value of lawfully acquired intellectual property rights and to licensure of those rights."

33.     All Documents or Communications, without regard to the Time Period, concerning the contention in the Twenty-Second Defense in the Answer to Amended Complaint that "BCBSA and the Blue Cross and Blue Shield plans constitute a single entity with respect to the licensing and use of the nationwide Blue Cross and Blue Shield trademarks and trade names and are therefore incapable of conspiring under Section One of the Sherman Act."

34.     All Documents or Communications, without regard to the Time Period, concerning the alleged "wrongdoing of third parties" referred to in the Twenty-Third Defense in the Answer to Amended Complaint.

35.     All Documents or Communications, without regard to the Time Period, concerning the alleged "res judicata and/or collateral estoppel" referred to in the Twenty-Fourth Defense in the Answer to Amended Complaint.

36.     All Documents or Communications, without regard to the Time Period, concerning the assertion that "Plaintiff's alleged claims . . . have been settled and/or dismissed with prejudice in prior litigation" in the Twenty-Fifth Defense in the Answer to Amended Complaint.

37.     All Documents or Communications, without regard to the Time Period, concerning "the license agreements between BCBSA and the 34 Blue Cross and Blue Shield plans" referred to in the Answer to the Amended Complaint.

38.     All Documents or Communications, from January 1, 1992, to present, concerning any agreements between BCBSM (or any predecessor entity or affiliate of BCBSM) and BCBSA (or any predecessor entity or affiliate of BCBSA), including, the agreements themselves, all negotiations regarding those agreements, and all communications or documents concerning those negotiations or agreements.

39.     All Documents or Communications, from January 1, 1992, to present, concerning any agreements relating to commercial health insurance between BCBSM (or any predecessor entity or affiliate of BCBSM) and any other Blue (or its affiliates) including, the agreements themselves, all negotiations regarding those agreements, and all communications or documents concerning those negotiations or agreements.

40.     All agreements, from January 1, 1992, to present, entered into by BCBSM concerning the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos.

41.     All Documents or Communications, from January 1, 1992, to present, concerning BCBSM's relationship with BCBSA (including any predecessor

entities), including all Documents or Communications concerning BCBSM's compliance with any requirements for membership or participation with BCBSA (or any predecessor entities) and all Documents or Communications concerning any waiver or exception granted to BCBSM regarding any BCBSM obligation in any licensing agreement with BCBSA (or any predecessor entity).

42.    All Documents or Communications concerning the "service areas" referred to in paragraph 90 of the Amended Complaint.

43.    Documents sufficient to show each version of the "best efforts" rules, as referred to in paragraph 15 of the Amended Complaint, to which BCBSM was subject, from January 1, 1994, to present.

44.    All Documents or Communications, from January 1, 2005, to present, concerning the "Best Efforts" rules referred to in paragraph 91 of the Amended Complaint, or the National Best Efforts rule, including documents or communications regarding compliance by BCBSM or any other Blue (or their affiliates) with that rule.

45.    All Documents or Communications, from January 1, 1992, to present, concerning the BlueCard program referred to in Paragraph 95 of the Amended Complaint.

46.     All Documents or Communications, from January 1, 1992, to present, concerning compliance, or non-compliance, by BCBSM or any other Blue with any licensing agreement with BCBSA (including any predecessor entity).

47.     All Documents or Communications, from January 1, 1992, to present, concerning the effect of the best efforts rules, National Best Efforts rule, or BlueCard program on reimbursement rates for healthcare services.

48.     All Documents or Communications, from January 1, 1992, to present, concerning the effect of the "service area" restrictions, referred to in paragraph 90 of the Amended Complaint, on reimbursement rates for healthcare services.

49.     All Documents or Communications concerning the rates at which other Blues (including their non-Blue branded affiliates) compensate providers for anesthesiology services.

50.     All Documents or Communications concerning the compensation for anesthesiology services in markets outside Michigan.

51.     All Documents or Communications concerning Blue Cross Blue Shield of Wisconsin.

52.     All Documents or Communications concerning Blue Cross Blue Shield of Ohio.

53.     All Documents or Communications concerning Anthem Blue Cross and Blue Shield of Indiana.

54.     All Documents or Communications concerning the value of the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos.

55.     All Documents or Communications, without regard to the Time Period, produced by or to you in the *In re Blue Cross Blue Shield Antitrust Litigation*, 2:13-CV-20000-RDP (N.D. Ala.), concerning the license agreements, best efforts rules, Blue Card program, or service area restrictions referred to in the Amended Complaint, or the National Accounts program.

56.     All Documents or Communications, without regard to the Time Period, produced by you in *In re Blue Cross Blue Shield Antitrust Litigation*, 2:13-CV-20000-RDP (N.D. Ala.), concerning the financial results for BCBSM and its health plans, including those of any non-Blue branded affiliates.

57.     All Documents or Communications, without regard to the Time Period, produced by or to you in *In re Blue Cross Blue Shield Antitrust Litigation*, 2:13-CV-20000-RDP (N.D. Ala.), relating to anesthesiology services, including the reimbursement rates for those services and the processing of claims related to those services.

58.     All Documents or Communications, without regard to the Time Period, produced by or to you in *In re Blue Cross Blue Shield Antitrust Litigation*,

2:13-CV-20000-RDP (N.D. Ala.), concerning the creation, management, or governance of BCBSA (including predecessor entities).

59.    All Documents or Communications, without regard to the Time Period, produced by or to you in *In re Blue Cross Blue Shield Antitrust Litigation*, 2:13-CV-20000-RDP (N.D. Ala.), concerning actual or potential competition among commercial health insurers either in the markets for selling commercial health insurance or in the markets for purchasing hospital or provider services.

60.    All Documents or Communications, without regard to the Time Period, produced by or to you in *In re Blue Cross Blue Shield Antitrust Litigation*, 2:13-CV-20000-RDP (N.D. Ala.), concerning any policies, restrictions, rules, guidelines, guidance, or memoranda from BCBSA (including predecessor entities) on use of the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos.

61.    All Documents or Communications concerning the compensation, including perquisites, to BCBSM's executive officers and directors for their services as employees or directors of BCBSM.

62.    Documents sufficient to identify each BCBSM affiliate that does not use the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos when providing commercial health insurance.

14

63.    All Documents or Communications, from January 1, 1992, to present, concerning competition or potential competition with other Blues (including non-Blue branded affiliates of other Blues).

64.    All Documents or Communications, from January 1, 1992, to present, concerning any disputes between any Blues (or their affiliates) and BCBSA (or any predecessor entity).

65.    All Documents or Communications, from January 1, 1992, to present, concerning any disputes between any Blue (including affiliates) and BCBSM (including affiliates) or any other Blue (including affiliates).

66.    All Documents or Communications, from January 1, 2010, to present, relating to BCBSM's conversion into a mutual nonprofit.

67.    All Documents or Communications concerning the economic effect on BCBSM (or its affiliates) or any other Blue (or its affiliates) of any restriction associated with the licensing of the Blue Cross, Blue Shield, or Blue Cross Blue Shield marks, trademarks, trade names, branding, trade dress, or logos.

68.    All Documents or Communications concerning the premiums BCBSM charged, or sought to charge, A4 for commercial health insurance.

69.    Claims data sufficient to show, for each claim line item for each episode of care involving anesthesiology or anesthesia services for a BCBSM health plan member:

15

a. A unique claim line-item ID (e.g., a specific service administered during a surgery, line items related to facility charges, etc.).

b. A unique claim ID, which may be common across multiple claim line-item IDs (e.g., a specific surgery during a hospitalization).

c. A unique episode-of-care ID, which may be common across multiple claim line-item IDs or claim IDs (for example, a hospitalization that involved multiple claims).

d. The date the service was administered.

e. For each Facility associated with the episode of care, the Facility name, ZIP code location, and TIN.

f. For each Facility associated with the episode of care, the admission and discharge dates.

g. For each Facility associated with the episode of care, the Facility type (e.g., in-patient hospital, ambulatory surgical center, etc.).

h. For each Facility associated with the episode of care, an indicator for whether the Facility is in-network or out-of-network.

i. For each Facility associated with the episode of care, The Facility's corporate owner or holding company name.

j. The ICD-9 and ICD-10 Diagnostic Codes, including those associated with any non-anesthesia procedures related to the episode or claim.

k. The Diagnosis Related Group (DRG) codes, including those associated with any non-anesthesia procedures related to the episode or claim.

l. The name and national provider identifier (NPI) of the provider.

m. An indicator for whether the provider is in-network or out-of-network.

n.  The name, TIN, and zip code of the health care billing entity (e.g., provider group, hospital, etc.) associated with the provider.

o.  Current Procedural Terminology (CPT) / Healthcare Common Procedure Coding System (HCPS) codes.

p.  The rate per unit of service (including the anesthesiology or anesthesia Conversion Factor where applicable).

q.  The number of units and the basis of the unit (e.g., time, visits, counts), including where applicable the number of anesthesiology or anesthesia units.

r.  The number of base units, including where applicable anesthesiology or anesthesia base units.

s.  Any procedure modifier codes for the service.

t.  The submitted charges for the service.

u.  The allowed amount for the service.

v.  The amount paid by BCBSM for the service.

w.  The insurance plan type (e.g., HMO, PPO, etc.)

x.  The insurance funding type (e.g., fully-insured, ASO, etc.)

y.  Member copayment for claim.

z.  Member deductible for claim.

aa. The Member ID.

bb. The Member's 5-digit ZIP code of residence.

cc. The Member's gender, age, race, and ethnicity.

dd. Any complications associated with the episode, claim, or claim line item.

ee. Indicator of whether diagnosis in claim was present at admission.

17

ff. Discharge Status Code.

70.     Claims data sufficient to show, for each claim line item for each episode of care involving anesthesiology or anesthesia services in Michigan subject to the BlueCard program:

    a. The name and unique identifier of the commercial health insurer for the person receiving the anesthesiology or anesthesia services, *i.e.*, the "Home Plan," as referred to in paragraph 95 of the Amended Complaint.

    b. A unique claim line-item ID (e.g., a specific service administered during a surgery, line items related to facility charges, etc.).

    c. A unique claim ID, which may be common across multiple claim line-item IDs (e.g., a specific surgery during a hospitalization).

    d. A unique episode-of-care ID, which may be common across multiple claim line-item IDs or claim IDs (for example, a hospitalization that involved multiple claims).

    e. The date the service was administered.

    f. For each Facility associated with the episode of care, the Facility name, ZIP code location, and TIN.

    g. For each Facility associated with the episode of care, the admission and discharge dates.

    h. For each Facility associated with the episode of care, the Facility type (e.g., in-patient hospital, ambulatory surgical center, etc.).

    i. For each Facility associated with the episode of care, an indicator for whether the Facility is in-network or out-of-network.

    j. For each Facility associated with the episode of care, The Facility's corporate owner or holding company name.

k.  The ICD-9 and ICD-10 Diagnostic Codes, including those associated with any non-anesthesia procedures related to the episode or claim.

l.  The Diagnosis Related Group (DRG) codes, including those associated with any non-anesthesia procedures related to the episode or claim.

m.  The name and national provider identifier (NPI) of the provider.

n.  An indicator for whether the provider is in-network or out-of-network.

o.  The name, TIN, and zip code of the health care billing entity (e.g., provider group, hospital, etc.) associated with the provider.

p.  Current Procedural Terminology (CPT) / Healthcare Common Procedure Coding System (HCPS) codes.

q.  The rate per unit of service (including the anesthesiology or anesthesia Conversion Factor where applicable).

r.  The number of units and the basis of the unit (e.g., time, visits, counts), including where applicable the number of anesthesiology or anesthesia units.

s.  The number of base units, including where applicable anesthesiology or anesthesia base units.

t.  Any procedure modifier codes for the service.

u.  The submitted charges for the service.

v.  The allowed amount for the service.

w.  The amount paid by BCBSM for the service.

x.  The insurance plan type (e.g., HMO, PPO, etc.)

y.  The insurance funding type (e.g., fully-insured, ASO, etc.)

z.  Member copayment for claim.

19

aa. Member deductible for claim.

bb. The Member ID.

cc. The Member's 5-digit ZIP code of residence.

dd. The Member's gender, age, race, and ethnicity.

ee. Any complications associated with the episode, claim, or claim line item.

ff. Indicator of whether diagnosis in claim was present at admission.

gg. Discharge Status Code.

71.    Claims data sufficient to show, for each claim line item for each episode of care that involves anesthesiology or anesthesia services that are for a BCBSM health plan member, provided outside Michigan, and subject to the BlueCard program:

a.  The name and unique identifier of the applicable "Host Plan" as referred to in paragraph 95 of the Amended Complaint.

b.  A unique claim line-item ID (e.g., a specific service administered during a surgery, line items related to facility charges, etc.).

c.  A unique claim ID, which may be common across multiple claim line-item IDs (e.g., a specific surgery during a hospitalization).

d.  A unique episode-of-care ID, which may be common across multiple claim line-item IDs or claim IDs (for example, a hospitalization that involved multiple claims).

e.  The date the service was administered.

f.  For each Facility associated with the episode of care, the Facility name, ZIP code location, and TIN.

g.  For each Facility associated with the episode of care, the admission and discharge dates.

h.  For each Facility associated with the episode of care, the Facility type (e.g., in-patient hospital, ambulatory surgical center, etc.).

i.  For each Facility associated with the episode of care, an indicator for whether the Facility is in-network or out-of-network.

j.  For each Facility associated with the episode of care, The Facility's corporate owner or holding company name.

k.  The ICD-9 and ICD-10 Diagnostic Codes, including those associated with any non-anesthesia procedures related to the episode or claim.

l.  The Diagnosis Related Group (DRG) codes, including those associated with any non-anesthesia procedures related to the episode or claim.

m.  The name and national provider identifier (NPI) of the provider.

n.  An indicator for whether the provider is in-network or out-of-network.

o.  The name, TIN, and zip code of the health care billing entity (e.g., provider group, hospital, etc.) associated with the provider.

p.  Current Procedural Terminology (CPT) / Healthcare Common Procedure Coding System (HCPS) codes.

q.  The rate per unit of service (including the anesthesiology or anesthesia Conversion Factor where applicable).

r.  The number of units and the basis of the unit (e.g., time, visits, counts), including where applicable the number of anesthesiology or anesthesia units.

s.  The number of base units, including where applicable anesthesiology or anesthesia base units.

21

t.  Any procedure modifier codes for the service.

u.  The submitted charges for the service.

v.  The allowed amount for the service.

w.  The amount paid by BCBSM for the service.

x.  The insurance plan type (e.g., HMO, PPO, etc.)

y.  The insurance funding type (e.g., fully-insured, ASO, etc.)

z.  Member copayment for claim.

aa. Member deductible for claim.

bb. The Member ID.

cc. The Member's 5-digit ZIP code of residence.

dd. The Member's gender, age, race, and ethnicity.

ee. Any complications associated with the episode, claim, or claim line item.

ff.  Indicator of whether diagnosis in claim was present at admission.

gg. Discharge Status Code.

Date: December 6, 2022

/s/ David Barillari
BOIES SCHILLER FLEXNER LLP
Jonathan Schiller, Esq. (admitted in E.D. Mich.,
N.Y. Bar No. 4523460)
David Barillari, Esq. (admitted in E.D. Mich., N.Y.
Bar No. 5448410)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
jschiller@bsfllp.com
dbarillari@bsfllp.com

22

Richard A. Feinstein, Esq. (admitted in E.D. Mich.,
D.C. Bar 324848)
1401 New York Ave., NW
Washington, D.C. 20005
(202) 895-5243
rfeinstein@bsfllp.com

RILEY SAFER HOLMES & CANCILA LLP
Gregory L. Curtner (P12414)
Matthew Kennison (P79653)
121 W. Washington Street, Suite 402
Ann Arbor, MI 48104
(734) 773-4900
gcurtner@rshc-law.com
mkennison@rshc-law.com

*Counsel for Anesthesia Associates of Ann Arbor,
PLLC*