**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | MDL No. 2406 |

*Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, **No. 2:20-cv-12916-TGB-APP (E.D. Mich. 2020)**

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S
<u>MOTION TO VACATE CONDITIONAL TRANSFER ORDER 39</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

A.    The *A4* Action in the Eastern District of Michigan Has Been Litigated for Two Years and Has Pending Pre-Trial Rulings Concerning Claims Not Implicated in the MDL Proceedings. ..................................................................................................... 3

B.    The Ten-Year Old MDL Proceedings Have Reached an Advanced Stage, with Discovery Closed and Numerous Pre-Trial Rulings Issued. ........................................ 4

ARGUMENT ..................................................................................................................... 5

I.    Transfer Is Inappropriate Because the A4 Action Would Disrupt and Delay the Late-Stage MDL Proceedings, Without Creating any Convenience or Efficiency Benefits. 5

A.    Transfer Would Disrupt and Delay the MDL Proceedings by Requiring the Transferee Court to Handle Pre-Trial Issues and Discovery Involving Claims and Facts Unique to the *A4* Litigation. ................................................................................ 5

1.    The A4 Litigation Involves Claims that Differ Significantly from the MDL Claims. ..................................................................................................... 5

2.    The Blues Conspiracy Claims in the A4 Litigation Would Also Require Re-Opening Discovery and Additional Pre-Trial Proceedings. ................................. 10

B.    Because the MDL Proceedings Are at an Advanced Stage, with Discovery Closed and Multiple Summary Judgment Motions Resolved, the Benefit of Transfer Is Minimal. ..................................................................................................... 12

C.    Any Benefits of Transfer Can Be Achieved Instead Through Alternatives, Including Relying on Completed MDL Discovery, and Judge Berg Continuing to Take Guidance from the MDL Court's Decisions. ............................................................. 14

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Conroy v. Fresh Del Monte Produce, Inc.*,
325 F. Supp. 2d 1049 (N.D. Cal. 2004) ................................................................. 8

*In re A.H. Robins Co., Inc.*,
610 F. Supp. 1099 (U.S. Jud. Pan. Mult. Lit. 1985)........................................... 14

*In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*,
542 F. Supp. 2d 1357 (U.S. Jud. Pan. Mult. Lit. 2008)........................................ 6

*In re Blue Cross Blue Shield Antitrust Litig.*,
908 F. Supp. 2d 1373 (U.S. Jud. Pan. Mult. Lit. 2012)............................. 4, 6, 7, 16

*In re Blue Cross Blue Shield Antitrust Litigation*,
No. 2:13-cv-20000-RDP (N.D. Ala.) ................................................................ 4, 5

*In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*,
659 F. Supp. 2d 1371 (U.S. Jud. Pan. Mult. Lit. 2009)..................................... passim

*In re Cessna 208 Series Aircraft Prod. Liab. Litig.*,
655 F. Supp. 2d 1379 (U.S. Jud. Pan. Mult. Lit. 2009)..................................... passim

*In re Checking Acct. Overdraft Litig.*,
818 F. Supp. 2d 1373 (U.S. Jud. Pan. Mult. Lit. 2011)......................... 12, 13, 14, 15

*In re Medtronic, Inc., Implantable Defibrillators Prod. Liab. Litig.*,
543 F. Supp. 2d 1370 (U.S. Jud. Pan. Mult. Lit. 2008)................................... 14, 15

*In re Petroleum Prod. Antitrust Litig.*,
476 F. Supp. 455 (U.S. Jud. Pan. Mult. Lit. 1979)........................... 5, 6, 12, 14

*Ohio v. American Express Co.*,
138 S. Ct. 2274 (2018) .......................................................................................... 4

**Statutes**

28 U.S.C. § 1407................................................................................................... 5, 14

**Rules**

Fed. R. Civ. Proc. 54(b) ................................................................................ 1, 2, 5, 7, 8

**Other Authorities**

Manual of Complex Litigation § 20.14.................................................................... 15

Plaintiff Anesthesia Associates of Ann Arbor, PLLC ("A4") respectfully submits this memorandum of law in support of A4's Motion to Vacate Conditional Transfer Order 39.

## PRELIMINARY STATEMENT

*Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan* is a two-year old matter, between a single plaintiff and a single defendant, and which involves unique pre-trial issues concerning conduct by the parties in 2019, nearly a decade after these MDL proceedings began. Transferring the *A4* litigation onto the ten-year old *In re Blue Cross Blue Shield Antitrust Litigation* MDL proceedings—where discovery has already closed and numerous summary judgment decisions have already been issued—would disrupt and delay the MDL process without creating any convenience or efficiency benefits. Conditional Transfer Order 39 should therefore be vacated, because transfer "to the MDL would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 655 F. Supp. 2d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2009).

Delay and Disruption to the MDL Proceedings: transferring the *A4* litigation would immediately bog down the transferee court with new and complex pre-trial issues, including dual pending Rule 54(b) motions seeking appeals on claims and counterclaims by A4 and defendant Blue Cross Blue Shield of Michigan ("BCBSM"). The claims in these Rule 54(b) motions have no parallel in the MDL proceedings. As the presiding Judge Berg of the Eastern District of Michigan explained last December, these claims concern "allegations about BCBSMI's conduct toward Michigan hospitals and A4's contractual relationships with independent contractors and Michigan hospitals," issues that the alleged license-agreement conspiracy at the heart of the MDL "does note implicate." Moreover, BCBSM stated in a filing last week that as to the

license-agreement aspect of the *A4* litigation, BCBSM plans on raising defenses, and seeking related discovery, regarding issues that have not been explored in the MDL.  Thus, regardless of how the Rule 54(b) motions are decided, transferring the *A4* litigation would necessitate re-opening discovery and require the transferee court to adjudicate pre-trial issues that are unique to the *A4* litigation.

Lack of Benefit to the Parties and Witnesses: This Panel has repeatedly recognized that the benefit of transferring individual actions diminishes as MDL proceedings reach advanced stages.  The *In re Blue Cross Blue Shield Antitrust Litigation* proceedings have reached that stage.  Discovery has been closed for over a year, and the MDL court has issued numerous summary judgment decisions resolving pre-trial issues.  These accomplishments by the MDL court render transfer "no longer necessary to achieve the just and efficient conduct of the litigation."  *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 659 F. Supp. 2d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2009).

Presence of Suitable Alternatives to Transfer: The advanced stage of the MDL proceedings also means that numerous alternatives are available that can achieve the benefits of the MDL without transfer.  First, the parties in the *A4* litigation can seek access to the discovery from the MDL proceedings.  A4 has already begun that process and has no plans in the *A4* litigation to seek additional discovery from any MDL party (save BCBSM).  Second, the court presiding over the *A4* litigation has already taken guidance from the rulings in the MDL proceedings and can continue to do so.

In short, transferring the two-year old *A4* litigation would delay and complicate the MDL proceedings, and any benefit of that transfer could be achieved instead, without disruption, by alternatives such as discovery sharing.  Conditional Transfer Order 39 should be vacated.

**BACKGROUND**

**A.  The *A4* Action in the Eastern District of Michigan Has Been Litigated for Two Years and Has Pending Pre-Trial Rulings Concerning Claims Not Implicated in the MDL Proceedings.**

In October 2020, A4, an anesthesiology provider, sued BCBSM, a Blue insurer, alleging three sets of claims.  *Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, No. 2:20-cv-12916-TGB-APP (E.D. Mich. 2020) (hereinafter, "*A4*").  First, A4 alleged that BCBSM, in 2019, had violated the Sherman Antitrust Act by conspiring with hospitals to reduce competition in the market for purchasers of anesthesiology services.  Ex. D, Compl. ¶¶ 21, 208, *A4*, ECF 1 (Oct. 29, 2020).  Second, A4 alleged that in 2019, BCBSM had interfered with A4's contractual relations with hospitals and physicians, imposed unlawful duress on A4, and made malicious threats that harmed A4, all in violation of Michigan law.  *See id.* ¶¶ 5-20, 174-200.  Third, A4 alleged that BCBSM had conspired with other Blues nationwide to restrict competition through license-agreements.  *See id.* ¶¶ 35-39.

In 2021, BCBSM filed counterclaims alleging that "A4 functions as a cartel through the use of exclusive agreements with its affiliated anesthesiologists and hospitals where they work, in violation of the Sherman Act."  Ex. G, Order at 2, *A4*, ECF 48 (Mar. 31, 2022).

The U.S. District Court for the Eastern District of Michigan, Hon. Terrence G. Berg, dismissed A4's claims without prejudice on September 14, 2021, and dismissed BCBSM's counterclaims with prejudice on March 31, 2021.  *Id.* at 1-2.  On September 28, 2022, the court permitted A4 to replead its Sherman Act license-agreement claims and Michigan tort claims, while denying A4's request to replead the alleged Sherman Act hospital conspiracy; and on December 29, 2022, the court subsequently dismissed the Michigan tort claims on subject matter jurisdiction grounds.  Ex. K, Order at 2-3, 6-7, *A4*, ECF 63 (Dec. 29, 2022).

3

Currently pending before Judge Berg are Rule 54(b) motions from A4 and BCBSM, seeking to have their respective dismissed claims certified for immediate appeal to the Sixth Circuit.  *See* Ex. L, A4 Motion for Entry of Partial Final Judgment, *A4*, ECF 64 (Jan. 13, 2023); Ex. N, BCBSM Counter-Motion for Partial Final Judgment, *A4*, ECF 66 (Jan. 27, 2023).[1]

**B.  The Ten-Year Old MDL Proceedings Have Reached an Advanced Stage, with Discovery Closed and Numerous Pre-Trial Rulings Issued.**

Over ten years have passed since this Panel, in December 2012, centralized in the U.S. District Court for the Northern District of Alabama cases brought by healthcare providers and insurance subscribers over "the licensing agreements between and among the Blue Cross Blue Shield Association (BCBSA) and its 38 licensees (Blue Plans)."  *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1374 (U.S. Jud. Pan. Mult. Lit. 2012) (hereinafter the "*In re BCBS*" proceedings).  Since then, the MDL proceedings have reached an advanced stage, "[w]ith the Provider case now decoupled" from the subscriber actions "and discovery now closed," as BCBSM noted in a July 2021 MDL filing.  Ex. C, Defs.' Reply on Antitrust Standard of Review at 1, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2772 (July 12, 2021).  The MDL court has also issued multiple pre-trial rulings, including:

- a summary judgment decision on the standard of review to apply to providers' claims under Section 1 of the Sherman Act, Mem. Opinion & Order, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2933 (Aug. 9, 2022);

- a summary judgment decision on the standard of review to apply to the providers' group-boycott claims, Mem. Opinion & Order at 1, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2934 (Aug. 9, 2022);

- a summary judgment decision on whether *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018), affected the standard of review applicable to the providers'

---

[1] As required by Eastern District of Michigan Local Rules, A4 met-and-conferred with BCBSM about A4's intent to file a Rule 54(b) motion on January 5, 2023.  *See* Ex. L at 2.  The very next day, BCBSM filed its Notice of Potential Tag-Along Action.  *Id.* at 15.

claims, Mem. Opinion & Order at 1, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2901 (Feb. 16, 2022);

- a summary judgment decision on the single-entity defense, Mem. Opinion at 1, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2063 (Apr. 5, 2018); and

- a summary judgment decision on the filed-rate doctrine, Mem. Opinion at 1, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 997 (Feb. 23, 2017).

## ARGUMENT

### I. Transfer Is Inappropriate Because the A4 Action Would Disrupt and Delay the Late-Stage MDL Proceedings, Without Creating any Convenience or Efficiency Benefits.

A conditional transfer order should be vacated when transfer "to the MDL would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 655 F. Supp. 2d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2009) (vacating conditional transfer order); *see* 28 U.S.C. § 1407. To make that assessment, the Panel must balance the potential benefits of transfer against the risk of disruption or delay to the proceedings and against the availability of "alternatives to Section 1407 transfer," such as sharing discovery. *In re Petroleum Prod. Antitrust Litig.*, 476 F. Supp. 455, 458 (U.S. Jud. Pan. Mult. Lit. 1979). Here, those factors demonstrate that transferring the *A4* action would provide neither convenience to the parties and witnesses nor would it promote efficiency. The Conditional Transfer Order should therefore be vacated.

### A. Transfer Would Disrupt and Delay the MDL Proceedings by Requiring the Transferee Court to Handle Pre-Trial Issues and Discovery Involving Claims and Facts Unique to the *A4* Litigation.

*1. The A4 Litigation Involves Claims that Differ Significantly from the MDL Claims.*

Transfer is particularly inappropriate when it would "disrupt" or "delay the orderly progress of pretrial proceedings in the transferee district." *Id.* For example, the Panel has vacated conditional transfer orders when the actions to-be-transferred involved claims that "will

5

likely require unique discovery and other pretrial proceedings." *In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 542 F. Supp. 2d 1357, 1358 (U.S. Jud. Pan. Mult. Lit. 2008). Likewise, in *In re Petroleum*, the Panel vacated a conditional transfer order, because transfer "would have a significant impact upon the pretrial program designed by" the transferee court, including that court's "order governing the scope of discovery." 476 F. Supp. at 458.

Here, transferring the *A4* action presents the same risks as *In re Ameriquest* and *In re Petroleum*. Specifically, the *A4* litigation involves four sets of complex claims, only one of which overlaps with the "common factual core" of the MDL proceedings, *i.e.*, "the state BCBS entities' relationship with the national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas, among other restrictions." *In re BCBS.*, 908 F. Supp. 2d at 1376. The four sets of claims that have been raised in the *A4* action are:

i. **the Hospital Conspiracy Claims:** claims by A4 that BCBSM violated Section 1 and Section 2 of the Sherman Act by conspiring with Michigan hospitals to restrain trade in the market for purchasing anesthesiology services, *see* Ex. K at 2, 4-5;

ii. **the Michigan Tort Claims:** claims by A4 that BCBSM violated Michigan law by tortiously interfering with A4's contracts with hospitals and anesthesiologists in 2019, by breaching agreements with A4's independent contractors to impose duress on A4; and by making malicious threats to retaliate against A4's decision to leave BCBSM's network, *see id.* at 1, 4-5; Ex. C at *id.* ¶¶ 5-20, 174-200;

iii.  **the BCBSM Counterclaims:** counterclaims by BCBSM "that A4 functions as a cartel through the use of exclusive agreements with its affiliated anesthesiologists and hospitals where they work in violation of the Sherman Act," Ex. G at 2; and

iv. **the Blues Conspiracy Claims**: claims by A4 that BCBSM violated Section 1 and Section 2 of the Sherman Act through "BCBS-MI's agreements restricting competition among the other 'Blues' companies." Ex. K at 2; *see* Ex. C at ¶¶ 35-39.

Of these, only the fourth, the Blues Conspiracy, shares a "common factual core" with the MDL claims. *In re BCBS*, 908 F. Supp. 2d at 1376. Indeed, Judge Berg in the Eastern District of Michigan recently opined on the lack of factual relationship between the Blues Conspiracy claims and the other claims raised by A4:

> While **the Hospital Conspiracy involved allegations about BCBSMI's conduct toward Michigan hospitals and A4's contractual relationships with independent contractors and Michigan hospitals**—factual claims that are central to the state law claims—**the Blues Conspiracy does not**. The Blues Conspiracy is based on the allegedly anticompetitive effects of BCBS-MI's agreements with other Blues across the country. And **the Blues Conspiracy does not implicate BCBS-MI's direct contractual relationships with Michigan hospitals or A4, Michigan hospitals' conduct toward A4, nor their relationships with each other**.

Ex. K at 5 (emphasis added). The Hospital Conspiracy Claims, Michigan Tort Claims, and BCBSM Counterclaims encompass facts and legal issues separate from the MDL proceedings.

If this case were transferred, the MDL court would immediately be faced with pending motions regarding these unique, and factually distinct claims, on which the MDL court has no background. Both A4 and BCBM have pending Rule 54(b) motions seeking partial final judgments. A4 seeks partial final judgment on the Hospital Conspiracy Claims (which Judge Berg dismissed without prejudice and then denied leave to replead) and Michigan Tort Claims (which Judge Berg dismissed on subject matter jurisdiction grounds). Ex. L at 1; *see* p.3, *supra*. BCBSM seeks partial final judgment on its counterclaim (which Judge Berg dismissed with prejudice). Ex. N at 1-2; *see* p.3, *supra*.

There would be no convenience or efficiency benefit to transferring the case and having the MDL court decide these pending motions. Judge Berg is in a better position to decide the pending Rule 54(b) motions, because he is "readily familiar" with the issues underlying them; whereas, those issues are absent from the MDL proceedings. *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (denying stay pending MDL transfer). By contrast, if the action were transferred now, the transferee court would have to acquaint itself with two years of proceedings in the *A4* action, just to decide whether to issue a Rule 54(b) partial final judgment.

Regardless of how these pending Rule 54(b) motions are decided, transfer would result in the MDL court being saddled with additional pretrial decisions and discovery based on the *A4* action. For example, if the motions are granted, and either side is successful on appeal, then some or all of the dismissed claims will be reintroduced, thus opening up separate tracks of discovery and pre-trial rulings. If, instead, the Rule 54(b) relief is denied, then either A4 or BCBSM can seek to have the dismissal of its respective claims "revised at any time" by the MDL court, including by seeking leave to amend the pleadings. Fed. R. Civ. Proc. 54(b).

Thus, transfer would immediately entrench the MDL court with Rule 54(b) motions involving claims that "differ significantly from the Blues Conspiracy" claims in the MDL, Ex. K at 6, and would likely require the Court to resolve other pre-trial issues, including discovery, regarding those claims.

The Clerk of the Panel faced a similar situation last year, when it declined to issue a conditional transfer order for *Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company*, No. 8:20-cv-00102-JWH-ADSx (C.D. Cal.), and the same reasoning applies here. *See In re BCBS*, MDL 2406, ECF 557 (Apr. 5, 2022). If anything, the case for

transferring *Women's Recovery Center* was greater than here: that case involved many of the same defendants from the *In re BCBS* proceedings, and the amended complaint's Sixth Cause of Action sought recovery from those defendants for "engag[ing] in a conspiracy to suppress, artificially reduce and fix the pricing for healthcare services . . . as expressed in *In re Blue Cross Blue Shield Antitrust Litigation*."  Ex. F, Exhibits to Notice of Potential Tag Along Action, *In re BCBS*, MDL 2406, ECF 555-3 at 208, ¶¶ 334-335 (*Women's Recovery Center* 3d Am. Consol. Compl.); *see id.* at 2-22 (listing parties on the *Women's Recovery Center* action); *see also* Ex. A, 4th Am. Complaint at 3-7, *In re BCBS*, 2:13-cv-20000-RDP, ECF 1083 (Apr. 18, 2017) (listing defendants in the provider MDL action).  However, while the *Women's Recovery Center* complaint explicitly sought recovery against many of the MDL defendants based on the same facts "as expressed in *In re Blue Cross Blue Shield Antitrust Litigation*," Ex. F at 208, ¶ 335, and while the complaint included identical, or near-identical allegations to those in the provider complaint in the MDL proceedings, Ex. E, Notice of Potential Tag-Along Action, MDL 2406, ECF 555 at 3-7, the *Women's Recovery Center* complaint *also* raised multiple other claims that were *separate from* the facts in the MDL proceedings, including an ERISA claim, Ex. F at 153, ¶¶ 255-87, and a breach of contract claim, *id.* at 180, ¶¶ 288-307.

The existence of these separate claims outweighed the overlap between the MDL proceedings and the *Women's Recovery Center* Sixth Cause of Action; accordingly, the Clerk of the Panel declined to enter a conditional transfer order.  *See In re BCBS*, MDL 2406, ECF 557 (Apr. 5, 2022).  Here, the case for vacatur is even stronger, given that the *A4* litigation involves *only one* of the defendants in the MDL proceedings, rather than several of them.  Therefore, transferring the *A4* action would benefit at most, only one party, BCBSM, while otherwise creating delay and disruption.

2.    *The Blues Conspiracy Claims in the A4 Litigation Would Also Require Re-Opening Discovery and Additional Pre-Trial Proceedings.*

Transferring the *A4* action risks delay and disruption for an additional reason: A4's Blues Conspiracy claims, and BCBSM's asserted defenses to those claims, involve factual issues separate and distinct from those covered in the MDL proceedings.  For example, A4's Amended Complaint raises numerous factual issues not found in the provider plaintiffs' Fourth Amended Complaint in the MDL proceedings:

i. A4's complaint focuses on the market for buying anesthesiology services and on an aspect of its compensation system, the Relative Value Guide, which "is unique to anesthesiologists among medical practitioners."  Ex. I, Am. Compl. ¶ 71, *A4*, ECF 53 (Oct. 7, 2022); *see id.* at ¶¶ 68-81, 168.  A4 alleges that BCBSM's conspiracy with other Blues enabled BCBSM to set a component of that compensation system, the anesthesiology conversion factor, at a uniform, below-competitive rate, and that BCBSM's conversion factor is one of the lowest in the nation.  *See id.* ¶¶ 2, 135-47;

ii. A4 alleges that the markets at issue in Michigan "substantially changed" after BCBSM in 2013 ceased to be Michigan's "insurer of last resort," *id.* ¶ 52; and

iii. A4 has alleged that BCBSM's actions have led to an exodus of anesthesiologists from the state of Michigan to other states (resulting in shuttered operating rooms in Michigan due to lack of anesthesiologists), and led to Michigan consumers paying increased quality-adjusted-prices for anesthesiology services, *see, e.g., id.* ¶¶ 1-2, 7-9, 46.

BCBSM's asserted defenses in the *A4* action likewise raise factual issues not found in the MDL proceedings.  Last Friday, January 27, 2023, BCBSM informed Judge Berg that as part of litigating A4's Blues Conspiracy claims, BCBSM plans on seeking "discovery to show that A4 was not losing or having trouble recruiting anesthesiologists because of BCBSM's allegedly low

10

uniform rate, but rather that A4 was having these problems based on its own behavior," facts that have not been explored in the MDL proceedings.  Ex. M, BCBSM Opp'n Br. at 17, *A4*, ECF 65 (Jan. 27, 2023).

Similarly, BCBSM has pleaded affirmative defenses in the *A4* action that are not found in BCBSM's answer in the MDL proceedings, including:

i. that "any action taken by or on behalf of BCBSM was justified, constituted bona fide business competition, and was taken in pursuit of its legitimate business interests, and therefore is privileged," Ex. J, Answer to Am. Compl. at 132, *A4*, ECF 56 (Oct. 21, 2022) (Fourth Defense);

ii. that "Plaintiff's alleged claims are barred by their own breach of contract," *id.* at 134 (Nineteenth Defense); and

iii. that "Plaintiff's alleged damages, if any, were caused by the wrongdoing of third parties," *id.* at 134 (Twenty-Third Defense).

BCBSM's answer in the MDL proceedings does not included these defenses.  *See* Ex. B, BCBSM Answer to 4th Am. Compl. at 274-77, *In re BCBS*, ECF 1335 (July 12, 2017) (not including these defenses).[2]

Thus, even when considering the *A4* claims that share factual overlap with the MDL proceedings, the *A4* litigation still presents unique allegations, theories, and defenses that will require their own discovery and pre-trial proceedings.  The conditional transfer order should therefore be vacated to avoid unnecessary delay and disruption.  *See In re Petroleum*, 476 F.

---

[2] After the Eastern District of Michigan dismissed A4's state-law claims on subject matter jurisdiction grounds, A4 counsel asked BCBSM counsel on January 6, 2023, whether BCBSM no longer intends to pursue any of BCBSM's affirmative defenses.  BCBSM has not responded.

Supp. at 457 (vacating transfer order, where transfer would require "unique discovery concerning certain issues").

### B. Because the MDL Proceedings Are at an Advanced Stage, with Discovery Closed and Multiple Summary Judgment Motions Resolved, the Benefit of Transfer Is Minimal.

The advanced stage of the MDL proceedings not only increases the risk of disruption and delay from transfer, it also *decreases* the potential for any benefit from such transfer.  The Panel has recognized that "[m]ultidistrict litigation is not static," and that "the relative merits of transferring additional cases can change as the transferee court completes its primary tasks."  *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 659 F. Supp. 2d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2009); *accord In re Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373, 1374 (U.S. Jud. Pan. Mult. Lit. 2011) ("As we have previously noted, the relative merits of transferring new tag-along actions to an ongoing MDL can change over time . . . .").

For example, the Panel vacated a conditional transfer order in a prior proceeding because "[a]ll common discovery was completed in the transferee district" and the transferee court had completed "many well considered and useful rulings on procedural, substantive and evidentiary issues."  *In re Bridgestone/Firestone*, 659 F. Supp. 2d at 1372.  Under those circumstances, the Panel concluded that transfer involved no benefits over the alternatives, including having parties in "subsequent actions . . . avail themselves of the documents and depositions accumulated," in the MDL proceedings, and having judges in those actions take "guidance in" the MDL court's rulings.  *Id.* at 1372-73.

The Panel reached the same conclusion when it vacated a conditional transfer order in another MDL proceeding that, just as in *In re BCBS*, had reached an advanced stage.  *See In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 655 F. Supp. 2d at 1380.  The Panel vacated the conditional transfer order in that case after observing that "[a]ll common discovery is completed"

12

and that the transferee court had resolved "multiple complex motions," including "for summary

judgment." *Id.* at 1380 & n.1.  The Panel further observed, "Even without transfer to the [MDL],

the *Friedman* parties can avail themselves of the thousands of documents produced and multiple

depositions taken in the MDL," and, "The Southern District of Ohio court can find useful

guidance in the many evidentiary and other rulings that [the transferee court] has issued." *Id.* at

1381.  "Given these circumstances, we conclude that transfer of *Friedman* to the MDL would not

serve the convenience of the parties and witnesses or promote the just and efficient conduct of

the litigation." *Id.*

The MDL proceedings here present the same circumstances.  Discovery long ago closed

in the provider action.  *See* Ex. C at 1.  The advanced stage of these proceedings is also evident

from the numerous summary judgment decisions issued by the transferee court, including on the

applicable standard of review.  *See* pp.4-5, *supra* (listing decisions).  The transferee court

proceedings have therefore "reached an advanced stage," where transfer no longer has the same

benefits it might have had even a year ago.  *In re Bridgestone/Firestone*, 659 F. Supp. 2d at 1372

(explaining that benefits of transfer can decrease from month to month).  The *In re BCBS*

proceedings are at least as, if not more "mature" than those in *In re Checking Acct. Overdraft

Litig.*, where the Panel determined that the proceedings were so advanced that transfer was

inappropriate, despite the fact that the MDL actions were still in "various stages of discovery."

818 F. Supp. 2d at 1373-74.

Under these circumstances, it is "appropriate and necessary for the Panel" to consider the

advanced stage of the MDL proceedings when deciding whether to transfer the *A4* litigation.  *In

re Bridgestone/Firestone,* 659 F. Supp. 2d at 1373.  When taking the maturity of the MDL

13

proceedings into consideration, it is evident that transfer is "no longer necessary to achieve the just and efficient conduct of the litigation." *Id.*

### C. Any Benefits of Transfer Can Be Achieved Instead Through Alternatives, Including Relying on Completed MDL Discovery, and Judge Berg Continuing to Take Guidance from the MDL Court's Decisions.

Transfer is not appropriate when the same benefits "could more easily be garnered by suitable alternatives to Section 1407 transfer." *In re Petroleum*, 476 F. Supp. at 458.  Here, "alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings between this action and the MDL" proceedings.  *In re Medtronic, Inc., Implantable Defibrillators Prod. Liab. Litig.*, 543 F. Supp. 2d 1370, 1371 (U.S. Jud. Pan. Mult. Lit. 2008).

First, where, as here, "common discovery" has closed, non-MDL parties "can avail themselves of the thousands of documents produced and multiple depositions taken in the MDL," thereby avoiding the risk of duplicative discovery or inconsistent discovery rulings.  *In re Cessna*, 655 F. Supp. 2d at 1380-81; *accord In re Bridgestone/Firestone*, 659 F. Supp. 2d at 1372-73.  Indeed, even in "mature" cases where discovery is still pending, the opportunity for litigants to "to avail themselves of the discovery already obtained in the MDL" has been relied on by the Panel when vacating a conditional transfer order.  *In re Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d at 1373-74; *see In re A.H. Robins Co., Inc.*, 610 F. Supp. 1099, 1100 (U.S. Jud. Pan. Mult. Lit. 1985) (holding that transfer is not appropriate where "[t]he bulk of the completed Dalkon Shield common discovery, along with the remaining discovery in the process of being completed in MDL–21, can be made available to the parties in the actions before the Panel without recourse to Section 1407 and without the need for disrupti[on]").

A4 has already begun the process of seeking from BCBSM discovery produced in the MDL proceedings, a process that will be simplified by the fact that BCBSM is a party to the

MDL.  For the avoidance of doubt: A4, in the nearly two-and-a-half years that the *A4* action has been pending, has not sought any discovery from any parties to the MDL other than BCBSM. A4 has no plans to subpoena new discovery from the other parties to the MDL, and instead intends to obtain copies of discovery completed in the MDL proceedings.  Therefore, having the *A4* action proceed in the Eastern District of Michigan poses no risk of duplicative discovery, and transfer would provide no marginal efficiency or convenience benefit to the numerous parties and witnesses in the MDL proceedings.  *See In re Medtronic, Inc., Implantable Defibrillators Prod. Liab. Litig.*, 543 F. Supp. 2d at 1371; *see also* Manual of Complex Litigation § 20.14 (outlining methods for streamlining discovery without transfer).

Second, where, as here, the MDL court has already made numerous pre-trial rulings, "the judges presiding over subsequent actions can almost certainly find useful guidance in [the MDL court's] many evidentiary and other rulings," thereby reducing the potential for conflicting rulings and "expedit[ing] the resolution of the subject actions."  *In re Bridgestone/Firestone*, 659 F. Supp. 2d at 1373; *accord In re Cessna*, 655 F. Supp. 2d at 1381.  Judge Berg in the Eastern District of Michigan has already taken "useful guidance" from the MDL proceedings, *id.*: Judge Berg relied on the MDL court's substantive analysis when granting A4's request to amend its Blues Conspiracy allegations. Ex. H, Order at 29, *A4*, ECF 52 (Sept. 28, 2022).  Judge Berg's reliance on the MDL court's analysis demonstrates that "even absent transfer, many benefits of the MDL are available to expedite resolution of this and other actions."  *In re Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d at 1374.

Accordingly, the purposes for which these MDL proceedings were created— "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings, . . . and conserv[ing] the resources of the parties, their counsel, and the judiciary"—can be achieved

15

without transferring the *A4* action. *In re BCBS*, 908 F. Supp. 2d at 1376. In these circumstances, where "even absent transfer, most of the benefits of the MDL are available to expedite resolution of the subject action[]," the appropriate solution is for the Panel to vacate the conditional transfer order. *In re Bridgestone/Firestone*, 659 F. Supp. 2d at 1373.

## CONCLUSION

The Panel should vacate Conditional Transfer Order 39.

Date: February 2, 2023

Respectfully submitted,

*/s/ Jonathan D. Schiller*
BOIES SCHILLER FLEXNER LLP
Jonathan D. Schiller, Esq. (N.Y. Bar No. 4523460)
David Barillari, Esq. (N.Y. Bar No. 5448410)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
jschiller@bsfllp.com
dbarillari@bsfllp.com

RILEY SAFER HOLMES & CANCILA LLP
Gregory L. Curtner (Mich. Bar No. P12414)
Matthew Kennison (Mich. Bar No. P79653)
121 W. Washington Street, Suite 402
Ann Arbor, MI 48104
(734) 773-4900
gcurtner@rshc-law.com
mkennison@rshc-law.com

*Counsel for Anesthesia Associates of Ann Arbor, PLLC*