# EXHIBIT F

# Exhibit 1A

ACCO,(ADSx),CONSOL,DISCOVERY,MANADR,PROTORD,SM

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:20-cv-00102-JWH-ADS

| | |
|---|---|
| Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company et al | Date Filed: 01/17/2020 |
| Assigned to: Judge John W. Holcomb | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Autumn D. Spaeth | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

Related Cases: 8:20-cv-02424-JWH-ADS
               2:21-cv-04427-JWH-ADS
               8:20-cv-00107-DOC-ADS
               8:20-cv-00108-DOC-ADS
               8:20-cv-00110-DOC-ADS
               8:20-cv-02412-JWH-ADS
               8:20-cv-00106-DOC-ADS
               8:20-cv-00577-DOC-ADS
               8:20-cv-00109-DOC-ADS
               8:20-cv-00112-DOC-ADS
               8:20-cv-00114-DOC-ADS
               8:20-cv-00104-DOC-ADS
               8:20-cv-00111-DOC-ADS
               8:20-cv-00578-DOC-ADS

Case in other court:  Superior Court of California, County of Orange,
                    30-02019-01116397

Cause: 29:1001 E.R.I.S.A.: Employee Retirement

**Plaintiff**

| | | |
|---|---|---|
| **Women's Recovery Center, LLC**<br>*a California limited liability company* | represented by | **Damon D Eisenbrey**<br>Callahan and Blaine APLC<br>3 Hutton Centre Drive 9th Floor<br>Santa Ana, CA 92707<br>714-241-4444<br>Fax: 714-241-4445<br>Email: deisenbrey@callahan-law.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Daniel J Callahan**<br>Callahan and Blaine APLC<br>3 Hutton Centre Drive 9th Floor<br>Santa Ana, CA 92707<br>714-241-4444<br>Fax: 714-241-4445<br>Email: dan@callahan-law.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Richard T Collins**<br>Callahan and Blaine APLC<br>3 Hutton Centre Drive 9th Floor<br>Santa Ana, CA 92707 |

714-241-4444
Fax: 714-241-4445
Email: rcollins@callahan-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
Theodora Oringher PC
535 Anton Boulevard Suite Ninth Floor
Costa Mesa, CA 92626
415-844-1985
Email: acanzoneri@tocounsel.com
*TERMINATED: 02/18/2022*

**Edward Susolik**
Callahan and Blaine APLC
3 Hutton Centre Drive 9th Floor
Santa Ana, CA 92707
714-241-4444
Fax: 714-241-4445
Email: es@callahan-law.com
*TERMINATED: 03/30/2021*

**Plaintiff**

**TML Recovery LLC**                    represented by    **Damon D Eisenbrey**
*a California limited liability company*                  (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Daniel J Callahan**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Richard T Collins**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Adrian L. Canzoneri**
                                                          (See above for address)
                                                          *TERMINATED: 02/18/2022*

                                                          **Edward Susolik**
                                                          (See above for address)
                                                          *TERMINATED: 03/30/2021*

**Plaintiff**

**Southern California Recovery Centers**    represented by    **Damon D Eisenbrey**
**Oceanside LLC**                                            (See above for address)
*a California limited liability company*                     *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Daniel J Callahan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

**Plaintiff**

**MMR Services LLC**                  represented by   **Damon D Eisenbrey**
*a California limited liability company*                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

**Plaintiff**

**Southern California Addiction Center Inc**   represented by   **Damon D Eisenbrey**
*a California corporation*                                      (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**

(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

**Plaintiff**

**Kool Living Inc**                          represented by **Damon D Eisenbrey**
*a California corporation*                   (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

**Plaintiff**

**Pacific Palms Recovery LLC**              represented by **Damon D Eisenbrey**
*a California limited liability company*     (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

**Plaintiff**

**Addiction Health Alliance LLC**                represented by **Damon D Eisenbrey**
*a California limited liability company*                        (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Daniel J Callahan**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Richard T Collins**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Adrian L. Canzoneri**
                                                               (See above for address)
                                                               *TERMINATED: 02/18/2022*

                                                               **Edward Susolik**
                                                               (See above for address)
                                                               *TERMINATED: 03/30/2021*

**Plaintiff**

**DR Recovery Encinitas LLC**                    represented by **Damon D Eisenbrey**
*a California limited liability corporation*                    (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Daniel J Callahan**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Richard T Collins**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Adrian L. Canzoneri**
                                                               (See above for address)
                                                               *TERMINATED: 02/18/2022*

                                                               **Edward Susolik**
                                                               (See above for address)
                                                               *TERMINATED: 03/30/2021*

**Plaintiff**

**Inland Detox Inc**                             represented by **Damon D Eisenbrey**
*a California corporation*                                      (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Daniel J Callahan**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

<u>**Plaintiff**</u>

**12 South LLC**                          represented by   **Damon D Eisenbrey**
*a California limited liability company*                    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

<u>**Plaintiff**</u>

**NTR Resources LLC**                     represented by   **Damon D Eisenbrey**
*a California limited liability company*                    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J Callahan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrian L. Canzoneri**

CM/ECF - California Central District

(See above for address)
*TERMINATED: 02/18/2022*

**Edward Susolik**
(See above for address)
*TERMINATED: 03/30/2021*

V.

**Defendant**

| | | |
|---|---|---|
| **Anthem Blue Cross Life and Health Insurance Company** *a California corporation* | represented by | **Amir Shlesinger** Reed Smith LLP 355 South Grand Avenue Suite 2900 Los Angeles, CA 90071-1514 213-457-8000 Fax: 213-457-8080 Email: ashlesinger@reedsmith.com *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Kenneth N Smersfelt**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
Fax: 213-457-8080
Email: ksmersfelt@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
213-457-8315
Email: eaizenman@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
Reed Smith LLP
355 South Grand Avenue Suite 2800
Los Angeles, CA 90071-1514
213-457-8000
Fax: 213-457-8080
Email: jlwood@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
Larson LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-545-0096
Fax: 213-623-2000
Email: jgershon@larsonllp.com
*TERMINATED: 03/30/2021*

Lorenzo E Gasparetti
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8038
Fax: 213-457-8080
Email: lgasparetti@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Inc.**
*an Indiana corporation*
*doing business as*
Anthem Health, Inc.

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Anthem Companies of California**
*a California corporation*

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**

(See above for address)
*TERMINATED: 03/30/2021*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Anthem Companies, Inc.**
*an Indiana corporation, doing business in*
*Wisconsin*
*doing business as*
Blue Cross and Blue Shield of Wisconsin

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Insurance Companies, Inc.**
*an Indiana corporation, doing business in*
*Indiana as ANTHEM BLUE CROSS AND*
*BLUE SHIELD OF INDIANA;*

represented by **Amir Shlesinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viant, Inc.**                              represented by    **Errol J. King , Jr.**
*a Nevada corporation*                                        Phelps Dunbar LLP
                                                             II City Plaza
                                                             400 Convention Street, Suite 1100
                                                             Baton Rouge, LA 70802
                                                             225-346-0285
                                                             Fax: 225-381-9197
                                                             Email: errol.king@phelps.com
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jenifer C. Wallis**
                                                             Munck Wilson Mandala LLP
                                                             1925 Century Park East, Suite 2300
                                                             Los Angeles, CA 90067
                                                             310-286-0377
                                                             Fax: 972-628-3616
                                                             Email: jwallis@munckwilson.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Katherine C. Mannino**
                                                             Phelps Dunbar LLP
                                                             II City Plaza
                                                             400 Convention Street, Suite 1100
                                                             Baton Rouge, LA 70802
                                                             225-376-7960
                                                             Fax: 225-381-9197
                                                             Email: katie.mannino@phelps.com
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Taylor J. Crousillac**
                                                             Phelps Dunbar LLP
                                                             II City Plaza
                                                             400 Convention Street, Suite 1100
                                                             Baton Rouge, LA 70802
                                                             225-346-0285
                                                             Fax: 225-381-9197
                                                             Email: taylor.crousillac@phelps.com
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Multiplan, Inc.**                          represented by    **Errol J. King , Jr.**
*a New York corporation*                                     (See above for address)
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jenifer C. Wallis**
                                                             (See above for address)

*ATTORNEY TO BE NOTICED*

**Katherine C. Mannino**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor J. Crousillac**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HealthRisk Resource Group, Inc.**
*an Iowa corporation*
*TERMINATED: 02/05/2020*

**Defendant**

**DOES**
*1 through 25, inclusive*

**Defendant**

**Blue Cross of California**
*a California corporation*

represented by **Amir Shlesinger**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
Fax: 213-457-8080
Email: ashlesinger@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Kenneth N Smersfelt**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
Fax: 213-457-8080
Email: ksmersfelt@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514

CM/ECF - California Central District

213-457-8000
Fax: 213-457-8080
Email: lgasparetti@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Alabama**                represented by    **Amir Shlesinger**
*an Alabama corporation*                                                    (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Avraham E Aizenman**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Jarrad Lucian Wood**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Jonathan Daniel Gershon**
                                                                            (See above for address)
                                                                            *TERMINATED: 03/30/2021*

                                                                            **Kenneth N Smersfelt**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Lorenzo E Gasparetti**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Arizona Inc**           represented by    **Amir Shlesinger**
*an Arizona corporation*                                                    (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Avraham E Aizenman**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Jarrad Lucian Wood**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Kenneth N Smersfelt**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Lorenzo E Gasparetti**
                                                                            (See above for address)
                                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**USAble Mutual Insurance Company**                     represented by    **William E von Behren**
*an Arkansas corporation doing business in*                                Von Behren and Hunter LLP
*Arkansas as ARKANSAS BLUE CROSS AND*                                      2041 Rosecrans Avenue Suite 367
*BLUE SHIELD;*                                                              El Segundo, CA 90245

CM/ECF - California Central District

310-607-9111
Fax: 310-615-3006
Email: Bvonbehren@vbhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Health Plans Inc**
*a Connecticut corporation, doing business in*
*Connecticut as ANTHEM BLUE CROSS AND*
*BLUE SHIELD OF CONNECTICUT*

**Defendant**

**Blue Shield of Florida Inc**
*a Florida corporation*

**Defendant**

**Blue Cross and Blue Shield of Georgia Inc**
*a Georgia corporation*

represented by **Amir Shlesinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Kenneth N Smersfelt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Health Care Service Corporation**
*an Illinois corporation, doing business in*
*Illinois as BLUE CROSS BLUE SHIELD OF*
*ILLINOIS IN Oklahoma as BLUE CROSS*
*AND BLUE SHIELD OF OKLAHOMA and in*
*Texas as BLUE CROSS AND BLUE SHEILD*
*OF TEXAS;*

represented by **Amir Shlesinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)

*TERMINATED: 03/30/2021*

**Kenneth N Smersfelt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Kansas City Inc**
*a Missouri corporation*

represented by **Amir Shlesinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan Daniel Gershon**
(See above for address)
*TERMINATED: 03/30/2021*

**Kenneth N Smersfelt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthem Health Plans of Kentucky Inc**
*a Kentucky corporation, doing business in Kentucky as BLUE CROSS BLUE SHIELD OF KENTUCKY;*

**Defendant**

**HMO Louisiana Inc**
*doing business in Louisiana as BLUE CROSS AND BLUE SHIELD OF LOUISIANA;*

**Defendant**

**Blue Cross and Blue Shield of Massachusetts Inc**
*a Massachusetts corporation;*

represented by **Carol B Lewis**
Von Behren and Hunter LLP
2041 Rosecrans Avenue Suite 367
El Segundo, CA 90245
310-607-9111
Fax: 310-615-3006
Email: clewis@vbhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**BCBSM Inc**
*a Minnesota corporation, doing business in*
*Minnesota as BLUE CROSS AND BLUE*
*SHIELD OF MINNESOTA, INC.;*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HMO Missouri Inc**
*a Missouri corporation, doing business in*
*Missouri as ANTHEM BLUE CROSS AND*
*BLUE SHIELD OF MISSOURI*

**Defendant**

**Blue Cross and Blue Shield of Nebraska Inc**
*Nebraska corporation;*

represented by **Amir Shlesinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jarrad Lucian Wood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth N Smersfelt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lorenzo E Gasparetti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of North Carolina**
*a North Carolina corporation;*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Community Insurance Company**
*an Ohio corporation, doing business in Ohio*
*as ANTHEM BLUE CROSS AND BLUE*
*SHIELD OF OHIO;*

<u>Defendant</u>

| | | |
|---|---|---|
| **Blue Cross and Blue Shield of South Carolina**<br>*a South Carolina corporation;* | represented by | **Carol B Lewis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William E von Behren**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Defendant</u>

| | | |
|---|---|---|
| **Blue Cross and Blue Shield of Rhode Island**<br>*a Rhode Island corporation;* | represented by | **Carol B Lewis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William E von Behren**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Defendant</u>

| | | |
|---|---|---|
| **Blue Cross Blue Shield of Tennessee Inc**<br>*a Tennessee corporation;* | represented by | **Carol B Lewis**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **William E von Behren**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Defendant</u>

**Anthem Health Plans of Virginia Inc**
*a Virginia corporation, doing business in*
*Virginia as ANTHEM BLUE CROSS AND*
*BLUE SHIELD OF VIRGINIA, INC.*

<u>Defendant</u>

| | | |
|---|---|---|
| **Capital Blue Cross**<br>*Pennsylvania corporation;* | represented by | **Michael A Naranjo**<br>Foley and Lardner LLP<br>555 California Street Suite 1700<br>San Francisco, CA 94104<br>415-434-4484<br>Fax: 415-434-4507<br>Email: mnaranjo@foley.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jason Yon-Wai Wu** |

CM/ECF - California Central District

Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104-1520
415-434-4484
Fax: 415-434-4507
Email: jwu@foley.com
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Klinsport**
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2418
213-972-4741
Fax: 213-486-0065
Email: kklinsport@foley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carefirst Bluechoice Inc**
*a District of Columbia corporation;*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carefirst of Maryland Inc**
*a Maryland corporation, doing business in
Maryland as CAREFIRST BLUE CROSS
BLUE SHIELD;*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Empire HealthChoice Assurance Inc**
*a New York corporation doing business in New
York as EMPIRE BLUE CROSS BLUE
SHIELD;*

**Defendant**

**Excellus Health Plan Inc**
*a New York corporation, doing business in
New York as EXCELLUS BLUE CROSS BLUE
SHIELD;*

represented by **Jason Yon-Wai Wu**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Klinsport**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

CM/ECF - California Central District

**Michael A Naranjo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HealthKeepers Inc**                    represented by    **Amir Shlesinger**
*a Virginia corporation;*                                   (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Avraham E Aizenman**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jarrad Lucian Wood**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jonathan Daniel Gershon**
                                                            (See above for address)
                                                            *TERMINATED: 03/30/2021*

                                                            **Kenneth N Smersfelt**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Lorenzo E Gasparetti**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Healthy Alliance Life Insurance Company**   represented by    **Amir Shlesinger**
*a Missouri corporation;*                                        (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Avraham E Aizenman**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Jarrad Lucian Wood**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Jonathan Daniel Gershon**
                                                                (See above for address)
                                                                *TERMINATED: 03/30/2021*

                                                                **Kenneth N Smersfelt**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Lorenzo E Gasparetti**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Highmark Blue Cross Blue Shield**
*a Pennsylvania corporation, doing business in*
*Pennsylvania as BLUE CROSS BLUE*
*SHIELD OF WESTERN PENNSYLVANIA;*

represented by **Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Highmark Blue Shield**
*Pennsylvania corporation, doing business in*
*Pennsylvania as PENNSYLVANIA BLUE*
*SHIELD;*

represented by **Avraham E Aizenman**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Independence Hospital Indemnity Plan Inc**
*a Pennsylvania corporation*
*formerly known as*
Independence Blue Cross

represented by **Jason Yon-Wai Wu**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Ann Klinsport**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A Naranjo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Premera Blue Cross**
*a Washington corporation;*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Regence Blue Cross Blue Shield of Oregon**
*an Oregon corporation, doing business in*
*Oregon as BLUE CROSS BLUE SHIELD OF*
*OREGON*

represented by **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Regence Blue Shield**
*a Washington corporation;*

<u>Defendant</u>

**Rocky Mountain Hospital and Medical**
**Service Inc**

represented by **Amir Shlesinger**
(See above for address)

a Colorado corporation, doing business in
Colorado as ANTHEM BLUE CROSS AND
BLUE SHIELD OF COLORADO;

ATTORNEY TO BE NOTICED

**Avraham E Aizenman**
(See above for address)
ATTORNEY TO BE NOTICED

**Jarrad Lucian Wood**
(See above for address)
ATTORNEY TO BE NOTICED

**Jonathan Daniel Gershon**
(See above for address)
TERMINATED: 03/30/2021

**Kenneth N Smersfelt**
(See above for address)
ATTORNEY TO BE NOTICED

**Lorenzo E Gasparetti**
(See above for address)
ATTORNEY TO BE NOTICED

**Defendant**

**Blue Cross and Blue Shield Association**            represented by **Anne I. Salomon**
an Illinois corporation, inclusive                                     Kirkland and Ellis LLP
                                                                       300 North LaSalle
                                                                       Chicago, IL 60654
                                                                       312-862-2000
                                                                       Fax: 312-862-2200
                                                                       Email: anne.salomon@kirkland.com
                                                                       PRO HAC VICE
                                                                       ATTORNEY TO BE NOTICED

**Daniel E. Laytin**
Kirkland and Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2198
Fax: 312-862-2200
Email: daniel.laytin@kirkland.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Michael J. Shipley**
Kirkland and Ellis LLP
555 South Flower Street Suite 3700
Los Angeles, CA 90071
213-680-8222
Fax: 213-808-8164
Email: michael.shipley@kirkland.com
ATTORNEY TO BE NOTICED

**Zachary D. Holmstead**
Kirkland and Ellis LLP
300 North Lasalle
Chicago, IL 60654
312-862-2392

Fax: 312-862-2200
Email: zachary.holmstead@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross and Blue Shield of Florida, Inc.**        represented by  **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Blue Cross Blue Shield of Minnesota**        represented by  **William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carol B Lewis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Louisiana Health Service & Indemnity Company**        represented by  **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Regence BlueShield of Washington**        represented by  **Carol B Lewis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E von Behren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Special Master**

**Stephen G. Larson**        represented by  **Stephen G. Larson**
Larson LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4888
Email: slarson@larsonobrienlaw.com
PRO SE

**Adrian L. Canzoneri**
(See above for address)
*TERMINATED: 02/18/2022*

**Damon D Eisenbrey**
Callahan and Blaine APLC
3 Hutton Centre Drive 9th Floor
Santa Ana, CA 92707
714-241-4444
Fax: 714-241-4445
Email: deisenbrey@callahan-law.com
*ATTORNEY TO BE NOTICED*

**Richard T Collins**
Callahan and Blaine APLC
3 Hutton Centre Drive 9th Floor
Santa Ana, CA 92707
714-241-4444
Fax: 714-241-4445
Email: rcollins@callahan-law.com
*ATTORNEY TO BE NOTICED*

V.

**Creditor**

**Ken Ito WELLS FARGO BANK,
NATIONAL ASSOCIATION, c/o Hemar
Rousso Heald LLP**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2020 | 1 | NOTICE OF REMOVAL from Superior Court of the State of California, County of Orange, case number. 30-2019-01116397-CU-BC-CJC Receipt No: 0973-25146928 - Fee: $400, filed by Defendants Anthem Insurance Companies, Inc., Anthem Inc. dba Anthem Health, Inc., Anthem Blue Cross Life and Health Insurance Company, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - State Court File) (Attorney Lorenzo E Gasparetti added to party Anthem Blue Cross Life and Health Insurance Company(pty:dft), Attorney Lorenzo E Gasparetti added to party Anthem Inc. dba Anthem Health, Inc.(pty:dft), Attorney Lorenzo E Gasparetti added to party Anthem Insurance Companies, Inc.(pty:dft), Attorney Lorenzo E Gasparetti added to party The Anthem Companies of California(pty:dft), Attorney Lorenzo E Gasparetti added to party The Anthem Companies, Inc.(pty:dft))(Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 2 | CIVIL COVER SHEET filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 3 | CERTIFICATE of Interested Parties filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc., (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | 4 | NOTICE of Related Case(s) filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The |

CM/ECF - California Central District

| | | Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
|---|---|---|
| 01/17/2020 | 5 | PROOF OF SERVICE filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc. dba Anthem Health, Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc., re Notice of Related Case(s), 4 , Certificate/Notice of Interested Parties, 3 , Notice of Removal (Attorney Civil Case Opening),,, 1 , Civil Cover Sheet (CV-71) 2 served on 01/17/2020. (Gasparetti, Lorenzo) (Entered: 01/17/2020) |
| 01/17/2020 | | CONFORMED COPY OF COMPLAINT filed by Plaintiff Women's Recovery Center, LLC in Orange County Superior Court on 12/5/2019, attached as Exhibit A. (jtil) (Entered: 01/22/2020) |
| 01/22/2020 | 6 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge Autumn D. Spaeth. (jtil) (Entered: 01/22/2020) |
| 01/22/2020 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 01/22/2020) |
| 01/23/2020 | 8 | STIPULATION Extending Time to Answer the complaint as to Anthem Insurance Companies, Inc. answer now due 2/21/2020; Anthem Inc. answer now due 2/21/2020; Anthem Blue Cross Life and Health Insurance Company answer now due 2/21/2020; The Anthem Companies of California answer now due 2/21/2020; The Anthem Companies, Inc. answer now due 2/21/2020, filed by Defendants Anthem Insurance Companies, Inc.; Anthem Inc.; Anthem Blue Cross Life and Health Insurance Company; The Anthem Companies of California; The Anthem Companies, Inc..(Gasparetti, Lorenzo) (Entered: 01/23/2020) |
| 01/23/2020 | 9 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER upon filing of the complaint by Judge David O. Carter. (kd) (Entered: 01/23/2020) |
| 02/05/2020 | 10 | NOTICE OF DISMISSAL filed by plaintiff Women's Recovery Center, LLC pursuant to FRCP 41a(1) as to HealthRisk Resource Group, Inc.. (Eisenbrey, Damon) (Entered: 02/05/2020) |
| 02/10/2020 | 11 | STIPULATION for Extension of Time to File Answer to 03/23/20 filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Proposed Order)(Gasparetti, Lorenzo) (Entered: 02/10/2020) |
| 02/12/2020 | 12 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: The Stipulations to Extend Time to File Answer to 3/23/20 are GRANTED by the Court 11 . ( Status Conference set for 3/2/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 02/12/2020) |
| 02/19/2020 | 13 | Joint REQUEST for Protective Order for production of confidential, proprietary, or private information filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 02/19/2020) |
| 02/21/2020 | 14 | STIPULATED PROTECTIVE ORDER by Magistrate Judge Autumn D. Spaeth granting 13 Request for Protective Order. (kh) (Entered: 02/21/2020) |
| 03/02/2020 | 15 | MINUTES of Status Conference held before Judge David O. Carter: The Court orders the above listed cases to be consolidated with SACV20-102 DOC(ADSx): Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Co. et al. All future filings shall be filed only under the low number case, SACV20-102 DOC(ADSx). SEE DOCUMENT FOR FURTHER INFORMATION. Court Reporter: CourtSmart. (twdb) (Entered: 03/04/2020) |
| 03/04/2020 | 16 | ORDER SETTING SCHEDULING CONFERENCE By Judge David O. Carter. Scheduling Conference set for 4/27/2020 at 08:30 AM before Judge David O. Carter. (kd) Modified on 3/7/2020 (kd). (Entered: 03/04/2020) |
| 03/10/2020 | 17 | NOTICE of Interested Parties filed by Defendants Multiplan, Inc., Viant, Inc., (Attorney Jenifer |

| | | |
|---|---|---|
| | | C Wallis added to party Multiplan, Inc.(pty:dft), Attorney Jenifer C Wallis added to party Viant, Inc. (pty:dft))(Wallis, Jenifer) (Entered: 03/10/2020) |
| 03/17/2020 | 18 | REQUEST of Non-Resident Attorney Errol J. King to Appear Pro Hac Vice on behalf of Defendants Multiplan, Inc., Viant, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. ACACDC-25765232) filed by Defendants Multiplan, Inc., Viant, Inc.. (Attachments: # 1 Proposed Order) (Wallis, Jenifer) (Entered: 03/17/2020) |
| 03/18/2020 | 19 | ORDER by Judge David O. Carter: Granting 18 Non-Resident Attorney Errol J. King APPLICATION to Appear Pro Hac Vice on behalf of Viant, Inc., MultiPlan, Inc., Defendants, designating Jenifer C. Wallis as local counsel. (twdb) (Entered: 03/19/2020) |
| 03/31/2020 | 20 | Joint REQUEST for Protective Order for for Protective Order for production of confidential, proprietary or private information filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 03/31/2020) |
| 04/01/2020 | 21 | AMENDED PROTECTIVE ORDER by Magistrate Judge Autumn D. Spaeth: granting 20 Request for Protective Order. (see document for details) (hr) (Entered: 04/01/2020) |
| 04/06/2020 | 22 | TRANSCRIPT ORDER as to plaintiffs Women's Recovery Center, LLC for Court Smart (CS). Court will contact Jeannie Kirwin at jkirwin@callahan-law.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Eisenhour, Damon) (Entered: 04/06/2020) |
| 04/08/2020 | 23 | TRANSCRIPT ORDER as to Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc. for Court Smart (CS). Court will contact Mary Hong at mhong@reedsmith.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Gasparetti, Lorenzo) (Entered: 04/08/2020) |
| 04/13/2020 | 24 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 10 days, filed by Plaintiff Women's Recovery Center, LLC.. (Attachments: # 1 Exhibit A - Email correspondence) (Collins, Richard) (Entered: 04/13/2020) |
| 04/20/2020 | 25 | SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference 16 is continued to 10:15 a.m. on April 27, 2020. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/20/2020) |
| 04/27/2020 | 26 | MINUTES OF Scheduling Conference (Not held; Continued) before Judge David O. Carter. Telephone Scheduling Conference continued to 5/4/2020 at 09:30 AM before Judge David O. Carter. The Court appoints the Hon. Stephen G. Larson (retired), as Special Master. SEE DOCUMENT FOR FURTHER INFORMATION. Court Reporter: Deborah Parker. (twdb) (Entered: 04/27/2020) |
| 04/27/2020 | 27 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: ORDER RE: APPOINTMENT OF SPECIAL MASTER. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 04/28/2020) |
| 04/29/2020 | 28 | SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference is set for 5/4/2020 at 8:45 AM. Counsel shall take notice of the new time. Call-in information has been emailed to the parties. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/29/2020) |
| 04/29/2020 | 29 | **AMENDED** SCHEDULING NOTICE by Judge David O. Carter. The telephonic Scheduling Conference is set for 5/4/2020 at 11:00 AM. Counsel shall take notice of the new time. Call-in information has been emailed to the parties. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 04/29/2020) |
| 04/30/2020 | 30 | AFFIDAVIT by affiant: Special Master *Affidavit Pursuant to Federal Rule of Civil Procedure 53(a)(2)* filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 04/30/2020) |

| 04/30/2020 | 31 | SPECIAL MASTER'S STANDING ORDER filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 04/30/2020) |
|---|---|---|
| 04/30/2020 | 32 | SPECIAL MASTER'S STANDING ORDER by Judge David O. Carter, RE: 31 . SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 04/30/2020) |
| 05/01/2020 | 33 | CONSOLIDATED COMPLAINT *AMENDED* related to: Complaint - (Discovery) ; JURY DEMAND, filed by plaintiffs Women's Recovery Center, LLC(Eisenbrey, Damon) (Entered: 05/01/2020) |
| 05/03/2020 | 34 | SCHEDULING NOTICE by Judge David O. Carter: After speaking with Special Master Larson, the Court RESETS the hearing on Monday May 4, 2020 to Wednesday June 3, 2020 at 8:30 AM. Scheduling Conference continued to 6/3/2020 at 8:30 AM before Judge David O. Carter. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dgo) TEXT ONLY ENTRY (Entered: 05/03/2020) |
| 05/04/2020 | 35 | TRANSCRIPT ORDER as to Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., The Anthem Companies of California, The Anthem Companies, Inc. for Court Smart (CS). Court will contact Mary Hong at mhong@reedsmith.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Gasparetti, Lorenzo) (Entered: 05/04/2020) |
| 05/04/2020 | 36 | Request for Clerk to Issue Summons on Consolidated Complaint 33 filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Eisenbrey, Damon) (Entered: 05/04/2020) |
| 05/05/2020 | 37 | 21 DAY Summons Issued re Consolidated First Amended Complaint 33 as to defendant Blue Cross of California. (twdb) (Entered: 05/05/2020) |
| 05/19/2020 | 38 | TRANSCRIPT for proceedings held on 04/27/2020, 10:10 a.m. Court Reporter: Deborah D. Parker, CSR 10342, phone number transcripts@ddparker.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through DEBORAHDPARKER.COM or PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 6/9/2020. Redacted Transcript Deadline set for 6/19/2020. Release of Transcript Restriction set for 8/17/2020. (dpa) (Entered: 05/20/2020) |
| 05/27/2020 | 39 | Special Master's Report & Recommendation No. 1 filed by Special Master Stephen G Larson (Larson, Stephen) (Entered: 05/27/2020) |
| 05/28/2020 | 40 | MINUTE ORDER IN CHAMBERS by Judge David O. Carter: ORDER RE: SCHEDULING CONFERENCE AND RESPONSIVE PLEADING DEADLINE. The Court CONTINUES the scheduling conference and adopts the entirety of the report and recommendation. The Court further EXTENDS Defendants' deadline for a responsive pleading to August 3, 2020. re: 39 . ( Scheduling Conference continued to 7/6/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 05/28/2020) |
| 06/03/2020 | 41 | [DOCUMENT STRICKEN PURSUANT TO COURT ORDER #42] NOTICE OF MOTION AND MOTION to Dismiss Case *MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT* filed by Defendants Multiplan, Inc., Viant, Inc.. Motion set for hearing on 7/27/2020 at 08:30 AM before Judge David O. Carter. (Attachments: # 1 Declaration of Errol King, # 2 Proposed Order Granting Motion to Dismiss) (Wallis, Jenifer) Modified on 6/4/2020 (twdb). (Entered: 06/03/2020) |
| 06/03/2020 | 42 | MINUTES (IN CHAMBERS) by Judge David O. Carter: Striking 41 MOTION to Dismiss. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 06/04/2020) |
| 06/29/2020 | 43 | SCHEDULING NOTICE by Judge David O. Carter. The Court hereby continues the in-person |

| | | Scheduling Conference to JULY 7, 2020, at 08:30 AM before Judge David O. Carter. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 06/29/2020) |
|---|---|---|
| 06/30/2020 | 44 | Special Master's Report & Recommendation No. 2 filed by Special Master Stephen G Larson (Attachments: # 1 Exhibit A)(Larson, Stephen) (Entered: 06/30/2020) |
| 07/01/2020 | 45 | ORDER re: SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 2 by Judge David O. Carter 44 . SEE DOCUMENT FOR FURTHER INFORMATION. ( Scheduling Conference continued to 8/3/2020 at 08:30 AM before Judge David O. Carter.) (twdb) (Entered: 07/01/2020) |
| 07/30/2020 | 46 | Special Master's Report & Recommendation No. 3 filed by Special Master Stephen G Larson (Attachments: # 1 Exhibit A)(Larson, Stephen) (Entered: 07/30/2020) |
| 07/30/2020 | 47 | ORDER re: SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 3 by Judge David O. Carter. Scheduling Conference continued to 9/9/20 at 8:30 am (ECF. NO. 45 . Revised Joint Rule 26(F) Report due 8/24/20. Plaintiff shall file the second amended consolidated complaint on 8/24/20. Responsive pleading deadline shall be 11/24/20. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 07/30/2020) |
| 08/24/2020 | 48 | JOINT REPORT Rule 26(f) Discovery Plan *Revised* ; estimated length of trial 10 days, filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G Larson.. (Attachments: # 1 Exhibit A Newly Added Out of State Defendants)(Collins, Richard) (Entered: 08/24/2020) |
| 08/24/2020 | 49 | SECOND AMENDED COMPLAINT against Defendants All Defendants amending Consolidated Complaint 33 , filed by plaintiff MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Women's Recovery Center, LLC, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, Addiction Health Alliance LLC, NTR Resources LLC, Stephen G Larson, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC(Attorney Richard T Collins added to party Stephen G Larson(pty:sm))(Collins, Richard) (Entered: 08/24/2020) |
| 09/06/2020 | 50 | SCHEDULING NOTICE by Judge David O. Carter. The Court continues the Scheduling Conference to 2:00 p.m. on SEPTEMBER 9, 2020. The Court will meet with the parties at the courthouse doors.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 09/06/2020) |
| 09/08/2020 | 51 | *Request for Counsel to Appear Via Telephone for Scheduling Conference* (King, Errol) (Entered: 09/08/2020) |
| 09/08/2020 | 52 | SCHEDULING NOTICE by Judge David O. Carter. The Court GRANTS out-of-state counsel Errol King's Request for Counsel to Appear Via Telephone for Scheduling Conference. Counsel shall call-in via his local counsel, who must appear in person. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 09/08/2020) |
| 09/09/2020 | 53 | Request for Clerk to Issue Summons on Amended Complaint/Petition,, 49 filed by plaintiff 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons, # 18 Summons, # 19 Summons, # 20 Summons, # 21 Summons, # 22 Summons, # 23 Summons, # 24 Summons, # 25 Summons, # 26 Summons, # 27 Summons, # 28 Summons, # 29 Summons, # 30 Summons, # 31 |

| | | |
|---|---|---|
| | | Summons, # 32 Summons, # 33 Summons, # 34 Summons)(Eisenbrey, Damon) (Entered: 09/09/2020) |
| 09/09/2020 | 54 | MINUTES OF Scheduling Conference held and completed before Judge David O. Carter. Court and counsel confer outside the presence of the court reporter. Counsel to file a stipulation with proposed dates and briefing schedule on or before September 16, 2020. Court Reporter: not present. (lc) (Entered: 09/10/2020) |
| 09/10/2020 | 55 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield Association. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 56 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 57 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Florida Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 58 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Kansas City Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 59 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans of Kentucky Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 60 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HMO Louisiana Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 61 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Nebraska Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 62 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of North Carolina. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 63 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Alabama. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 64 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant USAble Mutual Insurance Company. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 65 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Arizona Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 66 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Massachusetts Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 67 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Rhode Island. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 68 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant BCBSM Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 69 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Capital Blue Cross. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 70 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Anthem Health Plans of Virginia Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 71 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross Blue Shield of Tennessee Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 72 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Rocky Mountain Hospital and Medical Service Inc. (iv) (Entered: 09/10/2020) |
| 09/10/2020 | 73 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of South Carolina. (iv) (Entered: 09/11/2020) |

| 09/10/2020 | 74 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Carefirst Bluechoice Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 75 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Regence Blue Shield. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 76 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Premera Blue Cross. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 77 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Independence Hospital Indemnity Plan Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 78 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Regence Blue Cross Blue Shield of Oregon. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 79 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Blue Cross and Blue Shield of Florida Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 80 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Carefirst of Maryland Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 81 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Community Insurance Company. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 82 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Empire HealthChoice Assurance Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 83 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HMO Missouri Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 84 | 21 DAY Summons Issued re Second Amended Complaint/Petition,, 49 as to defendant Highmark Blue Shield. (twdb) (Entered: 09/11/2020) |
| 09/10/2020 | 85 | 21 DAY Summons Issued re Second Amended Complaint/Petition, 49 as to defendant Highmark Blue Cross Blue Shield a Pennsylvania corporation, doingbusiness in Pennsylvania as BLUE CROSS BLUE SHIELD OF WESTERN. (twdb) (Entered: 09/11/2020) |
| 09/10/2020 | 86 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Excellus Health Plan Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 87 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Healthy Alliance Life Insurance Company. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 88 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant HealthKeepers Inc. (iv) (Entered: 09/11/2020) |
| 09/10/2020 | 89 | 21 DAY Summons Issued re Amended Complaint/Petition 49 as to Defendant Health Care Service Corporation. (iv) (Entered: 09/11/2020) |
| 09/16/2020 | 90 | STIPULATION for Review of Briefing Schedule and Related Dates re Scheduling Conference - optional html form, 54 filed by Viant, Inc. and MultiPlan, Inc. filed by Defendants Viant, Inc.. (King, Errol) (Entered: 09/16/2020) |
| 09/16/2020 | 91 | [PROPOSED ORDER, filed as] STIPULATION for Order Granting Stipulation Regarding Briefing Schedule and Related Dates (Rec Doc 90) filed by Viant, Inc. and MultiPlan, Inc. filed by Defendants Viant, Inc..(King, Errol) Modified on 9/17/2020 (twdb). (Entered: 09/16/2020) |
| 09/18/2020 | 92 | ORDER GRANTING STIPULATION REGARDING BRIEFING SCHEDULE AND RELATED DATES (SEE APPLICABLE DEADLINES AS SPECIFIED PER ATTACHED APPENDIX SCHEDULE THEREIN) 90 by Judge David O. Carter (lc) (Entered: 09/21/2020) |
| 09/25/2020 | 93 | ORDER OF THE CHIEF JUDGE (#20-132) approved by Judge Philip S. Gutierrez. Pursuant to the recommended procedure adopted by the Court for the CREATION OF CALENDAR of Judge John W. Holcomb, this case is transferred from Judge David O. Carter to the calendar of |

| | | Judge John W. Holcomb for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:20-cv-00102 JWH-ADSx. (rrp) (Entered: 09/30/2020) |
|---|---|---|
| 10/05/2020 | 94 | This action has been reassigned to the Honorable John W. Holcomb, United States District Judge. Judge Holcomb is located in Courtroom 2, on the 2nd Floor of the George E. Brown, Jr. Federal Building and United States Courthouse at 3470 Twelfth Street, Riverside, California 92501. Additional information regarding Judge Holcomb's procedures and schedules is available on the court's website at www.cacd.uscourts.gov. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (iva) TEXT ONLY ENTRY (Entered: 10/05/2020) |
| 10/17/2020 | 95 | STANDING ORDER by Judge John W. Holcomb. (iva) (Entered: 10/17/2020) |
| 10/19/2020 | 96 | STIPULATION for Extension of Time to File Answer to 1/14/2021 re Amended Complaint/Petition,, 49 filed by Defendant Blue Cross and Blue Shield Association. (Attachments: # 1 Proposed Order)(Attorney Michael J Shipley added to party Blue Cross and Blue Shield Association(pty:dft))(Shipley, Michael) (Entered: 10/19/2020) |
| 10/20/2020 | 97 | ORDER EXTENDING DEFENDANT BLUE CROSS AND BLUE SHIELD ASSOCIATIONS TIME TO RESPOND TO SECOND AMENDED COMPLAINT by Judge John W. Holcomb. The parties having so stipulated, Defendant Blue Cross and Blue Shield Associations deadline to respond to Plaintiffs Second Amended Complaint (Dkt. No. 49) is hereby extended until January 14, 2021. IT IS SO ORDERED. (yl) (Entered: 10/21/2020) |
| 10/22/2020 | 98 | CORPORATE DISCLOSURE STATEMENT *Supplemental* filed by Defendant Multiplan, Inc. identifying MultiPlan Corporation as Corporate Parent. (King, Errol) (Entered: 10/22/2020) |
| 11/06/2020 | 99 | STIPULATION for Extension of Time to File Answer to 02/11/2021 re Amended Complaint/Petition,, 49 filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Proposed Order)(Attorney Lorenzo E Gasparetti added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Lorenzo E Gasparetti added to party Blue Cross of California(pty:dft), Attorney Lorenzo E Gasparetti added to party Health Care Service Corporation(pty:dft), Attorney Lorenzo E Gasparetti added to party HealthKeepers Inc(pty:dft), Attorney Lorenzo E Gasparetti added to party Healthy Alliance Life Insurance Company(pty:dft), Attorney Lorenzo E Gasparetti added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft))(Gasparetti, Lorenzo) (Entered: 11/06/2020) |
| 11/06/2020 | 100 | NOTICE of Appearance filed by attorney Jarrad Lucian Wood on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jarrad Lucian Wood added to party Anthem Blue Cross Life and Health Insurance Company(pty:dft), Attorney Jarrad Lucian Wood added to party Anthem Inc.(pty:dft), Attorney Jarrad Lucian Wood added to party Anthem Insurance Companies, Inc(pty:dft), Attorney Jarrad Lucian Wood added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Jarrad Lucian Wood added to party Health Care Service Corporation(pty:dft), Attorney Jarrad Lucian Wood added to party HealthKeepers Inc(pty:dft), Attorney Jarrad Lucian Wood added to party Healthy Alliance Life Insurance Company(pty:dft), Attorney Jarrad Lucian Wood added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft), Attorney Jarrad Lucian Wood added to party The Anthem Companies of California(pty:dft), Attorney Jarrad Lucian Wood added to party The Anthem Companies, Inc.(pty:dft))(Wood, Jarrad) (Entered: 11/06/2020) |
| 11/09/2020 | 101 | ORDER GRANTING STIPULATION TO EXTEND TIME TO RESPOND TO SECOND AMENDED COMPLAINT by Judge John W. Holcomb 99 Defendants' deadline to respond to the SAC, whether by answer, motion, or otherwise, is extended to February 11, 2021 with an |

| | | |
|---|---|---|
| | | opposition deadline of March 11, 2021, and a reply deadline of April 5, 2021; and The previously ordered February 1, 2021 hearing date on the Defendants anticipated motion to dismiss is vacated. IT IS SO ORDERED. (See document for further details) (yl) (Entered: 11/12/2020) |
| 11/23/2020 | 102 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross and Blue Shield of Florida, Inc. (Attorney William E von Behren added to party Blue Cross and Blue Shield of Florida, Inc.(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 103 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross and Blue Shield of Massachusetts Inc (Attorney William E von Behren added to party Blue Cross and Blue Shield of Massachusetts Inc(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 104 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross Blue Shield of Minnesota (Attorney William E von Behren added to party Blue Cross Blue Shield of Minnesota(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 105 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross and Blue Shield of North Carolina (Attorney William E von Behren added to party Blue Cross and Blue Shield of North Carolina(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 106 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross and Blue Shield of Rhode Island (Attorney William E von Behren added to party Blue Cross and Blue Shield of Rhode Island(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 107 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross and Blue Shield of South Carolina (Attorney William E von Behren added to party Blue Cross and Blue Shield of South Carolina(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 108 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Louisiana Health Service & Indemnity Company (Attorney William E von Behren added to party Louisiana Health Service & Indemnity Company(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 109 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Blue Cross Blue Shield of Tennessee Inc (Attorney William E von Behren added to party Blue Cross Blue Shield of Tennessee Inc(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 110 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendants Carefirst Bluechoice Inc, Carefirst of Maryland Inc (Attorney William E von Behren added to party Carefirst Bluechoice Inc(pty:dft), Attorney William E von Behren added to party Carefirst of Maryland Inc(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 111 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Premera Blue Cross (Attorney William E von Behren added to party Premera Blue Cross(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 112 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Regence BlueShield of Washington (Attorney William E von Behren added to party Regence BlueShield of Washington(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/23/2020 | 113 | NOTICE of Appearance filed by attorney William E von Behren on behalf of Defendant Regence Blue Cross Blue Shield of Oregon (Attorney William E von Behren added to party Regence Blue Cross Blue Shield of Oregon(pty:dft)) (von Behren, William) (Entered: 11/23/2020) |
| 11/27/2020 | 114 | APPLICATION of Non-Resident Attorney Zachary D. Holmstead to Appear Pro Hac Vice on behalf of Defendant Blue Cross and Blue Shield Association (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-29238474) filed by Defendant Blue Cross and Blue Shield Association. (Attachments: # 1 Proposed Order) (Shipley, Michael) (Entered: 11/27/2020) |

| 11/27/2020 | 115 | APPLICATION of Non-Resident Attorney Daniel E. Laytin to Appear Pro Hac Vice on behalf of Defendant Blue Cross and Blue Shield Association (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-29238655) filed by Defendant Blue Cross and Blue Shield Association. (Attachments: # 1 Proposed Order) (Shipley, Michael) (Entered: 11/27/2020) |
|---|---|---|
| 12/02/2020 | 116 | ORDER by Judge John W. Holcomb: granting 115 Non-Resident Attorney Daniel E. Laytin APPLICATION to Appear Pro Hac Vice on behalf of Blue Cross Blue Shield Association, designating Micheal Shipley as local counsel. (yl) (Entered: 12/03/2020) |
| 12/02/2020 | 117 | ORDER by Judge John W. Holcomb: granting 114 Non-Resident Attorney Holmstead, Zachary D. APPLICATION to Appear Pro Hac Vice on behalf of Blue Cross Blue Shield Association, designating Michael Shipley as local counsel. (yl) (Entered: 12/03/2020) |
| 12/14/2020 | 118 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross and Blue Shield of Florida, Inc., identifying Blue Cross and Blue Shield of Florida, Inc.. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 119 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross and Blue Shield of North Carolina, identifying Blue Cross and Blue Shield of North Carolina. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 120 | CERTIFICATE of Interested Parties filed by Defendant Louisiana Health Service & Indemnity Company, identifying HMO LOUISIANA, INC.. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 121 | CERTIFICATE of Interested Parties filed by Defendant Regence Blue Cross Blue Shield of Oregon, identifying Regence BlueCross BlueShield of Oregon. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 122 | CERTIFICATE of Interested Parties filed by Defendant Regence BlueShield of Washington, identifying Regence BlueShield of Washington. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 123 | CERTIFICATE of Interested Parties filed by Defendant Premera Blue Cross, identifying Premera Blue Cross. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 124 | CERTIFICATE of Interested Parties filed by Defendants Carefirst Bluechoice Inc, Carefirst of Maryland Inc, (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 125 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross Blue Shield of Tennessee Inc, identifying BlueCross BlueShield of Tennessee, Inc.. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 126 | CERTIFICATE of Interested Parties filed by Defendant BCBSM Inc, Blue Cross Blue Shield of Minnesota, identifying AWARE INTEGRATED, INC.. (Attorney Carol B Lewis added to party Blue Cross Blue Shield of Minnesota(pty:dft))(Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 127 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross and Blue Shield of South Carolina, identifying Blue Cross and Blue Shield of South Carolina. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 128 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross and Blue Shield of Rhode Island, identifying Blue Cross & Blue Shield of Rhode Island. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/14/2020 | 129 | CERTIFICATE of Interested Parties filed by Defendant Blue Cross and Blue Shield of Massachusetts Inc, identifying Blue Cross and Blue Shield of Massachusetts, Inc.. (Lewis, Carol) (Entered: 12/14/2020) |
| 12/16/2020 | 130 | NOTICE of Appearance filed by attorney Lorenzo E Gasparetti on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Lorenzo E |

CM/ECF - California Central District

| | | Gasparetti added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft))(Gasparetti, Lorenzo) (Entered: 12/16/2020) |
|---|---|---|
| 12/16/2020 | 131 | NOTICE of Appearance filed by attorney Jarrad Lucian Wood on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc.., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jarrad Lucian Wood added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft), Attorney Jarrad Lucian Wood added to party Blue Cross of California(pty:dft))(Wood, Jarrad) (Entered: 12/16/2020) |
| 12/16/2020 | 132 | NOTICE of Appearance filed by attorney Jonathan Daniel Gershon on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc.., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jonathan Daniel Gershon added to party Anthem Blue Cross Life and Health Insurance Company(pty:dft), Attorney Jonathan Daniel Gershon added to party Anthem Inc.(pty:dft), Attorney Jonathan Daniel Gershon added to party Anthem Insurance Companies, Inc.(pty:dft), Attorney Jonathan Daniel Gershon added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Jonathan Daniel Gershon added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft), Attorney Jonathan Daniel Gershon added to party Blue Cross of California(pty:dft), Attorney Jonathan Daniel Gershon added to party Health Care Service Corporation(pty:dft), Attorney Jonathan Daniel Gershon added to party HealthKeepers Inc(pty:dft), Attorney Jonathan Daniel Gershon added to party Healthy Alliance Life Insurance Company(pty:dft), Attorney Jonathan Daniel Gershon added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft), Attorney Jonathan Daniel Gershon added to party The Anthem Companies of California(pty:dft), Attorney Jonathan Daniel Gershon added to party The Anthem Companies, Inc.(pty:dft))(Gershon, Jonathan) (Entered: 12/16/2020) |
| 12/16/2020 | 133 | NOTICE of Appearance filed by attorney Kenneth N Smersfelt on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc.., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Kenneth N Smersfelt added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Kenneth N Smersfelt added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft), Attorney Kenneth N Smersfelt added to party Blue Cross of California(pty:dft), Attorney Kenneth N Smersfelt added to party Health Care Service Corporation(pty:dft), Attorney Kenneth N Smersfelt added to party HealthKeepers Inc(pty:dft), Attorney Kenneth N Smersfelt added to party Healthy Alliance Life Insurance Company(pty:dft), Attorney Kenneth N Smersfelt added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft))(Smersfelt, Kenneth) (Entered: 12/16/2020) |
| 12/16/2020 | 134 | NOTICE of Appearance filed by attorney Amir Shlesinger on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc.., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Amir Shlesinger added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Amir Shlesinger added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft), Attorney Amir Shlesinger added to party Blue Cross of California(pty:dft), Attorney Amir Shlesinger added to party Health Care Service Corporation(pty:dft), Attorney Amir Shlesinger added to party HealthKeepers Inc(pty:dft), Attorney Amir Shlesinger added to party Healthy Alliance Life |

| | | Insurance Company(pty:dft), Attorney Amir Shlesinger added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft))(Shlesinger, Amir) (Entered: 12/16/2020) |
|---|---|---|
| 12/29/2020 | 135 | STIPULATION for Extension of Time to File Response as to Amended Complaint/Petition,, 49 filed by Defendant Blue Cross and Blue Shield of Kansas City Inc. (Attachments: # 1 Proposed Order Granting Stipulation to Extend Time to Respond)(Wood, Jarrad) (Entered: 12/29/2020) |
| 01/06/2021 | 136 | NOTICE of Related Case(s) filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, Kool Living Inc, Stephen G. Larson, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. Related Case(s): 2:20-cv-11514; 8:20-cv-02424 (Canzoneri, Adrian) (Entered: 01/06/2021) |
| 01/10/2021 | 137 | ORDER GRANTING STIPULATION TO EXTEND TIME TO RESPOND TO SECOND AMENDED COMPLAINT AS TO DEFENDANT BLUE CROSS BLUE SHIELD OF KANSAS CITY by Judge John W 135 IT IS HEREBY ORDERED that the Stipulation is GRANTED, and BCBSKC's deadline to respond to the SAC, whether by answer, motion, or otherwise, is extended to February 11, 2021 with an opposition deadline of March 11, 2021, and a reply deadline of April 5, 2021. IT IS SO ORDERED. (yl) (Entered: 01/11/2021) |
| 01/13/2021 | 138 | STIPULATION to Vacate Motion to Dismiss Briefing Schedule and Set Status Conference filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc. (Attachments: # 1 Proposed Order)(Gasparetti, Lorenzo) (Entered: 01/13/2021) |
| 01/14/2021 | 139 | ORDER GRANTING STIPULATION TO VACATE MOTION TO DISMISS BRIEFING SCHEDULE AND SET STATUS CONFERENCE 138 by Judge John W. Holcomb. IT IS HEREBY ORDERED as follows: 1. The Stipulation is GRANTED; 2. The motion-to-dismiss briefing schedules previously set in this action are VACATED; 3. A video status conference in this action is set for April 1, 2021, at 10:00 a.m.; and 4. No later than 12:00 noon on March 25, 2021, the parties are DIRECTED file a Joint Status Report that provides the Court with the parties' respective proposals regarding a briefing schedule on their collective anticipated motions and regarding the case schedule through trial. See order for details. IT IS SO ORDERED. (lom) (Entered: 01/14/2021) |
| 01/19/2021 | 140 | NOTICE of Appearance filed by attorney Lorenzo E Gasparetti on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Lorenzo E Gasparetti added to party Blue Cross and Blue Shield of Alabama(pty:dft))(Gasparetti, Lorenzo) (Entered: 01/19/2021) |
| 01/19/2021 | 141 | NOTICE of Appearance filed by attorney Jarrad Lucian Wood on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jarrad Lucian Wood added to party Blue Cross and Blue Shield of Alabama(pty:dft))(Wood, Jarrad) (Entered: 01/19/2021) |
| 01/19/2021 | 142 | NOTICE of Appearance filed by attorney Jonathan Daniel Gershon on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, The |

| | | Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jonathan Daniel Gershon added to party Blue Cross and Blue Shield of Alabama(pty:dft))(Gershon, Jonathan) (Entered: 01/19/2021) |
|---|---|---|
| 01/19/2021 | 143 | NOTICE of Appearance filed by attorney Kenneth N Smersfelt on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Kenneth N Smersfelt added to party Blue Cross and Blue Shield of Alabama(pty:dft))(Smersfelt, Kenneth) (Entered: 01/19/2021) |
| 01/19/2021 | 144 | NOTICE of Appearance filed by attorney Amir Shlesinger on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Amir Shlesinger added to party Blue Cross and Blue Shield of Alabama(pty:dft))(Shlesinger, Amir) (Entered: 01/19/2021) |
| 01/20/2021 | 145 | Second STIPULATION for Protective Order filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, Stephen G. Larson, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC.(Attorney Damon D Eisenbrey added to party Stephen G. Larson(pty:sm))(Eisenbrey, Damon) (Entered: 01/20/2021) |
| 01/22/2021 | 146 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Stipulation for Protective Order, 145 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (yl) (Entered: 01/22/2021) |
| 03/18/2021 | 147 | APPLICATION of Non-Resident Attorney Anne I. Salomon to Appear Pro Hac Vice on behalf of Defendant Blue Cross and Blue Shield Association (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-30938862) filed by Defendant Blue Cross and Blue Shield Association. (Attachments: # 1 Proposed Order) (Shipley, Michael) (Entered: 03/18/2021) |
| 03/18/2021 | 148 | Request for Clerk to Issue Summons on Amended Complaint/Petition,, 49 filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, Stephen G. Larson, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Eisenbrey, Damon) (Entered: 03/18/2021) |
| 03/23/2021 | 149 | NOTICE OF DEFICIENCIES in Request to Issue Summons RE: Summons Request,, 148 . The following error(s) was found: Incorrect judge initials are listed on all requests for summons. It should read **JWH-ADSx**. The summons cannot be issued until this defect has been corrected. Please correct the defect and re-file your request. (yl) (Entered: 03/23/2021) |
| 03/23/2021 | 150 | Request for Clerk to Issue Summons on Amended Complaint/Petition,, 49 filed by plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, Stephen G. Larson, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. (Attachments: |

| | | # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons)(Eisenbrey, Damon) (Entered: 03/23/2021) |
|---|---|---|
| 03/24/2021 | 151 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant Blue Cross and Blue Shield of Nebraska Inc. (lom) (Entered: 03/24/2021) |
| 03/24/2021 | 152 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant Blue Cross and Blue Shield of Arizona Inc. (lom) (Entered: 03/24/2021) |
| 03/24/2021 | 153 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant USABLE Mutual Insurance Company. (lom) (Entered: 03/24/2021) |
| 03/24/2021 | 154 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant Capital Blue Cross. (lom) (Entered: 03/24/2021) |
| 03/24/2021 | 155 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant Excellus Health Plan Inc. (lom) (Entered: 03/24/2021) |
| 03/24/2021 | 156 | 21 DAY Summons Issued re Second Amended Complaint 49 as to Defendant Independence Hospital Indemnity Plan Inc. (lom) (Entered: 03/24/2021) |
| 03/25/2021 | 157 | ORDER by Judge John W. Holcomb: granting 147 Non-Resident Attorney Anne I. Salomon APPLICATION to Appear Pro Hac Vice on behalf of Blue Cross and Blue Shield Association, designating Michael J. Shipley as local counsel. (lom) (Entered: 03/25/2021) |
| 03/25/2021 | 158 | STATUS REPORT *(JOINT)* filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. (Gasparetti, Lorenzo) (Entered: 03/25/2021) |
| 03/30/2021 | 159 | Notice of Appearance or Withdrawal of Counsel: for attorney Edward Susolik counsel for Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. Edward Susolik is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by plaintiffs plaintiffs. (Susolik, Edward) (Entered: 03/30/2021) |
| 03/31/2021 | 160 | Notice of Appearance or Withdrawal of Counsel: for attorney Jonathan Daniel Gershon counsel for Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. Filed by Defendant Anthem Blue Cross Life and Health Insurance Company; Anthem Inc.; The Anthem Companies of California; The Anthem Companies, Inc.; Anthem Insurance Companies, Inc.; Blue Cross of California; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Georgia Inc.; Health Care Service Corporation; Blue Cross and Blue Shield of Kansas City Inc.; HealthKeepers Inc.; Healthy Alliance Life Insurance Company; Rocky Mountain Hospital and Medical Service Inc.. (Gershon, Jonathan) (Entered: 03/31/2021) |
| 04/01/2021 | 161 | MINUTES OF VIDEO HEARING RE: SCHEDULING CONFERENCE held before Judge John W. Holcomb. The parties' proposed briefing schedule on Defendants' anticipated omnibus motion to dismiss is adopted by the Court, as follows: Defendants' deadline to file their omnibus motion to dismiss: August 2, 2021; Plaintiffs' deadline to file any opposition to the omnibus motion to dismiss: August 31, 2021; and Defendants' deadline to file any reply/replies to the opposition: October 1, 2021. The hearing on the omnibus motion to dismiss is set for |

| | | |
|---|---|---|
| | | October 29, 2021, at 9:00 a.m. The Jury Trial date set for January 11, 2022, is VACATED. Court Reporter: Miriam Baird. (iv) (Entered: 04/02/2021) |
| 04/02/2021 | 162 | SECOND AMENDED PROTECTIVE ORDER by Magistrate Judge Autumn D. Spaeth re Second Stipulation for Protective Order 145 . (see document for details) (hr) (Entered: 04/02/2021) |
| 04/12/2021 | 163 | Scheduling & Procedure Order No. 1 filed by Special Master Stephen G. Larson (Larson, Stephen) (Entered: 04/12/2021) |
| 04/12/2021 | 164 | PROOF OF SERVICE Executed by Plaintiff Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc, upon Defendant Blue Cross and Blue Shield of Arizona Inc served on 3/26/2021, answer due 4/16/2021. Service of the Summons and Complaint were executed upon Deanna Salazar, Agent for Service in compliance with statute not specified by substituted service at business address and by also mailing a copy.Original Summons NOT returned. (Collins, Richard) (Entered: 04/12/2021) |
| 04/12/2021 | 165 | PROOF OF SERVICE Executed by Plaintiff Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc, upon Defendant Independence Hospital Indemnity Plan Inc served on 3/31/2021, answer due 4/21/2021. Service of the Summons and Complaint were executed upon Gail Stewart, Security Authorized to Accept Service in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Collins, Richard) (Entered: 04/12/2021) |
| 04/12/2021 | 166 | PROOF OF SERVICE Executed by Plaintiff Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc, upon Defendant USAble Mutual Insurance Company served on 3/26/2021, answer due 4/16/2021. Service of the Summons and Complaint were executed upon Sherri Kovach, Admin Assistant in compliance with statute not specified by substituted service at business address and by also mailing a copy.Original Summons NOT returned. (Collins, Richard) (Entered: 04/12/2021) |
| 04/12/2021 | 167 | PROOF OF SERVICE Executed by Plaintiff Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc, upon Defendant Excellus Health Plan Inc served on 3/26/2021, answer due 4/16/2021. Service of the Summons and Complaint were executed upon Cathy Bonacci, Executive Admin Assistant in compliance with statute not specified by substituted service at business address and by also mailing a copy.Original Summons NOT returned. (Collins, Richard) (Entered: 04/12/2021) |
| 04/12/2021 | 168 | WAIVER OF SERVICE Returned Executed filed by plaintiffs Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc. upon Capital Blue Cross waiver sent by Plaintiff on 4/12/2021, answer due 6/11/2021. Waiver of Service signed by Michael A. Naranjo. (Collins, Richard) (Entered: 04/12/2021) |
| 04/14/2021 | 169 | NOTICE of Appearance filed by attorney Michael A Naranjo on behalf of Defendant Excellus Health Plan Inc (Attorney Michael A Naranjo added to party Excellus Health Plan Inc(pty:dft)) |

| | | (Naranjo, Michael) (Entered: 04/14/2021) |
|---|---|---|
| 04/14/2021 | 170 | STIPULATION for Extension of Time to File Response as to Amended Complaint/Petition,, 49 filed by Defendant Excellus Health Plan Inc. (Attachments: # 1 Proposed Order)(Naranjo, Michael) (Entered: 04/14/2021) |
| 04/14/2021 | 171 | First STIPULATION for Extension of Time to File Answer to August 2, 2021 re Amended Complaint/Petition,, 49 filed by Defendant USAble Mutual Insurance Company. (Attachments: # 1 Proposed Order On Stipulation to Extend Time to Respond to Second Amended Complaint) (Attorney William E von Behren added to party USAble Mutual Insurance Company(pty:dft)) (von Behren, William) (Entered: 04/14/2021) |
| 04/14/2021 | 172 | SPECIAL MASTERS SCHEDULING & PROCEDURE ORDER NO. 1 by Judge John W. Holcomb 163 . Pursuant to this Court's April 1, 2021, Civil Minutes (ECF No. 161), the parties are DIRECTED to check in with the Special Master on a monthly basis regarding the informal exchange of information to ensure that the informal discovery process remains fruitful and is progressing on schedule. The Special Master will hold an informal discovery conference with the parties on the first Thursday of every month at 10:00 a.m. (PT), beginning May 6, 2021. (See document for further details) (yl) Modified on 4/15/2021 (yl). (Entered: 04/15/2021) |
| 04/15/2021 | 173 | ORDER EXTENDING THE TIME FOR DEFENDANT EXCELLUS HEALTH PLAN, INC., DBA EXCELLUS BLUECROSS BLUESHIELD, TO RESPOND TO SECOND AMENDED COMPLAINT by Judge John W. Holcomb 170 The parties having so stipulated, the deadline for Defendant Excellus Health Plan, Inc., dba Excellus BlueCross BlueShield, to respond to Plaintiffs' Second Amended Complaint (Dkt. 49) is hereby extended until August 2, 2021. IT IS SO ORDERED. (yl) (Entered: 04/16/2021) |
| 04/16/2021 | 174 | ORDER ON STIPULATION TO EXTEND DEADLINE TO RESPOND TO SECOND AMENDED COMPLAINT by Judge John W. Holcomb 171 . IT IS HEREBY ORDERED that ABCBS' deadline to respond to the SAC is extended from April 16, 2021, to August 2, 2021. IT IS SO ORDERED. (See document for further details) (yl) (Entered: 04/19/2021) |
| 04/22/2021 | 175 | NOTICE of Appearance filed by attorney Jarrad Lucian Wood on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Jarrad Lucian Wood added to party Blue Cross and Blue Shield of Arizona Inc(pty:dft), Attorney Jarrad Lucian Wood added to party Blue Cross and Blue Shield of Nebraska Inc(pty:dft))(Wood, Jarrad) (Entered: 04/22/2021) |
| 04/22/2021 | 176 | NOTICE of Appearance filed by attorney Kenneth N Smersfelt on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Kenneth N Smersfelt added to party Blue Cross and Blue Shield of Arizona Inc(pty:dft), Attorney Kenneth N Smersfelt added to party Blue Cross and Blue Shield of Nebraska Inc(pty:dft))(Smersfelt, Kenneth) (Entered: 04/22/2021) |
| 04/22/2021 | 177 | NOTICE of Appearance filed by attorney Amir Shlesinger on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem |

| | | |
|---|---|---|
| | | Companies of California, The Anthem Companies, Inc. (Attorney Amir Shlesinger added to party Blue Cross and Blue Shield of Arizona Inc(pty:dft), Attorney Amir Shlesinger added to party Blue Cross and Blue Shield of Nebraska Inc(pty:dft))(Shlesinger, Amir) (Entered: 04/22/2021) |
| 04/22/2021 | 178 | STIPULATION for Extension of Time to File Answer to 08/02/2021 re Amended Complaint/Petition,, 49 filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Proposed Order)(Attorney Lorenzo E Gasparetti added to party Blue Cross and Blue Shield of Arizona Inc(pty:dft), Attorney Lorenzo E Gasparetti added to party Blue Cross and Blue Shield of Nebraska Inc(pty:dft))(Gasparetti, Lorenzo) (Entered: 04/22/2021) |
| 04/26/2021 | 179 | ORDER GRANTING STIPULATION TO EXTEND TIME TO RESPOND TO CONSOLIDATED SECOND AMENDED COMPLAINT AS TO DEFENDANTS BLUE CROSS BLUE SHIELD OF ARIZONA AND BLUE CROSS AND BLUE SHIELD OF NEBRASKA 178 by Judge John W. Holcomb. BCBSAZ's and BCBSNE's deadline to respond to the SAC is extended to August 2, 2021, with a reply (or replies) due October 1, 2021, and a hearing set for October 29, 2021, at 9:00 a.m. consistent with the briefing schedule ordered on April 1, 2021. (iv) (Entered: 04/27/2021) |
| 05/05/2021 | 180 | WAIVER OF SERVICE Returned Executed filed by plaintiffs Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc. upon Independence Hospital Indemnity Plan Inc waiver sent by Plaintiff on 4/30/2021, answer due 6/29/2021. Waiver of Service signed by Michael P. Zipfel. (Collins, Richard) (Entered: 05/05/2021) |
| 06/01/2021 | 181 | NOTICE of Appearance filed by attorney Avraham E Aizenman on behalf of Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Highmark Blue Cross Blue Shield, Highmark Blue Shield, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. (Attorney Avraham E Aizenman added to party Anthem Blue Cross Life and Health Insurance Company(pty:dft), Attorney Avraham E Aizenman added to party Anthem Inc.(pty:dft), Attorney Avraham E Aizenman added to party Anthem Insurance Companies, Inc.(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross and Blue Shield of Alabama(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross and Blue Shield of Arizona Inc(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross and Blue Shield of Georgia Inc(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross and Blue Shield of Kansas City Inc(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross and Blue Shield of Nebraska Inc(pty:dft), Attorney Avraham E Aizenman added to party Blue Cross of California(pty:dft), Attorney Avraham E Aizenman added to party Health Care Service Corporation(pty:dft), Attorney Avraham E Aizenman added to party HealthKeepers Inc(pty:dft), Attorney Avraham E Aizenman added to party Healthy Alliance Life Insurance Company(pty:dft), Attorney Avraham E Aizenman added to party Highmark Blue Cross Blue Shield(pty:dft), Attorney Avraham E Aizenman added to party Highmark Blue Shield(pty:dft), Attorney Avraham E Aizenman added to party Rocky Mountain Hospital and Medical Service Inc(pty:dft), Attorney Avraham E Aizenman added to party The Anthem Companies of |

| | | |
|---|---|---|
| | | California(pty:dft), Attorney Avraham E Aizenman added to party The Anthem Companies, Inc.(pty:dft))(Aizenman, Avraham) (Entered: 06/01/2021) |
| 06/02/2021 | 182 | NOTICE of Appearance filed by attorney Michael A Naranjo on behalf of Defendant Capital Blue Cross (Attorney Michael A Naranjo added to party Capital Blue Cross(pty:dft))(Naranjo, Michael) (Entered: 06/02/2021) |
| 06/02/2021 | 183 | STIPULATION for Extension of Time to File Response as to Amended Complaint/Petition,, 49 filed by Defendant Capital Blue Cross. (Attachments: # 1 Proposed Order (Proposed) Order Extending the Time for Defendant Capital BlueCross to Respond to Second Amended Complaint)(Naranjo, Michael) (Entered: 06/02/2021) |
| 06/03/2021 | 184 | ORDER EXTENDING THE TIME FOR DEFENDANT CAPITAL BLUECROSS TO RESPOND TO SECOND AMENDED COMPLAINT 183 by Judge John W. Holcomb. The parties having so stipulated, the deadline for Defendant Capital BlueCross to respond to Plaintiffs' Second Amended Complaint (Dkt. 49) is hereby extended until August 2, 2021. IT IS SO ORDERED. (lom) (Entered: 06/03/2021) |
| 06/18/2021 | 185 | NOTICE of Appearance filed by attorney Michael A Naranjo on behalf of Defendant Independence Hospital Indemnity Plan Inc (Attorney Michael A Naranjo added to party Independence Hospital Indemnity Plan Inc(pty:dft))(Naranjo, Michael) (Entered: 06/18/2021) |
| 06/18/2021 | 186 | STIPULATION for Extension of Time to File Response as to Amended Complaint/Petition,, 49 filed by defendant Independence Hospital Indemnity Plan Inc. (Attachments: # 1 Proposed Order (Proposed) Order Extending Time for Defendant Independence Hospital Indemnity Plan, Inc. to Respond to Second Amended Complaint)(Naranjo, Michael) (Entered: 06/18/2021) |
| 06/21/2021 | 187 | Special Master's Report & Recommendation No. 4 filed by Special Master Stephen G. Larson (Larson, Stephen) (Entered: 06/21/2021) |
| 06/22/2021 | 188 | ORDER EXTENDING THE TIME FOR DEFENDANT INDEPENDENCE HOSPITAL INDEMNITY PLAN, INC. TO RESPOND TO SECOND AMENDED COMPLAINT by Judge John W. Holcomb 186 . The parties having so stipulated, the deadline for Defendant Independence Hospital Indemnity Plan, Inc. to respond to Plaintiffs Second Amended Complaint (Dkt. 49) is hereby extended until August 2, 2021. IT IS SO ORDERED. (yl) (Entered: 06/23/2021) |
| 06/23/2021 | 189 | SPECIAL MASTERS REPORT & RECOMMENDATION NO. 4 by Judge John W. Holcomb 187 . (yl)(yl). (Entered: 06/24/2021) |
| 07/21/2021 | 190 | STIPULATION to Exceed Page Limitation as to Defendants Omnibus Motion to Dismiss Plaintiffs Second Amended Complaint filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Proposed Order)(Gasparetti, Lorenzo) (Entered: 07/21/2021) |
| 07/27/2021 | 191 | ORDER GRANTING STIPULATION RE BRIEFING OF DEFENDANTS OMNIBUS MOTION TO DISMISS PLAINTIFFS SECOND AMENDED COMPLAINT by Judge John W. Holcomb 190 For good cause shown, the Court grants the Parties Stipulation re Briefing of Defendants Omnibus Motion to Dismiss Plaintiffs Second Amended Complaint and hereby ORDERS as follows: 1. Defendants shall have up to 50 pages for their omnibus motion to dismiss Plaintiffs SAC.1 2. Plaintiffs shall have up to 50 pages for their opposition to Defendants omnibus motion to dismiss the SAC. 3. Defendants shall have up to 24pages for their reply briefs in support of their omnibus motion to dismiss the SAC. IT IS SO ORDERED. (yl) (Entered: 07/28/2021) |
| 08/02/2021 | 192 | NOTICE OF MOTION AND MOTION to Dismiss Case (DEFENDANTS' NOTICE OF |

|  |  | *OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Georgia Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. Motion set for hearing on 10/29/2021 at 09:00 AM before Judge John W. Holcomb. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Proposed Order) (Gasparetti, Lorenzo) (Entered: 08/02/2021) |
|---|---|---|
| 08/02/2021 | 193 | NOTICE OF MOTION AND MOTION to Dismiss Case *Defendant Blue Cross Blue Shield Association's Notice of Motion and Motion to Dismiss the Second Amended Complaint; Memorandum of Points and Authorities* filed by Defendant Blue Cross and Blue Shield Association. Motion set for hearing on 10/29/2021 at 09:00 AM before Judge John W. Holcomb. (Attachments: # 1 Proposed Order Granting Defendant Blue Cross Blue Shield Association's Motion to Dismiss the Second Amended Complaint) (Shipley, Michael) (Entered: 08/02/2021) |
| 08/02/2021 | 194 | Multiplan, Inc.'s and Viant, Inc.'s Addendum to Defendants' Omnibus Motion to Dismiss the Second Amended Consolidated Complaint re NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendants Multiplan, Inc., Viant, Inc.. (Wallis, Jenifer) (Entered: 08/02/2021) |
| 08/02/2021 | 195 | ADDENDUM TO DEFENDANT'S OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendants Carefirst Bluechoice Inc, Carefirst of Maryland Inc. (Attachments: # 1 Declaration Declaration of Kim Rothman) (Lewis, Carol) (Entered: 08/02/2021) |
| 08/02/2021 | 196 | ADDENDUM TO DEFENDANT'S OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendant Louisiana Health Service & Indemnity Company. (Attachments: # 1 Declaration Declaration of Ginger Bradley, # 2 Exhibit Exhibit 1 to Declaration of Ginger Bradleyl, # 3 Exhibit Exhibit 2 to Declaration of Ginger Bradley, # 4 Exhibit Exhibit 3 to Declaration of Ginger Bradley, # 5 Exhibit Exhibit 4 to Declaration of Ginger Bradley)(Lewis, Carol) (Entered: 08/02/2021) |
| 08/02/2021 | 197 | ADDENDUM TO DEFENDANT'S OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendant Blue Cross and Blue Shield of South Carolina. (Attachments: # 1 Declaration Declaration of Brook's Goodman, # 2 Exhibit Exhibit 1 to Declaration of Brook's Goodman, # 3 Exhibit Exhibit 2 Declaration of Brook's Goodman, # 4 Exhibit Exhibit 3 Declaration of Brook's Goodman)(Lewis, Carol) (Entered: 08/02/2021) |
| 08/02/2021 | 198 | ADDENDUM TO DEFENDANT'S OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT re NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendant Blue Cross and Blue Shield of North Carolina. (Attachments: # 1 Declaration Declaration of Aimee Forehand, # 2 Exhibit Exhibit 1 Declaration of Aimee Forehand, # 3 Exhibit Exhibit 2 Declaration of Aimee Forehand)(Lewis, Carol) (Entered: 08/02/2021) |
| 08/31/2021 | 199 | OPPOSITION opposition to re: NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED* |

| | | |
|---|---|---|
| | | *CONSOLIDATED COMPLAINT)* [192] filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 200 | OBJECTIONS to NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* [192] *TO DECLARATION OF AVRAHAM E. AIZENMAN* filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 201 | OPPOSITION opposition re: NOTICE OF MOTION AND MOTION to Dismiss Case *Defendant Blue Cross Blue Shield Association's Notice of Motion and Motion to Dismiss the Second Amended Complaint; Memorandum of Points and Authorities* [193] filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 202 | MEMORANDUM of Points and Authorities in Opposition *to MultiPlan's Addendum to Motion to Dismiss* Re: Motion Related Document, [194] (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 203 | MEMORANDUM of Points and Authorities in Opposition *to CareFirst's Addendum to Motion to Dismiss* Re: Motion Related Document, [195] (Attachments: # [1] Declaration Declaration of Richard Collins, # [2] Exhibit 1, # [3] Exhibit 2, # [4] Exhibit 3)(Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 204 | MEMORANDUM of Points and Authorities in Opposition *to BCBS of Louisiana's Addendum to Motion to Dismiss* Re: Motion Related Document,, [196] (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 205 | OBJECTIONS to Motion Related Document,, [196] *to Declaration of Ginger Bradley* filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 206 | MEMORANDUM of Points and Authorities in Opposition *to BCBS of South Carolina's Addendum to Motion to Dismiss* Re: Motion Related Document,, [197] (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 207 | OBJECTIONS to Motion Related Document,, [197] *to Declaration of Brooks Goodman* filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 208 | MEMORANDUM of Points and Authorities in Opposition *to BCBS of North Carolina's Addendum to Motion to Dismiss* Re: Motion Related Document,, [198] (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 209 | OBJECTIONS to Motion Related Document,, [198] *to Declaration of Aimee Forehand* filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland |

| | | |
|---|---|---|
| | | Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Collins, Richard) (Entered: 08/31/2021) |
| 08/31/2021 | 210 | REQUEST FOR JUDICIAL NOTICE *IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS* filed by Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Collins, Richard) (Entered: 08/31/2021) |
| 09/03/2021 | 211 | NOTICE of Appearance filed by attorney Adrian L. Canzoneri on behalf of Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC, Special Master Stephen G. Larson (Attorney Adrian L. Canzoneri added to party 12 South LLC(pty:pla), Attorney Adrian L. Canzoneri added to party Addiction Health Alliance LLC(pty:pla), Attorney Adrian L. Canzoneri added to party DR Recovery Encinitas LLC(pty:pla), Attorney Adrian L. Canzoneri added to party Inland Detox Inc(pty:pla), Attorney Adrian L. Canzoneri added to party Kool Living Inc(pty:pla), Attorney Adrian L. Canzoneri added to party Stephen G. Larson(pty:sm), Attorney Adrian L. Canzoneri added to party MMR Services LLC(pty:pla), Attorney Adrian L. Canzoneri added to party NTR Resources LLC(pty:pla), Attorney Adrian L. Canzoneri added to party Pacific Palms Recovery LLC(pty:pla), Attorney Adrian L. Canzoneri added to party Southern California Addiction Center Inc(pty:pla), Attorney Adrian L. Canzoneri added to party Southern California Recovery Centers Oceanside LLC(pty:pla), Attorney Adrian L. Canzoneri added to party TML Recovery LLC(pty:pla), Attorney Adrian L. Canzoneri added to party Women's Recovery Center, LLC(pty:pla))(Canzoneri, Adrian) (Entered: 09/03/2021) |
| 09/30/2021 | 212 | REPLY filed by Defendants Carefirst Bluechoice Inc, Carefirst of Maryland Inc to Motion Related Document, 195 (Lewis, Carol) (Entered: 09/30/2021) |
| 09/30/2021 | 213 | REPLY filed by Defendant Blue Cross and Blue Shield of South Carolina to Memorandum of Points and Authorities in Opposition 206 (Lewis, Carol) (Entered: 09/30/2021) |
| 09/30/2021 | 214 | REPLY filed by Defendant Blue Cross and Blue Shield of North Carolina to Motion Related Document,, 198 , Memorandum of Points and Authorities in Opposition 208 (Lewis, Carol) (Entered: 09/30/2021) |
| 09/30/2021 | 215 | RESPONSE filed by Defendant Blue Cross and Blue Shield of North Carolinato Objection, 209 (Lewis, Carol) (Entered: 09/30/2021) |
| 09/30/2021 | 216 | RESPONSE filed by Defendant Blue Cross and Blue Shield of South Carolinato Objection, 207 (Lewis, Carol) (Entered: 09/30/2021) |
| 09/30/2021 | 217 | OBJECTIONS to Memorandum of Points and Authorities in Opposition, 203 filed by Defendants Carefirst Bluechoice Inc, Carefirst of Maryland Inc. (Lewis, Carol) (Entered: 09/30/2021) |
| 10/01/2021 | 218 | REPLY filed by Defendant Louisiana Health Service & Indemnity Company to Memorandum of Points and Authorities in Opposition 204 (Lewis, Carol) (Entered: 10/01/2021) |
| 10/01/2021 | 219 | RESPONSE filed by Defendant Louisiana Health Service & Indemnity Companyto Objection, 205 (Lewis, Carol) (Entered: 10/01/2021) |
| 10/01/2021 | 220 | REPLY in Support of NOTICE OF MOTION AND MOTION to Dismiss Case *Defendant Blue Cross Blue Shield Association's Notice of Motion and Motion to Dismiss the Second Amended* |

|  |  | *Complaint; Memorandum of Points and Authorities* 193 filed by Defendant Blue Cross and Blue Shield Association. (Shipley, Michael) (Entered: 10/01/2021) |
|---|---|---|
| 10/01/2021 | 221 | NOTICE of Interested Parties filed by Defendant Excellus Health Plan Inc, identifying Lifetime Healthcare, Inc.. (Naranjo, Michael) (Entered: 10/01/2021) |
| 10/01/2021 | 222 | NOTICE of Interested Parties filed by Defendant Independence Hospital Indemnity Plan Inc, identifying Independence Blue Cross, LLC; AmeriHealth, Inc.; and Independence Health Group, Inc.. (Naranjo, Michael) (Entered: 10/01/2021) |
| 10/01/2021 | 223 | REPLY in support of NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross and Blue Shield of Nebraska Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc.. (Attachments: # 1 Declaration)(Gasparetti, Lorenzo) (Entered: 10/01/2021) |
| 10/01/2021 | 224 | REPLY In Support of Multiplan, Inc.'s and Viant, Inc.'s Addendum 194 NOTICE OF MOTION AND MOTION to Dismiss Case *(DEFENDANTS' NOTICE OF OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT)* 192 filed by Defendants Multiplan, Inc., Viant, Inc.. (Attachments: # 1 Exhibit Declaration of Marjorie G. Wilde in Support of Multiplan, Inc. and Viant, Inc.'s Motion to Dismiss)(Wallis, Jenifer) (Entered: 10/01/2021) |
| 10/06/2021 | 225 | NOTICE of Interested Parties filed by Defendant Capital Blue Cross, (Naranjo, Michael) (Entered: 10/06/2021) |
| 10/26/2021 | 226 | SCHEDULING NOTICE AND ORDER by Judge John W. Holcomb: The hearing on Defendants' Motions to Dismiss [ECF Nos. 192 & 193 ], is ordered CONTINUED from October 29, 2021 to November 5, 2021, at 9:00 a.m., via video conference. To obtain the video conference link for the scheduled hearing, the parties are directed to Judge Holcomb's Procedures and Schedules page on the Court's website: http://www.cacd.uscourts.gov/honorable-john-w-holcomb. Please follow the instructions listed under "Zoom Webinar Hearings." IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (iva) TEXT ONLY ENTRY (Entered: 10/26/2021) |
| 11/02/2021 | 227 | SCHEDULING NOTICE AND ORDER by Judge John W. Holcomb: The video hearing on Defendants' Motions to Dismiss [ECF Nos. 192 & 193 ], set for Friday, November 5, 2021, at 9:00 a.m., is hereby moved from 9:00 a.m. to 1:00 p.m. To obtain the video conference link for the scheduled hearing, the parties are directed to Judge Holcomb's Procedures and Schedules page on the Court's website: http://www.cacd.uscourts.gov/honorable-john-w-holcomb. Please follow the instructions listed under "Zoom Webinar Hearings." IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (iva) TEXT ONLY ENTRY (Entered: 11/02/2021) |
| 11/05/2021 | 228 | TRANSCRIPT ORDER as to Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Inc., Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Arizona Inc, Blue Cross and Blue Shield of Kansas City Inc, Blue Cross of California, Health Care Service Corporation, HealthKeepers Inc, Healthy Alliance Life Insurance Company, Rocky Mountain Hospital and Medical Service Inc, The Anthem Companies of California, The Anthem Companies, Inc. for Court Reporter. Court will contact Mary Hong at mhong@reedsmith.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Wood, Jarrad) (Entered: 11/05/2021) |
| 11/05/2021 | 230 | MINUTES OF VIDEO HEARING RE: DEFENDANTS' OMNIBUS MOTION TO DISMISS |

CM/ECF - California Central District

| | | |
|---|---|---|
| | | SECOND AMENDED COMPLAINT (ECF Nos. 192 & 193]) held before Judge John W. Holcomb. The Court confers with counsel and hears oral argument. The Court takes the motions [ECF Nos. 192 & 193] under submission. IT IS SO ORDERED. Court Reporter: Anne Keilwasser. (lom) (Entered: 11/08/2021) |
| 11/08/2021 | 229 | TRANSCRIPT ORDER as to plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, Stephen G. Larson, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC for Court Reporter. Court will contact Richard T. Collins at rcollins@callahan-law.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Collins, Richard) (Entered: 11/08/2021) |
| 11/16/2021 | 231 | APPLICATION of Non-Resident Attorney Taylor J. Crousillac to Appear Pro Hac Vice on behalf of Defendants Multiplan, Inc., Viant, Inc. (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32332277) filed by Defendants Multiplan, Inc., Viant, Inc.. (Attachments: # 1 Proposed Order on Application of Non-Resident Attorney to Appear in a Specific Case Pro Hac Vice) (Wallis, Jenifer) (Entered: 11/16/2021) |
| 11/19/2021 | 232 | ORDER by Judge John W. Holcomb: granting 231 Non-Resident Attorney Taylor J. Crousillac APPLICATION to Appear Pro Hac Vice on behalf of defendants MultiPlan, Inc., Viant. Inc., designating Jenifer C. Wallis as local counsel. (mrgo) (Entered: 11/22/2021) |
| 02/01/2022 | 233 | NOTICE OF LIEN filed by WELLS FARGO BANK, NATIONAL ASSOCIATION Ken Ito WELLS FARGO BANK, NATIONAL ASSOCIATION, c/o Hemar Rousso Heald LLP. (Ito, Ken) (Entered: 02/01/2022) |
| 02/02/2022 | 234 | ORDER GRANTING-IN-PART DEFENDANTS' OMNIBUS MOTION TO DISMISS THE SECOND CONSOLIDATED COMPLAINT [ECF No. 192] by Judge John W. Holcomb. For the foregoing reasons, the Court hereby ORDERS as follows: Plaintiffs claims under ERISA are DISMISSED with leave toamend. All state law claims that depend on the existence of an ERISA plan are DISMISSED with prejudice. (See document for further details) (yl) (Entered: 02/02/2022) |
| 02/02/2022 | 235 | ORDER GRANTING MOTION TO DISMISS OF DEFENDANT BLUE CROSS BLUE SHIELD ASSOCIATION [ECF No. 193] by Judge John W. Holcomb. BCBSA's instant Motion is GRANTED. Plaintiffs are DIRECTED to amend their pleading on or before February 18, 2022, to correct the deficiencies noted in this Order. If Plaintiffs fail to file their amended pleading by that date, then the Court will DISMISS Defendant BCBSA from this action with prejudice. IT IS SO ORDERED. (See document for further details) (yl) (Entered: 02/02/2022) |
| 02/02/2022 | 236 | APPLICATION of Non-Resident Attorney Katie C. Mannino to Appear Pro Hac Vice on behalf of Defendants Multiplan, Inc., Viant, Inc. (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32727276) filed by Defendants Multiplan, Inc., Viant, Inc.. (Attachments: # 1 Proposed Order on Application of Non-Resident Attorney to Appear in a Specific Case Pro Hac Vice) (Wallis, Jenifer) (Entered: 02/02/2022) |
| 02/02/2022 | 237 | AMENDED ORDER GRANTING IN- PART DEFENDANTS' OMNIBUS MOTION TO DISMISS THE SECOND CONSOLIDATED COMPLAINT [ECF No. 192] by Judge John W. Holcomb. Plaintiffs' claims under ERISA are DISMISSED with leave to amend. All state law claims that depend on the existence of an ERISA plan are DISMISSED with prejudice. the deadline for Plaintiffs to file an amended pleading that cures the defects identified in this Order is February 18, 2022. (See document for further details) (yl) (Entered: 02/02/2022) |
| 02/04/2022 | 238 | Joint STIPULATION for Extension of Time to Amend Amended Complaint/Petition,, 49 filed by Defendant Anthem Blue Cross Life and Health Insurance Company. (Attachments: # 1 Proposed Order)(Wood, Jarrad) (Entered: 02/04/2022) |
| 02/07/2022 | 239 | ORDER by Judge John W. Holcomb: granting 236 Non-Resident Attorney Mannino, Katherine C. APPLICATION to Appear Pro Hac Vice on behalf of MultiPlan, Inc. Viant. Inc., designating |

CM/ECF - California Central District

| | | Wallis, Jenifer C. as local counsel. (yl) (Entered: 02/08/2022) |
|---|---|---|
| 02/09/2022 | 240 | ORDER GRANTING STIPULATION TO EXTEND DEADLINES RELATED TO PLAINTIFFS' THIRD AMENDED COMPLAINT by Judge John W. Holcomb 238 . Plaintiffs' deadline to file a Third Amended Complaint is March 1, 2022. Defendants' deadline to file a response to the Third Amended Complaint, whether by motion or otherwise, is March 31, 2022. (See document for further details) (yl) (Entered: 02/09/2022) |
| 02/18/2022 | 241 | Notice of Appearance or Withdrawal of Counsel: for attorney Richard T Collins counsel for Plaintiffs 12 South LLC, Addiction Health Alliance LLC, DR Recovery Encinitas LLC, Inland Detox Inc, Kool Living Inc, MMR Services LLC, NTR Resources LLC, Pacific Palms Recovery LLC, Southern California Addiction Center Inc, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, Women's Recovery Center, LLC. Adrian L. Canzoneri is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by plaintiffs plaintiffs. (Collins, Richard) (Entered: 02/18/2022) |
| 03/01/2022 | 242 | THIRD CONSOLIDATED AMENDED COMPLAINT against Defendants All Defendants amending Amended Complaint/Petition,, 49 , filed by plaintiffs Women's Recovery Center, LLC, Addiction Health Alliance LLC, Stephen G. Larson, Southern California Recovery Centers Oceanside LLC, TML Recovery LLC, MMR Services LLC, Pacific Palms Recovery LLC, Inland Detox Inc, Kool Living Inc, DR Recovery Encinitas LLC, 12 South LLC, NTR Resources LLC, Southern California Addiction Center Inc (Attachments: # 1 Supplement Notice of Revisions to Second Amended Complaint, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L)(Eisenbrey, Damon) (Entered: 03/01/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/20/2022 09:14:00 | | |
| PACER Login: | kirklandpacer | Client Code: | 20098-0288/41999 |
| Description: | Docket Report | Search Criteria: | 8:20-cv-00102-JWH-ADS End date: 3/21/2022 |
| Billable Pages: | 30 | Cost: | 3.00 |

# Exhibit 1B

**CALLAHAN & BLAINE, APLC**
Richard T. Collins (Bar No. 166577)
    rcollins@callahan-law.com
Damon D. Eisenbrey (Bar No. 215927)
    deisenbrey@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile:  (714) 241-4445

Attorneys for Plaintiffs

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*(left vertical margin)* CALLAHAN & BLAINE / A PROFESSIONAL LAW CORPORATION / 3 HUTTON CENTRE DRIVE, NINTH FLOOR / SANTA ANA, CALIFORNIA 92707 / TELEPHONE: (714) 241-4444 / WWW.CALLAHAN-LAW.COM

| | |
|---|---|
| WOMAN'S RECOVERY CENTER, LLC, a California limited liability company;<br>TML RECOVERY, LLC, a California limited liability company;<br>SOUTHERN CALIFORNIA RECOVERY CENTERS OCEANSIDE, LLC, a California limited liability company;<br>MMR SERVICES, LLC, a California limited liability company;<br>SOUTHERN CALIFORNIA ADDICTION CENTER, INC., a California corporation;<br>KOOL LIVING, INC., a California corporation;<br>PACIFIC PALMS RECOVERY, LLC, a California limited liability company;<br>ADDICTION HEALTH ALLIANCE, LLC, a California limited liability company;<br>DR RECOVERY ENCINITAS, LLC, a California limited liability company;<br>INLAND DETOX, INC., a California corporation;<br>12 SOUTH, LLC, a California limited liability company; and<br>NTR RESOURCES, LLC, a California limited liability company,<br><br>                    Plaintiffs,<br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, a California corporation;<br>ANTHEM INC., an Indiana corporation, | **Case No.: 8:20-cv-00102-DOC-ADSx**<br><br>*Assigned to Hon. David O. Carter*<br><br>Consolidated with:<br>8:20-cv-00104      8:20-cv-00106<br>8:20-cv-00107      8:20-cv-00108<br>8:20-cv-00109      8:20-cv-00110<br>8:20-cv-00111      8:20-cv-00112<br>8:20-cv-00114      8:20-cv-00577<br>8:20-cv-00578<br><br>This Document relates to:<br>**"ALL ACTIONS"**<br><br>**THIRD AMENDED CONSOLIDATED COMPLAINT FOR:**<br><br>1.  **CLAIMS FOR PLAN BENEFITS UNDER ERISA, 29 U.S.C. §1132(a)(1)(B)**<br>2.  **BREACH OF WRITTEN CONTRACT**<br>3.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4.  **BREACH OF ORAL CONTRACT**<br>5.  **PROMISSORY ESTOPPEL**<br>6.  **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 doing business in California as ANTHEM HEALTH, INC.;
2 THE ANTHEM COMPANIES OF CALIFORNIA, a California corporation;
3 THE ANTHEM COMPANIES, INC., an Indiana corporation, doing business in
4 Wisconsin as BLUE CROSS AND BLUE SHIELD OF WISCONSIN;
5 ANTHEM INSURANCE COMPANIES, INC., an Indiana corporation, doing
6 business in Indiana as ANTHEM BLUE CROSS AND BLUE SHIELD OF
7 INDIANA;
BLUE CROSS OF CALIFORNIA, a
8 California corporation;
VIANT, INC., a Nevada corporation;
9 MULTIPLAN, INC., a New York corporation;
10 BLUE CROSS AND BLUE SHIELD OF ALABAMA, an Alabama corporation;
11 BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC., an Arizona
12 corporation;
USABLE MUTUAL INSURANCE
13 COMPANY, an Arkansas corporation, doing business in Arkansas as
14 ARKANSAS BLUE CROSS AND BLUE SHIELD;
15 ANTHEM HEALTH PLANS, INC., a Connecticut corporation, doing business
16 in Connecticut as ANTHEM BLUE CROSS AND BLUE SHIELD OF
17 CONNECTICUT;
BLUE CROSS AND BLUE SHIELD OF
18 FLORIDA, INC., a Florida corporation;
BLUE CROSS AND BLUE SHIELD OF
19 GEORGIA, INC., a Georgia corporation;
HEALTH CARE SERVICE
20 CORPORATION, an Illinois corporation, doing business in Illinois as BLUE
21 CROSS BLUE SHIELD OF ILLINOIS, in Oklahoma as BLUE CROSS AND
22 BLUE SHIELD OF OKLAHOMA and in Texas as BLUE CROSS AND BLUE
23 SHIELD OF TEXAS;
BLUE CROSS AND BLUE SHIELD OF
24 KANSAS CITY, INC., a Missouri corporation;
25 ANTHEM HEALTH PLANS OF KENTUCKY, INC., a Kentucky
26 corporation, doing business in Kentucky as BLUE CROSS BLUE SHIELD OF
27 KENTUCKY;
HMO LOUISIANA, INC., doing
28 business in Louisiana as BLUE CROSS

---

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    AND BLUE SHIELD OF LOUISIANA;
     BLUE CROSS AND BLUE SHIELD OF
2    MASSACHUSETTS, INC., a
     Massachusetts corporation;
3    BCBSM, INC., a Minnesota corporation,
     doing business in Minnesota as BLUE
4    CROSS AND BLUE SHIELD OF
     MINNESOTA, INC.;
5    HMO MISSOURI, INC., a  Missouri
     corporation, doing business in Missouri
6    as ANTHEM BLUE CROSS AND
     BLUE SHIELD OF MISSOURI;
7    BLUE CROSS AND BLUE SHIELD OF
     NEBRASKA, INC., a Nebraska
8    corporation;
     BLUE CROSS AND BLUE SHIELD OF
9    NORTH CAROLINA, a North Carolina
     corporation;
10   COMMUNITY INSURANCE
     COMPANY, an Ohio corporation, doing
11   business in Ohio as ANTHEM BLUE
     CROSS AND BLUE SHIELD OF OHIO;
12   BLUE CROSS AND BLUE SHIELD OF
     RHODE ISLAND, a Rhode Island
13   corporation;
     BLUE CROSS AND BLUE SHIELD OF
14   SOUTH CAROLINA, a South Carolina
     corporation;
15   BLUE CROSS BLUE SHIELD OF
     TENNESSEE, INC., a Tennessee
16   corporation;
     ANTHEM HEALTH PLANS OF
17   VIRGINIA, INC., a Virginia corporation,
     doing business in Virginia as ANTHEM
18   BLUE CROSS AND BLUE SHIELD OF
     VIRGINIA, INC.;
19   CAPITAL BLUE CROSS, a
     Pennsylvania corporation;
20   CAREFIRST BLUECHOICE, INC., a
     District of Columbia corporation;
21   CAREFIRST OF MARYLAND, INC., is
     a Maryland corporation, doing business
22   in Maryland as CAREFIRST
     BLUE CROSS BLUE SHIELD;
23   EMPIRE HEALTHCHOICE
     ASSURANCE, INC., a New York
24   corporation, doing business in New York
     as EMPIRE BLUE CROSS BLUE
25   SHIELD;
     EXCELLUS HEALTH PLAN, INC., a
26   New York corporation, doing business in
     New York as EXCELLUS BLUE
27   CROSS BLUE SHIELD;
     HEALTHKEEPERS, INC., a Virginia
28   corporation;

---

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  HEALTHY ALLIANCE LIFE
   INSURANCE COMPANY, a Missouri
2  corporation;
   HIGHMARK BLUE CROSS BLUE
3  SHIELD, a Pennsylvania corporation,
   doing business in Pennsylvania as BLUE
4  CROSS BLUE SHIELD OF WESTERN
   PENNSYLVANIA;
5  HIGHMARK BLUE SHIELD, a
   Pennsylvania corporation, doing business
6  in Pennsylvania as PENNSYLVANIA
   BLUE SHIELD;
7  INDEPENDENCE HOSPITAL
   INDEMNITY PLAN, INC., a
8  Pennsylvania corporation, formerly
   known as INDEPENDENCE BLUE
9  CROSS;
   PREMERA BLUE CROSS, a
10 Washington corporation;
   REGENCE BLUE CROSS BLUE
11 SHIELD OF OREGON, an Oregon
   corporation, doing business in Oregon as
12 BLUE CROSS BLUE SHIELD OF
   OREGON;
13 REGENCE BLUE SHIELD, a
   Washington corporation;
14 ROCKY MOUNTAIN HOSPITAL AND
   MEDICAL SERVICE, INC., a Colorado
15 corporation, doing business in Colorado
   as ANTHEM BLUE CROSS AND
16 BLUE SHIELD OF COLORADO; and
   BLUE CROSS AND BLUE SHIELD
17 ASSOCIATION, an Illinois corporation,
   inclusive,
18
19              Defendants.
   _____
20
21
22
23
24
25
26
27
28

_____

THIRD AMENDED CONSOLIDATED COMPLAINT

1    Plaintiffs Woman's Recovery Center, LLC, TML Recovery, LLC, Southern

2  California Recovery Centers Oceanside, LLC, MMR Services, LLC, Southern

3  California Addiction Center, Inc., Kool Living, Inc., Pacific Palms Recovery, LLC,

4  Addiction Health Alliance, LLC, DR Recovery Encinitas, LLC, Inland Detox, Inc.,

5  12 South, LLC and NTR Resources, LLC (collectively "Plaintiffs") hereby allege

6  against Defendants Anthem Blue Cross Life and Health Insurance Company,

7  Anthem Inc., doing business in California as Anthem Health, Inc., The Anthem

8  Companies of California, The Anthem Companies, Inc., an Indiana corporation,

9  doing business in Wisconsin as Blue Cross and Blue Shield of Wisconsin, Anthem

10 Insurance Companies, Inc., doing business in Indiana as Anthem Blue Cross and

11 Blue Shield of Indiana, Blue Cross of California, Blue Cross and Blue Shield of

12 Alabama, Blue Cross and Blue Shield of Arizona, Inc., USAble Mutual Insurance

13 Company, doing business in Arkansas as Arkansas Blue Cross and Blue Shield,,

14 Anthem Health Plans, Inc., doing business in Connecticut as Anthem Blue Cross

15 and Blue Shield of Connecticut, Blue Cross and Blue Shield of Florida, Inc., Blue

16 Cross and Blue Shield of Georgia, Inc., Health Care Service Corporation, doing

17 business in Illinois as Blue Cross Blue Shield of Illinois, in Oklahoma as Blue Cross

18 and Blue Shield of Oklahoma, and in Texas as Blue Cross and Blue Shield of Texas,

19 Blue Cross and Blue Shield of Kansas City, Inc., Anthem Health Plans of Kentucky,

20 Inc., doing business in Kentucky as Blue Cross and Blue Shield of Kentucky, HMO

21 Louisiana, Inc., doing business in Louisiana as Blue Cross and Blue Shield of

22 Louisiana, Blue Cross Blue Shield of Massachusetts, Inc., BCBSM, Inc., doing

23 business in Minnesota Blue Cross and Blue Shield of Minnesota**, Inc.,** HMO

24 Missouri, Inc., doing business in Missouri as Anthem Blue Cross and Blue Shield of

25 Missouri, Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield

26 of North Carolina, Community Insurance Company**,** doing business in Ohio as

27 Anthem Blue Cross and Blue Shield of Ohio, Blue Cross and Blue Shield of Rhode

28 Island, Blue Cross and Blue Shield of South Carolina, Blue Cross Blue Shield of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 1 -

THIRD AMENDED CONSOLIDATED COMPLAINT

Tennessee, Inc., Anthem Health Plans of Virginia, Inc., doing business in Virginia

as Anthem Blue Cross and Blue Shield of Virginia, Inc., Capital Blue Cross,

CareFirst BlueChoice, Inc., CareFirst of Maryland, Inc., doing business in Maryland

as CareFirst Blue Cross Blue Shield,  Empire HealthChoice Assurance, Inc., doing

business in New York as Empire Blue Cross Blue Shield, Excellus Health Plan, Inc.,

doing business in New York as Excellus Blue Cross Blue Shield, HealthKeepers,

Inc., Healthy Alliance Life Insurance Company,  Highmark Blue Cross Blue Shield,

doing business in Pennsylvania as Blue Cross Blue Shield of Western Pennsylvania,

Highmark Blue Shield, doing business in Pennsylvania as Pennsylvania Blue Shield,

Independence Hospital Indemnity Plan, Inc., formerly known as Independence Blue

Cross, Premera Blue Cross, Regence Blue Cross Blue Shield, doing business in

Oregon as Blue Cross Blue Shield of Oregon, Regence Blue Shield, and Rocky

Mountain Hospital and Medical Service, Inc., doing business in Colorado as

Anthem Blue Cross and Blue Shield of Colorado (collectively the **"**Blue Cross and

Blue Shield Defendants" or "Member Plans"), Blue Cross and Blue Shield

Association ("the Association"), Viant, Inc., and Multiplan, Inc. (collectively

"MultiPlan") (the Blue Cross and Blue Shield Defendants or Member Plans, the

Association and MultiPlan are collectively referred to herein as "Defendants") as

follows:

## **THE PARTIES**

### **The Plaintiffs**

1. **Plaintiff Woman's Recovery Center, LLC, doing business as

Sunsets Recovery Center ("Woman's Recovery")** (TIN 81-5361991), is, and at all

relevant times herein mentioned was, a California limited liability company

qualified to do business in the State of California.  Woman's Recovery is a

substance use disorder ("SUD") treatment provider.  Woman's Recovery is in the

profession of helping individuals recover from alcoholism and addiction and return

to their families and communities as productive and contributing members of

society.  Woman's Recovery is, and at all relevant times herein was, certified by the

California Department of Health Care Services ("DHCS") to operate a SUD

treatment program and is accredited by the Joint Commission, Behavioral Health

Care Accreditation Program ("JCAHO") and has a Centers for Medicare and

Medicaid Services ("CMS"), Clinical Laboratory Improvements Amendments

("CLIA"), certificate of waiver.

    2.    **Plaintiff TML Recovery, LLC, doing business as So Cal Recovery**

**Centers and also known as Southern California Recovery Centers, So Cal**

**Recovery and SCRC ("TML Recovery")** (TIN 46-2916076), is, and at all relevant

times herein mentioned was, a California limited liability company qualified to do

business in the State of California.  TML Recovery is a SUD treatment provider and,

at times relevant herein, was a licensed clinical laboratory.  TML Recovery is in the

profession of helping individuals recover from alcoholism and addiction and return

to their families and communities as productive and contributing members of

society.  TML Recovery is, and at all relevant times herein was, certified by the

DHCS to operate a SUD treatment program, accredited by JCAHO and the

Commission on Accreditation of Rehabilitation Facilities International ("CARF"),

and has a CMS, CLIA, certificate of waiver.  At times relevant herein, TML

Recovery was licensed by the California Department of Public Health ("DPH") and

accredited by the CMS and Commission on Office Laboratory Accreditation

("COLA") as a laboratory for the examination of materials derived from the human

body for the purpose of providing information for the diagnosis, prevention, and

treatment of human disease or impairment, and to determine, measure, or otherwise

describe the presence or absence of various substances or organisms in the body.

    3.    **Plaintiff Southern California Recovery Centers Oceanside, LLC,**

**also known as Southern California Recovery Centers, So Cal Recovery and**

**SCRC ("SCRCO")** (TIN 47-4573182), is, and at all relevant times herein

mentioned was, a California limited liability company qualified to do business in the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   State of California.  SCRCO is a SUD treatment provider and clinical laboratory.

2   SCRCO is in the profession of helping individuals recover from alcoholism and

3   addiction and return to their families and communities as productive and

4   contributing members of society.  SCRCO is, and at all relevant times herein was,

5   certified by the DHCS to operate a SUD treatment program and has a CMS, CLIA,

6   certificate of waiver.  At times relevant herein, SCRCO was licensed by the DPH

7   and accredited by the CMS and COLA as a laboratory for the examination of

8   materials derived from the human body for the purpose of providing information for

9   the diagnosis, prevention, and treatment of human disease or impairment, and to

10  determine, measure, or otherwise describe the presence or absence of various

11  substances or organisms in the body.

12        4.      **Plaintiff MMR Services, LLC, doing business as Southern**

13  **California Services and So Cal Services ("MMR Services")** (TIN 47-3018602),

14  is, and at all relevant times herein mentioned was, a California limited liability

15  company qualified to do business in the State of California.  MMR Services was, at

16  all times relevant herein, a licensed clinical laboratory.  MMR Services provided

17  laboratory services to those in the process of recovering from mental health and

18  SUDs.  MMR Services was, at all relevant times herein, licensed by the DPH and

19  accredited by the CMS and COLA as a laboratory for the examination of materials

20  derived from the human body for the purpose of providing information for the

21  diagnosis, prevention, and treatment of human disease or impairment, and to

22  determine, measure, or otherwise describe the presence or absence of various

23  substances or organisms in the body.  MMR Services was a full service, CLIA

24  compliant, high complexity reference specialty laboratory that combines state of the

25  art laboratory testing processes, methodologies and cutting-edge technology for its

26  specialization in urine toxicology drug confirmation testing which is designed to

27  provide accurate results that help physicians and clinicians create a scientifically

28  designed drug monitoring strategy for optimal treatment outcomes, which includes

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

1   core lab and PGx testing for accurate prescription therapy.

2       5.      **Plaintiff Southern California Addiction Center, Inc. ("SCAC")**

3   (TIN 47-5231947) is, and at all relevant times herein mentioned was, a California

4   corporation qualified to do business in the State of California.  At all times relevant

5   herein, SCAC was a SUD treatment provider in the profession of helping

6   individuals recover from alcoholism and addiction and return to their families and

7   communities as productive and contributing members of society.  SCAC was, at all

8   relevant times herein, licensed and certified by the DHCS to operate a SUD

9   residential facility and treatment program, accredited by JCAHO, and had a CMS,

10  CLIA, certificate of waiver.

11      6.      **Plaintiff Kool Living, Inc., doing business as Kool Living Recovery**

12  **Center and Footprints Behavioral Health ("Kool Living")** (TIN 46-1249745), is,

13  and at all relevant times herein mentioned was, a California corporation qualified to

14  do business in the State of California.  At all times relevant herein, Kool Living was

15  a SUD treatment provider in the profession of helping individuals recover from

16  alcoholism and addiction and return to their families and communities as productive

17  and contributing members of society.  Kool Living was, at all relevant times herein,

18  licensed and certified by the DHCS to operate a SUD residential facility and

19  treatment program, accredited by JCAHO, and had a CMS, CLIA, certificate of

20  waiver.

21      7.      **Plaintiff Pacific Palms Recovery, LLC, also known as Pacific Palms**

22  **Recovery & Lifeskills Program ("Pacific Palms")** (TIN 80-0651115), is, and at

23  all relevant times herein mentioned was, a California limited liability company

24  qualified to do business in the State of California.  Pacific Palms is a SUD treatment

25  provider.  Pacific Palms is in the profession of helping individuals recover from

26  alcoholism and addiction and return to their families and communities as productive

27  and contributing members of society.  Pacific Palms is, and at all relevant times

28  herein was, certified by the DHCS to operate a SUD treatment program, accredited

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

by JCAHO and CARF, and has a CMS, CLIA, certificate of waiver.

        8.      **Plaintiff Addiction Health Alliance, LLC ("AHA")** (TIN 46-5515765) is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California.  AHA is a SUD treatment provider and clinical laboratory.  AHA is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  AHA is, and at all relevant times herein was, licensed by the DHCS to operate a SUD residential facility and accredited by JCAHO.  AHA is, and at all relevant times herein was, licensed by the DPH and accredited by the CMS and COLA as a laboratory for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body.

        9.      **Plaintiff DR Recovery Encinitas, LLC, also known as Southern California Recovery Centers, So Cal Recovery and SCRC ("DR Recovery")** (TIN 47-1361036), is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California.  At all times relevant herein, DR Recovery was a SUD treatment provider and clinical laboratory in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  DR Recovery was, at all relevant times herein, certified by the DHCS to operate a SUD treatment program and had a CMS, CLIA, certificate of waiver.  At times relevant herein, DR Recovery was licensed by the DPH and accredited by the CMS and COLA as a laboratory for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

substances or organisms in the body.

10. **Plaintiff Inland Detox, Inc. ("Inland Detox")** (TIN 47-4597782) is, and at all relevant times herein mentioned was, a California corporation qualified to do business in the State of California. Inland Detox is a SUD treatment provider. Inland Detox is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society. Inland Detox is, and at all relevant times herein was, licensed by the DHCS to operate a SUD residential facility, accredited by CARF, and has a CMS, CLIA, certificate of waiver.

11. **Plaintiff 12 South, LLC ("12 South")** (TIN 47-5125464) is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California. 12 South is a mental health and SUD treatment provider. 12 South is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society. 12 South is, and at all relevant times herein was, certified by the DHCS to operate a SUD treatment program, accredited by JCAHO, and has a CMS, CLIA, certificate of waiver.

12. **Plaintiff NTR Resources, LLC ("NTR Resources")** (TIN 82-4434097) is, and at all relevant times herein mentioned was, a California limited liability company qualified to do business in the State of California. NTR Resources is a clinical laboratory. NTR Resources provides laboratory services to those in the process of recovering from mental health and SUDs. NTR Resources is licensed by the DPH and accredited by the CMS and COLA as a laboratory for the examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, and treatment of human disease or impairment, and to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body. NTR Resources is a full service, CLIA compliant, high complexity reference specialty laboratory that

combines state of the art laboratory testing processes, methodologies and cutting-edge technology for its specialization in urine toxicology drug confirmation testing which is designed to provide accurate results that help physicians and clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes core lab and PGx testing for accurate prescription therapy.

**The Defendants**

13.     On information and belief, **Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem Blue Cross")** is a California corporation, which conducts insurance operations throughout California, representing to consumers that Anthem Blue Cross, together with its syndicate, association, subsidiaries and affiliates is a national health insurance organization.[1]   Anthem Blue Cross operates as and owns the trademark "Anthem Blue Cross."

14.     On information and belief, **Defendant Anthem Inc. ("Anthem Inc.")**

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[1]   In March 2020, the *Ames, et al. v. Anthem Blue Cross Life & Health Insurance Company*, *et al.*, Los Angeles Superior Court, Case No.: BC591623, class action settled.  The settlement benefits individuals who were enrolled under an Anthem PPO health plan and who requested coverage for behavioral health treatment for a co-morbid diagnosis (substance use disorder and mental health) between August 18, 2011 and February 4, 2020.  Included in the class are persons: (1) whose requests for authorization for substance use disorder treatment were denied because they had purportedly reached their plan's benefit limit; (2) whose requests for authorization for substance use disorder treatment were denied for lack of medical necessity under Anthem's criteria for assessing medical necessity of substance use disorders; and/or (3) who did not eek authorization of continued treatment because an Anthem representative or a provider told them that they had reached their plan's benefit limit for treatment of a substance use disorder in a calendar year.  *See* Calif. Anthem Blue Cross Treatment Denial Class Action, retrieved on April 15, 2020 from https://topclassactions.com/lawsuit-settlements/open-lawsuit-settlements/insurance/calif-anthem-blue-cross-treatment-denial-class-action-settlement/; *see also*, Ames v. Anthem Notice of Settlement, retrieved from https://amessettlement.com/Home/portalid/0?portalid=0, on April 30, 2020.

- 8 -

is an Indiana corporation, doing business in California as Anthem Health, Inc.[2]

15.     On information and belief, **Defendant The Anthem Companies of California ("The Anthem Companies")** is a California corporation.

16.     On information and belief, **Defendant The Anthem Companies, Inc.,** is an Indiana corporation, doing business in Wisconsin as **Blue Cross and Blue Shield of Wisconsin ("BCBS Wisconsin")**.

17.     On information and belief, **Defendant Anthem Insurance Companies, Inc. ("Anthem Insurance Companies")** is an Indiana corporation, doing business in Indiana as **Anthem Blue Cross and Blue Shield of Indiana ("BCBS Indiana")**.  "Anthem"® is a registered trademark of Anthem Insurance Companies.

18.     On information and belief, **Defendant Blue Cross of California ("BCC")** is a California corporation.  Anthem Blue Cross is the trade name of BCC.

19.     On information and belief, **Defendant Blue Cross and Blue Shield of Alabama ("BCBS Alabama")** is an Alabama corporation.

20.     On information and belief, **Defendant Blue Cross and Blue Shield of Arizona, Inc. ("BCBS Arizona")** is an Arizona corporation.

21.     On information and belief, **Defendant  USAble Mutual Insrance Company** doing business in Arkansas as **Arkansas Blue Cross and Blue Shield ("BCBS Arkansas")** is an Arkansas corporation.

---

[2]  On March 27, 2020, Geoffrey S. Berman, the United States Attorney for the Southern District of New York, announced that the United States filed a Medicare fraud lawsuit against Anthem, Inc., alleging that Anthem falsely certified certifying the accuracy of the diagnosis data it submitted to CMS, which enabled Anthem to obtain millions of dollars in Medicare funds to which it was not entitled.  *See* Manhattan U.S. Attorney Files Civil Fraud Suit Against Anthem, Inc., For Falsely Certifying The Accuracy Of Its Diagnosis Data _ USAO-SDNY _ Department of Justice – Press Release Number: 20-100 (March 27, 2020), retrieved on March 31, 2020 from https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-files-civil-fraud-suit-against-anthem-inc-falsely-certifying; *see also*, pdf copy of the filed complaint (March, 26, 2020), retrieved on March 31, 2020 from https://www.justice.gov/usao-sdny/press-release/file/1262841/download.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

22.     On information and belief, **Defendant Anthem Health Plans, Inc.**, is a Connecticut corporation, doing business in Connecticut as **Anthem Blue Cross and Blue Shield of Connecticut ("BCBS Connecticut")**.

23.     On information and belief, **Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida")** is a Florida corporation.

24.     On information and belief, **Defendant Blue Cross and Blue Shield of Georgia, Inc. ("BCBS Georgia")** is a Georgia corporation.

25.     On information and belief, **Defendant Health Care Service Corporation** is an Illinois corporation, doing business in Illinois as **Blue Cross Blue Shield of Illinois ("BCBS Illinois")**, in Oklahoma as **Blue Cross and Blue Shield of Oklahoma ("BCBS Oklahoma"),** and in Texas as **Blue Cross and Blue Shield of Texas ("BCBS Texas")**.

26.     On information and belief, **Defendant Blue Cross and Blue Shield of Kansas City, Inc. ("BCBS Kansas City")** is a Missouri corporation.

27.     On information and belief, **Defendant Anthem Health Plans of Kentucky, Inc.** is a Kentucky corporation, doing business in Kentucky as **Blue Cross Blue Shield of Kentucky ("BCBS Kentucky")**.

28.     On information and belief, **Defendant HMO Louisiana, Inc.** is a Louisiana corporation, doing business in Louisiana as **Blue Cross and Blue Shield of Louisiana ("BCBS Louisiana")**.

29.     On information and belief, **Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS Massachusetts")** is a Massachusetts corporation.

30.     On information and belief, **Defendant BCBSM, Inc.,** is a Minnesota corporation, doing business in Minnesota as **Blue Cross and Blue Shield of Minnesota, Inc. ("BCBS Minnesota")**.

31.     On information and belief, **Defendant HMO Missouri, Inc.** is a Missouri corporation, doing business in Missouri as **Anthem Blue Cross and Blue Shield of Missouri ("BCBS Missouri")**.

THIRD AMENDED CONSOLIDATED COMPLAINT

32.     On information and belief, **Defendant Blue Cross and Blue Shield of Nebraska, Inc. ("BCBS Nebraska")** is a Nebraska corporation.

33.     On information and belief, **Defendant Blue Cross and Blue Shield of North Carolina ("BCBS North Carolina")** is a North Carolina corporation.

34.     On information and belief, **Defendant Community Insurance Company** is an Ohio corporation**,** doing business in Ohio as **Anthem Blue Cross and Blue Shield of Ohio ("BCBS Ohio")**.

35.     On information and belief, **Defendant Blue Cross and Blue Shield of Rhode Island ("BCBS Rhode Island")** is a Rhode Island corporation.

36.     On information and belief, **Defendant Blue Cross and Blue Shield of South Carolina ("BCBS South Carolina")** is a South Carolina corporation.

37.     On information and belief, **Defendant Blue Cross Blue Shield of Tennessee, Inc. ("BCBS Tennessee")** is a Tennessee corporation.

38.     On information and belief, **Defendant Anthem Health Plans of Virginia, Inc.** is a Virginia corporation, doing business in Virginia as **Anthem Blue Cross and Blue Shield of Virginia ("BCBS Virginia")**.

39.     On information and belief, **Defendant Capital Blue Cross ("BCBS Capital PA")** is a Pennsylvania corporation.

40.     On information and belief, **Defendant CareFirst BlueChoice, Inc. ("BCBS D.C.")** is a District of Columbia corporation.

41.     On information and belief, **Defendant CareFirst of Maryland, Inc.** is a Maryland corporation, doing business in Maryland as **CareFirst Blue Cross Blue Shield ("BCBS Maryland")**.

42.     On information and belief, **Defendant Empire HealthChoice Assurance, Inc.**, is a New York corporation, doing business in New York as **Empire Blue Cross Blue Shield ("BCBS Empire NY")**.

43.     On information and belief, **Defendant Excellus Health Plan, Inc.** is a New York corporation, doing business in New York as **Excellus Blue Cross Blue**

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Shield (**"BCBS Excellus NY"**).

2       44.     On information and belief, **Defendant HealthKeepers, Inc. ("BCBS**

3   **HealthKeepers")** is a Virginia corporation.

4       45.     On information and belief, **Defendant Healthy Alliance Life**

5   **Insurance Company ("BCBS Healthy MO")** is a Missouri corporation.

6       46.     On information and belief, **Defendant Highmark Blue Cross Blue**

7   **Shield**, is a Pennsylvania corporation, doing business in Pennsylvania as **Blue**

8   **Cross Blue Shield of Western Pennsylvania ("BCBS Western PA")**.

9       47.     On information and belief, **Defendant Highmark Blue Shield**, is a

10  Pennsylvania corporation, doing business in Pennsylvania as **Pennsylvania Blue**

11  **Shield ("BCBS Central PA")**.

12      48.     On information and belief, **Defendant Independence Hospital**

13  **Indemnity Plan, Inc.**, formerly known as **Independence Blue Cross ("BCBS**

14  **Independence PA")** is a Pennsylvania corporation.

15      49.     On information and belief, **Defendant Premera Blue Cross ("BCBS**

16  **Premera WA")** is a Washington corporation.

17      50.     On information and belief, **Defendant Regence Blue Cross Blue**

18  **Shield** is an Oregon corporation, doing business in Oregon as **Blue Cross Blue**

19  **Shield of Oregon ("BCBS Oregon")**.

20      51.     On information and belief, **Defendant Regence Blue Shield ("BCBS**

21  **Regence WA")** is a Washington corporation.

22      52.     On information and belief, **Defendant Rocky Mountain Hospital and**

23  **Medical Service, Inc.** is a Colorado corporation, doing business in Colorado as

24  **Anthem Blue Cross and Blue Shield of Colorado ("BCBS Colorado")**.

25      53.     On information and belief, the Blue Cross and Blue Shield Defendants,

26  and each of them, market and issue health insurance, and insure, issue, administer

27  and make coverage and benefit determinations with respect to the health care plans

28  at issue in this action; they develop and apply SUD and mental health treatment and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

laboratory guidelines in making coverage and benefit determinations; they

participate in the claims administration process related to plans insured, managed

and/or administered by their wholly-owned and controlled subsidiaries, syndicates,

associations, affiliates, controlled agents and undisclosed principals, including, but

not limited to each of the other Blue Cross and Blue Shield Defendants, and

Defendants Viant, Inc. and Multiplan, Inc.; and they are licensed and regulated by

the California Department of Insurance ("CDI") and the California Department of

Managed Health Care ("CDMHC") to transact the business of insurance in the State

of California, are in fact transacting the business of insurance in the State of

California, and are thereby subject to the laws and regulations of the State of

California.

54.     On information and belief, **Defendant Blue Cross and Blue Shield**
**Association (the "Association")** is an Illinois corporation, controlled and funded by

the Blue Cross and Blue Shield Defendants, among other Blue Cross Blue Shield

("BCBS") entities that operate under the Blue Cross and Blue Shield trademarks and

trade names.  The Association was created by the Blue Cross and Blue Shield

Defendants and the other BCBS entities, and operates as the licensor of the Blue

Cross and Blue Shield trademarks and trade names.  The Association exists solely

for the benefit of the Blue Cross and Blue Shield Defendants and the other BCBS

entities and to facilitate their concerted activities.

55.     According to its website, The Association, and the Blue Cross and Blue

Shield Defendants and other BCBS entities, "understand and answer to the needs of

local communities, while providing nationwide healthcare coverage that opens doors

for more than 107 million members in all 50 states, Washington, D.C., and Puerto

Rico;" they contract nationwide with "more than 96 percent of hospitals and 95

percent of doctors and specialists contract with Blue Cross Blue Shield companies

— more than any other insurer;" the Association "is a national association of 36

independent, community-based and locally operated Blue Cross Blue Shield

companies;" "the Association owns and manages the Blue Cross and Blue Shield trademarks and names in more than 170 countries around the world;" and "the Association grants licenses to independent companies to use the trademarks and names in exclusive geographic areas."  See, https://www.bcbs.com/about-us/the-blue-cross-blue-shield-system (last visited August 22, 2020).

56.    The Association is engaged in the business of selling and administering health insurance and healthcare benefit plans, and is the plan administrator of the Federal Employee Health Benefit Program ("FEP"), under which a number of Plaintiffs' claims were submitted.

57.    When explaining to the U.S. Internal Revenue Service ("IRS") why it deserves tax exempt status as a non-profit organization, the Association has stated that its tax exempt purpose is promoting, through Blue Cross and Blue Shield Member Plans, the common good and general welfare of the community by fostering broad-based health insurance coverage, and that it serves as the umbrella organization for the Member Plans, coordinating advertising and communication programs, providing policy and representation of member interests, monitoring and fostering the financial stability of all the plans, and supporting the ability of the plans to operate efficiently by providing conferences, consulting and miscellaneous services to the plans. [3]

58.    The governance structure of the Association is set out in its bylaws, which were approved by a vote of the Member Plans, who agreed to be bound by the Association rules, yet serve as governing members of the Association and may amend or repeal the bylaws and adopt new bylaws.  The Association's own bylaws demonstrate that the Association is funded and controlled by the Member Plans, who receive licenses to use the BCBS trade/service marks.  The Association is led by a Chief Executive Officer and President, and the Association's Board of

---

[3] 2018 IRS Form 990, filed by Blue Cross Blue Shield Association with the Internal Revenue Service on November 14, 2019.

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Directors is comprised of the CEO of each of the Member Plans plus the CEO of the

2    Association.

3         59.    The Blue Cross and Blue Shield Defendants, who hold themselves out

4    to the public as independent companies, have conspired with each other and with the

5    Association to engage in an illegal horizontal market allocation, agreeing to carve

6    the United States into exclusive service areas ("ESA") in which only one Member

7    Plan can sell insurance, administer employee benefit plans or contract with

8    healthcare providers.  The other Member Plans enjoy the benefit of the artificially

9    reduced, fixed prices that each Member Plan pays to healthcare providers through

10   the national programs they have collectively established, including the Blue Card

11   Program and the National Accounts Programs.

12        60.    Each Member Plan has signed a License Agreement with the

13   Association that identifies an ESA where a Member Plan may use the BCBS marks,

14   and the Plans agreed that they may not use the licensed BCBS marks outside the

15   ESA.

16        61.    Four Member Plan CEOs in 1986 recognized that "[t]he major

17   advantage of an ESA was seen in the lessening of competition as well as the

18   opportunity to discuss plans and proposals with companies in the same industry

19   knowing that those ideas would not be used against you." [4]

20        62.    The Association and the Blue Cross and Blue Shield Defendants

21   entities have conspired and agreed that the Blue Cross and Blue Shield Defendants

22   will not compete with each other in terms of their provider networks, and even when

23   the Blue Cross and Blue Shield Defendants have significant enrollees in another

24   Blue Cross and Blue Shield Defendant's service area, they have an agreement that

25   they will not contract with providers outside of their service areas except in limited

26   circumstances.  In short, the Association exists solely for the benefit of the Blue

27   ─────────────────

28   [4] Memorandum Opinion, *In re: Blue Cross Blue Shield Antitrust Litigation*, Case 2:13-cv-20000-RDP, ECF No. 2063, filed 04/05/18, at p. 13.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

1    Cross and Blue Shield Defendants, and to facilitate their concerted activities.

2         63.    In furtherance of these concerted activities, each of the Blue Cross and

3    Blue Shield Defendants has agreed to participate in the national programs adopted

4    by the Association and Blue Cross and Blue Shield Defendants, including the Blue

5    Card Program and the National Accounts Program.  The Blue Card Program is a

6    program that enables members of one BCBS plan to obtain health care services

7    while traveling or living in another BCBS plan's service area.  Under this program,

8    when a member of a BCBS plan obtains covered health care services in another

9    state, the "local" or "host" BCBS plan (*i.e.*, the plan located in the state where the

10   services are provided) receives the claim(s) from the local provider and routes the

11   claim information along with pricing data to the "home" BCBS plan.  The "home"

12   plan is the BCBS plan that issues, insures and/or administers the health plan for the

13   member.[5]  The National Accounts Program functions in a similar manner and

14   generally applies to employee benefit plans with insured members in multiple states.

15   These programs have been established by a horizontal agreement between the Blue

16   Cross and Blue Shield Defendants.  The Blue Card Program is managed by a

17   Committee of Blue Cross and Blue Shield Defendants sitting on the Inter-Plan

18   Programs Committee.  These programs, among other national programs, lock in

19   fixed, discounted reimbursement rates that each Blue Cross and Blue Shield

20   Defendant achieves through market dominance in its service area and makes

21   subcompetitive rates available to all other Blue Cross and Blue Shield Defendants

22   without the need for negotiation or contracting.  Because many Blue Cross and Blue

23   _____

24   [5] Specifically, the mechanics of the Host/Home plan relationship operate as follows:  The Host
     Plan (in this case BCC) collects initial claims data and forwards it to the Home plan for a
25   determination as to whether the claim is covered under the policy issued by the Home Plan.  The
     Host Plan does not make any determination regarding the scope of coverage or the Member's
26   eligibility for coverage.  The Home Plan evaluates the data submitted by the Host Plan, determines
     whether and how much of the claim is allowable, and advises the Host Plan of its determination.
27   The Host Plan prices the claim and makes payment to the service provider, and then submits a
     claim to the Home Plan for reimbursement.
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -

1   Shield Defendants have large numbers of members outside of their service areas,

2   and rather than forming competing networks of providers in the other service areas,

3   the Blue Cross and Blue Shield Defendants pay the Home Plan a kickback, called an

4   Access Fee, and thereby share the excess profits they achieve through the sub-

5   competitive prices that the Blue Cross and Blue Shield Defendants pay to Providers.

6   64.   The Association and the Member Plans are defendants in the matter of

7   *In re: Blue Cross Blue Shield Antitrust Litigation*, Case 2:13-cv-20000-RDP, a

8   consolidation of multiple lawsuits that were initially filed in 2012 by two putative

9   nationwide classes of plaintiffs -- health plan subscribers and providers -- for

10  conspiring to horizontally allocate geographic markets through license agreements,

11  best efforts rules, restrictions on acquisitions, rules governing the BlueCard and

12  National Accounts programs and other arrangements.[6]

13  65.   In interviews conducted by the Association in which questions about

14  ESAs were asked, Plan CEOs stated that ESAs create "[l]arger market share because

15  other Blues stay out and do not fragment the market," and allow for aggressive

16  bargaining, and one CEO reported that "Plans benefit from the exclusive service

17  areas because it eliminates competition from other Blue Plans" and that without

18  service areas, "there would be open warfare."[7]

19  66.   In 1992, the Blue Card program was developed and participation in the

20  Blue Card program is a requirement of the License Agreement between the

21  Association and each individual Member Plan.[8]

22  67.   The Association and the Blue Cross and Blue Shield Defendants

23  operate under an agreed set of rules whereby prices for healthcare services paid by

24  the entire group of Member Plans -- all 36 separate BCBS entities -- are set by its

25  

---

26  [6] Anthem, Inc. third quarter 2020 Form 10-Q, filed with the U.S. Securities and Exchange Commission ("SEC"), on October 28, 2020.

27  [7] Memorandum Opinion, *In re: Blue Cross Blue Shield Antitrust Litigation*, Case 2:13-cv-20000-RDP, ECF No. 2063, filed 04/05/18, at p. 13.

28  [8] *Id.*, at pp. 15-17.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

Home Plan, and the Member Plans have agreed to not interfere with the Home Plan's pricing of healthcare services or its negotiations with healthcare providers.[9]

68.   *In re: Blue Cross Blue Shield Antitrust Litigation* began as a single case in 2012, and was subsequently converted into an MDL after numerous similar cases by health plan subscribers and healthcare providers were filed across the country, each contending that the Association and Member Plans unlawfully impeded competition among its Member Plans, causing consumers to pay higher rates for healthcare services and insurance.

69.   When the claims of antitrust violations were raised on summary judgment in the matter of *In re: Blue Cross Blue Shield Antitrust Litigation*, the Association and the Blue Cross and Blue Shield Defendants' defense was that they cannot be guilty of fixing prices or monopolizing health insurance in their ESAs because *they operate as a single entity*.[10]   The Court in that case nonetheless ruled that:

a.   Defendants' ESA limitations prohibit the Blue Plans from competing, and thus earning revenue, outside of their area under their Blue brands, which is an antitrust violation.

b.   Defendants' National Best Efforts rule, implemented in 2005, requires a Plan to derive at least sixty-six and two-thirds percent (66 2/3%) of its national health insurance revenue from its Blue brand, which has been deemed an output restriction[11] on a Plan's non-Blue brand business.

---

[9] *Id.*, at pp. 52-53.

[10] *Id.*, at p. 32.

[11] Output restrictions have been called one of the "most important per se categories," along with naked horizontal price-fixing and market allocation. *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004) (citing *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 593 (1st Cir. 1993)); see also *Xcaliber Int'l Ltd. LLC v. Atty. Gen. State of La.*, 612 F.3d 368, 375 (5th Cir. 2010).

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

c.     The Blue Card program constitutes horizontal price fixing[12] that completely eliminates the possibility of price competition among the Blues for providers' services.[13]

70.     On October 16, 2020, the Association and the Blue Cross and Blue Shield Defendants settled just the subscribers' side of the case, and agreed to pay $2.67 billion and to be subjected to injunctive relief,[14] while the healthcare providers' claims against the Association and the Blue Cross and Blue Shield Defendants are still pending.

71.     On information and belief, **Defendant Viant, Inc. ("Viant")** is a Nevada corporation which conducts insurance operations throughout California. Viant provides health care payment solutions and offers auditing and reimbursement of behavioral health and SUD claims and costs, as well as prepayment services such as treatment facility bill review and professional negotiation, on plans at issue herein insured, managed and/or administered by Anthem Blue Cross and its syndicate, association, subsidiaries and affiliates.  Plaintiffs are informed and believe, and based thereon allege, that Viant is licensed and regulated by the CDI and the CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California, and is thereby subject to the laws and regulations of the State of California.

72.     On information and belief, **Defendant MultiPlan, Inc. ("MPI")** is a New York corporation which conducts insurance operations throughout California.

---

[12] It is axiomatic that horizontal price-fixing schemes are per se violations of the Sherman Act. See *All Care Nursing Serv., Inc. v. High Tech Staffing Servs.*, 135 F.3d 740, 746 (11th Cir. 1998); *Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006).

[13] *Ibid.*, at pp. 46-49.

[14] Subscriber Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval of Proposed Class Settlement (ECF 2610-1) and Settlement Agreement (ECF 2610-2), *In re Blue Cross Blue Shield Antitrust Litigation*, Case No. 2:13-cv-20000-RDP, filed October 30, 2020.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

MPI is a provider of healthcare cost management solutions, specializing in

providing claim cost management solutions for controlling the financial risks

associated with health care bills on plans at issue herein insured, managed and/or

administered by Anthem Blue Cross and its syndicate, association, subsidiaries and

affiliates.  MPI also offers preferred provider organization network solutions for

accessing hospitals, ancillary care facilities, treatment facilities, and health care

professionals for the benefit and at the control and direction of Anthem Blue Cross

and its syndicate, association, subsidiaries and affiliates.  Plaintiffs are informed and

believe, and based thereon allege, that MPI is licensed and regulated by the CDI and

the CDMHC to transact the business of insurance in the State of California, is in fact

transacting the business of insurance in the State of California, and is thereby

subject to the laws and regulations of the State of California.

73.     Plaintiffs are informed and believe that, at all relevant times, each of

the Defendants was and is the agent, servant, representative, undisclosed principal

and/or alter ego of each of the other Defendants, and in doing the things herein

alleged, each of the Defendants was acting in the scope of its authority as such

agent, servant, representative, undisclosed principal and/or alter ego, and with the

permission and consent of each of the other Defendants.

74.     Plaintiffs are informed and believe that, at all relevant times,

Defendants are the alter egos of the other Defendants, have comingled assets, have

comingled business operations, have undercapitalized operations, have ignored

corporate formalities, and have exercised such dominion and control over the

operations of the other Defendants that it would be unjust to permit such Defendants

to avoid individual liability.  Plaintiffs are further informed and believe, that a unity

of interest and ownership exists between Defendants, that any individuality and

separateness between Defendants have ceased, and that Defendants are the alter

egos of one another.  On information and belief, Plaintiffs understand and believe

that Defendants share the same common ownership, places of business,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1   managements, and operate as a single enterprise.

2       75.     Plaintiffs are informed and believe that, at all relevant times, each of

3   the Defendants formed and operated a conspiracy with each of the other Defendants

4   to perform the acts alleged herein, in furtherance of a common design to place

5   profits over patients and damage SUD treatment providers and laboratories,

6   including Plaintiffs, and with knowledge that the conduct alleged herein of each of

7   the Defendants constituted violations of law and provided substantial assistance or

8   encouragement to each other to so act against insured patients and SUD treatment

9   providers and laboratories, including Plaintiffs.

10      76.     By the conduct alleged herein, and specifically the agreements

11  governing the Defendants' relationships, the Association and the Blue Cross and

12  Blue Shield Defendants, and each of them, represent one another in dealings with

13  third persons, hold power to alter the legal relations between each of them and third

14  parties, and control the conduct of each other, including restraints on competition

15  and pricing of healthcare claims, and each acts as a fiduciary of the other with

16  respect to matters within the scope of their agreements and business relationships.

17      77.     The agreements and relationships between the Association and the Blue

18  Cross and Blue Shield Defendants, and each of them, demonstrate a unity of interest

19  or ownership between the Defendants, and if the acts of denying and under-

20  reimbursing Plaintiffs' OON SUD claims are treated as those of a single Blue Cross

21  and Blue Shield Defendant, an inequitable result will follow as these unlawful

22  practices are institutional and have been carried out by each of the Defendants, each

23  knowing the other's conduct was unlawful and yet each providing substantial

24  assistance or encouragement to the other to so act and cause direct harm to

25  Plaintiffs.

26      78.     The Association and the Blue Cross and Blue Shield Defendants

27  engaged in a conspiracy to suppress, artificially reduce and fix the pricing for

28  healthcare services that is a substantial factor in Defendants' under-reimbursement

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  of Plaintiffs' claims in contravention of the Plans and in violation of ERISA and

2  California law.

3  　　　　79.　　The conspiratorial conduct of Defendants, and each of them, not only

4  violates state and federal antitrust laws as expressed in *In re Blue Cross Blue Shield*

5  *Antitrust Litigation*, but also creates an economic barrier to accessing OON SUD

6  services by suppressing reimbursement rates and concomitantly increasing the

7  insured patient's coinsurance amount and out of pocket expense that does not exist

8  for accessing medical and surgical benefits, in violation of MHPAEA, and also

9  results in the denial of mandated essential healthcare benefits – SUD services – in

10  violation of the PPACA.

11  　　　　80.　　This unlawful conduct by Defendants, and each of them, has caused

12  Plaintiffs direct injury and harm in the form of loss of revenue, loss of profits, loss

13  of business opportunities, and other legal consequences of such unlawful conduct,

14  and Defendants, and each of them, must bear liability for their unlawful practices

15  and Plaintiffs' remedies for violation of California's Unfair Competition Law (Cal.

16  Bus & Prof. Code §§ 17200 et seq.) must be assessed as to each of the Defendants.

17  　　　　　**BRIEF STATEMENT OF THE CONSOLIDATED LITIGATION**

18  　　　　81.　　Plaintiffs are out-of-network ("OON") SUD treatment providers and

19  clinical laboratories.  Plaintiffs provided medically necessary, verified,

20  preauthorized and covered SUD treatment and laboratory services to 1,691

21  individuals with health insurance that was sold, insured, managed and/or

22  administered by Defendants.  The treatment and services provided by Plaintiffs

23  include residential detoxification ("DTX"), residential treatment ("RTC"), partial

24  hospitalization ("PHP"), intensive outpatient ("IOP"), outpatient and day treatment

25  ("OP"), diagnostic tests and evaluations, assessment and treatment planning,

26  treatment and procedures, counseling and individual, family and group therapy,

27  behavioral treatment and therapy, medication management, psychological testing,

28  case management services, crisis intervention, and laboratory services to, among

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

other things, determine, measure, or otherwise describe the presence or absence of various substances in the body.  The treatments and services were provided by and within the scope of practice of properly qualified, licensed and certified behavioral health providers, medical and clinical directors and professionals, in a safe, supportive and encouraging recovery environment, consistent with prevailing professionally recognized standards of SUD treatment and services, and known to be effective in improving health care outcomes for individuals with mental health and SUDs.

82.    Defendants' health insurance plans, for each of the 1,691 insureds at issue, allow the insureds to obtain SUD treatment and laboratory services from an in-network provider ("INP") or OON provider ("OONP"), like Plaintiffs.  In this regard, the plans, and each of them, provide that OON SUD benefits include the following levels of care: DTX, RTC, PHP, IOP, and OP.  The plans also provide that covered OON SUD services include: diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services and crisis intervention.  The plans further provide coverage for OON laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

83.    Defendants' health insurance plans, for each of the 1,691 insureds at issue, pay benefits for OON SUD treatment and laboratory services, including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to Plaintiffs)) until the insured's annual out-of-pocket maximum ("AOOPM") is met at which time Defendants pay 100%.  Plaintiffs are informed and believe, and based thereon allege, that each of the 1,691 insureds had already met their AOOPM at the time they first received treatment or services from Plaintiffs, or shortly thereafter.  Some of the plans at issue pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received.  Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein Defendants had an inadequate network of SUD treatment providers and clinical laboratories.  The exclusions, conditions and limitations in the plans do not apply to the OON SUD treatment and laboratory services provided by Plaintiffs and at issue herein.

84.    Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to Plaintiffs.  In this regard, the insureds advised Plaintiffs prior to receiving treatment that they were using their health benefits to pay for their SUD treatment and services at issue herein.  In furtherance of this assignment, the insureds, and each of them, provided Plaintiffs with their insurance information and at times a copy of their insurance card, and the insureds called Defendants and authorized Defendants to release their OON SUD benefits to Plaintiffs.  Plaintiffs then verified the insureds' OON SUD benefits with Defendants.  Thereafter, in accordance with Plaintiffs' customs and practices during the intake and admissions process, the insureds, and each of them, were also informed, understood and agreed that Plaintiffs would submit their claims as provider-assignees to Defendants for payment and that Plaintiffs had the right and were entitled to all payments from Defendants.  The insureds, and each of them, further understood and agreed to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

return to Plaintiffs any payments they received from Defendants on the claims at issue. In reliance on the insureds' oral assignments, Plaintiffs provided the subject SUD treatment and services at issue and submitted their claims to Defendants for payment as the insureds' assignee.

85.     In furtherance of the assignments, Plaintiffs also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. Plaintiffs, and each of them, routinely receive executed assignment of benefits forms from their patients, including the insured-patients at issue herein. It is, and at all times relevant was, Plaintiffs' standard practice and procedure to require each of their patients, prior to their SUD treatment and laboratory services, to execute such a form. This standard practice applied to the insureds, and each of them, at issue herein. If a written assignment of benefits is missing for any of the insureds at issue herein, it is the result of a filing or administrative mistake only.

86.     At all times relevant herein, Plaintiffs, and each of them, utilized an electronic medical record ("EMR") system provided by Kipu or Sunwave, companies that specifically serve the addiction treatment industry, which includes various forms utilized by treatment providers like Plaintiffs. The treatment provider Plaintiffs, Woman's Recovery, TML Recovery, SCAC, Kool Living, Pacific Palms, AHA, DR Recovery, Inland Detox and 12 South, utilized EMR assignment of benefits forms and tailored them to their facility or program, and obtained from each of the insureds at issue a written assignment of benefits and right to payment from Defendants that state the following material terms, *inter alia*:

**Assignment of Benefits**

[Patient-insured] hereby authorize and request that payment of benefits by [Defendants] be made directly to [Plaintiff]… for services furnished to me or my dependent.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 25 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1 …

2 [Plaintiff] is acting in filing for insurance benefits assigned
   to [Plaintiff] …
3

4 …

5 [Plaintiff] has been appointed by me to act as my
   representative and on my behalf in any proceeding that
6 may be necessary to seek payment from [Defendants].

7       87.    The laboratory Plaintiffs, MMR Services and NTR Resources, utilized

8 EMR assignment forms for each and every separate laboratory request that was

9 filled, and obtained from each of the insureds at issue a written assignment, right to

10 payment from Defendants, and authorization for Defendants to release information

11 needed to determine benefits that state the following material terms, *inter alia*:

12       Financial/Insurance Release:

13       [Patient-inured] authorize payments be made to [Plaintiff]
         for services ordered by my practitioner.  I authorize my
14       physician and practice staff, as well as my insurance
         company (if any) to release information needed to
15       determine benefits for laboratory services.  I understand
         that I am responsible for payment of any deductibles or
16       co-insurance charges.

17       88.    In reliance on the assignments of benefits, Plaintiffs, and each of them,

18 rendered the subject SUD treatment and laboratory services to Defendants'

19 insureds/members.  Moreover, Defendants confirmed, represented, promised and

20 warranted to Plaintiffs through the required verification of benefits and the

21 preauthorization process and phone calls, that each of the insureds and their

22 respective OON SUD treatments and services were covered by health insurance

23 plans issued, managed and/or administered by Defendants, the premiums were paid

24 and the plans were effective, and that Plaintiffs would be paid for treating

25 Defendants' insureds.  In reliance on Defendants' coverage representations and

26 payment promises, Plaintiffs, and each of them, rendered the subject SUD treatment

27 and laboratory services to Defendants' insureds/members.  At all times relevant

28 herein, Defendants knew that Plaintiffs were treating and providing services, and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Plaintiffs' charges for the SUD treatment and laboratory services rendered, at each level of care.

89.     After providing the covered SUD treatment and services to the 1,691 insureds at issue herein, Plaintiffs submitted their claims to Defendants for payment. The claim forms notified Defendants that Plaintiffs were submitting the claims as the insureds' assignee.  Plaintiffs' billed charges on the claims at issue, and each of them, are comparable and within the price range of the fees that OON SUD providers and laboratories of the same specialty, in the same region, charge for the same or similar treatments and services.  Defendants were obligated – under the law and the plans – to pay Plaintiffs the applicable plan percentage of their covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to Plaintiffs during the verification and benefits and preauthorization process and phone calls for each of the 1,691 insureds, that the OON benefits paid by Defendants to OON providers, like Plaintiffs, for all levels of SUD treatment and laboratory services, is a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

90.     Instead of paying Plaintiffs per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to Plaintiffs, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiffs, as a group, an average of 17.59% of their covered charges.  This includes, but is not limited to, Defendants' low payments based on inapplicable Medicare rates, down coding, defective databases of purported usual

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and customary rates for SUD treatment, and bundled per diem rates.  It also includes

Defendants' denial of claims based on overly restrictive level of care guidelines and

qualitative and quantitative restrictions on access to coverage and benefits for

individuals in SUD treatment and services, including, but not limited to,

Defendants' flawed criteria for coverage determinations which treat mental health

and SUDs as an acute and not chronic condition.  Plaintiffs are informed and

believe, and based thereon allege, that Defendants' misconduct as alleged herein

was and is motivated by profits, including, but not limited to, additional money

Anthem makes on the backend via its administrative services only agreements with

the plans, the Host Plan's (in this case BCC) agreements and financial arrangements

with the out-of-state plans, and MultiPlan's bonus program for employees who save

its client payors, including Anthem, money on claim payments, including the claims

at issue here.  Plaintiffs are informed and believe, and based thereon allege, that

Anthem and MultiPlan split the profits made on underpaying the claims at issue

herein.  These financial motivations benefited Defendants, and each of them, and

passed the costs of SUD treatment and services on to the insureds and the providers

who treated them, like Plaintiffs; and at times forced insureds to make a Hobson's

choice – pay for the costs of treatment themselves or receive no treatment at all.

Plaintiffs are also informed and believe, and based thereon allege, that these

financial motivations for Defendants created a situation where at times Defendants

made as much or even more money on the claims at issue than did Plaintiffs.

91.     It was only after Plaintiffs rendered the treatment and services at issue

that Defendants refused to properly compensate Plaintiffs for the covered SUD

treatment and services rendered to Defendants' insureds and at issue herein.

92.     During the claim submission and payment process, Defendants put

Plaintiffs on various pre-payment review and program integrity audits, and through

their various departments, Defendants repeatedly requested the same documents and

information from Plaintiffs, over and over again.  This was all an attempt by

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants, and each of them, to avoid processing and paying the claims. Plaintiffs complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Plaintiffs for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide Plaintiffs and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Plaintiffs and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair. Defendants' audits, bogus TIN flags and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to unlawfully delay and deny Plaintiffs (and hundreds of other SUD treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

93.    Defendants did not inform or advise Plaintiffs (during the claim submission and payment process or the post-claims process, or at any time prior to this action) about any anti-assignment provisions in the health plans at issue, and Defendants did not deny Plaintiffs' claims or deny payment to Plaintiffs on the grounds of any anti-assignment provisions in the health plans. As a result and by operation of law and principles of equity, Defendants have waived and are estopped from asserting any such anti-assignment provisions in any of the health plans at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    issue in this action.[15]  Likewise, Defendants did not provide Plaintiffs (during the

2    claim submission and payment process or post-claims process, or at any time prior

3    to this action) with the health plan documents at issue.  Similarly, Defendants did

4    not inform or provide Plaintiffs with notice (during the claim submission and

5    payment process or post-claims process, or at any time prior to this action) of any

6    mandatory appeal obligations in the health plans at issue or any requirement in the

7    plans to exhaust the appeals process to avoid losing the right to litigate.  As a result

8    and by operation of law and principles of equity, Defendants failure to properly

9    notify Plaintiffs of the need to exhaust administrative remedies to avoid losing the

10   right to litigate is sufficient to obviate any exhaustion requirement in the health

11   plans at issue.[16]

12

13

---

14   [15]   *See, California Spine and Neurosurgery Institute v. Blue Cross of California*, 2020 WL
     3536496 at *1 (9th Cir. June 30, 2020) ("district court erred in determining waiver was

15   inapplicable[;]" and "district court also erred in concluding that [Plaintiff] failed to satisfy three
     equitable estoppel factors" when insurer asserted for the first time in litigation an anti-assignment

16   provision to avoid coverage.); *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz.,
     Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) (considering an anti-assignment provision and

17   explaining that "an administrator may not hold in reserve a known or reasonably knowable reason
     for denying a claim, and give that reason for the first time when the claimant challenges a benefits

18   denial in court."); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 720 (9th Cir. 2012) ("ERISA and
     its implementing regulations are undermined where plan administrators have available sufficient

19   information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather
     than communicate it to the beneficiary.").

20
     [16]   This District Court has recently held that the failure to properly notify Plaintiffs of the need to

21   exhaust administrative remedies is sufficient to obviate any exhaustion requirement. *See, In re
     Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare,* Case 8:19-cv-02075-

22   JVS-DFM ("*UnitedHealthcare Action*"), Dkt. No. 92 (Order Regarding Motion to Dismiss TAC,
     April 14, 2021), pp. 5-7 ("The Court agrees with Plaintiffs that United's failure to properly notify

23   the Plaintiffs in the EOBs of the need to exhaust administrative remedies is sufficient to obviate
     any exhaustion requirement.  [] United therefore did have an obligation to instruct Plaintiffs that

24   they must appeal adverse decisions to avoid losing the right to litigate.  Plaintiffs' allegations that
     United failed to do so are sufficient to avoid dismissal for failure to exhaust."); *see also, TML

25   Recovery, LLC et al. v. Cigna Corporation, et al.*, Case 8:20-cv-00269-DOC-JDE ("*Cigna
     Action*"), Dkt. No. 94 (Order Granting in Part Defendants' Motion to Dismiss, July 26, 2021), p. 8

26   (Plaintiffs properly alleged that the administrative route is futile because Defendants failed to
     provide Plaintiffs with a reasonable opportunity to engage in a meaningful claims process and

27   procedure that was full and fair).

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

94.     As a result of Defendants' unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions, Plaintiffs have suffered and continue to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the millions, amounts owed in accordance with Defendants' payment promises to Plaintiffs, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits and other consequences, and moreover, Plaintiffs are entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.[17]

## AMERICA'S SUBSTANCE USE DISORDER EPIDEMIC

95.     Now, as never before, there is a critical need for access to treatment for SUDs.  The Substance Abuse and Mental Health Services Administration ("SAMHSA") estimates that in 2014, 20.2 million adult Americans, or 8.4 percent of the adult population suffered from a SUD within the past year.[18]  According to the President's Commission on Combatting Drug Addiction and the Opioid Crisis (November 2017), heroin overdose deaths increased four-fold from 2010 to 2015, while overdose deaths due to prescription opioids consistently outpaced even the disturbingly high heroin overdose rates.[19]  Drug overdoses now cause more deaths

---

[17]  The parties have engaged in an informal exchange of discovery and information for nearly two years, under the supervision of Special Master Stephen G. Larson (Judge, Ret.), which has included Plaintiffs' production of assignments of benefits and Defendants' production of plan documents.  This collaborative effort has resulted in a Master Excel Spreadsheet that identifies the Plaintiffs, patients, dates of service, amounts billed, amounts paid, balance and the responsible Defendant insurer/administrator for each claim.  The spreadsheet includes several tabs, for BlueCard and non-BlueCard plans, and claims that Plaintiffs have red-lined and removed from the litigation.

[18] *See* Rachel N. Lipari & Struther L. Van Horn, Trends in Substance Use Disorders in Adults 18 and Older (June 29, 2017), retrieved on May 23, 2019 from https://www.samhsa.gov/data/sites/default/files/report_2790/ShortReport-2790.html.

[19]  *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at p. 32, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  than either car accidents or guns, and those suffering from SUDs are at the highest

2  risk.

3       96.    On average, 130 Americans die every day from an opioid overdose.

4  The opioid crisis has and continues to destroy lives and devastate families and

5  communities.[20]  It is the deadliest drug crisis in United States history and it is only

6  getting worse.[21][22]  In 2017 alone, California lost 2,196 lives to the opioid epidemic.

7  Timely access to life-sustaining and life-saving treatment and continuing care for

8  mental health and SUDs is critical to preventing these deaths and allowing people to

9  achieve long-term recovery and to return to their families, friends and communities

10  as healthy, productive and contributing members of society.[23]

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

[20]  *See* Centers for Disease Control and Prevention, Understanding the Epidemic, retrieved on May 28, 2019 from https://www.cdc.gov/drugoverdose/epidemic/index.html.

[21]  *See* California Department of Public Health, Patterns of Opioid-Related Overdose Deaths in California, 2011-2017 (March 2019), retrieved on June 12, 2019 from https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/SACB/CDPH%20Document%20Library/Prescription%20Drug%20Overdose%20Program/Injury%20Data%20Brief%20Opioid%20Overdose%20Deaths%202011-2017_ADA.pdf.

[22]  *See* U.S. Department of Health and Human Services, The Opioid Epidemic By The Numbers, retrieved on February 22, 2022 from https://www.hhs.gov/opioids/about-the-epidemic/index.html, "70,630 people died from drug overdose in 2019, 1.6 million people had an opioid use disorder in the past year, 745,000 people used heroin in the past year, 1.6 million people misused prescription pain relievers for the first time, 48,006 deaths attributed to overdosing on synthetic opioids other than methadone (in 12-month period ending June 2020), 10.1 million people misused prescription opioids in the past year, 2 million people used methamphetamine in the past year, 50,000 people used heroin for the first time, and 14,480 deaths attributed to overdosing on heroin (in 12-month period ending June 2020);" *see also*, Centers for Disease Control and Prevention, Understanding the Opioid Overdose Epidemic, retrieved on February 22, 2022 from https://www.cdc.gov/opioids/basics/epidemic.htmlth, "From 1999–2019, nearly 500,000 people died from an overdose involving any opioid, including prescription and illicit opioids."

[23]  The human impact of the opioid epidemic – from babies born dependent, the emotional toll on individuals with a substance use disorder, and that of their families and communities, to the tens of thousands of lives cut short each year – has been tremendous.  Now, reports show that the economic impact has been just as shocking, with the drug crisis costing the U.S. economy $1 trillion since 2001 and likely to cost the economy an additional $500 billion by 2020 if the current rates of addiction and overdose remain steady.  *See* Altarum, Solutions to Advance Health: Economic Toll of Opioid Crisis in U.S. Exceeded $1 Trillion Since 2001 (February 13, 2018), retrieved on June 5, 2019 from https://altarum.org/news/economic-toll-opioid-crisis-us-exceeded-1-trillion-2001.

97.     Addiction is recognized as a chronic, relapsing brain disorder characterized by compulsive drug seeking, continued use despite harmful consequences, and long-lasting changes in the brain.  Addiction is considered both a complex brain disorder and a mental illness.  The brain changes can be long lasting and can lead to many harmful, often self-destructive, behaviors.  Addiction is the most severe form of a full spectrum of SUDs, and is a medical illness caused by repeated misuse of a substance or substances.[24]  Without treatment and engagement in recovery activities, addiction is progressive and can result in unemployment, homelessness, disability and premature death.

98.     SUD treatment is difficult and the challenges of recovery from addiction are many, which can involve cycles of recurrence and remission before long-term recovery is realized.  Timely access to treatment and continuing care, including DTX, RTC, PHP, IOP and OP treatment, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, crisis intervention, social support and supportive sober living environments, are critical for people to recover from addiction and reclaim active and meaningful lives.  Clinical laboratory services are recognized as an appropriate and important diagnostic procedure in mental health and SUD treatment as such services promote prevention, diversion, early detection, and lifelong recovery from addiction.  Such testing is designed to provide accurate results that help physicians and treatment clinicians create a

---

[24] *See* National Institute of Drug Addiction, The Science of Drug Use and Addiction: The Basics, retrieved on May 29, 2019 from https://www.drugabuse.gov/publications/media-guide/science-drug-use-addiction-basics; *see also*, American Society of Addiction Medicine, Public Policy Statement: Definition of Addiction, retrieved on June 13, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1definition_of_addiction_long_4-11.pdf?sfvrsn=a8f64512_4.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes testing for illicit drugs and prescription therapy and medication assisted treatment.[25]

99.     Families and individuals purchase health insurance to help cover the costs of health care, including the costs of mental health and SUD treatment.  Health insurance is supposed to provide people with peace of mind and security, and provide them with access and options for life-sustaining and life-saving health care while preventing families and individuals from experiencing financial crises, such as bankruptcy or home foreclosure, or being forced to choose between paying for rent, utilities and food or paying for necessary health care costs.

100.   Traditionally, insurers and employers have covered treatment for mental health conditions, including SUDs, less favorably than treatment for physical health conditions, including higher cost-sharing obligations for patients, more restrictive limits on the number of inpatient days and outpatient visits, and more onerous prior authorization requirements.  To address this unequal treatment, Congress first passed a mental health parity law in 1996, and many states followed suit in the following decade by passing laws of their own.  Among other limitations, however, the 1996 act did not address the treatment of SUDs.  Congress addressed this gap in passing the historic Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), 42 U.S.C. § 300gg-26, which, among other things, prohibits most plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, from imposing different treatment limits, cost-sharing and in-network and OON coverage on mental health and SUD treatment than are imposed on other medical

---

[25] *See* American Society of Addiction Medicine, Public Policy Statement on Drug Testing as a Component of Addiction Treatment and Monitoring Programs and in other Clinical Settings, retrieved on May 29, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1drug-testing---clinical-10-10.pdf.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and surgical services.[26]  Furthermore, ERISA requires fiduciaries to act solely in the

2  interests of plan participants and beneficiaries, and to decide claims for health care

3  benefits in accordance with plan documents and under a full and fair procedure.

4       101.   The Patient Protection and Affordable Care Act of 2010 ("PPACA"),

5  42 U.S.C. §§ 18001, *et seq.*, also known as the Affordable Care Act or Obamacare,

6  requires a range of health plans, both inside and outside of the exchanges, to provide

7  a core package of essential health benefits including mental health and SUD

8  treatment and laboratory services.  42 U.S.C. § 18022.  The PPACA extends the

9  impact of the MHPAEA so that many health plans must offer coverage for mental

10  health and SUD treatment and laboratory services with at least an equal level of

11  benefits as the plans offer for the treatment of medical and surgical benefits.

12  However, as President Donald J. Trump's commission on the opioid crisis wrote in

13  its November 2017 report, "health insurers are not following the federal law

14  requiring parity in the reimbursement for mental health and addiction [;] [t]hey must

15  be held responsible."[27]

16  **DEFENDANTS' SCHEME TO DENY ACCESS AND COVERAGE FOR**

17  **CRITICALLY-NEEDED SUBSTANCE USE DISORDER TREATMENT**

18       102.   Despite the above statutory requirements, and the obvious individual

19  and public health interests in timely access to and coverage for mental health and

20

21  [26]  California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code section
10144.5 and Health and Safety Code section 1374.72, which, like the MHPAEA, requires mental

22  health care coverage to be provided "under the same terms and conditions applied to other medical
conditions."  California law also requires health care plans to "provide all covered mental health

23  and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations,

24  and guidance issued" pursuant to federal laws.  Cal. Ins. Code §§ 10144.4, 10112.27; Cal. Health
& Safety Code § 1374.76.

25  [27]  *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final

26  Report, at pp. 9 and 122, retrieved on May 23, 2019 from
https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-

27  2017.pdf.  Roster of Commissioners include Governor Chris Christie, Chairman, Governor Charlie
Baker, Governor Roy Cooper, Congressman Patrick J. Kennedy, Professor Bertha Madras, Ph.D.,

28  Florida Attorney General Pam Bondi.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

SUD treatment and laboratory services to determine, measure and describe the
presence or absence of various substances in the body, including illicit drugs and
prescribed medications, and help physicians and treatment clinicians create a drug
monitoring strategy for optimal treatment outcomes, Defendants, and each of them
and their syndicate, association, controlled agents and undisclosed principals, are
engaged in unfair, unreasonable, incomplete, unlawful, fraudulent and systematic
policies, practices and decisions that have and continue to result in the unlawful and
fraudulent denial, underpayment, delay and/or flat-out refusal to authorize and
decide access, coverage and claims for mental health and SUD treatment and
laboratory services for patients whose plans promise, and the law requires, access to
and coverage for such treatment, services and benefits.  Defendants' systematic
practices have and continue to result in restrictive prior authorization requirements
and restrictive limits on the number of mental health and SUD treatment days and
tests.  Defendants' access, coverage and claims-handling policies, practices and
decisions are imposing unlawful barriers between patients and life-saving mental
health and SUD treatment they desperately need.  And Defendants have and are
doing this in the middle of an opioid and addiction epidemic!  Defendants'
impermissible barriers to mental health and SUD treatment and laboratory services
must be removed and Defendants must be held responsible for placing profits over
patients in a life and death situation.

103.   Defendants' mental health and SUD treatment and laboratory access,
coverage and claims-handling policies, practices and decisions as a whole violate
the law and the plan documents.  For instance, Plaintiffs are informed and believe,
and based thereon allege, that Defendants unreasonably limit the number of DTX
and RTC treatment days, and impermissibly and unreasonably require
preauthorization for PHP and IOP treatment and then limits the number of treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

days at each level of care.[28]  Plaintiffs are also informed and believe, and based

thereon allege, that Defendants reimburse DTX, RTC, PHP and IOP levels of care at

nominal percentages of covered charges, if at all.  Plaintiffs are further informed and

believe, and based thereon allege, that Defendants refuse to reimburse OP claims

and refuse to reimburse auxiliary claims in connection with their insureds' SUD

treatment and services, and that Defendants improperly and unlawfully unbundle

and down code SUD treatment and service claims in an effort to game the system at

the expense of providers, including Plaintiffs.  Moreover, Plaintiffs are informed and

believe, and based thereon allege, that Defendants utilize unlawful and overly

restrictive medical necessity criteria and guidelines, including, but not limited to,

flawed criteria for coverage determinations which treat mental health and SUDs as

an acute and not chronic condition, in order to deny claims and profit over the health

and safety of their insureds, and utilize improper single bundled rates on claims for

covered individuals in SUD treatment and services.  Further, Plaintiffs are informed

and believe, and based thereon allege, that Defendants refuse to pay for clinical

laboratory claims as either beyond the numerical limitation and/or simply not

covered or reimbursable.  Plaintiffs are also informed and believe, and based thereon

---

[28]  Under California law, once a health insurer authorizes a specific type of treatment covered under a plan and the provider has provided that treatment in good faith and pursuant to the authorization, the insurer cannot rescind or modify that authorization for any reason.  Cal. Ins. Code § 796.04; Cal. Health & Safety Code § 1371.8. Moreover, California law requires that where health insurers cannot provide their insureds/members access to needed healthcare providers on an "in-network" basis, the insurers shall pay any "out-of-network" provider the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its billed charges.  Cal. Ins. Code § 10133.5; Cal. Code Regs. tit. 10, § 2240.1. Further, health insurers are required to reimburse health care providers at almost 100 percent of the billed charges for emergency services.  Cal. Ins. Code § 10112.7; Cal. Health & Safety Code § 1317; Cal. Code Regs., tit. 28, § 1300.67.  In addition, California law provides that health insurers may not "in any manner … direct, participate in, or control the selection of the hospital or health facility … from who the insured secures services … except that an insurer may negotiate and enter into contracts for alternative rates of payment with institutional providers, and offer the benefit of these alternative rates to insures who select these providers."  Cal. Ins. Code § 10133.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

allege, that Defendants make payments on claims based on inapplicable Medicare rates (and defective databases of purported usual and customary rates for SUD services) and demand refunds on other claims they assert should have been paid at inapplicable Medicare rates.[29]   Plaintiffs are further informed and believe, and based thereon allege, that at times Defendants pay the benefits owed directly to the treatment insured (which for an individual recently discharged from SUD treatment can be a relapse trigger and death certificate) without a 1099 tax form, thereby depriving the state and federal government of substantial tax revenue.

104.   Plaintiffs are informed and believe, and based thereon allege, that Defendants' objective is to deny their insureds/members access to and coverage for critically-needed SUD DTX and RTC treatment, limit the number of authorized DTX, RTC, PHP and IOP SUD treatment days, rush their insureds into an OP SUD treatment level of care, refuse to reimburse OP and related auxiliary claims, deny and/or underpay all other SUD treatment and laboratory claims, and then demand refunds on paid claims and subject the remaining claims to inapplicable Medicare rates or defective databases of purported usual and customary rates for SUD treatment and services, all in violation of the law and the plan documents and to the detriment of Defendants' insureds in need of life-saving mental health and SUD

---

[29]  The California Department of Insurance concluded in its July 23, 2018 Order to Show Cause *In the Matter of the Certificate of Authority of Health Net Life Insurance Company* (CDI File No. UPA-2016-00005), that Medicare does not provide a rate for inpatient or outpatient SUD treatment provider charges and that substituting a bundled per diem Medicare rate for such treatment charges violates state and federal parity laws.  *See also*, Department of Health and Human Services, Centers for Medicare & Medicaid Services, Medicare Coverage for Substance Abuse Services, retrieved on October 27, 2021 from https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/Downloads/SE1604.pdf, "Similar to inpatient treatment, coverage of outpatient treatment would depend on the provider of the services.  Pursuant to the Social Security Act, Medicare does not recognize substance abuse treatment facilities as an independent provider type, nor is there an integrated payment for the bundle of services those providers may provide (either directly, or incident to a physician's service)."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    treatment, and to the detriment of SUD treatment providers and clinical laboratories,

2    like Plaintiffs.

3        105.    Plaintiffs are informed and believe, and based thereon allege, that

4    Defendants' misconduct as alleged herein was and is motivated by profits,

5    including, but not limited to, additional money Anthem makes on the backend via its

6    administrative services only agreements with the plans, the Host Plan's (in this case

7    BCC) agreements and financial arrangements with the out-of-state plans, and

8    MultiPlan's bonus program for employees who save its client payors, including

9    Anthem, money on claim payments, including the claims at issue here.  Plaintiffs are

10   informed and believe, and based thereon allege, that Anthem and MultiPlan split the

11   profits made on underpaying the claims at issue herein.  These financial motivations

12   benefited Defendants, and each of them, and passed the costs of SUD treatment and

13   services on to the insureds and the providers who treated them, like Plaintiffs; and at

14   times forced insureds to make a Hobson's choice – pay for the costs of treatment

15   themselves or receive no treatment at all.  Plaintiffs are also informed and believe,

16   and based thereon allege, that these financial motivations for Defendants created a

17   situation where at times Defendants made as much or even more money on the

18   claims at issue than did Plaintiffs.

19        **DEFENDANTS' SCHEME SPECIFIC TO PLAINTIFFS**

20       **Woman's Recovery**

21       106.    Woman's Recovery is a certified SUD treatment provider.  Woman's

22   Recovery provided medically necessary, verified, preauthorized and covered SUD

23   treatment and services to 86 individuals with health insurance that was sold, insured,

24   managed and/or administered by Defendants.  The treatment and services provided

25   by Woman's Recovery include PHP, IOP, OP, assessment, evaluations and

26   treatment planning, treatment, counseling, therapy, and case management services.

27       107.    Defendants' health insurance plans, for each of the 86 insureds at issue,

28   allow the insureds to obtain SUD treatment from an INP or OONP, like Woman's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 39 -

Recovery.  The plans provide coverage and pay benefits for OON SUD treatment

and services, including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic

tests and evaluations, assessment and treatment planning, treatment and procedures,

counseling, individual, family and group therapy, behavioral treatment and therapy,

medication management, psychological testing, case management services, crisis

intervention, and laboratory services, at varying percentages of covered charges

(between 50% to 80% of covered charges, with the majority of plans paying OON

benefits at 70% of covered charges (minus any outstanding cost-sharing amounts

(*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to

providers)) until the insured's AOOPM is met at which time Defendants pay 100%.

Woman's Recovery is informed and believes, and based thereon alleges, that each of

the 86 insureds had already met their AOOPM at the time of admission into the

program, or shortly thereafter.  Some of the plans at issue pay 100% of covered

charges (minus any applicable and remaining in-network deductibles, copays or

coinsurance) in the event of a "network inadequacy" or "network gap" for the

services received.  Woman's Recovery is informed and believes, and based thereon

alleges, that at all times relevant herein Defendants had an inadequate network of

SUD treatment providers.

108.   In accordance with Woman's Recovery's customs and practices during

the intake and admissions process, Defendants' insureds, and each of them, orally

assigned their health insurance or plan benefits and rights to payments from

Defendants on the claims at issue to Woman's Recovery.  In furtherance of the

assignments, Woman's Recovery also obtained written assignments of benefits from

each of the insureds at issue, by which Defendants' insureds intended to, and did,

assign to Woman's Recovery not only rights to payment from Defendants on the

claims at issue but to assert all rights and causes of action against Defendants in

connection with payment on the claims.  A sample Woman's Recovery written

assignment of benefits from one of the insured-patients at issue (with only the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

patient's name redacted) is attached hereto as **Exhibit A**.  It is, and at all times

relevant was, Woman's Recovery's standard practice and procedure to require each

of its patients, prior to their SUD treatment, to execute such a form.  If a written

assignment of benefits is missing for any of the insureds at issue herein, it is the

result of a filing or administrative mistake only.  In reliance on the assignments of

benefits, Woman's Recovery rendered the subject SUD treatment and services to

Defendants' insureds/members.

109.   Moreover, Defendants confirmed, represented, promised and warranted

to Woman's Recovery through the required verification of benefits and the

preauthorization process and calls, that each of the insureds and their respective

OON SUD treatments and services were covered by health insurance plans issued,

managed and/or administered by Defendants, the premiums were paid and the plans

were effective, and that Woman's Recovery would be paid for treating Defendants'

insureds/members.  In reliance on Defendants' coverage representations and

payment promises, Woman's Recovery rendered the subject SUD treatment and

services to Defendants' insureds/members.  At all times relevant herein, Defendants

knew that Woman's Recovery was treating and providing services, and would

continue to treat and provide services, to their insureds, and Defendants were, at all

times, advised and fully aware of Woman's Recovery 's charges for the SUD

treatment and services rendered, at each level of care.

110.   After providing covered treatment and services to the 86 insureds at

issue, Woman's Recovery submitted its claims to Defendants for payment.  The

claim forms, and each of them, notified Defendants that Woman's Recovery

submitted the claims as the insureds' assignee.  Defendants were obligated – under

the law and the policies – to pay Woman's Recovery the applicable plan percentage

of its covered charges (between 50% to 80% of covered charges, with the majority

of plans paying OON benefits at 70% of covered charges (minus any outstanding

insured cost-sharing amounts)) until the insured's AOOPM is met at which time

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 41 -

THIRD AMENDED CONSOLIDATED COMPLAINT

Defendants pay 100%.  Defendants also advised, confirmed and promised to

Woman's Recovery during the verification and benefits and preauthorization

process and calls for each of the 86 insureds, that the OON benefits paid by

Defendants to OON providers, like Woman's Recovery , for all levels of SUD

treatment, is a percentage of its covered charges (between 50% to 80% of covered

charges, with the majority of claims promised by Defendants to be paid at 70% of

covered charges) until the insured's AOOPM is met at which time Defendants pay

100%.

111.    Instead of paying Woman's Recovery per the plan documents and the

law, and in accordance with Defendants' agreements, representations and promises

to Woman's Recovery, Defendants engaged in unfair, unreasonable, unlawful,

incomplete, fraudulent and systematic polices, practices and decisions – with an

emphasis on profits over patients – and paid Woman's Recovery a mere 21.9% of its

covered charges.  This includes, but is not limited to, Defendants' low payments

based on inapplicable Medicare rates, down coding, defective databases of

purported usual and customary rates for SUD treatment and bundled per diem rates,

and Defendants' denial of claims based on overly restrictive level of care guidelines

and qualitative and quantitative restrictions (including, but not limited to, flawed

criteria for coverage determinations which treat mental health and SUDs as an acute

and not chronic condition) on access to coverage and benefits for individuals in

SUD treatment.  It was only after Woman's Recovery rendered the treatment and

services at issue that Defendants refused to properly compensate Woman's

Recovery for the covered SUD treatment and services rendered to Defendants'

insureds.

112.    During the claim submission and payment process, Defendants put

Woman's Recovery on various pre-payment review and program integrity audits,

and through their various departments, Defendants repeatedly requested the same

documents and information from Woman's Recovery, over and over again.  This

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  Woman's Recovery complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse Woman's Recovery for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Woman's Recovery and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Woman's Recovery and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to unlawfully delay and deny Woman's Recovery (and hundreds of other SUD treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

113.  Defendants did not inform or advise Woman's Recovery (during the claim submission and payment process or the post-claims process, or at any time prior to this action) about any anti-assignment provisions in the health plans at issue, and Defendants did not deny Woman's Recovery's claims or deny payment to Woman's Recovery on the grounds of any anti-assignment provisions in the health plans.  Likewise, Defendants did not provide Woman's Recovery (during the claim submission and payment process or post-claims process, or at any time prior to this action) with the health plan documents at issue.  Similarly, Defendants did not inform or provide Woman's Recovery with notice (during the claim submission and payment process or post-claims process, or at any time prior to this action) of any mandatory appeal obligations in the health plans at issue or any requirement in the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    plans to exhaust the appeals process to avoid losing the right to litigate.

2        114.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

3    fraudulent and systematic polices, practices and decisions, Woman's Recovery has

4    suffered and continues to suffer general and incidental damages according to proof,

5    including the benefits owed under the plans and the law in the millions, amounts

6    owed in accordance with Defendants' payment promises to Woman's Recovery, the

7    interruption in Woman's Recovery's business, lost business opportunities, lost

8    profits and other consequences, and moreover, Woman's Recovery is entitled to

9    injunctive relief and statutory and prejudgment interest and attorney's fees against

10   Defendants, and each of them.

11       **TML Recovery**

12       115.   TML Recovery is a certified and accredited SUD treatment provider

13   and at times relevant herein, was a licensed and accredited clinical laboratory.  TML

14   Recovery provided medically necessary, verified, preauthorized and covered SUD

15   treatment and laboratory services to 214 individuals with health insurance that was

16   sold, insured, managed and/or administered by Defendants.  The treatment and

17   services provided by TML Recovery include PHP, IOP, OP, assessment, evaluations

18   and treatment planning, counseling, therapy, case management services, and

19   laboratory services.

20       116.   Defendants' health insurance plans, for each of the 214 insureds at

21   issue, allow the insureds to obtain SUD treatment and laboratory services from an

22   INP or OONP, like TML Recovery.  The plans provide coverage and pay benefits

23   for OON SUD treatment and laboratory services, including, but not limited to, DTX,

24   RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment

25   planning, treatment and procedures, counseling, individual, family and group

26   therapy, behavioral treatment and therapy, medication management, psychological

27   testing, case management services, crisis intervention, and laboratory services, at

28   varying percentages of covered charges (between 50% to 80% of covered charges,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 44 -

1   with the majority of plans paying OON benefits at 70% of covered charges (minus

2   any outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which

3   Defendants deduct from payments to providers)) until the insured's AOOPM is met

4   at which time Defendants pay 100%.  TML Recovery is informed and believes, and

5   based thereon alleges, that each of the 214 insureds had already met their AOOPM

6   at the time of admission into TML Recovery's program, or shortly thereafter.  Some

7   of the plans at issue pay 100% of covered charges (minus any applicable and

8   remaining in-network deductibles, copays or coinsurance) in the event of a "network

9   inadequacy" or "network gap" for the services received.  TML Recovery is

10  informed and believes, and based thereon alleges, that at all times relevant herein

11  Defendants had an inadequate network of SUD treatment providers and clinical

12  laboratories.

13      117.   In accordance with TML Recovery's customs and practices during the

14  intake and admissions process, Defendants' insureds, and each of them, orally

15  assigned their health insurance or plan benefits and rights to payments from

16  Defendants on the claims at issue to TML Recovery.  In furtherance of the

17  assignments, TML Recovery also obtained written assignments of benefits from

18  each of the insureds at issue, by which Defendants' insureds intended to, and did,

19  assign to TML Recovery not only rights to payment from Defendants on the claims

20  at issue but to assert all rights and causes of action against Defendants in connection

21  with payment on the claims.  A sample TML Recovery written assignment of

22  benefits from one of the insured-patients at issue (with only the patient's name

23  redacted) is attached hereto as **Exhibit B**.  It is, and at all times relevant was, TML

24  Recovery's standard practice and procedure to require each of its patients, prior to

25  their SUD treatment, to execute such a form.  If a written assignment of benefits is

26  missing for any of the insureds at issue herein, it is the result of a filing or

27  administrative mistake only.  In reliance on the assignments of benefits, TML

28  Recovery rendered the subject SUD treatment and services to Defendants'

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

insureds/members.

118.   Moreover, Defendants confirmed, represented, promised and warranted to TML Recovery through the required verification of benefits and the preauthorization process and calls, that each of the insureds and their respective OON SUD treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that TML Recovery would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, TML Recovery rendered the subject SUD treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that TML Recovery was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of TML Recovery's charges for the SUD treatment and services rendered, at each level of care.

119.   After providing covered treatment and services to the 214 insureds at issue, TML Recovery submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that TML Recovery submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay TML Recovery the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to TML Recovery during the verification and benefits and preauthorization process and calls for each of the 214 insureds, that the OON benefits paid by Defendants to OON providers, like TML Recovery, for all levels of SUD treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 46 -

THIRD AMENDED CONSOLIDATED COMPLAINT

charges) until the insured's AOOPM is met at which time Defendants pay 100%.

120.   Instead of paying TML Recovery per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to TML Recovery, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid TML Recovery a mere 26.42% of its covered charges.  This includes, but is not limited to, Defendants' low payments based on inapplicable Medicare rates, down coding, defective databases of purported usual and customary rates for SUD treatment and bundled per diem rates, and Defendants' denial of claims based on overly restrictive level of care guidelines and qualitative and quantitative restrictions (including, but not limited to, flawed criteria for coverage determinations which treat mental health and SUDs as an acute and not chronic condition) on access to coverage and benefits for individuals in SUD treatment.  It was only after TML Recovery rendered the treatment and services at issue that Defendants refused to properly compensate TML Recovery for the covered SUD treatment and services rendered to Defendants' insureds.

121.   During the claim submission and payment process, Defendants put TML Recovery on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from TML Recovery, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  TML Recovery complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse TML Recovery for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide TML Recovery and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide TML Recovery and the

1   insureds with a reasonable opportunity to engage in a meaningful claims process and

2   procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending

3   of claims, inadequate notices and explanations, denial of full and fair claims

4   processes and procedures, repetitive document and information requests and

5   promises of payment were false and fraudulent and were implemented by

6   Defendants, and each of them, as a pretext to unlawfully delay and deny TML

7   Recovery (and hundreds of other SUD treatment providers and clinical laboratories)

8   payment in accordance with Defendants' representations and promises, and the law

9   and plans.

10   122.   Defendants did not inform or advise TML Recovery (during the claim

11   submission and payment process or the post-claims process, or at any time prior to

12   this action) about any anti-assignment provisions in the health plans at issue, and

13   Defendants did not deny TML Recovery's claims or deny payment to TML

14   Recovery on the grounds of any anti-assignment provisions in the health plans.

15   Likewise, Defendants did not provide TML Recovery (during the claim submission

16   and payment process or post-claims process, or at any time prior to this action) with

17   the health plan documents at issue.  Similarly, Defendants did not inform or provide

18   TML Recovery with notice (during the claim submission and payment process or

19   post-claims process, or at any time prior to this action) of any mandatory appeal

20   obligations in the health plans at issue or any requirement in the plans to exhaust the

21   appeals process to avoid losing the right to litigate.

22   123.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

23   fraudulent and systematic polices, practices and decisions, TML Recovery has

24   suffered and continues to suffer general and incidental damages according to proof,

25   including the benefits owed under the plans and the law in the millions, amounts

26   owed in accordance with Defendants' payment promises to TML Recovery, the

27   interruption in TML Recovery's business, lost business opportunities, lost profits

28   and other consequences, and moreover, TML Recovery is entitled to injunctive

C A L L A H A N  &  B L A I N E
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 48 -

1  relief and statutory and prejudgment interest and attorney's fees against Defendants,

2  and each of them.

3      **SCRCO**

4      124.   SCRCO is a certified SUD treatment provider and at times relevant

5  herein, was a licensed and accredited clinical laboratory.  SCRCO provided

6  medically necessary, verified, preauthorized and covered SUD treatment and

7  laboratory services to 7 individuals with health insurance that was sold, insured,

8  managed and/or administered by Defendants.  The treatment and services provided

9  by SCRCO include PHP, IOP, OP, assessment, evaluations and treatment planning,

10 treatment, counseling, therapy, case management services, and laboratory services.

11     125.   Defendants' health insurance plans, for each of the 7 insureds at issue,

12 allow the insureds to obtain SUD treatment and laboratory services from an INP or

13 OONP, like SCRCO.  The plans provide coverage and pay benefits for OON SUD

14 treatment and laboratory services, including, but not limited to, DTX, RTC, PHP,

15 IOP, OP, diagnostic tests and evaluations, assessment and treatment planning,

16 treatment and procedures, counseling, individual, family and group therapy,

17 medication management, behavioral treatment and therapy, psychological testing,

18 case management services, crisis intervention, and laboratory services, at varying

19 percentages of covered charges (between 50% to 80% of covered charges, with the

20 majority of plans paying OON benefits at 70% of covered charges (minus any

21 outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants

22 deduct from payments to providers)) until the insured's AOOPM is met at which

23 time Defendants pay 100%.  SCRCO is informed and believes, and based thereon

24 alleges, that each of the 7 insureds had already met their AOOPM at the time of

25 admission into SCRCO's program, or shortly thereafter.  Some of the plans at issue

26 pay 100% of covered charges (minus any applicable and remaining in-network

27 deductibles, copays or coinsurance) in the event of a "network inadequacy" or

28 "network gap" for the services received.  SCRCO is informed and believes, and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   based thereon alleges, that at all times relevant herein Defendants had an inadequate

2   network of SUD treatment providers and clinical laboratories.

3       126.   In accordance with SCRCO's customs and practices during the intake

4   and admissions process, Defendants' insureds, and each of them, orally assigned

5   their health insurance or plan benefits and rights to payments from Defendants on

6   the claims at issue to SCRCO.  In furtherance of the assignments, SCRCO also

7   obtained written assignments of benefits from each of the insureds at issue, by

8   which Defendants' insureds intended to, and did, assign to SCRCO not only rights

9   to payment from Defendants on the claims at issue but to assert all rights and causes

10  of action against Defendants in connection with payment on the claims.  A sample

11  SCRCO written assignment of benefits from one of the insured-patients at issue

12  (with only the patient's name redacted) is attached hereto as **Exhibit C**.  It is, and at

13  all times relevant was, SCRCO's standard practice and procedure to require each of

14  its patients, prior to their SUD treatment, to execute such a form.  If a written

15  assignment of benefits is missing for any of the insureds at issue herein, it is the

16  result of a filing or administrative mistake only.  In reliance on the assignments of

17  benefits, SCRCO rendered the subject SUD treatment and services to Defendants'

18  insureds/members.

19      127.   Moreover, Defendants confirmed, represented, promised and warranted

20  to SCRCO through the required verification of benefits and the preauthorization

21  process and calls, that each of the insureds and their respective OON SUD

22  treatments and services were covered by health insurance plans issued, managed

23  and/or administered by Defendants, the premiums were paid and the plans were

24  effective, and that SCRCO would be paid for treating Defendants'

25  insureds/members.  In reliance on Defendants' coverage representations and

26  payment promises, SCRCO rendered the subject SUD treatment and services to

27  Defendants' insureds/members.  At all times relevant herein, Defendants knew that

28  SCRCO was treating and providing services, and would continue to treat and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

provide services, to their insureds, and Defendants were, at all times, advised and fully aware of SCRCO's charges for the SUD treatment and services rendered, at each level of care.

128.   After providing covered SUD treatment and services to the 7 insureds at issue, SCRCO submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that SCRCO submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay SCRCO the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to SCRCO during the verification and benefits and preauthorization process and calls for each of the 7 insureds, that the OON benefits paid by Defendants to OON providers, like SCRCO, for all levels of SUD treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

129.   Instead of paying SCRCO per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to SCRCO, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid SCRCO 0% of its covered charges.  It was only after SCRCO rendered the treatment and services at issue that Defendants refused to properly compensate SCRCO for the covered treatment and services rendered to Defendants' insureds.

130.   During the claim submission and payment process, Defendants put SCRCO on various pre-payment review and program integrity audits, and through

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

their various departments, Defendants repeatedly requested the same documents and information from SCRCO, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  SCRCO complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse SCRCO for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide SCRCO and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide SCRCO and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to unlawfully delay and deny SCRCO (and hundreds of other OON SUD treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

131.   Defendants did not inform or advise SCRCO (during the claim submission and payment process or the post-claims process, or at any time prior to this action) about any anti-assignment provisions in the health plans at issue, and Defendants did not deny SCRCO's claims or deny payment to SCRCO on the grounds of any anti-assignment provisions in the health plans.  Likewise, Defendants did not provide SCRCO (during the claim submission and payment process or post-claims process, or at any time prior to this action) with the health plan documents at issue.  Similarly, Defendants did not inform or provide SCRCO with notice (during the claim submission and payment process or post-claims process, or at any time prior to this action) of any mandatory appeal obligations in

THIRD AMENDED CONSOLIDATED COMPLAINT

1   the health plans at issue or any requirement in the plans to exhaust the appeals

2   process to avoid losing the right to litigate.

3        132.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

4   fraudulent and systematic polices, practices and decisions, SCRCO has suffered and

5   continues to suffer general and incidental damages according to proof, including the

6   benefits owed under the plans and the law in the hundreds of thousands, amounts

7   owed in accordance with Defendants' payment promises to SCRCO, the interruption

8   in SCRCO's business, lost business opportunities, lost profits and other

9   consequences, and moreover, SCRCO is entitled to injunctive relief and statutory

10  and prejudgment interest and attorney's fees against Defendants, and each of them.

11      **MMR Services**

12       133.   MMR Services was, at all times relevant herein, a licensed and

13  accredited clinical laboratory.  MMR Services provided medically necessary,

14  verified, preauthorized and covered laboratory services to 288 individuals with

15  health insurance that was sold, insured, managed and/or administered by

16  Defendants.  The services provided by MMR Services include presumptive and

17  definitive laboratory tests.

18       134.   Defendants' health insurance plans, for each of the 288 insureds at

19  issue, allow the insureds to obtain SUD treatment and laboratory services from an

20  INP or OONP, like MMR Services.  The plans provide coverage and pay benefits

21  for OON laboratory services at varying percentages of covered charges (between

22  50% to 80% of covered charges, with the majority of plans paying OON benefits at

23  70% of covered charges (minus any outstanding cost-sharing amounts (*i.e.*,

24  deductibles, coinsurance), which Defendants deduct from payments to providers))

25  until the insured's AOOPM is met at which time Defendants pay 100%.  MMR

26  Services is informed and believes, and based thereon alleges, that each of the 288

27  insureds had already met their AOOPM at the time they first received services from

28  MMR Services, or shortly thereafter.  Some of the plans at issue pay 100% of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received.  MMR Services is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of clinical laboratories.

135.   MMR Services obtained oral and written assignment of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to MMR Services not only rights to payments from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims.  A sample MMR Services written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit D**.  It is, and at all times relevant was, MMR Services' standard practice and procedure to require each of its patients, prior to each and every laboratory test, to execute such a form.  If a written assignment of benefits is missing for any of the insureds or claims at issue, it is the result of a filing or administrative mistake only.  In reliance on the assignments of benefits, MMR Services rendered the subject services to Defendants' insureds/members.

136.   Moreover, Defendants confirmed, represented, promised and warranted to MMR Services through the required verification of benefits calls, that each of the insureds and their respective OON laboratory services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that MMR Services would be paid for treating and providing services to Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, MMR Services rendered the subject services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that MMR Services was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of MMR Services' charges

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 54 -
THIRD AMENDED CONSOLIDATED COMPLAINT

1    for the laboratory services rendered.

2       137.   After providing covered treatment and services to the 288 insureds at

3    issue, MMR Services submitted its claims to Defendants for payment.  The claim

4    forms, and each of them, notified Defendants that MMR Services submitted the

5    claims as the insureds' assignee.  Defendants were obligated – under the law and the

6    policies – to pay MMR Services the applicable plan percentage of its covered

7    charges (between 50% to 80% of covered charges, with the majority of plans paying

8    OON benefits at 70% of covered charges (minus any outstanding insured cost-

9    sharing amounts)) until the insured's AOOPM is met at which time Defendants pay

10   100%.  Defendants also advised, confirmed and promised to MMR Services during

11   the verification and benefits calls for each of the 288 insureds, that the OON

12   benefits paid by Defendants to OON providers, like MMR Services, for all levels of

13   SUD treatment and laboratory services, is a percentage of its covered charges

14   (between 50% to 80% of covered charges, with the majority of claims promised by

15   Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

16   at which time Defendants pay 100%.

17      138.   Instead of paying MMR Services per the plan documents and the law,

18   and in accordance with Defendants' agreements, representations and promises to

19   MMR Services, Defendants engaged in unfair, unreasonable, unlawful, incomplete,

20   fraudulent and systematic polices, practices and decisions – with an emphasis on

21   profits over patients – and paid MMR Services a mere 7.74% of its covered charges.

22   This includes, but is not limited to, Defendants' low payments based on inapplicable

23   Medicare rates, down coding, defective databases of purported usual and customary

24   rates and bundled per diem rates, and Defendants' denial of claims based on overly

25   restrictive level of care guidelines and qualitative and quantitative restrictions on

26   access to coverage and benefits for individuals in SUD treatment.  It was only after

27   MMR Services rendered the services at issue that Defendants refused to properly

28   compensate MMR Services for the covered treatment and services rendered to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 55 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1  Defendants' insureds.

2      139.   During the claim submission and payment process, Defendants put

3  MMR Services on various pre-payment review and program integrity audits, and

4  through their various departments, Defendants repeatedly requested the same

5  documents and information from MMR Services, over and over again.  This was all

6  an attempt by Defendants, and each of them, to avoid processing and paying the

7  claims.  MMR Services complied with Defendants' repetitive requests and despite

8  being promised payment pursuant to, *inter alia*, the plans and/or repricing

9  agreements, Defendants refused to properly reimburse MMR Services for the

10  covered treatment and services provided to Defendants' insureds.  Defendants

11  likewise failed and refused to provide MMR Services and the insureds with

12  adequate notice and/or explanation for the denial of benefits, payments or

13  reimbursement of claims, and failed and refused to provide MMR Services and the

14  insureds with a reasonable opportunity to engage in a meaningful claims process and

15  procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending

16  of claims, inadequate notices and explanations, denial of full and fair claims

17  processes and procedures, repetitive document and information requests and

18  promises of payment were false and fraudulent and were implemented by

19  Defendants, and each of them, as a pretext to unlawfully delay and deny MMR

20  Services (and hundreds of other SUD treatment providers and clinical laboratories)

21  payment in accordance with Defendants' representations and promises, and the law

22  and plans.

23      140.   Defendants did not inform or advise MMR Services (during the claim

24  submission and payment process or the post-claims process, or at any time prior to

25  this action) about any anti-assignment provisions in the health plans at issue, and

26  Defendants did not deny MMR Services' claims or deny payment to MMR Services

27  on the grounds of any anti-assignment provisions in the health plans.  Likewise,

28  Defendants did not provide MMR Services (during the claim submission and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 56 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1   payment process or post-claims process, or at any time prior to this action) with the

2   health plan documents at issue.  Similarly, Defendants did not inform or provide

3   MMR Services with notice (during the claim submission and payment process or

4   post-claims process, or at any time prior to this action) of any mandatory appeal

5   obligations in the health plans at issue or any requirement in the plans to exhaust the

6   appeals process to avoid losing the right to litigate.

7         141.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

8   fraudulent and systematic polices, practices and decisions, MMR Services has

9   suffered and continues to suffer general and incidental damages according to proof,

10  including the benefits owed under the plans and the law in the millions, amounts

11  owed in accordance with Defendants' payment promises to MMR Services, the

12  interruption in MMR Services' business, lost business opportunities, lost profits and

13  other consequences, and moreover, MMR Services is entitled to injunctive relief and

14  statutory and prejudgment interest and attorney's fees against Defendants, and each

15  of them.

16        **SCAC**

17        142.   SCAC was at all times relevant herein, a licensed, certified and

18  accredited SUD treatment provider.  SCAC provided medically necessary, verified,

19  preauthorized and covered SUD treatment and services to 84 individuals with health

20  insurance that was sold, insured, managed and/or administered by Defendants.  The

21  treatment and services provided by SCAC include DTX, RTC, PHP, IOP, OP,

22  assessment, evaluations and treatment planning, treatment, counseling, therapy, and

23  case management services.

24        143.   Defendants' health insurance plans, for each of the 84 insureds at issue,

25  allow the insureds to obtain SUD treatment from an INP or OONP, like SCAC.  The

26  plans provide coverage and pay benefits for OON SUD treatment, including, but not

27  limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment

28  and treatment planning, treatment and procedures, counseling, individual, family

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 57 -

and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus and outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to providers)) until the insured's AOOPM is met at which time Defendants pay 100%.  SCAC is informed and believes, and based thereon alleges, that each of the 84 insureds had already met their AOOPM at the time of admission into its program, or shortly thereafter.  Some of the plans at issue pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received.  SCAC is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of SUD treatment providers.

144.   In accordance with SCAC's customs and practices during the intake and admissions process, Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to SCAC.  In furtherance of the assignments, SCAC also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to SCAC not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims.  A sample SCAC written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit E**.  It is, and at all times relevant was, SCAC's standard practice and procedure to require each of its patients, prior to their SUD treatment, to execute such a form.  If a written assignment of benefits is missing for any of the insureds at issue herein, it is the result of a filing or administrative mistake only.  In reliance on the assignments of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

benefits, SCAC rendered the subject SUD treatment and services to Defendants' insureds/members.

145.  Moreover, Defendants confirmed, represented, promised and warranted to SCAC through the required verification of benefits and the preauthorization process and calls, that each of the insureds and their respective OON SUD treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that SCAC would be paid for treating Defendants' insureds/members. In reliance on Defendants' coverage representations and payment promises, SCAC rendered the subject SUD treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that SCAC was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of SCAC's charges for the SUD treatment and services rendered, at each level of care.

146.  After providing covered treatment and services to the 84 insureds at issue, SCAC submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that SCAC submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay SCAC the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to SCAC during the verification and benefits and preauthorization process and calls for each of the 84 insureds, that the OON benefits paid by Defendants to OON providers, like SCAC, for all levels of SUD treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

147.   Instead of paying SCAC per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to SCAC, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid SCAC a mere 22.29% of its covered charges.  This includes, but is not limited to, Defendants' low payments based on inapplicable Medicare rates, down coding, defective databases of purported usual and customary rates for SUD treatment and bundled per diem rates, and Defendants' denial of claims based on overly restrictive level of care guidelines and qualitative and quantitative restrictions (including, but not limited to, flawed criteria for coverage determinations which treat mental health and SUDs as an acute and not chronic condition) on access to coverage and benefits for individuals in SUD treatment.  It was only after SCAC rendered the treatment and services at issue that Defendants refused to properly compensate SCAC for the covered SUD treatment and services rendered to Defendants' insureds.

148.   During the claim submission and payment process, Defendants put SCAC on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from SCAC, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  SCAC complied with Defendants' repetitive requests and despite being promised payment pursuant to, inter alia, the plans and/or repricing agreements, Defendants refused to properly reimburse SCAC for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide SCAC and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide SCAC and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flag and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

pending of claims, inadequate notices and explanations, denial of full and fair claims
processes and procedures, repetitive document and information requests and
promises of payment were false and fraudulent and were implemented by
Defendants, and each of them, as a pretext to unlawfully delay and deny SCAC (and
hundreds of other SUD treatment providers and clinical laboratories) payment in
accordance with Defendants' representations and promises, and the law and plans.

149.   Defendants did not inform or advise SCAC (during the claim
submission and payment process or the post-claims process or at any time prior to
this action) about any anti-assignment provisions in the health plans at issue, and
Defendants did not deny SCAC's claims or deny payment to SCAC on the grounds
of any anti-assignment provisions in the health plans.  Likewise, Defendants did not
provide SCAC (during the claim submission and payment process or post-claims
process, or at any time prior to this action) with the health plan documents at issue.
Similarly, Defendants did not inform or provide SCAC with notice (during the claim
submission and payment process or post-claims process, or at any time prior to this
action) of any mandatory appeal obligations in the health plans at issue or any
requirement in the plans to exhaust the appeals process to avoid losing the right to
litigate.

150.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,
fraudulent and systematic polices, practices and decisions, SCAC has suffered and
continues to suffer general and incidental damages according to proof, including the
benefits owed under the plans and the law in the millions, amounts owed in
accordance with Defendants' payment promises to SCAC, the interruption in
SCAC's business, lost business opportunities, lost profits and other consequences,
and moreover, SCAC is entitled to injunctive relief and statutory and prejudgment
interest and attorney's fees against Defendants, and each of them.

**Kool Living**

151.   Kool Living was at all times relevant herein, a licensed, certified and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1   accredited SUD treatment provider.  Kool Living provided medically necessary,

2   verified, preauthorized and covered SUD treatment and services to 186 individuals

3   with health insurance that was sold, insured, managed and/or administered by

4   Defendants.  The treatment and services provided by Kool Living include DTX,

5   RTC, PHP, IOP, OP, assessment, evaluations and treatment planning, treatment,

6   counseling, therapy, and case management services.

7   152.   Defendants' health insurance plans, for each of the 186 insureds at

8   issue, allow the insureds to obtain SUD treatment from an INP or OONP, like Kool

9   Living.  The plans provide coverage and pay benefits for OON SUD treatment,

10  including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and

11  evaluations, assessment and treatment planning, treatment and procedures,

12  counseling, individual, family and group therapy, behavioral treatment and therapy,

13  medication management, psychological testing, case management services, crisis

14  intervention, and laboratory services, at varying percentages of covered charges

15  (between 50% to 80% of covered charges, with the majority of plans paying OON

16  benefits at 70% of covered charges (minus and outstanding cost-sharing amounts

17  (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to

18  providers)) until the insured's AOOPM is met at which time Defendants pay 100%.

19  Kool Living is informed and believes, and based thereon alleges, that each of the

20  186 insureds had already met their AOOPM at the time of admission into its

21  program, or shortly thereafter.  Some of the plans at issue pay 100% of covered

22  charges (minus any applicable and remaining in-network deductibles, copays or

23  coinsurance) in the event of a "network inadequacy" or "network gap" for the

24  services received.  Kool Living is informed and believes, and based thereon alleges,

25  that at all times relevant herein Defendants had an inadequate network of SUD

26  treatment providers.

27  153.   In accordance with Kool Living's customs and practices during the

28  intake and admissions process, Defendants' insureds, and each of them, orally

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

assigned their health insurance or plan benefits and rights to payments from

Defendants on the claims at issue to Kool Living.  In furtherance of the assignments,

Kool Living also obtained written assignments of benefits from each of the insureds

at issue, by which Defendants' insureds intended to, and did, assign to Kool Living

not only rights to payment from Defendants on the claims at issue but to assert all

rights and causes of action against Defendants in connection with payment on the

claims.  A sample Kool Living written assignment of benefits from one of the

insured-patients at issue (with only the patient's name redacted) is attached hereto as

**Exhibit F**.  It is, and at all times relevant was, Kool Living's standard practice and

procedure to require each of its patients, prior to their SUD treatment, to execute

such a form.  If a written assignment of benefits is missing for any of the insureds at

issue herein, it is the result of a filing or administrative mistake only.  In reliance on

the assignments of benefits, Kool Living rendered the subject SUD treatment and

services to Defendants' insureds/members.

154.   Moreover, Defendants confirmed, represented, promised and warranted

to Kool Living through the required verification of benefits and the preauthorization

process and calls, that each of the insureds and their respective OON SUD

treatments and services were covered by health insurance plans issued, managed

and/or administered by Defendants, the premiums were paid and the plans were

effective, and that Kool Living would be paid for treating Defendants'

insureds/members.  In reliance on Defendants' coverage representations and

payment promises, Kool Living rendered the subject SUD treatment and services to

Defendants' insureds/members.  At all times relevant herein, Defendants knew that

Kool Living was treating and providing services, and would continue to treat and

provide services, to their insureds, and Defendants were, at all times, advised and

fully aware of Kool Living's charges for the SUD treatment and services rendered,

at each level of care.

155.   After providing covered treatment and services to the 186 insureds at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   issue, Kool Living submitted its claims to Defendants for payment.  The claim

2   forms, and each of them, notified Defendants that Kool Living submitted the claims

3   as the insureds' assignee.  Defendants were obligated – under the law and the

4   policies – to pay Kool Living the applicable plan percentage of its covered charges

5   (between 50% to 80% of covered charges, with the majority of plans paying OON

6   benefits at 70% of covered charges (minus any outstanding insured cost-sharing

7   amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.

8   Defendants also advised, confirmed and promised to Kool Living during the

9   verification and benefits and preauthorization process and calls for each of the 186

10  insureds, that the OON benefits paid by Defendants to OON providers, like Kool

11  Living, for all levels of SUD treatment, is a percentage of its covered charges

12  (between 50% to 80% of covered charges, with the majority of claims promised by

13  Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

14  at which time Defendants pay 100%.

15       156.   Instead of paying Kool Living per the plan documents and the law, and

16  in accordance with Defendants' agreements, representations and promises to Kool

17  Living, Defendants engaged in unfair, unreasonable, unlawful, incomplete,

18  fraudulent and systematic polices, practices and decisions – with an emphasis on

19  profits over patients – and paid Kool Living a mere 36.23% of its covered charges.

20  This includes, but is not limited to, Defendants' low payments based on inapplicable

21  Medicare rates, down coding, defective databases of purported usual and customary

22  rates for SUD treatment and bundled per diem rates, and Defendants' denial of

23  claims based on overly restrictive level of care guidelines and qualitative and

24  quantitative restrictions (including, but not limited to, flawed criteria for coverage

25  determinations which treat mental health and SUDs as an acute and not chronic

26  condition) on access to coverage and benefits for individuals in SUD treatment.  It

27  was only after Kool Living rendered the treatment and services at issue that

28  Defendants refused to properly compensate Kool Living for the covered treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1    and services rendered to Defendants' insureds.

2           157.   During the claim submission and payment process, Defendants put

3    Kool Living on various pre-payment review and program integrity audits, and

4    through their various departments, Defendants repeatedly requested the same

5    documents and information from Kool Living, over and over again.  This was all an

6    attempt by Defendants, and each of them, to avoid processing and paying the claims.

7    Kool Living complied with Defendants' repetitive requests and despite being

8    promised payment pursuant to, *inter alia*, the plans and/or repricing agreements,

9    Defendants refused to properly reimburse Kool Living for the covered treatment and

10    services provided to Defendants' insureds.  Defendants likewise failed and refused

11    to provide Kool Living and the insureds with adequate notice and/or explanation for

12    the denial of benefits, payments or reimbursement of claims, and failed and refused

13    to provide Kool Living and the insureds with a reasonable opportunity to engage in

14    a meaningful claims process and procedure which was full and fair.  Defendants'

15    audits, bogus TIN flag and pending of claims, inadequate notices and explanations,

16    denial of full and fair claims processes and procedures, repetitive document and

17    information requests and promises of payment were false and fraudulent and were

18    implemented by Defendants, and each of them, as a pretext to unlawfully delay and

19    deny Kool Living (and hundreds of other SUD treatment providers and clinical

20    laboratories) payment in accordance with Defendants' representations and promises,

21    and the law and plans.

22           158.   Defendants did not inform or advise Kool Living (during the claim

23    submission and payment process or the post-claims process, or at any time prior to

24    this action) about any anti-assignment provisions in the health plans at issue, and

25    Defendants did not deny Kool Living's claims or deny payment to Kool Living on

26    the grounds of any anti-assignment provisions in the health plans.  Likewise,

27    Defendants did not provide Kool Living (during the claim submission and payment

28    process or post-claims process, or at any time prior to this action) with the health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 65 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1   plan documents at issue.  Similarly, Defendants did not inform or provide Kool

2   Living with notice (during the claim submission and payment process or post-claims

3   process, or at any time prior to this action) of any mandatory appeal obligations in

4   the health plans at issue or any requirement in the plans to exhaust the appeals

5   process to avoid losing the right to litigate.

6        159.  As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

7   fraudulent and systematic polices, practices and decisions, Kool Living has suffered

8   and continues to suffer general and incidental damages according to proof, including

9   the benefits owed under the plans and the law in the millions, amounts owed in

10  accordance with Defendants' payment promises to Kool Living, the interruption in

11  Kool Living's business, lost business opportunities, lost profits and other

12  consequences, and moreover, Kool Living is entitled to injunctive relief and

13  statutory and prejudgment interest and attorney's fees against Defendants, and each

14  of them.

15       **Pacific Palms**

16       160.  Pacific Palms is a certified and accredited SUD treatment provider.

17  Pacific Palms provided medically necessary, verified, preauthorized and covered

18  SUD treatment and services to 482 individuals with health insurance that was sold,

19  insured, managed and/or administered by Defendants.  The treatment and services

20  provided by Pacific Palms include PHP, IOP, OP, assessment, evaluations and

21  treatment planning, counseling, therapy, and case management services.

22       161.  Defendants' health insurance plans, for each of the 482 insureds at

23  issue, allow the insureds to obtain SUD treatment from an INP or OONP, like

24  Pacific Palms.  The plans provide coverage and pay benefits for OON SUD

25  treatment and services, including, but not limited to, DTX, RTC, PHP, IOP, OP,

26  diagnostic tests and evaluations, assessment and treatment planning, treatment and

27  procedures, counseling, individual, family and group therapy, behavioral treatment

28  and therapy, medication management, psychological testing, case management

THIRD AMENDED CONSOLIDATED COMPLAINT

services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to providers)) until the insured's AOOPM is met at which time Defendants pay 100%. Pacific Palms is informed and believes, and based thereon alleges, that each of the 482 insureds had already met their AOOPM at the time of admission into Pacific Palms' program, or shortly thereafter. Some of the plans at issue pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received. Pacific Palms is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of SUD treatment providers.

162. In accordance with Pacific Palms' customs and practices during the intake and admissions process, Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to Pacific Palms. In furtherance of the assignments, Pacific Palms also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Pacific Palms not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. A sample Pacific Palms written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit G**. It is, and at all times relevant was, Pacific Palms' standard practice and procedure to require each of its patients, prior to their SUD treatment, to execute such a form. If a written assignment of benefits is missing for any of the insureds at issue herein, it is the result of a filing or administrative mistake only. In reliance on the assignments of benefits, Pacific Palms rendered the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

subject SUD treatment and services to Defendants' insureds/members.

163.   Moreover, Defendants confirmed, represented, promised and warranted to Pacific Palms through the required verification of benefits and the preauthorization process and calls, that each of the insureds and their respective OON SUD treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Pacific Palms would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, Pacific Palms rendered the subject SUD treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that Pacific Palms was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Pacific Palms 's charges for the SUD treatment and services rendered, at each level of care.

164.   After providing covered treatment and services to the 482 insureds at issue, Pacific Palms submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that Pacific Palms submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay Pacific Palms the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%. Defendants also advised, confirmed and promised to Pacific Palms during the verification and benefits and preauthorization process and calls for each of the 482 insureds, that the OON benefits paid by Defendants to OON providers, like Pacific Palms, for all levels of SUD treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    at which time Defendants pay 100%.

2    165.    Instead of paying Pacific Palms per the plan documents and the law,

3    and in accordance with Defendants' agreements, representations and promises to

4    Pacific Palms, Defendants engaged in unfair, unreasonable, unlawful, incomplete,

5    fraudulent and systematic polices, practices and decisions – with an emphasis on

6    profits over patients – and paid Pacific Palms a mere 25.9% of its covered charges.

7    This includes, but is not limited to, Defendants' low payments based on inapplicable

8    Medicare rates, down coding, defective databases of purported usual and customary

9    rates for SUD treatment and bundled per diem rates, and Defendants' denial of

10    claims based on overly restrictive level of care guidelines and qualitative and

11    quantitative restrictions (including, but not limited to, flawed criteria for coverage

12    determinations which treat mental health and SUDs as an acute and not chronic

13    condition) on access to coverage and benefits for individuals in SUD treatment.  It

14    was only after Pacific Palms rendered the treatment and services at issue that

15    Defendants refused to properly compensate Pacific Palms for the covered SUD

16    treatment and services rendered to Defendants' insureds.

17    166.    During the claim submission and payment process, Defendants put

18    Pacific Palms on various pre-payment review and program integrity audits, and

19    through their various departments, Defendants repeatedly requested the same

20    documents and information from Pacific Palms, over and over again.  This was all

21    an attempt by Defendants, and each of them, to avoid processing and paying the

22    claims.  Pacific Palms complied with Defendants' repetitive requests and despite

23    being promised payment pursuant to, *inter alia*, the plans and/or repricing

24    agreements, Defendants refused to properly reimburse Pacific Palms for the covered

25    treatment and services provided to Defendants' insureds.  Defendants likewise failed

26    and refused to provide Pacific Palms and the insureds with adequate notice and/or

27    explanation for the denial of benefits, payments or reimbursement of claims, and

28    failed and refused to provide Pacific Palms and the insureds with a reasonable

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 69 -

THIRD AMENDED CONSOLIDATED COMPLAINT

opportunity to engage in a meaningful claims process and procedure which was full

and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate

notices and explanations, denial of full and fair claims processes and procedures,

repetitive document and information requests and promises of payment were false

and fraudulent and were implemented by Defendants, and each of them, as a pretext

to unlawfully delay and deny Pacific Palms (and hundreds of other SUD disorder

treatment providers and clinical laboratories) payment in accordance with

Defendants' representations and promises, and the law and plans.

167.   Defendants did not inform or advise Pacific Palms (during the claim

submission and payment process or the post-claims process, or at any time prior to

this action) about any anti-assignment provisions in the health plans at issue, and

Defendants did not deny Pacific Palms' claims or deny payment to Pacific Palms on

the grounds of any anti-assignment provisions in the health plans.  Likewise,

Defendants did not provide Pacific Palms (during the claim submission and payment

process or post-claims process, or at any time prior to this action) with the health

plan documents at issue.  Similarly, Defendants did not inform or provide Pacific

Palms with notice (during the claim submission and payment process or post-claims

process, or at any time prior to this action) of any mandatory appeal obligations in

the health plans at issue or any requirement in the plans to exhaust the appeals

process to avoid losing the right to litigate.

168.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

fraudulent and systematic polices, practices and decisions, Pacific Palms has

suffered and continues to suffer general and incidental damages according to proof,

including the benefits owed under the plans and the law in the millions, amounts

owed in accordance with Defendants' payment promises to Pacific Palms, the

interruption in Pacific Palms' business, lost business opportunities, lost profits and

other consequences, and moreover, Pacific Palms is entitled to injunctive relief and

statutory and prejudgment interest and attorney's fees against Defendants, and each

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   of them.

2   **AHA**

3       169.   AHA is a licensed and accredited SUD treatment provider and clinical

4   laboratory.  AHA provided medically necessary, verified, preauthorized and covered

5   SUD treatment and laboratory services to 37 individuals with health insurance that

6   was sold, insured, managed and/or administered by Defendants.  The treatment and

7   services provided by AHA include DTX, RTC, assessment, evaluations and

8   treatment planning, counseling, therapy, case management services and laboratory

9   services.

10      170.   Defendants' health insurance plans, for each of the 37 insureds at issue,

11  allow the insureds to obtain SUD treatment and laboratory services from an INP or

12  OONP, like AHA.  The plans provide coverage and pay benefits for OON SUD

13  treatment and services, including, but not limited to, DTX, RTC, PHP, IOP, OP,

14  diagnostic tests and evaluations, assessment and treatment planning, treatment and

15  procedures, counseling, individual, family and group therapy, behavioral treatment

16  and therapy, medication management, psychological testing, case management

17  services, crisis intervention, and laboratory services, at varying percentages of

18  covered charges (between 50% to 80% of covered charges, with the majority of

19  plans paying OON benefits at 70% of covered charges (minus any outstanding cost-

20  sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from

21  payments to providers)) until the insured's AOOPM is met at which time

22  Defendants pay 100%.  AHA is informed and believes, and based thereon alleges,

23  that each of the 37 insureds had already met their AOOPM at the time of admission

24  into AHA's program, or shortly thereafter.  Some of the plans at issue pay 100% of

25  covered charges (minus any applicable and remaining in-network deductibles,

26  copays or coinsurance) in the event of a "network inadequacy" or "network gap" for

27  the services received.  AHA is informed and believes, and based thereon alleges,

28  that at all times relevant herein Defendants had an inadequate network of SUD

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    treatment providers and clinical laboratories.

2         171.   In accordance with AHA's customs and practices during the intake and

3    admissions process, Defendants' insureds, and each of them, orally assigned their

4    health insurance or plan benefits and rights to payments from Defendants on the

5    claims at issue to AHA.  In furtherance of the assignments, AHA also obtained

6    written assignments of benefits from each of the insureds at issue, by which

7    Defendants' insureds intended to, and did, assign to AHA not only rights to payment

8    from Defendants on the claims at issue but to assert all rights and causes of action

9    against Defendants in connection with payment on the claims.  A sample AHA

10   written assignment of benefits from one of the insured-patients at issue (with only

11   the patient's name redacted) is attached hereto as **Exhibit H**.  It is, and at all times

12   relevant was, AHA's standard practice and procedure to require each of its patients,

13   prior to their SUD treatment, to execute such a form.  If a written assignment of

14   benefits is missing for any of the insureds at issue herein, it is the result of a filing or

15   administrative mistake only.  In reliance on the assignments of benefits, AHA

16   rendered the subject SUD treatment and services to Defendants' insureds/members.

17        172.   Moreover, Defendants confirmed, represented, promised and warranted

18   to AHA through the required verification of benefits and the preauthorization

19   process and calls, that each of the insureds and their respective OON SUD

20   treatments and services were covered by health insurance plans issued, managed

21   and/or administered by Defendants, the premiums were paid and the plans were

22   effective, and that AHA would be paid for treating Defendants' insureds/members.

23   In reliance on Defendants' coverage representations and payment promises, AHA

24   rendered the subject SUD treatment and services to Defendants' insureds/members.

25   At all times relevant herein, Defendants knew that AHA was treating and providing

26   services, and would continue to treat and provide services, to their insureds, and

27   Defendants were, at all times, advised and fully aware of AHA's charges for the

28   SUD treatment and laboratory services rendered, at each level of care.

173.  After providing covered treatment and services to the 37 insureds at issue, AHA submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that AHA submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay AHA the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to AHA during the verification and benefits and preauthorization process and calls for each of the 37 insureds, that the OON benefits paid by Defendants to OON providers, like AHA, for all levels of SUD treatment and laboratory services, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

174.  Instead of paying AHA per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to AHA, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid AHA a mere 16.95% of its covered charges.  This includes, but is not limited to, Defendants' low payments based on inapplicable Medicare rates, down coding, defective databases of purported usual and customary rates for SUD treatment and bundled per diem rates, and Defendants' denial of claims based on overly restrictive level of care guidelines and qualitative and quantitative restrictions (including, but not limited to, flawed criteria for coverage determinations which treat mental health and SUDs as an acute and not chronic condition) on access to coverage and benefits for individuals in SUD treatment.  It was only after AHA rendered the treatment and services at issue that Defendants refused to properly

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   compensate AHA for the covered SUD treatment and services rendered to

2   Defendants' insureds.

3       175.   During the claim submission and payment process, Defendants put

4   AHA on various pre-payment review and program integrity audits, and through their

5   various departments, Defendants repeatedly requested the same documents and

6   information from AHA, over and over again.  This was all an attempt by

7   Defendants, and each of them, to avoid processing and paying the claims.  AHA

8   complied with Defendants' repetitive requests and despite being promised payment

9   pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to

10  properly reimburse AHA for the covered treatment and services provided to

11  Defendants' insureds.  Defendants likewise failed and refused to provide AHA and

12  the insureds with adequate notice and/or explanation for the denial of benefits,

13  payments or reimbursement of claims, and failed and refused to provide AHA and

14  the insureds with a reasonable opportunity to engage in a meaningful claims process

15  and procedure which was full and fair.  Defendants' audits, bogus TIN flag and

16  pending of claims, inadequate notices and explanations, denial of full and fair claims

17  processes and procedures, repetitive document and information requests and

18  promises of payment were false and fraudulent and were implemented by

19  Defendants, and each of them, as a pretext to unlawfully delay and deny AHA (and

20  hundreds of other SUD treatment providers and clinical laboratories) payment in

21  accordance with Defendants' representations and promises, and the law and plans.

22      176.   Defendants did not inform or advise AHA (during the claim submission

23  and payment process or the post-claims process, or any time prior to this action)

24  about any anti-assignment provisions in the health plans at issue, and Defendants

25  did not deny AHA's claims or deny payment to AHA on the grounds of any anti-

26  assignment provisions in the health plans at issue.  Likewise, Defendants did not

27  provide AHA (during the claim submission and payment process or post-claims

28  process, or at any time prior to this action) with the health plan documents at issue.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

Similarly, Defendants did not inform or provide AHA with notice (during the claim
submission and payment process or post-claims process, or at any time prior to this
action) of any mandatory appeal obligations in the health plans at issue or any
requirement in the plans to exhaust the appeals process to avoid losing the right to
litigate.

177.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,
fraudulent and systematic polices, practices and decisions, AHA has suffered and
continues to suffer general and incidental damages according to proof, including the
benefits owed under the plans and the law in the millions, amounts owed in
accordance with Defendants' payment promises to AHA, the interruption in AHA's
business, lost business opportunities, lost profits and other consequences, and
moreover, AHA is entitled to injunctive relief and statutory and prejudgment interest
and attorney's fees against Defendants, and each of them.

**DR Recovery**

178.   DR Recovery was, at all times relevant herein, a certified SUD
treatment provider and licensed and accredited clinical laboratory.  DR Recovery
provided medically necessary, verified, preauthorized and covered SUD treatment
and laboratory services to 80 individuals with health insurance that was sold,
insured, managed and/or administered by Defendants.  The treatment and services
provided by DR Recovery include PHP, IOP, OP, assessment, evaluations and
treatment planning, counseling, therapy, case management services, and laboratory
services.

179.   Defendants' health insurance plans, for each of the 80 insureds at issue,
allow the insureds to obtain SUD treatment and laboratory services from an INP or
OONP, like DR Recovery.  The plans provide coverage and pay benefits for OON
SUD treatment and services, including, but not limited to, DTX, RTC, PHP, IOP,
OP, diagnostic tests and evaluations, assessment and treatment planning, treatment
and procedures, counseling, individual, family and group therapy, behavioral

treatment and therapy, medication management, psychological testing, case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from providers)) until the insured's AOOPM is met at which time Defendants pay 100%. DR Recovery is informed and believes, and based thereon alleges, that each of the 80 insureds had already met their AOOPM at the time of admission into DR Recovery's program, or shortly thereafter. Some of the plans at issue pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received. DR Recovery is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of SUD treatment providers and clinical laboratories.

180. In accordance with DR Recovery's customs and practices during the intake and admissions process, Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to DR Recovery. In furtherance of the assignments, DR Recovery also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to DR Recovery not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. A sample DR Recovery written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit I**. It is, and at all times relevant was, DR Recovery's standard practice and procedure to require each of its patients, prior to their SUD treatment, to execute such a form. If a written assignment of benefits is missing for any of the insureds at issue herein, it is the result of a filing or administrative

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

mistake only.  In reliance on the assignments of benefits, DR Recovery rendered the

subject SUD treatment and services to Defendants' insureds/members.

181.   Moreover, Defendants confirmed, represented, promised and warranted

to DR Recovery through the required verification of benefits and the

preauthorization process and calls, that each of the insureds and their respective

OON SUD treatments and services were covered by health insurance plans issued,

managed and/or administered by Defendants, the premiums were paid and the plans

were effective, and that DR Recovery would be paid for treating Defendants'

insureds/members.  In reliance on Defendants' coverage representations and

payment promises, DR Recovery rendered the subject SUD treatment and services

to Defendants' insureds/members.  At all times relevant herein, Defendants knew

that DR Recovery was treating, and would continue to treat, their insureds, and

Defendants were, at all times, advised and fully aware of DR Recovery's charges for

the SUD treatment and services rendered, at each level of care.

182.   After providing covered treatment and services to the 80 insureds at

issue, DR Recovery submitted its claims to Defendants for payment.  The claim

forms, and each of them, notified Defendants that DR Recovery submitted the

claims as the insureds' assignee.  Defendants were obligated – under the law and the

policies – to pay DR Recovery the applicable plan percentage of its covered charges

(between 50% to 80% of covered charges, with the majority of plans paying OON

benefits at 70% of covered charges (minus any outstanding insured cost-sharing

amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.

Defendants also advised, confirmed and promised to DR Recovery during the

verification and benefits and preauthorization process and calls for each of the 80

insureds, that the OON SUD benefits paid by Defendants to OON providers, like

DR Recovery, for all levels of SUD treatment and laboratory services, is a

percentage of its covered charges (between 50% to 80% of covered charges, with

the majority of claims promised by Defendants to be paid at 70% of covered

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

charges) until the insured's AOOPM is met at which time Defendants pay 100%.

183.   Instead of paying DR Recovery per the plan documents and the law, and in accordance with Defendants' agreements, representations and promises to DR Recovery, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid DR Recovery a mere 21.44% of its covered charges. This includes, but is not limited to, Defendants' low payments based on inapplicable Medicare rates, down coding, defective databases of purported usual and customary rates for SUD treatment and bundled per diem rates, and Defendants' denial of claims based on overly restrictive level of care guidelines and qualitative and quantitative restrictions (including, but not limited to, flawed criteria for coverage determinations which treat mental health and SUDs as an acute and not chronic condition) on access to coverage and benefits for individuals in SUD treatment. It was only after DR Recovery rendered the treatment and services at issue that Defendants refused to properly compensate DR Recovery for the covered SUD treatment and services rendered to Defendants' insureds.

184.   During the claim submission and payment process, Defendants put DR Recovery on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from DR Recovery, over and over again. This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims. DR Recovery complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to properly reimburse DR Recovery for the covered treatment and services provided to Defendants' insureds. Defendants likewise failed and refused to provide DR Recovery and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide DR Recovery and the insureds with a reasonable opportunity to engage in a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   meaningful claims process and procedure which was full and fair.  Defendants'

2   audits, bogus TIN flag and pending of claims, inadequate notices and explanations,

3   denial of full and fair claims processes and procedures, repetitive document and

4   information requests and promises of payment were false and fraudulent and were

5   implemented by Defendants, and each of them, as a pretext to unlawfully delay and

6   deny DR Recovery (and hundreds of other SUD treatment providers and clinical

7   laboratories) payment in accordance with Defendants' representations and promises,

8   and the law and plans.

9          185.   Defendants did not inform or advise DR Recovery (during the claim

10   submission and payment process or the post-claims process, or at any time prior to

11   this action) about any anti-assignment provisions in the health plans at issue, and

12   Defendants did not deny DR Recovery's claims or deny payment to DR Recovery

13   on the grounds of any anti-assignment provisions in the health plans.  Likewise,

14   Defendants did not provide DR Recovery (during the claim submission and payment

15   process or post-claims process, or at any time prior to this action) with the health

16   plan documents at issue.  Similarly, Defendants did not inform or provide DR

17   Recovery with notice (during the claim submission and payment process or post-

18   claims process, or at any time prior to this action) of any mandatory appeal

19   obligations in the health plans at issue or any requirement in the plans to exhaust the

20   appeals process to avoid losing the right to litigate.

21          186.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

22   fraudulent and systematic polices, practices and decisions, DR Recovery has

23   suffered and continues to suffer general and incidental damages according to proof,

24   including the benefits owed under the plans and the law in the millions, amounts

25   owed in accordance with Defendants' payment promises to DR Recovery, the

26   interruption in DR Recovery's business, lost business opportunities, lost profits and

27   other consequences, and moreover, DR Recovery is entitled to injunctive relief and

28   statutory and prejudgment interest and attorney's fees against Defendants, and each

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    of them.

2    **Inland Detox**

3    187.   Inland Detox is a licensed and accredited SUD treatment provider.

Inland Detox provided medically necessary, verified, preauthorized and covered

SUD treatment and services to 145 individuals with health insurance that was sold,

insured, managed and/or administered by Defendants.  The treatment and services

provided by Inland Detox include DTX, RTC, assessment, evaluations and

treatment planning, counseling, therapy, and case management services.

188.   Defendants' health insurance plans, for each of the 145 insureds at

issue, allow the insureds to obtain SUD treatment from an INP or OONP, like Inland

Detox.  The plans provide coverage and pay benefits for OON SUD treatment and

services, including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests

and evaluations, assessment and treatment planning, treatment and procedures,

counseling, individual, family and group therapy, behavioral treatment and therapy,

medication management, psychological testing, case management services, crisis

intervention, and laboratory services, at varying percentages of covered charges

(between 50% to 80% of covered charges, with the majority of plans paying OON

benefits at 70% of covered charges (minus and outstanding cost-sharing amounts

(*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to

providers)) until the insured's AOOPM is met at which time Defendants pay 100%.

Inland Detox is informed and believes, and based thereon alleges, that each of the

145 insureds had already met their AOOPM at the time of admission into its

program, or shortly thereafter.  Some of the plans at issue pay 100% of covered

charges (minus any applicable and remaining in-network deductibles, copays or

coinsurance) in the event of a "network inadequacy" or "network gap" for the

services received.  Inland Detox is informed and believes, and based thereon alleges,

that at all times relevant herein Defendants had an inadequate network of SUD

treatment providers.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

189.   In accordance with Inland Detox' customs and practices during the intake and admissions process, Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to Inland Detox.  In furtherance of the assignments, Inland Detox also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Inland Detox not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims.  A sample Inland Detox written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit J**.  It is, and at all times relevant was, Inland Detox' standard practice and procedure to require each of its patients, prior to their SUD treatment, to execute such a form.  If a written assignment of benefits is missing for any of the insureds at issue herein, it is the result of a filing or administrative mistake only.  In reliance on the assignments of benefits, Inland Detox rendered the subject SUD treatment and services to Defendants' insureds/members.

190.   Moreover, Defendants confirmed, represented, promised and warranted to Inland Detox through the required verification of benefits and the preauthorization process and calls, that each of the insureds and their respective OON SUD treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Inland Detox would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, Inland Detox rendered the subject SUD treatment and services to Defendants' insureds/members.  At all times relevant herein, Defendants knew that Inland Detox was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Inland Detox' charges for the SUD treatment and services rendered,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    at each level of care.

2        191.    After providing covered treatment and services to the 145 insureds at

3    issue, Inland Detox submitted its claims to Defendants for payment.  The claim

4    forms, and each of them, notified Defendants that Inland Detox submitted the claims

5    as the insureds' assignee.  Defendants were obligated – under the law and the

6    policies – to pay Inland Detox the applicable plan percentage of its covered charges

7    (between 50% to 80% of covered charges, with the majority of plans paying OON

8    benefits at 70% of covered charges (minus any outstanding insured cost-sharing

9    amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.

10   Defendants also advised, confirmed and promised to Inland Detox during the

11   verification and benefits and preauthorization process and calls for each of the 145

12   insureds, that the OON benefits paid by Defendants to OON providers, like Inland

13   Detox, for all levels of SUD treatment, is a percentage of its covered charges

14   (between 50% to 80% of covered charges, with the majority of claims promised by

15   Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

16   at which time Defendants pay 100%.

17       192.    Instead of paying Inland Detox per the plan documents and the law, and

18   in accordance with Defendants' agreements, representations and promises to Inland

19   Detox, Defendants engaged in unfair, unreasonable, unlawful, incomplete,

20   fraudulent and systematic polices, practices and decisions – with an emphasis on

21   profits over patients – and paid Inland Detox a mere 24.04% of its covered charges.

22   This includes, but is not limited to, Defendants' low payments based on inapplicable

23   Medicare rates, down coding, defective databases of purported usual and customary

24   rates for SUD treatment and bundled per diem rates, and Defendants' denial of

25   claims based on overly restrictive level of care guidelines and qualitative and

26   quantitative restrictions (including, but not limited to, flawed criteria for coverage

27   determinations which treat mental health and SUDs as an acute and not chronic

28   condition) on access to coverage and benefits for individuals in SUD treatment.  It

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1    was only after Inland Detox rendered the treatment and services at issue that

2    Defendants refused to properly compensate Inland Detox for the covered treatment

3    and services rendered to Defendants' insureds.

4         193.    During the claim submission and payment process, Defendants put

5    Inland Detox on various pre-payment review and program integrity audits, and

6    through their various departments, Defendants repeatedly requested the same

7    documents and information from Inland Detox, over and over again.  This was all an

8    attempt by Defendants, and each of them, to avoid processing and paying the claims.

9    Inland Detox complied with Defendants' repetitive requests and despite being

10   promised payment pursuant to, *inter alia*, the plans and/or repricing agreements,

11   Defendants refused to properly reimburse Inland Detox for the covered treatment

12   and services provided to Defendants' insureds.  Defendants likewise failed and

13   refused to provide Inland Detox and the insureds with adequate notice and/or

14   explanation for the denial of benefits, payments or reimbursement of claims, and

15   failed and refused to provide Inland Detox and the insureds with a reasonable

16   opportunity to engage in a meaningful claims process and procedure which was full

17   and fair.  Defendants' audits, bogus TIN flag and pending of claims, inadequate

18   notices and explanations, denial of full and fair claims processes and procedures,

19   repetitive document and information requests and promises of payment were false

20   and fraudulent and were implemented by Defendants, and each of them, as a pretext

21   to unlawfully delay and deny Inland Detox (and hundreds of other SUD treatment

22   providers and clinical laboratories) payment in accordance with Defendants'

23   representations and promises, and the law and plans.

24        194.    Defendants did not inform or advise Inland Detox during the claim

25   submission and payment process, or the post-claims process, about any anti-

26   assignment provisions in the health plans at issue, and Defendants did not deny

27   Inland Detox' claims or deny payment to Inland Detox on the grounds of any anti-

28   assignment provisions in the health plans.  Likewise, Defendants did not provide

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 83 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1    Inland Detox (during the claim submission and payment process or post-claims

2    process, or at any time prior to this action) with the health plan documents at issue.

3    Similarly, Defendants did not inform or provide Inland Detox with notice (during

4    the claim submission and payment process or post-claims process, or at any time

5    prior to this action) of any mandatory appeal obligations in the health plans at issue

6    or any requirement in the plans to exhaust the appeals process to avoid losing the

7    right to litigate.

8         195.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

9    fraudulent and systematic polices, practices and decisions, Inland Detox has suffered

10   and continues to suffer general and incidental damages according to proof, including

11   the benefits owed under the plans and the law in the millions, amounts owed in

12   accordance with Defendants' payment promises to Inland Detox, the interruption in

13   Inland Detox' business, lost business opportunities, lost profits and other

14   consequences, and moreover, Inland Detox is entitled to injunctive relief and

15   statutory and prejudgment interest and attorney's fees against Defendants, and each

16   of them.

17        **12 South**

18        196.   12 South is a certified and accredited SUD treatment provider.  12

19   South provided medically necessary, verified, preauthorized and covered mental

20   health and SUD treatment and services to 67 individuals with health insurance that

21   was sold, insured, managed and/or administered by Defendants.  The treatment and

22   services provided by 12 South include PHP, IOP, OP, assessment, evaluations and

23   treatment planning, counseling, therapy, and case management services.

24        197.   Defendants' health insurance plans, for each of the 67 insureds at issue,

25   allow the insureds to obtain SUD treatment from an INP or OONP, like 12 South.

26   The plans provide coverage and pay benefits for OON SUD treatment and services,

27   including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and

28   evaluations, assessment and treatment planning, treatment and procedures,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding cost-sharing amounts, (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to providers)) until the insured's AOOPM is met at which time Defendants pay 100%. 12 South is informed and believes, and based thereon alleges, that each of the 67 insureds had already met their AOOPM at the time of admission into its program, or shortly thereafter. Some of the plans at issue pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received. 12 South is informed and believes, and based thereon alleges, that at all times relevant herein Defendants had an inadequate network of mental health and SUD treatment providers.

198. In accordance with 12 South's customs and practices during the intake and admissions process, Defendants' insureds, and each of them, orally assigned their health insurance or plan benefits and rights to payments from Defendants on the claims at issue to 12 South. In furtherance of the assignments, 12 South also obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to 12 South not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. A sample 12 South written assignment of benefits from one of the insured-patients at issue (with only the patient's name redacted) is attached hereto as **Exhibit K**. It is, and at all times relevant was, 12 South's standard practice and procedure to require each of its patients, prior to their SUD treatment, to execute such a form. If a written assignment of benefits is missing for any of the insureds at issue herein, it is the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

result of a filing or administrative mistake only.  In reliance on the assignments of benefits, Pacific Palms rendered the subject SUD treatment and services to Defendants' insureds/members.

199.   Moreover, Defendants confirmed, represented, promised and warranted to 12 South through the required verification of benefits and the preauthorization process and calls that each of the insureds and their respective OON SUD treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that 12 South would be paid for treating Defendants' insureds/members.  In reliance on Defendants' coverage representations and payment promises, 12 South rendered the subject SUD treatment and services to Defendants' insureds/members. At all times relevant herein, Defendants knew that 12 South was treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of 12 South's charges for the SUD treatment and services rendered, at each level of care.

200.   After providing covered treatment and services to the 67 insureds at issue, 12 South submitted its claims to Defendants for payment.  The claim forms, and each of them, notified Defendants that 12 South submitted the claims as the insureds' assignee.  Defendants were obligated – under the law and the policies – to pay 12 South the applicable plan percentage of its covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's AOOPM is met at which time Defendants pay 100%.  Defendants also advised, confirmed and promised to 12 South during the verification and benefits and preauthorization process and calls for each of the 67 insureds, that the OON benefits paid by Defendants to OON providers, like 12 South, for all levels of mental health and SUD treatment, is a percentage of its covered charges (between 50% to 80% of covered charges, with the majority of claims promised by

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

at which time Defendants pay 100%.

201.   Instead of paying 12 South per the plan documents and the law, and in

accordance with Defendants' agreements, representations and promises to 12 South,

Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and

systematic polices, practices and decisions – with an emphasis on profits over

patients – and paid 12 South a mere 8.1% of its covered charges.  This includes, but

is not limited to, Defendants' low payments based on inapplicable Medicare rates,

down coding, defective databases of purported usual and customary rates for SUD

treatment and bundled per diem rates, and Defendants' denial of claims based on

overly restrictive level of care guidelines and qualitative and quantitative restrictions

(including, but not limited to, flawed criteria for coverage determinations which

treat mental health and SUDs as an acute and not chronic condition) on access to

coverage and benefits for individuals in SUD treatment.  It was only after 12 South

rendered the treatment and services at issue that Defendants refused to properly

compensate 12 South for the covered SUD treatment and services rendered to

Defendants' insureds.

202.   During the claim submission and payment process, Defendants put 12

South on various pre-payment review and program integrity audits, and through

their various departments, Defendants repeatedly requested the same documents and

information from 12 South, over and over again.  This was all an attempt by

Defendants, and each of them, to avoid processing and paying the claims.  12 South

complied with Defendants' repetitive requests and despite being promised payment

pursuant to, *inter alia*, the plans and/or repricing agreements, Defendants refused to

properly reimburse 12 South for the covered treatment and services provided to

Defendants' insureds.  Defendants likewise failed and refused to provide 12 South

and the insureds with adequate notice and/or explanation for the denial of benefits,

payments or reimbursement of claims, and failed and refused to provide 12 South

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and the insureds with a reasonable opportunity to engage in a meaningful claims

process and procedure which was full and fair.  Defendants' audits, bogus TIN flag

and pending of claims, inadequate notices and explanations, denial of full and fair

claims processes and procedures, repetitive document and information requests and

promises of payment were false and fraudulent and were implemented by

Defendants, and each of them, as a pretext to unlawfully delay and deny 12 South

(and hundreds of other SUD treatment providers and clinical laboratories) payment

in accordance with Defendants' representations and promises, and the law and

plans.

203.   Defendants did not inform or advise 12 South (during the claim

submission and payment process or the post-claims process, or at any time prior to

this action) about any anti-assignment provisions in the health plans at issue, and

Defendants did not deny 12 South's claims or deny payment to 12 South on the

grounds of any anti-assignment provisions in the health plans.  Likewise,

Defendants did not provide 12 South (during the claim submission and payment

process or post-claims process, or at any time prior to this action) with the health

plan documents at issue.  Similarly, Defendants did not inform or provide 12 South

with notice (during the claim submission and payment process or post-claims

process, or at any time prior to this action) of any mandatory appeal obligations in

the health plans at issue or any requirement in the plans to exhaust the appeals

process to avoid losing the right to litigate.

204.   As a result of Defendants' unfair, unreasonable, unlawful, incomplete,

fraudulent and systematic polices, practices and decisions, 12 South has suffered

and continues to suffer general and incidental damages according to proof, including

the benefits owed under the plans and the law in the millions, amounts owed in

accordance with Defendants' payment promises to 12 South, the interruption in 12

South's business, lost business opportunities, lost profits and other consequences,

and moreover, 12 South is entitled to injunctive relief and statutory and prejudgment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1    interest and attorney's fees against Defendants, and each of them.

2       **NTR Resources**

3       205.   NTR Resources is a licensed and accredited clinical laboratory.  NTR

4    Resources provided medically necessary, verified, preauthorized and covered

5    laboratory services to 15 individuals with health insurance that was sold, insured,

6    managed and/or administered by Defendants.  The services provided by NTR

7    Resources include presumptive and definitive laboratory tests.

8       206.   Defendants' health insurance plans, for each of the 15 insureds at issue,

9    allow the insureds to obtain SUD treatment and laboratory services from an INP or

10   OONP, like NTR Resources.  The plans provide coverage and pay benefits for OON

11   laboratory services at varying percentages of covered charges (between 50% to 80%

12   of covered charges, with the majority of plans paying OON benefits at 70% of

13   covered charges (minus any outstanding cost sharing amounts (*i.e.*, deductibles,

14   coinsurance), which Defendants deduct from payments to providers)) until the

15   insured's AOOPM is met at which time Defendants pay 100%.  NTR Resources is

16   informed and believes, and based thereon alleges, that each of the 15 insureds had

17   already met their AOOPM at the time they first received services from NTR

18   Resources, or shortly thereafter.  Some of the plans at issue pay 100% of covered

19   charges (minus any applicable and remaining in-network deductibles, copays or

20   coinsurance) in the event of a "network inadequacy" or "network gap" for the

21   services received.  NTR Resources is informed and believes, and based thereon

22   alleges, that at all times relevant herein Defendants had an inadequate network of

23   clinical laboratories.

24      207.   NTR Resources obtained oral and written assignment of benefits from

25   each of the insureds at issue, by which Defendants' insureds intended to, and did,

26   assign to NTR Resources not only rights to payment from Defendants on the claims

27   at issue but to assert all rights and causes of action against Defendants in connection

28   with payment on the claims.  A sample NTR Resources written assignment of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 89 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1   benefits from one of the insured-patients at issue (with only the patient's name

2   redacted) is attached hereto as **Exhibit L**.  It is, and at all times relevant was, NTR

3   Resources' standard practice and procedure to require each of its patients, prior to

4   each and every laboratory test, to execute such a form.  If a written assignment of

5   benefits is missing for any of the insureds or claims at issue, it is the result of a

6   filing or administrative mistake only.  In reliance on the assignments of benefits,

7   NTR Resources rendered the subject services to Defendants' insureds/members.

8       208.   Moreover, Defendants confirmed, represented, promised and warranted

9   to NTR Resources through the required verification of benefits calls, that each of the

10  insureds and their respective OON laboratory services were covered by health

11  insurance plans issued, managed and/or administered by Defendants, the premiums

12  were paid and the plans were effective, and that NTR Resources would be paid for

13  treating and providing services to Defendants' insureds/members.  In reliance on

14  Defendants' coverage representations and payment promises, NTR Resources

15  rendered the subject services to Defendants' insureds/members.  At all times

16  relevant herein, Defendants knew that NTR Resources was treating and providing

17  services, and would continue to treat and provide services, to their insureds, and

18  Defendants were, at all times, advised and fully aware of NTR Resources' charges

19  for the laboratory services rendered.

20      209.   After providing covered treatment and services to the 15 insureds at

21  issue, NTR Resources submitted its claims to Defendants for payment.  The claim

22  forms, and each of them, notified Defendants that NTR Resources submitted the

23  claims as the insureds' assignee.  Defendants were obligated – under the law and the

24  policies – to pay NTR Resources the applicable plan percentage of its covered

25  charges (between 50% to 80% of covered charges, with the majority of plans paying

26  OON benefits at 70% of covered charges (minus any outstanding insured cost-

27  sharing amounts)) until the insured's AOOPM is met at which time Defendants pay

28  100%.  Defendants also advised, confirmed and promised to NTR Resources during

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 the verification and benefits calls for each of the 15 insureds, that the OON benefits

2 paid by Defendants to OON providers, like NTR Resources, for all levels of SUD

3 treatment and laboratory services, is a percentage of its covered charges (between

4 50% to 80% of covered charges, with the majority of claims promised by

5 Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met

6 at which time Defendants pay 100%.

7      210.   Instead of paying NTR Resources per the plan documents and the law,

8 and in accordance with Defendants' agreements, representations and promises to

9 NTR Resources, Defendants engaged in unfair, unreasonable, unlawful, incomplete,

10 fraudulent and systematic polices, practices and decisions – with an emphasis on

11 profits over patients – and paid NTR Resources 0% of its covered charges.  It was

12 only after NTR Resources rendered the treatment and services at issue that

13 Defendants refused to properly compensate NTR Resources for the covered

14 treatment and services rendered to Defendants' insureds.

15      211.   During the claim submission and payment process, Defendants put

16 NTR Resources on various pre-payment review and program integrity audits, and

17 through their various departments, Defendants repeatedly requested the same

18 documents and information from NTR Resources, over and over again.  This was all

19 an attempt by Defendants, and each of them, to avoid processing and paying the

20 claims.  NTR Resources complied with Defendants' repetitive requests and despite

21 being promised payment pursuant to, *inter alia*, the plans and/or repricing

22 agreements, Defendants refused to properly reimburse NTR Resources for the

23 covered treatment and services provided to Defendants' insureds.  Defendants

24 likewise failed and refused to provide NTR Resources and the insureds with

25 adequate notice and/or explanation for the denial of benefits, payments or

26 reimbursement of claims, and failed and refused to provide NTR Resources and the

27 insureds with a reasonable opportunity to engage in a meaningful claims process and

28 procedure which was full and fair.  Defendants' audits, bogus TIN flag and pending

- 91 -

THIRD AMENDED CONSOLIDATED COMPLAINT

of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to unlawfully delay and deny NTR Resources (and hundreds of other SUD treatment providers and clinical laboratories) payment in accordance with Defendants' representations and promises, and the law and plans.

212. Defendants did not inform or advise NTR Resources (during the claim submission and payment process or the post-claims process, or at any time prior to this action) about any anti-assignment provisions in the health plans at issue, and Defendants did not deny NTR Resources' claims or deny payment to NTR Resources on the grounds of any anti-assignment provisions in the health plans. Likewise, Defendants did not provide NTR Resources (during the claim submission and payment process or post-claims process, or at any time prior to this action) with the health plan documents at issue. Similarly, Defendants did not inform or provide NTR Resources with notice (during the claim submission and payment process or post-claims process, or at any time prior to this action) of any mandatory appeal obligations in the health plans at issue or any requirement in the plans to exhaust the appeals process to avoid losing the right to litigate.

213. As a result of Defendants' unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions, NTR Resources has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the plans and the law in the hundreds of thousands of dollars, amounts owed in accordance with Defendants' payment promises to NTR Resources, the interruption in NTR Resources' business, lost business opportunities, lost profits and other consequences, and moreover, NTR Resources is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

**LEGAL EFFECT AND CONSEQUENCES OF DEFENDANTS' SCHEME**

214.   Defendants' conduct at issue herein has had a severe and adverse effect on not only Plaintiffs, but also Defendants' insureds and the SUD treatment profession as a whole.  Defendants' conduct has placed the lives of their insureds that are struggling with addiction in jeopardy, exposing the insureds and their families to significant financial and health risk, while simultaneously destroying or significantly damaging Plaintiffs and all similarly situated SUD treatment providers and clinical laboratories.

215.   Defendants' conduct breached agreements with Plaintiffs which arose when Plaintiffs' patients assigned benefits to Plaintiffs orally and in writing, and when Defendants confirmed OON coverage for the SUD treatment and laboratory services at issue herein and promised to pay Plaintiffs for said treatment and services, and when necessary, Defendants gave prior approval and authorization for the SUD treatment and services that Plaintiffs provided to Defendants' insureds/members.  Defendants' violated the implied covenant of good faith and fair dealing in said insurance contracts, rendering their actions in bad faith.

216.   Upon information and belief, Plaintiffs allege that Defendants' conduct was wanton and willful, and undertaken to improve their balance sheets by placing profits over patients in a life and death situation.  In this regard, Defendants' SUD treatment and clinical laboratory guidelines, reimbursement policies and claims handlings processes and procedures were, and are, fraudulently flawed and tainted by Defendants' financial interests.

217.   Defendants' practices were also unfair, fraudulent and unlawful under California's Unfair Competition Law ("UCL") in that, as a part of their scheme to not pay or underpay Plaintiffs, and to prevent Plaintiffs from learning of Defendants' scheme for as long as possible, Defendants violated their claims handling and processing obligations under ERISA and California law by providing either no, baseless, false, or dilatory reasons for not paying or underpaying

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Plaintiffs; thereby entitling Plaintiffs to injunctive relief and restitution against

Defendants, and each of them, under the UCL.

218.   Defendants' practices were similarly unfair, fraudulent and unlawful

under state and federal law in that they violate the MHPAEA, while simultaneously

constituting common law bad faith.  The MHPAEA is an antidiscrimination statute

intended to ensure that coverage of mental health and SUD treatment (such as

Plaintiffs provide) is in "parity" with coverage of medical and surgical care.

Defendants, and each of them, have systematically treated SUD treatment providers

differently than medical and surgical providers in California, and likely across the

nation.

219.    Defendants' practices were likewise unfair, fraudulent and unlawful

under state and federal law in that they violate the PPACA, which requires, among

other things, insurers to provide benefits for essential mental health and SUD

treatment and laboratory services, with no pre-existing condition exclusions and no

annual or lifetime dollar amount limits on coverage of such treatment services.

220.   Defendants' actions were further unfair, fraudulent and unlawful in that

they violated other well established public policies, including those set forth in the

California Unfair Insurance Practices Act ("UIPA"), as set forth in California

Insurance Code sections 790, *et seq*.

221.   Defendants' insureds/members were also unlawfully, unfairly and

fraudulently misled into believing that their health plans would provide coverage for

care supplied by OON SUD treatment providers and clinical laboratories, such as

Plaintiffs.

222.   Defendants, and each of them, never intended to provide the coverage

mandated by the plans at issue and instead intended to not pay or to underpay SUD

treatment providers and laboratories throughout California, including Plaintiffs.

Defendants, and each of them, have ignored Plaintiffs' efforts to recover payment

for the treatment and services provided, placing Plaintiffs in the untenable position

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   of being forced to file this lawsuit in order to recover payments due under the law

2   and plans, and in accordance with Defendants' OON coverage representations and

3   payment promises to Plaintiffs.

4        223.   Plaintiffs seek relief under their direct rights, assigned rights from

5   patients cheated out of their insurance benefits by Defendants, and as third-party

6   beneficiaries of their patients' health insurance plans issued, managed and/or

7   administered by Defendants.

8        224.   Defendants have also tortiously breached the implied covenant of good

9   faith and fair dealing in the underlying health insurance plans issued, managed

10  and/or administered by Defendants, which rights have been assigned to Plaintiffs.

11       225.   The treatment and services at issue were provided by Plaintiffs to

12  patients who at all relevant times had health insurance for the SUD treatment and

13  services that Plaintiffs provided and the health insurance plans were issued,

14  managed and/or administered by Defendants, and each of them, or at the direction

15  and under the control of Defendants.

16       226.   Defendants, and each of them, caused the events complained of herein

17  to occur in the County of Orange and throughout the State of California, and likely

18  across the nation.

19       227.   Plaintiffs provide SUD treatment and laboratory services to individuals

20  in the process of recovering from alcoholism and SUDs.  Plaintiffs' treatment

21  includes a range of services, including, but not limited to, DTX, RTC, PHP, IOP,

22  OP, diagnostic tests and evaluations, assessment and treatment planning, treatment

23  and/or procedures, medication management and other associated treatment,

24  psychological testing, referral services, individual, family and group therapy, case

25  management services, crisis intervention, and laboratory services.

26       228.   Defendants, and each of them, developed and marketed the subject

27  health insurance plans to include coverage for SUD treatment and laboratory

28  services provided to their insureds by INPs and OONPs, like Plaintiffs.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

229.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, are industry standard indemnity health insurance contracts that provide richer benefits (less out-of-pocket expense for insureds) for treatment and services that are obtained from INPs.  Such providers contract with Defendants to become part of their "network" and generally agree to accept a set reduced rate of reimbursement in exchange for Defendants' steerage of patients to their practices or facilities and payment within specified contractual timeframes.

230.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide for a reimbursement rate for OONP services at a lesser percentage of the overall billed charges than the 100% reimbursement rate for INP services, less the insured's copayment, coinsurance and deductible, generally resulting in greater out-of-pocket expenses for Defendants' insureds.

231.   California law requires that the policy forms, such as those utilized in the health insurance plans issued, managed and/or administered by Defendants, and each of them, be filed with and approved by the CDI, and are generally not to be withdrawn from the insurance marketplace without an insurer meeting specific conditions.

232.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide coverage for, but not limited to, the following ONN SUD treatment and services: DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and/or procedures, medication management and other associated treatment, psychological testing, referral services, individual, family and group therapy, case management services, crisis intervention, and laboratory services.

233.   The health insurance plans issued, managed and/or administered by Defendants, and each of them, provide for the payment of services with an INP at 100% of the provider's billed charges set by contract, less the insured's copayment, coinsurance and deductible.  Services with an OONP are reimbursed at a lesser

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   percentage of the provider's billed charges.

2   234.   The health insurance plans issued, managed and/or administered by

3   Defendants, and each of them, provide that Defendants are required to remit claim

4   payments to providers when the insured assigns his or her benefits to the provider in

5   writing, and Defendants warranted, represented and promised Plaintiffs that

6   payments would be made to Plaintiffs.

7   235.   When required by the health insurance plans issued, managed and/or

8   administered by Defendants, and each of them, Plaintiffs' standard operating

9   procedure was to obtain prior authorizations from Defendants for the SUD treatment

10  and services to be rendered.  Plaintiffs' standard operating procedure also included

11  obtaining a verification of benefits from Defendants to ensure the patient is covered

12  by the insurer and that the treatment and services at each level of care are covered

13  benefits under the plan.  Defendants' members/insureds were not admitted for

14  treatment and services with Plaintiffs, and each of them, until the verification of

15  benefits, assignments, prior authorizations, when needed, and payment promises

16  were confirmed and acknowledged by Defendants.

17  236.   In communication with Plaintiffs, including telephone calls requesting

18  verification of benefits and preauthorization, Defendants, and each of them,

19  represented to Plaintiffs that the services provided to Defendants' insureds were

20  covered and that the OON benefits paid by Defendants to OONPs, like Plaintiffs, for

21  all levels of SUD treatment and laboratory services, is a percentage of its covered

22  charges (between 50% to 80% of covered charges, with the majority of claims

23  promised by Defendants to be paid at 70% of covered charges) until the insured's

24  AOOPM is met at which time Defendants pay 100%.

25  237.   Specifically, for each of the 15 patients whose treatments and services

26  are at issue, Plaintiffs contacted Defendants by phone and/or in writing before

27  beginning such treatments and services.  Defendants confirmed with Plaintiffs that

28  the patients, and each of them, were validly covered by plans issued, managed

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 97 -
THIRD AMENDED CONSOLIDATED COMPLAINT

and/or administered by Defendants, and Plaintiffs advised Defendants of the planned OON SUD treatments and services for Defendants' insureds, including the specific types of treatment and services to be provided, the treatment duration, billing codes and rates for the same.  Defendants' represented, warranted and promised to Plaintiffs that the OON benefits paid by Defendants to OONPs, like Plaintiffs, for all levels of SUD treatment and laboratory services, is a percentage of the covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.  Thereafter, Plaintiffs treated and provided the subject treatment and services to Defendants' insureds/members.

238.   Based upon the language of the health insurance plans issued, managed and/or administered by Defendants, and each of them, and upon obtaining verifications of benefits, prior authorizations and payment promises from Defendants, and valid assignments from the patients, Plaintiffs and their patients insured by Defendants, all 15 of them, reasonably expected that Plaintiffs' claims would be paid promptly and consistent with the law and the terms of the plans and/or the herein payment representations and promises that Defendants, and each of them, made to Plaintiffs.

239.   Notwithstanding the verifications of benefits, prior authorizations, coverage representations by Defendants, payment promises by Defendants, and valid assignments, Plaintiffs' claims for the majority of the SUD treatment and laboratory services provided to Defendants' insureds/members have not been paid properly and require substantial interest payments for violation of the applicable health plans, ERISA and California insurance laws and regulations providing for the prompt payment of claims.

240.   Plaintiffs are entitled to payment for the SUD treatment and services provided to Defendants' insureds/members at the proper reimbursement rates,

THIRD AMENDED CONSOLIDATED COMPLAINT

1   pursuant to the plan documents, valid assignments from their patients and pursuant

2   to Defendants' coverage representations and payment promises to Plaintiffs.

3       241.   While the breaches alleged herein involved health insurance plans

4   issued, managed and/or administered by one or more of the Defendants and

5   Defendants' coverage representations and payment promises to Plaintiffs, each

6   Defendant, upon information and belief, conceived, directed, approved, or aided and

7   abetted the others in this bad faith scheme.

8       242.   In California, a health insurer must provide or arrange for the provision

9   of access to health care services in a timely manner.  Most health insurers, including

10  Defendants, and each of them, seek to satisfy this duty by providing an adequate

11  network of INPs for their insureds to choose from so they may receive the necessary

12  treatment at the lowest expense to the insurer and the insured.

13      243.   A "network gap" or "network insufficiency" exists in a health insurer's

14  network when either the health insurer, or the patient, is unable to secure the

15  services of an INP for necessary treatment.  If a network gap exists, California law

16  requires the insurer to secure the services of an OONP so the insurer can meet its

17  legal and contractual obligations to provide or arrange for the provision of access to

18  health care services in a timely manner.  In addition, emergency services, and

19  sometimes urgently needed services, must be covered by an insurer with an OONP

20  if the insurer has no INP to provide the needed services.

21      244.   California law does not give a health insurer the right or ability to

22  unilaterally set the price it will pay an OONP that provides services to one of the

23  insurer's insureds in order to fill a network gap.

24      245.   Upon information and belief, Defendants had a network gap with

25  respect to SUD treatment providers and laboratories in California, and across the

26  nation, to serve the tremendous number of insured patients in need of such treatment

27  and services, due in large part to the opioid and addiction epidemic in California,

28  and across the nation.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 99 -

THIRD AMENDED CONSOLIDATED COMPLAINT

246.   Upon information and belief, Defendants had a network gap with respect to SUD treatment providers and laboratories required to treat and meet the needs of their insureds/members, which caused some of Defendants' insureds to obtain their needed treatment and services with OONPs, like Plaintiffs.

247.   In the health care industry, a "verification" of an insured's coverage for the contemplated treatment, or an "authorization" for such treatment, is understood by both the insurers and providers (and the law) to be an agreement by the insurers to pay for such treatment.  For INPs, it is an agreement by the insurers to pay those providers based on previously negotiated rates between the insurer and those providers.  For OONPs, it is an agreement by the insurers to pay those providers at their fully billed charges.

248.   Plaintiffs, as OONPs, after obtaining verifications of benefits and prior authorizations from Defendants, provided life-saving and medically necessary SUD treatment and services to Defendants' insureds/members due to a network gap, and therefore, Plaintiffs are entitled to recover payment for their treatment and services at their fully billed charges.

249.   While Plaintiffs have repeatedly demanded payment in full for the treatment and services provided to Defendants' insureds, Defendants, and each of them, have denied, delayed and incorrectly issued payment for Plaintiffs' claims even after requested records were copied, sent and received by Defendants.

250.   Defendants, and each of them, would respond to Plaintiffs' inquiries about the delay or errors in payment with false promises that payment would be made and/or a multitude of excuses.  Regardless of the excuses made by Defendants, and each of them, Plaintiffs did not receive proper claim payments for the covered SUD and services provided to Defendants' insureds/members.

251.   Upon information and belief, Defendants, and each of them, realized an immediate positive financial impact as a result of their misconduct alleged herein, cessation of SUD treatment and laboratory claims payments, and forcing treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    providers, like Plaintiffs, through an expensive, administratively burdensome and

2    indiscriminate audit, and not paying claims that are due and owed.

3        252.   Upon information and belief, Defendants, and each of them, undertook

4    the actions alleged herein with the intent and designed purpose of not paying claims

5    that are due and owed under the law and the plans, and in accordance with

6    Defendants' coverage representations and payment promised to Plaintiffs, as part of

7    a pattern and practice by Defendants, and each of them, that is unlawful, unfair and

8    fraudulent, and thus violates, *inter alia*, California's UCL, state and federal

9    regulations and ERISA, MHPAEA and PPACA.

10       253.   Upon information and belief, Defendants, and each of them, undertook

11   the actions alleged herein, in violation of numerous provisions of California's UIPA,

12   without limitation, numerous subsections of California Insurance Code section

13   790.03, including misrepresentations to patients and providers, failing to

14   acknowledge and act reasonably and promptly in response to communications,

15   failing to adopt and implement reasonable standards for investigations, not

16   attempting in good faith to effectuate prompt, fair and equitable settlement of

17   claims, and compelling providers, like Plaintiffs, to institute litigation to recover

18   amounts due and owed.

19       254.   Upon information and belief, Defendants, and each of them, developed

20   a mechanism through their superior economic might to oppress SUD treatment

21   providers and laboratories, including Plaintiffs, and force Plaintiffs and other

22   treatment providers into a position where they can no longer afford to accept

23   patients insured by Defendants, or with health plans managed and/or administered

24   by Defendants.  Defendants' misconduct as alleged herein has resulted in significant

25   and undue hardship to Plaintiffs (and the patient-insureds) and interference with

26   Plaintiffs' ability to provide life-saving substance use disorder treatment and

27   services to individuals in desperate need of help.  And Defendants, and each of

28   them, are doing this in the middle of an opioid and addiction epidemic!

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

**FIRST CAUSE OF ACTION**

**Claims for Plan Benefits Under ERISA, 29 U.S.C. §1132(a)(1)(B)**

**Against All Defendants**

255.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

256.   Plaintiffs are OON SUD treatment providers and clinical laboratories. Plaintiffs are in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  Plaintiffs provided medically necessary, verified, preauthorized and covered SUD treatment and laboratory services to 1,691 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The treatment and services provided by Plaintiffs include DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, and laboratory services to, among other things, determine, measure, or otherwise describe the presence or absence of various substances in the body.

257.   Defendants' health insurance plans, for each of the 1,691 insureds at issue, provide coverage for OON SUD treatment and laboratory services.  In this regard, the plans, and each of them, provide that OON SUD benefits include the following levels of inpatient and outpatient care: DTX, RTC, PHP, IOP, and OP. The plans also provide that OON covered SUD services include: diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services and crisis intervention.  The plans further provide coverage for OON laboratory benefits, which include the facility charge and the charge for supplies and equipment,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

physician services for pathologists, and presumptive drug tests and definitive drug tests.

258.   Plaintiffs allege this claim for relief in connection with their claims for SUD treatment and laboratory services rendered to the 1,691 insureds at issue with a health benefits plan governed by ERISA.  This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs have standing to pursue these claims as assignees of the insureds' benefits under the ERISA plans.  Defendants' insureds orally assigned their health plan benefits and rights to payment from Defendants on the claims at issue to Plaintiffs and Plaintiffs obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. (*see* ¶¶86-89, 110, 119, 128, 137, 146, 155, 164, 173, 182, 191, 200, 209, *supra*). As the assignees of benefits under the ERISA plans, Plaintiffs are beneficiaries entitled to collect benefits under the terms of the ERISA plans, and claimants for purposes of ERISA.

259.   Defendants' health plans governed by ERISA pay benefits for OON SUD treatment and services, including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, behavioral treatment and therapy, medication management, psychological testing, case management services, crisis intervention, and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying OON benefits at 70% of covered charges (minus any outstanding cost-sharing amounts (*i.e.*, deductibles, coinsurance), which Defendants deduct from payments to providers)) until the insured's AOOPM is met at which time Defendants pay 100%.  Plaintiffs are informed and believe, and based thereon

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

1    allege, that each of the 1,691 insureds at issue with an ERISA plan had already met

2    their AOOPM at the time they first received services from Plaintiffs, or shortly

3    thereafter.  Some of the ERISA plans at issue pay 100% of covered charges (minus

4    any applicable and remaining in-network deductibles, copays or coinsurance) in the

5    event of a "network inadequacy" or "network gap" for the services received.

6    Plaintiffs are informed and believe, and based thereon allege, that at all times

7    relevant herein Defendants had an inadequate network of SUD treatment providers

8    and clinical laboratories.

9         260.   The intended benefits set forth in Defendants' ERISA health plans are

10   the same in all material respects as to the claims at issue for those of Defendants'

11   1,691 insureds with a health benefits plan governed by ERISA, and provide the

12   following material terms with respect to coverage for the SUD treatment and

13   laboratory services at issue herein:

14        a.      In this regard, one such ERISA plan (BCBSNE_0000357-

15   0000436) provides as follows:

16   **Benefit Summary**

17   **Payment for Services**

18

19                             …

20

| OON Deductible, Individual | $1,400 |
|---|---|
| OON Coinsurance | 30% |
| AOOPM, Individual | $4,100 |

23        Once the AOOPM is reached, most Covered Services are

24        payable by the plan at 100% for the rest of the Calendar
          Year.

25

                              …

26

27   **Mental Illness and/or Substance Dependence and Abuse
     Covered Services**

28

                              …

C A L L A H A N  &  B L A I N E
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 104 -

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| OON Inpatient Services | Deductible and Coinsurance |
|---|---|
| OON Outpatient Services<br><br>• Office Services<br><br>• All Other Outpatient Items & Services | Deductible and Coinsurance |

…

| OON Independent Laboratory<br><br>• Diagnostic | 100%, Same as in-network level of benefits |

…

**THE PLAN AND HOW IT WORKS**

…

**BlueCard® Program**

Under the BlueCard® Program, when you receive Covered Services within the geographic area served by a Host Plan, BCBSNE will remain responsible for doing what we agreed to in our agreement with the Group.  However, the Host Plan is responsible for contracting with and generally handling all interactions with its participating providers.

When you receive Covered Services outside BCBSNE's service area and the claim is processed through the BlueCard Program, the amount you pay for Covered Services is calculated based on the lower of:

• The billed charges for your Covered Services, or

• The negotiated price that the Host Blue makes available to BCBSNE.

Often, this "negotiated price" will be a simple discount that reflects an actual price that the Host Blue pays to the provider.  Sometimes, it is an estimated price that takes into account special arrangements with that your health care provider or provider group that may include types of settlements, incentive payments, and/or other credits or charges.  Occasionally, it may be an average price, based on a discount that results in expected average savings for similar types of health care providers after taking into account the same type of transactions as with an estimated price.

- 105 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Estimated pricing and average pricing also take into account adjustments to correct for over-or-underestimation of past pricing of claims, as noted above.  However, such adjustments will not affect the price BCBSNE used for your claim because they will not be applied after a claim has already been paid.

…

**BENEFITS DESCRIPTIONS**

**What's Covered**

The following list includes example of the Services that are covered when medically Necessary care is provided by an Approved Provider.  Additional information on many of these Services is found on the pages following this list:

…

- Outpatient x-ray, radiology, laboratory and pathology charges;

…

- Substance Dependence and Abuse Treatment;

…

**COVERED SERVICES – ADDITIONAL INFORMATION**

…

**Outpatient Hospital or Facility Services**

Benefits are available for Covered Outpatient Services provided by a Hospital, Ambulatory Surgical Facility, Urgent Care Facility or other Outpatient facility.  An observation stay is considered an Outpatient Service.

…

**Mental Illness, Substance Dependence and Abuse Benefits**

Benefits are payable for Covered Hospital and Physician Services, including mental health Services, psychological, or alcoholism and drug counseling Services by and within the scope of practice of:

- a qualified Physician or Licensed Psychologists;

- a Licensed Special Psychologist, Licensed clinical social worker, Licensed professional counselor or Licensed mental health practitioner; or

- auxiliary providers who are supervised, and billed for, by a qualified Physician or Licensed Psychologist or as otherwise permitted by state law.

- 106 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

All licensing or certification shall be by the appropriate state authority.  Appropriate supervision and consultation requirements also shall be provided by state law.

**Inpatient Care**

Benefits for Inpatient admissions must be Certified by BCBSNE.

A person shall be considered to be receiving Inpatient treatment if he or she is confined to a Hospital or a Substance Dependence and Abuse Treatment Center that provides medical management including 24-hour nursing care.  Services provided by a facility that does not meet this criteria are considered part of a Residential Treatment Program.

Facilities must be Licensed by the Department of Health and Human Services, Regulation and Licensure (or equivalent state agency), or accredited by the Joint Commission on Accreditation of Rehabilitation Facilities (CARF) or Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

**Residential Treatment Services**

Benefits are available for Covered Services and room and board provided as part of a Residential Treatment Program, for treatment of Mental Illness and Substance Dependence and Abuse.

The Residential Treatment Program and/or facility must be Licensed, accredited or Certified to provide such Services by the appropriate state agency, or accredited by CARF or JCAHO.

…

**Outpatient Care**

Benefits are available for Outpatient treatment of Mental Illness and Substance Dependence and Abuse.

Outpatient Covered Services include:

- psychological therapy and/or substance dependence and abuse counseling/rehabilitation provided by an Approved Provider;

- office visit or clinic visit, consultation, or emergency room visit;

- an evaluation and assessment;

- medication checks;

- an Outpatient day, or partial hospitalization program for Mental Illness or a Substance Dependence and Abuse treatment program, that offers all-inclusive Services for

- 107 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    each Outpatient treatment day;

2    • laboratory and diagnostic Services; and

3    • psychiatric/psychologicl testing.

4    Day treatment, partial care, and Outpatient programs must be
5    provided in an Hospital or facility which is Licensed by the
     Department of Health and Human Services Regulation and
     Licensure or accredited by the Commission on the Accreditation
6    of Rehabilitation Facilities (CARF).

7                                    …

8    **DEFINITIONS**

9                                    …

10   **Alcoholism or Drug (Substance Abuse) Treatment Center**: A
     facility Licensed by the Department of Health and Human
11   Services Regulation and Licensure, (or equivalent state agency),
     accredited by the Joint Commission on Accreditation of
12   Healthcare Organizations (JCAHO) or the Commission on the
     Accreditation of Rehabilitation Facilities (CARF).  Such facility
13   is not Licensed as a Hospital, but provides Inpatient or
     Outpatient care, treatment, Services, maintenance,
14   accommodation or board in group setting primarily and
     exclusively for individuals having any type of dependence or
15   addiction to the use of alcohol or drugs.

16                                   …

17   **Approved Provider**: A Licensed practitioner or the healing arts
     who provides Covered Services within the scope of his or her
18   License or a Licensed or Certified facility or other health care
     provider.

19
     **Auxiliary Provider**: A Certified social worker, psychiatric
20   registered nursed, Certified alcohol and drug abuse counselor or
     other Approved Provider who is performing Services within his
21   or her scope of practice and who is supervised, and billed for, by
     a qualified Physician or Licensed Psychologist, or as otherwise
22   permitted by state law.  Certified master social workers or
     Certified professional counselors performing mental health
23   Services who are not Licensed Mental Health Practitioners are
     included in this definition.

24                                   …

25   **Essential Health Benefits**:  The ACA identifies ten categories of
26   Covered Services as Essential Health Benefits: ambulatory
     patient services; emergency services; hospitalization; maternity
27   and newborn care; mental health and substance use disorder
     services; laboratory services; preventative and wellness services
28   and chronic disease management; and pediatric services,

                                   - 108 -
                   THIRD AMENDED CONSOLIDATED COMPLAINT

1   including oral and vision care.

2                                    …

3   **Host Blue:** A Blue Cross and/or a Blue Shield plan in another
    Blue Cross and Blue Shield Association Service Area, which
4   administers Claims through the BlueCard Program for Nebraska
    Covered Persons residing or traveling in that Service Area.

5                                    …

6   **Independent Laboratory**: A freestanding facility offering
7   radiology and pathology Services which is not part of a Hospital
    and is Licensed by the proper authority in the state in which it is
8   located.

9                                    …

10  **Outpatient Program**: An organized set of resources and
    Services for a Substance Abusive or mentally ill population,
11  administered by a Certified provider, which is directed toward
    the accomplishment of a designed set of objectives.  Day
12  treatment, partial care and Outpatient Programs which provide
    primary treatment for Mental Illness or Substance Dependence
13  and Abuse must be provided in a facility which is Licensed by
    the Department of Health and Human Services Regulation and
14  Licensure, (or equivalent state agency) or accredited by the Joint
    Commission on Accreditation of Healthcare Organizations
15  (JCAHO) or the Commission on the Accreditation of
    Rehabilitation Facilities (CARF).

16                                   …

17  **Residential Treatment Program**: Services or a program
18  organized and staffed to provide both general and specialized
    non-hospital based interdisciplinary Services 24 hours a day,
19  seven days a week for persons with behavioral health disorders.
    Residential treatment may be provided in freestanding,
20  nonhospital-based facilities or in unites or larger entities, such as
    a wing in a hospital.  Residential Treatment Programs may
21  include nonhospital addiction treatment centers; intermediate
    care facilities; psychiatric treatment centers or other nonmedical
22  settings.

23
          b.     In this regard, one such ERISA plan (ANTHEM031044-031145)
24
    provides as follows:
25
    **Cost of care at a glance**
26

27  | OON Coinsurance | 30% after deductible unless otherwise specified in benefits below |
    |---|---|
28

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

| OON Deductible, Individual | $700 |
| OON AOOPM, Individual | $5,000 |

**Benefit details**

…

| OON Diagnostic x-rays, lab tests (non-routine) | 30% coinsurance after deductible |

…

| OON SUD | |
| • Inpatient institutional and professional services | 30% coinsurance after deductible |
| • Residential treatment center and professional services | 30% coinsurance after deductible |
| • Professional office visit | 30% coinsurance after deductible |

…

| OON, Other Covered Services, Diagnostic x-rays, lab tests (non-routine) | 30% coinsurance after deductible |

…

**CO-PAYMENTS (CO-INSURANCE)**

…

- Your Co-Payment for non-participating providers will be the same as for participating providers for the following services. [] b. An authorized referral from the claims administrator to a non-participating provider.

- 110 -

THIRD AMENDED CONSOLIDATED COMPLAINT

…

- If you receive services from a category of provider defined in this benefit booklet as a participating provider that is not available in the Blue Cross and/or Blue Shield Plan in that service area, your Co-Payment will be the same as for participating providers.

…

## YOUR MEDICAL BENEFITS

## MAXIMUM ALLOWED AMOUNT

…

**Non-Participating Providers and Other Health Care Providers***

Non-participating providers or other health care providers, subject to Blue Cross Blue Shield Association rules governing claims filed by certain ancillary providers.  For covered services you receive from a non-participating provider or other health care provider, the maximum allowed amount will be based on the applicable non-participating provider rate or fee schedule for this plan, an amount negotiated by the claims administrator or a third party vendor which has been agreed to by the non-participating provider, an amount derived from the total charges billed by the non-participating provider, an amount based on information provided by a third party vendor, or an amount based on reimbursement or cost information from the Centers for Medicare and Medicaid Services ("CMS").  When basing the maximum allowed amount upon the level or method of reimbursement used by CMS, the claims administrator will update such information, which is unadjusted for geographic locality, no less than annually.

…

For covered services rendered outside the Anthem Blue Cross service area by non-participating providers, claims may be priced using the local Blue Cross Blue Shield plan's non-participating provider fee schedule/rate or the pricing arrangements required by applicable state or federal law.  In certain situations, the maximum allowed amount for out of area claims may be based on billed charges, the pricing used if the healthcare services had been obtained within the Anthem Blue Cross service area, or a special negotiated price.

…

**Satisfaction of the Out-Of-Pocket Amount**.  If, after you have met any applicable deductible, you pay Co-Payments equal to you Out-Of-Pocket Amount per member during a year, you will no longer be required to make Co-Payments for any additional covered services or supplies during the remainder of that year[.]

…

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# MEDICAL CARE THAT IS COVERED

…

**Diagnostic Services**.  Outpatient diagnostic imaging and laboratory services.

…

**Mental Health Conditions or Substance Abuse**.  Covered services shown below for medically necessary treatment of mental health conditions or substance abuse, or to prevent the deterioration or chronic condition.

1.  Inpatient hospital services and services from a residential treatment center as stated in the "Hospital" provision of this section, for inpatient services and supplies.  Coverage for services that are not considered medically necessary may be covered if approval is obtained.

2.  Partial hospitalization programs, including intensive outpatient programs and visits to a day treatment center. Partial hospitalization programs are covered as stated in the "Hospitals" provision of this section, for outpatient services and supplies.  Coverage for services that are not considered medically necessary may be covered if approval is obtained.

3.  Physician visits during a covered inpatient stay.

4.  Physician visits (including online visits) for outpatient psychotherapy or psychological testing for the treatment of mental health conditions of substance abuse.

…

[]  Those radiology and laboratory services and tests related to an injury or illness will be covered as any other medical service available under the terms and conditions of the provision "Diagnostic Services."

…

# GENERAL PROVISIONS

…

## A.   BlueCard® Program

Under the BlueCard® Program, when you receive covered services within the geographic area served by a Host Blue, the claims administrator will still fulfill the plan's contractual obligations.  But, the Host Blue is responsible for: (a) contracting with its providers; and (b) handling its interactions with those providers.

When you receive covered services outside the Anthem Blue Cross Service Area and the claim is processed through the

- 112 -

BlueCard Program, the amount you pay is calculated based on the lower of:

-       The billed charges for covered services; or

-       The negotiated price that the Host Blue makes available to the claims administrator.

Often, this "negotiated price" will be a simple discount that reflects an actual price that the Host Blue pays to the provider. Sometimes, it is an estimated price that takes into account special arrangements with that provider. Sometimes, such an arrangement may be an average price, based on a discount that results in expected average savings for services provided by similar types of providers. Estimated and average pricing arrangements may also invoke types of settlements, incentive payments and/or other credits or charges.

Estimated pricing and average pricing also take into account adjustments to correct for over-or-underestimation of past pricing of claims, as noted above. However, such adjustments will not affect the price we used for your claim because they will not be applied after a claim has already been paid.

**B.     Negotiated (non-BlueCard Program) Arrangements**

With respect to one or more Host Blues, instead of using the BlueCard Program, Anthem Blue Cross may process your claims for covered services through Negotiated Arrangements for National Accounts.

The amount you pay for covered services under this arrangement will be calculated based on the lower of either billed charges for covered services or the negotiated price (refer to the description of negotiated price under Section A. BlueCard Program) made available to Anthem Blue Cross by the Host Plan.

…

**Medical Necessity**.  The benefits of this plan are provided only for services which the claims administrator determines to be medically necessary.  The services ordered by the attending physician for the direct care and treatment of a covered condition.  They must be standard medical practices where received for the condition being treated and must be legal in the United States.

## DEFINITIONS

**Claims administrator** refers to Anthem Blue Cross Life and Health Insurance Company.  On behalf of Anthem Blue Cross Life and Health Insurance Company, Anthem Blue Cross shall perform all administrative services in connection with the processing of claims under the plan.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7

**Residential treatment center** is an inpatient treatment facility where the patient resides in a modified community environment and follows a comprehensive medical treatment regimen for treatment and rehabilitation of a mental health condition or substance abuse.  The facility must be licensed to provide psychiatric treatment of mental health conditions or substance abuse according to state and local laws and requires a minimum of one physician visit per week in the facility.  The facility must be fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).

8

        c.     In this regard, one such ERISA plan (ANTHEM073121-073194)

9

provides as follows:

10

**I.     PURPOSE**

11
12
13
14

Medical expenses can place sizeable financial burdens on employees and their families, especially in cases of long-term or other catastrophic illness.  The Company therefore offers this group Health Plan to provide financial assistance for most medical expenses these individuals and their families might encounter.

15

…

16

**II.     HELPFUL TERMS**

17

…

18
19
20

**Maximum Allowed Amount –** An amount based on reimbursement or cost information from the Centers for Medicare and Medicaid Services (CMS).  Unusual circumstances and complications are taken into consideration.  The Medical/Surgical Program uses a Maximum Allowed Amount equal to 315% of the Medicare allowed rate.

21

…

22
23
24
25

**Medically Necessary** – Services or supplies that are provided for the diagnosis or treatment of a medical or mental health and chemical dependency: are appropriate for the medical or mental health and chemical dependency condition; are done within the proper setting or manner required for the medical or mental health and chemical dependency condition; and meet generally accepted health care practices.

26

…

27
28

**Out-of-Pocket Maximum** – This is the most each covered individual would pay including deductible and coinsurance in a Plan year.  Once the out-of-pocket maximum has been met, the

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Plan pays 100% for covered health care services and supplies for the remainder of the calendar year.

…

## X.    MEDICAL/SURGICAL PROGRAM

...

### C.    Covered Expenses

Expenses must be medically necessary in order to be covered by the Plan.  They are also limited to Reasonable and Customary charges, negotiated fee schedules, and other Plan limitations.

…

### 9.    Diagnostic Tests

Diagnostic tests must be recommended by a doctor for the diagnosis for an illness or injury.  Covered diagnostic tests include X-rays or tests performed in a doctor's office, laboratory, or at a hospital as an outpatient.

…

### 15.    Mental Health Parity and Substance Abuse Equity

The Plan has been designed to be in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (the MHPAEA) and will provide in-patient and out-patient benefits, including emergency care and prescription drug coverage, for mental health conditions and substance use disorders without quantitative or non-quantitative treatment limitations more restrictive than those applied to equivalent medical/surgical benefits or other conditions covered by the Plan.  To the extent the Plan does not otherwise satisfy the requirements of the MHPAEA, the Plan will be interpreted under this paragraph in the manner which complies with the requirements of the MHPAEA.

Charges for the following expenses are covered by the Plan:

Substance Abuse Disorders

a.    Inpatient institutions and ancillaries and residential treatment centers, including detoxification.

- 115 -

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

b.      Outpatient institutions and outpatient therapy.

c.      Outpatient office visits.

…

**F.      Medical/Surgical Program – Member Coinsurance and Copay Chart**

…

| Expense Type | (After Deductible, Member Pays) OON |
|---|---|
| 3.  Mental/Behavioral Health & Substance Use Disorder | |
| a.  Outpatient Services | 40% |
| c.  Inpatient Services | 40% |
| 6.  Diagnostic Tests | 40% |

…

**XII.   CLASSIC & SAVER HAS OPTIONS**

**A.      How Do the PPO Options Work?**

The Classic Option and the Saver HAS Option (the PPO Options) offer you the freedom to choose the benefit level you will receive each time you access medical care.  The benefit level depends on whether or not medical care is provided by a provider participating in the Anthem BC/BS PPO Network.  The two benefit levels available under the PPO Options are **in-network** benefits and **out-of-network** benefits.

…

**C.      General PPO Coverage**

Fees for services provided by a provider participating in the PPO Network are subject to the Negotiated Fee Schedule of the PPO Network.  The Network Negotiated Fee Schedule is the maximum allowable reimbursement for the services rendered by a provider participating in the PPO Network.  Providers accept the lesser of the charged fees or the Network fee as payment in full for covered services.  Fees for services provided by a provider not participating in the PPO Network are subject to

- 116 -

THIRD AMENDED CONSOLIDATED COMPLAINT

Reasonable and Customary limits regardless of the level of coverage paid under the PPO Option.

…

## XVII.      CLAIMS AND APPEALS

…

### A.    Filing an Initial Claim for Benefits

…

#### 1.    Medical/Surgical Claims and Preventative Services Claims

…

- **Providers who are not participating in the BC/BS Network** and Members submitting a claim directly are to send the claim to:

Anthem BC/BS, PO Box 105187, Atlanta, GA 30348-5187

…

## XX.   ADMINISTRATIVE INFORMATION

…

### Claims Administrators

- **Medical/Surgical Program – Anthem BC/BS PPO Options**

Anthem Insurance Companies, Inc., 220 Virginia Avenue, Indianapolis, IN 46204

…

## APPENDIX A

…

### Health Plan Summary of Provisions and Option Comparison

|  | Classic, OON | Saver HAS, OON |
|---|---|---|
| Deductible, Individual | $1,000 | $2,700 |
| Coinsurance | You pay 40% after deductible is met | You pay 40% after deductible is met |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 117 -

THIRD AMENDED CONSOLIDATED COMPLAINT

| AOOPM, Individual | $6,000 | $10,000 |
|---|---|---|

\* Once one covered family member has reached the individual out-of-pocket maximum, the Plan will pay 100% of covered services for that individual

…

## APPENDIX B – PRE-CERTIFICATION LIST

…

**Out-of Network Referrals:**
Out of Network Services for consideration of payment at in-network benefit level (may be authorized, based on network availability and/or medical necessity.)

**Mental Health/Substance Abuse (MHSA):**

- Acute Inpatient Admissions

…

- Intensive Outpatient Therapy (IOP)

- Partial Hospitalization (PHP)

- Residential Care

- Applied Behavioral Analysis

261.    Defendants, and each of them, insure, sponsor, fund, serve as the designated claims administrator, serve as the designated plan administrator and/or serve as the named plan administrator's designee for the various ERISA health plans at issue.

262.    The ERISA health plans at issue expressly state that Anthem acts as plan fiduciary and administrator, with discretionary authority and discretionary control respecting management of the plan benefits, sole discretionary authority and responsibility to interpret and construe the provisions of the plans and to determine all factual and legal questions under the plans, and the right to delegate such discretionary authority.

263.    With respect to a percentage of the ERISA claims at issue, Anthem

- 118 -

THIRD AMENDED CONSOLIDATED COMPLAINT

delegated to MultiPlan its discretionary authority to determine the amount of benefits owed for medically necessary covered SUD treatment and services, pursuant to a service agreement that incentivized MultiPlan to reduce the amount of benefits paid to Plaintiffs, using MultiPlan's pricing database of healthcare claims data that is wholly unrepresentative of amounts actually charged by or paid to similar providers in Plaintiffs' same specialties, in the same surrounding area, generating unreasonably low payment amounts relative to the reimbursement amounts that would have been generated if Anthem and MultiPlan instead had relied on the reimbursement methodologies set forth in the ERISA plans.

264. Once MultiPlan's database and pricing tool generated a rate with respect to a particular ERISA claim at issue, MultiPlan returned the rate information to Anthem, who then issued the under-payment of benefits to Plaintiffs.

265. After Anthem under-reimbursed Plaintiffs' claims that were priced by MultiPlan, Plaintiffs received explanations of benefits ("EOB") from Anthem that are misleading because the EOBs do not explain that Anthem's reimbursements had been based on a methodology inconsistent with the ERISA plans' requirements, and omitted information from these EOBs about the reimbursement methodology it used. But what the EOBs did make clear was MultiPlan's role as a plan fiduciary in determining the amount of benefits Anthem would pay under the ERISA plans.

266. The various ERISA health plans at issue fall into two categories – fully-funded and self-funded – but are administered the same.

267. With respect to each ERISA plan at issue in this litigation that is a fully-funded plan, Defendants, and each of them are responsible for both administering and paying the claims from their own bank accounts, and are the plan administrators and ERISA fiduciaries for these plans.

268. With respect to each ERISA plan at issue in this litigation that is a self-funded plan, Defendants, and each of them, administer these plans pursuant to an administrative service agreement, by which the self-funded ERISA plan sponsors

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

delegated to Defendants, and each of them, the authority and responsibility for all administrative responsibilities, including *inter alia,* providing plan members with plan documents, interpreting and applying the plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment from their own bank accounts in the form of claim reimbursements, and as such are the plan administrators and ERISA fiduciaries for these plans.

269.   With respect to each ERISA plan at issue in this litigation that is a self-funded plan, but which does not specifically designate a plan administrator, Defendants, and each of them, functioned as the *de facto* plan administrators and were specifically designated by the ERISA plan sponsors as the claims administrator, with the same fiduciary duties as expressly designated plan administrators, and as such are the plan administrators and ERISA fiduciaries for these plans.

270.   With respect to each ERISA plan at issue in this litigation that is a self-funded plan, Defendants, and each of them, make all benefit determinations and authorize benefit checks to be issued out of their own bank accounts.  Periodically, Defendants, and each of them, will notify the ERISA self-funded plan sponsors of the need to replenish their accounts so that benefits can be paid.  Defendants, and each of them, control these accounts and are fully responsible for processing the insurance claims and making the determination whether to issue a benefits payment check from these accounts.

271.   As alleged herein, Defendants, and each of them, acted as agents for each other with regard to processing the claims under the ERISA plans at issue. With respect to the ERISA plans, whether fully-funded or self-funded, Defendants, and each of them, are the proper parties for Plaintiffs to sue because Defendants, and each of them, not the underlying plan sponsor or employer, made and continue to make all the relevant decisions whether to honor or deny claims under the ERISA

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    plans, and exercised and continue to exercise the authority to issue benefit payment

2    checks under the ERISA plans form their own bank accounts.

3        272.   After providing the covered SUD treatment and services to the 1,691

4    insureds at issue with ERISA plans, Plaintiffs submitted their claims to Defendants

5    for payment in accordance with the procedures for receiving benefits under the

6    terms of the ERISA plans, with the claim forms notifying Defendants that Plaintiffs

7    were submitting the claims as the insureds' assignee.  Defendants were obligated –

8    under the law and the ERISA plans – to pay Plaintiffs the applicable plan percentage

9    of their covered charges (between 50% to 80% of covered charges, with the majority

10   of plans paying OON benefits at 70% of covered charges (minus any outstanding

11   insured cost-sharing amounts)) until the insured's AOOPM is met at which time

12   Defendants pay 100%.

13       273.   Instead of paying Plaintiffs per the ERISA plan documents and the law,

14   Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and

15   systematic polices, practices and decisions – with an emphasis on profits over

16   patients – and paid Plaintiffs, as a group, an average of 17.59% of their covered

17   charges.  This includes, but is not limited to, Defendants' low payments based on

18   inapplicable Medicare rates, down coding, defective databases of purported usual

19   and customary rates for SUD treatment, and bundled per diem rates.  It also includes

20   Defendants' denial of claims based on overly restrictive level of care guidelines and

21   qualitative and quantitative restrictions on access to coverage and benefits for

22   individuals in SUD treatment and services, including, but not limited to,

23   Defendants' flawed criteria for coverage determinations which treat mental health

24   and SUDs as an acute and not chronic condition.  Plaintiffs are informed and

25   believe, and based thereon allege, that Defendants' misconduct as alleged herein

26   was and is motivated by profits, including, but not limited to, additional money

27   Anthem makes on the backend via its administrative services only agreements with

28   the plans, the Host Plan's (in this case BCC) agreements and financial arrangements

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

with the out-of-state plans, and MultiPlan's bonus program for employees who save its client payors, including Anthem, money on claim payments, including the claims at issue here.  Plaintiffs are informed and believe, and based thereon allege, that Anthem and MultiPlan split the profits made on underpaying the claims at issue herein.  These financial motivations benefited Defendants, and each of them, and passed the costs of SUD treatment and services on to the insureds and the providers who treated them, like Plaintiffs.  Plaintiffs are also informed and believe, and based thereon allege, that these financial motivations for Defendants created a situation where at times Defendants made as much or even more money on the claims at issue than did Plaintiffs.

274.   It was only after Plaintiffs rendered the treatment and services at issue that Defendants refused to properly compensate Plaintiffs for the covered treatment and services rendered to Defendants' insureds.

275.   Defendants did not inform or advise Plaintiffs (during the claim submission and payment process or the post-claims process, or at any time prior to this action) about any anti-assignment provisions in the ERISA plans at issue, and Defendants did not deny Plaintiffs' claims or deny payment to Plaintiffs on the grounds of any anti-assignment provisions in the ERISA plans.  As a result and by operation of law and principles of equity, Defendants have waived and are estopped from asserting any such anti-assignment provisions in any of the ERISA plans at issue in this action (*see* fn. 16, *supra*).  Likewise, Defendants did not provide Plaintiffs (during the claim submission and payment process or post-claims process, or at any time prior to this action) with the ERISA plan documents, and Defendants, and each of them, made benefit determinations that were not based on the individual plan terms.  Similarly, Defendants did not inform or provide Plaintiffs with notice (during the claim submission and payment process or post-claims process, or at any time prior to this action) of any mandatory appeal obligations in the ERISA plans at issue or any requirement in the plans to exhaust the appeals process to avoid losing

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

the right to litigate.  As a result and by operation of law and principles of equity, Defendants failure to properly notify Plaintiffs of the need to exhaust administrative remedies to avoid losing the right to litigate is sufficient to obviate any exhaustion requirement in the health plans at issue (*see* fn. 17, *supra*).

276.    During the claim submission and payment process, Defendants put Plaintiffs on various pre-payment review and program integrity audits, and through their various departments, Defendants repeatedly requested the same documents and information from Plaintiffs, over and over again.  This was all an attempt by Defendants, and each of them, to avoid processing and paying the claims.  Plaintiffs complied with Defendants' repetitive requests and despite being promised payment pursuant to, *inter alia*, the ERISA plans and/or repricing agreements, Defendants refused to properly reimburse Plaintiffs for the covered treatment and services provided to Defendants' insureds.  Defendants likewise failed and refused to provide Plaintiffs and the insureds with adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims, and failed and refused to provide Plaintiffs and the insureds with a reasonable opportunity to engage in a meaningful claims process and procedure which was full and fair.  Defendants' audits, bogus TIN flags and pending of claims, inadequate notices and explanations, denial of full and fair claims processes and procedures, repetitive document and information requests and promises of payment were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to unlawfully delay and deny Plaintiffs (and hundreds of other SUD treatment providers and clinical laboratories) payment in accordance with the law and the ERISA plans.

277.    Plaintiffs have made all reasonable efforts to have Defendants adjudicate their claims, and have provided Defendants with thousands of pages of treatment records, none of which Defendants even consider for determining coverage.  Plaintiffs have exhausted or by law are deemed to have exhausted their administrative remedies under the ERISA plans at issue, and moreover, Defendants'

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   herein explained pattern of misconduct and misbehavior rendered all potential and

2   further administrative remedies futile.

3       278.   Not all of the ERISA plans at issue require the exhaustion of

4   administrative remedies as a condition precedent to taking legal action, and those

5   having such conditions couch the material terms of the appeal and grievance process

6   as an optional procedure, stating that if a claim for plan benefits is denied, the

7   insured member or an authorized representative, such as the provider, *may*

8   participate in Defendants' appeals and grievance process.

9       279.   OON providers who have been assigned their patients' rights to

10  reimbursement, such as Plaintiffs, have standing to pursue ERISA claims against

11  Defendants, and their assigned right to reimbursement includes the ability to seek

12  judicial enforcement of that right in this action.

13      280.   ERISA notice and appeal rights belong to the party with the legal right

14  to payment,[30] and the Department of Labor ("DOL") maintains that providers who

15  have been assigned their patients' rights to reimbursement, such as Plaintiffs, are

16  entitled to insist upon their assigned right to challenge the allegedly wrongful

17  decision to deny benefits through a process that complies with the ERISA Claims

18  Regulation.[31]

19      281.   Defendants failed to provide Plaintiffs with proper notice of their

20  appeal rights pursuant to ERISA Claims Regulation (29 C.F.R. § 2560.503-1),

21  which is consistent with Defendants' custom and practice of only giving notice of

22

---

23  [30] *See Premier Health Ctr. v. UnitedHealth Grp.*, 292 F.R.D. 204, 221 (D.N.J. 2013) (Out of
    network providers who have been assigned their patients' rights to reimbursement have standing
24  to pursue ERISA claims against the plan sponsor/administrator, and that "assignment of the right
    to reimbursement 'must logically include the ability to seek judicial enforcement of that right.'"
25  *Id.*, citation omitted.

26  [31] *See Tri3 Enters., LLC v. Aetna, Inc.,* 2012 WL 6113799, at *29 (3d Cir. Nov. 30, 2012) (DOL
    Amicus Brief) (Out of network providers who have been assigned their patients' rights to
27  reimbursement are "entitled to insist upon [their] assigned right to challenge the allegedly
    wrongful decision to deny benefits through a process that complies with the [ERISA] claims
28  regulation."

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

ERISA appeal rights—if they give notice at all—to parties least likely to exercise

them (patients who have assigned their right to payment to providers), and deny

those rights to parties most likely to exercise them (providers who have been

assigned the right to payment). Defendants' failure to provide Plaintiffs with proper

notice of their appeal rights pursuant to ERISA Claims Regulation is a systematic

violation of ERISA, deeming the administrative remedies exhausted,[32] constituting a

waiver of any condition requiring exhaustion of administrative remedies under the

ERISA plans at issue, and estopping Defendants from asserting administrative

exhaustion as a defense.

282.    Even when these similarly situated Plaintiffs sought to enforce their

assigned appeal rights in response to Defendants' wrongful denials and

underpayment of plan benefits for similarly situated patients, by giving notice in

accordance with the ERISA plans offering an appeal and grievance procedure, and

supplying the requisite information and documents, Plaintiffs exhausted the

administrative remedies to no avail. Defendants repeatedly requested more and

more records (even duplicate requests), conducted sham peer to peer reviews and

ultimately upheld their denials and underpayments, representing to Plaintiffs that

Defendants' decision was final and no further steps needed to be taken, and not

advising Plaintiffs of any further conditions on Plaintiffs' rights to litigate the

ERISA claims at issue. All of these facts and circumstances, along with

Defendants' insistence that it owes not a penny of the millions of dollars in ERISA

benefits at issue in this action, render it reasonable for Plaintiffs to conclude that the

---

[32] 29 C.F.R. § 2560.503–1(*l* ); *see Barboza v. California Ass'n of Professional Firefighters* (9th Cir. 2011) 651 F.3d 1073, 1076 ("when an employee benefits plan fails to establish or follow 'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted"); *see also Downey Surgical Clinic, Inc. v. Ingenix, Inc.* (C.D. Cal., May 30, 2014, No. CV 09-5457 PSG (CTX)) 2014 WL 12558848, at *5– 6.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

pursuit of an administrative appeal to Defendants would be futile.[33]

283.   Defendants, and each of them, have failed to process Plaintiffs' claims in a manner consistent with ERISA, by, among other acts and omissions:

   a.   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. §2560.503-1(f)(2)(iii)(B);

   b.   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the insureds, in violation of 29 U.S.C. §1133(1);

   c.   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the insureds, in violation of 29 U.S.C. § 1133(1);

   d.   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the insureds, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. §1133(1);

   e.   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the insureds, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[33] *See In re WellPoint, Inc. Out-of-Network UCR Rates Litigation,* 865 F.Supp.2d 1002, 1041–1042 (C.D. Cal. 2011) (providers demonstrated futility by pointing to similarly situated plaintiffs who exhausted administrative remedies to no avail; *see also Perkins v. Prudential Insurance Company of America,* 417 F.Supp.2d 1149, 1153 (C.D. Cal. 2006) (plaintiff's showing of futility sufficient where the long history of claims and lawsuits between the plaintiff and the insurer showed that the insurer "consistently refused to pay [the plaintiff's] benefits until sued."); *see also Melczer v. Unum Life Ins. Co. Am.,* 2009 WL 792502 (D. Ariz. March 24, 2009) (futility adequately shown where there was evidence regarding the lack of reviews done by the insurer in initial determination of claim such that appeal would be futile).

f.   Failing to afford Plaintiffs and/or their patient insureds with a
reasonable opportunity to engage in an appeals process, in violation
of 29 U.S.C. §1133(2);

g.   Failing to afford Plaintiffs and/or their patient insureds with a
reasonable opportunity to engage in meaningful appeal process
which was full and fair, in violation of 29 U.S.C. §1133(2);

h.   Failing and refusing to provide Plaintiffs and/or their patient
insureds with information pertaining to their rights to appeal,
including not limited to those deadlines for filing appeals and/or the
requirements that an appeal be filed, in violation of 29 U.S.C.
§1133(1);

i.   Violating the minimum requirements for employee benefit plans
pertaining to claims and benefits by participants and beneficiaries,
in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

j.   Failing and refusing to establish and maintain reasonable claims
procedures in violation of 29 C.F.R. § 2560.503-1(b);

k.   Establishing, maintaining and enforcing claims procedures which
unduly inhibit the initiation and processing of claims for benefits,
in violation of 29 C.F.R. §2560.503.1(b)(3);

l.   Precluding and prohibiting Plaintiffs from acting as authorized
representatives of the patient insureds in pursuing a benefit claim or
appeal of an adverse benefit determination, in violation of 29
C.F.R. §2560.503-1(b)(4);

m.   Failing and refusing to design, administer and enforce their
processes, procedures and claims administration to ensure that their
governing plan documents and provisions have been applied
consistently with respect to similarly situated participants,
beneficiaries and claimants, in violation of 29 C.F.R. §2560.503-

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1      1(b)(5);

2      n.   Failing and refusing to pay benefits for services rendered by

3           Plaintiffs which Defendants authorized, as well as rescinding the

4           same, in violation of California Health & Safety Code §1371.8 and

5           California Insurance Code §796.04;

6      o.   Failing to offer coverage for mental health and substance use

7           disorder treatment and laboratory services in parity with the

8           medical and surgical benefits afforded by the same plans, as

9           required by 26 U.S.C. §9812(3), as well as other mandates set forth

10          at 26 U.S.C. §9812, *et seq.*; and

11     p.   Failing and refusing to pay Plaintiffs for the substance use disorder

12          treatments and laboratory services provided to the patient insureds

13          in violation of 26 U.S.C. § 9812(3).

14     284.   Defendants' failure and refusal to provide coverage, reimbursement,

15   payment and/or benefits for the SUD treatment and laboratory services that

16   Plaintiffs rendered to Defendants' insureds/members, and Defendants' denial of

17   health insurance benefits coverage, constitute breaches of the ERISA plans at issue.

18   Plaintiffs have performed all, or substantially all, of the significant things required

19   of them under the ERISA plans, except as excused by Defendants' material

20   breaches.  Plaintiffs seek reimbursement and compensation for any and all payments

21   which they would have received and to which they are entitled to receive as a result

22   of Defendants' breaches of the ERISA plans and failure to pay benefits and cover

23   the treatments and services rendered by Plaintiffs to Defendants' insureds/members,

24   in amounts according to proof at trial.

25     285.   Defendants have arbitrarily and capriciously breached the obligations

26   set forth in the ERISA plans at issue, and as regulated by ERISA and implementing

27   regulations incorporated into the plans, and Defendants have arbitrarily and

28   capriciously breached their obligations under the ERISA plans to provide Plaintiffs

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

and the patient insureds with health benefits.

286.    To remedy Defendants' wrongful conduct, Plaintiffs seek an order awarding them an amount equal to the amount of ERISA benefits Plaintiffs should have received and to which the patient insureds would have been entitled had Defendants paid the proper amounts, in amounts according to proof at trial, as direct and proximate result of the denial of plan benefits and other wrongful conduct by Defendants, and each of them, as alleged herein.

287.    Plaintiffs are entitled to an award of reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of Defendants, and each of them, Plaintiffs have retained the services of legal counsel and have necessarily incurred attorney's fees and costs in prosecuting this litigation. Furthermore, Plaintiffs anticipate incurring additional attorney's fees and costs hereafter pursing this litigation and recovery of amounts due and owed by Defendants.

## SECOND CAUSE OF ACTION

### Breach of Written Contract

### (Non-ERISA Plans)

### Against All Defendants

288.    Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

289.    Plaintiffs allege this cause of action in connection with their claims for substance use disorder treatment and laboratory services rendered to the 1,691 insureds with health insurance plans not governed by ERISA.  Plaintiffs bring this cause of action as assignees and third party beneficiaries of the non-ERISA health insurance plans at issue.

290.    Plaintiffs are OON SUD treatment providers and clinical laboratories. Plaintiffs are in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

contributing members of society.  Plaintiffs provided medically necessary, verified, preauthorized and covered substance use disorder treatment and laboratory services to 1,691 individuals with health insurance that was sold, insured, managed and/or administered by Defendants.  The treatment and services provided by Plaintiffs include DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, medication management, psychological testing, case management services, and laboratory services to, among other things, determine, measure, or otherwise describe the presence or absence of various substances in the body.

291.   Defendants' health insurance plans, for each of the 1,691 insureds at issue, provide coverage for OON SUD treatment and laboratory services.  In this regard, the plans, and each of them, provide that OON SUD benefits include the following levels of care: DTX, RTC, PHP, IOP, and OP.  The plans also provide that OON SUD services include: diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, medication management, psychological testing, case management services.  The plans further provide coverage for OON laboratory benefits, which include the facility charge and the charge for supplies and equipment, physician services for pathologists, and presumptive drug tests and definitive drug tests.

292.   Defendants' health insurance plans, for each of the 1,691 insureds at issue, pay benefits for OON SUD treatment and laboratory services, including, but not limited to, DTX, RTC, PHP, IOP, OP, diagnostic tests and evaluations, assessment and treatment planning, treatment and procedures, counseling, individual, family and group therapy, medication management, psychological testing, case management services and laboratory services, at varying percentages of covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding cost-sharing amounts (i.e., deductibles, coinsurance), which Defendants

THIRD AMENDED CONSOLIDATED COMPLAINT

deduct from payments to Plaintiffs)) until the insured's AOOPM is met at which time Defendants pay 100%. Plaintiffs are informed and believe, and based thereon allege, that each of the 1,691 insureds had already met their AOOPM at the time they first received treatment or services from Plaintiffs, or shortly thereafter. The plans also pay 100% of covered charges (minus any applicable and remaining in-network deductibles, copays or coinsurance) in the event of a "network inadequacy" or "network gap" for the services received. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories. The exclusions, conditions and limitations in the plans do not apply to the treatments and services provided by Plaintiffs.

293.   Plaintiffs obtained oral and written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs their health plan benefits and rights to payment from Defendants on the claims at issue to Plaintiffs and Plaintiffs obtained written assignments of benefits from each of the insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiffs not only rights to payment from Defendants on the claims at issue but to assert all rights and causes of action against Defendants in connection with payment on the claims. (*see* ¶¶86-89, 110, 119, 128, 137, 146, 155, 164, 173, 182, 191, 200, 209, *supra*).

294.   Plaintiffs were unaware of any anti-assignment provisions in the health plans at issue, and Defendants, and each of them, and specifically BCBS Louisiana, never informed or advised Plaintiffs during the claim submission and payment process or post-claims process, and never denied Plaintiffs payment on the grounds of any anti-assignment provisions in the health plans at issue, despite Defendants' and each of them having knowledge of Plaintiffs' assignments as indicated on the industry standard claim forms Plaintiffs submitted to Defendants. As a result and by operation of law and principles of equity, Defendants have waived and are estopped

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  from asserting any such anti-assignment provisions in any of the health plans at

2  issue in this action.

3      295.   Plaintiffs are also express and intended third-party beneficiaries of the

4  health insurance plans between Defendants and the 1,691 insured patients treated by

5  Plaintiffs, and are entitled to recover on that basis.

6      296.   Defendants and their insureds intended that Plaintiffs directly benefit

7  from the health insurance plans and the plans indicate the intent to benefit Plaintiffs

8  by providing for payment to Plaintiffs for the treatment and services provided to

9  Defendants' insureds.

10     297.   The health insurance plans issued, managed and/or administered by

11  Defendants provide their insureds with the option of seeking treatment with

12  Defendants' INPs or choosing their own OONPs, like Plaintiffs.  The plans also

13  provide for the payment of benefits for OONPs, like Plaintiffs, who provide

14  medically necessary services to the insureds.  Although the plans issued, managed

15  and/or administered by Defendants may incentivize their insureds to seek treatment

16  with INPs, the plans explicitly express Defendants' intent to benefit OONPs, like

17  Plaintiffs.

18     298.   The health insurance plans issued, managed and/or administered by

19  Defendants further express Defendants' intent to benefit OONPs, like Plaintiffs,

20  insofar as the plans expressly incorporate by reference regulations requiring

21  insurers, like Defendants, to provide an adequate network of INPs and, in the event

22  of a "network inadequacy" or "network gap," requiring insurers, like Defendants, to

23  pay for the required care with available and accessible OONPs, like Plaintiffs, with

24  the insureds responsible for paying only cost-sharing in an amount equal to the cost-

25  sharing they would have paid for provision of that or a similar service by an INP.

26  Defendants' intent to benefit OONPs, like Plaintiffs, by the terms of the health

27  insurance plans at issue is further evidenced by the conduct of the Defendants, who

28  issued payments to OONPs, including Plaintiffs, for the medically necessary

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 132 -

THIRD AMENDED CONSOLIDATED COMPLAINT

treatment and services rendered to their insureds, in accordance with the terms of the plans, until in or around 2015, when the Defendants, as part of their scheme to decrease their costs on mental health and substance use disorder treatment claims, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, OONPs providing substance use disorder treatment and related services, including Plaintiffs. Defendants confirmed, represented, promised and warranted to Plaintiffs through the required verification of benefits and the preauthorization process, that each of the insureds and their respective out-of-network treatments and services were covered by health insurance plans issued, managed and/or administered by Defendants, the premiums were paid and the plans were effective, and that Plaintiffs would be paid for treating Defendants' insureds.  At all times relevant herein, Defendants knew that Plaintiffs were treating and providing services, and would continue to treat and provide services, to their insureds, and Defendants were, at all times, advised and fully aware of Plaintiffs' charges for the treatment and services rendered, at each level of care.

299.   The intended benefits set forth in Defendants' non-ERISA, standard form individual and family health plans are the same in all material respects as to the claims at issue for those of Defendants' 1,691 insureds with an individual and family health benefits plan not governed by ERISA, and provide the following material terms with respect to coverage for the SUD treatment and laboratory services at issue herein, as reflected in one such non-ERISA plan (ANTHEM_027854-027908, as amended by endorsements) that provides as follows:

### Mental Health Parity and Addiction Equity Act

The Mental Health Parity and Addiction Equity Act provides for parity in the application of aggregate treatment limitations (day or visit limits) on mental health and substance abuse benefits with day or visit limits on medical and surgical benefits. In general, group health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

plans offering mental health and substance abuse benefits cannot set day/visit limits on mental health or substance abuse benefits that are lower than any such day or visit limits for medical and surgical benefits. …

The Mental Health Parity and Addiction Equity Act also provides for parity in the application of nonquantitative treatment limitations (NQTL). An example of a nonquantitative treatment limitation is a precertification requirement.

Also, the Plan may not impose Deductibles, Copayment, Coinsurance, and out of pocket expenses on mental health and substance abuse benefits that are more restrictive than Deductibles, Copayment, Coinsurance and out of pocket expenses applicable to other medical and surgical benefits.

PART II MAXIMUM COMPREHENSIVE BENEFITS

**Deductible**

Before we pay for any medical benefits, You must satisfy your $1,500 Yearly Deductible per Member. …

**Copayments/Coinsurance**

You will be required to pay a Copayment/Coinsurance for services received while You are covered under this Plan. Your Copayment/Coinsurance may be a fixed dollar amount per day, per visit or it may be a percentage of eligible charges. It could also be a combination of a fixed dollar amount and a percentage of eligible charges. …

**Yearly Maximum Copayment/Coinsurance Limit**

The Yearly Maximum Copayment/Coinsurance Limit for **Participating/Preferred and/or Non-Participating Providers,** also referred to as the out of pocket maximum, is **$4,000** per Member per Year. …

**MAXIMUM ALLOWED AMOUNT**

**General**

This provision describes how we determine the amount of reimbursement for Covered Services.

Reimbursement for services rendered by Participating and Non-Participating Providers is based on Your Plan's Maximum Allowed Amount for the Covered Service that You receive. Please also see the "Inter-Plan Programs" provision for additional information.

The Maximum Allowed Amount for this Plan is the maximum amount of reimbursement we will allow for

THIRD AMENDED CONSOLIDATED COMPLAINT

services and supplies:

- that meet our definition of Covered Services, to the extent such services and supplies are covered under Your Plan and are not excluded;

- that are Medically Necessary; and

- that are provided in accordance with all applicable Precertification, utilization management or other requirements set forth in Your Plan.

You will be required to pay a portion of the Maximum Allowed Amount to the extent You have not met Your Deductible or have a Copayment or Coinsurance. In addition, when You receive Covered Services from a Non-Participating Provider, You may be responsible for paying any difference between the Maximum Allowed Amount and the Provider's actual charges and this amount can be significant. …

When You receive Covered Services from a Provider, we will, to the extent applicable, apply claim processing rules to the claim submitted for those Covered Services. These rules evaluate the claim information and, among other things, determine the accuracy and appropriateness of the procedure and diagnosis codes included in the claim. Applying these rules may affect our determination of the Maximum Allowed Amount. …

**Provider Network Status**

The Maximum Allowed Amount may vary depending upon whether the Provider is a Participating Provider or a Non-Participating Provider.

A Participating Provider is a Provider who is in the managed network for this specific product or in other closely managed specialty network, or who has a participation contract with us. For Covered Services performed by a Participating Provider, the Maximum Allowed Amount for this Plan is the rate the Provider has agreed with us to accept as reimbursement for the Covered Services. …

Providers who have not signed any contract with us and are not in any of our networks are Non-Participating Providers, subject to Blue Cross Blue Shield Association rules governing claims filed by certain ancillary Providers.

For Covered Services You receive from a Non-Participating Provider, the Maximum Allowed Amount for Your Plan will be one of the following:

1. An amount based on our Non-Participating Provider

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

fee schedule/rate, which we have established, and which we may modify from time to time, after considering one (1) or more of the following: reimbursement amounts accepted by like/similar Providers contracted with us, reimbursement amounts paid by the Centers for Medicare and Medicaid Services for the same services or supplies, and other industry cost, reimbursement and utilization data; or

2.  An amount based on reimbursement or cost information from the Centers for Medicare and Medicaid Services ("CMS"). When basing the Maximum Allowed amount upon the level or method of reimbursement used by CMS, Anthem will update such information, which is unadjusted for geographic locality, no less than annually; or

3.  An amount based on information provided by a third party vendor, which may reflect one (1) or more of the following factors: 1) the complexity or severity of treatment; 2) level of skill and experience required for the treatment; or 3) comparable Providers' fees and costs to deliver care, or

4.  An amount negotiated by Us or a third party vendor which has been agreed to by the Provider. This may include rates for services coordinated through case management, or

5.  An amount based on or derived from the total charges billed by the Non-Participating Provider. ...

**Authorized Services**

In some circumstances, such as where there is no Participating Provider available for the Covered Service, we will authorize the Participating cost share amounts (Deductible, Copayment, and/or Coinsurance) to apply to a claim for a Covered Service You receive from a Non-Participating Provider. …

**INTER-PLAN ARRANGEMENTS**

**Out-of-Area Services**

**Overview**

We have a variety of relationships with other Blue Cross and/or Blue Shield Licensees. Generally, these relationships are called "Inter-Plan Arrangements." These Inter-Plan Arrangements work based on rules and procedures issued by the Blue Cross Blue Shield Association ("Association"). Whenever You access healthcare services outside the geographic area we serve (the "Anthem Service Area"), the claim for those services

THIRD AMENDED CONSOLIDATED COMPLAINT

may be processed through one of these Inter-Plan Arrangements. The Inter-Plan Arrangements are described below. …

**A.  BlueCard®Program**

Under the BlueCard Program, when You receive Covered Services within the geographic area served by a Host Blue, we will still fulfill our contractual obligations. But, the Host Blue is responsible for: (a) contracting with its Providers; and (b) handling its interactions with those Providers.

When You receive Covered Services outside the Anthem Service Area and the claim is processed through the BlueCard Program, the amount You pay is calculated based on the lower of:

- The billed charges for Covered Services; or

- The Negotiated Price that the Host Blue makes available to us.

**D. Non-ParticipatingProvidersOutside Our Service Area**

    **1. Allowed Amounts and Member liability Calculation**

When Covered Services are provided outside of Anthem's Service Area by Non-Participating Providers, we may determine benefits and make payment based on pricing from either the Host Blue or the pricing arrangements required by applicable state or federal law. ….

    **2. Exceptions**

In certain situations, we may use other pricing methods, such as billed charges the pricing we would use if the healthcare services had been obtained within the Anthem Service Area, or a special Negotiated Price to determine the amount we will pay for services provided by Non-Participating Providers. …

**PART IV COMPREHENSIVE BENEFITS: WHAT IS COVERED BY BLUE CROSS**

…

**Mental Health and Substance Abuse (Chemical Dependency) Services**

Covered Services include the following:

- **Inpatient Care** in a JCAHO-accredited Hospital or any

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Facility that we must cover per State law Inpatient benefits include the following:

…

▪ Detoxification - medical management of withdrawal symptoms, including room and board, Physician services, Drugs, dependency recovery services, education and counseling

▪ Residential treatment which is specialized twenty-four (24) hour treatment in a licensed JCAHO or CARF-accredited Residential Treatment Center. …

▪ Transitional residential recovery services for Substance Abuse (chemical dependency)

▪ **Outpatient Care,** including:

▪ Office Visits, which include:

▪ Individual and group Mental Health evaluation and treatment

▪ Outpatient services to monitor Drug therapy

▪ Methadone maintenance treatment

▪ Individual and group chemical dependency counseling

▪ Medical treatment for withdrawal symptoms …

▪ Other Outpatient Items and Services, including

▪ Partial Hospitalization programs and intensive outpatient programs

▪ Day treatment programs for Substance Abuse

▪ Intensive outpatient programs for Substance Abuse …

300. Another example of Defendants' non-ERISA, standard form individual and family health plans (ANTHEM_003796-003939) provides as follows:

Medical Deductible

Individual Plan [OON]: … $5,000 per Benefit Period

Family Plan [OON]:  … $5,000 per Benefit Period

Out of Pocket Maximum

- 138 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Individual Plan [OON]: … $5,000 per Benefit Period

2  Family Plan [OON]:  … $5,000 per Benefit Period  The

3  Out of Pocket Maximums include all Deductibles
   Coinsurance and Copayments You pay during a Benefit
4  Period for all Essential Health Benefits, medical services,
   child dental and vision services and Prescription Drug
5  services combined. …

6  Once the applicable Out of Pocket Maximum is satisfied
   You will not have to pay any additional Deductibles
7  Copayments or Coinsurance for the rest of the Benefit
   Period. …

8  **HOW YOUR COVERAGE WORKS**

9  …

10 **This is a Preferred Provider Organization PPO Plan**

11
   We provide access to a network of Hospitals and Providers
12 who contract with Anthem to facilitate services to our
   Members and who provide services at pre-negotiated
13 discounted rates. Benefits for In Network Providers are
   based on a Maximum Allowed Amount. In Network
14 Providers have an agreement in effect with Anthem and
   have agreed to accept the Maximum Allowed Amount as
15 payment in full. … Out of Network Providers do not have
   an agreement with Anthem. Your personal financial costs
16 when using Out of Network Providers may be
   considerably higher than when You use In Network
17 Hospitals or In Network Providers. …

18 **Choice of Physicians and Providers**

19 You have the right to choose an In Network Facility, In
   Network Provider, or Out of Network Provider. Choosing
20 an Out of Network Provider may impact Your personal
   financial costs. …

21 **WHAT IS COVERED**

22 …

23
   **Mental Health and Substance Abuse Chemical**
24 **Dependency Services**

25 …

26 Covered Services include the following:

27 **Outpatient Office Visits** which include:

28 • Individual and group Mental Health evaluation and

- 139 -

THIRD AMENDED CONSOLIDATED COMPLAINT

treatment

• Outpatient services to monitor Drug therapy

• Methadone maintenance treatment

• Individual and group chemical dependency counseling

• Medical treatment for withdrawal symptoms

• Behavioral Health Treatment for Pervasive Developmental Disorders or Autism delivered in an office setting

**Other Outpatient Items and Services** including:

• Partial Hospitalization programs and Intensive Outpatient Programs

• Behavioral Health Treatment for Pervasive Developmental Disorder or Autism delivered outside an office setting such as in the home or a school setting

• Outpatient Psychological testing

• Day treatment programs for Substance Abuse

• Intensive Outpatient Programs for Substance Abuse

• Multidisciplinary treatment for an intensive outpatient psychiatric treatment program for Mental Health

• Electroconvulsive therapy

**Inpatient Services** in a JCAHOaccredited Hospital or any Facility that we must cover per State law Inpatient benefits include the following:

• Inpatient psychiatric hospitalization including room and board Drugs and services of Physicians

and other Providers who are licensed health care professionals acting within the scope of their

license

• Psychiatric observation for an acute psychiatric crisis

• Detoxification medical management of withdrawal symptoms including room and board Physician services Drugs dependency recovery services education and counseling

• Residential treatment which is specialized twenty four 24 hour treatment in a licensed JCAHO or CARF accredited

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 140 -

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Residential Treatment Center …

2    • Transitional residential recovery services for Substance
     Abuse chemical dependency …

3

4    • Online Visits when available in Your area Covered
     Services include a medical visit with the doctor using the
     internet by a webcam, chat or voice. …

5

6    **CLAIMS PAYMENTS**

7    …

8    **Maximum Allowed Amount**

     **General**

9

10   This provision describes how we determine the amount of
     reimbursement for Covered Services.

11   Reimbursement for services rendered by In Network and
     Out of Network Providers is based on Your Plan's

12   Maximum Allowed Amount for the Covered Service that
     You receive. Please also see the "Inter-Plan Programs"

13   provision for additional information.

14   The Maximum Allowed Amount for this Plan is the
     maximum amount of reimbursement we will allow for

15   services and supplies

16   • that meet our definition of Covered Services to the extent
     such services and supplies are covered under Your Plan

17   and are not excluded

18   • that are Medically Necessary and

19   • that are provided in accordance with all applicable
     Precertification utilization management or other

20   requirements set forth in Your Plan.

21   You will be required to pay a portion of the Maximum
     Allowed Amount to the extent You have not met Your

22   Deductible or have a Copayment or Coinsurance. When
     You receive Covered Services from an Out of Network

23   Provider, You may be responsible for paying any
     difference between the Maximum Allowed Amount and

24   the Provider's actual charges. …

25   When You receive Covered Services from a Provider, we
     will to the extent applicable apply claim processing rules

26   to the claim submitted for those Covered Services. These
     rules evaluate the claim information and, among other

27   things, determine the accuracy and appropriateness of the
     procedure and diagnosis codes included in the claim.

28   Applying these rules may affect our determination of the

---

- 141 -

THIRD AMENDED CONSOLIDATED COMPLAINT

Maximum Allowed Amount. Our application of these rules does not mean that the Covered Services You received were not Medically Necessary. It means we have determined that the claim was submitted inconsistent with procedure coding rules and or reimbursement policies. …

**Provider Network Status**

The Maximum Allowed Amount may vary depending upon whether the Provider is an In Network Provider or an Out of Network Provider. …

Providers who have not signed any contract with us and are not in any of our networks are Out of Network Providers subject to Blue Cross Blue Shield Association rules governing claims filed by certain ancillary Providers.

For Covered Services You receive in an Emergency or if previously authorized from an Out of Network Provider, the Maximum Allowed Amount for Your Plan will be one of the following as determined by us …:

1. An amount based on our Out of Network Provider fee schedule rate which we have established in our discretion and which we reserve the right to modify from time to time after considering one (1) or more of the following reimbursement amounts accepted by like similar Providers contracted with us reimbursement amounts paid by the Centers for Medicare and Medicaid Services for the same services or supplies and other industry cost reimbursement and utilization data, or

2. An amount based on reimbursement or cost information from the Centers for Medicare and Medicaid Services ("CMS"). When basing the Maximum Allowed amount upon the level or method of reimbursement used by CMS, Anthem will update such information which is unadjusted for geographic locality no less than annually, or

3. An amount based on information provided by a third party vendor which may reflect one (1) or more of the following factors: 1) the complexity or severity of treatment; 2) level of skill and experience required for the treatment; or 3) comparable Providers fees and costs to deliver care, or

4. An amount negotiated by Us or a third party vendor which has been agreed to by the Provider. This may include rates for services coordinated through case management, or

5 An amount based on or derived from the total charges billed by the Out of Network Provider. …

THIRD AMENDED CONSOLIDATED COMPLAINT

For services rendered outside Anthem's Service Area by Out of Network Providers, claims may be priced using the local Blue Cross and or Blue Shield plan's nonparticipating provider fee schedule rate or the pricing arrangements required by applicable State or federal law. In certain situations, the Maximum Allowed Amount for out of area claims may be based on billed charges, the pricing we would use if the healthcare services had been obtained within the Anthem Service Area, or a special negotiated price. …

**Authorized Services**

In some circumstances, such as where there is no In Network Provider available for the Covered Service, we may authorize the In Network Cost Share amounts (Deductible, Copayment, and/or Coinsurance) to apply to a claim for a Covered Service You receive from an Out of Network Provider. …

**Inter-Plan Arrangements**

**Out-of-Area Services**

**Overview**

We have a variety of relationships with other Blue Cross and/or Blue Shield Licensees. … These Inter-Plan Arrangements work based on rules and procedures issued by the Blue Cross Blue Shield Association ("Association"). Whenever You access healthcare services outside the geographic area we serve (the "Anthem Service Area"),m the claim for those services may be processed through one (1) of these Inter-Plan Arrangements. …

When You receive care outside of the Anthem Service Area, You will receive it from one (1) of two (2) kinds of Providers. Most Providers ("participating Providers") contract with the local Blue Cross and or Blue Shield Plan in that geographic area ("Host Blue"). Some Providers ("nonparticipating Providers") don't contract with the Host Blue. We explain below how we pay both kinds of Providers. …

**A. BlueCard® Program**

Under the BlueCard Program, when You receive Covered Services within the geographic  area served by a Host Blue we will still fulfill our contractual obligations. But the Host Blue is responsible for a) contracting with its Providers, and b) handling its interactions with those Providers.

THIRD AMENDED CONSOLIDATED COMPLAINT

1   When You receive Covered Services outside the Anthem
    Service Area and the claim is processed through the
2   BlueCard Program, the amount You pay is calculated
    based on the lower of:
3
    • The billed charges for Covered Services or
4
    • The negotiated price that the Host Blue makes available
5   to us …

6   **D. Non participating Providers Outside our Service
    Area**
7
    **1. Allowed Amounts and Member Liability Calculation**
8
    When Covered Services are provided outside of Anthem's
9   Service Area by non-participating Providers, we may
    determine benefits and make payment based on pricing
10  from either the Host Blue, or the pricing arrangements
    required by applicable State or federal law. In these
11  situations, the amount You pay for such services as
    Deductible, Copayment, or Coinsurance will be based on
12  that allowed amount. Also, You may be responsible for the
    difference between the amount that the non-participating
13  Provider bills and the payment we will make for the
    Covered Services as set forth in this paragraph. …
14
    **2. Exceptions**
15
    In certain situations, we may use other pricing methods,
16  such as billed charges, the pricing we would use if the
    healthcare services had been obtained within the Anthem
17  Service Area, or a special negotiated price to determine the
    amount we will pay for services provided by non-
18  participating Providers. In these situations, You may be
    liable for the difference between the amount that the
19  nonparticipating Provider bills and the payment we make
    for the Covered Services as set forth in this paragraph.
20
21      301.   Defendants also administer a number of self-funded non-ERISA health

22  plans that provide the following material terms with respect to coverage for the SUD

23  treatment and laboratory services at issue herein, and are the same in all material

24  respects as to the claims at issue for those of Defendants' 1,691 insureds, as

25  reflected in one such non-ERISA plan for CalPERS (ANTHEM_028237-028364)

26  that provides as follows:

27          **ANTHEM BLUE CROSS**

28          Anthem Blue Cross works with an extensive network of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

"Preferred Providers" throughout California. These providers participate in a preferred provider organization program (PPO), called the Prudent Buyer Plan. They have agreed to accept payment amounts set by Anthem Blue Cross for their services. …

The Plan's Preferred Provider Network also includes BlueCard Program participating providers for Members who live or are traveling outside California. The Blue Cross and Blue Shield Association, of which Anthem Blue Cross is a member/Independent Licensee, administers a program (called the "BlueCard Program") which allows Members to have the reciprocal use of participating providers contracted under other states' Blue Cross and/or Blue Shield Plans. BlueCard Program participating providers are located throughout the United States.

Preferred Providers (BlueCard Program participating providers) have agreed to accept Allowable Amounts set by their local Blue Cross and/or Blue Shield Plan as payment for covered services. …

**How Do I Use BlueCard?**

…

When you get covered health care services through the BlueCard Program, the amount you pay for covered services is calculated on the lower of the:

• The Blled Charges for your covered services; or

• The negotiated price that the local Blue Cross and/or Blue Shield Plan passes on.

…

**What If I Use Out-of-Network Providers?**

Benefits are paid at the Non-Preferred Provider reimbursement level unless:

…

• There are no Preferred Providers available. …

• You live outside California and are considered an "Out-of-Area" Member.

**DEDUCTIBLES**

**Calendar Year Deductible**

… After the Calendar Year Deductible and any other applicable Deductible are satisfied, payment will be

- 145 -

THIRD AMENDED CONSOLIDATED COMPLAINT

1    provided for covered services. …

2    The Calendar Year Deductible is **$500** for each Plan Member, and **$1,000** per family. It applies toward the Maximum Calendar Year Medical Financial Responsibility. …

3

4

5    After the Calendar Year and any other applicable Deductible has been satisfied, reimbursement for covered services will be provided as described in this section.

6

7    **Physician Services**

8    **1. Non-Emergency Services**

9    **a. Members Who Reside Within Area**

10   …

11   **ii. When Accessing Non-Preferred Providers:**

12   Covered services provided by a Non-Preferred Provider are paid at 60% of the Allowable Amount.

13   Plan Members are responsible for the remaining 40% and all charges in excess of the Allowable Amount, plus all charges for non-covered services. …

14

15   **iii. When Accessing a Non-Preferred Provider Because a Preferred Provider is not Available:**

16

17   Covered services provided by a Non-Preferred Provider (other than for Emergency Care Services) are automatically paid at 60% of the Allowable Amount. However, if you receive covered services from a Non-Preferred Provider because a Preferred Provider is not available within a 50-mile radius of your residence, your claim will automatically be paid at 80% of the Allowable Amount if an Authorized Referral is obtained prior to services being provided. …

18

19

20

21   If an Authorized Referral is NOT obtained prior to services being provided, your claim will automatically be paid at 60% of the Allowable Amount. Upon receipt of your Explanation of Benefits (EOB), contact your Member Services Department to request that your claim be reprocessed at the 80% level. …

22

23

24

25   **b. Members Who Reside Out-of-Area**

26   …

27   Physician office visits, Physician office visits in Retail Health Clinic, Physician Outpatient Hospital visits and Physician Outpatient Urgent Care visits are paid at the

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 146 -

Allowable Amount less the Member's $20 Copayment. …

Other covered services are paid at 80% of the Allowable Amount This includes any separate facility charge by an affiliated Hospital for a covered office visit to a Physician. …

**Services by Other Providers**

… [S]ervices by Other Providers (unless specifically provided otherwise) will be reimbursed at 80% of the lesser of Billed Charges or the amount that Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan determines was being charged by the majority of providers of like-covered services at the time and in the area where services were provided. …

**MEDICAL AND HOSPITAL BENEFITS**

**Substance Use Disorder**

**Inpatient Care**

80% PPO and Out-of-Area

60% Non-PPO

…

**Outpatient Care (Facility-Based)**

80% PPO and Out-of-Area

60% Non-PPO

…

**Outpatient Care (Physician Office Visits, Physician Outpatient Hospital Visits, and Physician Urgent Care Visits)**

$20 Copayment, PPO and Out-of-Area (Office Visit)

80% PPO and Out-of-Area (Other Services)

60% Non-PPO

**DEFINITIONS**

…

Allowable Amount - the Anthem Blue Cross (applying to Members residing in California or Out-of-Area) or the local Blue Cross and/or Blue Shield Plan (applying to Members outside California) allowance or Negotiated

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Amount as defined below for the service(s) rendered, or the provider's Billed Charge, whichever is less. The Allowance is:

1. the amount that Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan has determined is an appropriate payment for the service(s) rendered in the provider's geographic area, based on such factors as the Plan's evaluation of the value of the service(s) relative to the value of other services, market considerations, and provider charge patterns; or

2. such other amount as the Preferred Provider and Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan have agreed will be accepted as payment for the service(s) rendered; or

3. if an amount is not determined as described in either (1) or (2) above, the amount that Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan determines is appropriate considering the particular circumstances and the services rendered.

302.   After providing covered treatment and services to the 1,691 insureds at issue, Plaintiffs submitted their claims to Defendants for payment.  Defendants were obligated – under the law and the plans – to pay Plaintiffs the applicable plan percentage of their covered charges (between 50% to 80% of covered charges, with the majority of plans paying out-of-network benefits at 70% of covered charges (minus any outstanding insured cost-sharing amounts)) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.  Instead of paying Plaintiffs per the plan documents and the law, Defendants engaged in unfair, unreasonable, unlawful, incomplete, fraudulent and systematic polices, practices and decisions – with an emphasis on profits over patients – and paid Plaintiffs, as a group, an average of 18.55% of their covered charges.

303.   Plaintiffs have performed all, or substantially all, of the significant things required of them under the health insurance plans, except as excused by Defendants' material breaches.

304.   To the extent any of Defendants' non-ERISA plans conditioned coverage and the right to payment of plan benefits on the exhaustion of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

administrative remedies, and specifically with respect to two state plans

administered by BCBS North Carolina, Defendants and each of them failed to

provide Plaintiffs with proper notice of their appeal rights or disclose to Plaintiffs

that the plans conditioned coverage on the exhaustion of administrative remedies,

constituting a waiver of any condition requiring exhaustion of administrative

remedies, and estopping Defendants from asserting administrative exhaustion as a

defense.

305.   Even when these similarly situated Plaintiffs sought to enforce their

assigned appeal rights in response to Defendants' wrongful denials and

underpayment of plan benefits for similarly situated patients, by giving notice in

accordance with the plans offering an appeal and grievance procedure, and

supplying the requisite information and documents, Plaintiffs exhausted the

administrative remedies to no avail.  Defendants repeatedly requested more and

more records (even duplicate requests), conducted sham peer to peer reviews and

ultimately upheld their denials and underpayments, representing to Plaintiffs that

Defendants' decision was final and no further steps needed to be taken, and not

advising Plaintiffs of any further conditions on Plaintiffs' rights to litigate the claims

at issue.  All of these facts and circumstances, along with Defendants' insistence

that it owes not a penny of the millions of dollars in benefits at issue in this action,

render it reasonable for Plaintiffs to conclude that the pursuit of an administrative

appeal to Defendants would be futile.

306.   Defendants, and each of them, breached the health insurance plans by

the conduct alleged herein, including without limitation withholding of proper claim

payments from Plaintiffs, making unreasonable demands on Plaintiffs, not engaging

in a prompt, full and complete investigation of Plaintiffs' claims, and interpreting

the plans in an unduly restrictive manner so as to deny coverage and benefits when,

in fact, coverage exists and benefits are owed to Plaintiffs.

307.   As a direct and proximate result Defendants' breaches, Plaintiffs have

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 149 -

THIRD AMENDED CONSOLIDATED COMPLAINT

suffered and will continue to suffer in the future, economic loss, including the benefits owed under the health insurance plans and the law in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits, and other general, incidental and consequential damages, in amounts according to proof at trial.  Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

### THIRD CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Non-ERISA Plans)**

**Against All Defendants**

308.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

309.   Plaintiffs allege this cause of action in connection with their claims for substance use disorder treatment and laboratory services rendered to the 1,691 insureds with health insurance plans not governed by ERISA.

310.   As alleged herein, Plaintiffs are assignees and intended beneficiaries of their patients' health insurance plans issued, managed and/or administered by Defendants and the rights conferred thereunder.

311.   Each of the non-ERISA health insurance plans contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

312.   As set forth hereinabove, Plaintiffs provided covered, verified, preauthorized and medically necessary SUD treatment and laboratory services to Defendants' insureds with the understanding and expectation that Defendants would act in good faith and deal fairly with Plaintiffs pursuant to the plans.  Defendants, and each of them, however, tortiously breached the plans and the implied covenant of good faith and fair dealing, and committed unfair and deceptive acts and practices in direct violation of California's Unfair Insurance Practices Act (Cal. Ins. Code §

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

790 *et seq.*) and Fair Claims Settlement Practices Regulations (Cal. Code Regs. tit. 10, § 2695.1, *et seq.*) in the following ways, among others:

   a.   Misrepresenting to Plaintiffs pertinent facts and insurance policy provisions relating to the coverages at issue (Cal. Ins. Code § 790.03(h)(1));

   b.   Failing and refusing to acknowledge and act reasonably promptly upon Plaintiffs' communications with respect to the claims at issue (Cal. Ins. Code § 790.03(h)(2));

   c.   Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of the claims at issue (Cal. Ins. Code § 790.03(h)(3));

   d.   Failing and refusing to affirm or deny coverage of the claims at issue within a reasonable time after proof of Plaintiffs' entitlement to benefits had been established (Cal. Ins. Code § 790.03(h)(4));

   e.   Not attempting in good faith to effectuate prompt, fair, and equitable settlements of the claims at issue despite proof of Plaintiffs' entitlement to benefits having been established (Cal. Ins. Code § 790.03(h)(5));

   f.   Compelling Plaintiffs to institute litigation to recover amounts due on the claims at issue by offering substantially less than the amounts owed (Cal. Ins. Code § 790.03(h)(6));

   g.   Delaying the investigation and payment of the claims at issue by requiring Plaintiffs to submit multiple reports and documents that contain substantially the same information (Cal. Ins. Code § 790.03(h)(11));

   h.   Failing to and refusing promptly settle the claims at issue despite proof of Plaintiffs' entitlement to benefits having been established under one portion of the insurance policy's coverage in order to influence settlements under other portions of the insurance policy's coverage (Cal. Ins. Code § 790.03(h)(12));

   i.   Failing to and refusing promptly provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

THIRD AMENDED CONSOLIDATED COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  applicable law, for the denial of the claims at issue or for the offer of a compromised

2  amount on the benefits owed (Cal. Ins. Code § 790.03(h)(13));

3        j.       Discriminating in its claims settlement practices based upon the

4  physical disabilities of Plaintiffs' patients/Defendants' insureds (Cal. Code Regs. tit.

5  10, § 2695.7(a));

6        k.       Failing and refusing to conduct and diligently pursue a thorough,

7  fair and objective investigation and persisting in seeking information not reasonably

8  required for or material to the resolution of the claims at issue (Cal. Code Regs. tit.

9  10, § 2695.7(d));

10        l.       Unjustifiably seeking reimbursement of an overpayment and

11  withholding benefits payable as a result of a claim on the basis that the sum

12  withheld or reimbursement sought is an adjustment or correction for an

13  overpayment (Cal. Code Regs. tit. 10, § 2695.11(a));

14        m.      Failing and refusing to provide Plaintiffs with an explanation of

15  benefits that includes a clear explanation of the computation of benefits (Cal. Code

16  Regs. tit. 10, § 2695.11(b));

17        n.       Failing and refusing to affirm or deny contested claims within 30

18  calendar days from the original notification that the claims at issue were being

19  contested (Cal. Code Regs. tit. 10, § 2695.11(d));

20        o.       Adopting unreasonable medical necessity standards that

21  indiscriminately reduce the amount of authorized substance use disorder treatment

22  available to their insureds;

23        p.       Bullying Plaintiffs into adopting these unreasonable standards by

24  threatening to withhold righteous claim payments;

25        q.       Interpreting the plans in an unduly restrictive manner so as to

26  deny coverage and benefits when, in fact, coverage exists and benefits are owed to

27  Plaintiffs;

28        r.       Making unreasonable demands on Plaintiffs;

- 152 -
THIRD AMENDED CONSOLIDATED COMPLAINT

1        s.      Not engaging in a prompt, full and complete investigation of

2  Plaintiffs' claims;

3        t.      Fraudulently representing to Plaintiffs that Defendants would

4  pay the claims in accordance with the plans and the Viant and Multiplan contracts;

5        u.      Forcing Plaintiffs to file appeals and requests for external peer

6  reviews to obtain authorization for medically necessary treatment, and to obtain

7  proper medically necessity determinations for post-service claim reimbursements;

8        v.      Failing and refusing to pay benefits for services rendered by

9  Plaintiffs that Defendants authorized, as well as rescinding the same (Cal. Health &

10  Safety Code §1371.8; Cal. Ins. Code §796.04);

11        w.      Failing and refusing to offer coverage for mental health and

12  substance use disorder treatment and related laboratory services in parity with the

13  medical and surgical benefits afforded by the same plans (26 U.S.C. §9812, *et seq.*);

14  and

15        x.      Failing to abide by the rules and regulations promulgated by the

16  CDI and the DMHC as alleged herein, and by other acts and omissions of which

17  Plaintiffs are presently unaware and which will be shown according to proof at the

18  time of trial.

19     313.   Upon information and belief, the conduct of Defendants, and each of

20  them, as alleged herein constitutes part of an institutional unlawful pattern and

21  practice of bad faith and unlawful insurance practices.

22     314.   Defendants' conduct constitutes a continuing tort that is causing

23  Plaintiffs continued damages.

24     315.   Defendants' conduct as alleged herein was undertaken by Defendants'

25  officers, directors and/or managing agents who were responsible for the supervision,

26  operation, reports, communications and decisions at issue in this action.  The

27  conduct of said officers, directors and managing agents, and of other employees,

28  representatives and agents, was undertaken on behalf of Defendants, which had

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

advance knowledge of the action and conduct of said individuals whose conduct and actions were authorized, ratified and approved by officers, directors or managing agents of Defendants.

316.   As a direct and proximate result Defendants' breaches, Plaintiffs have suffered and will continue to suffer in the future, economic losses, including the benefits owed under the health insurance plans in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits, and other general, incidental and consequential damages, in amounts according to proof at trial. Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

317.   As a direct and proximate result of Defendants' breaches, Plaintiffs have incurred attorney's fees and costs as a result of efforts to secure the insurance benefits owed, in an amount according to proof.  Plaintiffs are also entitled to recover statutory and prejudgment interest against Defendants, and each of them.

### FOURTH CAUSE OF ACTION

**Breach of Oral Contract**

**Against All Defendants**

318.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

319.   As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, orally promised to pay Plaintiffs for the treatment and services provided to Defendants' insureds, all 1,691 of them, a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

320.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 154 -

THIRD AMENDED CONSOLIDATED COMPLAINT

employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

321.   Plaintiffs have performed all duties required of them under the oral contracts, except as excused by Defendants' material breaches.

322.   Defendants and each of them, however, breached the oral contracts by the conduct alleged herein, including without limitation the withholding of proper claim payments.

323.   As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered general and incidental damages according to proof, and are entitled to statutory and prejudgment interest and attorney's fees against Defendants.  Under this cause of action, Plaintiffs seek to recover the benefits orally promised, which are equal to a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

324.   As a direct and proximate result of Defendants' breaches, Plaintiffs have incurred and continue to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits and other consequences, all according to proof.

## FIFTH CAUSE OF ACTION

### Promissory Estoppel

### Against All Defendants

325.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

326.   As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiffs for the treatment and services

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

provided to Defendants' insureds, all 1,691 of them, on the same terms as provided for in the plans between Defendants and their insureds; specifically, payments to Plaintiffs equal to a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's AOOPM is met at which time Defendants pay 100%.

327.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

328.   Plaintiffs relied on Defendants' promises in providing the subject treatment and services to Defendants' insureds, and Defendants, and each of them, should reasonably have expected this to induce Plaintiffs' action in providing said treatment and services to Defendants' insureds.

329.   Plaintiffs have suffered substantial detriment in reliance upon Defendants' promises in providing treatment and services to Defendants' insureds, including without limitation the benefits owed in the millions, the interruption in Plaintiffs' businesses, lost business opportunities, lost profits and other consequences, all according to proof at trial.

330.   As a direct and proximate result of Defendants' breach of their promises, Plaintiffs are also entitled to statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

## SIXTH CAUSE OF ACTION

### Unfair Competition

### Against All Defendants

331.   Plaintiffs incorporate by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

332.   The conduct of Defendants, and each of them, as alleged herein not only constitutes common law bad faith, but also violates state and federal law, regulations and policies, and thus constitutes unlawful, unfair, and fraudulent business practices in violation of the UCL (Bus. & Prof. Code §§ 17200 *et seq*.).

333.   Plaintiffs have suffered injury in fact and have lost money or property as a result of the unlawful acts of unfair competition by Defendants, and each of them, as alleged herein, which was designed specifically to deprive Plaintiffs and all other similarly situated OON SUD providers of their legal entitlement to reimbursement for medically necessary covered services rendered to Defendants' insureds.

334.   As alleged herein, the Association and the Blue Cross and Blue Shield Defendants engaged in a conspiracy to suppress, artificially reduce and fix the pricing for healthcare services that is a substantial factor in Defendants' under-reimbursement of Plaintiffs' claims in contravention of the Plans and in violation of ERISA and California law.

335.   The conspiratorial conduct of Defendants, and each of them, not only violates state and federal antitrust laws as expressed in *In re Blue Cross Blue Shield Antitrust Litigation*, but also creates an economic barrier to accessing OON SUD services by suppressing reimbursement rates and concomitantly increasing the insured patient's coinsurance amount and out of pocket expense that does not exist for accessing medical and surgical benefits in violation of MMHPAEA, and results in the denial of mandated essential healthcare benefits – SUD services – in violation of the PPACA.

336.   Plaintiffs seek relief under Section 17203 of the California Business & Professions Code that authorizes this Court to make such orders or judgments as may be necessary to prevent Defendants, and each of them, from using or employing the Blue Card Program and other programs, policies and procedures resulting from their conspiracy to suppress, artificially reduce and fix the pricing for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 157 -

1   healthcare services, and to restore to Plaintiffs and all similarly situated OON SUD

2   providers the ill-gotten gains acquired through Defendants' unlawful practices.

3       337.   Plaintiffs alternatively seek relief under Section 17535 of the California

4   Business & Professions Code and ask this Court to enjoin Defendants and make

5   such orders or judgments, including the appointment of a receiver, as may be

6   necessary to Defendants, and each of them, from using or employing the Blue Card

7   Program and other programs, policies and procedures resulting from their

8   conspiracy to suppress, artificially reduce and fix the pricing for healthcare services,

9   and to restore to Plaintiffs and all similarly situated OON SUD providers the ill-

10  gotten gains acquired through Defendants' unlawful practices.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, and that the Court award the following relief:

1.   For compensatory, general and special damages in amounts to be proven at trial;

2.   For statutory and prejudgment interest;

3.   For costs incurred in connection with this lawsuit;

4.   For attorney's fees;

5.   For injunctive and equitable relief; and

6.   For all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury for all claims triable by jury.

Dated:  March 1, 2022               **CALLAHAN & BLAINE, APLC**

By:  /s/ *Damon D. Eisenbrey*
Damon D. Eisenbrey
Attorneys for Plaintiffs

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM