# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC,

               Plaintiff,

   -against-

BLUE CROSS BLUE SHIELD OF MICHIGAN,

             Defendant.

Civil Action No. 2:20-cv-12916

Hon. Terrence G. Berg

Mag. Anthony P. Patti

## PLAINTIFF ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S MOTION FOR ENTRY OF A PARTIAL FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B)

Plaintiff Anesthesia Associates of Ann Arbor, PLLC ("A4") by and through its undersigned attorneys, respectfully moves the Court to enter a partial final judgment, pursuant to Federal Rule of Civil Procedure 54(b), on A4's dismissed claims.

On September 14, 2021, the Court entered an Order dismissing A4's Complaint without prejudice and directing that "[s]hould Plaintiff wish to seek leave to amend the Complaint, it must file a motion for leave to amend within twenty-one (21) days of the date of this Order."  ECF No. 41, PageID.1491.  A4 subsequently moved for leave to amend.

On September 28, 2022, the Court granted in part A4's motion: permitting A4 to plead federal claims based on the alleged Blues Conspiracy and state law claims but denying A4's request to plead federal claims related to the alleged Hospital Conspiracy. ECF 52, PageID.1910.

After Defendant Blue Cross Blue Shield of Michigan ("BCBSM") moved to dismiss and strike the state law claims, the Court, on December 29, 2022, held that it lacked subject matter jurisdiction over the state law claims and ordered that they be dismissed without prejudice and stricken from the Amended Complaint. ECF 63, PageID.2431-32.

On January 3, 2023, counsel for A4 emailed counsel for BCBSM to inform them of A4's intent to file the instant motion and to ascertain whether the instant motion would be opposed. On January 5, 2023, counsel for the parties met-and-conferred telephonically regarding the instant motion. Counsel for A4 explained its interpretation of Federal Rule of Civil Procedure 54(b) as requiring a two-part test and summarized why it believed each part was met here. Counsel for BCBSM stated it would oppose the proposed motion.

A4's reasons for granting the motion for partial final judgment are set out in the accompanying memorandum of law.

Date: January 13, 2023

Respectfully submitted,

*/s/ Richard A. Feinstein*
BOIES SCHILLER FLEXNER LLP
Jonathan Schiller, Esq. (admitted in E.D. Mich.,
N.Y. Bar No. 4523460)
David Barillari, Esq. (admitted in E.D. Mich.,
N.Y. Bar No. 5448410)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
jschiller@bsfllp.com
dbarillari@bsfllp.com

Richard A. Feinstein, Esq. (admitted in E.D.
Mich., D.C. Bar 324848)
1401 New York Ave., NW
Washington, D.C. 20005
(202) 895-5243
rfeinstein@bsfllp.com

RILEY SAFER HOLMES & CANCILA LLP
Gregory L. Curtner (P12414)
Matthew Kennison (P79653)
121 W. Washington Street, Suite 402
Ann Arbor, MI 48104
(734) 773-4900
gcurtner@rshc-law.com
mkennison@rshc-law.com

*Counsel for Anesthesia Associates of Ann Arbor,*
*PLLC*

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

ANESTHESIA ASSOCIATES OF ANN
ARBOR, PLLC,

                Plaintiff,

    -against-

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

                Defendant.

Civil Action No. 2:20-cv-12916

Hon. Terrence G. Berg

Mag. Anthony P. Patti.

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S
# MOTION FOR ENTRY OF A PARTIAL FINAL JUDGMENT
# PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B)

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

TABLE OF AUTHORITIES ....................................................................................v

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ........................................................................................................3

I.    Rule 54(b) is Satisfied Here, Because Plaintiff's State and Federal Hospital Claim Is Separate from the Blues Conspiracy and Because There Is No Just Reason for Delay................................................................3

    A.    The Court Has Already Determined that the Hospital Claim Does Not Share a Common Core of Operative Facts with the Remaining Blues Conspiracy Claim.  They Are Therefore Separate Claims for Rule 54(b) Purposes.......................................................................................3

    B.    Under the Sixth Circuit's Rule 54(b) Balancing Test, There Is No Just Reason for Delaying Review of the Hospital Claim.............................8

        1.    The Separateness of the Adjudicated and Unadjudicated Claims Supports Rule 54(b) Certification. ................................9

        2.    Future Developments in the Blues Conspiracy Claim Would Not Moot the Need for Review of the Hospital Claim...........10

        3.    Certification Would Not Create a Risk of Duplicative Review Here. ......................................................................................11

        4.    There Is No Pending Counterclaim That Would Result in a Setoff Against the Judgment Sought to be Final. ...................12

        5.    The Miscellaneous Factors Including Efficiency, Hardship, and Solvency Issues Support Certification Under Rule 54(b). ......13

CONCLUSION......................................................................................................16

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Has the Court disposed of some, but fewer than all of, the claims in this action?

   **Plaintiff's answer: "Yes."**

2. Do the circumstances show that there is no just reason for delaying appellate review?

   **Plaintiff's answer: "Yes."**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265 (6th Cir. 2019)

*Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616 (6th Cir. 2017)

*U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588 (6th Cir. 2013)

*Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490 (6th Cir. 2012)

# TABLE OF AUTHORITIES

**Cases**

*Bar's Prod., Inc. v. Bar's Prod. Int'l, Inc.*,
  2018 WL 1185273 (E.D. Mich. Mar. 7, 2018) ....................................... 10, 15, 16

*Blazer Foods, Inc. v. Rest. Properties, Inc.*,
  259 Mich. App. 241 (2003) ..................................................................14

*Burt v. Blue Shield of Sw. Ohio*,
  591 F. Supp. 755 (S.D. Ohio 1984) .......................................................5

*Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279 (6th Cir.1986)....9

*GenCorp, Inc. v. Olin Corp.*,
  390 F.3d 433 (6th Cir.2004) ...............................................................4

*General Acquisition, Inc. v GenCorp, Inc.*,
  23 F.3d 1022 (6th Cir. 1994) ............................................................8, 10

*In re Blues Cross Blue Shield Antitrust Litig.*,
  MDL No. 2406...................................................................................15

*In re Fifth Third Early Access Cash Advance Litig*,
  925 F.3d 265 (6th Cir. 2019) ......................................................... 6, 7, 8

*Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*,
  638 F. App'x 489 (6th Cir. 2016) .......................................................4, 7

*Jack Walters & Sons Corp. v. Morton Bldg., Inc.*,
  737 F.2d 698 (7th Cir. 1984) ...............................................................8

*Lee v. Grand Rapids Bd. of Educ.*,
  148 Mich. App. 364 (1986) ................................................................14

*Nat'l Credit Union Admin. Bd. v. Jurcevic*,
  867 F.3d 616 (6th Cir. 2017) ...................................................... 5, 12, 13

*Ouza v. City of Dearborn Heights*,
  2019 WL 1455241 (E.D. Mich. Apr. 2, 2019) ............................. passim

*Planned Parenthood Southwest Ohio Region v. DeWine*,
  696 F.3d 490 (6th Cir. 2012) ...................................................... passim

*Reed v. Observer & Eccentric Mirror Newspapers*,
  2013 WL 2662322 (Mich. Ct. App. June 13, 2013)............................14

*Sears, Roebuck & Co. v. Mackey*,
    351 U.S. 427 (1956)................................................................................9

*Terrace Land Dev. Corp. v. Seeligson & Jordan*,
    250 Mich. App. 452 (2002) ...............................................................14

*U.S. Citizens Ass'n v. Sebelius*,
    705 F.3d 588 (6th Cir. 2013) ........................................... 10, 11, 12, 13

**Statutes**
28 U.S.C. § 1367.........................................................................................7

**Rules**
Federal Rule of Civil Procedure 54 ................................................. passim

**Other Authorities**
Wright & Miller, Fed. Prac. & Proc. Civ. (4th ed.)......................... 10, 11

Plaintiff Anesthesia Associates of Ann Arbor, PLLC ("A4") respectfully submits this memorandum of law in support of its Motion for Entry of a Partial Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b).

## PRELIMINARY STATEMENT

Courts may enter a partial final judgment under Federal Rule of Civil Procedure 54(b) when some, but not all, claims have been dismissed and there is no just reason for delay.   Now that the Court has dismissed both A4's federal Hospital Conspiracy claims and A4's state law claims (together, the "Hospital Claim"), all of the Rule 54(b) requirements have been met for entering partial final judgment on the Hospital Claim against Defendant Blue Cross Blue Shield of Michigan ("BCBSM").

*First*, the Hospital Claim implicate a separate set of operative facts from the only remaining claim, the Blues Conspiracy.   The Hospital Claim is therefore separate, under Rule 54(b), from the Blues Conspiracy.  Last December, the Court succinctly explained how A4's Hospital Conspiracy allegations, and state law allegations, implicate an entirely separate set of facts than the Blues Conspiracy:

> While the Hospital Conspiracy involved allegations about BCBSMI's conduct toward Michigan hospitals and A4's contractual relationships with independent contractors and Michigan hospitals—factual claims that are central to the state law claims—the ***Blues Conspiracy does not***. The Blues Conspiracy is based on the allegedly anticompetitive effects of BCBS-MI's agreements with other Blues across the country. ***And the Blues Conspiracy does not implicate BCBS-MI's direct contractual relationships with Michigan hospitals or A4, Michigan hospitals' conduct toward A4, nor their relationships with each other***.

ECF 63, PageID.2430 (emphasis added). In short, the only claim remaining arises from a conspiracy between BCBSM and other insurers, which conspiracy the Court has already determined does not share a common nucleus of operative fact with any of the federal or state law theories of recovery underlying the Hospital Claim. Far from overlapping, the Court held that the dismissed claims' "factual bases . . . differ significantly" from the Blues Conspiracy. *Id.* at PageID.2431. Those holdings demonstrate that the first factor for Rule 54(b) certification is met: the federal Hospital Conspiracy allegations and state law allegations together represent a distinct claim for Rule 54(b) purposes, and that claim has been dismissed.

*Second*, the Rule 54(b) balancing factors show that there is no just reason for delay. The Court's holdings have established that the Hospital Claim and the Blues Conspiracy turn on separate, distinct, and independent factual and legal issues; therefore, the claims are not inherently inseparable (Factor 1), there is no likelihood that further proceedings on the Blues Conspiracy will moot the need for appeal of the Hospital Claim (Factor 2), and there is no risk of successive appeals on the same issue (Factor 3). Further, there is no pending counterclaim that would create a setoff against the partial final judgment A4 seeks, nor is there an amount to set off, as A4's Hospital Claim was dismissed (Factor 4). Finally, the miscellaneous equitable considerations that courts are to weigh (Factor 5) also support Rule 54(b) certification. Those considerations take into account efficiency, including the

2

benefit of avoiding multiple rounds of discovery and trials, and the economic hardship and solvency issues faced by A4. Each of these factors underscores the appropriateness here of entering partial final judgment.

## ARGUMENT

### I. Rule 54(b) is Satisfied Here, Because Plaintiff's State and Federal Hospital Claim Is Separate from the Blues Conspiracy and Because There Is No Just Reason for Delay.

A4's dismissed Hospital Claim satisfies both parts of the "two-step process" for certifying partial final judgments under Rule 54(b). *Ouza v. City of Dearborn Heights*, 2019 WL 1455241, at *1 (E.D. Mich. Apr. 2, 2019) (Berg, J.) (quoting *Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012)). "First, the Court must determine whether an action has more than one claim or party—and whether the Court's Order disposes of fewer than all the claims or parties." *Id.* (quoting *DeWine*, 696 F.3d at 500). "Second, the Court engages in a balancing test to find whether there is no just reason for delaying entry of a final judgment." *Id.*

### A. The Court Has Already Determined that the Hospital Claim Does Not Share a Common Core of Operative Facts with the Remaining Blues Conspiracy Claim. They Are Therefore Separate Claims for Rule 54(b) Purposes.

The first step under Rule 54(b) requires the Court to assess whether the dismissed theories of relief constitute a separate claim from those that remain. To "determine[e] what constitutes multiple claims in a case, the Sixth Circuit 'has

3

traditionally applied the operative facts test,'" which treats different theories of relief as a single claim if they "rest on proving substantially the same facts." *Id.* Pursuant to this test, "[a] 'claim' under Rule 54(b) 'denotes the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.,* 638 F. App'x 489, 495 (6th Cir. 2016) (brackets in original) (quoting *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir.2004)).

Here, the Court has already conducted exactly this type of analysis in its December 29, 2022 Order. In that Order, the Court held that the Blues Conspiracy involves an separate set of operative facts from the dismissed theories of relief, *i.e.*, A4's federal Hospital Conspiracy allegations and A4's state law allegations. ECF 63, PageID.2430. The Court explained that while A4's Hospital Conspiracy and state law theories shared the same "central" "factual claims," neither shared operative facts with the alleged Blues Conspiracy:

> While the Hospital Conspiracy involved allegations about BCBSMI's conduct toward Michigan hospitals and A4's contractual relationships with independent contractors and Michigan hospitals—factual claims that are central to the state law claims—the ***Blues Conspiracy does not***. The Blues Conspiracy is based on the allegedly anticompetitive effects of BCBS-MI's agreements with other Blues across the country. ***And the Blues Conspiracy does not implicate BCBS-MI's direct contractual relationships with Michigan hospitals or A4, Michigan hospitals' conduct toward A4, nor their relationships with each other***.

ECF 63, PageID.2430 (emphasis added). Per the Court's analysis, the dismissed "Hospital Conspiracy" and the dismissed "state law claims" can be considered a

single claim for Rule 54(b) purposes (*i.e.*, the Hospital Claim). *Id.* They represent a single claim, because "[t]he aggregate operative facts for" them, *Ouza*, 2019 WL 1455241, at *2, involve "BCBS-MI's direct contractual relationships with Michigan hospitals [and] A4, Michigan hospitals' conduct toward A4, [and] their relationships with each other," ECF 63 at PageID.2430.

In contrast, the operative facts for the "Blues Conspiracy" are "BCBS-MI's agreements with other Blues across the country" and the "allegedly anticompetitive effects" of those agreements.  ECF 63 at PageID.2430.  Critically, the "Blues Conspiracy does not implicate" the operative facts for the Hospital Claim, nor vice versa. *Id.* "[T]he operative facts of the federal [Blues Conspiracy] claim 'will be different' than those necessary to prove the state claim." *Id.* (quoting *Burt v. Blue Shield of Sw. Ohio*, 591 F. Supp. 755, 764 (S.D. Ohio 1984)).

Because the "Blues Conspiracy does not implicate" the operative facts underlying the Hospital Claim, they constitute separate claims under Rule 54(b). *Id.*; *see id.* at PageID.2431 (concluding that the Blues Conspiracy claims "differ significantly" from "A4's state law claims").  The Hospital Claim and the Blues Conspiracy "are distinct claims based on distinct events," with the result that they must be treated separately under Rule 54(b). *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 624 (6th Cir. 2017).  The first prong of Rule 54(b) is therefore satisfied here.  Specifically, the state and federal theories of relief

5

underlying the Hospital Claim have now all been dismissed, and that Hospital Claim is separate from the remaining Blues Conspiracy claim.

Sixth Circuit precedent confirms that the Hospital Claim and the Blues Conspiracy claim should be deemed separate for Rule 54(b) purposes. In *In re Fifth Third Early Access Cash Advance Litig.*, the Sixth Circuit explained that each claim need not be "entirely divorced from the other" and that "the presence of some overlap will not" preclude Rule 54(b) certification. 925 F.3d 265, 274-75 (6th Cir. 2019) (second quotation quoting *DeWine*, 696 F.3d at 502). The Sixth Circuit concluded in that case that the plaintiffs' contract and Truth in Lending Act claims were separate under Rule 54(b), even when they both arose from the alleged inaccuracy of a bank's "Early Access Loans." *Id.* Despite this factual overlap, the "operative facts" test was satisfied because "the differences between plaintiffs' TILA and breach-of-contract counts as pleaded 'sufficiently outweigh what they have in common.'" *Id.* (quoting *DeWine*, 696 F.3d at 502); *see also Ouza*, 2019 WL 1455241, at *2 ("While Plaintiff's claims arise out of her arrest in 2014, all four rely on different aggregate sets of operative facts to show her entitlement to relief . . . . satisfying the first prong of the 54(b) test.")

Here too, the Court's December 29, 2022 Order shows that even if there is some "factual relationship" between A4's Hospital Claim and the Blues Conspiracy, their separateness "substantially predominate[s]" over their similarities. ECF 63 at

6

PageID.2431 (quoting 28 U.S.C. § 1367(c)(2)); *see id.* at PageID.2430 ("A4's state law claims are an outgrowth of the now dismissed Hospital Conspiracy claim, not the Blues Conspiracy."). The Hospital Claim is therefore separate from the Blues Conspiracy for Rule 54(b) purposes, regardless of whether they share certain factual overlap. *See In re Fifth Third*, 925 F.3d at 274-75; *see also DeWine*, 696 F.3d at 501 (explaining that claims can be "wholly distinct" even where they arise out of shared circumstances such as "the same business[]" or "the same improper toxic waste disposal").

The Sixth Circuit has also instructed courts applying Rule 54(b) to distinguish between claims that have their own "distinct aggregate of operative facts," even when those claims are pleaded under a single cause of action. *Inhalation Plastics, Inc.*, 638 F. App'x at 495. In *Inhalation Plastics*, the Sixth Circuit treated the plaintiffs' Count III—for successor liability—as spanning multiple Rule 54(b) claims: one for breach of an "oral contract" against defendant Medex CP; and another for breach of "two written contracts" against the same defendant. *Id.* at 495-96 (emphasis omitted); *see id.* at 493.

Here too, A4's federal antitrust causes of action (Counts V through VIII of the proposed Amended Complaint) were each based on two separate theories, with each theory having its own "distinct aggregate of operative facts": the Hospital Conspiracy and the Blues Conspiracy. *Id* at 495. Therefore, the "portion of" A4's

7

antitrust causes of action dealing with the Hospital Conspiracy should be treated separately from the portion of those counts arising from the Blues Conspiracy. *Id.* Just as breach of contract claims against the same defendant can be separate for Rule 54(b) purposes when they involve different contracts, A4's antitrust claims against BCBSM are separate because they rely on A4 proving separate restraints, occurring over separate time periods, and involving separate entities. *See id.* Similarly, the Seventh Circuit has held that a single antitrust suit involved distinct "section 1" conspiracy claims against a single defendant, for Rule 54(b) purposes. *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 701-03 (7th Cir. 1984) (treating "tying" charge and "exclusive territories" charge as separate Section 1 claims).

In short, A4 has pleaded two separate claims for Rule 54(b) purposes: the Hospital Claim and the Blues Conspiracy claim. The Court has dismissed each part of the Hospital Claim, thereby "satisfying the first prong of the 54(b) test." *Ouza*, 2019 WL 1455241, at *2.

## B. Under the Sixth Circuit's Rule 54(b) Balancing Test, There Is No Just Reason for Delaying Review of the Hospital Claim.

The second step for Rule 54(b) certification is "determin[ing] that there is no just reason to delay appellate review." *In re Fifth Third*, 925 F.3d at 273 (quoting *General Acquisition, Inc. v GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994)). The Sixth Circuit has "provided for determining whether to find just reason for delay," a "non-exhaustive list of factors" to be "weighed" by district courts. *DeWine*, 696

F.3d at 503. These include:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir.1986)). Each of these factors weighs in favor of Rule 54(b) certification.

### 1. *The Separateness of the Adjudicated and Unadjudicated Claims Supports Rule 54(b) Certification.*

Under the first factor, "the relationship between the adjudicated and unadjudicated claims," *id.*, courts should assess whether the dismissed claims "are distinct" from the claims that have not been dismissed, *Ouza*, 2019 WL 1455241, at *2. Instructive here is the Court's conclusion that the unadjudicated Blues Conspiracy "does not implicate" any of the operative facts underlying the dismissed claims. ECF 63, PageID.2430. This conclusion confirms that there is nothing "inherently inseparable" about the Hospital Claim and the Blues Conspiracy that would prohibit Rule 54(b) from being applied. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956). The unadjudicated and adjudicated claims are therefore distinct, with the result that this factor favors Rule 54(b) certification. *See Bar's Prod., Inc. v. Bar's Prod. Int'l, Inc.*, 2018 WL 1185273, at *2–3 (E.D. Mich. Mar.

9

7, 2018) (certifying partial final judgment under Rule 54(b)).

        2. *Future Developments in the Blues Conspiracy Claim Would Not Moot the Need for Review of the Hospital Claim.*

    The second factor asks courts to assess the likelihood that future developments involving the remaining claim could moot the need for appeal of dismissed claim. *See* Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2659 (4th ed.). "The most common situation in which this possibility arises involves the dismissal of a claim for impleader." *Id.* Another instance is where the adjudicated issues involve "damages" and the unadjudicated issues involve the "determination of liability," thus "put[ting] the proverbial cart before the horse." *GenCorp.*, 23 F.3d at 1031. Neither of these circumstances are present here. This action does not involve impleader, and no part of the Hospital Claim would be mooted by a finding of liability (or lack of liability) on the Blues Conspiracy claim. Moreover, because the "factual bases" of the Blues Conspiracy claim "differ significantly" from those of the dismissed claims, it is unlikely that further factual developments involving the former will moot the review of the latter. ECF 63, PageID.2431. Accordingly, this factor also weighs in favor of review. *See U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 596 (6th Cir. 2013) (holding that the second factor is satisfied when district court determines that its decision is "final for purposes of appeal").

### 3. Certification Would Not Create a Risk of Duplicative Review Here.

The third factor requires district courts to assess "the possibility that the appellate court might be required to hear the same issue twice." *Id.* This factor accounts for the principle that "an appellate court [] should not hear appeals that will require it to determine questions that remain before the trial court with regard to other claims." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2659. However, when the adjudicated claim is "independent from the . . . remaining" claim, that independence "mak[es] it unlikely that the appellate court would be required to consider the same issue twice." *U.S. Citizens Ass'n*, 705 F.3d at 596.

Here, the Court's Orders underscore the independence of the Hospital Claim from the Blues Conspiracy. In the Order Denying in Part and Granting in Part Plaintiff's Motion for Leave to File Amended Complaint, the Court stated that it was denying leave to replead the Hospital Conspiracy, after concluding that the proposed amended allegations did not sufficiently plead (1) a horizontal conspiracy among Michigan hospitals; (2) any "impermissible market distortions" caused by that conspiracy; and (3) a nexus between that conspiracy and interstate commerce. ECF 52, PageID.1897-1901. For the Blues Conspiracy, however, the legal issues were very different. With the Blues Conspiracy, the dispute did not center on the existence of a conspiracy, its potential to create market distortions, or its interstate nature; instead, the legal issue was whether and how to apply the "'ready, willing,

11

and able' test" to A4's allegations. *Id.* at PageID.1907. Because the "legal arguments underpinning [A4's] appellate claims ha[ve] little to do with the remaining ones," this factor favors Rule 54(b) application. *Nat'l Credit Union Admin. Bd.*, 867 F.3d at 624.

The Court's December 29, 2022 Order also concluded that the Blues Conspiracy claim was independent of the dismissed claims. As noted above, that Order held (1) that the "Blues Conspiracy does not implicate" the operative facts underlying the Hospital Conspiracy and the state law claims, and (2) "that the factual bases of A4's state law claims differ significantly from the Blues Conspiracy federal antitrust claim." ECF 63, PageID.2430-31.

Because the separate claims in this case turn on independent legal and factual issues, it is "unlikely that the appellate court would be required to consider the same issue twice," *U.S. Citizens Ass'n*, 705 F.3d at 596, and this factor as well favors Rule 54(b) certification.

### 4. There Is No Pending Counterclaim That Would Result in a Setoff Against the Judgment Sought to be Final.

The fourth factor also favors Rule 54(b) certification, because "there is no claim or counterclaim which could result in a set-off against the judgment sought to be made final." *Ouza*, 2019 WL 1455241, at *2. The only counterclaim in this action was dismissed with prejudice in March 2022. ECF 48, PageID.1845. When BCBSM filed its Answer to the Amended Complaint late last year, it did not include

12

any counterclaims.  ECF 56.  Finally, the proposed partial final judgment would not include any damages that could be offset.  Accordingly, this factor, to the extent it applies here, weighs in favor of entering a partial final judgment.  *See U.S. Citizens Ass'n*, 705 F.3d at 596 (holding that a district court need not evaluate this factor when it "has no application in the case").

> 5. *The Miscellaneous Factors Including Efficiency, Hardship, and Solvency Issues Support Certification Under Rule 54(b).*

"Finally," district courts are directed to "consider[] miscellaneous factors to determine [whether] an immediate appeal . . . [i]s preferable to waiting entry of final judgment on all counts."  *Id.*

A key consideration under this factor is efficiency: Rule 54(b) certification is favored where "a revival of the once-dismissed claims would streamline the trial proceedings."  *Nat'l Credit Union Admin. Bd.*, 867 F.3d at 624; *accord DeWine*, 696 F.3d at 502-03 (holding that Rule 54(b) certification is appropriate where an "immediate appeal would shorten the time and expense of trial").

If, on the other hand, A4 must wait for entry of final judgment on all its claims to appeal, then there is a distinct probability of not one *but three* separate trials.  First, a trial on the Blues Conspiracy.  Second, if A4's allegations of a federal Hospital Conspiracy are reinstated on appeal after a final judgment, a trial on those allegations.  Third, a separate trial on the state law claims in Michigan state court, because absent an immediate appeal, A4 would have to refile those claims in

13

Michigan to avoid having the statute of limitations expire before entry of final judgment in this case.

A4's state law claims arose in 2019, *see, e.g.*, ECF 53, PageID.1930, ¶ 28, and its state law tortious interference claims (Counts I and II) are "governed by a three-year period of limitations." *Blazer Foods, Inc. v. Rest. Properties, Inc.*, 259 Mich. App. 241, 253 (2003). That period was initially tolled upon A4's filing of this action in October 2020. *Lee v. Grand Rapids Bd. of Educ.*, 148 Mich. App. 364, 370 (1986). However, under Michigan law, the tolling created by filing state law claims in federal court only lasts "until a dismissal that is not based on the merits of the action." *Terrace Land Dev. Corp. v. Seeligson & Jordan*, 250 Mich. App. 452, 459 (2002); *see Reed v. Observer & Eccentric Mirror Newspapers*, 2013 WL 2662322, at *1 (Mich. Ct. App. June 13, 2013).

Now that the Court has dismissed the state law claims for lack of subject matter jurisdiction, the statute of limitations has begun again, leaving A4 with around a year-and-a-half left on the statute of limitations (subject to a decision on the precise date when its claims are considered to have accrued). If Rule 54(b) certification were granted, that would leave more than enough time for an appeal to the Sixth Circuit, which could result in the Hospital Conspiracy being revived, and with it an undisputed basis for supplemental jurisdiction over the state law claims. Alternatively, given the "relatively early stage of litigation," it is possible that the

statute of limitations could expire before a final judgment is rendered on all claims and an appellate decision is rendered on that final judgment.[1]  ECF 63, PageID.2431. Therefore, if Rule 54(b) certification is denied, A4 will likely have to file its Michigan causes of action in state court to avoid expiry of the statute of limitations, thereby creating a situation where there could be three separate trials.

This potential for seriatim proceedings also highlights the "relative hardship" to the parties of denying Rule 54(b) certification.  *Bar's Prod., Inc.*, 2018 WL 1185273, at *3.  During the telephonic conference before the Court on October 28, 2022, BCBSM argued that it would be inefficient and unfair for it to have to run search terms on its custodians twice: once for the state law claims; and again for the Blues Conspiracy claims.  Absent a Rule 54(b) certification, BCBSM faces the prospect of undergoing not just multiple custodial searches but multiple rounds of document discovery, depositions, expert discovery, and trial.

For A4, delay would create not only "hardship" but also "solvency" risks,

---

[1] This analysis applies regardless of whether A4's Blues Conspiracy claim remains with the Court or is transferred to the multidistrict litigation proceedings in the United States District Court for the Northern District of Alabama.  The very next day after meeting-and-conferring with A4 on the instant motion, BCBSM filed a notice of tag-along jurisdiction with the Judicial Panel on Multidistrict Litigation. *See In re Blues Cross Blue Shield Antitrust Litig.*, MDL No. 2406, ECF 558 (Jan. 6, 2023).  On January 12, 2023, the Clerk of the Panel issued a conditional transfer order, which has been stayed for seven days to provide time for either party to oppose it.  *See In re Blues Cross Blue Shield Antitrust Litig.*, MDL No. 2406/MIE/2:20-cv-12916, ECF 1 (Jan. 12, 2023).  A4 intends to oppose the conditional transfer order.

which are relevant to Rule 54(b). *Id.* The Amended Complaint explains that "BCBSM's conduct is destroying A4's business," with the result that A4 "will eventually have to cease doing business in Michigan," thereby joining the growing ranks of anesthesiology providers that have ceased working in Michigan. ECF 53, PageID.1994, ¶¶ 178-179; *see id.* PageID.1918, ¶ 2. Delay would only increase this existential risk to A4. The Court "may consider" A4's "financial difficulty" when assessing whether to apply Rule 54(b), and together with all the other factors, those economic concerns likewise favor entry of partial final judgment on the Hospital Claim. *Bar's Prod., Inc.*, 2018 WL 1185273, at *3.

## CONCLUSION

A4's motion for a Rule 54(b) partial final judgment should be granted.

Date: January 13, 2023

Respectfully submitted,

*/s/ Richard A. Feinstein*
BOIES SCHILLER FLEXNER LLP
Jonathan Schiller, Esq. (admitted in E.D. Mich., N.Y. Bar No. 4523460)
David Barillari, Esq. (admitted in E.D. Mich., N.Y. Bar No. 5448410)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
jschiller@bsfllp.com
dbarillari@bsfllp.com

Richard A. Feinstein, Esq. (admitted in E.D. Mich., D.C. Bar 324848)

16

1401 New York Ave., NW
Washington, D.C. 20005
(202) 895-5243
rfeinstein@bsfllp.com

RILEY SAFER HOLMES & CANCILA LLP
Gregory L. Curtner (P12414)
Matthew Kennison (P79653)
121 W. Washington Street, Suite 402
Ann Arbor, MI 48104
(734) 773-4900
gcurtner@rshc-law.com
mkennison@rshc-law.com

*Counsel for Anesthesia Associates of Ann Arbor, PLLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on January 13, 2023, he caused a true and correct copy of the foregoing document to be served using the Court's electronic filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

*/s/ David Barillari*
David Barillari