# EXHIBIT M

# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No: 2:20-cv-12916 |
| v. | ) ) | Judge: Hon. Terrence G. Berg |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) ) | Magistrate Judge: Hon. Anthony P. Patti |
| Defendant. | ) ) | **ORAL ARGUMENT REQUESTED** |

## BLUE CROSS BLUE SHIELD OF MICHIGAN'S RESPONSE TO ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S MOTION FOR ENTRY OF A PARTIAL FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.............................................................. iii

CONTROLLING/MOST APPROPRIATE AUTHORITIES ................................iv

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ...............................................................................1

BACKGROUND AND PROCEDURE....................................................2

LEGAL STANDARD...........................................................................5

ARGUMENT ......................................................................................7

    I.    A4's Claims are Not Multiple Claims That Can Be Separated for Appeal.......................................................................................8

        A.    The Hospital Conspiracy and Blues Conspiracy Seek Damages for Overlapping Alleged Injuries and Stem from the Similar Alleged Harm ...........................................................8

        B.    A4's State Claims Cannot Be Appealed Separately Because They Overlap with the Hospital Conspiracy.............................13

    II.    There is Just Reason to Delay Review of A4's Dismissed Claims.....15

        A.    Overlap Between the Hospital Conspiracy and Blues Conspiracy Weighs Against Certification .................................16

        B.    Potential Set-Off from BCBSM's Counterclaim Weighs Against Certification ................................................................19

        C.    Miscellaneous Considerations of Efficiency and Equity Weigh Against Certification ......................................................20

        D.    Likelihood of Imminent Transfer to the MDL Weighs Against Certification ................................................................22

CONCLUSION ................................................................................24

## STATEMENT OF ISSUES PRESENTED

1.    Should the Court deny Rule 54(b) certification because A4's dismissed Hospital Conspiracy claims and remaining Blues Conspiracy claims allege similar harm and damages under each theory of liability, and therefore are not "multiple claims" for purposes of Rule 54(b)?

      **BCBSM's Answer: Yes.**

2.    Should the Court deny Rule 54(b) certification because A4's state law tort claims constitute the same "claim" for purposes of Rule 54(b) as A4's dismissed Hospital Conspiracy, which in turn has overlapping issues with A4's remaining Blues Conspiracy claims?

      **BCBSM's Answer: Yes.**

3.    Should the Court deny Rule 54(b) certification of A4's dismissed Hospital Conspiracy and state law tort claims because the waste of federal judicial resources from certifying A4's dismissed claims (including overlapping factual issues that would cause the Court of Appeals to review the same issues multiple times and multiplying proceedings) far outweighs the *de minimis* harm, if any, to A4 from appealing their claims in the ordinary course at the conclusion of the litigation?

      **BCBSM's Answer: Yes.**

4.    Should the Court promptly deny Rule 54(b) certification of A4's state law tort claims because this case is likely to be transferred to the MDL, resulting in inefficiency in multiple courts and a waste of the Court's time and resources?

      **BCBSM's Answer: Yes.**

## CONTROLLING/MOST APPROPRIATE AUTHORITIES

*Carpenter v. Liberty Ins. Corp.*, 850 F. App'x 351 (6th Cir. 2021)

*Daleure v. Commonwealth of Kentucky*, 269 F.3d 540 (6th Cir. 2001)

*General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir. 1994)

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)

*Little Caesar Enterprises, Inc. v. Smith*, 916 F. Supp. 662 (E.D. Mich. 1996)

*Lowery v. Federal Exp. Corp.*, 426 F.3d 817 (6th Cir. 2005)

*QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, No. 3:02CV7466, 2008 WL 163605 (N.D. Ohio Jan. 16, 2008)

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Astarte Shipping Co. v. Allied Steel & Export Serv.*,
  767 F.2d 86 (5th Cir. 1985) ...................................................................24

*Carpenter v. Boeing Co.*,
  456 F.3d 1183 (10th Cir. 2006) ...........................................................20

*Carpenter v. Liberty*,
  850 F. App'x 351 (6th Cir. 2021) ...................................................6, 18

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) ...........................................................24

*Curtiss–Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980) ...............................................................................6, 20

*Daleure v. Commonwealth of Ky.*,
  269 F.3d 540 (6th Cir. 2001) ...............................................................12

*Gen. Acquisition, Inc. v. GenCORP, Inc.*,
  23 F.3d 1022 (6th Cir. 1994) ........................................................ *passim*

*Glasstech Inc, v. AB Kyro OY*,
  769 F.2d 1574 (Fed. Cir. 1985) ...........................................................23

*Hankins v. The Gap, Inc.*,
  84 F.3d 797 (6th Cir. 1996) .................................................................15

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
  No. M06-CV-01781-SBA, 2007 WL 1302496 (N.D. Cal. May 2, 2007) ..........21

*In re Fifth Third Early Access Cash Advance Litig.*,
  925 F.3d 265 (6th Cir. 2019) ...........................................................8, 12

*In re Hardesty*,
  No. 18-0317, 2018 WL 7046869 (6th Cir. Nov. 13, 2018)..................................21

*Larry Pitt & Assoc. v. Lundy Law LLP*,
  No. 13-2398, 2015 WL 12806506 (E.D. Pa. June 15, 2015) .................................7

*Liberty Mut. Ins. Co. v. Wetzel*,
  424 U.S. 737 (1976) ...........................................................................12

*Little Caesar Ent., Inc. v. Smith*,
  916 F. Supp. 662 (E.D. Mich. 1996) ...................................... 6, 11, 21

*Lowery v. Fed. Exp. Corp.*,
   426 F.3d 817 (6th Cir. 2005) .................................................................. 12, 17, 18

*Musson Theatrical, Inc. v. Fed. Exp. Corp.*,
   89 F.3d 1244 (6th Cir. 1996) ................................................................................15

*Ouza v. City of Dearborn*,
   No. 16-14331, 2019 WL 1455241 (E.D. Mich. Apr. 2, 2019) ...................... 5, 6, 9

*Peden v. Stephens*,
   50 F.4th 972 (11th Cir. 2022) ...............................................................................23

*QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*,
   No. 3:02CV7466, 2008 WL 163605 (N.D. Ohio Jan. 16, 2008) ................. 18, 22

*Rheumatology Diagnostics Laboratory, Inc. v. Aetna, Inc.*,
   No. 12-CV-05847-WHO, 2014 WL 2586339 (N.D. Cal. June 19, 2014) ..........22

*Robinson v. Akal Sec., Inc.*,
   No. 20-12143, 2022 WL 16739124 (11th Cir. Nov. 7, 2022).........................7, 23

*Rudd Construction Equip. Co., Inc. v. Home Insurance Co.*,
   711 F.2d 54 (6th Cir. 1983) ....................................................................................6

*Soliday v. Miami Cnty., Ohio*,
   55 F.3d 1158 (6th Cir. 1995) ..................................................................................7

*Tacker v. Wilson*,
   830 F. Supp. 422 (W.D. Tenn. 1993) ...................................................................14

*Williams v. Alabama Dep't Indus. Rels.*,
   No. 4:13-CV-1825-KOB, 2014 WL 6090784 (N.D. Ala. Nov. 13, 2014) ..........23

**Rules**

FED. R. CIV. P. 54(b).......................................................................................... *passim*

# INTRODUCTION

Anesthesia Associates of Ann Arbor ("A4") does not meet the test for early certification of a final judgment under Rule 54(b) and the Court should deny A4's motion.

A4 made a series of strategic litigation decisions that have landed it in its current conundrum—its only remaining claim was originally just an afterthought. That is not a justification for this Court to eschew sound policy and the general rule that disfavors piecemeal appeals. As is often the case in litigation, early motion practice has narrowed the scope of the claims that A4 may bring against Blue Cross Blue Shield of Michigan ("BCBSM") in federal court, and the Court correctly dismissed those claims. This is not an unusual or harsh circumstance; it is exactly what is intended by Rule 12(b)(6). A4 now cites only its own convenience and its manufactured urgency as justification for the Court to diverge from the normal practice that A4 must litigate its live case before appealing the Court's interlocutory decisions. A4 does not come close to meeting its burden to grant its special request.

Were the Court to grant A4's motion here, it would potentially subject BCBSM to litigation against A4 in state court,[1] the multi-district litigation in the

---

[1] Though A4 implies in its motion that it will not file claims in state court if the Court grants the relief it seeks, *see* ECF No. 64, PageID.2455-56, nothing prevents A4 from doing so, particularly if the Court of Appeals did not move as swiftly as A4 wishes.

Northern District of Alabama (the "MDL"),[2] and the Court of Appeals—a grossly inefficient use of judicial resources and unfair result given BCBSM's **three** successful motions against A4's legally deficient complaints. If A4 wants to proceed with an immediate appeal, it can drop its "Blues Conspiracy" claim, which has always seemed to be a tacked-on afterthought.

A4's motion for partial judgment should be denied. If the Court does not deny A4's motion, then for the sake of completeness it must similarly certify BCBSM's dismissed counterclaim to be considered concurrently with A4's appeal.[3]

## BACKGROUND AND PROCEDURE

This is A4's *fourth* attempt to pursue its alleged underpayment claims related to its supposed "Hospital Conspiracy" against BCBSM.

A4's original complaint focused on a purported conspiracy between Beaumont, Trinity, and BCBSM, which allegedly caused A4 to receive lower reimbursements for anesthesiology services than A4 otherwise would have. *See* ECF No. 1. BCBSM moved to dismiss the complaint, and after lengthy briefing as well as oral argument, the Court dismissed A4's original complaint, holding that A4

---

[2] *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, 13-cv-20000 (N.D. Ala. Jan. 8, 2013). BCBSM filed a tag-along motion to join the MDL on January 6, 2023. Notice of Potential Tag-Along Action, MDL No. 2406, ECF No. 558 (J.P.M.L. Jan. 6, 2023) (Ex. A).

[3] BCBSM's Unopposed Counter-Motion for Partial Final Judgment Pursuant to Rule 54(b) was filed simultaneously with this response.

did not plausibly plead that BCBSM's reimbursement rates were set artificially low as a result of an illegal conspiracy with Beaumont and Trinity. *See* ECF No. 13; ECF No. 41, PageID.1478-80. The Court subsequently dismissed (without argument) BCBSM's counterclaim, which alleged that A4 was actually *over*paid as result of A4's cartel, structured through an illegal web of non-compete and no-poach clauses. *See* ECF No. 48.

Next, A4 sought leave to file a proposed amended complaint alleging a greatly expanded hospital conspiracy, pointing to a sprawling, decades long, state-wide scheme through which BCBSM allegedly sought to limit its reimbursement rates with all hospitals in Michigan. *See* ECF No. 43-2, PageID.1575. Given that A4's proposed amended complaint failed to "address crucial causation issues" and that there were legitimate independent business reasons hospitals would contract with BCBSM, the Court denied A4 leave to amend its complaint to include its implausible allegations relating to its "Hospital Conspiracy."[4] ECF No. 52, PageID.1900. The Court permitted A4 to proceed ***only*** on its "Blues Conspiracy" allegations, which

---

[4] The Court has used the term "Hospital Conspiracy" to describe the Michigan-focused hospital conspiracy alleged in A4's proposed amended complaint. *See* ECF No. 43-2; ECF No. 52, PageID.1890-91. A4 has also used the term in the motion at issue, although it does not define the term. *See* ECF No. 64. As discussed above, A4 has alleged two different conspiracies involving hospitals in Michigan in different variations of its complaints. For purposes of this response BCBSM will assume that A4 defines the Hospital Conspiracy the same way as the Court; but regardless, BCBSM's arguments are equally applicable to all variations alleged in any of A4's complaints.

3

are substantially similar to the claims in the MDL and assert that BCBSM conspired with other "Blue" insurers to suppress competition and monopsonize the markets for buying anesthesiology services nationwide. ECF No. 52, PageID.1910; ECF No. 53, PageID.1958-62. The alleged Blues Conspiracy comprised a small *fraction* of A4's first two complaints, and always appeared to be a tack-on claim.

A4's third attempt, the "Amended Complaint," looked conspicuously like its previous complaints. *See* ECF No. 53, PageID.1995-99. Upon BCBSM's motion, the Court struck and dismissed A4's state law torts and related factual allegations for lack of supplemental jurisdiction from the Amended Complaint. This Court held that A4 failed to allege a sufficient factual connection between the state law claims and the alleged nationwide Blues Conspiracy.[5] ECF No. 63, PageID.2430. Given its similarity to the prior complaints, the Amended Complaint makes relatively limited allegations specific to the Blues Conspiracy, now the only remaining basis for A4's surviving claims.

---

[5] A4's now-dismissed state law claims were: (1) BCBSM's alleged tortious interference with A4's no-poach agreements with Trinity hospital (ECF No. 53, PageID.1995); (2) BCBSM's alleged conspiracy with Trinity hospital to commit tortious interference regarding A4's non-compete agreements (*id.* at PageID.1995-96); (3) BCBSM's alleged unlawful and malicious threats to Trinity and Beaumont hospitals related to A4's de-participation (*id.* at PageID.1996-97); and (4) alleged duress on A4 based on BCBSM's termination of in-network status for independent contractors that worked for A4 related to A4's de-participation (*id.* at PageID.1998-99).

Following the Court's dismissal of A4's state law claims in the Amended Complaint, BCBSM filed a tag-along motion with the Judicial Panel on Multidistrict Litigation ("JPML"), seeking to transfer this case to the pending MDL. The Clerk of the JPML has conditionally ordered the transfer. Conditional Transfer Order, MDL No. 2406, ECF No. 559 (J.P.M.L. Jan. 12, 2023) (Ex. B). A4 opposed the transfer, and the Clerk has set a briefing schedule.[6] If transferred, this Court will cease to have jurisdiction over the action unless and until the case is transferred back for trial. A4's Rule 54(b) motion followed after the case was tagged.

## LEGAL STANDARD

"Generally, an order disposing of some, but not all, claims in a case is not a final judgment and therefore not appealable." *Ouza v. City of Dearborn*, No. 16-14331, 2019 WL 1455241, at *1 (E.D. Mich. Apr. 2, 2019) (Berg, J.) (Ex. C). Federal Rule of Civil Procedure 54(b) is the "exception" to this rule. *Id.* Under Rule 54(b), "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b).

---

[6] A4 filed its notice of opposition on January 18, 2023. A4's motion to vacate and brief in support of the motion is due on February 2, 2023. BCBSM's response is due on February 23, 2023. A4 will have an opportunity to reply, due March 2, 2023.

Whether a party has met the standard under Rule 54(b), and therefore can be certified for appeal, is evaluated using a two-step process.  For the first step, "the Court must determine whether an action has more than one claim or party—and whether the Court's Order disposes of fewer than all the claims or parties." *Ouza*, 2019 WL 1455241, at *1.  A party seeking certification under Rule 54(b) "fails this first step if it does not involve a 'final' order or does not feature multiple, separate 'claims.'" *Carpenter v. Liberty*, 850 F. App'x 351, 353 (6th Cir. 2021).  "Second, the Court engages in a balancing test to find whether there is no just reason for delaying entry of a final judgment." *Ouza*, 2019 WL 1455241, at *1.  When evaluating this second step, the "district court must take into account judicial administrative interests as well as the equities involved." *Carpenter*, 850 F. App'x at 355.

However, given the "long standing federal policy against 'piecemeal appeals,'" "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Little Caesar Ent., Inc. v. Smith*, 916 F. Supp. 662, 664 (E.D. Mich. 1996) (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)).  Rather, the Sixth Circuit has held that interlocutory appeals under Rule 54(b) should be limited to "infrequent harsh cases" and not granted "indiscriminately." *Little Caesar*, 916 F. Supp. at 664 (citing *Rudd Construction Equip. Co., Inc. v. Home Insurance Co.*,

711 F.2d 54, 56 (6th Cir. 1983); *Soliday v. Miami Cnty., Ohio*, 55 F.3d 1158, 1163 (6th Cir. 1995)); *Gen. Acquisition, Inc. v. GenCORP, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994) ("Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court.").[7]

## ARGUMENT

A4's motion for partial final judgment under Rule 54(b) should be denied. First, A4 cannot meet the first step of Rule 54(b)'s test because the Hospital Conspiracy and Blues Conspiracy are not multiple claims under the meaning of Rule 54(b). Those claims cannot be easily separated out for appeal. Second, as the moving party, A4 must establish there is "no just reason for delay." A4 cannot meet that burden under the various factors to be evaluated because, on balance, the inefficiencies of proceeding on multiple litigation tracks outweigh any benefit to A4 of an immediate appeal.

---

[7] *See also Robinson v. Akal Sec., Inc.*, No. 20-12143, 2022 WL 16739124, at *2 (11th Cir. Nov. 7, 2022) (". . . Rule 54(b) certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.") (Ex. D); *Larry Pitt & Assoc. v. Lundy Law LLP*, No. 13-2398, 2015 WL 12806506, at *1 (E.D. Pa. June 15, 2015) ("Generally speaking, piecemeal appeals are not favored, and certification under Rule 54(b) should be granted only in unusual cases where doing so will enhance judicial efficiency, or where failing to allow immediate appeal with create some hardship or injustice. Plaintiff fails to point to any hardship or injustice that would result if an immediate appeal is not permitted.") (Ex. E).

## I.    A4's Claims are Not Multiple Claims That Can Be Separated for Appeal

A4, facially, pled two different federal antitrust theories during this lawsuit: the Hospital Conspiracy and the Blues Conspiracy. The Court has correctly distinguished between these theories in the past when twice dismissing the alleged Hospital Conspiracy. However, these theories equate to only one single "claim" under Rule 54(b) because, as BCBSM has repeatedly argued,[8] they seek damages for the same alleged harm—that BCBSM underpaid A4. This, combined with A4's state claims that are linked to the Hospital Conspiracy, creates a single chain of interconnected allegations, none of which are individually appropriate for appeal.

### A. The Hospital Conspiracy and Blues Conspiracy Seek Damages for Overlapping Alleged Injuries and Stem from the Similar Alleged Harm

In a case with only two parties, under the first step of Rule 54(b)'s test, "Rule 54(b) certification necessarily depends upon the presence of multiple claims." *Gen. Acquisition*, 23 F.3d at 1028. Determining how many "claims" a plaintiff has under Rule 54(b) is not a simple counting exercise. As the cases A4 cites acknowledge, "claim" is a term of art in the Rule 54(b) context and multiple causes of action (including a combination of federal and state claims) can constitute a single claim. *See id.*; *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th

---

[8] *See* ECF No. 13, PageID.253; *see also* ECF No. 57, PageID.2165.

Cir. 2019). However, "there is no 'generally accepted test' for determining what constitutes multiple claims in a case . . ." *Ouza*, 2019 WL 1455241, at *2.

One way to determine whether multiple causes of action or theories constitute a single claim is to examine the plaintiff's possible recovery: "[O]nly one claim has been stated when 'a claimant presents a number of legal theories, but will be permitted to recover only on one of them.' In other words, only one claim exists, despite multiple theories of recovery, when the 'bases for recovery are mutually exclusive, or simply presented in the alternative.'" *Gen. Acquisition*, 23 F.3d at 1029. For example, in *General Acquisition*, the Court held that GenCorp had not stated multiple claims; rather, it had "offered alternative theories in pursuit of one recovery." *Id.* This was because "all three of GenCorp's liability theories [sought] to redress a common injury—the cost of defending against the hostile takeover." *Id.* Therefore, GenCorp could not recover more than once, and "[t]o the extent that GenCorp prevail[ed] on any one of these theories, it could not return to court under another theory in pursuit of a double or triple recovery." *Id.* Courts also may review whether multiple claims exist under the "operative facts" test. *Id.* at 1028.

Under the "recoveries" test, A4's Rule 54(b) motion should be denied.[9] A4's federal claims are not multiple claims under the meaning of Rule 54(b) because both

---

[9] Although less pertinent an inquiry here, A4's motion would also fail under the operative facts test. *See Gen. Acquisition*, 23 F.3d at 1028 (stating that "several

the Hospital Conspiracy and the Blues Conspiracy seek damages for the same alleged injuries: (1) having allegedly been paid less for anesthesiology services than it otherwise would have, (2) losing employees, and (3) increased costs of recruiting and retaining employees.[10] A4's minimal changes to its alleged damages in its Amended Complaint show that A4 seeks the same recovery under both causal theories. Despite entirely removing the Hospital Conspiracy from the federal causes of action after the Court found leave to amend would be futile, A4 made no substantive changes to the paragraphs describing its alleged injury and damages under the Sherman Act.[11]

Further, A4 has previously argued that the Hospital Conspiracy was "a boycott and price-fixing conspiracy pursuant to which hospitals and BCBS agreed that independent anesthesiologists at hospitals across the state will be compensated

---

requests for relief arising from a single wrong" do not constitute multiple claims under Rule 54(b)).

[10] *See, e.g.*, ECF No. 1, PageID.83 (alleging Sherman Act Section 1 damages for Hospital Conspiracy and Blues Conspiracy to be "having been paid less for anesthesiology services, of losing employees who go to work for other states where anesthesiology rates are higher than the artificially repressed rates in Michigan, and in increased costs of recruiting and retaining anesthesiologists"); ECF No. 53, PageID.2000 (alleging Sherman Act Section 1 damages for only Blues Conspiracy to be the same). A4 alleges the same damages for its monopsonization and attempted monopsonization causes of action under Section 2 of the Shearman Act. *Id.* at PageID.2001-04.

[11] *Compare* ECF No. 1, PageID.83 (¶ 212), 85 (¶ 219), *with* ECF No. 53, PageID.2000 (¶ 211), 2002 (¶ 219) (changing only BCBSM's name from "BCBS-MI" to "BCBSM" and changing "for" to "in").

at a single, *uniform rate* by BCBS." ECF No. 43, PageID.1516 (emphasis added). And alleged it was through the Blues Conspiracy and certain alleged tortious acts that BCBSM "succeeded in requiring anesthesiologists in Michigan to accept its below-competitive rate, what BCBSM calls its '*uniform Blue Cross contracted payment.*'" ECF No. 53, PageID.1918 (emphasis added). Both the Hospital Conspiracy and Blues Conspiracy thus center around one thing—BCBSM's "uniform rate" which was allegedly too low—and according to A4 are interconnected as either the cause, or method, of perpetuating that uniform rate. Therefore, while A4 has different liability theories regarding the precise causation of its harm, the Hospital Conspiracy and Blues Conspiracy "share enough factual affinity . . . to render certification inappropriate." *See, e.g.*, *Little Caesar*, 916 F. Supp. at 665-66 (denying Rule 54(b) motion where alleged price fixing's purpose was to maintain high demand for goods following alleged tying arrangement to maintain supra-competitive prices).

Therefore, despite ostensibly different liability theories for relief under the antitrust laws, there is not a separate "right enforceable in the courts" that can be segregated out for a subset of A4's federal claims. *See Gen. Acquisition*, 23 F.3d at 1028. A4's potential recovery is mutually exclusive—it either got paid less than it should under the uniform rate or it did not, or it lost employees because of the

uniform rate or it did not. *See id.* at 1029. Therefore, A4's Hospital Conspiracy and Blues Conspiracy constitute one "claim" under Rule 54(b).

This conclusion is consistent with other cases in the Sixth Circuit that have found that Rule 54(b)'s requirements were not met where plaintiffs attempted to recover for the same injury in multiple different ways. *See Lowery v. Fed. Exp. Corp.*, 426 F.3d 817, 821 (6th Cir. 2005) (dismissing appeal certified under Rule 54(b) where plaintiff's multiple causes of action "seek to recover for the same underlying injury"); *Daleure v. Commonwealth of Ky.*, 269 F.3d 540, 543 (6th Cir. 2001) (dismissing appeal certified under Rule 54(b) where "plaintiff's various arguments are not separable claims, but rather different theories of damages for the same underlying injury"); *see also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976) ("It is sufficient to recognize that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.").

Cases cited by A4 do not dictate otherwise. For example, in *In re Fifth Third Early Access Cash Advance Litigation*, the court followed the operative facts test but found that the different claims focused on different conduct (for example, amount of money charged versus failure to make disclosures) and sought completely different types of damages based on the differences in the claims. The court therefore found that these constituted separate claims. *See In re Fifth Third Early Access Cash*

*Advance Litigation*, 925 F.3d at 274-75.  This is very different from the circumstances here, where all roads lead back to alleged underpayment by BCBSM under the uniform rate as the core harm and basis for alleged damages to A4.

Accordingly, the Hospital Conspiracy and Blues Conspiracy are not multiple claims under Rule 54(b).

### B. A4's State Claims Cannot Be Appealed Separately Because They Overlap with the Hospital Conspiracy

A4 also cannot use its state claims, over which the Court declined to exercise supplemental jurisdiction, to create the "multiple" claims required under Rule 54(b).

A4 has alleged that the Blues Conspiracy provided BCBSM with the market power to pressure the hospitals in the alleged Hospital Conspiracy (*see, e.g.*, ECF No. 43-2, PageID.1600-01), and further alleged state law claims factually linked with the Hospital Conspiracy (*see, e.g.*, *id.* at PageID.1568-69, 1602, 1607)— creating a chain of allegations where the Hospital Conspiracy sits in the middle.



Under this framework, by definition A4's state claims have to be the same "claim" as the Hospital Conspiracy pursuant to Rule 54(b)—otherwise there would be no supplemental jurisdiction even if the Hospital Conspiracy survived. *See Gen. Acquisition*, 23 F.3d at 1028 (describing how "state and federal causes of action should be considered a single 'claim' under Rule 54(b)" when they share a "common factual background"); ECF No. 63, PageID.2429 ("[S]tate law claims must be "an outgrowth of the alleged conspiracy . . . [that] forms the basis of the Sherman Act claim.'" (citing *Tacker v. Wilson*, 830 F. Supp. 422, 431 (W.D. Tenn. 1993)).  A4 does not suggest otherwise—referring to the Hospital Conspiracy and state claims as a single "Hospital Claim."[12]  Because the state claims are linked to the Hospital Conspiracy, which in turn is linked to the Blues Conspiracy, A4 does not have multiple claims that can be separate for appeal under Rule 54(b).

This result is not inconsistent, as A4 seems to suggest, with the Court's ruling in its December 29, 2022 order in which it declined to exercise supplemental jurisdiction over A4's state claims.  *See* ECF No. 64, PageID.2444-49.  The Court had a sound basis to find, in its discretion, that A4's state law claims and the Blues

---

[12] *See* ECF No. 64, PageID.2442 ("Now that the Court has dismissed both A4's federal Hospital Conspiracy claims and A4's state law claims (together, the 'Hospital Claim'), all of the Rule 54(b) requirements have been met for entering partial final judgment on the Hospital Claim against [BCBSM].").

Conspiracy were not sufficiently factually linked.[13]  *See* ECF 63, PageID.2429-31.
But the state claims and Blues Conspiracy are each *individually* linked to the
Hospital Conspiracy.  Therefore, A4's suggestion that the Court's prior ruling is
dispositive as to whether A4 has pleaded separate claims for Rule 54(b) purposes is
incorrect because when you look at all three sets of claims together (which the Court
did not have the occasion to do[14]), each is a link in a chain of allegations that cannot
be separated.

Accordingly, the Court's December 29, 2022 order is not a barrier to the Court
denying A4's request for Rule 54(b) certification, and the dismissal of the state
claims cannot be separately appealed.

## II.     There is Just Reason to Delay Review of A4's Dismissed Claims

A4's motion for partial final judgment under Rule 54(b) should also be denied
because under the balance of efficiencies and equities the Court must weigh, A4 fails
to meet its burden for this Court to find that there is "no just reason for delay."  FED.
R. CIV. P. 54(b).

---

[13] It was well within the Court's "broad discretion" to make that decision.  *Musson
Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996); *see also
Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996) (declining supplemental
jurisdiction in part because of "the interest in avoiding the unnecessary resolution of
state law issues").

[14] The Court undertook no evaluation of the Hospital Conspiracy, which had already
been dismissed, in making its supplemental jurisdiction decision.

Although "[n]o precise test exists," the Sixth Circuit has enumerated non-exhaustive factors a district court should consider in determining whether there is no just reason to delay, including: "(1) the relationship between the adjudicated an unadjudicated claims; (2) the possibility that the need for review may be mooted by future developments in the district court; (3) the possibility that the appellate court may have to consider the same issue on appeal a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like." *See Gen. Acquisition*, 23 F.3d at 1030.

Here, the factors do not weigh in favor of final judgment, followed by an "immediate appeal" (ECF No. 64, PageID.2454), of only A4's Hospital Conspiracy and state law claims.

## A. Overlap Between the Hospital Conspiracy and Blues Conspiracy Weighs Against Certification

The first, second, and third factors weigh against the granting certification under Rule 54(b) for the same reasons that A4 does not have "multiple claims" discussed above. The adjudicated and unadjudicated federal claims are not completely unrelated. They all center around a single "wrong"—BCBSM's uniform rate—and allege the same types of damages—being paid less for anesthesiology services, loss of employees, and increased costs of recruiting and retaining

16

employees. *See supra* Section I.A. And even where the factual basis of A4's claims differ in some respects, the relevant facts will likely overlap for BCBSM's *defenses*. *See Lowery*, 426 F.3d at 823 ("The commonality in operative facts underlying both the plaintiff's claims *and the likely defenses* militates against immediate review of the Title VII claims.") (emphasis added). BCBSM is likely to use the same facts to establish the reasons that A4's was not underpaid and payments were fair, regardless of whether it is establishing alternative causation for A4's alleged damages under the Hospital or Blues Conspiracy.

For example, BCBSM is likely to discover and use reasons other than the alleged conspiracies that A4 lost doctors, had trouble recruiting, and failed to push payments up with its de-participation antics. BCBSM expects discovery to show that A4 was not losing or having trouble recruiting anesthesiologists because of BCBSM's allegedly low uniform rate, but rather that A4 was having these problems based on its own behavior—including Siromed's[15] aggressive strategy to de-

---

[15] Siromed Physician Services ("Siromed") "partnered" with A4 in 2018. *Anesthesia Associates of Ann Arbor and Midwest Anesthesia Consultants Have Partnered with J.W. Childs Associates*, BLOOMBERG (Mar. 27, 2018, 6:00 AM), https://www.bloomberg.com/press-releases/2018-03-27/anesthesia-associates-of-ann-arbor-and-midwest-anesthesia-consultants-have-partnered-with-j-w-childs-associates. Siromed is a "platform company targeting investments in physician group practices" controlled by private equity firm Prospect Hill Growth Partners (formerly known as J.W. Childs Associates). *See Siromed*, PROSPECT HILL GROWTH PARTNERS, https://www.prospecthillgrowth.com/investments/siromed (last visited Jan. 26, 2023); *About Us*, PROSPECT HILL GROWTH PARTNERS, https://www.prospecthillgrowth.com/about-us (last visited Jan. 26, 2023).

participate from insurance networks to increase profits or the web of non-compete and no-poach restrictions,[16] both of which create risk for the individual doctors working for A4—or other completely unrelated issues. Further, economic analysis of the amount A4 was paid, profited, and would have been paid or profited in the but-for world without BCBSM's alleged actions will have substantial overlap, regardless of the alleged cause of the rate.

Thus, even if the Court found there were "multiple claims," the first factor would weigh in favor of denial. *QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, No. 3:02CV7466, 2008 WL 163605, at *6 (N.D. Ohio Jan. 16, 2008) ("While the claims may not be similar enough to . . . to be considered parts of the same claim, they share a common factual background that is complicated, but necessary to their understanding.") (Ex. F). Because of these overlapping issues between A4's claims, an immediate appeal might also be mooted by future developments and there is a real risk that the Court of Appeals will be asked to review the same issue multiple times. *See Carpenter*, 850 Fed. App'x. at 355-56 (finding that if a defense to an unadjudicated claim was successful at trial it would render moot appellate consideration of the dismissed claim); *Lowery*, 426 F.3d at 823 (stating that "the greater the overlap in the factual basis between the adjudicated

---

[16] *See* ECF No. 26, PageID.888-89, 895.

and unadjudicated claims, the greater the possibility that this court will have to revisit the same facts under a different theory in a second appeal").

## B. Potential Set-Off from BCBSM's Counterclaim Weighs Against Certification

The fourth factor counsels against Rule 54(b) certification because BCBSM has a counterclaim which could result in a set-off against any eventual judgment on the Hospital Conspiracy claims and state claims. As addressed in BCBSM's Unopposed Counter-Motion for Partial Final Judgment Pursuant to Rule 54(b), BCBSM previously brought a counterclaim in this case with factual issues that are inextricably intertwined with the facts at issue in A4's Hospital Conspiracy, including A4's use of non-compete and no-poach clauses as well as A4's de-participation and eventual rejoining of BCBSM's network. If BCBSM were to be successful with its counterclaim, this could result in a set-off in judgment on some of the claims A4 now seeks to certify.[17]

---

[17] Although this counterclaim was dismissed, BCBSM will have the opportunity to appeal that dismissal when final judgment is entered. In the absence of other interlocutory appeals, BCBSM would consider the appropriate time to make this appeal to be when final judgment had been entered on *all* claims in the case. However, if A4's Hospital Conspiracy and state claims are certified under Rule 54(b), because the issues in the counterclaim are so inextricably intertwined with A4's dismissed Hospital Conspiracy, BCBSM's Counter-Motion argues that BCBSM's counterclaim should be considered simultaneously as well.

## C. Miscellaneous Considerations of Efficiency and Equity Weigh Against Certification

The miscellaneous considerations under the fifth factor and general principles underlying Rule 54(b) also weigh in BCBSM's favor.  As an initial matter, the litigation process at its core is designed to narrow the issues throughout the course of a case, and the general rule against interlocutory appeals facilitates this process. *See, e.g.*, *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006) ("Interlocutory appeals have long been disfavored in the law, and properly so.  They disrupt and delay the proceedings below.").  What A4 seeks to do is the opposite of narrowing the issues, and instead will bring the proceedings right back to where they started on the day A4 filed its original complaint.  The only difference will be that the litigation will now be split between two courts—the court of appeals and the district court.  Therefore, efficient judicial administration will not be served by piecemeal judgments and appeals of this case. *See Curtiss–Wright*, 446 U.S. at 8.

A4 makes much of the fact that if it is not able to appeal now, it may have to file its state law claims in state court to avoid being barred by the statute of limitations.  Although denial of A4's Rule 54(b) motion *may* result in A4 filing one case in state court (if it chooses to do so), certification of A4's dismissed claims under Rule 54(b) is *guaranteed* to multiply the claims to be heard by the federal courts (including an appeal of both A4's federal and state claims, and then possible remand of some or all of those claims).  And surely A4 having to file its state law

claims in state court to avoid statute of limitation defenses is not the type of unduly "harsh" or inequitable result Rule 54(b) seeks to prevent. *See Little Caesar*, 916 F. Supp. at 664.

Further, the Court's decisions dismissing A4's claims merely applied well-settled *Twombly* and jurisdictional principles. There is no novel or unusual question for the appeals court to decide such that immediate appeal is necessary. *See In re Hardesty*, No. 18-0317, 2018 WL 7046869, at *1 (6th Cir. Nov. 13, 2018) ("[I]nterlocutory Review is not favored 'in ordinary cases, which involve the application of well-established standards to the facts of a particular case.") (Ex. G); *In re Cintas Corp. Overtime Pay Arb. Litig.*, No. M06-CV-01781-SBA, 2007 WL 1302496, at *1 (N.D. Cal. May 2, 2007) ("Certification for interlocutory appeal is appropriate when an interlocutory order involves a controlling question of law on which there is a substantial ground for difference of opinion, whose immediate appeal may materially advance the ultimate termination of the litigation.") (Ex. H).

Additionally, A4's abstract claim of potential "solvency risks" is speculative, unsupported, and contrary to the allegations in its most recently filed Amended Complaint, where A4 does not even allege it is unprofitable, just that it is not as profitable as it wishes it could be.[18] A4's solvency concerns should be disregarded.

---

[18] *See, e.g.*, ECF No. 53, PageID.1939. A4 also has plenty of resources from its private equity backer. *See* BLOOMBERG, *supra* n.15 ($3.6 billion in investments by J.W. Childs Associates since its inception); SIROMED PHYSICIAN SERVICES,

*See QSI-Fostoria DC*, 2008 WL 163605, at *7 ("An unsupported allegation, however, about the possibility of bankruptcy, without presentation of reasons to support such a suspicion, does not, by itself, justify certification for appeal."); *Rheumatology Diagnostics Laboratory, Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2014 WL 2586339, at *2 (N.D. Cal. June 19, 2014) (denying Rule 54(b) certification, in part, because "plaintiffs argue that 'by the time the remaining issues are fully litigated Plaintiffs will likely be insolvent,' but they presented no evidence in support of that speculative conclusion") (Ex. I).

## D. Likelihood of Imminent Transfer to the MDL Weighs Against Certification

Finally, the likelihood of imminent transfer of A4's Blues Conspiracy claims to the MDL weighs in favor of a swift denial of A4's 54(b) motion. As A4 notes, following the Court's December 29 Order, BCBSM filed a notice of potential tag-along with the JPML, and on January 12, 2023, a conditional transfer order was entered because the Clerk of the JPML found that the present action "involve[s] questions of fact that are common to the actions previously transferred to the Northern District of Alabama and assigned to Judge Proctor." Although A4 has filed notice of opposition to the conditional transfer order, BCBSM expects that the JPML will transfer this case because A4's only remaining claims (the Blues Conspiracy)

---

https://siromedhealth.com (last visited Jan. 26, 2023) (stating Siromed specializes in "sourcing capital" for physician practices).

are nearly identical to the allegations in the MDL. This creates several potential issues.

First, although this Court still has jurisdiction until transfer is finalized, the case could be transferred to the MDL while the Court is in the midst of rendering its decision on A4's Rule 54(b) motion, at which point the Court will immediately lose jurisdiction. *See Glasstech Inc, v. AB Kyro OY*, 769 F.2d 1574, 1577-78 (Fed. Cir. 1985) (holding that Michigan district court ruling on a preliminary injunction was improper because the court was "divested of jurisdiction . . . two days before its decision" by the JPML's transfer order). This could occur after the Court has spent significant time reviewing the parties' briefing and preparing an opinion, but since the Court would no longer have jurisdiction the Alabama district court would have to go through the same exercise. This would waste the Court's time and create inefficiencies in not one, but two, district courts.[19]

---

[19] If the instant motion were to be heard in the Alabama district court following transfer, the Eleventh Circuit law on Rule 54(b) is substantially the same. *See, e g.*, *Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022) ("A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b). . . . First, the court must determine that its final judgment is, in fact, both final and a judgment. That is, the court's decision must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action, and a 'judgment' in the sense that it is a decision upon a cognizable claim for relief."); *Williams v. Alabama Dep't Indus. Rels.*, No. 4:13-CV-1825-KOB, 2014 WL 6090784, at *3 (N.D. Ala. Nov. 13, 2014) (stating that there are multiple claims for purposes of Rule 54(b) when "there is more than one possible recovery" and the "asserted avenues of recovery are not 'mutually exclusive, or substantially overlap[ing]'") (Ex. J); *Robinson v. Akal Sec., Inc.*, No.

Further, if the Court does grant A4's Rule 54(b) motion and the case is subsequently transferred, the Eleventh Circuit may need to review this Court's dismissal of the Hospital Conspiracy and state claims even if A4 has already filed an appeal in the Sixth Circuit.[20] This once again has the potential to create inefficiencies, and put the Eleventh Circuit in the position of having to review this Court's prior decisions (which would not normally be within its jurisdiction and were made under Sixth Circuit law) and evaluate Michigan state law claims.

Therefore, A4's dismissed claims do not meet the standard for "no just reason for delay" under the second step of the Rule 54(b) analysis, and A4's motion for partial final judgment should be denied.

## CONCLUSION

For the foregoing reasons, A4's motion for entry of a partial final judgment should be denied.

---

20-12143, 2022 WL 16739124, at *2 (11th Cir. Nov. 7, 2022) (stating that in addressing whether there is no just reason for delay, the court "'must take into account judicial administrative interests as well as the equities involved.' Consideration of the former promotes the policy against piecemeal appeals while the latter limits certification 'to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay.'") (all quoting references omitted).

[20] Whether an appeal from a case filed in a transferor court is heard by the transferee circuit is a matter of circuit court law, which is currently split. *See, e.g.*, *Astarte Shipping Co. v. Allied Steel & Export Serv.*, 767 F.2d 86 (5th Cir. 1985); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991).

Dated: January 27, 2023

Respectfully submitted,

SHEARMAN & STERLING LLP
By: */s/ Todd M. Stenerson*
Todd M. Stenerson (P51953)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

Rachel Mossman Zieminski (*admitted in E.D. Mich.*, Texas Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777

BODMAN PLC
By: */s/ Thomas J. Rheaume, Jr.*
Thomas J. Rheaume, Jr. (P74422)
Sarah L. Cylkowski
Alexandra C. Markel
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
trheaume@bodmanlaw.com


*Attorneys for Defendant Blue Cross Blue Shield of Michigan*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ Todd M. Stenerson*
Todd M. Stenerson
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

*Attorneys for Defendant BCBSM*