**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | MDL No. 2406 |

*Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, No. 2:20-cv-12916-TGB-APP (E.D. Mich. 2020)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S
<u>MOTION TO VACATE CONDITIONAL TRANSFER ORDER 39</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.     Judge Proctor's Statements Confirm that There Is No Benefit to Transferring the *A4* Litigation at This Stage. ................................................................................... 2

    II.    Transfer Would Cause Inefficiency and Delay, as BCBSM Itself Argued to Judge Berg. ................................................................................................................................ 5

    III.   Judge Proctor's Statements Confirm that Any Benefits of Transfer Can Be More Readily Achieved Through Alternative Means. .......................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*In re 7-Eleven Franchise Antitrust Litig.*,
358 F. Supp. 286 (Jud. Pan. Mult. Lit. 1973) ........ 8

*In re A.H. Robins Co., Inc.*,
610 F. Supp. 1099 (Jud. Pan. Mult. Lit. 1985) ........ 10

*In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*,
659 F. Supp. 2d 1371 (Jud. Pan. Mult. Lit. 2009) ........ 4, 5

*In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*,
458 F. Supp. 225 (Jud. Pan. Mult. Lit. 1978) ........ 7

*In re Grain Shipments*,
319 F. Supp. 533 (Jud. Pan. Mult. Lit. 1970) ........ 8

*In re Petroleum Prod. Antitrust Litig.*,
476 F. Supp. 455 (Jud. Pan. Mult. Lit. 1979) ........ 8, 9, 10

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
170 F. Supp. 2d 1346 (Jud. Pan. Mult. Lit. 2001) ........ 7

*In re Smith Pat. Litig.*,
407 F. Supp. 1403 (Jud. Pan. Mult. Lit. 1976) ........ 8

*In re Vioxx Products Liab. Litig.*,
360 F. Supp. 2d 1352 (Jud. Pan. Mult. Lit. 2005) ........ 8

*In re: Cessna 208 Series Aircraft Prod. Liab. Litig.*,
655 F. Supp. 2d 1379 (Jud. Pan. Mult. Lit. 2009) ........ passim

*In re: Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373, 1373-74 (Jud. Pan. Mult. Lit. 2011)
........ 9, 10

## Rules

Fed. R. Civ. P. 15 ........ 8

Fed. R. Civ. P. 54 ........ 2, 6, 7, 8

**PRELIMINARY STATEMENT**

Conditional Transfer Order 39 should be vacated. The *A4* litigation is between a single provider (A4) and a single insurer (BCBSM); it has been proceeding since October 2020 without discovery on the other MDL parties or inconsistent rulings with the MDL proceedings; and, *critically, the MDL court has already recommended remand for the individual provider cases in the MDL, i.e., cases like A4's*. Last May, the Honorable R. David Proctor said of the individual provider actions in the MDL:

> [A]ll these other cases are just sitting there in orbit waiting; right? . . . **Why would we keep those cases in orbit if it's likely I'm never going to be making rulings on those?** . . . **I don't think it makes sense for me to be dealing with specific damage issues on these other cases and specific equitable or injunctive relief issues on these other cases**. . . . Why wouldn't we get to that point sooner rather than later to decouple the MDL, **send those cases back, or at least suggest the panel send those cases back**, and I'll handle what I'm going to handle anyway?

Ex. 1, Transcript at 15-16, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 2921 (May 23, 2022) (emphasis added). Judge Proctor then exhorted the parties to "start you on that process now" for remand. *Id.* at 16. Judge Proctor's instructions show that there is no benefit to transferring more individual-provider cases (particularly not A4's, with its unique pre-trial issues): the MDL court has conducted "global discovery and global motion practice" and "sooner rather than later" the individual provider cases in the MDL "need[] to go back to the transferor judges." *Id.* at 15.

The Panel's case law confirms that under these circumstances the conditional transfer order should be vacated. Transfer is improper when "essentially all of the primary objectives of centralization" are met and "the advantages of transferring a particular tag-along no longer clearly outweigh the disadvantages." *In re: Cessna 208 Series Aircraft Prod. Liab. Litig.*, 655 F. Supp. 2d 1379, 1381 (Jud. Pan. Mult. Lit. 2009). There is no benefit to transferring the *A4* litigation so that it can simply wait to be transferred back as part of the remand process that the

MDL court has already said should begin. By contrast, if *A4* is litigated in the MDL there would be numerous disadvantages, including burdening the MDL court with pending Rule 54(b) motions on unrelated claims and with unique allegations and defenses requiring discovery.

BCBSM's arguments against vacatur boil down to the repeated insistence that the MDL proceedings are "not so advanced" that transfer is inappropriate. Opp. at 16; *see id.* at 14. However, Judge Proctor has confirmed that the MDL proceedings are so advanced that it is time to begin the remand process for individual provider actions. Ex. 1 at 15-16. BCBSM also insists that the Rule 54(b) motions in the *A4* case pose no hurdle to transfer; however, BCBSM argued *the opposite* in the *A4* proceedings. In January 2023, BCBSM argued to Judge Berg that if the case were transferred while the Rule 54(b) motions were still pending, "[t]his **would waste the Court's time and create inefficiencies in not one, but two, district courts**." Mot. Ex. M at 23, ECF 567-16 (emphasis added).[1] BCBSM cannot argue otherwise to the Panel. Leaving aside these contradictions, BCBSM does not provide a single example of the Panel transferring a case with a pending Rule 54(b) motion, let alone one that could greatly expand the MDL proceedings.

## ARGUMENT

### I. Judge Proctor's Statements Confirm that There Is No Benefit to Transferring the *A4* Litigation at This Stage.

The Panel has long recognized that the benefits of transfer diminish significantly after "[a]ll common discovery is completed" and the MDL court has resolved "multiple complex motions." *In re: Cessna*, 655 F. Supp. 2d at 1380 & n.1. At that point, "transfer of [an additional action] to the MDL would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." *Id.* at 1381. A4 has shown that the

---

[1] Unless otherwise indicated, ECF references are to these proceedings at MDL 2406.

2

MDL provider track is there: with discovery completed and several pre-trial motions resolved. ECF 567-1 at 13 ("Mot."). Indeed, the MDL court in 2021 ordered "[a]ll potentially dispositive motions . . . not critically dependent on the outcome of class certification" to be completed. Order at 1, *In re BCBS*, No. 2:13-cv-20000-RFP, ECF 2767 (June 25, 2021); *see* Opp. at 2.

BCBSM raises only one argument against applying *In re: Cessna* here: "in that case, the transferee Judge had herself already concluded that 'pretrial proceedings as to common issues . . . [were] nearly complete.' Here Judge Proctor has made no such declaration." Opp. at 15 (brackets in original) (internal citation omitted). In fact, Judge Proctor has said as much *and more*. During a May 2022 conference, Judge Proctor urged remand for the individual provider actions, so that the MDL would focus on the core "nationwide" class and "Alabama" claims:

> [A]ll these other cases are just sitting there in orbit waiting; right? And we're essentially, to some degree, treating the Alabama cases as the bellwether on damages and taking up the nationwide injunction claims that the plaintiffs want us to take up. **Why would we keep those cases in orbit if it's likely I'm never going to be making rulings on those?** They're going to have to be addressed, and I—you know, if we were to get to a certain point where we know it's time to decouple this litigation—because **I don't think it makes sense for me to be dealing with specific damage issues on these other cases and specific equitable or injunctive relief issues on these other cases**. That needs to go back to the transferor judges after we've allowed you to do the global discovery and global motion practice you wanted to handle. **Why wouldn't we get to that point sooner rather than later to decouple the MDL, send those cases back, or at least suggest the panel send those cases back**, and I'll handle what I'm going to handle anyway? And we could—the different judges handling those things can choose to treat us as a bellwether or not.

Ex. 1 at 15-16 (emphasis added). Judge Proctor's comments confirm that the MDL proceedings have already *passed* the point of benefitting from the inclusion of the individual provider cases. The MDL proceedings have been through "global discovery and global motion practice," and all that is left for the individual provider cases are "specific damages issues . . . and specific equitable or injunctive relief issues" on which the MDL court is "never going to be making rulings." *Id.* at 15. Thus, contrary to BCBSM, the MDL proceedings have reached a "stage of

3

maturity" where they are "so advanced that transfer of the the *A4* litigation would be inappropriate." Opp. at 14, 16. Because the MDL has reached that stage, BCBSM cannot oppose vacatur by citing to transfer decisions in this case from 2012, *before* Judge Proctor resolved discovery and much of the pre-trial proceedings. *See id.* at 2 & nn.1-2 (citing Transfer Order, ECF 146 (Dec. 28, 2012); Transfer Order, ECF 145 (Dec. 27, 2012)); Mot. at 4-5.

Judge Proctor's comments also nullify BCBSM's attempt to distinguish this Panel's vacatur decision *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 659 F. Supp. 2d 1371 (Jud. Pan. Mult. Lit. 2009). BCBSM claims that *In re Bridgestone* is irrelevant because there remand had already begun. Opp. at 15. However, Judge Proctor has stated that this case should "start [] on that process now." Ex. 1 at 17. Judge Proctor also instructed that remand need not wait for all pre-trial issues involving the nationwide class and Alabama cases to be resolved and that instead the remanded actions and the remaining MDL actions should proceed in parallel: "Why wouldn't we get to that point sooner rather than later to decouple the MDL, send those cases back . . . and I'll handle what I'm going to handle anyway? And we could – the different judges handling those things can choose to treat us as a bellwether or not." *Id.* 1 at 16.

BCBSM's opposition cites to Judge Proctor but ignores his May 2022 comments and instead attempts to misquote him from a November 30, 2022 status conference. Opp. at 16. The actual quote shows that Judge Proctor was merely referring to a statement by the parties, "I think *the parties advised the Court* that the best thing for the case on the litigation track and the best thing for the case on any potential settlement track is to keep moving," and that quote in no way departs from his stated position on the need for remanding the individual provider actions. Transcript at 13, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 3010 (Dec. 6, 2022) (emphasis added). Indeed, between the May 2022 and November 2022 conferences, Judge Proctor had

4

resolved two additional summary judgment motions, thereby providing further support for his conclusion that the case was ripe to begin the remand process for the individual provider actions. *See* Mot. at 4; Ex. 1 at 15.

By pointing to Judge Proctor's statements, BCBSM has therefore merely underlined the need to vacate the conditional transfer order. Judge Proctor's statements about remand show that this case is at "the point of diminishing benefit in tag-along transfers" of individual provider actions. *In re Bridgestone*, 659 F. Supp. 2d at 1372. Transferring *A4* case is therefore "no[t] [] necessary to achieve the just and efficient conduct of the litigation," *id.*, and "would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation," *In re: Cessna*, 655 F. Supp. 2d at 1381.[2]

If Judge Proctor continues his policy of not adjudicating the individual provider claims, transferring the *A4* case would simply put it in hiatus while it awaited remand along with the other individual provider actions. That would not benefit any party, except possibly BCBSM, as it knows that with delay comes the increased possibility that A4—which is being "destroy[ed]" by "BCBSM's conduct"—may cease operating before its claims are resolved. Mot. Ex. L at 16, ECF 567-15; *see id.* at 15. Denying justice through delay is not a basis for transfer.

## II. Transfer Would Cause Inefficiency and Delay, as BCBSM Itself Argued to Judge Berg.

The non-existent benefits of transfer are also outweighed by the concrete disadvantages transfer would bring. If transferring the *A4* litigation were simple, BCBSM would not have

---

[2] BCBSM also points to a February 2022 transfer of a *subscriber* action in these proceedings, Opp. at 2 (citing ECF 554); *see* ECF 541 at 1-2, but that does not contradict Judge Proctor's subsequent comments that the *individual provider* actions should be remanded, *see* Ex. 1 at 15-16. No provider cases have been transferred since 2019. *See* ECF 429. Last year, transfer was refused for a tagged provider case, even though it included a claim based on the same facts as in the MDL provider complaint, Mot. at 8-9, thereby undermining BCBSM's incorrect assertion that some factual overlap alone can justify transfer here, *see* Opp. at 1, 7.

waited *over two years*—during which it conducted discovery and litigated multiple motions—before filing a tag-along notice. BCBSM waited because the *A4* litigation, from the start, involved multiple claims—the Hospital Conspiracy, the Michigan Tort claims, and, subsequently, the BCBSM Counterclaims—that are outside the MDL proceedings. Mot. at 6-7.

Now, each of those distinct claims in the *A4* litigation are subject to pending Rule 54(b) motions, which, if granted, could lead to the Hospital Claims, Michigan Tort claims, and BCBSM Counterclaims being re-instated. While BCBSM's opposition brief insists that the *A4* litigation could be transferred, along with these pending Rule 54(b) motions, without issue, Opp. at 20, BCBSM *argued the opposite* in the *A4* litigation. On January 27, 2023, BCBSM argued to Judge Berg that if the case were transferred while A4's Rule 54(b) motion was pending, "[t]his would waste the Court's time and **create inefficiencies in not one, but two, district courts**." Mot. Ex. M at 23, ECF 567-16 (emphasis added). BCBSM further represented that MDL transfer could lead to the Eleventh Circuit deciding any Rule 54(b) appeals and that "**[t]his once again has the potential to create inefficiencies**." *Id.* at 24 (emphasis added).

Having vociferously argued mere weeks ago in one court that it would be a "waste" and "inefficien[t]" if the Rule 54(b) motions were transferred to the MDL proceedings, BCBSM cannot credibly argue the opposite to the Panel. *Id.* at 23-24. Regardless, there is no denying that it would be inefficient to have the MDL court decide Rule 54(b) motions (or the Eleventh Circuit decide subsequent appeals) concerning complex, fact-intensive claims in the *A4* case that are unrelated to the MDL proceedings.

Notably, BCBSM does not cite to a single order of this Panel transferring a case while there was a pending Rule 54(b) motion concerning claims that were unrelated to the MDL proceedings. BCBSM instead cites to inapposite decisions, Opp. at 19, involving transfer when

there was a "pending motion to remand to state court," *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (Jud. Pan. Mult. Lit. 2001), or pending "motions to dismiss," *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 230 (Jud. Pan. Mult. Lit. 1978). Neither situation is analogous here: a motion to dismiss that overlaps with the core claims in the MDL is well within the purview of the MDL court; likewise, a motion to remand to state court presents straightforward procedural questions. Here, however, there are pending Rule 54(b) motions seeking appeal on multiple claims that are alien to the MDL and, if transferred, could vastly expand the scope of those proceedings.

Unable to counter this point, BCBSM falsely insists that "A4 manufactured the issue . . . by filing its Rule 54(b) motion after it was on notice that BCBSM was considering tagging the case to the MDL." Opp. at 20. In fact, BCBSM has been insisting that it is "inclined to tag this suit to the Alabama MDL," **since December 29, 2020**, yet for over two years it never did so. Ex. 2, Ltr. from BCBSM Counsel at 3 (Dec. 29, 2020). It was not until A4 stated its intent to file a Rule 54(b) motion that BCBSM, that same week, filed a tag-along notice, possibly hoping that transfer could delay or prevent any interim appeal. Mot. at 4 n.1. A4's Rule 54(b) papers demonstrate it had good cause for its motion, and if BCBSM believed otherwise, it would not have filed its conditional Rule 54(b) motion. *See* Mot. Exs. L, N, ECF 567-15, -17. Transferring these motions now would, as BCBSM argued, create significant inefficiencies. *See* p.6, *supra*.

Even if these Rule 54(b) motions are denied prior to the Panel ruling, transferring the *A4* litigation onto the ten-year old MDL proceedings still presents multiple disadvantages. First, if the Rule 54(b) motions are denied on the grounds that the dismissal of A4's claims are not final, A4 can move to amend its Hospital Claims and Michigan Tort Claims with new allegations. Contrary to BCBSM, Opp. at 10 n.8, such a motion would not have to meet the standard for

7

reconsideration under Rule 54(b), it would only need to satisfy the much more liberal standard under Rule 15(a)(2). *See* Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave when justice so requires."). Thus, regardless of whether the Rule 54(b) motions are granted, transfer would necessarily involve the MDL with multiple, complex claims outside the core MDL.

The disadvantages of transfer extend even to the one claim where the *A4* litigation has factual overlap with the MDL, the Blues Conspiracy claim. Transferring that claim would introduce unique allegations and defenses, requiring their own discovery and pre-trial motions. Mot. at 10-12. BCBSM does not deny that these issues exist.[3] While BCBSM insists that unique issues have not prevented transfer in other cases, Opp. at 11-13, those cases involved earlier-stage MDLs with discovery "ongoing" or not even started.[4] Early in an MDL, unique issues can be accommodated because, as BCBSM states, the transferee court can "allow[] discovery with respect to any non-common issues to proceed concurrently with discovery on common issues," and "ensure[] that pretrial proceedings will be conducted" efficiently. Opp. 12 (quoting *In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (Jud. Pan. Mult. Lit. 2005)).

This analysis changes once MDL proceedings have reached an advanced stage: at that point unique issues can "disrupt and substantially delay the orderly progress of pretrial proceedings in the transferee district." *In re Petroleum Prod. Antitrust Litig.*, 476 F. Supp. 455, 458 (Jud. Pan. Mult. Lit. 1979); *see In re: Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373,

---

[3] While BCBSM accuses A4 of being "misleading" when A4 pointed out that these unique issues involve conduct in 2019, Opp. at 9, here too BCBSM contradicts itself. BCBSM insisted to Judge Berg two months ago, that the Blues Conspiracy claim would involve "discovery" into A4's alleged "strategy" after it "'partnered' with [Siromed] in 2018" and into A4's attempt to "de-participate from" BCBSM in 2019. Mot. Ex. M at 17-18 & n.15, ECF 567-16.

[4] *In re Grain Shipments*, 319 F. Supp. 533, 534-35 (Jud. Pan. Mult. Lit. 1970) (transferring additional case one year after cases were consolidated); *see In re Smith Pat. Litig.*, 407 F. Supp. 1403, 1404-05 (Jud. Pan. Mult. Lit. 1976) (ordering initial MDL transfer); *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (Jud. Pan. Mult. Lit. 1973).

1373-74 (Jud. Pan. Mult. Lit. 2011). Here, common discovery has been completed, Mot. at 4, and the remaining pre-trial issues are essentially those "critically dependent" on class certification, p.3, *supra*; *see* Ex. 1 at 15. There is no ongoing discovery into which the *A4* case's discovery needs can be assimilated. Instead, Judge Proctor would have to re-open discovery.

If that discovery bore out any of the *A4* case's unique allegations and defenses, the court may also have to address new, or revisit old, pre-trial substantive rulings. That outcome would create further delay, because as Judge Proctor already stated, "I don't think it makes sense for me to be dealing with specific" issues related to the individual provider cases in the MDL. Ex. 1 at 15. It would make even less sense, to transfer in *another* individual provider case, particularly one, such as A4's, that has unique allegations and defenses requiring discovery. Because these aspects of the *A4* litigation "threaten[] to significantly hinder the resolution of the already-centralized actions," they provide an independent reason for vacating the conditional transfer order. *In re: Checking*, 818 F. Supp. 2d at 1374; *see In re: Cessna*, 655 F. Supp. 2d at 1381.

### III. Judge Proctor's Statements Confirm that Any Benefits of Transfer Can Be More Readily Achieved Through Alternative Means.

Finally, any benefits of transferring the *A4* case "could more easily be garnered by suitable alternatives." *In re Petroleum*, 476 F. Supp. at 458. As to judicial efficiency, Judge Proctor already concluded that it would be more efficient for individual-provider issues to be decided by their originating courts—which "can choose to treat us as a bellwether"—than for the MDL to hold onto those cases. Ex. 1 at 15-16. Given these comments and given that Judge Berg is already taking guidance from the MDL decisions, Mot. at 15, transfer is not necessary.[5]

---

[5] BCBSM argues about the risk of "inconsistent" rulings, Opp. at 14, but that claim is belied by BCBSM having spent two years in the *A4* case participating in discovery and litigation, while also pressing, ultimately unsuccessfully, to have Judge Berg reach a different conclusion than the MDL court. *See, e.g.*, BCBSM Reply at 7 n.6, *A4*, No. 2-20-cv-12916-TGB-APP, ECF 24.

As to streamlining discovery, that can readily be achieved through discovery sharing rather than transfer. *See* Mot. at 14. While BCBSM complains that sharing discovery would require a protective order that satisfies the MDL parties, A4 has demonstrated it can negotiate one. Opp. 17. A4 and BCBSM previously agreed to, and Judge Berg entered, an Amended Qualified Protective Order that overlaps with the Qualified Protective Order in the MDL proceedings, including protections for "Outside Attorneys' Eyes Only Information," "Confidential Health Information," and "Protected Health Information." Ex. 3, Protective Order, at 2-3, 6-7, *A4*, No. 2-20:cv-12916-TGB-APP, ECF 62 (Aug. 30, 2021); *see* Ex. 4, Protective Order at 1-2, 4-6, *In re BCBS*, No. 2:13-cv-20000-RDP, ECF 550 (Feb. 23, 2016). The *A4* protective order shows that A4 is more than ready to "agree upon a stipulation" for discovery sharing that would satisfy the MDL parties. *In re Petroleum*, 476 F. Supp. at 458. And failing that, this Panel has recognized that discovery sharing can be achieved through court order. *In re A.H. Robins Co., Inc.*, 610 F. Supp. 1099, 1100 (Jud. Pan. Mult. Lit. 1985).

Discovery sharing also eliminates the risk of inconsistent discovery rulings, because A4 has already confirmed that it will not seek new discovery in the Eastern District of Michigan from the other MDL parties. Mot. at 2, 15. To the extent discovery is re-opened in the MDL, as BCBSM hypothesizes, Opp. 14 n.9, A4 can seek access to that new discovery (and the MDL parties can seek discovery from the *A4* case), without any risk of duplication. In any event, the Panel has vacated transfers even when MDL discovery *is ongoing*, thus underlining the basis for vacatur here. See *In re Checking*, 818 F. Supp. 2d at 1373-74 (MDL proceedings in "various stages of discovery"); *In re Petroleum*, 476 F. Supp. at 456 (same).

## CONCLUSION

The Panel should vacate Conditional Transfer Order 39.

Date: March 2, 2023

        Respectfully submitted,

        */s/ Jonathan D. Schiller*
        BOIES SCHILLER FLEXNER LLP
        Jonathan D. Schiller, Esq. (N.Y. Bar No. 4523460)
        David Barillari, Esq. (N.Y. Bar No. 5448410)
        55 Hudson Yards
        New York, NY 10001
        (212) 446-2300
        jschiller@bsfllp.com
        dbarillari@bsfllp.com

        RILEY SAFER HOLMES & CANCILA LLP
        Gregory L. Curtner (Mich. Bar No. P12414)
        Matthew Kennison (Mich. Bar No. P79653)
        121 W. Washington Street, Suite 402
        Ann Arbor, MI 48104
        (734) 773-4900
        gcurtner@rshc-law.com
        mkennison@rshc-law.com

        *Counsel for Anesthesia Associates of Ann Arbor, PLLC*

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | MDL No. 2406 |
|---|---|

*Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, No. 2:20-cv-12916-TGB-APP (E.D. Mich. 2020)

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I caused a copy of the foregoing Reply Memorandum of Law in Support of Plaintiff Anesthesia Associates of Ann Arbor PLLC's Motion to Vacate Conditional Transfer Order 39, Index of Exhibits, and accompanying Exhibits, to be electronically filed with the Judicial Panel on Multidistrict Litigation using the CM/ECF electronic filing system, which will send electronic notification of such filing to all parties of record.

Respectfully submitted,

*/s/ Jonathan D. Schiller*
BOIES SCHILLER FLEXNER LLP
Jonathan D. Schiller, Esq. (N.Y. Bar No. 4523460)
David Barillari, Esq. (N.Y. Bar No. 5448410)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
jschiller@bsfllp.com

*Counsel for Anesthesia Associates of Ann Arbor, PLLC*