# EXHIBIT 1

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF ALABAMA

3                SOUTHERN DIVISION

4

5  IN RE BLUE CROSS BLUE SHIELD      CASE NO. 2:13-cv-20000-RDP
   ANTITRUST LITIGATION MDL 2406
6

7                *  *  *  *  *  *  *

8                STATUS CONFERENCE

9                *  *  *  *  *  *  *

10

11        BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

12  DISTRICT JUDGE, at Birmingham, Alabama, on Monday, May 16,

13  2022, commencing at 9:42 a.m.

14

15  APPEARANCES:

16  SPECIAL MASTER:          Edgar C. Gentle III
                             Attorney at Law
17                           GENTLE TURNER SEXTON & HARBISON
                             501 Riverchase Parkway East, Suite 100
18                           Hoover, Alabama 35244

19
    IN PERSON:               David Benck
20                           Alexander McInnis Boies
                             David Boies
21                           Swathi Bojedla
                             W. Tucker Brown
22                           Carl S. Burkhalter
                             Erin C. Burns
23                           Warren Burns
                             U. W. Clemon
24                           Charles J. Cooper
                             Gregory L. Davis
25                           Douglas A. Dellaccio, Jr.

| | APPEARANCES, CONTINUED: |
|---|---|
| 1 | APPEARANCES, CONTINUED: |
| 2 | Karin DeMasi |
| | Michael C. Dodge |
| 3 | Jay Ezelle |
| | Sarah M. Gilbert |
| 4 | David J. Guin |
| | Michael E. Gurley |
| 5 | Katherine A. Harbison |
| | Michael D. Hausfeld |
| 6 | Christopher T. Hellums |
| | Craig A. Hoover |
| 7 | Hamish Hume |
| | John M. Johnson |
| 8 | Megan Jones |
| | Edith M. Kallas |
| 9 | Lauren R. Kennedy |
| | Cavender C. Kimble |
| 10 | Cason Kirby |
| | Amanda Klevorn |
| 11 | Donald D. Knowlton, II |
| | Jonathan S. Mann |
| 12 | David Markewitz |
| | Patrick McDowel |
| 13 | R. G. Methvin, Jr. |
| | W. Daniel Miles, III |
| 14 | Jess R. Nix |
| | Dennis G. Pantazis |
| 15 | Gwendolyn C. Payton |
| | Myron C. Penn |
| 16 | Michael R. Pennington |
| | Aaron S. Podhurst |
| 17 | Ben Presley |
| | Barry A. Ragsdale |
| 18 | Thomas Richie |
| | Robert B. Roden |
| 19 | Julia Smeds Roth |
| | Nicholas B. Roth |
| 20 | Richard P. Rouco |
| | Emily Myers Ruzic |
| 21 | Robin Sanders |
| | Cyril V. Smith, III |
| 22 | Todd M. Stenerson |
| | Tammy McClendon Stokes |
| 23 | James M. Terrell |
| | Joseph M. Vanek |
| 24 | Michael Velezis |
| | Trey Wells |
| 25 | Joe R. Whatley, Jr. |

```
 1   APPEARANCES, CONTINUED:

 2                               J. Mark White
                                 Helen E. Witt
 3                               E. Kirk Wood, Jr.

 4
     VIA VIDEOCONFERENCING:  Lauren Azzopardi
 5                           Patrick Bachman
                             Kitty Rogers Brown
 6                           Justine Casey
                             Kathleen Chavez
 7                           Lee Deneen
                             Augusta Dowd
 8                           Dave Gaertner
                             Michelle Heikka
 9                           Desmond Hogan
                             Elizabeth Jose
10                           Casey Lott
                             Hope Marshall
11                           Rebecca McKinney
                             Robert Meyer
12                           Michael Naranjo
                             Richard Nix
13                           Allen Page
                             Henry Quillen
14                           Heidi Raschke
                             Harold Reeves
15                           Tracy Roman
                             Patrick Sheehan
16                           Scott Burnett Smith
                             Kathleen Sooy
17                           Andrew Stone
                             Jeff Zeiger
18
     VIA TELEPHONE:          Elizabeth Pollock Avery
19                           Timothy Battin
                             Eric Belin
20                           Jack Brady
                             Virginia Buchanan
21                           Reed Coleman
                             Steve Dampier
22                           Karen Dowd
                             Michael Ford
23                           Nina Frazier
                             Dino Gankendorff
24                           John Gravante
                             Joey James
25
```

```
 1    APPEARANCES, CONTINUED:

 2                          Ed Kilpela
                            Casey Lott
 3                          Mahaley McInnes
                            Rebekah McKinney
 4                          Patricia Murphy
                            Elaine Nichenko
 5                          Sean O'Connell
                            Ami Swank
 6                          Charles Thompson

 7

 8

 9          The proceedings were reported by a stenographic court

10    reporter.  The transcript was produced using computer-aided

11    transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (The following proceedings were heard before the

2  Honorable R. David Proctor, United States District Judge, at

3  Birmingham, Alabama, on Monday, May 16, 2022, commencing at

4  9:42 a.m.)

5          THE COURT:  All right.  Good morning.

6          COUNSEL IN UNISON:  Good morning.

7          THE COURT:  How are y'all doing?

8          MR.RAGDSDALE:  Good.

9          MR. BOIES:  Very well.

10          THE COURT:  Nothing like starting off a Monday morning

11  in the courtroom on Blue Cross Blue Shield.  And that's what

12  we're here in, in the In Re Blue Cross Blue Shield Antitrust

13  Litigation, 13-CV-20000.  The Court set this date for a status

14  conference.  The Special Master circulated an agenda through a

15  report to the Court and parties.

16          Any amendments to the agenda from anyone?

17          (No audible response.)

18          THE COURT:  All right.  First we'll take up the status

19  of the subscriber track cases.  Who wants to lead that off?

20          MR. BOIES:  I will, Your Honor.

21          THE COURT:  Okay.  Good morning, Mr. Boies.

22          MR. BOIES:  Good morning, sir.  It's a pleasure to be

23  back in person.

24          THE COURT:  Yes.  This is the first time in Birmingham

25  since COVID; right?  Or second?

1          MR. BOIES:  The second time.

2          THE COURT:  Second time.  Sorry.

3          MR. BOIES:  Second time.  Second time.

4          THE COURT:  I had to do my math real quick.  I've been

5     traveling a lot, so I'm losing track of your travel.

6          MR. BOIES:  I think we are -- as Winston Churchill

7     once said, I think we're past the beginning of the end, and I

8     think we're getting close to the end.  I think the real

9     question is whether the Court thinks it needs any additional

10    briefing or whether any of the objectors or the parties

11    believe that the Court needs additional briefing before you

12    proceed to make your decision.

13          THE COURT:  All right.

14          MR. BOIES:  We've obviously explored the issues in a

15    lot of depth both in briefing and in hearings.  I think if

16    there is additional briefing, we could do it very quickly.  I

17    think that with respect to the appellate schedule, if anybody

18    does appeal, I think we would like to get this resolved in

19    time so that it can get moving and it doesn't sort of bleed

20    over into subsequent years.

21          THE COURT:  Right.

22          MR. BOIES:  So if there were going to be additional

23    briefings, I think we would urge that it be done in a week or

24    so.  I think everybody knows --

25          THE COURT:  And I take it your position would be that

1    if there is additional briefing, all that is necessary to be

2    briefed are the issues raised by the Court previously and the

3    re-notice, those cabinet of those issues.

4         MR. BOIES:  I think it's cabined by that.  I think

5    it's also cabined by those remaining objectors.  As the Court

6    may be aware, a number of the potential objectors or people

7    who indicated they might have objections have now opted out.

8    So I think we have a limited number of remaining objectors.

9    So I think it's cabined both as the Court indicated but also

10   just by, as a practical matter, what potential objectors we

11   have remaining.  And the Court may want to just inquire of

12   those objectors whether they think they need to have anything

13   more to say than they've said already.  But from our

14   perspective, I think we're ready to go, and if -- and

15   obviously we leave to the Court whether the Court thinks

16   additional briefing would be useful.  But if the Court thinks

17   additional briefing is useful, we'd like to do it as, really,

18   expeditiously as possible.

19         THE COURT:  All right.

20         MR. BOIES:  Thank you.

21         THE COURT:  I take it the Blues would agree to that?

22         MR. ZOTT:  Yes, Your Honor.  David Zott on behalf of

23   the defendants.  We do agree with that in the sense that we've

24   actually taken back a look at all the briefing here over the

25   last couple days, Judge, and it seems that every issue's been

1  fully briefed, in our view, and --

2       THE COURT:  What about on the re-notice?  Anything

3  that needs to be said to the Court about that and, for

4  example, on an aggressive briefing schedule or not?

5       MR. ZOTT:  On what issue, Your Honor?

6       THE COURT:  The re-notice issue.  The Court directed

7  the parties to re-notice certain --

8       MR. ZOTT:  Our -- yeah.  Our view is no in the sense

9  that we did actually brief it before the Court issued its

10  order.

11       THE COURT:  Right.

12       MR. ZOTT:  We had full briefing there.  Everyone had

13  an opportunity.  The Court issued the order, and you said

14  that the only objections would be to the form of the notice.

15  There was no objection to the form of the notice, so at this

16  point --

17       THE COURT:  That's what I'm getting at.

18       MR. ZOTT:  Yeah.

19       THE COURT:  As I understand it, there are no -- and

20  this is a question for everybody here.  Any objections to the

21  form of the notice?

22       MS. JONES:  Your Honor, Megan Jones, for the

23  plaintiffs.  There were no objections received.  We did open

24  that up in the supplemental notice and no one objected.

25       MR. ZOTT:  Right.

1          THE COURT:  Okay.

2          MR. ZOTT:  So that's our view, Your Honor.  And,

3     obviously, if there's some issue that Your Honor feels like he

4     would like to hear from us on, that's a different case.  But

5     otherwise, we'd agree, either no briefing or let's move fast.

6     So, thank you.

7          THE COURT:  And when we say "form of the notice," I

8     guess I'll just broaden it for safety's sake to say the -- any

9     deleterious effect of the re-notice.  No concerns, arguments,

10    objections about that?

11         MS. JONES:  Correct, Your Honor, we received no

12    objections to the form.

13         THE COURT:  Okay.  All right.  And we have objectors

14    here.  You don't have to speak.  I just want to make sure that

15    you have an opportunity to speak.

16         All right.  I don't know if we need additional

17    briefing.  I take it everybody agrees that what we have in

18    place before the notice went out is sufficient for the Court

19    to be informed about the issues it would have to resolve as

20    part of any order and memorandum opinion on fairness of the

21    settlement; fair?

22         MR. BOIES:  We think so, Your Honor.

23         MR. ZOTT:  We do as well, Your Honor.

24         THE COURT:  All right.  I'm choosing not to caucus

25    with subscribers and Blues on the subscriber issues because

1    there are objections and because of the stage we are in terms

2    of the posture of the case.  And the parties have been --

3    parties on all three sides of the case, if you will, have been

4    very -- have really worked with the Court in terms of using

5    caucuses in the right way, in my humble opinion.  I think

6    those have moved the ball, but I hope you all understand and I

7    think you agree that we can still caucus on the provider side

8    of the case but probably ought not to do that anymore on the

9    subscriber once there was a request to approve the settlement

10   put before the Court.  So we've kind of, for the most part,

11   stopped that.  That makes me raise this question here in the

12   public hearing, and that is where we stand on the common

13   benefit allocation report, really more of a plaintiffs' side

14   issue.  I don't think the defendants are going to weigh in on

15   this one unless there's something you like or really don't

16   like.  Just kidding.

17          All right.  Anything further I need to take up on

18   that?

19          MR. BOIES:  I don't think so, Your Honor.

20          THE COURT:  That's what I was thinking, too, but you

21   understand why I asked.

22          MR. BOIES:  Absolutely.

23          THE COURT:  All right.  All right.  Anything else,

24   including, for the good and the welfare, on the status of the

25   subscriber track cases?

1      MS. JONES:  Your Honor, Megan Jones, for the

2  subscriber plans.  We do have a pending motion for your

3  approval at Docket Number 2919.

4      THE COURT:  It just was filed.  I'll grant that.  I'm

5  going to grant that.  We'll put an order out on amending --

6  just to make sure that proviso is in there for the start date

7  for some of those matters.

8      MS. JONES:  Correct.  It's a timing issue, Your Honor,

9  and it's a minor change.

10     THE COURT:  Yes.  Any objection, before I grant that,

11 from anyone?

12     MR. LAYTIN:  No, Your Honor.

13     THE COURT:  All right.  I think that was more

14 ministerial than anything else, but I'll -- we'll be getting

15 an order out on that, if not today, tomorrow.

16     MS. JONES:  Thank you.

17     THE COURT:  Yes.

18     Okay.  On to the provider side.  Let me hear from the

19 parties first on the providers' side, and then I have a few --

20 maybe a few questions.

21     MR. WHATLEY:  Judge, it's Joe Whatley, for the

22 providers.  It is our first time in Birmingham since COVID

23 started and it's good to be here in person.  We spent the

24 weekend with my mother in south Alabama before coming here,

25 and she said to tell you thank you for setting this hearing to

 1    bring us down here.  We did get down to see her some during

 2    COVID, but she said to tell you thank you for setting the

 3    hearings.  I think she'll --

 4          THE COURT:  She's one of the few moms who likes it

 5    when I set these hearings.  Most moms don't want their

 6    "whoever" traveling on to Birmingham.  But anyway.

 7          MR. WHATLEY:  Well, she's now up in Montgomery, so

 8    she's happy for you to set a hearing here in Birmingham and

 9    get us to Montgomery first.

10          THE COURT:  Very good.

11          MR. WHATLEY:  And, Judge, I think you're aware of

12    everything going on in our case, and I suppose the best thing

13    is whatever questions you have we'll respond to.  And if there

14    are difficult questions, either Edith or Barry will respond to

15    them.

16          THE COURT:  All right.  Very well.  How about from the

17    Blues?

18          MS. DEMASI:  Nothing in addition.  The motions are

19    under consideration, and I'm happy to answer any questions,

20    Your Honor.

21          THE COURT:  All right.  So I do have a few questions.

22    Both -- so I asked the parties -- so we are very much going to

23    continue on the two tracks running parallel with each other.

24    I shouldn't say two tracks -- the two approaches -- the

25    litigation approach and the mediation approach.  And I notice

1  we have our highly honored mediator on my screen right now,

2  who is sitting at his childhood camp that he used to attend.

3  Seems like every time I talk to him, he's at that camp.

4       Good morning, Bob.

5       MR. WHATLEY:  I think he's muted.

6       THE COURT:  Yes, that's all right.  He's going to stay

7  muted.  He knows when to stay muted.

8       MR. MEYER:  I could offer to change the background to

9  the north shore of Maui.

10      THE COURT:  There we go.  Thank you.  I want you to

11 eventually change the background to the finish line, but

12 that's a different story.

13      All right.  So we're going to continue marching along.

14 My job is, obviously, the litigation side.  I'll leave the

15 mediation side to Bob, assisted by Kip, but my question is

16 this:  Both sides have -- I asked both sides, Hey, why don't

17 you pick out -- because both sides were giving me some

18 feedback about all these wonderful rulings I made in this

19 case -- is there anything you'd want me to revisit or

20 readdress?  And both sides landed, as I understand it, on

21 class certification, including Daubert issues and standard of

22 review.  I'm happy to do that.  Do we need any additional --

23 because we terminated those motions, as you recall, and -- but

24 they've all been briefed.  We're starting to tackle those

25 things.  I just want to make sure everybody has an opportunity

1   to be heard.  I take it both sides are comfortable with me

2   proceeding based upon the briefing we had on the terminated

3   motions and we don't need anything else from either side on

4   this?

5          MR. WHATLEY:  Yes, sir.  I think you're now talking

6   about class certification and related motions, and the answer

7   from the providers is yes.

8          THE COURT:  Okay.

9          MS. DEMASI:  And, Your Honor, from the Blues, we

10  agree.

11         THE COURT:  All right.  So, you know, in New York, at

12  our -- one of our last conferences a few months ago --  Let me

13  back up.  Here's how I'm kind of seeing things right now.  We

14  have a number of balls in the air on the providers' side, and

15  we've prioritized on the subscriber and the provider side

16  earlier on in the Alabama cases.  But we also did global

17  discovery on all the cases before we focused on the Alabama

18  cases and perhaps to some degree did both at the same time,

19  focused on Alabama cases but let the parties -- allowed the

20  parties to proceed on discovery and some motion practice on

21  the entire national discovery issue regarding the MDL issues

22  presented to the Court in 2013.

23         I guess my question is this:  At some point we're

24  going to have to move to what it seems to me I'd be handling

25  is an Alabama -- some Alabama rulings and perhaps a national

1   injunction issue that I think the providers want me to take

2   up.  There's a lot of other damage issues, though, and perhaps

3   specific injunction issues, though, that relate to the other

4   cases that are associated in this case that have come in and

5   been transferred.  At some point, if I'm working on nationwide

6   injunction and Alabama damages, for example, and maybe some

7   specific injunctive -- and I'm keeping all options open here

8   when I say this -- some specific Alabama injunction issues

9   that the providers might want the Court to entertain, all

10  these other cases are just sitting there in orbit waiting;

11  right?  And we're essentially, to some degree, treating the

12  Alabama cases as the bellwether on damages and taking up the

13  nationwide injunction claims that the plaintiffs want us to

14  take up.  Why would we keep those cases in orbit if it's

15  likely I'm never going to be making rulings on those?  They're

16  going to have to be addressed, and I -- you know, if we were

17  to get to a certain point where we know it's time to decouple

18  this litigation -- because I don't think it makes sense for me

19  to be dealing with specific damage issues on these other cases

20  and specific equitable or injunctive relief issues on these

21  other cases.  That needs to go back to the transferor judges

22  after we've allowed you to do the global discovery and global

23  motion practice you wanted to handle.  Why wouldn't we get to

24  that point sooner rather than later to decouple the MDL, send

25  those cases back, or at least suggest the panel send those

1    cases back, and I'll handle what I'm going to handle anyway?

2    And we could -- the different judges handling those things can

3    choose to treat us as a bellwether or not.

4           MR. WHATLEY:  Judge, from the provider standpoint,

5    what we would suggest is this:  When you reach the point where

6    you think remand may be appropriate, we would suggest that the

7    parties meet and confer and see what we can agree on in terms

8    of the submission to you.  Beyond that, both sides submit to

9    you the way we think you should handle remand and --

10          THE COURT:  Or suggest remand.  I don't get to handle

11   it.

12          MR. WHATLEY:  True, true.

13          THE COURT:  But I understand what you're saying.

14          MR. WHATLEY:  But -- and then to the extent we

15   disagree, both sides would submit proposals to you --

16          THE COURT:  Well, I guess my question is, why wouldn't

17   I start you on that process now?

18          MR. WHATLEY:  Well, I think you can.  I think what you

19   ought to do as a first step is have the parties confer on it,

20   have the parties make submissions to you on how to handle it,

21   and maybe at the next time you bring us down to visit my

22   mother, you -- we have a discussion directly with Your Honor.

23          MS. DEMASI:  Your Honor, we would be happy to meet and

24   confer with the providers about this.  I think that our

25   perspective is that, as the MDL court, there were still some

1   matters that remain for pretrial coordinated proceedings, and

2   we would be happy to work with the providers to identify those

3   where there's agreement and then try to find any areas of

4   disagreement.

5         THE COURT:  That's probably the thing I would like you

6   to do is, all right, let's see if you can agree and then we'll

7   see if I can agree.

8         MR. WHATLEY:  True.

9         THE COURT:  But we'll start with whether you agree on

10   what remaining coordinated pretrial matters ought to be taken

11   up by the Court under 1407.  And if you have a -- if you can

12   agree on that, then you at least increase the odds that I

13   might agree with each of you.  But what -- I guess that's my

14   question is, is there any problem with starting that process

15   now?

16         MR. WHATLEY:  No, we'll be glad to meet and confer and

17   have those discussions and report back.

18         THE COURT:  Okay.  All right.  Okay.  I think that's

19   a -- that would be a healthy thing, from my perspective, for

20   us to be handling.  So that means we can be really working on

21   three fronts.  First front is I'm dealing with the issues that

22   I will end up handling long-term no matter what happens with

23   respect to panel remand.  Second, you are beginning the

24   process of asking, What does a suggestion to remand look like?

25   And, of course, the parties are -- I can make a suggestion to

1   remand, and the parties are perfectly capable and able to give

2   the panel your own input if you disagree with my suggestion.

3   And then the third thing is our mediation -- our mediator can

4   continue working with you on those other matters.  So it

5   really becomes kind of a three-front offensive.

6       (Telephone rings.)

7       MR. RAGSDALE:  We can wait for them to answer that.

8   But how soon would you like us to report back to you on that?

9       THE COURT:  You know I'm going to ask you what your

10   feelings are on that.

11       MR. RAGSDALE:  I just I thought I'd -- it sounded like

12   I was interested in that.

13       MR. WHATLEY:  Did you notice Barry's new haircut,

14   Judge?

15       MR. RAGSDALE:  Oh, man.

16       THE COURT:  I knew there was something different about

17   him.

18       MR. RAGSDALE:  Thank you, Joe.

19       MR. WHATLEY:  No problem.

20       THE COURT:  All right.  You're forgetting I was an

21   associate with Barry at Sirote when Barry himself would talk

22   about Barry hair.  Do you remember those days?

23       MR. RAGSDALE:  I do indeed.

24       THE COURT:  All right.  What timing -- do you think a

25   report in 30 days would be overly aggressive?  You realize

1    this is soft.  If you're making substantial progress and you

2    need a little bit more time beyond the 30 days, you call Ed

3    and you get it.

4          MR. WHATLEY:  I was thinking that maybe a report, say,

5    a week after June 21st --

6          THE COURT:  June 21st.

7          MR. WHATLEY:  -- just to pick a date out of the air.

8          THE COURT:  Well, there's a federal holiday right

9    before that.

10          MR. WHATLEY:  Just 30 days is fine.

11          MR. RAGSDALE:  Thirty days.

12          MR. WHATLEY:  I'm overruled on that.

13          THE COURT:  Well, my point is, if you have 30 days,

14    that gets you to June 16, and there's a federal holiday right

15    there.  So actually, the 21st probably makes sense.  I don't

16    know if you were picking a date out of the air or actually

17    contemplating the fact you'd run right up on a federal holiday

18    before you'd have to make this report.

19          MR. RAGSDALE:  Thirty days would be fine.

20          MS. DEMASI:  I think 30 days sounds fine.

21          THE COURT:  Thirty days.  So that means I'll see it in

22    42.  All right.  Very well.

23          All right.  What else from the providers' side?

24          MR. WHATLEY:  I think we can take anything else up in

25    caucuses, unless you have questions you want us to --

1    THE COURT:  You're still allowed to caucus, yes,

2    that's fine.

3    MR. WHATLEY:  Yes, sir.

4    THE COURT:  Okay.  All right.  Very well.  Any other

5    issues the Court ought to take up?

6    (No audible response.)

7    THE COURT:  Okay.  Well, I continue to appreciate all

8    the great lawyering we get in this case.  We'll take up the

9    remaining issues the parties want to discuss with the Court in

10   caucuses, and I think Ed will just coordinate those.  We'll

11   move to the judicial conference room for those.  I don't think

12   we're -- you know, in the past we had a caucus here in the

13   courtroom with just the Blues and the subscribers together.  I

14   don't think that's necessary this time.  I think we've taken

15   up our business right here in front of everybody; right?

16   Okay.  Well, then, we'll move down to the judicial conference

17   room.  Ties are optional; okay?  See you then.

18   (Adjourned accordingly at 10:04 a.m.)

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2          I certify that the foregoing is a correct transcript

 3    from the record of proceedings in the above-entitled matter.

 4                    Dated: May 23, 2022.

 5

 6

 7    _____
      Pamela G. Weyant, RMR, CRR, CCR

 8    OFFICIAL COURT REPORTER

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```